1   QUINN EMANUEL URQUHART & SULLIVAN LLP
    Rachel Herrick Kassabian (SBN 191060)
2   rachelkassabian@quinnemanuel.com
    Yury Kapgan (SBN 218366)
3   yurykapgan@quinnemanuel.com
    Margret M. Caruso (SBN 243473)
4   margretcaruso@quinnemanuel.com
    555 Twin Dolphin Dr., 5th Floor
5   Redwood Shores, CA 94065
    Telephone: (650) 801-5000
6   Facsimile: (650) 801-5100
7
    Brian Mack (SBN 275086)
8   brianmack@quinnemanuel.com
    50 California Street, 22nd Floor
9   San Francisco, CA 94111
    Telephone: (415) 875-6400
10  Facsimile: (415) 875-6700
11
    *Attorneys for Plaintiff WPEngine, Inc.*
12
13            **IN THE UNITED STATES DISTRICT COURT**
14           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15  WPENGINE, INC., a Delaware                Case No.: 3:24-cv-06917
    corporation,
16                                            **COMPLAINT FOR:**
17              Plaintiff,
                                              **(1) Intentional Interference with Contractual**
18      vs.                                       **Relations;**
                                              **(2) Intentional Interference with Prospective**
19  AUTOMATTIC INC., a Delaware                   **Economic Relations;**
    corporation; and MATTHEW CHARLES         **(3) Computer Fraud and Abuse Act, 18**
20  MULLENWEG, an individual,                     **U.S.C. § 1030 *et seq.*;**
                                              **(4) Attempted Extortion;**
21              Defendants.                   **(5) Unfair Competition, Cal. Bus. Prof. Code**
                                                  **§ 17200, *et seq.*;**
22                                            **(6) Promissory Estoppel;**
                                              **(7) Declaratory Judgment of Non-Infringement;**
23                                            **(8) Declaratory Judgment of Non-Dilution;**
                                              **(9)  Libel;**
24                                            **(10) Trade Libel; and**
                                              **(11) Slander.**
25
26                                            **DEMAND FOR JURY TRIAL**
27
28

For its Complaint, Plaintiff WPEngine, Inc. ("WPE"), by and through its attorneys Quinn Emanuel Urquhart & Sullivan, LLP, avers as follows:

## INTRODUCTION

1.      This is a case about abuse of power, extortion, and greed.  The misconduct at issue here is all the more shocking because it occurred in an unexpected place—the WordPress open source software community built on promises of the freedom to build, run, change, and redistribute without barriers or constraints, for all.  Those promises were not kept, and that community was betrayed, by the wrongful acts of a few—Defendants—to the detriment of the many, including WPE.

2.      WordPress is an open source content management system developed in 2003 that allows people to create and publish their own websites.  WordPress was an early success, and people quickly began using it and building a community around it.  The WordPress source code and trademarks were initially owned by Defendant Matthew Mullenweg's for-profit company, Defendant Automattic Inc. ("Automattic").  In 2010, in response to mounting public concern, the WordPress source code and trademarks were placed into the nonprofit WordPress Foundation (which Mullenweg created), with Mullenweg and Automattic making sweeping promises of open access for all:  "***Automattic has transferred the WordPress trademark to the WordPress Foundation***, the nonprofit dedicated to promoting and ensuring access to WordPress and related open source projects in perpetuity.  ***This means that the most central piece of WordPress's identity, its name, is now fully independent from any company***."  Mullenweg and Automattic reiterated this promise later, in even more forceful terms: "***What's important is that [] longer than I'm alive, longer than Automattic is alive, longer than any of us are alive, there is something that holds the WordPress code and trademark for the free access for the world***."

3.      What Defendants' statements and assurances did ***not*** disclose is that while they were publicly touting their purported good deed of moving this intellectual property away from a private company, and into the safe hands of a nonprofit, Defendants in fact had quietly transferred irrevocable, exclusive, royalty-free rights in the WordPress trademarks right ***back*** to Automattic that very same day in 2010.  This meant that far from being "independent of any company" as Defendants had promised, control over the WordPress trademarks effectively never left Automattic's hands.

4.      Despite the promises Defendants made to induce companies to build their businesses around WordPress, Defendants are now misusing these trademarks for their own financial gain and to the detriment of the community members.  One such company that relied on Defendants' promises was WPE, founded in 2010.  WPE is a true champion of WordPress, devoting its entire business to WordPress over other similar open source platforms.  In reliance on Defendants' many promises, WPE invested hundreds of millions of dollars and 14 years of hard work building a successful business to serve that community—only to see the petulant whims of Mullenweg inflict harm to its business and the community that has embraced it.

5.      Over the last two weeks, Defendants have been carrying out a scheme to ban WPE from the WordPress community unless it agreed to pay tens of millions of dollars to Automattic for a purported trademark license that WPE does not even need.  Defendants' plan, which came without warning, gave WPE less than 48 hours to either agree to pay them off or face the consequences of being banned and publicly smeared.  In that short time, Defendants sent ominous messages and photos designed to intimidate WPE into making an extortionate payout.  When WPE did not capitulate, Defendants carried out their threats, unleashing a self-described "nuclear" war against WPE.  That war involved defaming WPE in public presentations, directly sending disparaging and inflammatory messages into WPE customers' software and through the Internet, threatening WPE's CEO and one of its board members, publicly encouraging WPE's customers to take their business to Automattic's competing service providers (for a discounted fee, no less), and ultimately blocking WPE and its customers from accessing the wordpress.org portal and wordpress.org servers.  By blocking access to wordpress.org, Defendants have prevented WPE from accessing a host of functionality typically available to the WordPress community on wordpress.org.

6.      Mullenweg's recent actions have exposed and highlighted his long history of obfuscating the true facts about his control and manipulation of the WordPress Foundation and wordpress.org—which he presents as a not-for-profit "dot-org" enterprise, but which in fact he solely owns and directs with an iron fist to further his own commercial interests in Automattic and associated commercial businesses, to the detriment of Defendants' competitors.

7.    Defendants' self-proclaimed war has inflicted harm upon WPE and the entire WordPress community.  Worse, it has no end in sight, as Defendants continue their bad acts unabated.  WPE brings this action to stop Defendants from continuing to harm WPE and its customer relationships, from undermining the entire WordPress ecosystem, and to hold Defendants accountable for their broken promises and malfeasance.

## THE PARTIES

8.    Plaintiff WPE is a Delaware Corporation with its principal place of business in Austin, Texas.  WPE is a technology company that offers a complete Platform as a Service (PaaS) solution (including comprehensive development and deployment tools, support and security, and managed hosting) for WordPress and also develops plugins, themes, and other tools for the WordPress community.  WPE employs more than 1,000 people and is considered one of the most trusted WordPress platforms in the world.

9.    Defendant Automattic is a Delaware Corporation with its principal place of business in San Francisco, California.  Automattic owns and operates several for-profit businesses that operate within the WordPress ecosystem, including wordpress.com, WordPress VIP, and Pressable.com (all competitors to WPE), as well as WooCommerce, Inc. (which offers an ecommerce tool).

10.    On information and belief, Defendant Matthew Charles Mullenweg ("Mullenweg") lives, among other places, in California, where he beneficially owns residential property.  Mullenweg also controls and serves as the CEO and President of Automattic, a California-based corporation, and as a founding director of the WordPress Foundation, a California nonprofit public benefit corporation recognized by the Internal Revenue Service ("IRS") as a public charity under Section 501(c)(3) of the Internal Revenue Code.  Mullenweg recently publicly acknowledged that he owns wordpress.org, which is registered with the Internet Corporation for Assigned Names and Numbers (ICANN) as a California domain.  The wrongful acts described herein, including at least the decisions and conduct to extort, interfere with, and otherwise violate the legal rights of WPE and the libelous and slanderous activity, took place at least in part in California, where Mullenweg and other key Automattic employees and agents work and where the instrumentalities

of the company are located.  In addition, on information and belief, at least some of the computers and servers used to carry out the blocking of WPE's access to wordpress.org were located in California.

### JURISDICTION AND VENUE

11.     Jurisdiction is proper in this court because this litigation arises under federal law, namely 15 U.S.C. § 1051 *et seq*. (Lanham Act) and 18 U.S.C. § 1030 *et seq*. (Computer Fraud and Abuse Act).  The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201 (Declaratory Judgment Act).  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

12.     A case of actual controversy has arisen between the parties pursuant to 28 U.S.C. § 2201 regarding whether WPE infringes any alleged trademark rights of Automattic, as further set forth herein.

13.     This Court has personal jurisdiction over Automattic because Automattic has its principal place of business in the State of California and within this district, regularly conducts business within this district, and advertises and sells its services through the Internet to California residents.  In addition, the claims at issue arise out of or relate in substantial part to Automattic's activities in this District.

14.     This Court has personal jurisdiction over Mullenweg, including due to his substantial and regular contacts with the forum as the CEO of Automattic.  In addition, the claims at issue arise out of or relate in substantial part to Mullenweg's activities in this District.

15.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

### CASE OF ACTUAL CONTROVERSY FOR DECLARATORY JUDGMENT

16.     With respect to WPE's request for declaratory judgment, a case of actual controversy has arisen between the parties pursuant to 28 U.S.C. § 2201.  During the week of September 16, 2024, as further described below, Defendants made various demands that WPE pay tens of millions of dollars per year for a license to use Automattic's purported trademarks, including the terms

"WordPress," "WooCommerce," and various other similar marks[1] (collectively the "Challenged Terms").

17. On September 23, 2024, counsel for Automattic and its subsidiary, WooCommerce, Inc., sent a letter to WPE, alleging that WPE's use of the Challenged Terms constitutes trademark infringement and was diluting their rights, tarnishing their reputation, and harming their goodwill. The letter further alleged that WPE's "unauthorized use of our Client's trademarks infringes their rights and dilutes their famous and well-known marks," as well as having "enabled [WPE] to unfairly compete with our Client and has led to unjust enrichment." A copy of that letter is attached as Exhibit A. The letter also stated that Automattic is "entitled to file civil litigation to obtain an injunction and an award of actual damages, a disgorgement of your profits, and our Client's costs and fees," along with an award of "attorneys' fees."

18. On the same day, Mullenweg posted a public comment on the Reddit website, again meritlessly accusing WPE of "trademark violations" and claiming that he was going to file "formal legal action" against WPE.[2]

19. WPE denies Defendants' accusations, including that WPE has violated any trademark rights of Defendants. Consequently, a specific and immediate dispute exists between WPE and Defendants. WPE cannot continue to allow Defendants' unsubstantiated threats and demands interfere with WPE's business and relationships with its customers. WPE needs judicial clarity regarding its non-infringement and non-dilution of the Challenged Terms so that it can continue to serve customers and users of its platform, including the open source community, without further interference from Defendants.

---

[1] WORDPRESS, U.S. Reg. No. 3201424; WORDPRESS, U.S. Reg. No. 4764217; WORDPRESS, U.S. Reg. No. 4865558; WOOCOMMERCE, U.S. Reg. No. 5561427; WOOCOMMERCE, U.S. Reg. No. 5561428; WOO, U.S. Reg. No. 5561425; WOO, U.S. Reg. No. 5561426.

[2] https://www.reddit.com/r/Wordpress/comments/1fn3mjr/comment/lokzvec/. Every hyperlink referenced herein was last visited on October 1, 2024.

## GENERAL ALLEGATIONS

**I.      WPE's Business as a Service Provider in the WordPress Community**

      **A.      <u>WPE's Services and Other Contributions to the WordPress Community</u>**

20.     WPE was founded in 2010 as a comprehensive platform to develop, host, manage, and support websites that are built on the open source code known as WordPress.  For example, amongst other things, WPE helps companies and agencies of all sizes to manage, host, operate, and optimize their WordPress websites with premium, enterprise-grade tools, services, and support.  Over time, WPE began developing and offering additional products and services, such as plugins and other tools for the WordPress community.  Today, WPE has more than 1,000 employees, and is used on more than 1.5 million websites, including by businesses, individuals, charities, schools, and governmental agencies that rely on WPE to keep their websites up and running.  WPE has invested hundreds of millions of dollars to enable users and customers to host their sites using WordPress.

21.     WPE is a proud member of the WordPress community, which consists of users and developers who collaborate to improve the WordPress platform and to make sure that this open source code remains free and accessible to everyone.  As part of the WordPress community, WPE has contributed tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources, including sponsorship of WordCamps worldwide (a conference run by a wholly-owned for-profit subsidiary of the WordPress Foundation, WordPress Community Support, PBC) and producing DE{CODE}, a conference for developers who build WordPress websites; hosting, funding and actively maintaining multiple open source projects (e.g., ACF, WPGraphQL, faust.js) within the ecosystem used by millions of websites around the world; and educating and empowering the WordPress community through webinars, podcasts, and tutorials, and content like the WordPress Roundup and WPE's Building WordPress series.

**B.** **WPE's Longstanding Use of the WordPress Mark to Refer to the Open Source Software Platform its Customers' Websites are Built On**

22.     Because WPE's products and services are built to work with websites developed using WordPress opensource software and opensource WooCommerce plugins, WPE naturally references the Challenged Terms when referring to the software platform on which its customers' websites are built.   WooCommerce is an opensource WordPress plugin that is managed by Automattic on a for-profit basis.  The WooCommerce plugin adds functionality to WordPress that, among other things, allows users to sell products and services on their website and take payment for those sales.   WPE has consistently used the term "WordPress" since 2010 in reference to the WordPress program and platform, and the term "WooCommerce" in reference to the WooCommerce plugin, since at least 2018.   This type of referential, or nominative, use of the Challenged Terms is not only legal, but it is essential to providing consumers with the information they need.  Further, it has long been condoned by the Defendants, and is widely mirrored by the entire WordPress community.

23.     Examples of such WPE uses dating back to 2010 include:

**WPE Website (March 30, 2010)**[3]



---

[3]   https://web.archive.org/web/20100330012641/http://wpengine.com.

COMPLAINT

1

**WPE Website (December 8, 2010)**[4]



**WPE Website (November 15, 2011)**[5]



---

[4] https://web.archive.org/web/20101208000154/http://wpengine.com.

[5] https://web.archive.org/web/20111115053852/http://wpengine.com/.

COMPLAINT

1

### WPE's Website (January 10, 2013)[6]

2

3



4

5

6

7

8

9

10

11

12

13

14

### WPE's Website (June 16, 2015)[7]

15

16

17

18

19

20

21

22

23

24

25

---

26    [6]   https://web.archive.org/web/20131114181316/http://wpengine.com/2013/01/10/essential-
27    plugins-and-add-ons-for-wordpress-ecommerce-sites/.

28    [7]   https://web.archive.org/web/20150616200116/http://wpengine.com.

**WPE Website (Feb. 28, 2018)**[8]



**WPE Website (October 4, 2018)**[9]



24.     Defendants have known about WPE's use of the Challenged Terms for more than a decade.  Not only is WPE's website publicly available for all to see, but in 2011 Automattic made a substantial investment in WPE and remained an investor until 2018.  Over these years WPE and Automattic maintained regular communications, including about WPE's website.  In addition, WPE has been a long-time sponsor of the WordPress conferences known as WordCamp.  Since at least 2012, WPE has attended these conferences, including having booths with promotional signage and materials at the conferences, with the full knowledge of Defendants.

25.     Mullenweg presumably also had reviewed and approved WPE's use of the Challenged Terms through the "Five for the Future" program, of which WPE is a longstanding member.[10]  Before allowing participation in this program, Mullenweg required that "[a]ny person

---

[8]   https://web.archive.org/web/20180228230453/https://wpengine.com/solution-center/.

[9]   http://web.archive.org/web/20181004073656/https://wpengine.com/.

[10]   *See* https://wordpress.org/five-for-the-future/.

or business currently misusing or infringing on the WordPress trademark will need to fix any misuse before their pledge will appear on the Five for the Future pledge page."[11]   Mullenweg knowingly published WPE's pledge to this program on wordrpess.org, thereby acknowledging that WPE was not "misusing or infringing on" the WordPress trademark.[12]   In addition, Mullenweg acknowledged that "[a]s a ***longtime contributor*** to WordPress Core, WP Engine has ***played an integral role*** in supporting the WordPress project for ***more than a decade***.[13]   Indeed, as also acknowledged by Mullenweg, WPE, at the very least, "sponsors ***11 contributors*** for a total of ***40 hours*** per week across ***5 teams***."[14]

26.     Moreover, on March 21, 2023, with full knowledge of WPE's use of the Challenged Terms, Mullenweg attended and spoke at WPE's developer conference, DE{CODE}, as part of a "fireside chat," which was broadcast widely and is still available to the public.[15]   As part of that interview, in response to a question about what was required from "all of us who stand for a free and open web to keep things thriving for the next 20 years," Mullenweg responded that people should "vote with your wallet.  So when you support companies like WPE, who don't just provide a commercial service, but are also part of a wider open source community, you're saying, hey, I want more of this in the world."  On the day of his fireside chat, praising WPE, WPE's site appeared as follows, clearly using the Challenged Terms in a nearly identical way to how WPE uses the terms today:

---

[11]   https://wordpress.org/five-for-the-future/expectations/.

[12]   *See* https://wordpress.org/five-for-the-future/pledge/wp-engine/ (emphasis added).

[13]   *Id.*

[14]   *Id.* (emphasis in original).

[15]   https://wpengine.com/resources/decode-2023-fireside-chat-mullenweg-ventura/.

-11-

**WPE Website (March 21, 2023)[16]**



27.    WPE's website today uses the Challenged Terms in substantially the same way it has used them for more than a decade so that consumers know that WPE's products and services are made to work with the open source code for WordPress and WooCommerce.[17]

**WPE Website (September 26, 2024)[18]**



---

[16]  https://web.archive.org/web/20230321054241/https://wpengine.com/.

[17]  https://www.youtube.com/watch?v=H6F0PgMcKWM

[18]  https://wpengine.com/.

-12-



28.     Indeed, during a livestream on September 26, 2024 on the X platform, when asked why he had not attempted to enforce Automattic's trademarks against WPE a decade ago, Mullenweg admitted that he'd known about WPE's use of the Challenged Terms for "years," but opted not to take action.[19]

## II.     The WordPress Platform and Matthew Mullenweg's Role in It

29.     In 2003, Mullenweg cofounded WordPress, accessible at wordpress.org.  WordPress is an opensource web content management system that is used in over 43% of websites on the Internet as of 2024.

30.     In 2005, Mullenweg founded Automattic, a for-profit company.  Upon its founding, Automattic controlled the WordPress trademark.  Automattic also owns, among other sites and platforms, wordpress.com—a for-profit hosting provider for WordPress sites.

31.     In 2006, Mullenweg founded the WordPress Foundation as a California nonprofit public benefit corporation.  In 2009, the WordPress Foundation was recognized by the IRS as a tax-exempt public charity under Section 501(c)(3) of the Internal Revenue Code, retroactive to 2006.  Mullenweg has served as a director of the WordPress Foundation since its founding.  According to its annual filings with the IRS, the WordPress Foundation's mission is "to ensure free access, in perpetuity, to the software projects we support."  According to its Articles of Incorporation, the purpose of the Foundation is to "preserve and protect the freedom to use, study, copy, modify,

---

[19]  https://www.youtube.com/watch?v=H6F0PgMcKWM

COMPLAINT

1    redistribute and otherwise make freely available certain open source software," and to "serve the

2    general public by promoting and advancing the development of certain open source software and

3    technologies which can be used by individuals as a personal publishing platform free of charge, and

4    to educate the general public on the availability and use of such software and technologies."

5          32.     In 2010, after WordPress Foundation had been publicly recognized by the IRS as a

6    501(c)(3) public charity, Mullenweg caused Automattic to transfer ownership of the WordPress

7    marks to the WordPress Foundation, and publicly announced that transfer.  On September 9, 2010,

8    Mullenweg posted on his blog that "Automattic has transferred the WordPress trademark to the

9    WordPress Foundation, the nonprofit dedicated to promoting and ensuring access to WordPress and

10   related open source projects in perpetuity."[20]  He did that around the same time of public concern

11   over his level of control and potential for abuse.  Mullenweg's public announcement did not

12   mention, however, that he had also caused the nonprofit WordPress Foundation to grant an

13   exclusive, fully-paid, royalty-free, perpetual, irrevocable, worldwide, sublicensable license and

14   related security agreement to the WordPress mark *right back* to Mullenweg's for-profit Automattic.

15         33.     Mullenweg failed to disclose this exclusive licensing arrangement between his

16   nonprofit (the WordPress Foundation) and his for-profit (Automattic) in the WordPress

17   Foundation's tax filings with the California government, claiming that there were no "contracts . . .

18   *between [WordPress Foundation] and* any officer, director or trustee . . . or with *an entity in which*

19   *any such officer, director* or trustee *had any financial interest*" (emphasis added).  This statement

20   was false, given that Mullenweg was a director of the WordPress Foundation while also having a

21   financial interest in Automattic, the entity with which the Foundation entered into a trademark

22   license agreement—an apparent self-dealing transaction constituting inurement under federal tax

23   law.  It appears Mullenweg also did not disclose the license agreement in the WordPress

24

25   [20]   https://ma.tt/2010/09/wordpress-trademark/.  *See also* https://wordpress.org/book/2015/11/the-
     wordpress-foundation/ ("Automattic registered the WordPress trademarks in 2006, but some
26   contributors — who had helped build the software or started their own local communities — felt
     that they had as much right to the trademarks as Automattic.  Some community members believed
27   that the community owned the codebase and thus should own the trademarks, not the corporate
     entity.").
28

Foundation's filings with the IRS, and none of WordPress Foundation's fourteen years of publicly available federal reporting to the IRS indicates that the WordPress Foundation was compensated in any form for granting an exclusive, fully-paid, royalty-free, perpetual, irrevocable, worldwide, sublicensable license for trademarks Defendants now claim are incredibly valuable.  Indeed, while the Foundation has failed to ever disclose to the IRS its ownership of the trademarks or existence of the exclusive royalty-free license to Automattic, for the past seven years Mullenweg himself executed the IRS forms on behalf of the Foundation under penalties of perjury, an apparent false certification to the IRS and public that the Foundation's Forms 990 were true, correct, and complete.

34.     Notably, for the 2010 tax year when the apparent self-dealing transaction with Automattic was executed, the Foundation chose to file the Form 990-N "e-postcard" version of the Form 990 requiring no financial detail except a certification that the organization normally has annual gross receipts of $50,000 or less.  Gross receipts are the total amounts the organization received from all sources during the tax year including non-cash contributions such as valuable trademarks, without subtracting any costs or expenses.  By virtue of having filed this form, the Foundation made a representation to the IRS and to the public that its gross receipts were normally $50,000 or less during the time in which it received rights to the WordPress trademarks, effectively concealing what Defendants claim are valuable trademarks from being reported in the Foundation's returns as assets of the Foundation.  Further, for the subsequent year the Foundation filed a more fulsome 2011 Form 990-EZ which reported that at the start of 2011, the Foundation only had total assets $14,071 consisting solely of cash, savings, and investments.  No trademarks or other valuable IP were reported.  These filings demonstrate that the Foundation made no accounting to the IRS (or the public reviewing IRS forms) concerning the Foundation's receipt and possession of the trademarks at issue.  Assuming the trademarks have any value (much less the tens of millions of dollars annually that Mullenweg has demanded for use of them), each year the Foundation has failed to report the value of the trademarks on its Form 990 balance sheet along with a description of assets in its corresponding Schedule O, although required to do so under federal tax law.

35.     In a number of public statements about the WordPress trademark, Mullenweg also failed to disclose the critical fact that a for-profit entity he controlled held the exclusive WordPress

trademark rights.  To the contrary, Mullenweg's comments appeared intent on providing false assurances that the WordPress trademark rights were safely in the hands of the nonprofit Foundation. In 2010, Mullenweg stated that "it's not often you see a for-profit company **donate one of their most valuable core assets and give up control**."[21]  And as he stated in an interview in 2014, referring to the Foundation: "What's important is that [] longer than I'm alive, longer than Automattic is alive, longer than any of us are alive, ***there is something that holds the WordPress code and trademark for the free access for the world***."[22]

36.     WordPress operates under the open-source GNU General Public License (GPL).  Under that license, anyone in the world has permission to access, review, copy, modify, distribute, and create derivative works of WordPress without payment to anyone as long as, among other things, derivative works are also contributed back to the open-source community.  This sharing of new code development is the fundamental principal by which open-source communities function and thrive.

37.     The WordPress open-source software is hosted by and accessible through the website wordpress.org, which also contains information, tutorials, and news about WordPress.  As described in further detail below, wordpress.org also hosts plugins, themes, other add-ons created by software developers in the WordPress community who wish to share their work with the rest of the WordPress community, and hosts other services, such as a support ticket and bug tracking system as well as a community chat and communications system.

38.     Despite its .org top level domain, which is commonly understood to be used for nonprofit entities, Mullenweg recently acknowledged that he controls wordpress.org, as in the following message he posted on Slack on September 22, 2024:

---

[21]   https://ma.tt/2010/09/wordpress-trademark/ (emphasis added).

[22]   https://archive.wordpress.org/interviews/2014_04_17_Mullenweg.html (emphasis added).



39.     Mullenweg also acknowledged that he is the sole owner of wordpress.org, as he stated in a post on X.com on September 30, 2024:

40.     Mullenweg made similar statements in a message posted on Slack on January 14, 2024 to the effect that wordpress.org (using the abbreviation "W.org," which redirects to wordpress.org) "belongs to me, it's not part of the foundation or any trust":



41.     In an interview with the *WordPress Blog & Podcast* on September 27, 2024, Mullenweg also stated that he has "been running wordpress.org for 21 years," which means that he has been running the wordpress.org website since he founded WordPress in 2003, such that wordpress.org was never owned by the nonprofit WordPress Foundation and existed years before there even was a Foundation.[23]

42.     In May 2015, Automattic acquired WooCommerce, Inc., an open source e-commerce plugin for WordPress.  WooCommerce, Inc. is a for-profit entity and owns trademark registrations for the WOOCOMMERCE and WOO marks.

**III.     Defendants' Promises to WPE and the Entire WordPress Community**

43.     The WordPress community, consistent with the principles of open source, was built upon the values of freedom and openness.  As described above, WordPress's core software is licensed to the world under an open source GPL license.  In addition to its software licensing, WordPress's messaging on wordpress.org and wordpressfoundation.org emphasize these overarching values of freedom and openness.

44.     For example, on wordpress.org, Mullenweg claims that the WordPress community is "united by the spirit of open source, and the freedom to build, transform, and share without barriers. ***Everyone*** is welcome."[24]   The website further states that WordPress "provides the

---

[23]   https://x.com/TheWPMinute/status/1839774203018662028.

[24]   https://wordpress.org/ (emphasis added).

opportunity for **anyone** to create and share."[25]   Defendants describe their commitment to open source, which has led it to adopt "four core freedoms" related to its product offerings: (1) "freedom to run [the software] for any purpose"; (2) freedom to "change [the software] make it do what you wish"; (3) "freedom to redistribute" the software; and (4) "freedom to distribute copies of your modified versions to others."[26]   Defendants explain that they are "committed to being as **inclusive and accessible as possible**.   We want users, regardless of device or ability, to be able **to publish content** and maintain a website or application built with WordPress."[27]

45.     Apart from these broad promises of openness, accessibility, and freedom, Defendants make even more specific promises to third party software developers (such as WPE) which it encourages to build on its platform.   WordPress is architected in a way that allows third-party software developers to create "plugins" and "themes" that can seamlessly interact with the WordPress platform.   WordPress plugins enhance and add to the functionality of WordPress, while WordPress themes can change and enhance how WordPress looks when users interact with it.   Defendants strongly encourage software developers to develop and share plugins and themes with other members in its community by uploading them to a repository within the wordpress.org website for all to use.   Websites around the world running WordPress can then download these plugins from wordpress.org repository to their websites.   Defendants operate an authentication system at login.wordpress.org, which controls access to portions of the wordpress.org site, including the ability to submit plugins and themes to the repository.

46.     Mullenweg hosts an entirely separate developer website (developer.wordpress.org) to encourage third-party software developers (such as WPE) to build plugins.   On that developer website, WordPress promises that "wordpress.org offers free hosting to **anyone** who wishes to develop a plugin in our directory."[28]   The wordpress.org website is a control point over distribution

---

[25]   https://wordpress.org/about/ (emphasis added).

[26]   *Id.*

[27]   https://wordpress.org/about/accessibility/ (emphasis added).

[28]   https://developer.wordpress.org/plugins/wordpress-org/ (emphasis added).

for WordPress plugins.  Nowhere on the developer website does it say that a developer must pay money to WordPress to host their plugins on wordpress.org, or that access to wordpress.org can be blocked at Mullenweg's whim.  Nor does wordpress.org disclose on the site that it is **not** owned and operated by the nonprofit WordPress Foundation (despite the dot-org top level domain and WordPress Foundation donation page), but is, in fact, owned and controlled solely by Mullenweg.

47.    Wordpress.org's developer website also contains a "Frequently Asked Questions" which provides the process by which plugins are approved to be posted on wordpress.org.[29]  The developer website states that a plugin submitted for publication on wordpress.org "will be queued, and as soon as we get to it, we will manually download and review your code. ***If we find no issues with the security, documentation, or presentation, your plugin will be approved***.  If we determine there are issues, you will receive a second email with details explaining what needs to be fixed."[30] Nowhere does the website say that the plugin will be approved only if the developer pays money to WordPress.  The "Frequently Asked Questions" also contains language that describes the conditions under which plugins are not accepted.[31]  Again, nothing states that plugins will not be accepted for failure to pay money to wordpress.org.  The "Frequently Asked Questions" section of the website also states that "[p]lugins are closed for guideline violations, security issues, or by author requests."[32]  Nowhere on the website does WordPress state that Plugins can be closed simply because Mullenweg decided so.

48.    In addition to emphasizing the openness of the WordPress Core codebase and wordpress.org, Defendants have also emphasized openness in use of the WordPress trademark.  According to the WordPress Foundation's website, the WordPress Foundation is the rightful owner of the WordPress trademark and oversees its enforcement.[33]  The WordPress Foundation has also

---

[29]    https://developer.wordpress.org/plugins/wordpress-org/plugin-developer-faq/.

[30]    *Id.* (emphasis added).

[31]    *Id.*

[32]    *Id.*

[33]    https://wordpressfoundation.org/trademark-policy/.

COMPLAINT

represented to the IRS that "the Foundation will be responsible for protecting the WORDPRESS, WORDCAMP, and related trademarks."[34]  As referenced above, Mullenweg also has stated that the very reason that he created the WordPress Foundation was to ensure that "there is something that holds the WordPress code and trademark for the *free access for the world*."[35]

49.     Consistent with the doctrine of nominative fair use, nearly all third-party developers of WordPress plugins prominently display "WordPress" on their websites when referring to the software and platform on which their plugins are built, as do providers that host WordPress websites, when describing the WordPress software and platform.  As discussed above, WPE has been using the term WordPress in this fashion since the company was formed in 2010.  Defendants have been aware of this usage for more than a decade without complaint.

**IV.     Automattic's and Mullenweg's Recent Coercive Threats and Attempted Extortion of WPE**

50.     In the days leading up to Mullenweg's September 20, 2024 keynote address at the WordCamp US Convention, Automattic suddenly began demanding that WPE pay Automattic large sums of money, and, if it refused, Automattic would wage war against WPE.  This demand was accompanied by allegations about WPE's business that were not only baseless but also bore no rational relation to the payment demand.

51.     During the course of calls on September 17 and 19, for instance, Automattic CFO Mark Davies told a WPE board member that Automattic would "go to war" if WPE did not agree to pay its competitor Automattic a significant percentage of WPE's gross revenues—tens of millions of dollars—on an ongoing basis.  Automattic's CFO suggested the payment ostensibly would be for a "license" to use certain trademarks like WordPress, even though WPE needs no such license  and had no reasonable expectation that Automattic had a right to demand money for use of a trademark owned by the separate nonprofit WordPress Foundation.  WPE's nominative uses of those marks to refer to the open-source software platform and plugin used for its clients' websites are fair uses

---

[34]   https://projects.propublica.org/nonprofits/display_990/205498932/2012_12_EO%2F20-5498932_990EZ_201112.

[35]   https://archive.wordpress.org/interviews/2014_04_17_Mullenweg.html (emphasis added).

COMPLAINT

under settled trademark law, and they are consistent with WordPress' own guidelines and the practices of nearly all businesses in this space.  Nonetheless, Automattic's CFO insisted that WPE provide a response to the demand immediately and later, on the day of the keynote, followed up with an email reiterating a claimed need for WPE to concede to the demands "before Matt [Mullenweg] makes his WCUS keynote at 3:45 p.m. PDT today."

52.    In parallel, and throughout September 19 and 20, Mullenweg embarked on sending a series of harassing text messages and making calls to WPE's CEO and a board member.  One of Mullenweg's threatening messages to WPE's board member on September 19 read:



53.    Mullenweg also threatened that if WPE did not agree to pay his demands before the start of Mullenweg's livestreamed keynote address at 3:45 pm on September 20, he would go "nuclear" on WPE, including by smearing its name, disparaging its directors and corporate officers, and banning WPE from WordPress community events.  His threats included the following message:

54.    While waiting for a response to his text messages, Mullenweg emailed WPE's CEO and a board member, threatening to use his planned keynote speech to disparage WPE: "We get a few thousand viewers on the livestream, and the videos on YouTube can get millions of views when we promote them."  Mullenweg stated that he had already created slides for his keynote speech, taking aim at WPE and its investor, and would present them to WordCamp attendees—and to millions of others via livestream on YouTube—if his financial demands were not met.

55.     Mullenweg continued to send a barrage of texts throughout the evening of September 19 and the morning of September 20, attempting to pressure WPE into capitulating to Automattic's financial demands.  For example:

I have 14 slides so far, working title for the talk: "How Private Equity can Hollow out and Destroy Open Source Communities, a Story in 4 Parts."

I've got quotes from current and former employees, some may even stand up and speak as well.

56.     When WPE's board member offered to speak with Mullenweg the next business day in San Francisco to have a business discussion, Mullenweg refused, stating that he "will proceed with the scorched earth nuclear approach to WPE" and that he would "hone" his message accordingly for his keynote address that afternoon:



If you're saying "next week" that's saying "no", so I will proceed with the scorched earth nuclear approach to WPE

Thank you for the clarity, it gives me time to work on things and hone my message.

57.     In the final minutes leading up to his keynote address, Mullenweg sent one last missive—a photo of the WordCamp audience waiting to hear his speech, with the message that he could shift gears and turn his talk into "just a Q&A about [WordPress]" if WPE agreed to Defendants' payout terms:

COMPLAINT



**V.     Automatic and Mullenweg Carry Out Their Threats**

58.     When WPE refused to capitulate to Automattic's astronomical and extortionate monetary demands, Mullenweg made good on his threats.  The threat of "war" turned into a multi-front attack, part of an overarching scheme to extract payouts from WPE.  That threat is ongoing.  Defendants have continued to disrupt WPE's business and falsely disparage its products and services.

59.     Mullenweg's actions also reflect a clear abuse of his conflicting roles as (1) a director of the nonprofit WordPress Foundation, (2) with ownership and control of the for-profit wordpress.org website and control over access to the open-source WordPress software that is accessed through his wordpress.org site, and (3) as the CEO of at least two for-profit businesses that compete with WPE and that claim to have an exclusive, royalty free license to the Challenged Marks that are necessarily used by the WordPress community to refer to the open-source WordPress software on which the relevant websites are built.  Mullenweg's private demand for tens of millions of dollars from WPE for his for-profit company sharply contrasts with his public proclamations to selflessly safeguard the interests of the WordPress community.  His subsequent actions of terminating WPE's ability to freely access portions of the wordpress.org site in order for WPE to

service its customers similarly stands in stark contrast to the mission statement of WordPress as an open source community, and to the promises Mullenweg made on which the entire community relied.

  **A.**   <u>**Defendants' False and Disparaging Statements**</u>

  60.   During the keynote address at WordCamp US on the afternoon of September 20, Mullenweg made a series of false and disparaging statements about WPE and its investor, including:

- Claiming that WPE is a company that just wants to "feed off" of the WordPress ecosystem without giving anything back;

- Suggesting that WPE employees may be fired for speaking up, supporting Mullenweg, or supporting WordPress, and offering to provide support in finding them new jobs if that were to occur;

- Stating that every WPE customer should watch his speech and then not renew their contracts with WPE when those contracts are up for renewal;

- Claiming that if current WPE customers switch to a different host they "might get faster performance";

- Alleging that WPE is "misus[ing] the trademark" including by using "WP" in its name; and

- Claiming that WPE's investor doesn't "give a dang" about Open Source ideals.

  61.   Mullenweg's statements during his keynote address at the WordCamp US Convention were demonstrably false.

  62.   Contrary to Mullenweg's statements that WPE does not contribute to the WordPress community, WPE has been deeply dedicated to advancing the use and adoption of WordPress through innovation, investment, and active community involvement. As Mullenweg acknowledges on wordpress.org, "[i]It takes a lot of time and energy to create and then support Themes and Plugins, keeping them updated as WordPress changes and bugs are found" and "every contribution counts, no matter what it looks like."[36] WPE has contributed tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources, including sponsorship of WordCamps worldwide and producing

---

[36] https://wordpress.org/documentation/article/become-a-wordpress-contributor/.

DE{CODE}; educating and empowering the WordPress community through content like the WordPress Roundup and the Building WordPress series; hosting, funding and actively maintaining multiple open source projects (*e.g.*, ACF, Genesis, WPGraphQL, faust.js) within the ecosystem used by millions of websites around the world; providing free developer tools such as Local (with more than 100,000 monthly active users) and sponsoring development of WP-CLI, a command-line interface for WordPress; and producing informative webinars, podcasts, and tutorials.  WPE significantly outpaces multiple other contributors relative to its revenue.

63.     Mullenweg's claim that WPE is misusing the WordPress trademark is false.  For more than a decade, WPE's use of "WP" has been explicitly permitted by WordPress Foundation's trademark policy, which explicitly states: "The abbreviation 'WP' is not covered by the WordPress trademarks and you are free to use it in any way you see fit."[37]  Moreover, WPE's use of the WordPress mark is entirely compliant with governing trademark law.  For more than a decade, WPE has fairly used that term to refer to the open-source WordPress software on which its customers' websites are built, as other members of the WordPress ecosystem do.  For more than a decade, Defendants never complained.

64.     Mullenweg's public statements reveal that Automattic is knowingly misusing its asserted trademark rights.  These statements suggest Defendants had no genuine belief that their recently manufactured trademark infringement accusation against WPE has any merit, as also evidenced by their 14 years of inaction.  Instead, Defendants appear to be attempting to leverage trademark law for anticompetitive purposes.  For example, on September 26, 2024, during a livestream on YouTube, Mullenweg admitted: "Is there a law that says you have to give back? No, there is a law that says you can't violate the trademark.  ***So that's the law that we're using to try to encourage them to give back***."[38]

---

[37]   In response to a cease and desist letter sent by WPE to Defendants, Defendants conspicuously changed the policy to: "The abbreviation 'WP' is not covered by the WordPress trademarks, but please don't use it in a way that confuses people."  *See* https://wordpressfoundation.org/trademark-policy/.

[38]   https://www.youtube.com/watch?v=H6F0PgMcKWM at 13:12.

65.     Mullenweg's speculation that WPE might retaliate against employees for supporting the WordPress ecosystem is not just false and wholly unsubstantiated—it is also absurd.  WPE's business **depends** on the WordPress ecosystem.  It would be nonsensical for WPE to retaliate against employees who support it; the entire company supports the WordPress ecosystem.

66.     Not satisfied with the harm he inflicted at WordCamp, Mullenweg expanded his smear campaign.  For example, on September 21, 2024, Mullenweg authored a post on wordpress.org entitled "WP Engine is not WordPress."  The post falsely states: "What WP Engine gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it" because WPE allegedly "disables revisions by default."   In truth, WPE's WordPress installations are identical to the wordpress.org ZIP file which defines WordPress.  His allegations that WPE "disables revisions by default" and therefore WPE is delivering a "cheap knock-off" are simply false, as Mullenweg would well know.  Disabling revisions is a built-in feature of WordPress and has been since before WPE was founded (a quick Google search returns about 140,000 articles discussing the practice).  The feature has been officially documented by WordPress and personally approved by Mullenweg, and limiting revisions is also a feature touted by Automattic's own product, JetPack.  Mullenweg then caused a post from his personal blog entitled "On WP Engine," containing these same false and disparaging statements, to be placed onto the WordPress admin dashboard, a part of every customer's WordPress installation, and displayed to most customers as they go about their daily business in WordPress, regardless of the host that they use, including WPE.

67.     Similarly, in another post on wordpress.org on September 25, 2024, Mullenweg wrote, "WP Engine is free to offer their hacked up, bastardized simulacra of WordPress's GPL code to their customers."[39]  This statement is false and defamatory.  WPE's services use the identical WordPress GPL code that is downloadable from wordpress.org.

68.     Mullenweg also has continued to repeat false and defamatory statements about WPE on his X account and to encourage customers to switch away from WPE.  He has even disparaged

---

[39]   https://wordpress.org/news/2024/09/wp-engine-banned/.

WPE as a "cancer" to WordPress—despite the countless contributions WPE has made to the WordPress community and the obvious harm such aspersions inflict upon WPE's business reputation.  Mullenweg's "nuclear war" against WPE for daring not to submit to Automattic's extortionate monetary demands has continued through this filing.

69.     Mullenweg made his false, misleading, and disparaging statements to key members of the WordPress and broader software and technology ecosystem, including WPE employees and customers at WordCamp US, and livestreamed them across the world via YouTube.  Among other things, Mullenweg's words and actions threaten to intentionally harm WPE's business and reputation within the WordPress community and beyond, and tortiously interfere with WPE's contractual relationships with its employees and customers.  Indeed, some WPE customers and community members have already expressed an intention to stop doing business with WPE due to Mullenweg's misconduct, as further detailed below.

70.     After WPE wrote to Automattic and Mullenweg highlighting their misrepresentations, Mullenweg's attacks continued unabated with blog posts, posts on X.com and Reddit, and appearances on multiple YouTube channels.

      **B.**     **Defendants' Blocking Access to wordpress.org**

71.     In another act of retaliation for WPE's refusal to hand over tens of millions of dollars to Automattic, on or about September 24, 2024, Mullenweg blocked WPE from updating the WordPress plugins that it publishes through wordpress.org.  By blocking access to wordpress.org, Defendants prevented WPE employees from accessing a host of functionality typically available to the WordPress community on wordpress.org, including, for example, the ability to submit and edit code contributions, participate in support forums designed to notify the community of issues, submit new versions of WPE-managed or WPE-led plugins, participate in WordPress development teams, interact with other WordPress community members through the WordPress Slack channel, and open or comment on support tickets.  This means that if WPE identified that one of the many plugins it created that are in use by millions of websites had a bug or a security issue, it would no longer be able to publish an update for that plugin on wordpress.org.

72.     At the same time, Mullenweg withdrew login credentials for individual employees at WPE, preventing them from logging into their personal accounts to access other wordpress.org resources, including the community Slack channels which are used to coordinate contributions to WordPress Core, the Trac system which allows contributors to propose work to do on WordPress, and the SubVersion system that manages code contributions.  These actions had the effect of halting the contributions that WPE makes to WordPress Core, and depriving many WPE employees of access to emerging information on the project—which could include security alerts or other threats to the normal functioning of customers' websites.

73.     On September 25, 2024, Mullenweg wrote a blog post on wordpress.org, stating "WP Engine is banned from WordPress.org."[40]  In the post, Mullenweg wrote that "pending their legal claims and litigation against WordPress.org, WP Engine no longer has free access to WordPress.org's resources."  The claim that Mullenweg terminated WPE's access to wordpress.org because WPE had filed a lawsuit against wordpress.org was false (there was no lawsuit at that time), but the post confirmed to WPE and the WordPress community that it had been Mullenweg who caused WPE's inability to update its plugins through his exercise of his self-described control over wordpress.org.

74.     As a result of this ban, WPE users were prevented from updating their plugins, accessing wordpress.org themes, and accessing other resources from wordpress.org.

75.     In a further escalation, on or about September 25, 2024, Mullenweg prevented WPE customers who host their WordPress installations on WPE servers from accessing wordpress.org resources through the WordPress administration panel.  This ban prevented WPE customers from downloading any of the 50,000+ WordPress themes and plugins from wordpress.org onto their sites, including themes and plugins developed by WPE.  As a result, WPE's customers were no longer able to install new plugins and themes from wordpress.org or update their existing plugins and themes to address bugs and security vulnerabilities.

---

[40]  https://wordpress.org/news/2024/09/wp-engine-banned/.

COMPLAINT

76.     On September 28, 2024, during a live streamed interview on YouTube which took place in San Francisco, Mullenweg publicly took credit for carrying out these retaliatory actions against WPE and its customers, and gave various spurious reasons for his actions.  Mullenweg publicly stated that he gave WPE advance warning that he was going to terminate WPE's access to wordpress.org.  That is false.  He gave no notice at all.  WPE discovered Defendants' misconduct when its engineers attempted to log into their Admin panel for wordpress.org on the morning of September 24 as usual, only to discover their accounts had been disabled.  In the same September 28, 2024 interview, Mullenweg was defiant and unremorseful for his wrongful acts, and even asked WPE to "please sue me."   In other posts on the social media platform X, Mullenweg seems to have justified his blocking of WPE from wordpress.org in part because of "Stripe issues" with WPE:



77.     While Mullenweg did not explain what he meant by the "Stripe issues," he appeared to be suggesting that WPE is modifying the way that a certain WordPress plugin called WooCommerce interacts with Stripe, an online credit card payment processor.  His accusation makes no sense.  The WooCommerce plugin adds functionality to WordPress that, among other things, allows users to sell products and services on their website and take payment for those sales.  WPE offers customers the ability to use alternative payment methods with the WooCommerce plugin, and a small segment of the WPE customer base has opted to use WPE's Stripe connection due to functionality that is not available in the Stripe connection utilized in the default WooCommerce plugin.  In an interview Mullenweg gave on YouTube, he stated that WP Engine

earns "tens of millions" of dollars annually from using WPE's Stripe connection. This is false. The commissions WPE receives from Stripe related to the WooCommerce plugin are currently less than $2,000 per month.

**C.**      **<u>Defendants Seek to Capitalize on the Chaos They Created</u>**

78.      The orchestrated campaign following WPE's refusal to cede to Defendants' demand for tens of millions of dollars was designed to sow fear and doubt in, among others, current and potential future customers of WPE. To try to directly capitalize on the chaos he caused, Mullenweg has used another company he owns, Pressable, which competes with WPE, to tell clients to breach their contracts with WPE and move to Pressable.

79.      Beginning with his September 20, 2024 keynote, Mullenweg urged WPE's customers to reconsider renewing their contracts with WPE, and pushed his own company: "Well, I hope that we can get every single WP Engine customer to watch this presentation. And that when their renewal time comes up, they think about that. And there's some really hungry other hosts. Those things are Blue Host Cloud, Pressable, etc., that would love to get that business."

80.      As of September 2024, the Pressable homepage tells WPE customers that Pressable will pay for the costs of breaching their current contracts with WPE:



COMPLAINT

81.   As of September 30, 2024, the wordpress.com homepage (also owned and controlled by Mullenweg) offers WPE customers one year of free hosting on their service:[41]



82.   As another example, Mullenweg urged WPE customers to use "any other web host in the world" besides WPE in a post on X.com dated September 24, 2024:

**D.    Amid Public Backlash, Defendants Attempt Damage Control—Only Digging a Deeper Hole For Themselves**

83.   As described in more detail below, Defendants' actions received wide-ranging criticism in the WordPress community.  For instance, WordPress community members published

---

[41]   https://wordpress.com/migrate-from-wp-engine/.

COMPLAINT

1    articles with titles such as, "Matt Mullenweg needs to step down from WordPress.org leadership

2    ASAP,"[42] a video titled "This might be the end of WordPress,"[43] and started community discussions

3    about the issue.[44]

4        84.    On September 27, 2024, in reaction to this public outcry, Mullenweg announced that

5    he was temporarily restoring access—but not permanently.  Instead, he made another threat—that

6    he would be blocking access again on October 1.[45]  He carried out that threat as well, blocking

7    WPE's access to wordpress.org again on October 1.

8        85.    As members of the WordPress ecosystem continued to criticize Defendants' actions,

9    Defendants went into damage control mode to attempt to characterize WPE as the sole target of their

10   imperious actions.  As one example, Mullenweg participated in an interview livestreamed on X.com

11   on September 27, 2024.  Far from assuaging public concerns, Mullenweg made various damning

12   admissions demonstrating his anticompetitive animus towards WPE, including by stating that

13   "every other web host in the world, we have no beef with, by the way, and [] none of them, all of

14   them can, their servers can access WordPress.org servers, WordPress works just fine on every other

15   web host in the world. This is very singular to WP Engine."

16       86.    On September 28, 2024, Mullenweg gave an interview to the author of the "This

17   might be the end of WordPress" video blog.  Among other statements, Mullenweg acknowledged

18   his retaliatory and vindictive intentions, saying: "They could make this all go away by doing a

19   license.  Interesting question is whether, now … you know, maybe more than 8% is what we would

---

[42]    https://notes.ghed.in/posts/2024/matt-mullenweg-wp-engine-debacle/.

[43]    https://www.youtube.com/watch?v=XoTToRfM3iA.  In a blog post on September 29, 2024, Mullenweg called this video "very harsh."  *See* https://ma.tt/2024/09/t3/.

[44]    *See, e.g.*,  https://www.reddit.com/r/Wordpress/comments/1fn3mjr/ matt_mullenweg_needs_to_step_down_from/.

[45]    https://wordpress.org/news/2024/09/wp-engine-reprieve/.

1    agree to now."[46]  Mullenweg also conceded that no one was currently paying an 8% license fee to

2    Automattic like he attempted to extort from WPE.

3          87.    Defendants have publicly stated that Automattic had been in discussions with WPE

4    concerning their purported claim that WPE was infringing their trademarks for approximately 18

5    months leading up to their extortive demands in mid-September 2024.   That is false.  Rather, earlier

6    in 2024, Automattic had proposed that WPE participate in a WooCommerce "Hosting Partner

7    Program," which would have involved WPE collaborating to advance WooCommerce as the leading

8    e-commerce engine for the WordPress ecosystem; Automattic's proposal referenced the inclusion

9    of a trademark license (which WPE did not need under governing trademark law), but made no

10    accusations that WPE was violating any trademarks.  Nor did Defendants ask WPE to make any

11    changes to its references to WordPress or WooCommerce on its website.  In any event, Automattic

12    unilaterally shut down those discussions in August 2024 without an agreement, informing WPE that

13    Automattic was "reassessing how we will deal with WP Engine."   Thereafter, WPE received no

14    further communications from Defendants concerning trademarks until the above-referenced

15    extortion demand in mid-September, 2024.

16          88.    WPE later learned that in July 2024, Automattic had filed new trademark registration

17    applications, seeking registration for the first time of phrases commonly used in the WordPress

18    ecosystem such as "Managed WordPress" and "Hosted WordPress."

19        **E.**    **Undeterred, Defendants Expand Their Extortive Efforts to Threaten WPE's**
                 **CEO**

20
21          89.    Defendants' extortion campaign included levying personal attacks against the CEO

22    of WPE for not capitulating to his demands.  For instance, on September 26, 2024, Mullenweg gave

23    an interview on the X platform during which he gave the CEO's personal cell phone number to the

       interviewer and encouraged him to contact her.  She was in fact contacted by the interviewer.

24
25
26
27

28    ———————————
       [46]  https://www.youtube.com/watch?v=OUJgahHjAKU/.

90.     Defendants' attacks against WPE's CEO have also continued in private.  First, on September 28, 2024, Mullenweg attempted to poach her to come and work for Automattic, and falsely suggested that WPE's investor was making her do something she did not want to do:



91.     After WPE's CEO did not immediately respond, Mullenweg threatened her the following day.  Specifically, on September 29, 2024 Mullenweg gave her until midnight that day to "accept" his job "offer" with Automattic.  If she did not accede to his demand, Mullenweg threatened to tell the press, and WPE's investor, that she had interviewed with Automattic:

COMPLAINT



92.     Mullenweg's premise was false, as WPE's CEO had never interviewed with or negotiated a job offer with Automattic.  To the contrary, back in 2022 Automattic had asked if she would be interested in running wordpress.com, but she politely declined.

93.     WPE's CEO did not respond to Mullenweg's September 29 threat.

**F.      Mullenweg Represents That Automattic Might Seek To Acquire WPE For a Discount**

94.     In a recent interview, Mullenweg stated that his demand that WPE pay him 8% of its revenue to license the trademarks that Automattic purports to control is "not on the table anymore . . . *[he's] seeking more*."[47]  Mullenweg boasted that he might "*tak[e] over*" WPE, not just seek a licensing fee.  Mullenweg promised in the interview that "his public attacks would continue."  In a social media post on the platform X, he boasted that as a result of his actions, WPE is now a "distressed asset," worth just a "fraction" of what it was before, because "[c]ustomers are leaving in droves" – calling into question whether Defendants' motivations extend beyond mere

---

[47]     https://www.therepository.email/mullenweg-threatens-corporate-takeover-of-wp-engine (emphasis added).

COMPLAINT

interference and extortion, and are in fact a thinly disguised attempt to artificially drive down WPE's valuation in hopes of acquiring it on the cheap:



## VI.   WPE is Harmed by Defendants' Actions

95.   As a result of Defendants' actions, WPE and its customers have been harmed in multiple ways.

96.   For example, because of Defendants' wrongful blocking of WPE, its employees, and customers from functionality on wordpress.org, including the WordPress Plugin Directory, WPE, its employees, and customers no longer have the ability to perform many formerly routine tasks, such as submit support tickets, service, update, or fix any WordPress plugins, or publish those updated plugins on wordpress.org.   Because WPE has effectively lost control of its ability to maintain its code on wordpress.org, users and customers of WPE will have outdated and/or potentially vulnerable WPE plugins.   The users of these plugins are subject to increased risk the longer the plugins are not updated or patched to correct for any reported vulnerabilities, causing harm to both WPE's brand and reputation, and its relationships with its customers.   Defendants' actions have also harmed WPE by exposing it to potential legal risk and liability from some of the

affected plugins' users and customers for at least the same reasons.  WPE also has had to invest significant efforts and resources in an attempt to mitigate the harmful consequences of Defendants' actions.

97.     WPE customers have posted online about their frustrations with WPE's inability to update its plugins or connect to wordpress.org, harming WPE's reputation as a reliable host of sites built on WordPress.

98.     For example, a September 25, 2024 post from a customer on X.com states: "Not being able to do @WordPress updates because of the @photomatt/@wpengine fight is infuriating. For a small nonprofit, being caught in the middle of this could be costly if we need to migrate our sites to a new host. That money/time should be used for our mission."



99.     In addition, as a result of Defendants' actions, various customers have posted on social media or reached out to WPE directly to communicate that they plan to end their relationships with WPE and switch to a different provider.

100.     For example, in a post dated September 22, 2024 from X.com, a WPE customer states that due to Mullenweg's blog post about WPE, he has decided to remove WPE from his company's hosting lists:

COMPLAINT



101.    A post dated September 24, 2024 from X.com shows a WPE customer planning not to renew his contract with WPE:



102.    In yet another post on the same date on X.com, a WPE customer proclaims: "Looks like we'll [sic] moving our sites off ASAP!":



103.    In an email from September 25, 2024, a WPE customer tells a WPE account representative, "If we can't get a solid answer or plan we will have to consider moving our business and sites away from WPEngine":

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> From:
> Date: Wed, Sep 25, 2024 at 5:42 PM
> Subject: Re: Account questions / ASAP
> To:
> CC:
>
> Hi  .
> As you are aware there is a serious problem present between WPEngibe and WordPress.    can't access wordpress to update our
> plug-ins on your server. We are limited in what we can do for our clients. If we have an outage we are screwed. Do we have any idea
> of when this will be resolved?
> If we can't get a solid answer or plan we will have to consider moving our business and sites away from WPEngine.
>
> What are you being told? What is the plan?

104.   In a private message to WPE's X.com account, a WPE customer stated that due to Mullenweg's act of blocking plugin updates on WPE sites, the customer is "going to move our WPE server to Kinsta," another WPE competitor:

> If you can't solve your differences with Automattic and Matt Mullenweg we're going to move our WPE server to Kinsta. The plugin and theme updates block is utterly ridiculous. I just sent Matt a DM asking him to reverse their move…I hope it helps. This is going to put our client sites in jeopardy and expose Automattic and likely WPE to a class-action lawsuit. I mean, plugin updates are daily. Vulnerabilities appear weekly. This is really really bad.
>
> 4 minutes ago

105.   In a series of posts on Reddit from September 25, 2024, users expressed their frustration about having to manually update their site plugins due to Mullenweg's actions:[48]

> 4d ago •
>
> Realizing that we have to update core and plugins 50+ sites manually at the end of the month now is very very frustrating. As a smaller agency, we were already experiencing capacity struggles.
>
> ⊖  ⇧ 14 ⇩  ⬚ Reply  ⚙ Award  ↪ Share  ⋯
>
> 4d ago •
>
> as someone who works for an agency with 300 sites just on wpengine, I am livid with Matt at the moment.
>
> ⊖  ⇧ 9 ⇩  ⬚ Reply  ⚙ Award  ↪ Share  ⋯
>
> • 3d ago •
>
> Oh god my condolences. I run the web team at a much smaller agency, I can only imagine
>
> ⇧ 3 ⇩  ⬚ Reply  ⚙ Award  ↪ Share  ⋯

---

[48]  https://www.reddit.com/r/Wordpress/comments/1fpst5p/
wpengine_matt_automattic_wordpressorg_megathread/.

106.    In another series of posts on Reddit from September 26, 2024, customers stated that they are "[a]lready underway" in leaving WPE:



107.    As a result of Defendants blocking WPE access to wordpress.org, WPE has been forced to expend significant resources to find workarounds needed to service WPE's customers and update its plugins.  WPE sales staff has been inundated with queries from their customers and accounts, forcing WPE to divert staff to focus on helping existing customers as opposed to working with new ones, resulting in a loss of new revenue.  And overtime for WPE support professionals has increased significantly to deal with the much higher rates of customer inquiries due to Defendants' wrongful actions.

108.    In addition, many of WPE's users and customers have long considered WPE as the most trusted WordPress platform with unmatched performance and support.  Defendants' actions threaten the trust WPE has built with thousands of customers over more than a decade.

## VII.    The Entire WordPress Community is Harmed by Defendants' Actions

109.    Not only have WPE and its customers been harmed by Automattic and Mullenweg's actions, so has the entire WordPress community.  As described above, WordPress has long prided

itself in building a community around principals of "freedom" and "openness" with the express promise that anyone in the world is able to contribute to be part of the WordPress ecosystem. As a result of these promises, tens of millions of users have decided to use WordPress as their preferred content management tool and publishing platform on the Internet. Over 43% of websites are built on WordPress.

110. Importantly, hundreds of companies (such as WPE) have built their businesses to support the millions of WordPress users. These companies help WordPress users around the world host their websites, build additional functionality (*e.g.*, plugins, themes), and provide customer support. These companies also give back to the WordPress community by making their enhancements to WordPress available to all users around the globe via a permissive GPL license. Companies in the WordPress ecosystem have invested billions of dollars and millions of hours making WordPress a better experience for the entire WordPress community. Moreover, the evangelism and marketing these companies provided has yielded incalculable value, allowing WordPress to establish the recognition, presence, and credibility that have historically been beyond the size of any one business or the reach of individual enthusiasts.

111. This symbiotic relationship between WordPress, its community, and its business ecosystem only works because of the promises of openness and freedom that WordPress has made in the past. Businesses are willing to commit so much money, time, and resources to developing WordPress in large part because they have the trust that the community will be "open" to them. Without that trust, investment in the ecosystem will certainly decline. Reasonable businesses may choose to build on platforms that do not have vindictive leaders who are willing to go "nuclear" and destroy their businesses, or worse yet, extort them for money. In the days following Defendants' actions, businesses have already questioned their choice of WordPress, noting the harm Defendants are causing volunteer-driven nonprofits, "local mom and pop" businesses, hobbyists, fire and police stations, and schools:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



-43-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This is an absolutely disgusting move from @WordPress

So in order to maintain continuity for clients, I need to eat the time sent on manual updates or migrate away from an excellent hosting provider.

Not good enough. I stand with @wpengine

> · 16h
>
> I want to share: WordPress.org has blocked @wpengine customers from updating and installing plugins and themes via WP Admin—disrupting essential work for #WordPress users, agencies, freelancers, and plugin developers.
>
> ...
> Show more

Last edited 1:42 AM · Sep 26, 2024 · **153** Views

> · Sep 25                                                                        ...
>
> You know who is about to get screwed big time. Small hobbiests, small nonprofits who have absolutely no idea WTF is going on between Automattic and WP Engine.
>
> ◯ 10          ↻ 16          ♡ 132          �_ı_ıl 4.9K          ⊓    ⬆

> 19h                                                                              ...
>
> And they should relax and not worry! The only questions that WP Developers and involved businesses should ask is: Am I making millions from WordPress? No? I am good! Yes, I make millions out of WP? Then I should start to contribute appropriate amount of time :) That simple.
>
> ◯ 3          ↻          ♡          ılı 49          ⊓    ⬆

>                                                                                  ...

Not that simple if you can't access something on your website and you're a local mom and pop or volunteer driven non-profit this happened without warning and they don't necessarily know what to do. It takes time to figure it out time is a very valuable and limited commodity

4:29 PM · Sep 26, 2024 · **27** Views

◯          ↻          ♡ 4          ⊓          ⬆



We are in the same boat. We host websites for schools, nonprofits and mostly rural police and fire departments. We have been working with WP engine for seven years and our margins are not big enough to afford to hire in all of the technical services that WP engine provides as part of its hosting package.

7:11 AM · Sep 26, 2024 · **51** Views

112.   Defendants' actions must be stopped, and the harm to WPE must be remedied.

**CLAIMS FOR RELIEF**

**<u>FIRST CLAIM FOR RELIEF</u>**

**(Intentional Interference with Contractual Relations)**

**(against All Defendants)**

113.   WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

114.   As herein alleged, Defendants have intentionally interfered with the contracts between WPE and its customers for the provision of WPE's products and services.

115.   Defendants have known of these contracts.

116.   Defendants have intended to disrupt the performance of those contracts.

117.   Defendants' conduct has prevented and will prevent performance, has made and will make performance more expensive or difficult, and has caused customers to terminate their contracts.

118.   WPE has been and will be harmed.

119.   Defendants' conduct has been and will be a substantial factor in causing WPE's harm.

**SECOND CLAIM FOR RELIEF**

**(Intentional Interference with Prospective Economic Relations)**

**(against all Defendants)**

120.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

121.    As herein alleged, Defendants have intentionally interfered with prospective economic relationships between WPE and its past and current customers with the option to renew or create new contracts with WPE, as well as future customers.  WPE has received numerous messages specifically tying decisions to leave, not renew, or not engage to the problems created by the events described herein.

122.    WPE and the customers mentioned in the previous paragraph have had economic relationships that likely would have resulted in an economic benefit to WPE.

123.    Under those relationships, WPE likely would have been entitled to provide its products and services for each potential client.  In exchange, WPE would have been paid the fees it charges for such products and services.

124.    Defendants have known of these relationships and prospective relationships.

125.    Defendants have intended to disrupt those relationships and prospective relationships.

126.    Defendants have engaged in wrongful conduct, including, but not limited to, their violations of  Section 17200 of the California Business and Professions code and their wrongful and ongoing attempts to extort WPE.

127.    Defendants' conduct has disrupted and will disrupt those relationships.

128.    WPE has been and will be harmed.

129.    Defendants' wrongful conduct has been and will be a substantial factor in causing WPE's harm.

**THIRD CLAIM FOR RELIEF**

**(Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*)**

**(against All Defendants)**

130.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

131.    As alleged herein, WPE operates a WordPress computer hosting service that accesses wordpress.org systems.   These computers include "protected computers" used in or affecting interstate or foreign commerce or communication, such as through the Internet, and are designed to be accessed, and are accessed, by users around the world.

132.    Through the acts set forth herein, Defendants caused "damage" to "protected computers" as those terms are used in 18 U.S.C. § 1030, including through Defendants' acts to interfere with the normal operation of WPE's systems, by blocking and interfering with access to wordpress.org's systems.

133.    As alleged herein, Defendants threatened WPE with "war" if it did not agree to pay a significant percentage of its gross revenues to Automattic.   These threats were communicated through text messages, calls, emails, and other communications using the Internet.

134.    After WPE refused to accede to Defendants' attempts to extort money from WPE, Defendants caused damage to WPE's computer hosting service and its access to wordpress.org's systems by impairing the integrity and availability of data, programs, systems and information therein.

135.    Defendants' threats to cause damage to these computer systems, and actual damage thereto, were made with the intent to extort money from WPE, and transmitted in interstate or foreign commerce.   The damage was caused to facilitate the extortion.

136.    Because of Defendants' actions, WPE was and continues to be irreparably harmed and its damages, incurred over a period of less than one year, exceed $5,000.

137.    Defendants' actions violate at least 18 U.S.C. § 1030(a)(7).

138.    WPE's remedy at law is not by itself sufficient to compensate WPE for all the irreparable injuries inflicted and threatened by Defendants.  WPE is therefore entitled to a temporary

restraining order, a preliminary injunction, and a permanent injunction to prohibit Defendants from continuing their unlawful actions.

139.    In addition to equitable relief, WPE demands monetary damages, fees and costs, as allowed.

**FOURTH CLAIM FOR RELIEF**

**(Attempted Extortion)**

**(against All Defendants)**

140.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

141.    Around September 17 to September 20, 2024, Defendants, with intent to extort money from WPE, made a series of threats that Automattic would wage a "war" against WPE by spreading disparaging statements about WPE and banning WPE from the WordPress community unless it agrees to pay Automattic tens of millions of dollars on an ongoing basis for a license to use certain WORDPRESS, WOOCOMMERCE, and WOO trademarks.

142.    As herein alleged, these threats were made on phone calls by Automattic CFO Mark Davis, and by text messages, phone calls, and emails from Mullenweg from September 17 to September 20, 2024.

143.    Defendants also carried out these threats by (1) spreading false and disparaging statements about WPE and its investors at the September 20, 2024 keynote; (2) denying WPE and its customers and users access to wordpress.org; (3) blocking WPE from updating its plugins on wordpress.org; (4) terminating WPE employees' wordpress.org accounts and blocking them from the contributor Slack channel.

144.    Defendants knew that their demand for a trademark license is meritless because WPE needs no such license.

145.    WPE has been injured in numerous ways as a result of Defendants' ongoing extortion, including, but not limited to, measures taken to respond to the extortionate threats, loss and continuing loss of customers, and injury to its goodwill and reputation.  WPE is entitled to

monetary damages as allowed and injunctive relief to prohibit Defendants from continuing their unlawful actions.

**FIFTH CLAIM FOR RELIEF**

**(Unfair Competition, Cal. Bus. Prof. Code § 17200, *et seq.*)**

**(against All Defendants)**

146.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

147.    California's Unfair Competition Law ("UCL") prohibits any business practice that is "unlawful," "unfair," or "fraudulent."  Cal. Bus. & Prof. Code § 17200.

148.    WPE has standing under the UCL as it has been deprived of money and/or property sufficient to qualify as injury in fact, such economic injury being the direct result of Defendants' unfair business practices described herein.

149.    UCL § 17203 provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."

150.    WPE seeks injunctive relief under § 17203 enjoining Defendants from ongoing extortive, anticompetitive and otherwise unlawful, unfair and fraudulent business practices.  Such conduct is an actual and imminent threat to WPE, including, but not limited to, lost business, lost goodwill, and reputational harm.  Unless Defendants are restrained by a preliminary and permanent injunction, WPE will suffer severe, irreparable harm in that it will be forced to terminate or breach contracts with its clients.  WPE is informed and believes, and on that basis alleges, that unless the court grants injunctive relief, Defendants will continue to restrict WPE's access to the WordPress platform.

151.    Defendants' threats and attempts to extort payment, by threatening and now carrying out threats to ruin WPE's business are plainly illegal under the California Penal Code and under the Computer Fraud and Abuse Act.  It is well-established that such extortion is a predicate unlawful act under the UCL.  Defendants have been unambiguous regarding their intent to extort WPE, have made good on their threats, and appear intent to try to ruin WPE's business in short order, unless they are enjoined by this Court from doing so.

152.     Indeed, Defendants' attempts to exclude WPE from the WordPress market are blatantly motivated by anticompetitive animus—an attempt to use their monopoly power over the WordPress platform to ruin a competitor—and axiomatically "unfair" under the UCL.  WPE has no adequate remedy at law because monetary damages will not afford adequate relief for the loss of its business relationships, client goodwill, and ability to continue operating.

153.     Defendants' unlawful and unfair business practices not only harm WPE and its employees, but also threaten the entire WordPress community.  WPE thus brings this claim to remedy an important right affecting the public interest and seeks to confer on the public a significant benefit.  Pursuant to Code of Civil Procedure section 1021.5, WPE seeks and should be awarded, in addition to all other remedies, prevailing party attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**(Promissory Estoppel)**

**(against All Defendants)**

154.     WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

155.     Over the last several decades, Defendants have made clear and unambiguous promises to the WordPress plugin developer community regarding the openness and accessibility of the WordPress platform.

156.     Even apart from these broad promises of openness, accessibility, and freedom, Defendants make even more specific promises to software developers who Defendants encourage to develop on the WordPress platform.  Defendants have made promises on the wordpress.org website and elsewhere that WordPress will forever be an open platform that encourages third-party developers to build WordPress plugins and themes to enhance the functionality of WordPress. WPE's reliance on those promises has been both reasonable and foreseeable.

157.     In reliance on these clear and unambiguous promises, WPE has built a substantial business over the last decade, including substantial customer relationships, premised on the fact that WordPress was and would always remain open and accessible to all.  WPE has committed hundreds

of thousands of engineering hours and tens of millions of dollars to develop its software on the WordPress platform and contributing to the WordPress community.  As a result of its work, WPE has built a business servicing tens of thousands of individuals and companies.

158.    WPE has been injured and continues to be injured in reliance on the promises made by Defendants.  WPE has been injured in numerous other ways, including, but not limited to, injury to its goodwill and reputational harm, as the result of Defendants' failure to abide by their promises.

**SEVENTH CLAIM FOR RELIEF**

**(Declaratory Judgment of Non-Infringement)**

**(against Automattic)**

159.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

160.    Automattic has engaged in conduct that gives rise to a real and reasonable apprehension on the part of WPE that it will face an action for injunctive relief and/or damages for trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and/or common law, if WPE continues its activities, including maintaining its website, its advertising, promotion, and sale of goods and services while making reference to the Challenged Terms.  *See* Exhibit A ("Your unauthorized use of our Client's trademarks infringes their rights ….").

161.    WPE seeks a declaration of non-infringement with respect to its use of the Challenged Terms so that it can proceed with its business plans without the continuing risk of suit by Automattic.  There is a substantial controversy between WPE and Automattic with respect to WPE's use of its Challenged Terms.  The parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

162.    WPE's use of the Challenged Terms does not infringe any  registered marks, or any other federal, state or common law trademark rights that Automattic has accused WPE of infringing, including because WPE's uses of the Challenged Terms are nominative uses to refer to the WordPress open source software and/or the open source WooCommerce software which WPE's customers use in connection with their websites.  WPE had no intent to confuse the buying public,

as it uses the Challenged Terms in good faith in order to refer to the WordPress open source software and/or the WooCommerce software that its customers' websites use.

163.   Automattic may not enforce any rights in the Challenged Terms on grounds of trademark misuse, as it is attempting to leverage trademark law for anticompetitive purposes. Automattic's 14 years of knowing acquiescence and inaction further belie that it has any legitimate infringement claim.

164.   Automattic is not the registered owner of the marks in question, and lacks standing to enforce the Challenged Terms.  The WordPress Foundation's website claims it is the rightful owner of the WordPress trademark and oversees its enforcement, has represented to the IRS that it is "responsible for protecting the WORDPRESS, WORDCAMP, and related trademarks," and Mullenweg has stated that the very reason that he created the WordPress Foundation was to ensure that it would hold the trademarks "for the free access for the world."

165.   WPE's use of the Challenged Terms is protected by at least the doctrines of laches, estoppel, unclean hands, implied license, acquiescence and trademark misuse, as well as fair use.

166.   Automattic has no valid, enforceable trademark rights that have been infringed by WPE.

167.   To resolve the legal and factual questions and afford relief from the uncertainty and controversy raised by Automattic's communications alleging trademark infringement, WPE is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-2202, *i.e.*, a declaration that the Challenged Terms do not infringe any valid trademark rights asserted by Automattic (to the extent that any exist).

### EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment of Non-Dilution)

### (against Automattic)

168.   WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

169.   Automattic has engaged in conduct that gives rise to a real and reasonable apprehension on the part of WPE that it will face an action for injunctive relief and/or damages for

trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), if WPE continues its activities, including maintaining its website, its advertising, promotion, and sale of goods and services while making reference to the Challenged Terms.  *See* <u>Exhibit A</u> ("Your unauthorized use of our Client's trademarks . . . dilutes their famous and well-known marks.").

170.    WPE seeks a declaration of non-dilution with respect to its use of the Challenged Terms so that it can proceed with its business plans without the continuing risk of suit by Automattic. There is a substantial controversy between WPE and Automattic with respect to WPE's use of the Challenged Terms.  The parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

171.    The registered marks, or any other federal, state or common law trademark rights Automattic accuses WPE of diluting, are not "famous" under 15 U.S.C. § 1125(c)(2), including because they are not widely recognized by the general consuming public of the United States as a designation of source of the goods or services of Defendants.

172.    To the extent that any of the registered marks, or any other federal, state or common law trademark rights Automattic asserts, is famous, WPE's use of such a mark commenced before that mark became famous.

173.    WPE's use of the Challenged Terms is not likely to dilute by blurring or dilute by tarnishment any registered marks, or any other federal, state or common law trademark rights Automattic claims.

174.    Automattic may not enforce any rights in the Challenged Terms on grounds of trademark misuse, as it is attempting to leverage trademark law for anticompetitive purposes. Automattic's 14 years of knowing acquiescence and inaction further belie that Automattic has any legitimate dilution claim.

175.    Automattic lacks standing to enforce the Challenged Terms.  The WordPress Foundation's website claims it is the rightful owner of the WordPress trademark and oversees its enforcement, has represented to the IRS that it is "responsible for protecting the WORDPRESS, WORDCAMP, and related trademarks," and Mullenweg has stated that the very reason that he

created the WordPress Foundation was to ensure that it would hold the trademarks "for the free access for the world."

176.    WPE's use of the Challenged Terms is protected by at least the doctrines of laches, estoppel, unclean hands, implied license, acquiescence and trademark misuse, as well as fair use.

177.    Automattic has no valid, enforceable trademark rights that have been diluted by WPE.

178.    To resolve the legal and factual questions and afford relief from the uncertainty and controversy raised by Automattic's communications asserting trademark dilution, WPE is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-2202, *i.e.*, a declaration that the Challenged Terms do not dilute any valid trademark rights asserted by Automattic (to the extent that any exist).

**NINTH CLAIM FOR RELIEF**

**(Libel)**

**(against All Defendants)**

179.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

180.    On or about September 21, 2024, Mullenweg, on behalf of Automattic, posted the following statement on the publicly accessible website wordpress.org: "What WP Engine gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it."

181.    On or about September 25, 2024, Mullenweg, on behalf of Automattic, also posted the following statement on wordpress.org: "WP Engine is free to offer their hacked up, bastardized simulacra of WordPress's GPL code to their customers, and they can experience WordPress as WP Engine envisions it, with them getting all of the profits and providing all of the services."

182.    These statements were false and defamed WPE itself—not solely disparaging its products.  WPE's WordPress installations are identical to the wordpress.org ZIP file that defines WordPress, and WPE's services use the identical WordPress GPL code that everyone else does. Thus, WPE is not engaged in misleading and deceiving customers and consumers, as Mullenweg

and Automattic asserted, by delivering "something that they've chopped up, hacked, butchered to look like WordPress" but "is not WordPress." And, contrary to Defendants' statements, WPE is not a company that deals in "cheap knock off[s]" or a "bastardized simulacra of WordPress's GPL code."

183.    Mullenweg has publicly stated that others at Automattic review Mullenweg's public statements before he makes them.

184.    At the time Mullenweg and Automattic made these statements, they knew these statements were false or at the very least entertained serious doubts as to their truth. Indeed, Mullenweg and Automattic knew that (i) WPE's WordPress installations are identical to the wordpress.org ZIP file which defines WordPress and (ii) WPE's services use the identical WordPress GPL code that everyone else does. Mullenweg and Automattic also knew WPE is not misleading and deceiving its customers and consumers by delivering "something that [WPE] chopped up, hacked, butchered to look like WordPress" but "is not WordPress." Further, Mullenweg and Automattic knew WPE is not a company that deals in "cheap knock off[s]" or a "bastardized simulacra of WordPress's GPL code."

185.    WPE's business includes selling a platform specifically for websites that use WordPress; WPE is a business within the WordPress community; WPE advertises itself as "[t]he most trusted platform for WordPress"; and WPE advertises its product as "[b]uilt purely for WordPress." Thus, Defendants' statements had a tendency to injure WPE in its occupation. Similarly, they exposed WPE to contempt, ridicule, and obloquy in the WordPress community and caused it to be shunned and avoided in the same. These statements also had natural tendency to cause special damage to WPE and constitute defamation per se.

186.    Indeed, these statements were intended to have such effects, and Defendants' posts indicate as much. As one of the founders of the WordPress open source project, Mullenweg has a large following and audience. Defendants understood and were aware of the impact that their statements and actions would have, and have had, on the WordPress community and WPE's customers. Defendants' statements and actions were deliberate and calculated to have the aforementioned effects.

187.    As a proximate result of these publications, (a) WPE has suffered general damages, including reputational damage, and (b) WPE has incurred various special damages, including, but not limited to, lost customers as well as resources and expenses incurred in efforts to remedy Defendants' false statements and their effects.

**TENTH CLAIM FOR RELIEF**

**(Trade Libel)**

**(against All Defendants)**

188.    WPE repeats and realleges each and every allegation of this Complaint as if fully set forth herein.

189.    On or about September 21, 2024, Mullenweg, on behalf of Automattic, posted the following statement on the publicly accessible website wordpress.org: "What WP Engine gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it."

190.    On or about September 25, 2024, Mullenweg, on behalf of Automattic, also posted the following statement on wordpress.org: "WP Engine is free to offer their hacked up, bastardized simulacra of WordPress's GPL code to their customers, and they can experience WordPress as WP Engine envisions it, with them getting all of the profits and providing all of the services."

191.    These statements were false.  In truth, WPE's WordPress installations are identical to the wordpress.org ZIP file which defines WordPress, and WPE's services use the identical WordPress GPL code that everyone else does.  WPE's product is not "chopped up, hacked, butchered to look like WordPress."  Nor is WPE's product "a cheap knock off" or a "bastardized simulacra of WordPress's GPL code."

192.    These statements disparaged the quality of WPE's product for hosting WordPress websites and constitute defamation per se.

193.    Mullenweg has publicly stated that others at Automattic review Mullenweg's public statements before he makes them.

194.    These statements played a material and substantial part in inducing specific existing WPE customers to stop purchasing WPE's platform for WordPress websites.  Similarly, these

1  statements played a material and substantial part in inducing specific WPE customers that otherwise

2  would have purchased WPE's platform not to do so.

3        195.   Indeed, these statements were intended to have such effects, and Defendants' posts

4  indicate as much.  In Defendants' September 21, 2024 post, Defendants also stated "as you vote

5  with your dollars, consider literally any other WordPress host…."  And, in Defendants' September

6  25, 2024 post, Defendants added that "[i]f you want to experience WordPress, use any other host in

7  the world besides WP Engine."

8        196.   As a proximate result of these publications, WPE has suffered various special

9  damages, including, but not limited to, lost customers as well as resources and expenses incurred in

10  efforts to remedy these misstatements in the public eye.

11                                     **ELEVENTH CLAIM FOR RELIEF**

12                                                  **(Slander)**

13                                          **(against All Defendants)**

14        197.   WPE repeats and realleges each and every allegation of this Complaint as if fully set

15  forth herein.

16        198.   On or about September 20, 2024, Matt Mullenweg, on behalf of Automattic, gave a

17  keynote address at the WordCamp US Convention to hundreds of attendees from the WordPress

18  community.  The keynote address was simultaneously livestreamed to countless others in the

19  WordPress community via YouTube.

20        199.   In the address, Mullenweg stated that WPE was one of a number of "parasitic

21  entities" who "just want to feed off" WordPress "without giving anything back."  Mullenweg also

22  stated, with respect to WPE, that it aims to "squeeze every last bit out of the business and for open

23  source communities, it can be fatal."

24        200.   Similarly, in a September 26, 2024 interview, Mullenweg, on behalf of Automattic,

25  stated with regard to WPE: "they've built a half a billion dollar business, they've given nothing back

26  to WordPress, they were contributing 40 hours per week. So call that 100 grand per year. They

27  sponsored WordCamp for 75 grand, we allowed them to be a top sponsor, by the way, lots of people

28  want those spots."

201.    The statement that WPE "feed[s] off" WordPress "without giving anything back" was false.  Additionally, the statement that WPE was only contributing "40 hours per week" and "75 grand" was false.  In reality, WPE's contributions back to WordPress far exceed this: WPE has bet its entire business on WordPress and has been deeply dedicated to advancing the use and adoption of WordPress through innovation, investment, and active community involvement. WPE has contributed tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources, including sponsorship of WordCamps worldwide and producing DE{CODE}; educating and empowering the WordPress community through content like the WordPress Roundup and the Building WordPress series; hosting, funding and actively maintaining multiple open source projects (*e.g.*, ACF, Genesis, WPGraphQL, faust.js) within the ecosystem used by millions of websites around the world; providing free developer tools such as Local (with more than 100,000 monthly active users) and sponsoring development of WP-CLI, a command line interface for WordPress; and producing informative webinars, podcasts, and tutorials.

202.    Mullenweg has publicly stated that others at Automattic review Mullenweg's public statements before he makes them.

203.    At the time Mullenweg and Automattic made these statements, they knew they were false or at the very least entertained serious doubts as to their truth.  Mullenweg and Automattic knew about WPE's innovation, investment, and active community involvement described above.

204.    Indeed, days after Mullenweg stated that WPE was one of a number of "parasitic entities" who "just want to feed off" WordPress "without giving anything back," Mullenweg admitted his prior statements were false and that he knew they were false.  On a livestreamed interview posted to YouTube on September 29, 2024, Mullenweg admitted that "everyone who uses WordPress or tells their friend about it is contributing in some ways.  If you just have a WordPress site and you tell your friend, hey, I like WordPress, awesome. You just contributed." And Mullenweg continued, "I will say that if you want me to give [WPE] credit, sure, I'll give them credit. So they have gotten 1.5 million websites to pay them to host WordPress. Awesome, like

kudos." Additionally, Mullenweg admitted that WPE's act of "betting [its] billion dollar business entirely on WordPress" was a form of giving back and thanked WPE multiple times for doing so.

205.    Furthermore, according to the "Become a WordPress Contributor" article on Mullenweg's wordpress.org website, contributions to WordPress come in many shapes and sizes including creating and supporting themes and plugins: "The WordPress Community exists because everyone takes part in some way, by giving their time, energy, and sometimes even money, because they believe in the valuable services WordPress provides. . . . It takes a lot of time and energy to create and then support Themes and Plugins, keeping them updated as WordPress changes and bugs are found . . . . The more the WordPress Community supports the programmers, developers, testers, and challengers, the stronger and better WordPress becomes. . . . Just remember, every contribution counts, no matter what it looks like." At the time Defendants made the above false statements, they knew that WPE created and supported themes and plugins.

206.    Mullenweg and Automattic's statements tended directly to injure WPE in respect of its business by (a) imputing to it a general disqualification in those respects which its occupation peculiarly requires and (b) imputing something with reference to WPE's business that has a natural tendency to harm its profits. These statements constitute defamation per se.

207.    Indeed, WPE's business includes selling a platform specifically for websites that use WordPress, which is open source, and WPE advertises itself as "[t]he most trusted platform for WordPress" and its product as "[b]uilt purely for WordPress." Defendants' statements that WPE aims to "squeeze every last bit out of the business and for open-source communities, it can be fatal," and "it's not great for consumers often when you do that" communicates to listeners (a) that WPE is harming WordPress, which its products specifically aim to support, and (b) that WPE is also harming its customers.

208.    As a proximate result of these publications, WPE has suffered general damages in the form of reputational damage and incurred various special damages, including, but not limited to, lost customers as well as resources and expenses incurred in efforts to remedy these misstatements in the public eye.

## PRAYER FOR RELIEF

WHEREFORE, WPE prays for judgment as follows:

1.  A judgment in favor of Plaintiff that Defendants have intentionally interfered with the contractual relations of Plaintiff;

2.  A judgment in favor of Plaintiff that Defendants have intentionally interfered with the prospective economic relations of Plaintiff;

3.  A judgment in favor of Plaintiff that Defendants have violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

4.  A judgment in favor of Plaintiff that Defendants have attempted to extort Plaintiff;

5.  A judgment in favor of Plaintiff that Defendants have violated Cal. Bus. Prof. Code § 17200, *et seq.*

6.  A judgment in favor of Plaintiff that Defendants are estopped under the doctrine of promissory estoppel;

7.  A judgment declaring that Plaintiff does not infringe or dilute any enforceable, valid trademark rights owned by the Defendants;

8.  A judgment in favor of Plaintiff that Defendants have libeled and/or trade libeled Plaintiff;

9.  A judgment in favor of Plaintiff that Defendants have slandered Plaintiff;

10. A finding that WPE has remedied an important right affecting the public interest and is entitled to attorney fees under California Code of Civil Procedure section 1021.5;

11. A finding that this case is "exceptional" within the meaning of 15 U.S.C. § 1117 and a corresponding award of attorneys' fees in Plaintiff's favor;

12. Compensatory damages in an amount to be proven at trial;

13. Exemplary and punitive damages in an amount to be proven at trial;

14. An award of Plaintiff's fees and costs in this action;

15. Pre-and post-judgment interest for Plaintiff's costs and fees as available under law;

16. Injunctive relief; and

17.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, WPE hereby demands a jury trial on all issues so triable.

DATED:  October 2, 2024                          QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP


By _Rachel Herrick Kassabian_____
   Rachel Herrick Kassabian
   *Attorneys for Plaintiff WPEngine, Inc.*

-61-