Michael M. Maddigan (Bar No. 163450)
michael.maddigan@hoganlovells.com
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600

Jiaxing (Kyle) Xu (Bar No. 344100)
kyle.xu@hoganlovells.com
**HOGAN LOVELLS US LLP**
4 Embarcadero Center, Suite 3500
San Francisco, CA 94103
Telephone: (415) 374-2300

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Anna Kurian Shaw, *pro hac vice*
anna.shaw@hoganlovells.com
Lauren Cury, *pro hac vice*
lauren.cury@hoganlovells.com
Hadley Dreibelbis, *pro hac vice*
hadley.dreibelbis@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600

*Attorneys for Defendants Automattic Inc. and*
*Matthew Charles Mullenweg*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, | Case No. 3:24-cv-06917-AMO |
| Plaintiff, | **DEFENDANTS AUTOMATTIC INC. AND MATTHEW CHARLES MULLENWEG'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, | Judge: Hon. Araceli Martinez-Olguin Courtroom: 10 Hearing Date: March 6, 2025 Hearing Time: 2:00 p.m. |
| Defendants. | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

NOTICE OF MOTION & MOTION ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD ................................................................................................. 7

ARGUMENT .............................................................................................................. 7

I.    The Complaint Fails to State a Claim Against Either Defendant with Respect to Counts 1-6 and 9-11 ........................................................................................ 7

    A.    WP Engine Fails to State a Claim for Intentional Interference with Contractual Relations (Count 1) ........................................................... 8

    B.    WP Engine Fails to State a Claim for Tortious Interference with Prospective Economic Advantage (Count 2) ...................................... 11

    C.    WP Engine Fails to State a Claim under the Computer Fraud and Abuse Act ("CFAA") (Count 3) ........................................................... 12

        1.    WP Engine fails to adequately plead an actionable "threat," "demand," or "request." ............................................................. 13

        2.    WP Engine fails to plead an intent to "extort." .......................... 14

        3.    WP Engine fails to plead "damage to a protected computer" that "was caused to facilitate the extortion." ................................ 15

        4.    Applying the CFAA as WP Engine urges would unduly expand the CFAA's reach ................................................................... 16

    D.    WP Engine's Attempted Extortion Claim Must Be Dismissed (Count 4) ........... 16

        1.    No private right of action for attempted extortion exists under the Penal Code. ................................................................................ 16

        2.    While California law permits claims to recover money obtained in response to an extortionate threat, WP Engine has not plausibly alleged any such claim here. .................................................... 17

    E.    WP Engine Fails to State a Claim for Unfair Competition under Cal. Bus. Prof. Code § 17200 (Count 5) ........................................................... 18

F.  WP Engine Fails to Plead Any Promise on Which Estoppel Can Rest (Count 6) ................................................................................................ 21

    1.  The promise on which Count 6 is based relates to accessibility of WordPress software, which WP Engine does not and cannot plead has been interrupted. ................................................................... 21

    2.  WP Engine fails to plead any promise by Defendants that is sufficiently unambiguous to sustain a claim for promissory estoppel. ........ 22

G.  WP Engine Fails to State a Claim For Libel, Trade Libel, or Slander (Counts 9-11) ................................................................................... 23

II.  Counts 3 and 9-11 Should be Dismissed Against Defendant Automattic ..................... 24

CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
966 F.2d 443 (9th Cir. 1992)............................................................................21

*Am. Shooting Ctr., Inc. v. Secfor Int'l*,
No. 13cv1847 BTM(JMA), 2015 WL 1914924 (S.D. Cal. Apr. 27, 2015) ............18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................7

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ....................................................................................20

*Calvi v. Knox County*,
470 F.3d 422 (1st Cir. 2006) .........................................................................25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) .............................................................................19

*Choudhuri v. Specialized Loan Serv.*,
No. 22-cv-06993-JST, 2023 WL 6277327 (N.D. Cal. Sept. 26, 2023)..................22

*Corazan v. Aurora Loan Servs., LLC*,
No. 11-00542 SC, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ..........................25

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
619 F. Supp. 3d 983 (C.D. Cal. 2022)........................................................19, 20

*CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
No. 2:20-CV-08819-CBM-AS, 2023 WL 2468742 (C.D. Cal. Feb. 23, 2023) ...............19, 20

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
479 F.3d 1099 (9th Cir. 2007)........................................................................8, 9

*DeSoto Cab Co., Inc. v. Uber Techs., Inc.*,
No. 16-cv-06385-JSW, 2020 WL 10575294 (N.D. Cal. Mar. 25, 2020)................11

*Dixon v. Univ. of S. Cal.*,
No. 2:21-cv-05286-VAP-(AFMx), 2021 WL 6496737 (C.D. Cal. Oct. 20, 2021)...........21, 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*,
　No. CV 19-04993 DSF (JPRx), 2019 WL 8631502 (C.D. Cal. Dec. 16, 2019) ...................... 8

*Edwards v. Leaders in Cmty. Alternatives, Inc.*,
　850 F. App'x 503 (9th Cir. 2021) .................................................................................... 15

*Est. of B.H. v. Netflix, Inc.*,
　No. 4:21-cv-06561-YGR, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ................................ 24

*Evans Hotels, LLC v. Unite Here! Local 30*,
　No. 18-CV-2763 TWR (AHG), 2021 WL 10310815 (S.D. Cal. Aug. 26, 2021) ................... 17

*Fuhrman v. Cal. Satellite Sys.*,
　231 Cal. Rptr. 113 (Cal. Ct. App. 1986) ..................................................................... 17, 18

*Glen Holly Entm't Inc. v. Tektronic Inc.*,
　343 F.3d 1000 (9th Cir. 2003) ...................................................................................... 22, 23

*Hana Fin., Inc. v. Geoffrey Allen Corp.*,
　No. CV-15-0368-MWF (JEMx), 2016 WL 11744960 (C.D. Cal. Feb. 23, 2016) ................... 9

*Herring Networks, Inc. v. Maddow*,
　8 F.4th 1148 (9th Cir. 2021) .............................................................................................. 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
　31 F.4th 1180 (9th Cir. 2022) ............................................................................... 12, 13, 16

*Image Online Design, Inc. v. Internet Corp. for Assigned Names And Numbers*,
　No. CV 12-08968 DDP (JCx), 2013 WL 489899 (C.D. Cal. Feb. 7, 2013) ........................... 8

*In re Gilead Scis. Sec. Litig.*,
　536 F.3d 1049 (9th Cir. 2008) ............................................................................................. 7

*In re Google Assistant Priv. Litig.*,
　457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................................... 19

*Intermarketing Media, LLC v. Barlow*,
　No. 8:20-CV-00889-JLS (DFMx), 2021 WL 5990190 (C.D. Cal. May 4, 2021) ................. 18

*Janda v. Madera Cmty. Hosp.*,
　16 F. Supp. 2d 1181 (E.D. Cal. 1998) ............................................................................... 11

*Kingston Trio Artists v. Strong*,
　No. CV-19-9163 PSG (SSx), 2021 WL 4692406 (C.D. Cal. Aug. 11, 2021) ...................... 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
　63 P.3d 937 (Cal. 2003) ..................................................................................................... 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Ladas v. Cal. State Auto. Ass'n*,
    23 Cal. Rptr. 2d 810 (Cal. Ct. App. 1993) ........................................................... 22

*Laks v. Coast Fed. Sav & Loan Ass'n*,
    131 Cal. Rptr. 836 (Cal. Ct. App. 1976) ............................................................. 22

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ........................................................................ 15, 17

*Logtale, Ltd. v. IKOR, Inc.*,
    No. C 11-5452 CW, 2013 WL 4427254 (N.D. Cal. Aug. 14, 2013) .................................. 11

*Martin v. Walt Disney Internet Grp.*,
    No. 09CV1601-MMA (POR), 2010 WL 2634695 (S.D. Cal. June 30, 2010) ....................... 11

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ............................................................................ 20

*Muddy Waters, LLC v. Superior Ct.*,
    277 Cal. Rptr. 3d 204 (Cal. Ct. App. 2021) ........................................................... 24

*Neal v. Select Portfolio Serv.*,
    No. 5:16-cv-04923-EJD, 2017 WL 4224871 (N.D. Cal. Sept. 22, 2017) .......................... 9, 10

*Nexsales Corp. v. Salebuild, Inc.*,
    No. C-11-3915 EMC, 2012 WL 216260 (N.D. Cal. Jan. 24, 2012) .................................. 8

*Nguyen v. PennyMac Loan Serv., LLC*,
    No. SACV 12–01574–CJC(ANx), 2012 WL 6062742 (C.D. Cal. Dec. 5, 2012) ................... 22

*Ochre LLC v. Rockwell Architecture Plan. and Design, P.C.*,
    No. 12 Civ. 2837(KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ............................. 24

*O'Connor v. Uber Techs., Inc.*,
    No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ................................. 19

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    939 F. Supp. 2d 1002 (N.D. Cal. 2013) ............................................................ 9, 12

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    791 P.2d 587 (Cal. 1990) ................................................................................. 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................. 20

*Planet Aid, Inc. v. Reveal*,
    44 F.4th 918 (9th Cir. 2022) ............................................................................. 24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Raiser v. Ventura Coll. of L.*,
  No. CV 09-00254 RGK (AGRx), 2009 WL 10692058 (C.D. Cal. Sept. 1, 2009) ............... 18

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir. 1996) .................................................................................................. 23

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ................................................................................................. 21

*Shaeffer v. Califia Farms, LLC*,
  258 Cal. Rptr. 3d 270 (Cal. Ct. App. 2020) .......................................................................... 18

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) .............................................................................................. 14

*Snapkeys, Ltd. v. Google LLC*,
  No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) .............................. 20

*Tran v. Eat Club, Inc.*,
  No. H046773, 2020 WL 4812634 (Cal. Ct. App. Aug. 18, 2020) .......................................... 17

*United Nat. Maint., Inc. v. San Diego Conv. Ctr., Inc.*,
  766 F.3d 1002 (9th Cir. 2014) ................................................................................................. 8

*Van Buren v. United States*,
  593 U.S. 374 (2021) ............................................................................................................... 13

*VasoNova Inc. v. Grunwald*,
  No. C 12-02422 WHA, 2012 WL 4119970 (N.D. Cal. Sept. 18, 2012) ................................. 9

*Vogel v. Felice*,
  26 Cal. Rptr. 3d 350 (Cal. Ct. App. 2005) ............................................................................ 24

*Westhoff Vertriebsges mbH v. Berg*,
  No. 22-CV-0938-BAS-SBC, 2023 WL 5811843 (S.D. Cal. Sept. 6, 2023) .......................... 24

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  49 Cal. Rptr. 2d 793 (Cal. Ct. App. 1996) ............................................................................ 12

*Wofford v. Apple Inc.*,
  No. 11-CV-0034 AJB NLS, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .............................. 9

**STATUTES:**

18 U.S.C. § 1030

  (a)(7) ......................................................................................................... 12, 13, 14

  (a)(7)(A) .......................................................................................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

(a)(7)(C) ................................................................................................................ 13, 15

(c) ............................................................................................................................ 13

(e)(1) ....................................................................................................................... 13

(e)(2)(B) .................................................................................................................. 13

(e)(8) ....................................................................................................................... 13

(g) ............................................................................................................................ 13

18 U.S.C. § 1951(b)(2) ............................................................................................ 14

Cal. Penal Code § 524 ............................................................................................. 16

**LEGISLATIVE MATERIAL:**

S. Rep. No. 104-357 (1996) ..................................................................................... 12

**OTHER AUTHORITY:**

*Extort*, Black's Law Dictionary (6th ed. 1990) ....................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## NOTICE OF MOTION & MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, March 6, 2025, at 2:00 p.m. Pacific time, or as soon as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, before the Honorable Araceli Martinez-Olguin, Defendants Automattic Inc. and Matthew Charles Mullenweg (collectively, "Defendants"), will and do hereby move this Court to dismiss Counts 1-6 and 9-11 of the Complaint filed in this case.

This Motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities in support thereof; all matters of which the Court may take judicial notice; and such documentary and oral evidence as may be presented at or before the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Defendants seek an order dismissing Counts 1-6 and 9-11 of the Complaint (ECF 1).

### INTRODUCTION

Plaintiff WPEngine ("WP Engine") insists this case is about protecting the WordPress community. That is undoubtedly correct. But, contrary to the allegations in WP Engine's Complaint, the perpetrator responsible for the harms against the WordPress community is not Automattic or Matt Mullenweg ("Matt"). It is WP Engine itself. Despite its own (mis)conduct, WP Engine's Complaint now asks this Court to compel Matt to provide various resources and support to private equity-backed WP Engine for free, in the absence of any contract, agreement, or promise to do so. The Complaint also seeks to restrict Matt's ability to express openly his perspective that WP Engine's practices negatively impact the WordPress software platform and community—a platform and community that has been his life's work. There is no legal or factual basis for the Court to compel such access or restrict such speech.

WP Engine's misleadingly curated Complaint focuses solely on the events of the last two months, but this story actually begins over two decades ago, when Matt created a new way to build websites. Matt envisioned a new approach that would democratize publishing by making it

possible for anyone to create and manage websites, regardless of their technical expertise or economic ability.

The result of Matt's effort was the WordPress software platform. This software allows anyone—even someone who is not a coder or graphic designer—to create websites easily and effectively. Matt and his co-founder released the first version of his program in 2003. Since then, over fifty major versions of the software have been released, and Defendants have devoted thousands of person-years to continuously improving WordPress software, and WordPress has grown to power over 43% of all the websites in the world, it is the top content management platform, with almost 10x the market share of runner-up, Shopify.

Devoted to the ethos of open source, and committed to creating more innovative, secure, and robust software by sharing knowledge and involving the community, Matt made his software available under the GPL open source license—making it free for anyone to use, copy, or modify. And, out of Matt's open source gift, a vibrant and collaborative community of developers, users, and hosts flourished—a community dedicated to the continuous development, maintenance, and improvement of WordPress software, which has become the most widely-used content management system in the world. The WordPress ecosystem generates an estimated over 10 billion USD of revenue per year for tens of thousands of companies and millions of freelancers.

Today, WordPress software powers over 43% of the web, and it is continuously enriched by the worldwide ecosystem and community that support it. The WordPress ecosystem includes thousands of contributors and hundreds of thousands of compatible hosting platforms. Automattic is one of the many companies that offers hosting platforms. Contrary to the allegations of the Complaint, Automattic, founded by Matt in 2005, does not own the WordPress software but rather offers three managed WordPress hosting services, WordPress.com for everyday users; Pressable, for agencies and developers; and WordPress VIP, for high-end enterprise sites including WhiteHouse.gov, NASA, Salesforce, and CNN. The WordPress ecosystem is also supported by the WordPress Foundation ("Foundation")—a 501(c)(3) public benefit corporation dedicated to educating the public about WordPress and open source software. The role of the Foundation is charitable, educational, and scientific.

Separate from the WordPress software, from Automattic, and from the Foundation, is a website that Matt supports called WordPress.org (the "Website"). Matt is the owner of the WordPress.org domain name. Matt created the Website to support the WordPress community and software. Over time, the content the Website provides has become more robust. It takes significant resources from Matt and others to maintain the Website. For example, Matt and other employees of Automattic contribute over 3,500 hours weekly to support and maintain the Website, including the core software and other features offered through the Website. The Website also provides access to WordPress software as well as countless plugins and other forms of support and information for WordPress software. Matt provides all of this to the public for free.

But the Website is far from the only place on the Internet where this information can be located. Numerous other online repositories provide access to that information. And, of course, any company that builds its business on WordPress software also could create and maintain a centralized repository for this information, in the same way that Matt has. In fact, just days after WP Engine's access to the Website was denied such that it could no longer freeride on Matt's Website, WP Engine itself did exactly that.

WP Engine also attempts to frame Automattic's assignment of the WordPress trademarks to the Foundation as some nefarious act when in fact most for profit companies would never consider such a transfer of trademark rights. Automattic, the original owner of the WordPress trademarks, which used and continues to use the WordPress trademarks as a commercial brand, assigned its rights in those trademarks to the Foundation in order to ensure the WordPress marks and associated goodwill would have a legacy well into the future. A condition of that assignment, however, was that Automattic and Matt would continue to have commercial and other trademark-related rights to the WordPress trademarks and the Website after the assignment.

In other words, Matt and Automattic have granted away significant rights and provided extensive free services—something most individuals and companies would never consider doing—in order to support the WordPress community and to ensure the continued success of WordPress. But the success and vitality of WordPress depends on a supportive and symbiotic relationship with those in the WordPress community.

Plaintiff WP Engine's conduct poses a threat to that community. WP Engine is a website hosting service built on the back of WordPress software and controlled by the private equity firm Silver Lake, which claims over $100B of assets under management. WP Engine allows customers to reserve domain names and to host and create WordPress and WooCommerce-powered websites that are accessible through those domains. In addition to WordPress software, WP Engine also uses various of the free resources on the Website, and its Complaint alleges that access to the Website is now, apparently, critical for its business.

But the Complaint does not (and cannot) allege that WP Engine has any agreement with Matt (or anyone else for that matter) that gives WP Engine the right to use the Website's resources. The Complaint does not (and cannot) allege that WP Engine at any time has attempted to secure that right from Matt or elsewhere. Instead, WP Engine has exploited the free resources provided by the Website to make hundreds of millions of dollars annually. WP Engine has done so while refusing to meaningfully give back to the WordPress community, and while unfairly trading off the goodwill associated with the WordPress and WooCommerce trademarks.

WP Engine has not always been this way. To the contrary, WP Engine's priorities seemingly shifted in 2018, when private equity firm Silver Lake made a majority investment in WP Engine and also took control of three board seats. In the years following Silver Lake's assumption of control over WP Engine, WP Engine began to progressively shift how it uses the WordPress and WooCommerce trademarks and to change the features it offers in connection with the WordPress software and its overall customer service in order to maximize profit and to trade off the goodwill associated with the WordPress and WooCommerce trademarks.

For example, presumably in order to decrease its hosting costs, WP Engine substantially modified its WordPress offering, disabling features at the core of WordPress, including revisions. In 2021, for the first time, WP Engine incorporated the WordPress trademark into the name of its own product offering which it called "Headless WordPress," infringing that trademark and violating the express terms of the WordPress Foundation Trademark Policy, which prohibits the use of the WordPress trademarks in product names. And, over time, WP Engine has progressively increased its use and prominence of the WordPress trademark throughout its marketing materials,

1    ultimately using that mark well beyond the recognized limits of nominative fair use.

2         Matt has attempted to raise these concerns with WP Engine and to reach an amicable

3    resolution for the good of the community. In private, Matt also has encouraged WP Engine to give

4    back to the ecosystem from which it has taken so much. Preserving and maintaining the resources

5    made available on the Website requires considerable effort and investment—an effort and

6    investment that Matt makes to benefit those with a shared sense of mission. WP Engine does not

7    embrace that mission.

8         WP Engine and Silver Lake cannot expect to profit off the back of others without carrying

9    some of the weight—and that is all Matt has asked of them. For example, Matt suggested that WP

10   Engine *either* execute a license for the Foundation's WordPress trademarks *or* dedicate eight

11   percent of its revenue to the further development of the open source WordPress software. ECF 21-

12   13, as referenced in Compl. ¶ 50.

13        When it became abundantly clear to Matt that WP Engine had no interest in giving back,

14   Matt was left with two choices: (i) continue to allow WP Engine to unfairly exploit the free

15   resources of the Website, use the WordPress and WooCommerce trademarks without

16   authorization, which would also threaten the very existence of those trademarks, and remain silent

17   on the negative impact of its behavior or (ii) refuse to allow WP Engine to do that and demand

18   publicly that WP Engine do more to support the community. On September 17th, he gave a speech

19   to several thousand WordPress community members at a conference in Portland, Oregon, spelling

20   out why Silver Lake's controlling ownership of WP Engine had made them a harmful member of

21   the community and why they would be banned from community events and resources going

22   forward. On September 25th, under no obligation to provide anything to WP Engine, Matt chose

23   the second option and disabled WP Engine's access to the community resources on the Website.

24   These actions did not prevent WP Engine from using the open source WordPress software. To the

25   contrary, WP Engine continues to do so to this day.

26        In retaliation for Matt's decision to deny WP Engine access to his Website, WP Engine

27   filed this present action. WP Engine's Complaint is full of sound and fury, but WP Engine's

28   allegations ultimately signify nothing. Beneath the Complaint's tone of indignation lies an utter

absence of any factual allegations that do or could plausibly state a claim for relief. The Complaint strains mightily and misleadingly to conflate the WordPress software with Matt's Website and with the WordPress trademarks, but it is devoid of any facts establishing that Matt has any obligation to provide the resources on the Website to WP Engine.

The mere fact that WP Engine made the risky decision to base its growing business on a site to which it has no rights or guarantee of access, without making backup plans, is not enough for it to conjure a claim out of legal thin air. Similarly, WP Engine's business decision to rely on Matt's Website does not provide any legal or factual basis for muzzling Matt and preventing him from criticizing WP Engine for acts that he believes are damaging the WordPress community.

Moreover, notwithstanding the Complaint's high octane rhetoric and professed indignation, the real unlawful activity here is WP Engine's infringement of the WordPress and WooCommerce trademarks. This infringement was so egregious that in the days prior to filing this lawsuit, WP Engine scurried to delete various unauthorized uses of the WordPress and WooCommerce trademarks from its website—a tacit acknowledgement of their infringing nature. These efforts included (among many other examples):

- changing "We power the freedom to create on WordPress" to "We power the freedom to create"

- removing phrases including "Managed WordPress Platform" and "Essential WordPress Hosting"

- changing the product name of "Headless WordPress" to "Headless Platform"

- modifying the names of its hosting plans, from "Essential WordPress" to "Essential," from "Core WordPress" to "Core," and from "Enterprise WordPress" to "Enterprise."

- Replacing "The path to WooCommerce success starts here" with "The path to eCommerce success starts here."

- Changing "Simplify Woo. Sell More," to "Simplify. Sell More."

*See* Request for Judicial Notice ("**RJN**") Exs. 1-5. WP Engine even revised third party customer quotes that referenced product names containing the WordPress trademarks offered by WP

Engine. *Id.* at Exs. 1(a)-(b). Nevertheless, despite these and other extensive efforts by WP Engine, it continues to use the WordPress trademarks in unauthorized ways.

In sum, WP Engine's Complaint is a paradigmatic example of a legal strategy based on the principle that "the best defense is a good offense." Rather than honestly face and constructively address its own business choices and conduct, WP Engine instead has chosen without justification to attack Automattic and Matt. WP Engine is attempting through the Complaint and a corresponding public pressure campaign to blame Defendants for its own decisions and to obtain access rights and free services to which it has no legal (or moral) rights.

### LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although in considering a motion to dismiss under Rule 12(b)(6) the Court must accept all factual allegations as true and resolve all reasonable inferences in the plaintiff's favor, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations omitted). Courts likewise "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal citation omitted). *Iqbal*, 556 U.S. at 678 ("Nor does a [pleading] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' ") (quoting *Twombly*, 550 U.S. at 557). Rather, a plaintiff must plead sufficient factual allegations to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### ARGUMENT

**I.     The Complaint Fails to State a Claim Against Either Defendant with Respect to Counts 1-6 and 9-11**

WP Engine's Complaint fails to state a claim against Defendants with respect to Counts 1-6 and 9-11. As described in more detail below, WP Engine fails to plead critical elements of these claims, which rely on conflations of the facts and misapplications of the law. These claims should

1  be dismissed.

2      **A.**    **WP Engine Fails to State a Claim for Intentional Interference with**

3           **Contractual Relations (Count 1)**

4          To state a claim for intentional interference with contractual relations, a plaintiff must

5  plead "(1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this

6  contract, (3) defendant's intentional acts designed to induce a breach or disruption of the

7  contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5)

8  resulting damage." *United Nat. Maint., Inc. v. San Diego Conv. Ctr., Inc.*, 766 F.3d 1002, 1006

9  (9th Cir. 2014) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 791 P.2d 587, 589–590 (Cal.

10  1990)). In pleading such a claim, a plaintiff must allege more than "interfere[nce] with its business

11  model; for this tort, it must allege actual interference with actual contracts, such that the result is a

12  specific breach [or disruption of the performance of the contract], not merely general damage to

13  the business." *Image Online Design, Inc. v. Internet Corp. for Assigned Names And Numbers*, No.

14  CV 12-08968 DDP (JCx), 2013 WL 489899, at *9 (C.D. Cal. Feb. 7, 2013).

15          WP Engine's Complaint fails on its face in two distinct ways. First, it fails to plead the

16  existence of a valid contract, and second, it does not plausibly allege damage suffered as a result

17  of *Defendants'* actions, rather than its own. Each of these failures is independently fatal to WP

18  Engine's claim.

19          WP Engine's first error is the most basic: It fails to plausibly allege the existence of an

20  enforceable contract—the *sine qua non* of an intentional interference with contractual relations

21  claim. To adequately plead this element, a plaintiff must "identify specific contracts that were

22  disrupted, the terms of the contracts, [and] the parties involved." *Dongguan Beibei Toys Indus. Co.*

23  *v. Underground Toys USA, LLC*, No. CV 19-04993 DSF (JPRx), 2019 WL 8631502, at *2 (C.D.

24  Cal. Dec. 16, 2019); *Nexsales Corp. v. Salebuild, Inc.*, No. C-11-3915 EMC, 2012 WL 216260, at

25  *4 (N.D. Cal. Jan. 24, 2012) (dismissing where plaintiff "generally allege[d] that a contract existed

26  but fail[ed]," among other things, "to identify any terms of the contract, [or] the parties involved").

27          WP Engine does not even attempt to satisfy its burden. Far from attaching to the

28  Complaint a representative example of the contract at issue, *see CRST Van Expedited, Inc. v.*

1   *Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007), WP Engine merely alleges that it

2   has contracts with WP Engine customers, and that Defendants interfered with those contracts, *see,*

3   *e.g.*, Compl. ¶ 114 ("Defendants have intentionally interfered with the contracts between WP

4   Engine and its customers for the provision of WP Engine's products and services"); *id.* ¶ 60

5   (referring generally to "contracts with WP Engine"); *id.* ¶ 80 (same). Such general, conclusory

6   allegations say nothing about the terms of the contract or whether such terms are enforceable. Nor

7   does WP Engine identify a single party on the other side of the alleged contracts. *Hana Fin., Inc.*

8   *v. Geoffrey Allen Corp.*, No. CV-15-0368-MWF (JEMx), 2016 WL 11744960, at *13 (C.D. Cal.

9   Feb. 23, 2016) ("California law . . . require[s] that a claim for tortious interference identify the

10  other party to the interfered contract"). For all these reasons, WP Engine has utterly failed to

11  allege the existence of an enforceable contract—an omission that is fatal to its claim. *See Orchard*

12  *Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011–12 (N.D. Cal.

13  2013) (a complaint that does not "plead sufficient factual allegations about the terms of [the

14  alleged] enforceable contracts" fails to put defendants "on [sufficient] notice to defend themselves

15  from the claim of causing the breach or disruption of those contracts.").

16        Second, "[i]t is the settled rule in actions for wrongful interference with contract rights that

17  an essential element of the cause of action is that the conduct charged be the procuring cause of

18  the interference and the harm." *Neal v. Select Portfolio Serv.*, No. 5:16-cv-04923-EJD, 2017 WL

19  4224871, at *4 (N.D. Cal. Sept. 22, 2017) (internal citation omitted). Where "Plaintiff's allegations

20  do not establish that Defendants' conduct was the 'moving cause' " of any harm," or where "there

21  exists… an 'obvious alternative explanation' for any alleged harm," the "resulting damages"

22  element of an intentional interference claim is not sufficiently pled. *Id.*; *VasoNova Inc. v.*

23  *Grunwald*, No. C 12-02422 WHA, 2012 WL 4119970, at *4 (N.D. Cal. Sept. 18, 2012). Given

24  that WP Engine has not offered *any* factual allegations regarding the terms or obligations in the

25  contracts at issue, *see supra*, it cannot possibly have satisfied its burden to identify the terms

26  breached or disrupted. *See, e.g.*, *Wofford v. Apple Inc.*, No. 11-CV-0034 AJB NLS, 2011 WL

27  5445054, at *3 (S.D. Cal. Nov. 9, 2011). Likewise, if it is unclear what the contract even requires

28  or how Defendants' conduct led to the contract's breach or disruption, it is difficult to see how WP

1    Engine can plausibly allege that Defendants' conduct was a substantial factor in the resulting

2    harm.

3            Further, the facts and allegations of WP Engine's own Complaint bear out an "obvious

4    alternative explanation" for WP Engine's alleged harm: WP Engine's own business practices.

5    Several of the examples WP Engine points to of individuals allegedly considering a move away

6    from WP Engine cite *WP Engine* as the reason for their desired move. In one example, a Reddit

7    user explains that they were "already considering other hosting anyway" including because "WP

8    Engine and Flywheel have been throttling my client's sites all summer." Compl. ¶ 106. In another

9    Reddit thread titled "**WordPress Engine is failing me**," one user writes "[**p**]**oor performance is**

10   **my main issue with WP Engine of late.**" Compl. Ex. C. Another user notes **this is what**

11   **happens when companies get too big**. WP Engine is getting huge." *Id.*

12           In addition to these examples cited in the Complaint itself, there are over nineteen pages of

13   one star reviews of WP Engine on Trust Pilot alone. One of these reviews describes WP Engine as

14   "**the most dishonest company you will ever deal with**," "[o]ne of the worst hostings I ever

15   **used as a developer in last 10 years**," and "**not the same company I use[d] to love.**" RJN Ex.

16   10 at p. 16. These highly critical reviews further describe "[**h**]**orrible customer service**," *id.* at p.

17   10, detail "**predatory sales tactics [that] have made me switch from their service after years**

18   **of being a loyal customer**," *id.* at p. 14, and explain a number of reasons specific to WP Engine's

19   own actions that have caused its customers to move away. Several reviews specifically mention

20   WP Engine's disabling of "core wp functions," and criticize WP Engine's disabling of "revisions,"

21   specifically. *Id.* at pp. 3, 9.

22           In light of the above, WP Engine does not and cannot plausibly "plead facts to show it was

23   Defendants' conduct as opposed to [its] own that caused any interference." *Neal*, 2017 WL

24   4224871, at *5. As a result, WP Engine's intentional interference with contractual relations claim

25   should be dismissed with prejudice. *Id.* at *5 (dismissing intentional interference claim with

26   prejudice, as futile).

27

28

**B.      WP Engine Fails to State a Claim for Tortious Interference with Prospective Economic Advantage (Count 2)**

To state a claim for intentional interference with prospective economic advantage, WP Engine must plausibly allege (i) an economic relationship between it and some third party with the probability of future economic benefit; (ii) Defendants' knowledge of the relationship; (iii) intentional acts by Defendants designed to disrupt the relationship; (iv) actual disruption of the relationship and (v) economic harm to WP Engine proximately caused by those acts. *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-cv-06385-JSW, 2020 WL 10575294, at *9 (N.D. Cal. Mar. 25, 2020) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003)). WP Engine must also plead that Defendants' act of interference was "wrongful by some legal measure other than the fact of the interference itself." *Id.* "An act is not independently wrongful merely because a defendant acts with an improper motive; rather, an act is independently wrongful if it is unlawful, [in that] it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* (internal quotations omitted).

The same pleading deficiencies that are fatal to Count 1 also support dismissal of Count 2. The Complaint does not identify any specific business/economic relationships alleged to have been interrupted (prong i and iv). *See Logtale, Ltd. v. IKOR, Inc.*, No. C 11-5452 CW, 2013 WL 4427254, at *6 (N.D. Cal. Aug. 14, 2013). Indeed, it does not identify a *single* customer involved in any existing economic relationship. *See Janda v. Madera Cmty. Hosp.,* 16 F. Supp. 2d 1181, 1189 (E.D. Cal. 1998) (dismissing tortious interference claim where the physician plaintiff alleged an "economic relationship with his existing patients and potential patients" but failed to "specify the identities of the alleged patients," and an inability to plead economic harm proximately caused by Defendants' acts rather than its own). The failure to adequately plead an existing relationship likewise precludes WP Engine from plausibly alleging that Defendants' acts disrupted that unidentified relationship or that Defendant knew about that relationship (prongs ii and iii). And for the reasons stated above, WP Engine fails to plead that customers' desire to leave WP Engine was proximately caused by Defendants' acts rather than its own (prong v). *Martin v. Walt Disney Internet Grp.*, No. 09CV1601-MMA (POR), 2010 WL 2634695, at *10 (S.D. Cal. June 30, 2010)

("Plaintiff's claim of tortious interference fails because Plaintiff does not specifically allege facts showing that Defendants' interference proximately caused her economic harm").

In addition, Count 2 is separately subject to dismissal because the Complaint fails to plead any allegations of a business relationship with the probability of future economic benefit and that any alleged interference by Defendants was independently unlawful. As to the former, WP Engine simply asserts that "its past and current customers" "have had economic relationships that likely would have resulted in an economic benefit." Compl. ¶¶ 121-122. But without *any* indication of who these customers are or what the basic details of the economic relationships involve, it is entirely too "speculative" to assume that Defendants disrupted any existing relationships with "the probability of future economic benefit." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 49 Cal. Rptr. 2d 793, 803 (Cal. Ct. App. 1996) (internal quotations omitted). As to the latter, WP Engine claims that Defendants' interference was independently "wrongful" as attempted extortion and a violation of California's Unfair Competition Law ("UCL"). Compl. ¶ 126. But as explained in § I.e., *infra*, those claims themselves are insufficiently pled and subject to dismissal, so there is no independently unlawful conduct on which Count 2 can rest. *Orchard Supply Hardware LLC*, 939 F. Supp. 2d at 1012 (dismissing claim for intentional interference with prospective economic relations where the "Complaint hinge[d] its allegations of wrongful conduct" on other claims which were themselves insufficiently pled). For all of these reasons, Count 2 should be dismissed.

### C.   WP Engine Fails to State a Claim under the Computer Fraud and Abuse Act ("CFAA") (Count 3)

The CFAA is a "computer hacking" statute. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022). Section 1030(a)(7)—the provision at issue in WP Engine's complaint—was designed to target the "emerging problem of computer-age blackmail," in which a hacker might "penetrate a system, encrypt a database and then demand money for the decoding key." S. Rep. No. 104-357, at 12 (1996). Section 1030(a)(7) thus imposes liability on:

(a) Whoever—

(7) with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any—

1       (A) threat to cause damage to a protected computer;

2       (B) threat to obtain information from a protected computer without
authorization or in excess of authorization or to impair the confidentiality

3       of information obtained from a protected computer without authorization
or by exceeding authorized access; or

4

5       (C) demand or request for money or other thing of value in relation to
damage to a protected computer, where such damage was caused to

6       facilitate the extortion;

7  18 U.S.C. § 1030(a)(7). Because the CFAA authorizes civil *and* criminal liability, *id.* § 1030(c),

8  (g), courts have instructed that the statute's provisions be "narrow[ly]" construed, *hiQ Labs*, 31

9  F.4th at 1200-01.

10      For four separate reasons, WP Engine fails to state a claim under either subsections (A) or

11  (C)—the only provisions it invokes in the Complaint. Compl. ¶ 135. *First,* WP Engine does not

12  identify any actionable "threat," "demand," or "request." *Second*, WP Engine fails to adequately

13  allege that any communications were made with the intent to "extort." *Third*, WP Engine cannot

14  plausibly assert that "damage to a protected computer" was "caused to facilitate the extortion." §

15  1030(a)(7)(C). And *fourth*, applying the CFAA to WP Engine's allegations would unduly expand

16  the CFAA's reach.

17            1.    <u>WP Engine fails to plead an actionable "threat," "demand," or "request."</u>

18      Section 1030(a)(7) prohibits a very particular type of "threat," "demand," or "request":

19  those directed to or involving "damage to a protected computer." 18 U.S.C. § 1030(a)(7)(A), (C).

20  The term "damage"—which the statute defines as "any impairment to the integrity or availability

21  of data, a program, a system, or information," *id.* § 1030(e)(8)—necessarily "focus[es] on

22  technological harms" that result from "hacking" into a person's computer. *Van Buren v. United*

23  *States*, 593 U.S. 374, 391-392 (2021) (providing as an example "the corruption of files"). A

24  protected computer, meanwhile, is "an electronic . . . or other high speed data processing device

25  performing logical, arithmetic, or storage functions . . ." that is "used in or affecting" interstate

26  commerce. 18 U.S.C. § 1030(e)(1), (2)(B). Accordingly, to be actionable under § 1030(a)(7), the

27  defendant's communications must threaten to cause "technological harms" to a protected

28  computer, or include a demand or request involving such "technological harms."

WP Engine appears to base its CFAA claim on two sets of threats: (1) threats of " 'war' if [WP Engine] did not agree to pay a significant percentage of its gross revenues," Compl. ¶ 133, and (2) comments made after Defendants first blocked access to the Website expressing an intent to do so again, *id.* ¶ 84. In WP Engine's telling, these blocks "impair[ed] the integrity and availability of data, programs, systems, and information" within "WP Engine's systems." *Id.* ¶¶ 132, 134. But neither set of statements is actionable under the CFAA. With respect to the former, WP Engine does not point to *any* communications threatening technological harm. The communications alleged refer either to vague and undefined consequences, *see, e.g.*, *id.* ¶ 51 (threat to "go to war" with WP Engine), *id.* ¶ 52 (threat to "make the case" for "why we're banning WP Engine"), or comments that explicitly have nothing to do with computers themselves, *id.* ¶ 54 (threat to "disparage" WP Engine). As for the latter, WP Engine does not plausibly connect any threat of harm to *WP Engine*'s devices. There are no allegations that Defendants threatened technological harm to WP Engine's computers. Instead, WP Engine's allegations indicate that Matt threatened to—and did—make changes to the Website's *own* server by preventing WP Engine from accessing at least certain parts of the Website. *See, e.g.*, *id.* ¶¶ 71, 72, 75. Because WP Engine must plausibly allege a threat or demand concerning damage to a protected computer, and WP Engine has apparently identified the protected computers at issue as those of *WP Engine*, Compl. ¶¶ 131-132, its failure to plausibly allege a threat of technological harm to its own devices is reason alone for dismissal.

2. <u>WP Engine fails to plead an intent to "extort."</u>

In addition to pleading an actionable threat, WP Engine must also plausibly allege that Defendants acted with "intent to extort." 18 U.S.C. § 1030(a)(7). The statute does not define extortion, but "the plain meaning of that term is '[t]o gain by wrongful methods' or 'to obtain in an unlawful manner, as to compel payments by means of threats of injury to person, property, or reputation.' " *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1226-27 (11th Cir. 2023) (quoting *Extort*, Black's Law Dictionary (6th ed. 1990)); *see also* 18 U.S.C. § 1951(b)(2) (defining extortion under the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear"). A demand for payment

is "wrongful" for purposes of extortion if the plaintiff "had a preexisting right to be free from the

alleged threatened harm" or the defendant "had no right to seek payment for the service offered."

*Edwards v. Leaders in Cmty. Alternatives, Inc.*, 850 F. App'x 503, 507 (9th Cir. 2021) (citing

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014)). But WP Engine has not adequately

alleged any "wrongful" demand here. Assuming that WP Engine had pled an actionable threat to

damage a protected computer by blocking access to the Website—which it has not—WP Engine

has failed to plausibly allege any right to not be blocked. *See generally* Compl.; *see also id.* ¶¶ 45-

47 (acknowledging that the Website limits access in various ways, including when users violate

guidelines); *Levitt*, 765 F.3d at 1133 (finding no preexisting right where defendant was

"withholding a benefit that [it] makes possible and maintains" but was not obligated to provide).

And while WP Engine alleges that Defendants lodged these threats in order to obtain payment for

a trademark license, Compl. ¶¶ 86, 133-134, WP Engine cannot plausibly allege that Defendants

had no right to seek a license for WP Engine's use of the WordPress and WooCommerce

trademarks. The Foundation's trademark policy at issue unambiguously prohibits using a

WordPress trademark as part of a product name. Ex. A to Compl. at 4. But as the pleadings

illustrate, WP Engine did just that. *See, e.g.*, *id.* at 22 (advertising WP Engine product named

"Headless WordPress"). Given WP Engine's facial violation of the Foundation's trademark

policy, WP Engine cannot seriously—much less plausibly—contend that Defendants had no basis

to seek payment for a trademark license. WP Engine thus fails to identify any "wrongful" use of

fear that can serve as the basis for an intent to extort.

       3.   <u>WP Engine fails to plead "damage to a protected computer" that "was caused to
facilitate the extortion."</u>

      WP Engine's failures to plausibly allege an actionable threat or intent to extort also doom

its ability to meet a necessary element of subsection (C): that Defendants made a "demand or

request for money or other thing of value in relation to damage to a protected computer, *where

such damage was caused to facilitate the extortion*." § 1030(a)(7)(C) (emphasis added). By its

terms, this provision requires plausibly alleging damage to *a protected computer*; but for the

reasons already stated, the Complaint fails to allege facts showing that Defendants inflicted

1  technological harms on *WP Engine*'s systems—the protected computers WP Engine appears to

2  identify here. Compl. ¶¶ 131-132. And because WP Engine has failed to plausibly allege any

3  "wrongful" use of fear, any such damage could not have facilitated "extortion."

4     4.  <u>Applying the CFAA as WP Engine urges would unduly expand the CFAA's</u>

5         <u>reach.</u>

6     Finally, were any doubt remaining about the inapplicability of the CFAA to WP Engine's

7  claims, this Court should not forget the criminal ramifications at stake. If WP Engine's

8  interpretation of the statute is accepted, the CFAA would go from "a criminal hacking statute"

9  targeting "intentional intrusion onto someone else's computer," to a "sweeping Internet-policing

10 mandate" that criminalizes a defendant's control of its *own* servers in a way that denies someone

11 access to the defendant's product or offering. *hiQ Labs, Inc.*, 31 F.4th at 1196, 1200-01. That is

12 not what the CFAA prohibits under any construction—much less under the "narrow" construction

13 that the Ninth Circuit requires. *Id*.

14     **D.    WP Engine's Attempted Extortion Claim Must Be Dismissed (Count 4)**

15        1.  <u>No private right of action for attempted extortion exists under the Penal Code.</u>

16     WP Engine's fourth claim for relief seeks to impose civil liability for attempted extortion

17 under California Penal Code § 524. *See, e.g.*, Compl. ¶¶ 141–145, 151. There is one glaring

18 problem with that approach: California law does not recognize a private cause of action for

19 attempted civil extortion based on criminal law. Section 524 itself provides no such authorization.

20 Cal. Penal Code § 524 (providing only that "[e]very person who attempts, by means of any threat,

21 such as is specified in Section 519 of this code, to extort property or other consideration from

22 another is punishable by imprisonment . . . not longer than one year . . . or by fine not exceeding

23 ten thousand dollars ($10,000), or by both such fine and imprisonment."). And to Defendants'

24 knowledge, no published appellate decision (state or federal) has expressly recognized a private

25 cause of action under § 524.

26     Instead, in recent years, courts have repeatedly rejected efforts to pursue such a cause of

27 action. *See, e.g.*, *Kingston Trio Artists v. Strong*, No. CV-19-9163 PSG (SSx), 2021 WL 4692406,

28 at *5 (C.D. Cal. Aug. 11, 2021) ("[Section] 524 does not authorize a private right of action for

attempted extortion as defined by the Penal Code"); *Evans Hotels, LLC v. Unite Here! Local 30*, No. 18-CV-2763 TWR (AHG), 2021 WL 10310815, at \*28 (S.D. Cal. Aug. 26, 2021) ("[T]here is no private cause of action under Section 524."); *Tran v. Eat Club, Inc*., No. H046773, 2020 WL 4812634, at \*16 (Cal. Ct. App. Aug. 18, 2020) (unpublished) (dismissing older federal cases allowing civil claims for attempted extortion under the Penal Code as inconsistent with California law). Under the weight of recent authority, then, WP Engine's attempted extortion claim must be dismissed as noncognizable under California law.

Even if WP Engine's attempted extortion claim under the Penal Code *were* cognizable— which it is not—dismissal still would be warranted. As previously explained, *see supra*, § I.C.2, a plaintiff asserting an attempted extortion claim must prove "either that he had a pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered." *Levitt*, 765 F.3d at 1133 (explaining that this requirement applies to extortion claims under California and federal law). Once again, WP Engine cannot satisfy either requirement. WP Engine alleges that between "September 17 to September 20, 2024," Defendants threatened to disparage WP Engine and ban it from the WordPress community unless it agreed to pay "tens of millions of dollars" for a trademark license. Compl. ¶¶ 141-142. But WP Engine fails to allege any pre-existing right to not have Defendants express disparaging opinions about WP Engine. *See also infra*, § I.G (explaining that Defendants' allegedly defamatory remarks are nonactionable opinions). And for the same reasons noted above, WP Engine cannot plausibly allege that it had a right not to be blocked from the Website, or that Defendants had no basis to see a trademark license. *See supra* at § I.C.2. Accordingly, even assuming WP Engine's claim for attempted extortion under the Penal Code were cognizable, WP Engine has failed to plausibly allege a critical element of its purported claim.

> 2.  While California law permits claims to recover money obtained in response to an extortionate threat, WP Engine has not plausibly alleged any such claim here.

Faced with the case law cited above, WP Engine may try to distance itself from the Penal Code and seek refuge in California's cause of action for economic duress—which California courts sometimes refer to as "civil extortion." *Fuhrman v. Cal. Satellite Sys.*, 231 Cal. Rptr. 113,

122 (Cal. Ct. App. 1986), *rev'd on other grounds*, 786 P.2d 365 (Cal. 1990). "However denominated," this tort "is essentially a cause of action for moneys obtained by duress, a form of fraud." *Id.* To state a claim under this theory of liability, WP Engine must plausibly allege that Defendants knew their claim for a trademark license was false and that WP Engine suffered monetary loss as a result of the threats. *See id.* at 122–123; *Raiser v. Ventura Coll. of L.*, No. CV 09-00254 RGK (AGRx), 2009 WL 10692058, at *2 (C.D. Cal. Sept. 1, 2009); *Am. Shooting Ctr., Inc. v. Secfor Int'l*, No. 13cv1847 BTM(JMA), 2015 WL 1914924, at *4 (S.D. Cal. Apr. 27, 2015). WP Engine must also satisfy the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b). *Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 WL 5990190, at *13 (C.D. Cal. May 4, 2021).

WP Engine has not come close to meeting those pleading requirements here. For the reasons already noted, WP Engine cannot plausibly allege that Defendants knew they lacked any right to a trademark license. WP Engine also fails to allege (much less with particularity) that Defendants' demand for a trademark license contained a false statement of fact. *Id.* at 13 & n.11. Worse still, there is no plausible allegation that WP Engine "paid any money . . . *because of* the [September 17th through September 20th] *threats*." *Raiser,* 2009 WL 10692058, at *3 (emphasis added). WP Engine bore the burden to plead "a cause and effect relationship between the fraud and damages sought." *Intermarketing Media*, 2021 WL 5990190, at *13 (collecting cases). But WP Engine failed to do so, instead simply asserting that it took "measures" in response to Defendants' threats—without alleging whether such measures were monetary in nature, Compl. ¶ 145—and insisting that it expended "significant resources" to counteract actions that Defendants allegedly took *after* the threats occurred, *id.* ¶ 107. Such allegations are insufficient to establish the requisite causation. *Intermarketing Media*, 2021 WL 5990190, at *13. Any effort WP Engine may make to pivot to a civil extortion claim based on fraud therefore will fail.

**E.     WP Engine Fails to State a Claim for Unfair Competition under Cal. Bus. Prof. Code § 17200 (Count 5)**

California Business and Professions Code § 17200 (the "UCL") prohibits "unfair competition," defined as a " 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3)

1    'unfair.' " *Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 276 (Cal. Ct. App. 2020). WP

2    Engine does not allege any fraudulent conduct by Defendants, instead basing its UCL claim on

3    allegations of unlawful and unfair business activity. Compl. ¶¶ 151-152. WP Engine fails to state a

4    claim on either basis.

5         To state a UCL claim based on an allegedly "unlawful" business practice, WP Engine must

6    plausibly allege that the challenged action violates a statute or regulation. *Shaeffer*, 258 Cal. Rptr.

7    3d at 277; *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020). If the

8    predicate violation underlying the UCL claim also is asserted as an independent cause of action,

9    then a court's dismissal of the independent cause of action automatically will result in the

10   dismissal of the "unlawful" business practice claim. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, No.

11   C-13-3826 EMC, 2013 WL 6354534, at *16 (N.D. Cal. Dec. 5, 2013). Here, the "predicate

12   unlawful act" on which WP Engine's UCL claim is based is its CFAA and attempted extortion

13   claims. Compl. ¶ 151. Because those claims should be dismissed (*see supra*, § I.C and § I.D),

14   there is no unlawful act on which WP Engine's UCL claim can rest.

15        To state a UCL claim based on an allegedly "unfair" business practice, a plaintiff must

16   show that defendants' conduct "threatens an incipient violation of an antitrust law, or violates the

17   policy or spirit of one of those laws because its effects are comparable to or the same as a violation

18   of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v.

19   Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). WP Engine bases its claim under

20   this prong on alleged "anticompetitive animus" arising out of WP Engine's exclusion from the

21   Website. Compl. ¶ 152.

22        But at least one court in this Circuit has expressly rejected WP Engine's reasoning, holding

23   that blocking a competitor from accessing a website is <u>not</u> anticompetitive conduct that can give

24   rise to a UCL claim. *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, No. 2:20-CV-08819-CBM-

25   AS, 2023 WL 2468742, at *2 (C.D. Cal. Feb. 23, 2023). In *CoStar Group, Inc. v. Commercial

26   Real Estate Exchange, Inc.*, Plaintiff CREXi brought the same UCL claim on the same bases that

27   WP Engine asserts here, arguing anticompetitive animus based on denial of access to a website

28   that the defendant made "available to the 'public' for free and continually describe[d] . . . as

'publicly available.' " 619 F. Supp. 3d 983, 991 (C.D. Cal. 2022). Similar to the Website, CoStar served as a repository to which third parties often linked, and on which certain of them had become dependent. *CoStar Grp., Inc.*, 2023 WL 2468742, at *2. And like the situation here, the defendant had blocked Plaintiff CREXi from accessing its websites and database, due to CREXi's alleged abuses. *Id*. In dismissing CREXi's UCL claim, the court held that "CoStar [wa]s not obligated to provide CREXi with access to its websites and database," and that its decision to block such access was not anticompetitive, but "merely a business's legitimate refusal to provide free aid and assistance to a competitor." *Id*. at *2-3; *see also CoStar Grp., Inc.*, 619 F. Supp. 3d at 991–992 (holding as "a matter of law, the information CREXi seeks from CoStar (for free no less) constitutes a form of assistance under the antitrust laws that CoStar is not obligated to provide"). This Court should reach the same conclusion here.

At a more basic level, WP Engine fails to plead incipient anticompetitive conduct because it fails to allege competitive harm. The allegations here involve actions (and harm) against a single competitor. *See, e.g.*, Compl. ¶ 150. But as explained above, *see supra* § II.c, a private company "can refuse to deal with anyone for any reason." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 n.17 (9th Cir. 2007); *MetroNet Servs. Corp. v. Qwest Corp*., 383 F.3d 1124, 1131 (9th Cir. 2004) (noting there is "no duty to aid competitors" (quotation marks omitted)). The antitrust laws, moreover, "were passed for the protection of *competition*, not *competitors*." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993) (emphasis in original) (quotation marks omitted). Yet WP Engine's allegations do little to show how *competition* is impacted here. *See, e.g.*, Compl. ¶ 152 (focusing on Defendants' attempts to "ruin a competitor"). WP Engine does not link its asserted harms to the WordPress brand, ethos, and community to competition more broadly. *See, e.g., id*. ¶¶ 109-111. And although in passing it asserts—in the most conclusory of fashions—that Defendants are attempting "to use their monopoly power," *id*. ¶ 152, it does not allege any facts to back that claim up. Such conclusory assertions cannot survive a motion to dismiss. *See, e.g., Snapkeys, Ltd. v. Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *4 (N.D. Cal. Oct. 30, 2020) (collecting cases dismissing UCL unfairness claims for failure to allege specific conduct that "significantly harmed competition").

**F.      WP Engine Fails to Plead Any Promise on Which Estoppel Can Rest (Count 6)**

To state a claim for promissory estoppel, WP Engine must allege "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012). Promises that are "vague, general or of indeterminate application" do not satisfy the first element of this claim. *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 446 (9th Cir. 1992) (internal quotation marks omitted); *Dixon v. Univ. of S. Cal.*, No. 2:21-cv-05286-VAP-(AFMx), 2021 WL 6496737, at *6 (C.D. Cal. Oct. 20, 2021). Rather, to be adequately pled, the alleged terms of a promise must be sufficiently clear to enable a court to "ascertain the parties' obligations or determine whether those obligations have been performed or breached." *Dixon*, 2021 WL 6496737, at *6 (internal quotation marks and alterations omitted).

Because WP Engine's claim conflates promises about the *WordPress software* with the Website provided by Matt, and because WP Engine fails to plead any clear or unambiguous promise on which this claim could rest, Count 6 should be dismissed.

>              1.   The promise on which Count 6 is based relates to accessibility of WordPress software, which WP Engine does not and cannot plead has been interrupted.

As an initial matter, the promise on which WP Engine bases its claim for promissory estoppel conflates access to the open source WordPress software – which WP Engine does not and cannot allege either Defendant controls or has impacted – with access to the Website.

The promises on which WP Engine bases Count 6 all relate to the WordPress software platform. *See* Compl. ¶¶ 155-156 (referencing "promises to the WordPress plugin developer community regarding the openness and accessibility of ***the*** ***WordPress*** ***platform***," alleging "Defendants encourage [developers] to develop on ***the WordPress platform***," and citing promises that "**WordPress** will forever be **an open platform**"). WP Engine does not, however, plead any injury from relying on a promise to access the WordPress software platform. Rather, the factual allegations in support of this claim all relate to access to the Website. Compl. ¶¶ 44-48. Because WP Engine, in conflating the WordPress software platform and the Website, fails to plead any

factual allegations relating to injury stemming from failure to access the open source WordPress software platform, WP Engine fails to state a claim for promissory estoppel, and Count 6 should be dismissed. *See, e.g., Choudhuri v. Specialized Loan Serv.*, No. 22-cv-06993-JST, 2023 WL 6277327 (N.D. Cal. Sept. 26, 2023) (dismissing estoppel claim where plaintiff had not pled allegations that it was injured by relying on the promises at issue).

> 2. WP Engine fails to plead any promise by Defendants that is sufficiently
> unambiguous to sustain a claim for promissory estoppel.

Even if WP Engine had pled factual allegations related to injury stemming from its reliance on a promise to access the open source WordPress software platform (and it has not), WP Engine's promissory estoppel claim would still be subject to dismissal because the promises alleged are not sufficiently "clear and unambiguous" to support such a claim. *See Laks v. Coast Fed. Sav & Loan Ass'n*, 131 Cal. Rptr. 836, 839 (Cal. Ct. App. 1976).

To sustain a claim for promissory estoppel, an alleged promise "must be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Glen Holly Entm't Inc. v. Tektronic Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003), *amended by* 352 F.3d 367 (9th Cir. 2003) (quoting *Ladas v. Cal. State Auto. Ass'n*, 23 Cal. Rptr. 2d 810, 814 (Cal. Ct. App. 1993)). Where promissory estoppel claims are premised on "vague and undefined" promises, courts properly dismiss them as a result. *See, e.g.*, *Dixon*, 2021 WL 6496737, at *6 (granting motion to dismiss promissory estoppel claim because terms such as "fair, thorough, neutral and impartial" were undefined and vague); *Nguyen v. PennyMac Loan Serv.*, *LLC*, No. SACV 12–01574–CJC(ANx), 2012 WL 6062742, at *8 (C.D. Cal. Dec. 5, 2012) (granting motion to dismiss promissory estoppel claim because the term "work with" was vague).

The promises pled by WP Engine are similarly indefinite. In one example, WP Engine pleads a promise that "the WordPress community 'is united by the spirit of open source, and the freedom to build, transform, and share without barriers. Everyone is welcome.' " Compl. ¶ 44. But the "spirit of open source," the "freedom to build, transform, and share", and references to "everyone" being "welcome" are not specific promises to indefinitely provide unfettered free

access to the Website. In another example, WP Engine pleads a promise that "WordPress 'provides the opportunity for anyone to create and share.'" *Id.* ¶ 44. WP Engine also pleads a promise that Defendants are "committed to being as inclusive and accessible as possible. We want users, regardless of device or ability, to be able to publish content and maintain a website or application built with WordPress." *Id.* But none of these are tantamount to a specific promise to provide access to all resources on the Website for free and in perpetuity. It is not possible, based on these statements, to "determine the scope of the duty, and the limits of performance" they entail. *Glen Holly*, 343 F.3d at 1017.

Similarly, with respect to the supposed promises made on the site www.developer.WordPress.org, WP Engine acknowledges that there a number of caveats and conditions to those pledges on the site itself. That site expressly states that Plugins are not approved unless there are "no issues with the security, documentation, or presentation." Compl. ¶ 47. Plugins may be "closed for guideline violations, security issues, or by author requests." *Id.* And there is "an authentication system" that "controls access to portions of the WordPress.org site." *Id.* ¶ 45. As these allegations make clear, WP Engine is well aware that Defendants' indeterminate and broad-sweeping pledges of "free and open access"— themselves insufficient to state a claim for promissory estoppel— are not without condition, and any reliance on unconditional openness or accessibility to the contrary of those conditions was not reasonable. *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1996) ("[R]eliance must be reasonable to set up an estoppel").

### G.      WP Engine Fails to State a Claim For Libel, Trade Libel, or Slander (Counts 9-11)

For the same reasons that WP Engine fails to establish a probability of succeeding on the merits of its libel, trade libel, and slander claims as required under the anti-SLAPP statute and as explained in Defendants' concurrently-filed Motion to Strike, WP Engine also fails to state a claim for relief under Rule 12(b)(6). To the extent the Court holds that these claims are not appropriate for dismissal under the anti-SLAPP statute, it should dismiss them under Rule 12(b)(6).

As explained in Defendants' concurrently-filed Motion to Strike, WP Engine's claims for

libel, trade libel, and slander all fail because (1) Matt's statements consist of protected opinion—either opinions based on disclosed facts, non-actionable rhetorical hyperbole or other statements that cannot be construed in context as stating actual facts, or both, *see Herring Networks, Inc. v. Maddow,* 8 F.4th 1148, 1159 (9th Cir. 2021); (2) WP Engine has failed to plausibly plead material falsity, as is required for speech like this involving matters of public concern, *see Vogel v. Felice*, 26 Cal. Rptr. 3d 350, 362 (Cal. Ct. App. 2005); (3) WP Engine has failed to plausibly plead actual malice, as is required because it voluntarily inserted itself into public controversies surrounding the sustainability of open source communities and the role of private equity in the same—and thereby became a limited purpose public figure, *see Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 926 (9th Cir. 2022); (4) with respect to its trade libel claim, WP Engine has failed to plausibly allege specific financial harm, *see Muddy Waters, LLC v. Superior Ct.*, 277 Cal. Rptr. 3d 204, 221 (Cal. Ct. App. 2021); and (5) with respect to its claims against Automattic, WP Engine has failed to state a claim for vicarious liability based on Matt's statements, which are not plausibly pleaded as coming from the company, *see Westhoff Vertriebsges mbH v. Berg*, No. 22-CV-0938-BAS-SBC, 2023 WL 5811843, at *15 (S.D. Cal. Sept. 6, 2023). For those same reasons, Counts 9-11 should be dismissed under Rule 12(b)(6). *See* Defendants' concurrently filed Motion to Strike Allegations in Plaintiff's Complaint; *Est. of B.H. v. Netflix, Inc.*, No. 4:21-cv-06561-YGR, 2022 WL 551701, at *4 (N.D. Cal. Jan. 12, 2022) (granting both special motion to strike and motion to dismiss where, as here, the anti-SLAPP motion to strike challenges the legal sufficiency of a claim).

## II. Counts 3 and 9-11 Should be Dismissed Against Defendant Automattic

In addition to the general deficiencies in WP Engine's allegations against both Defendants, Counts 3 and 9-11 should be dismissed as against Automattic for an additional reason: the Complaint's utter failure to plead any conduct *by Automattic* on which those claims could rest. In order to meet the pleading requirements of *Iqbal/Twombly*, a claimant must plead factual allegations specific to each defendant. *See, e.g., Ochre LLC v. Rockwell Architecture Plan. and Design, P.C.*, No. 12 Civ. 2837(KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (holding that plaintiff's failure to isolate the key allegations against each defendant supported dismissal under *Twombly* and *Iqbal*). At a minimum, the complaint must "give the defendant fair notice of

what the plaintiff's claim is and the grounds upon which it rests." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (internal quotations omitted). "This means that […] the statement of claim must at least set forth minimal facts as to who did what to whom, when, where, and why." *Id.* (internal quotations omitted).

Here, WP Engine has lodged eleven claims for relief, all against both Matt and Automattic. But WP Engine fails to plead any factual allegations against Automattic to support Counts 3 or 9-11. Rather, the "who" identified in connection with the allegations underlying each such claim is Matt and Matt alone, including by the express language of WP Engine's allegations which repeatedly identify "Mullenweg" or his website – WordPress.org, as their subject. The Complaint's identification of Matt alone tracks the subject matter of each such claim. WP Engine's CFAA claim (Count 3) concerns the blocking of WP Engine's servers from certain resources on Matt's website: WordPress.org (Compl. ¶ 132; and its defamation-based claims (Counts 9-11) rely on statements of opinion made by Matt in his capacity as a sovereign individual, *see e.g.*, Compl. ¶¶ 179-208). And while WP Engine avers that Matt's conduct giving rise to Counts 9-11—namely, statements made by Matt in his individual capacity during a Wordcamp, on WordPress.org, and in individual interviews—was "on behalf of Automattic," WP Engine pleads no basis for this conclusory assertion. (Compl. ¶¶ 180-181, 189-190, 198, 200). Because WP Engine has failed to plead any factual assertions against Automattic for Count 3, and its allegations against Automattic in Counts 9-11 are nothing more than conclusory assertions, Counts 3 and 9-11 must be dismissed as against Automattic. *Corazan v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) (dismissing claims for "undifferentiated pleading against multiple defendants" (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Counts 1-6 and 9-11 of the Complaint should be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

2   Dated: October 30, 2024          By:   /s/ Michael M. Maddigan
                                            Michael M. Maddigan
3

4          **HOGAN LOVELLS US LLP**
           Michael M. Maddigan (Bar No. 163450)
5          Jiaxing (Kyle) Xu (Bar No. 344100)
           Neal Kumar Katyal, *pro hac vice*
6          Anna Kurian Shaw, *pro hac vice*
           Lauren Cury, *pro hac vice*
7          Hadley Dreibelbis, *pro hac vice*

8          *Attorneys for Defendants Automattic Inc. and*
           *Matthew Charles Mullenweg*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28