1  Michael M. Maddigan (Bar No. 163450)
   michael.maddigan@hoganlovells.com
2  **HOGAN LOVELLS US LLP**
   1999 Avenue of the Stars, Suite 1400
3  Los Angeles, CA 90067
   Telephone: (310) 785-4600
4

5  Neal Kumar Katyal, *pro hac vice*
   neal.katyal@hoganlovells.com
6  Anna Kurian Shaw, *pro hac vice*
   anna.shaw@hoganlovells.com
7  Lauren Cury, *pro hac vice*
   lauren.cury@hoganlovells.com
8  Hadley Dreibelbis, *pro hac vice*
   hadley.dreibelbis@hoganlovells.com
9  **HOGAN LOVELLS US LLP**
   555 Thirteenth Street NW
10 Washington, D.C. 20004
   Telephone: (202) 637-5600
11
12 Jiaxing (Kyle) Xu (Bar No. 344100)
   kyle.xu@hoganlovells.com
13 **HOGAN LOVELLS US LLP**
   4 Embarcadero Center, Suite 3500
14 San Francisco, CA 94103
   Telephone: (415) 374-2300
15
16 *Attorneys for Defendants Automattic Inc. and
   Matthew Charles Mullenweg*
17

18            **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
19                    **SAN FRANCISCO DIVISION**

20 WPENGINE, INC., a Delaware corporation,      Case No. 3:24-cv-06917-AMO
21
        Plaintiff,                              **DEFENDANTS AUTOMATTIC INC. AND**
22                                              **MATTHEW CHARLES MULLENWEG'S**
        vs.                                     **NOTICE OF MOTION AND MOTION TO**
23                                              **STRIKE PURSUANT TO C.C.P. 425.16;**
   AUTOMATTIC INC., a Delaware                  **MEMORANDUM OF POINTS AND**
24 corporation; and MATTHEW CHARLES             **AUTHORITIES**
   MULLENWEG, an individual,
25                                              Judge: Hon. Araceli Martinez-Olguin
        Defendants.                             Courtroom: 10
26                                              Hearing Date: March 6, 2025
                                                Hearing Time: 2:00 p.m.
27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

NOTICE OF MOTION & MOTION .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

INTRODUCTION .................................................................................................................. 2

FACTUAL BACKGROUND ................................................................................................ 4

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT .......................................................................................................................... 7

I.      Causes of Action Nine Through Eleven Are Subject to an Anti-SLAPP Motion ............ 7

        A.      WP Engine's Claims Arise from Defendants' Protected Activity ......................... 7

        B.      WP Engine Cannot Demonstrate a Likelihood of Prevailing on Its Claims ........... 9

II.     Matt's Statements Are Non-Actionable Opinion ............................................................ 10

        A.      Opinions Are Protected by the First Amendment and California Law ................ 10

        B.      All of the Statements in Question Are Non-Actionable Opinion .......................... 12

III.    WP Engine Has Not Pleaded or Demonstrated Material Falsity ................................... 16

IV.     WP Engine is a Limited Purpose Public Figure and Cannot Show a Probability
        of Prevailing in Establishing Actual Malice ................................................................ 18

V.      WP Engine Cannot Demonstrate the Direct Financial Harm Required for a
        Trade Libel Claim ......................................................................................................... 22

VI.     Vicarious Liability Does Not Attach to Automattic ..................................................... 23

CONCLUSION ..................................................................................................................... 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*Ampex Corp. v. Cargle*,
128 Cal. App. 4th 1569 (2005) ............................................................................ 8, 21

*Art of Living Found. v. Does*,
No. 10-CV-05022-LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011) .................. 10, 15, 16

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ............................................................................................ 22

*Bartholomew v. YouTube, LLC.*,
17 Cal. App. 5th 1217 (2017) ............................................................................... 11

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ................................................................................ 10, 13, 14

*ComputerXpress, Inc. v. Jackson*,
93 Cal. App. 4th 993 (2001) ................................................................................. 11, 14

*Doe v. Gangland Prods., Inc.*,
730 F.3d 946 (9th Cir. 2013) ................................................................................ 8

*Ferlauto v. Hamsher*,
74 Cal. App. 4th 1394 (1999) ............................................................................... 11, 14

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
569 F. Supp. 2d 929 (N.D. Cal. 2008) ................................................................. 22, 23

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ................................................................................ 11

*Harkonen v. Fleming*,
880 F. Supp. 2d 1071 (N.D. Cal. 2012) ............................................................... 9, 19

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ................................................................................. 11, 14, 16

*Holden v. Target Corp.*,
No. 16-cv-02217-JST, 2016 WL 3938950 (N.D. Cal. July 21, 2016) ................... 11

*Iglesia Ni Cristo v. Cayabyab*,
No. 18-cv-00561-BLF, 2019 WL 3997474 (N.D. Cal. Aug. 23, 2019) .................. 7

*In re Bah*,
    321 B.R. 41 (B.A.P. 9th Cir. 2005) ...................................................................................... 7

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ......................................................................................... 7

*Koch v. Goldway*,
    817 F.2d 507 (9th Cir. 1987) ......................................................................................... 11

*Mann v. Quality Old Time Serv., Inc.*,
    120 Cal. App. 4th 90 (2004) ......................................................................................... 22

*Mann v. Quality Old Time Serv., Inc.*,
    139 Cal. App. 4th 328 (2006) ....................................................................................... 22

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) ..................................................................................................... 16

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 (2007) .................................................................................. 19, 24

*Muddy Waters, LLC v. Superior Ct.*,
    62 Cal. App. 5th 905 (2021) ......................................................................................... 22

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) .................................................................... 15, 21

*Nygard Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) .................................................................................... 8, 9

*Oumere LLC v. Zarpas*,
    No. 8:21-CV-00224-DOC(JDEx), 2021 WL 2894643 (C.D. Cal. June 29, 2021) ................. 9

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ......................................................................................... 11

*Peak Health Ctr. v. Dorfman*,
    No. 19-CV-04145-VKD, 2020 WL 887935 (N.D. Cal. Feb. 24, 2020) ............................. 8

*Planet Aid, Inc. v. Reveal*,
    44 F.4th 918 (9th Cir. 2022) ............................................................................... 19, 20, 21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ......................................................................................... 7

*Reader's Dig. Ass'n v. Superior Ct.*,
    37 Cal. 3d 244 (1984) ................................................................................................... 19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE

1
2
*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005 (N.D. Cal. 2017) ...................................................................... 14, 15, 21

3
*Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*,
   105 Cal. App. 4th 913 (2003) ....................................................................................................... 8

4
5
*Ruiz v. Harbor View Cmty. Assn.*,
   134 Cal. App. 4th 1456 (2005) ..................................................................................................... 8

6
*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................................................................... 2, 7

7
8
*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ...................................................................................................... 11

9
10
*Sonoma Media Invs., LLC v. Superior Ct.*,
   34 Cal. App. 5th 24 (2019), *as modified* (Apr. 8, 2019) ................................................. 16, 18

11
*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ..................................................................................................................... 19

12
13
*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ..................................................................................................... 12

14
15
*Stossel v. Meta Platforms, Inc.*,
   634 F. Supp. 3d 743 (N.D. Cal. 2022) ..................................................................................... 14

16
*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) .................................................................................................... 10

17
18
*Todd v. Lovecruft*,
   No. 19-cv-01751-DMR, 2020 WL 60199 (N.D. Cal. Jan. 6, 2020) ....................................... 8

19
20
*Verizon Delaware, Inc. v. Covad Commc'ns Co.*,
   377 F.3d 1081 (9th Cir. 2004) ..................................................................................................... 7

21
*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................................................... 8

22
23
*Vogel v. Felice*,
   127 Cal. App. 4th 1006 (2005) .................................................................................................. 16

24
25
*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ....................................................................................................... 7

26
*Weller v. Am. Broad. Cos.*,
   232 Cal. App. 3d 991 (1991) ..................................................................................................... 10

27
28

*Westhoff Vertriebsges mbH v. Berg*,
   No. 22-cv-0938-BAS-SBC, 2023 WL 5811843 (S.D. Cal. Sept. 6, 2023) ............................ 24

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) ....................................................................... 13, 19, 21

*Zuru, Inc. v. Glassdoor, Inc.*,
   614 F. Supp. 3d 697 (N.D. Cal. 2022) ................................................................................... 16

**STATUTES:**

Cal. Civ. Proc. Code § 425.16(a) .................................................................................................. 6

Cal. Civ. Proc. Code § 425.16(b)(1) .......................................................................................... 6, 7

Cal. Civ. Proc. Code § 425.16(c) .................................................................................................. 6

Cal. Civ. Proc. Code § 425.16(e)(2) .............................................................................................. 8

Cal. Civ. Proc. Code § 425.16(e)(4) .............................................................................................. 8

## NOTICE OF MOTION & MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, March 6, 2025, at 2:00 p.m. Pacific time, or as soon as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, before the Honorable Araceli Martinez-Olguin, Defendants Automattic Inc. ("**Automattic**") and Matthew Charles Mullenweg ("**Matt**" and, collectively with Automattic, "**Defendants**") will and hereby do move this Court for an Order striking without leave to amend the following portions of Plaintiff WPEngine, Inc.'s ("**WP Engine**" or "**Plaintiff**") Complaint, pursuant to California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16(b)(1), and Rule 12(f) of the Federal Rules of Civil Procedure ("**FRCP**"); awarding them legal fees and costs incurred in connection with this motion pursuant to Cal. Civ. Proc. Code § 425.16(c), in an amount to be determined by future motion, and providing such other and further relief as the Court deems appropriate. The specific portions of the Complaint that Defendants move to strike are as follows: (1) Paragraphs 179-187 in their entirety (comprising Cause of Action Nine of the Complaint); (2) Paragraphs 188-196 in their entirety (comprising Cause of Action Ten of the Complaint); (3) Paragraphs 197-208 in their entirety (comprising Cause of Action Eleven of the Complaint); and (4) Paragraphs 8 and 9 of the "Prayer for Relief."

This Motion is based on this Notice of Motion; the following Memorandum of Points and Authorities in support thereof; the Declaration of Matthew Mullenweg in Support of Defendants' Motion to Strike and in Opposition to the Motion for Preliminary Injunction ("**Mullenweg Decl.**"), and the exhibits thereto (referred to herein as "**Mullenweg Ex.**"); the Court's record in this action; all matters of which the Court may take judicial notice; and such documentary and oral evidence as may be presented at or before the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Defendants request that the Court grant its anti-SLAPP motion because (a) WP Engine's Causes of Action 9-11 arise out of Matt's exercise of his constitutional right of free speech in connection with a public issue; and (b) WP Engine cannot show a probability of prevailing on any of those causes of action. Accordingly, Defendants request an order striking Causes of Action Nine,

Ten and Eleven of WP Engine's Complaint, and awarding Defendants their attorneys' fees and other defense costs incurred under California Code of Civil Procedure §425.16(c).

### INTRODUCTION

WP Engine's Complaint largely complains about Defendants' actions. This motion concerns the portions of the Complaint that focus on Matt's words: WP Engine's causes of action for libel, trade libel, and slander (Causes of Action 9-11). Those claims fail as a matter of law and must be struck under California's anti-SLAPP law because they improperly seek to impose liability for commentary and debate on an issue of public interest—namely, WP Engine's commitment (or lack thereof) to the WordPress community—without any valid basis. WP Engine's attempt to stifle public discussion of those issues via these claims violates California law and should be stopped here.

WP Engine premises its defamation claims on five statements made by Matt over the course of a week in several different public forums. Two were made at the final session of 2024 WordCamp US on September 20, a major WordPress community live event in Portland, Oregon attended by thousands of website hosts, developers, and other interested parties. Two others were made in blog posts. The last was made during a live tech-focused Twitch streaming show on September 26 dedicated to discussing and critiquing those prior statements. All of the statements in question concerned WP Engine's offerings, their failings, and how those failings tended to diminish the broader WordPress community. Because those public statements are plainly on matters of public interest—among other things, the health and success of the WordPress software platform on which over 43 percent of all websites are based—WP Engine's claims can only survive this motion if WP Engine demonstrates a probability of success on the merits. *See, e.g.*, *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (outlining the legal standard applied by California's anti-SLAPP statute). WP Engine cannot do so for numerous reasons.

Initially, the statements in question are all protected by the First Amendment and California law as opinion. They include protected opinions based on disclosed facts, such as Matt's views about the quality of WP Engine's offerings based on their acknowledged modifications to WordPress's default settings, or his opinions about WP Engine's lack of dedication to the WordPress

community based on its low level of contributions to the development and maintenance of WordPress. They also include epithets, rhetorical hyperbole, and other non-literal assertions—for example, Matt's opinion that WP Engine is "parasitic" to the WordPress community—which cannot be proven true or false and are not actionable.

Emblematic are WP Engine's claims based on Matt's statement during a live streaming interview that despite being a "half-billion dollar business," WP Engine had not "given anything back." No reasonable listener would parse this statement, as WP Engine wrongfully attempts to do, as a factual assertion that WP Engine had given literally *nothing* back to the WordPress community. That is because, as the Complaint concedes, Matt immediately went on to reference the "40 hours per week" WP Engine had contributed to the "Five for the Future" program dedicated to maintaining WordPress (discussed more below) and the roughly "100 grand per year" at which he valued those hours. The plain meaning of Matt's commentary, then, based on the entire context of the statements in question, was that WP Engine's contributions were *insufficient*. Reasonable people can disagree as to whether WP Engine's contributions were or were not sufficient, and WP Engine is not obliged to agree with Matt's views. But WP Engine has no basis under the law for seeking to stifle those opinions via litigation.

Nor has WP Engine adequately alleged (much less shown) that the statements in question are substantially false, as is its burden. And even if its defamation claims were cognizable, WP Engine cannot show the requisite level of fault. WP Engine, which claims to host more than 1.5 million websites and to be "the most trusted platform for WordPress," is a public figure or at least a limited purpose public figure in the WordPress community, which WP Engine claims to have reached out to target with tens of millions of dollars in marketing and related expenditures tied to its commitment to the WordPress community—the very subject of the statements in question. As a public figure (and in all events for its trade libel claim), WP Engine must plead and prove that the statements in question were made with knowing falsity or reckless disregard for the truth, which it cannot do.

The claims against Automattic fail for the additional reason that none of the statements are attributable to the company. The Complaint acknowledges Matt's various "roles" with respect to

1  WordPress. For all the statements at issue—none of which were published by Automattic—Matt

2  was speaking and writing in his individual capacity as WordPress's co-founder, and not as CEO of

3  Automattic. There is no basis to impute his statements to the company. For these and other reasons,

4  WP Engine's ninth, tenth, and eleventh causes of action should be stricken.

5                                    **FACTUAL BACKGROUND**

6         **WordPress and Automattic.** Matt is a co-founder of the open source software WordPress,

7  which today, powers over 43% of the web. Compl. ¶ 29. Matt and his co-founder released the first

8  version of his program in 2003. *Id.* ¶ 29. Since then, fifty major versions of the software have been

9  released, and it is continuously enriched by the worldwide ecosystem and community that support

10  it. *Id.* ¶ 21.

11         In 2005, Matt founded Automattic, which offers managed WordPress hosting services. *Id.* ¶

12  30. Matt is Automattic's CEO and President. *Id.* ¶ 10. Separate from the WordPress software and

13  Automattic, there is a website that Matt supports called WordPress.org (the "**Website**"). Mullenweg

14  Decl. ¶ 5. Matt created the Website to support the WordPress community and software, and the

15  Website hosts a blog where Matt shares his thoughts on various issues affecting the WordPress

16  community. *Id.* ¶¶ 5, 9.

17         Matt is also responsible for introducing the Five for the Future initiative in 2014. That

18  program calls on companies benefiting from WordPress to sign a "pledge" to contribute their time

19  and efforts to core development, translation, and training (among other things), with the overarching

20  goal of supporting the sustained growth of the WordPress project. Mullenweg Ex. 5; Request for

21  Judicial Notice ("**RJN**", Dkt. 37), Ex. 8. Participating organizations sponsor individual employees

22  or teams to contribute a dedicated number of hours per week to supporting and maintaining and

23  developing WordPress. Mullenweg Ex. 5. The contributions called for by Five for the Future are

24  definitionally distinct from self-promotional marketing efforts, such as advertising or WordCamp

25  sponsorship. Since its launch, hundreds of companies have signed the Five for the Future pledge,

26  Mullenweg Decl. ¶ 15, and WP Engine signed in 2020. RJN Ex. 8; Compl. ¶ 25.

27         **WP Engine.** WP Engine is a website hosting service built on the back of WordPress software

28  and has been controlled by private equity firm Silver Lake since 2018. Compl. ¶ 8; RJN Exs. 12,

13. In the years following Silver Lake's control of WP Engine, WP Engine's priorities seemingly shifted towards maximizing profits. For example, to decrease its hosting costs, WP Engine substantially modified its WordPress offering, disabling a core WordPress feature: revisions. Mullenweg Ex. 7.

WP Engine has spent significant sums to market itself to the WordPress community, including through sponsored content and sponsoring WordPress events. *See* Compl. ¶¶ 21, 24-26, 62. One of those events is WordCamp US, the largest annual gathering of the WordPress community in the Americas. Mullenweg Decl. ¶ 11, Ex. 1; Compl. ¶¶ 21, 24.

**WordCamp 2024.** On September 20, 2024, Matt led a Q&A session at WordCamp US, where he spoke in his individual capacity as a WordPress co-founder. Compl. ¶ 50; Mullenweg Decl. ¶ 13, Ex. 3. A video recording of the session was later posted on WordPress's YouTube channel. Mullenweg Ex. 4. During the Q&A session, Matt spoke about current issues affecting WordPress and open source, including, among other topics, the Five for the Future initiative, the ways in which for-profit companies can donate resources back to WordPress, and the role of private equity in the open source community. *Id.*

Following 2024 WordCamp US, Matt continued his commentary on those topics, via two blog posts for the Website on September 21 and September 25. Mullenweg Exs. 7, 9. In those posts, Matt highlighted WP Engine's decision to disable revisions (that is, the feature that allows WordPress website creators to track changes, akin to an audit trail) by default, only allowing revisions to be enabled when users contact WP Engine's support. Mullenweg Exs. 7, 9. Matt understood this modification to be unique to WP Engine, and an example of the ways in which private equity's profit interests can interfere with WordPress's core promises and functions. Mullenweg Decl. ¶ 24, Ex. 7.

On September 26, Matt learned that his ongoing debate with WP Engine, including his posts and comments over the prior days, were being discussed on a tech-focused Twitch livestream show hosted by Michael B. Paulson, the creator of the "ThePrimeTime" YouTube channel. Mullenweg Decl. ¶ 30. Matt joined the livestream to discuss the ongoing debate. *Id.* Portions of the livestream were later posted to the ThePrimeTime YouTube channel. *Id.* ¶¶ 30-31, Ex. 10; RJN Ex. 30.

**Alleged Defamation.** The Complaint alleges that five statements Matt made between September 20 and September 26 are false and defamatory (the "**Statements**"). The first two Statements were made during Matt's Q&A session at 2024 WordCamp US, and are as follows:

Statement One: "[T]hat [WP Engine] was one of a number of 'parasitic entities' who 'just want to feed off' WordPress 'without giving anything back.'" Compl. ¶ 199.

Statement Two: "[T]hat [WP Engine] aims to "squeeze every last bit out of the business and for open source communities, it can be fatal.'" *Id.* ¶ 199.

The next two Statements were made on September 21 and September 25, respectively, and appear on the Website:

Statement Three: "What WP Engine gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it." *Id.* ¶ 180.

Statement Four: "WP Engine is free to offer their hacked up, bastardized simulacra of WordPress's GPL code to their customers, and they can experience WordPress as WP Engine envisions it, with them getting all of the profits and providing all of the services." *Id.* ¶ 181.

The fifth Statement was made during Matt's September 26 appearance on Mr. Paulson's livestream show:

Statement Five: "[WP Engine has] built a half[-]billion dollar business, they've given nothing back to WordPress, they were contributing 40 hours per week. So call that 100 grand per year. They sponsored WordCamp for 75 grand, we allowed them to be a top sponsor, by the way, lots of people want those spots.'" *Id.* ¶ 200.

Defendants now move to strike WP Engine's slander claim, based on Statements One, Two, and Five, and libel and trade libel claims, based on Statements Three and Four.

## LEGAL STANDARD

Enacted more than 30 years ago, California's anti-SLAPP law is intended to "encourage continued participation in matters of public significance" and to prevent restriction of such participation "through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). The anti-SLAPP law empowers defendants to make a "special motion to strike" if a cause of action against

them arises "from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue[.]" *Id.* § 425.16(b)(1). The anti-SLAPP statute applies in federal question cases with pendent state law claims, like this one. *See In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005). The anti-SLAPP statute mandates that a prevailing defendant "shall" recover attorney's fees and costs incurred in bringing the motion to strike. Cal. Civ. Proc. Code § 425.16(c); *accord Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[D]efendants . . . are entitled to attorneys' fees and costs when they prevail.").

A court considering an anti-SLAPP motion proceeds in two steps. First, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (citation omitted). Once a court finds that such a showing has been made, the burden shifts to the plaintiff to demonstrate "a reasonable probability [of] prevail[ing]" on the claims in question. *Id.* (citation omitted).

Where an anti-SLAPP motion is based on a complaint's facial legal deficiencies, the motion is "treated in the same manner as a motion under Rule 12(b)(6)." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). For those purposes, the Court can take into account the full context of the Statements under the incorporation-by-reference doctrine. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court can also take into account matters subject to judicial notice, like press articles. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). However, the Court also can consider evidence in ruling on an anti-SLAPP motion where defendants attack the factual basis for bringing a claim. *See Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2019 WL 3997474, at *3 (N.D. Cal. Aug. 23, 2019). When evaluating the factual sufficiency of a claim, the Rule 56 standard applies. *Id.*; *Planned Parenthood*, 890 F.3d at 833-834.

## ARGUMENT

## I.   Causes of Action Nine Through Eleven Are Subject to an Anti-SLAPP Motion.

### A.   WP Engine's Claims Arise from Defendants' Protected Activity.

WP Engine's defamation claims arise from acts of free speech, triggering application of the anti-SLAPP law, because the Statements—the basis for Causes of Action 9-11, *see supra* at pp. 5-6—were made in public forums about issues of public interest.

A defendant meets its burden of showing that a suit arises from its act of free speech by showing that the plaintiff's claims arise from "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(b)(1), (e)(2), (e)(4). The defendant's burden "is not a particularly demanding one," *Todd v. Lovecruft*, No. 19-cv-01751-DMR, 2020 WL 60199, at *11 (N.D. Cal. Jan. 6, 2020) (citation omitted), particularly in light of the statutory directive that the anti-SLAPP law be "construed broadly." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (citation omitted). The Statements here clearly qualify for multiple reasons.

**Public forum.** For purposes of the anti-SLAPP law, "public forums" include publicly accessible websites. *See Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2020 WL 887935, at *10 (N.D. Cal. Feb. 24, 2020); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (Yahoo! message board). Here, WP Engine's libel and trade libel claims arise out of statements made on the Website, which is widely accessible and open to the public. *Supra* at pp. 4, 6. WP Engine's slander claim arises out of statements made at WordCamp US, itself a public event (Compl. ¶ 198; Mullenweg Decl. ¶ 11; *see also* Declaration of Heather Brunner ("**Brunner Decl.**", Dkt. 21), ¶ 29)), and interviews posted on Twitch and YouTube, also public websites.

**Issue of Public Interest.** Courts interpret "public issue" and "public interest" broadly to include "any issue in which the public is interested," *Nygard Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008), or a "topic of widespread, public interest." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 (9th Cir. 2013) (quoting *Rivero v. Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003)). Statements on issues of public interest made to a limited but definable portion of the public are considered public issues. *See, e.g.*, *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468-69 (2005) (letters written in the context of a dispute over

approval of building plans were an issue of public interest to the 523 residents in the community).

Each of the Statements undoubtedly concern a matter of considerable general public interest: the health and future success of WordPress, the software on which over 43 percent of all websites run. Compl. ¶ 29. Additionally, the quality and efficacy of WP Engine's offerings, which are marketed and sold to the public, is a matter of public concern. *See Id.* ¶ 20 ("[WP Engine] . . . is used on more than 1.5 million websites, including by businesses, individuals, charities, schools, and governmental agencies that rely on WP Engine to keep their websites up and running"); *see also Dorfman*, 2020 WL 887935, at *10 ("quality and contents of consumer goods are matters of public interest" (citing *Nygard*, 159 Cal. App. 4th at 1042)); *Oumere LLC v. Zarpas*, No. 8:21-CV-00224-DOC(JDEx), 2021 WL 2894643, at *2 (C.D. Cal. June 29, 2021) (Reddit post reviewing experience with plaintiff's products and cautioning readers about their effectiveness was an issue of public interest).

These Statements were not only made to the broader public, but primarily to interested members of the WordPress community, which includes among others website content managers, agencies and hosts, and other members of the public who are interested in open-source issues and supportive of the open web. Compl. ¶ 21. By way of example only, WordCamp US attracts thousands of attendees each year, and Matt's recorded Q&A session published on YouTube has received more than 14,000 views from the general public since it was posted on September 21, 2024. Mullenweg Decl. ¶ 14. The video-recording posted on ThePrimeTime's YouTube channel of Matt's appearance on Mr. Paulson's show, has generated more than 203,000 views. *Id.* ¶ 31. These viewership numbers alone clearly demonstrate that Matt's Statements concerned a topic of widespread, public interest, not least to the WordPress community.

Because Defendants have met their burden of showing that the relevant claims arise from acts of free speech, the burden shifts to WP Engine to show its probability of success on those claims.

### B.      WP Engine Cannot Demonstrate a Likelihood of Prevailing on Its Claims.

WP Engine cannot show "a probability of prevailing on [its] claims," as is required to overcome an anti-SLAPP motion. *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal.

2012) (citation omitted). WP Engine has brought three claims subject to the anti-SLAPP statute: libel, trade libel, and slander. The elements of a libel or slander claim include "(1) 'the intentional publication' of (2) 'a statement of fact' that (3) is 'false' (4) 'unprivileged,' and (5) 'has a natural tendency to injure or which causes special damage.'" *Id.* (citation omitted). WP Engine's trade libel claim requires: "(1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages." *Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *9 (N.D. Cal. June 15, 2011).

WP Engine cannot meet its burden of showing a probability of success on these claims, for the reasons set out below: (1) the Statements consist of protected opinion; (2) the Statements involved matters of public concern, and as such, WP Engine must also plead and prove falsity, which it has failed to do; (3) WP Engine's status as a limited purpose public figure requires it to plausibly allege and show actual malice, which WP Engine has not done and cannot do; and (4) with respect to the trade libel claim specifically, WP Engine has failed to plausibly plead or produce evidence of direct financial harm resulting from Matt's Statements made on the Website. Moreover, there is no basis for holding Automattic liable for any of the Statements because they were not made within the scope of Matt's employment and are not otherwise attributable to Automattic.

## II.     Matt's Statements Are Non-Actionable Opinion.

WP Engine's claims fail because each of the Statements are opinion. Matt expressly disclosed the facts on which his Statements were based, and WP Engine does not allege (and will not be able to show) that any of those underlying facts are false. To the extent the Statements are not based on disclosed facts, they are rhetorical hyperbole, cannot otherwise be understood as stating actual facts, and are not actionable.

### A.     Opinions Are Protected by the First Amendment and California Law.

"Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-696 (2012) (citation omitted). "California defamation law requires that the offending statement 'expressly or impliedly assert a fact that is susceptible to being proved false,' and must be able reasonably to be 'interpreted as stating actual facts.'" *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730

(9th Cir. 1999) (quoting *Weller v. Am. Broad. Cos.*, 232 Cal. App. 3d 991, 1001 (1991)).

"Statements are less likely to be expressions of fact where—as here—the speaker fully discloses all relevant facts." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159 (9th Cir. 2021); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.").

Additionally, "'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of . . . contempt,' and language used 'in a loose, figurative sense'" are not defamatory as a matter of law. *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) (citation omitted); *see also Holden v. Target Corp.*, No. 16-cv-02217-JST, 2016 WL 3938950, at *5 (N.D. Cal. July 21, 2016) ("[S]atirical, hyperbolic, imaginative, or figurative statements are protected because the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact." (citation omitted)). For example, courts have found disparaging comments to be statements of opinion where they "were part of an on-going, free-wheeling and highly animated exchange about [a] company and were full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents, such as corporate press releases or SEC filings." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1011-12 (2001) (internal quotation marks omitted).

"Whether an allegedly defamatory statement is one of opinion or fact is a question of law." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). In answering this question, courts consider all the facts and circumstances, including the language used, the statement's full context, the nature and full content of the communication, and the knowledge and understanding of the audience to whom it was directed. *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809-810 (2002); *Bartholomew v. YouTube, LLC.*, 17 Cal. App. 5th 1217, 1227-28 (2017) ("[T]he publication . . . may not be divided into segments and each portion treated as a separate unit . . . ." (citation omitted)). "Context can be determinative that a statement is opinion and not fact, for the context of a statement may control whether words were *understood in a defamatory sense*." *Koch v. Goldway*, 817 F.2d

507, 509 (9th Cir. 1987) (emphasis added); *Partington*, 56 F.3d at 1154 (stressing the need to provide "room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public").

**B.      All of the Statements in Question Are Non-Actionable Opinion.**

**Statements One and Two.** WP Engine objects to Matt's views about "parasitic entities" "feed[ing] off" of WordPress, and how "squeez[ing] every last bit out of the business" can be "fatal" for "open source communities." Compl. ¶ 199. During the Q&A session in which those Statements were made, Matt disclosed the underlying facts on which his Statements were based: namely, WP Engine is controlled by Silver Lake, a private equity firm; his understanding of the fate of other companies Silver Lake has acquired; and his broader understanding of how private equity operates. As just a few examples, Matt stated:

- "WP Engine has good people, . . . but the company is controlled by Silver Lake, a private equity firm with $102 billion in assets under management."

- "[Silver Lake] bought WP Engine in 2018."

- "I'm going to tell you all about this firm called Silver Lake now. They're the ones with $102 billion under management, and I'm going to call this portion of the talk how private equity can hollow out and destroy open source communities. We're not the first one they're doing this to – there's actually a company called Talend. In 2010, Silver Lake bought 25% of Talend, leading to an aggressive monetization of the open source users; prioritizing commercial conversions over community health. They cycled through four CEOs in seven years and they generated a 20x return for Silver Lake, but the open source community is completely gone."

- "One thing private equity likes to do is like squeeze out the profits, squeeze out the free cash flow."

Mullenweg Ex. 4. WP Engine does not allege that any of these underlying statements are false, and Matt does not imply that any undisclosed fact formed the basis of his comments. Matt's views about WP Engine—positive or negative, hurtful or otherwise—are classic opinions. *See Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir.

1995) (statement is protected where it "appears to disclose all facts on which it is based, and does not imply that there are other, unstated facts supporting the belief").

Additionally, Matt's use of the figurative and hyperbolic phrases "parasitic entity" and "squeeze every bit out" to convey his opinion of private equity's presence in open source communities and companies that benefit from WordPress without contributing sufficient time or resources to support its sustained growth, negates any impression that Statements One and Two are communicating actual facts as opposed to opinions. Whether an entity is or is not "parasitic" or how and whether every "bit" has been "squeezed" from a business are "vague and subjective," and not "specific and measurable claim[s], capable of being proved false." *Coastal Abstract*, 173 F.3d at 731. And the specific and general contexts in which these Statements were made also negate any impression that Matt was conveying specific facts as opposed to opinions. Matt's opinions about WP Engine's "parasitic" behavior were offered during an exploration of the tragedy-of-the-commons theory, and why it made contributions under the Five for the Future initiative—that is, genuine, long-term, and material support from WordPress community members—so important. Mullenweg Ex. 4. Indeed, Statements One and Two were made in the broader context of the 2024 WordCamp US, a setting in which Matt "was invited to impart his opinion of and expertise" on WordPress as one of its co-founders. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1238 (N.D. Cal. 2014). As one of many speakers at the event, and in the context of a live question and answer session with audience members (who themselves are members of the WordPress community), his "contributions were intended to be cast in light of, and potentially in contrast to" the opinions of others in the community. *Id.* "In this context, the audience was likely to understand [Matt's] comments as opinions rather than as factual assertions." *Id.*

**Statements Three and Four.** In his blog posts, Matt disclosed his specific basis for stating that WP Engine's product was "not WordPress," but a "cheap knock-off" and "hacked up, bastardized simulacra": namely, that WP Engine disables revisions by default, such that website hosts have to pay to store revisions; the revisions feature is "at the core of the user promise of protecting your data"; and of all the recommended hosts on the Website that Matt tested, WP Engine was the only one he found that disabled revisions by default. Mullenweg Exs. 7, 9. Again, WP

Engine doesn't challenge any of this. Nor can it, as the fact that WP Engine "has WordPress revisions *disabled* by default" is clearly stated on WP Engine's own website, to which Matt provided a screenshot and a link. Mullenweg Ex. 7 (emphasis in original). Accordingly, Matt's statement about the nature of WP Engine's use of the GPL code and other WordPress features cannot be the basis for a defamation claim, because Matt offered an opinion supported by the factual bases for that opinion, and left the audience free to form its own conclusion based upon the stated facts. *See Maddow,* 8 F.4th at 1159 (statement not considered to be an assertion of fact where defendant "report[ed] the undisputed facts and then transition[ed] into providing 'colorfully expressed' commentary"); *Stossel v. Meta Platforms, Inc*., 634 F. Supp. 3d 743, 758 (N.D. Cal. 2022) (granting motion to dismiss and strike defamation claim where statement "reflect[ed] a subjective interpretation of the contents of the [plaintiff's] video and the [defendant's] assessment of the video's message based on fully disclosed facts").

Matt's use of the colorful and expressive phrases "chopped up, hacked, butchered" and "cheap knock-off" to describe WP Engine's offering in light of its decision to disable revisions by default, which he stated was contrary to the WordPress ethos and a product of private equity interests creeping into open source, is also too broad and figurative to be objectively verifiable. *See, e.g.*, *Ferlauto*, 74 Cal. App. 4th at 1403 ("imaginative phrase 'Kmart Johnnie Cochran' . . . is a lusty and creative expression of contempt, too loose and figurative to be susceptible of being proved true or false"); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (rejecting plaintiff's suggested "overly literal" construction of "destroy" to mean "eliminate completely"; finding audience would have understood the word to be used as hyperbole). Additionally, deeming WP Engine's offering "cheap" and a "knock-off" is inherently subjective, as it is full of assumptions about the criteria by which products are assessed and how competing products compare in terms of subjective, qualitative measures. *See, e.g.*, *Coastal Abstract*, 173 F.3d at 731 ("[D]efendants' assertion that Coastal was too small to handle Shearson's business was vague and subjective. It was not a specific and measurable claim, capable of being proved false . . . .").

Context confirms that that Statements Three and Four were, and would been understood as, offering opinions and not actual facts. They were both made on the Website, which "lack[s] the

characteristics of [a] typical fact-based document[].” *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1012-13 (“disparaging” statements made on internet message board were opinion and not fact, including that plaintiff’s computer product “was of inferior quality” and that plaintiff was “merely a stock ‘scam’”). Further, the posts were made after Matt spoke at 2024 WordCamp US, which he references in the second paragraph of the post in which Statement Three appears (“I spoke yesterday at WordCamp about how Lee Wittlinger at Silver Lake, a private equity firm with $102B assets undermanagement, can hollow out an open source community”), and was thus made in the context of the very public and ongoing date between Matt and WP Engine. Mullenweg Ex. 7. Readers, familiar with that debate, were more likely to understand Statement Three as an expression of Matt’s subjective assessment of WP Engine’s use of WordPress features, and not a statement of fact. *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1106 (N.D. Cal. 1999) (“[I]n the context of the heated debate on the Internet, readers are more likely to understand accusations of lying as figurative, hyperbolic expressions.”); *Art of Living Found.*, 2011 WL 2441898, at *7 (statements made on “obviously critical blogs” in the context of “heated discussion and criticism” were less likely to be viewed as statements of fact by readers).

**Statement Five.** WP Engine complains about Matt’s comment during a streaming Twitch show that WP Engine has “given nothing back to WordPress.” Compl. ¶ 200. However, as WP Engine concedes, Matt immediately proceeded to reference the “40 hours per week” WP Engine had pledged to the Five for the Future program, and the roughly “100 grand per year” that those contributions represented. *Id.* Matt therefore disclosed a fact (WP Engine’s time commitment to the Five for the Future program, as self-reported by WP Engine), and then offered his opinion based on that fact. WP Engine does not claim that the 40-hour-per-week pledge figure is inaccurate. Matt further provided the source for the figure both during the WordCamp 2024 discussion (in which he references the “Five for the Future page[] from . . . WP Engine” and notes “these pledges are just a proxy and aren’t perfectly accurate”), and in his September 21 blog post (linking directly to WP Engine’s Five for the Future pledge page). Mullenweg Exs. 4, 7. Again, this is protected opinion. *See, e.g.*, *Resolute Forest Prods.*, 302 F. Supp. 3d at 1020.

Statement Five was also made during an appearance on a tech-focused internet streaming

1  show dedicated to discussing the ongoing debate between Matt and WP Engine, and indeed

2  assessing Matt's comments and posts over the prior days. Prior to Matt joining the stream, Mr.

3  Paulson discussed the "wild" "WordPress situation" for nearly an hour with his audience, during

4  which he displayed WP Engine's Five for the Future pledge page and discussed Matt's prior

5  comments about the sufficiency of WP Engine's contributions. RJN Ex. 30. In this context, the

6  audience, familiar with the previous days' dispute, would have understood Matt's comment that WP

7  Engine has "given nothing back to WordPress" (Compl. ¶ 200) as non-literal hyperbole, used to

8  convey his opinion that WP Engine's contributions were *insufficient*, rather than take the Statements

9  as a factual assertion that WP Engine had literally given *nothing* back to the community. *See Art of*

10  *Living Found.*, 2011 WL 2441898, at *7 (recognizing "the reality that exaggeration and non-literal

11  commentary have become an integral part of social discourse"); *Maddow*, 8 F.4th at 1159. Other

12  comments Matt made on the show also support this understanding, including his comment that

13  "other hosts give back way *more* than" WP Engine (recognizing it does make *some* contribution).

14                                          * * *

15      Accordingly, Matt's Statements are non-actionable opinion. WP Engine may not like Matt's

16  opinions about private equity in open source or the sufficiency of WP Engine's contributions to the

17  WordPress community, or the language he used to express them, but it has no basis for asking this

18  Court to punish Matt for expressing those opinions.

19  **III.   WP Engine Has Not Pleaded or Demonstrated Material Falsity.**

20      WP Engine's claims also fail because the "disputed statements involve matters of public

21  concern," and WP Engine cannot meet its "burden of showing the statements [Matt] made were

22  false." *Sonoma Media Invs., LLC v. Superior Ct.*, 34 Cal. App. 5th 24, 37, 43 (2019), *as modified*

23  (Apr. 8, 2019) (citation omitted); *see also Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 704

24  n.2 (N.D. Cal. 2022). WP Engine's burden to plead and prove falsity cannot be satisfied, as a matter

25  of law, if it cannot show that the challenged Statements are not substantially true, that is, if "the

26  substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. New Yorker Magazine,*

27  *Inc.*, 501 U.S. 496, 517 (1991) (citation omitted); *see also Vogel v. Felice*, 127 Cal. App. 4th 1006,

28  1021 (2005) ("The plaintiff cannot be said to have carried this burden so long as the statement

1  appears *substantially* true."). Whether the plaintiff has satisfied this requirement is for the court to

2  decide as a matter of law. *See Masson*, 501 U.S. at 517; *Vogel*, 127 Cal. App. 4th at 1021.

3     As discussed *supra* Section I.A, Matt's Statements all involved matters of public concern—

4  that is, the continued success of the WordPress software platform, a critical component of the

5  internet's infrastructure; the contributions made (or not made) by those who profit off WordPress;

6  and the role of private equity in open source communities. Each of these topics relates not only to

7  the larger WordPress community, but the internet as a whole. For this reason, WP Engine must show

8  the material falsity of Matt's Statements. It cannot, as a matter of law.

9     As discussed above, the Statements are not capable of being proven false in the requisite

10 sense. But even if the Statements were considered factual, they are not actionable because has not

11 alleged, and cannot show, they are materially false. With respect to Statements One and Two, it is

12 commonly known, and was Matt's understanding at the time he made the Statements, that private

13 equity firms operate by using investor funding to take over target companies, then driving the

14 company to meet KPIs and derive the maximum profit. Mullenweg Decl. ¶ 20; RJN Ex. 18. As

15 discussed *supra* p. 12, WP Engine does not allege that Matt's underlying statements about Silver

16 Lake's involvement with WP Engine are false. Nor do they contend that Matt has an incorrect

17 understanding of private equity's typical motives and operation.

18    WP Engine asserts that Statements Three and Four, which concern WP Engine's choice to

19 disable revisions by default, are false because (1) WP Engine's WordPress installations are identical

20 to the Website ZIP file that defines WordPress, and (2) WP Engine's services use the identical

21 WordPress GPL code. Compl. ¶ 182; *see also id.* ¶¶ 66-67. WP Engine's claims, however, miss the

22 mark. As set forth, *supra* pp. 13-14, WP Engine acknowledges that it disables WordPress revisions

23 by default. Further, the Complaint does not gainsay Matt's assertions regarding how revisions

24 operate, the vital function they play in managing and protecting content, the costs website hosts

25 incur to store the history of changes, or that WP Engine minimized those costs via disabling

26 revisions by default. *See* Mullenweg Exs. 7, 9. WP Engine's claims about identical WordPress

27 installations or GPL code are not responsive to Matt's actual Statements, and do not plausibly allege

28 or show that his Statements are materially false.

1      With respect to Statement Five, WP Engine does not allege that the "75 grand" figure Matt

2  cited for WP Engine's sponsorship of 2024 WordPress US, or his description of WP Engine's

3  contribution to the Five for the Future program (roughly 40 hours per week), or the estimated

4  monetary value of that contribution ($100,000), was inaccurate. Instead, WP Engine argues that the

5  statement "that [WP Engine] was *only* contributing '40 hours per week' and '75 grand' was false"

6  because "[i]n reality, [WP Engine's] contributions back to WordPress far exceed this," citing its

7  alleged "community involvement" through "events" and "sponsorships" including "sponsorship of

8  WordCamps worldwide." Compl. ¶ 201 (emphasis added). However, Matt never stated that WP

9  Engine's *only* contribution to WordPress was "'40 hours per week' and '75 grand'", as WP Engine

10  attempts to claim. Rather, he made a specific reference to WP Engine's 40-hour-per-week pledged

11  "contribution" to the Five for the Future initiative. Mullenweg Ex. 10. WP Engine's references to

12  its alleged *other* "contributions" to WordPress (which are self-promotional marketing) are irrelevant

13  and do not show that Matt's Statements are materially false. *See Sonoma Media Invs., LLC*, 34 Cal.

14  App. 5th at 38 (no prima facie showing of falsity where plaintiffs failed to unambiguously deny

15  precise alleged defamatory assertion); *Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App.

16  5th 1135, 1163 (2016) (plaintiff "miss[ed] the boat" by criticizing defendant for not using certain

17  information to calculate plaintiff's diversion rates, which plaintiff claimed defendant falsely

18  reported, where defendant did not purport to present that specific information in his figures, and

19  where plaintiff failed to state what its actual diversion rates were); *see also* Mullenweg Ex. 10 (Mr.

20  Paulson stating that "sponsorships don't count because you get – it's you're buying marketing. . . .

21  that's not considered giving, at least I personally don't consider . . . sponsoring a conference giving

22  back to the community."); RJN Ex. 30.

23      Because WP Engine has failed to show that Matt's Statements are materially false even if

24  viewed as factual, WP Engine's claims must be struck.

25  **IV.    WP Engine is a Limited Purpose Public Figure and Cannot Show a Probability of**

26  **Prevailing in Establishing Actual Malice.**

27      By among other things signing the Five for the Future pledge and entering the public debate

28  regarding how for-profit companies contribute to open source communities, WP Engine became a

1    limited purpose public figure. To recover, WP Engine must therefore allege and establish facts that

2    clearly and convincingly show Matt made each Statement with actual malice. It cannot do so.

3         Courts recognize two types of public figures: the "all purpose" public figure, who has

4    "achiev[ed] such pervasive fame or notoriety that he becomes a public figure for all purposes and

5    in all contexts," and the "limited purpose" public figure, who "voluntarily injects himself or is drawn

6    into a particular public controversy and thereby becomes a public figure for a limited range of

7    issues." *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 253 (1984). A limited purpose public

8    figure is found where there is (1) "a public controversy, which means the issue was debated publicly

9    and had foreseeable and substantial ramifications for nonparticipants"; (2) the plaintiff "undert[ook]

10   some voluntary act through which he or she sought to influence resolution of the public issue" which

11   is met where "the plaintiff attempts to thrust him or herself into the public eye"; and (3) the alleged

12   defamation is "germane to the plaintiff's participation in the controversy." *Harkonen*, 880 F. Supp.

13   2d at 1080 (citation omitted).

14        The "voluntariness requirement has been interpreted broadly" such that it can "be satisfied

15   by a showing that a person or entity engaged in a course of conduct that foreseeably put themselves

16   at risk of public scrutiny with respect to a limited range of issues." *Planet Aid, Inc. v. Reveal*, 44

17   F.4th 918, 926 (9th Cir. 2022). In *Planet Aid*, for example, the defendant published a series of

18   articles and podcasts reporting on the plaintiffs' misuse of charitable funds. Affirming the grant of

19   the defendant's anti-SLAPP motion, the Ninth Circuit found that the plaintiffs had voluntarily

20   injected themselves into a public controversy regarding the plaintiffs' general misuse of charitable

21   funds by publicizing their charitable efforts and engaging in "attention-generating activities,"

22   including "seeking attention from the press, promoting themselves through social media, employing

23   public relations staff, and soliciting donations and grants." *Id.* at 927-928.

24        A public-figure plaintiff must show that the defendant made the statement with actual

25   malice, that is, the defendant "either knew his statement was false or subjectively entertained serious

26   doubt his statement was truthful," *i.e.*, "reckless disregard." *Wynn*, 75 F. Supp. 3d at 1234 (citations

27   omitted); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). To survive a motion to strike, even at

28   the pleading stage, a plaintiff must prove actual malice by clear and convincing evidence. *Wynn*, 75

F. Supp. 3d at 1234; *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007). And WP Engine is at least a limited-purpose public figure.

**Public controversy**. There were numerous pre-existing public controversies here. To start, the long-term health of open source software communities like WordPress has long been a subject of public concern and debate. *See, e.g.,* RJN Ex. 21-25. That is, "[t]he world runs on open source technology, but open source communities notoriously face challenges ranging from resource constraints, governance issues, and a dependence on volunteerism, which itself is dependent upon individual passions and constrained time commitments." RJN Ex. 14. Commentators have noted the "tragedy of the commons" problem with open source communities and debated how it can be solved. *See* RJN Ex. 15 (private equity company's 2022 podcast) (discussing for open source communities "this idea that in order to have a well-managed commons, you do need to draw boundaries around membership," and that "[i]t needs to be clear who is allowed to appropriate from the commons and who isn't"); *see also* RJN Ex. 20 (discussing "[h]ow open source projects reveal technology's free rider problem").

So too with the interplay between open source communities and their investors, as "[t]he corporate world's entry into free and open source online communities has caused some serious concerns and friction." RJN Ex. 16. Private equity's entry in particular has also been subjected to scrutiny. *See* RJN Ex. 17. More broadly, private equity's role in the American economy—in particular, on the health of the business it purchases—has attracted widespread public attention and debate. RJN Ex. 18, 19. All of these controversies predated the Statements.

**Public figure.** WP Engine is a limited-purpose public figure because it has actively sought attention about these very topics. As discussed, *supra* p. 4, WP Engine signed the Five for the Future pledge in 2020, through which it "pledged" to contribute time or sponsor resources to supporting the sustained growth of the WordPress project. Compl. ¶ 25; RJN Ex. 8. When WP Engine signed the pledge, it thereby entered the public debate regarding how participants in the WordPress community (and for-profit companies in particular) can donate resources back to WordPress (on which it based its entire business model). After signing the pledge, WP Engine immediately began publicizing its participation, first through its public press release announcing its pledge, and then by

1    heavily advertising itself to the WordPress community. *See, e.g.,* RJN Exs. 8, 26.

2           WP Engine has also spent significant sums trying to market itself to the WordPress

3    community through self-promotional activities, including through sponsored content and sponsoring

4    WordPress events. *See, e.g.,* RJN Exs. 26-29. For example, WP Engine sponsors WordPress

5    community events such as WordCamp conferences and educational events to achieve greater name-

6    recognition amongst the open source community. *See* Compl. ¶¶ 21, 24-26, 62; *see also* Brunner

7    Decl. ¶ 5. WP Engine also hosts the annual DE{CODE} conference, which it advertises on its

8    website as "the industry's largest annual WordPress developer event." RJN Exs. 6, 7; Compl. ¶ 26.

9    In the words of WP Engine's CEO Heather Brunner, WP Engine engages in marketing efforts

10   (distinct from the type of contributions contemplated in the Five for the Future initiative, *supra* at

11   p. 4) to promote itself to the WordPress community "through content like the WordPress Roundup

12   and our Building WordPress series" and "webinars, podcasts, and tutorials on how to get the best

13   out of WordPress supported by [WP Engine's] Developer Relations team." Brunner Decl. ¶ 5.

14          Accordingly, WP Engine has met the voluntariness requirement by consistently inserting

15   itself into the public debate regarding the viability and growth of the open source ecosystem through

16   its extensive "attention-generating activities." *Planet Aid, Inc.*, 44 F.4th 918 at 927-928; *see also*

17   *Ampex Corp.*, 128 Cal. App. 4th at 1578 (corporation and its chairman were limited purpose public

18   figures based on issuance of press release and posting of letters on company web site). And each of

19   Matt's Statements were "related to" these public debates. *Planet Aid, Inc.*, 44 F.4th 918 at 927-928.

20   They all addressed whether WP Engine, a private-equity backed company, was contributing enough

21   in various senses to the open source WordPress community, in view of its massive profits generated

22   off the free labor provided by WordPress users to the WordPress code forming the basis of WP

23   Engine's services. *Supra* at p. 4.

24          **Actual malice.** Because WP Engine is a limited-purpose public figure, it must prove that

25   Matt's Statements were made with either knowledge of their falsity or a reckless disregard for the

26   truth. *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1234. WP Engine cannot do so, because Matt's Statements

27   were protected opinion and not factual, or alternatively, WP Engine has failed to show they were

28   materially false, as discussed *supra* Sections II and III. WP Engine also fails to plead facts that

would make their otherwise conclusory allegations of actual malice plausible (Compl. ¶¶ 184, 203-205), much less facts that would satisfy the "clear and convincing" evidence standard applicable in a defamation action brought by a public figure. *See, e.g.*, *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018; *Nicosia*, 72 F. Supp. 2d at 1109 ("conclusory statements that [a defamation defendant] should have known the truth does not satisfy the heightened pleading standard" of actual malice; granting motion to dismiss).

Because WP Engine has not met its burden to plausibly plead actual malice, and cannot prove it, its Causes of Action 9-11 should be stricken.

**V.     WP Engine Cannot Demonstrate the Direct Financial Harm Required for a Trade Libel Claim.**

In addition to failing on the grounds described above, WP Engine's trade libel claim fails to plausibly allege another required element: WP Engine has not identified any specific third party who was deterred from conducting business with WP Engine as a result of Matt's Statements.

In all trade libel cases, the plaintiff bears the burden of proving that the defamatory publication "has played a material and substantial part in inducing others not to deal with [the plaintiff], and that as a result [the plaintiff] has suffered special damages." *Muddy Waters, LLC v. Superior Ct.*, 62 Cal. App. 5th 905, 925 (2021) (citation omitted). "Thus, unlike a claim for defamation, trade libel requires as an essential element that the plaintiff suffered direct financial harm because someone else acted in reliance on the defendant's statement." *Id.* To establish this element, it "is not enough to show a general decline in [the plaintiff's] business resulting from the falsehood, even where no other cause for it is apparent, . . . it is only the loss of specific sales that can be recovered. This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." *Id.* (citation omitted); *see Mann v. Quality Old Time Serv., Inc.*, 139 Cal. App. 4th 328, 335-336 (2006) (plaintiff failed to establish probability of prevailing on trade libel claim where it "did not present any evidence showing it had suffered a specific pecuniary loss as a result of the defendant's communications") (citing *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004), *disapproved of on other grounds by Baral v. Schnitt*, 1 Cal. 5th 376,

1    376 (2016)); *see also First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F. Supp. 2d

2    929, 938 (N.D. Cal. 2008) (dismissing trade libel claim for failing to plead specific damages).

3          Here, WP Engine has failed to plausibly allege, let alone produce evidence to show, that

4    Matt's Statements deterred any specific third party from conducting business with WP Engine. The

5    Complaint's conclusory allegations that the Statements "played a material and substantial part in

6    inducing" unspecified "existing [WP Engine] customers to stop purchasing [WP Engine's] platform

7    for WordPress websites," including unnamed purported "[WP Engine] customers that otherwise

8    would have purchased [WP Engine's] platform not to do so" (Compl. ¶ 194), are wholly insufficient.

9          Nor can WP Engine's trade libel claim survive based on a single September 22, 2024 post

10   on X.com, made by an unidentified poster, which states "Following the blog [post] by @photomatt,

11   we've decided to remove @wpengine from our hosting lists on @select_wp for now, and we'll add

12   it again after a thorough check. We'll also check if any other hosting is also doing the same." Compl.

13   ¶ 100. The post links to Matt's blog post discussing WP Engine's admitted practice of disabling

14   revisions by default. In doing so, and combined with the poster's statement about checking if "any

15   other hosting is also doing the same," it is clear that the poster's decision to "remove @wpengine

16   from [their] hosting lists" is the result of WP Engine's open and notorious default disabling of

17   revisions. In any event, WP Engine's Complaint fails to establish that any business was actually lost

18   in relation to this post on X.

19         It is telling that WP Engine's preliminary injunction motion includes arguments that, as a

20   result of Matt's actions (and not his words), it has lost customers, but WP Engine does not include

21   any non-conclusory allegations or evidence to support its claim of lost customers and business as a

22   result of Matt's Statements. *See, e.g.*, Mem. ISO PI at 14; *see also First Advantage Background

23   Servs. Corp.*, 569 F. Supp. 2d at 938 (company did not adequately plead special damages where it

24   was "impossible to determine what, if any, damage to its relationship with [third party] [company]

25   claims to have suffered just as a result of the libelous statements" as opposed to company's other

26   alleged claims).

27         Because WP Engine has failed to identify any specific customers or transactions it actually

28   lost as a result of Matt's Statements, its trade libel claim fails.

1    **VI.      Vicarious Liability Does Not Attach to Automattic.**

2            WP Engine's claims against Automattic fail for the additional reason that there is no basis

3    for holding it vicariously liable for Matt's commentary made on the Website's blog and during

4    appearances in his individual capacity as co-founder of WordPress. In defamation cases, *respondeat*

5    *superior* liability is only triggered if the employee's defamation occurred within the scope of his or

6    her employment. *See McGarry*, 154 Cal. App. 4th at 124 n.19. "California law is clear that

7    employers are not strictly or automatically liable for the intentional torts of their employees."

8    *Westhoff Vertriebsges mbH v. Berg*, No. 22-cv-0938-BAS-SBC, 2023 WL 5811843, at *15 (S.D.

9    Cal. Sept. 6, 2023) (refusing to hold company liable for statements made by its CEO, where

10   counterclaimant failed to "allege any facts that track with a cognizable theory that would permit

11   liability for defamation to extend from [the company's] CEO to [the company] itself.").

12           WP Engine rests its defamation claims against Automattic on the conclusory allegations that

13   Matt made the contested Statements "on behalf of Automattic." Compl. ¶¶ 180-181, 189-190, 198,

14   200. However, the Complaint is devoid of any factual support for WP Engine's claim. Among other

15   things, the Complaint does not allege that any of the Statements were published by Automattic

16   (which they were not). WP Engine's conclusory allegations are insufficient to establish that Matt

17   made the Statements as part of or incident to his duties as Automattic's CEO and President. *See,*

18   *e.g.*, *McGarry*, 154 Cal. App. 4th at 118, 123-124 (conclusory allegations insufficient to support

19   *respondeat superior* liability for University for statements contained in an article).

20           In fact, the allegations in the Complaint negate any inference of imputation. The Complaint

21   acknowledges Matt's various "roles" with respect to WordPress. Compl. ¶ 59. WP Engine also

22   concedes that Matt's relationship to WordPress predates Automattic by at least two years, *id.* ¶¶ 29-

23   30, 41, and alleges that the Website is "control[led]" by Matt, not Automattic. *Id.* ¶ 38.

24           Further, Matt's posts and appearances themselves demonstrate that he was not acting within

25   the scope of his employment at Automattic. Matt's written Statements were posted on the Website,

26   where he shares his thoughts on various issues affecting the WordPress community. Mullenweg

27   Decl. ¶ 9. Matt also emphasized throughout the posts that he was sharing his personal opinion by

28   using the singular first-person pronoun "I." Matt appeared at 2024 WordCamp US in his individual

capacity as co-founder of WordPress. Mullenweg Decl. ¶¶ 12-13. The www.WordCamp.org website describes the Q&A session that Matt hosted as one with "Matt Mullenweg, co-founder of WordPress." Mullenweg Decl. ¶ 13, Ex. 3. Matt's appearance on Mr. Paulson's livestream was also in his individual capacity; Matt, was introduced as "Matt," with visuals pointing to his individual X profile, @photomatt. Mullenweg Decl. ¶ 31, Ex. 10.

Because Matt's Statements were made in his personal capacity as a WordPress co-founder, and not as CEO of Automattic, WP Engine's claims against Automattic must fail.

## CONCLUSION

For all of the above reasons, Defendants' motion should be granted, Causes of Action Nine, Ten and Eleven of WP Engine's Complaint should be stricken, and Defendants should be granted their attorneys' fees and other defense costs incurred.

Dated: October 30, 2024

By:  /s/ Michael M. Maddigan
       Michael M. Maddigan

**HOGAN LOVELLS US LLP**
    Michael M. Maddigan (Bar No. 163450)
    Neal Kumar Katyal, *pro hac vice*
    Anna Kurian Shaw, *pro hac vice*
    Lauren Cury, *pro hac vice*
    Jiaxing (Kyle) Xu (Bar No. 344100)
    Hadley Dreibelbis, *pro hac vice*

    *Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*