QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**PLAINTIFF WPENGINE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Honorable Araceli Martínez-Olguín<br>Courtroom: 3, Oakland Courthouse<br>Hearing Date: November 26, 2024<br>Hearing Time: 10:30 a.m. |

**TABLE OF CONTENTS**

**Page**

I. DEFENDANTS' OWN ADMISSIONS CONCLUSIVELY DEMONSTRATE THAT WPE WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ..................... 1

    A. Defendants' Claim that WPE has Not been Harmed Contradicts Mullenweg's Own Admissions ................................................................................................ 2

    B. Defendants' Claim that WPE Has All the Access to Wordpress.org That It Needs Is False ............................................................................................... 3

    C. Defendants Do Not Contest that WPE is Being Harmed By Defendants' Other Technological Bad Acts ................................................................................. 4

    D. Defendants are in No Position to Question WPE's Customer Loss Evidence .......... 4

    E. The Harm to WPE From Defendants' Nuclear War Is Indeed Irreparable ............... 5

II. WPE IS LIKELY TO SUCCEED ON THE MERITS ............................................................. 6

    A. Defendants Are Not Immunized From Liability Merely Because Mullenweg Supposedly Owns The Wordpress.org Domain ............................................................ 6

    B. WPE Is Likely to Succeed On Its CFAA Claim ............................................................ 8

    C. WPE Is Likely To Succeed On Its Attempted Extortion Claim ............................... 9

    D. WPE Is Likely To Succeed On Its Interference Claims .......................................... 11

    E. WPE Is Likely To Succeed On Its UCL Claims ........................................................ 13

III. THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF WPE ....................................... 14

IV. THE PUBLIC INTEREST ALSO STRONGLY FAVORS RELIEF ................................. 14

V. THE COURT SHOULD NOT NARROW THE INJUNCTION ......................................... 15

VI. ONLY A MINIMAL—IF ANY—BOND SHOULD BE REQUIRED .............................. 15

<sub>
</sub>

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020)................................................................................................4

*Animal Legal Def. Fund v. Great Bull Run, LLC*,
    2014 WL 2568685 (N.D. Cal. June 6, 2014).......................................................................13

*Putian Authentic Enterprise Management Co. v. Meta Platforms, Inc.*,
    2022 WL 1171034 (N.D. Cal. Apr. 19, 2022).....................................................................12

*Cohen v. Brown*,
    173 Cal. App. 4th 302 (2009) ..........................................................................................9, 10

*CoStar Group v. Commercial Real Estate Exchange*,
    619 F. Supp. 3d 983 (C.D. Cal. 2022) .............................................................................13, 14

*Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*,
    2019 WL 8631502 (C.D. Cal. Dec. 16, 2019).....................................................................12

*Env't Democracy Project v. Green Sage Mgmt., LLC*,
    2022 WL 4596616 (N.D. Cal. Aug. 23, 2022).......................................................................3

*Epic Games, Inc. v. Apple Inc.*,
    2020 WL 5073937 (N.D. Cal. Aug. 24, 2020).......................................................................7

*Evans Hotels, LLC v. Unite Here! Local 30*,
    2021 WL 10310815 (C.D. Cal. Aug. 26, 2021)...................................................................10

*Frankl ex rel. N.L.R.B. v. HTH Corp.*,
    693 F.3d 1051 (9th Cir. 2012)................................................................................................7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022).......................................................................................6, 8, 13

*Kingston Trio Artists v. Strong*,
    2021 WL 4692406 (C.D. Cal. Aug. 11, 2021) ....................................................................10

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)..............................................................................................11

*Los Angeles Memorial Coliseum Commission v. NFL*,
    634 F.2d 1197 (9th Cir. 1980)................................................................................................6

*Monex Deposit Co. v. Gilliam*,
    666 F. Supp. 2d 1135 (C.D. Cal. Sept. 4, 2009) .................................................................11

*Nexsales Corp. v. Salebuild, Inc.*,
    2012 WL 216260 (N.D. Cal. Jan 24, 2012) .................................................................. 12

*Panerese v. Shiekh Shoes, LLC*,
    2020 WL 7041083 (E.D.N.Y. Dec. 1, 2020) .................................................................. 7

*Payroll Resource Group v. HealthEquity, Inc.*,
    2024 WL 4194795 (N.D. Cal. Sept. 12, 2024) ............................................................ 13

*Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*,
    648 F.3d 295 (6th Cir. 2011) ........................................................................................ 9

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ........................................................................................ 6

*Sampson v. Murray*,
    415 U.S. 61 (1974) ....................................................................................................... 6

*SkyHop Techs., Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023) ..................................................................................... 9

*Terrier, LLC v. HCAFranchise Corp.*,
    2022 WL 4280251 (D. Nev. Sept. 15, 2022) ................................................................ 4

*Tran v. Eat Club, Inc.*,
    2020 WL 4812634 (Cal. Ct. App. Aug. 18, 2020) ........................................................ 9

*Tran v. Nguyen*,
    97 Cal. App. 5th 523 (2023) ....................................................................................... 10

*Van Buren v. United States*,
    593 U.S. 374 (2021) ................................................................................................... 10

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
    42 Cal. App. 4th 507 (1996) ....................................................................................... 14

*Workgroup Tech. Partners, Inc. v. Anthem, Inc.*,
    2016 WL 424960 (D. Me. Feb. 3, 2016) .................................................................... 10

**<u>Statutes</u>**

1030(a)(7)(A) and 1030(a)(7)(C) ............................................................................................ 10

On the very same day Defendants filed their opposition to WPE's preliminary injunction motion, arguing that an injunction should not issue because WPE has suffered no harm and certainly none caused by Defendants, Defendant Matthew Mullenweg announced from a public stage, with a wide grin on his face and a microphone in his hand:

> [S]ince this started [with WPE] ***they've had uh, we estimate tens of thousands of customers leave***. . . . So, um you know, I think ***over the next few weeks, they're actually gonna lose far more than 8% of their business . . . we're at war with them. We're . . . going to go brick by brick and take . . . take every single one of their customers . . . if they weren't around guess what? . . . We'd happily have those customers, and in fact we're getting a lot of them***.

Against the backdrop of Mullenweg's dispositive admissions, it is difficult to take Defendants' opposition arguments seriously. But it is easy to reject them as they are, charitably put, meritless and uninformed. Defendants admit they have harmed WPE, as they set out to do, and have made multiple threats of future harm as well. Under controlling precedent, the type of harm Defendants have chosen to inflict—such as customer losses and reputational damage—is indeed considered irreparable.

Nor do Defendants' merits arguments fare any better, as they too appear to have been written in an alternate universe where Defendants' actions and admissions do not exist. Defendants' conduct reflects a textbook case of attempted extortion, intentional interference, and unfair competition. WPE is likely to succeed on all three of its claims presented here.

Defendants' admissions also confirm that the injunction WPE seeks would impose no burden or hardship whatsoever on Defendants. Indeed, when asked recently about the pendency of these preliminary injunction proceedings before this Court, Mullenweg nonchalantly brushed them off: "***[I]f we lose the injunction, what happens? Well we have to go back to the state of what they were doing beforehand, where they access wordpress.org, <u>so that's fine</u>***." And of course, it should be no burden on anyone to stop extorting their competitor and interfering with its customer relationships. WPE respectfully requests that an injunction issue as soon as possible, before Defendants can carry out any further steps in their self-proclaimed nuclear war.

## I. <u>DEFENDANTS' OWN ADMISSIONS CONCLUSIVELY DEMONSTRATE THAT WPE WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION[1]</u>

---

[1] Defendants' opposition improperly invokes arguments by directing the Court to other briefs. *See,*

### A.     Defendants' Claim that WPE has Not been Harmed Contradicts Mullenweg's Own Admissions

Defendants' lead argument astonishingly claims that WPE has not shown that it is being harmed at all—much less by Defendants. Defendants' own admissions conclusively refute that baseless argument. Defendants ***have expressly taken credit*** for disrupting WPE's operations, interfering with its customer relationships, hurting WPE's valuation, and other harms. For example:

- Mullenweg threatened that if WPE did not pay up, Defendants would take a "scorched earth nuclear approach" to WPE. Brunner (Dkt. 21) ¶ 22; *see also* Brunner (Dkt. 21-6) Ex. F (Mullenweg demanding payment prior to keynote, or Defendants would go "nuclear").
- In response to a tweet speculating that Automattic would buy WPE for $2.5 billion plus stock, Mullenweg responded, "I don't think they're worth a fraction of that now. Customers are leaving in droves. … It's a distressed asset." Jenkins (Dkt. 18-10) Ex. 10.
- Mullenweg: "I suspect there are going to be millions of sites moving away from [WPE's] ACF Plugin in the coming weeks." Jenkins (Dkt. 18-11) Ex. 11.
- Mullenweg: "Hmm, I guess you'll have to wait and see why people might not trust ACF as much going forward." Brunner (Dkt. 21-9) Ex. I.
- Mullenweg: "You know it it's been widely rumored that they were shopping around and trying to sell WP Engine earlier in the year, um trying to get a $2 billion valuation . . . if I were valuing WP Engine it would be under their revenue right now … um, yeah, they're losing a lot of customers." Slobodyanyuk Ex. 1 at 25:42-26:27, Ex. 2 at 12.
- "[W]e're at war with [WPE]. We're [] going to go brick by brick and take … every single one of their customers." Slobodyanyuk Ex. 1 at 26:30-36, and Ex. 2 at 12.
- "[S]ince this started they've had uh, we estimate tens of thousands of customers leave." Slobodyanyuk Ex. 1 at 9:17-23, Ex. 2 at 5.

Moreover, Defendants do not deny that Mullenweg has promised to find *additional* ways to harm WPE. *See, e.g.*, Mot. 14; Teichman (Dkt. 20) ¶ 28 (Mullenweg promising "oh, there's more"); Brunner (Dkt. 21) ¶¶ 53 (Mullenweg bragging "I have a lot to work with"), 59 (Mullenweg promising more "surprises"); Slobodyanyuk Ex. 1 at 9:40-46, Ex. 2 at 5 ("over the next few weeks, they're actually gonna lose far more than 8% of their business"). And as a matter of common sense, it should surprise no one that waging a self-proclaimed ***nuclear war*** against a company, with the stated intent to destroy their business, would foreseeably lead to harm, including loss of customer trust, goodwill, and

---

*e.g.*, Opp. 15, 20, 21. All arguments that depend on facts, argument, or citations not appearing on the face of the opposition should be disregarded. *See* Civil Local Rule 7-2; Standing Order § H(3).

market share—particularly given Mullenweg's position as CEO of one of the largest competitors to WPE and self-anointed leader of the open-source WordPress project. Opp. 10-12.

Defendants' attempts to deny the obvious fall flat. For instance, cherry-picked online reviews (Opp. 11) do not support Defendants' insinuation that WPE is a poorly run company, let alone that it could not be injured by a nuclear war. In truth, the source shows that WPE has an average rating of 4.7 out of 5. Jenkins Reply Decl. Ex. 47. Automattic's Trustpilot rating is 1.8 out of 5, and Automattic's wordpress.com, has a rating of 1.6. *Id.* Exs. 48, 49. Defendants' related argument is to call WPE's harms "self-inflicted." Opp. 14. Defendants are wrong again. Defendants do not have the unilateral right to arbitrarily exclude WPE from wordpress.org, *infra* § II.A, and in any event being on the receiving end of a "nuclear" attack does not make the results of that attack "self-inflicted." Defendants' citations confirm this case has nothing to do with "self-inflicted" injury.[2]

Defendants' claim that WPE faces no threat of harm cannot be reconciled with their own admissions, and should be rejected out of hand.

**B. Defendants' Claim that WPE Has All the Access to Wordpress.org That It Needs Is False**

Defendants claim that they have not blocked WPE from accessing the WordPress software and plugins on wordpress.org, and thus, everything is fine. That is false. Defendants have blocked and continue to block WPE and its customers from being able to access wordpress.org from the "*administrative panels*" on their WordPress websites. Prabhakar Reply ¶¶ 3-4. This is not a "tool of convenience" as Defendants suggest, but in fact, is critical to the functioning of WPE's business. Prabhakar Reply ¶¶ 3-8. By blocking this access, Defendants have prevented WPE from updating its own plugins on wordpress.org, the domain where, incidentally, community guidelines require all plugins be loaded to and updated from. Prabhakar Reply ¶¶ 4, 9-10. Blocking access also prevents

---

[2] *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) (noting that if the government was incapable of quickly determining the necessary facts, that itself would demonstrate a problem in the asylum system); *Terrier, LLC v. HCAFranchise Corp.*, 2022 WL 4280251, at *4, 8-9 (D. Nev. Sept. 15, 2022) (injunction request failed, including because plaintiff had agreed to a fully-formed plan for when and how its business relationship with defendant would end); *Env't Democracy Project v. Green Sage Mgmt., LLC*, 2022 WL 4596616, at *1, 3, 5 (N.D. Cal. Aug. 23, 2022) (defendants could not argue *against* an injunction by claiming it would cause harm to an *illegally* operating business).

WPE's customers from downloading themes and plugins listed on wordpress.org from the administrative panels on their WordPress websites, among other things. Prabhakar Reply ¶¶ 3-8.

Defendants have admitted that their blocking WPE's access to wordpress.org is inflicting harm. Mullenweg has bragged that, since the blocking, "WPE hasn't been able to make updates, plugin directory, theme directory, and Openverse work on their sites." Prabhakar Reply ¶ 3. Indeed, when soliciting WPE's customers, Defendants freely admit that "WP Engine's access to Wordpress.org has been restricted, which could impact sites." Teichman (Dkt. 20-16) Ex. P. And Mullenweg also claims WPE's mirror of the plugin repository runs more slowly such that he tells WordPress users that he wouldn't recommend "touching [it] with a ten-foot pole." Prabhakar Reply ¶ 7.[3]

### C. Defendants Do Not Contest that WPE is Being Harmed By Defendants' Other Technological Bad Acts

Defendants also have expropriated WPE's ACF plugin, a hugely popular asset that has two million customers and was responsible for 15% of WPE's ACF PRO paid subscriptions. Mot. 4-5; Teichman ¶ 40. Defendants also redesigned the wordpress.org login screen to require users to check a box stating they are "not affiliated with WP Engine" in order to access the site—thus requiring, under implied threat of sanctions or other harm, that WPE's customers, users, partners, employees and vendors must choose between ending their affiliation with WPE or using any resources—they cannot do both. Mot. 12. And Defendants' blocking WPE from wordpress.org means WPE cannot effectively maintain and support its plugins because it cannot communicate with developers to discuss bugs or security issues, reply to feature requests, or discuss updates. Prabhakar Reply ¶ 11. Defendants do not even address whether these actions have inflicted ongoing harm to WPE.

### D. Defendants are in No Position to Question WPE's Customer Loss Evidence

Defendants claim both that there is insufficient evidence of WPE customer losses, and that if

---

[3] Defendants' other arguments mislead as well. For instance, Defendants suggest that WPE can reduce the harm it is suffering, such as by using workarounds that do not require access to the "administrative panel," or having people download plugins from its websites. Opp. 8-9. But Defendants ignore that they have designed wordpress.org to make such workarounds impossible for practical purposes. Wordpress.org is hard-coded into the WordPress software, forcing it to "call back" to that site for updates and patches, and rendering the software and the site intertwined, by design—apparently to give Mullenweg complete control of the entire supposedly open WordPress ecosystem, unbeknownst to community members. Prabhakar Reply ¶ 10.

there are, the losses do not have any connection to Defendants' actions. Whether there are losses is not in dispute for the simple reason that, remarkably, on the same day their Opposition was filed with the Court, Mullenweg bragged publicly that Defendants have **corroborating evidence** of WPE's customer losses and believe that more losses are coming—though they strategically chose not to submit their evidence to this Court, perhaps because it unequivocally contradicts their own opposition arguments: "[S]ince this started [with WPE] they've had uh, **we estimate** tens of thousands of customers leave. . . . So, um you know, I think over the next few weeks, they're actually gonna lose far more than 8% of their business . . . we're at war with them. We're . . . going to go brick by brick and take . . . take every single one of their customers . . . ." Slobodyanyuk Ex. 1 at 9:17-46, 26:30-36, Ex. 2 at 5, 12. WPE invites Defendants to bring that corroborating evidence to the November 26 hearing on WPE's preliminary injunction motion, to eliminate any doubt that WPE has been harmed by Defendants here. And Mullenweg's comments leave no room to doubt that not only have Defendants' actions caused this injury, but that this is exactly what they intended. This, even apart from the fact that Defendants are in no position to quibble with WPE's customer loss evidence. See Teichman (Dkt. 20) ¶¶ 30-39 (WPE customer loss evidence showing rate of new customer signups and cancellations before and after Defendants blocked WPE's access to wordpress.org, and customer statements expressly tying their actions to Defendants' actions).

### E.   The Harm to WPE From Defendants' Nuclear War Is Indeed Irreparable

Lastly, Defendants urge that WPE's harm, if any, is not irreparable. But threats of ongoing harm of the types WPE is suffering here are regularly recognized by courts as being "irreparable." Mot. 22-24. Nor does it matter, as Defendants claim, that some cases WPE cited were from the "trade secret" arena. Opp. 14. Defendants provide no law or logic as to why customer loss, market share, relationship, and goodwill damages would be "irreparable" for one cause of action, but not another.

Defendants also argue that, because WPE provided some data about how many customers were lost in late September, it must be that all harms can be remedied by a future jury award. Not so. A few-week headcount statistic does not itself put a value on consumer trust, goodwill, reputation, market share, or the damage that Defendants' actions are having on the credibility and viability of the WordPress ecosystem as a whole. Indeed, even with respect to *those customers*, the data is just in

terms of headcount—not projections of future revenue from them.

The *Rent-A-Center* case Defendants cite only confirms the merits of WPE's motion. In *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597 (9th Cir. 1991), an injunction was upheld because allowing a new store to enter the market would risk damage to "advertising efforts," "recruitment efforts," or "goodwill." *Id*. at 603. WPE has shown a risk of similar categories of harm. Defendants' other cases are inapposite. In *Los Angeles Memorial Coliseum Commission v. NFL*, 634 F.2d 1197 (9th Cir. 1980), a stadium sued the NFL to try to block a bylaw regarding team movement. But no team had even requested permission from the NFL to move, meaning the injunction failed because there was no showing of a threat of *any* injury. *Id.* at 1201-02. And in *Sampson v. Murray*, 415 U.S. 61, 90-91 (1974), an employee who was statutorily entitled to back pay could not show irreparable harm -- irrelevant here.

## II. <u>WPE IS LIKELY TO SUCCEED ON THE MERITS</u>

Defendants concede the "sliding scale" approach, where a plaintiff need only show "serious questions" on the merits, as long as the other factors are met. Opp. 7; *see also* Mot. 16-17. Injunctive relief preserving the status quo ante is appropriate as serious questions indisputably exist.

### A. Defendants Are Not Immunized From Liability Merely Because Mullenweg Supposedly Owns The Wordpress.org Domain

Mullenweg urges that because he owns the wordpress.org domain, he can do as he pleases with it, and thus, denying WPE access to it cannot give rise to any form of liability. Not so. Defendants cite no cases holding that ownership of property creates absolute immunity from liability with respect to how that property is used. Indeed, courts have required websites to unblock users who have been excluded from the website on unlawful grounds. In *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th 1180 (9th Cir. 2022), the plaintiff sued for access to LinkedIn after it was banned for data-scraping activities. *Id*. at 1187-88. Although LinkedIn argued that data-scraping violated its user agreements, the Ninth Circuit found other facts—such as the selective nature of LinkedIn's enforcement—to create sufficient issues that a preliminary injunction was appropriate until the parties' actual rights were sorted out. *Id*.

at 1202. *See also Epic Games, Inc. v. Apple Inc.*, 2020 WL 5073937, at *5 (N.D. Cal. Aug. 24, 2020).[4] Simply put, "it's my website" is not the excuse Defendants posit.

Even more importantly, as this lawsuit will demonstrate, Mullenweg has enticed investments into the WordPress ecosystem by hiding his supposed right and his apparent willingness to demand payments merely for operating WordPress technologies. In addition to Defendants' repeated assurances that WordPress was free and open "for the world," and would be even beyond Mullenweg's lifetime (Jenkins (Dkt. 18-2) Ex. 2), statements affirmatively made on Mullenweg's own website, wordpress.org, represent:

> "*No one*" owns wordpress.org, "***WordPress.org is not 'owned' in the traditional sense, as it's an open-source project***," "***no one owns WordPress.org for practical purposes***," "***WordPress.org operates*** as a community-driven platform distributing open-source software, ***with no traditional ownership***."

Jenkins Reply Decl. Exs. 37, 38. Simultaneously, for more than a decade Mullenweg has held wordpress.org out as a community asset and invited—if not required—community members like WPE and many others to donate thousands of hours of free labor to create and improve its content, purportedly for the community's benefit. At no time did Mullenweg ever disclose to these volunteers that their labor was serving to personally enrich him, and that he secretly reserved the right to ban any or all of these volunteers from wordpress.org if he felt like it, after having relied on and taken advantage of the efforts and goodwill of those volunteers. Defendants must face the consequences of their deception, manipulation and greed. *See also generally* Dkt. 1 (Compl.) ¶¶ 154-58.

Further, and despite Defendants' promises that WordPress will forever be an open platform, Defendants now try to fault WPE for not securing a "contract" to guarantee access to wordpress.org. Opp. 1. But again, statements on wordpress.org itself represent to the community that "***[t]here's no entity to sign any agreement***" with wordpress.org in the first place. Jenkins Reply Decl. Ex. 38. These representations were made by multiple individuals, including wordpress.org's own moderators, many of whom are employees of Automattic. Jenkins Reply Decl. Exs. 37, 38. Nor are there any terms of service warning that if a user is deemed by Mullenweg to not be contributing enough to his

---

[4] *See also generally, e.g.*, *Frankl ex rel. N.L.R.B. v. HTH Corp.*, 693 F.3d 1051, 1064 (9th Cir. 2012) (injunction to force access to defendant's business property); *Panerese v. Shiekh Shoes, LLC*, 2020 WL 7041083, at *4 (E.D.N.Y. Dec. 1, 2020) (injunction to force changes to website).

wordpress.org website, it could result in termination of access.

Mullenweg's ownership argument is further undermined given that wordpress.org has always operated as, and been understood as, a community asset. That is, wordpress.org is *hard-coded* into how WordPress is designed to work; the open source WordPress code built by the entire community of developers thus has callbacks and references to wordpress.org over 1,500 times, such as for installing new plugins, themes, updates, improvements and patches. Prabhakar Reply ¶ 10. Indeed, developers of WordPress code are required to develop updates to flow through wordpress.org. Prabhakar Reply ¶¶ 4-5, 8. WordPress users are warned not to use any versions of WordPress hosted anywhere else, although despite that warning, Defendants have created a situation where WPE has no alternative but to do so. Prabhakar Reply ¶¶ 4, 8. By design, WordPress software cannot stand alone from wordpress.org; they are deeply intertwined. In sum, Mullenweg's unilateral declaration of omnipotence free from consequence is wrong as a matter of fact, law and equity. His (recently claimed) ownership of wordpress.org gives him no such rights.

### B. WPE Is Likely to Succeed On Its CFAA Claim

Defendants tried to extort millions of dollars out of WPE under threat of breaking the functionality of WordPress systems served by WPE. Defendants primarily argue WPE is unharmed, Opp. 16, but that claim is frivolous as discussed above. As to their takeover of the ACF plugin, Defendants claim WPE can still control its own version of ACF and give it to new customers. Opp. 17. But Defendants installed *their* alternate plugin into the systems of at least hundreds of thousands of former users of WPE's plugin without their consent, breaking the ACF system and stealing WPE's users. *See* Prabhakar (Dkt. 19)¶¶ 24-26 . Thus, WPE's CFAA claim is likely to succeed. Mot. 19-20.

To distract from the unavoidable likelihood of success WPE has shown on its CFAA claim, Defendants argue that "to the extent that" the claim is "related to [Defendants'] own computer systems," such (unidentified) portions of the scheme are immune, because no "hacking" was involved. Opp. 16. But WPE's claims concern the ability of WPE and WPE's customers to operate normally within a highly integrated network of systems—not Defendants' computers alone. In any event, Defendants' suggestion only "hacking" is actionable is simply wrong.

While *hiQ Labs*, 31 F.4th 1180 and *Van Buren v. United States*, 593 U.S. 374 (2021) happened

to involve disputes over theft of information, the CFAA is not so limited. Violations of sections 1030(a)(7)(A) and 1030(a)(7)(C) require no unauthorized access or "hacking." All of Defendants' actions involve "impairment to the integrity or availability of data, a program, a system, or information," and so no part of Defendants' scheme is immune. Mot. 17-18; *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 301 (6th Cir. 2011) (activity that "diminishes a plaintiff's ability to use data or a system—causes damage" under the CFAA); *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1225-26 (11th Cir. 2023) (same); *Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, 2016 WL 424960, at *23 (D. Me. Feb. 3, 2016) (the CFAA says "simply 'a protected computer,' 'any computer,' and 'a computer'—not 'a computer not owned by the [perpetrator]'").

At bottom, Defendants held the normal functioning of a group of interconnected computer systems hostage to a demand for money, including (with respect to the ACF takeover) by re-writing software on other user's computers. That is the classic "high-tech variation on old fashioned extortion" that Section 1030(a)(7) was enacted to combat. S. Rept. 104-357 at 12 ("Unlawful threats could include interference ***in any way*** with the normal operation of the computer or system in question, such as denying access to authorized users, erasing or corrupting data or programs, slowing down the operation of the computer or system . . . .") (emphasis added).

### C. WPE Is Likely To Succeed On Its Attempted Extortion Claim

Defendants' acts also give rise to a claim for attempted extortion. Mot. 18-19. Defendants assert no such claim exists. Opp. 18. But common law rights can develop independently of any particular statute. *Tran v. Nguyen*, 97 Cal. App. 5th 523, 529 (2023) (civil cause of action for extortion exists despite criminal statute's silence "because a statutory right and a common law right that is developed independently of that statute, exist separate and apart from each other"). While some decisions have refused to extend the logic to situations where the extortionist was rebuffed, the better-reasoned courts recognize harm can be found even in such situations, as is the case here, where the attempted extortionist carried out a vengeful war to punish the resisting party. *See* Mot. 18-19; *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. Sept. 4, 2009) (the fact that plaintiff did not pay money to attempted extortionist was not fatal to tort claim, where there were other ways the plaintiff was harmed as a result of the scheme); *Cohen v. Brown*, 173 Cal. App. 4th 302, 318 (2009)

("[]he threat made by an extortionist does not have to succeed in producing an exchange of money in order to constitute extortion"). The cases Defendants cite do not justify adopting any other conclusion.[5] Moreover, here the extortion attempt is *ongoing*—*i.e.*, Defendants *continue* to try to destroy WPE while telling them it could all go away if a multi-million dollar payment is made. Slobodyanyuk Ex. 1 at 26:32-45, Ex. 2 at 12 (Mullenweg: "We're either going to go brick by brick and take . . . every single one of their customers or . . . they could end this all tomorrow . . . would happily uh negotiate, you know Heather, Lee, if you're watching this, like, happy to talk, you know how to reach me.") These blatant, ongoing threats of harm cry out for preliminary injunctive relief.

As for whether Defendants engaged in extortionate acts, the facts are uncontroverted. They demanded an absurd amount of money for a purported trademark license that WPE did not need, under threat of causing significant, irreparable harm, and gave WPE mere hours to pay up or face the consequences. While Mullenweg chose to file a declaration in opposition to WPE's Motion, curiously, he did not say a single thing about these text messages. He did not dispute any of them, or attach any other of his (or WPE's) contemporaneous text messages. Mullenweg's failure to respond or address the text messages anywhere in his declaration is a tacit admission of their extortionate nature.[6] This more than suffices to state a claim, and to meet WPE's burden on this emergency motion, as "the action that is threatened unless money is paid may itself not be an illegal action but instead, it is the coupling of the threat of that action with the demand for money that constitutes the illegality; and [] it is immaterial to the crime of extortion that the purpose of the threat is to collect money justly due the extortionist." *Cohen*, 173 Cal. App. 4th at 318. And though "immaterial," here no money was "justly due the extortionist," the Defendants.

---

[5] In *Kingston Trio Artists v. Strong*, 2021 WL 4692406, at *5 (C.D. Cal. Aug. 11, 2021), the court provided no analysis, because the plaintiff provided no citations on the point. In *Evans Hotels, LLC v. Unite Here! Local 30*, 2021 WL 10310815, at *28 (C.D. Cal. Aug. 26, 2021), plaintiff tried to bring a claim based on the penal code itself, not the common law. And in *Tran v. Eat Club, Inc.*, 2020 WL 4812634, at *20 (Cal. Ct. App. Aug. 18, 2020) (unpublished), the court simply concluded that, no matter what label was given, the plaintiff had not suffered any damages.

[6] Mullenweg's silence is particularly notable given that after his extortionate text messages were made public, he claimed that WPE only selectively excerpted his texts to tell a slanted story, and that the full set of texts would somehow redeem him and reveal that this was just a routine, non-extortive business discussion. *See* Slobodyanyuk Ex. 3 at 13:30-36, Ex. 4 at 6 ("[T]hey cherry pick the text messages to publish . . . I would love for them to publish everything."); *id.* Ex. 1 at 8:32-37, Ex. 2 at 4 ("So they've selectively released some of my texts, none of hers by the way.")

Defendants argue the extortion claim fails for not showing the conduct was "wrongful" under the standards used for a Hobbs Act violation, as set forth in *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130-31 (9th Cir. 2014). Defendants assert WPE must show Defendants "had no right to seek payment for the service offered" *or* WPE "had a pre-existing right to be free from the threatened harm." Opp. 18-19. Even if that standard governed, and though WPE would only have to show one or the other, WPE satisfies both prongs of the Hobbs Act standard.

As for Defendants' right to make a demand, they had no such right. Defendants again ignore reality by portraying this as a run-of-the-mill set of negotiations over a trademark. The facts demonstrate otherwise. The "trademark" assertion is and always was a sham. Mot. 21-22; Teichman (Dkt. 20) ¶¶ 8-20; Dkt. 1 (Complaint) ¶¶ 22-28, 49, 159-78. Defendants' failure to send WPE any sort of a request regarding or objection to WPE's trademark uses prior to making their demand for tens of millions of dollars, coupled with their ongoing failure to make out an *actual* case of infringement, is conclusive. Moreover, Mullenweg's admission that he set the 8% "license fee" **based on how much money WPE has** (*i.e.*, free cash flow), as opposed to tying it to any claimed value pertaining to any particular trademark use, only underscores the extortionate nature of his demand. Slobodyanyuk Ex. 1 at 10:40-58, Ex. 2 at 5.

As for WPE's right to be free from the threatened harm, Defendants' own characterization of the events at issue—***scorched earth, nuclear approach***—similarly make this an easy issue to decide. Even if there was a legitimate trademark dispute (which there is not), an infringement action—not nuclear war—would have been the appropriate response. Defendants assert that Mullenweg has a right to cut off access to wordpress.org as he pleases. As discussed in Section II.A above, however, that is incorrect. Moreover, WPE had a pre-existing right to its own ACF plugin, a critical part of the scheme Defendants ignore here.

### D. WPE Is Likely To Succeed On Its Interference Claims

Defendants assert WPE cannot prevail on its interference claim without providing the specific names of the customers being impacted. Opp. 19-20. There is no such requirement, according to both

the Ninth Circuit and the California Supreme Court. *See* Mot. 20-21.[7] Moreover, as a direct consequence of their interference (e.g., blocking access to wordpress.org), Defendants' own admissions confirm they intend to take "**every single one** of" WPE's customers while envisioning WPE's demise. Slobodyanyuk Decl. Ex. 1 at 26:30-36, 29:58-30:07, Ex. 2 at 12, 14 ("[I]f they weren't around guest what? … We'd happily have those customers, and in fact we're getting a lot of them."); Mot. 17-19.

Defendants also assert that they had an "absolute right" to do everything they did. That is incorrect. Mullenweg's purported ownership of wordpress.org does not immunize Defendants' actions. *See* § II.A, *supra*. Neither do the "developer guidelines" on which Defendants rely, which they assert permit changes to a plugin "without developer consent, in the interest of public safety." Opp. 20. According to Defendants, WPE's ACF plugin "was not safe" and "subject to vulnerabilities," and therefore Mullenweg "acted within his right to disable [WPE's] account access and to make changes to the ACF plugin for the sake of public safety." Opp. 21. But the uncontroverted facts eviscerate this manufactured excuse. Defendants began sabotaging WPE's operations on **September 24**, yet only contacted WPE about a supposed security issue in a single plugin on **October 4**, which was a minor flaw capable of a routine fix. Prabhakar Reply ¶ 14. And WPE *did* fix it by providing an update well within the (completely artificial) five-day deadline WPE was given. Prabhakar (Dkt. 19) ¶¶ 14-15; Prabhakar Reply ¶¶ 14-15. Nevertheless, Defendants hijacked ACF just days later. Prabhakar (Dkt. 19) ¶ 24. Defendants simply made up their "security" and "public safety" concerns as an excuse, as all of their public comments confirm. Prabhakar Reply ¶¶ 17-19.

Defendants cite *Putian Authentic Enterprise Management Co. v. Meta Platforms, Inc.*, 2022 WL 1171034 (N.D. Cal. Apr. 19, 2022) as "instructive." Opp. 20. But there, plaintiffs' access to Facebook resources was governed by four contracts, each of which expressly prohibited certain conduct, under punishment of exclusion. *Id.* at *1. Plaintiffs violated those express policies by

---

[7] The cases Defendants cite cannot, and do not purport to, overrule the binding law WPE cited. *See Dongguan Beibei Toys Indus. Co. v. Underground Toys USA, LLC*, 2019 WL 8631502, at *2-3 (C.D. Cal. Dec. 16, 2019) (nothing intentional about making a late delivery of goods); *Nexsales Corp. v. Salebuild, Inc.*, 2012 WL 216260, at *1, 3, 4 (N.D. Cal. Jan 24, 2012) (complaint unclear how defendant interfered with any third-party contracts merely by accessing certain computer systems without authorization); *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996) (plaintiff could not recover based on the "purely hypothetical" possibility that shopping center could have been sold if anchor tenant had not left).

engaging in misleading business practices in advertising. *Id.* at *3. Here, wordpress.org has no terms of service, and Defendants' purported "security" concerns were a sham; again, the Court need only look to Defendants' own words to appreciate the obvious interference directly resulting from Defendants' actions. Prabhakar Reply ¶¶ 17-19. Indeed, Defendants have even begun threatening other developers with plugin takeovers in retaliation for moving their plugins away from wordpress.org, which some developers understandably wish to do in light of what Defendants did to WPE's ACF plugin. Jenkins Reply Decl. Ex. 46.

### E. WPE Is Likely To Succeed On Its UCL Claims

WPE has established a likelihood of success on the Unfair Competition Law ("UCL") claim, which creates a private right of action for "unlawful" or "unfair" acts. Mot. 19-20. With respect to the "unlawful" prong, Defendants merely incorporate their prior arguments. Opp. 21-22. As above, those arguments fail. Further, Defendants' arguments regarding extortion are inapplicable to the UCL claim. The UCL itself creates a private right of action for penal code violations. *Animal Legal Def. Fund v. Great Bull Run, LLC*, 2014 WL 2568685, at *6-8 (N.D. Cal. June 6, 2014). Even though reliance on the penal code is not required to state the common law claim for attempted extortion, it is clear that attempted extortion constitutes a violation of Penal Code section 524. Thus, regardless of the viability of any other cause of action, WPE would have a right to relief for the same course of conduct under the UCL.

Defendants' actions were also "unfair" and therefore violated the UCL. Defendants do not dispute that actions are "unfair" when they violate the "policy or spirit" or are "comparable" to a violation of antitrust laws or otherwise significantly threaten or harm competition. Mot. 19.[8] Defendants' entire argument relies on *Payroll Resource Group v. HealthEquity, Inc.*, 2024 WL 4194795 (N.D. Cal. Sept. 12, 2024), where the court *denied* a motion to dismiss, but in so doing

---

[8] Defendants also rely on a sweeping cross-reference to incorporate caselaw and argument only set forth in another brief, in violation of the Court's local rule. That should be disregarded. To the extent the Court considers the argument in this context, it appears Defendants mean to cross-reference their discussion of *CoStar Group v. Commercial Real Estate Exchange*, 619 F. Supp. 3d 983 (C.D. Cal. 2022). But *CoStar* merely held that one real estate company did not have an absolute right to the private brokerage listings of another real estate company. As discussed in § II.A above, WPE has established a likelihood of success with respect to its right to access wordpress.org, giving rise to a right to injunctive relief while that claim is tested, as seen in such cases as *hiQ*.

contrasted a situation where an express contractual right existed, with one where it did not. But that does not establish a rule that anyone can cut off access to anything, anywhere, at any time, with immunity. Here, WPE has established a likelihood of success that it was "unfair" to entice developers into the supposedly free and open source WordPress ecosystem, have them invest untold hours and millions of dollars in development of the ecosystem, only to find out years later that Defendants would claim a right to destroy any particular competitor with the push of a button.

### III.     THE BALANCE OF EQUITIES WEIGHS IN FAVOR OF WPE

WPE's Motion demonstrates that, absent judicial relief, Defendants will continue to try to cause death by a thousand cuts, whereas they face *zero* burden in returning to the status quo ante. Mot. 24-25. Indeed, Mullenweg has told the world: "[I]f we lose the injunction, what happens? Well we have to go back to the state of what they were doing beforehand, where they access wordpress.org, ***so that's fine***." Slobodyanyuk Ex. 1 at 27:25-33, Ex. 2 at 13 (emphasis added). Defendants have identified no burden in returning to the state of the world as it existed for many years before they began a "nuclear" war against WPE.[9] In contrast, as described above and in WPE's Motion, the harm to WPE imposed by Defendants is significant, ongoing and irreparable.

### IV.     THE PUBLIC INTEREST ALSO STRONGLY FAVORS RELIEF

WPE's Motion demonstrates that the public interest also strongly favors granting relief, because Defendants have unleashed chaos in the WordPress community, imposing costs and instilling fears in users and developers alike. Mot. 25. As to WPE's ***customers***, Defendants merely repeat the assertion that WPE is operating normally. Opp. 24. This is untrue, *see* § I.B, *supra*, and also ignores the looming threat that Defendants will find new and inventive ways to break WPE's products, *see* § I.A, *supra*. And Defendants ignore the harm being caused to other developers, who justifiably fear that they will be the next subject of a "pay up, or else" extortionate demand from Defendants. *Id*.[10] Finally, Defendants' wrongful actions have harmed the millions of free users of the WordPress ecosystem, who fear that their websites now might be in jeopardy.

---

[9] Defendants cite here *CoStar*, 619 F. Supp. 3d at 983, but that case discussed the *underlying merits* of certain claims on a motion to dismiss. It is irrelevant on the balance-of-equities question.

[10] Mullenweg has threatened plug-in developers with "tak[ing] over your listing and mak[ing] it a community plugin like we did to ACF" if they do not toe the line. Jenkins Reply Decl. Ex. 46.

## V. THE COURT SHOULD NOT NARROW THE INJUNCTION

Defendants ask the Court to limit the injunction so that it only orders Defendants to allow WPE to access the publicly available WordPress open source software and third party plugins via the wordpress.org website. Opp. 24-25. But this outcome would be seriously inadequate for at least three reasons. First, it does not address the harm Defendants are actually inflicting right now. Currently, WPE and its customers are prevented from using the "administrative panel" to receive new plugins and automatic updates to existing plugins, and be notified that such updates exist, directly from wordpress.org. There is no workaround to this issue that does not impair the functionality of the "administrative panel" for WPE and its customers. This is the access WPE is complaining about. Second, it does not address the fact that Defendants remain in control of the misappropriated ACF plugin, having stolen two million of WPE's customers as well as the ACF plugin itself. Third, it does not address the fact that Defendants continue to discriminate with bullying, loyalty-oath "checkboxes" on the login page of wordpress.org, to discourage the community from doing any business with WPE, or else be banished; nor does it address the potential that Defendants may continue to take new actions designed to interfere with WPE's business. The Court should lock into place the status quo as it existed prior to the September 20 extortionary campaign, *not* lock into place Defendants' recent misdeeds.

## VI. ONLY A MINIMAL—IF ANY—BOND SHOULD BE REQUIRED

Mullenweg has admitted that the entry of an injunction would be "fine," as discussed above. There is no contrary evidence, let alone any evidence to support a bond. Defendants cite to the supposed *total annual cost* of running the wordpress.org website for two years. Opp. 25. This ignores, of course, that Defendants were operating wordpress.org for free for many years, and are *still* operating it for free for everyone other than WPE. The *marginal* cost of running wordpress.org with WPE's normal access, and running it with WPE blocked, is unaddressed by Defendants, but is likely a tiny fraction of the amount cited by Defendants. Accordingly, if the Court is inclined to require any bond, it should be a *de minimis* amount, not wordpress.org's entire budget for two years.

| | |
|---|---|
| Dated: November 4, 2024 | Respectfully submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN LLP |
| | By */s/ Rachel Herrick Kassabian* |
| | Rachel Herrick Kassabian |
| | *Attorneys for Plaintiff WPEngine, Inc.* |