1  Michael M. Maddigan (Bar No. 163450)
   michael.maddigan@hoganlovells.com
2  **HOGAN LOVELLS US LLP**
   1999 Avenue of the Stars, Suite 1400
3  Los Angeles, CA 90067
   Telephone: (310) 785-4600
4
5  Jiaxing (Kyle) Xu (Bar No. 344100)
   kyle.xu@hoganlovells.com
6  **HOGAN LOVELLS US LLP**
   4 Embarcadero Center, Suite 3500
7  San Francisco, CA 94103
   Telephone: (415) 374-2300
8
9  Neal Kumar Katyal, *pro hac vice*
   neal.katyal@hoganlovells.com
10 Anna Kurian Shaw, *pro hac vice*
   anna.shaw@hoganlovells.com
11 Lauren Cury, *pro hac vice*
   lauren.cury@hoganlovells.com
12 Hadley Dreibelbis, *pro hac vice*
   hadley.dreibelbis@hoganlovells.com
13 **HOGAN LOVELLS US LLP**
   555 Thirteenth Street NW
14 Washington, D.C. 20004
   Telephone: (202) 637-5600
15
16 *Attorneys for Defendants Automattic Inc. and*
17 *Matthew Charles Mullenweg*

18            **IN THE UNITED STATES DISTRICT COURT**
19          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
               **SAN FRANCISCO DIVISION**
20

| | |
|---|---|
| 21  WPENGINE, INC., a Delaware corporation, | Case No. 3:24-cv-06917-AMO |
| 22              Plaintiff, | **DEFENDANTS AUTOMATTIC INC. AND MATTHEW CHARLES MULLENWEG'S** |
| 23      vs. | **NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE PLAINTIFF'S** |
| 24  AUTOMATTIC INC., a Delaware | **AMENDED COMPLAINT;** |
|     corporation; and MATTHEW CHARLES | **MEMORANDUM OF POINTS AND** |
| 25  MULLENWEG, an individual, | **AUTHORITIES** |
| 26              Defendants. | Judge: Hon. Araceli Martínez-Olguín |
| 27 | Courtroom: 10 |
| 28 | Hearing Date: June 5, 2025 |
|    | Hearing Time: 2:00 p.m. |

## NOTICE OF MOTION & MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Thursday, June 5, 2025, at 2:00 p.m. Pacific time, or as soon as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, before the Honorable Araceli Martínez-Olguín, Defendants Automattic Inc. and Matthew Charles Mullenweg (collectively, "Defendants"), will and do hereby move this Court to dismiss Counts 1-6, 12-16, and 19-20 of Plaintiff's First Amended Complaint (ECF 51), to dismiss in part Counts 17-18, and to strike or in the alternative dismiss Counts 9-11. This Motion, made pursuant to Federal Rule of Civil Procedure 12(b)(6) and California's anti-SLAPP statute, is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities in support thereof; all matters of which the Court may take judicial notice; and such documentary and oral evidence as may be presented at or before the hearing on this motion.

.

1

**Table of Contents**

2

Page

3

I.    The Amended Complaint Fails To State An Antitrust Claim (Counts 12-15)........................ 2

A.    WPE fails to plausibly allege a relevant product market ................................. 2

B.    WPE fails to plausibly allege Defendants' market power........................... 4

C.    WPE fails to plausibly allege anticompetitive conduct........................................ 5

D.    WPE fails to plausibly allege unlawful tying........................................................... 8

II.    Declaratory Judgment Of Trademark Misuse Is Not A Recognized Claim (Count 16) ........... 9

III.    WPE's Attempted Extortion Claim Must Be Dismissed (Count 4) ........................... 9

A.    WPE cannot state a claim for attempted extortion derived from the Penal Code ................ 9

B.    WPE cannot state a claim for attempted civil extortion based on fraud ........................... 12

IV.    WPE's Computer Fraud and Abuse Act Claims Must Be Dismissed (Counts 3 and 19)... 13

A.    WPE fails to plausibly allege a violation of § 1030(a)(7)................................. 13

B.    WPE fails to plausibly allege a violation of § 1030(a)(5)................................. 14

C.    Applying the CFAA as WPE urges would unduly expand the CFAA's reach .................. 16

V.    WPE's Unfair Competition Law Claim Must Be Dismissed (Count 5) ................................. 17

VI.    The Amended Complaint Fails To State A Defamation Claim (Counts 9-11) .................. 18

A.    WPE's claims arise from protected activity ........................................................ 18

B.    WPE cannot demonstrate a likelihood of prevailing on its claims ..................................... 19

    i.    Matt's statements are non-actionable opinions ............................................ 19

    ii.    WPE cannot show direct financial harm or actual malice for trade libel...................... 23

VII.    WPE Fails To Plead Any Promise On Which Promissory Estoppel Can Rest (Count 6)... 24

A.    WPE does not identify a promise of access to the Website on which it relied ................... 25

B.    WPE fails to plead any sufficiently unambiguous promise by Defendants ....................... 25

VIII.    WPE Fails To State A Claim For Intentional Interference With Prospective Economic Relations For Reasons That Also Doom Its Contractual Relations Claim (Counts 1-2) ............... 27

IX.    WPE Fails To Plausibly Allege Unjust Enrichment (Count 20)........................................ 28

X.    Counts 3, 5, 9-11, 14-15, And 17-20 Should Be Dismissed As Against Automattic ............ 29

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*1-800 Contacts, Inc. v. Fed. Trade Comm'n,*
   1 F.4th 102 (2d Cir. 2021) ...........................................................................................5

6

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
   836 F.3d 1171 (9th Cir. 2016) ......................................................................................8

7

8

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10,*
   966 F.2d 443 (9th Cir. 1992) ......................................................................................24

9

10

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns,
   Inc.,*
   108 F.3d 1147 (9th Cir. 1997) ......................................................................................6

11

12

*Am. Shooting Ctr., Inc. v. Secfor Int'l,*
   No. 13CV1847 BTM JMA, 2015 WL 1914924 (S.D. Cal. Apr. 27, 2015) .................12

13

14

*In re Apple Inc. Device Performance Litig.,*
   347 F. Supp. 3d 434 (N.D. Cal. 2018) ........................................................................16

15

*In re Apple iPod iTunes Antitrust Litig.,*
   796 F. Supp. 2d 1137 (N.D. Cal. 2011) ........................................................................6

16

17

*Apple, Inc. v. Psystar Corp.,*
   586 F. Supp. 2d 1190 (N.D. Cal. 2008) ........................................................................2

18

19

*Art of Living Found. v. Does,*
   No. 10–CV–05022–LHK, 2011 WL 2441898 (N.D. Cal. June 15, 2011)..................22

20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................................................1, 15

21

22

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.,*
   No. 17CV205-MMA (MDD), 2018 WL 3032552 (S.D. Cal. June 19, 2018) ...............8

23

24

*Barber v. DSW Inc.,*
   No. SACV 15-2024-JGB (SPX), 2016 WL 11954427 (C.D. Cal. Apr. 4, 2016) .........29

25

*Bauer v. Tacey Goss, P.S.,*
   No. C 12-00876, 2012 WL 2838834 (N.D. Cal. July 10, 2012) .................................22

26

27

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................1

28

Hogan Lovells US
LLP
Attorneys At Law

DEFENDANTS' MOTION TO DISMISS AND STRIKE

*Bui-Ford v. Tesla, Inc.*,
    No. 4:23-CV-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ...........................................16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ...............................................................................................................17

*Choudhuri v. Specialized Loan Serv.*,
    No. 22-cv-06993-JST, 2023 WL 6277327 (N.D. Cal. Sept. 26, 2023).....................................25

*Clorox Co. v. Sterling Winthrop, Inc.*,
    117 F.3d 50 (2d Cir. 1997) ...............................................................................................................5

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .........................................................................................................21

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (Cal. Ct. App. 2021) .............................................................................22, 23

*Coronavirus Rep. v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023).........................................................................................................3, 5

*CoStar Group, Inc. v. Com. Real Est. Exch. Inc.*,
    2:20-CV-08819-CBM-AS, 2023 WL 2468742 (C.D. Cal. Feb. 23, 2023) ......................7, 17, 18

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*,
    479 F.3d 1099 (9th Cir. 2007).......................................................................................................27

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    902 P.2d 740 (Cal. 1995) ...............................................................................................................27

*Dixon v. Univ. of S. Cal.*,
    No. 2:21-cv-05286-VAP-(AFMx), 2021 WL 6496737 (C.D. Cal. Oct. 20, 2021)........24, 25, 26

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) .....................................................................................................................3, 4

*Edwards v. Leaders in Cmty. Alternatives, Inc.*,
    850 F. App'x 503 (9th Cir. 2021)...................................................................................................14

*Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*,
    290 F. Supp. 3d 923 (N.D. Cal. 2017) ..........................................................................................19

*Emulex Corp. v. Broadcom Corp.*,
    No. SACV0901310JVSRNBX, 2010 WL 11595718 (C.D. Cal. June 7, 2010) ...........................6

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023).....................................................................................................2, 3, 4

*Evans Hotels, LLC v. Unite Here! Local 30*,
    No. 18-CV-2763 TWR (AHG), 2021 WL 10310815 (S.D. Cal. Aug. 26, 2021) ......................10

Hogan Lovells US
LLP
Attorneys At Law

*Facebook, Inc. v. Power Ventures, Inc.*,
  No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)............................................7

*Ferlauto v. Hamsher*,
  74 Cal. App. 4th 1394 (Cal. Ct. App. 1999) ...........................................................................21

*First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*,
  No. CV199577PSGGJSX, 2020 WL 5898973 (C.D. Cal. July 2, 2020)..................................28

*Fuhrman v. Cal. Satellite Sys.*,
  231 Cal. Rptr. 113 (Cal. Ct. App. 1986), *rev'd on other grounds*, 786 P.2d 365
  (Cal. 1990)................................................................................................................................12

*Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns and Elecs., Inc.*,
  421 F. Supp. 274 (N.D. Cal. 1976) ...........................................................................................7

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008).....................................................................................................1

*Glen Holly Entm't Inc. v. Tektronic Inc.*,
  343 F.3d 1000 (9th Cir. 2003), *amended by* 352 F.3d 367 (9th Cir. 2003) ........................26, 27

*Gone GB Ltd. v. Intel Servs. Div., LLC & Intel Corp.*,
  No. CV 21-978-RGA, 2022 WL 903805 (D. Del. Mar. 28, 2022) ...........................................16

*Harkonen v. Fleming*,
  880 F. Supp. 2d 1071 (N.D. Cal. 2012) ...................................................................................19

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
  No. C14-0437CW, 2016 WL 304764 (N.D. Cal. Jan. 26, 2016) ............................................24

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021)...............................................................................................19, 20

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018).....................................................................................................2

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022)........................................................................................13, 15, 16

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  485 F. Supp. 3d 1137 (N.D. Cal. 2020) .....................................................................................7

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997)......................................................................................................4

*Inplant Enviro-Systems 2000 Atlanta, Inc. v. Lee*,
  No. 1:15-CV-0394-LMM, 2015 WL 12746702 (N.D. Ga. Feb. 10, 2015) ..............................14

DEFENDANTS' MOTION TO DISMISS AND STRIKE

Hogan Lovells US
LLP
Attorneys At Law

*Intermarketing Media, LLC v. Barlow*,
  No. 8:20-CV-00889-JLS, 2021 WL 5990190 (C.D. Cal. May 4, 2021) ............................10, 12

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) ........................................................................................................28

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
  No. SACV 11-1309-DOC(ANx), 2013 WL 655314 (C.D. Cal. Feb. 12, 2013) ........................9

*King v. Am. Fish Attractor*,
  No. 5:16-CV-5128, 2016 WL 4699707 (W.D. Ark. Sept. 7, 2016) ........................................9

*Laks v. Coast Fed. Sav & Loan Ass'n*,
  131 Cal. Rptr. 836 (Cal. Ct. App. 1976) ..............................................................................26

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ......................................................................................10, 11

*Levitt v. Yelp! Inc*,
  No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ....................................10

*Loblaw Companies Ltd. v. Azimi*,
  No. C 00 3591 WHO, 2001 WL 36028016 (N.D. Cal. Oct. 17, 2001) ....................................9

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ............................................................................................15

*Margolis v. Apple Inc.*,
  No. 23-cv-03882-PCP, 2024 WL 3755364 (N.D. Cal. Aug. 6, 2024) ..................................15

*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (Cal. Ct. App. 2007) ....................................................................29, 30

*MH Pillars Ltd. v. Realini*,
  277 F. Supp. 3d 1077 (N.D. Cal. 2017) ........................................................................28, 30

*Monex Deposit Co. v. Gilliam*,
  666 F.Supp.2d 1135 (C.D. Cal. 2009) ................................................................................10

*Muddy Waters, LLC v. Super. Ct.of San Bernadino Cnty.*,
  62 Cal. App. 5th 905 (Cal. Ct. App. 2021) ..........................................................................24

*Nguyen v. PennyMac Loan Serv., LLC*,
  No. SACV 12–01574–CJC(ANx), 2012 WL 6062742 (C.D. Cal. Dec. 5, 2012) ....................26

*Nygard Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (Cal. Ct. App. 2008) ......................................................................19

*O'Connor v. Uber Techs., Inc.*,
  No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ....................................17

- v -

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
  939 F. Supp. 2d 1002 (N.D. Cal. 2013) .................................................................27

*Oumere LLC v. Zarpas*,
  No. 8:21-CV-00224-DOC(JDEx), 2021 WL 2894643 (C.D. Cal. June 29, 2021) ...................22

*Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) .................................................................................8, 9

*Paramount Auto Body Shop, Inc. v. Mitchell Int'l, Inc.*,
  No. D058664, 2012 WL 2018540 (Cal. Ct. App. June 5, 2012) (unpublished) .....................28

*Parziale v. HP, Inc.*,
  445 F. Supp. 3d 435 (N.D. Cal. 2020) .................................................................16

*Peak Health Ctr. v. Dorfman*,
  No. 19-CV-04145-VKD, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019)..............................24

*Peak Health Ctr. v. Dorfman*,
  No. 19-CV-04145-VKD, 2020 WL 887935 (N.D. Cal. Feb. 24, 2020)...............................19

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018)............................................................................2

*PLS.Com, LLC v. Nat'l Ass'n Realtors*,
  32 F.4th 824 (9th Cir. 2022)............................................................................8

*Rabin v. Google LLC*,
  No. 22-CV-04547-BLF, 2023 WL 4053804 (N.D. Cal. June 15, 2023)..............................29

*Raiser v. Ventura Coll. of L.*,
  No. CV 09-00254 RGK, 2009 WL 10692058 (C.D. Cal. Sept. 1, 2009)............................12

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995)........................................................................4, 5

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
  77 F.3d 309 (9th Cir. 1996)............................................................................27

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
  302 F. Supp. 3d 1005 (N.D. Cal. 2017) .........................................................21, 23, 24

*Rutman Wine v. E.&J. Gallow Winery*,
  829 F.2d 729 (9th Cir. 1987)............................................................................4

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016)........................................................................2, 19

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012)............................................................................24

- vi -

DEFENDANTS' MOTION TO DISMISS AND STRIKE

Hogan Lovells US
LLP
Attorneys At Law

*Seelig v. Infinity Broad. Corp.*,
  97 Cal. App. 4th 798 (Cal. Ct. App. 2002) ..................................................................20

*Shaeffer v. Califia Farms, LLC*,
  258 Cal. Rptr. 3d 270 (Cal. Ct. App. 2020) ...............................................................17

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023)..............................................................................13, 14

*Smith v. S.F.*,
  225 Cal.App.3d 38 (Cal. Ct. App. 1990).....................................................................25

*Snapkeys, Ltd. v. Google LLC*,
  No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ....................17

*Standing Comm. On Discipline of U.S. Dist. Court for Cent. Dist. Of Cal. v.
  Yagman*,
  55 F.3d 1430 (9th Cir. 1995).......................................................................................20

*Starbuzz Tobacco, Inc. v. Abdallah*,
  No. CV1003833MMMRZX, 2011 WL 13214313 (C.D. Cal. Nov. 2, 2011)..............23

*TaiMed Biologics, Inc. v. Numoda Corp.*,
  No. C 10-03260 LB, 2011 WL 1630041 (N.D. Cal. Apr. 29, 2011) ..........................10

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001).......................................................................................7

*Tate v. Pac. Gas & Elec. Co.*,
  230 F. Supp. 2d 1072 (N.D. Cal. 2002) ........................................................................6

*Tran v. Eat Club, Inc.*,
  No. H046773, 2020 WL 4812634 (Cal. Ct. App. Aug. 18, 2020) (unpublished)......10

*U.S. v. Mendoza-Padilla*,
  833 F.3d 1156 (9th Cir. 2016)......................................................................................15

*U.S. v. Nosal*,
  676 F.3d 854 (9th Cir. 2012) (en banc)........................................................................16

*United States v. E.I. duPont de Nemours & Co.*,
  351 U.S. 377 (1956) .......................................................................................................2

*Van Buren v. United States*,
  593 U.S. 374 (2021) .....................................................................................................15

*Verizon Commc'ns Inc. v. L. Offs. Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ..................................................................................................5, 7

Hogan Lovells US
LLP
ATTORNEYS AT LAW

*VMG Enters. v. F. Quesada & Franco, Inc.*,
    788 F. Supp. 648 (D.P.R. 1992) ..................................................................9

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...............................................21, 23

**Statutes**

18 U.S.C. § 1030(a)(5) .........................................................................13, 14, 15 16

18 U.S.C. § 1030(a)(7)(A), (C) ..................................................................13

18 U.S.C. § 1030(c), (g) .............................................................................13

Cal. Bus. & Prof. Code § 172000 ..............................................................17

Cal. Civ. Proc. Code § 425.16 ...............................................................1, 19

Cal. Penal Code § 518 ................................................................................10

Cal. Penal Code § 524 ............................................................................9, 10

California Cartwright Act .........................................................................2, 8

Sherman Act ...........................................................................2, 6, 7, 17, 18

Computer Fraud and Abuse Act .................................................................13

Unfair Competition Law ............................................................................17

**Other Authorities**

First Amendment ........................................................................................23

California Constitution .................................................................................2

Fed. R. Civ. P. 9(g) ....................................................................................24

Federal Rule of Civil Procedure 9(b) ........................................................12

Federal Rule of Civil Procedure 12(b)(6) .............................................1, 1, 2

S. Rep. No. 104-357 (1996) .......................................................................13

Hogan Lovells US
LLP
Attorneys At Law

Case No. 3:24-cv-06917-AMO

DEFENDANTS' MOTION TO DISMISS AND STRIKE

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants seek an order (i) under Federal Rule of Civil Procedure 12(b)(6) dismissing Counts 1-6, 12-16, and 19-20 and dismissing in part Counts 17-18; and (ii) striking or alternatively dismissing Counts 9-11 under California's anti-SLAPP statute, Cal. Code Civ. P. § 425.16.

**INTRODUCTION**

Plaintiff WPEngine ("WPE") insists this case is about greed. That is undoubtedly correct. But, contrary to the allegations in WPE's Complaint, the greedy party is not Automattic—which donates over 3000 hours *per week* in support of the WordPress community, or Matt Mullenweg ("Matt")—the founder and philanthropic steward of that community. It is WPE, which for years has been strip mining value from the WordPress ecosystem at the direction of its private equity backers.

Seeking to hide its ongoing misuse of the WordPress community by portraying itself as a victim, WPE asserts 20 causes of action against Defendants in its First Amended Complaint ("FAC"). Many of these claims are improperly pled against Automattic, and must be dismissed at least in part. And the unsubstantiated nature of its narrative and absence of actionable conduct by Defendants fatally undermines WPE's ability to plausibly plead the majority of its claims against either party. These claims are built on hyperbole, fabricated markets, conclusory allegations, and misleading statements wrested from their context, and fail to meet the requisite pleading standards.

**LEGAL STANDARDS**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Nor must a court "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Rather, a plaintiff must plead sufficient factual allegations to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To succeed on an anti-SLAPP motion to strike, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public

issue in furtherance of the defendant's right to free speech under the United States or California Constitution." *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016) (citation omitted). Once a defendant makes that showing, the plaintiff must demonstrate "a reasonable probability [of] prevail[ing]" on the claims in question. *Id.* An anti-SLAPP motion based on a complaint's facial legal deficiencies is "treated in the same manner as a motion under Rule 12(b)(6)." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

## ARGUMENT

## I.    The Amended Complaint Fails To State An Antitrust Claim (Counts 12-15)

WPE brings four antitrust claims: two under Section 2 of the Sherman Act for monopolization and attempted monopolization (Counts 12-13), and two for unlawful tying under Section 1 of the Sherman Act and California's Cartwright Act (Counts 14-15). Each claim requires WPE to plausibly allege (1) a relevant market (2) in which Defendants have market power, and (3) have engaged in anticompetitive conduct (including a "tie") to acquire or maintain that power.

Failure to satisfy any of these elements is fatal, and WPE falls short on all three. First, WPE implausibly gerrymanders its relevant markets around the ecosystem built upon the WordPress-branded software platform itself. Second, WPE fails to allege facts showing that Defendants have market power in any of the alleged markets. Third, WPE's conduct and "tying" allegations amount to nothing more than a gripe about Defendants' statements and alleged refusal to deal with WPE, but the antitrust laws do not police commercial speech or force companies to deal with competitors.

### A.    WPE fails to plausibly allege a relevant product market

Defining a relevant product market is the starting point for any monopolization or tying claim. *Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 974-75 (9th Cir. 2023). Product markets consist of products that are "reasonably interchangeable by consumers for the same purpose." *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Antitrust claims should be dismissed where a plaintiff's alleged relevant markets, including submarkets, are defined to exclude reasonable economic substitutes. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120-22 (9th Cir. 2018).

In rare circumstances, plaintiffs can plead markets that seemingly exclude alternative options. *Apple, Inc. v. Psystar Corp*., 586 F. Supp. 2d 1190, 1198 (N.D. Cal. 2008) ("Single-brand

markets are, at a minimum, extremely rare."). If a plaintiff pleads a "foremarket" (a market for the primary good or service, of which there might be multiple brands) and "single-brand aftermarkets" (derivative markets limited to products and services related to the single brand of the primary product), then the plaintiff must overcome the presumption that "consumers make a knowing choice to restrict their aftermarket options when they decide in the initial (competitive) market" amongst the available options. *Epic Games*, 67 F.4th at 978. To do so, the plaintiff must plead: "(1) the challenged aftermarket restrictions are not generally known when consumers make their foremarket purchase; (2) significant information costs prevent accurate life-cycle pricing; (3) significant monetary or non-monetary switching costs exist; and (4) general market-definition principles regarding cross-elasticity of demand do not undermine the proposed single-brand market." *Id.* at 977; *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 473 (1992) (defining life-cycle price as "the total cost of the 'package'—equipment, service, and parts—at the time of purchase" of the primary product).

In this case, WPE has alleged four relevant markets—(1) a Web Content Management Systems market, (2) a WordPress Web Hosting Services market, (3) a WordPress Custom Field Plugins market, and (4) a WordPress Plugin Distribution market. The latter three markets, limited to WordPress, would fail as traditional product markets given WPE admits there are WordPress alternatives available to customers. FAC ¶¶ 30, 193 (acknowledging WordPress competes with "Craft CMS, Drupal, Joomla, and TYPO3," among others). To avoid this result, WPE thus alleges that Web Content Management Systems are a "foremarket" and that WordPress Web Hosting Services, WordPress Custom Field Plugins, and WordPress Plugin Distribution are single-brand "aftermarkets." *Id.* ¶¶ 191-192. But WPE fails at least the aftermarket pleading requirements. As to the first required element, WPE's own allegations confirm the alleged aftermarket restrictions are generally known. *Id.* ¶ 222; *see also id.* ¶¶ 195, 218-220, 226-227. Notably, WPE alleges that choosing a web content management system is akin to choosing an Apple or Windows operating system and the associated technological lock-in that apps on one may not work on the other. *Id.* ¶ 220-222. This fact pattern is the precise type in which courts *reject* alleged aftermarkets. *See, e.g.*, *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE

As to the second element, WPE must allege that consumers—not other market participants like itself—cannot predict life-cycle pricing of web hosting services, custom field plugins, or plugin distribution because of significant information costs. *Epic Games*, 67 F.4th at 977-79 (analyzing ability to anticipate life-cycle pricing from the perspective of the consumer). WPE does not even attempt to do so. WPE's allegations with respect to consumers consist of a single conclusory sentence. FAC ¶ 252 (stating "Defendants' deception has also made it difficult" to forecast spend). This sentence stands in stark contrast to the FAC's other allegations, which detail the expansive community of market participants that has grown around the free and open-source WordPress software platform, and from which consumers can get information about web hosting services, custom field plugins, or plugin distribution. *See, e.g.*, *id.* ¶¶ 48, 59, 84, 185. The fact that Defendants might seek a trademark *royalty payment* from WPE—which WPE has not paid—does not mean that consumers cannot predict life-cycle *pricing* of web hosting services, custom field plugins, or plugin distribution in this robust ecosystem. *Id.* ¶¶ 248-252.

As for the remaining factors, WPE alleges no facts establishing the third or fourth elements. With respect to the latter element specifically, WPE itself cites a source acknowledging that "[t]here are hundreds of thousands of web hosts out there, the vast majority of which meet the WordPress minimum requirements." *See, e.g.*, *id.* ¶¶ 209 n.104, 244-247; *Epic Games*, 67 F.4th at 975 (equating cross-elasticity of demand and reasonable interchangeability). WPE's failure to plead a plausible relevant market is grounds alone for dismissal.

B.    WPE fails to plausibly allege Defendants' market power

WPE also has failed to plausibly allege Defendants' market power in any of these purported relevant markets. *See Rutman Wine v. E.&J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987). Market power can be shown with direct or indirect evidence. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). For direct evidence, the Ninth Circuit requires "proof of actual detrimental effects on competition, such as reduced output, increased prices, or decreased quality in the relevant market." *Epic Games,* 67 F.4th at 983. For indirect evidence, "[c]ourts generally require a 65% market share to establish a prima facie case of market power." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997); *see also Eastman Kodak Co.*, 504 U.S.

Hogan Lovells US LLP
Attorneys At Law

at 481 (holding control of 80% to 95% was sufficient market power for monopolization); *Rebel Oil Co. Inc.*, 51 F.3d at 1438 (holding 44% may be sufficient for attempted monopolization). WPE fails to plausibly allege direct or indirect evidence.

For direct evidence, WPE asserts that Defendants have market power because they can increase prices by demanding an 8% royalty payment. FAC ¶ 204. But that royalty is for a "trademark license" to use the WordPress and WooCommerce trademarks, *id*. ¶ 26, not a *price* for any alleged relevant product. The royalty is thus *irrelevant* to whether Defendants have market power. Nor can a trademark agreement (or lack thereof) have any bearing on an antitrust claim because "[a] trademark, unlike other intellectual property rights, does not confer a legal monopoly on any good or idea." *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997); *see also 1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 119–20 (2d Cir. 2021) (same).

WPE likewise fails to allege any indirect evidence of market power, pleading *no* market share for Defendants in *any* of the relevant markets. While the FAC alleges that "43% of all websites … are built using WordPress" software, FAC ¶ 204, that statistic is about the use of free WordPress open source software, and says nothing about the market share of *Defendants* in selling *any* products or services to *anyone*. And WPE does not even attempt to calculate the market share for Defendants in any of the three putative "aftermarkets," which is unsurprising because, as WPE acknowledges, there are numerous other companies—including WPE—providing web hosting services and plugins based on WordPress software. *Id.* ¶¶ 206, 209 n. 104 ("There are hundreds of thousands of web hosts out there, the vast majority of which meet the WordPress minimum requirements."). WPE's failure to allege proper market power in each relevant market dooms all of WPE's antitrust claims.

       C.      WPE fails to plausibly allege anticompetitive conduct

Even if WPE could plausibly allege Defendants' monopoly power in a relevant market, the law is clear that "possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns Inc. v. L. Offs. Curtis V. Trinko*, *LLP*, 540 U.S. 398, 407 (2004). Anticompetitive conduct is that which "harms the competitive process as a whole, rather than the success or failure of individual competitors." *Coronavirus Rep.*, 85 F. 4th at 954-55. WPE's monopolization and attempted monopolization claims fail because none of the

Hogan Lovells US LLP
Attorneys At Law

conduct alleged in Counts 12 or 13 constitutes an antitrust violation as a matter of law. FAC ¶ 383.

First, WPE alleges that Defendants "deceived the market" by saying WordPress is open source and demanding a royalty from WPE; "extorted" WPE by threatening to "go nuclear" absent payment of a royalty; and made "disparaging statements" about WPE. *Id*. But, to overcome the Ninth Circuit's presumption that such speech cannot be an antitrust violation, WPE must allege facts showing that the statements were "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). WPE conclusorily asserts that these elements are satisfied, FAC ¶ 383, but it pleads no actual facts to support *any* of them. For the reasons discussed in Section VII, *infra*, WPE cannot allege the first three elements. Nor does WPE even allege the final three elements. With respect to the fifth element, the purportedly deceptive, extortionate, and disparaging statements at issue (FAC ¶ 383) were only made in late September, hardly a prolonged period. *See In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011). And with respect to the sixth element, those same statements concern WPE's quality and conduct and thus are susceptible to neutralization, as WPE has the customer base and resources through which it can rebut the alleged misrepresentation with its own speech. *Emulex Corp. v. Broadcom Corp.*, No. SACV0901310JVSRNBX, 2010 WL 11595718, at *3, 7-8 (C.D. Cal. June 7, 2010). Finally, as to the fourth element, while WPE asserts the disparaging statements were "made to market participants without knowledge of the subject matter," consumers readily can tell whether WPE's products or services are "sub-par." FAC ¶ 383. Allowing WPE to attack Defendants' opinions on quality makes it "all too easy for losers in the rough-and-tumble of commerce to accuse competitors of spreading false information." *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002).

Second, WPE alleges that Defendants "interfered" with its "customers" and "operations" by supposedly blocking WPE from accessing the Website through a portal or WPE's administrative panels. FAC ¶ 383. But WPE cannot survive dismissal by repackaging its tortious interference claims as antitrust claims. The Sherman Act is not a federal cause of action for business torts. It

Case No. 3:24-cv-06917-AMO

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE

requires much more—namely, proof of harm to competition, not merely competitors. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1064 (9th Cir. 2001). At bottom, WPE complains that Defendants are refusing to deal with them by not allowing WPE to access Defendants' resources. But "the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *L. Offs. Curtis V. Trinko*, *LLP*, 540 U.S. at 408. The only "limited exception," *id.* at 409, to this general rule is where a defendant "(1) unilaterally terminates a voluntary and profitable course of dealing; (2) the only conceivable rationale or purpose is to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition; and (3) the refusal to deal involves products that the defendant already sells in the existing market to other similarly situated customers," *hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1150 (N.D. Cal. 2020) (dismissing refusal to deal claim). WPE alleges no facts to support any of these essential elements. The FAC alleges no facts showing that Defendants made money by "dealing" with WPE or lost money by *not* "dealing" with WPE. *Id.* at 1151. Moreover, merely blocking a company from accessing a website is not anticompetitive as a matter of law. *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *13 (N.D. Cal. July 20, 2010) (Facebook is not "obligated to allow third-party websites unfettered access to its own website."). In *CoStar Group, Inc. v. Com. Real Est. Exch. Inc.*, for instance, a court in this Circuit relied on *Trinko* to dismiss analogous claims of monopolization and attempted monopolization. No. 2:20-CV-08819-CBM-AS, 2023 WL 2468742, at *2, 7 (C.D. Cal. Feb. 23, 2023). Plaintiff CREXi claimed CoStar "engaged in anticompetitive conduct" by, among other things, blocking CREXi's access to webpages CoStar hosted and utilizing exclusivity provisions with customers. *Id.* The court ultimately found none of these practices were anticompetitive but rather were "merely a business's legitimate refusal to provide free aid and assistance to a competitor." *Id.* at *2-4. The same result follows here.

Finally, WPE gets the antitrust laws backwards by claiming that Defendants' "soliciting" of customers and personnel somehow violates those laws. This fiercely competitive conduct–soliciting customers and personnel with alternative options—is the very dynamic the antitrust laws strive to protect. FAC ¶ 383; *see Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'ns and Elecs., Inc.*, 421 F.

1    Supp. 274, 287 (N.D. Cal. 1976) (dismissing antitrust claim involving "soliciting new customers").

2    In fact, agreeing *not* to solicit customers or personnel could be a serious antitrust *problem. Aya*

3    *Healthcare Servs., Inc. v. AMN Healthcare, Inc.,* No. 17CV205-MMA (MDD), 2018 WL 3032552

4    (S.D. Cal. June 19, 2018) (explaining that horizontal no-poach agreements are *per se* unlawful). For

5    all these reasons, none of the facts alleged in Counts 12 or 13 constitute anticompetitive conduct.

6              D.        WPE fails to plausibly allege unlawful tying

7              Counts 14 and 15 allege that Defendants have "blocked" WPE's customers from accessing

8    resources through the WordPress administrative panel. FAC ¶¶ 403, 415. WPE spins this as a "tie"

9    that supposedly forces customers not to use WPE web hosting or custom field plugins if they want

10   to access WordPress plugin distribution. *Id.* WPE is wrong.

11             To maintain its tying claims, WPE must show: "(1) that [the defendant] tied together the sale

12   of two distinct products or services; (2) that [the defendant] possesses enough economic power in

13   the tying product market to coerce its customers into purchasing the tied product; and (3) that the

14   tying arrangement affects a not insubstantial volume of commerce in the tied product market."

15   *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,* 836 F.3d 1171, 1178 (9th Cir. 2016) (Sherman Act); *see*

16   *PLS.Com, LLC v. Nat'l Ass'n Realtors*, 32 F.4th 824, 831-32 (9th Cir. 2022) (Cartwright Act).

17             WPE's tying claims fail out of the gate because, as discussed above, there are no facts

18   showing that Defendants possess market power in any alleged relevant market. WPE also fails to

19   plausibly allege any coercion (or "tie") at all. WPE has not alleged that customers must purchase

20   the "tied" products of Web Hosting Services or Custom Field Plugins from Defendants in order to

21   access the "tying" product of Plugin Distribution. Rather, WPE has alleged only that customers

22   could not access the "tying" product of Plugin Distribution if they tried to do so indirectly through

23   WPE's Web Hosting Services. *See* FAC ¶¶ 403-05. But a defendant with no duty to deal with its

24   rivals certainly has no duty to deal under their preferred terms and conditions. *See Pac. Bell Tel. Co.*

25   *v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). Moreover, the purported "tie" between

26   Plugin Distribution and Web Hosting Services is illusory because, as the FAC itself acknowledges,

27   WPE's customers still had direct access to WordPress plugins on the Website. *See* FAC ¶¶ 117, 383.

28   Customers thus remained free to access either (or both) WPE hosting and WordPress plugins,

meaning there is no coercive tie between the products. Because WPE simply is demanding that it be allowed to access the Website on its own terms, WPE's tying claim is no different than a "refusal to deal" claim and fails for the reasons discussed above.

## II.    Declaratory Judgment Of Trademark Misuse Is Not A Recognized Claim (Count 16)

Trademark misuse is "purely an affirmative defense." 3 McCarthy on Trademarks and Unfair Competition § 25:69 (5th ed.). Courts have thus held that there is no such thing as a trademark misuse claim that can be asserted as a basis for legal recovery. *Id.*; *see, e.g.*, *Loblaw Companies Ltd. v. Azimi*, No. C 00 3591 WHO, 2001 WL 36028016, at *16 (N.D. Cal. Oct. 17, 2001) (rejecting a variation of trademark misuse claim as an independent cause of action); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. SACV 11-1309-DOC(ANx), 2013 WL 655314, at *12 (C.D. Cal. Feb. 12, 2013) (dismissing counterclaim for trademark misuse). Nor can trademark misuse be "converted to an affirmative claim for damages simply by restyling it as a declaratory judgment [claim]." *King v. Am. Fish Attractor*, No. 5:16-CV-5128, 2016 WL 4699707, at *3 (W.D. Ark. Sept. 7, 2016) (internal quotation omitted). Count 16 should be dismissed for this reason alone.

Further, even if trademark misuse could be pled as an affirmative claim, which it cannot, WPE's argument that Automattic's enforcement of its trademark rights is anticompetitive falls flat for the reasons explained in Section I.B. FAC ¶¶ 428-433; *supra* at p. 5; *VMG Enters. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 659 (D.P.R. 1992) ("There is not now nor has there ever been, a conflict between the antitrust laws and trademark laws or the laws of unfair competition.").

## III.    WPE's Attempted Extortion Claim Must Be Dismissed (Count 4)

WPE's fourth claim for relief seeks to impose civil liability for attempted extortion under California law. *See, e.g.*, FAC ¶¶ 16, 290–95. WPE has not identified the specific legal basis for this claim. But close review of the relevant case law reveals two possibilities: a common law claim derived from the crime of attempted extortion, or the common law claim for civil extortion based on fraud. Under either theory, WPE fails to state a claim.

### A.    WPE cannot state a claim for attempted extortion derived from the Penal Code

Section 524 of the California Penal Code prohibits attempted extortion. Cal. Penal Code § 524 (criminalizing "attempts, by means of threat" to "extort money or other consideration from

another"). Section 524 does not authorize a private right of action. While in the past, some courts have nevertheless allowed plaintiffs to bring a civil claim for attempted extortion derived from § 524, *see, e.g.*, *TaiMed Biologics, Inc. v. Numoda Corp*., No. C 10-03260 LB, 2011 WL 1630041, at *5 (N.D. Cal. Apr. 29, 2011) (relying on *Monex Deposit Co. v. Gilliam*, 666 F.Supp.2d 1135, 1137 (C.D. Cal. 2009), which derived a private cause of action from a separate Penal Code provision, § 523), in recent years, courts have repeatedly rejected such efforts. *See, e.g.*, *Tran v. Eat Club, Inc*., No. H046773, 2020 WL 4812634, at *16 & n.8 (Cal. Ct. App. Aug. 18, 2020) (unpublished) (dismissing older federal cases allowing civil claims for extortion or attempted extortion under the Penal Code as inconsistent with California law); *Evans Hotels, LLC v. Unite Here! Local 30*, No. 18-CV-2763 TWR (AHG), 2021 WL 10310815, at *28 (S.D. Cal. Aug. 26, 2021) (noting some federal district courts have permitted extortion-related private causes of action based on the California Penal Code, but that no such cause of action exists with respect to § 524); *see also Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 WL 5990190, at *12 n.10 (C.D. Cal. May 4, 2021) (explaining no California appellate court has adopted *Monex*, the case on which *TaiMed* relied). To Defendants' knowledge, *no* published appellate decision (state or federal) has expressly recognized a common law action derived from § 524.

Even if an attempted extortion claim based on the Penal Code *were* cognizable—which it is not—dismissal still would be warranted. California defines extortion as "the obtaining of property or other consideration from another, with his or her consent . . . induced by a *wrongful* use of force or fear." Cal. Penal Code § 518 (emphasis added). In the Ninth Circuit, to prove a defendant's use of fear was "wrongful," the plaintiff must show it "either . . . had a pre-existing right to be free from the threatened harm," or "the defendant had no right to seek payment for the service offered." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1133 (9th Cir. 2014) (applying this test to economic extortion under federal and California law); *Levitt v. Yelp! Inc*, No. C-10-1321 EMC, 2011 WL 5079526, at *9 n.5 (N.D. Cal. Oct. 26, 2011) (noting that if a civil cause of action derived from the Penal Code exists, the elements of the civil and criminal claims are the same). WPE cannot satisfy either prong.

As for the first prong, WPE alleges that between "September 17 to September 20, 2024," Defendants threatened to wage a "war" against WPE unless it agreed to pay "tens of millions of

dollars" for a trademark license. FAC ¶¶ 291-92. That "war" allegedly included making defamatory statements against WPE and blocking WPE, its customers, and employees from accessing certain aspects of the Website. *Id.* ¶¶ 291, 293. But WPE fails to plausibly allege any pre-existing right to not have Defendants express opinions about it. *See also* § VI.B.i, *infra* (explaining that Matt's contested remarks are nonactionable opinions under defamation law). Nor has WPE plausibly alleged any preexisting right to not be blocked. *See, e.g.*, FAC ¶¶ 291-95. WPE does not (and cannot) point to any "contractual right" or law requiring Matt to perpetually provide any person or entity free access to the Website or its resources. *Levitt*, 765 F.3d at 1133 (finding no preexisting right where defendant was "withholding a benefit that [it] makes possible and maintains" but was not obligated by contract or law to provide); *see also* § VII, *infra* (explaining that Defendants' promises of open and free access did not confer any clear, unambiguous rights). To the contrary, WPE concedes that uninterrupted access to the Website was in no way guaranteed. *See e.g.*, FAC ¶¶ 85-87 (admitting that the Website limits access in various ways, including for guideline violations).

As for the second prong, WPE cannot plausibly allege that Defendants had no right to demand a license for WPE's use of the WordPress and WooCommerce trademarks. *See* Ex. A to FAC at 3 (explaining that Automattic has exclusive, enforceable rights to the WordPress trademark and owns the WooCommerce trademark). The WordPress Foundation trademark policy unambiguously prohibits using a WordPress trademark as part of a product name. RJN Ex. 16. But as the pleadings illustrate, WPE did just that—before scurrying to delete such unauthorized trademark uses right before filing the instant suit. Ex. A to FAC at 22 (advertising WPE product named "Headless WordPress" as of September 23, 2024); RJN Ex. 1 (changing the product name "Headless WordPress" to "Headless Platform" by October 9, 2024). Likewise, the WooCommerce trademark policy prohibits use of the Woo marks in a way that trades on the goodwill of those marks, or suggests an association with Automattic or WooCommerce. RJN Ex. 4. But again, WPE did exactly that, attempting to sanitize these uses too, on the eve of its filing. RJN Exs. 2A and 2B (changing "the path to WooCommerce success starts here" to "the path to eCommerce success starts here"). Given WPE's facial violation of the relevant trademark policies and WPE's associated clean-up efforts, WPE cannot seriously (much less plausibly) contend that Defendants had no basis to seek

1    payment for a trademark license. Accordingly, even assuming a civil claim for attempted extortion

2    under the Penal Code exists, WPE has failed to plausibly allege a critical element of this claim.

3           B.      <u>WPE cannot state a claim for attempted civil extortion based on fraud</u>

4          In contrast to civil claims derived from the Penal Code, California has long recognized a

5    common law action for economic duress—which California courts sometimes refer to as "civil

6    extortion." *Fuhrman v. Cal. Satellite Sys.*, 231 Cal. Rptr. 113, 122 (Cal. Ct. App. 1986), *rev'd on*

7    *other grounds*, 786 P.2d 365 (Cal. 1990). "However denominated," this tort "is essentially a cause

8    of action for moneys obtained by duress, a form of fraud." *Id.* To state a claim under this theory of

9    liability, WPE must plausibly allege that Defendants knew their allegedly extortive demand for a

10   trademark license was false and that WPE suffered monetary loss as a result of the threats. *See id.*

11   at 122-23; *Intermarketing Media*, 2021 WL 5990190, at *12 (same). WPE must also satisfy the

12   heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b).

13   *Intermarketing Media*, 2021 WL 5990190, at *13.

14         WPE has not come close to meeting those pleading requirements. For the reasons already

15   noted, WPE cannot plausibly allege that Defendants knew they lacked any right to a trademark

16   license—WPE's eve of filing cleanup attempt is a tacit admission of that right. By the same token,

17   WPE fails to plausibly allege (much less with particularity) that Defendants' demand for a trademark

18   license contained a false statement of fact. *Id.* at 13 & n.11. Worse still, there is no plausible

19   allegation that WPE "paid any money . . . *because of* the [September 17th through September 20th]

20   *threats*." *Raiser v. Ventura Coll. of L.*, No. CV 09-00254 RGK (AGRx), 2009 WL 10692058, at *3

21   (C.D. Cal. Sept. 1, 2009) (emphasis added). WPE bore the burden to plead "a cause and effect

22   relationship between the fraud and damages sought." *Intermarketing Media*, 2021 WL 5990190, at

23   *13 (collecting cases). But WPE failed to do so, instead simply asserting that it took "measures" in

24   response to Defendants' threats—without alleging whether such measures were monetary in nature,

25   FAC ¶ 295—and insisting that it expended "significant resources" to counteract actions that

26   Defendants allegedly took *after* the threats occurred, *id.* ¶ 181. Such allegations are insufficient to

27   establish the requisite causation. *Intermarketing Media*, 2021 WL 5990190, at *13; *see also Am.*

28   *Shooting Ctr., Inc. v. Secfor Int'l*, No. 13CV1847 BTM JMA, 2015 WL 1914924, at *4 (S.D. Cal.

Apr. 27, 2015) (plaintiff must plead damages "proximately caused by the alleged attempted extortion"). Under either theory of liability, then, WPE's attempted "civil extortion" claim fails.

**IV.    WPE's Computer Fraud and Abuse Act Claims Must Be Dismissed (Counts 3 and 19)**

The CFAA is primarily a criminal "computer hacking" statute. *hiQ Labs*, *Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196, 1201 (9th Cir. 2022). Section 1030(a)(7)—the provision at issue in Count 3 of the FAC—was designed to target the "emerging problem of computer-age blackmail," in which a hacker might "penetrate a system, encrypt a database and then demand money for the decoding key." S. Rep. No. 104-357, at 12 (1996). Meanwhile, § 1030(a)(5)—the provision underlying Count 19—was enacted to prevent the transmission of "intentionally damaging viruses" or intentional acts of "trespass" that damage a computer. *Id.* at 10. In addition to criminal prosecutions, the CFAA authorizes civil causes of action for violations of these provisions. 18 U.S.C. § 1030(c), (g). But neither provision applies to this case.

A.    WPE fails to plausibly allege a violation of § 1030(a)(7)

To state a claim under § 1030(a)(7), WPE must plausibly allege that Defendants, "with intent to extort," communicated a "threat to cause damage to a protected computer," or a "demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion." 18 U.S.C. § 1030(a)(7)(A), (C); *see also* FAC ¶¶ 280-89 (invoking only subsections (A) and (C)). WPE bases this claim on the same general threats of "war" at issue in its attempted extortion claim. FAC ¶ 283—and in particular, Matt's threat to block access to the Website, which he ultimately carried out. *Id.* ¶¶ 282-85. Yet for the same reason WPE's attempted extortion claim fails, its § 1030(a)(7) claim fails too.

To prove that Defendants acted with the "intent to extort" or "facilitate[d] extortion," WPE must show that Defendants sought to obtain property from WPE "by *wrongful* methods." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1226-27 (11th Cir. 2023).[1] As previously explained, in the Ninth Circuit, a demand for payment is "wrongful" if the plaintiff (1) "had a preexisting right to be

---

[1] *See also* Model Crim. Jury Instr. 8th Cir. 6.18.1030H (2024) (defining extortion under the CFAA by reference to the Hobbs Act, which requires the "wrongful use of actual or threatened" fear or force); Fed. Crim. Jury Instr. 7th Cir. 1030(a)(7)(C)[1] (2023) (same).

Hogan Lovells US
LLP
Attorneys At Law

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE

free from the alleged threatened harm" or (2) the defendant "had no right to seek payment for the service offered." *Edwards v. Leaders in Cmty. Alternatives, Inc.*, 850 F. App'x 503, 507 (9th Cir. 2021) (citing *Levitt*, 765 F.3d at 1133). But for the same reasons noted above, WPE cannot plausibly allege that it had a pre-existing right not to be blocked from the Website; nor can it plausibly claim that Defendants had no basis to seek a trademark license in light of WPE's facial violation of the trademark policies at issue. *See* § III.A, *supra*.

WPE's lack of any right to maintain access to Matt's Website distinguishes this case from those where a defendant wrongfully threatened to withhold property belonging to the plaintiff itself. *See, e.g.*, *SkyHop*, 58 F.4th at 1227 (defendants threatened to wrongfully withhold plaintiff's software until it met their demands); *Inplant Enviro-Systems 2000 Atlanta, Inc. v. Lee*, No. 1:15-CV-0394-LMM, 2015 WL 12746702, at *2-3 (N.D. Ga. Feb. 10, 2015) (defendants withheld access to plaintiff's website and domains subject to a demand for payment). WPE does not (and cannot) allege that Matt threatened to deprive WPE of access to its software or plugins. *See, e.g.* RJN Ex. 5 (explaining WPE plugins remain available to download and update through WPE). WPE's claim instead boils down to allegations that Matt threatened to (and did) withdraw access to services and resources on a repository to which WPE had opted to link its products—in the absence of any enforceable right to do so. Such allegations do not amount to a "wrongful" use of fear. And they cannot give rise to an extortion-based CFAA claim.

> B.     WPE fails to plausibly allege a violation of § 1030(a)(5)

To state a claim under § 1030(a)(5) of the CFAA, WPE must plausibly allege that Defendants (A) "knowingly cause[d] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[d] damage without authorization to a protected computer;" (B) "intentionally accesse[d] a protected computer without authorization" and "recklessly cause[d] damage" due to such access; or (C) "intentionally accesse[d] a protected computer without authorization" and caused "damage and loss." 18 U.S.C. § 1030(a)(5). WPE alleges that Defendants' "install[ation]" of the "SCF plugin onto the systems of WPE's customers" violated this provision. FAC ¶ 452. There are two problems with that claim: WPE has not satisfied the intent requirement of subsections (A) and (B), and WPE fails to plausibly allege that Defendants

accessed protected computers without authorization under subsections (B) and (C).

"**Intentionally" or "recklessly" caused damage.** To state a claim under subsection (A), WPE must plead that Defendants "intentionally" caused "damage" to a "protected computer." 18 U.S.C. § 1030(a)(5)(A). That is, WPE must show that it was Defendants' "conscious desire" to "technological[ly] harm[]" the computer systems of WPE and its customers. *Margolis v. Apple Inc.*, No. 23-cv-03882-PCP, 2024 WL 3755364, at *4-5 (N.D. Cal. Aug. 6, 2024); *Van Buren v. United States*, 593 U.S. 374, 391-92 (2021) (clarifying "damage" under the CFAA); FAC ¶ 451 (identifying "protected computers" as those of WPE and its users). Subsection (B), for its part, requires Defendants to have caused damage recklessly—*i.e.*, with "conscious disregard" of a known risk. *See, e.g.*, *U.S. v. Mendoza-Padilla*, 833 F.3d 1156, 1159 (9th Cir. 2016). The FAC wholly fails to allege that Defendants actively *intended* to damage WPE's and its customers' computers, however. FAC ¶ 452. And while WPE asserts in passing that Defendants "recklessly" caused damage to protected computers, *id.*, that conclusory statement does not suffice. *Iqbal*, 556 U.S. at 687. WPE does not articulate what risk of damage Defendants were aware of but consciously disregarded. FAC ¶¶ 151-62, 452. Indeed, the only allegations concerning Defendants' state of mind with respect to ACF say nothing about technological damage or knowledge thereof. *Id.* ¶¶ 153, 157, 162 (discussing misappropriation of goodwill, interference with customer relationships, and retaliation for pursuing legal claims). WPE's complete omission of the necessary intent allegation for subsection (A), along with its failure to plausibly allege recklessness under subsection (B), warrant dismissal under both subprovisions.

**Access "without authorization."** Under subsections (B) and (C), WPE must also plausibly allege that Defendants intentionally accessed its service and its customers' systems "without authorization." 18 U.S.C. § 1030(a)(5)(B), (C). The term accessing "without authorization"—which appears throughout the statute—refers to "access[ing] a computer without *any* permission at all." *hiQ Labs*, 31 F. 4th at 1198 (emphasis added and internal quotation omitted); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (defining access "without authorization" to include a "person [who] has not received permission to use the computer for any purpose"). But WPE has not plausibly established that Defendants accessed computers or systems without any permission

1   here. WPE or its customers enabled the Website to either automatically update plugins on their

2   wordpress.org dashboards or update individual plugins upon the user's request. *See* FAC ¶¶ 155-

3   56; RJN Ex. 6. And the ACF plugin itself was open source, meaning the "code [was] free and

4   accessible to everyone," FAC ¶ 39, including Defendants. WPE alleges that users did not consent

5   to switching to SCF and may not have realized the update was crafted by Defendants rather than

6   WPE. *Id.* ¶ 155. Yet those allegations at most suggest Defendants exceeded the authorization given;

7   they do nothing to show that Defendants lacked any permission to access the ACF code or users'

8   computers at all. *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 449 (N.D. Cal. 2020) ("Allegations that

9   [the defendant] exceeded authorized access are insufficient to state a claim under [§ 1030(a)(5)] (B)

10  and (C)."). Indeed, courts have rejected claims where users voluntarily permitted software to be

11  installed—even when the defendant allegedly "concealed the true nature of the updates." *See, e.g.*,

12  *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *4 (N.D. Cal. Feb. 20, 2024); *In*

13  *re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452 (N.D. Cal. 2018) (same). WPE's

14  failure to plausibly allege Defendants accessed computers "without authorization" thus provides an

15  independent reason to dismiss its claim under §§ 1030(a)(5)(B) and (C).

16          C.      Applying the CFAA as WPE urges would unduly expand the CFAA's reach

17          Finally, were any doubt remaining about the inapplicability of the CFAA to WPE's claims,

18  the rule of lenity warrants rejecting WPE's broad interpretation. At bottom, the CFAA is "primarily

19  a criminal statute" targeting "intentional intrusion onto someone else's computer." *hiQ Labs*, 31

20  F.4th at 1196, 1200-01. The Ninth Circuit has accordingly cautioned courts to interpret the statute

21  narrowly, "so as not to turn a criminal hacking statute into a sweeping Internet-policing mandate,"

22  *id.* at 1201, or an "expansive" tool to combat "misuse or misappropriation." *U.S. v. Nosal*, 676 F.3d

23  854, 857, 863 (9th Cir. 2012) (en banc). But accepting WPE's interpretation would achieve exactly

24  that. The CFAA would criminalize a defendant's modifications to its *own* systems in a way that

25  denies third parties access to services they have no enforceable right to receive. *Cf. Gone GB Ltd.*

26  *v. Intel Servs. Div., LLC & Intel Corp.*, No. CV 21-978-RGA, 2022 WL 903805, at *5 (D. Del. Mar.

27  28, 2022) ("The CFAA does not empower a plaintiff to bring a claim against a defendant for causing

28  'damage' to its own computer."). And it would threaten imprisonment for the alleged

misappropriation or interference with consumer goodwill, the primary harms WPE asserts from the installation of SCF here. FAC ¶¶ 157, 160-62. That is not what the CFAA prohibits under any construction—much less under the narrow construction that the Ninth Circuit requires.

## V.    WPE's Unfair Competition Law ("UCL") Claim Must Be Dismissed (Count 5)

The UCL prohibits unfair competition. As relevant here, the statute defines "unfair competition" as a "business act or practice" that is (1) "unlawful," or (2) "unfair." Cal. Bus. & Prof. Code § 172000; *see also* FAC ¶ 297. WPE fails to state a claim under either prong.

To state a claim for an "unlawful" business practice, a plaintiff must plausibly allege that the challenged action violates a statute or regulation. *See, e.g.*, *Shaeffer v. Califia Farms, LLC*, 258 Cal. Rptr. 3d 270, 277 (Cal. Ct. App. 2020). If the predicate violation underlying the UCL claim is also asserted as an independent cause of action, a court's dismissal of the independent cause of action automatically warrants dismissal of the "unlawful" UCL claim too. *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *16 (N.D. Cal. Dec. 5, 2013). WPE rests its "unlawful" UCL claim on Defendants' alleged attempts to extort payment in violation of the California Penal Code and the CFAA. FAC ¶ 301. But for the reasons explained above, WPE fails to state a claim for attempted extortion or under the CFAA. *See* §§ III, IV, *supra*. And to the extent WPE attempts to argue that Defendants' alleged antitrust violations form the basis of its "unlawful" UCL claim as well, WPE's antitrust claims fail for the reasons explained in Section I, *supra*. Accordingly, there is no viable "unlawful" act on which WPE's UCL claim can rest.

As for the "unfair" prong of the UCL, a plaintiff must show that the defendant's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999). But the antitrust laws were not passed for the protection of individual competitors; they were "enacted for the protection of *competition*," *CoStar Grp., Inc.*, 2023 WL 2468742, at *2. WPE's UCL allegations make no effort to show how *competition* has been impacted. *See, e.g.*, FAC ¶¶ 300, 302 (focusing on harms to WPE); *id.* ¶¶ 185-90, 303 (asserting general harms to the WordPress community without alleging impact on *competition*); *see also Snapkeys, Ltd. v.*

*Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *4 (N.D. Cal. Oct. 30, 2020) (collecting cases dismissing UCL unfairness claims for failure to allege specific conduct that "significantly harmed competition"). Moreover, where, as here, a plaintiff brings antitrust and UCL claims based on the same underlying conduct, *see, e.g.*, FAC ¶¶ 300, 302, 383, 391-92, a failure to state a claim under the antitrust laws necessarily precludes an "unfair" UCL claim as well. *See, e.g.*, *CoStar*, 2023 WL 2468742, at *7. Because Matt's alleged exclusion of WPE does not amount to an antitrust violation, *see* § I, *supra*, WPE's UCL claim under the "unfair" prong similarly fails.

## VI.    The Amended Complaint Fails To State A Defamation Claim (Counts 9-11)

WPE's libel, trade label, and slander claims, FAC ¶¶ 328-79, should be stricken pursuant to California's anti-SLAPP statute, or, in the alternative, dismissed for failure to state a claim. Counts 9-11 are premised on the following four statements Matt allegedly made between September 20 and 26: (1) during Matt's Q&A session at 2024 WordCamp US, that WPE was one of certain unnamed "parasitic entities" who 'just want to feed off' WordPress 'without giving anything back'" ("**Statement One**"); in blog posts on the Website, that (2) "What WPE gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it" ("**Statement Two**") and (3) that "WPE is free to offer their hacked up, bastardized simulacra of WordPress's GPL code to their customers, and they can experience WordPress as WPE envisions it, with them getting all of the profits and providing all of the services" ("**Statement Three**"); and (4) during an appearance on a tech focused Twitch livestream show, later posted online, that "[WPE has] built a half[-]billion dollar business, they've given nothing back to WordPress, they were contributing 40 hours per week. So call that 100 grand per year. They sponsored WordCamp for 75 grand, we allowed them to be a top sponsor, by the way, lots of people want those spots.'" ("**Statement Four**") (collectively, the "**Statements**"). FAC ¶¶ 365, 329, 330, 366. Because Counts 9-11 arise out of Matt's exercise of free speech regarding public issues, and seek to premise liability on statements of opinion and obviously non-literal rhetorical hyperbole, Counts 9-11 must be stricken or dismissed.

A.    WPE's claims arise from protected activity

A claim arises from acts of free speech if it concerns a "written or oral statement or writing

made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(b)(1), (e)(3). Here, the four Statements underlying Counts 9-11 fit that bill. They were made on publicly accessible web pages, like the Website, Twitch, X, and YouTube, FAC ¶¶ 46, 105, 329-30, 344-45, 361, 366, or at WordCamp US, a public event with thousands of attendee. *Id.* ¶¶ 361, 365. These are all "public forums" under the anti-SLAPP law. *Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2020 WL 887935, at *10 (N.D. Cal. Feb. 24, 2020). They also concern issues of "public interest"—a term courts interpret broadly to include "any issue in which the public is interested." *Nygard Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (Cal. Ct. App. 2008). The public is plainly interested in the health and future of WordPress— the software on which over 43 percent of all websites run, FAC ¶ 48, and the quality and efficacy of WPE's offerings, which are marketed and sold to the public. *Id.* ¶ 34; *see Dorfman*, 2020 WL 887935, at *10 ("[Q]uality and contents of consumer goods are matters of public interest.").

> B.    <u>WPE cannot demonstrate a likelihood of prevailing on its claims</u>

Because Defendants have met their burden of showing that the relevant claims arise from acts of free speech, the burden shifts to WPE to show its probability of success. *Sarver*, 813 F.3d at 901. To state a claim for libel and slander (Counts 9 and 11), WPE must plausibly allege among other things a "false" statement of "fact." *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012). To state a claim for trade libel (Count 10), WPE must additionally allege that the statements at issue "induce[d] others not to deal with plaintiff" and caused "special damages." *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 945 (N.D. Cal. 2017). Trade libel also requires WPE to allege actual malice–*i.e.*, that Matt knew the Statements were false or had "some serious subjective doubt about [their] truth." *Id.* at 946. WPE cannot show a probability of success on these claims for two main reasons: each claim relies on non-actionable opinions, and WPE's trade libel claim fails to plausibly allege special damages and actual malice.

> i.    **Matt's statements are non-actionable opinions**

The "threshold question in every defamation suit is whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021) (internal quotation marks and alteration omitted). In

evaluating whether a statement is fact or opinion, courts ask "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." *Id.* (citation omitted). If the "totality of the circumstances" indicates that a statement is opinion and not fact, dismissal is required. *Id.* Moreover, where a statement of opinion is "based on fully disclosed facts," it is non-actionable unless the "stated facts are themselves false and demeaning." *Id.* at 1159 (explaining that when "the facts underlying a statement of opinion are disclosed, [the audience] will understand they are getting the [speaker's] *interpretation* of the facts presented," rather than an "expression[] of fact" (emphasis added)); *see also Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809-10 (Cal. Ct. App. 2002) (contextual analysis includes likely knowledge of the audience).

Here, the tenor, context, and specific language of the Statements underlying Counts 9-11 demonstrate that they fall on the non-actionable opinion side of the line.

**Statement One.** Matt's statements about the parasitic nature of WPE—when reviewed in their proper context—are hyperbolic expressions of opinion based on fully disclosed facts. Matt disclosed the facts underlying Statement One during the hour-long WordCamp session in which it was made. During a portion of the talk called "how private equity can hollow out and destroy open source communities," Matt told the audience—which consisted of members of the WordPress community—that WPE is "controlled by Silver Lake, a private equity firm," and referenced among others Silver Lake's prior investment in Talend, following which Talend "cycled through four CEOs in seven years and they generated a 20x return for Silver Lake, but the open source community is completely gone." RJN Ex. 10. Matt also disclosed WPE's relative contributions to the WordPress Five for the Future program, discussed more in connection with Statement Four below. *Id.* WPE does not allege that any of these underlying statements are false, and Matt did not imply that any undisclosed fact formed the basis of his comments about private equity's rapacious propensities. That renders Statement One opinion, not fact. *See Maddow*, 8 F.4th at 1159; *accord Standing Comm. On Discipline of U.S. Dist. Court for Cent. Dist. Of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (same). Further, Matt's use of the figurative and hyperbolic phrases "parasitic entity" and

"feed off" to convey his opinion of private equity's presence in open source communities confirms the point. Whether an entity is "parasitic" or "feeding" off another is figurative, "vague and subjective," and not a "specific and measurable claim, capable of being proved false." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *accord Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (Cal. Ct. App. 1999) (same).

The general context in which Statement One was made—WordCamp US 2024, where Matt "was invited to impart his opinion of and expertise" on WordPress as one of its co-founders—also negates any reasonable inference that Matt was conveying specific facts. *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1238 (N.D. Cal. 2014); *see also* RJN Exs. 11 and 12. That is, Matt's "contributions were intended to be cast in light of, and potentially in contrast to" the opinions of others, and "the audience was likely to understand [Matt's] comments as opinions." *Wynn*, 75 F. Supp. 3d at 1238.

**Statements Two and Three.** Matt's Statements about the nature of WPE's use of WordPress features are non-actionable for the same reasons. Matt's blog posts again disclosed his specific basis for the Statements: namely, that WPE disables revisions by default for all of its installations—a factual claim that WPE does not dispute or challenge, and that WPE's own website (to which the blog post linked) confirms. RJN Exs. 3, 7 and 8. Matt also expressed his belief that the revisions feature is "at the core of the user promise of protecting your data." RJN Ex. 7. The remainder of his comment—that what WPE offers is "not WordPress," but instead a "cheap knock-off" and "hacked up, bastardized simulacra of WordPress's GPL code"—reflected his subjective opinion about the impact of disabling revisions on the user experience, particularly in view of his hyperbolic, figurative, and colorful language that is incapable of precise or literal meaning. *See, e.g.*, *Ferlauto*, 74 Cal. App. 4th at 1403 ("imaginative phrase 'Kmart Johnnie Cochran' . . . is a lusty and creative expression of contempt, too loose and figurative to be susceptible of being proved true or false"). To the extent WPE claims that Matt's Statement about "hacked up, bastardized simulacra" is false because WPE's universal disabling of revisions by default is not implemented into the "GPL code" itself, FAC ¶ 331, as opposed to being carried out through other technological means, the Statements' full context shows that point to be immaterial. WPE's revisions practices, not the method of execution, are plainly the target. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*,

Hogan Lovells US LLP
Attorneys At Law

1  302 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (rejecting plaintiff's suggested "overly literal"

2  construction of "destroy" to mean "eliminate completely"); *see also* RJN Exs. 7-8.

3      Moreover, the "general" context confirms that Statements 2 and 3 offered opinions and not

4  actual facts. They were both made in blog posts on the Website, which "lack the characteristics of

5  [a] typical fact-based document[]." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1012-13

6  (Cal. Ct. App. 2021) ("disparaging" statements made on internet message board were opinion,

7  including that plaintiff's computer product "was of inferior quality"). WPE tactically deleted its

8  prior allegations that the Statements were made in "blog posts" (*compare* Compl. ¶¶ 73, 66 *with*

9  FAC ¶¶ 115, 107), and now avers that the Statements were made in "news" "articles." FAC ¶¶ 329-

10 330, 332-333 (p. 111).[2] WPE's contradictory new allegations in the FAC should be disregarded.

11 *See, e.g.*, *Bauer v. Tacey Goss, P.S.*, No. C 12-00876, 2012 WL 2838834, at *3 (N.D. Cal. July 10,

12 2012). But even looking past WPE's admissions, the new allegations are implausible: While the

13 posts sit under a general heading called "News," the subheadings cover a range of topics including

14 "Community" and "WordCamp" (the topics under which the post in question was tagged), which

15 include a range of topics and non-news content. RJN Exs. 7-8. Nor does the "News" label change

16 the substance, for the posts employ an informal writing style that plainly connotes personal

17 commentary, not news reporting, and no reasonable reader would have taken the posts as news as

18 opposed to heated criticism. *See, e.g.*, *Art of Living Found. v. Does*, No. 10–CV–05022–LHK, 2011

19 WL 2441898, at *6 (N.D. Cal. June 15, 2011) (statements made on "obviously critical" blogs in the

20 context of "heated discussion and criticism" were more likely to be understood as opinion).

21     WPE disputes that its universal disabling of revisions by default is as unusual as Matt

22 suggested. FAC ¶ 107. But none of its carefully worded allegations actually contradict Matt's claim

23 (or its own website). Rather, the FAC alleges only that *some* other hosting services, including

24 Automattic's Jetpack, may "limit" or disable revisions *sometimes*, *id.*—nothing like the across-the-

25 board WPE policy criticized in Statement Two (and linked to in the post containing Statement

26 Three). In any event, the reasonableness of Matt's belief is irrelevant. *See Oumere LLC v. Zarpas*,

---

[2] The FAC contains multiple paragraphs bearing the same numbers. Where necessary, Defendants include a page number for clarity.

No. 8:21-CV-00224-DOC(JDEx), 2021 WL 2894643, at *3 (C.D. Cal. June 29, 2021) ("[T]he proposition that 'dishonest opinions are equivalent to false statements of fact would undermine the First Amendment.'"). Matt is free to criticize WPE's use of WordPress features, and the legitimacy of his opinions is a basis for public debate, not for shutting down his speech through litigation.

WPE also contends that Matt's Statements "clearly accused" WPE of "giving its customers counterfeit versions of WordPress." FAC ¶ 348 (p.114, top). Nonsense. The "counterfeit" concept appears nowhere in the Statements and is not reasonably implied from the circumstances. To the contrary, Matt explicitly took issue with WPE's *modification* of the WordPress default settings, to the detriment of users. A reasonable reader would not have understood Matt's Statements to imply counterfeiting. *See, e.g.*, *Wynn*, 75 F. Supp. 3d at 1236 (dismissing defamation claim where implication drawn by plaintiff was unreasonable); *accord Starbuzz Tobacco, Inc. v. Abdallah*, No. CV1003833MMMRZX, 2011 WL 13214313, at *4 (C.D. Cal. Nov. 2, 2011) (dismissing defamation claim where statements not "reasonably susceptible" to implication of counterfeiting).

**Statement Four.** Matt's statement that WPE has "given nothing back to WordPress" cannot be reasonably understood in the overly literal fashion WPE demands. WPE concedes that Matt immediately references the "40 hours per week" WPE pledged to the Five for the Future program, and the roughly "100 grand per year" that those contributions represented (none of which are alleged to be inaccurate). FAC ¶ 366; RJN Ex. 13. No reasonable audience member could have construed his comment as anything other than critical hyperbole, used to convey his opinion that WPE's contributions were *insufficient*, rather than take the Statement as a factual assertion that WPE had literally given *nothing* back to the community. *See Greenpeace*, 302 F. Supp. at 1020. WPE's complaint that Matt did not disclose other alleged "contributions," FAC ¶¶ 368-72 (p. 119), does not relate to the Five for the Future program or render Matt's Statement a false assertion of fact.

### ii. WPE cannot show direct financial harm or actual malice for trade libel

WPE's failure to identify a false statement of fact warrants striking (or dismissing) all three defamation claims. *See ComputerXpress, Inc.*, 93 Cal. App. 4th at 1011. But WPE's trade libel claim fails for two additional independent reasons as well: it has not adequately alleged special damages, nor has it pled facts that would make its conclusory allegations of actual malice plausible.

To allege "special damages" for trade libel purposes, WPE "must identify the particular purchasers who have refrained from dealing with [it], and specify the transactions of which [it] claims to have been deprived." *Muddy Waters, LLC v. Super. Ct.of San Bernadino Cnty.*, 62 Cal. App. 5th 905, 925 (Cal. Ct. App. 2021) (the plaintiff must have "suffered direct financial harm"); *see* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated"). WPE has failed to plausibly allege a particular loss resulting from Matt's Statements made on the Website. The FAC's bare allegations that the Statements induced unspecified customers to stop purchasing WPE's platform, *see* FAC ¶¶ 169-70, 356, are insufficient. *See Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, 2016 WL 304764, at *11 (N.D. Cal. Jan. 26, 2016) (dismissing trade libel claim for failing to allege special damages with particularity). Moreover, to the extent WPE attempts to argue that special damages must be presumed under a theory of trade libel "per se," FAC ¶ 347, that is not a recognized cause of action under California law. *See Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2019 WL 5893188, at *6 (N.D. Cal. Nov. 12, 2019).

As for actual malice, the FAC's conclusory assertions, *e.g.*, FAC ¶ 355, fall far short of the "specific allegations of a speaker's mindset" that the law requires. *Resolute Forest Prods.*, 302 F. Supp. 3d at 1018 ("conclusory statements that [a defamation defendant] should have known the truth does not satisfy the heightened pleading standard" of actual malice). And in any event, it is impossible to have knowledge of a statement's falsity where the statement is a mere opinion incapable of being proven true or false. *See* § VI.B.i, *supra*.

## VII.    WPE Fails To Plead Any Promise On Which Promissory Estoppel Can Rest (Count 6)

To state a claim for promissory estoppel, WPE must plausibly allege that (1) Defendants made "a promise" to WPE that was "clear and unambiguous in its terms;" (2) WPE reasonably and foreseeably relied on that promise; and (3) WPE was injured as a result of its reliance. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012). Promises that are "vague, general or of indeterminate application" do not satisfy the first element of this claim. *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 446 (9th Cir. 1992) (internal quotation marks omitted); *Dixon v. Univ. of S. Cal.*, No. 2:21-cv-05286-VAP-(AFMx), 2021 WL 6496737, at *6 (C.D. Cal. Oct. 20, 2021) (same). Rather, the alleged terms of a promise must be sufficiently clear

to enable a court to "ascertain the parties' obligations or determine whether those obligations have been performed or breached." *Dixon*, 2021 WL 6496737, at *6 (internal quotation marks and alterations omitted). Because WPE's claim conflates characterizations of the Website's ownership structure with promises of access to the Website itself, and because WPE fails to plead any clear or unambiguous promise on which this claim could rest, Count 6 should be dismissed.

A.    WPE does not identify a promise of access to the Website on which it relied

Despite its conclusory allegations that Defendants' promises "have included promises of open access to. . . all of the resources available on wordpress.org, including the plugin and theme directories, forums, message boards, and other resources," FAC ¶ 305, WPE does not identify a single such promise. Rather, the WordPress.org-related statements cited by WPE are characterizations of ownership structure—not promises of access or availability. *See id.* ¶ 59 (explaining that "WordPress.org is not 'owned' in the traditional sense," it has "no traditional ownership or corporate structure to manage it," and "[t]here's no entity to sign any agreement.").

Further, at least certain of these statements were made by volunteer Website contributors who do not speak on behalf of either Defendant. *See* RJN Ex. 14 (LinkedIn profile of Jan Dembowski, the third party author of the statements quoted by WPE at FAC ¶ 59 n.31). And the statements that were made by an Automattic employee were made only one year ago, RJN Ex. 9, and thus could not possibly have been relied on by WPE in building its business on the back of WordPress.org *thirteen years prior*. Indeed, WPE does not even purport to have relied on these statements—the FAC alleges only that "[t]hese statements were material to WordPress's initial adoption by the open source community as well as. . . ever larger and more commercial entities." FAC ¶ 60. WPE's anachronistic claim cannot rest on such characterizations. *See, e.g., Choudhuri v. Specialized Loan Serv.*, No. 22-cv-06993-JST, 2023 WL 6277327 at *1 (N.D. Cal. Sept. 26, 2023) (dismissing estoppel claim where plaintiff had not pled allegations that it was injured by relying on the promises at issue); *Smith v. S.F.*, 225 Cal.App.3d 38 (Cal. Ct. App. 1990) (dismissing promissory estoppel claim where plaintiff made conclusory allegation of reliance without showing any facts to demonstrate reliance).

B.    WPE fails to plead any sufficiently unambiguous promise by Defendants

1    Even if WPE had pled promises relating to Website access (which it has not), WPE's

2    promissory estoppel claim would still be subject to dismissal because the promises and

3    characterizations alleged are not sufficiently "clear and unambiguous." *See Laks v. Coast Fed. Sav*

4    *& Loan Ass'n*, 131 Cal. Rptr. 836, 890 (Cal. Ct. App. 1976).

5    To sustain a claim for promissory estoppel, an alleged promise "must be definite enough that

6    a court can determine the scope of the duty, and the limits of performance must be sufficiently

7    defined to provide a rational basis for the assessment of damages." *Glen Holly Entm't Inc. v.*

8    *Tektronic Inc.*, 343 F.3d 1000, 1017 (9th Cir. 2003), *amended by* 352 F.3d 367 (9th Cir. 2003)

9    (internal quotation marks omitted). Promissory estoppel claims premised on "vague and undefined"

10    promises must be dismissed. *See, e.g.*, *Dixon*, 2021 WL 6496737, at *6 (dismissing promissory

11    estoppel claim because terms such as "fair, thorough, neutral and impartial" were undefined and

12    vague); *Nguyen v. PennyMac Loan Serv., LLC*, No. SACV 12–01574–CJC(ANx), 2012 WL

13    6062742, at *8 (C.D. Cal. Dec. 5, 2012) (rejecting the term "work with" as too vague).

14    The promises pled by WPE, such as they are, are similarly indefinite. In one example, WPE

15    pleads a promise that "the WordPress community 'is united by the spirit of open source, and the

16    freedom to build, transform, and share without barriers. Everyone is welcome.' " FAC ¶ 84. But the

17    "spirit of open source," the "freedom to build, transform, and share," and references to "everyone"

18    being "welcome" are not specific promises to indefinitely provide unfettered free access to the

19    Website. In another example, WPE pleads a promise that "WordPress 'provides the opportunity for

20    anyone to create and share,'" and that Defendants are "committed to being as inclusive and

21    accessible as possible." *Id.* WPE also cites a statement that the Website is "sort of an open-

22    community type of thing." *Id.* ¶ 59. But none of these vague and undefined characterizations are

23    tantamount to a specific promise to provide access to all resources on the Website for free in

24    perpetuity. It is not possible, based on these statements, to "determine the scope of the duty, and the

25    limits of performance" they entail. *Glen Holly Entm't Inc.*, 343 F.3d at 1017.

26    Similarly, with respect to the supposed promises made on the site developer.WordPress.org,

27    WPE acknowledges that there are a number of caveats and conditions to those pledges on the site

28    itself. That site expressly states that Plugins are not approved unless there are "no issues with the

security, documentation, or presentation." FAC ¶ 87. Plugins may be "closed for guideline violations, security issues, or by author requests." *Id.* The Website "reserve[s] the right to disable or remove a plugin even for reasons 'not explicitly covered by the guidelines.'" *Id.* ¶ 69. And there is "an authentication system" that "controls access to portions of the WordPress.org site." *Id.* ¶ 85. The same is true of the statement on https://developer.wordpress.org/plugins/wordpress-org/ that WPE quotes as stating that "wordpress.org offers free hosting to anyone who wishes to develop a plugin in our directory." *Id.* ¶ 86. What WPE fails to quote is the "requirements" section on that same page, which highlights in yellow that "[a]ll plugins and developers must comply with our Detailed Plugin Guidelines." *Id.* ¶ 86 n.50.

As this discussion makes clear, WPE is well aware that Defendants' statements regarding "free and open access"— themselves insufficient to state a claim for promissory estoppel— are not without condition, and any reliance on unconditional openness or accessibility, including in perpetuity, was not reasonable. *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1996) ("[R]eliance must be reasonable to set up an estoppel").

## VIII.   WPE Fails To State A Claim For Intentional Interference With Prospective Economic Relations For Reasons That Also Doom Its Contractual Relations Claim (Counts 1-2)

To state a claim for intentional interference with prospective economic relations, WPE must, at minimum, plausibly allege that Defendants' conduct "was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 902 P.2d 740, 751 (Cal. 1995). "An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105, 1109 (9th Cir. 2007) (internal quotation marks and alteration omitted). WPE cannot satisfy this essential requirement. WPE alleges that Defendants' interference amounted to attempted extortion and a violation of the UCL. FAC ¶ 276. But as explained in Sections III and V, *supra*, WPE has failed to plausibly allege a violation under either cause of action. Without a viable predicate unlawful act alleged, WPE's tortious interference with prospective economic relations claim necessarily fails. *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1012 (N.D. Cal. 2013) (dismissing

claim for intentional interference with prospective economic relations where the "Complaint hinge[d] its allegations of wrongful conduct" on other insufficiently pled claims).

Moreover, to the extent the contracts underlying WPE's tortious interference with contractual relations claim (Count 1) are at-will, the same independent wrongfulness requirement would apply. *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130, 1140-41 (2020). WPE has carefully avoided pleading any details about its alleged contracts with customers, likely to avoid acknowledging that the contracts at issue are at-will. *But see First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc*., No. CV199577PSGGJSX, 2020 WL 5898973, at *4 (C.D. Cal. July 2, 2020) (requiring plaintiff to identify "the general nature of [the] agreements" at issue); *Paramount Auto Body Shop, Inc. v. Mitchell Int'l, Inc.,* No. D058664, 2012 WL 2018540, at *11 (Cal. Ct. App. June 5, 2012) (unpublished) ("[T]o state a cause of action for intentional interference with a present or existing contractual relationship, [plaintiff] was required to allege it had contracts with [other parties] not terminable at-will"). WPE has likewise failed to identify any independently unlawful grounds on which Count 1 would rest. FAC ¶¶ 263-69. But insofar as WPE attempts to base Count 1 on the same allegedly unlawful conduct as Count 2 (attempted extortion and the UCL), any such effort would fail for the reason just explained.

## IX.    WPE Fails To Plausibly Allege Unjust Enrichment (Count 20)

"Unjust enrichment is an equitable claim that sounds in implied or quasi-contract." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017). Its elements are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *Id.* (citation omitted). "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *Id.* (quotation omitted). WPE advances two bases for its argument that Defendants' retention of some benefit from WPE was unjust. Both fail.

First, WPE claims that Defendants' retention of WPE's contributions to WordPress is unjust "because they were induced by clear and unambiguous promises to the WordPress plugin developer community that the platform would remain free, open and accessible, and that WordPress will

Hogan Lovells US LLP
Attorneys At Law

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE

forever be an open platform that encourages third-party developers to build WordPress plugins and themes to enhance the functionality of WordPress." FAC ¶ 459. But as the Northern District of California has cautioned, "pleading a quasi contract for a free service forever may be a futile exercise." *Rabin v. Google LLC*, No. 22-CV-04547-BLF, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023). And to the extent WPE's unjust enrichment claim rests on this basis, it rises and falls with WPE's promissory estoppel claim, which should be dismissed per Section VII, *supra*.

Second, WPE claims that Defendants' retention of WPE's contributions to WordPress is unjust due to their "wrongfully co-opting software developed and maintained by WPE, falsely conveying to users that it was developed by wordpress.org, banning WPE from using resources behind wordpress.org, and pressuring WPE's customers, partners, vendors, employees, and users to cut their ties with WPE." FAC ¶ 460. In this way, WPE's arguments as to the "unjust" nature of Defendants' retention of any benefit rests on the same grounds as its CFAA and antitrust claims. §§ IV, I, *supra*. It fails for the same reasons. *See, e.g.*, *Barber v. DSW Inc.*, No. SACV 15-2024-JGB (SPX), 2016 WL 11954427, at *6 (C.D. Cal. Apr. 4, 2016) (dismissing unjust enrichment claim where claim was based on same allegations underlying claims that were independently dismissible).

## X.    Counts 3, 5, 9-11, 14-15, And 17-20 Should Be Dismissed As Against Automattic

Counts 3, 5, 14-15, and 17-19 rest solely on actions and activity on WordPress.org, namely the Website's block of WPE, the institution of a checkbox upon login to the Website, the forking of ACF on the Website, and the alleged "attempt to use. . . control over the WordPress platform to ruin a competitor." FAC ¶ 302. But as WPE admits, the Website is owned solely by **Matt**. *Id.* ¶¶ 63-64. Because WPE does not and cannot plead facts based on which Automattic could be liable for activity on Matt's Website, these claims should be dismissed at least as against Automattic.

Similarly, Counts 9-11 rest on statements made by Matt in his individual capacity as co-founder of WordPress. There is no basis for holding Automattic liable for those statements. *Respondeat superior* liability is only triggered if the employee's defamation occurred within the scope of his or her employment. *E.g.*, *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 124 n. 19 (Cal. Ct. App. 2007). WPE's allegations that Matt made the contested Statements "on behalf of Automattic" (FAC ¶¶ 329-330, 344-345, 361, 366) are conclusory and implausible given that WPE

(1) does not allege that any of the Statements were published by Automattic; (2) acknowledges Matt's various "roles" with respect to WordPress, *id*. ¶ 100; (3) concedes that Matt's relationship to WordPress predates Automattic, *id*. ¶¶ 48, 50, 65; and (4) alleges that the Website is "control[led]" by Matt, *id*. ¶ 62; *see McGarry*, 154 Cal. App. 4th at 118, 123-24 (conclusory allegations insufficient to support *respondeat superior* liability). The allegations are also contradicted by Matt's posts and appearances, including his use of the first-person pronoun "I" in his blog posts, WordCamp's description of Matt's Q&A session as hosted by the "co-founder of WordPress," and the fact that Statement One was recited verbatim from a blog post on Matt's personal site. RJN Exs. 7-8, 12 & 15. The FAC's unsupported assertion that Matt "has publicly stated that others at Automattic review [his] public statements before he makes them" (*e.g.*, FAC ¶ 373) is irrelevant because it is not an allegation that these particular statements were reviewed; nor does it explain how that would create vicarious liability. Counts 9-11 should thus be dismissed at least as against Automattic.

Count 20 for unjust enrichment also fails against Automattic because WPE fails to plead the knowing acceptance or unjust retention by Automattic of a benefit from WPE. Here, the "benefit" WPE alleges Defendants received was "WPE's contributions to WordPress." FAC ¶ 459. But WPE does not (and cannot) plead any knowing acceptance *by Automattic* of WPE's alleged contributions *to WordPress*. WPE's unjust enrichment claim should be dismissed as against Automattic for this reason alone. *MH Pillars Ltd.*, 277 F. Supp. At 1094 (requiring that defendant has "knowingly accepted" the benefit). With respect to unjust retention, WPE bases its argument on the forking of ACF and WordPress.org block. FAC ¶ 459-460. But these activities were carried out by WordPress.org; they cannot serve as a basis for a claim against Automattic. And to the extent WPE attempts to base its claim on Automattic's recruitment of WPE employees and customers, this is lawful competition on which no such claim can rest. *See* § I.C, *supra*. WPE cannot sustain an unjust enrichment claim against Automattic on these grounds.

## CONCLUSION

For the reasons detailed herein, Counts 1-6, 12-16, and 19-20 should be dismissed, Counts 17-18 should be dismissed in part, and Counts 9-11 should be stricken or dismissed.

1    Dated: December 19, 2024                    Respectfully submitted,

2                                        By:    */s/Michael M. Maddigan*
3                                               Michael M. Maddigan

4                                        **HOGAN LOVELLS US LLP**
                                         Michael M. Maddigan (Bar No. 163450)
5                                        Neal Kumar Katyal, *pro hac vice*
                                         Anna Kurian Shaw, *pro hac vice*
6                                        Lauren Cury, *pro hac vice*
                                         Jiaxing (Kyle) Xu (Bar No. 344100)
7                                        Hadley Dreibelbis, *pro hac vice*

8
                                         *Attorneys for Defendants Automattic Inc. and*
9                                        *Matthew Charles Mullenweg*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND STRIKE