QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, <br><br> Defendants. | Case No. 3:24-cv-06917-AMO <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S AMENDED COMPLAINT** <br><br> Judge:  Honorable Araceli Martínez-Olguín <br> Courtroom:        10 <br> Hearing Date:   June 5, 2025 <br> Hearing Time:   2:00 p.m. |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................2

I.    WPE STATES MULTIPLE VALID ANTITRUST CLAIMS (COUNTS 12–15)...............2

    A.    WPE Adequately Defines Multiple Relevant Product Markets ...................................2

    B.    WPE Adequately Alleges Defendants' Market Power ...............................................4

    C.    WPE Adequately Alleges Defendants Engaged in Anticompetitive Conduct ..........5

    D.    WPE Adequately Alleges Defendants Committed Unlawful "Negative" Tying ......................................................................................................................9

II.   WPE IS ENTITLED TO DECLARATORY JUDGMENT ON DEFENDANTS' TRADEMARK MISUSE (COUNT 16) ...................................................................10

III.  WPE STATES A VALID CLAIM FOR ATTEMPTED EXTORTION (COUNT 4).........11

    A.    California Recognizes A Right to Relief Even If The Extortion Was Rebuffed ............................................................................................11

    B.    WPE Has Properly Pleaded That Defendants' Threats Were Wrongful.................12

    C.    WPE Has Properly Pleaded Harm Proximately Caused by the Scheme.................13

    D.    WPE Is Not Bringing an Attempted Extortion Claim "Based on Fraud" ...............14

IV.  WPE STATES A VALID CLAIM THAT DEFENDANTS HAVE VIOLATED THE COMPUTER FRAUD AND ABUSE ACT (COUNT 3 & 19) ...........................................14

    A.    WPE Sufficiently Alleges A Violation of Section 1030(a)(7)................................14

    B.    WPE Sufficiently Alleges A Violation of Section 1030(a)(5)................................15

V.    WPE STATES A VALID UNFAIR COMPETITION LAW CLAIM (COUNT 5) ...........17

VI.  THE ANTI-SLAPP STATUTE DOES NOT APPLY BECAUSE WPE'S DEFAMATION CLAIMS ARE BASED ON COMMERCIAL SPEECH ........................19

    A.    WPE'S Claims Are Not Subject to the Anti-SLAPP Statute Because the Statements Are Not a Matter of Public Interest ......................................................20

    B.    In Any Event, WPE'S Defamation Claims Are Well-Pled, Requiring Denial of Defendants' Anti-SLAPP and Motion to Dismiss ...............................................22

          1.    *Defendants' Statements Were Not Opinion or Based on Fully Disclosed Facts* .......................................................................................22

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S FAC

(a)    Defendants' Statements That WPE Offers a "Cheap Knock Off" Product Are Actionable Statements of Purported Fact ............23

(b)    Defendants' Slanderous Statements in Their Keynote Speech and Interview Were Also Actionable Statements of Fact ................24

2.    *WPE Has Alleged Financial Harm and Actual Malice for Its Trade Libel Claim* ...................................................26

VII.    WPE STATES A VALID CLAIM FOR PROMISSORY ESTOPPEL (COUNT 6) .........26

VIII.    WPE STATES VALID INTERFERENCE CLAIMS (COUNTS 1–2) ..............................28

IX.    WPE STATES A VALID CLAIM FOR UNJUST ENRICHMENT (COUNT 20) ............29

X.    WPE HAS PROPERLY PLED AUTOMATTIC'S LIABILITY UNDER COUNTS 3, 5, 9–11, 14–15, & 17–20 .................................................29

CONCLUSION ...........................................................30

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S FAC

1

2                                    **TABLE OF AUTHORITIES**

3                                                                                    **Page**

4
                                            **Cases**
5

6    *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
          966 F.2d 443 (9th Cir. 1992) ................................................................. 27
7
     *Am. Shooting Center v. Secfor Int'l*,
8         2015 WL 1914924 (S.D. Cal. Apr. 27, 2015) ........................................ 14

9    *In re Apple Inc. Device Performance Litig.*,
          347 F. Supp. 3d 434 (N.D. Cal. 2018) ................................................... 16
10
     *In re Apple iPod iTunes Antitrust Litig.*,
11        796 F. Supp. 2d 1137 (N.D. Cal. 2011) ................................................... 7

12   *Arista Networks, Inc. v. Cisco Sys. Inc.*,
          2018 WL 11230167 (N.D. Cal. May 21, 2018) ........................................ 6
13
     *Autotel v. Nevada Bell Tel. Co.*,
14        697 F.3d 846 (9th Cir. 2012) ................................................................. 22

15   *Bowen v. Porsche Cars, N.A., Inc.*,
          561 F. Supp. 3d 1362 (N.D. Ga. 2021) .................................................. 17
16
     *Broadcom Corp. v. Qualcomm Inc.*,
17        501 F.3d 297 (3d Cir. 2007) ..................................................................... 6

18   *Bui-Ford v. Tesla, Inc.*,
          2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......................................... 16
19
     *Caldera, Inc. v. Microsoft Corp.*,
20        87 F. Supp. 2d 1244 (D. Utah 1999) ....................................................... 6
21
     *California Spine & Neurosurgery Inst. v. Oxford Health Ins. Inc.*,
22        2019 WL 6171040 (N.D. Cal. Nov. 20, 2019) ....................................... 28
23
     *Cohen v. Brown*,
24        173 Cal. App. 4th 302 (2009) ................................................................ 11

25   *Conwood Co., L.P. v. U.S. Tobacco Co.*,
          290 F.3d 768 (6th Cir. 2002) ................................................................... 8
26
     *Coronavirus Rep. v. Apple, Inc.*,
27        85 F.4th 948 (9th Cir. 2023) ................................................................... 3

28

1  *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
2      2023 WL 2468742 (C.D. Cal. Feb. 23, 2023) .................................................................. 18

3  *Datel Holdings Ltd. v. Microsoft Corp.*,
       712 F. Supp. 2d 974 (N.D. Cal. 2010) .......................................................................... 4
4
5  *Dial Corp. v. News Corp.*,
       165 F. Supp. 3d 25 (S.D.N.Y. 2016) ............................................................................ 8

6  *Dixon v. Univ. of S. Cal.*,
       2021 WL 6496737 (C.D. Cal. Oct. 20, 2021) .............................................................. 27
7
8  *Dooley v. Crab Boat Owners Ass'n*,
       2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ................................................................. 9
9
10 *Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
       504 U.S. 451 (1992) ............................................................................................. 4, 10
11
   *Emulex Corp. v. Broadcom Corp.*,
12     2010 WL 11595718 (C.D. Cal. June 7, 2010) ............................................................... 7

13 *Entri, LLC v. GoDaddy.com, LLC*,
       2024 WL 4468488 (E.D. Va. Oct. 10, 2024) ........................................................ 4, 9, 10
14
15 *Epic Games, Inc. v. Apple, Inc.*,
       67 F.4th 946 (9th Cir. 2023) ........................................................................ 2, 3, 18, 19
16
   *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*,
17     2014 WL 12591919 (C.D. Cal. Dec. 9, 2014) ............................................................. 23

18 *ESG Cap. Partners, LP v. Stratos*,
       828 F.3d 1023 (9th Cir. 2016) .................................................................................... 29
19
20 *F.T.C. v. Indiana Fed'n of Dentists*,
       476 U.S. 447 (1986) ............................................................................................... 4, 5
21
   *FilmOn.com Inc. v. DoubleVerify Inc.*,
22     7 Cal. 5th 133 (2019) ................................................................................................. 21

23 *Flatley v. Mauro*,
       39 Cal. 4th 299 (2006) ........................................................................................ 11, 13
24
25 *Free FreeHand Corp. v. Adobe Sys. Inc.*,
       852 F. Supp. 2d 1171 (N.D. Cal. 2012) (Koh, J.) ......................................................... 5
26
   *Gen. Commc'ns Eng'g, Inc. v. Motorola Commc'n & Elecs., Inc.*,
27     421 F. Supp. 274 (N.D. Cal. 1976) ............................................................................... 8

28 *Gerald Peters Gallery, Inc. v. Stremmel*,
       815 F. App'x 138 (9th Cir. 2020)................................................................................. 23

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
     343 F.3d 1000 (9th Cir. 2003) ................................................................. 28

*Glob. Plasma Sols., Inc. v. Iee Indoor Env't Eng'g*,
     600 F. Supp. 3d 1082 (N.D. Cal. 2021) ......................................... 22, 23, 25

*GOLO, LLC v. Higher Health Network, LLC*,
     2019 U.S. Dist. LEXIS 18506 (S.D. Cal. Feb. 5, 2019) ......................... 21

*hiQ Labs, Inc. v. LinkedIn Corp.*,
     31 F.4th 1180 (9th Cir. 2022) .................................................................. 17

*Hirsch v. Bank of Am.*,
     107 Cal. App. 4th 708 (2003) .................................................................. 29

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
     527 F. Supp. 2d 1084 (N.D. Cal. 2007) ..................................................... 6

*Intermarketing Media, LLC v. Barlow*
     2021 WL 5990190, at *12–14 (C.D. Cal. May 4, 2021)................... 12, 14

*Ixchel Pharma LLC v. Biogen Inc.*,
     9 Cal. 5th 1130 (2020)........................................................................ 28, 29

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*,
     2013 WL 655314 (C.D. Cal. Feb. 12, 2013) ........................................... 10

*Karsant Family Ltd. P'ship v. Allstate Ins. Co.*,
     2009 WL 188036 (N.D. Cal. Jan. 27, 2009) ........................................... 30

*Kay v. Copper Cane, LLC*,
     549 F. Supp. 3d 1014 (N.D. Cal. 2021) ................................................... 29

*Kickflip, Inc. v. Facebook, Inc.*,
     999 F. Supp. 2d 677 (D. Del. 2013) .......................................................... 8

*King v. Am. Fish Attractor*,
     2016 WL 4699707 (W.D. Ark. Sept. 7, 2016) ........................................ 10

*L.A. Taxi Coop., Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*,
     239 Cal. App. 4th 918 (2015) .................................................................. 21

*Lambrix v. Tesla, Inc.*,
     2024 WL 3403777 (N.D. Cal. June 17, 2024) ........................................ 2, 3

*Levitt v. Yelp! Inc.*,
     765 F.3d 1123 (9th Cir. 2014)............................................................ 12, 13

*Loblaw Companies Ltd. v. Azimi*,
     2001 WL 36028016 (N.D. Cal. Oct. 17, 2001) ...................................... 10

*LOEC, Inc. v. ZippMark, Inc.*,
    2015 WL 12752553 (C.D. Cal. Apr. 2, 2015)...................................................................... 11

*Luxpro Corp. v. Apple Inc.*,
    2011 U.S. Dist. LEXIS 89933 (N.D. Cal. Aug. 12, 2011) ..................................................... 23

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ............................................................................................. 17

*In re MacBook Keyboard Litig.*,
    2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ...................................................................... 19

*Manufactured Home Communities, Inc. v. Cnty. Of San Diego*,
    544 F.3d 959 (9th Cir. 2008)........................................................................................ 22, 24

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ............................................................................................... 26

*Margolis v. Apple Inc.*
    2024 WL 3755364, at *5 (N.D. Cal. Aug. 6, 2024) .............................................................. 15

*Monex Deposit Co. v. Gilliam*,
    666 F. Supp. 2d 1135 (C.D. Cal. Sept. 4, 2009).................................................................. 12

*Neurelis, Inc. v. Aquestive Therapeutics, Inc.*,
    71 Cal. App. 5th 769 (2021) ............................................................................................... 20

*Orwell Nat. Gas Co. v. Dominion Res., Inc.*,
    2009 WL 112566 (N.D. Ohio Jan. 16, 2009) ........................................................................ 8

*Overhill Farms, Inc. v. Lopez*,
    190 Cal. App. 4th 1248 (2010) ..................................................................................... 24, 25

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................................................................... 19

*PLS.Com, LLC v. Nat'l Ass'n of Realtors*,
    32 F.4th 824 (9th Cir. 2022) ................................................................................................. 4

*Raiser v. Ventura College of Law*,
    2009 WL 10692058 (C.D. Cal. Sept. 1, 2009) ..................................................................... 14

*Rebel Oil Co. v. Atl. Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) ................................................................................................. 4

*Rivero v. Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO*,
    105 Cal. App. 4th 913 (2003) .............................................................................................. 21

*Rodriguez v. Panayiotou*,
    314 F.3d 979 (9th Cir. 2002) ............................................................................................... 25

*S&C Electric Co. v. Contreras*,
  2011 WL 673740 (N.D. Cal. Feb. 17, 2011) (Alsup, J.) ....................................... 12

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ..................................................................................... 27

*SC Innovations, Inc. v. Uber Techs., Inc.*,
  2020 WL 2097611 (N.D. Cal. May 1, 2020) .............................................................. 8

*Scott v. Metabolife Int'l, Inc.*,
  115 Cal. App. 4th 404 (2004) ..................................................................................... 21

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ................................................................................... 15

*Slaughter v. Friedman*,
  32 Cal. 3d 149 (1982) ................................................................................................. 25

*Snapkeys, Ltd. v. Google LLC*,
  2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ............................................................ 18

*Stephens v. UPS*,
  2024 WL 4906074 (N.D. Cal. Nov. 27, 2024) ..................................................... 29, 30

*Stone Brewing Co., LLC v. MillerCoors LLC*,
  2019 WL 1383273 (S.D. Cal. Mar. 26, 2019) ............................................................ 11

*TaiMed Biologics, Inc. v. Numada Corp.*,
  2011 WL 1630041 (N.D. Cal. Apr. 29, 2011) ............................................................ 12

*Tate v. Pac. Gas & Elec. Co.*,
  230 F. Supp. 2d 1072 (N.D. Cal. 2002) ....................................................................... 7

*Thanh Nguyen v. PennyMac Loan Servs., LLC*,
  2012 WL 6062742 (C.D. Cal. Dec. 5, 2012) ............................................................. 28

*Theofel v. Farey-Jones*,
  359 F.3d 1066 (9th Cir. 2004) .............................................................................. 15, 17

*Thompson v. Oracle Corp.*,
  574 F. Supp. 3d 738 (N.D. Cal. 2021) ....................................................................... 27

*Tran v. Eat Club, Inc.*,
  2020 WL 4812634 (Cal. App. Aug. 18, 2020) ........................................................... 12

*Tucker v. Apple Computer, Inc.*,
  493 F. Supp. 2d 1090 (N.D. Cal. 2006) ..................................................................... 10

*United States v. Willis*,
  476 F.3d 1121 (10th Cir. 2007) .................................................................................. 17

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S FAC

1
2
*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
    914 F.2d 1256 (9th Cir. 1990) ......................................................................... 9

3
*VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*,
    788 F. Supp. 648 (D.P.R. 1992) .................................................................... 11

4
5
*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010) .............................................................................. 9

6
*Washington Alder LLC v. Weyerhaeuser Co.*,
    2004 WL 1068791 (D. Or. May 7, 2004) ......................................................... 7
7

8
*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
    814 F. Supp. 2d 1033 (S.D. Cal. 2011) ......................................................... 20

9
10
*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004) ........................................................................ 23

11
*Williams v. Chase Bank/JP Morgan, N.A.*,
    2015 WL 1843951 (N.D. Cal. Apr. 8, 2015) ................................................. 27
12

13
*Wilson v. Cable News Network, Inc.*,
    7 Cal. 5th 871 (2019) ............................................................................... 21, 22

14
15
*Wisk Aero LLC v. Archer Aviation Inc.*,
    2023 WL 3919469 (N.D. Cal. June 9, 2023) ................................................. 23

16
*Workgroup Tech. Partners, Inc. v. Anthem, Inc.*,
    2016 WL 424960 (D. Me. Feb. 3, 2016) ....................................................... 14
17

18
*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) .......................................................... 25

19
20
*Xu v. Huang*,
    73 Cal. App. 5th 802 (2021) .......................................................................... 22

21
*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*,
    774 F.3d 1065 (6th Cir. 2014) ...................................................................... 17

22

23
                                   **Statutes**

24
15 U.S.C. § 1115(b)(7) ............................................................................................ 10

25
15 U.S.C. § 1051 ................................................................................................ 1, 18

26
18 U.S.C. § 1030(a)(5) ...................................................................................... 15, 16

27
18 U.S.C. § 1030(a)(7)(A), (C) ............................................................................... 14

28
18 U.S.C. § 1030(e)(2)(B) ....................................................................................... 14

Penal Code § 523 .................................................................................................................... 11

Penal Code § 524 ............................................................................................................... 11, 12

Sherman Act ........................................................................................................................... 1

## **Other Authorities**

Areeda, Phillip E., & Hovenkamp, Herbert, *Antitrust Law* ¶ 1752 (2022 ed.) ............................ 10

CCP § 425.17(c) ................................................................................................................. 19, 20

Fed. R. Civ. P. 1 ...................................................................................................................... 11

Fed. R. Civ. P. 10(c) ................................................................................................................ 18

Restatement (Second) of Torts § 892B (1979) .......................................................................... 17

Rule 12 .................................................................................................................................... 13

Rule 12(b)(6) ............................................................................................................................. 1

1

**PRELIMINARY STATEMENT**

2      Defendants' motion to dismiss and strike (Dkt. 68, "Mot.") is a thinly disguised effort to

3 improperly litigate the merits of claims at the pleadings stage.  The First Amended Complaint (Dkt.

4 51, "FAC") extensively details how Defendants Automattic Inc. and its CEO Matthew Charles

5 Mullenweg have gravely harmed both competition and Plaintiff WPEngine, Inc. ("WPE").

6 Defendants have done so through a self-proclaimed "nuclear war" of blatant bad acts, including

7 deceiving the market through false promises WordPress would be free and open to everyone forever;

8 threatening WPE, its customers, and other market participants; attempting to extort WPE; disparaging

9 and defaming WPE; interfering with WPE's business and its contracts, customers, and personnel;

10 misusing purported trademark "rights"; infringing WPE's trademarks; and hijacking WPE's ACF

11 plugin, even installing malicious software code on WPE customers' computer systems to do so.  These

12 wrongful acts are meticulously documented in WPE's well-pled, 144-page complaint.  They give rise

13 to myriad claims against both Automattic and Mullenweg, and appropriately seek to hold Defendants

14 accountable for the massive damage they have caused, including through compensatory damages for

15 the severe harm Defendants ***admit*** they have inflicted upon WPE, treble damages under the Sherman

16 Act, and punitive damages for Defendants' malicious conduct.  Actions have consequences, and

17 Defendants must be held accountable for their blatant and intentional misconduct.

18      Seeking to evade those consequences, Defendants now move to dismiss most of WPE's

19 claims.  But nothing in Defendants' motion undermines them.  The motion does not challenge four

20 claims: WPE's declaratory judgment claims against Automattic for trademark non-infringement and

21 non-dilution (Counts 7–8), and its Lanham Act claims against Mullenweg for unfair competition and

22 false advertising (Counts 17–18).  For the claims Defendants do move against, they identify no fatal

23 deficiencies in WPE's allegations.  Instead, Defendants misconstrue or ignore those allegations,

24 misstate the law, and invoke "facts" outside of the pleadings to attempt to dispute the merits of WPE's

25 allegations, which is impermissible on a Rule 12(b)(6) motion.  WPE's counts are grounded in well-

26 pled factual allegations that state valid claims to relief.  Defendants' core arguments to the contrary,

27 that the FAC is "unsubstantiated" and lacks any "actionable conduct," are frivolous.  *See, e.g.,* Dkt.

28 64 (12/10/24 Preliminary Injunction Order). Defendants' motion should be denied in its entirety.

## ARGUMENT

**I.    WPE STATES MULTIPLE VALID ANTITRUST CLAIMS (COUNTS 12–15)**

Defendants seek dismissal of WPE's antitrust claims for supposed failure to sufficiently allege market definition, market power, anticompetitive conduct, and tying.  Defendants' arguments all fail.

### A.    WPE Adequately Defines Multiple Relevant Product Markets

WPE defines four relevant antitrust product markets: a "foremarket" of multiple brands of web content management systems ("WCMS") (of which WordPress is one), and three derivative aftermarkets (each within the WordPress ecosystem) for market participants who have selected WordPress as their WCMS: (1) web hosting services, (2) custom field plugins, and (3) plugin distribution.  FAC ¶¶ 29–33, 191–252.  Defendants do not contest that the FAC defines the WCMS foremarket; instead, they contend the FAC does not define the three aftermarkets.  Mot. at 3.

Defendants' arguments rest on four factors articulated in *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023).  But the *Epic* factors need not be satisfied here, because *Epic* did not address pleading requirements; it was a post-trial merits decision.  *Id*.  And it recognizes that defining a market is ***not*** required in all rule-of-reason cases, such as where a plaintiff shows market power by ***direct*** evidence of increased prices, reduced quality, and the like (as WPE does here, *infra* at Section I.B.) rather than just through ***indirect*** evidence (which involves defining a market and calculating a defendant's market share within it).  67 F.4th at 974, 983.  Additionally, the *Epic* factors "do not apply" to the FAC's aftermarket allegations because the factors "derive from concerns about a lack of market power in the foremarket," and where the defendant has power in the foremarket, consumers "have minimal ability to discipline the company's conduct in aftermarkets, regardless of" the factors. *Lambrix v. Tesla, Inc.*, 2024 WL 3403777, at *7–11 (N.D. Cal. June 17, 2024).  WPE alleges Defendants ***do*** have market power in the foremarket (FAC ¶ 204), rendering the factors inapplicable here.  Even if they were to apply—and they do not—WPE meets them, as explained below.

**Lack of Knowledge.**  WPE satisfies the first *Epic* factor: "the challenged aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase[.]"  *Epic*, 67 F.4th at 977.  Defendants' only argument is that it is "generally known" plugins and features from one WCMS are inoperable with those from others.  Mot. at 3.  But inoperability is ***not*** the challenged

1  aftermarket restriction. This alone defeats Defendants' strawman argument and distinguishes their

2  sole case, *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023). The pertinent unknown

3  restrictions are Defendants reserving the ability to charge fees (particularly extortionate ones) and

4  block access to wordpress.org, and Mullenweg's claimed control of source code and trademarks.

5  FAC ¶¶ 28, 248–51. Market participants were unaware of and could not learn of these practices when

6  they selected WordPress over other WCMSs since Defendants deceived them about these restrictions,

7  as confirmed by their surprise when these facts just came to light. FAC ¶¶ 52–59, 70–82, 248–51.

8  Defendants ignore these allegations, which satisfy this factor. *Lambrix*, 2024 WL 3403777, at *9

9  (factor met based on allegations practices were "unexpected" and defendant "misleads" about them).

10  **Information Costs and Life-Cycle Pricing.** WPE satisfies the second factor: "'significant'

11  information costs prevent accurate life-cycle pricing[.]" *Epic*, 67 F.4th at 977. Defendants assert WPE

12  makes no such allegations, Mot. at 4, but the FAC does. *E.g.*, FAC ¶ 252 ("Significant Information

13  Costs Impede Life-Cycle Pricing"). Likewise, Defendants' argument that an inability to predict

14  pricing must be borne by "consumers—not other market participants" like WPE (Mot. at 4) ignores

15  WPE's consumer allegations, which address both individual consumers, *id.* ¶ 252, **and** the web hosts,

16  agencies, and developers, who also constitute "consumers"—all of whom were unable to predict

17  pricing. *Id.* ¶¶ 29–36, 73–75, 248–57. Defendants' argument that "consumers can get information"

18  (Mot. 4) does not even respond to, and at best improperly attempts to contradict, the FAC's allegation

19  that when these consumers chose WordPress, they could not uncover that Defendants lied about

20  ownership and control of wordpress.org or would demand excessive fees and block access. FAC ¶¶

21  29–36, 73–75, 248–57. Consumers could not learn the truth so as to predict prices since Defendants

22  deceived about this information, which, by its nature, is in Defendants' near-exclusive control. These

23  allegations satisfy this factor. *Lambrix*, 2024 WL 3403777, at *10 (factor met based on allegations

24  that information necessary for consumers to accurately predict lifecycle costs of product "difficult to

25  determine" and defendant's "public misstatements distort[ed] the lifecycle costs" for product).

26  Defendants dispute this factor, relying on WPE not paying the ransom. Mot. at 4. But whether

27  WPE paid is irrelevant. Others have paid (FAC ¶¶ 214, 236, 255), confirming prices to some

28  customers have gone up unpredictably. Further, even putting aside the fee demand, Defendants

1   created chaos, loss of functionality, downtime, instability, and fear, causing customers beyond WPE

2   to incur unpredicted, added costs. *Id.* ¶¶ 125, 164–75, 252, 256. All of that is part of life-cycle pricing,

3   which Defendants ignore. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 473 (1992).

4        **<u>Switching Costs.</u>** Defendants' only argument as to the third factor is "WPE alleges no facts"

5   as to switching costs. Mot. at 3, 4. Not so. WPE alleges facts establishing switching costs, *e.g.*, the

6   substantial time, money, ***and*** effort required for customers, web hosts, developers, and other market

7   participants to move to a new WCMS once they have picked WordPress. *E.g.*, FAC ¶¶ 244–48, 251.

8        **<u>Market Definition Principles.</u>** Defendants claim "WPE alleges no facts" as to the final factor:

9   market-definition principles do not undermine the aftermarkets. Mot. at 3, 4. But they admit markets

10   can be defined based on interchangeability. *Id.* at 4. WPE does that, explaining what services are in

11   each aftermarket, why others are ***not*** interchangeable, and how market participants recognize all of

12   this. FAC ¶¶ 205–11, 216–21, 225–234. That suffices. *Datel Holdings Ltd. v. Microsoft Corp.*, 712

13   F. Supp. 2d 974, 980, 986–87, 996–97 (N.D. Cal. 2010) (motion to dismiss Xbox aftermarket denied).

14        **B.    <u>WPE Adequately Alleges Defendants' Market Power</u>**

15        Defendants dwell (Mot. at 5) on showing market power through indirect evidence, which

16   generally requires market shares of more than 50% for monopolization (Count 12) and more than

17   30% for attempted monopolization (Count 13) and tying (Counts 14 & 15). *Rebel Oil Co. v. Atl.*

18   *Richfield Co.*, 51 F.3d 1421, 1438 & n.10 (9th Cir. 1995); *Entri, LLC v. GoDaddy.com, LLC*, 2024

19   WL 4468488, at *7 (E.D. Va. Oct. 10, 2024). Defendants incorrectly assert WPE does not allege

20   their share in any market. Mot. 5. In fact, in the WordPress Plugin Distribution Market, "***substantially***

21   ***all***" WordPress plugins are published or distributed through wordpress.org (FAC ¶ 235); Defendants'

22   share is thus near-100%. As to the WCMS Market, 64% of websites known to be built using a WCMS

23   used WordPress, and 43% of all websites on the internet use WordPress, which Defendants claim to

24   control (*id.* ¶¶ 52, 57–66, 204)—it is thus appropriate to attribute those shares to Defendants.

25        Further, WPE alleges market power through direct evidence, such as increased prices, reduced

26   output, decreased quality, ***or*** actual exclusion of competitors, which does not require defined markets

27   or market shares. *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986); *PLS.Com, LLC*

28   *v. Nat'l Ass'n of Realtors,* 32 F.4th 824, 834 (9th Cir. 2022); *Kodak*, 504 U.S. at 477. WPE alleges

that in all four markets, Defendants: (1) raised prices (through ransom demands, which others have already paid); (2) increased other costs (service disruptions); (3) reduced quality (interfering with functionality, creating chaos, and inhibiting choice); *and* (4) excluded competition (blocking WPE from wordpress.org and seizing its ACF plugin). FAC ¶¶ 204, 212–15, 224, 236, 253–59.

Unable to dispute these outcomes, Defendants argue trademarks cannot themselves confer market power. Mot. at 5. But WPE does not contend that Defendants have power *because of* their self-claimed trademark "rights"; rather, it is Defendants' market power that allows them to use those illusory "rights" to demand extortionate fees (FAC ¶ 26). In other words, Defendants are using the trademarks as an *instrumentality* (not the *source*) of their separately-derived market power.

Defendants also argue that the demanded payment is "not a price" (Mot. at 5), but this ignores WPE's allegations Defendants' royalty demands *are* an effective price increase because they: (a) are a bounty recipients must pay to access wordpress.org (and some *have* paid); and (b) have increased costs to even those that did not receive/pay them (*e.g.*, through service disruptions and losses caused by Defendants' "nuclear war"). FAC ¶¶ 27–28, 98–100, 117, 165–67, 181, 184–86, 190, 204, 214, 224, 236, 255–56. In any event, direct evidence of market power can be shown "even absent proof" of "higher prices," *Dentists*, 476 U.S. at 461–62, including raised costs, reduced quality, and excluded competition, which WPE alleges, *see supra*, and Defendants do not address.

## C.     WPE Adequately Alleges Defendants Engaged in Anticompetitive Conduct

Defendants try to dismember their course of conduct into pieces to avoid liability (Mot. at 5–8), but "it is not proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect," and otherwise lawful acts "are unlawful . . . if done by a monopolist." *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012) (Koh, J.). But even separately construed, WPE's anticompetitive conduct theories are cognizable.

**Deception of the Market.** Defendants deceived the market by attracting and locking in market participants through false promises that WordPress was not owned by anyone and would be "free and open," "for everyone," forever. *E.g.*, FAC ¶¶ 58–60, 71, 248–51, 254, 383, 391. Defendants contend this theory fails under the six-part test stated in *Harcourt Brace*. Mot. at 6. But Defendants conflate their market deception with their later disparagement of WPE. The six-part test does not

apply to a defendant's deception of the market to adopt its technology. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (not applying test to fraud in standard setting organization); *Hynix Semiconductor Inc. v. Rambus*, *Inc.*, 527 F. Supp. 2d 1084, 1098 (N.D. Cal. 2007) (same); *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *12–13 (N.D. Cal. May 21, 2018) (six-part test applied to disparagement, not "open early, closed late" deceptive scheme like one here).

Even if the six-part test did apply, WPE meets it. WPE alleges statements that were: (1) clearly false—Defendants misrepresented their purported lack of control over WordPress and that WordPress would be free and open for everyone forever, FAC ¶¶ 2, 52–55, 57–59, 69–70, 83–88, 248–49, 251, 254; (2) clearly material—the misstatements were key to market participants selecting WordPress over other WCMS products, *id.* ¶¶ 52, 60, 70, 73, 185, 190, 251, 254; (3) clearly likely to induce reasonable reliance—Defendants intended market participants to rely on the misstatements (particularly given Mullenweg's status in the WordPress community) and many did so and picked WordPress *because of* the misstatements, *id.* ¶¶ 4, 48, 56, 60, 71, 74, 101; (4 & 6) made to buyers without knowledge and could not be reasonably offset—Defendants specifically deceived regarding control of, and supposed trademarks in, WordPress and the terms on which WordPress would be available, and given their deception on these subjects, only Defendants (not the market, including customers and WPE) knew the truth, *id.* ¶¶ 33, 52–60, 70–82, 249–250; and (5) continued for prolonged periods—the deception goes back to at least 2010 and continued through late 2024, *id.*, ¶¶ 2–3, 52, 55, 58–59, 62–63, 68–70, 250. Defendants refer to disparaging WPE, Mot. at 6, but do not meaningfully address the market deception allegations under the six-part test, so their arguments fail.

**Disparagement.** WPE validly alleges anticompetitive conduct by way of Defendants' disparagement of WPE and its products, contributions to the WordPress community, and purported use of Defendants' supposed "trademark" rights. FAC ¶¶ 383, 391. As an initial matter, some courts have held the six-part test does not apply where, as here, disparagement is one piece of a larger anticompetitive scheme. *Caldera, Inc. v. Microsoft Corp.*, 87 F. Supp. 2d 1244, 1249 (D. Utah 1999). To the extent that test does apply, WPE meets it. Defendants made clearly false statements about WPE. FAC ¶¶ 22–28, 101–111, 329–331, 335–336, 339, 344–47, 351–52, 355, 361, 365–68, 372, 375. They were clearly material to customers: ***thousands*** of customers have left WPE (as Defendants

themselves boast), with some specifically confirming they are **not** using WPE **because of** Defendants' misstatements.  *Id.* ¶¶ 111, 169–70, 183, 340, 356, 377–78.  They were also clearly likely to induce reliance: they were made by the influential Mullenweg, to WPE's actual and potential customers (an audience with demonstrated interest in WPE), to get them to forego WPE, and many did so and left WPE because of the misstatements (confirming their reliance).  *Id.* ¶¶ 337, 341, 353, 364, 369–72.  On these elements, Defendants incorporate their arguments on the defamation and promissory estoppel claims, but as discussed *infra* at Sections VI & VII, those arguments are unavailing.

Defendants claim that their disparagement was not prolonged because it "only" occurred in September 2024.  Mot. at 6.  That ignores the disparagement persisted **through** the November 2024 FAC and is still **ongoing** months later.  FAC ¶¶ 7, 98, 110, 387, 397; *compare In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011) (Defendants' sole case, no disparagement claim based on "single event").  In any case, WPE is not required to wait until more disparagement occurs so that Defendants' "scheme succeeds" and WPE is "driven out of business." *Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1068791, at *2 (D. Or. May 7, 2004).

The disparagement also was not susceptible to offset and was made to buyers without knowledge of the misstatements' subject matter.  While Defendants' arguments on these factors focus on the disparagement of WPE's **quality**, Mot. at 6, those arguments do not address—and thus do not apply to—WPE's antitrust claims based on Defendants' disparagement involving WPE's contributions to the WordPress community and Defendants' "trademark" rights.  FAC ¶¶ 23, 101–10, 383, 391.  Even as to quality, many customers are **not** technically sophisticated and hire WPE for that reason (*id.* ¶¶ 33–35), and it would take time, knowhow, and money for customers to try other services and then compare them to WPE to determine whether the disparagement was false.  That is a far cry from Defendants' cited cases, where a plaintiff could neutralize the disparagement by demonstrating it actually did offer particular products (*Emulex Corp. v. Broadcom Corp.*, 2010 WL 11595718, at *7–8 (C.D. Cal. June 7, 2010)), or the audience was "sophisticated" buyers of gasoline conversion technology (*Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1075–76, 1080 (N.D. Cal. 2002)).  That Defendants' disparagement worked—many customers left WPE—confirms customers were tricked by Defendants and the disparagement was not susceptible to neutralization.

1    **Interference with WPE's operations, customers, and personnel.** Defendants argue their

2  interference with WPE is only actionable through "business torts," not antitrust. Mot. at 6. That is

3  wrong: "merely because" a practice is actionable in tort "does not preclude" an antitrust claim based

4  on the same practice. *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 784 (6th Cir. 2002).

5    Defendants argue their interference is a permissible "refusal to deal" with WPE. Mot. at 7–8.

6  But WPE does not challenge Defendants' mere denial of access to WPE to a website (wordpress.org),

7  as in the *hiQ*, *Power Ventures*, and *CoStar* cases Defendants cite; rather, WPE challenges Defendants'

8  deception, pretextually blocking of access of WPE and its employees **and** customers after years,

9  blocking WPE employees' wordpress.org credentials and commandeering WPE's ACF plugin (akin

10 to hacking), and use of the disruption they created to interfere with WPE's customers. FAC ¶¶ 383,

11 391. That states an antitrust claim. *Dial Corp. v. News Corp.*, 165 F. Supp. 3d 25, 37 (S.D.N.Y. 2016)

12 (defendant "hack[ing] into" computers and using "defaced" products of competitor to seek customers

13 was anticompetitive); *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 685–86 (D. Del. 2013)

14 (pretextually banning plaintiff from site to maintain monopoly was not permissible refusal to deal).

15    Defendants incorrectly contend that their "soliciting" of WPE customers and personnel is

16 "competitive." Mot. at 7–8. As to customers, the Court already found Defendants engaged in

17 ***improper*** interference. Dkt. 64 at 27–31, 36, 41. Further, Defendants did ***not*** compete on the merits;

18 instead, they fomented chaos among customers and encouraged those customers to break their WPE

19 contracts. FAC ¶¶ 120–125, 180, 183, 383, 391. That states an antitrust claim. *Orwell Nat. Gas Co.*

20 *v. Dominion Res., Inc.*, 2009 WL 112566, at *1–2 (N.D. Ohio Jan. 16, 2009) (defendants' inducing

21 breach of plaintiff's contract was anticompetitive); *SC Innovations, Inc. v. Uber Techs., Inc.*, 2020

22 WL 2097611, at *10–11 (N.D. Cal. May 1, 2020) (defendant's conduct vis-à-vis plaintiff rival that

23 created "delays" for plaintiff's customers was anticompetitive); *compare Gen. Commc'ns Eng'g, Inc.*

24 *v. Motorola Commc'ns & Elecs., Inc.*, 421 F. Supp. 274, 287–88 (N.D. Cal. 1976) (Defendants' cited

25 case, only "legitimate competitive" conduct). As to WPE's personnel, Defendants did not engage in

26 legitimate competition; as part of their overall "nuclear war" with WPE, Defendants started a bad-

27 faith campaign of mass solicitation of "hundreds of WPE employees" to get them to turn against WPE

28 ***and*** leave for Automattic, ***and*** they harassed WPE's CEO (through threatening texts and publishing

1   her private cell phone number).  FAC ¶¶ 92–97, 133, 134, 141.  That states an antitrust claim.  *Dooley*

2   *v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *1–2, 6, 11 (N.D. Cal. Apr. 26, 2004) (threats and

3   tortious acts to plaintiff's employees was anticompetitive); *Universal Analytics, Inc. v. MacNeal-*

4   *Schwendler Corp.*, 914 F.2d 1256, 1258 (9th Cir. 1990) ("predatory hiring" anticompetitive where

5   done with "predatory intent"); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 109–10

6   (3d Cir. 2010) ("predatory hiring" of plaintiff's employees to harm plaintiff was anticompetitive).

7         **D.        WPE Adequately Alleges Defendants Committed Unlawful "Negative" Tying**

8         WPE asserts tying claims based on Defendants' conditioning access to WordPress plugin

9   distribution (the "tying" product) on customers ***not*** using WordPress web hosting or custom field

10  plugins (the "tied" products) from WPE.  FAC ¶¶ 400–24.  Defendants' tying arguments all fail.

11        ***First***, Defendants' argument these claims fail for lack of market power (Mot. at 8) is without

12  merit.  As discussed above, the FAC sufficiently establishes Defendants' power.  *See* Section I.B.

13        ***Second***, Defendants misconstrue the tie by arguing WPE must allege "customers must

14  purchase the 'tied' products of Web Hosting Services or Custom Field Plugins from Defendants . . .

15  to access the 'tying' product of Plugin Distribution."  Mot. at 8.  That confuses ***positive*** and ***negative***

16  tying, and is an element of the former but not the latter.  Defendants' own cited case, *Aerotec Int'l,*

17  *Inc. v. Honeywell Int'l, Inc.*, recognizes the distinction: a "positive" tie occurs where "sale of the

18  desired ('tying') product is conditioned on purchase of another ('tied') product," while a "negative

19  tie . . . occurs when the customer promises not to take the tied product from the defendant's

20  competitor[.]"  836 F.3d 1171, 1178 (9th Cir. 2016).  WPE asserts ***negative*** tying: Defendants coerced

21  customers into ***not*** using WPE's web hosting or custom field plugins by: (a) blocking access to

22  wordpress.org from the administrative panel of customers' websites if they used WPE's web hosting;

23  and (b) implementing a loyalty "checkbox" (which Defendants do not mention).  FAC ¶¶ 117, 149–

24  50, 402–04, 414–16.  Defendants' coercion was successful—they caused many customers to leave

25  WPE.  *Id.* ¶¶ 7, 165–77, 215, 405, 417.  That suffices.  *Entri*, 2024 WL 4468488, at *4–8 & n.5 (motion

26  to dismiss denied where customers agreed not to use competitors' products, citing defendant's terms

27  of use and "scare tactic" and plaintiff's lost customers, collecting cases stating negative tying claim).

28        Defendants claim that despite their misconduct, customers could access web hosting services,

1    custom field plugins, or plugin distribution through other means.  Mot. at 8–9.  WPE alleges those

2    other "means" are practically ineffective (*e.g.*, FAC ¶¶ 230, 403–04), and indeed the Court already

3    rejected Defendants' arguments that WPE and its customers were "not cut-off from WordPress."  Dkt.

4    64 at 33–34.  At best, Defendants' argument is a dispute of WPE's factual allegations that Defendants

5    effectively coerced others, which is not resolvable at this stage.  In any case, whether customers were

6    "free to access" WPE in other ways does not negate that Defendants caused customers to forego WPE

7    (when they otherwise would not have), thus impeding competition and constituting tying.  Phillip E.

8    Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1752 (2022 ed.) (tying shown "with the practical effect

9    of preventing *some purchases* from the defendant's rivals that might otherwise have been made").

10    **Finally**, Defendants' claim the tie is a mere "refusal to deal" is wrong.  Mot. at 8–9.  A refusal-

11    to-deal is defendant's **unilateral** conduct vis-a-vis competitors; tying, as here, is **multilateral** conduct:

12    "the use by the seller of its 'leverage' to force a purchaser to do something that he would not do."

13    *Tucker v. Apple Computer*, *Inc.*, 493 F. Supp. 2d 1090, 1097 (N.D. Cal. 2006).  Courts reject efforts

14    like Defendants' to conflate the two.  *Kodak*, 504 U.S. at 463 n.8; *Entri*, 2024 WL 4468488, at *6–7.

## II.    WPE IS ENTITLED TO DECLARATORY JUDGMENT ON DEFENDANTS' TRADEMARK MISUSE (COUNT 16)

16    Defendants' motion to dismiss WPE's claim for a declaration of trademark misuse should be

17    denied.  Defendants concede the existence of trademark misuse as an affirmative defense as they

18    must, given established precedent.  Mot. at 9; *see also* 15 U.S.C. § 1115(b)(7) (use of mark "to violate

19    the antitrust laws" is one of the "defenses or defects" for alleged infringement of even "incontestable"

20    trademarks ).  Defendants simply contest WPE's ability to present trademark misuse as a declaratory

21    claim rather than solely as an affirmative defense.  Mot. 9. This argument fails for three reasons.

22    **First**, Defendants cite no authority (Mot. at 9) precluding a standalone <u>declaratory judgment</u>

23    claim for trademark misuse.  *Cf. James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts,*

24    *Inc.*, 2013 WL 655314, at *12 (C.D. Cal. Feb. 12, 2013) (dismissing counterclaim for trademark

25    misuse alleging <u>damages</u>); *King v. Am. Fish Attractor*, 2016 WL 4699707, at *3 (W.D. Ark. Sept. 7,

26    2016) (relying on patent misuse precedent to reject that defense could be "converted to an affirmative

27    claim for <u>damages</u>"); *Loblaw Companies Ltd. v. Azimi,* 2001 WL 36028016, at *16 (N.D. Cal. Oct.

28    17, 2001) (dismissing counterclaim for "reverse domain name hijacking").

1    ***Second***, courts permit other trademark defenses to proceed as affirmative declaratory

2    judgment claims. *E.g.*, *Stone Brewing Co., LLC v. MillerCoors LLC*, 2019 WL 1383273, at *10–12

3    (S.D. Cal. Mar. 26, 2019) (denying motion to dismiss claim for declarations of trademark

4    noninfringement and laches); *LOEC, Inc. v. ZippMark, Inc.*, 2015 WL 12752553, at *2–4 (C.D. Cal.

5    Apr. 2, 2015) (same). Defendants offer no compelling reason to treat trademark misuse differently.

6    ***Third***, judicial economy favors allowing WPE's declaratory claim to proceed. Given its

7    pending antitrust claims, requiring WPE to replead its misuse allegations later as an affirmative

8    defense would needlessly duplicate effort, contravening the mandate of the Federal Rules of Civil

9    Procedure for "just, speedy, and inexpensive determination" of proceedings. Fed. R. Civ. P. 1.

10   Unlike in *VMG Enterprises,* which "merely restated general principles of antitrust law without

11   specifically showing how the plaintiff has used the trademark for improper antitrust purposes," *VMG*

12   *Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 657 (D.P.R. 1992), WPE has

13   specifically alleged how Defendants weaponized their purported trademark rights for anticompetitive

14   purposes (including to demand exorbitant ransoms after more than a decade of inaction, and to block

15   access unless the ransoms were paid). *See* FAC ¶¶ 40-47, 104-105, 204, 212–214. Just as WPE's

16   claims for declarations of noninfringement and laches are properly pled, so too is Count 16.

17   **III.   WPE STATES A VALID CLAIM FOR ATTEMPTED EXTORTION (COUNT 4)**

18   **A.    <u>California Recognizes A Right to Relief Even If The Extortion Was Rebuffed</u>**

19   California law provides a civil remedy to victims of attempted extortion—even when they

20   refuse to capitulate to demands—so long as they plead some form of damages. Defendants'

21   contention that victims must pay the ransom before seeking relief is both legally incorrect and defies

22   sound public policy. Defendants' narrow focus on Penal Code § 524 ignores common law principles

23   that recognize attempted extortion as an actionable tort, where the victim has suffered harm.

24   The California Supreme Court's decision in *Flatley v. Mauro* crystallizes this principle.

25   There, despite the victim's refusal to pay an extortionate demand, the victim's "extortion" claim

26   survived a motion to strike, because "[t]he sending of a threatening letter with intent to extort money

27   is 'punishable in the same manner as if such money ... were actually obtained.'" *Flatley v. Mauro*,

28   39 Cal. 4th 299, 311, 326–33 (2006) (citing Pen. Code § 523). Indeed, as noted in *Cohen v. Brown*,

173 Cal. App. 4th 302, 318 (2009), "[t]he threat made by an extortionist does not have to succeed in producing an exchange of money in order to constitute extortion."  Federal courts have similarly found a right to relief, so long as the plaintiff alleges cognizable harm.  *See Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. Sept. 4, 2009) (that plaintiff did not pay attempted extortionist not fatal to tort claim, where plaintiff was harmed as a result of the scheme in other ways).  Indeed, courts in this District have permitted attempted extortion claims to go forward in similar circumstances to those presented here.  *See TaiMed Biologics, Inc. v. Numada Corp.*, 2011 WL 1630041, at *5 (N.D. Cal. Apr. 29, 2011) (Beeler, J.) (amendment to add "attempted extortion" claim permitted); *S&C Electric Co. v. Contreras*, 2011 WL 673740, at *2 (N.D. Cal. Feb. 17, 2011) (Alsup, J.) (granting preliminary injunction on plaintiff's "attempted civil extortion" claim).

Ignoring this, Defendants argue California law has changed, citing an unpublished Court of Appeals decision, *Tran v. Eat Club, Inc.*, 2020 WL 4812634 (Cal. App. Aug. 18, 2020).  Mot. 10.  It has not, and even that decision confirms WPE's position.  The plaintiff in *Eat Club* failed to allege harm in any way *other than* receiving ransom demands.  2020 WL 4812634 at *15.  This distinguished the *Eat Club* claim from *Monex*, where the claim survived because it alleged other harm.  666 F. Supp. 2d at 1137.  The law remains that a civil claim for attempted extortion exists if the victim suffered cognizable harm, even if the ransom was rebuffed. Defendants' other cited cases do not conclude otherwise—*Evans Hotels, LLC v. United Here! Local 30* merely held Penal Code § 524 did not create a private cause of action (not reaching common law claim) and that the plaintiff's "conclusory" and "contradictory" attempted extortion claim failed for numerous reasons (WPE's allegations suffer no such defects).  2021 WL 10310815 *28-30 (S.D. Cal. Aug. 26, 2021).  Similarly, the claim in *Intermarketing Media, LLC v. Barlow* failed, including due to "damages [alleged] in only the most conclusory of terms" unlike here.  2021 WL 5990190, at *12–14 (C.D. Cal. May 4, 2021).

**B.    WPE Has Properly Pleaded That Defendants' Threats Were Wrongful**

Defendants further argue WPE fails to allege Defendants' threats were wrongful, and thus extortionate, under the Ninth Circuit's standard whereby a litigant must demonstrate that it (a) had a pre-existing right to be free from the threatened harm, ***or that*** (b) the defendant had no right to seek payment for the service offered.  Mot. 10 (citing *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir.

1   2014)).  While either prong suffices to defeat Defendants' Motion, WPE has properly pled ***both***.

2       ***First***, WPE unquestionably had a right to be free from its competitor launching a "nuclear

3   war" against it.  FAC ¶93.  As the Ninth Circuit has observed, "what you may <u>do</u> in a certain event

4   you may <u>threaten</u> to do, that is, give warning of your intention to do in that event, and thus allow the

5   other person the chance of avoiding the consequences."  *Levitt*, 765 F.3d at 1132 (emphasis added).

6   Nuclear wars designed to annihilate a competitor do not qualify.  Defendants urge that "access to the

7   Website" could be revoked for "guideline violations."  Mot. 11.  But as alleged, Defendants' own

8   admissions confirm WPE did not lose access due to "guideline violations," but rather due to

9   Defendants' intentional, improper acts—and this Court already rejected arguments Defendants "had

10  a right to take" the complained-of actions.  Dkt. 64 at 30; Section VII *infra*.  Defendants' assertion

11  WPE had no right to be free of public criticisms (Mot. 11) also falls flat as extortionate threats are not

12  protected speech.  *See Flatley*, 39 Cal. 4th at 328.  WPE also had a right to be free of Defendants'

13  intentional interference with WPE's customers, as the Court already has found.  Dkt. 64 at 29-31.

14      ***Second***, Defendants had no right to demand the extortionate payment they did, as WPE has

15  alleged.  FAC ¶ 294.  Their insistence that this was routine trademark enforcement is belied by the

16  allegations that Defendants approved of WPE's trademark use for more than a decade without seeking

17  a license, never objected to other community members using the trademark, and Mullenweg's

18  admission that he set the purported 8% "license fee" based on how much money WPE has (*i.e.*, free

19  cash flow) rather than tying it to any claimed value for the trademark use. *Id*. ¶¶ 27, 40–46, 214, 312.

20  The "trademark" assertion is and always was a sham, as WPE has alleged.  *Id.* ¶¶ 91, 429.  Defendants'

21  factual disagreement with WPE's allegations is not a basis for dismissal under Rule 12.

22      **C.    <u>WPE Has Properly Pleaded Harm Proximately Caused by the Scheme</u>**

23      Contrary to Defendants' argument, the FAC alleges that WPE suffered harm proximately

24  caused by Defendants' scheme.  Because WPE did not pay the ransom, Defendants carried through

25  on their threat to destroy WPE.  As alleged, this resulted in losses of customers and harm to WPE's

26  goodwill and market reputation, forcing WPE to invest in defensive measures such as workarounds

27  and increased staff support to address customer inquiries related to Defendants' wrongful actions.

28  FAC ¶¶ 164–84; *see also* Dkt. 64 at 34 (finding "ample evidence" of harm in multiple categories).

Defendants baldly assert that the "allegations are insufficient to establish the requisite causation," Mot. 12. But the Court has already rejected arguments that WPE "failed to tie the alleged harm to Defendants' actions." Dkt. 64 at 34; *see also* FAC ¶¶164–184, 295. The claimants in the three cases Defendants cite (Mot. at 12) all fell short of the basic pleading requirements, unlike WPE's well-pled harm allegations here. *See Intermarketing Media*, 2021 WL 5990190, at *13–14 (damages alleged in "conclusory terms"); *Am. Shooting Center v. Secfor Int'l*, 2015 WL 1914924, at *4 (S.D. Cal. Apr. 27, 2015) (defendant had only made a "vague statement" that "hardly rises to the level of a wrongful threat"); *Raiser v. Ventura College of Law*, 2009 WL 10692058, at *3 (C.D. Cal. Sept. 1, 2009) (failure to allege "nominal" damages, where student who refused compromise on discipline).

### D.    WPE Is Not Bringing an Attempted Extortion Claim "Based on Fraud"

Defendants' effort to recast this as a fraud claim misses the mark. Mot. 12–13. The elements of attempted extortion are established under California law, and do not include fraud requirements.

## IV.    WPE STATES A VALID CLAIM THAT DEFENDANTS HAVE VIOLATED THE COMPUTER FRAUD AND ABUSE ACT (COUNT 3 & 19)

### A.    WPE Sufficiently Alleges A Violation of Section 1030(a)(7)

The FAC alleges that Defendants, intending to extort, (1) threatened damage to protected computers, or (2) demanded payment in relation to such damage. 18 U.S.C. § 1030(a)(7)(A), (C); FAC ¶¶ 280–289. Defendants argue their actions are not extortionate because they did not use "wrongful" methods, but that is wrong for the same reasons described above as to the attempted extortion claim. Defendants further assert that the CFAA does not apply to "modifications to its ***own*** systems in a way that denies third parties access to services they have no enforceable right to receive." Mot. 16. But WPE alleges damages to ***WPE's own*** systems and computers as well as the computers of its plugin users. FAC ¶¶ 113–119 (blocked access to wordpress.org resources), 155-163 (forcible hijacking of ACF plugin). Moreover, the CFAA imposes no such limitation on the ownership of a "protected computer." 18 U.S.C. § 1030(e)(2)(B); *see Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, 2016 WL 424960, at *23 (D. Me. Feb. 3, 2016) (CFAA says "simply 'a protected computer,' 'any computer,' and 'a computer'—not 'a computer not owned by the [perpetrator].'") The Ninth Circuit has affirmatively held that "[a]ny person"—not just owners of a "protected computer"—"may

1    be proximately harmed by [violation of the CFAA], particularly if they have rights to data stored on

2    it." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004); *see also SkyHop Techs., Inc. v.*

3    *Narra*, 58 F.4th 1211, 1225–27 (11th Cir. 2023) (finding § 1030(a)(7) violation by diminishing access

4    to a third-party server owned by Amazon because it meets the definition of a "protected computer").

5        **B.    WPE Sufficiently Alleges A Violation of Section 1030(a)(5)**

6        WPE validly alleges a violation of Section 1030(a)(5) of the CFAA.  To state a claim under

7    this subsection, a plaintiff must allege that a defendant either (A) "knowingly cause[d] the

8    transmission of a program, information, code, or command, and as a result of such conduct,

9    intentionally cause[d] damage without authorization to a protected computer"; (B) "intentionally

10   accesse[d] a protected computer without authorization" and "recklessly cause[d] damage" due to such

11   access; or (C) "intentionally accesse[d] a protected computer without authorization" and caused

12   "damage and loss."  18 U.S.C. § 1030(a)(5).  Defendants make two arguments for dismissal:  one

13   premised on the "intent" requirement of subsections (A) and (B), and one premised on the

14   "access…without authorization" requirement of subsections (B) and (C).  Mot. 14–16.  Both fail.

15       ***"Intentionally" or "recklessly" caused damage***.  Defendants claim that WPE fails to allege

16   damage to the protected computers was caused: (1) "intentionally" under subsection (A), and (2)

17   "recklessly" under subsection (B).  Not true: the FAC alleges both.  Defendants ***admitted*** their

18   expropriation of the ACF plugin was an intentional act to retaliate for WPE's lawsuit and intended to

19   strip WPE of its "access to the plugin directory listing," thereby "jeopardizing the security of WPE's

20   customers and the availability and integrity of WPE's ACF plugin."  FAC ¶¶ 159, 162 (@WordPress

21   tweet stating that if WPE "dropped its lawsuits, apologized, and got in good standing with its

22   trademark use, you are welcome to have access to the plugin directory listing").  Likewise, Defendants

23   acknowledged that WPE's and its users' access to wordpress.org resources was intentionally blocked

24   as retaliation for WPE bringing legal claims.  FAC ¶ 115.  The FAC also alleges that Defendants

25   "recklessly caus[ed] damage" to protected computers with conscious disregard of the aforementioned

26   risks, as Defendants carried out the expropriation to retaliate for WPE's lawsuit.  FAC ¶ 452.  These

27   allegations make this case readily distinguishable from *Margolis v. Apple Inc.* cited by Defendants,

28   where the plaintiff alleged no facts to support its "bare bones" allegation that Apple intentionally

caused damages to their iPhone devices, and the pleaded facts showed that it was "equally plausible that Apple concluded…that the benefit of [software update] outweighed any possible loss of performance." 2024 WL 3755364, at *5 (N.D. Cal. Aug. 6, 2024).

**Access "without authorization."** With respect to subsections (B) and (C), the FAC alleges Defendants had no valid authorization to access the protected computers behind the ACF plugin, as any purported consent would have been vitiated by Defendants' alleged deceit. Notably, Defendants do not dispute that their access was "without authorization" under subsection (A), meaning that WPE has pleaded at least one § 1030(a)(5) claim under that subsection not contested by Defendants.

The FAC properly alleges Defendants accessed protected computers "without authorization" by obfuscating the origin of the SCF plugin and improperly substituting it for WPE's own ACF plugin. FAC ¶ 155 ("the 'update now' prompt was listed below the author of the plugin 'WP Engine'"). And with respect to the users who opted in to automatic plugin updates, the FAC alleges that SCF was installed based on the false pretense that it was an "update" of the pre-existing ACF plugin. FAC ¶¶ 153–157. In either case, the FAC properly alleges that no consent was obtained from either WPE or ACF users and customers of wordpress.org to overwrite existing plugins developed and maintained by WPE with entirely new plugins developed and maintained by Defendants, and Defendants thus lacked authorization. FAC ¶ 159. As Defendants' cited cases illustrate, unlike access based on valid, voluntary and adequately informed consent, "ill-gotten consent," such as one obtained through the perpetrator's "pos[ing] as someone else or blatantly misdescrib[ing] the nature of [the software] updates in order to gain access," is sufficient to satisfy the "access…without authorization" element of §1030(a)(5). *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 452-453 (N.D. Cal. 2018), on reconsideration in part, 386 F. Supp. 3d 1155 (N.D. Cal. 2019). *See also Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *4 (N.D. Cal. Feb. 20, 2024) (critically missing are allegations that Tesla "posed as a different entity or misdescribed the nature of the software updates").

Indeed, the FAC alleges that Defendants posed as WPE and installed SCF under the guise of an "update" of WPE's ACF plugin. FAC ¶¶ 153–159. The Ninth Circuit has observed that "[a]llowing consent procured by known mistake to serve as a defense would seriously impair" the operation of the CFAA, as "Congress surely did not intend to exempt such intrusions" where a

1   perpetrator could "use someone else's password to break into a mail server and then claim the server

2   'authorized' his access." *Theofel*, 359 F.3d at 1073-74. Following this same approach, other courts

3   have found that a defendant accesses a computer "without authorization" under the CFAA by falsely

4   posing as someone else to defraud in order to gain access—exactly what the FAC alleges Defendants

5   did here. *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1069 (6th Cir.

6   2014) (defendant violated CFAA "by posing as one of [plaintiff's] customers" in order to gain

7   "unauthorized access" to plaintiff's online platform); *United States v. Willis*, 476 F.3d 1121, 1123

8   (10th Cir. 2007) (affirming conviction under CFAA where defendant aided and abetted accessing

9   without authorization of a protected computer through identity theft); *Bowen v. Porsche Cars, N.A.,*

10  *Inc.*, 561 F. Supp. 3d 1362, 1370 (N.D. Ga. 2021) (vehicle owner's tacit consent to receive satellite

11  radio signals did not imply consent to modify a vehicle's software); Restatement (Second) of Torts §

12  892B (1979) (consent induced by misrepresentation "is not effective for the unexpected invasion").

13  Defendants' cited cases are thus distinguishable because they either involved access to publicly

14  available information or misuse of information after it was obtained through authorized access in the

15  first place. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1199 (9th Cir. 2022) (scraping data

16  publicly available on LinkedIn sites was not access without authorization); *LVRC Holdings LLC v.*

17  *Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (employee "accessed documents or information to which

18  he was entitled by virtue of his employment"). Any purported consent or access here would have

19  been vitiated by Defendants' misrepresentation about the source and nature of the SCF plugin. And

20  the observation that "the ACF plugin itself was open source," Mot. 16, does not convey any rights to

21  Defendants to change the open source owners' distribution of the software without permission and is

22  irrelevant to whether a violation of the CFAA has been properly pled. At a minimum, the FAC's

23  allegation that Defendants' forcible take-over of ACF was accomplished with a masked "update"

24  "without the customers' consent or even knowledge" must be "accept[ed]...as true and

25  construe[d]...in the light most favorable to the nonmoving party." *Michelle K. v. Cnty. of Sonoma*,

26  No. 22-CV-01202-AMO, 2024 WL 4336618, at *4 (N.D. Cal. Sept. 27, 2024); FAC ¶ 159.

27  **V.    WPE STATES A VALID UNFAIR COMPETITION LAW CLAIM (COUNT 5)**

28         WPE properly alleges a UCL claim under both the "unlawful" and "unfair" prongs, either of

1 | which independently suffices.  FAC ¶¶ 296–303.  Defendants' UCL arguments are all unavailing.

2 | **Unlawful prong.**  Defendants argue WPE's unlawful prong claim fails because its extortion,

3 | CFAA, and antitrust claims fail and thus cannot serve as predicate "unlawful" acts.  Mot. at 17.  But

4 | Defendants are wrong, as WPE adequately alleges those claims.  Sections I, III, IV, *supra*.  Moreover,

5 | Defendants' assertion ignores the additional claims that are predicate unlawful acts.  FAC ¶ 296

6 | (incorporating WPE's other claims by reference pursuant to Fed. R. Civ. P. 10(c)).  This includes

7 | WPE's Lanham Act claims (Counts 17–18, FAC ¶¶ 435–49) that Mullenweg did not move to dismiss.

8 | **Unfair prong.**  Defendants argue WPE's "unfair" prong claim fails because the FAC does not

9 | allege "*competition* has been impacted."  Mot. at 18.  Wrong again.  Defendants ignore the FAC's

10 | factual allegations explaining how Defendants' conduct harmed ***competition***, including by, *e.g.*,

11 | disadvantaging rival WCMSs (competitors to WordPress in the foremarket) and allowing Defendants

12 | to raise prices, increase costs, reduce quality, and exclude competitors in the aftermarkets—affecting

13 | more than WPE itself.  *E.g.*, FAC ¶¶ 253–59.  Defendants' cited cases, Mot. at 17–18, are inapt.  *See*

14 | *Snapkeys, Ltd. v. Google LLC*, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 30, 2020) ("only conclusory

15 | allegations" of "harm to the market as a whole," and no "specific facts" as to harm to others beyond

16 | plaintiff); *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, 2023 WL 2468742, at *2, *7 (C.D. Cal.

17 | Feb. 23, 2023) (citing legal standard but not dismissing UCL claim on this basis).

18 | Defendants argue a failure to state an antitrust claim "necessarily precludes" an unfair prong

19 | claim based on the same conduct.  Mot. at 18.  That argument is misguided for several reasons.  For

20 | one, WPE does state multiple antitrust claims as described above.  In addition, the Ninth Circuit has

21 | ***rejected*** Defendants' argument "as foreclosed by California law" as it would "collaps[e] the 'unfair'

22 | and 'unlawful' prongs into each other."  *Epic,* 67 F.4th at 1001.  A "*proof deficiency*" in an antitrust

23 | claim does not foreclose an unfair prong claim; only "a *categorical legal bar*" that acts as a safe

24 | harbor to an antitrust claim does.  *Id.* (emphases in original).  At most, Defendants raise supposed

25 | pleading defects, not any "safe harbor" (and to the extent Defendants suggest "refusal-to-deal" as a

26 | categorial bar, WPE's claims do not rely on any mere refusal-to-deal here).  *See* Section I, *supra*.

27 | Defendants' unfair prong arguments are all based on the "competitor" test.  They ignore the

28 | separate "balancing" test, which also applies to WPE's unfair prong claim.  Where the plaintiff is a

"consumer" of the defendant's services, a business practice is also unfair, as determined by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Epic*, 67 F. 4th at 1000. The balancing test is "fact intensive" and "not conducive to resolution at the motion to dismiss phase." *In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *9 (N.D. Cal. Apr. 22, 2019). These two tests "are not mutually exclusive," and a plaintiff may be both a competitor and a consumer (as was the case in *Epic*). *Epic*, 67 F. 4th at 1000–01.

Here, WPE alleges it is both a competitor and a consumer of Defendants' services. Through its web hosting services, WPE competes with Defendants. FAC ¶ 205. As a developer that uses and distributes plugins on wordpress.org, WPE is also a consumer. *Id.* ¶¶ 37, 86, 151, 225. That separately triggers the balancing test, which WPE more than meets by alleging unnecessary, grave harm from Defendants' conduct (which the Court already found, Dkt. 64 at 31–35). Indeed, the harm from Defendants' conduct is ***not*** outweighed by any pro-competitive purpose. FAC ¶¶ 384, 394, 407, 419. Defendants do not even try to ascribe ***any utility*** to their actions, Mot. at 17–18, and they do not even address the balancing test (which separately sustains WPE's unfair prong claim as alleged).

## VI.   THE ANTI-SLAPP STATUTE DOES NOT APPLY BECAUSE WPE'S DEFAMATION CLAIMS ARE BASED ON COMMERCIAL SPEECH

Defendants move to strike WPE's defamation claims under California's anti-SLAPP statute, arguing they arise from protected speech. Mot at 18–19. Where, as here, an anti-SLAPP motion is brought before sufficient discovery, the "district court should apply the [Rule] 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Defendants' arguments fail under this standard.

As a threshold matter, Defendants' arguments fail because WPE's defamation claims are exempted from the anti-SLAPP statute by § 425.17(c)'s commercial speech exemption. Mot. 18. Section 425.17(c) exempts any cause of action when: "(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of … promoting, or securing sales or leases of, or commercial transactions

in, the person's goods or services …; and (4) the intended audience for the statement [is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer]." *Neurelis, Inc. v. Aquestive Therapeutics, Inc*., 71 Cal. App. 5th 769, 785–86 (2021) (citing § 425.17(c)(2)).  The FAC adequately alleges each element of this exemption, thus precluding application of the anti-SLAPP statute entirely.

**First**, Defendants are in the business of selling goods and services: namely, WordPress hosting services.  FAC ¶¶ 334, 350, 360; *see id*. ¶¶ 10, 12.  **Second**, WPE's defamation claims arise from Defendants' "representations of fact about [WPE's] business operations, goods, or services." FAC ¶¶ 329–30, 365–66; *see id*. ¶¶ 335–36, 370–71; *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1038 (S.D. Cal. 2011).  **Third**, Defendants' statements were made for the purpose of "promoting, or securing sales or leases of, or commercial transactions in, [Defendants'] goods or services" because each statement was meant to "cause WPE's customers to switch from WPE's hosting services to Defendants' hosting services."  *Id*. at 1037; FAC ¶¶ 334, 369, 371.  They were made: (1) at a WordCamp keynote speech where Defendants encouraged the audience to purchase Automattic's services over WPE's (FAC ¶ 370); (2) during an interview where Defendants were promoting Automattic's services and encouraging customers to leave WPE's hosting products for Defendants' (*id.* ¶¶ 371–72); and (3) in articles on wordpress.org, a website advertising Defendants' hosting services, with each article showcasing a link that, "when clicked, lead[] directly to [a] . . . page recommending Defendants' hosting products," *id.* ¶¶ 335–363; *see id*. ¶¶ 329–330, 332. Indeed, Defendants told "WPE customers that Pressable will pay for the costs of breaching their current contracts with WPE" if they switched to Pressable (*id.* ¶ 122), and offering WPE customers "one year free of any [wordpress.com] plan" (*id.* ¶ 123).  **Fourth**, Defendants' intended audience was "actual or potential buyer[s] or customer[s], or [people] likely to repeat the statement to, or otherwise influence" the purchasing of hosting services for their WordPress websites. *Id.* ¶¶ 107, 109, 111, 337, 361, 364, 366–67.  Because Defendants' defamatory comments meet each requirement for §425.17(c)'s commercial speech exemption, the anti-SLAPP statute is inapplicable.

### A.   WPE'S Claims Are Not Subject to the Anti-SLAPP Statute Because the Statements Are Not a Matter of Public Interest

1    Defendants' anti-SLAPP motion fails for a further, independent reason.  Defendants have not

2    met *their* burden of establishing their statements (1) involve "a public issue or an issue of public

3    interest" and (2) maintain more than an attenuated connection to that issue.  *Wilson v. Cable News*

4    *Network, Inc.*, 7 Cal. 5th 871, 884, 902-03 (2019).  Defendants only argue that "[t]he public is plainly

5    interested in the health and future of WordPress—the software on which over 43 percent of all

6    websites run, FAC ¶ 48, and quality and efficacy of WPE's offerings, which are marketed and sold

7    to the public."  Mot. 19.  This cursory argument is insufficient.

8    Courts first identify "what 'public issue or [ ] issue of public interest' the speech in question

9    implicates" and then examine what "functional relationship exists between the speech and the public

10   conversation" about that issue and whether the speech "in some manner itself contribute[s] to the

11   public debate."  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149-50 (2019).

12   Statements implicating a public interest generally "concern[] a person or entity in the public

13   eye[,] ... conduct that could directly affect a large number of people beyond the direct participants[,]

14   ... or a topic of widespread, public interest."  *Rivero v. Am. Fed'n of State, Cnty., & Mun. Employees,*

15   *AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003).  A product or service's prevalence alone does not

16   transform statements about it into "an issue of public interest."  *GOLO, LLC v. Higher Health*

17   *Network, LLC*, 2019 U.S. Dist. LEXIS 18506, at *40–41 (S.D. Cal. Feb. 5, 2019) ("[J]ust because

18   GOLO is a 'leading weight loss and wellness program,' that does not necessarily mean that

19   Defendants' speech about GOLO is an issue of public interest."); *Scott v. Metabolife Int'l, Inc.*, 115

20   Cal. App. 4th 404, 423 (2004) (issue of public interest not created "simply because a lawsuit affects

21   a large number of consumers and involves a life-threatening illness").  In addition, "commercial

22   speech about a specific product or service is not a matter of public interest within the meaning of the

23   anti-SLAPP statute, even if the product category . . . is a subject of public interest."  *L.A. Taxi Coop.,*

24   *Inc. v. The Indep. Taxi Owners Assn. of Los Angeles*, 239 Cal. App. 4th 918, 928 (2015) (speech not

25   "in connection with a matter of public interest" when "the commercial speech at issue was not about

26   taxicab companies in general, but about a specific taxicab company."); *Scott*, 115 Cal. App. 4th at

27   423 (a "cause of action for false advertising … based on advertising by a manufacturer . . . about the

28   safety and efficacy of its specific weight loss product . . . for the profit-generating purpose of selling

1    that product to the consuming public" did not concern a public interest.)  Here, the FAC alleges

2    Defendants' statements are about a specific service (web hosting) from a specific company (WPE),

3    and Defendants have not established that any "issue of public interest is implicated" by them.  *Wilson*,

4    7 Cal. 5th at 884 (stating it is defendants' burden to establish an issue of public interest is implicated).

5        Moreover, Defendants do not show how the connection between their defamation and their

6    purported "issues of public interest" is more than attenuated.  *Xu v. Huang*, 73 Cal. App. 5th 802, 817

7    (2021) ("[A]n attenuated connection is not enough to establish protected activity.").  As the California

8    Supreme Court has recognized, "it is not enough that the statement refer to a subject of widespread

9    public interest, the statement must in some manner contribute to the public debate."  *FilmOn*, 7 Cal.

10   5th at 150–51.  Defendants offer no explanation as to how their disparagement about a competitor's

11   services contributed to the public debate about the health and future of WordPress.   Nor should they

12   be permitted to offer one in reply since "[a]rguments raised for the first time in a reply brief are

13   waived."  *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) (citation omitted).

14   **B.    In Any Event, WPE'S Defamation Claims Are Well-Pled, Requiring Denial of Defendants' Anti-SLAPP and Motion to Dismiss**

15

16   Even if WPE's defamation claims are subject to the anti-SLAPP statute (they are not),

17   Defendants' motion still fails because WPE's claims are well-pled.

18       1.   *Defendants' Statements Were Not Opinion or Based on Fully Disclosed Facts*

19       Defendants argue that their statements are nonactionable because they are opinion and based

20   on fully disclosed facts.  Mot. 19–23.  These arguments are without merit.  Courts apply a three-part

21   test to determine whether an allegedly defamatory statement is an assertion of fact or an opinion: "(1)

22   whether the general tenor of the entire work negates the impression that the defendant [is] asserting

23   an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that

24   impression, and (3) whether the statement in question is susceptible of being proved true or false."

25   *Glob. Plasma Sols., Inc. v. Iee Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1096 (N.D. Cal. 2021)

26   (citation omitted).  Where a "reasonable factfinder could disagree" whether a statement "is properly

27   interpreted as an assertion of opinion rather than fact," then that question must be determined by the

28   jury. *Manufactured Home Communities, Inc. v. Cnty. Of San Diego*, 544 F.3d 959, 964 (9th Cir.

2008); *accord Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 3919469, at *7–9 (N.D. Cal. June 9, 2023).

              (a)    <u>Defendants' Statements That WPE Offers a "Cheap Knock Off"</u>
                       <u>Product Are Actionable Statements of Purported Fact</u>

       Defendants attempt to justify their statements that WPE offers a "'chopped up, hacked, butchered' and 'cheap knock-off'" of WordPress by arguing these statements would be understood as opinion. Mot. at 18, 21. This argument strains credulity. The "general tenor" of these statements does nothing to negate the impression that they were factual. First, they were written by Mullenweg, who is considered to be an expert on WordPress. FAC ¶ 48; *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904 (2004) ("An accusation that, if made by a layperson, might constitute opinion may be understood as being based on fact if made by someone with specialized knowledge of the industry."). Second, they were posted on the "News" section of wordpress.org, FAC ¶¶ 329–330, which Defendants led the public to believe was "the central website for the WordPress community," and the "News" section generally consists of factual posts. FAC ¶¶ 332–33. It is not a "blog" as Defendants suggest. Mot. 22. Third, the titles Defendants gave their articles—"WP Engine is not WordPress" and "WP Engine is banned from WordPress.org"—indicated they were factual in nature. *Glob. Plasma Sols.*, *Inc.*, 600 F. Supp. 3d at 1088, 1097 ("an article titled Beware: The COVID-19 Snake Oil Salesman Are Here" posted on a defendant's website indicated it would contain statements of fact).

       Defendants' argument—that the articles use "hyperbolic language," such as "'chopped up, hacked, butchered' and 'cheap knock-off,'" which is not provably false—is meritless. Mot. 21. WPE's offering is the *exact same* GPL code offered by others. Courts routinely find false statements accusing products of being "knock offs" actionable  as statements of fact, not opinion. *Luxpro Corp. v. Apple Inc.*, 2011 U.S. Dist. LEXIS 89933, at *15 (N.D. Cal. Aug. 12, 2011) (finding an actionable statement of fact when "the crux of Luxpro's claims is that Apple has stated that Luxpro's products are 'knockoffs,' albeit cheap ones,' and 'illegal copies.'"); *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, 2014 WL 12591919, at *6 (C.D. Cal. Dec. 9, 2014) (statements that a website was a "complete knockoff" and that "just about everything on [it] is a stolen copy of [plaintiff's] site" were actionable

1    statements of fact); *Gerald Peters Gallery, Inc. v. Stremmel*, 815 F. App'x 138, 139–41 (9th Cir.

2    2020) (competing art gallery accusing another of selling a fake painting).  Because WPE offers the

3    same WordPress GPL code as others, FAC ¶¶ 107, 331, 346, these statements are provably false.

4            Finally, Defendants' argument that these comments were based on the "fully disclosed facts"

5    that "WP Engine disables revisions by default" and "the revisions feature is 'at the core of the user

6    promise of protecting your data'" (the "Revisions Statements") is meritless.  Mot. 21.  "[W]hen the

7    facts underlying a statement of opinion are disclosed, readers will understand they are getting the

8    author's interpretation of the facts presented…."  *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th

9    1248, 1263 (2010).  This defense does not apply when defendants do not "'mak[e] it clear that the

10   challenged statements represent [their] own  interpretation' of [the disclosed] express facts."

11   *Manufactured Home Communities*, 544 F.3d at 965.  Nor does it apply when defendants "reveal[]

12   only very selected facts in support of their claims," thus only partially disclosing the bases for their

13   statements. *Overhill Farms, Inc.*, 190 Cal. App. 4th at 1264. And, when "a reasonable listener could

14   conclude that [defendants] 'impl[ied] there are other, unstated facts supporting'" their statements (*i.e.*,

15   facts other than those they disclosed), the "fully disclosed facts" defense must be decided by the jury.

16   *Manufactured Home Communities*, 544 F.3d at 965 (jury must decide the "fully disclosed facts" issue

17   where a defendant's "statements were not clearly attached to such an outline of fact, nor did she

18   explicitly link her statements to an express factual basis"). The Revisions Statements are absent from

19   one of the articles, and the other does not even attempt to connect the "knock off" statements to the

20   Revisions Statements.  Dkt. 69-9, 69-8.  Worse, "disabling revisions is a built-in feature of

21   WordPress" and is offered as one of many configurable options; "the feature has been officially

22   documented by WordPress and personally approved by Mullenweg"; it is consistent with the

23   permitted uses of WordPress; "limiting revisions is also a feature touted by Automattic's own product,

24   JetPack and used by Defendants' hosting product wordpress.com"; and "WooCommerce similarly

25   disables revisions by default." FAC ¶ 107.  No reasonable reader would have understood Defendants'

26   "knock off" statements to be based on a feature of Defendants' own products.

27                    (b)    Defendants' Slanderous Statements in Their Keynote Speech and
                             Interview Were Also Actionable Statements of Fact

28

Similarly, Defendants' slanderous statements in their keynote speech (that WPE "just want[s] to feed off" WordPress "without giving anything back") and interview (that WPE has "given nothing back to WordPress," other than "40 hours per week" and sponsoring "WordCamp for 75 grand") are actionable (false) facts, not opinions. FAC ¶¶ 365–66. The "general tenor" of Defendants' statements in their keynote speech do not "negate[] the impression" they were factual, *Glob. Plasma Sols., Inc.,* 600 F. Supp. 3d at 1096, because Mullenweg (an expert on WordPress) made them during a keynote speech and in direct comparison to Defendants' contributions, highlighting the factual nature of the statements, FAC ¶¶ 48, 370; *Slaughter v. Friedman*, 32 Cal. 3d 149, 152–55 (1982). This is a far cry from Defendants' cited case, *Wynn v. Chanos*, 75 F. Supp. 3d 1228 (N.D. Cal. 2014), which involved an "academic symposium" where statements "cautiously phrased in terms of apparency" were clearly opinion. *Id*. at. 1234, 1238. Although Defendants claim they disclosed WPE contributes "40 hours per week" and "100 grand per year," these disclosed facts are misleading and grossly incomplete. As the FAC alleges, WPE has, among other things, "contributed tens of millions of dollars in ongoing support for the broader [WordPress] community," and WPE has given back by "betting [its] billion dollar business entirely on WordPress." FAC ¶ 375; *Overhill Farms, Inc.*, 190 Cal. App. 4th at 1264 (statement not protected opinion when defendants' disclosure "was materially incomplete and misleading, making their 'racist firing' claim sound far more credible than it actually is"). Thus, Defendants' incomplete statements about the extent WPE has given back to the community "asserted the precise factual nature of [Defendants'] accusation[s]" and "went well beyond generalized accusations, subjective comments, or other 'classic rhetorical hyperbole.'" *Rodriguez v. Panayiotou*, 314 F.3d 979, 987 (9th Cir. 2002). As such, these statements are reasonably perceived as factual. *Id.*

Defendants also argue their statements are based on fully disclosed facts because they disclosed that (1) WPE is "controlled by Silver Lake, a private equity firm" and (2) seven years ago Silver Lake purchased another company called Talend, whose "open source community" is now purportedly "completely gone." Mot. 20. This argument fails for several reasons. First, as discussed above, Defendants failed to disclose WPE's sizable contributions to the WordPress community. Second, even if Defendants' purported facts about Silver Lake—but one of WPE's investors—were true, they could not form the basis for Defendants' statements about WPE, an entirely different entity.

1    Third, Defendants' explanation that private equity investment induces companies to "just want to feed

2    off" WordPress "without giving anything back" makes no sense given that Automattic, which

3    Defendants compared with WPE in the same keynote speech and "contributes back 3,915 hours a

4    week," is similarly owned in part by multiple private equity firms.  FAC ¶¶ 10, 335.

5               2.   *WPE Has Alleged Financial Harm and Actual Malice for Its Trade Libel Claim*

6         Defendants argue WPE's trade libel claim fails because it "failed to plausibly allege a

7    particular loss resulting from Matt's Statements made on the Website."  Mot. 24.  However, the FAC

8    alleges the defamatory statements in Defendants' articles played a material and substantial role in

9    inducing (a) "specific existing WPE customers to stop purchasing WPE's platform for WordPress

10   websites" and (b) "specific WPE customers that otherwise would have purchased WPE's platform

11   not to do so."  FAC ¶ 356; *see id*. ¶¶ 168–71.  The FAC also provides a specific example of an X user

12   that, due to Defendants' September 21 article stating WPE gives its customers "a cheap knock-off"

13   of WordPress, "decided to remove WPE from his company's hosting lists."  FAC ¶ 169.

14        Defendants argue the FAC does not allege they made Defamatory Statements 1 and 2 (*i.e.*,

15   that WPE gives its customers "a cheap knock-off" of WordPress and a "hacked up, bastardized

16   simulacra of WordPress's GPL code") with "actual malice."  Mot. 24.  Contrary to this contention,

17   the FAC alleges Defendants made these statements while knowing they were false because they

18   "knew that (i) WPE's WordPress installations are identical to the wordpress.org ZIP file which

19   defines WordPress and (ii) WPE's services use the identical WordPress GPL code that everyone else

20   does."  FAC ¶ 339; *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir. 2016) (Courts

21   find actual malice when a defendant makes statements (a) while knowing they are false or (b) while

22   "entertain[ing] serious doubts as to the[ir] truth.").  Thus, the FAC properly alleges malice.

23   **VII.   WPE STATES A VALID CLAIM FOR PROMISSORY ESTOPPEL (COUNT 6)**

24        Defendants argue WPE does not allege any "promise of access" to wordpress.org and its

25   related resources (*e.g.*, the plugin and theme directories).  Mot. at 25.  That is false.  The FAC alleges

26   numerous promises, including: "***WordPress will forever be an open platform that encourages third-***

27   ***party developers to build WordPress plugins and themes to enhance the functionality of***

28   ***WordPress***" (FAC ¶ 306); "[e]veryone is welcome" in the WordPress community (*id.* ¶ 84);

1   "*wordpress.org offers free hosting to anyone who wishes to develop a plugin in [its] directory*" (*id.*

2   ¶ 86); and anyone is entitled to run, change, modify, and redistribute WordPress software (*id.* ¶ 84).

3   Defendants' naked assertion that WPE "does not even purport to have relied on these statements,"

4   much less, that the FAC does not contain a "single . . . promise" about "the resources available on

5   wordpress.org," Mot. at 25, ignores the allegations.  WPE has built a substantial business over the

6   last decade, servicing tens of thousands of customers and investing tens of millions of dollars

7   developing its software on WordPress, in reliance on Defendants' promises that WordPress was and

8   would always remain open and accessible to all.  FAC ¶ 307.

9           Defendants' argument that the promises Defendants made are not sufficiently "clear and

10  unambiguous" to form the basis of a promissory estoppel claim, Mot. at 26–27, is wishful thinking.

11  There is nothing unclear or ambiguous about statements on wordpress.org that "everyone is

12  welcome"; "free hosting to anyone"; a promise that if you meet certain criteria, "your plugin will be

13  approved," or Mullenweg's proclamation that he created the WordPress Foundation to ensure "there

14  is something that holds the *WordPress code and trademark* for the *free access for the world*."  FAC

15  ¶¶ 84, 86-88.  Such specific and unqualified statements routinely form the basis for sustained

16  promissory estoppel claims.  *See, e.g.*, *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th

17  Cir. 2012) (promise that if consumers "saved C–Notes and redeemed them for rewards merchandise

18  in accordance with the catalog, RJR would provide the merchandise"); *Thompson v. Oracle Corp.*,

19  574 F. Supp. 3d 738, 744 (N.D. Cal. 2021) ("language promising lifetime benefits").  Defendants fail

20  to explain why any purported "conditions" on their promises make them ambiguous or otherwise

21  unenforceable.  *See* Mot. at 26–27; *Williams v. Chase Bank/JP Morgan, N.A.*, 2015 WL 1843951, at

22  *8 (N.D. Cal. Apr. 8, 2015) (conditional promise sufficiently definite to support a promissory estoppel

23  claim); *Sateriale*, 697 F.3d at 791–92 (vacating dismissal of promissory estoppel claim where the

24  complaint did not allege defendant "reserved an *unrestricted* right to terminate its duty to perform").

25          The cases cited by Defendants miss the mark.  For example, an alleged promise from an

26  employee hiring manual that only one job criteria would be considered for hiring employees, when

27  the manual expressly listed many other criteria that would be considered by the employer, was not

28  unambiguous.  *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 446 (9th Cir. 1992).

A promise in a student manual of a "fair, thorough, neutral and impartial" disciplinary proceeding used adjectives too imprecise to enforce a promise. *Dixon v. Univ. of S. Cal.*, 2021 WL 6496737, at *6 (C.D. Cal. Oct. 20, 2021). A promise to "improve and aggressively [] market" was not sufficient sustain a claim for promissory estoppel. *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003). And a statement from a loan officer that he would "work with" the plaintiff to modify the terms of the loan agreement was insufficient to enforce the promise. *Thanh Nguyen v. PennyMac Loan Servs., LLC*, 2012 WL 6062742, at *7 (C.D. Cal. Dec. 5, 2012). All of these "promises" stand in direct contrast to the clear and unambiguous promises of access to wordpress.org alleged in the FAC that support WPE's estoppel claim. Further, whether a promise is "clear and unambiguous" is better assessed after a full discovery record, not on a motion to dismiss. *California Spine & Neurosurgery Inst. v. Oxford Health Ins. Inc.,* 2019 WL 6171040, at *3 (N.D. Cal. Nov. 20, 2019).

## VIII. WPE STATES VALID INTERFERENCE CLAIMS (COUNTS 1–2)

Defendants acknowledge the FAC properly pleads a claim for intentional interference with prospective relationships, provided that it alleges an independent "wrongful" act by Defendants. Mot. 27-28. As Defendants admit, the wrongful act requirement is a modest threshold—it is satisfied by plausibly pleading any violation of a "constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* Defendants' only argument is that dismissal of WPE's other claims would necessarily defeat this claim. *Id.* By this same logic, if any of WPE's other claims survive, this claim must proceed too. As demonstrated herein, WPE properly alleges multiple viable claims that independently satisfy the wrongful act requirement, thereby sustaining this cause of action.

As for the related, but distinct, tort of interference with contractual relationships, the Court already found WPE likely to succeed on all five elements. Dkt. 64 at 28. Defendants concede those elements are adequately pled, but assert WPE also must show independent wrongfulness for "at will" contracts. Mot. 28. Defendants fail to identify any binding authority that this is a pleading requirement, but even if it was, WPE alleges the contracts contain "definite terms," are "legally binding," and "formally cemented economic relationships"—placing them outside the "at will" framework contemplated by *Ixchel Pharma LLC v. Biogen Inc.*, 9 Cal. 5th 1130, 1145 (2020). Indeed, Defendants understand these contracts are not at will: (1) Mullenweg recognized contracts have a

renewal period in his keynote speech (FAC ¶¶ 101, 121); (2) Defendants offered to pay the early termination fees of customers cancelling their WPE contracts early (*id*. ¶ 122); and (3) Defendants offered a "contract buy-out" if WPE customers switch to Defendants' companies (*id*. ¶ 125). These terms are inconsistent with at-will relationships (which permit termination at any time without consequence). *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th at 1147. To the extent there is any ambiguity, WPE requests leave to amend its complaint to specify the contracts are not at-will.

## IX.    WPE STATES A VALID CLAIM FOR UNJUST ENRICHMENT (COUNT 20)

To state a claim for unjust enrichment, a plaintiff must allege "the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Kay v. Copper Cane, LLC*, 549 F. Supp. 3d 1014, 1025 (N.D. Cal. 2021) (unjust enrichment claim stated where benefits conferred by "mistake, fraud, coercion or request"). Specifically, at Defendants' request, WPE invested thousands of engineering hours and millions of dollars into developing WordPress plugins and themes for the benefit of Defendants, and Defendants unjustly retained these benefits.  FAC ¶¶ 459–60; *see also id.* ¶¶ 34, 36–39, 83–87, 151–63.

Defendants do not contest receipt of a benefit. Mot. at 28–29. Instead, they argue the unjust enrichment claim "rises and falls" with the promissory estoppel, CFAA, and antitrust claims.  *Id.* at 29. But those claims survive dismissal (Sections I, IV, VII, *supra*), and even if they did not, Defendants still unjustly retained a benefit at WPE's expense. *Hirsch v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003) (unjust enrichment claim stated regardless of whether practices otherwise illegal).

## X.    WPE HAS PROPERLY PLED AUTOMATTIC'S LIABILITY UNDER COUNTS 3, 5, 9–11, 14–15, & 17–20

Automattic throws its CEO Mullenweg under the proverbial bus, arguing that Automattic cannot be liable for "Counts 3, 5, 14-15, and 17-19" because they "rest solely on actions and activity on [Mullenweg's personal website,] WordPress.org." Mot. at 29.  This borders on the absurd. Automattic, as Mullenweg's employer, "is vicariously liable for the torts [he] committed within the scope of [his] employment."  *Stephens v. UPS*, 2024 WL 4906074, at *3 (N.D. Cal. Nov. 27, 2024) (required nexus is only "that the tort be engendered by or arise from the work.")  Here, the FAC alleges that Mullenweg's actions, *e.g.*, FAC ¶¶ 113 (the block), 149 (the checkbox), 151 (ACF

expropriation), all arose from his duties as Automattic's CEO, which included "planning and carrying out business strategies for dealing with … WPE; and creating and implementing strategies on how to leverage Automattic's purported … trademark rights." FAC ¶ 12.  The actions identified by Defendants all benefited Automattic and were integral to Defendants' extortionate scheme in which "Mullenweg demand[ed], as Automattic's CEO, that WPE sign a purported trademark license agreement with Automattic."  *Id*.  This alone defeats Defendants' argument.

For the same reasons, Automattic is also liable for Mullenweg's defamatory statements as they: (1) followed his texts to WPE offering to call off his assault if WPE agreed to pay Automattic, FAC ¶¶ 92–97; (2) were part of publications promoting Automattic's products while simultaneously defaming WPE's, *e.g., id.* ¶¶ 370–72; and (3) were intended "to cause WPE's customers to switch from WPE's hosting services to" Defendants', *id.* ¶¶ 334, 369.  Unquestionably, WPE has alleged that Mullenweg's acts "ar[o]se from" his work at Automattic.  *Stephens*, 2024 WL 4906074, at *3. Separately, Automattic is liable for Mullenweg's acts because it participated in and authorized them. *Karsant Family Ltd. P'ship v. Allstate Ins. Co*., 2009 WL 188036, at *9 (N.D. Cal. Jan. 27, 2009)*; id.* ¶¶ 91 (Automattic's CFO sent threats directly to WPE and stated Defendants' payment demands were ostensibly for a trademark license with Automattic); 146 (ACF takeover originated with email from Automattic); 13, 120-25, 129-35 (Automattic capitalized on Mullenweg's conduct).

Defendants also argue Automattic cannot be liable for unjust enrichment because it neither knowingly accepted nor unjustly retained benefits from WPE.  Mot. at 30.  But the FAC alleges WPE's contributions to wordpress.org benefited a website ***Automattic*** knowingly capitalized on to further its own interests.  FAC ¶¶ 6, 459–60.  And Defendants unjustly retained WPE's contributions, which were induced by promises by Automattic ***and*** its CEO Mullenweg (*id.* ¶ 459), as they concede. Mot. at 27 (discussing "***Defendants***' statements regarding free and open access") (emphasis added); *id.* at 29–30 (tellingly not moving to dismiss promissory estoppel claim as to Automattic).

## **CONCLUSION**

Defendants' motion to dismiss should be denied in its entirety. To the extent the Court determines that any claims are subject to dismissal, WPE respectfully requests leave to amend.

1    Dated:  January 22, 2025                    Respectfully submitted,
2                                                QUINN EMANUEL URQUHART & SULLIVAN LLP

3                                                By /s/ Rachel Herrick Kassabian
                                                    Rachel Herrick Kassabian
4                                                    *Attorneys for Plaintiff WPEngine, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFF'S FAC