1  Michael M. Maddigan (Bar No. 163450)
   michael.maddigan@hoganlovells.com
2  **HOGAN LOVELLS US LLP**
   1999 Avenue of the Stars, Suite 1400
3  Los Angeles, CA 90067
   Telephone: (310) 785-4600
4

5  Jiaxing (Kyle) Xu (Bar No. 344100)
   kyle.xu@hoganlovells.com
6  **HOGAN LOVELLS US LLP**
   4 Embarcadero Center, Suite 3500
7  San Francisco, CA 94103
   Telephone: (415) 374-2300
8

9  Neal Kumar Katyal, *pro hac vice*
   neal.katyal@hoganlovells.com
10 Anna Kurian Shaw, *pro hac vice*
   anna.shaw@hoganlovells.com
11 Lauren Cury, *pro hac vice*
   lauren.cury@hoganlovells.com
12 Hadley Dreibelbis, *pro hac vice*
   hadley.dreibelbis@hoganlovells.com
13 **HOGAN LOVELLS US LLP**
   555 Thirteenth Street NW
14 Washington, D.C. 20004
   Telephone: (202) 637-5600
15

16

17 *Attorneys for Defendants Automattic Inc. and
   Matthew Charles Mullenweg*

18          **IN THE UNITED STATES DISTRICT COURT**
19        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
              **SAN FRANCISCO DIVISION**
20

21 WPENGINE, INC., a Delaware corporation,        Case No. 3:24-cv-06917-AMO

22              Plaintiff,                        **DEFENDANTS AUTOMATTIC INC. AND**
                                                  **MATTHEW CHARLES MULLENWEG'S**
23        vs.                                     **OPPOSITION TO NON-PARTY**
                                                  **MICHAEL WILLMAN'S MOTION TO**
24 AUTOMATTIC INC., a Delaware                    **INTERVENE**
   corporation; and MATTHEW CHARLES
25 MULLENWEG, an individual,                      Judge: Hon. Araceli Martínez-Olguín
                                                  Courtroom: 10
26              Defendants.                       Hearing Date: June 5, 2025
                                                  Hearing Time: 2:00 p.m.
27

28

# Table of Contents

**Page**

INTRODUCTION ........................................................................................................................... 1

LEGAL STANDARDS ................................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

I.    Mr. Willman's Proposed Complaint Fails to Comply with the Federal Rules of Civil Procedure ..................................................................................................... 3

II.    Mr. Willman Lacks Standing to Intervene .............................................................. 4

III.    William is not entitled to intervene as of right under Rule 24(a)(2) ...................... 9

    A.    Mr. Willman does not have a "significantly protectable" interest ............... 9

    B.    Disposition of the action will not impair or impede Mr. Willman's interests .................................................................................................. 11

    C.    Mr. Willman's fails to show that his interest would be inadequately represented .................................................................................................. 12

IV.    Mr. Willman should not be permitted to intervene under Rule 24(b)(1) ............... 14

    A.    Mr. Willman lacks an independent ground for jurisdiction ........................ 14

    B.    Discretionary factors counsel strongly against intervention ....................... 15

CONCLUSION .............................................................................................................................. 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Akahoshi v. Office of Comptroller of Currency*,
   No. 23-938, 2024 WL 4532895 (9th Cir. Oct. 21, 2024).................................................8

6

*Apple Inc. v. Iancu*,
   No. 5:20-cv-06128, 2021 WL 411157 (N.D. Cal. Feb. 5, 2021) ...........................15, 16

7

8

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003).................................................................................9, 11

9

10

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..........................................................................7

11

*Blaisdell v. Frappiea*,
   729 F.3d 1237 (9th Cir. 2013)........................................................................................3

12

13

*Blake v. Pallan*,
   554 F.2d 947 (9th Cir. 1977).........................................................................................12

14

15

*In re BofI Holding, Inc. S'holder Litig.*,
   No. 3:15-CV-02722-GPC-KSC, 2018 WL 2731954 (S.D. Cal. June 7, 2018)............8

16

*Bowman v. Wilson*,
   672 F.2d 1145 (3d Cir. 1982) .........................................................................................8

17

18

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
   54 F.4th 1078 (9th Cir. 2022).............................................................................9, 12, 14

19

20

*Callahan v. Brookdale Senior Living Communities, Inc.*,
   42 F.4th 1013 (9th Cir. 2022)...............................................................................2, 9, 15

21

*Canatella v. California*,
   404 F.3d 1106 (9th Cir. 2005).......................................................................................14

22

23

*CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A.*, No. 09-04409 SBA,
   2010 WL 1460263, at *5 (N.D. Cal. Apr. 12, 2010)....................................................14

24

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011).........................................................................................11

25

26

*Crabtree v. Experian Info. Sols., Inc.*,
   948 F.3d 872 (7th Cir. 2020)...........................................................................................8

27

*Doe v. Harris*,
   No. C12-5713 TEH, 2013 WL 140053 (N.D. Cal. Jan. 10, 2013)...............................14

28

- i -

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

*Fluker v. Tucker*,
    No. C 10-5355 CW (PR), 2011 WL 3957207 (N.D. Cal. Sept. 7, 2011)....................................3

*Gastelum v. Burlington Stores, Inc.*,
    No. 21-CV-08639-VKD, 2022 WL 4625122 (N.D. Cal. Sept. 30, 2022) ................................8

*Gill v. Whitford*,
    585 U.S. 48 (2018) ....................................................................................................................11

*Hanni v. Am. Airlines, Inc.*,
    No. 08–cv–00732, 2010 WL 289297 (N.D. Cal. Jan. 15, 2010)................................................15

*Ivey v. Bd. of Regents of Univ. of Alaska*,
    673 F.2d 266 (9th Cir. 1982) ......................................................................................................3

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002)....................................................................................................14

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2014) ......................................................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................................................8

*Makaryan v. Volkswagen Grp. of Am., Inc.*,
    No. CV 17-5086 PA (KSX), 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017)...........................4, 6

*In re PersonalWeb Techs., LLC et al. Pat. Litig.*,
    No. 18-MD-02834, 2023 WL 5110964 (N.D. Cal. July 7, 2023) .............................................16

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017).....................................................................................................4

*S.E.C. v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ..............................................................................................11

*Sierra Club v. U.S. E.P.A.*,
    995 F.2d 1478 (9th Cir. 1993).....................................................................................................12

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .......................................................................................................2

*Town of Chester v. Laroe Estates, Inc.*,
    581 U.S. 433 (2017) .....................................................................................................................2

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .....................................................................................................................4

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ..........................................................................................15, 16

- ii -

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ............................................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   894 F.3d 1030 (9th Cir. 2018) ...........................................................................................2

*Wash. Env'tl Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .....................................................................................4, 6, 7

*Washington v. U.S. Food & Drug Admin.*,
   108 F.4th 1163 (9th Cir. 2024) .................................................................................. *passim*

*Wilson v. Cnty. of Contra Costa*,
   No. C 20-04160 (WHA), 2020 WL 4901636 (N.D. Cal. Aug. 20, 2020) ...................................3

*Zepeda v. U.S. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983) ...........................................................................................10

**Statutes**

18 U.S.C. § 1030(a)(7) ..............................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................................1, 3, 4

Fed. R. Civ. P. 24 ....................................................................................1, 2, 3, 9, 12, 14, 15

7C Wright, Miller & Kane, Federal Practice & Procedure: Civil §§ 1908.2; 1909
   (3d ed. June 2024 update) ...........................................................................................12, 13

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

## INTRODUCTION

By his own admission, Michael Willman does not currently use Plaintiff WP Engine's hosting services for his website development business. *See, e.g.*, Declaration of Michael Willman in Support of Motion to Intervene and Motion for Contempt ("Willman Decl."), ECF 72, ¶ 6. Nor does he currently refer clients to WP Engine; he merely receives residual payments for past client referrals. Ex. B to Willman Decl. at 27. Mr. Willman nevertheless seeks to intervene in this lawsuit to "enforc[e]" an injunction that, according to WP Engine itself, does not apply to him. Declaration of Hadley Dreibelbis in Support of Defendants' Opposition to Non-Party Michael Willman's Motion for Contempt and Motion to Intervene ("Dreibelbis Decl.") at Exs. 15 and 16.

Mr. Willman has no basis to enforce an injunction to which he is not a party. *See generally* Defs.' Opp. to Willman's Mot. for Contempt. And for four distinct reasons, he has no basis to intervene in this legal dispute between Defendants and WP Engine. *First*, although Mr. Willman purports to add thirteen claims of his own, his vague and conclusory allegations fail to meet the most basic of pleading requirements. *Second*, he fails to establish Article III standing to bring any of his proposed claims for relief. *Third*, he has not demonstrated (as required to intervene as of right) a legally protected interest in enforcing the injunction—much less shown that disposing of this case without his intervention would impair his ability to protect that interest, or that it is an interest WP Engine would inadequately represent. *Fourth*, Mr. Willman fails to show that intervention by permission is warranted in the alternative, as his plethora of unrelated claims serves only to create undue delay. This Court should deny Mr. Willman's motion to intervene.

## LEGAL STANDARDS

To intervene in a pending case, a litigant must satisfy three separate requirements.

*First*, the proposed intervenor must, through a timely motion, state the grounds for intervention and submit "a pleading that sets out the claim[s] or defense[s] for which intervention is sought." Fed. R. Civ. P. 24. Under the Federal Rules of Civil Procedure, such pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)-(3).

*Second*, if the proposed intervenor requests "different relief than the original plaintiff," he

- 1 -

must demonstrate Article III standing to pursue his claims. *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1171 (9th Cir. 2024). That requirement applies even where the intervenor seeks the same kind of relief as the present party (*e.g.*, equitable relief), so long as the proposed intervenor and plaintiff each seek the relief for themself. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017) (the Article III standing requirement applies to "cases in which both the plaintiff and the intervenor seek separate money judgments in their own names"); *cf. Washington*, 108 F.4th at 1173 (noting injunctions founded on violations of the same statute but imposing different restrictions on a defendant are "completely different" relief) (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 894 F.3d 1030, 1044 (9th Cir. 2018)).

*Third*, the proposed intervenor must demonstrate entitlement to intervention as of right or by permission. Fed. R. Civ. P. 24(a), (b). To intervene as of right, the proposed intervenor must claim "a 'significantly protectable' interest relating to the property or transaction which is the subject of the action"; "be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest"; and show that the interest claimed will be "inadequately represented by the parties to the action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (quotation omitted).

To intervene by permission, meanwhile, the proposed intervenor must establish "an independent ground for jurisdiction" and "a common question of law and fact between the movant's claim or defense and the main action." *Id.* at 1022 (quotation omitted). If the Court concludes these conditions are met, "it is then entitled to consider other factors in making its discretionary decision," including "the nature and extent" of the movant's interest and whether that interest is "adequately represented by other parties." *Id.* (quotation omitted). In exercising its discretion, the Court must also consider whether "the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

When evaluating a motion to intervene, a court is required to accept as true only the "well-pleaded, *nonconclusory* allegations in the motion to intervene," "proposed complaint," and supporting "declarations." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (emphasis added). And while the filings of *pro se* litigants are to be "liberal[ly]" construed,

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

*Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013), "[v]ague and conclusory allegations" do not suffice, *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## ARGUMENT

## I.    Mr. Willman's Proposed Complaint Fails to Comply with the Federal Rules of Civil Procedure.

As an initial matter, Mr. Willman's proposed intervention motion fails to comply with Federal Rules of Civil Procedure 24(c) and 8(a). Far from attaching a "proposed complaint," *Washington*, 108 F.4th at 1174, Mr. Willman simply lists in the intervention motion the claims for relief on which he "requests judgement"—generally offering only one to two sentences of explanation at most. *See, e.g.*, Non-Party Michael Willman's Motion to Intervene ("Mot."), ECF 70, at 8-11. That falls woefully short of what the Federal Rules require. Mr. Willman was obligated to plead "sufficient factual content to state a claim to relief that is plausible on its face," *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (internal quotation marks omitted), including by "stat[ing] the specific acts of the defendant which violated [his] rights," *Fluker v. Tucker*, No. C 10-5355 CW (PR), 2011 WL 3957207, at *2 (N.D. Cal. Sept. 7, 2011); *see also Wilson v. Cnty. of Contra Costa*, No. C 20-04160 (WHA), 2020 WL 4901636, at *2 (N.D. Cal. Aug. 20, 2020).

Here, however, Mr. Willman's claims for relief are vague and conclusory. *See, e.g.*, Mot. 9 (asserting, without more, that Defendants are liable for attempted extortion because "[d]uring discussions, Matt Mullenweg offered to refer clients to Michael Willman's business on the condition that he cease working with WP Engine and join Automattic's affiliate program. This constitutes coercive conduct aimed at disrupting Michael Willman's business relationships"). And in some cases, Mr. Willman fails entirely to support his causes of action with *any* relevant allegations. *See, e.g.*, *id.* (asserting cause of action under 18 U.S.C. § 1030(a)(7)—a provision concerning extortionate threats under the Computer Fraud and Abuse Act—without identifying *any* computer-related extortionate threat). Mr. Willman's failure to comply with the Federal Rules is reason alone to deny his motion to intervene. Fed. R. Civ. P. 24(c) ("The [intervention] motion *must* state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for

- 3 -

which intervention is sought" (emphasis added)); Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief *must* contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" (emphasis added)).

## II.    Mr. Willman Lacks Standing to Intervene

Even if Mr. Willman had sufficiently articulated proposed claims for relief, denial would still be warranted for failure to establish Article III standing. As noted above, a proposed intervenor must demonstrate standing to bring his proposed claims if he seeks different relief than the plaintiff. *Washington*, 108 F.4th at 1171. That is exactly what Mr. Willman seeks here. Although Mr. Willman's requested relief overlaps with that of WP Engine, *see* Mot. 11; Am. Compl., ECF 51, at 139 (requesting injunctive relief, "[r]estitution, disgorgement, and/or the imposition of a constructive trust"), he seeks such remedies *as to himself*, Mot. 11 (Mr. Willman expressing desire to "assert broader claims of damages to his business and reputation"); *see also* Proposed Order Granting Mot. for Contempt, ECF 71-1 at 2 (seeking to enforce preliminary injunction through orders requiring Defendants to take (or refrain from taking) certain actions *with respect to Mr. Willman* and to pay damages *to Mr. Willman*). As a result, Mr. Willman must establish Article III standing to bring his claims.

To satisfy Article III, Mr. Willman "must demonstrate that [he has] suffered a concrete 'injury in fact' that is traceable to [Defendants] and is likely redressable by judicial relief." *Washington*, 108 F.4th at 1172 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). The alleged injury must be " ' real' and not 'abstract' or merely 'procedural.' " *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quotation omitted). And the "line of causation" between Mr. Willman's harm and Defendants' conduct "must be more than attenuated." *Wash. Env'tl Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (quotation omitted). After all, a "plaintiff's injuries must be caused by actions of a defendant, and not those of the plaintiff or third parties." *Makaryan v. Volkswagen Grp. of Am., Inc.*, No. CV 17-5086 PA (KSX), 2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2017) (quotation omitted). Mr. Willman has failed to satisfy Article III's requirements for each of his proposed claims.

*1. Tortious Interference Claims.* With respect to his tortious interference claims, Mr.

- 4 -

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

1    Willman does not plausibly allege that any asserted harm is fairly traceable to Defendants' actions.

2         Start with Mr. Willman's claim for intentional interference with contractual relations. Mr.

3    Willman asserts that Defendants' banning of his access to the Slack workspace "disrupted existing

4    contractual relationships." Mot. 8-9. Yet the "specific examples" he identifies—a website

5    development contract with a business owner, and a contract and ongoing relationship with Trellis—

6    are relationships he concedes he lost in October and December 2024, *before* he was banned from

7    the Slack workspace in January 2025. Mot. 9; Willman Decl. ¶¶ 5–8, ¶ 17, ¶¶ 24–27, ¶ 34.

8         Even if Mr. Willman's filings could be construed to address Defendants' blocking of WP

9    Engine and its customers on September 25, 2024 and October 1, 2024, ECF 64 at 8-9, Mr. Willman

10   fails to connect the loss of these contracts to Defendants' actions. For example, he claims that he

11   lost the website development contract with the business owner because he was banned from

12   wordpress.org, and that this loss of the contract led to mental anguish and stress. Mot. 6, 9. But Mr.

13   Willman did not join wordpress.org until October 10, 2024, Declaration of Matthew Charles

14   Mullenweg ("Mullenweg Decl.") ¶ 7, *after* those blocks against WP Engine and its customers were

15   implemented, ECF 64 at 8-9. He thus could not have been injured *by* Defendants' block. Moreover,

16   Mr. Willman elsewhere acknowledges that he was not personally impacted by these blocks. In his

17   Declaration, Mr. Willman explains that the business owner asked him on October 3, 2024 about

18   "WP Engine being banned from Wordpress" but was "satisfied" by Mr. Willman's assurances that

19   "[WP Engine] did not host [his] client sites at [the] time"; that he "no longer actively recommended

20   [WP Engine's] services to clients"; and that he "hosted with another hosting provider." Willman

21   Decl. ¶ 6.

22        Mr. Willman likewise suggests that he lost this contract due to Matt Mullenweg's ("Matt's")

23   creation of a checkbox on the WordPress.org website, which required users to certify they are not

24   affiliated with WP Engine in order to log in. *Id.* at ¶ 7. According to Mr. Willman, the business

25   owner asked him on October 9, 2024, if he was an affiliate of WP Engine, and Mr. Willman claims

26   he "was forced to say yes" because of an affiliate agreement he signed in 2019. *Id.* at ¶ 8. He then

27   allegedly informed the owner that this checkbox feature "was an effective ban" of him and his

28   company from wordpress.org services, and the owner, in turn, allegedly terminated their contract.

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

*Id.* But Mr. Willman's own Declaration indicates that he never lost access to these wordpress.org services as a result of the checkbox. He expressly noted on Slack that he *did* check the box despite claiming to be an "affiliate" according to his own interpretation of the word, Ex. B to Willman Decl. at 26—and thereby was able to log in to the website and obtain its resources. He also told Matt about his actions and Matt responded that Mr. Willman was free to fill out the checkbox however he wished, and that he would "still" be able to "use WordPress.org just fine." *Id.* As these allegations make clear, any termination of this contract flowed from Mr. Willman's *own* reactive, intervening statements to the customer, not from any inability to access services as a result of the checkbox or ban against WP Engine. *Makaryan*, 2017 WL 6888254, at *6 (explaining that alleged injuries must be caused "by actions of a defendant, and not those of the plaintiff or third parties").

Similarly, Mr. Willman claims that Defendants' conduct caused him to lose a contract and "an ongoing relationship" with Trellis, Mot. 9, but he does not provide any factual allegations to support that conclusory assertion. In his Declaration, he argues only that he told Trellis about losing "a large contract" that might make him unable to "cover [his] expenses"; that *Trellis* then failed to make an "on-time payment" to him and that he "informed Trellis that . . . [he was] unable to continue to provide services due to the lack of payment"; and that Trellis ultimately informed him after unsuccessful contract negotiations in December 2024 that it "was unable to come up with a contract that met both parties' expectations and that [Trellis] would no longer be able to work with [Mr. Willman] or Redev going forward." Willman Decl. ¶ 9, ¶ 24, ¶¶ 26-27. Such allegations do not even attempt to connect the contract termination to Defendants' actions; to the contrary, they articulate a reason for the termination that has nothing to do with Defendants: *Trellis*'s inability to make the necessary payments or renegotiate a contract on Mr. Willman's preferred terms. But it is bedrock standing doctrine that injuries caused by third parties are not sufficient under Article III. *See, e.g.*, *Bellon*, 732 F.3d at 1141 ("To satisfy the causality element for Article III standing, Plaintiffs must show that the injury is causally linked or 'fairly traceable' to the [defendant's] alleged misconduct, and not the result of misconduct of some third party not before the court").

For similar reasons, Mr. Willman lacks standing to bring his intentional interference with prospective economic relations claim. He argues only that his purported ban from WordPress

- 6 -

platforms caused "[t]he absence of new website development projects, loss of existing relationships and the unease expressed by clients about the WordPress ecosystem." Mot. 9. Again, he fails to link any platform ban to the loss of existing relationships, such as his relationship with Trellis. And the causal link between Mr. Willman's "absence of" new projects and his alleged ban do not pass muster. At the pleading stage, there must be a plausible, not merely possible, connection between the defendant's actions and the alleged harm. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019). But a mere possibility is all Mr. Willman has alleged here. As Mr. Willman's allegations concerning Trellis reveal, there are many reasons (having nothing to do with Defendants' actions) for Mr. Willman's lack of new projects. Possibility of causation is insufficient for Article III. *Id.*

Mr. Willman's allegation of client unease is similarly deficient. He states that on October 10, 2024, he was contacted by a client with whom he had a verbal agreement and proposed contract, who told him that they were not moving forward with the contract "due to the drama with Wordpress." Willman Decl. ¶ 16. But that vague allegation of client aversion to "drama" does not establish a causal connection—that crosses the line from possibility to plausibility—between Mr. Willman's purported WordPress ban and his loss of the proposed contract. That is especially true given that—for the reasons described above—Mr. Willman was not banned from any wordpress.org resource at this point in time. Mr. Willman also claims in passing that "clients have indicated an unwillingness to continue working with [him] if he is banned from Wordpress.org resources." Mot. 7. But Mr. Willman does not provide *any* factual allegations (such as the clients at issue or dates such statements were made) to support his barebones assertion.

**2. Computer Fraud and Abuse Act ("CFAA"), Attempted Extortion, and Promissory Estoppel.** Mr. Willman's claims regarding the CFAA, attempted extortion, and promissory estoppel fare no better. As for the CFAA, Mr. Willman alleges that Defendants unlawfully interfered with and accessed "computer systems critical to [his] business." Mot. 9. But he does not identify *any* purported injury that he suffered from the alleged interference or access—and thus lacks standing to bring his CFAA claims. *Bellon*, 723 F.3d at 1139-40 (explaining that injury in fact is among the "'irreducible constitutional minimum' requirements" for standing). Mr. Willman runs into the same

- 7 -

problem with his attempted extortion and promissory estoppel claims. He points to no harm flowing
from Defendants' alleged attempted extortion, instead only noting that the attempt was "aimed at
disrupting [his] business relationships." Mot. 9. But a defendant's mere motivation to cause harm is
not tantamount to the "actual" and "concrete" harm necessary to plausibly allege standing. *See Lujan
v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). And for
promissory estoppel, he alleges that Defendants "created reasonable expectations" of users'
continued access to WordPress resources and that their restriction of that access caused him "harm,"
Mot. 9, but provides no details of the harm he suffered. *Bowman v. Wilson*, 672 F.2d 1145, 1151
(3d Cir. 1982) (injury-in-fact prong requires a plaintiff to allege "some specific, 'identifiable trifle'
of injury" (quotation omitted)). These claims are, at most, threadbare, conclusory assertions that do
plausibly establish injury in fact. *See, e.g.*, *Gastelum v. Burlington Stores, Inc.*, No. 21-CV-08639-
VKD, 2022 WL 4625122, at *7 (N.D. Cal. Sept. 30, 2022) (rejecting attempt to rely on "bare" and
"conclusory assertions" to establish standing).

**3. Libel and Trade Libel.** With respect to Mr. Willman's defamation claims, he alleges that
Matt made public statements about him that "damaged" his "reputation within the WordPress
community and beyond" and "caus[ed] harm to his business relationships and reputation." Mot. 9–
10. But allegations of reputational harm "based on only cursory assertions with no supporting
details" do not amount to an Article III injury in fact. *Akahoshi v. Office of Comptroller of Currency*,
No. 23-938, 2024 WL 4532895, at *1 (9th Cir. Oct. 21, 2024). Mr. Willman does not explain *how*
Matt's purported statements damaged his reputation and business relationships in either his Motion
or Declaration. *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 880 (7th Cir. 2020) ("It is not
enough to say that your reputation was harmed without explaining how."). Such "vague" assertions
of "reputational harm" fail to establish the "actual or imminent injury" required under Article III. *In
re BofI Holding, Inc. S'holder Litig.*, No. 3:15-CV-02722-GPC-KSC, 2018 WL 2731954, at *11
(S.D. Cal. June 7, 2018).

**4. Monopolization, Attempted Monopolization, Illegal Tying, Unfair Competition, and
False Advertising.** Finally, Mr. Willman lacks standing to bring his remaining claims, which fail to
identify any harm *to him*. *See, e.g.*, *Lujan*, 504 U.S. at 560 & n. 1 ("[T]he plaintiff must have suffered

- 8 -

an 'injury in fact'" that "affect[s] [him] in a personal and individual way"). He alleges monopolization and attempted monopolization but does not explain how those purported violations caused him harm. *See* Mot. 10. Likewise, he does not identify any harm from Defendants' alleged illegal tying, instead only describing Defendants' purported efforts to convince him to work with Automattic instead of WP Engine. *Id.* Nor does Mr. Willman detail how Defendants' alleged misrepresentations of changes to the ACF plugin and software, which he claims amounted to unfair competition and false advertising, injured him. *Id.* at 10–11.

Because Mr. Willman cannot establish standing for any of his proposed claims, he cannot intervene consistent with Article III. *Washington*, 108 F.4th at 1178.

## III.    William is not entitled to intervene as of right under Rule 24(a)(2)

Even if Mr. Willman had standing to bring his claims, intervention of right would still be unwarranted. Mr. Willman does not have a "'significantly protectable' interest relating to the property or transaction which is the subject of the action." *Callahan*, 42 F.4th at 1020 (quotation omitted). He cannot show that the "disposition of the action may as a practical matter impair or impede his ability to protect that interest." *Id.* (quotation omitted). And he fails to show that his interests are inadequately represented by WP Engine.

### A.    Mr. Willman does not have a "significantly protectable" interest

A proposed intervenor has a "significantly protectable" interest where (1) "the interest is protectable under some law," and (2) "there is a relationship between the legally protected interest and the claims at issue." *Arakaki v. Cayetano,* 324 F.3d 1078, 1084 (9th Cir. 2003); *accord Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086-88 (9th Cir. 2022). Yet Mr. Willman fails to satisfy either element here.

With respect to the first, Mr. Willman points to a legally protectable interest in this Court's preliminary injunction order. According to Mr. Willman, the order—which "expressly prohibits interference" with access to Slack—applies to him, "a 'related entity' as defined in the preliminary injunction and a registered participant in the Make.WordPress.org Slack workspace." Mot. 5–6; *see also* Willman Decl. ¶¶ 28, 31. He insists that his purported financial and mental harms "further illustrate a direct, legally protectable interest in the enforcement of the injunction." Mot. 6. But Mr.

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

Willman is wrong: The injunction does not apply to him, and he has no legally protectable interest in its enforcement. *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

By its terms, this Court's preliminary injunction enjoins Defendants from taking specific actions with respect to WP Engine "and Related Entities," which the injunction defines as WP Engine's "employees[], users[], customers[], or partners[]." ECF 64 at 41. Given that the injunction's reference to—and definition of—"Related Entities" draws directly from WP Engine's proposed order, *compare* ECF 64 at 41, *with* ECF 63 at 1, Defendants requested from WP Engine a list of any person it considered a related entity; Mr. Willman was not on WP Engine's list. Dreibelbis Decl. at Exs. 15 and 16.

Mr. Willman claims he is a "customer, affiliate, and manager of accounts." Mot. 8. But as Mr. Willman admits, his company has not used WP Engine's hosting services since at least October 2024. Willman Decl. ¶ 6. Mr. Willman has also expressly distinguished himself from WP Engine customers, asking in an October 13, 2024 Slack message, if "we" were "at risk of facing similar issues with [Cloudways], that customers of WP Engine have experienced over the past few weeks?" Ex. B to Willman Decl. at 28. And while Mr. Willman claims he is an "affiliate," Mot. 8, he does not currently promote WP Engine to his customers in connection with WP Engine's affiliate program; he simply collects residual payments from doing so in the past. *See, e.g.*, Ex. B to Willman Decl. at 27 (Mr. Willman claiming on Slack that "[i]n terms of [] WP Engine, we don't recommend them to clients currently and use Cloudways for our own hosting. However, I do still generate residual affiliate payments and don't plan to give up a free check every month"); Dreibelbis Decl. at Ex. 3 ("We don't refer clients to WP Engine anymore but I still make healthy revenue from my past referrals."). Regardless, "affiliates" were not part of the preliminary injunction's defined list. ECF 64 at 41. Thus, contrary to Mr. Willman's assertion, Mot. 5, he is not a "related entity" within the meaning of the preliminary injunction.

Nor does being a "registered participant in the Make.WordPress.org Slack workspace" entitle Mr. Willman to protections under the injunction. *Id.* at 5-6. For one thing, the order does not

mention "registered participants." ECF 64 at 41-42. For another, applying the injunction to cover non-related entities would make no sense. Under Article III, an injunction "must be tailored to redress the *plaintiff*'s particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (emphasis added); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011) (Article III requires a "sufficient showing of likely injury in the future" to the *plaintiff* "to ensure that injunctive relief will vindicate the rights of the *particular plaintiff rather than the rights of third parties*" (emphasis added)). Given that WP Engine was the party who sought and obtained the injunction, this Court's grant of relief was necessarily limited to redressing *WP Engine*'s asserted harms. The injunction's application to WP Engine-related entities served that end because harm to such entities ran the risk of injuring *WP Engine* itself. For instance, the Court noted that harm to customers' websites from blocking WP Engine's access to wordpress.org could impair *WP Engine*'s goodwill. ECF 64 at 32. In this case, however, Mr. Willman has failed to articulate how the asserted injuries to himself— including losing personal access to Slack, reputational harm from personal interactions with Matt, and lost contracts—inflict harm on *WP Engine*. Indeed, he does not even allege that the lost contracts at issue involved the use of WP Engine's services, as opposed to WordPress generally. *See* Mot. 2– 7. If Mr. Willman were correct that the injunction applies to him, *any* aggrieved WordPress user could lay claim to intervene (or move for contempt) any time their access to WordPress's resources were altered, including for reasons having nothing to do with WP Engine. Nothing in the Court's injunction expresses an intention to issue an injunction with such a breathtakingly broad reach.

Mr. Willman's ability to establish "a relationship between the legally protected interest and the claims at issue," *Arakaki*, 324 F.3d at 1084, fails for similar reasons. Because Mr. Willman is not a related entity, there is no relationship between his purported interest in the injunction's enforcement and WP Engine's claims. WP Engine's claims concern WP Engine and its related entities, not persons—like Mr. Willman—who are merely its affiliates.

**B.    Disposition of the action will not impair or impede Mr. Willman's interests**

Mr. Willman must also show that, absent intervention, disposition of the action will impair or impede his interests. "A judicial decision that would 'as a practical matter' foreclose the would-be intervener's interest, is sufficient impairment." *S.E.C. v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal.

1   1995) (quoting *Sierra Club v. U.S. E.P.A.,* 995 F.2d 1478, 1486 (9th Cir. 1993)). But Mr. Willman

2   fails to adequately explain how a decision from this Court in WP Engine's action would practically

3   foreclose his interests, much less impede them.

4          Mr. Willman maintains that absent intervention, he faces "an ongoing denial of access to

5   WordPress.org services and the Make.WordPress.org Slack workspace." Mot. 6. He claims further

6   that Matt's unsuccessful efforts to recruit him as an affiliate of Automattic rather than WP Engine

7   "directly impacts [his] business and reputation," "heighten[ing] the need for this Court's review."

8   *Id.* at 7. Yet whether a proposed intervenor's purported injuries are "ongoing" or warrant "th[e]

9   Court's review" is not the relevant question. Mr. Willman must show that deciding *this case* without

10  him will, as a practical matter, hinder his ability to protect his own interests. Fed. R. Civ. P. 24(a)(2).

11  Mr. Willman has no argument on that front. Nor does he explain why he could not protect his

12  interests in a separate action. 7C Wright, Miller & Kane, Federal Practice & Procedure: Civil

13  § 1908.2 (3d ed. June 2024 update) (explaining that the ability to protect interests in a separate action

14  is a basis for finding that the movant's interests would not be impaired or impeded by the disposition

15  of the instant action); *see also Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) ("[m]ere

16  inconvenience" resulting from having "to litigate separately is not the sort of adverse practical effect

17  contemplated by Rule 24(a)(2)"). Mr. Willman has thus entirely failed to meet his burden on this

18  prong. *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1086 ("A putative intervenor has the

19  burden of establishing" each requirement for intervention as of right).

20          **C.     Mr. Willman's fails to show that his interest would be inadequately represented**

21          Finally, to intervene as of right, Mr. Willman must show that his interest may be

22  inadequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). He has failed to meet his

23  burden on this front, too.

24          As an initial matter, the adequacy of representation prong does not coherently map onto Mr.

25  Willman's motion, as it depends on first establishing a legally protectable interest in the subject of

26  the action—and only then inquiring whether that interest is one that existing parties may adequately

27  represent. *Id.* (requiring court to allow intervention as of right if litigant "claims an interest relating

28  to the property or transaction that is the subject of the action, and is so situated that disposing of the

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent *that interest*" (emphasis added)). For the reasons already explained, however, *see supra* pp. 9-11, the legally protectable interest Mr. Willman identifies—enforcement of the injunction—is not cognizable given that the injunction does not apply to him.

But assuming (for purposes of argument) that Mr. Willman *did* have a legally protectable interest in enforcing the injunction, he has not cogently explained why WP Engine could not adequately represent that interest. Mr. Willman merely insists that his "specific experience" of being banned from the Slack workspace "requires personal representation" and that he is "uniquely affected" by the ACF fork and "the mass banning of WP Engine customers and users." Mot. 7. If Mr. Willman were correct that he is a related entity, however, WP Engine's interest in enforcing the injunction would align entirely with Mr. Willman's own. *See, e.g.*, Wright & Miller § 1909 ("The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties . . . if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate"). As the party who sought the injunction in the first place, WP Engine has every incentive to ensure that it is being followed. And WP Engine has already demonstrated a willingness to advocate on behalf of WP Engine-related entities with respect to the very harms Mr. Willman highlights in his Motion: blocking of access to the Slack workspace, banning of WP Engine customers and users, and the ACF fork. Mot. 7. For instance, WP Engine's proposed preliminary injunction order required Defendants to restore WP Engine's and related entities' access to the Slack workspace and other wordpress.org resources. ECF 63 at 1-2. It also ordered Defendants to restore WP Engine's access to and control of its ACF plugin directory listing and enjoined interference with WP Engine's and related entities' WordPress-built websites through commands "to delete, overwrite, disable, or modify any [WP Engine] plugin," including the ACF plugin. *Id.* The Court adopted these proposals in its preliminary injunction order. ECF 64 at 41–42. WP Engine has thus already represented the interests of related entities, and Mr. Willman provides no reason to believe WP Engine would not continue to do so going forward.

1    In sum, Mr. Willman has failed to show a legally protectable interest, inadequately

2  represented by WP Engine, that he will be unable to protect if this case is decided without his

3  intervention. His failure to carry his burden warrants denial of his request to intervene as of right.

4  *Cal. Dep't of Toxic Substances Control*, 54 F.4th at 1086.

5  **IV.    Mr. Willman should not be permitted to intervene under Rule 24(b)(1)**

6    Mr. Willman also fails to show that permissive intervention is warranted under Rule

7  24(b)(1). Mr. Willman bears the burden of establishing that the Court has an independent basis for

8  jurisdiction, the motion is timely, and that his claims share a common question of law or fact with

9  WP Engine's case. *CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A*., No. 09-04409 SBA,

10  2010 WL 1460263, at *5 (N.D. Cal. Apr. 12, 2010). Even if that burden is met, however,

11  intervention is not "automatic[]." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989). Rule 24(b)

12  "necessarily vests 'discretion in the district court to determine the fairest and most efficient method

13  of handling a case,'" taking into account factors such as undue delay, the intervenor's interest, and

14  judicial economy. *Id.* Here, Mr. Willman fails to address one of the elements he bears the burden of

15  proving. And "the considerations which guide the exercise of judicial discretion" weigh strongly

16  against permissive intervention. *Id.*

17    **A.    Mr. Willman lacks an independent ground for jurisdiction**

18    In his Motion, Mr. Willman fails to acknowledge one of the necessary elements of

19  permissive intervention: that the court has an independent basis for jurisdiction over his claims. As

20  noted above, *supra* at pp. 1-2, 4, it is a bedrock jurisdictional principle that proposed intervenors

21  have standing to bring claims seeking different relief from the plaintiff. *See, e.g.*, *Washington*, 108

22  F.4th at 1171. The plaintiff's standing to invoke the court's jurisdiction with respect to its own

23  claims is not enough. For the reasons previously explained, however, Mr. Willman does not have

24  standing to bring his claims. Permissive intervention is inappropriate as a result. *See, e.g.*, *Kootenai*

25  *Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109 (9th Cir. 2002) (analyzing independent ground for

26  jurisdiction element as question of standing); *Doe v. Harris*, No. C12-5713 TEH, 2013 WL 140053,

27  at *2 (N.D. Cal. Jan. 10, 2013) (exempting intervenor from showing standing under this prong

28  because, unlike here, the intervenors did not seek to raise additional claims); *cf. Canatella v.*

- 14 -

*California*, 404 F.3d 1106, 1117 (9th Cir. 2005) (denying permissive intervention for lack of independent ground for jurisdiction where mandatory jurisdictional rule (*Younger* abstention) precluded exercising jurisdiction over proposed intervenor's claims).

        **B.**    **Discretionary factors counsel strongly against intervention**

        Even if this Court determines that Mr. Willman has met the "initial conditions" for permissive intervention, the Court must still consider whether "the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3). Courts routinely consider other factors as well, including but not limited to:

> the nature and extent of the intervenors' interest[;] their standing to raise relevant legal issues[;] the legal position they seek to advance, and its probable relation to the merits of the case[;] . . . whether the intervenors' interests are adequately represented by other parties[;] . . . and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Callahan*, 42 F.4th at 1022 (quotation omitted).

        These factors strongly counsel against Mr. Willman's intervention. Intervention would cause undue delay. Mr. Willman seeks to add over a dozen claims that are unrelated to WP Engine's action, relying on legal theories and facts distinct from those at issue in WP Engine's claims. *See, e.g.*, Mot. 9-10 (asserting defamation claims having nothing to do with WP Engine); *id.* (raising attempted extortion and tying claims based on materially different facts than WP Engine). Thus, "[t]he inclusion of [Mr. Willman's] additional claims and relief would 'necessitate the consideration of extraneous legal and factual issues that [WP Engine's] lawsuit would not otherwise invoke.' " *Apple Inc. v. Iancu*, No. 5:20-cv-06128, 2021 WL 411157, at *6 (N.D. Cal. Feb. 5, 2021) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004)). "[Mr. Willman's] allegations would divert time and resources from the principal thrust of [WP Engine's] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original [party's] making." *Id.* (quoting *UMG*, 222 F.R.D at 415); *Hanni v. Am. Airlines, Inc.*, No. 08–cv–00732, 2010 WL 289297, at *7 (N.D. Cal. Jan. 15, 2010) (denying permissive intervention because proposed

- 15 -

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

intervenor's claims would require additional discovery, push back deadlines, and delay the resolution of the existing case). Indeed, it is worth noting that a significant proportion of Mr. Willman's allegations arise from his concerted efforts to inject himself into this legal dispute. For instance, the alleged impetus for filing this Motion was his banning from the wordpress.slack.com workspace. Mot. 7. But Mr. Willman only created his Slack account on October 10, 2024 (after WP Engine initiated its litigation). Mullenweg Decl. ¶¶ 7-8. Shortly thereafter, he also began moderating a subreddit dedicated to tracking the "drama" of this case. Dreibelbis Decl. at Ex. 4. And he used Slack and Reddit to challenge Matt for acts at issue in WP Engine's litigation, only to then use many of those conversations as the basis for his proposed claims. *See, e.g.*, Ex. B to Willman Decl. (collecting conversations from Slack); Willman Decl. ¶ 32 (referencing post on r/WPDrama subreddit). In so doing, Mr. Willman has already diverted the Court's and parties' time and resources "away from the principal thrust" of the pending dispute. *Apple Inc.*, 2021 WL 411157, at *6.

At any rate, because Mr. Willman's claims are distinct from WP Engine's, he will not significantly contribute to the underlying legal or factual issues. His claims center around his access to WordPress platforms and purported harm to his business and reputation. They do not focus on harm to WP Engine, the animating feature of WP Engine's suit. That divide is reflected in the injunction itself, which—as previously explained—covers only WP Engine and WP Engine-related entities, not Defendants' actions towards third parties. ECF 64 at 41. And though Mr. Willman claims a direct and significant interest in the injunction's enforcement, he has at most an indirect interest in the injunction's enforcement as an unrelated party, a factor weighing against intervention. *Cf. In re PersonalWeb Techs., LLC et al. Pat. Litig.*, No. 18-MD-02834, 2023 WL 5110964, at *4 (N.D. Cal. July 7, 2023) (denying permissive intervention where proposed intervenor was not plaintiff's "alter ego" and had only an indirect interest in outcome of plaintiff's motion). In any event, Mr. Willman's interest in enforcing the injunction is not inadequately represented for the reasons previously described. *Supra* at pp. 12-14. And nothing prevents him from pursuing his own distinct claims through a separate action. *UMG Recordings*, 222 F.R.D. at 415 (party's "ability to pursue its claims through an alternative mechanism without any prejudice to its own rights is significant in the context of a motion to intervene brought by that party").

1    At bottom, Mr. Willman's main goal in intervening in *this* suit is to further the "broader

2  public interest in fair enforcement of judicial orders and equitable treatment within community-

3  based platforms like WordPress," as part of "the broader class of people impacted by Defendants'

4  actions." Mot. 8. That is not a basis for intervening under the Federal Rules.

5                                      **CONCLUSION**

6    For the reasons detailed herein, the motion to intervene should be denied.

7

8   Dated: January 27, 2025              By:   */s/ Lauren Cury*
                                               Lauren Cury

9

10                                       **HOGAN LOVELLS US LLP**
                                             Michael M. Maddigan (Bar No. 163450)
11                                           Neal Kumar Katyal, *pro hac vice*
                                             Anna Kurian Shaw, *pro hac vice*
12                                           Lauren Cury, *pro hac vice*
                                             Jiaxing (Kyle) Xu (Bar No. 344100)
13                                           Hadley Dreibelbis, *pro hac vice*

14
                                             *Attorneys for Defendants Automattic Inc. and*
15                                           *Matthew Charles Mullenweg*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE