Michael M. Maddigan (Bar No. 163450)
michael.maddigan@hoganlovells.com
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600

Neal Kumar Katyal, *pro hac vice*
neal.katyal@hoganlovells.com
Anna Kurian Shaw, *pro hac vice*
anna.shaw@hoganlovells.com
Lauren Cury, *pro hac vice*
lauren.cury@hoganlovells.com
Hadley Dreibelbis, *pro hac vice*
hadley.dreibelbis@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600

Jiaxing (Kyle) Xu (Bar No. 344100)
kyle.xu@hoganlovells.com
**HOGAN LOVELLS US LLP**
4 Embarcadero Center, Suite 3500
San Francisco, CA 94103
Telephone: (415) 374-2300

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**DEFENDANTS AUTOMATTIC INC. AND MATTHEW CHARLES MULLENWEG'S OPPOSITION TO NON-PARTY MICHAEL WILLMAN'S MOTION FOR CONTEMPT**<br><br>Judge: Hon. Araceli Martinez-Olguin<br>Courtroom: 10<br>Hearing Date: June 5, 2025<br>Hearing Time: 2:00 p.m. |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

    A.    LEGAL STANDARD ........................................................................................ 5

    B.    MR. WILLMAN DOES NOT HAVE STANDING TO BRING THE INSTANT MOTION. ............................................................................................ 5

    C.    MR. WILLMAN CANNOT MEET THE STANDARD FOR CRIMINAL CONTEMPT. ...................................................................................................... 7

    D.    MR. WILLMAN CANNOT MEET THE STANDARD FOR CIVIL CONTEMPT. ...................................................................................................... 7

        i.    Defendants Complied with the Preliminary Injunction Order. ................ 8

            1.    Mr. Willman is Not a Related Entity .............................................. 8

            2.    Defendants' Enforcement of the Make.WordPress.org Community Code of Conduct Was Permitted By, and in Compliance with, the Preliminary Injunctive Order. ..................... 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re BofI Holding, Inc. S'holder Litig.*,
   No. 315CV02722GPCKSC, 2018 WL 2731954 (S.D. Cal. June 7, 2018), aff'd,
   848 F. App'x 234 (9th Cir. 2021) ................................................................................. 6

*Craters & Freighters v. Daisychain Enterprises*,
   No. C 09-04531 CW, 2014 WL 3899239 (N.D. Cal. Aug. 7, 2014) .......................... 5

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) ................................................................................. 5, 7

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241, 258 (1974) ......................................................................................... 11

*Moody v. NetChoice*,
   603 U.S. 707 (2024) ............................................................................................ 1, 11

*Ahearn ex. Rel. N.L.R.B. v. Int'l Longshore and Warehouse Union, Locals 21 and 4*,
   721 F.3d 1122 (9th Cir. 2013) .................................................................................. 6

*Spangler v. Pasadena City Bd. Of Educ.*,
   384 F.Supp. 846 (C.D. Cal. 1974) ............................................................................ 6

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   No. C 11-4991 CW, 2013 WL 4516835 (N.D. Cal. Aug. 23, 2013) ......................... 5

*Tournahu v. Flynn*,
   2022 WL 3139523 (N.D. Cal. Aug. 5, 2022) ............................................................ 9

*U.S. v. Baker*,
   641 F.2d 1311 (9th Cir. 1981) .................................................................................. 5

*Vance v. Univ. Amusement Co.*,
   445 U.S. 308 (1980) .................................................................................................. 2

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
   689 F.2d 885 (9th Cir.1982) ..................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 24 ............................................................................................................. 6

Fed. R. Civ. P. 42 ......................................................................................................... 5, 7

Rule 24(b)(1) ..................................................................................................................................6

**INTRODUCTION**

One month after the CEO of United Healthcare was gunned down on a sidewalk, Non-Party Michael Willman ("**Mr. Willman**") capped an increasingly hostile Slack exchange with Automattic CEO Matt Mullenweg ("**Matt**") by posting in part, "*I'll see you on Monday*." Willman Decl. Ex. B at 41 (emphasis added). Matt welcomes free speech. He is the one who set up the #ranting channel on the wordpress.slack.com workspace. But this was not figurative hyperbole by another user about an exploding "car covered in hammers" or metaphorical rhetoric about "slap[ping]" back at Matt in a post, which Mr. Willman wrongly argues "far exceeds" what he did. CF 71 at 4-5. This was different. Mr. Willman's January 4, 2025 post was a specific, factual assertion by someone who had been, in his own words, "pissed off and angry" and was now on his way to confront Matt in person. Matt, understandably, saw Mr. Willman's post as a "physical threat" and therefore removed him from the Slack workspace.

Mr. Willman asks this Court to have Matt *arrested and incarcerated* for criminal contempt, and to hold Matt and Automatic, Inc. (collectively, "**Defendants**") in civil contempt because they allegedly disabled his access to the Slack workspace on January 4, 2025. ECF 71 at 3. But the action by WordPress.org to ban Mr. Willman's account that day was clearly permitted by this Court's injunction. ECF 64. That injunction applies to WP Engine and Related Entities, but Mr. Willman is neither. It orders their restoration of access to WordPress.org "in the manner that such access existed as of September 20, 2024," but the account Mr. Willman used to initially access the Slack channel was created weeks later on October 10, 2024, meaning he is not part of the "status quo" contemplated by the Preliminary Injunction Order. Clearly, there is no need for any developer to use that workspace, or else Mr. Willman would have had an account before only a few months ago. And the injunction allows WordPress.org "to ensure the security and operability of its site consistent with procedures and policies in place as of September 20, 2024." ECF 64 at 41. Mr. Willman's threatening January 4, 2025 post violated the Community Code of Conduct for the Slack workspace that was in place long before the injunction issued.

The Supreme Court has held that content moderation activities reflect the editorial function that is itself "an aspect of speech." *Moody v. NetChoice*, 603 U.S. 707, 731 (2024) (quotation

1  omitted). Moreover, "the First Amendment offers protection when an entity engaging in expressive
2  activity, including compiling and curating others' speech, is directed to accommodate messages it
3  would prefer to exclude." *Id.* Nothing in the preliminary injunction bars WordPress.org from
4  moderating accounts that post physical threats to its co-founder. Nor should any ambiguity be
5  interpreted that way because it would effect a prior restraint on speech, which bears "a heavy
6  presumption against its constitutional validity." *Vance v. Univ. Amusement Co.*, 445 U.S. 308, 316
7  n.13 (1980).
8      Non-Party Mr. Willman has no standing to enforce the injunction in the first place, but it
9  was not violated in any event. His motion for contempt should be denied.

## STATEMENT OF FACTS

11     The wordpress.slack.com Slack workplace is a communications platform for WordPress
12 contributors to discuss WordPress software developments, collaborate on issues and solutions, and
13 create community through discussion and events. Declaration of Matthew Charles Mullenweg in
14 Support of Defendants' Opposition to Non-Party Michael Willman's Motion to Intervene and
15 Motion for Contempt ("**Mullenweg Decl.**") ¶ 4. That Slack workplace is made up of various
16 channels organized by topic, and in which users can participate. *Id.* at ¶ 5. Contributors utilizing this
17 Slack workplace are required to adhere to the WordPress Contributor Handbook and the Community
18 Code of Conduct. *See* Declaration of Hadley Dreibelbis in Support of Defendants' Opposition to
19 Non-Party Michael Willman's Motion to Intervene and Motion for Contempt ("**Dreibelbis Decl.**")
20 at Ex. 7. "Insulting or derogatory comments, taunting or baiting, and personal or political attacks,"
21 "public or private harassment," and "other conduct which could reasonably be considered
22 inappropriate in a professional setting," are not permitted in this Slack workspace. *Id.* Additionally,
23 "[i]nfluencing or inciting unacceptable behavior and activities will be viewed as the behavior and
24 activities themselves, and result in the same consequences." *Id.* The Code of Conduct identifies
25 several enforcement guidelines for violations of the Code, including temporary or permanent bans.
26 *Id.* Bans are recommended for individuals demonstrating "a pattern of violation of community
27 standards," including "sustained inappropriate behavior" or "harassment of an individual." *Id.* These
28 community standards were in effect prior to September 20, 2024, at the time Mr. Willman joined

-2-     Case No. 3:24-cv-06917-AMO
DEFENDANTS' OPPOSITION TO MOTION FOR CONTEMPT

the wordpress.slack.com workspace, and throughout his time as a community member. *Id.* at Ex. 8.

Mr. Willman first posted on the wordpress.slack.com workspace on October 10, 2024. Mullenweg Decl. ¶ 7. His first post, in the #meta channel of that Slack workspace, tagged Matt directly:



**Mr. Willman's first Slack post, dated October 10, 2024**

Dreibelbis Decl. at Ex. 2. Despite Mr. Willman's taunting, Matt responded to him in a respectful manner.

Over the course of the next two weeks, Mr. Willman continued to post in the #meta channel of the wordpress.slack.com workspace, tagging Matt directly and continuing to bait him, making comments other users called out as "mudslinging."



**October 16, 2024 Posts from Mr. Willman in #ranting Slack thread**

Dreibelbis Decl. at Ex. 9; *see also id.* at Ex. 10. Mr. Willman later publicly acknowledged on the r/WPDrama subreddit that his posts were "argumentative" and "combative," and that he was "pissed off and angry, for sure." Dreibelbis Decl. at Ex. 6. Indeed, Mr. Willman himself conceded that "[i]f he banned me for posting that to #meta or #community-team, I wouldn't have a leg to stand on." *Id.* On January 3, 2025, in light of Mr. Willman's repeated violations of the Community Code of Conduct, Mr. Willman was banned, precluding Mr. Willman from continuing to access and abuse the wordpress.slack.com workspace. Mullenweg Decl. ¶ 9.

Having stated on January 3 that he would be moving into a travel trailer that he could bring "to anywhere I need to, like to file legal actions in Texas, California and Delaware," Willman Decl. at Ex. B, p. 41, Mr. Willman directly tagged Matt once more, stating to "@Matt" "I'm booking my tickets to Houston now to file an emergency injunction, ***I'll see you on Monday***." *Id.* (emphasis added). Matt then responded, stating that "saying you're flying to Houston (where I guess you think I am?) feels like a physical threat, which is not okay. Please leave this space." *Id.* Mr. Willman's account that made the January 4, 2025 Slack post was banned shortly thereafter as in violation of the Code of Conduct. Mullenweg Decl. ¶ 11.

While Mr. Willman purports, for purposes of this Motion, to be a "customer, user, and affiliate" of WP Engine, he has made several contradictory statements on r/WPDrama and on the wordpress.slack.com workspace, including:

- "In terms of the WP Engine, we don't recommend them to clients currently and use Cloudways for our own hosting. However, I do still generate residual affiliate payments and don't plan to give up a free check every month." Dreibelbis Decl. at Ex. 12.
- "We don't refer clients to WP Engine anymore." Dreibelbis Decl. at Ex. 3.
- Asking whether "we" are "at risk of facing similar issues with [Cloudways], that customers of WP Engine have experienced over the past few weeks," distinguishing himself and his customers from those of WP Engine. Dreibelbis Decl. at Ex. 13.

Nor does WP Engine itself consider Mr. Willman to be a Related Entity under the Court's Order. Promptly upon issuance of that Order, Defendants contacted WP Engine explaining that Defendants are not in a position to confirm who is or is not a WP Engine Related Entity, and seeking

1  guidance from WP Engine in this respect for purposes of ensuring compliance with the Court's
2  Order. Dreibelbis Decl. at Ex. 15. WPE responded, providing Defendants with a list of those Related
3  Entities. Dreibelbis Decl. at Ex. 16. Mr. Willman was not on that list. *Id.*

## ARGUMENT

### A.     LEGAL STANDARD

To find a party in civil contempt, the moving party "has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, No. C 11-4991 CW, 2013 WL 4516835, at *3 (N.D. Cal. Aug. 23, 2013). In applying this standard, the Ninth Circuit has explained that "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id.* For this reason, even "'[s]ubstantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id.* (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 891 (9th Cir.1982)).

Motions for criminal contempt must be made in compliance with the requirements of due process and Federal Rule of Criminal Procedure 42. *Craters & Freighters v. Daisychain Enterprises*, No. C 09-04531 CW, 2014 WL 3899239, at *3 (N.D. Cal. Aug. 7, 2014). Courts are required to first provide notice of the criminal contempt charge, then appoint an attorney to prosecute the alleged contempt. Fed. R. Crim. P. 42. Additionally, criminal contempt requires proof *beyond a reasonable doubt* of willful disobedience. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983) "Willfulness in this context means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *Id.* A "good faith effort to comply with the order" is a defense to criminal contempt. *U.S. v. Baker*, 641 F.2d 1311, 1317 (9th Cir. 1981).

### B.     MR. WILLMAN DOES NOT HAVE STANDING TO BRING THE INSTANT MOTION.

As an initial matter, Mr. Willman does not have the requisite standing to bring a motion for contempt, both under the civil contempt requirements and under Mr. Willman's concurrently-filed

Motion to Intervene.

Civil contempt proceedings "may be instituted only by 'parties primarily in interest' in the litigation or by parties who '. . . have in any way been damaged by the alleged disobedience of which they complain.'" *Spangler v. Pasadena City Bd. Of Educ.*, 384 F.Supp. 846, 848 (C.D. Cal. 1974); *see also Ahearn ex. Rel. N.L.R.B. v. Int'l Longshore and Warehouse Union, Locals 21 and 4*, 721 F.3d 1122, 1132 (9th Cir. 2013) (vacating damages award to third parties who were not parties to the underlying action). Mr. Willman is not a party to the underlying action and is therefore precluded from bringing a civil contempt motion.

Mr. Willman has concurrently filed a motion to intervene (ECF 81) ("**Intervention Motion**") and become a party to this case. That motion should be denied because, *inter alia*, Mr. Willman cannot demonstrate Article III standing to pursue his claims, nor can he show entitlement as of right or by permission. Fed. R. Civ. P. 24; *see also* Intervention Motion. First, Mr. Willman cannot demonstrate that he has suffered a concrete "injury in fact" that is traceable to Defendants' actions, because he cannot demonstrate that the Slack ban "disrupted existing contractual relationships" as Mr. Willman concedes those relationships were lost in October and December 2024, prior to the ban. Intervention Motion at 5-7; Willman Decl. ¶¶ 5–8, ¶ 17, ¶¶ 24–27, ¶ 34. And vague assertions of reputational harm, as alleged in Mr. Willman's motions, fail to establish the "actual or imminent injury" required under Article III. *In re BofI Holding, Inc. S'holder Litig.*, No. 315CV02722GPCKSC, 2018 WL 2731954, at *11 (S.D. Cal. June 7, 2018), aff'd, 848 F. App'x 234 (9th Cir. 2021). Similarly, Mr. Willman is not entitled to intervention as of right or by permission. Among other things, because Mr. Willman is not a Related Entity, as discussed *infra* Section D.i.1., he has no significantly protectable interest in the Preliminary Injunction Order and therefore cannot intervene by right. Intervention Motion at 9-12. And Mr. Willman has not attempted, nor can he show, that he meets the requirements for permissive intervention under Rule 24(b)(1), including because he lacks Article III standing to bring his claims. Intervention Motion at 14-15.

Mr. Willman is similarly unable to show that he has "in any way been damaged" as a result of alleged violation of the Preliminary Injunction Order. As discussed further below, Defendants

1  have not violated the Preliminary Injunction Order, because Mr. Willman is not a Related Entity.
2  Mr. Willman was banned from Slack due to his own violation of the WordPress.org policies and
3  procedures, which WordPress.org is entitled to enforce in compliance with the Preliminary
4  Injunction Order.

5  Mr. Willman's Motion should be denied on these grounds alone. If the Court does grant Mr.
6  Willman's motion to intervene, however, the motion for contempt should still be denied, because
7  Mr. Willman cannot meet the requisite standards for criminal or civil contempt.

8  **C.    MR. WILLMAN CANNOT MEET THE STANDARD FOR CRIMINAL
9          CONTEMPT.**

10 Mr. Willman requests that the Court hold Matt individually in criminal contempt, in addition
11 to civil contempt. Criminal contempt requires proof *beyond a reasonable doubt* that an individual
12 willfully disobeyed the Preliminary Injunction Order. *See Falstaff Brewing Corp. v. Miller Brewing
13 Co.*, 702 F.2d 770, 782 (9th Cir. 1983). It also requires due process protections, including notice and
14 a trial. Fed. R. Crim. P. 42. None of these requirements have been met in Mr. Willman's Motion.
15 Mr. Willman states that the "timing and nature" of his Slack ban demonstrate willfulness, merely
16 referring to Mr. Willman's "participation in discussions critical of Automattic's practices"
17 preceding the ban. ECF 71 at 4. He neglects to mention his repeated violations of the Code of
18 Conduct, including direct targeting and harassment of Matt, and personal attacks irrelevant to
19 Defendants' actions. Enforcement of the Code of Conduct is permitted by the Preliminary Injunction
20 Order, not prohibited.

21 Consequently, the Court must deny Mr. Willman's request for criminal contempt relief.

22 **D.    MR. WILLMAN CANNOT MEET THE STANDARD FOR CIVIL
23          CONTEMPT.**

24 Even if Mr. Willman had standing to bring this Motion, which he does not, Mr. Willman
25 cannot demonstrate that Defendants violated the Preliminary Injunction Order by clear and
26 convincing evidence, because Defendants have undertaken a good faith and reasonable
27 interpretation of the Order, and substantially complied therewith.

28

### i. Defendants Complied with the Preliminary Injunction Order.

Defendants complied with the Preliminary Injunction Order by promptly restoring access to WP Engine and its Related Entities, and by enforcing the WordPress.org policies and procedures existing as of September 20, 2024. Mr. Willman is not a Related Entity as contemplated by the Preliminary Injunction Order, and even if he were, Defendants are entitled to enforce existing guidelines against Mr. Willman's actions, including by banning Mr. Willman from the wordpress.slack.com workspace.

#### 1. *Mr. Willman is Not a Related Entity.*

Mr. Willman's "affiliate" activities do not fall under the definition a Related Entity as defined by the Court, as identified by WP Engine itself, or as reasonably interpreted by Defendants, given Mr. Willman's own public statements.

On December 10, 2024, Defendants were enjoined from "blocking, disabling, or interfering with WPEngine's and/or its **employees', users', customers' or partners'** (hereinafter "WPEngine **and Related Entities**") access to wordpress.org and WordPress installations. ECF No. 64 at 41-42 (emphasis added). Mr. Willman stated on the Slack workspace that he no longer recommends or refers WP Engine to clients, and also specifically distinguished his customers from those of WP Engine. Dreibelbis Decl. at Exs. 3, 12 and 13. He also stated multiple times that his clients use Cloudways, a competitor hosting platform, and has noted that he belongs to the Cloudways affiliate program as well. Dreibelbis Decl. at Ex. 14. These contradictory statements, at minimum, draw into question Mr. Willman's current relationship with WP Engine.

Moreover, WP Engine itself did not identify Mr. Willman as one such Related Entity after Defendants requested WP Engine identify such entities. On December 11, 2024, Defendants' counsel emailed WP Engine's counsel in a good faith effort to comply with the Preliminary Injunction Order. Dreibelbis Decl. ¶ 15. At the time of Defendants' outreach, Defendants were actively working to restore access to any user who had a WP Engine-affiliated email address, but were concerned about ensuring that WP Engine's "Related Entities" would receive restored access, as Defendants could not reasonably determine which individuals were employees, users, customers or partners of WP Engine if they did not have a WP Engine-affiliated email address. *Id.* To address

1  this concern, Defendants' counsel requested that WP Engine identify the specific email addresses
2  of accounts who would be considered Related Entities, but did not use a WP Engine-affiliated email
3  address. *Id.* Two days later, WP Engine's counsel responded, identifying four individual accounts
4  and three company accounts. *Id.* at Ex. 16. That same day, Defendants restored access to those
5  identified accounts. Mr. Willman was not identified by WP Engine as a "Related Entity" in the
6  course of this correspondence, nor in any subsequent email with WP Engine. *Id.* WP Engine has not
7  identified any additional "Related Entities" since these emails were exchanged or even after the
8  filing of Mr. Willman's motions.

9  Here, every reasonable effort has been made by Defendants to comply with the Preliminary
10 Injunction Order, including identifying WP Engine email addresses associated with accounts and
11 asking WP Engine to identify Related Entities to ensure compliance. *See, e.g.*, *Tournahu v. Flynn*,
12 2022 WL 3139523, at *2 (N.D. Cal. Aug. 5, 2022) (denying contempt motion where defendants
13 submitted evidence of steps taken to comply with the court's order, in substantial compliance
14 thereof). For these reasons, Mr. Willman's Motion should be denied.

15         2.    *Defendants' Enforcement of the Make.WordPress.org Community Code of Conduct Was Permitted By, and in Compliance with, the Preliminary Injunctive Order.*

17 The Preliminary Injunction Order states that it "does not preclude wordpress.org's ability to
18 ensure the security and operability of its site consistent with procedures and policies in place as of
19 September 20, 2024." ECF No. 64 at 41. The WordPress Contributor Handbook and the Community
20 Code of Conduct are both policies which were in place as of September 20, 2024. WordPress.org is
21 entitled to enforce those procedure and policies in order to manage operations of its websites and
22 related resources, such as Slack.

23 Thus, even assuming arguendo that Mr. Willman were a Related Entity of WP Engine, *which
24 he is not*, WordPress.org is entitled to enforce these policies, which Mr. Willman violated. Mr.
25 Willman was given several written warnings in connection with his inflammatory and harassing
26 posts, dating back to October 10, 2024. Matt first asked Mr. Willman to direct his targeted posts via
27 direct message, rather than over the #meta channel. Dreibelbis Decl. at Ex. 2. Despite receiving this
28 notice, Mr. Willman continued to engage Matt by directly tagging him in several public channels,

rather than via direct message as requested. *Id.* at Exs. 9, 11. Mr. Willman further violated the Code of Conduct by encouraging other members of the Slack channel to post personal attacks against Matt, which was condemned by a fellow user. *Id.* at Ex. 10. Finally, in January, Mr. Willman threatened to visit several cities, including one known to be the location of Matt's primary residence. Willman Decl. at Ex. B, p. 41. When this got his primary account banned, he rejoined under a new account, and explicitly stated that he would be "booking my tickets to Houston now" and would "see [Matt] on Monday," which given his prior messages and evasion of the ban, could reasonably be understood as an escalated threat. *Id.* Mr. Willman therefore received several written warnings, in accordance with the Code of Conduct, and was ultimately banned from the Slack channel due to his taunting, baiting and harassment of Matt, and his encouragement of other community members to undertake the same. Enforcing the WordPress.org policies and procedures in place prior to September 20, 2024, does not in any way fail to comply with the Court's Order.

Mr. Willman defends his actions by arguing that the Code of Conduct has been unevenly applied, and thus should not be enforceable writ large. ECF 71 at 4-6. However, violations of the Code of Conduct are evaluated on an individual basis, and community leaders are granted the right and responsibility to moderate community behavior which does not align with the standards. Dreibelbis Decl. at Ex. 7. Mr. Willman's disagreement with enforcement decisions made in different circumstances does not negate the validity of those decisions. Mr. Willman further asserts that his statements were made "within th[e] designated space" of the #ranting channel (ECF 71 at 5); however, this is plainly untrue as discussed above. Even if Mr. Willman did contain his messages to #ranting (which he did not), the Code of Conduct applies to all channels on the Slack workspace, of which #ranting is one. Individuals can, and have, expressed disagreement about Matt's actions within the #ranting channel without violating the Code of Conduct. Mullenweg Decl. at ¶ 6. Finally, Mr. Willman claims that his Slack ban was an act of retaliation for stating his intent to pursue legal action. However, Mr. Willman's behavior repeatedly violated the Code of Conduct long before he stated this intent, and as confirmed by Matt's own response to Mr. Willman's posts of January 3 and 4, escalated to a claim he was going to confront Matt in person in Houston two days later, and Mr. Willman was banned on that ground. Willman Decl. at Ex. B, p. 41. Defendants note that Mr.

1  Willman also referenced legal action in a communication to Matt on the #meta channel from October
2  13, 2024, which did not result in Mr. Willman's ban. Dreibelbis Decl. at Ex. 9.
3        Because nothing in the Preliminary Injunction Order prevents Defendants from enforcing
4  the WordPress.org policies and procedures in furtherance of the Preliminary Injunction Order, there
5  is nothing unlawful about Mr. Willman's ban from the Slack workspace. Indeed, WordPress.org's
6  content moderation is First Amendment-protected activity. *See Miami Herald Publ'g Co. v.*
7  *Tornillo*, 418 U.S. 241, 258 (1974) (holding that law violated First Amendment where it forced a
8  newspaper to print what "it would not otherwise print" because it "intru[ded] into the function of
9  editors.") (cited in *Moody*, 603 U.S. at 728).

## CONCLUSION

For the reasons above, Willman's Motion should be denied.

Dated: January 27, 2025        By:   */s/ Lauren B. Cury*
                                                                              Lauren B. Cury

**HOGAN LOVELLS US LLP**
   Michael M. Maddigan (Bar No. 163450)
   Neal Kumar Katyal, *pro hac vice*
   Anna Kurian Shaw, *pro hac vice*
   Lauren B. Cury, *pro hac vice*
   Jiaxing (Kyle) Xu (Bar No. 344100)
   Hadley Dreibelbis, *pro hac vice*

   *Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*