Your Name:Michael Willman

Address:5 Mecca Lane Washington, ME 04574

Phone Number: 1 (207) 242-4767

Email Address: michael@websiteredev.com

Pro Se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Division: San Francisco

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) Case Number: 3:24-cv-06917-AMO ) |
| v. | ) **REPLY TO THE OPPOSITION TO** ) |
| AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, | ) **MOTION FOR CONTEMPT** ) ) JUDGE: Hon. Araceli Martinez-Olguin ) ) |
| Defendant. | ) ) ) ) ) ) ) ) |

## I.    INTRODUCTION

Defendants Automattic Inc. and Matthew Charles Mullenweg's opposition to my motion for contempt is founded on factual misrepresentations and a misapplication of legal standards. Their arguments attempt to obscure their clear violations of the Court's preliminary injunction issued on December 10, 2024. The injunction prohibits interference with access to WordPress.org resources for WP Engine and its related entities, a category that explicitly includes me as both a WP Engine user and an ACF Pro customer.

Defendants' opposition falsely characterizes my conduct within the Make.WordPress.org Slack workspace, inaccurately claiming that I made "physical threats" and violated the Community Code of Conduct. These assertions are not only unsupported by any factual evidence but also directly contradicted by the comprehensive documentation provided in my Motion for Order to Show Cause Against Defense Counsel. The opposition relies heavily on misrepresenting the timeline of events, using statements I made after my unjustified ban as retroactive justification for their contemptuous actions. Moreover, they ignore the clear escalation procedures outlined in the Community Code of Conduct, which require warnings and corrections—none of which I received prior to the ban.

This reply will demonstrate that Defendants' actions were willful violations of the preliminary injunction, driven by retaliatory motives rather than legitimate community moderation concerns. I will further illustrate that their legal defenses, including claims of First Amendment protections, are inapplicable when faced with a lawful court order. Supporting exhibits, including detailed logs of my legitimate Slack activity and examples of reputational harm resulting from Defendants' misconduct, are attached to substantiate these points.

For these reasons, I respectfully request that the Court grant my motion for contempt, impose appropriate sanctions, and ensure Defendants' compliance with the Court's orders.

## II.     ARGUMENT

### A.  DEFENSE COUNSEL'S CLAIMS MISREPRESENT THE SCOPE AND APPLICATION OF THE PRELIMINARY INJUNCTION

Defense counsel attempts to dismiss my motion by asserting that I do not fall within the scope of the Court's preliminary injunction, arguing that I am neither a party to the case nor a "Related Entity." This argument is unfounded and directly contradicts the explicit language of the injunction. The preliminary injunction was designed to protect WP Engine, its customers, affiliates, and users of WP Engine products and services affected by Defendants' actions, including the Advanced Custom Fields (ACF) plugin. The website for Redev, located at https://websiteredev.com, features a licensed copy of ACF Pro, the use of which predates this action. This makes me a customer of WP Engine. In addition, as the primary web development partner for Stronger U Nutrition, I am a near daily user of WP Engine's services. Stronger U Nutrition was originally referred to WP Engine by me, when I was employed as a consultant for ControlVExposed over two years ago. Their current plan costs approximately $1500 a month.  Due to this status as an individual impacted by the actions addressed in the injunction, I fall squarely within the category of protected 'related entities'.

Furthermore, any argument that this scope is overly broad, does not pass legal muster. In *Califano v. Yamasaki*, 442 U.S. 682 (1979) the court found that "*Relief need not be confined to the immediate parties to the suit, if the decree is framed to protect those similarly situated.*"

While the Defense Counsel attempts to undermine my standing by focusing on my affiliate relationship with WP Engine, it is important to clarify that my legal arguments do not rest on this affiliation. I have deliberately avoided relying on my affiliate status to justify my legal standing to Intervene in this case, to prevent unnecessary complications related to the nuanced relationships between hosting companies, development agencies, and their contractors or consultants this early in the proceedings.

Moreover, Defendants have engaged in deliberate attempts to manipulate the scope of the injunction through extrajudicial means. As detailed in my Motion for Order to Show Cause Against Defense Counsel, Defendants sought to pressure WP Engine into adopting a narrow interpretation of

the injunction, effectively excluding individuals like myself who are clearly protected under its provisions. This manipulation not only demonstrates bad faith but also underscores the necessity of judicial intervention to uphold the integrity of the Court's order.

The preliminary injunction's language is explicit and unambiguous. It does not delegate to WP Engine or Defendants the authority to redefine its scope based on their own interpretations or interests. Any attempt to narrow the injunction's applicability without Court approval constitutes a direct violation of the order and warrants appropriate sanctions. Defendants' arguments regarding my standing are therefore without merit and should be dismissed in their entirety.

### B.  DEFENDANTS' JUSTIFICATION FOR THE SLACK BAN IS FACTUALLY AND LEGALLY BASELESS

Defendants' primary justification for banning me from the Make.WordPress.org Slack workspace hinges on the false assertion that I made physical threats and violated the Community Code of Conduct (CoC). These claims are not only factually inaccurate but also legally insufficient to justify their noncompliance with the Court's preliminary injunction.

First, at no point did I make a statement that could reasonably be construed as a physical threat under any legal standard or the CoC. Defendants' opposition selectively cites messages, most notably my statement "I'll see you on Monday," to fabricate a narrative of threatening behavior. However, as detailed in my Motion for Order to Show Cause Against Defense Counsel, this statement clearly referred to my intent to pursue legal action, not any form of physical confrontation. The context surrounding this message, including my explicit references to filing legal claims, leaves no room for misinterpretation by any reasonable person. Defendants' mischaracterization of this statement is a deliberate attempt to justify retaliatory actions and evade compliance with the Court's order.

Second, Defendants failed to adhere to the escalation procedures outlined in the CoC. The CoC requires that any perceived violations be addressed through a graduated process, beginning with corrections or warnings before escalating to more severe actions like temporary or permanent bans. I received no such warnings or corrective guidance prior to being banned. The absence of any formal

warning or engagement from the Incident Response Team (IRT) underscores the retaliatory nature of Defendants' actions. Moreover, Defendants have provided no evidence of any reports made against me to the IRT or any communications from IRT members regarding my conduct. This lack of due process further highlights that the ban was not a legitimate enforcement of community standards but rather a punitive measure in direct violation of the preliminary injunction.

Additionally, the authority of Matt Mullenweg to enforce the CoC is ambiguous. The CoC and the Incident Response Team documentation do not explicitly grant him enforcement powers, nor do they list him as a member of the IRT. The WordPress Foundation's foundational documents describe WordPress.org as a property of the Foundation, not a personal asset of Mr. Mullenweg, casting further doubt on his unilateral authority to enforce community standards. Even if the Court finds that Mr. Mullenweg has some authority to enforce the CoC by virtue of his ownership of Automattic, Inc., the lack of transparency and formal process in applying this authority reinforces the argument that the ban was retaliatory and unjustified.

Defendants also claim that my conduct was disruptive to the Make.WordPress.org community, citing alleged "taunting, baiting, and derogatory comments." These accusations are unsupported by any concrete evidence. My participation in the Slack workspace was primarily focused on legitimate community engagement, including assisting in discussions related to WordPress development and governance. As evidenced in Exhibit A, I engaged in multiple conversations outside of the #ranting channel, providing constructive input and asking targeted questions relevant to the community's interests. The selective presentation of my interactions by Defendants is a transparent effort to distort the nature of my contributions and justify their noncompliance with the Court's order.

Defendants' justification for my ban from the Make.WordPress.org Slack workspace is both factually and legally baseless. Their actions constitute a clear violation of the preliminary injunction, driven by retaliatory motives rather than any legitimate enforcement of community standards. The Court should recognize these actions for what they are—willful contempt of its order—and impose appropriate sanctions to ensure compliance and address the harm caused.

### C. DEFENDANTS' OPPOSITION RELIES ON MISREPRESENTING THE TIMELINE OF EVENTS

A cornerstone of Defendants' opposition is their deliberate manipulation of the timeline of events to fabricate a justification for their violation of the preliminary injunction. This tactic not only misleads the Court but also underscores the retaliatory nature of their actions.

Defendants prominently cite my January 4, 2025, Slack post—"I'll see you on Monday"—as evidence of threatening behavior warranting my ban. However, this post was made after my account had already been deactivated, meaning it could not have served as a basis for the initial ban. This fundamental distortion of the sequence of events is detailed in my Motion for Order to Show Cause Against Defense Counsel, where I provided evidence that all alleged "threatening" statements were made only in response to the retaliatory ban itself. Defendants' attempt to retroactively justify their contemptuous actions by presenting post-ban statements as pre-ban conduct is a transparent effort to mislead the Court. Even if the additional comments were, in fact, made before the ban, they still do not rise to the level required to justify proceeding straight to a permanent ban.

Furthermore, Defendants have selectively quoted from Slack conversations, omitting key context to create a false narrative of misconduct. As outlined in the Motion for Order to Show Cause, Defendants cherry-picked statements from my interactions while ignoring surrounding messages that clarify the professional and non-threatening nature of my participation. For example, conversations in the #meta channel, where I raised legitimate questions about community governance and the conduct of other moderators, were stripped of their context and presented as disruptive or hostile behavior. In reality, these discussions were part of my broader efforts to engage constructively with the WordPress community, a fact supported by the full conversation logs provided in Exhibit A.

The manipulation of both the timeline and the content of my communications reveals Defendants' bad faith in opposing this motion. By presenting a distorted version of events, they seek to evade accountability for their clear violation of the Court's preliminary injunction. Such tactics not only undermine the integrity of these proceedings but also demonstrate a willful disregard for the truth and the authority of this Court.

In light of these deliberate misrepresentations, the Court should view Defendants' opposition with skepticism and recognize their actions as willful contempt. The factual record, when accurately presented, leaves no doubt that Defendants banned me from the Make.WordPress.org Slack workspace in retaliation for my legal actions and criticism, not due to any legitimate violation of community standards.

### D.  DEFENDANTS' ACTIONS HAVE CAUSED ONGOING PROFESSIONAL AND REPUTATIONAL HARM

Defendants' retaliatory ban from the Make.WordPress.org Slack workspace has resulted in significant and ongoing professional harm. These damages extend beyond the immediate impact of losing access to a key community platform and have materially affected my ability to engage with clients, maintain professional relationships, and uphold my standing within the WordPress ecosystem.

First, the Slack ban has impaired my ability to perform essential functions in my role as a consultant for various agencies and clients who rely on WordPress. Many of my clients, including those who host with WP Engine, depend on my expertise to navigate WordPress development and governance issues. The Make.WordPress.org Slack workspace is a critical resource for staying updated on WordPress developments, engaging with core contributors, and addressing client concerns in real-time. By banning me from this platform, Defendants have directly hindered my capacity to provide timely and accurate support to my clients, thereby damaging my professional credibility and limiting my business opportunities.

In addition to my consulting work, the ban has obstructed my volunteer efforts within the WordPress community. I serve as a volunteer for AspirePress, where I contribute to initiatives aimed at improving the WordPress ecosystem. My ability to engage in these community-driven projects has been significantly curtailed by my exclusion from the Make.WordPress.org Slack workspace, which is the primary platform for collaboration and communication among volunteers. This has hindered my ability to contribute meaningfully to AspirePress and to the broader WordPress community.

Furthermore, I serve as a moderator on the r/WPDrama subreddit, a community that focuses on discussions related to WordPress governance and community issues. This community was

established after moderators of the subreddit r/WordPress, in the employee of Matt Mullenweg, banned a large number of people from the subreddit and attempted to actively suppress any new discussion about this legal battle. The r/WPDrama subreddit was created as a result of these overzealous moderation actions and a systematic campaign of retaliation against members of the r/Wordpress community who opposed Matt Mullenweg's actions. My role as a moderator requires active participation in WordPress-related discussions and staying informed about developments within the ecosystem. The ban from the Slack workspace has limited my ability to fulfill these responsibilities effectively, as it has cut off a vital source of information and engagement with the WordPress community.

Contrary to Defendants' assertions, I have consistently made concrete claims of the damages suffered as a direct result of their actions. From my initial interactions with Matt Mullenweg on Slack, prior to the violation of the injunction, I have detailed the professional impacts of their conduct. The damages that result from the initial actions of Matt Mullenweg in his attempt to extort WP Engine are not speculative but are evidenced by the disruption to my client relationships. For example, I suffered a direct loss of a signed website development contract valued at $14,500. This loss of revenue caused us to be unable to make our payroll obligations. We subsequently managed to negotiate a temporary furlow, pending the payment of another invoice by a different client on the due date mutually agreed upon. When this client, Trellis, had an issue with their own payment due to a recent buyout, this then caused us to default on our payroll obligations.

Under the terms of the contract with Trellis, they were given a cure period to resolve any missed payments within a certain period of time. As the missed payment was due to an error and was not malicious, Trellis quickly made payment within the cure period. However, by this time Redev had defaulted on its payroll obligations for a second time, and was forced to cancel contracts with two employees. It is clear that, had Redev not already lost a signed contract as a result of the actions of Matt Mullenweg, Trellis would have easily cured their breach within the period allotted to them in their contract, and Redev would have been able to properly meet its own payroll obligations without issue. Even if Trellis had failed to make a payment, the signed contract that was lost was enough on

its own to cover all existing payroll obligations through the period in question. Screenshots of discussions with various members of the Trellis team, excerpts of contracts between Trellis and Redev, and related conversations between Michael Willman and members of the Redev team regarding the ongoing work and relationship with Trellis, are attached as Exhibit B.

For these and other reasons, I have suffered significant damages as a result of the dispute between WP Engine and Matt Mullenweg, and I intend to further make these damages known in my subsequent *Reply to the Opposition to Motion to Intervene*.

### E.  DEFENDANTS' FIRST AMENDMENT DEFENSE IS INAPPLICABLE

Defendants argue that their content moderation decisions, including my ban from the Make.WordPress.org Slack workspace, are protected under the First Amendment, relying on the Supreme Court's ruling in Moody v. NetChoice. This argument is fundamentally flawed and misapplies constitutional protections to justify a clear violation of the Court's preliminary injunction.

The First Amendment does not provide a shield for parties to ignore or violate lawful court orders. The preliminary injunction issued by this Court is a binding legal directive that specifically prohibits interference with WP Engine's access to WordPress.org resources, including its related entities. My exclusion from the Slack workspace constitutes direct interference with these protected resources. Defendants' invocation of First Amendment rights cannot override their legal obligation to comply with the Court's order. Courts have consistently held that constitutional protections do not extend to actions that violate specific judicial mandates. Compliance with lawful orders is not optional, regardless of the defendants' purported editorial discretion.

Furthermore, the reliance on Moody v. NetChoice is misplaced. That case addresses broad content moderation policies by social media platforms and the extent to which state laws can regulate such policies. It does not pertain to situations where a court has issued a specific injunction restricting certain actions. The preliminary injunction in this case is narrowly tailored to prevent Defendants from interfering with access to WordPress.org resources for WP Engine and its affiliates, customers, and users. This is not a question of general content moderation policy; it is about Defendants' obligation to adhere to a judicial order that protects specific entities from targeted interference.

Even if Defendants' content moderation policies were generally protected under the First Amendment, that protection would not extend to retaliatory actions taken in bad faith. The ban from the Make.WordPress.org Slack workspace was not a neutral application of community standards but a direct response to my criticism of Defendants and my legal actions. This retaliatory nature is evident from the timing of the ban, the lack of due process in its enforcement, and the selective application of community standards. Retaliation against individuals for exercising their legal rights is not protected speech—it is a violation of those individuals' rights if conducted by the government and, in this case, is a violation of the Court's targeted preliminary injunction.

Finally, even if the text of the preliminary injunction were found to be a violation of the defendant's First Amendment rights, this would not allow the defendant to justify a breach of the injunction. In *Walker v. City of Birmingham*, 388 U.S. 307 (1967), the court held that individuals must comply with court orders even if they believe them unconstitutional, pending appeal.

In conclusion, Defendants' First Amendment defense is both legally and factually inapplicable. The Court's preliminary injunction imposes clear obligations that Defendants have willfully disregarded. Their attempts to cloak their contemptuous actions in constitutional protections should be rejected outright. The Court should recognize this defense as a diversionary tactic and hold Defendants accountable for their clear violations of its order.

## F. DEFENDANTS' ACTIONS WARRANT CIVIL AND CRIMINAL CONTEMPT SANCTIONS

Defendants' willful and repeated violations of the Court's preliminary injunction demonstrate a clear and unequivocal disregard for the authority of this Court. Their actions meet the legal standards for both civil and criminal contempt, warranting sanctions to both remedy the harm caused and coerce future compliance with the Court's orders.

To establish civil contempt, the moving party must demonstrate by clear and convincing evidence that the contemnor violated a specific and definite court order. In this case, the preliminary injunction explicitly prohibits Defendants from interfering with WP Engine's access to WordPress.org resources, including its related entities, customers, and users. The evidence presented, including

Defendants' own admissions and the documentation provided in my Motion for Order to Show Cause, unequivocally establishes that Defendants banned me from the Make.WordPress.org Slack workspace in direct violation of this injunction. Their attempts to justify this ban through misrepresentations, timeline distortions, and unfounded claims of threatening behavior only further underscore their willful noncompliance.

Criminal contempt, on the other hand, requires proof beyond a reasonable doubt that the contemnor willfully disobeyed a clear and specific court order. The retaliatory nature of Defendants' actions, coupled with their deliberate attempts to manipulate facts and mislead the Court, satisfies this standard. Defendants' false characterization of my conduct, selective quoting of Slack conversations, and reliance on post-ban statements as pre-ban justifications all point to a conscious and deliberate effort to flout the Court's authority. Such conduct not only undermines the integrity of these proceedings but also constitutes a direct affront to the judicial process.

Under 18 U.S.C. § 401, federal courts have the inherent authority to impose criminal contempt sanctions for disobedience of their orders. Notably, when the sanction involves imprisonment for six months or less, it is considered a petty offense and does not require a jury trial. This principle has been affirmed by the Supreme Court in Cheff v. Schnackenberg, 384 U.S. 373 (1966), and reaffirmed in Bloom v. Illinois, 391 U.S. 194 (1968). Thus, contrary to Defendants' assertions, this Court retains full authority to impose criminal contempt sanctions without the necessity of a jury trial, provided the penalties fall within this threshold.

The imposition of sanctions is necessary to address the harm caused by Defendants' contemptuous actions and to ensure their future compliance with the Court's orders. Civil sanctions should include the immediate restoration of my access to the Make.WordPress.org Slack workspace, as well as monetary compensation for the professional and reputational harm I have suffered. Additionally, the Court should consider non-monetary sanctions, such as the establishment of an independent Governance Oversight Board to prevent future abuses of power by Defendants and ensure transparency in the administration of WordPress.org resources.

Given the willful and egregious nature of Defendants' conduct, the Court should also impose

criminal contempt sanctions on Matt Mullenweg. His direct involvement in the retaliatory ban, coupled with his manipulation of community standards and public narratives, demonstrates a flagrant disregard for the Court's authority. Criminal sanctions are warranted to hold him personally accountable for his actions and to deter similar misconduct in the future.

Defendants' actions constitute clear violations of the Court's preliminary injunction and warrant both civil and criminal contempt sanctions. The Court should impose remedies that address the harm caused, ensure future compliance, and uphold the integrity of the judicial process.

## III.    RELIEF REQUESTED

In light of the Defendants' willful violations of the Court's preliminary injunction and the resulting professional harm and interference with my access to WordPress.org resources, I respectfully request that the Court grant the following relief:

A.  Civil Contempt Sanctions:

    1.  An order compelling Defendants to immediately restore my access to the Make.WordPress.org Slack workspace and any other WordPress.org resources from which I have been unlawfully excluded.

    2.  Monetary compensation to address the professional harm, including the impediment to my consulting work and volunteer activities within the WordPress community.

B.  Non-Monetary Sanctions:

    1.  The establishment of an independent Governance Oversight Board to ensure transparency and prevent future abuses of power by Defendants in the administration of WordPress.org resources.

    2.  A directive prohibiting Defendants from further interfering with WP Engine's access to WordPress.org resources, including its customers, affiliates, and users.

C. Criminal Contempt Sanctions:

    1.   The imposition of criminal contempt sanctions against Defendant Matt Mullenweg for his willful and retaliatory actions in direct violation of the Court's preliminary injunction.

    2.   Pursuant to 18 U.S.C. § 401, the Court should impose appropriate penalties, including imprisonment of up to six months without the need for a jury trial, as established by Cheff v. Schnackenberg, 384 U.S. 373 (1966), and reaffirmed in Bloom v. Illinois, 391 U.S. 194 (1968).

D. Other Relief

    1.   Any additional relief the Court deems just and proper to address Defendants' contemptuous conduct and to ensure their compliance with the Court's orders.

The imposition of these sanctions is necessary to remedy the harm caused, prevent future violations, and uphold the authority of this Court.

## IV.    CONCLUSION

Defendants Automattic Inc. and Matthew Charles Mullenweg have engaged in clear, willful violations of the Court's preliminary injunction, demonstrating a blatant disregard for this Court's authority. Their opposition is built on factual misrepresentations, manipulations of the timeline of events, and legally insufficient defenses that fail to justify their contemptuous actions. By banning me from the Make.WordPress.org Slack workspace, Defendants have directly interfered with the access protected under the injunction, causing significant professional harm and undermining my ability to engage in the WordPress community.

The retaliatory nature of Defendants' actions, combined with their selective enforcement of community standards and misuse of legal defenses such as the First Amendment, underscores their deliberate noncompliance. Their attempt to justify these actions through distorted narratives and

unfounded claims highlights the need for judicial intervention to enforce compliance and protect the integrity of the Court's orders.

For these reasons, I respectfully request that the Court hold Defendants in both civil and criminal contempt. Civil sanctions should include the immediate restoration of my access to the Make.WordPress.org Slack workspace, monetary compensation for the professional harm incurred, and the establishment of a Governance Oversight Board to ensure transparency and accountability in the administration of WordPress.org resources. Additionally, given the willful and egregious nature of Defendants' conduct, I request that the Court impose criminal contempt sanctions on Matt Mullenweg to hold him personally accountable for his actions and to deter future violations.

The imposition of these sanctions is necessary to remedy the harm caused, ensure future compliance with the Court's orders, and uphold the authority of this Court. I respectfully urge the Court to grant my motion for contempt in full and to impose all appropriate sanctions to address Defendants' ongoing violations.

Respectfully submitted,

Date: January 31st, 2025

By: /s/ *Michael Willman*

Michael Willman