Michael Willman

5 Mecca Lane Washington, ME 04574

1 (207) 242-4767

michael@websiteredev.com

Pro Se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

WPENGINE, INC., a Delaware corporation,

   Plaintiff,

  v.

AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 3:24-cv-06917-AMO

**MOTION FOR ORDER TO SHOW CAUSE AGAINST DEFENSE COUNSEL**

DATE: February 6th, 2025

TIME: 2PM

COURTROOM: Courtroom 10 - 19th Floor

JUDGE: Hon. Araceli Martinez-Olguin

1

## TABLE OF AUTHORITIES

**Federal Cases**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)

Page 5

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)

Page 5

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005)

Page 6

**Statutes and Rules**

*Federal Rule of Civil Procedure 11(b)(3)*

Pages 3, 4, 5, 6, 9

*Federal Rule of Civil Procedure 11(c)(1)*

Page 5

1

2

## NOTICE OF MOTION

3

PLEASE TAKE NOTICE that on Thursday, February 6th at 2PM, or as soon thereafter as a

4

motion may be heard in Courtroom 10 of the United States District Court for the Northern District of

5

California, located at 450 Golden Gate Ave., San Francisco, California, before the Honorable Araceli

6

Martínez-Olguín,  I will, and hereby do, move this Court to issue an **Order to Show Cause (OSC)**

7

directing Defense Counsel, Lauren Cury, to appear and explain why they and their firm should not be

sanctioned for **making materially false representations in court filings**.

8

This request is made pursuant to the Court's inherent authority to address misconduct and

9

Federal Rule of Civil Procedure 11(b)(3), which requires attorneys to ensure that factual assertions in

10

legal filings are supported by evidence. Given the repeated misrepresentations of material facts by

11

Defense Counsel - including misstatements regarding Michael Willman's alleged conduct and a clear

12

attempt to circumvent the Court's preliminary injunction by attempting to trick WP Engine into

13

narrowing the scope of the injunction through extrajudicial means - an Order to Show Cause is

warranted to preserve the integrity of these proceedings.

14

In particular, Defense Counsel should be required to explain:

15

1. The false assertion that Michael Willman made a physical threat against Matt

16

Mullenweg, despite the absence of any supporting evidence.

17

2. The misrepresentation of the preliminary injunction's scope, which appears to be an

attempt to evade its enforcement by the court.

18

3. The false claim that Michael Willman's second Slack account was banned, when

19

publicly available records indicate it remains active.

20

4. The selective omission of key portions of Slack conversations, which distorted their

21

meaning to mislead the Court.

22

Each of these false and misleading statements raises serious concerns regarding the duty of candor that all attorneys owe to this Court. Michael Willman does not seek to penalize zealous advocacy, but rather to ensure that court proceedings remain grounded in truth, and that opposing counsel is held accountable for making factual representations that they either knew, or should have known, were false.

Federal Rule of Civil Procedure 11(b)(3) requires that all factual contentions made in filings have evidentiary support or, at a minimum, be based on a reasonable inquiry. Here, the statements made by Defense Counsel are not supported by evidence and could have been easily disproven had counsel undertaken even minimal due diligence.

One of the most egregious examples of Defense Counsel's misconduct is their deliberate misrepresentation of the scope of the Court's preliminary injunction in an attempt to improperly limit its enforcement. This is not merely an instance of advocacy gone too far; it is an active effort to mislead a third party (WP Engine), evade the enforcement of a judicial order, and fundamentally alter the rights conferred by the injunction through extrajudicial means.

The preliminary injunction issued by this Court is explicit in its terms and does not grant WP Engine the authority or responsibility to determine its scope. The injunction directly defines the entities covered under its provisions, including a specific list of Related Entities. Nowhere does the Court delegate to WP Engine the discretion to decide which individuals fall within the reach of the injunction. Despite this clarity, Defense Counsel engaged in a deliberate effort to manipulate WP Engine into drastically narrowing the injunction's applicability, contrary to the Court's order.

For these reasons, Michael Willman respectfully requests that this Court issue an Order to Show Cause, requiring Defense Counsel to appear and provide a written explanation as to why they made these false factual assertions and why sanctions should not be imposed.

## I.    LEGAL BASIS FOR ISSUING AN ORDER TO SHOW CAUSE

### A.  Defense Counsel's Conduct Violates the Spirit and Letter of the Injunction

The preliminary injunction was issued to prevent further harm, protect affected individuals and entities, and ensure compliance with the Court's directives. Rather than adhering to the clear and unambiguous terms of the injunction, Defense Counsel has actively worked to undermine its enforcement through deliberate misrepresentations, procedural manipulation, and extrajudicial interference.

Defense Counsel's actions are not mere differences in legal interpretation - they are deliberate efforts to circumvent both the spirit and the letter of the Court's order, including: misrepresenting the injunction's scope to WP Engine, shifting the burden of defining "Related Entities" onto WP Engine, justifying defendant's violation of the injunction through misrepresentation, and circumventing proper legal channels to modify the injunction.

### B. The Court's Inherent Authority to Address Attorney Misconduct

Courts have inherent authority to ensure the integrity of judicial proceedings and may require attorneys to explain potentially unethical conduct. The Supreme Court has recognized that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This power includes the ability to compel attorneys to justify their conduct, particularly when their actions threaten the fairness of the proceedings. The court further emphasized that a "primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Other cases before the Court have decided at length on the role of sanctions as a method to compel compliance with the instructions of the Court. In *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980), the Court found that "sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'". Finally, the Federal Rules for Civil Procedure 11(c)(1) state that "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." making it clear that the Court has significant authority to address attorney misconduct

in this case.

### C. Rule 11(b)(3) Requires Factual Assertions to Have Evidentiary Support

Federal Rule of Civil Procedure 11(b)(3) provides that "By presenting to the court a pleading, written motion, or other paper, an attorney certifies that […] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." When an attorney fails to verify factual claims before making them in court filings, they violate their duty of candor to the tribunal. Courts in the Ninth Circuit have repeatedly held that misrepresentations in legal filings warrant judicial intervention, even if made recklessly rather than intentionally.

In *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005), the Ninth Circuit upheld Rule 11 sanctions against an attorney who filed a complaint without conducting a reasonable inquiry into the factual and legal basis of the claims. The court emphasized that an attorney is obligated to ensure that any claims presented are warranted by existing law or by a nonfrivolous argument for its extension, modification, or reversal. The court stated "An attorney is subject to Rule 11 sanctions, among other reasons, when he presents to the court 'claims, defenses, and other legal contentions [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.'"

## II.    Defense Counsel SHOULD BE REQUIRED TO EXPLAIN FIVE MATERIAL MISREPRESENTATIONS

### A. False Statements Claiming Michael Willman Made a Physical Threat

From the very start of her introduction, where she compares Mr.Willman to the notorious murderer Luigi Mangione, Lauren Cury continues a malicious and defamatory line of attack initially directed at Mr. Willman by her client Matt Mullenweg. While she avoids direct factual claims about a physical threat to start, claiming only that it was "[understandable that Matt] saw Mr. Willman's post as a "physical threat" and therefore removed him from the Slack workspace.", she quickly goes beyond defending her clients view of the incident, and proceeds to make direct statements, claiming further in her introduction that Mr. Willman's "threatening January 4, 2025 post violated the

Community Code of Conduct for the Slack workspace that was in place long before the injunction issued." before going on to say "Nothing in the preliminary injunction bars WordPress.org from moderating accounts that post physical threats to its co-founder." These statements directly imply that Mr. Willman made a physical threat - a claim that is categorically false.

These willful accusations of a physical threat being made, seem to hinge on the following messages by Mr. Willman in the #ranting channel:

### 1. Comments made by Michael Willman before the initial violation of the preliminary injunction



In these messages, Michael Willman engages in an extended attempt to inform Matt of the damages that he has incurred as a result of his action, including being unable to pay the mortgage on the home he shares with his father and being forced to live in a travel trailer with his wife and young autistic son. At the end of the message he states, "That means I can bring it to anywhere I need to, like to file legal actions in Texas, California and Delaware.". This is the only message claimed by the Defense to be a "physical threat", that was made by Michael Willman in the ranting channel prior to the initial violation of the preliminary injunction. All other messages, including the message "I'll see you on Monday", that the defense's misleading introduction quotes, occurred after the initial violation of the court order. Despite the claims by the defense that this comment is in some way a threat of

violence, it is instead simply the continuation of a long line of conversation regarding the damages caused by Matt Mullenweg's actions and the intent (since realized) to take legal actions against him as a result. This only served to reinforce the retaliatory and defamatory nature of these attacks.

## 2. Comments made by Michael Willman after the initial violation of the preliminary injunction

On January 4th, 2025 Michael Willman attempted to access the Make.Wordpress.org slack server, but received a message notifying him that his account had been deactivated. As he had not received any warnings for violations of the Wordpress Code of Conduct, he initially believed this was simply an error, and attempted to reaccess the Make.Wordpress.org slack server.



This screenshot encompasses the entirety of all text messages sent on this second account to the Make.Wordpress.org slack server prior to January 29th. The content within this message that the defense takes issue with is this statement, "I'm booking my tickets to Houston now to file an emergency injunction, I'll see you on Monday." Once again, this comment makes a clear statement regarding the reason for travel to Houston, which is to make a legal claim. At no point in time is any threat of physical violence made in this comment, against Matt Mullenweg or any other party. This comment is simply the continuation of a long running attempt to get Matt Mullenweg to see the damages that he is causing upon innocent third parties.

## 3. Defense fails to advance any standard for alleged "physical threats" by Michael Willman

Despite asserting that Michael Willman made a "physical threat" against Matt Mullenweg,

Defense Counsel has failed to articulate any clear standard - legal, procedural, or otherwise - that supports this characterization. Their filings lack any reference to established definitions of what constitutes a "physical threat" under applicable law, court precedent, or even community guidelines. This absence of a defined standard leaves the Court without a framework to evaluate the validity of their claims.

While Defense Counsel references the Community Code of Conduct and the WordPress Contributor Handbook, neither document provides a definition of "physical threat" that could reasonably apply to Mr. Willman's statements. Additionally, defense counsel has not cited any legal authority or precedent that would suggest Mr. Willman's comments rise to the level of conduct warranting the label of a "physical threat." They do not explain how Mr. Willman's words meet any threshold - whether it be legal standards, organizational policies, or common understanding - for such a serious accusation.

This failure to provide a supporting framework is particularly troubling given the serious nature of the accusation. Allegations of physical threats carry significant legal and reputational consequences, and any such claims must be grounded in clear, objective criteria. In this case, the defense has relied solely on conclusory statements, without offering the Court any objective means to assess their veracity.

In the absence of a defined standard, the defense's claims must be viewed as unfounded. Without legal or factual support, their assertions appear to be an attempt to mislead the Court and to unfairly prejudice the proceedings against Mr. Willman. This lack of substantiation underscores the necessity of an Order to Show Cause to address defense counsel's failure to meet their obligations under Federal Rule of Civil Procedure 11(b).

### 4. Defense's false and misleading statements are made with either malicious intent, or reckless abandon.

While the Defendant Matt Mullenweg could plausibly plead ignorance, that he is an "unreasonable" person, or some other defense based on his status as a layman, his counsel is unable to make any such defense. As an officer of the court, the Defense is held to a higher standard than any

non-attorney. Unlike Matt Mullenweg, Defense counsel is obligated to ensure that all claims in legal filings are materially correct and factually accurate. As such, Defense's actions must be due to either a willful misstatement of the facts at hand, or an egregious failure to maintain even the most basic standards of decorum and conduct expected of an officer of the court.

**B. Defense Intentionally Misrepresented the Statements of a Third Party**

Another clear instance of Defense Counsel making materially misleading representations to this Court is their deliberate omission of key portions of Slack conversations in an attempt to create a false narrative about Michael Willman's conduct. By selectively quoting and misrepresenting chat messages, Defense Counsel has distorted the context in a way that misleads the Court about the actual content and nature of the discussions. This is not simply a case of interpreting ambiguous language in a self-serving way - it is an intentional effort to deprive the Court of the full picture by omitting context that directly contradicts the misleading impression Defense Counsel sought to create.

**1. Defense Counsel Selectively Quoted Slack Messages to Misrepresent Michael Willman's Conduct**

In their filing, Defense Counsel included screenshots of three Slack messages exchanged between Mr. Willman and a user named "paragonie". These messages were presented to the Court as evidence of "mudslinging" and improper conduct. However, a review of the full conversation - including the omitted portions - reveals that significant portions of the conversation with Mr. Willman were omitted, including the fact that the thread started as a conversation regarding the conduct of the owners of the website Bullenweg.org and their accusation that Matt having a nosebleed fits a behavior of "lied, misrepresented or behaved in a questionable manner". Mr. Willman's initial comments in this thread regarding the tone that Matt has set in the community were a direct response to this initial conversation started by "paragonie".

 **paragonie**  Oct 16th, 2024 at 7:12 AM
https://github.com/bullenweg/bullenweg.github.io/issues/11

I believe it's important that everyone, especially people critical of @matt, pay attention to what happened in this linked issue. A lot of people from r/WordPress expressed discomfort in them highlighting Matt having a nosebleed (after a ton of travel) as criticism. They closed it unceremoniously as "not planned".

However you feel about this situation, that's simply not cool.

**#11 Nosebleed Stuff**

I'd suggest removing the nosebleed bit. I don't think it fits, "lied, misrepresented or behaved in a questionable manner" especially since it happened after traveling. It is a pretty normal occurrence and takes away from the more valid points in the timeline. Thank you.

Comments
1

 bullenweg/bullenweg.github.io | Oct 15th, 2024 | Added by GitHub

---

11 replies

 **paragonie**  Oct 16th, 2024 at 7:12 AM
Full context here: https://old.reddit.com/r/Wordpress/comments/1g43n7s/every_time_matt_mullenweg_has_lied_misrepresented/ls1agy6/?context=3

 **reddit**
**Every time Matt Mullenweg has lied, misrepresented or behaved in a questionable manner.**
Posted in r/Wordpress by u/Mte90 • 208 points and 51 comments

 **Michael Willman**  Oct 16th, 2024 at 11:14 AM
It is my opinion that Matt has set the tone for the community to follow and this response is entirely in line with his own responses to users. If anything, its far more tame than trying to extort Wordpress devs who lost business into stopping work with WP Engine using a carrot of referrals, for example.

✅ 1   ☺

Defense continues to omit further relevant context after the comments that they provided.

 **Silencio**  Oct 16th, 2024 at 11:48 AM
There are a lot of things that are not cool.  Dredging up stuff like Matt's other legal issue related to his mom is most certainly not cool. Focusing on irrelevant stuff like his nosebleed is not cool.  You know what else is not cool?

Making a sarcastic gesture on a stream when Theo queried if Matt had any sympathy for the bystander customers affected by his wp.org block.

Replying to someone with "Who are you?" when they presented a valid issue ...c'mon you know this was Matt and not wp.org speaking there.

Calling people out with regards to their hobbies even if it involves a $200k car, particularly when you post pics and talk about $2k cardigans, African safaris and attending F1 all in the same month.  Rich people be richin' but it's also a case of pot meet kettle. (edited)

🏆 1   ☺

 **Michael Willman**  Oct 16th, 2024 at 11:50 AM
The legal issue in question is with Audrey Capital, which employs Wordpress.org volunteers and other Wordpress community members, so I would say that legal issue is directly applicable to the topic at hand. I'm not sure why the same organization is hiring Wordpress contributors as well as personal home care staff for Matt's mom, but that is Matt's own decision not the communities.

Given that this same Wordpress community member is censoring any mention of Audrey Capital on reddit, that only makes the issue more relevant.

 **paragonie**  Oct 16th, 2024 at 12:21 PM

It is my opinion that Matt has set the tone for the community to follow and this response is entirely in line with his own responses to users.

Just because he leads this way doesn't mean anyone is obligated to follow his example.

➕ 2   😊

 **Michael Willman**  Oct 16th, 2024 at 1:11 PM

@paragonie No but it feels like punching down to go after the people who are responding to this instead of Matt and the other Automattic/Audrey Capital employees pushing the drama on the community.

 **paragonie**  Oct 16th, 2024 at 1:18 PM

You can make a salient case about those things being bad without unnecessary mud-slinging. In fact, your arguments are stronger if you remove the mud-slinging.

 **Michael Willman**  Oct 16th, 2024 at 1:19 PM

I don't disagree with you there, and I have been trying to do so myself, but I cannot really blame people who are essentially innocent parties here for being mad at Matt personally and acting in an unprofessional way as a result. I would expect the same backlash directed towards myself if I acted in a similar way.

**Michael Willman**  Oct 16th, 2024 at 1:19 PM

I don't disagree with you there, and I have been trying to do so myself, but I cannot really blame people who are essentially innocent parties here for being mad at Matt personally and acting in an unprofessional way as a result. I would expect the same backlash directed towards myself if I acted in a similar way.

The bigger issue I have is people being disrespectful towards other parties, such as the Wordpress community team here.

❤️ 1   😊

That isn't a reasonable response at all.

 **paragonie**  Oct 16th, 2024 at 1:22 PM

People are allowed to feel angry, scared, outraged, offended, and/or betrayed by Matt's recent behavior, and the sycophants that seem to endorse said behavior. Totally justified.

It's not okay to use those feelings to do pointless shit that causes collateral damage to third parties. As you said, WP contributors and community members. But also, third parties who might be self conscious about chronic nose bleeds.

It also doesn't directly serve any purpose other than shaming Matt. Which, if he's as big a narcissist as everyone says, is a fool's endeavor anyway! But also, you don't **need** to shame Matt to get your point across. The point stands very strongly alone. (edited)

These messages combine to show a conversation that is fundamentally at odds with the claims made by defense counsel. These omissions are not minor; they were critical to understanding the full context and ensuring the Court was not misled. As the full conversation shows, the user "paragonie" was making critical statements about Matt Mullenweg's conduct and that of another third party, not Mr Willman. Despite this, Defense Counsel falsely attributed the critical nature of the conversation to Mr. Willman to show a pattern of unprofessional and unreasonable behavior. By selectively removing these parts of the discussion, Defense Counsel misrepresented the true nature of the exchange and falsely framed Mr. Willman's statements as something they were not. No reasonable party who read the full text of this conversation could think that Mr. Willman's actions in this conversion rise to the level of violating the Community Code of Conduct as alleged by the Defense.

### 2. Third Party in Question Contradicts Defense Counsel's Claims

To further show the level of deception undertaken by the Defense Counsel, Mr. Willman

reached out to the user "paragonie" directly via Slack DM on the Make.Wordpress.org slack server on January 31st, 2025. In this message, Mr. Willman shared the statements made by Defense Counsel regarding his messages, and then proceeded to state his own interpretation while asking which interpretation was legitimate.



Would you say that this excerpt accurately represents your statements here?



In response, the user had this to say: *"Your interpretation was correct, I was referring to outside activities that I didn't want to see replicated in the channel. I was not accusing you, in particular, of mudslinging. Matt misunderstood the intent and context."*

 **paragonie**  5:35 PM
Your interpretation was correct, I was referring to outside activities that I didn't want to see replicated in the channel. I was not accusing you, in particular, of mudslinging. Matt misunderstood the intent and context.

In doing so, the user only further reinforces the lack of due diligence on the part of Defense's counsel. At any time, the defense could have questioned this user about his statement and the intent behind it.

The user in question does not stop there. He continues, "*For additional context: Paragon Initiative Enterprises is a cryptography and security firm that specializes in PHP, and whose open source software is used by WordPress. Our interest in participating is almost always limited to preventing existential threats to the ecosystem that powers nearly half the Internet (WordPress) and/or most websites on the Internet (PHP). Matt's behavior is such a threat.*"

 **paragonie**  5:35 PM
Your interpretation was correct, I was referring to outside activities that I didn't want to see replicated in the channel. I was not accusing you, in particular, of mudslinging. Matt misunderstood the intent and context.

For additional context: Paragon Initiative Enterprises is a cryptography and security firm that specializes in PHP, and whose open source software is used by WordPress. Our interest in participating is almost always limited to preventing existential threats to the ecosystem that powers nearly half the Internet (WordPress) and/or most websites on the Internet (PHP). Matt's behavior is such a threat.

From what I understand, the mudslinging was mostly provoked from hate forums (Kiwi Farms, rDrama\.net, etc.) not the regular community members that have been around for years.

And most of it was on Reddit.

(As far as the overall court case between Automattic and WP Engine goes, I'd really prefer to stay out of it.)

Far from representing concern regarding the statements made by Mr. Willman, these comments show that his main concern lies with the actions of the Defendant and their impact on his own business.

Had Defense Counsel provided the full and accurate context of the initial discussion, the Court would have seen that Mr. Willman was not engaging in improper behavior, and that he was actually advocating for respectful discussion and fair treatment of all parties. The omitted portions show that other participants were responsible for the very statements Defense Counsel falsely attributed to Mr. Willman.

Instead, Defense Counsel deceptively manipulated the record to make it appear as though Mr. Willman was acting in a way that warranted disciplinary action or moderation. This false portrayal is particularly damaging in the context of this litigation because it is being used to justify violations of the preliminary injunction and excuse retaliatory actions taken against Mr. Willman

This misrepresentation was not an innocent oversight - it was an intentional act of deception. Unlike a legal argument, where reasonable minds may differ on interpretation, the editing of factual evidence to remove exculpatory context is a direct misrepresentation of reality. There is no reasonable

excuse for failing to provide the full conversation. Furthermore, there is no plausible way that the Defense Counsel was unaware that their presentation of the conversation was misleading. If the Defense Counsel had simply presented the full conversation, their entire argument about Mr. Willman's supposed misconduct would collapse under the weight of the actual evidence. The decision to present only part of the conversation while concealing contradictory evidence is a violation of the duty of candor owed to the Court and is conduct unbecoming of an officer of the court.

### C. Defense Failed to Verify Defendant's Claims That Michael Willman's Account Was Banned for Violating Community Guidelines

One of the more clear-cut misrepresentations made by Defense Counsel is their false claim that Mr. Willman's second Slack account was banned for allegedly violating the Community Code of Conduct. This assertion, made in filings before this Court, is objectively false and could have been easily disproven had Defense Counsel undertaken even a minimal factual inquiry.

This false statement is not an interpretation or a legal argument - it is a straightforward factual claim that is demonstrably untrue. The fact that the Defense Counsel did not attempt to verify this claim before presenting it as fact to the Court demonstrates a reckless disregard for the truth.

In Defendant's filing, they stated: "Mr. Willman's account that made the January 4, 2025 Slack post was banned shortly thereafter as in violation of the Code of Conduct." and reference the Declaration made by Matt Mullenweg in support. Though the Defense references a claim made by the Defendant, this claim is presented as a factual statement and not a quote attributed to Matt Mullenweg.

This assertion is false. Mr. Willman's second Slack account remains active and in good standing. This misrepresentation is particularly troubling because **it was entirely avoidable**. Defense Counsel could have confirmed whether the account was active **in seconds** through several different methods. Had Defense Counsel undertaken any effort to verify their claim, they would have immediately discovered that the account was still active. Slack provides clear, unambiguous indicators for whether an account is active or deactivated. If an account has been banned or

deactivated, Slack's interface explicitly marks the account as "deactivated" when viewed by other users. Additionally, a banned user loses access to Slack entirely, meaning they would be unable to log in or post messages. None of these basic steps appear to have been taken, demonstrating either negligence or intentional disregard for the truth.

The false claim that Mr. Willman's second Slack account was banned was not made in a vacuum - it was made to undermine Mr. Willman's credibility and to falsely portray Mr. Willman as someone whose conduct warranted a ban. By stating as fact that the account was banned, Defense Counsel sought to present Mr. Willman as an individual who had engaged in misconduct serious enough to warrant repeated removal from the Slack platform, when in reality, no such secondary ban ever occurred. Such misrepresentations are particularly dangerous and prejudicial in legal proceedings, as they are designed to bias the Court against Mr. Willman based on a false premise.


### D. Defense Willfully Misrepresents the Timeline of Events

One of the most deliberate and deceptive tactics employed by Defense Counsel in this case is their **intentional misrepresentation of the timeline of events**. Rather than accurately presenting the sequence of actions taken by both parties, defense counsel has conflated and rearranged statements in a manner designed to **justify their own misconduct** and obscure their **violation of the preliminary injunction**.

This is not a matter of interpretation - this is a clear effort to distort the factual record, deceive the Court, and manufacture a false narrative in which Defendant's violation of the injunction is excused or even warranted. In their filings, Defense Counsel attempts to retroactively justify their client's actions by citing statements made by Mr. Willman after the violation of the preliminary injunction and falsely implying that these statements were made before the violation occurred.

For example, Defense Counsel claims *"Mr. Willman's January 4, 2025 post was a specific, factual assertion by someone who had been, in his own words, 'pissed off and angry' and was now on his way to confront Matt in person."*

This statement is not only misleading - it is **completely false in its implication**. The

statement was made after Defendant had already violated the injunction, and it was a reaction to that violation, not a justification for it. All comments made by Mr. Willman, before the violation of the injunction, were made on January 3rd. Only those comments made after the violation were made on January 4th. By rearranging the order of events, Defense Counsel falsely implies that Mr. Willman's response to the violation was instead a cause of the violation itself. This deliberate inversion of cause and effect is a blatant attempt to manipulate the Court's perception of the case.

**E. Defense Knowingly Attempted to Circumvent the Terms of the Preliminary Injunction**

One of the most egregious and deliberate violations of ethical and professional responsibility by Defense Counsel in this case is their intentional attempt to circumvent the terms of the Court's preliminary injunction. Rather than complying with the clear and unambiguous requirements set forth in the injunction, Defense Counsel engaged in manipulative tactics designed to evade compliance while maintaining a superficial appearance of adherence.

This was not an inadvertent misinterpretation of the injunction's scope. It was a calculated effort to mislead third parties, including WP Engine, into adopting an artificially narrow interpretation of the injunction. It also attempts to reframe the obligations imposed by the Court as discretionary rather than mandatory, and manipulate enforcement mechanisms in an effort to nullify the injunction's intended effect. By taking these actions, Defense Counsel engaged in misconduct that is fundamentally incompatible with their duty as an officer of the court and should be required to explain their actions under an Order to Show Cause.

**1. Defense Counsel Misrepresented the Injunction to WP Engine**

The preliminary injunction issued by the Court was explicit in its terms - it directly defined a list of Related Entities and made clear that its scope extended beyond WP Engine employees to all parties covered by the injunction's explicit terms.

Despite this, Defense Counsel deliberately sought to manipulate WP Engine into redefining the scope of the injunction in a way that drastically reduced its reach. They reached out to WP Engine directly in an attempt to influence their interpretation of the injunction. In doing so, they falsely suggested that WP Engine had discretion in defining who was covered, despite the fact that the

injunction's scope was already set by the Court. They then encouraged WP Engine to apply the injunction narrowly, limiting it to only a handful of individuals, when the Court's ruling clearly indicated it applied to millions of WP Engine's customers and users.

This was a transparent attempt to rewrite the injunction's terms without judicial approval, amounting to a direct attempt to obstruct the enforcement of a court order.

### 2. The Injunction Imposed No Obligation on WP Engine to Define Its Scope

Defense Counsel's entire strategy hinged on an invented premise - that WP Engine had the authority to determine who was and was not covered by the injunction. However, this is a blatant misrepresentation of the actual court order. The injunction did not delegate authority to WP Engine to determine which users were affected, decide whether a given party was subject to the injunction, or limit the scope of enforcement based on its own internal assessments.

Instead, the injunction clearly defines the entities it covers, leaving no room for discretionary interpretation by WP Engine or any other third party. Defense Counsel, rather than complying with the Court's unambiguous directive, attempted to insert WP Engine into a decision-making role that the Court never granted them.

This was not a good-faith legal interpretation - it was a deliberate attempt to manufacture ambiguity where none existed.

### 3. WP Engine Could Not Provide a Comprehensive List of Impacted Individuals Even If It Wanted To

Another critical flaw in Defense Counsel's attempt to manipulate WP Engine into narrowing the injunction is that WP Engine itself is fundamentally incapable of identifying the full scope of individuals impacted by the injunction. The sheer scale and scope of Defendant's illegal actions make it impossible for WP Engine to compile an exhaustive list of affected individuals.

The Court itself, in issuing the preliminary injunction, estimated that the impacted population numbers in the millions, stating "over two million websites run the ACF plugin Mullenweg allegedly tampered with". WP Engine, as a single corporate entity, does not possess the capacity to identify and track every user who has been impacted by Defendant's actions. Nor can it determine which users fall

under the definition of "Related Entities" as set forth in the injunction, or compile a complete and accurate list that would satisfy the Court's ruling. Any effort to shift this burden onto WP Engine is therefore not only improper, but impossible to execute without significant inaccuracies. Defense Counsel's demand that WP Engine define the scope of the injunction is not only legally baseless but also logistically unfeasible.

### 4. Forcing WP Engine to Provide a List of "Related Entities" Creates a Serious Risk of Retaliation and Further Harassment

Beyond the practical impossibility of WP Engine accurately defining the entire scope of affected individuals, Defense Counsel's insistence on obtaining such a list also raises serious concerns about potential misuse of this information. Given the history of targeted harassment and retaliation associated with Defendant's actions, compelling WP Engine to identify impacted individuals would potentially give Defense Counsel a powerful tool to further target and intimidate those affected. It would also risk exposing impacted individuals to additional retaliatory measures, and potentially facilitate further violations of the injunction through indirect means.

The very purpose of the injunction was to prevent further harm to those already impacted by Defendant's actions. If WP Engine were to hand over a list of affected individuals, this could directly undermine the protective function of the injunction itself and allow Defendant - or individuals acting on their behalf - to engage in further harassment, defamation, or exclusionary practices against those individuals.

This is not a speculative concern - it is a real and tangible risk based on prior conduct in this case. Any effort to pressure WP Engine into defining a "list" of impacted individuals must therefore be recognized as an indirect attempt to facilitate further harm against those protected by the injunction.

### 5. Attempting to Make WP Engine Define "Related Entities" is Prejudicial to WP Engine's Own Interests

Beyond the logistical impossibility and ethical concerns, any attempt to force WP Engine to define the term "Related Entities" as used in the injunction must be recognized as prejudicial to WP

Engine's own case. WP Engine is not a neutral third party in this dispute. It is an entity that has been directly affected by Defendant's conduct and has a vested interest in the enforcement of the injunction. By attempting to offload the responsibility for defining "Related Entities" onto WP Engine, Defense Counsel is engaging in an inherently prejudicial act that forces WP Engine into an adversarial position where it must make determinations that could later be weaponized against it in court.

Such an attempt places an undue burden on WP Engine to conduct investigations and provide legal definitions that are the responsibility of the Court, not a private company. It also gives Defense Counsel an opportunity to exploit any inconsistencies in WP Engine's interpretation in order to challenge enforcement of the injunction later. In essence, forcing WP Engine to define "Related Entities" is a legal trap - one that could be used against WP Engine in future proceedings to argue that the injunction should be more limited in scope than originally intended by the Court.

Defense Counsel is not engaging in good-faith legal advocacy - they are attempting to manipulate a corporate entity into inadvertently undermining the very injunction designed to protect its interests.

### 6. Defense Counsel's Actions Against WP Engine are Prejudicial to Michael Willman's Case

Defense Counsel's efforts to manipulate WP Engine into redefining the scope of the injunction are not just prejudicial to WP Engine itself - they are also directly prejudicial to Mr. Willman's legal standing and rights in this case. The preliminary injunction was issued to protect the rights of those impacted by Defendant's illegal actions, which includes Mr. Willman However, Defendant's deliberate efforts to weaken, circumvent, and misinterpret the injunction have had the direct effect of reducing the protections granted by the Court to a handful of individuals named by WP Engine's counsel.

This represents an attempt to redefine the legal landscape in a way that would exclude Mr. Willman from the full benefits of the injunction, interfering with his ability to seek redress by creating extrajudicial roadblocks to enforcement. These actions are not theoretical - they have had

real and immediate consequences on Michael Willman's ability to exercise their rights under the injunction. While Mr. Willman lacks standing to seek damages on behalf of WP Engine, he must be allowed to address actions taken by the Defendant that actively prejudice his own case.

### III. WHY AN ORDER TO SHOW CAUSE IS NECESSARY

Defense Counsel's repeated and deliberate misrepresentations in this case demand judicial intervention. The cumulative effect of these falsehoods, omissions, and improper legal maneuvers is not merely an issue of aggressive advocacy - it represents a sustained pattern of deception that has distorted the record, undermined the enforcement of the preliminary injunction, and prejudiced both WP Engine and Proposed Intervenor Michael Willman.

The conduct detailed in this motion is not the result of negligence or inadvertent mistakes - it reflects a calculated strategy to:

1. Falsely portray Michael Willman as engaging in misconduct that warranted disciplinary action.
2. Fabricate a justification for Defendant's violation of the preliminary injunction.
3. Misrepresent the statements of third parties to manufacture evidence against Mr. Willman.
4. Manipulate WP Engine into narrowing the scope of the injunction in a way that serves Defendant's interests.
5. Create an unequal playing field where Defendant can violate the injunction while Michael Willman is left without meaningful recourse.

This orchestrated effort to manipulate judicial proceedings cannot be ignored. An Order to Show Cause is necessary to require Defense Counsel to appear before this Court and provide a full and direct explanation for their actions.

The Court must not allow Defense Counsel's falsehoods and procedural gamesmanship to stand unchallenged. If unchecked, these tactics will not only prejudice Mr. Willman and WP Engine but will also set a dangerous precedent that undermines the Court's ability to enforce its own orders.

## IV. DEFENSE COUNSEL SHOULD BE REQUIRED TO JUSTIFY THE FOLLOWING ACTIONS:

1. Why they falsely asserted that Mr. Willman made a physical threat, despite a complete lack of evidentiary support.

2. Why they knowingly misrepresented the statements of a third party to create a misleading narrative against Mr. Willman.

3. Why they failed to verify Defendant's false claim that Mr. Willman's Slack account was banned, despite readily available evidence disproving it.

4. Why they intentionally rearranged the sequence of events to falsely portray Mr. Willman's response to the injunction violation as a justification for that violation.

5. Why they sought to pressure WP Engine into limiting the scope of the injunction when the Court had already defined its terms.

6. Why they attempted to shift the burden of defining "Related Entities" onto WP Engine, knowing that such a move was prejudicial to WP Engine's own interests and impossible to execute.

7. Why they pursued an improper strategy that risked exposing individuals affected by Defendant's actions to further harassment and retaliation.

8. Why they circumvented proper legal channels and failed to seek modification or clarification from the Court before engaging in extrajudicial attempts to weaken the injunction.


If the Defense Counsel **cannot provide a satisfactory explanation for these actions**, then the Court should consider appropriate sanctions for their misconduct, failure to adhere to their duty of candor, and efforts to obstruct the enforcement of a judicial order. The Court **must not allow Defense Counsel's falsehoods and procedural gamesmanship to stand unchallenged**. If unchecked, these tactics will not only prejudice Michael Willman and WP Engine but will also set a dangerous precedent that undermines the Court's ability to enforce its own orders.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**V. CONCLUSION**

For these reasons, Michael Willman respectfully requests that the Court issue an **Order to Show Cause** requiring Defense Counsel to appear and explain their actions. If their explanations are inadequate, the Court should **consider all appropriate remedies, including sanctions, corrective measures, and any other relief the Court deems just and necessary** to prevent further misconduct in these proceedings. Michael Willman is prepared to provide any additional information the Court may require.

Respectfully submitted,

Date: January 31st, 2025

By: /s/ *Michael Willman*

Michael Willman