Your Name:Michael Willman

Address:5 Mecca Lane Washington, ME 04574

Phone Number: 1 (207) 242-4767

Email Address: michael@websiteredev.com

Pro Se

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

Division: San Francisco

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, | ) ) |
| Plaintiff, | ) Case Number: 3:24-cv-06917-AMO ) ) |
| v. | ) **REPLY TO THE OPPOSITION TO** ) ) **MOTION TO INTERVENE** |
| AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, | ) JUDGE: Hon. Araceli Martinez-Olguin ) ) ) ) |
| Defendant. | ) ) ) ) ) ) ) |

# I.    TABLE OF AUTHORITIES

**Cases**

- *Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) - Page(s) 18

- *Baker v. Wade*, 743 F.2d 236 (5th Cir. 1984) – Page(s) 19

- *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) – Page(s) 8

- *California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006) – Page(s) 18

- *California v. U.S. Dep't of Health & Human Servs.*, 281 F. Supp. 3d 806 (N.D. Cal. 2017) – Page(s) 6, 10

- *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) – Page(s) 15

- *Clinton v. City of New York*, 524 U.S. 417 (1998) – Page(s) 7, 9

- *Diaz v. S. Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970) – Page(s) 8

- *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) – Page(s) 10

- *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) – Page(s) 15

- *Erlich v. Etner*, 224 Cal. App. 2d 69 (1964) – Page(s) 12

- *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596 (1976) – Page(s) 14

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) – Page(s) 16

- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) – Page(s) 9

- *Pedroza v. Pham*, No. C-12-1341 EMC, 2012 WL 3027455 (N.D. Cal. 2012) – Page 7

- *Polygram Records, Inc. v. Superior Ct.*, 170 Cal. App. 3d 543 (1985) – Page(s) 13

- *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) – Page(s) 6, 7, 9

- *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) – Page(s) 23

- *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) – Page(s) 14

- *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) – Page(s) 5, 8

- *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) – Page(s) 7, 10

- *United States v. Grinnell Corp.*, 384 U.S. 563 (1966) – Page(s) 14

- *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) – Page(s) 20

- *Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989) – Page(s) 6

- *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994) – Page(s) 5, 7, 9, 18

- *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) – Page(s) 18

- *Wong v. Jing*, 189 Cal. App. 4th 1354 (2010) – Page(s) 12

**Statutes and Rules**

- **California Business & Professions Code § 17500** – Page(s) 15

- **California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200–17209** – Page(s) 15

- **Federal Rule of Civil Procedure 8(a)** – Page(s) 8

- **Federal Rule of Civil Procedure 24(a)(2)** – Page(s) 4, 5, 16, 17, 23

- **Federal Rule of Civil Procedure 24(b)(1)** – Page(s) 4, 5, 6, 7, 19, 23, 24

- **Sherman Antitrust Act, 15 U.S.C. § 2** – Page(s) 14

## II.    INTRODUCTION

Defendants Automattic Inc. and Matthew Charles Mullenweg oppose my motion to intervene based on mischaracterizations of both the legal standards for intervention and the factual basis for my claims. Their opposition primarily rests on the flawed assertions that I lack a protectable interest, that I am not covered under the Court's preliminary injunction, and that my claims would unduly complicate or delay the proceedings. Each of these arguments is legally and factually deficient.

My motion to intervene is grounded in Rule 24(a) (Intervention as of Right) and Rule 24(b) (Permissive Intervention) of the Federal Rules of Civil Procedure. Under Rule 24(a), intervention is

warranted because I have a significantly protectable interest in the enforcement of the preliminary injunction, my exclusion from this case would impair my ability to protect that interest, and my interests are not adequately represented by WP Engine, whose concerns do not fully align with mine. Under Rule 24(b), permissive intervention is appropriate because my claims share common questions of law and fact with the main action, and my participation would contribute to a complete and just adjudication of the issues before the Court.

When it comes to the text of the injunction itself, and their interpretation of it, they go much farther than that. Throughout their filings, the Defendants argue that the preliminary injunction is limited to only those currently working for WP Engine, excluding a very short list of other users provided by the WP Engine attorneys to the Defendants in response to an email shortly after the preliminary injunction was granted. However, all evidence points against the Defendants' narrow interpretation of events. In fact, as the court will see in Exhibit A, WP Engine themselves have sent me a letter stating that the interpretation provided by the Defendants is incorrect and asking them to retract their claims.

This reply will demonstrate that Defendants' arguments against my intervention are legally untenable and factually incorrect. I will establish that I have standing, that I meet the requirements for intervention as of right, and that permissive intervention would promote judicial efficiency without unduly complicating the case. Accordingly, I respectfully request that the Court grant my motion to intervene.

### III.    LEGAL STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure 24 provides two avenues for intervention: intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(1). Defendants' opposition misapplies the legal standards governing both provisions, failing to acknowledge that courts in this

Circuit construe Rule 24 broadly to allow intervention where necessary to ensure complete and fair adjudication of disputes.

### A. Intervention as of Right Under Rule 24(a)(2)

A party is entitled to intervene as of right when they demonstrate: "A significantly protectable interest in the subject matter of the litigation", "That the disposition of the action may impair or impede their ability to protect that interest" and "That their interest is not adequately represented by existing parties." See *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). Courts have interpreted these elements liberally, recognizing that intervention should be granted when a proposed intervenor's interest is directly affected by the outcome of the litigation.

Defendants argue that I lack a significantly protectable interest because I am not a party to the preliminary injunction and do not currently use WP Engine's hosting services. This assertion is both legally flawed and factually incorrect. The injunction expressly applies to WP Engine's users, customers, and related entities, all of which include me as a customer and active participant in the WordPress ecosystem. Moreover, courts have found a protectable interest where a party's professional and economic interests are at stake, particularly when they depend on access to a regulated or controlled platform. See *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (confirming that economic or property interests can justify intervention). Similarly, *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 61–62 (9th Cir. 1994), holds that **loss of business opportunities, contracts, and profits** satisfies standing requirements.

Further, disposition of this case without my participation would impair my ability to enforce the injunction and protect my access to WordPress.org resources. WP Engine's litigation focuses on its own corporate interests, and there is no guarantee that its objectives will fully align with mine, particularly regarding the enforcement of WordPress moderation policies and their retaliatory impact on individual users. *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir.

1996), establishes that even a **threat of economic harm** is sufficient for standing; my losses are actual and ongoing, making my case even stronger.

### B. Permissive Intervention Under Rule 24(b)(1)

Rule 24(b)(1) allows intervention at the Court's discretion when a proposed intervenor demonstrates "A common question of law or fact between their claims and the main action" and "That intervention would not unduly delay or prejudice the adjudication of the original parties' rights." See *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989). Courts consider permissive intervention when it promotes judicial economy and ensures that all affected parties have an opportunity to be heard.

My claims share substantial commonality with WP Engine's allegations, as they arise from Defendants' conduct in blocking access to WordPress resources, banning users, and engaging in retaliatory behavior. Allowing intervention would not introduce new or unrelated issues but would provide the Court with a fuller picture of the impact of Defendants' actions on users beyond WP Engine itself. In fact, the first time that my claims were brought before the court, was not in my own filings but in the initial declaration by Sara Jenkins on behalf of WP Engine. See *Declaration of Sara Jenkins in Support of Motion for Preliminary Injunction*, Dkt. No. 18 (Anonymized Reddit comment stating "*We lost a $14k client and Matt's response was to say he could refer clients to us if we stop working with WP Engine*").

Further, Northern District of California precedent reinforces that economic harm suffices for standing in intervention cases. In *California v. U.S. Dep't of Health & Human Servs.*, 281 F. Supp. 3d 806, 814 (N.D. Cal. 2017), the court held that plaintiffs have standing when they show a reasonable probability that a defendant's actions would cause them to lose revenue. Similarly, *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 680 (N.D. Cal. 2021), confirms that even an "identifiable trifle" of economic harm satisfies standing requirements. Lastly, *Pedroza v. Pham*, No. C-12-1341 EMC, 2012

WL 3027455 (N.D. Cal. July 24, 2012), reinforces that courts must credit economic losses asserted by pro se litigants if they are fairly traceable to the defendant's conduct.

### C. Article III Standing

To establish standing under Article III, an intervenor must show: "A concrete and particularized injury-in-fact", that "the injury is fairly traceable to the defendant's conduct" and "that a favorable judicial decision is likely to redress the injury." See *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). My economic losses—including lost business opportunities, exclusion from critical WordPress.org resources, and Defendants' retaliatory actions—clearly satisfy this standard.

The Supreme Court has repeatedly recognized that **economic harm constitutes a classic injury-in-fact**. *Clinton v. City of New York*, 524 U.S. 417, 430–31 (1998), held that deprivation of an economic benefit is a sufficient basis for standing. Similarly, *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 61–62 (9th Cir. 1994), confirmed that lost sales, profits, and business opportunities establish Article III standing.

Moreover, San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 1996), clarifies that plaintiffs do not need to demonstrate actual harm already incurred—only a direct threat of economic loss. Here, my financial damages and continued exclusion from WordPress resources exceed that threshold, making standing undeniable.

In sum, intervention is appropriate under both Rule 24(a) and Rule 24(b). The Court should grant my motion to intervene.

### IV.    ARGUMENT

### A. Defendants' Claim That My Proposed Complaint Fails to Comply with the Federal Rules Is Meritless

Defendants argue that my motion to intervene should be denied because my proposed claims purportedly fail to comply with Federal Rule of Civil Procedure 8(a) and Rule 24(c). This argument is both procedurally and substantively incorrect.

First, Rule 24(c) requires that a motion to intervene be "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Courts in this Circuit recognize that strict compliance with this requirement is unnecessary where the motion itself sufficiently describes the claims and interests at stake. See *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts have approved intervention motions without a pleading where the motions themselves sufficiently notify the existing parties of the basis for intervention."). My motion, supported by declarations and factual statements, provides ample notice of the claims and their connection to the existing litigation.

Second, Defendants argue that my claims are too vague to satisfy **Rule 8(a)**. However, at the intervention stage, I am not required to provide a fully developed complaint with every factual detail. The **Ninth Circuit liberally construes intervention pleadings**, particularly for pro se litigants, recognizing that intervention serves to protect significant interests that might otherwise go unrepresented. See *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (noting that intervention should be granted where the intervenor has a protectable interest in the litigation). Furthermore, my claims are **factually specific** and supported by documentary evidence, including prior court filings and publicly available information. My allegations of interference with my business relationships, economic harm, and exclusion from WordPress resources are clearly articulated and substantiated.

Defendants' reliance on formalistic procedural objections is merely an attempt to avoid addressing the merits of my claims. Courts routinely allow intervention where the proposed claims are sufficiently clear and related to the subject matter of the main litigation. See *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) ("The pleading requirement is not an absolute bar where the movant's claims are evident from the motion itself."). My motion satisfies the applicable legal standards, and any alleged deficiency in form should not serve as a basis to deny intervention where my substantive rights are at stake.

Accordingly, the Court should reject Defendants' arguments that my proposed claims are procedurally deficient and recognize that my motion complies with the applicable rules governing

intervention.

**B.  Defendants' Argument That I Lack Standing to Intervene is Unfounded**

Defendants argue that I lack Article III standing, claiming that I have no legally protectable interest in this case and that my intervention is unnecessary. This argument is legally incorrect and contradicts established precedent.

To establish Article III standing, a litigant must demonstrate "an injury-in-fact that is concrete and particularized", "that the injury is fairly traceable to the defendant's conduct" and "that the injury is likely to be redressed by a favorable judicial decision." See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). I meet all three of these criteria.

First, my injury-in-fact is clear and well-documented. Defendants' actions have caused direct and measurable harm to my business and professional opportunities. The Supreme Court and the Ninth Circuit have consistently recognized that lost sales, lost profits, and lost business opportunities constitute concrete economic injuries sufficient for standing. See *Clinton v. City of New York*, 524 U.S. 417, 430-31 (1998) (holding that loss of a concrete economic benefit establishes injury-in-fact); *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 61–62 (9th Cir. 1994) (economic harm from government action sufficient to confer standing). My exclusion from WordPress.org resources and Defendants' interference with my business relationships meet this standard.

Second, my injuries are **fairly traceable** to Defendants' conduct. Defendants falsely claim that my alleged losses were caused by third-party decisions or unrelated market forces. However, **causation does not require a direct one-to-one correlation** between a defendant's conduct and a plaintiff's harm; it merely requires a plausible connection. See *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (holding that a plaintiff need only show a direct threat of injury). Here, Defendants' retaliatory ban and exclusion from WordPress resources directly impaired my ability to conduct business and provide services to my clients.

Third, my injury is **redressable** by a favorable judicial decision. If this Court grants my motion to intervene and enforces the preliminary injunction's protections, I will regain access to WordPress.org resources, preventing further harm to my business and restoring lost professional

opportunities. The **Northern District of California has repeatedly held that economic harm is redressable** through court intervention. See *California v. U.S. Dep't of Health & Human Servs.*, 281 F. Supp. 3d 806, 814 (N.D. Cal. 2017) (holding that lost revenue is redressable through injunctive relief).

Finally, **Defendants' claim that I must have standing separate from WP Engine is misplaced**. While *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017), holds that an intervenor must have standing if seeking relief beyond that of an existing party, my claims align with WP Engine's interest in preventing Defendants from unlawfully interfering with WordPress-related business operations. Courts have recognized that **intervenors may assert their own legally protectable interests even when those interests overlap with an existing party's claims**. See *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (holding that economic or property interests at risk due to a defendant's conduct can justify intervention as of right).

In one line of their argument, Defendants state that "Mr. Willman did not join wordpress.org until October 10, 2024". This is a mischaracterization. Mr. Willman did register a new account on the wordpress.org website, to access the Make.Wordpress.org website, but this is far from the first time he has accessed Wordpress.org services or had an account. In fact, in attached Exhibit B, Mr. Willman can show an update made to a Wordpress website all the way back in August of 2016 using the core.wordpress.org



Defendants' argument that I lack standing is legally baseless and contradicted by well-established precedent. My **economic injuries, direct traceability, and redressability through**

**court intervention** fully satisfy Article III's requirements. Accordingly, this Court should reject Defendants' standing argument and grant my motion to intervene.

### C.  I Did Suffer Injury from Defendant's Violation of the Computer Fraud and Abuse Act ("CFAA")

At one point in their opposition, the Defendants state 'As for the CFAA, Mr. Willman alleges that Defendants unlawfully interfered with and accessed "computer systems critical to [his] business." Mot. 9. But he does not identify any purported injury that he suffered from the alleged interference or access'. However, this statement is false. As a direct response to the ban of WP Engine hosted sites, and the takeover of the ACF plugin, Redev invested over 50 hours of employee labor developing systems to ensure safe updates to plugins, themes, and the Wordpress core. This labor cost was only required because multiple client and personal sites had the ACF plugin automatically updated to Secure Custom Fields, and multiple clients were banned from Wordpress.org. Had these actions not taken place, Redev would have continued to use the default Wordpress.org repository for these needs, even if payment had been required or other changes had been made due to business realities. Thus, the cost of responding to the actions of Matt Mullenweg in accessing my computer systems are an "injury in fact" resulting from his illegal actions. Our current hourly rate quoted on all statements of work is $100 and has been since January 1st 2023 or earlier to all clients excluding a pre-existing relationship with Snap Agency that ended July, 2024 and a single offer of a bulk purchase of hours at a reduced $80 hour rate to another partner, as documented in other filings.

### D.  Defendants Libel and Trade Libel Prevent Future Sale of WooCommerce Software Development Services

As an individual with extensive experience managing ecommerce websites—including Shopify, BigCommerce, Magento, and PrestaShop—I have built a strong track record of selling and delivering WooCommerce development services to clients. In 2024 alone, through my partnership with Snap Agency, I secured and successfully completed a major WooCommerce ecommerce site build, generating $21,300 in revenue for Redev. (See Exhibit C: Invoices from Redev to Snap Agency

from 1/1/24 to 9/31/24 for Healthy Ponds website development.) Additionally, Redev has provided WooCommerce support services to multiple clients throughout 2024 and 2025.

However, Defendants' libel and trade libel have had a catastrophic impact on my ability to continue offering WooCommerce development services. By publicly and falsely accusing me of making physical threats, Matt Mullenweg, the CEO of Automattic, Inc., has directly harmed my professional reputation and business prospects. As the developers of WooCommerce and a network of vital plugins that make up a core part of the WooCommerce ecosystem, these comments by the CEO are more than just idle chatter. These false accusations constitute both defamation (libel) and trade libel, as they have damaged not only my personal standing in the industry but also the commercial viability of Redev's WooCommerce services. As a result, we have had to invest in researching and identifying alternatives, such as finding ways to embed Shopify and BigCommerce ecommerce functionality into our Wordpress sites.

## 1. Defendant's Comments are Libelous

Under California law, a claim for libel requires: (1) a false and defamatory statement, (2) publication to a third party, (3) fault amounting to at least negligence, and (4) resulting harm (*Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). A claim for trade libel requires: (1) a false statement about the quality of goods or services, (2) publication to a third party, and (3) economic harm (*Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964)). Defendants' actions **meet all of these elements**:

I. **False and Defamatory Statement**: Defendants falsely stated that I engaged in threatening conduct. Defendants falsely stated that Redev developed the website located at https://800perkins.com

II. **Publication**: The statements were made publicly by the CEO of Automattic, Inc.

III. **Negligence and Malice**: Given the context of the litigation, Defendants **knew or should have known** these statements were false. Defendants should have also verified that the website in question was developed by Redev before criticising it, as an important high profile figure in the community.

IV. **Harm to Business**: As a direct result of these statements, **my ability to secure**

**WooCommerce development contracts has been severely impaired**, and I have lost current and future revenue. I have also had to invest in researching and identifying ecommerce alternatives to WooCommerce for our Wordpress clients, a project that we have spent 24 hours on to-date.

### 2. Demonstrated Financial Harm

The courts recognize that economic damages must be proven in trade libel cases (*Polygram Records, Inc. v. Superior Ct.*, 170 Cal. App. 3d 543, 551 (1985)). The labor cost of replacing the WooCommerce software suite, that would have never other been incurred if Redev could continue to sell WooCommerce development services, is a direct economic loss as a result of the actions of Automattic and their CEO. These damages satisfy the economic damages requirement for trade libel cases.

### 3. Public Statements by a CEO Are Particularly Damaging

Defendants' false statements are not limited to accusations of misconduct but extend to direct misrepresentations and ridicule of my work, further damaging my professional reputation. On October 10th, 2024, in a public conversation, Matt Mullenweg falsely claimed that my company developed the website located at 800perkins.com and proceeded to publicly ridicule it. When he was corrected and provided with an actual example of a website we developed (https://strongeru.com/af360) he continued to disparage our work rather than acknowledge his mistake. This conduct was not only misleading but deliberately designed to undermine my credibility as a developer in the WooCommerce and Wordpress community.

Such public misstatements and disparagement from a high-profile industry executive amplify the reputational harm I have suffered. These actions constitute additional evidence of malicious intent and the ongoing damage Defendants have caused to my business and standing in the WooCommerce and WordPress development space.

California law recognizes that false statements made by high-ranking executives carry an especially damaging impact due to their perceived authority and influence (*Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600 (1976)). In this case, Matt Mullenweg's public statements have

not only harmed my reputation but have also caused industry-wide damage to my business viability.

### 4. Chilling Effect on Future Business Opportunities

Courts have held that false public statements that deter future transactions constitute actionable harm. The false accusations against me have discouraged potential clients from engaging my WooCommerce development services, as they now associate my name with the unfounded allegations made by Defendants. This chilling effect extends beyond a single lost contract; it permanently impacts my ability to work in the WooCommerce development space.

Defendants' libel and trade libel have caused substantial, demonstrable harm to my ability to sell WooCommerce development services. Through false and defamatory public statements, Automattic's CEO has damaged my professional reputation, disrupted existing business relationships, and deterred future clients from engaging my services. As a result, Defendants are liable for both libel and trade libel, and I am entitled to damages for my lost revenue and business opportunities.

### E.  Defendants' Claims That My Monopolization, Attempted Monopolization, Illegal Tying, Unfair Competition, and False Advertising Claims Are Insufficient is Incorrect

Defendants argue that I have not sufficiently alleged claims for monopolization, attempted monopolization, illegal tying, unfair competition, and false advertising regarding WordPress and its related services. This argument mischaracterizes the facts and ignores well-established antitrust and competition law principles.

Under Section 2 of the Sherman Act, monopolization requires possession of monopoly power in a relevant market and willful maintenance of that power through anticompetitive conduct. United States v. Grinnell Corp., 384 U.S. 563, 570–71 (1966). Attempted monopolization requires a specific intent to monopolize, anticompetitive conduct, and a dangerous probability of success in achieving monopoly power. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).

Defendants—through Automattic, Inc., its control over WordPress.org, and its influence over WordPress Foundation assets—have engaged in anticompetitive conduct designed to eliminate competition in the WordPress ecosystem. By blocking access, restricting participation, and using its

control over the WordPress ecosystem to silence and retaliate against competitors and critics, Defendants have engaged in exclusionary practices that harm competition. Automattic's actions directly impact competitors and third-party businesses that rely on the WordPress ecosystem, including plugin developers, hosting companies, and independent service providers. By leveraging its control over WordPress.org and the official plugin directory, Automattic has maintained its dominance while suppressing competition, in violation of antitrust laws.

Illegal tying occurs when a dominant firm conditions the sale or use of a product on the purchase or adoption of another product, thereby restricting competition. See *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992). In this case, the illegal tying action was conditioning referrals of new business "referrals" with the adoption of the Automattic affiliate program and the ending of relations with WP Engine. Courts have consistently found tying arrangements unlawful when they involve leveraging monopoly power in one market to distort competition in another. Defendants use their control over key WordPress resources to create barriers against competitors, limiting market choice and distorting fair competition.

California's Unfair Competition Law (UCL) broadly prohibits any unlawful, unfair, or fraudulent business act or practice. See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). Automattic's actions—including retaliatory exclusions from WordPress resources, preferential treatment of its own products, and the suppression of competing businesses—constitute unfair competition under California law. Moreover, Automattic's ability to dictate market access through its control over WordPress.org creates an anticompetitive environment where developers and businesses must either comply with its directives or risk being excluded from essential WordPress resources. This places independent developers and service providers at an unfair disadvantage, forcing them to operate under terms dictated by a single dominant player.

Under *California Business & Professions Code § 17500*, false advertising claims require a false or misleading statement made in connection with the marketing of goods or services that is likely to deceive consumers. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). Automattic, through WordPress.org and affiliated communications, has engaged in deceptive marketing practices by

misrepresenting the openness and neutrality of WordPress.org while using it to favor Automattic-controlled services. Matt Mullenweg also engaged in deceptive marketing practices when he misrepresented his software "Secure Custom Fields" as an update to the software "Advanced Custom Fields" installed on a website belonging to Mr. Willman. This resulted in unnecessary labor expenses to mitigate and remediate this unwanted change, which are direct financial damages. These misleading statements have deceived both consumers and businesses, leading to an unfair marketplace where Automattic's services are given an artificial advantage through deceptive positioning rather than legitimate market competition.

Defendants' arguments against my antitrust, unfair competition, and false advertising claims fail to acknowledge the substantial legal precedent supporting such claims in cases involving platform monopolization and anti-competitive conduct. Automattic's dominant control over WordPress.org and its exclusionary practices demonstrate clear monopolization, attempted monopolization, illegal tying, and unfair competition. Additionally, Automattic's misleading statements about its role in the WordPress ecosystem constitute false advertising, further harming competition.

Accordingly, my claims are legally and factually sound, and the Court should reject Defendants' assertion that these claims are insufficient.

### F.    I Am Entitled to Intervene as of Right Under Rule 24(a)(2)

Defendants argue that I am not entitled to intervene as of right because I lack a significantly protectable interest in this litigation and that WP Engine adequately represents any interests I may have. This argument is legally deficient and contradicts the standards set forth by the Ninth Circuit for intervention.

Defendants' opposition selectively misrepresent the nature of my relationship with WP Engine. Much of Defendant's arguments rely on the definition of an affiliate, and whether an affiliate is covered by the terms of the injunction, despite my status as an affiliate not being the primary justification used to state why the injunction would apply to me. It is my status as a customer and user

of WP Engine, and as someone whose own business relationship with WP Engine was actively courted in an extortionate manner, that I refer to specifically in my filings.

Defendants also claim that, because Redev no longer recommends WP Engine services to our customers, that means that we must by definition not have a business relationship with WP Engine. However, from the very outset of my attempts to discuss the issue with Matt Mullenweg, I have demonstrated that my clients are in fact direct customers of WP Engine. Publicly available DNS data will show that the webpage located at https://strongeru.com/af360 , referenced in my first conversation with Matt Mullenweg as an example of our latest work on October 10th, is in fact hosted with WP Engine to this very day. As the publicly recognized administrator of the main Stronger U website, I do have administrative access to the web portal and properties for this site.



Under Rule 24(a)(2), an applicant is entitled to intervene as of right when they demonstrate "A **significantly protectable interest** in the subject matter of the litigation", "That the disposition of the action may **impair or impede** their ability to protect that interest" and "That their interest is **not adequately represented** by existing parties."

### 1.  I Have a Significantly Protectable Interest in This Case

A significantly protectable interest exists where a proposed intervenor asserts a legally

protected right that is directly affected by the litigation. See *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). Courts have repeatedly found that economic interests, including loss of revenue, business opportunities, and reputational harm, constitute protectable interests. See *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 61–62 (9th Cir. 1994) (holding that lost profits and lost business relationships satisfy the significantly protectable interest standard).

Here, Defendants' actions—including their interference with my business relationships, wrongful exclusion from WordPress.org resources, and retaliatory enforcement of community guidelines—have directly harmed my ability to conduct business. As demonstrated in my prior filings and supported by evidence, these harms are not speculative, but are actual and ongoing economic injuries.

### 2. My Interests Will Be Impaired If I Am Not Allowed to Intervene

Defendants argue that my intervention is unnecessary because WP Engine is already litigating this matter. However, the Ninth Circuit has held that an intervenor need only show that the disposition of the case may impair their ability to protect their interests. See *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (finding impairment where disposition of the case could make it more difficult for the intervenor to assert its rights).

The preliminary injunction in this case is designed to protect **WP Engine's customers, affiliates, and related entities** from Defendants' actions. If I am not allowed to intervene, I risk being excluded from any relief granted by the Court, **despite being directly harmed by Defendants' conduct.** Defendants have taken a position that my interests do not fall within the scope of the injunction, and absent my participation, the final judgment in this case could effectively foreclose my ability to seek redress for the harm I have suffered.

Furthermore, as

### 3. WP Engine Does Not Adequately Represent My Interests

The burden of showing inadequate representation is **minimal**. The proposed intervenor must only show that the representation of their interest "may be" inadequate. See Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003) (explaining that the burden of showing inadequate representation is

"satisfied if the applicant shows that representation of its interests may be inadequate").

WP Engine's primary concern is the corporate harm caused by Defendants' actions. My interest, however, is fundamentally different—I am an individual business owner whose reputation, client relationships, and professional standing have been directly harmed by Defendants' misconduct. WP Engine has no incentive to advocate for my specific injuries, and nothing in the existing litigation guarantees that my rights will be fully protected absent intervention.

Courts routinely allow intervention where the existing parties may prioritize their own interests over those of the intervenor. See *Baker v. Wade*, 743 F.2d 236, 241 (5th Cir. 1984) (finding inadequate representation where existing parties had different objectives than the proposed intervenor). WP Engine's litigation strategy focuses on its corporate standing and operations, whereas I seek relief for the personal and professional harm I have endured. This distinction alone satisfies the requirement that my interests may not be adequately represented.

Beyond these concerns, my own skills and abilities bring a unique perspective to this case that WP Engine could not bring on its own. As an SEO specialist with over a decade of experience, I have thousands of hours of experience crawling and scraping websites. I have already started to develop customized search parameters and tooling to facilitate the widespread identification and documentation of websites impacted by the unlawful "SCF" supply chain attack against Advanced Custom Fields. While much of the work surrounding this is outside of the scope of this proceeding, it is likely that these tools could prove vital in properly evaluating the scope and scale of the damage caused to the customers of WP Engine.

### G. Permissive Intervention is Warranted Under Rule 24(b)(1)

Even if the Court determines that intervention as of right is not applicable, permissive intervention is appropriate under **Rule 24(b)(1)**. Defendants' opposition fails to provide a compelling reason to deny my motion under this standard.

#### 1. My Claims Share Common Questions of Law and Fact

Under Rule 24(b)(1)(B), permissive intervention is appropriate when an applicant's claims share a common question of law or fact with the main action. Courts have repeatedly held that where

the proposed intervenor's claims arise from the same facts and involve overlapping legal theories, intervention should be granted. See Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1110 (9th Cir. 2002) (holding that permissive intervention is appropriate where intervenors raise legal and factual issues similar to those of existing parties).

My claims are deeply intertwined with the main litigation, as they stem from Defendants' wrongful interference with access to WordPress.org resources and their retaliatory actions. WP Engine's lawsuit challenges Defendants' blocking of users, exclusionary actions, and improper control over community resources. My claims directly mirror and expand upon these issues, particularly in how Defendants' actions have uniquely harmed individual professionals and business owners who rely on WordPress.org access.

### 2. My Participation Will Not Unduly Delay or Prejudice the Existing Litigation

Defendants argue that allowing my intervention would cause undue delay and complicate proceedings. This assertion is incorrect and speculative. Courts have consistently rejected arguments that permissive intervention should be denied based solely on the potential for additional claims or evidence, so long as the intervention does not fundamentally alter the nature of the litigation. See UMG Recordings, Inc. v. Bertelsmann AG, 222 F.R.D. 408, 415 (N.D. Cal. 2004) (finding that concerns about delay were insufficient to deny intervention where the claims were closely related to the main litigation).

Moreover, granting intervention would not cause delay, as my participation aligns with the existing claims and would contribute to a more comprehensive resolution. As someone with a long history as an "agency partner" for a variety of hosting companies, and as the primary point of contact for several current/former partner agencies of WP Engine, I hold a unique ability to defend the interests of "partners" as named in the preliminary injunction. As a user of the Advanced Custom Fields free plugin, and as a contractor and consultant for multiple companies hosting with WP Engine, I hold a unique ability to defend the interests of "users" as named in the preliminary injunction as well. The same goes for "customers" of WP Engine, as a licensee of the paid ACF Pro

plugin. With this range of experience with the products and services of WP Engine, I hold a unique position of being able to represent all three named parties in the preliminary injunction above and beyond WP Engine themselves. Such a position helps maintain judicial economy and eliminates the need for further, unnecessary litigation.

Not only does my wealth of experience working with WP Engine give me unique standing in this case, so too does my position as the referral source for, and currently contracted administrator of, a website hosted by WP Engine. When Matt Mullenweg attempted to convince me to end my ties with WP Engine to come and be an affiliate of Automattic, using the hook of potential development referrals, this was an active attempt to bring my customers and clients with me. Throughout my discussion with Matt, I made it clear that I was specifically someone who refers my clients to hosts and makes money through affiliate revenue, this was the only tie to WP Engine I alleged during this conversation. At the time it was not clear to me if I could state that my client Stronger U was hosted by WP Engine, and it is only because I can point to public data now that I can do so today in this filing. Despite this, Matt would respond by implying that I had lied and that there was some moral question about what I had done.

Thread                                                                    ✕

Michael Willman  Oct 10th, 2024 at 12:55 AM
Hey @matt, I wanted to let you know that I willfully clicked your checkbox on the new account registration page. That is despite being an indisputable WP Engine affiliate, as I have been part of their affiliate program for several years. I just wanted to send over my legal details so you know where to send any demand letters or lawsuits.

Michael Willman
CEO - Website Redev
5 Mecca Lane
Washington, ME 04574
michael@websiteredev.com

👍 2   😕

38 replies

matt  Oct 10th, 2024 at 1:19 AM
I haven't filed any lawsuits, only WPE has. 🙂

It's your choice based on your ethics and principles to check the box or not. You chose to despite considering yourself an affiliate? That's fine. People lie all the time. You can still use WordPress.org just fine.

I checked out your site, I think it's amazing you've built a business with 8 employees (distributed!) building WordPress sites.

You mention Jonathan Perkins on your home page, you should link to your clients! I had to Google him to find the site. It loads super fast, just like yours. One suggestion I'd make for their site is that on desktop, it's common for users to "click" a dropdown menu, which in your implementation adds a # and kind of disappears the menu in an inconsistent way. I've attached a quick video to show what I mean. On mobile it works great, though.

I hope you're very successful and can scale even beyond what you've achieved already.

People are always asking me for developer referrals and I have a lot of friends in Maine, if you ever switch off WPE let me know so I can send them your way.

Welcome to the WordPress community! This #meta channel is really more for improving the website. A message like this would probably be better as a DM in the future, especially since it includes personal details.

He would then attempt to compel me to come work with Automattic as an affiliate, as a way of regaining the work we had lost. This represents an attempt to not only interfere with my own contracts with my client, but with my clients hosting contracts with WP Engine. On my part, there could only be two ways to comply with his request. I would have to either convince my client to leave WP Engine, or I would have to stop working with them altogether. Only one of those was truly in my control, as I have no say over whether my client leaves WP Engine. His ultimate goal in this was to gain business for his own hosting business or those of his closest partners, at the expense of WP Engine. Therefore, despite claims by Defendants that my injuries did not harm WP Engine, and that I thus lack standing as a party to the injunction; the reality is that there is a direct link between myself and WP Engine as mutual victims of the Defendants' extortionate attempts. By attempting to convince me to stop working with WP Engine, he harmed both of us equally.

My participation will not introduce new legal theories unrelated to the core dispute. Instead, it will provide additional context and evidence regarding the retaliatory impact of Defendants' actions. Furthermore, given that my motion is timely and aligns with the current litigation schedule, there is no risk of undue disruption.

### 3.   Judicial Economy Supports Granting Intervention

Permissive intervention is also favored where it promotes judicial efficiency and economy. See *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (noting that permissive intervention should be granted where it helps avoid multiple suits on the same issues). If I were to bring my claims in a separate lawsuit, it would result in duplicative litigation, unnecessary expenditure of judicial resources, and the risk of inconsistent rulings.

By allowing intervention, this Court would ensure that all affected parties and relevant claims are addressed in a single proceeding. Defendants' misconduct has harmed multiple stakeholders, and my claims provide essential insight into the broader impact of their actions beyond WP Engine's corporate interests. Including my claims in this case would facilitate a comprehensive resolution

rather than piecemeal litigation in separate forums.

Because my claims share common legal and factual issues with the main action, my intervention would not cause undue delay, and my participation would promote judicial efficiency, permissive intervention is warranted under Rule 24(b)(1). Accordingly, I respectfully request that the Court grant my motion to intervene.

## V.    CONCLUSION

For the foregoing reasons, I respectfully request that the Court grant my motion to intervene. Defendants' opposition relies on mischaracterizations of my legal standing, my relationship with WP Engine, and the impact of Defendants' retaliatory actions. As demonstrated, I have Article III standing, a significantly protectable interest, and claims that share common legal and factual questions with the main litigation.

Intervention as of right is warranted under Rule 24(a)(2) because Defendants' misconduct has directly harmed my business and professional opportunities, and WP Engine does not adequately represent my distinct interests as an individual professional and business owner. In the alternative, permissive intervention under Rule 24(b)(1) is justified because my claims arise from the same factual circumstances, do not introduce unnecessary complexity, and would promote judicial economy by consolidating related issues into a single proceeding.

Denying intervention would unfairly exclude a directly impacted party from proceedings that determine the legality of Defendants' exclusionary actions. My ability to enforce my rights and seek relief for Defendants' misconduct would be irreparably harmed if I were forced to litigate these issues separately, leading to inefficient and duplicative proceedings.

Accordingly, I request that the Court grant my motion to intervene and allow my participation in this case.

Respectfully submitted,


Date: January 31st, 2025


By: /s/ *Michael Willman*

Michael Willman