ROSEMARIE T. RING, SBN 220769
  rring@gibsondunn.com
JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

ORIN SNYDER *(admitted pro hac vice)*
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc. and
Matthew Charles Mullenweg*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE PLAINTIFF'S AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:    June 5, 2025<br>Time:    2:00 p.m.<br>Place:    Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 2

       A.    The Antitrust Claims Should Be Dismissed (Counts 12–15). ...................... 2

             1.    WPE's Proposed Aftermarkets Are Implausible, Leaving Only the
                   Proposed Foremarket for Web Content Management Systems. ....................... 2

             2.    WPE Fails to Allege Market Power in Any Proposed Market. ....................... 3

             3.    WPE Fails to Allege Any Anticompetitive Conduct. ...................................... 4

             4.    WPE Fails to Allege Any Unlawful Tying. ...................................................... 5

       B.    The Attempted Extortion Claim Should Be Dismissed (Count 4). ............... 6

       C.    The CFAA Claims Should Be Dismissed (Counts 3 & 19). ......................... 7

             1.    There Is No Section 1030(a)(7) Computer Extortion Claim. .......................... 8

             2.    There Is No Section 1030(a)(5) Damage-Without-Authorization Claim. ........ 8

       D.    The Defamation Claims Should be Dismissed (Counts 9–11). .................... 10

             1.    The "Commercial Speech Exemption" to the Anti-SLAPP Statute Does
                   Not Apply. ...................................................................................................... 10

             2.    Defendants Satisfy the First Prong of the Anti-SLAPP Analysis
                   Because All of the Alleged Defamatory Statements Concern Matters of
                   Public Interest. ............................................................................................... 10

             3.    Defendants Satisfy the Second Prong of the Anti-SLAPP Analysis and
                   Establish That WPE Fails to State Any Claim for Defamation. ..................... 11

       E.    The Promissory Estoppel Claim Should Be Dismissed (Count 6). ............... 15

       F.    The UCL "Unlawful" and "Unfair" Claims Should be Dismissed (Count 5). ........... 17

       G.    The Claims for Interference with Economic Relations (Count 2), Trademark
             Misuse (Count 16), and Unjust Enrichment (Count 20) Should Be Dismissed. ......... 17

       H.    Counts 3, 5, 9–11, 14–15, and 17–20 Against Automattic Should Be Dismissed
             Because WPE Does Not Allege Any Basis for Vicarious Liability. ........................... 18

III.   CONCLUSION ........................................................................................................... 18

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ......................................................................................5

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*,
108 F.3d 1147 (9th Cir. 1997) ......................................................................................5

*Anthem Sports, LLC v. Under the Weather, LLC*,
320 F. Supp. 3d 399 (D. Conn. 2018) .........................................................................13

*Baker v. Los Angeles Herald Examiner*,
42 Cal.3d 254 (1986) ...................................................................................................11

*Barber v. DSW Inc.*,
2016 WL 11954427 (C.D. Cal. Apr. 4, 2016) .............................................................18

*California Spine & Neurosurgery Inst. v. Oxford Health Insurance Inc.*,
2019 WL 6171040 (N.D. Cal. Nov. 20, 2019) ............................................................16

*Cel-Tech Commc'n Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .................................................................................................17

*Cochran v. NYP Holdings, Inc.*,
58 F. Supp. 2d 1113 (C.D. Cal. 1998) .........................................................................13

*Coronavirus Rep. v. Apple, Inc.*,
85 F.4th 948 (9th Cir. 2023) .......................................................................................3, 4

*CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
2023 WL 2468742 (C.D. Cal. Feb. 23, 2023) ...............................................................5

*Dean v. Friends of Pine Meadow*,
21 Cal. App. 5th 91 (2018) ..........................................................................................10

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ..........................................................................................3

*Eros Tours & Travel, Inc. v. Infinitywaves, LLC*,
2014 WL 12591919 (C.D. Cal. Dec. 9, 2014) .............................................................12

*Evans Hotels v. Unite Here Loc. 30*,
433 F. Supp. 3d 1130 (S.D. Cal. 2020) .........................................................................7

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006) ...................................................................................................6

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) ......................................................................................12

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
ii

*Freecycle Network, Inc. v. Oey*,
    505 F.3d 898 (9th Cir. 2007)....................................................................................................13

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020)...................................................................................................17

*Genius Lifesciences Inc. v. Lannett Co., Inc.*,
    378 F. Supp. 3d 823 (N.D. Cal. 2019) .....................................................................................5

*Global Plasma Sols, Inc. v. Iee Indoor Env't Eng'g*,
    600 F. Supp. 3d 1082 (N.D. Cal. 2021) .................................................................................12

*Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.*,
    723 F.3d 1019 (9th Cir. 2013)..............................................................................................2, 5

*Harrison Aire, Inc. v. Aerostar Int'l, Inc.*,
    423 F.3d 374 (3d Cir. 2005)....................................................................................................4

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) .............................................................................................11, 12

*HGCI, Inc. v. Luxx Lighting, Inc.*,
    2020 WL 5913851 (C.D. Cal. Sept. 10, 2020).......................................................................13

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ...........................................................................................10, 16

*Hoang v. Tran*,
    60 Cal. App. 5th 513 (2021) ...................................................................................................11

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988)....................................................................................................................6

*Int'l Airport Ctrs., L.L.C. v. Citrin*,
    440 F.3d 418 (7th Cir. 2006)....................................................................................................9

*Issa v. Applegate*,
    31 Cal. App. 5th 689 (2019) ...................................................................................................13

*Klein v. Earth Elements, Inc.*,
    59 Cal. App. 4th 965 (1999) ...................................................................................................17

*Klein v. Facebook, Inc.*,
    580 F. Supp. 3d 743 (N.D. Cal. 2022) .....................................................................................5

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)..................................................................................................................2

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)........................................................................................6, 7, 17

*Luxpro Corp. v. Apple Inc.*,
    2011 WL 3566616 (N.D. Cal. Aug. 12, 2011)........................................................................12

Gibson, Dunn &
Crutcher LLP

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009)................................................................................7, 9

*Mersnick v. US Protect Corp.*,
   2007 WL 2669816 (N.D. Cal. Sept. 7, 2007) ...............................................................17

*MLW Media LLC v. World Wrestling Ent., Inc.*,
   2023 WL 4053802 (N.D. Cal. June 15, 2023) ...............................................................3

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/& Am. Home Prods. Corp.*,
   850 F.2d 904 (2d Cir. 1988)........................................................................................5

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014) ...........................................................................9

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...............................................................13, 14

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013).....................................................................................4

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ...................................................................................14

*Pac. Exp., Inc. v. United Airlines, Inc.*,
   959 F.2d 814 (9th Cir. 1992)........................................................................................4

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995)..............................................................................12, 14

*Rebel Oil Co., Inc. v. Atl .Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995)..................................................................................3, 4

*Sateriale v. RJ Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012)......................................................................................16

*Simpson Strong-Tie Co. v. Gore*,
   49 Cal. 4th 12 (2010) ................................................................................................10

*SkyHop Techs., Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) ....................................................................................8

*SmileDirectClub, LLC v. Berkely*,
   2019 WL 1091339 (C.D. Cal. Jan. 22, 2019) ...............................................................7

*Snapkeys, Ltd. v. Google LLC*,
   2020 WL 6381354 (N.D. Cal. Oct. 30, 2020)...............................................................17

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006)........................................................................................7

*Stevenson v. Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*,
   138 Cal. App. 4th 1215 (2006) ...................................................................................18

*Telesaurus VPC, LLC v. Power,*
    623 F.3d 998 (9th Cir. 2010)..................................................................................9

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004)................................................................................8

*Thompson v. Oracle Corp.,*
    574 F. Supp. 3d 738 (N.D. Cal. 2021) .................................................................16

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995).................................................................................14

*United States v. Nosal,*
    676 F.3d 854 (9th Cir. 2012) (en banc)..................................................................8

*United States v. Willis,*
    476 F.3d 1121 (10th Cir. 2007)...........................................................................10

*Veoh Networks, Inc. v. UMG Recordings, Inc.,*
    522 F. Supp. 2d. 1265 (S.D. Cal 2007) ...............................................................18

*Wilbanks v. Wolk,*
    121 Cal. App. 4th 883 (2004) .............................................................................12

*Williams v. Chase Bank/JP Morgan, N.A.,*
    2015 WL 1843951 (N.D. Cal. Apr. 8, 2015) .......................................................16

*Workgroup Tech. Partners, Inc. v. Anthem, Inc.,*
    2016 WL 424960 (D. Me. Feb. 3, 2016)...............................................................8

*Wozniak v. YouTube, LLC,*
    100 Cal. App. 5th 893 (2024) .............................................................................17

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC,*
    774 F.3d 1065 (6th Cir. 2014)...............................................................................9

**Statutes**

18 U.S.C. § 1030...........................................................................................8, 9, 10

## I.     INTRODUCTION

WPE's admonishment in its opposition that "actions have consequences" is ironic, since this lawsuit is WPE's attempt to avoid the consequences of (and build a false narrative around) its own actions which pose an existential threat to the WordPress open-source project. This context is part of Matt Mullenweg's WordCamp 2024 keynote and September 26, 2024 YouTube livestream interview, which are incorporated by reference into WPE's complaint and critical to analyzing WPE's claims.

Long before WordCamp 2024, WPE and Defendants had been discussing a deal to address concerns that, under the control of private equity, WPE (1) had become a "Taker" in the WordPress community, maximizing its own profits by free-riding on the contributions of "Makers" who invest in the WordPress open-source software, and (2) was using trademarks in increasingly confusing ways. Believing that WPE was stringing them along, Mullenweg presented WPE with a choice: close a deal to address the Maker-Taker and trademark issues or Mullenweg would share his concerns with the WordPress community. WPE describes the deal as a demand to pay Automattic a trademark royalty, but WPE also had the option to commit WPE employees to work on the WordPress open-source software in lieu of any payment to Automattic—i.e., to be a Maker. WPE rejected both options and Mullenweg gave his keynote, explaining: "I've been trying to talk to Heather [WPE CEO] and Lee [Silver Lake Managing Director]. I did not want to give this presentation. I was literally over there calling them, saying like, hey, are you all going to step up? Are you going to fix this? And yeah, that was scary for me. And, by the way, it's scary going against the $102 billion assert[] management." Suppl. RJN, Ex. 4 at 18:3–9.

In response, WPE threatened litigation, after which its access to WordPress.org was revoked and Mullenweg continued sharing his concerns more broadly. WPE then filed this lawsuit, falsely claiming surprise at the Maker-Taker and trademark concerns; launching a character assassination of Mullenweg by accusing him of attempted extortion, hacking, and defamation; and asserting antitrust theories that cannot be squared with the reality that, in open-source projects like WordPress, reining in Takers, like WPE, who have the means to give back and simply choose not to promotes competition by ensuring Makers are not disadvantaged.

Gibson, Dunn & Crutcher LLP

Defendants seek dismissal of claims based on alleged misconduct falling into five categories: (1) *Demand* (WPE to close deal addressing Maker-Taker and trademark issues or Mullenweg shares concerns with the WordPress community); (2) *Mullenweg's statements* (expressing view that WPE is a taker, infringes trademarks, and removed essential WordPress features from its services); (3) *WordPress.org statements* (excerpts from WordPress.org, speeches, and blogs cobbled together into a supposed promise of unconditional access to WordPress.org); (4) *WordPress.org access* (revocation of WPE's access to WordPress.org); and (5) *ACF plugin* (forking the ACF plugin).

For now, Defendants must live with WPE's telling of the facts and thus have not moved to dismiss all claims. But even WPE's self-serving allegations undermine its attempt to expand its own dispute with Defendants by twisting principles of community, contribution, and open dialogue into supposed claims for monopolization, extortion, defamation, hacking, and promissory estoppel. Those claims should be dismissed so that this case can focus on the only actual legal disputes between the parties: whether WPE infringed trademarks and whether Defendants interfered with WPE's business.

## II.    ARGUMENT

### A.    The Antitrust Claims Should Be Dismissed (Counts 12–15).

Efforts to stop free-riding on the WordPress open-source project are essential to "the longevity of WordPress" and therefore *promote* competition with other web content management systems. FAC ¶ 43 n.12. Indeed, antitrust laws *encourage* efforts to prevent "free-riding," *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1026 (9th Cir. 2013), as they increase "interbrand competition," which is "'the primary purpose of the antitrust laws,'" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007) (quotation omitted). So, it is no surprise that WPE cannot allege facts to support a plausible inference that any of the basic elements of an antitrust claim exist in this case—no relevant market, no market power, no anti-competitive conduct.

#### 1.    WPE's Proposed Aftermarkets Are Implausible, Leaving Only the Proposed Foremarket for Web Content Management Systems.

According to WPE, there is a "foremarket" for *web content management systems* ("WCMS") in which WordPress open-source software is one of many options, and three "aftermarkets" limited to WordPress: (1) WordPress hosting services; (2) WordPress custom field plugins; and (3) WordPress plugin distribution. FAC ¶ 191. For each of these single-brand aftermarkets, WPE must allege facts to

show, among other things, that users who chose WordPress in the "foremarket" did not know they were also choosing WordPress "aftermarkets." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 977–78 (9th Cir. 2023). WPE does not dispute that such "aftermarket restrictions" were well known to users choosing WordPress software, dooming its claims. Instead, WPE argues that Defendants' "ability to charge fees [and] block access to wordpress.org, and Mullenweg's claimed control of source code and trademarks" were unknown to these users. Opp. 3. But those are categorically *not* "aftermarket restrictions" because they are not the mechanisms by which WordPress users are "locked in" to WordPress-compatible hosting, plugins, and plugin distribution. *See Epic*, 67 F.4th at 977, 980. And WPE's suggestion that aftermarket factors articulated in *Epic* do not apply here, Opp. 2, is wrong. *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 956 (9th Cir. 2023) (affirming dismissal on *Epic* factors).

## 2.    WPE Fails to Allege Market Power in Any Proposed Market.

For the proposed *WCMS foremarket*, WPE relies on percentages—"over 43% of all websites" and, "of all websites built using a known web content management system, more than 64%"—and the conclusory allegation that "Defendants claim to control" WordPress. FAC ¶ 204. But WPE admits that these percentages represent websites using WordPress *open-source software*, which WPE also admits is freely available to anyone from more than one source and therefore does not say anything about either Defendants' market share. *Id.* ¶ 49. In fact, neither Defendant is even a participant in the *WCMS market—i.e.*, they do not compete against other WCMS such as Craft CMS, Drupal, Joomla, and TYPO3. *Id.* ¶ 30. Automattic, like WPE, offers hosting services to a subset of the websites represented in the percentages who have chosen WordPress over other WCMS. FAC ¶ 10. And WPE does not allege any facts to suggest that Automattic or Mullenweg, through his ownership and control of WordPress.org, "controls" the WordPress software used by all of the websites represented in the percentages so as to have "power to control prices or exclude competition" (*i.e.*, market power) in the WMCS market. *MLW Media LLC v. World Wrestling Ent., Inc.*, 2023 WL 4053802, at *4 (N.D. Cal. June 15, 2023). Moreover, the percentages are for "all websites" and therefore treat a billion-dollar online retailer as being equal to a grandmother's knitting blog, as opposed to overall sales or revenue which would account for these differences which the Ninth Circuit has endorsed as the appropriate metric. *See, e.g.*, *Rebel Oil Co., Inc. v. Atl .Richfield Co.*, 51 F.3d 1421, 1437 (9th Cir. 1995).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
3

For the proposed *WordPress-only aftermarkets*, WPE argues that the alleged "royalty" demand, revocation of access to WordPress.org, and ACF plugin fork are "direct evidence" of Defendants' market power because that alleged conduct raised prices and created service interruptions for WPE. Opp. 5. As an initial matter, the alleged "royalty" demand was for WPE's use of *trademarks* and thus not a *price* (let alone a supracompetitive price) in the proposed aftermarkets. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) (even "a monopolist generally has no duty to share (or continue to share) its intellectual . . . property with a rival"). And only the ability to *successfully* raise prices above competitive levels shows monopoly power, *id.* at 1070, and WPE did not pay. More fundamentally, WPE admits that the alleged conduct caused its customers to switch to WPE's competitors in the aftermarkets, not just to Automattic, FAC ¶¶168–80, 204, which undermines any claim that Defendants' were able to restrict overall output in the proposed aftermarkets and therefore disposes of WPE's "direct evidence" argument. *See Rebel Oil*, 51 F.3d at 1434 (("[D]irect evidence" of monopoly power includes "evidence of restricted output and supracompetitive prices"); *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005) (monopoly power is "the power to charge a price higher than the competitive price without inducing so rapid and great an expansion of output from competing firms as to make the supracompetitive price untenable").

### 3.    WPE Fails to Allege Any Anticompetitive Conduct.

WPE also fails to plausibly allege "anticompetitive conduct," or actions which "harm[] the competitive process as a whole, rather than the success or failure of individual competitors." *Coronavirus Rep.*, 85 F.4th at 954–55. The alleged demands on *WPE*, statements about *WPE*, promises of unconditional access to WordPress.org for *WPE*, interference with *WPE's* customers, and forking of *WPE's* ACF plugin are repackaged as "anticompetitive." *See* FAC ¶ 383. But "[t]he Sherman Act was 'not designed, and has never been interpreted, to reach all business practices, unfair or otherwise, damaging to individual companies.'" *Pac. Exp., Inc. v. United Airlines, Inc.*, 959 F.2d 814, 818 (9th Cir. 1992) (citation omitted). WPE does not, and cannot, allege facts showing that the alleged conduct impacts anyone but WPE, which is not a participant in the only market plausibly alleged in this case (WCMS foremarket). *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (antitrust plaintiff must have "suffered its injury in the market where competition is being restrained").

Gibson, Dunn & Crutcher LLP

Moreover, the alleged demands and opinions about WPE and supposed interference with WPE's customers were directed at addressing WPE's "free-riding" and trademark infringement, which promotes competition. *Gorlick*, 723 F.3d at 1026. Mullenweg's statements about WPE were his opinions and not "plainly false." *See infra* pp. 13–14. And revoking WPE's access to WordPress.org also does not suffice because (a) there is no duty "to provide free aid and assistance to a competitor," *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, 2023 WL 2468742, at *2–4 (C.D. Cal. Feb. 23, 2023); and (b) WPE does not even attempt to satisfy the elements for a refusal to deal claim, *see* Mot. at 7.

Finally, WPE's arguments about "pretext" and "deception," Opp. 8, which collapse into the supposed promises of unconditional access to WordPress.org, do not overcome the "presumption" that alleged misstatements have a "de minimis" effect. *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/& Am. Home Prods. Corp.*, 850 F.2d 904, 916 (2d Cir. 1988) (cleaned up). WPE's reliance on the Ninth Circuit's ruling in *Harcourt* as limiting that presumption to disparagement, Opp. 5, ignores that the *Harcourt* framework was based on *Ayerst*, a case concerning false advertising, *see Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997), and that courts routinely apply *Harcourt* to statements by supposed monopolists about their own products, *see, e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022) (applying *Harcourt* to Facebook's allegedly false statements about its privacy practices); *Genius Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 827, 841 (N.D. Cal. 2019) (similar). WPE plainly fails to meet the *Ayerst/Harcourt* standard for several reasons, *see* Mot. 6, including that WordPress *software* (which is distinct from WordPress.org) *is* free and open for use by anyone, FAC ¶ 49, and limitations on access to WordPress.org were published on the website, *see infra* § II.E.

### 4.    WPE Fails to Allege Any Unlawful Tying.

WPE's only response to its admitted failure to allege the requisite "tie," because no one is required to purchase any product to access the purported WordPress plugin distribution aftermarket, is that it asserts a "negative tie"—wherein Defendants use their market power in the purported WordPress plugin distribution aftermarket to exclude WPE from the purported WordPress hosting and WordPress plugin aftermarkets. Even if that theory were alleged in the FAC (which it is not), and even if the purported aftermarkets were properly pleaded (which they are not), the FAC debunks this new theory

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
5

because WPE's customers had direct access to WordPress plugins through WordPress.org, even if they could not use WordPress.org's plugin distribution channels, *see* FAC ¶¶ 117, 383. WPE also fails to allege market power because, as discussed above, WPE does not allege the purported WordPress plugin distribution aftermarket (the supposed tying market) is a distinct market for antitrust purposes or that Defendants have market power in that or any other plugin distribution market. *See supra* at pp. 2–4.

**B.      The Attempted Extortion Claim Should Be Dismissed (Count 4).**

WPE seizes on ambiguities in the case law to argue it can pursue a claim for attempted extortion. Even assuming such a claim is cognizable, WPE does not state any claim for relief. *First*, WPE's assertion that it "unquestionably had a right to be free from its competitor launching a 'nuclear war' against it," Opp. 13, is fundamentally at odds with the First Amendment. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51 (1988) (freedom of speech involves "vehement, caustic, and sometimes unpleasantly sharp attacks"). Demanding that WPE close a deal to resolve a trademark dispute or else Mullenweg would share his strong views about the harm and confusion WPE is inflicting on the WordPress community, even if phrased as going "nuclear" on WPE, is not something WPE had "a pre-existing right to be free from." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014); *see* Opp. 12.

California's extortion statutes are specific about what constitutes a wrongful threat as involving a "threat to accuse the victim of a crime or 'expose, or impute to him . . . any deformity, disgrace or crime' (Pen. Code, § 519)." *Flatley v. Mauro*, 39 Cal. 4th 299, 332 n.16 (2006). Vague rhetorical hyperbole about launching a "nuclear war" against a company bears no resemblance to the concrete threats addressed in the case law. *See Flatley*, 39 Cal. 4th at 332 n.16; *Levitt*, 765 F.3d at 1133 (extortion cannot be based on "fear induced by threat to do a lawful injury"). WPE argues that Defendants admit WPE's access to WordPress.org was not revoked due to Guideline violations, but rather due to their "intentional, improper acts." Opp. 13. That is nonsense. The FAC is replete with allegations that Mullenweg believed WPE was misusing trademarks, which violates the Guidelines. *See* Suppl. RJN, Ex. 2 at 9; FAC ¶ 68 n.40 (linking to same site cited in RJN). And WPE's attempted extortion claim is about what Defendants allegedly *threatened*—here, exposing WPE in a speech to the WordPress community. The Court's preliminary injunction order did not address the legality of Defendants' speech, let alone exempt WPE from criticism and settlement demands. *See* Opp. 13 (citing Dkt. 64 at

30).

*Second*, WPE has not satisfied the "stringent requirement[]" that Defendants "had no right to seek payment for the service[s] offered." *Levitt*, 765 F.3d at 1133. WPE's argument that Defendants' assertion of trademark rights was a "sham," Opp. 13, is belied by WPE's own pleading. In the FAC, WPE references the WordPress Foundation Trademark Policy six times and attaches a demand letter from Automattic citing that policy and explaining WPE's violations of (1) "Intellectual Property Rights" and (2) applicable Trademark Policy. Dkt. 51-1 at 4; *see* RJN Ex. 16 at 2; FAC ¶ 104 n.60 (linking to same site cited in RJN).

WPE also seeks a declaratory judgment of trademark non-infringement based on "a substantial controversy between WPE and Automattic with respect to WPE's use of its Challenged Terms," which WPE concedes are registered trademarks, FAC ¶¶ 6 n.1, 310, and alleges that "[t]he parties have an adverse legal interest of sufficient immediacy and reality to warrant the issuance of declaratory judgment," FAC ¶¶ 310, 316. WPE cannot now call a "sham" what it alleges is an "actual controversy." *See* FAC ¶¶ 21, 310; *see also id.* ¶ 22 & Ex. A; *see generally Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006) ("the assertion of weak claims predicated on unsupportable factual allegations," rise above a "sham" and preclude extortion liability). And even if Defendants' assertion of "Intellectual Property Rights" was a "sham," which it was not, they were entitled to demand a license to use marks consistent with the applicable Trademark Policy. *See Levitt*, 765 F. 3d at 1134 (holding that "[a]s Yelp has the right to charge for legitimate advertising services, the threat of economic harm that Yelp leveraged is, at most, hard bargaining"). WPE's claim for attempted extortion should be dismissed. *See, e.g.*, *Evans Hotels v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1154 (S.D. Cal. 2020); *SmileDirectClub, LLC v. Berkely*, 2019 WL 1091339, at *5 (C.D. Cal. Jan. 22, 2019).

## C.    The CFAA Claims Should Be Dismissed (Counts 3 & 19).

WPE continues to distort the CFAA beyond recognition. The CFAA was enacted "to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009), and must be interpreted to "maintain the CFAA's focus on *hacking* rather than turning it into a sweeping Internet-policing mandate." *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (en banc) (emphasis added). WPE

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
7

1  does not, and cannot, allege any form of hacking. Instead, WPE claims that its access to WordPress.org

2  was revoked and its ACF plugin was "forked" on WordPress.org servers. *See* FAC ¶¶ 151, 160. WPE

3  alleges that these actions caused links to WordPress.org to stop functioning (mischaracterized by WPE

4  as "damage"), but never disputes the fundamental fact that precludes CFAA liability: all of the alleged

5  conduct occurred on WordPress.org computers that are owned and controlled by Mullenweg. *E.g.*, FAC

6  ¶ 86 ("wordpress.org . . . is, in fact, owned and controlled solely by Mullenweg").

### 1.    There Is No Section 1030(a)(7) Computer Extortion Claim.

8  According to WPE, when it refused Defendants' demand for a royalty payment, they "block[ed]

9  and interfere[ed] with [WPE's] access to *WordPress.org's systems*," which "caused damage to *WPE's*

10  *computer hosting service*." FAC ¶¶ 280–89 (emphases added). In other words, WPE argues that

11  Defendants damaged *WPE's service* by blocking access to *WordPress.org systems* which WPE admits

12  are "owned and controlled solely by Matt." *Id*. ¶ 86. Putting aside the fact, as WPE does, that access to

13  WordPress.org was revoked *only after* WPE threatened litigation, these allegations do not support any

14  claim under Section 1030(a)(7) for extortion or attempted extortion in connection with "damage to a

15  protected computer." 18 U.S.C. § 1030(a)(7)(A), (C).

16  WPE argues that CFAA liability is not limited to damage to a plaintiff's own computer, Opp.

17  14–15, but cites no authority holding, or even suggesting, that a plaintiff's computer can be damaged

18  by not having access to a computer owned and controlled *by the defendant*. WPE cites cases involving

19  hacking or damage to computers owned and controlled by *third-parties*, only one of which involves

20  Section 1030(a)(7). *See SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1225–27 (11th Cir. 2023)

21  (defendant withheld plaintiff's passwords to *third-party* computers); *Theofel v. Farey-Jones*, 359 F.3d

22  1066, 1071, 1078 (9th Cir. 2004) (Section 1030(a)(2)(C) claim involving a defendant's allegedly

23  unauthorized access to *third-party* computers); *Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, 2016

24  WL 424960, at *23 (D. Me. Feb. 3, 2016) (Section 1022 claim involving a defendant's allegedly

25  unauthorized access to a licensed *third-party* program). Finally, WPE suggests the ACF plugin fork

26  supports this claim. Opp. 14. But that is not alleged in the FAC, and, in any event, Section 1030(a)(7)

27  addresses demands, and the FAC does not allege any demand with respect to the ACF plugin fork.

### 2.    There Is No Section 1030(a)(5) Damage-Without-Authorization Claim.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
8

WPE's Section 1030(a)(5) claims should be dismissed because WPE has not alleged any damage or unauthorized access to any computer based on Defendants allegedly "covertly installing their SCF plugin onto the systems of WPE's customers to replace the ACF plugin." FAC ¶ 452. Section 1030(a)(5) requires "damage," defined as any "impairment to the integrity or availability of data, a program, a system, or information," to a protected computer. 18 U.S.C. § 1030(e)(8). Thus, "damage" means harm to the data, program, or system at issue, not economic loss. *See, e.g.*, *LVRC*, 581 F.3d at 1130 (CFAA was designed to address accessing information for the purpose of "disrupt[ing] or destroy[ing] computer functionality"); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) ("damage" means "harm to computers or networks"); *cf. Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 419–420 (7th Cir. 2006) (deleting files impaired the integrity or availability of data, programs, or information on the computer, and thus constituted "damage" under CFAA). WPE does not allege that any WPE customer lost data or suffered impaired performance or security *because of the alleged "forking" of the ACF plugin*, *see id.* ¶¶ 164–84. WPE argues that the FAC "alleges that Defendants 'recklessly caus[ed] damage' to protected computers," Opp. 15, but cites only an allegation restating the damage element. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). And despite WPE's passing reference to "damages" based on the ACF plugin fork, they relate solely to Defendants' alleged interference with WPE's customers and misappropriating goodwill, FAC ¶¶ 153, 157, which are economic harms not cognizable under the CFAA. 18 U.S.C. § 1030(e)(8).

WPE alleges that customers downloaded the SCF plugin after being prompted to download an update or because they enabled automatic updates, FAC ¶¶ 155–56, meaning that, in both situations, customers authorized the SCF plugin download. WPE argues that customers only did so because Defendants misattributed the SCF plugin to WPE, but does not identify a single customer who was confused about the origin of the SCF plugin or would not have downloaded it had they known it was from WordPress.org and not WPE. This distinguishes WPE's allegations from the cases it relies upon where the defendants gained access to a protected computer by posing as someone else or through identify theft. *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1069 (6th Cir. 2014) (defendant violated the CFAA by posing as plaintiff's customer to gain unauthorized access to the plaintiff's online platform); *United States v. Willis*, 476 F.3d 1121, 1123 (10th Cir. 2007) (defendant

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
9

convicted of aiding and abetting unauthorized access to a protected computer through identity theft). WPE does not, and cannot, allege either with respect to Defendants.

Finally, WPE argues that revoking its access to WordPress.org violates Section 1030(a)(5), again attempting to add a claim not alleged in the FAC. And, again, even if it were properly alleged, WPE still could not state a claim because Section 1030(a)(5) requires unauthorized access. WPE admits Mullenweg owns and controls WordPress.org, and therefore undisputedly had "authorization" to control access to WordPress.org. FAC ¶ 86. *See* 18 U.S.C. § 1030(a)(5); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022).

**D.    The Defamation Claims Should be Dismissed (Counts 9–11).**

WPE's claims for slander, libel, and trade libel claims, which are based solely on statements by Mullenweg, fail as a matter of law under California's anti-SLAPP statute and FRCP 12(b)(6).

> **1.    The "Commercial Speech Exemption" to the Anti-SLAPP Statute Does Not Apply.**

WPE does not carry its burden to show that the "commercial speech exemption" to California's Anti-SLAPP statute, which is to be "narrowly construed," applies here. *See* Opp 19; *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 22, 25 (2010). *First*, the exemption covers only "misrepresentations of fact," and WPE's defamation claims are based on opinions. *See infra* pp. 13–14. *Second*, the exemption is "aimed squarely at false advertising claims," *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th 91, 105 n.5 (2018), and none of Mullenweg's alleged defamatory statements advertises Defendants' own services. Indeed, Mullenweg touted several third-party companies he viewed as being positive stewards of the WordPress open-source project and therefore alternatives to WPE. *See* Suppl. RJN, Ex. 4 at 29:17–30:10; *id.* Ex. 5; *id.* Ex. 6 (advocating that users go with "any other host in the world besides WP Engine").

> **2.    Defendants Satisfy the First Prong of the Anti-SLAPP Analysis Because All of the Alleged Defamatory Statements Concern Matters of Public Interest.**

Defendants satisfy the first prong of the anti-SLAPP analysis that the allegedly defamatory statements arise from protected activity because WPE's own allegations show they concern issues of public interest. Opp. 20. WPE alleges that "Wordpress.org," where two of Mullenweg's purportedly defamatory statements were published, "is the central website for the WordPress community." FAC

¶ 332. WPE's argument that the dispute between Defendants and WPE about the Maker-Taker and WordPress trademark issues are not matters of public interest rings hollow in light of allegations describing the community-based WordCamp where Mullenweg gave the keynote about these issues, Mullenweg's invitation to speak about them on the PrimeTime YouTube livestream (with viewers' posts appearing in rapid-fire succession on the screen), and the WordPress community's active expression of its opinions about them in "community Slack channels," FAC ¶ 383, and Reddit and other social media platforms, *e.g.*, *id.* ¶¶ 77, 79. *See Hoang v. Tran*, 60 Cal. App. 5th 513, 528–29 (2021) ("public interest" includes public debate of interest to specific community).

### 3. Defendants Satisfy the Second Prong of the Anti-SLAPP Analysis and Establish That WPE Fails to State Any Claim for Defamation.

#### a. The Alleged Libelous Statements Are Non-Actionable Opinions.

WPE fails the second prong of the anti-SLAPP analysis (and fails to state a claim under FRCP 12(b)(6) in any event) because its defamation claims are patently baseless attacks on protected opinions. WPE ignores the context of the allegedly defamatory statements to cherry-pick phrases that even viewed in isolation are not "factual." Opp. 23; *see generally Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 261 (1986) ("The publication in question must be considered in its entirety. . .) (quotation marks omitted). For example, WPE points to statements that "WPE offers a 'chopped up, hacked, butchered' and 'cheap knock-off' of WordPress" in support of its libel claim. Opp. 23. On their face, these terms are not susceptible to being proven true or false, as the surrounding language in the September 21, 2024 blog post, omitted by WPE, makes clear:

> **What WP Engine gives you is not WordPress**, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it. This is one of the many reasons they are a cancer to WordPress, and it's important to remember that unchecked, cancer will spread….

Suppl. RJN, Ex. 5 (emphasis in original).

The use of emphasis, informal contractions, and figurative language *(e.g.*, "butchered," "cancer") casts the statements as opinion. As the Ninth Circuit recently held in *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021), the binding case WPE does not cite, "[l]oose, figurative, or hyperbolic language . . . negates the impression that the contested statement is an assertion of fact." *Id.* at 1160 (quotation marks, brackets omitted); *see Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
11

375, 385 (2004) (noting the "rule that satirical, hyperbolic, imaginative, or figurative statements are protected"). Mullenweg's use of the personal voice throughout the post does the same. *See, e.g.*, Suppl. RJN, Ex. 5 ("My own mother was confused and thought WP Engine was an official thing.").

WPE cannot avoid what the context and language of those statements makes clear by pointing to Mullenweg's status as an "expert on WordPress" or arguing they are not blog posts. In addition to WPE's own characterization of Mullenweg's statements in the FAC as reflecting his "petulant whims," FAC ¶ 4, Mullenweg did not claim his opinions arose from any special knowledge, *cf. Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904 (2004) (expert "held herself out to have special knowledge resulting from extensive research into the viatical industry"). Indeed, he included links to webpages addressing the bases for his opinions that people reading them could review for themselves. *See infra* p. 14; *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995).

WPE's argument that Mullenweg's September 21, 2024 post "is not a 'blog,'" Opp. 23, rings hollow, since that is how WPE described it in the original complaint. *See* Dkt. 51-2 ¶ 115 ("On September 21, 2024, Mullenweg wrote a ***blog post*** on wordpress.org, stating 'WP Engine is banned from WordPress.org.'") (emphasis added). WPE dropped that allegation in the FAC, but missed another allegation about a customer comment describing it as a blog post: "Following the ***blog*** by @photmatt, we've decided to remove @wpengine from our hosting lists on @select_wp for now, and we'll add it again after a thorough check." *Id.* ¶ 169 (emphasis added). However it is described, the full posts containing Mullenweg's allegedly libelous statements (like the full videos containing his allegedly slanderous statements) make clear he is expressing his figurative and hyperbolic opinions about WPE to his audience. *See Herring*, 8 F.4th at 1157. The cases on which WPE relies included no such context. *See Global Plasma Sols, Inc. v. Iee Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1097 (N.D. Cal. 2021) (article "conveys the tone of an investigative research report" and "most of the article is free from figurative or hyperbolic language"); *Luxpro Corp. v. Apple Inc.*, 2011 WL 3566616, at *6 (N.D. Cal. Aug. 12, 2011) (complaint did not contain complete copies of the letters with the statements at issue to provide context); *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, 2014 WL 12591919, at *8 (C.D. Cal. Dec. 9, 2014) (relying on *Luxpro* and involving private correspondence).

The term "knockoff" also does not convert Mullenweg's opinions into statements of fact.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
12

Mullenweg's thesis that "WP Engine is not WordPress" was premised on his view that WPE had been using trademarks in increasingly confusing ways and offering a version of WordPress with a core feature to save costs. That is not a false statement of fact. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 (9th Cir. 2007) ("Until it is definitively established that TFN holds a trademark in the term 'freecycle,' it cannot be false to contend that it does not."). Indeed, describing this view as WPE passing itself off as a WordPress "knock-off" is quintessential opinion. *See Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 414 (D. Conn. 2018) ("[S]tatements that Anthem's products were knockoffs of inferior quality are statements of opinion."); *HGCI, Inc. v. Luxx Lighting, Inc.*, 2020 WL 5913851, at *4 (C.D. Cal. Sept. 10, 2020) (comment that competitors "knock off our optics" was "insufficiently factual to be susceptible of being proved true or false"). Even if his statements could be viewed as promoting Defendants' products, *see* Opp. 19, which they do not, they are non-actionable puffery. *Anthem Sports*, 320 F. Supp. 3d at 415 ("The term, 'complete knockoff,' constitutes exactly the sort of subjective hyperbole that renders a statement puffery.").

As for Mullenweg's September 25, 2024 blog post (his other allegedly libelous statement) referring to WPE's "hacked up, bastardized simulacra of WordPress's GPL code," the context shows he was describing what WPE *would be* were they to "provid[e] all of the service" for which WPE had been using WordPress and have customers "experience WordPress as WP Engine envisions it." Suppl. RJN, Ex. 6. Such predictions of future events are not defamatory. *See Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1125–26 (C.D. Cal. 1998). But if interpreted to refer to WPE's current offering, the hyperbolic and figurative language shows it is opinion not capable of being true or false. *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1106 (N.D. Cal. 1999) (concluding that "colorful, figurative language" and "the controversial debate in which" a statement appears evince opinion). Even if viewed as factual, the gist of the statement is true in any event—WP Engine is not WordPress. *See Issa v. Applegate*, 31 Cal. App. 5th 689, 708 (2019) (substantially true statement is not defamatory).

**b.    The Alleged Slanderous Statements Are Non-Actionable Opinions.**

WPE argues that Mullenweg's statement in his keynote that "WPE 'just want[s] to feed off' WordPress 'without giving anything back'" is slanderous, Opp. 25, but that is not what he said. His actual statement was: "That's [the] ecosystem. But if that's the yin, what's the yang? . . . This openness

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
13

and generosity will attract parasitic entities that just want to feed off the host without giving anything back." Suppl. RJN, Ex. 4 at 8:19–23. That is not defamatory. "[S]tatements that are 'loosely definable' or 'variously interpretable' cannot in most contexts support an action for defamation." *Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984). Even if Mullenweg had said that WPE just wants to feed off WordPress, "subjective motivations . . . are not provable as true or false," let alone knowingly false. *Nicosia*, 72 F. Supp. 2d at 1106; *see Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995) (statements about the plaintiff's motivations not provable as true or false).

With respect to Mullenweg's statement during a YouTube livestream interview "that WPE has 'given nothing back to WordPress,' other than '40 hours per week' and sponsoring WordCamp for 75 grand,'" Opp. 25, WPE again misrepresents his statement. He did not say WPE gave nothing back to WordPress *other than* 40 hours per week and sponsoring WordCamp for 75 "grand." He said: "[W]e tr[ied] to use the trademark. And by the way, they've built a half a billion dollar business. They've given nothing back to WordPress. They were contributing 40 hours per week, so call that a hundred grand per year. They sponsored, yeah, WordCamp for 75 grand. We allowed them to be a top sponsor." Suppl. RJN, Ex. 3 at 4:15–21. Saying that WPE gave "nothing back" is inherently hyperbolic and figurative. In the same breath, Mullenweg cited WPE contributions of (low) hours and (self-marketing) sponsorships. In any event, what "giving back" means to members of an open-source community is subjective. *See id.* at 4:22–23 (Host: "Yeah, I was about to say that sponsorships don't count"); *Ollman*, 750 F.2d at 980. Even if the question of truth or falsity were a close one, and it is not, "a court should err on the side of nonactionability." *See Partington*, 56 F.3d at 1159 (quotations omitted).

    c.    **The Alleged Defamatory Statements Are Not Based on Undisclosed Facts.**

In the *full* WordCamp keynote, blog posts, and Twitch livestream show, Mullenweg explains the bases for his opinions, rendering them non-actionable as a matter of law. *See Partington*, 56 F.3d at 1156. In the WordCamp keynote, Mullenweg made clear why he believes that WPE, under the control of private equity, is a threat to the WordPress open-source project: private equity has a history of hollowing out open-source communities for profit and is doing the same with WPE and WordPress. Suppl. RJN, Ex. 4 at 13:4–24. Likewise, Mullenweg's September 25 blog post states that WPE disabled a "WordPress core feature" (revisions) and links to a September 21 blog post describing why he

believes disabling the revisions feature "strikes to the very heart of what WordPress does." Suppl. RJN, Ex. 6; *id.*, Ex. 5. WPE does not, and cannot, deny that it disabled revisions or that it is the *only* recommended host on WordPress.org that does so by default. *See id.* And Mullenweg's statement during the Twitch livestream interview that WPE has given "nothing" back to the WordPress community, while simultaneous in the same livestream referencing contributions WPE has made (even if not enough), *see id.*, Ex. 3 at 4:18–21, 15:3–13, makes his statement classic rhetorical hyperbole and renders immaterial any omission of WPE's subjective views on its own contributions.

## E.    The Promissory Estoppel Claim Should Be Dismissed (Count 6).

WPE asserts that Defendants made "clear and unambiguous promises of access to wordpress.org," Opp. 28, but relies only on broad pronouncements on WordPress.org that "***Everyone*** is welcome." FAC ¶ 84 (emphasis in original); Opp. 27. These are not "specific and unqualified statements" as WPE claims. Dkt. 75 at 27. And WPE ignores the clear requirements, policies, and enforcement structure that define WordPress.org and make it clear that access is not unconditional.

An "Open-Source" ecosystem allows developers to use code licensed under open-source licenses, including GPL, without fear of copyright liability. *See* FAC ¶ 189 (referring to "a permissive GPL license"). But it is *not* a free-for-all, as WPE knows in citing to the "WordPress developer *guidelines,*" which explain how WordPress.org will "*enforce*" them. FAC ¶ 69 (citing and quoting, and thus incorporating by reference, the WordPress.org Detailed Plugin Guidelines); Suppl. RJN, Ex. 2. Indeed, WPE admits that WordPress.org "reserve[s] the right *to disable or remove* a plugin even for reasons 'not explicitly covered by the guidelines.'" FAC ¶ 69. The right is part of WordPress.org's reservation of "the right to maintain the Plugin Directory to the best of [its] ability" and actually allows the removal of "any" plugin from the directory. *Id.* This is a crucial point; WPE acknowledges that the Guidelines say WordPress.org can remove a plugin *for any reason*. *Id.*

That is not the only express limitation on WordPress.org that WPE ignores. WPE repeatedly cites, and thus incorporates by reference, the WordPress.org "Frequently Asked Questions," FAC ¶ 87 & nn. 51–54, which make clear to developers that WordPress.org can "ban someone and disable all their plugins," and remove a plugin for violating a trademark; indeed, there are 21 references to "trademark" in the FAQs. Suppl. RJN, Ex. 1 at 3–5, 9, 15–17, 23. WPE's assertion that WordPress.org

clearly and unambiguously promises unconditional access is contradicted by the same documents on it relies.

WPE's promissory estoppel claim is even less plausible given the FAC's allegation that "WordPress promises that 'wordpress.org offers free hosting to anyone who wishes to develop a plugin in our directory.'" FAC ¶ 86. Only ten lines below this purported "promise" is a series of requirements that developers must adhere to, including that "developers and their plugins must not do anything illegal, dishonest, or morally offensive" and that they "must respect trademarks[] [and] copyrights[.]" Suppl. RJN, Ex. 2 at 6, 9. These allegations make plain that there was no promise by Defendants, or anyone else, to allow perpetual and unconditional access to WordPress.org.

In contrast, the cases WPE cites involve clearly defined, unambiguous, and specific promises. In *Sateriale v. RJ Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012), the alleged promise was that: "if [consumers] saved C-Notes and redeemed them for rewards merchandise in accordance with the catalog, [the defendant] would provide the merchandise." In *Thompson v. Oracle Corp.*, 574 F. Supp. 3d 738, 744 (N.D. Cal. 2021), an employer promised (in writing) to provide lifetime medical benefits to an employee, which created an obligation "certain enough to allow the Court to evaluate whether there was a breach and the circumstances that would constitute breach." *Id.* at 744. Likewise, in *Williams v. Chase Bank/JP Morgan, N.A.*, 2015 WL 1843951 (N.D. Cal. Apr. 8, 2015), a bank specified in a letter all of its terms for granting a loan modification. *Id.* at *8.

WPE cites no comparable promise by Defendants. The WordPress.org Guidelines, which WPE admits apply, and requirement to register for access to specific user directories, Dkt. 64 at 2, also distinguish this case from *hiQ v. LinkedIn*, 31 F.4th 1180 (9th Cir. 2022), where hiQ was accessing publicly available data and was "no longer bound by the User Agreement, as LinkedIn has terminated hiQ's user status." *Id.* at 1186 n.6; *see id.* at 1194.

Courts routinely dismiss promissory estoppel claims at the pleading stage where, as here, they rest on statements that are not "clear and unambiguous" promises. *See* Mot. 25–26 (reviewing cases). WPE cannot save its claim by citing to *California Spine & Neurosurgery Inst. v. Oxford Health Insurance Inc.*, 2019 WL 6171040 (N.D. Cal. Nov. 20, 2019), Opp. 28, because that case involved a specific promise by the defendant to pay for a surgery, though at an unspecified rate that could only be

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
16

calculated through evidence obtained in discovery. 2019 WL 617040 at *4 (internal quotations omitted). By contrast, WPE does not, and cannot, allege any promise made by Defendants, or anyone else, to provide perpetual and unconditional access to WordPress.org. And WPE may not contort broad and expressly limited website pronouncements into enforceable promises. *See, e.g.*, *Wozniak v. YouTube, LLC,* 100 Cal. App. 5th 893, 920 (2024) (rejecting promissory estoppel claim based on purported violation of website policies where the alleged promises were "more akin to general policies or statements" than "personalized and constituting a clear, well-defined offer").

## F.     The UCL "Unlawful" and "Unfair" Claims Should be Dismissed (Count 5).

WPE admits, as it must, that its "unlawful" UCL claims based on attempted extortion, CFAA, and antitrust claims must be dismissed if those underlying claims are dismissed, but argues that this claim survives no matter what because all of its other claims are incorporated by reference. Opp. 18. WPE cannot save this claim by relying on unpleaded claims. *See Mersnick v. US Protect Corp.*, 2007 WL 2669816, at *2 (N.D. Cal. Sept. 7, 2007) (disregarding new theories not alleged in the complaint).

WPE's "unfair" UCL claims have the same defects as its antitrust claims, *see, supra* § II.A, including failure to plausibly allege that Defendants' alleged conduct caused "harm to the market as whole," *Snapkeys, Ltd. v. Google LLC*, 2020 WL 6381354, at *3 (N.D. Cal. Oct. 30, 2020) (dismissing UCL claim); *see also FTC v. Qualcomm Inc.*, 969 F.3d 974, 994 (9th Cir. 2020). WPE's reliance on "very general allegation[s]" do not suffice. *See Levitt*, 765 F.3d at 1137 (dismissing UCL claim and finding plaintiff's general allegations of competitive harm insufficient). And WPE's reliance on the "balancing test" applicable to consumer cases, as articulated in *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1999), Opp. 19, also fails because the California Supreme Court has rejected its application to disputes between business *competitors*, which is WPE's framing for all other claims. *Cel-Tech Commc'n Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999).

## G.     The Claims for Interference with Economic Relations (Count 2), Trademark Misuse (Count 16), and Unjust Enrichment (Count 20) Should Be Dismissed.

WPE's contention that its claim for intentional interference with prospective economic relations survives "if any of [its] other claims survive," Opp. 28, is wrong because "the conduct *alleged to constitute the interference*" must be wrongful. *Stevenson v. Real Est. Servs., Inc. v. CB Richard Ellis Real Est. Servs., Inc.*, 138 Cal. App. 4th 1215, 1224 (2006) (emphasis added). Here, the interference is

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
17

based on conduct underlying WPE's attempted extortion and UCL claims. Because those claims should be dismissed, Count 2 should also be dismissed. *See supra* §§ II.C, E. With respect to WPE's trademark misuse claim, because there is no trademark infringement claim pending against WPE, as in all of the cases cited by WPE, Count 16 should be dismissed. *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d. 1265, 1271 (S.D. Cal 2007) (party cannot "come to court only to assert an anticipatory defense"). Finally, WPE admits its unjust enrichment claim derives from its promissory estoppel, CFAA, and antitrust claims. Because those claims should be dismissed, and WPE's claim for unjust enrichment is "based on the same allegations," Count 20 should also be dismissed." *Barber v. DSW Inc.*, 2016 WL 11954427, at *6 (C.D. Cal. Apr. 4, 2016); *see supra* §§ II.A, D, G.

**H.    Counts 3, 5, 9–11, 14–15, and 17–20 Against Automattic Should Be Dismissed Because WPE Does Not Allege Any Basis for Vicarious Liability.**

WPE concedes that Counts 3, 5, 9–11, 14–15, and 17–20 relate solely to conduct by Mullenweg, but argues that Automattic is vicariously liable for it without alleging any facts to support a plausible inference of vicarious liability. Opp. 29–30. WPE does not allege that Automattic published the alleged defamatory statements (Counts 9–11), admits that any unjust enrichment (Count 20) is premised on benefits to *WordPress.org*, not Automattic, Opp. 30, and relies solely on conclusory allegations to argue that Mullenweg was acting as an Automattic employee when engaging in conduct alleged in Counts 3, 5, 14–15, and 17–19. All of these claims should be dismissed as against Automattic.

## III.    CONCLUSION

For the reasons set forth above and in Defendants' Motion, Counts 2–6, 12–16, and 19–20 of the Amended Complaint should be dismissed, and Counts 9–11 should be stricken or dismissed.

DATED: February 19, 2025                        Respectfully submitted,

                                                                   GIBSON, DUNN & CRUTCHER LLP


                                                                   By: */s/ Rosemarie T. Ring*
                                                                           Rosemarie T. Ring

                                                                   *Attorney for Defendants Automattic Inc. and Matthew Charles Mullenweg*

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE
PLAINTIFF'S AMENDED COMPLAINT, CASE NO. 3:24-CV-06917-AMO
18