QUINN EMANUEL URQUHART &
SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

ROSEMARIE T. RING, SBN 220769
  rring@gibsondunn.com
JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA  94111-3715
Telephone: 415.393.8200
Facsimile:  415.801.7358

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Ave
Palo Alto, CA 94301-1744
Telephone:  650.849.5300
Facsimile:  650.849.5333

*[Additional Counsel listed on next page]*

*Counsel for Defendants Automattic Inc. and
Matthew Charles Mullenweg*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Honorable Araceli Martínez-Olguín<br><br>Date:        February 27, 2025<br>Time:        10:00 AM<br>Location:  San Francisco, Courtroom 10, 19th Floor<br><br>Trial Date:      None Set |

1

2          ORIN SNYDER *(admitted pro hac vice)*
             osnyder@gibsondunn.com
3          GIBSON, DUNN & CRUTCHER LLP
           200 Park Avenue
4          New York, NY 10166-0193
           Telephone:  212.351.2400
5          Facsimile:  212.351.6335

6          MICHAEL H. DORE, SBN 227442
             mdore@gibsondunn.com
7          GIBSON, DUNN & CRUTCHER LLP
           333 South Grand Avenue
8          Los Angeles, CA 90071-3197
           Telephone:    213.229.7000
9          Facsimile:  213.229.6652

10         *Counsel for Defendants Automattic Inc. and*
           *Matthew Charles Mullenweg*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel for Plaintiff WPEngine, Inc. ("WPE") and Defendants Automattic Inc. ("Automattic") and Matthew Charles Mullenweg ("Mullenweg") hereby jointly submit this Case Management Statement pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, the Court's Standing Order for Civil Cases, and the Standing Order for All Judges of the Northern District of California.

WPE notes that, despite several requests from WPE, Defendants failed to provide their full portions of this Joint Case Management Statement until 11:19 a.m. on February 20, approximately 40 minutes before the Court-ordered filing deadline. This has effectively denied WPE the opportunity to fully review or respond to Defendants' portions, and thus, as of this filing, WPE has not been able to do so. However, WPE would be happy to answer any questions the Court may have at the February 27 Case Management Conference.

Defendants dispute the accuracy of Plaintiff's assertions.

I.    **JURISDICTION AND SERVICE [***The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.***]**

Subject matter jurisdiction is proper in this court because this litigation arises under federal law, namely 15 U.S.C. § 1051 et seq. (Lanham Act), 15 U.S.C. § 1 et seq. (Sherman Act) and 18 U.S.C. § 1030 et seq. (Computer Fraud and Abuse Act). The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201 (Declaratory Judgment Act). This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

There are no issues regarding personal jurisdiction or venue.

All Defendants have been served. Dkt. 14, 15.

II.   **FACTS [***A brief chronology of the facts and a statement of the principal factual issues in dispute***]**

A.    **Plaintiff's Statement**

This case concerns the multitude of wrongful acts committed by Defendants against Plaintiff WPE as part of their self-proclaimed nuclear war, launched after WPE refused Defendants' extortive

financial demands. Defendants publicly admitted their intention to destroy WPE "brick by brick" and set out to accomplish their goal in various ways, forcing WPE to file this action seeking emergency relief from this Court (which the Court granted) and compensation for the harm Defendants have inflicted, and continue to inflict, upon WPE.

WordPress is an open source content management system developed in 2003 that allows people to create and publish their own websites. The WordPress source code and trademarks were initially owned and/or controlled by Defendant Matthew Mullenweg's for-profit company, Defendant Automattic. Defendants later represented that they transferred the WordPress code and trademarks to the nonprofit WordPress Foundation, which Mullenweg created, and promised perpetual free and open access for all.

In connection with announcing the transfer of the WordPress trademarks to the WordPress Foundation in 2010, Defendants did not disclose that they had contemporaneously granted irrevocable, exclusive, royalty-free rights in the trademarks back to Automattic. As a result, control over the WordPress trademarks effectively never left Automattic's hands. Defendants also concealed that Mullenweg personally owned wordpress.org, the central directory and repository for WordPress software and plugins vital to the functioning of WordPress websites. The founding documents for the nonprofit WordPress Foundation, created in 2006, listed wordpress.org as its website. However, Defendants now admit that wordpress.org has always been personally owned by Mullenweg for his own benefit. Moreover, Mullenweg retains the ability to block anyone Defendants deemed to be a competitive threat from accessing it.

Defendants' promises and concealment of key facts enabled them to gain a monopoly over several web-related markets and induced companies to build their businesses around WordPress. One such company that relied on Defendants' promises was WPE, founded in 2010. WPE has devoted its entire business to WordPress over other similar open source platforms and web content management systems, investing hundreds of millions of dollars and 14 years of hard work building a successful business to serve and expand the WordPress community.

On September 19 and 20, 2024, Defendants threatened to ban WPE from the WordPress community unless it agreed to pay tens of millions of dollars to Automattic for a purported

trademark license for marks WPE had openly used for many years.  Although WPE did not need this purported license, Defendants gave WPE less than 48 hours to either agree to pay them off or face the consequences of being banned and publicly smeared.  In that short time, Defendants attempted to intimidate WPE into agreeing to make such payments.  When WPE did not capitulate, Defendants carried out their threats, including what they called a "nuclear" war against WPE.  Defendants defamed WPE in public presentations and articles, sent disparaging and inflammatory messages through WPE customers' software and the Internet, threatened WPE's CEO and one of its board members, encouraged WPE's customers to take their business to Automattic's competing service providers, expropriated WPE's Advanced Custom Fields plugin, blocked WPE and its customers from accessing wordpress.org servers, and installed a checkbox on wordpress.org which required anyone logging in—including customers, developers, and web hosts—to affirm "I am not affiliated with WP Engine in any way, financially or otherwise."  By blocking access to wordpress.org, Defendants prevented WPE from accessing a host of functionality typically available to the WordPress community on wordpress.org, resulting in significant and irreparable harm.  Defendants have attempted to justify their conduct in various ways, none of which are even remotely plausible.  For instance, Defendants have claimed that the fact that WPE's investor is a private equity firm and that WPE is a for-profit company somehow justifies Defendants' illegal conduct—despite the fact that Defendant Automattic has private equity investors, and is a for-profit company, as well.

On October 2, 2024, WPE filed its Complaint in this matter, followed by a First Amended Complaint on November 14, 2024.  On October 18, 2024, WPE filed a motion for preliminary injunction.  The Court granted WPE's motion on December 10, 2024, finding that WPE was likely to succeed on its intentional interference with contract claim.  As a result, the Court ordered Defendants to, among other things: (i) restore WPE's access to wordpress.org and its resources; (ii) remove the list of WPE's customers that Automattic had posted on wordpressenginetracker.com and the associated GitHub repository, and (iii) return the Advance Custom Fields plugin to WPE.  Dkt. 64 at 41-42.

**B.    Defendants' Statement**

This lawsuit is a meritless attempt by WPE to distract from its own conduct, under the control of private equity, that poses an existential threat to the WordPress open-source project and to exact revenge against Matt Mullenweg for daring to hold WPE's private equity owner, Silver Lake, accountable for that conduct —*i.e.*, turning WPE into a "taker" by focusing on WPE's own revenue-generating services and freeriding on the contributions of "makers" who contribute to the maintenance and improvement of the "core" WordPress software for the benefit of the broader WordPress community, removing fundamental features from its WordPress  services in an effort to reduce costs, and using trademarks in increasingly confusing ways. There is nothing new about this private equity game plan but having watched it destroy other open-source projects, Defendants attempted to address the "maker/taker" dichotomy and WPE's trademark infringement. WPE erroneously attempts to portray these efforts as a last-minute pressure campaign. But in reality, Defendants commenced business negotiations on these issues with WPE many months earlier. WPE only pretended to engage in these discussions and had no intention of closing a deal because of Silver Lake's plan to sell WPE later that year. At bottom, this lawsuit is an effort by WPE, under the control of private equity, to avoid addressing (and to construct a false narrative about) its own behavior that poses an existential threat to the WordPress open-source project to which Mullenweg has devoted his life.

Over twenty years ago, in an effort to "democratize publishing across the Internet," Mullenweg and his co-founder Mike Little created WordPress software and made it accessible under an open-source license. Open-source projects, such as WordPress, rely on contributions from a community of users who maintain and improve the "core" open-source software. Mullenweg registered the domain name WordPress.*org* and has developed and managed the WordPress.org website for decades. Users download the WordPress software for free from WordPress.org and other third-party websites, and can choose to develop plugins and themes, as well as update those plugins and themes, on WordPress.org or through other channels. Use of WordPress.org is not necessary to access the WordPress software or to develop websites, plugins, and themes using WordPress software. A few years later, Mullenweg founded Automattic Inc., which owns companies offering

a variety of services, including for-profit hosting services for WordPress websites such as WordPress.*com*. Then, in September 2024, Matt Mullenweg launched the "Five for the Future" initiative (ma.tt/2014/09/five-for-the-future/), urging companies to dedicate 5% of their resources to the development of WordPress "core" software, embodying open source's ethos of mutual benefit. Automattic contributed tens of thousands of hours annually, inspiring a community of Makers to follow. Mullenweg's stewardship sought to grow impact and safeguard WordPress against exploitation—a risk WPE's conduct now exemplifies.

Defendant WPE was founded in 2010 and is another for-profit hosting service for WordPress websites, which also develops plugins. Since 2018, WPE has held itself out as being owned and controlled by Silver Lake, a private equity firm.

Long before WordCamp 2024, WPE and Defendants had been discussing a deal to address concerns that, under the control of private equity, WPE (1) had become a "Taker" in the WordPress community, maximizing its own profits by free-riding on the contributions of "Makers" who invest in the WordPress open-source software, and (2) was using trademarks in increasingly confusing ways. Believing that WPE was stringing them along due to plans by its private equity owner to sell WPE, Mullenweg presented WPE with a choice: close a deal to address the Maker-Taker and trademark issues or Mullenweg would share his concerns with the WordPress community. WPE describes the deal as a demand to pay Automattic a trademark royalty, but WPE also had the option to commit WPE employees to work on the WordPress open-source software in lieu of any payment to Automattic—*i.e.*, to be a Maker. WPE rejected both options and Mullenweg gave his keynote, explaining: "I've been trying to talk to Heather [WPE CEO] and Lee [Silver Lake Managing Director]. I did not want to give this presentation. I was literally over there calling them, saying like, hey, are you all going to step up? Are you going to fix this? And yeah, that was scary for me. And, by the way, it's scary going against the $102 billion asset[] management."

On September 20, 2024, WPE rejected these options and chose the latter and Mullenweg gave his keynote. Mullenweg discussed the "maker/taker" problem in open-source communities and expressed his view that WPE, under the control of Silver Lake, had become a taker. Mullenweg expressed these views in a blog post the following day. Rather than address the concerns underlying

1    Mullenweg's views, WPE sent (and widely publicized) a cease-and-desist letter threatening

2    Defendants with litigation. After WPE's litigation threats, Mullenweg blocked WPE from accessing

3    WordPress.org on September 25, 2024. Mullenweg discussed that decision in a blog post the same

4    day and during a YouTube livestream the following day.

5        On October 2, 2024, WPE filed this lawsuit, in which it falsely claimed (among other things)

6    that it had been surprised by Defendants' concerns about the "maker/taker" problem and demand

7    for a trademark license, to assert claims for attempted extortion, defamation, promissory estoppel,

8    hacking, intentional interference with contractual relations and prospective economic relations, and

9    declaratory judgement of non-infringement and non-dilution (after taking steps to address the

10   trademark infringement issues Defendants had raised).

11       Because WPE's access to WordPress.org had been blocked, WordPress.org assumed

12   responsibility for maintaining and updating plugins previously uploaded to that website by WPE.

13   The WordPress.org security team identified a vulnerability in the advanced custom fields plugin

14   ("ACF plugin") and alerted WPE on October 4, 2024. When WPE's proposed solution did not

15   adequately address the issue, consistent with the WordPress.org Guidelines, the security team

16   addressed the issue by creating a new version of the ACF plugin (*i.e.*, "forking" it), which it called

17   the secure custom fields plugin ("SCF plugin"). WPE retained control over the ACF plugin, making

18   it available directly from WPE's own website.

19       Nearly six weeks later, on November 14, 2024, WPE filed an amended complaint, in which

20   it (again) falsely claimed, among other things, that its dispute with Defendants involves

21   monopolization of markets that do not exist to add claims for antitrust violations. This lawsuit was

22   (and remains) an attempt by WPE and its private equity owner to silence and punish Mullenweg for

23   calling out what he viewed (and continues to view) as an existential threat to the WordPress

24   community and taking steps to protect that open-source project and community to which he has

25   devoted his life.

26

27

28

### III.    LEGAL ISSUES [*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*]

Plaintiff contends the legal issues that the Court may be asked to resolve in this action include:

(1) whether Defendants intentionally interfered with WPE's contractual relations;

(2) whether Defendants intentionally interfered with WPE's prospective economic relations;

(3) whether Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(7);

(4) whether Defendants attempted to extort WPE;

(5) whether Defendants engaged in unfair competition under California's Business and Professions Code § 17200, *et seq*.;

(6) whether, under the doctrine of promissory estoppel, Defendants are liable for injuries caused to WPE based on its reliance on Defendants' promises;

(7) whether WPE's use of the "WordPress," "WooCommerce," and other similar marks[1] (collectively the "Challenged Terms"), infringe upon any of Automattic's purported trademark rights;

(8) whether WPE's use of the Challenged Terms dilutes Automattic's purported trademark rights;

(9) whether Defendants' statements in their September 21 and 25 articles on wordpress.org defamed WPE and thus constituted libel;

(10) whether Defendants' statements in their September 21 and 25 articles on wordpress.org defamed WPE's products and thus constituted trade libel;

(11) whether Defendants' statements at their September 20, 2024 keynote address and September 26, 2024 interview defamed WPE and thus constituted slander;

(12) whether Defendants are liable for monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2;

---

[1]  WORDPRESS, U.S. Reg. No. 3201424; WORDPRESS, U.S. Reg. No. 4764217; WORDPRESS, U.S. Reg. No. 4865558; WOOCOMMERCE, U.S. Reg. No. 5561427; , U.S. Reg. No. 5561428; WOO, U.S. Reg. No. 5561425; and , U.S. Reg. No. 5561426.

(13) whether Defendants are liable for attempted monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2;

(14) whether Defendants engaged in illegal tying under Section 1 of the Sherman Act, 15 U.S.C. § 1;

(15) whether Defendants engaged in illegal tying under the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*;

(16) whether Automattic cannot enforce any rights in the Challenged Terms on grounds of trademark misuse;

(17) whether Defendants engaged in unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1);

(18) whether Defendants engaged in false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

(19) whether Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5);

(20) whether Defendants were unjustly enriched by receiving and unjustly retaining benefits from WPE;

(21) the nature and extent of harm suffered by WPE as a result of Defendants' actions;

(22) the extent to which WPE is entitled to compensatory damages, restitution, disgorgement, imposition of a constructive trust, exemplary and punitive damages, costs, fees, pre-judgment interest, post-judgment interest, and any other damages the Court may deem appropriate; and

(23) the extent to which WPE is entitled to permanent injunctive relief.

Defendants contend that the primary legal issues in the case, at this juncture, include: (1) whether WPE has alleged facts sufficient to state a claim for relief against any Defendant under counts 2–6 and 9–16, as set forth in the Amended Complaint; (2) whether WPE has alleged facts sufficient to state a claim for relief against Automattic under counts 17–20, as set forth in the Amended Complaint; and (3) whether WPE's causes of action for libel, trade libel, and slander (Counts 9–11) arise from an act or acts in furtherance of one or more Defendants' right of free

speech under the United States Constitution or the California Constitution in connection with a public issue, and are therefore subject to a motion to strike pursuant to California Code of Civil Procedure section 425.16.

WPE's claims target protected First Amendment activities under, among other things, the Noerr-Pennington doctrine, the California litigation privilege (Cal. Civ. Code § 47(b)), U.S. Supreme Court precedent including *Moody v. NetChoice*, 603 U.S. ___ (2024), and Ninth Circuit precedent showing that Mullenweg's alleged defamatory statements were protected opinion, including *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021).

Once the case proceeds beyond the pleading stage, the legal issues to be addressed will be whether WPE infringed WordPress and Woo Commerce trademarks and whether any of WPE's surviving claims have any merit.

**IV.    MOTIONS [*All prior and pending motions, their current status, and any anticipated motions*]**

**A.    Prior Motions**

On October 18, 2024, Plaintiff filed its Motion for Preliminary Injunction, Dkt. 17, and an Administrative Motion to Shorten Time to Hear the Motion for Preliminary Injunction, Dkt. 22. The Administrative Motion to Shorten Time was granted on October 22, 2024, Dkt. 34, and the Motion for Preliminary Injunction was granted on December 10, 2024, Dkt. 64.

On October 30, 2024 Defendants filed a Motion to Dismiss, Dkt. 36, and an anti-SLAPP Motion to Strike, Dkt. 38.  And, on November 1, 2024, Defendants filed a Motion to Shorten Time in connection with these motions.  Dkt. 43.  On November 15, 2024, all three motions were denied as moot in light of Plaintiff's Amended Complaint. Dkt. 52.

**B.    Pending Motions**

On December 19, 2024, Defendants filed a combined Motion to Dismiss and Strike Plaintiff's Amended Complaint.  Dkt. 68. This motion is fully briefed, and the related hearing is currently set for June 5, 2025, at 2:00 p.m.

On January 13, 2025, putative intervenor Michael Willman filed a Motion to Intervene and a Motion to Hold Defendants in Contempt.  Dkts. 70, 71.  These motions are fully briefed.  On

February 1, 2025, Willman also filed a Motion for Order to Show Cause against former Defense Counsel. Dkt. 99. A response to this motion has been filed, Dkt. 105, and Willman's reply is due on February 25, 2025. The hearing for all of Willman's motions is currently set for June 5, 2025, at 2:00 p.m.

### C. Anticipated Motions

Plaintiff anticipates filing a motion for summary judgment and/or summary adjudication after the close of fact and expert discovery. Plaintiff also anticipates filing Daubert motions and discovery motions as indicated in section XV.

Defendants intend to file a motion to stay discovery until after the resolution of Defendants' pending Motion to Dismiss and Strike. Defendants anticipate filing additional motions, including (without limitation) a motion for summary judgment and/or summary adjudication on Plaintiffs' causes of action that remain after the resolution of Defendants' Motion to Dismiss and Strike.

### V. AMENDMENT OF PLEADINGS [*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*]

Plaintiff reserves the right to amend its Amended Complaint to the extent the Court determines any of its claims are insufficiently pleaded in response to Defendants' pending Motion to Dismiss and Strike. Dkt. 68. Plaintiff also anticipates it may amend its Amended Complaint based on further information and investigation, including newly discovered facts, events or legal developments. Plaintiff proposes a deadline of June 30, 2025, for amending pleadings, other than amendments made in response to orders on motions to dismiss with leave to amend.

Defendants reserve the right to object to Plaintiff amending its complaint in response to the Court's ruling on Defendants' Motion to Dismiss and Strike. Defendants intend to file a timely Answer once Plaintiff's pleadings are settled. Defendants reserve the right to file counterclaims on or before the deadline for Defendants' Answer, and to amend their pleading(s) as necessary based on further information and investigation, including newly discovered facts, events or legal developments. Defendants believe it is premature to set a deadline for amended pleadings until the Court has ruled on Defendants' Motion to Dismiss and Strike.

**VI.    EVIDENCE PRESERVATION [*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.*]**

Plaintiff certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and the Court's Checklist for ESI Meet and Confer.  The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f).  Plaintiff confirms that it has taken reasonable and proportionate steps to preserve relevant evidence, such as implementing a litigation hold with respect to documents and information reasonably likely to be subject to discovery in this litigation.

Defendants certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and the Court's Checklist for ESI Meet and Confer. The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding the allegations in Plaintiff's original Complaint, which is no longer operative. Defendants confirm that they have taken reasonable and proportionate steps to preserve relevant evidence, including implementing a litigation hold with respect to documents and information reasonably likely to be subject to discovery in this litigation.

**VII.    DISCLOSURES [*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.*]**

Per Rule 26(a)(1)(C), Plaintiff and Defendants exchanged Initial Disclosures on November 14, 2024, including the information required under Rule 26(a)(1).

**VIII.    DISCOVERY [*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*]**

**A.    Discovery Taken to Date**

The Parties conducted their Rule 26(f) conference on October 31, 2024, and to date, the following discovery has been taken:

1     **1.** **Plaintiff's Discovery:**

2        a)  On November 1, 2024, Plaintiff served its First Set of Interrogatories on

3        Defendants.  Pursuant to an extension agreed to among the parties, Defendants

4        separately served responses and objections on December 2, 2024.

5        b)  On November 6, 2024, Plaintiff served its First Set of Requests for Production

6        of Documents ("RFPs") on Defendants.  Defendants have yet to produce any

7        documents in response to Plaintiff's RFPs. The Parties' dispute regarding these

8        RFPs is noted below.

9     **2.** **Defendants' Discovery:**

10       a)  On October 31, 2024, Defendant Automattic served its First Set of

11       Interrogatories to Plaintiff.  Pursuant to an extension agreed to among the

12       parties, Plaintiff served its responses and objections on December 2, 2024.

13       b)  On October 31, 2024, Defendant Automattic served its First Set of RFPs to

14       Plaintiff.  Pursuant to an extension agreed to among the parties, Plaintiff served

15       responses and objections on December 2, 2024.  As of the date of this Case

16       Management Statement, Plaintiff has produced more than 17,500 pages of

17       documents in response to Defendants' RFPs .

18       c)  On November 6, 2024, Defendant Automattic served a subpoena on non-party

19       Silver Lake Technology Management, LLC ("Silver Lake") seeking documents

20       and noticing Silver Lake's 30(b)(6) deposition for December 16.  On November

21       19, 2024, Silver Lake served responses and objections to the subpoena's

22       document requests, and on December 4, 2024, Silver Lake served responses

23       and objections to the 30(b)(6) deposition topics.  On December 5, 2024,

24       Automattic took the 30(b)(6) deposition date off calendar but did not withdraw

25       the subpoena.

26   **B.**    **The Scope of Anticipated Discovery**

27      **1.**     **Plaintiff's Statement**

28

Plaintiff anticipates it will take further written discovery, including by serving requests for admissions and additional interrogatories and RFPs.  Plaintiff also intends to take depositions of Defendants and their officers and employees.

Plaintiff intends to subpoena documents and potentially testimony from third parties, including (a) Defendant Mullenweg's investment company Audrey Capital, LLC; (b) certain of Defendants' former employees; and (c) various web hosts that have been the target of Defendants' financial and purported licensing demands.

The scope of Plaintiff's anticipated discovery includes the following subjects, many of which are also addressed by Plaintiff's previously served interrogatories and RFPs:

1. Defendants' "nuclear" campaign against WPE;

2. Defendants' efforts to block / change WPE's and its customers' access to wordpress.org, including suspending accounts, adding a checkbox, and any other efforts;

3. Defendants' interference with WPE customer relationships and employee relationships;

4. Defendants' takeover of the ACF plugin, plans to take over any other plugin, and statements regarding same;

5. Defendants' access to WPE's customers' computers without authorization in connection with Defendants' expropriation of the ACF plugin;

6. Customer confusion regarding the SCF plugin, including confusion regarding approval of SCF by WPE and applicability of ACF's reviews, ratings, and download counts to SCF;

7. The ownership, management, organizational structure, and relevant financial information of Automattic, wordpress.org, and the WordPress Foundation;

8. The ownership of the Challenged Terms and any transfer of ownership or rights to the Challenged Terms;

9. Any licensing of or enforcement efforts (or lack thereof) concerning the Challenged Terms referenced in Automattic and WooCommerce, Inc.'s September 23, 2024 letter, including communications with potential licensees;

10. Defendants' past and current policies, practices, demands, and efforts regarding licensing of any of the Challenged Terms;

11. Defendants' extortive threats and demands to WPE and others;

12. Any evidence of alleged confusion in the marketplace related to WPE's alleged use of the Challenged Terms;

13. Statements made by Defendants regarding WPE, including the defamatory statements referenced in the Amended Complaint, and Defendants' claimed basis for same;

14. Defendants' knowledge regarding the subjects of their defamatory statements concerning WPE, including Defendants' knowledge regarding the falsity of these statements;

15. The scope of Mullenweg's employment at Automattic and elsewhere;

16. Defendants' knowledge of WPE's and others' use of the Challenged Terms on their websites and marketing materials over the past many years;

17. Documents related to Automattic's investment in WPE and 2018 buyout;

18. Documents related to wordpress.org's and Defendants' statements that WordPress and the wordpress.org portal would remain free, open, and accessible for all, including statements promising open access to the WordPress GPL code base and the resources available on wordpress.org, including the plugin and theme directories, forums, message boards, and other resources;

19. Documents related to Defendants' statements and omissions regarding the ownership and/or control of wordpress.org;

20. Documents related to the public's understanding regarding the ownership and/or control of wordpress.org;

21. Documents regarding new trademark applications for Hosted WordPress, Managed WordPress, and Hosted WooCommerce;

22. Defendants' dominance and monopoly power in the web content management systems market, WordPress web hosting services market, WordPress custom field plugin market,

and WordPress plugin distribution market, as well as Defendants' use of their monopoly power;

23. Defendants' attempts to acquire monopoly power in the web content management systems market, WordPress web hosting services market, WordPress custom field plugin market, and WordPress plugin distribution market;

24. Defendants' illegal tying conduct and the effects of the same;

25. The extent to which Defendants have been unjustly enriched by WPE's contributions to WordPress and co-opting WPE's ACF software.

26. Defendants' financial information, including revenue and profits; and

27. Defendants' defenses and affirmative defenses, if any.

Defendants now indicate they intend to move for a stay of all discovery pending a ruling on Defendants' motion to dismiss. Any request for a stay should be rejected.  First, Defendants cannot meet the high standard required for a stay because their pending motion does not address all claims and will not resolve the entire case.  Dkt. 75 at 1 ("The motion does not challenge four [of WPE's] claims").  Second, Defendants have already served extensive discovery requests on WPE, in response to which WPE produced more than 17,500 pages of documents, yet Defendants have refused to produce any documents to date or even to provide written responses to WPE's document requests.  Thus, Defendants are effectively requesting an unwarranted and unprecedented one-way discovery stay.  Third, Defendants should not be permitted to disregard the Federal Rules by failing to respond to discovery for months, and then retroactively attempt to legitimize their behavior by seeking a stay they effectively granted themselves without leave of Court.

### 2. Defendants' Statement:

Defendants intend to request a stay of discovery until after the resolution of their pending Motion to Dismiss and Strike Plaintiff's Amended Complaint, on the grounds that the proper scope of discovery will be dictated in large part by the resolution of that Motion. A stay is necessary and appropriate in light of recent developments in the case, all of which postdated the parties' previous Rule 26(f) conference and exchange of initial discovery requests, including (1) Plaintiff's filing of

an Amended Complaint adding nine new causes of action, including antitrust claims, which fundamentally alter the nature and scope of legal and factual issues in the case; (2) Defendants' filing of a Motion to Dismiss and Strike, which remains pending; and (3) the substitution of defense counsel in late January 2025. Defendants contend that it is inefficient for the parties to engage in discovery at this juncture, in light of the foregoing considerations.

Defendants anticipate that once discovery resumes, they will take further written discovery, including by serving requests for admissions and additional interrogatories and RFPs, deposition notices, and third-party discovery on the following and other subjects, without limitation:

1. Plaintiff's and its investors' strategic plans and efforts to monetize and freeride on the WordPress open-source community to maximize its investors' return on investment;

2. Plaintiff's misuse of Defendants' trademarks and efforts to sow and/or capitalize on customer confusion arising from such misuse;

3. Plaintiff's modification of WordPress and/or disabling of WordPress features in connection with its products and services;

4. Customer complaints regarding Plaintiff's products and services;

5. Security issues related to Plaintiff's plugins and/or modification of WordPress features;

6. Plaintiff's failure to make adequate contributions and commitments to the WordPress community;

7. Plaintiff's organizational structure, management, ownership, and operational systems;

8. Plaintiff's and its investors' business plans and strategic initiatives, including strategic efforts to profit from Plaintiff's participation the WordPress open-source community;

9. Plaintiff's communications regarding Defendants, WordPress.org, WordPress.com, and/or the WordPress Foundation; and

10. Plaintiff's financial information, including financial projections, revenues, and profits.

Defendants propose that all discovery be stayed, as is common in cases involving antitrust claims. *See, e.g.*, *Arcell v. Google*, 2022 WL 16557600, at *1 (N.D. Cal. Oct. 31, 2022) (staying discovery and holding that "discovery in antitrust cases tends to be broad, time-consuming and expensive") (quotations omitted). The vast majority of WPE's claims are subject to a pending

1   motion to dismiss and strike. Many of the existing RFPs (addressed further below) relate to several

2   claims that are in glaring conflict with the First Amendment. *See Herring Networks, Inc. v. Maddow*,

3   8 F.4th 1148, 1160 (9th Cir. 2021). And they predate WPE's addition of (equally deficient) antitrust

4   claims, which if they remain in the case could result in significant additional discovery requests

5   beyond what WPE already has served. Defendants do not propose a "one-way" stay of discovery,

6   and since the Amended Complaint and retention of new counsel, will wait to serve any additional

7   requests or demand further compliance with any previous requests until the stay is denied or, if the

8   stay is granted, until it is lifted. Defendants will present their further arguments to the Court

9   regarding a proposed stay of discovery through an appropriate motion or joint letter brief.

10            **C.        Proposed Limitations or Modification of the Discovery Rules**

11            During the Rule 26(f) conference, the parties agreed that they would negotiate a schedule

12   for the simultaneous exchange or privilege logs.  Plaintiff proposes, as permitted under Rule I.(5)

13   of the Court's standing order, that (1) the Parties commit to first exchanging privilege logs on

14   March 3, 2025, or two weeks after Defendants' first production of documents, whichever is later,

15   and (2) commit to making a second exchange of privilege logs on October 2, 2025, one week after

16   Plaintiff's proposed date for the substantial completion of production of documents.  Plaintiff also

17   proposes that the Parties' obligation to produce privilege logs be limited to documents and

18   communications created before October 2, 2024, the date the original complaint in this action was

19   filed.

20            Defendants contend that it is premature to determine a schedule for exchanging privilege

21   logs in light of the fact that (1) Defendants intend to seek a stay of discovery until after the

22   resolution of their Motion to Dismiss and Strike, which will determine the scope of legal and

23   factual issues for discovery; and (2) the parties have not agreed upon other related dates, including

24   a discovery cutoff date. Defendants have told Plaintiff that they are willing to meet and confer

25   regarding a mutually agreeable schedule for the exchange of privilege logs.

26            Other than as set forth above, the Parties do not currently propose any modifications to the

27   discovery limits set under the Federal Rules of Civil Procedure.  All Parties reserve the right to ask

28   for additional discovery (including additional depositions, additional time for certain depositions,

and additional interrogatories), as discovery unfolds.

**D.    Whether the Parties Have Considered Entering into a Stipulated E-Discovery Order**

The parties have not entered into an e-discovery stipulation.

**E.    Discovery Schedule**

The parties propose the schedule for discovery set forth in Section XV below.

**F.    Identified Discovery Disputes:**

    **1.    Plaintiff's Statement:**

        **(a)    Plaintiff's First Set of RFPs to Defendants**

WPE served RFPs on November 6, 2024.  Defendants failed to serve responses to WPE's RFPs, instead claiming that responding to the 119 requests was unduly burdensome, and indicating their intention to seek a protective order.  The parties met and conferred, discussing WPE's claim of entitlement to written responses and production of responsive documents, and Defendants' claim of entitlement to a protective order.  No agreement was reached.  On December 6, 2024 at 8:37 pm PT, Defendants emailed WPE their portion of a draft joint statement regarding this discovery dispute, requesting WPE's portion by December 12.  Following the parties' exchange of several rounds of revisions, on January 31, 2025. WPE authorized Defendants to file the joint statement. To date, Defendants have not filed the joint statement, nor served written responses or produced documents.  Thereafter, on February 4, 2025, WPE sent Defendants its portion of a Joint Statement on WPE's motion to compel these same responses and documents.

As discussed in Plaintiff's portion of the Joint Statement, Defendants' motion for a protective order, should they proceed with filing it, should be denied.  Defendant has no colorable basis for refusing to even respond to Plaintiff's RFPs.  In this case, WPE asserts 20 causes of action arising from Defendants' self-proclaimed nuclear war against WPE.  The Court has issued a preliminary injunction order enjoining Defendants from their ongoing wrongful conduct, both parties have served document requests, and WPE already has produced thousands of pages of documents in response to Defendants' requests.  Despite this, Defendants now seek a protective order asking to be excused from their discovery obligations.  However, WPE's requests are

appropriate, and Defendants should be ordered to serve responses immediately.  Moreover, any objections Defendants have should be deemed waived because they failed to serve objections or move for a protective order by their deadline to respond to the RFPs.

WPE is also cross-moving to compel Defendants to respond to Plaintiff's First set of RFPs. As explained in the parties' Joint Statement regarding same, despite being served with RFPs more than 100 days ago, Defendants have not responded to WPE's requests, nor produced any documents. Defendants have no colorable excuse for their failure to respond to WPE's discovery requests.  By failing to respond to WPE's RFPs by their December 6, 2024 deadline, Defendants have waived any objections.  Defendants should be ordered to respond to WPE's requests and WPE should be awarded its related attorney's fees in being forced to bring a motion on this issue.

**(b)    Defendants' Responses to Plaintiff's First Set of Interrogatories**

On January 17, 2025, Plaintiff sent Defendants a letter indicating that Defendants' responses to Plaintiff's Interrogatory Nos. 1-6 and 9 are deficient and that Defendants' responses as a whole are deficient because they are unverified.  To date, Defendants have not responded to WPE's letter.

Defendants' responses to Plaintiff's Interrogatories as a whole are deficient because Defendants have failed to provide the required verifications.  Further, Defendants' responses to Interrogatory Nos. 1-6 and 9 are deficient in various respects.  For instance, Defendants have offered only partial responses by responding "by way of example only" (Interrogatory No. 2); limited the scope of their responses to only certain facets of Plaintiff's interrogatories (Interrogatory Nos. 3, 5, 9); and appear to be withholding discoverable, nonprivileged information under the guise of privilege objections (Interrogatory Nos. 1, 6).  Further, although Defendants have agreed to "meet and confer with WP Engine regarding a narrowed scope" for Interrogatory No. 4, Defendants have yet to respond to Plaintiff's request for a date on which they are available to meet and confer.

**(c)    Defendants' Failure to Preserve Documents**

The Parties have a pending dispute as to whether Defendants are properly preserving documents and electronically stored information.  Defendants have made public statements about deleting materials relevant to the lawsuit.  Plaintiff and Defendants have exchanged several letters and emails regarding this issue, and the Parties' meet-and-confer process is ongoing.  Because

1  Defendants have failed to produce even a single page of documents, the full extent of Defendants'
2  potential failure to preserve is not yet known.

3       **2.    Defendants' Statement:**

4       Plaintiff's characterization of the status of discovery and related "disputes" between the
5  parties is inaccurate, both with respect to whether disputes exist, and where they do exist that they
6  are ripe for the Court's intervention.  While it appears the meet and confer process between the
7  parties stalled, Plaintiff and Defendants' new counsel have just begun the meet and confer process,
8  which, so far, has been successful in resolving "disputes" where they actually exist.  Plaintiff's
9  attempt to litigate these discovery issues through a Case Management Statement, and before meet
10  and confer efforts have progressed in earnest, let alone been exhausted, is improper under Section I
11  of the Court's Standing Order.

12      Defendants' new counsel appeared in this case on January 24, 2025.  *E.g.*, Dkt. 79.  In the
13  less than one month since then, WPE has delivered three draft letter briefs and four letters about
14  matters it had let sit for weeks, and in some instances well over a month, before new counsel
15  appeared.  Whether or not WPE's newfound urgency was genuine, Defendants' new counsel has
16  investigated all of the issues raised promptly and sought to avoid burdening the Court.  For example,
17  Defendants' new counsel agreed to a compromise that mooted a WPE letter brief as to the entry of
18  a protective order.  Dkt. 103.

19      With respect to Plaintiffs' RFPs, new counsel and Plaintiffs discussed them for less than five
20  minutes in early February 5 during a meet and confer on other issues.  Still, Defendants told WPE
21  they were investigating the issues and have done so.  WPE nevertheless followed up days later with
22  yet another letter brief (a motion to compel) and said it would file the motion unilaterally unless
23  Defendants provided their portion within days.  Defendants provided their response on February 14,
24  and Plaintiffs have (consistent with prior practice) not done anything to get the statement on file
25  with the Court since then.

26      In short, Plaintiffs' representations regarding prior counsel's efforts to resolve the RFPs
27  dispute are not accurate.  Defendants objected in writing within hours of receiving the 238 RFPs
28  (119 identical RFPs to each Defendant) on February 7, one week before WPE amended its complaint

to add antitrust and other claims.  *See* Dkt. 51.  That same day, November 14, 2024, Defendants informed WPE that they wanted to quickly bring the dispute to the Court via joint telephone conference.  WPE refused.  Defendants then provided their portion of a joint letter brief for a motion for a protective order to WPE on December 6, less than 30 days after they received the RFPs.  Since then, the parties have exchanged multiple drafts.  Always intent to have the last word, Plaintiff's revisions have delayed the resolution of this matter for more than eight weeks.

Defendants maintain their long-stated objections to the 238 total RFPs, but to try to avoid burdening the Court, Defendants informed WPE they will produce responses and objections to WPE's RFPs by next week.  Defendants will be producing responsive, non-privileged documents as soon as reasonably practicable.  Defendants asked if WPE would agree that Defendants' objections would be timely and withdraw its threatened motion to compel.  WPE refused.  As WPE refused to stipulate, Defendants' portion of the joint letter brief that WPE has not filed asked the Court to extend the deadline for Defendants to provide responses/objections until February 26, 2025.

Defendants will continue to investigate the matters raised by WPE and diligently seek to resolve them without the need for Court intervention.   New counsel does not want to provide rushed representations and responses that are not accurate.  To the extent the parties are unable to resolve any discovery issues (including those raised by Defendants), Defendants propose that those issues be raised to the Court through an appropriate joint letter brief pursuant to the Court's Standing Order once meet and confer efforts have been exhausted.

**IX.    CLASS ACTIONS [*If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.*]**

Not applicable.

**X.    RELATED CASES [*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*]**

None.

**XI.    RELIEF [*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are***

*calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.]*

WPE seeks remedies to address the harm caused by Defendants' alleged misconduct.  This includes monetary damages, encompassing compensatory damages for actual losses incurred, such as lost profits and business opportunities, damage to reputation and goodwill, and expenses incurred in mitigating the harm.  The specific amount of monetary damages will be determined through discovery and expert testimony and presented at the appropriate time.  WPE also seeks restitution, disgorgement, imposition of a constructive trust, exemplary and punitive damages, costs, fees, pre-judgment interest, post-judgment interest, and any other damages the Court may deem appropriate.  WPE also seeks an injunction to make permanent the preliminary injunctive relief the Court already ordered in its December 10, 2024 order granting WPE's Motion for Preliminary Injunction.  Dkt. 64.  WPE also seeks a judgment declaring that it does not infringe or dilute any enforceable, valid trademarks owned by Automattic, that Automattic may not enforce any purported trademark rights on grounds of trademark misuse, and such further relief as set forth in the Amended Complaint. Dkt. 51.

Defendants contend that Plaintiff is not entitled to any of the relief identified in the foregoing paragraph or requested in the Amended Complaint.

**XII.    SETTLEMENT AND ADR [***Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.***]**

As required by ADR Local Rule 3.5(a), the Parties met and conferred on December 18, 2024, to select an ADR process and filed their ADR Certifications on the same day.  Dkts. 65-67.  The parties are amenable to either private mediation or a settlement conference with a magistrate judge, to occur within 90 days of the Court's Case Management Order, pursuant to ADR Local Rule 3-7.

**XIII.    OTHER REFERENCES [***Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.***]**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

-22-

**XIV.  NARROWING OF ISSUES [*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses. The parties shall jointly identify (in bold or highlight) one to three issues which are the most consequential to the case and discuss how resolution of these issues may be expedited.*]**

Defendants contend that their pending Motion to Dismiss and Strike is likely to narrow the issues in the case. Plaintiff contends that, for the reasons set forth in Plaintiff's Opposition to Defendants' Motion to Dismiss and Strike, Defendants' Motion should be denied in full and thus will not narrow any of the issues in the case.  Separate and apart from that Motion, the parties are not aware of any issues that can be narrowed at this time and do not currently have any suggestions to expedite the evidence at trial.  The parties do not wish to bifurcate issues, claims, or defenses in this action.

**XV.   SCHEDULING [*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*]**

Plaintiff proposes the following schedule:

| Event | Plaintiff's Proposed Date |
|---|---|
| **First Exchange of Privilege Logs** | Monday, March 3, 2025, or two weeks after Defendants' first production of confidential documents, whichever is later. |
| **Deadline to Complete Court Ordered ADR Process** | May 30, 2025 (or 90 days after issuance of the Court's Case Management Order) |
| **Substantial Completion of the Production of Documents** | Thursday, September 10, 2025 |
| **Second Exchange of Privilege Logs** | Thursday, October 2, 2025 |
| **Non-expert discovery cutoff** | Thursday, November 20, 2025 |
| **Expert reports for the party bearing the substantive burden of proof on an issue** | Thursday, January 15, 2026 |

| | |
|---|---|
| **Expert reports for the party not bearing the substantive burden of proof on an issue** | Thursday, February 26, 2026 |
| **Expert discovery cutoff** | Thursday, March 19, 2026 |
| **Deadline for Defendants to file their dispositive motion** | Thursday, April 9, 2026 |
| **Deadline for Plaintiff's combined cross-dispositive-motion and opposition to Defendants' dispositive motion** | Thursday, May 14, 2026 |
| **Deadline for Plaintiff's Daubert motion(s)** | Thursday, May 14, 2026 |
| **Deadline for Defendants' combined opposition to cross-dispositive-motion and reply in support of Defendants' dispositive motion** | Thursday, June 11, 2026 |
| **Deadline for Defendants' Daubert motion(s) and opposition(s) to Plaintiff's Daubert motion(s)** | Thursday, June 11, 2026 |
| **Deadline for Plaintiff's reply in support of cross-dispositive-motion** | Thursday, July 2, 2026 |
| **Deadline for Plaintiff's reply in support of Plaintiff's Daubert motion(s) and opposition(s) to Defendants' Daubert Motion(s)** | Thursday, July 2, 2026 |
| **Deadline for Defendants' reply in support of their Daubert motion(s)** | Thursday, July 16, 2026 |
| **Deadline to hear dispositive motions** | Thursday, August 27, 2026 at 2:00 p.m. |
| **Pretrial conference** | Thursday, October 1, 2026 at 11:00 a.m. |
| **Trial** | Tuesday, November 3, 2026 at 8:30 a.m. |

Defendants' propose the following schedule, which could be shortened in the event the Court

grants Defendants' Motion to Dismiss:

| Event | Proposed Date |
|---|---|
| **Non-expert discovery cutoff** | Thursday, March 19, 2026 |

| | |
|---|---|
| **Designation of experts and opening expert reports** | Thursday, April 16, 2026 |
| **Designation of rebuttal experts and rebuttal expert reports** | Thursday, May 14, 2026 |
| **Expert discovery cutoff** | Thursday, June 18, 2026 |
| **Deadline to file dispositive motions** | Thursday, July 16, 2026 |
| **Deadline to file oppositions to dispositive motions and related Daubert motions** | Thursday, September 3, 2026 |
| **Deadline to file replies in support of dispositive motions and related Daubert oppositions** | Thursday, October 15, 2026 |
| **Deadline to file replies to Daubert motions** | Thursday, November 12, 2026 |
| **Hearing on dispositive motions** | Thursday, January 14, 2027 |
| **Pretrial conference** | To be set by Court |
| **Trial** | |

XVI.   **TRIAL [*Whether the case will be tried to a jury or to the court and the expected length of the trial.*]**

Plaintiff has demanded a jury trial on all claims so triable.  Plaintiff estimates the trial will require approximately 10-15 days.  Defendants estimate that the trial will require approximately 5-10 days, depending on the scope of the issues remaining after motion practice.

XVII.   **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS [*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In  addition, each party must restate in the case management statement the contents of its  certification by identifying any persons, firms, partnerships, corporations (including  parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.*]**

All Parties have filed Certifications of Interested Entities or Persons pursuant to Civil Local Rule 3-15.  Pursuant to section 17 of the Standing Order for All Judges of the Northern District of California:

1.  WPE hereby restates "the contents of its certification" by restating the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the  proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

    (a)    WPEngine, Inc.

    (b)    SLP Cannonball Holdings, L.P.

    (c)    North Bridge Growth Equity II, L.P.

    (d)    Shareholders who own less than 10% of WPEngine, Inc.

2.  Defendants hereby restate "the contents of [their] certification[s]" as follows: Automattic Inc. has no parent corporation.  Salesforce is a publicly held corporation which owns 10% or more of Automattic's stock.  The following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

    (a)    Automattic Inc.

    (b)    Matthew Charles Mullenweg

    (c)    WordPress Foundation (owner of trademarks implicated by proceeding)

    (d)    Tiger Global (shareholder of Automattic Inc.)

    (e)    Shareholders who own less than 10% of Automattic Inc.

## XVIII. PROFESSIONAL CONDUCT [*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*]

Attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

1  **XIX.    OTHER [*Such other matters as may facilitate the just, speedy and inexpensive
        disposition of this matter.*]**

2

3          The Parties are unaware of other matters that may facilitate the just, speedy and inexpensive

4  disposition of this matter.

5

6  Dated:  February 20, 2025                    Respectfully submitted,
                                              QUINN EMANUEL URQUHART & SULLIVAN LLP

7
                                              By */s/ Rachel Herrick Kassabian*
8                                                 Rachel Herrick Kassabian
                                                  *Attorneys for Plaintiff, WPEngine, Inc.*
9

10                                            GIBSON, DUNN & CRUTCHER LLP

11
                                              By */s/ Rosemarie T. Ring*
12                                                Rosemarie T. Ring
                                                  *Attorneys for Defendants Automattic Inc. and*
13                                                *Matthew Charles Mullenweg*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## E-FILING ATTESTATION

2        Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for

3 Defendants has concurred in this filing.

4 Dated: February 20, 2025            Respectfully submitted,
                               QUINN EMANUEL URQUHART & SULLIVAN LLP

5

6                           By */s/ Rachel Herrick Kassabian*

7                               Rachel Herrick Kassabian
                              *Attorneys for Plaintiff, WPEngine, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28