Michael Willman

5 Mecca Lane Washington, ME 04574

1 (207) 242-4767

michael@websiteredev.com

Pro Se

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

WPENGINE, INC., a Delaware corporation,

    Plaintiff,

  v.

AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 3:24-cv-06917-AMO

**REPLY TO OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE AGAINST DEFENSE COUNSEL**

JUDGE: Hon. Araceli Martinez-Olguin

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

*Adkins v. E.I. du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

5

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

6

*Boddie v. Connecticut*, 401 U.S. 371, 377 (1971).

7

*Bounds v. Smith*, 430 U.S. 817, 824–25 (1977).

8

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991).

9

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)

10

*Fidelity National Title Insurance Co. v. Castle*, No. 11-CV-00896-SBA, 2011 WL 5882887, at *3 (N.D. Cal. Nov. 23, 2011).

11

*Hamer v. Career College Ass'n*, 979 F.2d 758, 759 (9th Cir. 1992).

12

*In re Cooke*, 551 B.R. 182, 189 (N.D. Cal. 2016).

13

*In re Gonzalez*, 980 F.2d 1415, 1417 (11th Cir. 1993).

14

*In re Itel Securities Litigation,* 791 F.2d 672, 675 (9th Cir. 1986).

15

*In re Mitchell*, 901 F.2d 1179, 1187 (3d Cir. 1990).

16

*In re Snyder*, 472 U.S. 634, 643 (1985).

17

*Lewis v. Casey*, 518 U.S. 343, 350–51 (1996).

18

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949).

19

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982).

20

*Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001).

21

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945).

22

*United States v. Bagdasarian*, 652 F.3d 1113, 111819 (9th Cir. 2011).

*United States v. Cronic*, 466 U.S. 648, 662 (1984).

*United States v. Dillard*, 795 F.3d 1191, 1201 (10th Cir. 2015).

*United States v. Fernandez*, 892 F.2d 976, 987 (11th Cir. 1989).

*United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974).

*United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir. 1987).

*United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009).

*United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).

*Virginia v. Black*, 538 U.S. 343, 359 (2003).

*Watts v. United States*, 394 U.S. 705, 708 (1969).


**Statutes and Rules**

Fed. R. Civ. P. 11.

Model Rules of Prof'l Conduct r. 3.3 (Am. Bar Ass'n 2023).

Northern District of California Civil Local Rule 11-5(a).

18 U.S.C. § 1030 (2023).

## I.    INTRODUCTION

Defense counsel's opposition to my Motion for an Order to Show Cause is built on procedural technicalities and mischaracterizations of the facts rather than addressing the core issue of misconduct. Instead of confronting the false statements made in prior filings, defense counsel attempted to evade accountability by claiming that procedural barriers prevent this Court from addressing the issue. This argument is both legally and factually flawed.

First, defense counsel argued that my motion is procedurally barred due to defense counsel's withdrawal. However, this claim fails because defense counsel has not properly withdrawn under the Northern District of California's rules, which require a Motion to Substitute Firm and an accompanying Proposed Order, neither of which was filed with the court by the new defense counsel. As such, due to their improper withdrawal from the court, Lauren Chen and her associates remain counsel of record for the Defendants. This includes Neal Katyal, who is not named in this opposition and has since left the employ of Hogan Lovells.

Second, defense counsel further argues that my motion is procedurally barred due to Rule 11's safe harbor provision. However, these safe harbor provisions apply only to a direct motion for sanctions, not a motion for order to show cause. Unlike a motion for sanctions, a motion for order to show cause simply asks the court to evaluate the statements made by defense counsel, and determine whether further justification for these statements are required. It is only at this point that defense counsel would be ordered to show cause, and at that point the safe harbor provisions would apply.

Though my motion for order to show cause does mention sanctions, it is only in reference to the implicit authority of the Court to issue such sanctions, after an order to show cause is given and the safe harbor provisions are met. Moreover, even if Rule 11's procedural requirements were applicable and disqualifying in this instance, the Court has inherent authority to issue an Order to Show Cause and correct misleading statements that have tainted these proceedings regardless of

whether it upholds this motion. Thus, the Court does not require this motion to meet any procedural standards for an Order to Show Cause to be granted.

Moving on from the procedural arguments, defense counsel's opposition fails to rebut the substantive basis for my motion. Their response relies on conclusory statements and selective evidence, avoiding direct engagement with the documented misrepresentations made in their filings. Instead of refuting my claims with factual evidence, defense counsel attempt to shift focus by making unfounded accusations against me, including claims of "harassment" that are contradicted by the record. If their accusations were valid, they would present clear evidence instead of vague assertions. The only evidence they present is a single comment made after their clients breach of the preliminary injunction, yet they continue to misrepresent the order of events and act as if it justifies the breach itself in an ex post facto manner.

Notably, defense counsel continued their pattern of misbehavior when they falsely attributed statements made by a third party to me in their opposition. In an attempt to misrepresent my statements, they shared an image under the caption "Mr. Willman Concedes" and claimed that I admitted to being "only banned after egging Matt on." However, the text they quote was not my statement but rather a quote from a Reddit commenter that I was responding to and actively refuting. This is a blatant misrepresentation of the record and directly contradicts the very evidence defense counsel submitted.

Defense counsel also attempted to downplay the impact of their actions by insisting that their misrepresentations were justified. However, the record establishes that defense counsel knowingly or recklessly misrepresented key facts, including the scope of the preliminary injunction and the status of my Slack account. In their correspondence with Quinn Emanuel, they attempted to massively reduce the definition of "Related Entities", a term that is clearly defined by the Court in the text of the injunction. They justify this by stating that only WP Engine could define this full list, yet this statement is false on its face.

As the primary distributor of the free and open source Advanced Custom Fields plugin, which is mentioned repeatedly in the injunction by the Court, it is Matt Mullenweg and not WP Engine who is best equipped to define the users of this plugin. Use of a free Wordpress plugin does not require authentication with the plugin provider, but a record of each download is kept by the Wordpress.org team. Such user data is not provided to plugin developers who host their open source products on the Wordpress.org plugin repository. For this and other reasons, any argument that they needed WP Engine to define a list of customers for the Advanced Custom Fields plugin is false. It is also clear that WP Engine's response did not include any customers or users of WP Engine's hosting services, only their direct employees and contractors. These misrepresentations are an overt attempt to mislead the court and circumvent a direct court order. No reasonable individual could take WP Engine's statement as definitive.

When it comes to the status of my deactivated Slack account, defense counsel continues their misrepresentation of my arguments and the facts at play. At no point in any of my filings do I claim that my second personal Make.Wordpress.org slack account was deactivated. I refer only to my primary business-focused Make.Wordpress.org slack account, located at my primary email address "michael@websiteredev.com". This account was deactivated by Matt Mullenweg and remains deactivated to this day. It is the second account, that was created after the first account was deactivated, that remains active. Furthermore, Matt Mullenweg has stated clearly on Slack (as repeated in Defense's own filing) that I am "not welcome in (that) space", an order which I have honored other than to post a single public message proving my accounts continued access to the Make.Wordpress.org slack server, and to question the user mentioned in Defense's prior flings via Direct Message as this was the only method I had to contact them. Until action is taken against the Defendant for violating the injunction, my name and image remain associated with a banned Make.Wordpress.org account in a manner which is itself defamatory. This reality is far from the false picture that the defense attempts to paint. Defense counsel furthers their misrepresentation when they

attempt to paint their characterization of my statement being a "physical threat" as simply a quotation of their client and his perception of my statement. However, in the legal filings and statements made by Matt Mullenweg, as well as the legal filings of Hogan Lovells, it has been repeatedly stated as fact that I did threaten Matt Mullenweg, not simply that he "perceived" my comments to be a "physical threat". For example, one of the headings in their opposition is "Mr. Willman Did Physically Threaten Mr. Mullenweg". Far from retracting their false statements, or limiting their own statements to a retelling of their clients perceptions, this text directly accuses me of committing a criminal act. These statements and filings were made in a court of law, under a legal standard that requires them to pursue a reasonable inquiry into the facts before they present them. As no reasonable person could believe that I had the intent or means to cause violence, or that my statements themselves represented a desire or threat to cause violence, the repeated representation of these statements as a physical threat do not meet this standard.

For these reasons, an Order to Show Cause is warranted. This Court should not allow misleading statements to remain unchallenged, nor should it permit attorneys to escape responsibility for their conduct through procedural maneuvers. My motion seeks to uphold the integrity of these proceedings and ensure that defense counsel is held accountable for their actions. Accordingly, I respectfully request that this Court issue an Order to Show Cause and require defense counsel to justify their misstatements.

## II.    LEGAL STANDARD

The Court has the inherent authority to issue an Order to Show Cause where there is reason to believe that counsel has engaged in misconduct that impacts the fairness and integrity of the proceedings. This authority extends beyond Rule 11 sanctions and includes the Court's ability to regulate the conduct of attorneys appearing before it to ensure compliance with professional and ethical obligations. *See Chambers v. NASCO, Inc., 501 U.S. 32 (1991) (holding that courts possess the inherent power to sanction misconduct and preserve the integrity of judicial proceedings).* That is

especially true in this case, where Defense Counsel have acted in bad faith and with an improper purpose, in an effort to mislead the Court. Their attempt to circumvent the scope of the preliminary injunction is particularly egregious. *See Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) (holding that bad faith is required for inherent power sanctions and sanctions are permissible when an attorney has acted recklessly if there is something more — such as an improper purpose)*

Additionally, Rule 11 of the Federal Rules of Civil Procedure provides that attorneys must ensure that factual contentions presented to the Court have evidentiary support and are not misleading. While defense counsel attempts to argue that the safe harbor provision bars this motion, that provision applies only to motions for sanctions initiated by a party, not to the Court's own authority to issue an Order to Show Cause sua sponte. Courts have routinely held that when attorney misconduct materially affects the proceedings, the Court has the discretion to intervene regardless of whether Rule 11 procedures have been strictly followed.

Moreover, ethical obligations under the American Bar Association (ABA) Model Rules and the Northern District of California's local rules reinforce the requirement that attorneys practice candor toward the tribunal. Attorneys have an ongoing duty to correct misstatements, even after withdrawal, when their prior representations remain on the record and continue to influence the Court's understanding of the case. See ABA Model Rule 3.3 (Candor Toward the Tribunal), which requires attorneys to correct false statements of material fact or law, regardless of when they were made.

In light of these established legal principles, the Court has the authority and discretion to issue an Order to Show Cause requiring defense counsel to explain their prior misrepresentations, procedural failures, and ethical lapses. Doing so is necessary to protect the fairness of the proceedings and to ensure that all counsel appearing before the Court are held to the highest professional standards.

### III. DEFENSE'S PROCEDURAL ARGUMENTS FAIL

**A.  Defense Counsel Failed to Properly Withdraw and Thus Could Still Be Served**

Defense counsel argues that they were not properly served because they had withdrawn from the case at the time my Motion for an Order to Show Cause was filed. However, this claim is incorrect, as defense counsel failed to properly withdraw under the Northern District of California's rules governing attorney withdrawal. As a result, they remained counsel of record at the time of filing and were still obligated to accept service.

The Northern District of California requires that attorneys seeking to withdraw file a proper notice of withdrawal that complies with the district's procedural requirements. Specifically,when one firm seeks to replace another, the filing attorney must file a Motion to Substitute Firm and an accompanying Proposed Order, both of which must be accepted by the Court before withdrawal is considered complete. *See N.D. Cal. Civil Local Rule 11-5(a) ("Counsel may not withdraw from an action until relieved by order of the Court after written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case.").* Defense counsel failed to comply with these requirements, meaning that they remained the attorneys of record when my motion was filed and served through the Court's electronic filing system.

Courts have consistently held that failure to properly withdraw under the applicable rules means that an attorney remains counsel of record and is still bound by all obligations of representation. See Fid. Nat'l Title Ins. Co. v. Castle, No. 11-CV-00896-SBA, 2011 WL 5882887, at *3 (N.D. Cal. Nov. 23, 2011) (holding that failure to obtain court approval for withdrawal leaves counsel bound by all procedural rules, including service requirements).* Because defense counsel remained on record, my electronically filed Motion for an Order to Show Cause was properly served upon them. Their attempt to evade responsibility by claiming they were no longer counsel fails both procedurally and substantively.

Moreover, even if defense counsel had properly withdrawn, attorneys remain responsible for ensuring the accuracy of prior filings and taking corrective action if they become aware of false statements made while they were representing a party. *See In re Gonzalez, 980 F.2d 1415, 1417 (11th Cir. 1993) (noting that withdrawal does not relieve attorneys of their ethical duty to correct material*

*misstatements made while they were counsel of record).* Their failure to do so further justifies the need for an Order to Show Cause to hold them accountable for their misrepresentations.

### B.  The Safe Harbor Provision Does Not Bar This Motion

Defense counsel argues that my Motion for an Order to Show Cause is barred by the safe harbor provision of Rule 11. This argument is misplaced, as my motion is not solely based on Rule 11 but also invokes the Court's inherent authority to address misconduct and ensure the integrity of these proceedings. The safe harbor provision of Rule 11 applies only to party-initiated sanctions motions under that rule and does not limit the Court's ability to issue an Order to Show Cause under its inherent authority. *See Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991) (holding that courts have the inherent power to impose sanctions beyond the constraints of Rule 11 when necessary to regulate conduct and protect the integrity of judicial proceedings).*

Moreover, even if Rule 11 were applicable, the safe harbor provision does not apply where the challenged conduct cannot be remedied by withdrawal or correction of the offending filing. *See Patelco Credit Union v. Sahni, 262 F.3d 897, 913 (9th Cir. 2001) (holding that sanctions were appropriate despite Rule 11 safe harbor requirements when the conduct at issue had already materially impacted proceedings and could not be undone)*. Here, defense counsel's misrepresentations and procedural failures have already influenced the Court's proceedings and continue to have an ongoing effect on this case. The purpose of the safe harbor provision is to provide an opportunity to correct an error before a sanctions motion is filed. However, in this case, defense counsel has made no effort to remedy their misstatements, despite having ample opportunity to do so. Their failure to take corrective action underscores the necessity of Court intervention.

Additionally, defense counsel's reliance on the safe harbor provision is further undermined by their improper withdrawal from the case. Because they remained counsel of record due to their failure to comply with withdrawal procedures, they were still subject to service, and the procedural requirements for notice of my motion were satisfied. Their attempt to use the safe harbor provision as a shield against accountability is therefore unavailing. *See In re Itel Sec. Litig., 791 F.2d 672, 675 (9th Cir. 1986) (noting that courts have the authority to address misconduct regardless of formal*

*procedural objections when fairness and justice require it).*

For these reasons, the safe harbor provision does not bar my Motion for an Order to Show Cause, and the Court retains full authority to address defense counsel's misconduct and misrepresentations in these proceedings.

### C.  Defense Counsel's Withdrawal Does Not Bar an Order to Show Cause

Defense counsel argues that their withdrawal from the case prevents this Court from issuing an Order to Show Cause regarding their prior misstatements. However, this argument is fundamentally flawed. An attorney's withdrawal does not absolve them of responsibility for false or misleading statements made while they were counsel of record. Courts retain the authority to address misconduct even after an attorney has withdrawn, particularly where their actions have impacted the fairness and integrity of the proceedings. *See In re Snyder, 472 U.S. 634, 643 (1985) (holding that courts have inherent authority to regulate the conduct of attorneys, including those who have withdrawn from a case).*

Here, defense counsel made materially false statements in court filings that continue to affect this case. Their withdrawal does not erase those statements, nor does it relieve them of their ethical duty to correct misrepresentations. The Court has an interest in ensuring the accuracy of the record and preventing attorneys from evading accountability simply by withdrawing from a case. *See In re Mitchell, 901 F.2d 1179, 1187 (3d Cir. 1990) (holding that withdrawal does not relieve attorneys of obligations to rectify prior misstatements or misconduct).* If defense counsel's argument were accepted, it would create a dangerous precedent where attorneys could escape responsibility for their conduct by strategically withdrawing after making misleading statements.

Moreover, defense counsel's withdrawal was improper under the Northern District of California's procedural rules, as they failed to follow the necessary steps to formally exit the case. Because their withdrawal was not properly executed, they remained counsel of record at the time of my filing and were still subject to this Court's oversight. Even if their withdrawal had been proper, their prior conduct remains a matter for this Court to review. In fact, the ability of the Court to review the conduct of parties in a case go beyond the dismissal of the case itself. As such, there can be no

doubt that the court has the ability to question the conduct of defense counsel. *See Cooter & Gell, 496 U.S. at 395 (sanctions can be imposed after dismissal because such issues are collateral)(affirming court's authority to impose sanctions and require explanations for prior misrepresentations even after counsel had withdrawn).*

The issuance of an Order to Show Cause serves the vital function of holding defense counsel accountable for their prior misstatements and ensuring that the integrity of these proceedings is maintained. Their attempt to use withdrawal as a shield from scrutiny is unpersuasive and should not prevent this Court from taking appropriate corrective action.

### D. Defense Counsel Has Remedies to Address Their Misconduct

Defense counsel contends that their withdrawal from this case renders them unable to take any corrective action regarding their prior misstatements. This argument is meritless. Attorneys have a continuing ethical obligation to correct false or misleading statements made to the Court, even after they have withdrawn from a case. Courts have consistently held that the duty of candor to the tribunal does not end with withdrawal and that attorneys must take reasonable steps to correct material misstatements. *See ABA Model Rule 3.3(a)(1) (requiring attorneys to correct false statements made to the tribunal).*

First, defense counsel could submit a letter to the Court acknowledging their misstatements and clarifying the record. Courts routinely accept such filings from attorneys who, upon recognizing an error, seek to ensure that the record accurately reflects the facts. *See United States v. Associated Convalescent Enters., Inc., 766 F.2d 1342, 1346 (9th Cir. 1985) (noting that attorneys have a duty to disclose and correct misstatements to maintain the integrity of judicial proceedings).*

Second, defense counsel could notify current defense counsel of their errors and request that a correction be filed on the docket. Attorneys who withdraw from a case still maintain professional responsibility to ensure that their prior filings do not mislead the Court. Simply notifying current counsel of the misstatements would allow the errors to be corrected through appropriate channels. *See In re Gonzalez, 980 F.2d 1415, 1417 (11th Cir. 1993) (holding that an attorney's duty to correct misrepresentations continues beyond their active representation in a case).*

Third, defense counsel has the option to file a motion to correct the record, even if they are no longer serving as primary counsel. Courts have recognized that attorneys who previously appeared in a case may still seek to amend or clarify prior filings when necessary to uphold the integrity of judicial proceedings. *See In re Cooke, 551 B.R. 182, 189 (N.D. Cal. 2016) (stating that withdrawal does not absolve an attorney of their duty to correct misrepresentations that have impacted the proceedings).*

Defense counsel's failure to pursue any of these available remedies further supports the necessity of an Order to Show Cause. Their inaction suggests a refusal to acknowledge or take responsibility for their prior misrepresentations, underscoring the need for judicial intervention to maintain the integrity of these proceedings.

### E. Procedural Barriers Necessitate In-Person Filing

Defense counsel asserts that my travel to Houston was unnecessary for filing legal claims and implies that I was aware of this fact. This assertion is based on a false premise and ignores the realities of pro se litigation procedures in Houston, as well as the practical challenges faced by individuals without access to electronic filing.

Unlike attorneys, pro se litigants cannot file motions or other court documents electronically in the Southern District of Texas, Houston Division. Instead, all filings must be submitted in person or by mail. Defense counsel's argument disregards this fundamental limitation, which made in-person filing the most viable option for initiating legal action in that jurisdiction. Courts have recognized that access to filing procedures is a fundamental aspect of due process. *See Boddie v. Connecticut, 401 U.S. 371, 377 (1971) (holding that access to the courts for filing claims is essential where procedural barriers would otherwise deny a litigant the opportunity to be heard).*

Living in a remote area with poor mail service makes litigating a case by mail impractical. USPS certified mail requires a return receipt to confirm delivery and provide proof of service, yet in this very case, I never received a return receipt for initial service and was forced to provide alternative proof of service in my filings. These issues highlight why attempting to conduct an entire legal proceeding via mail would be untenable, creating unnecessary delays and uncertainty that would

not exist if filings were submitted in person. Courts have also acknowledged that logistical difficulties, including those faced by pro se litigants, can impact their ability to comply with procedural requirements. *See Bounds v. Smith, 430 U.S. 817, 824-25 (1977) (holding that meaningful access to the courts must take into account practical barriers to filing and litigating cases).*

From a financial standpoint, filing in person was the most practical and cost-effective approach. Sending legal filings by mail incurs additional costs, such as postage, certified mail fees, and potential resubmissions due to lost or delayed documents. For someone experiencing financial hardship or homelessness, physically delivering filings eliminates these unnecessary expenses and ensures immediate processing. Filing in person removes the risk of lost documents and avoids delays that could interfere with court deadlines. Courts have held that delays caused by logistical barriers, particularly for pro se litigants, can constitute an undue burden on access to justice. *See Lewis v. Casey, 518 U.S. 343, 350-51 (1996) (finding that systemic impediments to legal access can violate a litigant's rights if they result in actual injury or an inability to pursue claims).*

Additionally, charges in this case involve potential violations of federal laws, such as the Computer Fraud and Abuse Act (CFAA), which carry the potential for criminal penalties. If a criminal case were to be initiated in Texas, the process would require the filing of an affidavit before a magistrate or a county or district attorney, which cannot be done remotely. In such instances, physical presence is required to initiate proceedings, further demonstrating the necessity of travel for legal action.

Furthermore, defense counsel ignores the clear context of my travel and my intent to facilitate legal action. My lack of travel at present is due to mechanical issues with my truck, which currently prevent me from towing my trailer until I can purchase a new tow vehicle. This financial and logistical limitation has temporarily constrained my ability to travel, further underscoring why prior discussions about legal action were based on real and immediate considerations. At the time of these discussions, I had already purchased a travel trailer as my primary residence, which allowed me the mobility needed to engage in litigation against Matt Mullenweg. My ability to travel was not only a matter of necessity but also a deliberate choice to ensure that I could effectively access the courts

despite financial and logistical barriers. The existence of this very case confirms that my statements regarding legal action were not empty threats but genuine intentions.

Defense counsel's attempt to dismiss my need to travel is based on a narrow and misleading interpretation of legal procedure that does not account for the realities faced by pro se litigants, particularly those with financial limitations. Courts have recognized that financial hardships can impact access to the judicial system, and procedural rules should not be applied in a manner that effectively bars a litigant from exercising their rights. *See Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948) (acknowledging that economic barriers should not prevent a litigant from pursuing legal action in court).* Their assertion is unsupported by factual evidence and serves only to distract from the substantive issues in this case. The Court should reject defense counsel's mischaracterization and recognize the legitimacy of my need to travel to Houston for legal action.

## IV.    DEFENSE COUNSEL'S SUBSTANTIVE ARGUMENTS FAIL

### A.  No Evidence Supports the Claim That I Made a Physical Threat

Defense counsel claims that I made a physical threat against Matt Mullenweg, yet they fail to provide any legitimate evidence to support this assertion. Instead, they rely on mischaracterizations of my statements and subjective interpretations rather than any objective standard for what constitutes a true threat.

To begin, defense counsel ignores the well-established legal standard for determining whether a statement qualifies as a "true threat." Under prevailing case law, a statement constitutes a true threat only if it conveys a serious expression of intent to commit an act of unlawful violence. *See Virginia v. Black, 538 U.S. 343, 359 (2003) (holding that a "true threat" is one where the speaker means to communicate a serious intent to commit an act of unlawful violence against an individual or group of individuals).* Additionally, courts apply an objective test to determine whether a statement constitutes a true threat, considering whether a reasonable person, in the full context of the communication, would interpret the statement as an actual threat of physical harm. *See United States v. Bagdasarian, 652 F.3d 1113, 1118-19 (9th Cir. 2011) (finding that speech must be examined in context to determine*

*if it constitutes a "true threat" and requires proof of subjective intent to threaten).*

In their legal filings, defense counsel selectively isolates words from my communications while deliberately omitting the surrounding context, which directly refutes their claim. The full context of my statements makes clear that my intent was never to threaten harm but rather to engage in legal and professional discourse regarding my rights and concerns. By omitting this context, defense counsel attempts to create an inflammatory narrative that is not supported by the record.

Furthermore, courts have recognized that subjective fear alone is insufficient to establish that a statement is a true threat. *See Watts v. United States, 394 U.S. 705, 708 (1969) (holding that the mere fact that someone perceives a statement as threatening does not necessarily make it a true threat under the First Amendment).* Moreover, the imminence requirement dictates that, for a statement to qualify as a true threat, it must communicate an imminent and immediate intent to cause harm. My statements did not include any indication of an imminent action or capability to carry out any purported threat. *See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 928 (1982) (holding that advocacy of unlawful action at some indefinite future time does not constitute a true threat).*

Finally, defense counsel's reliance on mischaracterization is further undermined by their failure to cite any prior case law in which a statement similar to mine has been legally determined to be a true threat. Their inability to provide such precedent demonstrates the weakness of their argument and highlights the fundamental flaws in their position.

For these reasons, the defense counsel's claim that I made a physical threat is entirely unsupported by the evidence and should be disregarded by this Court.

### B.  Defense Counsel's Misrepresentation of the Injunction's Scope

Defense counsel has misrepresented the scope of the Court's preliminary injunction in an attempt to justify their actions and narrow the protections that were granted. Instead of adhering to the plain language of the injunction, they have selectively interpreted its provisions in a manner that excludes me and other impacted individuals from its protections. This misrepresentation has materially affected my ability to assert my rights under the injunction and has allowed Defendants to continue engaging in conduct that the Court explicitly sought to prevent.

As the primary distributor of the free and open-source Advanced Custom Fields (ACF) plugin, Matt Mullenweg and the WordPress.org team—not WP Engine—are in the best position to define the users of this plugin. Unlike WP Engine's customers, users of ACF do not authenticate with WP Engine or any other entity upon downloading the plugin. Instead, downloads occur directly from the WordPress.org plugin repository, and while WordPress.org maintains records of these downloads, this data is not shared with plugin developers. This fundamental distinction undermines defense counsel's claim that they required WP Engine to identify users and customers of ACF.

The injunction was clear in its language, covering WP Engine's employees, users, customers, and partners. However, defense counsel improperly worked to redefine who qualifies as a "related entity" by engaging in communications with WP Engine that selectively limited the scope of the injunction's protections. This was not a good faith effort to comply with the order, but rather a deliberate attempt to circumvent its intended effect. Courts have held that attempts to undermine or narrowly construe a court order without explicit judicial clarification are improper. *See United States v. Greyhound Corp., 508 F.2d 529, 532 (7th Cir. 1974) (holding that a party cannot unilaterally narrow the scope of a court order to avoid compliance).*

Additionally, defense counsel has mischaracterized the nature of these communications to portray them as a routine compliance measure. In reality, these actions served to rewrite the injunction through extrajudicial means, altering its enforcement without Court approval. Courts have consistently rejected such self-serving interpretations of court orders, emphasizing that compliance must be based on the order's plain meaning. *See McComb v. Jacksonville Paper Co., 336 U.S. 187, 192 (1949) (holding that injunctions must be obeyed as written and that courts will not tolerate attempts to evade compliance through reinterpretation).*

This misrepresentation of the injunction's scope has caused direct harm by preventing me from accessing resources and protections that were intended to be preserved under the Court's order. Defense counsel's selective reinterpretation of the injunction is improper, and their efforts to redefine its terms should be rejected. The Court should recognize this as a deliberate act to mislead both the Court and affected parties and should take appropriate action to ensure that the injunction is enforced

as originally intended.

### C. Defense Counsel Selectively Omitted Context From Slack Messages

Defense counsel has engaged in a deliberate effort to misrepresent the meaning of Slack messages by selectively quoting excerpts while omitting critical context that refutes their claims. By presenting these partial statements without their surrounding discussion, they have distorted the actual meaning of the conversations and misled the Court about my conduct and intent.

Courts have consistently rejected attempts to mislead the Court through selective quoting and omission of exculpatory context. *See United States v. Poschwatta, 829 F.2d 1477, 1483 (9th Cir. 1987) (noting that selectively omitting statements to create a misleading impression is impermissible).* Here, defense counsel has employed this very tactic, taking statements out of their full context to support a false narrative while disregarding evidence that contradicts their position.

The Slack messages in question contain discussions that, when read in their entirety, directly contradict defense counsel's claims. Rather than presenting the full exchange, which would have clarified my statements and demonstrated the lack of any improper intent, defense counsel has chosen to isolate certain phrases and remove them from their broader context. Courts have held that when a party presents an incomplete or misleading version of the facts, courts are justified in rejecting such misrepresentations. *See United States v. Reyes, 577 F.3d 1069, 1077 (9th Cir. 2009) (holding that attorneys may not cherry-pick statements from a broader record to create a false or misleading impression).*

 **paragonie**  Oct 16th, 2024 at 7:12 AM
https://github.com/bullenweg/bullenweg.github.io/issues/11
I believe it's important that everyone, especially people critical of @matt, pay attention to what happened in this linked issue. A lot of people from r/WordPress expressed discomfort in them highlighting Matt having a nosebleed (after a ton of travel) as criticism. They closed it unceremoniously as "not planned".

However you feel about this situation, that's simply not cool.
**#11 Nosebleed Stuff**

It is incredibly clear from the outset of this conversation that the subject of discussion are the individuals who published the Bullenweg.com website and their statements regarding a nosebleed that many took to be unseemly. At no point in this conversation does "paragonie" indicate that the subject of discussion has changed to myself, and no reasonable individual could take these statements

to be an indictment of my own actions. Furthermore, at the end of this very conversation, the user makes it clear that it is *Matt Mullenweg* and not myself whose conduct they find disagreeable.

> **paragonie**  Oct 16th, 2024 at 1:22 PM
>
> People are allowed to feel angry, scared, outraged, offended, and/or betrayed by Matt's recent behavior, and the sycophants that seem to endorse said behavior. Totally justified.
>
> It's not okay to use those feelings to do pointless shit that causes collateral damage to third parties. As you said, WP contributors and community members. But also, third parties who might be self conscious about chronic nose bleeds.
>
> It also doesn't directly serve any purpose other than shaming Matt. Which, if he's as big a narcissist as everyone says, is a fool's endeavor anyway! But also, you don't **need** to shame Matt to get your point across. The point stands very strongly alone. (edited)

This pattern of selective omission is not an accident but a calculated effort to construct a narrative that supports defense counsel's position while suppressing evidence that undermines it. Courts have recognized that deliberate misrepresentation of the record is improper and undermines the integrity of judicial proceedings. *See United States v. Cronic, 466 U.S. 648, 662 (1984) (noting that misleading the court through misrepresentation is a serious breach of legal ethics and professional responsibility).*

Given that defense counsel's misrepresentations are contradicted by the full record of these discussions, I urge the Court to reject their attempts to rely on incomplete and misleading evidence. If defense counsel's claims were accurate, they would have no need to selectively edit and omit portions of these conversations. The fact that they have done so is indicative of the weakness of their argument and the necessity of judicial intervention to correct the record.

### D. Defense Counsel's Misrepresentation of My Slack Account Ban

Defense counsel has falsely asserted that my second personal Slack account was banned, despite the fact that no such ban was enforced. This claim is not supported by any legitimate evidence and contradicts the actual record. Defense counsel's failure to verify this assertion before presenting it as fact to the Court demonstrates a reckless disregard for accuracy and further exemplifies their pattern of misrepresentation.

My Motion for an Order to Show Cause clearly outlined how defense counsel's statements regarding my Slack account were misleading. At no point in this, or any other, legal filing is there a statement claiming that my second personal slack account was banned.

Courts have repeatedly held that attorneys have an obligation to ensure the accuracy of

representations made to the Court. *See Hamer v. Career College Ass'n, 979 F.2d 758, 759 (9th Cir. 1992) (holding that reliance on a client's declaration alone does not absolve an attorney of the duty to conduct reasonable investigation before making representations to the court).* Had defense counsel undertaken even minimal due diligence, they would have discovered that their claim regarding my Slack account ban was false. Their decision to advance this narrative without verifying its accuracy raises serious concerns. Moreover, defense counsel's reliance on false assertions about my Slack account ban is not an isolated incident but part of a broader strategy to mislead the Court. Their misrepresentation of this fact is consistent with other deceptive tactics used throughout these proceedings, including selective omissions and distortions of evidence. *See United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993) (emphasizing the duty of candor to the court and stating that attorneys have a responsibility to ensure the accuracy of factual representations).*

In fact, far from representing this case accurately in court, or correcting the record in their opposition, the defense counsel has used this opportunity to introduce further falsehoods into the record.

Nor did Prior Defense Counsel "misrepresent[] the timeline of events" as Mr. Willman alleges. Mot. at 16. While Mr. Willman claims "Defense Counsel attempts to retroactively justify their client's actions by citing statements made by Mr. Willman after the violation of the preliminary injunction and falsely implying that these statements were made before the violation occurred," Mot. at 16 Mr. Willman himself concedes that he was "only banned after egging Matt on," taking the position not that this was untrue, but that his self-described "argumentative and combative" posts did not justify his banning due to the particular channel they were posted in:



ECF 83-6 at 3.

With the full context, you can see that I was *directly contradicting the claims of this user* in this Reddit comment, arguing that I had actually been banned "for using the ranting channel for a legitimate purpose". Yet again, the defense counsel has misrepresented and selectively quoted a conversation to their own benefit.

Given the clear contradiction between defense counsel's statements and the actual facts, I request that the Court reject their reliance on this misrepresentation. This Court should not permit counsel to use demonstrably false claims to justify their actions, and appropriate corrective measures should be taken to address this misleading assertion.

### E.  Defense Counsel's Allegations of Harassment Are Unsupported and Contradicted by Evidence

Defense counsel has alleged that I engaged in "months of online taunting, baiting, and harassment" yet they have failed to present any concrete evidence to substantiate these claims. Instead, they rely on vague assertions and mischaracterizations of my online activity, ignoring substantial evidence that directly contradicts their narrative.

Courts require specific, credible evidence when making claims of harassment, rather than relying on conclusory allegations. *See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that conclusory allegations without supporting factual matter do not meet the threshold for plausibility).* Defense counsel has not provided any actual records of harassing behavior, instead relying on broad, unspecific accusations.

In reality, my actions have been consistent with responsible online engagement and, in many cases, have worked to prevent actual harassment directed at Matt Mullenweg. Notably, **after** my ban from the Make.WordPress.org Slack workspace, Mullenweg personally thanked me on the r/WPDrama subreddit for my efforts to moderate against posts that engaged in armchair diagnoses of mental illness and baseless accusations of drug use.



If I had truly engaged in a campaign of harassment, it is unreasonable to believe that Mullenweg would publicly acknowledge my moderation efforts in this way.

Additionally, I have actively removed or deleted comments that unjustifiably attacked Mullenweg or sought to escalate hostility towards him. This includes deleting posts that improperly tagged his username (u/photomatt) in inflammatory or aggressive contexts. These actions are not consistent with harassment but rather demonstrate a commitment to maintaining fair and professional discourse online.

Courts have also recognized that mischaracterizing online interactions to support a harassment claim can be improper when the alleged conduct lacks specificity and is not reasonably threatening. *See United States v. Dillard, 795 F.3d 1191, 1201 (10th Cir. 2015) (finding that speech must be examined in context to determine if it constitutes true harassment or is protected expression)*. Defense counsel's failure to produce specific examples of alleged harassment highlights the weakness of their claims. If they truly had evidence of prolonged and targeted harassment, they would present clear, verifiable instances instead of relying on broad generalizations.

The absence of such evidence suggests that these allegations are being used as a pretext to justify their retaliatory actions against me, rather than reflecting any actual misconduct. The Court should not allow defense counsel to weaponize unfounded harassment claims as a means of deflecting from their own misrepresentations and procedural failures. Their accusations are not supported by the factual record and should therefore be rejected.

## V.    WHY AN ORDER TO SHOW CAUSE IS APPROPRIATE

Defense counsel's misrepresentations and procedural failures have materially impacted these proceedings and undermined the integrity of the Court's orders. The Court has the authority and the responsibility to issue an Order to Show Cause requiring defense counsel to justify their actions and explain why they should not be held accountable for their prior misstatements.

The record demonstrates that defense counsel has engaged in a pattern of conduct that includes misrepresenting the scope of the injunction, selectively quoting and omitting critical context from Slack messages, falsely asserting that my second Slack account was banned, and making unsupported accusations regarding my online conduct. These actions were not isolated errors but part

of a broader strategy to mislead the Court and justify improper conduct by Defendants.

Furthermore, defense counsel's procedural failures, including their improper withdrawal from this case, do not excuse them from their ethical obligations. An attorney's duty to the Court does not end upon withdrawal—particularly when their prior representations remain part of the record and continue to influence the case. Defense counsel had and still has the ability to correct the record but has failed to do so, reinforcing the necessity of judicial intervention.

Issuing an Order to Show Cause serves multiple purposes. First, it ensures that defense counsel is given the opportunity to provide an explanation for their actions. Second, it allows the Court to assess whether corrective measures, such as striking misleading statements from the record, are warranted. Third, it acts as a deterrent to prevent similar conduct from recurring in this case or future proceedings.

Given the significant impact of defense counsel's misrepresentations and their failure to take corrective action, an Order to Show Cause is necessary to preserve the integrity of these proceedings and ensure that all parties are held to the highest standards of honesty and accountability before this Court.

Respectfully submitted,

Date: February 25th, 2025

By: /s/ *Michael Willman*

Michael Willman