Hon. Donna M. Ryu, Chief Magistrate Judge (N.D. Cal.)

Re:   <u>WPEngine, Inc. v. Automattic Inc. and Matthew Charles Mullenweg</u>, No. 3:24-cv-06917-AMO

Automattic moves to compel WPE to produce documents in response to Automattic's Requests for Production 6, 13, and 14, served on October 31, 2024. Under the Case Management Scheduling Order issued by the District Court on 2/28/25, fact discovery will close on 11/20/25, expert discovery will close on 3/19/26, Defendants' deadline for any summary judgment motion is 4/9/26, Plaintiff's deadline for any cross-motion for summary judgment is 5/24/26, a pretrial conference is scheduled for 1/27/27, and a 10-day jury trial is scheduled to begin on 2/22/27. Dkt. 119 at 1–2.

### Defendants' Position Regarding Meet & Confer

The parties have met and conferred by video about these Requests several times since March, most recently on June 25. WPE claims this letter brief is premature because the parties are still conferring. Defendants strenuously disagree. WPE has done everything possible to avoid producing documents, and to prevent Defendant Automattic from bringing a motion to compel, throughout a meet-and-confer process that has lasted more than three months. Automattic's final proposals are included below per the Court's standing order. There is an impasse because after narrowing its requests multiple times, Automattic's proposals here are final. WPE's continuing refusal to acknowledge that the parties are at an impasse appears to be a delay tactic to prevent Defendants from seeking relief.

### Plaintiff's Position Regarding Meet & Confer

Defendants' motion to compel should be denied in its entirety because the Parties have not completed meet and confer on *any* of the three document requests at issue. Regarding RFPs 6 and 13, on June 16 Defendants asked WPE to consider producing internal communications concerning customer complaints and losses. Defendants served the instant motion on WPE on June 27, without warning and before WPE had a chance to provide its response. WPE responded on July 1, offering to produce more than three years' worth of these communications and inviting further meet and confer on the remainder. Defendants ignored WPE's invitation. Regarding RFP 14, during a June 16 meet and confer, Defendants asked for hit counts regarding the key search terms at issue. But again, Defendants served the instant motion before WPE had a chance to provide them. WPE provided them on July 1. In response, on July 2, Defendants made a further narrowing proposal as to RFP 14, which WPE is currently considering. Thus, meet and confer is actively ongoing and no impasse has been reached on these three requests. Defendants should be ordered to complete this process and seek court relief only on those disputes that remain unresolved.

### I.   DEFENDANTS' POSITION

WPE accuses Defendants of, among other things, defaming WPE, interfering with its customer relationships, and monopolizing the "WordPress Web Hosting Services Market." Automattic believes WPE's internal documents will show that since January 2018, when private equity firm Silver Lake made a substantial investment in WPE and installed its executives on WPE's Board, WPE has consistently slashed its service offerings and support for customers, leading to an

increasing number of customer complaints about poor services and loss of current and prospective customers. The documents Automattic seeks go to the heart of the causation issues in this case: WPE's decisions are the reason for its failures—not Defendants' alleged tortious conduct.

Until 11:36 pm last night, WPE had refused to produce *any* internal communications responsive to RFPs 6, 13, and 14, which cover these core issues. But even now, WPE only has said it would produce cherry-picked internal communications in narrow time frames that it believes support its case. This is just more gamesmanship. So far, less than five months from the quick fact discovery cutoff that *WPE* requested in this large case, more than 85% of WPE's paltry production has been publicly available and/or non-confidential documents. WPE has produced only 83 email files that were not sent to Defendants or entities related to them. WPE's prejudicial foot-dragging must end. Contrary to WPE's claims, this is not a "fishing expedition." WPE's claims are premised on the notion that *Defendants* caused their alleged harm, and it is steadfastly refusing to produce the documents that would confirm otherwise—including documents evincing customer dissatisfaction and attrition *before* the allegedly tortious conduct occurred in September 2024. Automatic seeks documents that are relevant and proportional to WPE's 20-count, 144-page amended complaint.

**RFP No. 6**. WPE claims it brought this case "to stop Defendants from continuing to harm WPE and its customer relationships." Dkt. 51 ¶ 8; *see, e.g.*, *id.* ¶¶ 168–80 (section of pleading on "Lost Existing and Future Customers"). According to WPE, it was Defendants' allegedly tortious and anticompetitive conduct that caused WPE to lose customers, sales, and goodwill. *Id.* ¶¶ 168–80, 295, 307, 383. To try to substantiate these claims, WPE alludes to internal "data" (without providing it) about WPE's customer cancellation rates and new customer signup rates, which allegedly show increases in September 2024 as compared to 2023 and prior months in 2024. FAC ¶¶ 176-77. In reality, customer forums that predate this dispute indicate that WPE's own decisions (like changing or reducing levels of service to cut costs) are what harmed WPE's quality, reputation and business. For example, one Reddit discussion that predates the alleged defamatory statements discusses complaints about the diminishing quality of WPE's customer service. *See, e.g.*, https://tinyurl.com/5n6zefj4 (Reddit thread from early 2024 discussing complaints about WPE).

To show the non-tortious causes of WPE's decline, RFP 6 seeks "[d]ocuments and communications relating to complaints about YOUR PRODUCTS or SERVICES, including by current, past or prospective CUSTOMERS" dating back to 2014, four years before Silver Lake invested in WPE. Automattic offered to narrow the timeframe to 2016 to the present; it also narrowed the request to identify specific categories of complaints (for example, about worsening product quality and customer service, disabling revisions, and cost cutting measures) rather than all possible complaints. WPE nevertheless is willing only to produce post-January 1, 2022 internal communications related to "specific complaints from customers who left after September 2024." This is far too narrow. WPE's problems experienced by customers who left the hosting platform before September 2024 also existed afterward.

Moreover, WPE alleges that Defendants defamed WPE when Mullenweg said in September 2024 that "[w]hat [WPE] gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knockoff and charging you more for it." Dkt. 51, ¶ 329. WPE's internal discussions about the reasons for customer

departures dating back at least to when Silver Lake brought its cost-cutting private equity playbook to WPE in January 2018 are relevant to whether Mullenweg's allegedly libelous statement of fact was true when he made it in September 2024. Indeed, under WPE's limited proposal, WPE would not produce an email among WPE executives saying that a customer left in August 2024 because WPE's offering is a cheap knock off of WordPress.

**RFP No. 13** seeks documents "relating to any loss of sales or CUSTOMERS for any reason," "including but not limited to documents indicating the number of sales or CUSTOMERS lost, the identity of the specific sale and CUSTOMER lost, the CUSTOMER'S term of subscription, the date of the loss, the reason for the loss, the location of the CUSTOMERS, and any tracking or reporting of renewals, cancellations, migrations to and migrations from [WPE] PRODUCTS or SERVICES." Defendants intend to use evidence responsive to these requests to challenge WPE's narrative that it only began to lose customer goodwill (and customers) as a result of Defendants' "extortive, anticompetitive and otherwise unlawful and unfair business practices" beginning in September 2024. Dkt. 51 ¶¶ 182–83, 300. These documents will also undermine WPE's claims about its pre-September 2024 reputation and damages, which are central to its trade libel claim (among others). Automattic offered to narrow the RFP to January 1, 2018 to the present. WPE instead proposes to produce documents for customers who left WPE after September 21, 2024, and for customers who left prior to that date, only the aggregate number of customers lost between January 1, 2022, and September 20, 2024. That is insufficient, because the reasons why customers left WPE *before* September 2024 are relevant to Defendants' arguments for lack of causation, and WPE's claims expressly put at issue its reputation among customers *before* September 2024.

**RFP No. 14** seeks WPE's documents and communications with Defendants, as well as documents and communications "concerning" Defendants, [WordPress.org], WordPress.com, and/or the WordPress Foundation." WPE objected that the request is overbroad. Automattic agreed to narrow RFP No. 14 to seek only documents and communications with or concerning (1) Mullenweg from Jan. 1, 2023 to the present or (2) the WordPress Foundation (which owns the trademarks that are the subject of WPE's three claims for declaratory judgment). WPE has not said how many documents hit on Mullenweg or the Foundation individually or the custodians it searched or terms used, let alone how many internal, non-public documents are responsive.

WPE's first amended complaint refers to "Mullenweg" more than 200 times, citing alleged statements he made going back to 2010. *See* Dkt. 51 ¶ 55. It refers to the "Foundation" more than 60 times, including allegations about Foundation tax filings dating back to 2011. *See id.* ¶ 54. While WPE documents mentioning or concerning "Mullenweg" or the "Foundation" may also be responsive to other Automattic requests, WPE has relied on dubious objections to those other requests in a slow-rolled process that has resulted in WPE producing virtually nothing to date. Defendants should not have to identify the scores of relevant issues to which responsive documents with or concerning Mullenweg or the Foundation relate; they are not affiliated with WPE and have no conceivable involvement in anything unrelated to the WordPress issues at the center of this case. A simple search by WPE for non-public documents using variations of the name of its competitor's CEO and the owner of the WordPress trademarks that are the subject of WPE's claims is straightforward and proportionate, and unlikely to result in any, let alone many, irrelevant hits.

WPE initiated this lawsuit and put these matters at issue. Automattic has made every reasonable

effort to compromise with WPE over multiple months, but WPE continues to hold back all documents of consequence while padding its meager production with publicly available documents. WPE should be ordered to produce within 14 days all responsive materials (including all internal emails and other communications) in response to Automattic's RFPs 6, 13, and 14.

## II. PLAINTIFF'S POSITION

WPE presents the following arguments in the event the Court elects to substantively consider and adjudicate Defendants' motion, despite its prematurity.

WPE hosts websites built using the WordPress open source software. WPE competes with Defendant Mullenweg's for-profit company, Defendant Automatic. Mullenweg controls access to the WordPress community accessible via wordpress.org, including the central repository for software and plugin updates critical to the proper functioning of WordPress. This remarkable case concerns Defendants' blatant attempt to extort WPE by threatening to ban it from the WordPress community unless it agreed to pay tens of millions to Automattic, purportedly for a trademark "license" concerning marks WPE (and the rest of the industry) openly used (nominatively and fairly) for more than a decade. When WPE did not capitulate, Defendants engaged in a self-proclaimed "nuclear" war aimed at destroying WPE's business, threatened, disparaged and defamed WPE, interfered with WPE's customer relationships, hijacked WPE's popular and valuable "ACF" plugin and stole its ACF customers, blocked WPE and its customers from accessing wordpress.org servers, and demanded a loyalty oath of wordpress.org visitors confirming they weren't associated with WPE. Defendants publicly admitted their intention to destroy WPE "brick by brick" and then bragged about it by publishing WPE's customer losses.

So egregious was Defendants' misconduct that Judge Martínez-Olguín granted a preliminary injunction to halt their bad acts. The preliminary injunction required Defendants to restore WPE's access to the wordpress.org community portal and WPE's expropriated plugin, cease interfering with WPE's customer relationships, and take down the list of WPE's customer losses.

The document requests at issue in Defendants' motion reflect a desperate fishing expedition, in which Defendants apparently hope to find something or someone to blame for the harm they admittedly inflicted upon WPE. First, Defendants demand that WPE produce every single document mentioning Defendant Mullenweg or his non-profit the WordPress Foundation, spanning a multi-year period, regardless of whether they have any relevance to the pending dispute. Second, Defendants demand every WPE customer complaint spanning nearly a decade, along with all internal communications discussing those complaints and all documents and internal communications relating to *every* WPE customer departure over the past seven years. Defendants speculate that these documents *might* be relevant to causation because "WPE's decisions" *might* be the cause of WPE's recent losses. This is a textbook example of an improper fishing expedition.

**RFP No. 6—Customer Complaints.** Defendants' request for ten years of WPE customer complaints seeks irrelevant information and is grossly overbroad. Their asserted theory—that these complaints *might* reveal an alternative cause for WPE's recent losses—is pure speculation. Courts reject such fishing expeditions. *See Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, 2020 WL 5913898, at *6 (C.D. Cal. July 10, 2020) (declining to compel discovery of

4

customer complaints, which defendants claimed might be relevant to alternative causation theory re Plaintiff's declining sales); *Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2020 WL 4530478, at *4–5 (D. Ariz. Aug. 6, 2020) (same). RFP 6 is particularly disproportionate to the needs of this case given that Defendants have publicly admitted to, and bragged about, causing WPE's customer losses. Dkt. 51, ¶¶90, 100, 126, 131-32.

Alternatively, Defendants claim the complaints are relevant to their defamatory statement that WPE offers a "hacked . . . cheap knockoff." Dkt. 51, ¶ 329. But this rests on more conjecture—that such complaints exist. Even if they did, evidence of a customer's opinion would not resolve the core issue: whether the statement was objectively false when made. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1055 (9th Cir. 1990).

Nonetheless, in an effort to compromise WPE has agreed to produce customer complaints from January 1, 2022, onward for customers who left after the "nuclear war" began, along with three years of internal communications about those specific complaints. That is more than sufficient.

**RFP No. 13—Loss of Customers or Sales.** Defendants' RFP 13 is impermissibly overbroad and like RFP 6, above, a classic fishing expedition. This case is about the customers WPE lost due to Defendants' self-proclaimed "nuclear war," which started in September 2024. Accordingly, WPE agreed to provide a broad set of documents related to Defendants' request: (1) documents sufficient to show aggregate customer losses from January 1, 2022 to the present; (2) documents sufficient to identify customers who left WPE from September 2024 onward, including any reasons provided for their departure; and (3) communications from 2022 onward with or related to any specific customers who left WPE after September 2024 that discuss their departure or the reasons they left. This production addresses the relevant time period (September 2024 onward) and causation issues. Defendants' assertion that WPE's claim of reputational harm during the "nuclear war" opens the door to seven years of (unrelated) customer loss records is baseless.

**RFP No. 14—Communications re: Defendants.** Defendants' "narrowed" request is still wildly overbroad as it demands all documents "concerning" Defendant Mullenweg and the WordPress Foundation—without any subject matter limitation. Courts routinely reject such facially overbroad requests. *See Moore v. DAN Holdings, Inc.*, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013) (finding the "obvious overbreadth" of a request for "all communications … concerning Plaintiff"). Such "kitchen sink" requests also fail Rule 34's particularity requirement. Fed. R. Civ. P. 34(b)(1)(A). Defendants' position that every document or communication referencing "Mullenweg" or the Foundation is somehow relevant is incorrect, because the parties have worked in the same industry for over a decade, Mullenweg is a co-founder of and frequent speaker about WordPress, and the Foundation holds itself out as the "official" WordPress non-profit that Mullenweg promotes. Vast quantities of these hits will have nothing to do with any allegation in the Complaint or fact at issue here, and those that are relevant will be covered by one or more of Defendants' many other substantive RFPs. The burden of complying with this request is also staggering: searches for "Mullenweg" or his initials "MM" from 2023 onward and the "WordPress Foundation" or "the Foundation" from 2014 onward (as demanded) return over 375,000 hits from selected WPE custodians—meaning millions of pages will require review for this single request.

*   *   *

The Court should deny Defendants' motion in its entirety for failure to complete meet and confer. Alternatively, the motion should be denied on the merits.

| | |
|---|---|
| DATED: July 2, 2025 | GIBSON, DUNN & CRUTCHER, LLP<br>By: */s/ Rose T. Ring*<br>Rose T. Ring<br>Josh A. Krevitt<br>Orin Snyder<br>Michael H. Dore<br>Joseph R. Rose<br><br>*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*<br><br>QUINN, EMANUEL URQUHART & SULLIVAN, LLP<br>By: */s/ Rachel H. Kassabian*<br>Rachel H. Kassabian<br>Yury Kapgan<br>Margret M. Caruso<br>Brian Mack<br>*Attorneys for Plaintiff WPEngine, Inc.* |