August 5, 2025                                                         <u>Via ECF</u>
Hon. Donna M. Ryu
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 3:24-cv-06917 (N.D. Cal.)

Dear Judge Ryu:

Plaintiff WPEngine, Inc. ("WPE") and Defendants Automattic Inc. and Matthew Mullenweg ("Defendants") respectfully submit this joint letter brief regarding Defendants' responses to WPE's RFPs 12-15, 17, 19, 23, 50, 71, 88, 90-91, 98, 100, 103-105, and 114-115. Counsel conferred via Zoom meetings on March 10, 11, 13, 17, 24, and 26 and July 17, 25, and 29 to resolve these disputes but reached an impasse as to the issues in this letter. Fact discovery closes on November 20, 2025; expert discovery closes on March 19, 2026; the last day for Defendants to file for summary judgment is April 8, 2026; the last day for Plaintiff to file a combined cross-motion and opposition to Defendants' summary judgment motion is May 14, 2026; and the pretrial conference and trial are set for January 28, 2027, and February 22, 2027.

I.    <u>**WPE'S STATEMENT**</u>

For over eight months, Defendants have stonewalled WPE's efforts to obtain basic discovery regarding Defendants' self-proclaimed "war" to destroy WPE's business. *See, e.g.*, FAC ¶ 291. First, Defendants simply ignored these requests—failing to provide any written responses whatsoever for nearly four months, thereby waiving all objections. *See* Joint Statement re WPE's MTC, Dkt. 113, at 1-3. Second, Defendants then systematically obstructed WPE's attempts to obtain this discovery by, among other things, (i) imposing arbitrary limits on production periods to conceal their pre- and post-"war" conduct, and (ii) improperly limiting their production to "sufficient to show" documents to obscure the full extent of the underlying evidence.

These RFPs seek core evidence directly relevant to the claims in this case, including Defendants tortiously interfering with WPE's customer contracts and engaging in anticompetitive conduct by knowingly stealing WPE's customers and employees while simultaneously crippling WPE's services. Defendants' wrongful "nuclear war" included, *inter alia*, cutting off WPE's access to wordpress.org, the central WordPress repository (*e.g.*, RFPs 12-15, 19, 98); the impact of Defendants' actions on the WordPress ecosystem and the burdens Defendants claimed WPE should bear concerning wordpress.org (RFP 71); Defendants' attempted extortion (now claiming to be purported trademark license demands) (*e.g.*, RFPs 17, 23, 114-115); the defamatory and disparaging statements Defendants made about WPE, its products, and its contributions to the WordPress community (*e.g.*, RFPs 50, 88, 90-91, 100), and barriers to entry (RFPs 103-105).

These materials are unquestionably relevant—indeed, the Court already granted WPE a preliminary injunction concerning WPE's tortious interference claim, ordering Defendants to cease their nuclear war and return to the *status quo ante*. Since these RFPs were served more than eight months ago, the parties have held *nine* lengthy Zoom calls totaling well over a dozen hours of face-to-face conferences. The issues here are ripe for adjudication, and Defendants should be ordered to make a fulsome and complete production of these materials without further delay.

**1. RFPs re Defendants' Tracking of and Interference with WPE's Customer Relationships (RFPs 12-15, 19, 98, 100).** These RFPs seek evidence essential to WPE's tortious interference claims—on which the Court has already granted WPE a preliminary injunction—including

Defendants' knowledge of WPE's customer contracts (RFP 15); Defendants' intent and actions taken to disrupt them (RFPs 12-14, 19) and Defendants' admitted tracking of WPE's customer losses triggered by Defendants' nuclear war (98 and 100).

Defendants cannot and do not dispute the relevance of these materials but instead try to impose arbitrary end dates and conditions on their production. First, Defendants insist, without basis, that they should not have to produce any documents responsive to these RFPs that are dated after the Court's preliminary injunction order (12/10/24). Defendants' position is very troubling because to the extent there are responsive documents dated after the preliminary injunction order, they are not just highly relevant, but also may evidence a violation of that order, if in fact Defendants' wrongful conduct is ongoing. Second, Defendants attempt to impose arbitrary conditions on their production (RFPs 12, 13, 15, and 19), such as attempts to horse trade concerning certain of their unrelated RFPs. This is wholly inappropriate. Defendants are in no position to condition their production of these critical materials on anything. Lastly, for RFP 100, Defendants seek to limit their production of documents concerning data they possess showing thousands of customers leaving WPE during Defendants' nuclear war, by adding a "sufficient to show" limitation. But all such documents are highly relevant to WPE's damages and must be produced in full.

**2. RFPs re Market Manipulation Evidence (RFPs 71, 103-105).** These RFPs seek documents about Defendants' control over wordpress.org—the central repository for WordPress software and plugins—and its significance to the WordPress community and competition in certain markets. These materials are highly relevant in several ways, including with respect to WPE's antitrust claims and to undermining various representations Defendants have made concerning wordpress.org.

For RFP 71, which seeks wordpress.org's daily server load, traffic, logins, and downloads, Defendants argue they need only provide a single, one-day "snapshot" of this data and need not update this production thereafter. But Defendants' control of wordpress.org is ongoing, and these metrics continue to be relevant through the present date, including because they demonstrate (i) the before and after effects of Defendants' ban of WPE and its customers from wordpress.org; (ii) the level of control over the wordpress.org repository that Defendants had and continue to exert; and (iii) the extent of their control and power over plugin distribution via the wordpress.org repository. Defendants also try to dodge their discovery obligations by claiming that any going-forward information on these metrics for their own website is purportedly publicly available at the third-party website https://munin-ord.wordpress.org/. But that site does not provide the raw data WPE is requesting, and also lacks login and download data. Defendants' newest argument, made in this joint letter, that wordpress.org site metrics data "does not exist," contradicts Defendants' prior representations that making this production would be burdensome.

For RFPs 103-105, seeking documents showing barriers to entry key to WPE's monopolization and attempted monopolization claims alleging that Defendants controlled and had power in certain markets since at least 2005, including via their complete control over wordpress.org given its significance to competition in those markets, Defendants arbitrarily refuse to produce documents dated before 1/1/20 or after 11/14/24. But WPE's allegations concerning Defendants' monopolization and attempted monopolization span a longer timeframe; Defendants have no basis to impose arbitrary date restrictions. *See, e.g.*, FAC ¶¶ 1-8, 191-236, 380-99. Defendants should be ordered to produce all responsive documents dated from Automattic's founding in 2005 to the

present for RFPs 103 and 104 (documents concerning the ability to create a version of WordPress that does not rely on wordpress.org) and from 2010 to the present for RFP 105 (documents concerning the creation of a mirror of wordpress.org). Defendants also impose "sufficient to show" restrictions on these RFPs—a transparent attempt to conceal documents showing how Defendants built and exploited their power, their knowledge and intent regarding the significance of wordpress.org, and the extent of their control and power via wordpress.org. This limitation should be rejected.

**3. RFPs re Defendants' Knowledge of Falsity of Their Public Statements (RFPs 50, 88, 90-91).** These RFPs target Defendants' knowledge of WPE's significant contributions to the WordPress community, which is relevant to Defendants' September 2024 defamatory statements—calling WPE "parasitic" and claiming it contributed merely "40 hours per week" and "$75,000"—being knowingly false. FAC ¶¶ 101, 368; *see* CACI 1705. Defendants do not dispute the relevance of these materials but instead improperly seek to limit their production of these documents to narrow time periods that will not capture all relevant materials. WPE is entitled to production of Defendants' public statements about WPE dating back to WPE's Founding in 2010, which are relevant and material to Defendants' knowledge of the falsity of their defamatory statements during their "nuclear war" concerning WPE's historical contributions to the WordPress Community Moreover, Defendants' public statements about WPE are also relevant to WPE's trademark declaratory judgment claims, because they reflect Defendants' knowledge and awareness of WPE's use of the marks in question. *See* FAC 40, 308-27.

**4. RFPs re Extortion Planning Documents (RFP 17, 23, 114-115).** These RFPs seek documents concerning Defendants' attempt to extort WPE for 8% of its gross revenues, and Defendants' attempt to legitimize their misconduct by calling it a purported "business negotiation" concerning a trademark license. *See* FAC ¶¶ 90-140, 214. Again, Defendants do not dispute the relevance of these materials. Instead, they argue that they are already covered by another RFP (RFP 45) for which Defendants claim they have agreed to make a responsive production. Defendants are incorrect—these RFPs are not coextensive with RFP 45—but even if they were, then it is no additional burden for Defendants to simply agree to these RFPs as well.

Defendants also quibbled with WPE's date ranges for these RFPs despite that they were reasonable and covered the alleged timeframe in question. FAC ¶ 140. In any event, Defendants have now dropped their objections to the date range in their portion of this joint letter, indicating that they have already agreed to produce responsive documents dating back to 2010 for these RFPs. Lastly, Defendants' attempt to inject some of their own RFPs into the instant WPE motion to compel, as reflected in their corresponding section of this joint letter, should be rejected out of hand.

**5. Relief Requested.** WPE respectfully requests that the Court order Defendants to produce all non-privileged documents responsive to these RFPs, including because Defendants have waived all objections to them and they seek relevant information, within 21 days of the Court's order.

## II.   DEFENDANTS' STATEMENT

The only entity "stonewalling" discovery here is WPE—WPE has produced only 4,007 documents (61% of which are "Public"), including a scant 93 internal email threads, compared to Defendants' more than 16,000 documents, including 11,000 internal emails. To distract from this reality, WPE

3

now recycles the spurious suggestion that Defendants waived objections to its RFPs, a position that the Court long ago rejected, *see* Dkt. 117, and blows out of proportion what are actually very simple timing issues related to the scope of Defendants' document searches. The parties are only at an "impasse" on these issues because WPE stridently refused to offer any meaningful compromises during the parties' negotiations and prematurely terminated the parties' meet and confer. At bottom, Defendants have already agreed to conduct a reasonable search in response to the RFPs identified in WPE's statement, subject to reasonable limits on timeframe and scope. There is no need for the Court to intervene and WPE's motion should be denied.

***Start Date Re: WPE's Customers (RFPs 12-15, 19, 98, 100)***. WPE takes issue with Defendants' proposed start dates for WPE's requests relating to WPE's allegation that Defendants engaged in a "nuclear war" against WPE, supposedly causing it to lose customers. WPE itself alleges this conduct began "on Sept[.] 17, 2024." (Dkt. 17 at 8, 14.) Given the limited timeframe alleged by WPE, for each request related to WPE's customers (**WPE's RFPs 12-15, 19, 98, 100**), Defendants propose to perform a reasonable search for the requested documents dated between January 1, 2023, and December 10, 2024–which covers a range from over a year-and-a-half prior to the alleged conduct to the date the Court entered its order on the Preliminary Injunction. WPE's counter proposals make no sense: WPE proposes four different start dates for no reason. Searches for materials relating to a common factual issue should generally be scoped to the same time period, contrary to WPE's positions. Defendants are open to further negotiations with WPE on a relevant time period for reasonable document searches–in fact, Defendants offered to negotiate earlier start dates if WPE would confirm it would use equivalent dates for its own document searches. WPE refused and asked this Court to impose conflicting start dates that burden only Defendants. The Court should decline such an obviously disproportionate request.

***Start Date Re: Trademark Negotiations (RFPs 17, 23, 114-15)***. WPE alleges (falsely) that Defendants committed extortion by threatening in September 2024 to wage "war" against WPE if WPE did not agree to pay a percentage of revenue for a trademark license. (Dkt. 51 [FAC] ¶¶ 290-95.) With respect to discovery generally targeting the parties' trademark negotiations, WPE raises a number of meaningless disputes while refusing to play by the same rules. In response to **WPE's RFP 45** (which WPE does not address in its statement), Defendants have already offered to search for anything relating to trademark negotiations between the parties over 14 years. In explicably ignoring that simple solution, WPE forced Defendants to spend hours negotiating individual responses on a variety of *narrower* RFPs that are completely subsumed by Defendants' agreement on WPE's RFP 45 and now asks the Court to compel responses that–again–would be largely meaningless given Defendants proposal to search for and produce a much broader set of documents. Rather than adopt WPE's piecemeal, nonsensical approach, the parties should simply produce all documents and communications relating to the parties' trademark negotiations (**WPE's RFPs 17, 23, 43, 45, 68, 114-15; Automattic's RFPs 29, 50, 60-61**) going back to January 1, 2010, as Defendants have already agreed to do.

***RFPs re: WordPress.org (RFPs 103-105)***. WPE also takes issue with the scope of Defendants' searches relating to "Defendants' control over [W]ord[P]ress.org." **WPE's RFP Nos. 103-105** seek discovery relating to WPE's allegation that WPE was damaged when Defendants "cut off" its access to the "WordPress Plugin Directory" on WordPress.org and that creating a copy ("mirror" or "fork") of the repository was infeasible. (FAC ¶ 230.) Defendants agreed to search back to 2020, four years before WPE alleged it was "cut off" from WordPress.org, but WPE has—

4

without justification—demanded (at 2) Defendants' search go back 20 years (for **WPE's RFPs 103-104**) and 15 years (**WPE's RFP 105**). WPE's proposed 20-year timeframe is particularly disproportionate given the applicable statute of limitations for antitrust claims is only four years. See 15 U.S.C. § 15b. The Court should reject WPE's unreasonable positions.

*RFPs re: WordPress Contributions (RFPs 88, 90-92)*. WPE's defamation claim is based in part on statements relating to WPE's failure to contribute adequately to WordPress. (FAC ¶ 103.) With respect to WPE's **RFP 88**, which relates to Defendants' knowledge of certain of WPE's contributions, WPE has demanded Defendants' search go back 15 years. For WPE's RFP 90, which relates generally to Defendants' knowledge of WPE's contribution to WordPress.org and the community, WPE has demanded Defendants' search go back two years. Given Defendants' integral involvement in WordPress and the sheer number of potentially responsive internal communications about WPE's contributions, and the fact that documents sought by these RFPs are likely to overlap, Defendants have proposed a reasonable counter for both RFPs, i.e., go back six years (to 2018). (This also aligns with the parties' agreement on related **WPE RFP 92**, which relates to Defendants' knowledge of contributions by other hosting companies.) The Court should adopt Defendants' reasonable proposal.

*End Date (All RFPs, including RFPs 6, 11, 71).* WPE also takes issue with Defendants' practical need to place a reasonable end date on the collection and production of documents. Indeed, the only meaningful dispute as to **WPE's RFPs 11** (ACF), and **71** (WordPress.org usage statistics) is the end date. Exporting, processing, searching, and reviewing documents iteratively throughout discovery is burdensome and unnecessary unless there is a specific allegation of ongoing conduct. Here, there is none—at least as of the date the Court issued its order on the preliminary injunction (Dec. 10, 2024), so that is the end date Defendants propose the parties generally employ here. WPE has no meaningful response to this basic point and has explicitly refused during the parties' meet and confer to propose *any* compromise on this issue. Its motion should be denied.

*Nonissues*. WPE's statement also attempts to create the appearance of disputes where none exists. *First*, by jumping the gun on its letter brief, WPE thwarted Defendants' opportunity to offer an updated position on **WPE's RFP 50** (Defendants offered to search for internal communications regarding Defendants' public statements referencing WPE going back to 2023). *Second*, WPE complains about the nature of the data Defendants have responsive to **WPE's RFP 71**, which relates to daily server load, traffic, logins, and downloads of WordPress.org, but Defendants have pointed WPE to the publicly available data they have, and there is no obligation (or ability) to create data that doesn't exist. In any event, this data is not relevant as WPE claims: the daily server load of WordPress.org—whether a snapshot otherwise—has nothing to do with whether Defendants "control" it. And Matt Mullenweg's control over the website is not a disputed issue here.

The Court should deny WPE's motion in full.

Dated: August 5, 2025

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ *Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
*Attorneys for Plaintiff WPEngine, Inc.*

GIBSON, DUNN & CRUTCHER, LLP

By: /s/ *Joseph R. Rose*
Rose T. Ring
Josh A. Krevitt
Orin Snyder
Michael H. Dore
Joseph R. Rose

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

## **E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Plaintiff and Defendants have concurred in the filing of this document.

/s/ *Brian Mack*

Brian Mack