August 14, 2025                                                                                          <u>Via ECF</u>
Hon. Donna M. Ryu
*WPEngine, Inc. ("WPE") v. Automattic Inc. and Matthew Mullenweg*, No. 3:24-cv-06917-AMO

Dear Judge Ryu:

Defendant Automattic, Inc. moves to compel Plaintiff WPE to produce documents in response to Automattic's Requests for Production Nos. 19–23, 30–31, and 33 served on March 11, 2025. The parties have met and conferred about these Requests, most recently on August 7 for the final time. Under the Court's 2/28/25 Scheduling Order, fact discovery will close on 11/20/25, expert discovery on 3/19/26, Defendants' deadline for any summary judgment motion is 4/9/26, Plaintiff's deadline for any cross-motion for summary judgment is 5/14/26, a pretrial conference is scheduled for 1/28/27, and a 10-day jury trial is scheduled to begin on 2/22/27. Dkt. 119 at 1–2.

## I.    DEFENDANTS' POSITION

In this action, WPE seeks a "declaration of non-infringement" and "a declaration of non-dilution with respect to its use of" the WORDPRESS trademark, the WOOCOMMERCE trademark, "and various other similar marks" (the "Marks"). Dkt. 51 ¶¶ 21, 308–27. WPE alleges that its use of the Marks is nominative fair use and has taken the position that it needs only to produce documents that directly relate to its defense—although notably to date, it has produced only 4,007 documents, 61% of which are "Public." *See* Dkts. 150, 154. However, this Circuit has long recognized that the likelihood of confusion factors articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), comprise the most relevant areas of inquiry in any trademark infringement case. Importantly, WPE does not and cannot cite a single case finding that a trademark owner is not entitled to seek discovery on the *Sleekcraft* factors—even after reviewing Defendants' arguments in this letter brief. To the contrary, courts consistently hold that the *Sleekcraft* factors and the nominative fair use test (the "*New Kids*" test) are "analogous" and involve significant overlap. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010). Discovery into the *Sleekcraft* factors is indisputably reasonable and proportionate in *any* trademark case because courts must consider the *Sleekcraft* test in the event WPE's nominative fair use defense does not resolve all issues. *See, e.g., Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *8 (N.D. Cal. Apr. 12, 2019) ("Because [defendant's] use … is not nominative fair use, the Court must apply the *Sleekcraft* factors.").

In the parties' meet and confer on July 16, WPE appeared to acknowledge the relevance of *Sleekcraft* and informed Defendants that it would no longer withhold documents on the basis of its *Sleekcraft* objection. Remarkably, when committing its positions to writing, WPE reversed course on several requests and continues to maintain the very *Sleekcraft* objection it had indicated it would abandon. Defendants must be permitted discovery on these core issues.

***Actual confusion.*** **RFP Nos. 19–21** go to actual confusion, which "may be the most important factor" in assessing the key issue in any trademark infringement action, the likelihood of consumer confusion. *PSM Holdings LLC v. Tiny Town LLC*, 2025 WL 623673, at *12 n.1 (W.D. Wash. Feb. 26, 2025); *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) ("Evidence of actual confusion by consumers is strong evidence of likelihood of confusion."). WPE cannot hide evidence of confused consumers in its possession—evidence which Defendants have no other way of obtaining. Even if WPE could find any case law limiting discovery in a

trademark case to the *New Kids* test (none exists), evidence of actual confusion also bears on that test because the third *New Kids* factor asks whether consumers believe there is "sponsorship or endorsement by the trademark holder." *See New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Evidence that some consumers believe there is an association or connection between WPE and Defendants is therefore clearly highly relevant—central—to the question of whether WPE's use of Defendants' trademarks is likely to cause consumers to believe Defendants have sponsored or endorsed WPE.

WPE's burden objection—which it has not substantiated with any information, let alone a hit report from search terms, despite Defendants' repeated requests—provides no basis for WPE to continue to withhold evidence of actual confusion in its possession. Defendants are willing to negotiate search terms and custodians. WPE cannot categorically refuse to search for highly relevant evidence that would be adverse to its claims. *Mut. of Enumclaw Ins. Co. v. Bradford White Corp.*, 2024 WL 1659001, at *2 (W.D. Wash. Apr. 17, 2024) ("[Plaintiff] cannot bring a claim and then deny Defendant the documents it needs to defend against that claim."). Indeed, if WPE is receiving voluminous inquiries about Defendants and their affiliates, the volume itself is highly relevant to the likelihood of confusion.

***Confusion & Dilution.*** **RFP Nos. 22 and 23** seek documents concerning consumer complaints that WPE has received about Defendants, its products, or the WordPress software, including consumers' confusion-driven complaints to WPE about WordPress. Such documents are directly relevant to the likelihood of confusion and evaluating whether WPE is tarnishing the Marks, including by perpetuating a false association and associating the Marks with WPE's inferior service offerings. *See Tabari*, 610 F.3d at 1179 n.7 (website "People of Walmart" "might dilute the Walmart trademark by associating it with violations of customers' privacy"); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004). WPE has attempted to limit its responses to these RFPs by its response to RFP No. 6, for which it has stated it will produce complaints since January 1, 2022 "for any customer *who left WPE after September 2024*." Regardless of whether WPE's limitation to RFP No. 6 is reasonable (it is not), there is no basis for such a limitation in the context of WPE's non-infringement and non-dilution claims.

As to the confusion and dilution requests (Nos. 19–23), WPE expressed a concern that Defendants have many subsidiaries and affiliates, and that it would be too burdensome to search for evidence of confusion with all of them. In response, Defendants provided a list of entities affiliated with Defendants' core web hosting business so as to be reasonably related to the question of confusion: WordPress.org; WordPress.com; WordPress Foundation; WordPress VIP; WooCommerce; Pressable; Jetpack; WPScan; WPAI. Importantly, Defendants agreed to eliminate *most* of Automattic's subsidiaries, including Akismet, Gravatar, BuddyPress, Simplenote, Atavist, Tumblr, Parse.ly, Day One, Pocket Casts, Beeper, Longreads, and Newspack. If a consumer contacts or complains to WPE believing that it is or is affiliated with Automattic subsidiaries that are integrated with Automattic's web hosting business, that may indicate that WPE's extensive use of the Marks has led consumers to believe that WPE is similarly part of the network of entities connected with the WordPress and WooCommerce trademark holders. Such evidence is therefore relevant and proportionate to evaluating actual confusion, nominative fair use, and dilution.

WPE also objects that it cannot provide evidence of actual confusion because Defendants have not yet filed compulsory counterclaims for trademark infringement and dilution, which are not yet due. *See* Dkt. 140. But Defendants' requests are premised on the claims WPE filed: WPE alleged in its

own complaint that it "had no intent to confuse the buying public" or tarnish the Marks, thus putting consumer confusion at issue. Dkt. 51 ¶¶ 311, 322. Moreover, given the imminent close of fact discovery, WPE must not be permitted to withhold plainly relevant documents on the basis of an artificial distinction between its declaratory claims and Defendants' compulsory counterclaims. WPE has no basis for withholding documents relevant to both sets of claims on the basis that it does not know each and every one of Defendants' forthcoming counter allegations.

***Customer base***. **RFP Nos. 30, 31, and 33** seek documents related to WPE's customer base for purposes of its trademark claims, including WPE's actual and target customers (**RFP 30**), WPE's solicitation of Defendants' customers (**RFP 31**), and consumers' knowledge of Defendants (**RFP 33**). As courts in this Circuit have repeatedly recognized, these are relevant to the overlap of the parties' customers, the degree of care likely to be exercised by consumers, and the *extent* to which the parties compete under the *Sleekcraft* test. WPE's customers (**RFP 30**) are also relevant to designing proper likelihood of confusion surveys. *See, e.g.*, *Mixed Chicks, LLC. v. Sally Beauty Supply, LLC*, 2011 WL 13137374, at *2–4 (C.D. Cal. Dec. 7, 2011) (collecting authority and ordering disclosure of customer list based on relevance for confusion analysis). Moreover, WPE's customers likely "possess relevant information concerning the likelihood of confusion they may have experienced as a result of" WPE's use of the Marks. *Id.* at *3. Any confidentiality concerns about disclosing this information to a competitor is addressed by the Protective Order governing this case; WPE may designate the information highly confidential and for attorneys' eyes only. *Id.* at *4–5; *see also Atmel Corp. v. St. Paul Fire & Marine*, 2005 WL 3692874, at *1 (N.D. Cal. Aug. 31, 2005). It is outrageous that WPE suggests a document produced for attorney's eyes only would be used for improper purpose by a party, especially when Defendants have fully complied with the Court's order. WPE attempts to answer RFP 30 by claiming it will produce documents in response to separate RFP Nos. 13, 71–74, and 77. But that latter set of requests addresses the alleged antitrust markets and WPE's *lost* customers and potential customers, not the questions of customer overlap and how their characteristics affect the central question of consumer confusion addressed by RFP Nos. 30-31 and 33. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) (under *Sleekcraft*, "courts consider whether the parties' customer bases overlap").

## II.    PLAINTIFF'S POSITION

***All of the documents Defendants seek are irrelevant to this case***.  Defendants argue that all the documents they seek in this motion, including documents regarding alleged customer confusion, customer complaints regarding Defendants, and WPE's complete customer list, are relevant to the *Sleekcraft* factors, which are used to assess a trademark owner's claim for trademark infringement.  But in every single case Defendants cite addressing the *Sleekcraft* factors, there was a pending claim for trademark infringement.  Here, Defendants *have not filed* a trademark infringement claim, so discovery related to the *Sleekcraft* factors is beyond the scope of this action.

Defendants urge that the *Sleekcraft* factors nonetheless apply because of WPE's declaratory judgment claims, but that, too, is incorrect.  WPE's claim for a declaratory judgment is based on nominative fair use and laches.  *See* Am. Compl. ¶¶ 41-47, 89, 311, 314.  Neither implicates the *Sleekcraft* factors at all.  The elements of the nominative fair use defense, also known as "the *New Kids* test," are: (1) the product or service is not readily identifiable without use of the trademark; (2) only so much of the trademark is used as is reasonably necessary to identify the product or service; and (3) the user does nothing that suggests sponsorship or endorsement by the trademark

owner. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). For nominative fair use cases, "the three-factor test under *New Kids* has replaced the separate *Sleekcraft* test." *Laatz v. Zazzle, Inc.*, 2025 WL 1359130, at *32 (N.D. Cal. May 9, 2025); *accord, e.g., Meltwater News US Inc. v. TVEyes, Inc.*, 2024 WL 5516306, at *4 (C.D. Cal. Dec. 18, 2024) (*Sleekcraft* factors should not be used in nominative fair use cases). As WPE's complaint alleges, it had no intent to confuse consumers as to the source or sponsorship of the goods or services, which is the relevant inquiry under *New Kids*. Am. Compl. ¶ 311. The elements of a laches defense likewise do not implicate the *Sleekcraft* factors. They are (1) plaintiff's delay in filing suit was unreasonable, and (2) defendant's prejudice caused by the delay if the suit were to continue. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). Courts adjudicate both of these affirmative defenses on their elements, which do not implicate the *Sleekcraft* likelihood of confusion factors in any way. *See, e.g., Ramirez v. Dean Foods Co. of California*, 2012 WL 3239959, at *8 (C.D. Cal. Aug. 6, 2012) (granting summary judgment motion on causes of action as time-barred without analyzing the merits of the underlying claims).

Unless and until Defendants file an actual claim for trademark infringement—as opposed to threatening to do so and public crowing about their supposed evidence of confusion—the *Sleekcraft* factors remain irrelevant. Defendants should not be permitted discovery in furtherance of a hypothetical counterclaim they have yet to file. *See In re iPhone/iPad Application Consumer Privacy Litig.*, 2012 WL 5897351, at *5 (N.D. Cal. Nov. 21, 2012) (parties have "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings"). "Discovery cannot be a fishing expedition for new claims, defenses, or surprise facts." *Asetek Danmark A/S v. CoolIT Systems Inc.*, 2021 WL 4699170, at *2 (N.D. Cal. Oct. 8, 2021) (granting motion to quash a subpoena seeking discovery regarding an unpled inequitable conduct defense). Defendants' requests are nothing but a fishing expedition—for a claim, for press, for distraction from their own discovery failures and admitted bad acts that underlie WPE's lawsuit. As such, they constitute an abuse of the discovery process, and this motion should be denied.

Defendants' requests should be rejected first and foremost because they seek documents irrelevant to the pending claims, but that is not the only reason.

***Searching for and reviewing references to Defendants across millions of customer documents is unduly burdensome.*** **RFP Nos. 19, 20, 21, 22 and 23.** Even if any of these documents were even marginally relevant (they are not), responding to Defendants' requests would impose an extreme undue burden on WPE, and thus they are not proportionate to the needs of the case. Responding to these requests would require WPE broadly to search millions of customer records for a list of terms related to Defendants, such as WordPress and WooCommerce. Unsurprisingly, given that WPE services millions of websites built on WordPress, and that many of those websites use the WooCommerce plugin, this generates millions of hits. Customer inquiries alone are not evidence of confusion and WPE would thus need to review millions and millions of pages of unresponsive documents to look for any that might be responsive (though, again, irrelevant). Defendants never requested WPE's search term reports for these requests, but, by way of example, a search of WPE's customer communications database since 2014 for "WordPress" returned over 2 million hits. Review and analysis of these documents to assess whether any given document reflects alleged confusion, or a comment or complaint about Defendants (as opposed to, for example, an inquiry about how to accomplish a task on a WordPress-created website), would be unduly burdensome by any metric. If the Court would like a declaration to support WPE's undue

burden argument, WPE hereby seeks leave to file one.  Moreover, these requests are not limited to the WordPress or WooCommerce trademarks, but also seek documents regarding products and services of Defendants that are completely unrelated to this litigation, such as "Jetpack" and "Pressable."    Defendants' justification—that hypothetical confusion between WPE and a competitor or product with such a different name, like Jetpack, is somehow relevant to Defendants' (unpled) assertion that WPE's use of "WordPress" is confusing, is absurd.

***Defendants misapprehend dilution law.*  RFP Nos. 22 and 23.**  Defendants argue that documents concerning consumer complaints or criticism about *themselves* or their products and services, including, again, terms such as Jetpack and Pressable, are also relevant to WPE's claim for a declaratory judgment of non-dilution, specifically as to whether WPE tarnished the reputation of the WordPress or WooCommerce marks.  This makes no sense, and it is not the law.  Dilution by tarnishment "is association arising from the similarity between a [junior user's] mark or trade name and a famous mark that harms the reputation of the famous mark."  15 § U.S.C. 1125(c)(2)(C).  The issue is **not** whether the allegedly famous mark, itself, has a bad reputation.  *See, e.g., Toys "R" Us, Inc. v. Akkaoui*, 1996 WL 772709, at *3 (N.D. Cal. Oct. 29, 1996) ("'Adults R Us' tarnishes the 'R Us' family of marks by associating them with a line of sexual products that are inconsistent with the image 'Toys R Us' has striven to maintain for itself.").  The Court should deny Defendants' motion on these requests, which are also burdensome and irrelevant for the reasons discussed above.

***Defendants' demand for WPE's entire customer list is improper and unwarranted.*  RFP Nos. 30, 31 and 33.**  Defendants' demand for WPE's entire customer list and related documents, such as customer solicitation and consumer research documents about Defendants, should be rejected for the additional reason that the requests are invasive, unnecessary and cumulative of other materials already being produced or otherwise known to Defendants.  "Names of customers constitute confidential information, and generally are not discoverable, even under protective order."  *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 62 (D.D.C. 2006).  Defendants' claim that this evidence goes to whether Defendants and Plaintiff compete is pointless—it is undisputed that WPE competes with Automattic—as WPE has alleged and is willing to stipulate to.  *E.g.,* Am. Compl. ¶ 10.  Further, Automattic maintains a website where it monitors websites migrating away from WPE's platform due to Defendants' self-proclaimed nuclear war against WPE, and, therefore, already claims to possess information regarding WPE's actual customers, and its customer losses caused by Defendants' misconduct.  *See* https://wordpressenginetracker.com/.  As such, Defendants' demand is not proportionate to the needs of the case, particularly given that WPE already has agreed to produce nonprivileged documents sufficient to identify the characteristics of its target customers.

Defendants' gratuitous demand for complete identification of WPE's customers is particularly egregious given that Defendants have repeatedly threatened "to go brick by brick and take . . . every single one of [WPE's] customers."  Am. Compl. ¶¶ 7, 130; *cf. Mixed Chicks*, 2011 WL 13137374, at *5 (only ordering production where there was no evidence "that [the moving party's] 'intention ... is to engage in action that will negatively affect [the non-moving party's] customer relationships'").  And their efforts to carry out this threat resulted in the Court's issuance of a preliminary injunction against them. Dkt. 64.  Defendants' demand for irrelevant WPE customer documents should not be granted where, as here, they have demonstrated a pattern of *admitted misconduct* related to WPE's customers.  The Court should, therefore, deny Defendants' motion.

Dated:  August 14, 2025                    GIBSON DUNN & CRUTCHER, LLP

By:  */s/ Joseph R. Rose*
Rose T. Ring
Josh A. Krevitt
Orin Snyder
Michael H. Dore
Joseph R. Rose

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By:  */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
*Attorneys for Plaintiff WPEngine, Inc.*

## **E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Plaintiff and Defendants have concurred in the filing of this document.

*/s/ Joseph R. Rose*
Joseph R. Rose