Hon. Donna M. Ryu

*WPEngine, Inc. v. Automattic Inc. and Matthew Charles Mullenweg*, No. 3:24-cv-06917-AMO

Dear Judge Ryu:

Defendant Automattic, Inc. moves to compel Silver Lake Technology Management LLC's ("Silver Lake") production of documents in response to Requests 7, 8, 12, and 13 of Defendant Automattic's subpoena served on 11/5/24. Silver Lake and Automattic most recently met and conferred by videoconference on 9/3/25 after exchanging letters. Under the District Court's 2/28/25 Case Management Scheduling Order, fact discovery closes on 11/20/25, expert discovery closes on 3/19/26, Defendants' deadline for a summary judgment motion is 4/9/26, Plaintiff's deadline for any cross-motion for summary judgment is 5/24/26, a pretrial conference is scheduled for 1/27/27, and a 10-day jury trial is scheduled to begin on 2/22/27. Dkt. 119 at 1–2.

## I.    DEFENDANT'S POSITION

In January 2018, Silver Lake, a private equity firm, bought a majority stake in WPE through a $250 million investment and installed three Silver Lake executives on WPE's five-person board of directors. Silver Lake controls WPE's operations (and this litigation), describing itself on its website as being responsible for the company's "strategy." Silver Lake is not a typical nonparty and Defendants soon will be filing counterclaims naming it as a counterdefendant in any event. Nevertheless, Silver Lake, represented by WPE's counsel, is stonewalling and has produced *no documents* and *no privilege log* since Automatic served it with a subpoena nine months ago.

WPE put Silver Lake at the center of this case. WPE alleges that Defendant Mullenweg made "a series of false and disparaging statements about WPE *and its investor*," i.e., Silver Lake. Dkt. 51 ¶ 101 (emphasis added). WPE further claims Mullenweg's statement that "Silver Lake doesn't give a dang about your open source ideals" was "*demonstrably* false." *Id.* ¶ 102 (emphasis added). More generally, WPE bases its slander claims on cherry-picked statements—which WPE alleges were false and made with actual malice—from presentations *about* Silver Lake. Mullenweg said WPE "is controlled by Silver Lake" (Dkt. 107-4 at 10:2–5) and an example of "[h]ow private equity can hollow out and destroy open source communities." *Id.* at 13:5–10. In criticizing WPE, he cited two examples in 2010 and 2017 of what he viewed to be Silver Lake following the same playbook through its investments in Talend and Unity Software. Dkt. 107-4 at 13-14. Documents evidencing the truth of these statements are relevant to WPE's claim that Mullenweg defamed the Silver Lake-controlled WPE by calling it a "cheap knockoff" and "one of a number of 'parasitic' entities who 'just want to feed off' WordPress 'without giving anything back.'" Dkt. 51 ¶ 365.

WPE also alleges that Mullenweg's true aim was to "extort [WPE] for money" and "extort monopolistic pricing." *See, e.g.*, FAC ¶¶ 1, 3, 5, 11–13, 28, 59. Automattic seeks discovery of Silver Lake documents demonstrating that Mullenweg's concerns about Silver Lake's influence on WPE were genuine and not pretextual. WPE further alleges that Defendants used "sham trademark infringement accusations" to "violate the antitrust laws," FAC ¶¶ 428–429. Documents showing that Silver Lake and WPE intended to sow confusion between WPE and WordPress directly rebut this allegation. These materials are highly relevant because they reflect a consistent pattern of conduct across Silver Lake's portfolio—including Red Ventures and A Place for Mom, Inc—where third-party intellectual property rightsholders have sued the Silver Lake-backed

companies for misleading consumers into believing they were affiliated with the trademark owners. Access to these documents is necessary to evaluate intent, credibility, and the legitimacy of WPE's claims, and thus is critical to resolving the core disputes in this case.

**Request No. 7** seeks "[a]ll documents and communications related to complaints, . . . feedback or reviews relating to PLAINTIFF, PLAINTIFF'S PRODUCTS or SERVICES, or Silver Lake." Silver Lake refuses to produce responsive documents (not limited to third-party complaints) pre-dating 9/20/24 or relating to complaints/feedback/reviews about Silver Lake; it also refuses to produce documents it claims are "available from WPEngine, Inc." The limitations are improper. Documents showing the truth of Mullenweg's alleged false statements about WPE are most relevant when made *before* Mullenweg spoke in late September 2024, not after. Moreover, WPE's trade libel claim puts at issue its business reputation going back "more than a decade" (Dkt. 51 ¶ 181). Silver Lake's historical strategy of directing companies to exploit open-source communities and infringe trademarks—and discussion of criticisms like those made by Mullenweg—are directly relevant to WPE's allegations about its "fair use" of trademarks (*id.* ¶ 314), and Silver Lake's purported respect for "Open Source ideals." (*Id.* ¶ 101.) As for Silver Lake's limit on any production to what it believes is "available" from WPE, WPE has refused to produce documents in response to dozens of discovery requests and actually produced very few non-public documents. Silver Lake's coordination with WPE shows it is not a true third party and it should produce responsive documents without a self-serving, backroom analysis of what is "available" from WPE.

Proposed Compromise: All documents and communications related to complaints, criticism or negative press coverage, feedback, or reviews relating to PLAINTIFF, PLAINTIFF'S PRODUCTS or SERVICES *dated on or after 1/1/17, or relating to Silver Lake's (i) business practices related to cost cutting or use of any third-party trademarks dated on or after 1/1/18, or (ii) strategies relating to open source dated on or after 1/1/10*. (Italics reflects change from RFP.)

**Request No. 8** seeks "[a]ll documents and communications related to DEFENDANTS, the WEBSITE, the Block, the Checkbox Requirement, WordPress.com, WooCommerce, or WordPress Foundation." Silver Lake refuses to produce documents pre-dating 2024. But WPE's declaratory judgment claim puts at issue its use since 2010 of trademarks owned by the Foundation. Dkt. 51 ¶ 89. WPE's promissory estoppel claim likewise is based on WPE's purported reliance on WordPress.org website "promises" in investing "hundreds of millions of dollars" building its business going back to 2010. Dkt. 51 ¶ 4. Silver Lake told Automattic during the meet and confer that the hit counts are not high (before first revealing on the night of this filing a suspect combined "hit count" with no time frame and not accounting for the narrowing of the WEBSITE term). Silver Lake instead said some historical hits may not be relevant. But as an example it cited a pre-2024 market analysis it has of WPE's competitors that is *directly relevant* to WPE's monopolization claim, suggesting Silver Lake is applying an overly narrow interpretation of what is relevant (or "incidental"). Silver Lake can exclude original news/press it received. Most every other document (including every *sent* document) *discussing a Defendant* or events and entities related to them will be relevant to WPE's claims spanning 15 years. Any confidentiality concerns are addressed by the protective order that "specifically contemplates third party discovery." *Rankine v. Roller Bearing Co.*, 2013 WL 3992963, at *4 (S.D. Cal. Aug. 5, 2013); Dkt. 104 (protective order).

Proposed Compromise: All documents *(excluding received news/press clips)* and communications from 1/1/17 to the present *referring* to Automattic, Matthew Mullenweg, WordPress Foundation,

2

WooCommerce, or *any reliance on, ability to access, or marketing related to* the WEBSITE; and from 5/1/24 to the present related to the Block, the Checkbox Requirement, or WordPress.com.

**Request No. 12**. Automattic proposed to revise this Request to seek all documents and communications regarding any measures instituted or actions taken by PLAINTIFF, including at Silver Lake's direction, to increase or maximize profits or revenues *in connection with (1) PLAINTIFF's implementation of settings or modifications for its PRODUCTS related to WordPress; (2) PLAINTIFF's use of the terms WordPress, Woo, or WooCommerce through any publicly available medium (including for search engine optimization); (3) PLAINTIFF'S customer service staffing, processes, procedures, and goals; or (4) any limitations or restrictions on PLAINTIFF'S contributions to the WEBSITE or WordPress Foundation.* Silver Lake claims it has no non-privileged documents responsive to topics 1, 2, and 4 of the proposed compromise, but has not agreed to revise its subpoena responses to formalize that representation or to log any responsive purportedly privileged documents. As to topic 3, public commenters have said they left WPE because of the diminished quality of WPE's customer service. *See* Dkt. 150 at 2. This is not speculation. Documents on this issue are directly relevant to WPE's burden to prove causation.

**Request No. 13**. Automattic proposed to revise this Request to seek all documents and communications regarding any Key Performance Indicators ('KPIs') or other benchmarks or business goals *related to (1) lowering WPE's costs, (2) lowering WPE's contributions to the WordPress ecosystem, or (3) to leveraging the WordPress, WooCommerce or Woo trademarks.* Silver Lake's "Head of Value Creation" is on WPE's Board and evidence of Silver Lake's cost cutting will show that the Silver Lake-driven strategy, not Defendants, is what turned WPE into an underperformer. WPE's cost-cutting and reliance on the open-source community for free work has made it a "cheap knockoff," as Mullenweg opined in a statement WPE claims to be defamatory.

Silver Lake should be ordered to produce the requested documents and amend its subpoena responses to state that it does not have responsive documents as applicable (logging responsive privileged documents) within 21 days of the Court's order.

## II.    NON-PARTY SILVER LAKE'S POSITION

Defendants' motion seeks to impose onerous demands on a non-party, Silver Lake, for documents that are completely irrelevant to any claim or defense. Silver Lake is not a party to this lawsuit, as the caption clearly illustrates. Defendants' threats that it might bring some unspecified claim against Silver Lake at some unspecified time in the future is not a basis to demand improper, irrelevant and overly burdensome discovery from it now. Moreover, Defendants' fantastical claim here, that non-party Silver Lake has a supposed practice of investing in companies and then "destroying open-source communities and infringing trademarks" is utterly false. Indeed, as to the two examples cited, the opposite is true: Unity has actively open sourced several offerings since Silver Lake's investment, and Talend's decision to discontinue its open-source offering occurred years after Silver Lake exited the company. And, neither open source community was "destroyed"—by Silver Lake or anyone else. Likewise, Silver Lake was *not* sued for trademark infringement or otherwise implicated in the other two examples Defendants give. Defendants' preposterous accusation that Silver Lake "intended to sow confusion" between WPEngine and Defendants is a fabrication—WPE itself has *already confirmed* to Defendants that it has no documents reflecting any such effort, because of course it had no such intention. Nor have Defendants even filed a trademark infringement claim against WPE in the first place, rendering

this demand a sideshow. Further, Defendants' assertion that Silver Lake is at the "center" of WPE's defamation claims is also demonstrably false, as can be seen from WPE's complaint itself, which alleges that Defendants defamed WPE, not Silver Lake. The Court should reject Defendants' desperate and misguided attempt to distract from what this case is really about: Defendants' actionable misconduct against WPE, and the resulting harm to WPE that Defendants have publicly bragged about. *See* FAC ¶¶ 120-145. Silver Lake has already agreed to produce responsive documents relating to Defendants' self-described nuclear war against WPE (RFP 7), which is what WPE's case is about, as well as references to Defendants from May 2024 onward (RFP 8), and is making a rolling production commencing shortly; nothing else should be ordered.

Rule 45 Strictly Limits Discovery Against Nonparties. Rule 45 imposes strict limits on discovery from non-parties like Silver Lake. Non-parties are not subject to the same discovery burdens as litigants, and courts afford them "extra protection." *Epitopix, LLC v. Zoetis Inc.*, 2025 WL 1310801, at *5 (N.D. Cal. May 6, 2025). Rule 45 imposes an "affirmative duty on parties to take reasonable steps to avoid imposing undue burden or expense" on non-parties. *Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *2 (S.D. Cal. Mar. 24, 2023). When requests target sensitive commercial information—as here—courts require a heightened showing of "substantial need." *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 2582097, at *2 (N.D. Cal. June 9, 2014). Courts uniformly apply Rule 45 protections to investors of a party. *Banneker Partners, LLC v. Milk Moovement, Inc.*, 2023 WL 3224444, at *3–4 (E.D. Cal. May 3, 2023) (non-parties deserve "extra protection" and denying motion to compel against non-party private equity investor); *Smarte Carte, Inc. v. Innovative Vending Sols., LLC*, 2024 WL 4024904, at *2–3 (D.N.J. Feb. 28, 2024) (denying motion to compel non-party private equity firm where defendant failed to demonstrate relevance or that discovery was unavailable from plaintiff).

Request No. 7 seeks "complaints" about WPE and Silver Lake. Defendants say they need WPE complaints to "corroborate" Mullenweg's (false) statements. But whether others complained about WPE is irrelevant to whether Defendants' statements were objectively false when made. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1055 (9th Cir. 1990). Defendants' speculative "alternate causation" theory—that WPE lost customers for reasons other than Defendants' misconduct, is no basis to embark on a fishing expedition for such complaints either (as already argued by WPE, Dkt. No. 150), particularly where, as here, Defendants *publicly acknowledged* that their actions caused WPE harm, *see* FAC ¶ 130. In any event, Silver Lake already agreed to produce any complaints about WPE from September 20, 2024 onwards—when Defendants' nuclear war began. That is more than enough. RFP 7 also seeks a decade of "complaints" about non-party Silver Lake—urging that disparaging remarks they made about Silver Lake (which are not the subject of WPE's defamation claims, notwithstanding Defendants' efforts to frame them as such) somehow make them relevant. That is flawed, circular logic, not a relevance showing. *See Clifford v. Trump*, 339 F. Supp. 3d 915, 928 (C.D. Cal. 2018) (refusing to allow a "fishing expedition" based on "entirely circular" reasoning which "assumes [facts], argues [those facts] in . . . [the] briefing . . . and then asks this Court for discovery to prove [those same facts]")). Likewise, Defendants' claim that Silver Lake's "historical business practices" are somehow relevant here is baseless and false; *none* of WPE's claims concern Silver Lake's business practices, nor have Defendants filed any counterclaims concerning them. Further, Defendants' argument that two other companies in which Silver Lake has invested were sued for trademark infringement in unrelated cases is likewise irrelevant, including because (1) Defendants have no trademark infringement claims pending in this case, and (2) the two other referenced companies have no connection to WPE or this case.

And Defendants' bizarre claim that Silver Lake has a "playbook" whereby it invests in companies and then purportedly instructs them to commit trademark infringement or to exploit open-source communities is as outlandish as it is false. Defendants may not make a "bald assertion," offer "no proof" and expect the Court to compel discovery on that subject. *ACON Lab'ys, Inc. v. Alltests Clinical Sols. LLC*, 2024 WL 947813, at *3 (S.D. Cal. Jan. 5, 2024); *see Mid Central Operating Engineers Health & Welfare Fund v. HoosierVac LLC*, 2024 WL 5137520, at *2 (S.D. Ind. Dec. 17, 2024) (quashing subpoena relevant "on nothing but [party's] own rank speculation").

Request No. 8 seeks all documents merely referencing Automattic, Mullenweg, the Foundation, WooCommerce and wordpress.org—a type of request that courts routinely reject as "obvious[ly]" overbroad. *See Moore v. DAN Holdings, Inc.*, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013); *Bat v. A.G. Edwards & Sons, Inc.*, 2005 WL 6776838, at *11 (D. Colo. Nov. 18, 2005) ("all emails concerning [plaintiff]" is a "blockbuster request[] which [is] overbroad and unduly burdensome."). These requests provide "no meaningful limitation to tether the discovery to the claims and defenses . . ." *Katzkin Leather, Inc. v. Roadwire, LLC*, 2021 WL 4690585, at *6 (C.D. Cal. Apr. 16, 2021). Mullenweg, Automattic, et al., are prominent in the WordPress community, and a search for them generates ***154,623 direct hits*** from 2018 onwards—including irrelevant press alerts, news clips, and incidental references. Tellingly, Defendants—at the 11th hour—have amended their position to say that "news/press" can be excluded—tacitly conceding their failure to properly meet and confer, coupled with the overbreadth problem (but certainly not fixing it) as it still leaves Silver Lake to wade through vast volumes of irrelevant material. In any event, where the documents sought are not relevant, "any burden whatsoever would be by definition 'undue.'" *Gonzales v. Google*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). Silver Lake has already offered a reasonable solution: production of responsive documents referencing Defendants beginning May 2024, which more than covers the relevant period.

Request No. 12 seeks all documents and communications regarding measures WPE took to maximize profits. This too is irrelevant to WPE's claims. It is undisputed that WPE is a for-profit business. Defendants spin an outlandish causation theory: that WPE's losses were *not* the result of Defendants' self-proclaimed "scorched earth nuclear" war (FAC ¶ 96) or plan to take WPE's customers "brick by brick" they admit (*id.* ¶ 130)—but might instead have been caused by a decline in "customer service" related to "maximizing profits." This is nonsense. Defendants bragged about causing WPE's harm (*id.* ¶ 145). Courts reject such speculative alternate causation theories dressed up as discovery requests. *See Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2020 WL 4530478, at *4–5 (D. Ariz. Aug. 6, 2020) (rejecting discovery into "customer . . . dissatisfaction" where defendants merely speculated it might explain a sales decline); *MG Freesites Ltd. v. Scorpcast, LLC*, 2023 WL 2822272, at *5 (S.D.N.Y. Apr. 7, 2023) (same). Defendants' sole offer of "proof"–a years-old Reddit Post (Dkt. No. 150 at 2) only underscores their overreach.

Request No. 13 seeks Silver Lake documents concerning WPE's KPIs, benchmarks, or business goals related to lowering costs or contributions, or trademark leveraging. Again, this is irrelevant; WPE's business goals will not prove or disprove any of the claims at issue—particularly not Defendants' "cheap knockoff" defamatory statement that refers to the alleged quality of the *WordPress software* that WPE offered—not WPE or its efforts to run a profitable business, as Defendants' argument above misleadingly suggests. *See* FAC ¶¶ 329-330, 365-366.

DATED: September 10, 2025

GIBSON, DUNN & CRUTCHER, LLP
By: *s/Joseph Rose*
Joseph R. Rose
Josh A. Krevitt
Orin Snyder
Michael H. Dore

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

QUINN, EMANUEL URQUHART & SULLIVAN, LLP
By: */s/ Rachel Herrick Kassabian*
Rachel H. Kassabian

*Attorney for Non-Party Silver Lake*