October 1, 2025                                                                                                                              Via ECF
Hon. Donna M. Ryu
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 3:24-cv-06917 (N.D. Cal.)

Dear Judge Ryu:

Plaintiff WPEngine, Inc. ("WPE") and Defendants Automattic Inc. and Matthew Mullenweg ("Defendants") respectfully submit this joint letter brief regarding Defendants' July 8 and September 5 privilege logs. Counsel conferred via Zoom meetings on September 12, 2025, and September 24, 2025, to resolve this dispute but reached an impasse. Fact discovery closes on November 20, 2025; expert discovery closes on March 19, 2026; the last day for Defendants to file for summary judgment is April 8, 2026; the last day for Plaintiff to file a combined cross-motion and opposition to Defendants' summary judgment motion is May 14, 2026; and the pretrial conference and trial are set for January 28, 2027 and February 22, 2027.

### I.     WPE'S STATEMENT

WPE respectfully moves this Court to compel Defendants to comply with this Court's Standing Order by serving amended privilege logs that disclose the position of each person appearing on the privilege logs, so that the logs are "sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified." Standing Order for Magistrate Judge Donna M. Ryu (July 20, 2022), ¶ 17, *available at* https://cand.uscourts.gov/wp-content/uploads/judges/ryu-dmr/DMR-REVISED-STANDING-ORDER.072022.pdf (hereinafter, "Standing Order"). Despite this clear mandate, Defendants have refused to comply with the Court's Standing Order, arguing that, when read "in the context of" the Federal Rules and Ninth Circuit case law, it must not mean what it says. This is nonsense. The Court's Standing Order means exactly what it says, and Defendants' suggestion to the contrary should be rejected.

#### A.     Defendants' Systematic Non-Compliance Is Inexcusable

For over two months, the parties extensively negotiated the scope, format, and exchange of privilege logs. Not once did Defendants request relief from the Court's requirement to provide the position of each person appearing on the logs. Yet when the parties exchanged logs on July 8, 2025, a stark disparity emerged: WPE provided a comprehensive appendix identifying the email, position, and organization for all 30 individuals on its 96-entry log, while Defendants submitted a skeletal 14-entry log without disclosing *any* position for any individual, and using only asterisks to denote counsel—without even distinguishing between in-house and outside counsel. WPE notified Defendants in August 2025 of this deficiency in their log, and requested that Defendants provide an appendix or otherwise supplement their privilege log to identify the positions and affiliations of each individual reflected on the log, as the Court's Standing Order requires. Defendants refused, claiming that they were not obliged to provide this information, despite the explicit language in this Court's Standing Order.

The pattern repeated with the September 5, 2025 exchange. WPE again complied fully, providing complete information, including position and company affiliation, for all 110 individuals on its supplemental log. Defendants again refused, claiming post hoc that asterisks denoting attorneys suffice despite the Standing Order's explicit requirements. Again, at no point during this process did Defendants seek relief from the Court's requirements. And during the meet and confer,

1

Defendants admitted that they had not actually looked for the required information regarding the positions and affiliations of the individuals included on their log, because they did not feel such information had to be provided.  The parties have agreed to at least two more privilege log exchanges and there has been no indication that Defendants will change course and comply with the Court's Standing Order.  This asymmetry has created an unjust windfall:  Defendants enjoy the benefit of WPE's meticulously compiled information while shirking their reciprocal obligation.

### B. The Lack of Position and Affiliation Information Prevents Meaningful Privilege Assessment

Defendants' deficient logs render meaningful privilege review impossible.  Of the approximately 70 asterisk-marked individuals who Defendants claim are attorneys, more than 50 cannot be identified through publicly available sources.  Even worse, Defendants admitted—after serving their September log—that several asterisk-marked individuals are not attorneys at all but are "paralegals."  This revelation exposes the fundamental unreliability of Defendants' approach and underscores why the Court requires actual position information, not mere asterisks.

The privilege analysis requires understanding whether purported attorneys were:  (i) in-house or outside counsel; (ii) in privity with the non-attorney communicants; or (iii) acting in business rather than legal capacities.  An asterisk provides none of this essential context.  Parties "should not be obligated to take [an opponent's] blanket assertion at face value . . . ."  *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 651 (E.D. Cal. 2010).

### C. Defendants' Ecosystem is Embroiled in Conflicts of Interest and Demands Transparency

In addition to the fact that Defendants' failure here violates the Court's Standing Order, this case's unique circumstances make the disclosure of position and affiliation information particularly critical.  The Amended Complaint alleges that Mr. Mullenweg orchestrated a web of conflicted relationships among Automattic, the WordPress Foundation ("the Foundation"), and wordpress.org—entities he portrayed as independent but that he actually controls behind the scenes for commercial advantage.  Dkt. 110, ¶¶ 6, 58-66, 71.  Given this corporate shell game, understanding whether an individual worked for Automattic, the Foundation, wordpress.org (to the extent it was operating within a corporate entity, which Defendants have not disclosed), or some other undisclosed Mullenweg-controlled entity is essential to evaluating privilege.  Contrary to Defendants' assertions, knowing an individual's position necessarily requires disclosure of their organizational affiliation where multiple different entities are involved, as is the case here.  If an employee of one company is communicating with an attorney from a *different* company, that is plainly relevant to the privilege analysis.  That Defendants are so resistant to identifying who works for which entity is in and of itself troubling, and underscores the need for this information, as presumably the affiliations of these individuals vary.  An individual's position and corporate affiliation is basic information that is required to assess whether privilege has been properly asserted.

Defendants offer no colorable justification for their refusal to comply with the Court's Standing Order.  Defendants' proposed "compromise"—providing email addresses—fails to cure this deficiency.  Anyone can receive an email address from a given company, or from multiple

2

companies. An "@automattic.com" address reveals nothing about what the person's position was, whether the person simultaneously held roles at other Mullenweg entities, acted in legal versus business capacities, or possessed authority to provide legal advice to the logged recipients. Email domains are particularly unhelpful where, as here, individuals may wear multiple hats across the interrelated organizations controlled by Defendant Mullenweg.

### D.     The Court Should Enforce Its Standing Order

Privilege logs must enable meaningful assessment of privilege claims. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii). This Court's Standing Order operationalizes that requirement by mandating that privilege logs must include "the identity and position of its author(s)" and "the identity and position of all addressees and recipients" (Standing Order ¶ 17)—a requirement that Defendants have ignored twice despite WPE's repeated objections. Again, the relevant issue here is not whether Defendants' privilege claims satisfy some baseline Ninth Circuit standard, but whether the logs comply with this Court's *specific requirements*. Defendants cite no authority—and certainly none from this Court—suggesting that the Standing Order means anything other than what it plainly says.

WPE respectfully requests that the Court:

1. Order Defendants to serve amended privilege logs within five days that identify each person's position and organizational affiliation at the time of each logged communication, as explicitly required by the Standing Order; and

2. Direct that future privilege log exchanges comply fully with the Standing Order.

Defendants must comply with the Standing Order, as WPE has, to ensure a level playing field for privilege determinations.

## II.    DEFENDANTS' STATEMENT

Defendants' privilege logs comply with this Court's Standing Order, Federal Rule of Civil Procedure 26(b)(5), and Ninth Circuit law. They identify by name all authors and recipients of privileged documents and indicate who are attorneys. WPE's demand for any and all job titles held by the more than 160 senders and recipients of Defendants' privileged communications would impose a significant burden on Defendants and goes beyond what this Court's Standing Order requires, particularly when that Standing Order is read in the context of governing caselaw which expressly holds that a sufficient privilege log need *not* include "organizational positions." WPE's purported justifications for seeking that information confirm that it is trying to hijack privilege logging to interrogate Defendant Automattic's personnel, management structure, and relationships with other related entities. Privilege logs are supposed to describe the withheld documents, not to act as a discovery shortcut. WPE's motion should be denied.

### A.     The Law Does Not Require Logs to Identify All "Organizational Positions"

WPE seeks to invent a new requirement that lacks legal support. Federal Rule of Civil Procedure 26(b)(5) simply requires that a party withholding privileged information "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a

manner that, without revealing information itself privileged or protected, will enable other parties to assess the claims." Fed. R. Civ. P. 26(b)(5)(A)(ii). The rule is "intended to recognize the need for flexibility" and does not prescribe a "one-size-fits-all approach." *Id.*, Advisory Committee Note to 2025 Amendment. Privilege logs are one recognized means by which a party may comply with Rule 26(b)(5). *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992).

The Ninth Circuit has held that privilege logs need identify only: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury*, 974 F.2d at 1071. "[T]he Ninth Circuit does not require disclosure of the title or subject line of a document, the organizational positions held by its senders or recipients, or a description of the subject matter of the document." *In re Google RTB Consumer Privacy Litig.*, 2022 WL 17072016, at *3 (N.D. Cal. Nov. 17, 2022); *see also Khasin v. Hershey Co.*, 2014 WL 690278, at *4 (N.D. Cal. Feb. 21, 2014) ("[T]he Ninth Circuit's test does not require a privilege log to provide the organizational positions of senders and recipients; it merely requires the log to identify the attorney and the client on each document.").

The Court should reject WPE's attempt to interpret its Standing Order to impose new obligations beyond what Rule 26(b)(5) and the Ninth Circuit require. Paragraph 17 of the Court's Standing Order calls for privilege logs to include "the identity and position of [the document's] author(s)" and "the identity and position of all addressees and recipients." Standing Order for Magistrate Judge Donna M. Ryu (July 20, 2022), ¶ 17. Read in the context of Rule 26(b)(5) and Ninth Circuit authority, Defendants understand Paragraph 17's use of the word "position" to mean the *identification of counsel* to enable the parties to "identify the attorney and the client on each document," *Khasin*, 2022 WL 690278, at *4. Moreover, this Court's Standing Order says nothing about "organizational affiliation," despite WPE's repeated insistence that Defendants provide that information, too.

The Ninth Circuit's caselaw on this issue does not merely set a "baseline" or floor, as WPE erroneously suggests: It sets forth the governing test for determining whether a privilege log is adequate or inadequate. To interpret the Standing Order to require, as WPE contends, the disclosure of "the organizational positions of" all "senders and recipients" would go beyond the Ninth Circuit's instructions, *id.*, and permit WPE to hijack the privilege logging process to obtain information for purposes beyond assessing Defendants' privilege claims.

### B.    Defendants' Privilege Logs Are Sufficiently Detailed

Defendants provided WPE with detailed privilege logs, first on July 8 and again on September 5, that include, among other information (1) the author or sender of the document or communication; (2) the recipient of the communication; (3) the names of all individuals in the "cc" or "bcc" fields of the communication; and (4) the name(s) of the attorney(s) or Automattic legal team member(s) whose advice is requested or reflected in the communication. In all instances, Defendants used asterisks to denote which of the listed persons are attorneys. It is abundantly clear from Defendants' privilege log who "the attorney and the client [are] on each document." *Khasin*, 2022 WL 690278, at *4.

That information provides WPE with all the detail it needs "to assess whether the assertion of privilege is justified." Standing Order, ¶ 17. Defendants have identified all senders and recipients

4

of the privileged communications, indicated which of them are attorneys and which are not, and specified whose legal advice was being given or sought in the relevant communication. In fact, Defendants even included a "Privilege Description" field that describes the subject matter of the document or communication and the basis for Defendants' assertion of privilege—notwithstanding that the Ninth Circuit has held that this kind of description is *not necessary* to comply with Rule 26(b)(5). *See In re Grand Jury*, 974 F.2d at 1071; *In re Google RTB Consumer Privacy Litig.*, 2022 WL 17072016, at *3. WPE's accusation that Defendants' privilege logs are "skeletal" and prevent "meaningful privilege review" is therefore unfounded.

WPE's other grievances are red herrings. The fact that Defendants contacted WPE on September 5 (just four days after serving their second privilege log) to clarify that five listed individuals were paralegals rather than attorneys reflects Defendants' good-faith efforts to provide accurate, *relevant* information about the identities and positions (*i.e.*, counsel or non-counsel) of all listed persons. Defendants have already agreed to serve amended logs that specifically denote all paralegals, in addition to denoting all attorneys—and to adhere to that practice for all upcoming privilege logs. Defendants previously offered and hereby confirm that they will provide email addresses for all listed individuals, which will address WPE's purported concern about distinguishing between inside and outside counsel—and its desire to know which individuals work for Automattic as opposed to some other entity. WPE cannot identify any actual, concrete way in which not knowing every sender or recipient's job title has hampered its ability to assess Defendants' privilege assertions. None exists.

### B. WPE Seeks to Misuse Privilege Logging to Bypass Discovery

WPE's arguments above give the game away: It wants Defendants to provide the job titles and organizational affiliations of all 160+ individuals identified on Defendants' privilege logs—information that Defendants would have to determine manually, on a person-by-person basis—so that WPE will have a roadmap to Automattic's organizational structure, not to assess the applicability of privilege. WPE acknowledges that it hopes to use this information to advance its baseless conspiracy theories about a so-called "corporate shell game" in which Mr. Mullenweg "orchestrated a web of conflicted relationships." *Supra* at 2. By its own admission, WPE is looking for a shortcut to identify potential witnesses, obtain the functional equivalent of organizational charts, and figure out who (if anyone) "w[ore] multiple hats across interrelated organizations." *Id*. These are topics for discovery, not privilege logging. WPE's attempt to manufacture a privilege log dispute as an end-run around the discovery process is a misuse of both the privilege log process and this Court's system for resolving discovery disputes. WPE's motion should be denied.

Dated: October 1, 2025

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
*Attorneys for Plaintiff WPEngine, Inc.*

GIBSON DUNN & CRUTCHER, LLP

By: */s/ Joseph R. Rose*
Josh A. Krevitt
Orin Snyder
Michael H. Dore
Joseph R. Rose

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

## **E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Plaintiff and Defendants have concurred in the filing of this document.

*/s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
