| | |
|---|---|
| JOSEPH R. ROSE, SBN 27902<br>  jrose@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>One Embarcadero Center<br>San Francisco, CA 94111-3715<br>Telephone: 415.393.8200<br>Facsimile: 415.801.7358 | JOSH A. KREVITT, SBN 208552<br>  jkrevitt@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>310 University Avenue<br>Palo Alto, CA 94301-1744<br>Telephone: 650.849.5300<br>Facsimile: 650.849.5333 |
| MICHAEL H. DORE, SBN 227442<br>  mdore@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197<br>Telephone: 213.229.7000<br>Facsimile: 213.229.6652 | ORIN SNYDER *(admitted pro hac vice)*<br>  osnyder@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: 212.351.2400<br>  Facsimile: 212.351.6335 |

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>    Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**DECLARATION OF STEPHEN G. DECKERT IN SUPPORT OF DEFENDANTS' STATEMENT IN CONNECTION WITH PLAINTIFF'S ADMINISTRATIVE MOTION RE: SEALING [DKT. 173, 181]** |

**DECLARATION OF STEPHEN G. DECKERT**

I, Stephen G. Deckert declare as follows:

1. I am the Senior Director of Business Development at WooCommerce, a wholly owned subsidiary of Automattic, Inc ("Automattic").

2. I have personal knowledge of the facts set forth herein. If called upon as a witness in this action, I could and would testify competently thereto.

3. Internal discussions at Automattic occur via email, Slack, or P2. Slack is an instant messaging system, and P2 is an internal blog-type system in which Automattic employees can publish posts on different channels, to which other employees may reply. All of these systems are strictly limited to Automattic employees and, where appropriate, legal counsel.

4. Automattic makes internal written guidance available to all employees concerning confidentiality. Automattic informs its employees that all employees must maintain confidentiality around internal company information, which includes information transmitted via Slack and P2, and that sharing private or confidential information externally is a serious breach that may jeopardize employment at Automattic. Automattic also informs its employees that there is an expectation that information shared in a private channel is generally treated as private and confidential.

5. In my experience and to the best of my knowledge, it is understood at Automattic that internal discussions are treated as strictly confidential within the company, with the exception of already public information.

6. In my role, I am involved with and have knowledge of negotiations with third parties regarding their WordPress and WooCommerce hosting offerings and use of the WordPress and WooCommerce trademarks. When a deal is successfully negotiated, Automattic enters into a partnership and/or license agreement with the third party. These third parties include companies that compete with Automattic in offering WordPress web hosting services to customers.

7. Automattic follows a strict practice that requires confidential treatment of all partnership and trademark license negotiations. It is understood internally and during the negotiations with the third parties that the negotiations are confidential.

8. In my experience and to the best of my knowledge, before entering into negotiations

with third parties, Automattic typically enters into nondisclosure agreements to ensure the confidentiality of the negotiations.

9. It is Automattic's practice to include in its agreements confidentiality obligations that prohibit the disclosure of confidential information, including technical, financial, commercial, and other proprietary information.

10. The identities of Automattic's actual or potential customers are treated as confidential unless the customer agrees to publicly disclose their business relationship with Automattic. Even if the existence of the relationship is disclosed, any communications between the customer and Automattic are treated as confidential.

11. Automattic employees frequently discuss business strategy internally, including candid evaluation of Automattic's goods and services, competition with other hosting providers, and relationships with customers and the larger WordPress community. These communications are strictly internal to Automattic and treated as confidential.

12. In my experience and to the best of my knowledge, the confidentiality obligations specified above have been carefully followed at Automattic. I was informed about Automattic's policies and practices described herein when I first joined Automattic, and I have informed others at Automattic of our confidentiality obligations and practices.

13. I have reviewed Plaintiff's Unredacted Corrected Second Amended Complaint ("CSAC") from the perspective of whether it includes information that Automattic would consider confidential under the policies and practices described above. Based on this review, I have determined that the CSAC includes confidential Automattic information where provisionally redacted in the following paragraphs: 121, 135, 200, 202, 208-10, 213-16, 218-19, 223-25, 231, 238, 246, 250, 256, 297, 324, 336, 374, 413, 419, and 524.

14. The information in these paragraphs reflects internal strategy discussions concerning partnership and trademark license negotiations, including discussion of pricing terms and other provisions for existing and potential partnership and licensing agreements; communications with actual and potential business partners, including negotiations concerning contractual terms and/or the overall business relationship; communications with a potential customer; internal strategy discussions

concerning competition with Plaintiff; internal strategy discussions concerning the WordPress community and perception of Automattic's competition with Plaintiff; and internal strategy discussions concerning Automattic's product offerings. Automattic maintains these kinds of information and communications as confidential in the ordinary course of business.

15. The information in these paragraphs reveals highly sensitive and proprietary information, including information about Automattic's intellectual property licensing and other contractual terms; business strategies when partnering or not partnering with certain competitors, including the terms on which Automattic is willing to deal; acquisition of new customers; competition in the market; and product quality.

16. Public disclosure of this information would harm Automattic by potentially advantaging its competitors who would have insights into Automattic's business practices, nonpublic business partners, and nonpublic customers. Disclosure could also unfairly advantage actual and potential counterparties to Automattic's contracts by disclosing confidential information regarding Automattic's contracts and negotiations with third parties and revealing the terms on which Automattic deals with certain business parties. Actual and potential counterparties could use the confidential information alleged in Plaintiff's Complaint as a negotiating tool in potential business transactions with Automattic or to otherwise alter their business relationship with Automattic. The counterparties would therefore gain an advantage that would not otherwise be possible absent the disclosure of the confidential information, compromising Automattic's commercial interests.

17. The information in the provisionally redacted paragraphs of the Complaint is not publicly known. Automattic recognizes and protects the value of this information through its policies and practices designed to protect confidential information from disclosure.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed at Waterloo, Ontario, Canada on this 10th day of October, 2025.

DATED: October 10, 2025

By: _____
Stephen G. Deckert