1   JOSEPH R. ROSE, SBN 27902
        jrose@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP
    One Embarcadero Center
3   San Francisco, CA 94111-3715
    Telephone: 415.393.8200
4   Facsimile: 415.801.7358

5   MICHAEL H. DORE, SBN 227442
        mdore@gibsondunn.com
6   ILISSA SAMPLIN, SBN 314018
        isamplin@gibsondunn.com
7   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
8   Los Angeles, CA 90071-3197
    Telephone: 213.229.7000
9   Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
    jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (admitted pro hac vice)
    osnyder@gibsondunn.com
HOWARD S. HOGAN (pro hac vice pending)
    hhogan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

10  *Attorneys for Defendants Automattic Inc. and*
    *Matthew Charles Mullenweg and Counterclaimants*
11  *WordPress Foundation and WooCommerce Inc.*

12              IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15  WPENGINE, INC., a Delaware corporation,        Case No. 3:24-cv-06917-AMO

16                  Plaintiff,                      **DEFENDANTS' ANSWER TO SECOND
                                                    AMENDED COMPLAINT AND
17          v.                                      COUNTERCLAIMS**

18  AUTOMATTIC INC., a Delaware corporation;        **JURY TRIAL DEMANDED**
    and MATTHEW CHARLES MULLENWEG, an
19  individual,

20                  Defendants.

21  _____

22  AUTOMATTIC INC., a Delaware corporation;
    MATTHEW CHARLES MULLENWEG, an
23  individual; WORDPRESS FOUNDATION, a
    California corporation; and WOOCOMMERCE
24  INC., a Delaware corporation,

25                  Counterclaimants,

26          v.

27  WPENGINE, INC., a Delaware corporation,

28                  Counterdefendant.

Defendants Automattic Inc. and Matthew Charles Mullenweg, by and through their undersigned counsel, hereby respond to Plaintiff WP Engine Inc.'s ("WP Engine") Corrected Second Amended Complaint (Dkt. 180), and, along with the WordPress Foundation and WooCommerce Inc. (collectively, the "WordPress Parties" or "Counterclaimants"), assert counterclaims against WP Engine, as follows:

This case arises from WPEngine, Inc.'s ("WP Engine") deliberate misappropriation of WordPress-related trademarks and its false attempts to pass itself off as the company behind the world-renowned open-source WordPress software. Following Silver Lake Technology Management, L.L.C.'s ("Silver Lake") 2018 acquisition of a controlling interest, WP Engine sought to inflate its valuation and engineer a quick, lucrative exit. To do so, it exploited the reputation, goodwill, and community trust built over two decades by counterclaimants Automattic, Inc., Matthew Mullenweg, WordPress Foundation, and WooCommerce Inc. (collectively, the "WordPress Parties"). These actions were designed to conceal the failure of Silver Lake's investment and deflect responsibility for WP Engine's poor performance.

More than twenty years ago, Matthew Mullenweg co-developed WordPress, the open-source publishing platform that transformed the internet and democratized website creation. It thrived with the support of an ecosystem of developers dedicated to the values of open source. Under Mullenweg's leadership, the WordPress ecosystem developed into a balanced structure:

- The WordPress Foundation protects the software's freedom and fosters ongoing innovation.
- Automattic Inc. provides commercial services that sustain and advance the project.
- WooCommerce Inc. and related entities offer open-source extensions that empower millions of users worldwide.

By 2010, WordPress powered millions of websites, serving as the foundation for a vibrant community of developers, educators, and entrepreneurs. That same year, WP Engine entered the ecosystem as a small hosting provider making largely nominative uses of the WordPress Parties' trademarks, to offer its customers the ability to use WordPress software.

But as Silver Lake slowly realized that it could not reap a windfall on its $250 million

investment, in recent years WP Engine abandoned fair use and began to misappropriate the WordPress Parties' intellectual property. By the early 2020s, WP Engine had anointed itself as "The WordPress Technology Company" and allowed its partners to refer to it as "WordPress Engine." It launched products labeled "Core WordPress" and "Headless WordPress," and falsely promoted itself as a steward of the WordPress ecosystem, bragging to consumers that it had committed 5% of its resources to support the WordPress project—a promise it never kept.

These were not isolated branding choices but a coordinated scheme to misappropriate the WordPress and WooCommerce trademarks, mislead consumers, and inflate WP Engine's valuation for an anticipated sale. At the same time, WP Engine slashed costs, eliminated essential features of its WordPress offerings, and degraded product quality, including removing the ability of customers to restore prior versions of posts and pages. These changes harmed users and eroded public trust in the WordPress name, even though the WordPress Parties had no control over WP Engine's operations. Consumers became frustrated and confused, with many consumers even seeking technical assistance from Automattic to resolve WP Engine product issues.

When Mullenweg and Automattic sought to resolve these violations through good-faith discussions and a fair trademark license, WP Engine pretended to engage in licensing discussions, but actually delayed and negotiated in bad faith, knowing that paying licensing fees would impact its earnings, and, in turn, its valuation and Silver Lake's expected return. Rather than remedy its misconduct, WP Engine continued its unlawful impersonation campaign.

By 2024, however, Silver Lake's plan was collapsing. None of its strategies or shortcuts were working. Despite retaining bankers and running a sales process, it failed to attract a buyer willing to meet WP Engine's inflated valuation. On information and belief, Silver Lake sought more than $2 billion—including through overtures to Automattic—but no buyer valued WP Engine anywhere near that amount. Discovery will show that WP Engine was failing due to internal mismanagement and reckless cost-cutting. WP Engine's decline was a product of its own actions—not from any lawful actions by the WordPress Parties.

In September 2024, after many months of delays and fruitless discussions, Mullenweg gave WP Engine and Silver Lake a choice: reach a fair resolution by either paying a license fee or

honoring their commitment to contribute to the community, or face public accountability. WP Engine chose defiance. At WordCamp 2024, Mullenweg publicly criticized WP Engine's misuse of the WordPress marks, its exploitative "maker/taker" strategy, and its refusal to contribute to the open-source ecosystem, accurately identifying Silver Lake's role in driving those practices. He reiterated those points in a subsequent blog post defending the WordPress community. In retaliation, WP Engine launched this baseless lawsuit against Automattic and Mullenweg to conceal Silver Lake's failed investment from investors and shift blame for WP Engine's own shortcomings.

WP Engine is not a victim. It is a serial infringer that engaged in trademark theft, false advertising, and deceptive business practices to inflate its valuation and mask its problems. Its ongoing misconduct leaves the WordPress Parties no choice but to assert these counterclaims to stop WP Engine's fraud, protect the WordPress and WooCommerce marks, defend the open-source community, and preserve the integrity of a platform used by tens of millions worldwide.

This case is about more than trademarks. It is about protecting a free and open internet that benefits everyone. It is about exposing a threat to this balanced ecosystem by holding WP Engine accountable for a deliberate, unlawful scheme that threatens its very foundation.

## **ANSWER**

Pursuant to Rules 7 and 8 of the Federal Rules of Civil Procedure, Defendants Automattic Inc. and Matthew Charles Mullenweg, by and through their counsel, hereby answer and assert defenses to the claims and allegations made by Plaintiff WPEngine, Inc. in its Second Amended Complaint ("SAC"). *See* Dkt. No. 181-2. Except for those allegations expressly admitted herein, Defendants deny each and every allegation in the SAC. Except as noted herein, Defendants lack information sufficient to form a belief as to the truth of the allegations regarding statements made in internal documents by WPEngine, or any other allegation regarding non-public statements, commercials plans, or intentions

of entities other than Defendants. Defendants expressly deny that WPEngine is entitled to the relief requested or any other relief. Defendants reserve the right to amend this Answer.[1]

1.      Defendants deny the allegations in Paragraph 1.

2.      Defendants admit that WordPress is a successful open source content management system, first released in 2003, that allows people to create and publish websites. Defendants deny the remaining allegations in Paragraph 2.

3.      Defendants deny the allegations in Paragraph 3.

4.      Defendants deny the allegations in Paragraph 4.

5.      Defendants deny the allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants deny the allegations in Paragraph 7.

8.      Defendants deny the allegations in Paragraph 8.

9.      Defendants lack information sufficient to admit or deny the allegations in Paragraph 9.

10.     Defendants admit the allegations in the first sentence of Paragraph 10. Defendants admit that Automattic owns and operates several for-profit businesses that use WordPress, including WordPress.com, WordPress VIP, Pressable.com, and WooCommerce, Inc., and is privately held. Defendants otherwise deny the allegations in Paragraph 10.

_____

[1] Defendants moved to dismiss WP Engine's Second Amended Complaint on October 17, 2025. Dkt. 190. On October 20, the Court revised its Standing Order for Civil Cases to require that parties meet and confer before filing any substantive motion to determine whether the litigation can proceed without the motion or whether the motion must be urgently resolved "until the judiciary is funded." The following day, the Court administratively terminated Defendants' motion to dismiss without prejudice to Defendants' ability to re-submit in compliance with the meet and confer and certification requirement. Dkt. 194. Defendants do not believe their motion needs to be urgently resolved, but hereby answer the Second Amended Complaint and assert counterclaims against WP Engine out of an abundance of caution to ensure that they respond to the pleading in a timely manner and facilitate the parties' discovery. *See* Dkt. 192. Given the unprecedented nature of the effect that the government shutdown is having on the federal judiciary, Defendants will respectfully request that the Court grant leave to refile the motion to dismiss after the Standing Order is amended to remove the certification requirement to ensure the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1; *see also Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases").

11.     Defendant Mullenweg admits that he owns residential property in California. Defendant Automattic lacks information sufficient to admit or deny the allegations in the first sentence of Paragraph 11. Defendants admit that Mullenweg is the CEO of Automattic, that Automattic is based in California, that Mullenweg is a founding director of the WordPress Foundation, and that the WordPress Foundation is a nonprofit organization under Section 501(c)(3) of the Internal Revenue Code. Defendants deny the remaining allegations in Paragraph 11.

12.     Defendants deny the allegations in Paragraph 12.

13.     Defendants deny the allegations in Paragraph 13.

14.     Defendants deny the allegations in Paragraph 14.

15.     Defendants deny the allegations in Paragraph 15.

16.     Paragraph 16 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

17.     Paragraph 17 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

18.     Paragraph 18 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

19.     Paragraph 19 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

20.     Paragraph 20 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

21.     The allegations in the first sentence of Paragraph 21 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 21.

22.     Defendants admit that Paragraph 22 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 22.

23.     Defendants admit that Paragraph 23 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 23.

Gibson, Dunn & Crutcher LLP

24.     The allegations in the first sentence of Paragraph 24 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 24.

25.     The allegations in Paragraph 25 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

26.     The allegations in Paragraph 26 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

27.     Defendants deny the allegations in Paragraph 27.

28.     The allegations in the fourth sentence of Paragraph 28 are conclusions of law to which no responsive pleading is required. Defendants otherwise deny the allegations in Paragraph 28.

29.     Defendants admit that the web content management systems ("WCMS") industry includes WCMS providers, web hosting service providers, agencies, developers, and customers, among other participants. Defendants otherwise deny the allegations in Paragraph 29.

30.     Defendants admit the allegations in the first and second sentences of Paragraph 30. Defendants admit that Paragraph 30 purports to quote from webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 30.

31.     Defendants admit the allegations in Paragraph 31.

32.     Defendants admit the first two sentences of Paragraph 32. Defendants otherwise deny the allegations in Paragraph 32.

33.     Defendants admit that customers may include individuals or entities that own or wish to own websites for business or other purposes. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 33.

34.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 34.

35.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 35.

36.     Defendants admit the first three sentences of Paragraph 36. Defendants deny the remaining allegations in Paragraph 36.

37.     Defendants admit that WPE develops plugins, including Advanced Custom Fields, WP Migrate, NitroPack, and others. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 37.

38.     Defendants lack information sufficient to admit or deny the allegations in Paragraph 38.

39.     Defendants admit that WP Engine has participated in WordCamps as a sponsor and that WP Engine has produced DE{CODE}. Defendants deny the remaining allegations in Paragraph 39.

40.     Defendants deny the allegations in Paragraph 40.

41.     Defendants admit that Paragraph 41 purports to refer to webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 41.

42.     Defendants admit that WP Engine has been a sponsor of WordPress conferences known as WordCamp. Defendants deny the remaining allegations in Paragraph 42.

43.     Defendants admit that WP Engine's Five for the Future pledge was reflected on WordPress.org. Defendants admit that Paragraph 43 purports to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 43.

44.     Defendants admit that on March 21, 2023, Mullenweg attended and spoke at WPE's developer conference, DE{CODE}. Defendants admit that Paragraph 44 purports to refer to and quote documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 44.

45.     Defendants admit that Paragraph 45 purports to refer to a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 45.

46.     Defendants admit that Paragraph 46 purports to refer to a livestream that speaks for itself. Defendants deny the remaining allegations in Paragraph 46.

47.     Defendants admit that Paragraph 47 purports to quote webpages and videos that speak for themselves. Defendants deny the remaining allegations in Paragraph 47.

48.     Defendants admit that in 2003, Mullenweg cofounded WordPress, accessible at WordPress.org, by "forking" another earlier open source software program called b2/cafelog. Defendants admit that WordPress is an open source web content management system. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 48.

49.     Defendants admit that WordPress operates under the open-source GNU General Public License ("GPL"). Defendants admit that the Paragraph 49 purports to refer to the terms of the GPL, which is a document that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 49.

50.     Defendants admit the allegations in Paragraph 50.

51.     Defendants admit the allegations in Paragraph 51.

52.     Defendants admit that Paragraph 52 purports to quote from webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 52.

53.     Defendants admit that Paragraph 53 purports to refer to documents which speak for themselves. Defendants deny the remaining allegations in Paragraph 53.

54.     Defendants admit that Paragraph 54 purports to refer to documents which speak for themselves. Defendants deny the remaining allegations in Paragraph 54.

55.     Defendants admit that Paragraph 55 purports to quote from webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 55.

56.     Defendants deny the allegations in Paragraph 56.

57.     Defendants admit that WordPress software is accessible through WordPress.org, among other public sources, and that WordPress.org also contains information, tutorials, educational and training resources, and news about WordPress. Defendants admit the allegations in the second sentence of Paragraph 57. Defendants deny the remaining allegations in Paragraph 57.

58.     Defendants admit that Paragraph 58 purports to refer to a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 58.

59.     Defendants admit that Paragraph 59 purports to refer to webpages and interviews that speak for themselves. Defendants deny the remaining allegations in Paragraph 59.

60.     Defendants admit that Paragraph 60 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants admit that Paragraph 62 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 62.

63.     Defendants admit that Paragraph 63 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 63.

64.     Defendants admit that Paragraph 64 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 64.

65.     Defendants admit that Paragraph 65 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 65.

66.     Defendants admit that Paragraph 66 purports to quote from an interview that speaks for itself. Defendants deny the remaining allegations in Paragraph 66.

67.     Defendants admit that Paragraph 67 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 67.

68.     Defendants deny the allegations in Paragraph 68.

69.     Defendants admit that the WordPress developer guidelines ("Detailed Plugin Guidelines") were first published on April 9, 2015. Defendants further admit that Paragraph 69 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 69.

70.     Defendants admit that Paragraph 70 purports to quote from a webpage that speaks for itself.

71.     Defendants deny the allegations in Paragraph 71.

72.     Defendants admit that Paragraph 72 cites a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 72.

73.     Defendants deny the allegations in Paragraph 73.

74.     Defendants lack information sufficient to admit or deny the allegations concerning the knowledge of WP Engine and "other market participants" stated in Paragraph 74. Defendants deny the remaining allegations in Paragraph 74.

75.     Defendants lack information sufficient to admit or deny the allegations concerning the knowledge of WP Engine and "other market participants" stated in Paragraph 75. Defendants deny the remaining allegations in Paragraph 75.

76.    Defendants lack information sufficient to admit or deny the allegations concerning the knowledge of WP Engine and "other market participants" stated in Paragraph 76. Defendants deny the remaining allegations in Paragraph 76.

77.    Defendants admit that Paragraph 77 purports to refer to and quote documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 77.

78.    Defendant admits that Paragraph 78 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 78.

79.    Defendants deny the allegations in Paragraph 79.

80.    Defendants admit that Paragraph 80 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 80.

81.    Defendants admit that Paragraph 81 purports to refer to a post on <u>X.com</u> on September 20, 2024, a document that speaks for itself. Defendants also admit that a user responded to this post. Defendants deny the remaining allegations in Paragraph 81.

82.    Defendants admit that Paragraph 82 refers to a post on X.com, a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 82.

83.    Defendants deny the allegations in Paragraph 83.

84.    Defendants admit that the values of freedom and openness, among others, are important to the WordPress community and that WordPress is available under an open-source GPL. Defendants deny the remaining allegations in Paragraph 84.

85.    Defendants admit that Paragraph 85 purports to refer to and quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 85.

86.    Defendants deny the allegations in Paragraph 86.

87.    Defendants admit that Paragraph 87 purports to refer to and quote from a webpage that speaks for itself. Defendants deny the allegations in Paragraph 87.

88.    Defendants admit that WordPress.org contains "Frequently Asked Questions." Defendants deny the remaining allegations in Paragraph 88.

89.    Defendants admit that Paragraph 89 purports to refer to and quote from webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 89.

90.     Paragraph 90 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

91.     Defendants deny the allegations in Paragraph 91.

92.     Defendants admit that Paragraph 92 purports to refer to and quote a document that speaks for itself. Paragraph 92 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

93.     Defendants admit that Paragraph 93 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 93.

94.     Defendants admit that Paragraph 94 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 94.

95.     Defendants admit that Paragraph 95 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 95.

96.     Defendants admit that Paragraph 96 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 96.

97.     Defendants admit that Paragraph 97 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 97.

98.     Defendants admit that Paragraph 98 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 98.

99.     Paragraph 99 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

100.     Defendants admit that Footnote 59 to Paragraph 100 purports to quote a hearing transcript that speaks for itself. Defendants deny the remaining allegations in Paragraph 100.

101.     Paragraph 101 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

102.     Paragraph 102 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 102.

103.     Defendants deny the allegations in Paragraph 103.

Gibson, Dunn & Crutcher LLP

104.    Defendants admit that Paragraph 104 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 104.

105.    Paragraph 105 contains conclusions of law and allegations concerning claims that have been dismissed, to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 105 purports to quote from a webpage that speaks for itself, and Defendants deny the remaining allegations in Paragraph 105.

106.    Paragraph 106 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 106 purports to quote from a webpage that speaks for itself, and Defendants deny the remaining allegations in Paragraph 106.

107.    Defendants deny the allegations in Paragraph 107.

108.    Defendants admit that Paragraph 108 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109.

110.    Paragraph 110 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 110 purports to quote a webpage that speaks for itself, and Defendants deny the remaining allegations in Paragraph 110.

111.    Paragraph 111 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 111 purports to reference unspecified webpages that speak for themselves, and Defendants deny the remaining allegations in Paragraph 111.

112.    Paragraph 112 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 112.

113.    Paragraph 113 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 113.

114.    Paragraph 114 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 114.

115.    Defendants deny the allegations in Paragraph 115.

Gibson, Dunn & Crutcher LLP

116.    Defendants admit that Paragraph 116 purports to quote from a webpage that speaks for itself, and Defendants deny the remaining allegations in Paragraph 116.

117.    Defendants deny the allegations in Paragraph 117.

118.    Defendants deny the allegations in Paragraph 118.

119.    Paragraph 119 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 119 purports to quote from an interview and a document, both of which speak for themselves. Defendants also admit the second and third sentences of Footnote 66 to Paragraph 119. Defendants deny the remaining allegations in Paragraph 119.

120.    Defendants deny the first and second sentences of Paragraph 120. Defendants admit the third sentence of Paragraph 120. Defendants lack information sufficient to admit or deny the fourth and seventh sentences of Paragraph 120. Defendants admit that the fifth sentence of Paragraph 120 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 120.

121.    Defendants admit that Paragraph 121 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 121.

122.    Defendants admit that Pressable competes with WPE. Defendants deny the remaining allegations in Paragraph 122.

123.    Defendants admit that Paragraph 123 purports to quote a speech, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 123.

124.    Defendants admit that Paragraph 124 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 124.

125.    Defendants admit that Paragraph 125 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 125.

126.    Defendants admit that Paragraph 126 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 126.

127.    Paragraph 127 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 127 purports to quote documents that speak for themselves deny the remaining allegations in Paragraph 127.

Gibson, Dunn & Crutcher LLP

128.    Defendants admit that Paragraph 128 purports to quote from a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 128.

129.    Defendants admit that Paragraph 129 purports to quote from documents that speak for themselves and deny the remaining allegations in Paragraph 129.

130.    Defendants admit that Paragraph 130 purports to quote from a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 130.

131.    Defendants admit that Paragraph 131 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 131.

132.    Defendants admit that Paragraph 132 purports to quote from an interview that speaks for itself. Defendants deny the remaining allegations in Paragraph 132.

133.    Defendants admit that Paragraph 133 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 133.

134.    Defendants deny the allegations in Paragraph 134.

135.    Paragraph 135 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 135 purports to refer to and quote a document that speaks for itself and deny the remaining allegations in Paragraph 135.

136.    Paragraph 136 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 136 purports to refer to and quote a document that speaks for itself and deny the remaining allegations in Paragraph 136.

137.    Paragraph 137 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 137 purports to quote from a webpage that speaks for itself and deny the remaining allegations in Paragraph 137.

138.    Defendants admit that Paragraph 138 purports to quote from a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 138.

139.    Defendants admit that Paragraph 139 refers to documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 139.

140.    Defendants deny the allegations in Paragraph 140.

141.    Defendants admit that Mullenweg participated in an interview livestreamed on X.com on September 27, 2024. Defendants admit that Paragraph 141 purports to quote from an interview that speaks for itself. Defendants deny the remaining allegations in Paragraph 141.

142.    Defendants admit that Paragraph 142 purports to quote from an interview that speaks for itself. Defendants deny the remaining allegations in Paragraph 142.

143.    Defendants deny the allegations in Paragraph 143.

144.    Defendants lack information sufficient to admit or deny the allegations in the last sentence of Paragraph 144.

145.    Defendants admit that Paragraph 145 purports to refer to an interview that speaks for itself. Defendants lack sufficient information sufficient to admit or deny the last sentence in Paragraph 145. Defendants deny the remaining allegations in Paragraph 145.

146.    Defendants admit that Paragraph 146 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 146.

147.    Defendants admit that Paragraph 147 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 147.

148.    Defendants deny the allegations in Paragraph 148.

149.    Defendants admit that Paragraph 149 purports to quote documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 149.

150.    Defendants admit that Automattic sent an email notification about a security vulnerability with the ACF plugin on October 4, 2024. Defendants admit that Paragraph 150 purports to quote from documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 150.

151.    Defendants deny the allegations in Paragraph 151.

152.    Defendants admit that the social media post referenced in Paragraph 152 was taken down. Defendants deny the remaining allegations in Paragraph 152.

153.    Defendants admit that Paragraph 153 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 153.

154.    Defendants deny the allegations in Paragraph 154.

155.    Defendants admit that this Court entered a preliminary injunction order (Dkt. 62), which speaks for itself. Defendants admit that Paragraph 155 purports to refer to and quote other documents that speak for themselves. Defendants deny the remaining allegations in Paragraph 155.

156.    Defendants admit that Paragraph 156 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 156.

157.    Defendants deny the allegations in Paragraph 157.

158.    Defendants deny the allegations in Paragraph 158.

159.    Defendants deny the allegations in Paragraph 159.

160.    Defendants admit that Paragraph 160 purports to quote from a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 160.

161.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 161

162.    Defendants deny the allegations in Paragraph 162.

163.    Defendants admit that Paragraph 163 purports to refer to a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 163.

164.    Defendants deny the allegations in Paragraph 164.

165.    Defendants deny the allegations in Paragraph 165.

166.    The allegations in Paragraph 166 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

167.    Defendants admit that Paragraph 167 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 167.

168.    Defendants admit that Paragraph 168 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 168.

169.    Defendants deny the allegations in Paragraph 169.

170.    Defendants deny the allegations in Paragraph 170.

171.    Defendants deny the allegations in Paragraph 171.

172.    Defendants admit that Paragraph 172 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 172.

173.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 173.

174.    Defendants admit that Paragraph 174 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 174.

175.    Defendants admit that Paragraph 175 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 175.

176.    Defendants admit that Paragraph 176 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 176.

177.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 177.

178.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 178.

179.    Defendants admit that Paragraph 179 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 179.

180.    Defendants admit that Paragraph 180 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 180.

181.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 181.

182.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 182.

183.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 183.

184.    Defendants admit that Paragraph 184 purports to refer to a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 184.

185.    Defendants deny the allegations in Paragraph 185.

186.    Defendants deny that they have engaged in any "wrongful actions." Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 186.

187.    Defendants deny the allegations in Paragraph 187.

Gibson, Dunn &
Crutcher LLP

188.    Defendants deny the allegations in Paragraph 188.

189.    Defendants deny the allegations in Paragraph 189.

190.    Defendants deny the allegations in the first sentence of Paragraph 190. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 190.

191.    Defendants deny the allegations in Paragraph 191.

192.    Defendants deny the allegations in Paragraph 192.

193.    Defendants deny the allegations in Paragraph 193.

194.    Defendants admit that participants in the WordPress community, including Defendants themselves, have invested billions of dollars and millions of hours into improving WordPress for the entire WordPress community. Defendants otherwise lack information sufficient to admit or deny the remaining allegations in Paragraph 194.

195.    Defendants admit that Paragraph 195 purports to quote documents that speak for themselves. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 195.

196.    The allegations in Paragraph 196 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

197.    The allegations in Paragraph 197 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

198.    The allegations in Paragraph 198 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

199.    Defendants deny the allegations in Paragraph 199.

200.    Defendants deny the allegations in Paragraph 200.

201.    Defendants deny the allegations in Paragraph 201.

202.    Defendants deny the allegations in Paragraph 202.

203.    The allegations in Paragraph 203 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

204.    The allegations in Paragraph 204 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

Gibson, Dunn & Crutcher LLP

205.    The allegations in Paragraph 205 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

206.    The allegations in Paragraph 206 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

207.    Defendants deny the allegations in Paragraph 207.

208.    Defendants admit that Paragraph 208 purports to quote an unspecified document that speaks for itself. To the extent a response is required, Defendants deny the remaining allegations.

209.    Defendants admit that Paragraph 209 purports to quote an unspecified document that speaks for itself. To the extent a response is required, Defendants deny the remaining allegations.

210.    Defendants admit that Paragraph 210 purports to quote an unspecified document that speaks for itself. To the extent a response is required, Defendants deny the remaining allegations.

211.    Defendants deny the allegations in Paragraph 211.

212.    The allegations in Paragraph 212 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

213.    Defendants admit that Paragraph 213 purports to quote an unspecified document that speaks for itself. Defendants deny the remaining allegations in Paragraph 213.

214.    The allegations in Paragraph 214 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 214 purports to quote a document that speaks for itself and deny the remaining allegations in Paragraph 214.

215.    The allegations in Paragraph 215 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 215 purports to quote a document that speaks for itself and Defendants deny the remaining allegations in Paragraph 215.

216.    The allegations in Paragraph 216 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants admit that Paragraph 216 purports to quote a document that speaks for itself and . To the extent a response is required, Defendants deny the remaining allegations in Paragraph 216.

217.    Defendants deny the allegations in Paragraph 217.

1    218.    Defendants deny the allegations in Paragraph 218.

2    219.    Defendants deny the allegations in Paragraph 219.

3    220.    Defendants admit that Paragraph 220 purports to refer to and quote a document that

4    speaks for itself. Defendants deny the remaining allegations in Paragraph 220.

5    221.    Defendants admit that Mullenweg appeared in an interview on YouTube, a recording of

6    which was posted on September 29, 2024, and speaks for itself. Defendants deny the remaining

7    allegations in Paragraph 221.

8    222.    Defendants deny the allegations in Paragraph 222.

9    223.    Defendants admit that Paragraph 223 purports to quote a document that speaks for itself.

10   Defendants deny the remaining allegations in Paragraph 223.

11   224.    Defendants admit that Paragraph 224 purports to quote a document that speaks for itself.

12   Defendants deny the remaining allegations in Paragraph 224.

13   225.    The allegations in Paragraph 225 are conclusions of law to which no responsive

14   pleading is required. To the extent a response is required, Defendants deny those allegations.

15   226.    The allegations in Paragraph 226 are conclusions of law to which no responsive

16   pleading is required. To the extent a response is required, Defendants deny those allegations.

17   227.    The allegations in Paragraph 227 are conclusions of law to which no responsive

18   pleading is required. To the extent a response is required, Defendants deny those allegations.

19   228.    Defendants deny the allegations in Paragraph 228.

20   229.    Defendants deny the allegations in Paragraph 229.

21   230.    Defendants deny the allegations in Paragraph 230.

22   231.    Defendants lack information sufficient to admit or deny the first sentence of Paragraph

23   231. Defendants admit that the second and third sentences of Paragraph 231 purport to quote documents

24   that speak for themselves. Defendants deny the remaining allegations in Paragraph 231.

25   232.    Defendants admit that Paragraph 232 purports to quote an unspecified document that

26   speaks for itself. Defendants deny the remaining allegations in Paragraph 232.

27   233.    Defendants deny the allegations in Paragraph 233.

28

Gibson, Dunn &
Crutcher LLP

234.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 234.

235.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 235.

236.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 236.

237.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 237.

238.    Defendants admit that Paragraph 238 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 238.

239.    Defendants deny the allegations in Paragraph 239.

240.    Defendants deny the allegations in Paragraph 240.

241.    Defendants deny the allegations in Paragraph 241.

242.    Defendants admit that Paragraph 242 purports to quote a developer's words, which speak for themselves. Defendants deny the remaining allegations in Paragraph 242.

243.    Defendants admit that Paragraph 243 purports to quote a developer's words, which speaks for itself. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 243.

244.    Defendants admit that Paragraph 244 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 244.

245.    Defendants admit that Paragraph 245 purports to refer to and quote an unspecified document that speaks for itself. Defendants deny the remaining allegations in Paragraph 245.

246.    Defendants admit that Paragraph 246 purports to refer to and quote an unspecified document that speaks for itself. Defendants deny the remaining allegations in Paragraph 246.

247.    Defendants deny the allegations in Paragraph 247.

248.    Defendants deny the allegations in Paragraph 248.

249.    Defendants deny the allegations in Paragraph 249.

Gibson, Dunn &
Crutcher LLP

250.    Defendants admit that Paragraph 250 purports to refer to and quote an unspecified document that speaks for itself. Defendants deny the remaining allegations in Paragraph 250.

251.    The allegations in Paragraph 251 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 251.

252.    The allegations in Paragraph 252 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 252.

253.    The allegations in Paragraph 253 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendant denies the remaining allegations in Paragraph 253.

254.    Defendants admit that Paragraph 254 purports to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 254.

255.    Defendants admit that Paragraph 255 purports to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 255.

256.    The allegations in Paragraph 256 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

257.    The allegations in Paragraph 257 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

258.    The allegations in Paragraph 258 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

259.    The allegations in Paragraph 259 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

260.    The allegations in Paragraph 260 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

261.    The allegations in Paragraph 261 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

262.     The allegations in Paragraph 262 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

263.     Defendants deny the allegations in Paragraph 263.

264.     Defendants deny the allegations in Paragraph 264.

265.     Defendants deny the allegations in Paragraph 265.

266.     Defendants deny the allegations in Paragraph 266.

267.     Defendants deny the allegations in Paragraph 267.

268.     Defendants deny the allegations in Paragraph 268.

269.     Defendants deny the allegations in Paragraph 269.

270.     Defendants deny the allegations in Paragraph 270.

271.     Defendants' deny the allegations in Paragraph 271.

272.     Defendants admit that Paragraph 272 purports to quote from a webpage that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 272.

273.     Defendants admit that Paragraph 273 purports to quote from a webpage that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 273.

274.     Defendants admit that Paragraph 274 purports to refer to a webpage that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 274.

275.     The allegations in Paragraph 275 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

276.     Defendants admit that Paragraph 276 purports to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 276.

277.     The allegations in Paragraph 277 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 277.

Gibson, Dunn &
Crutcher LLP

278.    The allegations in Paragraph 278 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 278.

279.    Defendants deny the allegations in Paragraph 279.

280.    Defendants deny the allegations in Paragraph 280.

281.    The allegations in Paragraph 281 contain conclusions of law to which no responsive pleading is required. Defendants admit that Paragraph 281 purports to quote a webpage that speaks for itself. To the extent a response is required, Defendants do not have sufficient information to admit or deny the allegations in Paragraph 281.

282.    Defendants admit that Mullenweg co-created WordPress software and that Automattic is a privately held for-profit company founded by Mullenweg. Defendants deny the remaining allegations in Paragraph 282.

283.    Defendants admit that Paragraph 283 purports to refer to and quote from a webpage and post on X.com that speaks for itself. Defendants deny the remaining allegations in Paragraph 283.

284.    Defendants admit that Paragraph 284 purports to quote webpages that speak for themselves. Defendants deny the remaining allegations in Paragraph 284.

285.    Defendants deny the allegations in Paragraph 285.

286.    Defendants deny the allegations in Paragraph 286.

287.    The allegations in Paragraph 287 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants lack information sufficient to admit or deny the allegations in Paragraph 287.

288.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 288.

289.    Defendants admit that Paragraph 289 purports to quote from a webpage that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 289.

290.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 290.

291.    Defendants admit that Paragraph 291 purports to quote from a webpage that speaks for itself. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 291.

292.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 292.

293.    Defendants admit that Paragraph 293 purports to quote from webpages that speak for themselves. Defendants lack information sufficient to admit or deny the remaining allegations in Paragraph 293.

294.    The allegations in Paragraph 294 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 294.

295.    The allegations in Paragraph 295 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 295.

296.    Defendants deny the allegations in Paragraph 296.

297.    Paragraph 297 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 297.

298.    Paragraph 298 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 298.

299.    Defendants admit that Paragraph 299 purports to refer to a video that speaks for itself. Paragraph 299 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 299.

300.    Paragraph 300 contains allegations concerning claims that have been dismissed, and no responsive pleading is required. To the extent a response is required, Defendants deny the allegations in Paragraph 300.

301.    Defendants admit that Paragraph 301 purports to quote from a webpage that speaks for itself. Paragraph 301 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 301.

1    302.    Defendants deny the allegations in Paragraph 302.

2    303.    Paragraph 303 contains conclusions of law to which no responsive pleading is required.

3    To the extent a response is required, Defendants deny those allegations.

4    304.    To the extent a response is required, Defendants lack information sufficient to admit or

5    deny the allegations in the first sentence of Paragraph 304. The second sentence of Paragraph 304

6    contains conclusions of law to which no responsive pleading is required. To the extent a response is

7    required, Defendants deny the allegations in Paragraph 304.

8    305.    Paragraph 305 contains conclusions of law to which no responsive pleading is required.

9    To the extent a response is required, Defendants deny the allegations in Paragraph 305.

10    306.    Paragraph 306 contains conclusions of law to which no responsive pleading is required.

11    To the extent a response is required, Defendants deny the allegations in Paragraph 306.

12    307.    Paragraph 307 contains conclusions of law to which no responsive pleading is required.

13    To the extent a response is required, Defendants deny the allegations in Paragraph 307.

14    308.    Paragraph 308 contains conclusions of law to which no response is required. To the

15    extent a response is required, Defendants deny the allegations in Paragraph 308.

16    309.    Defendants deny the allegations in Paragraph 309.

17    310.    Defendants deny the allegations in Paragraph 310.

18    311.    Paragraph 311 contains conclusions of law to which no response is required. To the

19    extent a response is required, Defendants deny the allegations in Paragraph 311.

20    312.    Defendants deny the allegations in Paragraph 312.

21    313.    Paragraph 313 contains conclusions of law to which no response is required. To the

22    extent a response is required, Defendants deny the allegations in Paragraph 313.

23    314.    Defendants deny the allegations in Paragraph 314.

24    315.    Paragraph 315 contains conclusions of law to which no response is required. To the

25    extent a response is required, Defendants deny the allegations in Paragraph 315.

26    316.    Paragraph 316 contains conclusions of law to which no response is required. To the

27    extent a response is required, Defendants deny the allegations in Paragraph 316.

28

Gibson, Dunn &
Crutcher LLP

317.    Paragraph 317 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 317.

318.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 318.

319.    Paragraph 319 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

320.    Paragraph 320 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

321.    Paragraph 321 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

322.    Paragraph 322 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

323.    Defendants admit that Paragraph 323 purports to refer to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 323.

324.    Defendants admit that Paragraph 324 purports to refer to quote a webpage that speaks for itself. Defendants deny the remaining allegations in Paragraph 324.

325.    Paragraph 325 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

326.    Defendants admit that Paragraph 326 purports to refer to quote a webpage that speaks for itself. Paragraph 326 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

327.    Defendants admit that Paragraph 327 purports to quote from a webpage that speaks for itself. Defendants also admit that official releases of WordPress are available at WordPress.org. Defendants deny the remaining allegations in Paragraph 327.

328.    Defendants deny the allegations in Paragraph 328.

329.    Defendants deny the allegations in Paragraph 329.

330.    Defendants deny the allegations in Paragraph 330.

331.    Defendants deny the allegations in Paragraph 331.

Gibson, Dunn & Crutcher LLP

332.    Defendants deny the allegations in Paragraph 332.

333.    The allegations in Paragraph 333 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

334.    The allegations in Paragraph 334 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

335.    The allegations in Paragraph 335 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

336.    Defendants deny the allegations in Paragraph 336.

337.    The allegations in Paragraph 337 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

338.    The allegations in Paragraph 338 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

339.    Defendants deny the allegations in Paragraph 339.

340.    Defendants deny the allegations in Paragraph 340.

341.    The allegations in Paragraph 341 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

342.    The allegations in Paragraph 342 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

343.    Defendants deny the allegations in Paragraph 343.

344.    Defendants deny the allegations in Paragraph 344.

345.    Defendants deny the allegations in Paragraph 345.

346.    Defendants deny the allegations in Paragraph 346.

347.    The allegations in Paragraph 347 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

348.    Defendants deny the allegations in Paragraph 348.

349.    The allegations in Paragraph 349 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

Gibson, Dunn & Crutcher LLP

350.    The allegations in Paragraph 350 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

351.    Defendants deny the allegations in Paragraph 351.

352.    The allegations in Paragraph 352 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

353.    Defendants deny the allegations in Paragraph 353.

354.    Defendants deny the allegations in Paragraph 354.

355.    Defendants deny the allegations in Paragraph 355.

356.    Defendants deny the allegations in Paragraph 356.

357.    Defendants deny the allegations in Paragraph 357.

358.    The allegations in Paragraph 358 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

359.    The allegations in Paragraph 359 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

360.    The allegations in Paragraph 360 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

361.    Defendants lack information sufficient to admit or deny the allegations in the first sentence of Paragraph 361. Defendants admit that Paragraph 361 purports to quote from a webpage, but otherwise deny the remaining allegations in the second sentence of Paragraph 361.

362.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 362.

363.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 363.

364.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 364.

365.    Defendants lack information sufficient to admit or deny the allegations in the first full sentence of Paragraph 365. The second sentence of Paragraph 365 contains conclusions of law to which

no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

366.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 366.

367.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 367.

368.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 368.

369.    Defendants deny the allegations in Paragraph 369.

370.    The allegations in Paragraph 370 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

371.    The allegations in Paragraph 371 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

372.    Defendants deny the allegations in Paragraph 372.

373.    Defendants deny the allegations in Paragraph 373.

374.    Defendants deny the allegations in Paragraph 374.

375.    The allegations in Paragraph 375 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

376.    The allegations in Paragraph 376 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

377.    The allegations in Paragraph 377 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

378.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

379.    The allegations in Paragraph 379 and all of its subparts are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

380.    Defendants deny the allegations in Paragraph 380.

381.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

382.    The allegations in Paragraph 382 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

383.    The allegations in Paragraph 383 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

384.    The allegations in Paragraph 384 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

385.    The allegations in Paragraph 385 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

386.    The allegations in Paragraph 386 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

387.    The allegations in Paragraph 387 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

388.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

389.    The allegations in Paragraph 389 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

390.    The allegations in Paragraph 390 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

391.    The allegations in Paragraph 391 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

392.    The allegations in Paragraph 392 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

393.    The allegations in Paragraph 393 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

394.    The allegations in Paragraph 394 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

395. The allegations in Paragraph 395 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

396. The allegations in Paragraph 396 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

397. The allegations in Paragraph 397 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

398. Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

399. Defendants admit that WPE operates a hosting service for websites built using the WordPress open-source software. The remaining allegations in Paragraph 399 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

400. The allegations in Paragraph 400 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

401. Defendants admit that Paragraph 401 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 401 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

402. Defendants admit that Paragraph 402 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 402 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

403. Defendants admit that Paragraph 403 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 403 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

404. The allegations in Paragraph 404 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

Gibson, Dunn & Crutcher LLP

405.    The allegations in Paragraph 405 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

406.    The allegations in Paragraph 406 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

407.    The allegations in Paragraph 407 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

408.    The allegations in Paragraph 408 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

409.    The allegations in Paragraph 409 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

410.    Defendants admit that Paragraph 410 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 410 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

411.    The allegations in Paragraph 411 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

412.    The allegations in Paragraph 412 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

413.    Defendants admit that Paragraph 413 purports to refer to and quote a documents that speak for themselves. The remaining allegations in Paragraph 413 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

414.    The allegations in Paragraph 414 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

415.    The allegations in Paragraph 415 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

416.    The allegations in Paragraph 416 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

417.     The allegations in Paragraph 417 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

418.     The allegations in Paragraph 418 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

419.     Defendants admit that Paragraph 419 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 419 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

420.     The allegations in Paragraph 420 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

421.     The allegations in Paragraph 421 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

422.     The allegations in Paragraph 422 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

423.     The allegations in Paragraph 423 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

424.     The allegations in Paragraph 424 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

425.     The allegations in Paragraph 425 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

426.     The allegations in Paragraph 426 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

427.     The allegations in Paragraph 427 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

428.     The allegations in Paragraph 428 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

429.     Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

Gibson, Dunn & Crutcher LLP

430. The allegations in Paragraph 430 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

431. The allegations in Paragraph 431 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

432. The allegations in Paragraph 432 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

433. The allegations in Paragraph 433 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

434. The allegations in Paragraph 434 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

435. The allegations in Paragraph 435 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

436. The allegations in Paragraph 436 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

437. Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

438. The allegations in Paragraph 438 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

439. The allegations in Paragraph 439 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

440. The allegations in Paragraph 440 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

441. Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

442. The allegations in Paragraph 442 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

443. The allegations in Paragraph 443 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

Gibson, Dunn &
Crutcher LLP

444.    The allegations in Paragraph 444 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

445.    Paragraph 445 contains allegations concerning claims that have been dismissed, and no responsive pleading is required. The allegations in Paragraph 445 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

446.    The allegations in Paragraph 446 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

447.    The allegations in Paragraph 447 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

448.    The allegations in Paragraph 448 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

449.    The allegations in Paragraph 449 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

450.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

451.    The allegations in Paragraph 451 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

452.    The allegations in Paragraph 452 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

453.    The allegations in Paragraph 453 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

454.    The allegations in Paragraph 454 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

455.    The allegations in Paragraph 455 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

456.    The allegations in Paragraph 456 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

Gibson, Dunn & Crutcher LLP

457.    The allegations in Paragraph 457 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

458.    The allegations in Paragraph 458 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

459.    The allegations in Paragraph 459 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

460.    The allegations in Paragraph 460 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

461.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

462.    Defendants admit that Paragraph 462 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 462 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

463.    Defendants admit that Paragraph 463 purports to refer to and quote a document that speaks for itself. The remaining allegations in Paragraph 463 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

464.    Paragraph 464 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

465.    Paragraph 465 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

466.    Defendants deny the allegations in Paragraph 466.

467.    Defendants admit that the "News" section of WordPress.org contains information about and promotes WordPress. Defendants deny the remaining allegations in Paragraph 467.

468.    Defendants deny the allegations in Paragraph 468. Paragraph 468 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

469.    Defendants admit that Paragraph 469 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 469.

Gibson, Dunn & Crutcher LLP

470.    Defendants admit that Paragraph 470 purports to refer to and quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 470.

471.    Defendants deny the allegations in Paragraph 471.

472.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 472.

473.    Defendants deny the allegations in Paragraph 473.

474.    Defendants admit WPE's business sells a platform specifically for websites built on the WordPress software. The remaining allegations in Paragraph 474 contain conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

475.    Paragraph 475 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

476.    Paragraph 476 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

477.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

478.    Paragraph 478 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

479.    Paragraph 479 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

480.    Paragraph 480 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

481.    Defendants deny the allegations in Paragraph 481.

482.    Paragraph 482 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

483.    Defendants admit that WordPress.org houses a repository for WordPress software and plugins. Defendants deny the remaining allegations in Paragraph 483.

484.    Defendants admit that the "News" section of WordPress.org contains information about and promotes WordPress. Defendants deny the remaining allegations in Paragraph 484.

485.    Defendants deny the allegations in Paragraph 485.

486.    Defendants admit that Paragraph 486 purports to refer to and quote a document that speaks for itself. Defendants otherwise deny the remaining allegations in Paragraph 486.

487.    Defendants admit that Paragraph 487 purports to refer to and quote a document that speaks for itself. Defendants otherwise deny the remaining allegations in Paragraph 487.

488.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 488.

489.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 489.

490.    Defendants deny the allegations in Paragraph 490.

491.    Defendants deny the allegations in Paragraph 491.

492.    Defendants admit that Paragraph 492 purports to refer to and quote a document that speaks for itself. Defendants otherwise deny the remaining allegations in Paragraph 492.

493.    Paragraph 493 contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

494.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

495.    Defendants deny the allegations in Paragraph 495.

496.    Defendants admit that Matt Mullenweg gave a keynote address at the WordCamp US Convention on September 20, 2024, and that the keynote address was livestreamed on YouTube. Defendants deny the remaining allegations in Paragraph 496.

497.    Defendants admit that Paragraph 497 appears to quote an unspecified document that speaks for itself. Defendants deny the remaining allegations in Paragraph 497.

498.    Defendants deny the allegations in Paragraph 498.

499.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 499.

Gibson, Dunn & Crutcher LLP

500.    Defendants admit that Paragraph 500 purports to quote a speech, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 500.

501.    Defendants admit that Paragraph 501 purports to quote a speech, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 501.

502.    Defendants deny the allegations in Paragraph 502.

503.    The allegations in Paragraph 503 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

504.    The allegations in Paragraph 504 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

505.    The allegations in Paragraph 505 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

506.    Defendants admit that Paragraph 506 purports to quote a speech, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 506.

507.    Defendants admit that Paragraph 507 purports to quote an interview, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 507.

508.    Defendants admit that Paragraph 508 purports to quote an interview, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 508.

509.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 509.

510.    The allegations in Paragraph 510 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

511.    Defendants admit that Paragraph 511 purports to quote an interview, the content of which speaks for itself. Defendants deny the remaining allegations in Paragraph 511. Paragraph 511 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

512.    Defendants admit that Paragraph 512 purports to quote a document that speaks for itself. Defendants deny the remaining allegations in Paragraph 512.

Gibson, Dunn & Crutcher LLP

513.    The allegations in Paragraph 513 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

514.    The allegations in Paragraph 514 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

515.    The allegations in Paragraph 515 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

516.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

517.    The allegations in Paragraph 517 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

518.    The allegations in Paragraph 518 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

519.    Defendants admit that Paragraph 519 appears to quote an unspecified document that speaks for itself. Paragraph 519 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

520.    The allegations in Paragraph 520 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

521.    The allegations in Paragraph 521 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

522.    The allegations in Paragraph 522 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

523.    The allegations in Paragraph 523 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

524.    The allegations in Paragraph 524 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

525.    The allegations in Paragraph 525 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

526.     The allegations in Paragraph 526 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

527.     The allegations in Paragraph 527 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

528.     The allegations in Paragraph 528 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

529.     Defendants admit that Paragraph 529 appears to quote an unspecified document that speaks for itself. Paragraph 529 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

530.     The allegations in Paragraph 530 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

531.     The allegations in Paragraph 531 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

532.     Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

533.     Defendants admit that Paragraph 533 appears to quote an unspecified document that speaks for itself. Paragraph 533 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

534.     The allegations in Paragraph 534 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

535.     The allegations in Paragraph 535 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

536.     The allegations in Paragraph 536 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

537.     The allegations in Paragraph 537 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

538.     The allegations in Paragraph 538 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

539.    Defendants admit that Paragraph 539 appears to quote an unspecified document that speaks for itself. Paragraph 539 also contains conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

540.    The allegations in Paragraph 540 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

541.    The allegations in Paragraph 541 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

542.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

543.    The allegations in Paragraph 543 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

544.    The allegations in Paragraph 544 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

545.    Defendants deny the allegations in Paragraph 545.

546.    Defendants deny the allegations in Paragraph 546.

547.    The allegations in Paragraph 547 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

548.    The allegations in Paragraph 548 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

549.    The allegations in Paragraph 549 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

550.    The allegations in Paragraph 550 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

551.    The allegations in Paragraph 551 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

552.    The allegations in Paragraph 552 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

553.    The allegations in Paragraph 553 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

554.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

555.    The allegations in Paragraph 555 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

556.    The allegations in Paragraph 556 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

557.    Defendants deny the allegations in Paragraph 557.

558.    Defendants deny the allegations in Paragraph 558.

559.    The allegations in Paragraph 559 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

560.    The allegations in Paragraph 560 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

561.    The allegations in Paragraph 561 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

562.    The allegations in Paragraph 562 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

563.    The allegations in Paragraph 563 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

564.    The allegations in Paragraph 564 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

565.    The allegations in Paragraph 565 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

566.    The allegations in Paragraph 566 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

567.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

Gibson, Dunn & Crutcher LLP

568.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 568.

569.    The allegations in Paragraph 569 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

570.    The allegations in Paragraph 570 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

571.    The allegations in Paragraph 571 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

572.    The allegations in Paragraph 572 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

573.    The allegations in Paragraph 573 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

574.    The allegations in Paragraph 574 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

575.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

576.    The allegations in Paragraph 576 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

577.    The allegations in Paragraph 577 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

578.    The allegations in Paragraph 578 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

579.    The allegations in Paragraph 579 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

580.    The allegations in Paragraph 580 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

581.    The allegations in Paragraph 581 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

582.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

583.    Defendants lack information sufficient to admit or deny the allegations in Paragraph 583.

584.    The allegations in Paragraph 584 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

585.    The allegations in Paragraph 585 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

586.    The allegations in Paragraph 586 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

587.    The allegations in Paragraph 587 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

588.    The allegations in Paragraph 588 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

589.    Defendants reiterate their responses to each and every allegation of this Complaint as if fully set forth herein.

590.    The allegations in Paragraph 590 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

591.    The allegations in Paragraph 591 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

592.    The allegations in Paragraph 592 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

593.    The allegations in Paragraph 593 are conclusions of law to which no responsive pleading is required. To the extent a response is required, Defendants deny those allegations.

**PRAYER FOR RELIEF**

1.    Defendants deny that Plaintiff is entitled to relief against Defendants.

2.    Defendants deny that Plaintiff is entitled to relief against Defendants.

3.    Defendants deny that Plaintiff is entitled to relief against Defendants.

Gibson, Dunn & Crutcher LLP

1          4.      Defendants deny that Plaintiff is entitled to relief against Defendants.

2          5.      Defendants deny that Plaintiff is entitled to relief against Defendants.

3          6.      Defendants deny that Plaintiff is entitled to relief against Defendants.

4          7.      Defendants deny that Plaintiff is entitled to relief against Defendants.

5          8.      Defendants deny that Plaintiff is entitled to relief against Defendants.

6          9.      Defendants deny that Plaintiff is entitled to relief against Defendants.

7          10.     Defendants deny that Plaintiff is entitled to relief against Defendants.

8          11.     Defendants deny that Plaintiff is entitled to relief against Defendants.

9          12.     Defendants deny that Plaintiff is entitled to relief against Defendants.

10         13.     Defendants deny that Plaintiff is entitled to relief against Defendants.

11         14.     Defendants deny that Plaintiff is entitled to relief against Defendants.

12         15.     Defendants deny that Plaintiff is entitled to relief against Defendants.

13         16.     Defendants deny that Plaintiff is entitled to relief against Defendants.

14         17.     Defendants deny that Plaintiff is entitled to relief against Defendants.

15         18.     Defendants deny that Plaintiff is entitled to relief against Defendants.

16         19.     Defendants deny that Plaintiff is entitled to relief against Defendants.

17         20.     Defendants deny that Plaintiff is entitled to relief against Defendants.

18         21.     Defendants deny that Plaintiff is entitled to relief against Defendants.

19         22.     Defendants deny that Plaintiff is entitled to relief against Defendants.

## DEFENSES

Defendants expressly preserve all available defenses, including Plaintiff's failure to state a claim upon which relief can be granted.

Pursuant to Federal Rule of Civil Procedure 8(c), Defendants, without waiver, limitation, or prejudice, also hereby assert the following affirmative defenses, without assuming the burden of proving any fact, issue, or element of a claim where such burden properly belongs to Plaintiff:

**FIRST AFFIRMATIVE DEFENSE (Truth):** Although Plaintiff bears the burden of establishing the falsity of the statements on which it has based its claims, if and to the extent that is not the case, Plaintiff's claims for relief are barred, in whole or in part, because the statements

Gibson, Dunn &
Crutcher LLP

communicated to third parties about which Plaintiff complains were true or substantially true. In his public statements at issue, Mullenweg correctly stated that Plaintiff was seeking to maximize profits by minimizing community contributions and reducing the quality of its products and services. Further, Plaintiff misrepresents Mullenweg's public statements, and statements that are loosely definable or variously interpretable cannot in most contexts support an act for defamation. *See Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984). For example, WPE alleges that Mullenweg made a statement during his September 20, 2024 keynote address that "WPE 'just want[s] to feed off' WordPress 'without giving anything back.'" However, the actual statement was: "That's [the] ecosystem. But if that's the yin, what's the yang? . . . This openness and generosity will attract parasitic entities that just want to feed off the host without giving anything back." Truth is a complete defense to Plaintiff's defamation claims.

**SECOND AFFIRMATIVE DEFENSE (Consent):** Plaintiff's claims for relief are barred, in whole or in part, because Plaintiff ratified, agreed, acquiesced, or consented to the contents of Defendants' communications to third parties about which it now complains. Mullenweg made statements concerning Plaintiff's disabling of revisions on WordPress by default and quantified its "Contributions" at https://wordpress.org/news/2024/09/wp-engine/. The webpage provides a screenshot of Plaintiff's support page saying they disable the storage of historical revisions across their 1.5 million WordPress installs: "Every WP Engine site has WordPress revisions *disabled* by default. If you need a more extensive revision management system, we recommend using a third-party editing system rather than relying on WordPress revisions."

**THIRD AFFIRMATIVE DEFENSE (Failure to Mitigate):** Plaintiff has caused, contributed to, and/or failed to mitigate any losses it claims. Plaintiff's own business choices, resulting in lower quality products and services (including customer service), have caused it to lose customers. For example, Plaintiff disabled the storage of historical revisions on WordPress by default preventing its customers from recovering their previous content and undermining the expectation of protection of one's content on WordPress, explained at https://wordpress.org/news/2024/09/wp-engine/. Likewise, Plaintiff's continued modifications of WordPress and failure to fulfill its contribution commitment to the Five for the Future program, described at https://wordpress.org/five-for-the-future/pledge/wp-

engine/, have caused Plaintiff to lose customers. Plaintiff also has failed to mitigate any reputational or financial harm related to Defendants' alleged tortious statements and actions by continuing to infringe on trademarks related to WordPress and WooCommerce. For example, Mused, a WordPress customer, erroneously states "WPEngine by WordPress" in its own Privacy Notice available here: https://www.vam.ac.uk/mused/privacy-notice/. Plaintiff has been maximizing its own profits by free-riding on the contributions of those who invest in the WordPress open-source software and was using trademarks in increasingly confusing ways.

**FOURTH AFFIRMATIVE DEFENSE (First Amendment):** Defendants at all times have acted under the color of the First Amendment to the U.S. Constitution, and liability cannot be imposed on any of the Defendants for some or all of Plaintiff's claims consistent with the protections of the First Amendment. *See, e.g.*, *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 52–53 (1988); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910–12 (1982). Mullenweg has shared his views about Plaintiff's business practices and the harm he believed they were causing the open-source community in various public blog posts. For example, Mullenweg wrote to clarify that "What WP Engine gives you is not WordPress" at https://wordpress.org/news/2024/09/wp-engine/. Plaintiff does not have a pre-existing right to be free from Mullenweg's views about the harm and confusion Plaintiff is inflicting on the WordPress community after Plaintiff refuses to close a deal to resolve a trademark dispute. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014).

**FIFTH AFFIRMATIVE DEFENSE (Opinion):** Some or all of the statements at issue are not actionable because they constitute statements of opinion, or statements of opinion based on disclosed facts. Mullenweg's blog posts linked and/or included screenshots from WPE's website and Five for the Future pages on WordPress.org. "Contribution" as Mullenweg used it in allegedly slandering WPE also was capable of different interpretations, as reflected by the comment of the host of the livestream containing an allegedly slanderous statement that "sponsorships don't count." WPE itself had provided the information under "Contributions" at WPE's Five for the Future webpage, to which Mullenweg in his September 21, 2024 blog post. The full contents of the entire publications, presentations, and broadcasts on which Plaintiff bases its defamation claims, which are incorporated in this Answer by

reference, show that Mullenweg's allegedly defamatory statements were figurative hyperbole conveying his opinion about Plaintiff and issues of interest to the public.

**SIXTH AFFIRMATIVE DEFENSE (Estoppel):** Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of estoppel, quasi-estoppel, and/or waiver. For example, Plaintiff infringed the WordPress and WooCommerce trademarks and made statements concerning its disabling of revisions on WordPress by default and quantified its "Contributions" to WordPress.org. Plaintiff is estopped from complaining about Defendants' protected opinions, which are true to the extent they can be considered statements of fact, related to these actions. Plaintiff also used the WordPress and WooCommerce trademarks knowingly, acknowledged Defendants' intellectual property rights with its use of the ® symbol in connection with the WordPress and WooCommerce trademarks, and engaged in negotiations to license use of the WordPress and WooCommerce trademarks. Plaintiff is therefore estopped from arguing that the trademarks are invalid and/or that its use is non-infringing.

**SEVENTH AFFIRMATIVE DEFENSE (Subsidiary Meaning):** The statements that Plaintiff alleges to be defamatory were subsidiary to the unchallenged and/or nonactionable statements published or made in the remainder of the publications and presentations containing the allegedly defamatory statements. Plaintiff's Corrected Second Amended Complaint (Dkt. __) does not allege that any of the following statements in Mullenweg's September 21, 2024 blog post at https://wordpress.org/news/2024/09/wp-engine/, for example, are defamatory: "WP Engine is not WordPress"; "Their branding, marketing, advertising, and entire promise to customers is that they're giving you WordPress, but they're not. And they're profiting off of the confusion." (*id.*); "They disable revisions because it costs them more money to store the history of the changes in the database, and they don't want to spend that to protect your content." (*id.*); "They are strip-mining the WordPress ecosystem, giving our users a crappier experience so they can make more money." (*id.*); "What WP Engine gives you is not WordPress, it's something that they've chopped up, hacked, butchered to look like WordPress, but actually they're giving you a cheap knock-off and charging you more for it." (*id.*); "WP Engine is setting a poor standard that others may look at and think is ok to replicate." (*id.*).

**EIGHTH AFFIRMATIVE DEFENSE (Divisibility):** Plaintiff's alleged damages, if any, are the result of its own conduct or the conduct of others beyond Defendants' control and for whom

Defendants are not legally responsible, including, but not limited to, the conduct of Plaintiff's customers and potential customers that have elected not to use Plaintiff's services as a result of Plaintiff's own actions and business practices or because they believe a different provider than WPE has a better offering for that respective customer.

**NINTH AFFIRMATIVE DEFENSE (Common Interest Privilege):** Plaintiff's claims for relief are barred, in whole or in part, by the common interest privilege of California Civil Code Section 47(c) to the extent they are premised on actions or communications made to those who are interested or otherwise share a common interest in the communication or such interested person requested Defendants to give the information that Plaintiff claims is actionable. The audiences for the allegedly defamatory statements, including at WordCamp U.S. 2024, on WordPress.org, and in viewing the livestream containing an allegedly slanderous statement hosted by an individual posing questions about matters within the common interest, shared a common interest in the communications, which were made by Mullenweg to give the WordPress community the benefit of his thoughts and opinions about matters of interest to them and not with common law malice.

**TENTH AFFIRMATIVE DEFENSE (Litigation Privilege):** Plaintiff's claims for relief are barred, in whole or in part, by the litigation privilege of California Civil Code Section 47(b) to the extent they are premised on actions or communications made in or related to judicial proceedings. Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks. Prior to this litigation, Matthew Mullenweg and Automattic discussed with Plaintiff regarding its use of WordPress' trademarks in increasingly confusing ways. Over time, Plaintiff's use of the WordPress and WooCommerce trademarks has morphed from subtle and seemingly innocuous descriptions of its own website hosting and support services into full-scale infringement and misdirection. In recent years, Plaintiff rebranded itself as "The WordPress Technology Company." It sharply increased the number of times it used the WordPress and WooCommerce trademarks on its website and in its promotional materials. It even launched product lines called "Headless WordPress," "Essential WordPress," "Core WordPress," and "Enterprise WordPress." Plaintiff leveraged WordPress's and WooCommerce's reputations and created confusion among consumers to profit from the illusion that Plaintiff is part of WordPress.

Gibson, Dunn & Crutcher LLP

Therefore, Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks.

**ELEVENTH AFFIRMATIVE DEFENSE (*Noerr-Pennington* Doctrine):** Plaintiff's claims for relief are barred, in whole or in part, by the *Noerr-Pennington* doctrine to the extent they are premised on petitioning activity or activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment. Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks. Prior to this litigation, Matthew Mullenweg and Automattic discussed with Plaintiff regarding its use of WordPress' trademarks in increasingly confusing ways. Over time, Plaintiff's use of the WordPress and WooCommerce trademarks has morphed from subtle and seemingly innocuous descriptions of its own website hosting and support services into full-scale infringement and misdirection. In recent years, Plaintiff rebranded itself as "The WordPress Technology Company." It sharply increased the number of times it used the WordPress and WooCommerce trademarks on its website and in its promotional materials. It even launched product lines called "Headless WordPress," "Essential WordPress," "Core WordPress," and "Enterprise WordPress." Plaintiff leveraged WordPress's and WooCommerce's reputations and created confusion among consumers to profit from the illusion that Plaintiff is part of WordPress. Therefore, Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks.

**TWELFTH AFFIRMATIVE DEFENSE (Personal Opinion):** Plaintiff's claims for relief are barred, in whole or in part, because the alleged statements made by Mullenweg concerning Plaintiff were statements of personal opinion that are not attributable to Automattic Inc. Mullenweg used his personal voice in his statements, and he shared non-actionable opinions that are not susceptible to being proven true or false. The use of emphasis, informal contractions, and figurative language casts the statements as opinion. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021). Mullenweg makes clear that he is expressing figurative and hyperbolic opinions about WPE to his audience. For example, Mullenweg expresses his personal opinion in his September 21, 2024 blog post available at https://wordpress.org/news/2024/09/wp-engine/.

**THIRTEENTH AFFIRMATIVE DEFENSE (Unclean Hands):** Plaintiff's claims for relief are barred, in whole or in part, under the doctrine of unclean hands. Plaintiff's infringement of WordPress and WooCommerce trademarks and false statements related to WordPress preclude Plaintiff from obtaining equitable relief. Prior to this litigation, Matthew Mullenweg and Automattic discussed with Plaintiff regarding its use of WordPress' trademarks in increasingly confusing ways. Over time, Plaintiff's use of the WordPress and WooCommerce trademarks has morphed from subtle and seemingly innocuous descriptions of its own website hosting and support services into full-scale infringement and misdirection. In recent years, Plaintiff rebranded itself as "The WordPress Technology Company." It sharply increased the number of times it used the WordPress and WooCommerce trademarks on its website and in its promotional materials. It even launched product lines called "Headless WordPress," "Essential WordPress," "Core WordPress," and "Enterprise WordPress." Plaintiff leveraged WordPress's and WooCommerce's reputations and created confusion among consumers to profit from the illusion that Plaintiff is part of WordPress. Therefore, Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks.

**FOURTEENTH AFFIRMATIVE DEFENSE (One Who Seeks Equity Must Do It):** Plaintiff's claims and requests for equitable relief are barred by the equitable principle that a party that comes to court seeking an equitable remedy must also have acted equitably to the adverse party. Plaintiff's infringement of WordPress and WooCommerce trademarks and false statements related to WordPress preclude Plaintiff from obtaining equitable relief. Prior to this litigation, Matthew Mullenweg and Automattic discussed with Plaintiff regarding its use of WordPress' trademarks in increasingly confusing ways. Over time, Plaintiff's use of the WordPress and WooCommerce trademarks has morphed from subtle and seemingly innocuous descriptions of its own website hosting and support services into full-scale infringement and misdirection. In recent years, Plaintiff rebranded itself as "The WordPress Technology Company." It sharply increased the number of times it used the WordPress and WooCommerce trademarks on its website and in its promotional materials. It even launched product lines called "Headless WordPress," "Essential WordPress," "Core WordPress," and "Enterprise WordPress." Plaintiff leveraged WordPress's and WooCommerce's reputations and

created confusion among consumers to profit from the illusion that Plaintiff is part of WordPress. Therefore, Defendants' alleged demands to Plaintiff were protected activity related to a contemplated judicial proceeding concerning Plaintiff's improper use of trademarks.

**FIFTEENTH AFFIRMATIVE DEFENSE (Due Process Clause):** To the extent that Plaintiff seeks to collect compensatory damages, penalties, punitive damages, attorneys' fees and expenses, an award of statutory damages far in excess of actual damages and other monetary relief from Defendants, Plaintiff seeks a recovery that is so grossly excessive and inequitable that it would violate the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

**SIXTEENTH AFFIRMATIVE DEFENSE (Privilege):** Plaintiff's claims are barred, in whole or in part, by the fact that Defendants' actions were justified to protect the present, existing, and legally protected interest of the Intellectual Property Rights of the Company, its shareholders, and of third parties. Defendants' conduct was motivated only by the intent to protect those interests, not by malice or a desire to harm Plaintiff. Defendants believed Plaintiff was misusing trademarks, violating the WordPress.org Detailed Plugin Guidelines. Defendants exposed Plaintiff's misuse of trademarks in a speech to the WordPress community. In a demand letter, Automattic cited the WordPress Foundation Trademark Policy and explained Plaintiff's violations of (1) "Intellectual Property Rights" and (2) applicable Trademark Policy. Defendants acted reasonably and in good faith, and the methods used to protect the property interests were lawful and proportionate.

**SEVENTEENTH AFFIRMATIVE DEFENSE (Unjust Enrichment):** Plaintiff's claims are barred, in whole or in part, because its claims for relief would unjustly enrich Plaintiff at the expense of Defendants by conferring on WP Engine benefits to which it has no entitlement. Plaintiff has retained the benefits of improperly using WordPress and Woo Commerce's trademarks, which was a benefit that Defendants never intended for Plaintiff to receive or retain. WordPress.org has clear requirements, policies, and enforcement structure that define the website and make it clear that access to the website is not unconditional. An "Open-Source" ecosystem allows developers to use code licensed under open-source licenses, including GPL, without fear of copyright liability, but it is not a free-for-fall. WordPress developer guidelines explain how WordPress.org will enforce them. WordPress.org

Gibson, Dunn & Crutcher LLP

reserves the right to disable or remove a plugin even for reasons not explicitly covered by the guidelines. The right is part of WordPress.org's reservation of the right to maintain the Plugin Directory to the best of its ability and actually allows the removal of any plugin from the directory. WordPress.org "Frequently Asked Questions" make clear to developers that WordPress.org can "ban someone and disable all their plugins," and remove a plugin for violating a trademark; indeed, there are 21 references to "trademark" in the FAQs. Because Plaintiff retained the benefits of improperly using Wordpress and Woo Commerce's trademarks to which it has no entitlement, it has been unjustly enriched at the expense of Defendants.

**EIGHTEENTH AFFIRMATIVE DEFENSE (Good Faith):** Plaintiff's claims are barred, in whole or in part, because Defendants' alleged acts or omissions were undertaken in good faith, were reasonable, and/or were innocent. Defendants had the right to call out Plaintiff on behalf of the WordPress community and to expose the truth of Plaintiff's trademark abuse, false posture of community support, and its "Taker" model scheme. Since 2018, at Silver Lake's direction, Plaintiff has waged a campaign to capitalize on Defendants' success by confusing customers into associating Plaintiff with the WordPress and WooCommerce brands and refusing to pay a fair license fee. Plaintiff misused Defendants' marks and refused to engage in meaningful trademark license negotiations with Defendants. For example, on Plaintiff's website, it had described WP Engine as the "WordPress technology company" and "the world's #1 WordPress hosting platform." This misuse of trademarks violates WordPress.org Detailed Plugin Guidelines ("Guidelines") available at https://developer.wordpress.org/plugins/wordpress-org/detailed-plugin-guidelines/#17-plugins-must-respect-trademarks-copyrights-and-project-names: "The use of trademarks or other projects as the sole or initial term of a plugin slug is prohibited unless proof of legal ownership/representation can be confirmed. For example, the WordPress Foundation has trademarked the term "WordPress" and it is a violation to use "wordpress" in a domain name. This policy extends to plugin slugs, and we will not permit a slug to begin with another product's term." The Guidelines also reserve the right to disable or remove a plugin for any reason not explicitly covered by the Guidelines. Moreover, Plaintiff eliminated key features of the WordPress software and failed to address security concerns, degrading the value of WordPress by marketing its cheap, hollowed-out version of the software and misusing the WordPress

trademarks. By marketing such a version of WordPress, Plaintiff misrepresented its contributions to the WordPress community, effectively posing as a good community citizen without ever delivering on its promises. In good faith, Defendants' actions were aimed at preventing Plaintiff, a bad actor, from enriching itself at the expense of WordPress community.

**NINETEENTH AFFIRMATIVE DEFENSE (Non-Actionable Commercial Puffery):** Plaintiff's claims are barred, in whole or in part, because Defendants' alleged statements were non-actionable commercial puffery because they are vague statements that provide nothing concrete upon which the recipients of the communications could reasonably rely. For example, Plaintiff alleges statements that "WPE offers a 'cheap knock-off' of WordPress" in support of its libel claim. The term "knockoff" does not convert Mullenweg's opinions into statements of fact. Describing this view as Plaintiff passing itself as a WordPress "knock-off" is a quintessential opinion. Even if Defendants' statements could be viewed as promoting Defendants' products, they are non-actionable puffery. *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 414 (D. Conn. 2018) ("The term, 'complete knockoff,' constitutes exactly the sort of subjective hyperbole that renders a statement puffery.").

**TWENTIETH AFFIRMATIVE DEFENSE (Not an Exceptional Case):** Plaintiff cannot prove that this is an exceptional case justifying an award of attorneys' fees pursuant to 15 U.S.C. § 1117. Plaintiff's case is substantively exceptionally weak both legally and factually given that Plaintiff has engaged and continues to engage in unauthorized use of Defendants' trademarks and causes consumer confusion. Defendants' positions are substantively strong and reasonable. Defendants have no improper motivation. Defendants have not litigated the action to date in any unreasonable way. There is no consideration of compensation implicated here because Plaintiff has incurred no damages. And there is no consideration of deterrence implicated here because Defendants have undertaken no act or omitted any act which was improper or warrants deterrence.

**TWENTY-FIRST AFFIRMATIVE DEFENSE (No Equitable Relief):** Plaintiff's claim for equitable relief, including for injunctive relief, is barred because Plaintiff has an adequate remedy at law. Further, Plaintiff has acted inequitably and in bad faith and engaged in misconduct. Plaintiff has waged a campaign to capitalize on Defendants' success by confusing customers into associating

Plaintiff with the WordPress and WooCommerce brands and refusing to pay a fair license fee. Plaintiff misused Defendants' marks and refused to engage in meaningful trademark license negotiations with Defendants. For example, on Plaintiff's website, it had described WP Engine as the "WordPress technology company" and "the world's #1 WordPress hosting platform." This misuse of trademarks violates WordPress.org Detailed Plugin Guidelines ("Guidelines") available at https://developer.wordpress.org/plugins/wordpress-org/detailed-plugin-guidelines/#17-plugins-must-respect-trademarks-copyrights-and-project-names: "The use of trademarks or other projects as the sole or initial term of a plugin slug is prohibited unless proof of legal ownership/representation can be confirmed. For example, the WordPress Foundation has trademarked the term "WordPress" and it is a violation to use "wordpress" in a domain name. This policy extends to plugin slugs, and we will not permit a slug to begin with another product's term." The Guidelines also reserve the right to disable or remove a plugin for any reason not explicitly covered by the Guidelines. Moreover, Plaintiff eliminated key features of the WordPress software and failed to address security concerns, degrading the value of WordPress by marketing its cheap, hollowed-out version of the software and misusing the WordPress trademarks. By marketing such a version of WordPress, Plaintiff misrepresented its contributions to the WordPress community, effectively posing as a good community citizen without ever delivering on its promises. Any equitable relief would be unjust given the circumstances.

**TWENTY-SECOND AFFIRMATIVE DEFENSE (Unilateral Action):** Plaintiff's claims are barred, in whole or in part, because Defendants acted unilaterally, in furtherance of Automattic's independent business interests. Defendants' actions were justified to protect the present, existing, and legally protected interest of the Intellectual Property Rights of Automattic and its shareholders. Defendants' conduct was motivated only by the intent to protect those interests. Defendants believed Plaintiff was misusing trademarks, violating the WordPress.org Detailed Plugin Guidelines. Plaintiff has waged a campaign to capitalize on Defendants' success by confusing customers into associating Plaintiff with the WordPress and WooCommerce brands and refusing to pay a fair license fee after negotiations with Defendants. For example, on Plaintiff's website, it had described WP Engine as the "WordPress technology company" and "the world's #1 WordPress hosting platform." WordPress.org has requirements, policies, and enforcement structure that define the website and make it clear that

access to the website is not unconditional, reserving the right to disable or remove a plugin even for reasons not explicitly covered by the guidelines. Defendants acted reasonably and in good faith in their conduct against Plaintiff to protect Automattic's independent business interests, and the methods used to protect the property interests were lawful and proportionate.

**TWENTY-THIRD AFFIRMATIVE DEFENSE (Generic Mark):** Plaintiff's claims related to its trademark ADVANCED CUSTOM FIELDS are barred because the ADVANCED CUSTOM FIELDS mark is generic. Like other generic marks, the mark ADVANCED CUSTOM FIELDS describes the services offered. *See, e.g.*, *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) (FILIPINO YELLOW PAGES for telephone directory for Filipino-American community was generic mark); *In Re Wm. B. Coleman Co., Inc.*, 93 U.S.P.Q.2d 2019, at *9 (T.T.A.B. 2010) (ELECTRIC CANDLE COMPANY for electric lighting fixtures that resemble candles was generic mark); *Snyder's Lance, Inc. v. Frito-Lay N. Am., Inc.*, 542 F. Supp. 3d 371, 385 (W.D.N.C. 2021) (PRETZEL CRISPS for cracker-like pretzel food product was generic). ADVANCED CUSTOM FIELDS is used as a generic term that defines downloadable computer software that expands users' options for creating and editing custom fields on their websites, both within the WordPress ecosystem and in the context of other software ecosystems.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE (Descriptive Mark):** Plaintiff's claims related to its trademark ADVANCED CUSTOM FIELDS are barred because the ADVANCED CUSTOM FIELDS mark is merely descriptive of the services listed in the application and lacks acquired distinctiveness or secondary meaning. Plaintiff has conceded that the ADVANCED CUSTOM FIELDS mark is merely descriptive by seeking to register the mark pursuant to Section 2(f) of the Lanham Act. The mark has not acquired secondary meaning. *Performance Open Wheel Racing, Inc.*, Opp'n No. 91229632, 2019 WL 2404075, at *8 (T.T.A.B. June 5, 2019). First, actual purchasers do not associate the ADVANCED CUSTOM FIELDS mark with a particular source. Second, Plaintiff does not have exclusivity of use for ADVANCED CUSTOM FIELDS, as there are many third parties using the mark in connection with services related to computer software and other electrical apparatus. Third, Plaintiff has not used the mark exclusively for any length of time. Fourth, Plaintiff does not

1  sufficiently advertise the ADVANCED CUSTOM FIELDS mark. Fifth, the ADVANCED CUSTOM

2  FIELDS mark does not receive unsolicited media coverage.

3      **TWENTY-FIFTH AFFIRMATIVE DEFENSE (No Trademark Rights):** Plaintiff's claims

4  related to its trademarks ADVANCED CUSTOM FIELDS and ACF are barred because Plaintiff has

5  not validly acquired the ADVANCED CUSTOM FIELD and ACF marks. The Advanced Custom

6  Fields plugin was created in 2011 by web developer and WordPress community member Elliott

7  Condon. Condon never sought to develop trademark rights in ADVANCED CUSTOM FIELDS or

8  ACF or use the terms exclusively, either within the WordPress community or the broader software

9  industry. In 2021, Condon sold the plugin to Delicious Brains Inc., which did not attempt to develop

10  trademark rights in ADVANCED CUSTOM FIELDS or ACF or enforce exclusive use among third

11  parties. Plaintiff "can have no greater trademark rights than [Condon and Delicious Brains] had."

12  *Marshak v. Treadwell*, 58 F. Supp. 2d 551, 557 (D.N.J. 1999), *aff'd*, 240 F.3d 184 (3d Cir. 2001).

13  Moreover, Plaintiff did not properly acquire all intellectual property rights from Delicious Brains and,

14  by extension, Condon.

15      **TWENTY-SIXTH AFFIRMATIVE DEFENSE (Disclaimer):** Plaintiff's claims related to

16  its trademark ADVANCED CUSTOM FIELDS are barred because Plaintiff has disclaimed the

17  CUSTOM FIELDS mark. Because Plaintiff disclaimed the CUSTOM FIELDS mark, it cannot take

18  advantage of the special protection afforded to registered trademarks. *See Official Airline Guides, Inc.*

19  *v. Goss*, 856 F.2d 85, 87 (1988).

20      **TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Legitimate Business Purpose):**

21  Plaintiff's claims are barred, in whole or in part, because Defendants' actions were justified by

22  legitimate business purposes. Defendants acted to protect the security of the WordPress platform and

23  WordPress users' data, to promote competition, and to promote the health of the open source

24  community, all of which are legitimate business purposes that have greater social value than ensuring

25  the stability of Plaintiff's alleged contractual relations.

26      **TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Limited Damages Under Cal. Civ.**

27  **Code § 48a):** Plaintiff's damages arising from Defendants' allegedly libelous statements are limited to

28  special damages pursuant to California Civil Code § 48a. Plaintiff alleges that WordPress.org published

1    "articles" in the "News" section of WordPress.org. Alleged "articles" posted on the "News" section of

2    WordPress.org at least once a week in the period before, during, and after the allegedly libelous

3    statements were posted on WordPress.org. Plaintiff does not allege that it demanded a correction from

4    WordPress.org within 20 days after Plaintiff knew of the allegedly libelous publications on September

5    21, 2024, and September 25, 2024. To the extent Wordpress.org is a daily or weekly news publication

6    under Section 48a, recovery for WP Engine's claims arising from the allegedly libelous statements is

7    limited to special damages.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Automattic, Mullenweg, the WordPress Foundation, and WooCommerce (collectively, the "WordPress Parties" or "Counterclaimants"), by and through their undersigned counsel, hereby assert the following Counterclaims against WP Engine:

## INTRODUCTION

1.    WP Engine, once a small company offering WordPress hosting services, has in recent years masqueraded as one of the companies that develops and administers the "WordPress" open-source software system used by 160 million individuals worldwide, to trade off the goodwill and reputation the WordPress Parties have spent years cultivating. Instead of working to legitimately develop its business and enhance its operations, WP Engine took steps to confuse consumers of web hosting services by posing as a member, supporter, and benefactor of the WordPress project at the same time it degraded product quality, reneged on commitments to the WordPress project, and abused the WordPress Parties' trademarks. This was done to inflate WP Engine's short-term margins while leaving WP Engine's customers with a diminished web hosting environment to be mistakenly associated with the WordPress Parties. The WordPress Parties bring these counterclaims to expose this misconduct and protect the integrity of the WordPress open-source project and its trademarks.

2.    Over two decades ago, Matt Mullenweg and his co-founder Mike Little developed a revolutionary way to build websites: the WordPress software platform. The WordPress software has democratized website publishing by making it possible for anyone to create and manage websites, regardless of their technical expertise or financial situation. Mullenweg and his co-founder made WordPress software available under an open-source license, meaning the software is free for anyone to use, copy, or modify.

3.    Today, WordPress powers tens of millions of websites worldwide, maintained by a global community of developers, designers, translators, testers, and educators. The WordPress project is a vibrant community of people who dedicate their time, talent, and energy to improving and maintaining open-source WordPress software—software that is synonymous with innovation, collaboration, and commitment to user empowerment. The WordPress Foundation, WordPress.org, WordPress Community Support, Automattic, WordPress.com, and Matt Mullenweg are integral to this

Gibson, Dunn & Crutcher LLP

community. These WordPress Parties help steward the open-source WordPress project, maintain its core software, manage, and administer the WordPress.org website, and safeguard the reputation and goodwill of the WordPress name among the larger community. World-famous trademarks identify the official source of WordPress products and services (the "WordPress Marks") and those of affiliated companies like WooCommerce (the "WooCommerce Marks" and, together with the WordPress Marks, the "Counterclaimants' Marks"). Automattic is one of many companies in the marketplace that provide WordPress hosting services.

4.    WP Engine entered the WordPress ecosystem in 2010 as a small hosting provider, making largely nominative use of the WordPress Marks. In 2018, Silver Lake acquired a controlling interest in WP Engine for $250 million and sought to position the company for a profitable sale. Despite an extensive sales process, Silver Lake was unable to attract meaningful buyer interest or achieve an acceptable return. Rather than acknowledge WP Engine's operational and financial shortcomings, WP Engine pursued a bad-faith strategy to prop up the company's valuation and deflect responsibility. WP Engine has since ratcheted up its exploitation of the Counterclaimants' Marks to confuse consumers into believing that WP Engine was and is one of the WordPress Parties in order to maximize their own profits at the expense of the larger community.

5.    Through calculated and false language, branding, and product positioning, WP Engine has left users with the unmistakable impression that it is one of the WordPress Parties. WP Engine's very name suggests that it is one of the WordPress Parties, meaning WP Engine should be *especially* careful to avoid any impression of a nonexistent partnership or endorsement. WP Engine has instead heightened the confusion, including by allowing customers and business partners to refer to it as "WordPress Engine" or "WPEngine by WordPress." WP Engine rebranded itself as "The WordPress Technology Company" and "THE WordPress Partner of Choice," implying it is one of the WordPress Parties or has been chosen or designated by the WordPress Parties as the top or endorsed partner, despite lacking any such relationship. Throughout 2022 and 2023, WP Engine systematically ratcheted up the number of times it used the WordPress and WooCommerce trademarks on its website, in its promotional materials, and as part of its search engine optimization and keyword advertising programs—all to ensure that potential consumers who were new to website hosting would be confused

into visiting WP Engine's website and signing up for its services in the belief that WP Engine was one of the WordPress Parties. WP Engine even launched product lines called "Headless WordPress," "Essential WordPress," "Core WordPress," and "Enterprise WordPress," to leverage the WordPress Parties' and WooCommerce's reputations, create confusion among consumers, and profit from the illusion that WP Engine is one of the WordPress Parties. The use of the term "Core WordPress" is especially misleading, as Core WordPress is widely understood to refer to the software made available at WordPress.org, not to third-party service bundles. WP Engine apparently recognized the confusion it was causing and removed the phrase "WordPress" from its plan names on or about September 30, 2024, just two days before filing its lawsuit against Automattic and Mullenweg.

6.    WP Engine also makes confusing use of Counterclaimants' Marks in its marketing language. For example, WP Engine calls itself the "Most Trusted WordPress Hosting Platform," says that it provides "Expert WordPress Support," and says that it "powers the freedom to create on WordPress." These phrases further compound customer confusion by signaling authority, exclusivity, or privileged access to the WordPress Parties and WordPress software. WP Engine's claim to "power the freedom to create on WordPress" implies that it provides the underlying infrastructure behind the WordPress software, misleading consumers into believing that WordPress relies on WP Engine. These statements are not merely descriptive; they are brand-positioning claims designed to blur the line between WP Engine and the WordPress Parties. Taken together, these repeated, high-visibility uses of the mark overwhelm consumers' ability to distinguish WP Engine as a third-party provider and cause textbook trademark confusion because the cumulative effect of their branding creates a false association in the minds of reasonable consumers.

7.    WP Engine goes out of its way to make its use of Counterclaimants' Marks conspicuous, using a large bold blue serif font that mimics the font used by the WordPress Parties. WP Engine intentionally draws its users' attention to the WordPress and WooCommerce Marks as the first things they see on its website. WP Engine also degraded product quality by eliminating popular features, such as the ability to store prior versions of posts and pages. These actions harmed the WordPress brand by offering substandard services while presenting WP Engine as affiliated with or representing WordPress itself, despite the WordPress Parties having no control over WP Engine's service quality.

8.     WP Engine also has sown confusion in recent years by dramatically increasing the number of times Counterclaimants' Marks appear on its websites. Starting in or around 2021, WP Engine began to sharply increase its use of the WordPress Marks, and starting in or around 2022, began to sharply increase its use of the WooCommerce Marks. WP Engine's decision to increase the number of times the Counterclaimants' Marks appear on WP Engine's website appears to be a conscious "search engine optimization" strategy to ensure that when internet users look for companies that offer services related to WordPress, they will be exposed to confusingly written and formatted links that take them to WP Engine's sites rather than WordPress.org or WordPress.com. On information and belief, WP Engine also bids on keywords for sponsored search advertising that comprise WordPress Marks to ensure that the top spots on search results pages are such confusing links to WP Engine's website rather than WordPress.org or WordPress.com. In the overall context of WP Engine's infringement campaign, these uses increase the likelihood of consumer confusion and constitute additional "uses" of the WordPress trademarks in commerce likely to cause consumer confusion.

9.     None of this is nominative fair use. This is WP Engine's deliberate strategy to misrepresent WP Engine's relationship to the WordPress ecosystem and inflate the company's valuation.

10.     WP Engine's conduct threatens the open-source WordPress project administered on the WordPress.org website, which relies on contributions from a broad community of developers and other contributors, known as "makers." By contrast, WP Engine has become a "taker," profiting substantially from WordPress while contributing little or nothing back. WP Engine promotes itself to consumers as a contributor to the WordPress ecosystem engaged in the Five for the Future pledge. The initiative is structured so that businesses that benefit from and are dependent on the WordPress software contribute five percent of their resources back to developing and supporting the software. Mullenweg introduced the Five for the Future pledge to ensure sustainability, growth, and stability of the WordPress ecosystem. In reality, WP Engine has decreased its contributions to the WordPress ecosystem and the minimal resources it currently devotes to the open-source project fail to fulfill even its meager pledge. WP Engine's hollow promises mislead consumers, exploit the community, and undermine the trust and sustainability of the WordPress ecosystem.

11.     In the face of WP Engine's sudden escalation in use of Counterclaimants' Marks, the

Gibson, Dunn & Crutcher LLP

WordPress Parties made numerous diligent, good-faith attempts to work cooperatively with WP Engine to secure a trademark license to avoid a dispute over intellectual property rights and convince WP Engine to live up to its commitments to give back to the community. WP Engine pretended to engage while planning to perpetuate its scheme. In September 2024, Mullenweg confronted WP Engine with a clear choice: agree to a fair resolution that would safeguard the WordPress Parties' intellectual property rights or face public exposure. WP Engine chose defiance, feigning ignorance of its intentional efforts to exploit Counterclaimants' Marks and the months of licensing discussions between the parties. Faced with this clear confirmation of WP Engine's bad faith, Mullenweg gave a keynote address at WordCamp, the annual convention for the WordPress community, and made his views known: WP Engine was engaged in a scheme involving trademark abuse and a false promise of community support—in short, they were taking as much as possible while giving back nothing of real value. Mullenweg further expressed these views in a blog post the following day. His decision to confront WP Engine was not just about protecting the WordPress name and maintaining editorial control over the WordPress.org website. It was about defending an open-source project built on transparency, contribution, and shared purpose. WP Engine tried to hijack the project for profit. They got caught.

12.  Rather than correct its misconduct, WP Engine retaliated with a baseless lawsuit against Automattic and Mullenweg. This case is nothing more than a bad-faith attempt by WP Engine to obscure its own wrongdoing. On information and belief, around late 2023 Silver Lake hired bankers and tried to sell WP Engine for more than $2 billion, but no buyer was willing to pay anywhere near that price. The reason was not anything Mullenweg said or Automattic did; it was because WP Engine is, at bottom, an underperforming and unattractive asset that has relied on trademark infringement and now litigation to shift blame for its business setbacks. Sophisticated buyers had already recognized WP Engine's intrinsic weaknesses long before Mullenweg's statements, and those weaknesses—not any action by the WordPress Parties—explain why no sale materialized and why the company continued to underperform. And although it was WP Engine that first ran to court seeking to leverage the judicial system, it has since consistently refused to abide by its obligations to produce relevant documents, knowing those documents will expose their cynical and unlawful strategy, the massive confusion they have caused among WP Engine's customers, and the profit WP Engine has realized from falsely

1    inflating its investment by confusing consumers into believing that WP Engine is one of the WordPress

2    Parties.

3        13.   Counterclaimants have no alternative but to pursue their lawful remedies to set the record

4    straight and hold WP Engine accountable under trademark and unfair competition law and to enforce

5    the commitments WP Engine made to its customers to give back to the WordPress community.

6                                    **NATURE OF THE ACTION**

7        14.   Automattic, Matt Mullenweg, WordPress Foundation, and WooCommerce Inc. (together,

8    "Counterclaimants") bring this lawsuit under the Lanham Act and California common law and statutes

9    to stop WP Engine from infringing Counterclaimants' trademarks.

10       15.   Counterclaimants own all rights to the trademarks WORDPRESS, WOO, and

11   WOOCOMMERCE. WP Engine has engaged in federal and common law trademark infringement and

12   dilution, false designation of origin of a trademark, and common law and statutory unfair competition

13   by making unauthorized and infringing use of the trademarks WORDPRESS, WOOCOMMERCE, and

14   WOO in connection with WP Engine's products and services, including website creation, management,

15   and optimization.

16                                          **THE PARTIES**

17       16.   Counterclaimant Matthew Charles Mullenweg is a web developer and entrepreneur.

18   Mullenweg co-founded the WordPress open-source software and published it on or around May 27,

19   2003. Mullenweg founded Automattic in 2005 and currently serves as its CEO.

20       17.   Counterclaimant Automattic Inc. ("Automattic") is a Delaware corporation with its

21   principal place of business at 60 29th Street, Suite 343, San Francisco, CA 94110. Automattic was

22   formed in 2005 by Mullenweg for the purpose of commercializing WordPress services and products.

23   Automattic is the assignee of certain intellectual property rights involving WordPress, including the

24   WORDPRESS name and associated domain names and trademarks.

25       18.   Counterclaimant WordPress Foundation is a corporation organized under the laws of the

26   State of California with its principal place of business at 200 Brannan Street #511, San Francisco CA

27   94107.

28       19.   Counterclaimant WooCommerce Inc. is a Delaware corporation with its principal place of

Gibson, Dunn &
Crutcher LLP

business at 60 29th Street, Suite 343, San Francisco, CA 94110. WooCommerce Inc. is a wholly owned subsidiary of Automattic.

20.  Counterdefendant WPEngine, Inc. d/b/a WP Engine, is a Delaware corporation with its principal place of business at 504 Lavaca Street, Suite 1000, Austin, TX 78701.

## JURISDICTION AND VENUE

21.  This Court has subject matter jurisdiction over Counterclaimants' federal claims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.

22.  This Court has supplemental jurisdiction over Counterclaimants' claims arising under California state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Counterclaimants' federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

23.  This Court has personal jurisdiction over WP Engine because of its presence in and purposeful availment of this Court in bringing this action. This Court also has personal jurisdiction over WP Engine pursuant to California's long-arm statute, Cal. Code Civ. § 410(10), and the Due Process Clause because, upon information and belief, WP Engine is engaged in substantial business activities within the State of California, including having their principal place of business in California, soliciting business from consumers located in California, having existing customers in California, and otherwise having sufficient contacts within the State of California. The Court's exercise of personal jurisdiction over WP Engine is consistent with California's long-arm statute and traditional notions of fair play and substantial justice.

24.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred within this District, including, *inter alia*, that WP Engine infringed Counterclaimants' trademarks and rights in this judicial District, engaged in unlawful, unfair, and deceptive activities in this District, and intentionally targeted California by selling, advertising, and/or promoting services under marks that infringe Counterclaimants' trademarks and rights in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) because WP Engine are subject to the Court's personal jurisdiction in this District because WP Engine transact business in this District and Counterclaimants' claims arise from and/or relate to those commercial activities.

Gibson, Dunn & Crutcher LLP

**GENERAL ALLEGATIONS**

I.     **THE OPEN-SOURCE WORDPRESS COMMUNITY**

25.  In 2003, Matt Mullenweg and his co-founder Mike Little released the first version of WordPress and made it available under the GPL open-source license, meaning the software is free for anyone to use, copy, or modify. Since 2003, Mullenweg and his company Automattic have contributed millions of hours to continuously improving WordPress software. Due to their efforts and the dedicated work of countless other, unaffiliated WordPress contributors, WordPress has grown to power tens of millions, if not hundreds of millions, of websites, blogs, and other online content.

26.  As a direct result of Mullenweg's dedication to open source as an ideal, a vibrant and collaborative global open-source community has grown up around WordPress. The community includes thousands of developers, designers, translators, testers, and educators who dedicate their time, talent, and energy to improving and maintaining the project. This community-driven development model has made WordPress a uniquely dynamic and innovative platform, where community members contribute code, report bugs, suggest features, or enhance accessibility, performance, and security.

27.  To maintain the quality, integrity, and coherence of the project, WordPress relies on a carefully structured system of oversight. A core team of trusted contributors, supported by project leads and organized through www.WordPress.org, ensure that contributions meet community standards, align with the project's long-term goals, and reflect the values of transparency, usability, and inclusivity that have made WordPress a trusted name around the world. The WordPress Parties maintain the platform www.WordPress.org and exercise editorial control over its contents, including the repository of plugins developed by third parties that are compatible with the WordPress software.

28.  In this ecosystem, the WordPress name and trademarks that protect it are critically important. Because the source code is freely available under the GPL, trademarks are the primary mechanism through which the project can signal authenticity, protect users from confusion or deception, and uphold the reputation that the WordPress Parties and the WordPress community have worked so hard to build over more than two decades. The WordPress Marks assure users that they are dealing with software and services that meet the WordPress Parties' high standards and are aligned with their values.

Gibson, Dunn &
Crutcher LLP

29. The WordPress Marks are an important component of the open-source community, and must be used in a way that allows members of the community to accurately disclose their uses of WordPress software in a way that distinguishes between mere use of the software on the one hand and the involvement, endorsement, or sponsorship of the WordPress Parties on the other hand. Transparency, collaboration, freedom, inclusivity, and commitment to empowering users to contribute to the WordPress open-source project are not abstract ideals but rather guiding principles that inform every aspect of both the community and the WordPress Parties.

30. The trust that users place in the WordPress name stems not only from the quality of the software, but from their belief in the values that drive its development. When users see the WordPress name used in a way that indicates the source of specific products or services, they reasonably expect not just functional reliability, but alignment with a philosophy of openness and shared stewardship. As such, the trademark is not merely a source identifier—it is a symbol of a global movement built on collective trust and integrity.

31. Misuse of the WordPress trademark by those who seek to benefit from the credibility and trust that others have earned without participating in or respecting the open-source ethos that defines WordPress not only causes confusion in the marketplace; it undermines the shared values and collective trust that have made the WordPress Parties leaders in the digital world.

## II.    COUNTERCLAIMANTS' LONGSTANDING USE OF THE WORDPRESS AND WOOCOMMERCE MARKS

32. Since 2005, Counterclaimant Automattic has specialized in creating and distributing various software programs and services to help its users build professional-looking websites and blogs. Automattic has created or acquired numerous famous brands and products, including WordPress.com, WooCommerce, Jetpack, WordPress VIP, Simplenote, Longreads, The Atavist, Akismet, Gravatar, Newspack, Tumblr, Clay, Day One, Beeper, Pocket Casts, and others. Automattic's mission is to make the web a better place and to build its business sustainably through passionate and loyal customers. In line with this ethos, Automattic contributes to a number of non-profit and open-source products and has been a certified company on the Most Loved Workplace® list since 2022.

33.   Automattic's commitment to making the internet a better place, promoting open-source software, and providing high quality products and services for website creation has earned it a renowned reputation worldwide.

34.   Automattic offers blogging and site-building services to users globally, operating in over 90 countries that collectively speak 117 different languages.

35.   Automattic's customers include anyone who wants to create an online website, including developers, sole proprietors, small businesses, and large multinational conglomerates.

36.   In January 2007, Automattic registered the WordPress Marks on the federal register to best protect the trademarks from abuse and dilution. Later that year, Automattic donated the WordPress Marks to the WordPress Foundation, a not-for-profit entity, to ensure the trademark rights in the WordPress Marks would survive apart from and beyond Automattic and Mullenweg. As part of the same transaction, the WordPress Marks were licensed to Automattic so that Automattic could continue to make commercial use of the WordPress trademark. This license to Automattic specifically excluded the rights to www.WordPress.org, www.WordCamp.org, and www.WordPressFoundation.org. The right to use the WordPress Marks as used on www.WordPress.org was licensed to Mullenweg alone. The exclusive right to use the WordPress trademark as used on www.WordCamp.org and www.WordPressFoundation.org remains with the WordPress Foundation.

37.   Today, Mullenweg serves as the CEO of Automattic Inc., a Director of the WordPress Foundation, and the exclusive licensee of the WordPress trademark as used on www.WordPress.org. The "WordPress Marks" collectively identify the source of the goods or services of the WordPress Parties—Automattic (and its subsidiaries), the WordPress Foundation, and the websites where the WordPress Parties' goods and services may be accessed, www.WordPress.com (where users can access paid WordPress Hosting) and www.WordPress.org (where users can download the WordPress core software).

38.   The WordPress ecosystem is uniquely structured to balance commercial and non-commercial interests in service of a unified mission. The WordPress Foundation exists to promote the freedom and stability of the open-source WordPress project, including by supporting community events, education, and global contributor engagement—and to ensure the software remains innovative

and relevant. Automattic provides separate for-profit commercial services, such as managed hosting through WordPress.com, that also use the open-source software. Automattic also has many affiliates, including WooCommerce, that develop and deliver open-source commercial solutions. Automattic and the WordPress Foundation work in tandem under a series of carefully crafted trademark licenses to ensure that their respective activities mutually reinforce the integrity of the WordPress Marks, advance the development of the WordPress platform, and protect the goodwill associated with the WordPress Marks.

39.  Pursuant to the Trademark Donation, License and Security Agreement, which has an effective date of June 7, 2010, between Automattic and the WordPress Foundation, Automattic owns exclusive rights to make commercial use of the WordPress Marks and has the first right to enforce the WordPress Marks in connection with the hosting of blogs and websites that utilize any version or component of the WordPress open-source publishing platform product or open-source successor of any of the foregoing. A true and correct copy of the Trademark Donation, License and Security Agreement is attached as **Exhibit A**.

40.  The WordPress Foundation enforces the WordPress Marks and publishes a trademark policy prohibiting use of the WordPress trademark (and similar marks) by third parties as part of a commercial product, service, business, or domain name. The WordPress Foundation owns numerous trademark registrations for its family of WordPress trademarks, including but not limited to the following (the "WordPress Marks"):

| Mark | Classes | U.S. Reg. No. | Reg. Date |
|---|---|---|---|
| WORDPRESS | Int. Classes: 9, 42 | 3,201,424 | January 23, 2007 |
| W | Int. Classes: 9, 41 | 3,988,241 | July 5, 2011 |
| W | Int. Classes: 25, 42 | 4,317,426 | April 9, 2013 |
| WORDPRESS | Int. Class 25 | 4,764,217 | June 30, 2015 |
| WORDPRESS | Int. Class 41 | 4,865,558 | December 8, 2015 |

41.  Copies of the certificates for these registrations are included as **Exhibit B** and are incorporated by reference.

42.  These registrations were duly and legally issued, and they are valid and subsisting. As a result of their continuous use, all of the registered marks enumerated above are now "incontestable" pursuant to 15 U.S.C. § 1065.

43.  The WordPress Foundation also has currently pending applications to register the marks MANAGED WORDPRESS (U.S. Serial No. 98,646,183) and HOSTED WORDPRESS (U.S. Serial No. 98,646,185).

44.  In 2008, WooCommerce, formerly WooThemes, started as a company that built new themes for WordPress, but later transitioned to focus on e-commerce and plugin development. In 2011, WooCommerce (known then as WooThemes) made its first plugin, WooCommerce, which enabled customers to transform their WordPress sites into a professional e-commerce storefront. In 2015, WooThemes was acquired by Automattic and rebranded as WooCommerce. Today, WooCommerce has grown from its three founders to a team with hundreds of employees in dozens of countries.

45.  The WooCommerce open-source e-commerce platform powers more than 3.9 million online stores. WooCommerce offers an e-commerce platform designed to help customers sell anything online, from simple products to customizable bundles, downloads, subscriptions, and more. WooCommerce can recommend a host platform to customers, which is where the customers' stores "live" online. From there, WooCommerce sells the WooCommerce plugin for WordPress, the platform that powers more than 40 percent of all websites. WooCommerce's products and services allow its customers to create and maintain attractive, customizable stores online.

46.  WooCommerce's customers include merchants, developers, and anyone else operating an e-commerce business.

47.  WooCommerce has adopted and continuously used in commerce a family of marks consisting of or comprising WOO, including WOOCOMMERCE, WOOCOMMERCE, WOO, and WOO in connection with a wide range of goods and services related to website design, development, and internet publishing (the "WooCommerce Marks").

48.  WooCommerce owns numerous trademark registrations for its WooCommerce Marks,

Gibson, Dunn & Crutcher LLP

including but not limited to the following:

| Mark | Classes | U.S. Reg. No. | Reg. Date |
|---|---|---|---|
| WOOCOMMERCE | Int. Classes: 9, 42 | 5,561,427 | September 11, 2018 |
| WOO COMMERCE | Int. Classes: 9, 42 | 5,561,428 | September 11, 2018 |
| WOO | Int. Classes: 9, 42 | 5,561,425 | September 11, 2018 |
| WOO | Int. Classes: 9, 42 | 5,561,426 | September 11, 2018 |
| WOOCOMMERCE STOREFRONT | Int. Classes: 9, 42 | 6,016,397 | March 24, 2020 |
| WOOCOMMERCE PAYMENTS | Int. Classes: 9, 36, 42 | 6,735,885 | May 24, 2022 |
| WOOEXPERT | Int. Class: 42 | 7,365,250 | April 23, 2024 |
| WOO EXPRESS | Int. Class: 42 | 7,380,699 | May 7, 2024 |
| WOOCOMMERCE | Int. Classes: 9, 35, 42 | 7,417,062 | June 18, 2024 |
| WOOPAY | Int. Classes: 36, 42 | 7,566,007 | November 12, 2024 |
| WOO | Int. Classes: 9, 42 | 7,597,083 | December 10, 2024 |
| WOOPAYMENTS | Int. Classes: 9, 36, 42 | 7,698,811 | February 18, 2025 |
| woo | Int. Classes: 9, 42 | 7,900,960 | August 19, 2025 |
| W | Int. Classes: 9, 42 | 7902350 | August 19, 2025 |
| W | Int. Classes: 9, 42 | 7902351 | August 19, 2025 |
| W | Int. Classes: 9, 42 | 7902352 | August 19, 2025 |

49. Copies of the certificates for these registrations are included as **Exhibit C** and are incorporated by reference.

50.   These registrations were duly and legally issued, and they are valid and subsisting. As a result of their continuous use, all of the marks enumerated above that were registered in 2018 are now "incontestable" pursuant to 15 U.S.C. § 1065.

51.   WooCommerce also has currently pending applications to register the marks WOO PARTNER (U.S. Serial No. 98,256,543); MANAGED WOO (U.S. Serial No. 98,466,395); HOSTED WOO (U.S. Serial No. 98,466,398).

52.   Counterclaimants have for many years used the WordPress and WooCommerce Marks to advertise and provide a variety of products and services including, *inter alia*, electronic publishing services, website development software, clothing, downloadable software programs for use in design and management of website content, software solutions (including online non-downloadable software for use in internet publishing), and the design of home pages, computer software, and websites.

53.   Counterclaimants have made extensive use of the WordPress and WooCommerce Marks on their websites, on social media, and other marketing materials.

54.   Counterclaimants have expended considerable time, money, and effort to advertise, promote, and publicize their trademarks and services.

55.   As a result of Counterclaimants' significant investment to develop their brand identities, and Counterclaimants' careful attention to the quality of their products and customer service, the WordPress and WooCommerce Marks have acquired a strong and widespread reputation that is firmly identified in the public's mind with Counterclaimants. Counterclaimants have also created substantial common law rights, goodwill, and publicity value in these trademarks.

56.   The WordPress and WooCommerce Marks are valuable symbols of Counterclaimants, their high-quality services, and their goodwill.

57.   Counterclaimant Automattic has used the WordPress Marks in commerce for over 20 years in California and in interstate commerce. The WordPress Marks have become strongly associated in consumers' minds with Automattic during that time.

58.   Moreover, the WordPress Marks are famous and distinctive in the United States and in California. *See, e.g., WordPress Foundation v. Fundacion Private Whois*, WIPO Case No. D2013-

1    1427 (finding "that the mark WORDPRESS is well-known" and noting fame "globally for blogging

2    software").

3        59.    WordPress is one of the largest open-source projects in the world. Since its launch,

4    WordPress has powered a significant portion of websites on the internet. In the early 2010s, WordPress

5    had already established itself as a premier digital publishing tool powering millions of websites,

6    powering over 14% of websites globally.

7        60.    WordPress has been referred to as "the most popular publishing platform on the Web."[2]

8    *The Washington Post* has called WordPress a "blogging giant."[3]

9        61.    WordPress is the software of choice for a diverse range of brands, organizations,

10    celebrities, and many different kinds of websites. Entities currently using WordPress for their website

11    include governmental bodies including the White House (whitehouse.gov), NASA (nasa.gov), and the

12    California Department of Motor Vehicles (dmv.ca.gov); media companies including the New York

13    Times Company (nytco.com), Rolling Stone (rollingstone.com), the Village Voice (villagevoice.com),

14    the New York Post (nypost.com), and Meta Newsroom (about.fb.com/news); high-profile individuals

15    including Ariana Grande (arianagrande.com), Usain Bolt (usainbolt.com), Raphael Nadal

16    (rafaelnadal.com), Michael Pollan (michaelpollan.com), and Margaret Cho (margaretcho.com);

17    Harvard University (harvard.edu); Amnesty International (amnesty.org); the Pew Research Center

18    (pewresearch.org); Angry Birds (angrybirds.com); James Bond (007.com); and many more. WordPress

19    websites receive hundreds of millions, if not more, of monthly page views.

20        62.    Today, WordPress powers tens of millions, if not hundreds of millions, of websites. There

21    are 46 million active WordPress installations and over 13 million registered and active WordPress.org

22    accounts. There are WordPress users in all 50 states and around the world. Conventions known as

23    "WordCamps" and other events dedicated to the WordPress project are held globally, with over

24    354,000 tickets sold since 2013. There are over 530,000 members participating in the WordPress

25

26

27    [2] *Lessons learned: Building WordPress, the No. 1 blogging tool*, Silicon Valley Business Journal
     Copyright © 2013 American City Business (Mar. 29, 2013).

28    [3] https://www.washingtonpost.com/technology/2019/08/13/tumblr-once-sold-billion-owner-
     wordpress-just-bought-site-fraction-that/

Gibson, Dunn &
Crutcher LLP

Meetup program, a program to arrange face-to-face events to share WordPress experiences. In the WordPress ecosystem, there are tens of thousands of themes and over 65,000 plugins available for WordPress.

63.   The WordPress Parties have made substantial investments in advertising, promoting, and protecting WordPress. In addition, the many active members of the WordPress community promote WordPress through paid advertising and unpaid promotional measures such as participating in events like WordCamp and WordPress Meetups, actively discussing and recommending WordPress to consumers, and developing the software and related themes and plugins, all of which increases public awareness. WP Engine itself has acknowledged this dynamic, explaining that "hundreds of companies … have invested billions of dollars and millions of hours making WordPress a better experience for the entire WordPress community" and "allow[ed] WordPress to establish the ***recognition, presence, and credibility*** that have historically been beyond the size of any one business or the reach of individual enthusiasts." Dkt. 180 ¶ 194 (emphasis added).

64.   WordPress is the subject of extensive unsolicited national news coverage, including prominent newspapers such as *The New York Times*, *The Los Angeles Times*, and *The Washington Post*. A recent Lexis search for U.S. publications mentioning WordPress two or more times resulted in 28,369 articles from sources across the country. The articles reflect public awareness of and attention to WordPress in the United States.

65.   WordPress-affiliated social media pages have large followings: over 1.3 million followers on Facebook,[4] 1.5 million followers on X (formerly Twitter),[5] 192,000 on Instagram,[6] and 110,000 subscribers on YouTube.[7] A Reddit forum dedicated to WordPress has over 260,000 members.[8] There

---

[4] https://www.facebook.com/WordPress
[5] https://x.com/wordpressdotcom
[6] https://instagram.com/wordpressdotcom
[7] https://www.youtube.com/wordpress
[8] https://www.reddit.com/r/Wordpress

are myriad YouTube channels and other resources offering WordPress tutorials.[9] As WP Engine itself has observed and documented, "66% of Gen Z has personally used, worked with someone else, or hired someone to use WordPress for a website."[10]

66.  WP Engine CEO Heather Brunner has spoken extensively about WordPress's fame. At WP Engine's Summit/2021 "Digital Breakthrough Conference," Brunner gave a keynote address titled "The Power of the WordPress Economy" in which she explained that the "economic value of the WordPress ecosystem is just under $600 billion" and "continuing to grow," making it equivalent to approximately the 39th largest nation in the world by GDP or 10th largest company in the world and comparable to other large digital ecosystems like the Apple app store.[11] Brunner highlighted the scope of community involvement and stated that WordPress is the "leader in usage across the entire web, and truly is running the internet."[12]

67.  Brunner has also made clear that WordPress is widely known by ordinary members of the public and is by no means a niche software. In an interview with the podcast *Content Is for Closers*, Brunner highlighted "several young people" using WordPress to develop websites and explained that the "expansive ecosystem of WordPress … gives people lots of different inroads to come in and be part of it … [including] people from all backgrounds, all ethnicities all around the world."[13]

68.  On other occasions, WP Engine and its representatives have stated that WordPress is "trusted by the world's biggest brands"[14] and is "the world's favorite and fastest-growing content management system."[15] WP Engine has surveyed enterprise companies on multiple occasions and

---

[9] *See, e.g.*, https://videos.feedspot.com/wordpress_youtube_channels/ (recommending 30 WordPress YouTubers); https://marketingwithwp.com/best-wordpress-tutorial-youtube-channels/ (recommending 14 best WordPress tutorials); https://www.reddit.com/r/WordPress_org/comments/147qits/wordpressfriendly_trainings_for_beginners/ (collecting WordPress tutorials and other resources).

[10] https://wpengine.com/blog/generation-influence-gen-z-study-reveals-a-new-digital-paradigm/

[11] https://wpengine.com/resources/the-power-of-the-wordpress-economy/

[12] *Id.*

[13] https://www.contentisforclosers.com/podcast/platforming-different-voices/

[14] https://wpengine.com/blog/10000-emea-customers/

[15] https://wpengine.com/blog/wp-engine-appoints-jason-teichman-coo/

Gibson, Dunn & Crutcher LLP

found that WordPress is the "dominant" content management system and showed the highest increase in usage of any content management system surveyed.[16] WP Engine has also explained that "WordPress and the wider ecosystem are so key to the digital-first economy."[17]

69. Counterclaimant WooCommerce has used the WOOCOMMERCE and **WOO**COMMERCE marks in commerce for approximately 13 years in California and in interstate commerce. The WOOCOMMERCE and **WOO**COMMERCE marks have become strongly associated in consumers' minds with WooCommerce during that time.

70. Counterclaimant WooCommerce has used the WOO and **WOO** marks in commerce for approximately 16 years in California and in interstate commerce. The WOO and **WOO** marks have become strongly associated in consumers' minds with WooCommerce during that time.

## III.    COUNTERCLAIMANTS' TRADEMARK POLICY AND ENFORCEMENT OF THE WORDPRESS AND WOOCOMMERCE MARKS

71. Because the WordPress software is released under a permissive license that allows anyone to use, modify, and distribute it freely, the WordPress Parties cannot control who uses the code, nor do they want to. But they can control who makes commercial use of the name. The WordPress Marks are the primary—and in many ways, only—means of ensuring that users know when they are interacting with services that meet the standards, values, quality, and oversight of the WordPress Parties. The WordPress Marks serve as a beacon of trust, signaling that the software and services bearing the WordPress name reflect the WordPress Parties' longstanding principles of transparency, collaboration, technical excellence, and a deep-rooted obligation to contribute to the WordPress open-source project and serve the broader community that sustains it. Accordingly, the WordPress Parties vigilantly and vigorously defend the WordPress Marks in the United States.

72. Since its creation in 2010, the WordPress Foundation has maintained a clear and robust trademark policy designed to protect the integrity of the WordPress Marks. From the outset, the policy

---

[16] https://wpengine.com/blog/the-rise-of-multiple-cmss-international-study-shows-wordpress-dominates-the-enterprise/

[17] https://www.rte.ie/news/business/2022/0919/1324213-granite-digitals-3-1m-partnership-deal-with-wp-engine/

Gibson, Dunn & Crutcher LLP

has allowed limited use of the WordPress trademark by WordPress-based projects—but only under narrow and well-defined conditions. The policy permits use of the WordPress name only if:

- The primary purpose of [the] project is to promote the spread and improvement of the WordPress software.

- [The] project is **non-commercial in nature** (it can make money to cover its costs or contribute to non-profit entities, but it cannot be run as a for-profit project or business).

- [The] project neither promotes nor is associated with entities that currently fail to comply with the GPL license under which WordPress is distributed.[18]

73.  For all other uses, including by for-profit businesses or commercial projects not dedicated to advancing the WordPress software, the policy has, from its inception, categorically prohibited use of the WordPress marks "as part of a product, project, service, domain, or company name," or in any way "that suggests an affiliation with or endorsement by the WordPress Foundation or the WordPress open source project."[19]

74.  The WordPress trademark policy has long included the following illustrative examples of what is and is not permissible:

- [A] consulting company can describe its business as "123 Web Services, offering WordPress consulting for small businesses," but cannot call its business "The WordPress Consulting Company."

- [A] business related to WordPress themes can describe itself as "XYZ Themes, the world's best WordPress themes," but cannot call itself "The WordPress Theme Portal."[20]

75.  These fundamental rules have remained consistent and unchanged from 2010 to the present. The message has never wavered: for-profit companies may not use the WordPress trademark as part of any product, project, service, domain, or business name—or in any other manner likely to cause consumer confusion or falsely imply affiliation with or endorsement by WordPress. The

---

[18] https://web.archive.org/web/20100912201802/https://wordpressfoundation.org/trademark-policy/ (emphasis added).
[19] *Id.*
[20] *Id.*

Gibson, Dunn &
Crutcher LLP

WordPress trademark policy therefore provides guidance to good-faith users of the WordPress marks.

76.  The WordPress Foundation's trademark policy does not restrict competition, it simply requires that those offering goods or services related to WordPress do so in a manner that is clear and non-deceptive. The policy allows commercial use of the WordPress name, including by competitors, so long as such use does not create confusion about source, sponsorship, or affiliation. In other words, the policy does not prohibit others from participating in the market; it asks only that they be honest with consumers about who they are and who they are not.

77.  For third parties who violate the trademark policy or otherwise infringe the WordPress Marks, the WordPress Parties enforce their rights in the WordPress Marks against them.

78.  Most website hosts that compete with WP Engine generally adhere to the WordPress Foundation's trademark policy. While there have been occasional departures, none have approached the nature, scope, or scale of WP Engine's sustained and deliberate efforts to create confusion. WP Engine's conduct stands apart in kind and degree from any other industry player.

79.  In the early years of developing and providing the WordPress software, the WordPress Parties focused trademark enforcement efforts on third parties with domain names that incorporated "WordPress" or confusingly similar terms, a practice known as cyber-squatting. These websites created confusion for consumers searching for the creator of the WordPress software and falsely suggested association or endorsement. The WordPress Parties engaged a variety of strategies to enforce use of the WordPress Marks against cyber-squatters, including but not limited to bringing claims through the World Intellectual Property Organization ("WIPO") and federal litigation when necessary. *See, e.g.*, *WordPress Foundation v. duanxiangang*, WIPO Case No. D2011-0836 (July 6, 2011) (transferring domain names <wirdpress.org>, <wordprees.org>, <wordprss.org>, and <woordpress.org> to WordPress Foundation); *WordPress Foundation v. Guo Lei aka Lei Guo*, WIPO Case No. D2011-0932 (Aug. 5, 2011) (transferring domain name <wordress.org> to WordPress Foundation); *WordPress Foundation v. Park HyungJin*, WIPO Case No. D2013-0074 (Mar. 1, 2013) (transferring domain name <wpordpress.com> to WordPress Foundation); *Mullenweg and Automattic Inc. v. Johnson and Opendomain.org*, No. 05-cv-04954 (N.D. Cal.) (complaint for trademark infringement, trademark dilution, unlawful business practices, and cybersquatting related to defendants purchasing

WordPress.com site with knowledge of plaintiffs' use). The WordPress Parties prevailed in all of the WIPO claims and settled with the *Johnson* defendants such that they now own the domain <wordpress.com>.

80.  Over time, the WordPress Parties' enforcement efforts expanded as infringement of the WordPress Marks increased. Enforcement strategies have included sending cease and desist letters, negotiating and licensing use of the WordPress Marks, initiating opposition and cancellation proceedings before the Trademark Trial and Appeal Board ("TTAB"), and bringing legal action where necessary. *See WordPress Foundation v. Yablon*, No. 15-cv-02745 (N.D. Cal.) (complaint against individual defendant doing business as The WordPress Helpers). Each of these efforts resulted in the WordPress Parties protecting their intellectual property. For instance, the *Yablon* defendant no longer uses the business name The WordPress Helpers.

81.  Automattic also encourages all employees to participate in enforcing the WordPress Marks and makes internal written guidelines available concerning Automattic's role in enforcing the WordPress Marks and identifying potential infringement as a reference for its employees. Automattic employees are directed to report potential instances of trademark infringement with counsel and employees working at the direction of counsel.

82.  Counterclaimants similarly maintain a trademark policy for the WooCommerce Marks, which prohibits the use of the WooCommerce and Woo logos for any purpose and permits use of the trademark in plain text in order to truthfully and accurately refer to WooCommerce.[21] The policy prohibits use of the WooCommerce Marks:

- In a way that suggests that Automattic or WooCommerce has somehow sponsored, endorsed, or is otherwise affiliated with you or your products or services.
- In a way that maligns, disparages or tarnishes Automattic, WooCommerce or their products and services, even if your products and services also happen to be compatible with WooCommerce.
- In a way that trades on the goodwill of the Woo Marks.
- In advertising and marketing materials.

---

[21] https://woocommerce.com/trademark-guidelines/

Gibson, Dunn &
Crutcher LLP

83.   The WooCommerce policy provides further detail on permissible use and examples. A version of this policy has been publicly accessible since at least September 2020.[22]

84.   Counterclaimants enforce the WooCommerce Marks in accordance with the level of infringing activity and likelihood of confusion to consumers.

85.   For instance, WooCommerce Inc. and Automattic as its parent company have initiated WIPO and TTAB proceedings in cases of cyber-squatting or confusingly similar trademark applications. *See, e.g.*, *Automattic Inc. and Bubblestorm Management Ltd. v. Domain Admin*, WIPO Case No. D2017-2323 (Jan. 24, 2018) (transferring domain name <wooocommerce.com> to Automattic). Each of these efforts resulted in Counterclaimants protecting their intellectual property.

86.   Automattic also encourages all employees to participate in enforcing the WooCommerce Marks and makes internal written guidelines available concerning Automattic's trademark rights in the WordPress Marks and identifying potential infringement as a reference for its employees. Automattic employees are directed to report potential instances of trademark infringement with counsel and employees working at the direction of counsel.

## IV.    WP ENGINE'S BUSINESS

### A.    WP ENGINE'S EARLY YEARS

87.   WP Engine was founded in 2010 by Jason Cohen in Austin, Texas, as a managed hosting provider specializing in services optimized for websites built with WordPress, the open-source content management system. At the time, WP Engine was a small company providing services for a relatively modest number of consumers.

88.   In its initial phase, WP Engine operated as a privately held company under Cohen's leadership.

89.   By November 2011, WP Engine secured $1.2 million in Series A financing. The investment round was led by Silverton Partners, with participation from angel investors including Eric Ries, Loic Le Meur, Dharmesh Shah, Jeremy Benken, Bill Boebel, and Rob Walling.[23] Automattic also

---

[22] https://web.archive.org/web/20200913123533/https://woocommerce.com/trademark-guidelines/
[23] https://wpengine.com/blog/wp-engine-closes-1-2m-in-series-a-financing/

Gibson, Dunn &
Crutcher LLP

made a small strategic investment of approximately $25,000 during this round. At the time of the Series A funding in 2011, WP Engine reported hosting over 30,000 personal and professional WordPress blogs.

90.  Automattic's investment was passive in nature, although driven by Mullenweg's desire to support all companies that are part of the greater WordPress ecosystem. Neither Mullenweg nor anyone else at Automattic has ever held any operational or executive role within WP Engine, served on the company's board of directors, or been involved in its day-to-day management.

91.  In 2013, Heather Brunner joined WP Engine as Chief Operating Officer and was later appointed CEO in October 2013, with Jason Cohen transitioning to the role of Chief Technology Officer.

92.  WP Engine continued raising additional funding and increasing its revenue at a steady pace. On information and belief, WP Engine had secured $15 million in funding and reported $20 million in revenue by January 2014, $23 million in funding and $40 million in revenue by March 2015, and $60 million in revenue in 2016.

## B.  SILVER LAKE'S INVESTMENT IN WP ENGINE

93.  In January 2018, Silver Lake, a private equity firm, acquired a majority interest in WP Engine for $250 million.

94.  As a result of the transaction, Silver Lake also gained control of WP Engine's Board of Directors. Three of Silver Lake's senior executives, including Silver Lake's CEO, comprise a majority of WP Engine's five-member Board: Mark Gillett, Managing Director and Head of Value Creation at Silver Lake; Lee Wittlinger, Managing Director at Silver Lake; and Gregory Mondre, Co-Chief CEO and Managing Partner at Silver Lake.

95.  As a minority shareholder, Automattic had no ability to block or provide input in the transaction. Automattic's shares were cashed out as a result of Silver Lake's acquisition. Automattic no longer has shares of WP Engine.

96.  By 2019, WP Engine reported $132 million in annual recurring revenue and served more than 90,000 customers globally.[24]

97.  On information and belief, WP Engine's reported annual recurring revenue has quadrupled since it was acquired by Silver Lake to $400 million. WP Engine's profits primarily derive from the WordPress ecosystem, as WP Engine admitted in its Complaint. *See* Dkt. 180 ¶ 107 ("WPE's business ***depends*** on the WordPress ecosystem." (emphasis in original)).

98.  On information and belief, despite this growth in revenue, Silver Lake did not realize the return it expected on its investment.

99.  WP Engine competes with companies that offer hosting services for WordPress websites, including Automattic.

100. On information and belief, WP Engine expanded its business and moved into more direct competition with Automattic after Silver Lake acquired WP Engine. As discussed in more detail *infra*, WP Engine began utilizing the WordPress and WooCommerce Marks for new goods and services after Silver Lake acquired a controlling interest, including incorporating for the first time the WordPress trademark into the name of its product offering in 2021 and expanding in the years that followed. On information and belief, WP Engine began aggressively infringing the WordPress and WooCommerce Marks in order to cover up its poor business performance and conceal the true value of the company.

101. On information and belief, WP Engine began targeting new types of users of open-source software and expanding its business into different regions or markets. On information and belief, WP Engine's expansion was part of its strategy to inflate the company's value.

**V.    WP ENGINE'S INCREASED USE OF COUNTERCLAIMANTS' MARKS**

**A.    WP ENGINE'S EARLY, DESCRIPTIVE USE OF THE WORDPRESS MARKS**

102. When WP Engine was founded in 2010, it made sparing use of the WordPress Marks, using them primarily to refer to and explain its services.

---

[24] https://wpengine.com/blog/wp-engine-announces-132m-annual-recurring-revenue/

Gibson, Dunn & Crutcher LLP

103. Below is a true and accurate image of the WP Engine website on or about December 30, 2010:[25]



104. Below is a true and accurate image of the WP Engine website on or about January 3, 2012:[26]



---

[25] https://web.archive.org/web/20101230230051/http://wpengine.com/
[26] https://web.archive.org/web/20120103092419/http://wpengine.com/

105. Below is a true and accurate image of the WP Engine website on or about June 4, 2012:[27]



106. Below are true and accurate images of the WP Engine website on or about December 1, 2013:[28]



---

[27] https://web.archive.org/web/20120614001845/http://wpengine.com/
[28] https://web.archive.org/web/20131201123446/http://wpengine.com/



107. Below are true and accurate images of the WP Engine website on or about July 3, 2015:[29]



---

[29] https://web.archive.org/web/20150703194437/http://wpengine.com/



108. Below is a true and accurate image of the WP Engine website on or about June 1, 2017:[30]

---

[30] https://web.archive.org/web/20170601044845/https://wpengine.com/

**B.     WP ENGINE'S USE OF COUNTERCLAIMANTS' MARKS INCREASES DRAMATICALLY**

109. WP Engine signaled its intent to leverage the WordPress Marks after Silver Lake acquired a majority interest in WP Engine, starting by using the WordPress trademark to bolster its business reputation in an initial press release and rolling out a more concerted effort in the years that followed.

110. When WP Engine announced the acquisition on January 4, 2018, it referred to itself as "The Only WordPress Digital Experience Platform" and "the world's leading WordPress Digital Experience Platform."[31] Below is a true and accurate image from the WP Engine website from on or around January 4, 2018 and still live today:

### The Only WordPress Digital Experience Platform

---

[31] https://wpengine.com/blog/milestone-announcement/

Gibson, Dunn & Crutcher LLP

111. Later that month, WP Engine began advertising itself as "Your WordPress Digital Experience Platform" and "The WordPress Digital Experience Platform."[32] Below is a true and accurate image from the WP Engine website from on or around January 31, 2018:



112. By January 29, 2019 WP Engine began referring to itself as "THE WordPress Partner of Choice," even though WP Engine had no partnership with the WordPress Parties, much less any kind of preferred partnership.[33] Below is a true and accurate image from the WP Engine website from on or around January 29, 2019:

---

[32] https://web.archive.org/web/20180131223006/https://wpengine.com/
[33] https://wpengine.com/blog/wp-engine-announces-132m-annual-recurring-revenue/ (capitalization in original)

Gibson, Dunn &
Crutcher LLP

## THE WordPress Partner of Choice

Launched in 2017, WP Engine's Agency Partner Program enables agencies of all sizes to use WordPress to grow their business by driving creative, engaging experiences that deliver clear impact for their clients. Since its launch, the APP has grown exponentially, enrolling over 2,250 agency partners thanks to the availability of extensive thought leadership and content resources, its digital experience platform, advanced developer tools and the opportunity for new business leads. New agencies to the program, signing up within the last 12 months, include: Edelman, Grey, Huge, The Richards Group and W2O Group.

WP Engine expanded its collaboration with Amazon Web Services (AWS) by launching the Amazon Polly plugin, which transforms text into lifelike speech, and the integration of Amazon Translate into the Amazon Polly plugin translating English content into any of 26 languages. These tools allow publishers to turn written content into podcasts to reach even more consumers, such as those on the go and the visually impaired.

113. By June 1, 2019, WP Engine had stopped advertising itself as both "Your WordPress Digital Experience Platform" *and* "The WordPress Digital Experience Platform," opting to only use the latter.[34] Below is a true and accurate image from the WP Engine website from on or around June 1, 2019:

---

[34] https://web.archive.org/web/20190601003428/https://wpengine.com/

Gibson, Dunn & Crutcher LLP



BEYOND MANAGED WORDPRESS HOSTING

# The WordPress Digital Experience Platform.

Bring your vision to life in breakthrough experiences, built on the best platform for developing and hosting fast, reliable, and secure WordPress sites.

### C.    WP ENGINE STARTS TO POSE AS A "WORDPRESS" COMPANY

114. On information and belief, in an effort to increase the value of WP Engine ahead of exit or liquidity events, WP Engine substantially increased the frequency and visual dominance of the WordPress and WooCommerce Marks across WP Engine's homepage between 2021 and 2023.

115. Below are true and accurate charts showing the dramatic increase in WP Engine's use of the WordPress and WooCommerce Marks, created by parsing the HTML code from WP Engine's homepage. "Visible Count" refers to an instance of use of the WordPress or WooCommerce Mark that a user could reasonably see or interact with on a webpage. "Non-Visible Count" refers to an instance of use of the WordPress or WooCommerce Marks that a user could not reasonably see or interact with but that was part of WP Engine's Search Engine Optimization strategy, including code scripts, stylesheets, metadata, fallback content for disabled JavaScript, embedded frames, HTML templates, and linked resources.

Average Monthly Mentions of "WordPress": WP Engine



116. In 2021, for the first time WP Engine incorporated the WordPress trademark into the name of its product offering. WP Engine launched a product line that it called "Headless WordPress." WP Engine's Headless WordPress product violates the express terms of the WordPress Foundation Trademark Policy, which prohibits using the WordPress name "as part of a product, project, service, domain, or company name."

117. Below is a true and accurate image from the WP Engine website from on or about March 4, 2021, that has been highlighted to indicate relevant language—where WP Engine announced "Headless WordPress, its new Headless WordPress product line." On the same page, WP Engine describes itself as "WP Engine, the world's most trusted WordPress technology company."[35] As of today, this page is still live on the WP Engine website.

**AUSTIN, Texas — March 4, 2021 — WP Engine**, the world's most trusted WordPress technology company, today announced **Headless WordPress**, its new Headless WordPress product line. WP Engine's Headless WordPress is the complete Headless WordPress platform, enabling exponentially faster dynamic sites with the flexibility and security that comes with headless solutions.

---

[35] https://wpengine.com/blog/wp-engine-launches-the-future-of-headless-wordpress/

## About WP Engine

**WP Engine**, the world's most trusted WordPress technology company, powers the freedom to create on WordPress. We provide the most relied upon and trusted brands and developer-centric WordPress products for companies and agencies of all sizes, **including Headless WordPress, Flywheel, Genesis, Local and more.** Headquartered in Austin, Texas, WP Engine has offices in Brisbane, Australia; Kraków, Poland; Limerick, Ireland; London, England; Omaha, Nebraska and San Antonio, Texas. Read more at **wpengine.com**.

118. By June 2021, WP Engine amplified its misuse of the WordPress mark and began referring to itself as "WP Engine, **the** WordPress technology company" (emphasis added). Below is a true and accurate image of the WP Engine website from on or about June 24, 2021, that has been highlighted to indicate relevant language—where WP Engine refers to itself by this misleading and deceptive slogan.[36] As of today, this page is still live on the WP Engine website.

---

[36] https://wpengine.com/blog/wp-engine-launches-premier-enterprise-wordpress-platform/

Gibson, Dunn &
Crutcher LLP

# About WP Engine

**WP Engine**, the WordPress technology company, provides the most relied upon and trusted brands and developer-centric WordPress products for companies and agencies of all sizes, including **managed WordPress hosting**, enterprise WordPress, **headless WordPress**, **Flywheel**, **Local** and **Genesis**. WP Engine's tech innovation and award-winning WordPress experts help to power more than 1.5 million sites across 150 countries.

119. By November 2021, WP Engine had begun including WordPress in the names of its plans. Below are true and accurate images from WP Engine's website from on or about November 10, 2021.[37]



## Compare Managed WordPress Hosting Features

| | Managed WordPress **Startup** | Managed WordPress **Professional** | Managed WordPress **Growth** | Managed WordPress **Scale** | Managed WordPress **Custom** |
|---|---|---|---|---|---|
| | BUY NOW | BUY NOW | BUY NOW | BUY NOW | GET IN TOUCH |
| Sites Included | 1 | 3 | 10 | 30 | 30+ |
| Visits / Month | 25,000 | 75,000 | 100,000 | 400,000 | 400,000+ |
| Local Storage | 10 GB | 15 GB | 20 GB | 50 GB | 50 GB+ |
| Bandwidth / Month | 50 GB | 125 GB | 200 GB | 500 GB | 500 GB+ |

120. By August 2022, WP Engine had begun using the Woo and WooCommerce Marks in its plan advertising, giving the impression that it was endorsed by, sponsored by, or affiliated with the WordPress Parties. Below is a true and accurate image of WP Engine's website from on or about August 13, 2022.[38]



[38] https://web.archive.org/web/20220813234920/https://wpengine.com/plans/

121. On information and belief, around late 2023 Silver Lake began preparing to sell WP Engine to recoup its poor investment. On information and belief, Silver Lake hired bankers and attempted to sell WP Engine for over $2 billion into 2024, but no buyer was willing to entertain the price. Silver Lake also approached Automattic about acquiring WP Engine in 2024, but Automattic declined.

122. In an attempt to increase WP Engine's attractiveness to a potential buyer, WP Engine engaged in strategies to drastically cut costs and increase profit. Chief among those strategies was dramatically increasing the use of the WordPress and WooCommerce Marks and accordingly increasing the perception that WP Engine is connected to, sponsored by, or affiliated with Counterclaimants. WP Engine's strategy included aggressive utilization of search engine optimization to use the WordPress and WooCommerce Marks extremely frequently and confuse consumers searching for authorized providers of WordPress and WooCommerce software; and offering lesser versions of its services, including its customer support capability and reliability, and disabling certain features that are common to WordPress software offerings, such as disabling the revision history feature.

123. WP Engine's strategy also included a brand refresh to resemble Automattic's branding. In May 2024, WP Engine redesigned its website and chose a confusingly similar serif font and color scheme to that used on WordPress.com. At the same time, WP Engine had become even more brazen with its misuse of Counterclaimants' Marks, calling its plans "Essential WordPress," "Essential eCommerce," and "Core WordPress." Below is a true and accurate image of the WP Engine website from on or about May 27, 2024.[39]

---

[39] https://web.archive.org/web/20240527064203/https://wpengine.com/plans/



124. By August 2024, WP Engine's main page was displaying "WordPress" in an almost identical font to that used on WordPress.com. Below are true and correct images of the WP Engine website from on or about August 15, 2024.[40]

---

[40] https://web.archive.org/web/20240815000723/https://wpengine.com/

MOST TRUSTED WORDPRESS HOSTING AND BEYOND

# We power the freedom to create on WordPress

Build, power, manage and optimize extraordinary WordPress, **WooCommerce** and **headless** sites with the world's #1 **WordPress hosting** platform.

**Plans & Pricing**    Get a Quote

125. Below is a true and accurate image of the WordPress.com website from on or about August 15, 2024.

Gibson, Dunn & Crutcher LLP

126. Faced with this sharp increase in WP Engine's misuse of Counterclaimants' marks, Mullenweg and Automattic, on behalf of the WordPress Parties, reached out to WP Engine to express concern and to try to negotiate a trademark license that would allow WP Engine to use the WordPress and WooCommerce Marks, as it seemed determined to do. Yet, as WP Engine was rapidly increasing its use of Counterclaimants' Marks, it was negotiating in bad faith, never intending to agree to any sort of license.

127. Then, as WP Engine rushed to file its lawsuit, they eliminated some of the most glaring misuses of the WordPress and WooCommerce Marks. However, to this day, WP Engine continues to misleadingly advertise itself as "WP Engine, the WordPress Technology Company" and as "the WordPress Digital Experience Platform."

128. Below is a true and accurate image from the WP Engine website from on or about March 20, 2025 that has been highlighted to indicate relevant language.[41] This page of WP Engine's website is still live as of today.

---

[41] https://wpengine.com/resources/resilience-connecting-a-locked-down-generation/

Gibson, Dunn &
Crutcher LLP

## About WP Engine

**WP Engine**, the WordPress technology company, provides the most relied upon and trusted brands and developer-centric WordPress products for companies and agencies of all sizes, including **managed WordPress hosting**, **enterprise WordPress hosting**, **headless WordPress**, **Flywheel**, **Local**, and **Genesis**. WP Engine's tech innovation and award-winning WordPress experts help to power more than 1.5 million sites across 150 countries.

129. Below is a true and accurate image from the WP Engine website.[42] This page of WP Engine's website is still live as of today.

### About WP Engine.

WP Engine is the WordPress Digital Experience Platform that gives companies of all sizes the agility, performance, intelligence, and integrations they need to drive their business forward faster. WP Engine's combination of tech innovation and an award-winning team of WordPress experts are trusted by more than 120,000 customers across 150 countries to provide counsel and support, helping brands create world-class digital experiences. Founded in 2010, WP Engine is headquartered in Austin, Texas, and has offices in Brisbane, Australia; Limerick, Ireland; London, England; Omaha, Neb.; San Antonio, Texas and San Francisco, Calif.

130. WP Engine also continues to include WordPress in its product names. Below is a true and accurate image from the WP Engine website promoting its product "Headless WordPress," along with its "WordPress Hosting" product.[43] WP Engine still promotes these products as of today.

---

[42] https://wpengine.com/solution-center/infinity-pro/
[43] https://wpengine.com/

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8

**Products**

**WordPress Hosting**

**Headless WordPress**

**Pricing**

9

10    131. The confusion created by WP Engine's rampant misuse of Counterclaimants' Marks is
11  further amplified by the advertising text WP Engine causes to appear in search results when internet
12  users search online for websites related to WordPress. In particular, WP Engine bids on search engine
13  keywords so that when an internet user enters a term like "WordPress" into a search engine, a link to
14  WP Engine's website will appear among the most prominent results, and stand out from the other
15  options by using language that connotes a connection to the WordPress Parties. For example, one of
16  WP Engine's title links reads: "WP Engine: Most Trusted WordPress® Platform 2025." This title link,
17  placed directly below the website name in Google search results and bearing the ® symbol (with no
18  disclaimer) gives the false impression that WP Engine owns the registered WordPress trademark or is
19  officially sanctioned to use it as a source identifier. When users search for WordPress, they see WP
20  Engine displaying the WordPress Mark with the registered trademark symbol and believe that by
21  clicking on WP Engine's website, they will be taken to the website of the owner of the trademark.
22  Below is a true and accurate image of the way that WP Engine chose to display the title link to its
23  website in Google search results from on or about January 2025 through July 2025:



**WP Engine**
https://wpengine.com  ⋮

## WP Engine: Most Trusted WordPress® Platform 2025

WP Engine products ... Unmatched performance, automated updates, and enterprise-grade security to
ensure your site thrives. ... Our next-gen platform that enables ...

28    132. WP Engine used a similar version of the title link, without displaying the ® symbol after

the phrase "WordPress" from on or about May 2023 through January 2025, still indicating that WP Engine was a platform sponsored, endorsed, or sanctioned by WordPress.

133. It was not until approximately July 2025 that WP Engine changed its website title link to its current iteration, which reads, "Trusted Website Hosting Platform." Below is a true and accurate image of the way that WP Engine has chosen to display the title link to its website in Google search results from July 15, 2025 through the present day:



WP Engine
https://wpengine.com ⋮

## Trusted Website Hosting Platform | WP Engine®

WP Engine® is a leading website hosting platform, trusted by over 1.5M websites. Learn more about our 24/7 support and security solutions.

134. On information and belief, WP Engine bids aggressively on WordPress-related keywords so that it appears as a top result when internet users search for WordPress software and hosting services, even above the authorized sources affiliated with the WordPress Parties. Below is a true and accurate image of a Google search for the term "wordpress hosting" as of September 18, 2025, with WP Engine appearing as the top sponsored search result, even above WordPress.com:

Gibson, Dunn & Crutcher LLP



135. On information and belief, WP Engine similarly aggressively bids on WooCommerce-related keywords, which increases the likelihood that a consumer will associate WP Engine with the WordPress Parties and believe them to be the same or affiliated entities. Below is a true and accurate image of a Google search for the term "woocommerce" as of October 16, 2025, with WP Engine appearing as the top sponsored search result:

## VI.    WP ENGINE'S MISUSE OF COUNTERCLAIMANTS' MARKS CONFUSES CUSTOMERS, DILUTES THE WORDPRESS AND WOOCOMMERCE BRANDS, AND HARMS COUNTERCLAIMANTS' LONG-CULTIVATED GOODWILL

136. The U.S. Court of Appeals for the Ninth Circuit has developed a series of factors that courts consider when evaluating the question of whether a company is likely to cause consumer confusion in violation of the Lanham Act. The list of factors, taken from the case *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (1979), are referred to as the "*Sleekcraft* factors." In cases where a company is allowed to make "nominative fair use" of another company's trademarks to accurately explain their own services, the courts of this Circuit developed an additional test in the case *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992). The nominative fair use factors are referred to as the "*New Kids* factors." In this case, the *Sleekcraft* factors and the *New Kids* factors support the conclusion that WP Engine has gone beyond the bounds of legitimate nominative fair use and is likely to cause consumer confusion in violation of the Lanham Act.

### A.    THE *SLEEKCRAFT* FACTORS COMPEL THE CONCLUSION THAT CONFUSION IS LIKELY

137. *Strength of the Mark.* Consumers associate the WordPress and WooCommerce Marks with the WordPress Parties.

138. The WordPress and WooCommerce Marks are inherently distinctive and have achieved extraordinary commercial strength through continuous use since 2003 and 2008, respectively. The WordPress Marks have become synonymous with open-source content management.

139. The WordPress Marks are not only famous within the technology and web development communities but have also entered the general public consciousness due to widespread media coverage, third-party integrations, and extensive consumer reach.

140. Counterclaimants have invested substantial resources in maintaining the distinctiveness and goodwill associated with the WordPress Marks and the WooCommerce Marks.

141. *Proximity of the Goods.* WP Engine provides web hosting, maintenance, and performance optimization services for websites built on the WordPress and WooCommerce platforms.

142. These services are directly related to the core offerings of the WordPress Parties and are marketed to the same customer base, including developers, businesses, and content creators seeking to build or manage WordPress websites.

143. The goods and services offered by WP Engine are so closely aligned with those provided or facilitated by the WordPress Parties that consumers are likely to perceive them as originating from the same source.

144. *Similarity of the Marks.* WP Engine uses the terms "WordPress," "Woo," and "WooCommerce" verbatim across its promotional materials, blog posts, advertising, and paid search campaigns.

145. WP Engine makes repeated and highly prominent use of the terms "WordPress," "Woo," and "WooCommerce" in plain text, often appearing even before its own name in the body of its webpages.

146. *Evidence of Actual Confusion.* Actual consumer confusion has occurred and continues to occur as a direct result of WP Engine's infringing and misleading use of the WordPress and WooCommerce Marks. On information and belief, the actual consumer confusion caused by WP Engine's expanding use of Counterclaimants' Marks began and/or became much more pervasive after Silver Lake started to realize that its investment in WP Engine might not be as profitable as hoped and as WP Engine reached for more consumers. Counterclaimants have received numerous inquiries and complaints from users mistakenly believing that WP Engine is the operator of, or is affiliated with, sponsored by, or endorsed by the WordPress Parties.

147. For example, as recently as July 16, 2025, a WP Engine customer reached out to the WordPress.com security team by email, expressing confusion about whether WP Engine is a "separate entity" from WordPress.com. Below is a true and accurate image of the email, sent on or about July 17, 2025, that has been highlighted and with the customer's identifying information obscured to protect their privacy.



148. On March 18, 2025, a potential customer reached out to Automattic and WooCommerce employees about a quote they had been provided by Counterclaimants. The customer, a representative for a Fortune 500 company, asked how the quote they had been given was "different from the pricing you have on **your website** which appears to be much lower" (emphasis added). The customer went on to say, "I pasted a screenshot below." However, instead of attaching a screenshot from one of the WordPress Parties' websites, the potential customer attached a screenshot from WP Engine's website, not knowing that there was a difference. Below are true and accurate images from the email, sent on or about March 18, 2025, that have been highlighted and with the customer's identifying information obscured to protect their privacy:

From: [redacted]
Date: Tue, Mar 18, 2025 at 3:13 AM
Subject: RE: Automattic - WooCommerce + VIP Pricing Follow-Up
To: Ken Lam <ken.lam@woocommerce.com>, [redacted], [redacted]
Cc: Ben Probert <ben.probert@automattic.com>, Shobha Venkatraman <shobha.venkatraman@automattic.com>

Hi Ken,

Thanks for sending the updated quote and a follow up. We reviewed the pricing and it looks like we are moving in the right direction. We do have a few questions:

1. License Model: Can you clarify the license model and what is included (number of visitors or products etc..)? Also, how is this different from the pricing you have on your website which appears to be much lower. I pasted a screenshot below.



| | Startup | Professional | Growth | Scale | Custom |
|---|---|---|---|---|---|
| | for small websites & blogs | for building your brand | for a growing business | for higher capacity sites | for optimized performance |
| | Starting at **$30**/mo | Starting at **$63**/mo | Starting at **$117**/mo | Starting at **$292**/mo | Starting at **$500**/mo |
| | Buy Now | Buy Now | Buy Now | Buy Now | Get in Touch |

| eCommerce Platform | | | | | |
|---|---|---|---|---|---|
| Online stores/sites included | 1 | 3 | 10 | 30 | Contact Sales |
| Visits | 25,000 | 75,000 | 100,000 | 400,000 | Contact Sales |
| Local storage | 10 GB | 15 GB | 20 GB | 50 GB | Contact Sales |
| Bandwidth | 75 GB | 150 GB | 240 GB | 550 GB | Contact Sales |

149. This is not an isolated example, but rather a pattern of customer confusion that stems from WP Engine's deceptive and intentionally confusing use of the WordPress and WooCommerce marks.

150. Another example occurred when one of WP Engine's customers experienced an outage on or about June 15, 2022. The frustrated customer initially reached out to WP Engine support to resolve the issue. Below is a true and accurate image from the customer's message to WP Engine's support team on or about June 21, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender.

Gibson, Dunn & Crutcher LLP

Jun 21, 2022, 2:15 AM CDT

Hello Jason,

We are reaching out to you from the Engineering team at ▆▆▆▆
We had an outage caused by WPEngine on 15th June (refer to the email chain below to get context) and again led to the same thing today due to Cloudflare global outage.

We tried emailing and then calling Wilson multiple times but we are not receiving any response. We need IMMEDIATE on-call support at this time to stay on top of the situation.

Later post this, we would like to discuss improvement in the support process too.

We would appreciate it if you can urgently assign someone to support us.

Best,

▆▆▆▆

151. After nearly a week of struggling to get WP Engine to solve the outage, the customer added three Automattic employees, including Matt Mullenweg, to the support ticket thread in order to get "urgent support" because the customer was "not getting any response" from WP Engine. Below is a true and accurate image of the message that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender where, on or about June 21, 2022, the WP Engine customer added Automattic employees to the thread.

Gibson, Dunn &
Crutcher LLP

Jun 21, 2022, 2:34 AM CDT

[Adding Matt, Dave Martin, and Nick Gernert from Automattic for urgent support]

We are not getting any response.
We need urgent on-call support and one of the very first task is to 'not blacklist' following IP which belongs to us:

152. In response, Mullenweg had to clarify with the WP Engine customer that Automattic and WP Engine are different companies and that Automattic had no way to access the WP Engine customer's account or help in any way. Below is a true and accurate image of Mullenweg's response to the WP Engine customer on or about June 21, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender.

&                folks — if you could drop the Automattic folks from the thread from here on out, we're a totally different company from WP Engine, and have no access to your account or any way to help. Our hosting is at WPVIP.com and WP.com.

--
Matt Mullenweg
https://ma.tt | https://wordpress.org | https://automattic.com

153. In addition to these examples of customers reaching out directly to Counterclaimants' employees via email, customer support teams affiliated with the WordPress Parties have received a substantial number of inquiries from users seeking assistance with issues stemming from their use of WP Engine's products and services. These users have incorrectly contacted WordPress.com customer support under the mistaken belief that the WordPress Parties are responsible for, affiliated with, or provide support for WP Engine.

154. These misdirected customer-support requests constitute direct, real-world evidence of confusion in the minds of actual consumers. The only plausible explanation for these inquiries is that the consumers who submitted them believe that WP Engine is affiliated with or operates under the

umbrella of the WordPress Parties. Representative examples of these misdirected support tickets are reproduced below.

155. Below is a true and accurate image of one such message received by WordPress.com's ZenDesk system on or about February 23, 2023, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender. The consumer contacted WordPress.com identifying "a platform that looks identical to Word[P]ress.com" and expressed confusion when "WPEngine made [them] create new credentials." The customer then asked: "Are WPEngine and Wordpress.com two separate companies?"

**Zendesk Product Insights Description:**
Site I need help with: https://▮▮▮▮▮▮▮.wpcomstaging.com Plan: 1032 - WordPress Pro (Annual subscription)   Hi,  I've been taking on more and more website design and just ran into a platform that looks identical to Wordpress.com.  However, the client's old web designer used a platform called WPEngine.  I was hoping I could switch between sites, but WPEngine made me create new credentials.  Are WPEngine and Wordpress.com two separate companies?

156. In another instance, the consumer reached out to WordPress.com customer support stating that the consumer had "moved to" WP Engine and then asked WordPress.com customer support "[i]s that you or someone else?" Below is a true and accurate image of the message, received by WordPress.com's Zendesk system on or about July 11, 2024. These are only two of many illustrations of incidents in which consumers have expressed actual confusion as to whether WP Engine is one of the WordPress Parties.

**Zendesk Product Insights Description:**
Hi!  Are you actually hosting the website? Because I moved to wpengine. Is that you or someone else?  Thanks!                              On Thu, Jul 11, 2024 at 5:43?AM WordPress.com <help@wordpress.com> wrote:  Renew your WordPress.com Explorer plan

157. Other consumers have reached out to WordPress.com support because they are paying for services from both WordPress.com and WP Engine, not knowing that the services are provided by two different companies.

158. For example, below is a true and accurate image of one such message received by WordPress.com's ZenDesk system on or about April 4, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender.

**Zendesk Product Insights Description:**
How can you help: somethingBroken How I feel: upset Site I need help with: https://[redacted].wpcomstaging.com Plan: 1018 - Business (Monthly subscription)   Hello, i wanted to reach out because iv been paying for wordpress buisness plan for a while now. Around the same time did i start paying for wpengine not knowing they were mutually exclusive. I?m contact because i would like a refund on my monthly purchased with the buisness plan. My site i been editing and use is [redacted].com, please get back to me when you can. Thank you

159. In some instances, consumers have reached out to WordPress.com support thinking that the WordPress Parties have the authority and ability to resolve billing issues on behalf of WP Engine. This assumption illustrates that consumers are confused about whether WP Engine is one of the WordPress Parties.

160. One such message was received by Automattic's ZenDesk system on or about July 16, 2025 when a WP Engine customer reached out to Automattic to dispute a $300 charge, and provided a screenshot of the bank charge. Upon reviewing the charge, the Automattic support representative informed the customer that WP Engine and Automattic are different companies. Below are true and accurate images taken from the messages sent and received through Automattic's ZenDesk system on or about July 16, 2025 that have been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender.

███████      July 16, 2025 at 10:29

Hi Support,

My name is ███████ and I'm reaching out to dispute a $300 charge to my credit card. I've never signed up for your service. Please remove my credit card and my information from your database and refund my credit card. Please let me know what additional information you need from me to cancel this transaction.

Thanks,

███████

███████      July 16, 2025 at 15:42

Hi ██████,

Thank you for sharing that screen shot. I see this transaction was made to WP Engine, a different company. You'll need to reach out to WP Engine directly for a refund as we are not affiliated with that company.

Best regards,

███████

Payments Operations | Automattic

161. Below is a true and accurate image taken from another such message received by WordPress.com's ZenDesk system on or about August 18, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender—where a consumer is asking WordPress.com to resolve a WP Engine billing dispute.

**Zendesk Product Insights Description:**
Name: ███████     Date:2021-08-30 CC Last 4: ████     Amount:     330
Message: WP engine a charged on our credit card for USD 330 under ███████ card ending ██████ on 30 August 2021, would like to know what is this for? possible to get email account to cancel subscription or get payment cancel Thanks     Mystery transaction search:     https://wordpress.com/wp-admin/network/wpcom-paid-upgrades.php?action=mystery_trans_search&date=2021-08-30&name= ███████ PA CC last 4 search:

162. Below is a true and accurate image taken from yet another such message received by WordPress.com's ZenDesk system on or about May 24, 2023, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender—where a consumer is asking WordPress.com to resolve a WP Engine billing dispute.

Gibson, Dunn & Crutcher LLP

**Zendesk Product Insights Description:**
Name: ███████ Date: 2023-04-05 CC Last 4: ███
Amount: 319.8 Transaction ID: ██████ Message: <mark>Needing help on a billing charge that I do not recognize from "WP engine", PLEASE.</mark> Store Admin: https://wordpress.com/wp-admin/network/wpcom-paid-upgrades.php?action=txn_id_search&paypal_txn_id= ██████ Mystery transaction search: https://wordpress.com/wp-admin/network/wpcom-paid-upgrades.php?action=mystery_trans_search&date=2023-04-05&name= ██████ PA CC last 4 search: ██████████████

163. In other instances, consumers have contacted Automattic for help cancelling their subscriptions to WP Engine, operating under the belief that the WordPress Parties have the ability to alter, modify, or cancel subscriptions to WP Engine. Again, this belief demonstrates that consumers are confused about whether WP Engine is one of the WordPress Parties.

164. Below is a true and accurate image taken from one such message received by Automattic's ZenDesk system on or about June 27, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender where the consumer reports that they have attempted to call the support number for Automattic, and have reached out in order to cancel their subscription to "WordPress [sic] Engine."

**Zendesk Product Insights Description:**
Good Afternoon, <mark>When calling your phone number 1-877-273-3049</mark> the message only gave me the option for either live chat or email. <mark>I am contacting you as I need to cancel the</mark> ██ <mark>subscription to WordPress Engine.</mark> See the below and let me know what additional information you may need in order to cancel. We want this to be cancelled prior to July 15th. Please contact either ██████ (copied) or myself with any questions. Account ID: ██████ Hosting ID: ██████ Growth Plan Base price: $115.00 Billing frequency: Monthly Thank you! ██████

165. In still other instances, consumers have reached out to WordPress.com support for help getting in touch with WP Engine's tech support. Not only does this show that consumers believe that the WordPress Parties have a special relationship with WP Engine, the frustration on the part of the

Gibson, Dunn & Crutcher LLP

consumers demonstrates how WP Engine's scheme has blurred and tarnished the WordPress Parties' reputation because consumers attribute WP Engine's poor customer support to the WordPress Parties.

166. Below is a true and accurate image taken from one such message received by WordPress.com's ZenDesk system on or about February 13, 2022, that has been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the sender.

**Zendesk Product Insights Description:**
How can you help: gettingStarted How I feel: unspecified Site I need help with: https://███████.wordpress.com Plan: 1 - Free (Annual subscription)  I am hosting at ██████.wpengine.com and I cannot login. When I contact Tech Support they send an automated message telling me to login for support. This has gone on for three weeks now. How do I contact wpengine.com Tech Support? I'm paying for a site ██████.com that IS NOT WORKING and I'm not okay with that. Thanks for your help.

167. In another recent example, a WP Engine customer reached out to Automattic for assistance after WP Engine did not respond to their repeated requests for help. The customer received a legal notice concerning their website and repeatedly contacted WP Engine to discuss the letter but did not receive a response. The customer then contacted Automattic, which informed the customer that it was unable to provide direct assistance because Automattic does not provide hosting for their website. Below are true and accurate excerpts from the customer's communications with WP Engine on or about May 22, 2025, which have been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the customer.

**From:** ███████
**Sent:** Thursday, May 22, 2025 8:48 AM
**To:** ███████@wpengine.com
**Subject:** Received Notice of Infringement of Torus Ventures LLC Patents
**Importance:** High

Good morning

We use WPEngine for our website: www ████████.com

We received an 8 page legal notice from ██████ Law LLC in Chicago.

I am happy to forward the letter to you if that would be helpful.

Can you please call me to discuss what we need to do as it pertains to this notice.

I appreciate your help.

From:
Sent: Thursday, May 22, 2025 3:30 PM
To:                @wpengine.com
Subject: RE: Received Notice of Infringement of Torus Ventures LLC Patents
Importance: High

Good afternoon
I wanted to reach back out to make sure you received my email.

If you are not the correct person, could you please direct me to the person I should contact?

Thank you

168. After WP Engine failed to respond for 5 days, the customer reached out to Automattic for support. Below are true and accurate images of the customer's message to Automattic, and Automattic's response from on or about May 27, 2025, which have been highlighted to indicate relevant language and with certain details redacted to protect the privacy of the customer.

| Submitted | | Received via | Requester | | | | |
|---|---|---|---|---|---|---|---|
| May 27, 2025 at 15:19 | | Mail | | < | > | | |
| **Status category** | **Ticket status** | | **Priority** | **Type** | **Group** | | **Assignee** |
| Solved | Solved | | Urgent | - | Terms of Service | | |
| **Plan** | **Category** | **Total time spent (sec)** | | **Time spent last update (sec)** | | | |
| Free | Court Orders | 1973 | | 958 | | | |

May 27, 2025 at 15:19

Good morning
I need help with a notice of infringement document I received.

Can someone please call me to discuss my number is

Thank you

Gibson, Dunn &
Crutcher LLP

[REDACTED] May 27, 2025 at 16:01

Hello,

I need help with a notice of infringement document I received.

Can someone please call me to discuss my number is [REDACTED]

Thanks for contacting us with your concerns.

Please note, however, that  www.[REDACTED].com  is not hosted at WordPress.com. As such, we are unable to provide any direct assistance in this matter.

Thank you,
Automattic Trust & Safety

169. These support messages demonstrate that confusion is neither speculative nor limited to a small subset of users; it is ongoing, widespread, and caused directly by WP Engine's branding practices, which blur the line between its commercial services and the WordPress Parties.

170. The frequency and substance of these inquiries confirm that WP Engine's unauthorized use of the WordPress Marks is not merely likely to confuse consumers—it already has caused confusion.

171. Confusion about whether WP Engine is one of the WordPress Parties is not limited to ZenDesk support tickets. Users have posted on WordPress.com/forums expressing the same confusion, only to be told that WP Engine is not WordPress.com. Below is a true and accurate image from the WordPress.com forums, posted on or about January 28, 2021, with user-specific information redacted to protect the privacy of the users.[44]

---

[44] https://wordpress.com/forums/topic/cannot-log-into-clients-wordpress-site/?_gl=1%2A137lj55%2A_gcl_au%2AMTIzNDY3Nzg4NS4xNzU3NjE0MTY0MTY0MTY0

Gibson, Dunn & Crutcher LLP

🔒 # Cannot log into client's wordpress site



___ · Member · Jan 28, 2021 10:41 am     ↪  🔔  ⋯

A client has wordpress connected to their WPEngine site. WordPress is saying unknown username. Check again or try email address.



___ · Staff · Jan 28, 2021 1:35 pm     ↪  ⋯

Your site is not hosted with WordPress.com. It is a site using the open-source WordPress software (from WordPress.org) but hosted with WPEngine.

172. Additionally, on multiple public forums, including Reddit, Stack Overflow, and even WP Engine's own website, users have referred to WP Engine as "WordPress Engine," "WP Engine by WordPress," or in a manner that otherwise suggests they do not distinguish between the two entities.

173. Below is a true and accurate image of a page from reddit.com/r/WordPress on or about July 11, 2024, where a user refers to WP Engine as "wordpress engine."[45]

---

[45] https://www.reddit.com/r/Wordpress/comments/1e17yx9/wordpress_engine_is_failing_me/

← Ⓦ **r/Wordpress** • 10 mo. ago                                    ···

## wordpress engine is failing me....

Feels like Rackspace 5 years ago. support is dropping off. techs seem unfamiliar with so many things.

What do I love...

1. The multiple backups and recovery system. (I will need to find a similar level of ability)
2. a system that alerts you to known security issues with largely used plug=ins/themes

What do I not love

1. kinda expensive.... with 100 sites I am dropping a monthly bill larger than a nice house note
2. support falling off (I need server geeks that can ferret out serious issues)
   I don't mind paying the bill. Hosting partners are usually my biggest expense (next to my awesome staff)... but I pay for the ability to sleep at night.

174. Below is a true and accurate image of a page from Stack Overflow on or about February 10, 2021, that has been highlighted to indicate relevant language—where a user refers to WP Engine as "Wordpress Engine."[46]





I'm trying to run a wordpress site that is currently being hosted by ==Wordpress Engine== locally. I followed the WP Engine instructions and did a find and replace on the sql file:

https://wpengine.com/support/best-practices-uploading-wp-engine-site-another-environment/

But it's still being redirected to a site-name.wpengine.com url. When I do a search in the folder I don't find that url anywhere and it's been removed from the db by my find and replace. Is there somewhere else that might be cached in the files that might be causing that? Thanks in advance for any help!

175. The confusion about whether WP Engine is actually called "WordPress Engine" is not limited to unaffiliated consumers. WP Engine's own partners believe that WP Engine's true name is WordPress Engine. Below is a true and accurate image from PR Newswire on or about June 7, 2023,

---

[46] https://stackoverflow.com/questions/66144165/trying-to-run-a-wp-engine-site-locally-but-it-keeps-redirecting

Gibson, Dunn &
Crutcher LLP

that has been highlighted to indicate relevant language—where WP Engine's Agency Partner, beMarketing, refers to WP Engine as WordPress Engine.[47]

NEWS PROVIDED BY
**beMarketing →**
Jun 07, 2023, 07:00 ET

SHARE THIS ARTICLE

  

*New Certification Brings Additional Benefits to the Agency and Their Clients*

TROOPER, Pa., June 7, 2023 /PRNewswire/ — **beMarketing** is proud to announce their official certification as a <mark>WordPress Engine</mark> Agency Partner. As the #1 WordPress hosting platform, this certification enables the full-service marketing firm based in the suburbs of Philadelphia the ability to secure priority support, education, and networking opportunities with experts in the space which will lend to better quality website support for businesses who have partnered with beMarketing for their website expertise.

Known for building quality websites for more than a decade, the team at beMarketing is thrilled to have this partnership certification and is proud to be the only local agency with the prestigious credentials. All of the work that goes into website builds, hosting, and maintenance will benefit from this partnership.

"It has been a goal of ours to gain this certification as a <mark>WordPress Engine</mark> Agency Partner so that we can continue to grow our capabilities as web developers and further support our client's website needs," said President and Owner of beMarketing Brandon Rost. "This partnership will certainly enable us to push the boundaries of our work and elevate our offerings."

176. Below is a true and accurate image of a page from Razemedia's website that has been highlighted to indicate relevant language.[48] Razemedia is another of WP Engine's Agency Partners who refers to WP Engine as "WordPress Engine." The site is still active as of today.

---

[47] https://www.prnewswire.com/news-releases/bemarketing-becomes-official-wp-engine-agency-partner-301844246.html

[48] https://razemedia.com/development-services/

# HOSTING & MAINTENANCE

Did you know that more than 50% of internet users will leave your website if it takes longer than 3 seconds to load? Ensuring that your website is running efficiently is key to earning more conversions, as users are expecting a lightning-fast experience from every site they visit. At Raze Media, our development team is committed to keeping your business's website in the fast lane with routine site audits and maintenance. Plus, we've been a WordPress Engine Agency Partner for multiple years running, so no matter what industry your business is in, optimizing your website's performance is our specialty.

**GET A QUOTE**

177. Below is a true and accurate image of a page from MarketersMEDIA that has been highlighted to indicate relevant language—where another of WP Engine's Agency Partners, TinyFrog, announced its acceptance as a WP Engine partner, referring to WP Engine as "WordPress Engine."[49]

---

[49] https://news.marketersmedia.com/tinyfrog-technologies-finalizes-wp-engine-partnership/456184

Gibson, Dunn & Crutcher LLP

# TinyFrog Technologies Finalizes WP Engine Partnership

Share this news:      

*TinyFrog Technologies, a San Diego-based WordPress web design/development and secure hosting agency, announced today that it has been accepted as a* WordPress Engine *(WP Engine) agency partner and preferred consultant.*

December 7, 2018 /MM-prReach/ -- TinyFrog Technologies, a San Diego-based WordPress web design/development and secure hosting agency, announced today that after acing the approval process, it has been accepted as a WordPress Engine (WP Engine) agency partner and preferred consultant.

178. Another of WP Engine's Agency Partners, Wirebox, announced their agency partnership with "WordPress Engine." Below is a true and accurate image of the announcement from Wirebox's website as of today.[50]

wirebox | home | what we do ˅ | our process | our work ˅ | blog | about us ˅

# wp engine agency partner announcement_

Great news! Wirebox have become agency partners with WordPress Engine. This means that we have access to tools and resources to enable us to compete on the digital market, grow and develop as a company, and enable us to work more effectively and innovatively with our clients and partners.

179. It is no wonder that WP Engine's Agency Partners are confused about WP Engine's name. Not only has WP Engine conducted a campaign intentionally designed to mislead the WordPress

---

[50] https://wirebox.co.uk/wp-engine-agency-partner-announcement/

community into thinking that WP Engine is affiliated with, sponsored by, or endorsed by the WordPress Parties, WP Engine has not corrected the misperception. In fact, WP Engine has allowed its Agency partners to refer to WP Engine as WordPress Engine on WP Engine's own website.

180. Below is a true and accurate image of a page from WP Engine's website where, as of today, WP Engine allows Mastroke to refer to WP Engine as WordPress Engine.[51]



---

[51] https://wpengine.com/agency-directory/mastroke/

181. Below is another true and accurate image from WP Engine's website where, as of today, WP Engine allows Axelerant to refer to WP Engine as "WordPress Engine."[52]



182. Because WP Engine cannot keep its name straight, even on its own website, it is unsurprising that confusion about WP Engine's name and whether it is one of the WordPress Parties is widespread.

183. When consumers mistakenly refer to WP Engine as "WordPress Engine," their error reveals more than a simple misstatement of the company's name. Rather, it reflects a deeper confusion about the relationship between WP Engine and the WordPress Parties. The substitution of "WordPress"

---

[52] https://wpengine.com/agency-directory/axelerant-technologies-inc/

Gibson, Dunn &
Crutcher LLP

for "WP" suggests that consumers perceive WP Engine not as a separate, unaffiliated third party, but as a division, product, or official arm of the WordPress Parties themselves. This kind of confusion goes to the heart of trademark law—it indicates not merely an imprecise recollection of a name, but a mistaken belief about source, sponsorship, or affiliation because the very use of the mark signifies the consumer's perceived origin of WP Engine's products and services.

184. Indeed, many consumers believe WP Engine is created by the WordPress Parties. Below is a true and accurate image of the "Mused" website that has been highlighted to indicate relevant language where, as of today, WP Engine is referred to as "WPEngine by WordPress."[53]



185. Below is a true and accurate image from the Page Builder Addons website as of today that has been highlighted to indicate relevant language, referring to WP Engine as "WP Engine by WordPress."[54]

---

[53] https://www.vam.ac.uk/mused/privacy-notice/
[54] https://pagebuilderaddons.com/how-to-speed-up-your-wp-bakery-wordpress-website/

Page Builder **ADDONs** for WPBakery

Web Elements ⌄     Woo Elements ⌄     Library Templates ⌄     Pricing

We can't stress enough how important it is to prudently choose your website hosting server!

Usually, every website is planned out to perform well enough. But at times, the speed slacking is caused by the server on which your website is hosted on the internet.

It is better not to choose a hosting provider that hosts thousands of sites on a single shared server. This immense load makes the servers to slack and not perform. The most endearing web hosting provider for your WP Bakery WordPress website is the WP Engine by WordPress!

The WP Engine has a very user-friendly back-end along with top-notch customer support. Users get 24/7 live staff support. The support specialists are highly cooperative, professional, and knowledgeable in all of the aspects of the WordPress. They are your Number. 1 safety specialists in the time of need!

186. Below is a true and accurate image of the Defi Solutions website, last modified on December 3, 2018 and still live on today, that has been highlighted to indicate relevant language— where WP Engine is referred to as "WP Engine, by WordPress."[55]

---

[55] https://defisolutions.com/privacy-policy/



| | | |
|---|---|---|
| **Google Analytics** | associated with the use of these online products and services.<br>Google Analytics collects cookies and usage data.<br>If you would like to opt-out from your data being used by Google Analytics, please download the opt-out browser add-on for Google Analytics. | http://www.google.com/privacy.html |
| **HubSpot** | We use HubSpot as a marketing automation service provider, including for email marketing and analysis. Analysis can include measuring your interactions with our communications or advertisements. | https://policies.google.com/privacy?hl=en |
| **Salesforce Einstein** | We use Salesforce Einstein for our customer relationship management service provider. This service keeps track of requests and communications that you may make with us. | https://www.salesforce.com/company/privacy/ |
| **Salesforce Pardot** | We use Salesforce Pardot as a marketing automation service provider, including for email marketing and analysis. Analysis can include measuring your interactions with our communications or advertisements. | https://www.pardot.com/legal/ |
| **WP Engine** | We use WP Engine, by WordPress, to host the Site. | https://wpengine.com/legal/privacy/ |

**Third-Party Services and Websites**

defi SOLUTIONS is not responsible for the privacy policies or other practices employed by websites (including social media sites) linked to, or from, our Site nor the information or content contained therein, and we encourage you to read the privacy statements of any linked third party.

**Data Storage and How defi SOLUTIONS Protects Your Information**

187. Below is a true and accurate image of the community forum, Cloudflare, that has been highlighted to indicate relevant language—where, as of June 2023, one user seemed to believe that "WPEngine" was the official name for WordPress.[56]

**ops42**                                                                    Jun 2023

Thanks again for the reply.

Sorry, I should have been more clear. We are hosting on Wordpress (WPEngine I think is the official name), so I don't have actual access to the server which would have made all of this easier (I wish I did). What I meant by I didn't see any redirects there was in WP Admin or WP Engine admin, there aren't any redirect rules that would account for https_www_example_com → http_example_com → https_example_com chain that is happening which is why I'm looking at Cloudflare as it is the only other service in the mix.

188. This level of confusion underscores the severity of WP Engine's trademark misuse. It demonstrates not only a mistaken belief that WP Engine is affiliated with or endorsed by the WordPress Parties, but a complete reversal of perceived authority. Rather than recognizing WP Engine as a third-

---

[56] https://community.cloudflare.com/t/cname-redirecting-www-to-non-www-redirects-to-http-instead-of-https/516917/10

Gibson, Dunn & Crutcher LLP

party service provider built atop the WordPress software, some users now view it as the originator or official steward of WordPress. This inversion—where the infringer is mistaken for the source and the actual trademark holder is displaced—illustrates the most dangerous form of brand dilution and confusion, and confirms that WP Engine's pervasive use of the WordPress marks has fundamentally distorted public understanding of the WordPress Parties.

189. Such instances of actual confusion are indicative of a broader pattern and demonstrate that confusion has already occurred and continues to occur in the marketplace.

190. Counterclaimants expect to identify additional instances of actual consumer confusion during discovery for this litigation. WP Engine, however, has refused outright to search for and produce evidence of actual consumer confusion, despite bringing its own claim for a declaratory judgment of non-infringement and alleging that it "had no intent to confuse the buying public." Dkt. 180 ¶¶ 443-44. On information and belief, WP Engine is refusing to produce these documents because it knows that the evidence will show actual consumer confusion and therefore undermine its claim of non-infringement.

191. *Marketing Channels Used.* Both WP Engine and the WordPress Parties promote their services online via digital channels, including Google Ads, search engine optimization, affiliate marketing, tech blogs, and social media platforms.

192. On information and belief, WP Engine frequently bids on "WordPress," "Woo," "WooCommerce," and other terms incorporating "WordPress," "Woo," and "WooCommerce" on Google Ads and other keyword bidding platforms, ensuring that its ads appear when users search specifically for WordPress or WooCommerce services. When users see WP Engine's page in the search results, the listings prominently display the WordPress and/or WooCommerce Marks and often include the phrase "Most Trusted WordPress® Platform 2025," displaying the registered trademark symbol without any accompanying disclaimer. This presentation creates the misleading impression that the link will direct users to an official WordPress page or to a service endorsed or operated by the WordPress Parties.

193. Defendant's use of similar online channels and search-engine marketing techniques exacerbates the likelihood of confusion among consumers.

194. *Type of Goods and Degree of Care Likely to Be Exercised by the Purchaser.* WP Engine markets its services as a solution for individuals and businesses seeking to build, host, and manage WordPress websites. Web hosting and website setup services are frequently sought by consumers with varying degrees of technical sophistication. While a relatively small subset of advanced users manually configure their hosting environments using the WordPress core software directly from WordPress.org, the vast majority of users lack the technical skills to do so and instead rely on commercial hosting providers to simplify the process.

195. These less technically savvy users are precisely the consumers most likely to be confused by WP Engine's pervasive use of the WordPress and WooCommerce Marks. They do not understand the distinction between WP Engine and the WordPress Parties. Instead, they are typically seeking a fully integrated, ready-to-use service that handles installation, hosting, maintenance, and support without requiring interaction with server-side code or complex configurations.

196. On information and belief, these users are not engaging in a careful comparative analysis of vendors. As a result, they are far less likely to exercise a high degree of care in determining whether WP Engine is affiliated with or endorsed by the WordPress Parties.

197. WP Engine's branding strategy capitalizes on this information gap, increasing the likelihood of confusion among precisely the class of consumers most in need of clarity.

198. Moreover, the relatively low cost and commoditized nature of basic web hosting services makes impulse or convenience-based purchasing more likely.

199. Additionally, even sophisticated consumers, including Fortune 500 companies, are misled by WP Engine's conduct. In the web hosting and site-building industry, experienced purchasers frequently rely on industry shorthand, branding cues, and marketplace context to make purchasing decisions efficiently. By repeatedly associating itself with the WordPress name, WP Engine intentionally exploits these decision-making shortcuts. As a result, even well-informed consumers reasonably believe that WP Engine is officially affiliated with, endorsed by, or is one of the WordPress Parties.

200. *Defendant's Intent in Selecting the Mark.* On information and belief, WP Engine's marketing and business model are deliberately built around leveraging the WordPress and WooCommerce Marks to attract customers.

201. Defendant has repeatedly used "WordPress," "Woo," and "WooCommerce" in its domain metadata, alt tags, headlines, and press releases with the clear intent to capitalize on the WordPress Parties' goodwill and reputation.

202. WP Engine is aware of the WordPress Foundation's trademark policies, including its guideline prohibiting use of the "WordPress" mark in product, service, or domain names, yet continues to flout those rules to maximize SEO performance and user engagement.

203. WP Engine is also aware of the WordPress Foundation's trademark policy that, from its inception, has listed as an example of impermissible use a company calling its business "The WordPress Consulting Company." Its awareness of this part of the trademark policy notwithstanding, WP Engine has at various times called itself "Your WordPress Digital Experience Platform," "The WordPress Digital Experience Platform," and "THE WordPress Partner of Choice." Indeed, to this day WP Engine markets itself as "the WordPress Technology Company."[57]

204. *Likelihood of Expansion of the Product Lines.* Automattic and WooCommerce continue to develop and support WordPress-related products and services, including managed hosting, performance tools, and educational resources.

205. The WordPress Parties and WP Engine are already operating in overlapping commercial spheres, and there exists a strong likelihood of further convergence.

206. The proximity of current offerings and the potential for further expansion by either party heightens the risk of future confusion, making judicial intervention necessary.

---

[57] https://wpengine.com/resources/rise-a-new-digital-paradigm-has-begun/

Gibson, Dunn & Crutcher LLP

### B.     WP ENGINE'S USE OF COUNTERCLAIMANTS' MARKS GOES FAR BEYOND WHAT IS PERMISSIBLE UNDER THE *NEW KIDS* FACTORS

207. While the terms "WordPress," "Woo," and "WooCommerce" may, in certain contexts, be necessary to describe compatibility or support services, WP Engine goes far beyond any necessary identification.

208. WP Engine does not merely use the WordPress name to identify a compatible product or explain interoperability; it instead appropriates the WordPress mark as a central pillar of its brand identity, using it in a way that positions WP Engine as the commercial embodiment, gatekeeper, and definitive authority on the WordPress platform. This is not nominative fair use, it is a deliberate and sustained attempt to co-opt the mark itself as a source identifier for WP Engine's paid services, in direct conflict with the mark's origin and ownership.

209. *WP Engine Does Not Need to Describe Itself as a WordPress or WooCommerce Company*. Contrary to WP Engine's assertions, it does not need to use the WordPress or WooCommerce Marks to identify the software it supports because the nature, function, and compatibility of its services can be conveyed accurately and sufficiently through descriptive and generic language. WP Engine could, for example, describe its services as "open-source CMS hosting," "hosting services compatible with the most popular open-source publishing platform," or "ecommerce hosting." Indeed, WP Engine has already demonstrated that these generic alternatives work by adopting several of them in the days before WP Engine initiated this litigation as a conscious strategy to improve its litigation position.

210. *Use of the Mark Exceeds What Is Reasonably Necessary*. Even in instances where WP Engine does need to disclose that it services WordPress or WooCommerce software, there is no real question that it has used the WordPress and WooCommerce Marks more than is necessary for that purpose. WP Engine's repeated uses of the WordPress and WooCommerce Marks appear designed to increase the likelihood that consumers will see it as a WordPress entity. Furthermore, WP Engine does not need to make such prominent use of the WordPress and WooCommerce Marks or use promotional slogans such as "Your WordPress Digital Experience Platform," "The WordPress Digital Experience Platform," "THE WordPress Partner of Choice," or "The WordPress Technology Company" in order to identify the software its platform uses. It could accurately describe its services using neutral,

descriptive terms such as "hosting for websites built with WordPress" or "managed hosting compatible with WordPress." These types of statements would be sufficient to inform users of the technologies WP Engine uses without implying endorsement, affiliation, or official status. The decision to embed the WordPress mark within slogan-style marketing phrases—particularly those that suggest exclusivity or leadership—goes well beyond what is required to identify compatibility with the WordPress software and constitutes promotional use of the mark.

211. WP Engine's overuse of the WordPress mark is even more striking when compared with its competitors. Below are true and accurate charts showing the dramatic increase in WP Engine's use of the WordPress mark compared to its competitors that also offer hosting for WordPress. The charts were created by parsing the HTML code from each company's website. "Visible Count" refers to an instance of use of the WordPress Mark that a user could reasonably see or interact with on a webpage. "Non-Visible Count" refers to an instance of use of the WordPress Mark that a user could not reasonably see or interact with but that was part of the company's Search Engine Optimization strategy, including code scripts, stylesheets, metadata, fallback content for disabled JavaScript, embedded frames, HTML templates, and linked resources.





Gibson, Dunn & Crutcher LLP



212. The charts demonstrate that WP Engine's use of the WordPress mark far exceeds that of comparable competitors. While competitors are able to accurately identify themselves as providers of hosting for WordPress with minimal use of the mark, WP Engine has built its marketing, web presence, and product descriptions around the mark to a degree that is disproportionate and unnecessary for mere referential use. This pattern indicates not a fair or nominative use under the *New Kids* factors, but a deliberate effort to trade on the goodwill and recognition of the WordPress parties.

213. The increased number of appearances of the WordPress Marks on WP Engine's website is particularly likely to cause confusion in the internet context. On information and belief, internet search engines factor in the number of times a term appears in a website's text in assessing the "relevance" of a website to the terms a user enters into the search engine when looking for websites. WP Engine's decision to increase the number of times the WordPress Marks appear on WP Engine's website appears to be a conscious "search engine optimization" strategy to ensure that when internet users look for companies that offer services related to WordPress, they will be exposed to confusingly written and formatted links that take them to WP Engine's sites rather than WordPress.org or WordPress.com.

214. WP Engine's invisible uses were strategically deployed to influence search engine indexing and ad targeting, all while simultaneously increasing visible uses and avoiding user-facing disclaimers that would clarify the lack of affiliation. This sharp increase, paired with WP Engine's prior ability to describe and sell its product successfully without these high-volume uses, underscores that the present branding goes far beyond what is reasonably necessary for nominative fair use.

215. Even if WP Engine reduced its use of the WordPress and WooCommerce Marks in early 2025 in order to mitigate the most overtly infringing uses of the WordPress and WooCommerce Marks

and present a more defensible posture in court as WP Engine litigates this action, such post hoc revisions do not erase WP Engine's attempt to misappropriate the brand equity of the WordPress Marks through increasingly misleading trademark usage, nor do they cure the confusion sown among consumers during WP Engine's period of misuse.

216. *The Use Implies Sponsorship or Endorsement.* WP Engine's very name contributes to consumer confusion by implicitly suggesting a foundational relationship to WordPress. The term "WP" is widely understood as shorthand for "WordPress," while the word "Engine" is a term of art in software development often used to describe the core component that powers a platform. Together with WP Engine's overuse—and overly prominent use—of the WordPress Marks, the name "WP Engine" falsely signals to consumers that the company provides the underlying technology or official infrastructure for WordPress websites—something akin to a proprietary or native extension of WordPress itself.

217. While the WordPress Foundation's trademark policy permits the use of the "WP" abbreviation in branding, entities that incorporate "WP" in conjunction with software terms like "Engine" should exercise heightened caution to avoid creating the impression of endorsement, sponsorship, or official affiliation. Rather than distancing itself from this presumption, WP Engine exacerbates the issue through pervasive and aggressive uses of the WordPress and WooCommerce Marks in its marketing, search engine advertising, and product naming, none of which are necessary to accurately reference the open-source software that its platform uses.

218. For example, WP Engine advertises WordPress as "[t]he #1 content management system (CMS) in the world," and, leaning into the false association implicit in its own name, attempts to pass WordPress off as WP Engine's own platform. Below is a true and accurate image of WP Engine's website on or about September 9, 2024, where, without any disclaimer explaining that it is not one of the WordPress parties, WP Engine describes the WordPress CMS and includes a prominent blue button that says "Our Platform."[58]

---

[58] https://web.archive.org/web/20240909024135/https://wpengine.com/content-management-system/



WORDPRESS CMS

# The #1 content management system (CMS) in the world

WordPress gives you the ability to create any kind of website you want. It's open source and easy to use—no wonder it's the world's most popular CMS! Unlock your creativity.

**Our Platform**    **Let's Chat**

219. Again, WP Engine regularly refers to itself, across both marketing and investor-facing materials, as "The WordPress Technology Company," "THE WordPress Partner of Choice," and "The WordPress Digital Experience Platform." These phrases convey more than mere compatibility—they create the explicit impression that WP Engine is uniquely associated with, endorsed by, or appointed by the WordPress Parties. The definite article "THE," in particular, implies exclusivity, official designation, or partnership status, none of which WP Engine possesses.

220. This false sense of affiliation is compounded by WP Engine's rebranding of its service tiers. From approximately 2017 to 2021, WP Engine's subscription plans were labeled using neutral and generic terms such as "Personal," "Professional," and "Business." In or around 2024, these plans were renamed to "Essential WordPress," "Core WordPress," and "Enterprise WordPress," respectively, along with advertising "WooCommerce Hosting"—until WP Engine dropped the terms WordPress and WooCommerce from the plan names in preparation for filing its lawsuit asking for a declaratory judgment of non-infringement.

Gibson, Dunn & Crutcher LLP

221. The term "Core WordPress" is particularly misleading because "Core" is a well-established term within the WordPress ecosystem that refers specifically to the foundational, open-source software package available for free at WordPress.org. By adopting "Core WordPress" as the name of one of its paid subscription tiers, WP Engine blurs the distinction between its commercial services and the open-source software itself, creating a significant risk that consumers will misinterpret WP Engine's offering as the official version of WordPress.

222. These labels overall falsely suggest that WP Engine's offerings are not only authorized by but are integral components of the WordPress platform, potentially causing consumers to believe they are purchasing products or services directly from the WordPress Parties. Given that WP Engine exclusively offers WordPress-related services, the inclusion of "WordPress" in each plan name is unnecessary and serves no purpose other than to bolster the false impression of affiliation.

223. WP Engine also intentionally purchases sponsored ad placements on search engines using the WordPress and WooCommerce Marks as keyword triggers. As a result, when users search for "WordPress hosting," "WordPress website," or even just "WordPress" or "WooCommerce," WP Engine's advertisements often appear at the top of search results prominently displaying the WordPress or WooCommerce Marks, without clearly indicating that WP Engine is a third-party, unaffiliated service provider. The ad text frequently mirrors the language and branding used by WordPress.org, compounding the confusion. These ads direct consumers to landing pages that reinforce the impression of official affiliation, thereby misleading users at the most critical point of initial contact.

C.    **WP ENGINE'S USE OF COUNTERCLAIMANTS' MARKS DILUTES, BLURS, AND TARNISHES THE MARKS**

224. WP Engine uses the WordPress and WooCommerce Marks in commerce for the sole purpose of advertising and selling its commercial website hosting services. These uses include visible uses on its homepage and landing pages, and on information and belief, in paid search advertisements, investor communications, and customer service materials. The WordPress Marks also have appeared prominently in WP Engine's plan names in a way specifically intended to drive commercial traffic and sales.

Gibson, Dunn &
Crutcher LLP

225. The WordPress Marks were famous long before WP Engine began using them in the increasingly confusing manners described herein.

226. WP Engine's use of the WordPress and WooCommerce marks creates a false equivalence between WP Engine and the WordPress Parties and blurs the distinctiveness of the WordPress Marks by eroding their ability to identify a single source. Instead of associating the WordPress Marks with the WordPress Parties, consumers increasingly encounter them in connection with WP Engine's separate, for-profit services. As a result, the public's perception of the WordPress Marks as uniquely identifying goods and services offered by the WordPress Parties is diminished. WP Engine's pervasive branding positions it as "THE WordPress Technology Company" and "THE WordPress Partner of Choice," reinforcing the false notion that the WordPress Marks denote a general class of service providers rather than a specific source. These blurred associations impair the core function of the WordPress Marks—to identify and distinguish the goods and services of the WordPress Parties from others in the marketplace.

227. WP Engine's unauthorized use of the WordPress Marks also tarnishes the reputation of the WordPress Parties. Users frequently encounter technical issues, billing problems, or poor customer service while engaging with WP Engine, but erroneously direct their complaints to WordPress.com customer support channels. These interactions illustrate that consumers associate WP Engine's negative performance with WordPress itself, damaging the WordPress Parties' reputation. Additionally, WP Engine has disabled certain key features of WordPress, such as the revisions feature, which allows users to track changes and revert to previous versions of content. This alteration leads to a degraded user experience, as revisions are a critical tool for maintaining the integrity of content management. By offering a subpar, altered version of the WordPress software while continuing to use its name and reputation, WP Engine further tarnishes the WordPress mark.

228. WP Engine cannot reasonably contest the fame of the WordPress Marks and WooCommerce Marks given their extensive use of those marks. If the marks were not famous, WP Engine would have no need to use them as much as they do. WP Engine's continued and escalating use of the WordPress Marks in dominant branding positions, despite knowledge of the limitations set forth in the WordPress Foundation's trademark policy, reflects an intentional strategy to capitalize on

1  the fame of the WordPress Marks and draw consumer attention away from the WordPress Parties. This

2  willfulness supports a finding of dilution and further demonstrates WP Engine's disregard for the

3  integrity and distinctiveness of the WordPress Marks.

4  **VII.    WP ENGINE'S FIVE FOR THE FUTURE PLEDGE**

5  229. In 2014, Mullenweg introduced the "Five for the Future" pledge. The initiative encourages

6  companies that benefit from WordPress to contribute five percent of their resources—whether through

7  employee time, financial support, or infrastructure—to the ongoing development and maintenance of

8  the WordPress open-source project.

9  230. The initiative is designed to ensure the sustainability, growth, and stability of the

10  WordPress ecosystem. Contributions made through "Five for the Future" support critical areas of the

11  project, including core development, security, accessibility, documentation, translation, and

12  community outreach. As Mullenweg explained: "It's a big commitment, but I can't think of a better

13  long-term investment in the health of WordPress overall. **I think it will look incredibly modest in**

14  **hindsight**. This ratio is probably the bare minimum for a sustainable ecosystem, avoiding the tragedy

15  of the commons. I think the 5% rule is one that all open-source projects and companies should follow,

16  at least if they want to be vibrant a decade from now."[59]

17  231.    WP Engine appeared to recognize the importance of giving back to the open-source

18  ecosystem its business used. On or around January 2015, WP Engine published a webpage expressing

19  the importance of open-source software and WordPress to WP Engine's business and stating that it

20  would "contribute to a number of open source projects like WordPress Core." Below is a true and

21

22

23

24

25

26

27

---

28  [59] https://ma.tt/2014/09/five-for-the-future/ (internal hyperlink omitted; emphasis in original).

accurate image of the WP Engine website on or about January 14, 2015:[60]

232. On information and belief, this page remained live through around January 9, 2019.[61] Later that year, however, the page was taken down and is no longer available online.[62]

## Giving Back to Open Source

Open Source has shaped who WP Engine is and the larger internet is greatly affected by it. WordPress also now drives 22.4% of top 10 million sites on the internet.

One of the values at WP Engine that we hold dear is "Aspiring to lead. Committed to give back." In the spirit of this we will contribute to a number of open source projects like WordPress Core, NGINX, and HHVM.

Our first effort in this is to hire two full time contributors to WordPress Core. So please apply and join us!

wpengine.com/careers/

233. Over one year later, WP Engine resumed its statements concerning contributing to WordPress. On August 25, 2020, WP Engine published a page on its website stating: "Today, we're excited to announce that in acknowledgment of our continued commitment to WordPress, WP Engine has submitted our Five for the Future pledge, which is showcased on WordPress.org. The pledge, which is aimed at maintaining a 'golden ratio' of WordPress contributors to users, proposes that organizations contribute five percent of their resources to WordPress."[63]

234. The post remains live to this day. On information and belief, it has not been updated significantly since it was first published. The post appears among the top unsponsored results in Google and Bing searches for "WP Engine WordPress pledge" and "WP Engine Five for the Future." The

---

[60] https://web.archive.org/web/20150114214238/http://wpengine-labs.com/ (click "WordPress Core Development")

[61] https://web.archive.org/web/20190109162848/https://wpengine-labs.com/

[62] *See* https://web.archive.org/web/20190915113909/https://wpengine.com/technology/

[63] https://wpengine.com/blog/wp-engine-pledges-five-for-the-future/

Gibson, Dunn & Crutcher LLP

audience for WP Engine's statements includes visitors to WP Engine's website and actual and potential consumers.

235. However, WP Engine has failed to meaningfully honor this pledge in substance. The company has not contributed five percent of its resources—or anything close to it—to the core development or stewardship of the WordPress open-source project.

236. WordPress.org maintains detailed records of each company's pledged contributions. The records show that WP Engine's contributions began low and have significantly declined since its announcement, even as its revenue from the WordPress community has doubled, even tripled.

237. On October 28, 2020, WP Engine's pledge was to "sponsor[] 26 contributors for a total of 97 hours per week."[64]

238. On May 31, 2021, WP Engine's pledge was to "sponsor[] 27 contributors for a total of 137 hours per week across 11 teams."[65]

239. On December 1, 2022, WP Engine's pledge was to "sponsor[] 24 contributors for a total of 75 hours per week across 13 teams."[66]

240. On May 1, 2023, WP Engine's pledge was to "sponsor[] 23 contributors for a total of 56 hours per week across 13 teams."[67]

241. On June 16, 2024, WP Engine's pledge was to "sponsor[] 18 contributors for a total of 77 hours per week across 11 teams."[68]

---

[64] https://web.archive.org/web/20201028202012/https://wordpress.org/five-for-the-future/pledge/wp-engine/ (internal hyperlink omitted).
[65] https://web.archive.org/web/20210531193158/https://wordpress.org/five-for-the-future/pledge/wp-engine/
[66] https://web.archive.org/web/20221201050003/https://wordpress.org/five-for-the-future/pledge/wp-engine/
[67] https://web.archive.org/web/20230501031443/https://wordpress.org/five-for-the-future/pledge/wp-engine/
[68] https://web.archive.org/web/20240616005853/https://wordpress.org/five-for-the-future/pledge/wp-engine/

242. On February 26, 2025, WP Engine's pledge was to "sponsor[] 10 contributors for a total of 20 hours per week across 5 teams."[69]

243. As of today, WP Engine's pledge is to "sponsor[] 8 contributors for a total of 12 hours per week across 5 teams."[70] By contrast, as of today, WP Engine's competitor GoDaddy sponsors 44 contributors for a total of 252 hours per week across 16 teams.[71]

244. Automattic has historically contributed thousands of hours each week. For instance, on June 16, 2024—when WP Engine was contributing 77 hours—Automattic's contribution was to sponsor 109 contributors for a total of **3,969 hours** per week across 21 teams.[72] Moreover, Automattic's contributions go far beyond code: they also provide essential overhead and logistical support to the broader ecosystem, including coordinating releases, maintaining infrastructure, managing community events, and ensuring the long-term viability and integrity of WordPress.

245. Despite WP Engine's admitted dependence on the WordPress ecosystem, Dkt. 180 ¶ 107, WP Engine's contributions back to WordPress were not commensurate with the value that they received. WP Engine's current pledge is low even by WP Engine's past standards: it represents an 87 percent decline from its pledge in October 2020 and a 91 percent decline from the high point of its pledge in May 2021.

246. More troublingly, on information and belief, WP Engine does not and has not fulfilled its meager public pledge.

---

[69] https://web.archive.org/web/20250226155244/https://wordpress.org/five-for-the-future/pledge/wp-engine/
[70] https://wordpress.org/five-for-the-future/pledge/wp-engine/
[71] https://wordpress.org/five-for-the-future/pledge/godaddy/
[72] https://web.archive.org/web/20240616074247/https://wordpress.org/five-for-the-future/pledge/automattic/. Due to the need to spend significant time and money to defend Automattic from this litigation, as well as an imbalance in how contributions to WordPress are distributed across the ecosystem, Automattic paused its contributions in January 2025. https://automattic.com/2025/01/09/aligning-automattics-sponsored-contributions-to-wordpress/. Automattic announced on May 29, 2025 that it was resuming its contributions to WordPress. https://automattic.com/2025/05/29/returning-to-core/.

247. Although WP Engine currently pledges to sponsor eight contributors for a total of 12 hours per week, on information and belief, WP Engine does not currently contribute 12 hours per week. On information and belief, WP Engine has not fulfilled its stated pledge for some time, if it ever has.

248. On information and belief, WP Engine has instructed its employees not to contribute to Core, the open-source software made available at WordPress.org that powers WordPress websites.

249. WP Engine's behavior is at odds with its marketing materials and public statements, which create the appearance of active and substantial support for the WordPress community.

250. On September 20, 2024, WP Engine published a blog post titled "Highlighting Over a Decade of Innovation and Contribution to the WordPress Community."[73] WP Engine touted contributions of "tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources."[74]

251. WP continued: "The contributions that WP Engine as an organization, and so many of our people make to this wider world of WordPress go past the core software itself and include the investment of significant resources into growing the community of developers, users, and organizations that can use WordPress, creating new and sophisticated use cases. . . . WP Engine's commitment to WordPress and its passionate community is unwavering."[75] The audience for WP Engine's statements includes visitors to WP Engine's website and actual and potential consumers.

252. On information and belief, WP Engine has not contributed tens of millions of dollars to the WordPress community.

253. WP Engine has disproportionately benefited from the WordPress Marks and open-source infrastructure while contributing only minimally—if at all—to its sustainability and evolution.

254. On information and belief, WP Engine has attracted clients by positioning itself as a prominent contributor to the WordPress community. Consumers of WordPress software value contributions to the open-source community and rely on WP Engine's misleading statements concerning its contributions in making purchasing decisions.

---

[73] https://wpengine.com/blog/highlighting-wordpress-innovation-contribution/
[74] *Id.*
[75] *Id.*

255. On information and belief, the intended audience of WP Engine's public-facing webpages discussed above includes actual and potential consumers. On information and belief, WP Engine's statements are intended to influence actual and potential consumers to purchase WP Engine's services instead of the services of its competitors, including Counterclaimant Automattic.

256. Rather than investing in the shared future of WordPress through the Five for the Future initiative, WP Engine has diverted its resources toward commercial expansion and aggressive brand positioning—including the unauthorized use of the WordPress Marks—to further its own business interests.

257. WP Engine's failure to uphold its Five for the Future commitment not only undermines the values of the WordPress community, but also highlights its bad faith in exploitation of the WordPress Marks without reinvesting in the project that underpins its entire business model.

## VIII.   WP ENGINE'S BAD-FAITH NEGOTIATIONS WITH AUTOMATTIC

258. Mullenweg and other representatives from Automattic have long engaged in discussions with WP Engine, including concerning WP Engine's use of the WordPress and WooCommerce Marks.

259. Automattic eventually became concerned that WP Engine's infringement was becoming increasingly aggressive and damaging since Silver Lake acquired a controlling interest in WP Engine.

260. Given Automattic's strong relationships with companies in the WordPress ecosystem, Automattic's first choice was to attempt to find mutually agreeable terms for WP Engine to license its use of the WordPress and WooCommerce Marks and contribute to the WordPress open-source community without the need to resort to litigation.

261. Mullenweg began outreach to Heather Brunner and other WP Engine executives around late 2023 in an effort to resolve the issue amicably and safeguard the integrity of the WordPress Marks.

262. The negotiations between the parties continued throughout 2024. In February 2024, Mullenweg went on sabbatical and other Automattic representatives—including Toni Schneider, former CEO of Automattic—met with WP Engine to discuss trademark issues. Those discussions continued over the next several months, as Automattic proposed trademark licensing and a partnership with WooCommerce to WP Engine.

Gibson, Dunn & Crutcher LLP

263. In meetings in March, Automattic proposed high level terms for a trademark licensing agreement and informed WP Engine that it sought to finalize the deal, including the partnership with WooCommerce, by the third quarter of the fiscal year so that the parties could announce the deal in September.

264. On or around May 30, 2024, Automattic shared a proposed term sheet with WP Engine and stated that it hoped to have an agreement signed by mid-June.

265. The first commercial term on the term sheet proposed a $5,000,000 trademark fee with a 5% annual increase to be paid by WP Engine to Automattic so WP Engine could use WordPress and WooCommerce Marks in its advertising and product names, subject to Automattic's brand guidelines and an approval process. Automattic and WP Engine discussed the term sheet in meetings in June and early July. WP Engine, however, attempted to delay the pace of the discussions and seemed noncommittal.

266. In July, Automattic expressed concerns about the timeline of the negotiations and informed WP Engine that if the parties did not have an executed term sheet by September, Automattic may take enforcement action against WP Engine.

267. Throughout the negotiations, Mullenweg and Automattic consistently endeavored to discuss and propose terms that would protect its intellectual property rights in the WordPress and WooCommerce Marks and encourage WP Engine to give back to the WordPress ecosystem on which its business depends. Automattic also offered terms to establish a partnership with WooCommerce, which would benefit both parties.

268. On or around September 20, 2024, Automattic proposed a new trademark license agreement that would allow WP Engine to use the WordPress and WooCommerce Marks in connection with the marketing and sale of commercial services related to WordPress and WooCommerce, subject to Automattic's brand guidelines. In exchange for the license grant, Automattic asked WP Engine to pay *either* a royalty fee or fulfill its commitment to contribute to the development of the open-source WordPress software. Dkt. 21-13.

269. Although Brunner was aware of and had engaged in extensive discussions and negotiations with Mullenweg and Automattic over a trademark licensing arrangement throughout the prior months,

she—along with Lee Wittlinger, Managing Director at Silver Lake and WP Engine board member—feigned surprise when Mullenweg reiterated in September that Automattic would pursue enforcement if no agreement could be reached. A trademark license was the very first commercial term of the May term sheet, and Automattic made clear as early as July that it would enforce its rights absent a deal. Yet Brunner and Wittlinger falsely implied, both in their texts to Mullenweg and in Brunner's declaration to this Court, that the concept of a trademark license fee was a last-minute surprise—and that by following through on its stated intent to enforce its rights, Automattic and Mullenweg were somehow "threaten[ing]" them and WP Engine, and demanding that they make a "financially consequential decision in a matter of hours." Dkt. 21 at 13.

270. When Brunner and Wittlinger refused to agree to discuss trademark licensing terms further, it became clear to Mullenweg and Automattic that WP Engine had no intention to cease its infringing activity or contribute to the WordPress community.

271. On or around September 23, 2024, Automattic sent a letter to WP Engine concerning its unauthorized use of the WordPress and WooCommerce Marks. Automattic explained that WP Engine was violating its intellectual property rights, reiterated its desire to resolve the infringement amicably though a trademark license agreement, and demanded that WP Engine immediately cease its infringing uses of the WordPress and WooCommerce Marks in the absence of a license agreement. Automattic's letter was consistent with its repeated statements to WP Engine that it sought a deal by September and its warning in July that it would take enforcement action concerning WP Engine's infringing use in the absence of an agreement to license the WordPress and WooCommerce Marks.

272. Eight days after Automattic's letter—and 12 days after Automattic's most recent proposal for trademark licensing terms—WP Engine filed a 61-page Complaint against Automattic and Mullenweg, initiating this action. On information and belief, WP Engine had been preparing to file this lawsuit while the license negotiations were ongoing and had not been engaging in the license negotiations with Automattic and Mullenweg in good faith.

273. On information and belief, WP Engine never intended to license the WordPress and WooCommerce Marks or contribute to the WordPress open-source community.

Gibson, Dunn & Crutcher LLP

274. In the days before filing this lawsuit, WP Engine removed various unauthorized uses of the WordPress and WooCommerce Marks from its website—a tacit acknowledgement of their infringing nature. WP Engine has since reinstated many of its unauthorized uses of the WordPress and WooCommerce Marks.

275. For instance, before the lawsuit was filed, WP Engine's homepage greeted consumers with the phrase "We power the freedom to create on WordPress." Below is a true and accurate image of the WP Engine website on or about September 26, 2024:[76]



276. On or around the date that WP Engine sued Automattic and Mullenweg asking for a declaration of noninfringement, WP Engine removed the mention of "WordPress." Below is a true and accurate image of the WP Engine website on or about October 2, 2024:[77]

---

[76] https://web.archive.org/web/20240926022918/https://wpengine.com/
[77] https://web.archive.org/web/20241002011351/https://wpengine.com/

Gibson, Dunn & Crutcher LLP



277. WP Engine's conduct is a tacit admission that describing its services as "creat[ing] on WordPress" was infringing and that its prior use of the WordPress Mark in this context is not necessary. And although WP Engine no longer uses this exact phrase on its homepage, its homepage does currently advertise "WordPress Hosting" and "Headless WordPress" and uses "WordPress" at least 18 times. WP Engine also purchases advertising keywords from search engines like Google that incorporate Counterclaimants' Marks so a link to WP Engine's site appears as the first result when a consumer searches for terms like "WordPress."

278. This was far from the only instance of WP Engine attempting to mask its intent before filing suit.

279. Before the lawsuit was filed, WP Engine's webpage describing the various plans that it offered customers listed the following plans: "Essential WordPress," "Core WordPress," and "Enterprise WordPress." The webpage also referred to "WordPress Hosting" and "WooCommerce Hosting." Below are true and accurate images of the WP Engine website on or about September 24, 2024:[78]

|  |  |  |
|---|---|---|
| **Essential WordPress** ⚡⚡ | **Core WordPress** ⚡⚡⚡ | **Enterprise WordPress** ⚡⚡⚡ |

---

[78] https://web.archive.org/web/20240924023657/https://wpengine.com/plans/

Gibson, Dunn & Crutcher LLP

**WordProcess Hosting**    WooCommerce Hosting

280. On or around the date of its filing, WP Engine changed the names of its plans to: "Essential," "Core," and "Enterprise." Instead of "WordPress Hosting," WP Engine changed the phrase to "Hosting for WordPress." And instead of "WooCommerce Hosting," WP Engine changed the phrase to "eCommerce Hosting." Below are true and accurate images of the WP Engine website on or about October 2, 2024:[79]

## Essential

⚡⚡⚡

## Core

⚡⚡⚡

## Enterprise

⚡⚡⚡

**Hosting for WordPress**    eCommerce Hosting

281. WP Engine's conduct is a tacit admission that describing the plans that it offered to customers as "WordPress" plans was infringing and that its prior use of the WordPress Mark in this context is not necessary. And although WP Engine has not restored the names of its plans to their infringing pre-litigation version, on a later version of this webpage, WP Engine used "WordPress" at least 33 times and used "Woo" at least 10 times.[80] WP Engine also purchases advertising keywords from search engines like Google that incorporate Counterclaimants' Marks so a link to WP Engine's site appears as the first result when a consumer searches for terms like "WordPress hosting," "Woo hosting," and "WooCommerce hosting." On information and belief, WP Engine is making other confusing uses of the WordPress Marks.

282. Similarly, before the lawsuit was filed, WP Engine's webpage that described its offerings related to WooCommerce used the phrases "The path to WooCommerce® success starts here" and

---

[79] https://web.archive.org/web/20241002014516/https://wpengine.com/plans/
[80] https://web.archive.org/web/20250430000401/https://wpengine.com/

Gibson, Dunn & Crutcher LLP

"Simplify Woo. Sell more." Below are true and accurate images of the WP Engine website on or about September 24, 2024:[81]

WOOCOMMERCE HOSTING

# The path to WooCommerce® success starts here

WOOCOMMERCE PEACE OF MIND

# Simplify Woo. Sell more.

283. On or around the date of its filing, WP Engine changed these phrases to "The path to eCommerce success starts here" and "Simplify. Sell more." Below are true and accurate images of the WP Engine website on or about October 2, 2024:[82]

WOOCOMMERCE HOSTING

# The path to eCommerce success starts here

WOOCOMMERCE PEACE OF MIND

# Simplify. Sell more.

284. WP Engine's conduct is a tacit admission that describing itself as the "path to WooCommerce®" and its offering to "Simplify Woo. Sell more." was infringing and that its prior use of the WooCommerce Marks in this context is not necessary. On information and belief, however, WP Engine is already making other confusing uses of the WooCommerce Marks.

---

[81] https://web.archive.org/web/20240924020843/https://wpengine.com/woocommerce/
[82] https://web.archive.org/web/20241002014507/https://wpengine.com/woocommerce/

Gibson, Dunn & Crutcher LLP

1

## CLAIMS FOR RELIEF

2

## FIRST CLAIM FOR RELEF

3

## Federal Trademark Infringement

4

## under 15 U.S.C. § 1114(1)

5      285. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if

6 fully set forth herein.

7      286. Counterclaimant WordPress Foundation is the owner and registrant of the WordPress

8 Marks. The WordPress Marks are registered with the USPTO and are valid, subsisting, used in

9 commerce, and inherently distinctive. The WordPress Marks have acquired substantial secondary

10 meaning in the marketplace.

11      287. Counterclaimant WooCommerce is the owner and registrant of the WooCommerce Marks.

12 The WooCommerce Marks are registered with the USPTO and are valid, subsisting, used in commerce,

13 and inherently distinctive. The WooCommerce Marks have acquired substantial secondary meaning in

14 the marketplace.

15      288. WP Engine is using the identical WordPress and WooCommerce Marks in connection with

16 the distribution, sale, and promotion of goods and services that are overlapping and related to the

17 Counterclaimants' distribution, sale, and promotion of goods and services.

18      289. WP Engine's use of the WordPress and WooCommerce Marks constitutes trademark

19 infringement in violation of 15 U.S.C. § 1114(1), in that such use has caused, or is likely to cause

20 confusion, deception, or mistake among the consuming public and trade as to the source of WP

21 Engine's goods and services. Specifically, WP Engine's use of the WordPress and WooCommerce

22 Marks is likely to cause consumers to believe, incorrectly, that WP Engine's offerings originate from,

23 or have been authorized, sponsored, approved, or endorsed by Counterclaimants, or that WP Engine's

24 business is otherwise connected to, sponsored by, or affiliated with Counterclaimants.

25      290. WP Engine's unauthorized use of marks that are identical or confusingly similar to

26 WordPress and WooCommerce Marks has caused and is likely to continue causing consumer confusion

27 and irreparable injury to Counterclaimants' reputation, as well as the goodwill developed by

28 Counterclaimants for their goods and services. The extent of this harm cannot be ascertained at this

1    time, leaving Counterclaimants without any adequate remedy at law.

2        291. By reason of the foregoing, Counterclaimants are entitled to injunctive relief against WP

3    Engine, restraining WP Engine from further acts of infringement of the WordPress and WooCommerce

4    Marks and, after trial, recovery of any and all damages and/or nonduplicative unlawful profits proven

5    to have been caused by reason of WP Engine's infringing acts.

6        292. On information and belief, WP Engine's use of the infringing WordPress and

7    WooCommerce Marks is with knowledge and in willful disregard of Counterclaimants' rights. WP

8    Engine's bad faith is evidenced at least by WP Engine's use of identical marks to the WordPress and

9    WooCommerce Marks, WP Engine's knowledge of Counterclaimants and their trademark and other

10   rights, and WP Engine's deliberate and continuing expansion of its use of the WordPress and

11   WooCommerce Marks. Because of the willful nature of WP Engine's wrongful acts, Counterclaimants

12   are entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

13       293. Pursuant to 15 U.S.C. § 1117, Counterclaimants are also entitled to recover their costs and

14   attorneys' fees because this is an exceptional case.

15                              **SECOND CLAIM FOR RELIEF**

16   **False Advertising, False Designation of Origin, and Unfair Competition**

17                              **under 15 U.S.C. § 1125(a)**

18       294. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if

19   fully set forth herein.

20       295. The WordPress and WooCommerce Marks are used by Counterclaimants in commerce in

21   the United States.

22       296. The WordPress and WooCommerce Marks are inherently distinctive and have acquired

23   substantial secondary meaning in the marketplace. WP Engine uses marks that are identical or

24   confusingly similar to the WordPress and WooCommerce Marks. WP Engine's use of the WordPress

25   and WooCommerce Marks is not necessary to identify its products or services, and even if it were

26   necessary, WP Engine uses the WordPress and WooCommerce Marks far more than necessary.

27       297. WP Engine also misleadingly promotes its contributions to the WordPress community,

28   which actually are far smaller than that which it claims. This false and misleading promotional

campaign includes but is not limited to general statements WP Engine has promoted on its website and blog claiming that it "maintain[s] a 'golden ratio' of WordPress contributors to users" such "that [it] contribute[s] five percent of their resources to WordPress" and WP Engine's specific statements as to the number of contributors, hours per week, and teams devoted to WordPress that were either literally false when posted or are materially misleading in that they overstate the value of WP Engine's contributions.

298. Through its extensive use of the WordPress and WooCommerce Marks and promoting its affiliation with WordPress, WP Engine has engaged in false advertising in two ways. *First*, WP Engine has not donated five percent of its resources to WordPress and the specific numerical commitments WP Engine has posted were either false or materially misleading. *Second*, WP Engine has falsely positioned itself as a sponsor or endorsed partner of WordPress when in fact it is not one of the WordPress Parties, nor is it sponsored or endorsed by the WordPress Parties, and WP Engine's public representations of support for WordPress have been false and materially misleading since WP Engine commenced its conduct that undermines and diminishes the WordPress project.

299. WP Engine's promotion, advertising, offering for sale, and sale of its goods and services in connection with the WordPress and WooCommerce Marks and false and misleading statements about its contributions to WordPress is therefore likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association between WP Engine and Counterclaimants, and is likely to cause members of the public to believe, incorrectly, that WP Engine's goods and services are provided, endorsed, approved, or sponsored by Counterclaimants, when in fact Counterclaimants do not approve of WP Engine's misappropriation of their trademarks for WP Engine's products, services, or business or its false and misleading misrepresentations communicating to consumers that it supports WordPress when it has not provided the pledged support, overstated the impact of the pledged support, and engaged in conduct that affirmatively undermines the WordPress project.

300. WP Engine's use of the WordPress and WooCommerce Marks and false and misleading statements about its contributions to WordPress therefore constitutes false advertising, trademark infringement of the Counterclaimants' trademark rights, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

301. WP Engine's unauthorized use of marks that are identical or confusingly similar to the WordPress and WooCommerce Marks and false and misleading statements about its contributions to WordPress has caused and is likely to continue to cause irreparable injury to Counterclaimants' reputation, as well as the goodwill developed by Counterclaimants for the goods and services covered by their trademarks. The extent of this harm cannot be ascertained at this time, leaving Counterclaimants without any adequate remedy at law.

302. By reason of the foregoing, Counterclaimants are entitled to injunctive relief against WP Engine, restraining WP Engine from further acts of infringement of Counterclaimants' trademarks and, after trial, recovery of any damages and/or nonduplicative unlawful profits proven to have been caused by reason of WP Engine's infringing acts.

303. On information and belief, WP Engine's infringing use of the WordPress and WooCommerce Marks is with knowledge and in willful disregard of Counterclaimants' rights. WP Engine's bad faith is evidenced at least by WP Engine's use of identical marks to advertise and provide services that are identical or closely related to those provided by Counterclaimants, WP Engine's deliberate and continuing expansion of its use of the WordPress and WooCommerce Marks, and WP Engine's false and misleading statements about its contributions to and support for WordPress. Because of the willful nature of WP Engine's wrongful acts, Counterclaimants are entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

304. Pursuant to 15 U.S.C. § 1117, Counterclaimants are also entitled to recover their costs and attorneys' fees because this is an exceptional case.

### THIRD CLAIM FOR RELIEF

### Common Law Trademark Infringement

305. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if fully set forth herein.

306. Counterclaimants have prior usage in commerce and common law rights to the WordPress and WooCommerce Marks. As a result of Counterclaimants' continuous common law use of the WordPress and WooCommerce Marks and substantial investment in developing and promoting these brands, the WordPress and WooCommerce Marks have acquired secondary meaning, become widely

known, and become identifiable by consumers and the public as the source of Counterclaimants' goods and services. Counterclaimants have also developed substantial goodwill in the WordPress and WooCommerce Marks, which have now come to symbolize Counterclaimants' reputation for offering high quality and innovative solutions, deep expertise, and strong customer service.

307. WP Engine, with knowledge and in willful disregard of Counterclaimants' prior rights, continues to advertise, promote, and sell goods and services using marks that are identical and/or confusingly similar to the WordPress and WooCommerce Marks. WP Engine's actions have caused, continue to cause, and/or are likely to cause confusion, deception, or mistake among the consuming public as to the source of WP Engine's goods and services, or cause members of the public to believe, incorrectly, that WP Engine's goods and services are endorsed, approved, or sponsored by Counterclaimants, or that WP Engine is affiliated with Counterclaimants in some way, when that is not the case.

308. WP Engine's conduct constitutes infringement of Counterclaimants' exclusive common law trademark rights in the WordPress and WooCommerce Marks and unfair competition in violation of the common law.

309. As a direct and proximate result of WP Engine's wrongful acts, Counterclaimants have suffered and continue to suffer irreparable injury to their reputation, as well as the goodwill developed by Counterclaimants in the WordPress and WooCommerce Marks. The extent of this harm cannot be ascertained at this time, leaving Counterclaimants without any adequate remedy at law.

310. By reason of the foregoing, Counterclaimants are entitled to injunctive relief against WP Engine, restraining WP Engine from further acts of unfair competition and infringement of the WordPress and WooCommerce Marks.

311. WP Engine's use of confusing imitations of the WordPress and WooCommerce Marks in connection with the promotion and sale of its goods and services is a knowing, willful, and intentional violation of Counterclaimants' common law rights, demonstrating bad-faith intent to trade on the goodwill associated with Counterclaimants' trademarks.

## **FOURTH CLAIM FOR RELIEF**

### **Trademark Dilution of the WordPress Marks**

### **under 15 U.S.C. § 1125(c)**

312. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if fully set forth herein.

313. The WordPress Marks are used by Counterclaimants in commerce in the United States.

314. The WordPress Marks are famous throughout the United States within the meaning of 15 U.S.C. § 1125(c).

315. WP Engine adopted and began making unauthorized use of the WordPress Marks in interstate commerce long after those marks became distinctive, well-known, and famous among the consuming public.

316. WP Engine's unauthorized use of the famous WordPress Marks has diluted, continues to dilute, and is likely to cause future dilution of the distinctive quality of those famous trademarks to identify and distinguish Counterclaimants' goods and services, in violation of Counterclaimants' rights under 15 U.S.C. § 1125(c). WP Engine's wrongful misappropriation of the WordPress Marks is likely to cause dilution by tarnishment and blurring and the whittling away of the distinctiveness and fame of those trademarks.

317. WP Engine's dilution of the distinctive and famous WordPress Marks has caused and will continue to cause irreparable injury to Counterclaimants' reputation, as well as the goodwill developed by Counterclaimants for their goods and services covered by their famous marks. The extent of this harm cannot be ascertained at this time, leaving Counterclaimants without any adequate remedy at law.

318. By reason of the foregoing, Counterclaimants are entitled to injunctive relief against WP Engine, restraining WP Engine from engaging in further acts of dilution of the WordPress Marks, and, after trial, recovery of any damages proven to have been caused by reason of WP Engine's infringing acts.

319. On information and belief, WP Engine's dilution of the WordPress Marks is with knowledge and in willful disregard of Counterclaimants' trademark rights. Because of the willful nature

of WP Engine's wrongful acts, Counterclaimants are entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

320. Pursuant to 15 U.S.C. § 1117, Counterclaimants are also entitled to recover their costs and attorneys' fees because this is an exceptional case.

## FIFTH CLAIM FOR RELIEF

### Trademark Dilution of the WordPress Marks

### under Cal. Bus. & Prof. Code § 14247

321. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if fully set forth herein.

322. The WordPress Marks are used by Counterclaimants in commerce in California.

323. The WordPress Marks are distinctive and famous among the general consuming public of California within the meaning of Cal. Bus. & Prof. Code § 14247.

324. WP Engine adopted and began making unauthorized use of the WordPress Marks in commerce in California long after those marks became distinctive, well-known, and famous among the consuming public in California.

325. WP Engine's unauthorized use of the famous WordPress Marks has diluted, continues to dilute, and is likely to cause future dilution of the distinctive quality of those famous trademarks to identify and distinguish Counterclaimants' goods and services, in violation of Counterclaimants' rights under Cal. Bus. & Prof. Code § 14247. WP Engine's wrongful misappropriation of the WordPress Marks is likely to cause dilution by tarnishment and blurring and the whittling away of the distinctiveness and fame of those trademarks.

326. WP Engine's dilution of the distinctive and famous WordPress Marks has caused and will continue to cause irreparable injury to Counterclaimants' reputation, as well as the goodwill developed by Counterclaimants for their goods and services covered by their famous marks. The extent of this harm cannot be ascertained at this time, leaving Counterclaimants without any adequate remedy at law.

327. By reason of the foregoing, Counterclaimants are entitled to injunctive relief against WP Engine, restraining WP Engine from engaging in further acts of dilution of the WordPress Marks, and,

after trial, recovery of any damages and/or nonduplicative unlawful profits proven to have been caused by reason of WP Engine's infringing acts.

328. On information and belief, WP Engine's dilution of the WordPress Marks is with knowledge and in willful disregard of Counterclaimants' trademark rights. Because of the willful nature of WP Engine's wrongful acts, Counterclaimants are entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

## SIXTH CLAIM FOR RELIEF

### Unfair Competition under California Statutory Law,

### Cal. Bus. & Prof. Code § 17200 *et seq.*

329. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if fully set forth herein.

330. Counterclaimants own and enjoy protectable rights in the WordPress and WooCommerce Marks in California and throughout the United States.

331. Through substantial investment, time, and effort, Counterclaimants have built valuable goodwill in the WordPress and WooCommerce Marks with consumers in California and throughout the United States.

332. WP Engine has willfully, unfairly, and in bad faith, misappropriated the goodwill that Counterclaimants have built in their WordPress and WooCommerce Marks by engaging in the use of highly similar, if not identical marks.

333. WP Engine's knowing and willful use of the WordPress and WooCommerce Marks in connection with its same website creation, design, and management services, without authorization from Counterclaimants, is likely to cause confusion and mistake and to deceive consumers as to the origin, sponsorship, or affiliation of the parties' services. Consumers seeing WP Engine's services offered under the WordPress and WooCommerce Marks are likely to believe those services are sponsored by, associated with, or otherwise affiliated with Counterclaimants, when they are not.

334. WP Engine is unlawfully trading on, and profiting from, the invaluable goodwill that Counterclaimants have developed in the WordPress and WooCommerce Marks.

335. WP Engine's acts and conduct therefore constitute trademark infringement in violation of Cal. Bus. & Prof. Code § 14200 *et seq.* and unlawful, unfair, or deceptive business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

336. WP Engine's conduct has resulted in and will likely continue to result in consumer injury or harm to the public interest.

337. WP Engine's unlawful, unfair, and deceptive business practices have caused Counterclaimants to suffer substantial injury, including injury to their goodwill associated with the WordPress and WooCommerce Marks, and harm to their business reputation. WP Engine has also received an unfair commercial advantage and financial benefit as a result of its misconduct.

338. In light of the foregoing, and pursuant to Cal. Bus. & Prof. Code § 17203, Counterclaimants are entitled to injunctive relief against WP Engine restraining it from further acts of unfair competition, as well as restitution of any amounts acquired by WP Engine by means of its unfair and deceptive practices.

### SEVENTH CLAIM FOR RELIEF

### Common Law Unfair Competition

339. Counterclaimants repeat and reallege each and every allegation of this Counterclaim as if fully set forth herein.

340. Counterclaimants own and enjoy protectable rights in the WordPress and WooCommerce Marks in California and throughout the United States.

341. Through substantial investment, time, and effort, Counterclaimants have built valuable goodwill in the WordPress and WooCommerce Marks with consumers in California and throughout the United States.

342. WP Engine has willfully, wrongfully, and in bad faith exploited the WordPress and WooCommerce Marks in California and throughout the United States by engaging in the use of highly similar, if not identical, marks.

343. WP Engine's knowing and willful use of the WordPress and WooCommerce Marks in connection with its same website creation, design, and management services, without authorization from Counterclaimants, is likely to cause confusion and mistake and to deceive consumers as to the

Gibson, Dunn & Crutcher LLP

origin, sponsorship, or affiliation of the parties' services. Consumers seeing WP Engine's services offered under the WordPress and WooCommerce Marks are likely to believe those services are sponsored by, associated with, or otherwise affiliated with Counterclaimants, when they are not.

344. WP Engine is unlawfully trading on, and profiting from, the invaluable goodwill that Counterclaimants have developed in the WordPress and WooCommerce Marks.

345. WP Engine's acts and conduct therefore constitute unfair and unlawful practices in violation of the common law of the State of California to the injury of Counterclaimants and the public.

346. The conduct of WP Engine as alleged herein will, unless restrained, damage Counterclaimants in an amount to be determined at trial and will cause irreparable harm, including the serious impairment of the value of the WordPress and WooCommerce Marks.

347. Counterclaimants have been damaged in an amount to be proven at trial, and Counterclaimants are entitled to an accounting of WP Engine's profits as well as enhanced remedies as provided by law for WP Engine's willful conduct.

348. By engaging in the conduct as herein above alleged, WP Engine has acted willfully, maliciously, oppressively, and fraudulently, and Counterclaimants are therefore entitled to punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaimants pray for judgment as follows:

1.    Enter a judgment that WP Engine is liable to Counterclaimants for federal trademark infringement, federal false designation of origin and unfair competition, common law trademark infringement, federal trademark dilution, trademark dilution under Cal. Bus. & Prof. Code § 14247, unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*, and common law unfair competition.

2.    Order preliminary and permanent injunctive relief enjoining WP Engine, its officers, agents, employees, assigns, and all persons acting in concert with it from doing all of the following:

a.    Using in any manner or registering the WordPress and WooCommerce Marks, or any other mark which so resembles those trademarks as to be likely to cause confusion, deception, or mistake on or in connection with WP Engine's goods or services not emanating from Counterclaimants or not authorized by

Counterclaimants;

    b.   Committing any acts calculated to cause consumers to believe that WP Engine's goods or services are sold under the control or supervision of Counterclaimants, sponsored or approved by, connected with, guaranteed by, or produced under the control and supervision of Counterclaimants, including falsely promoting its contributions to WordPress;

    c.   Further diluting and infringing the WordPress and WooCommerce Marks and damaging Counterclaimants' reputation and their goodwill in those trademarks; and

    d.   From otherwise competing unfairly with Counterclaimants in any manner.

3.    Enter an order that WP Engine account for and disgorge to Counterclaimants any profits realized by WP Engine by reason of WP Engine's unlawful and willful acts as alleged herein;

4.    Enter an order awarding Counterclaimants actual damages in an amount to be proven at trial;

5.    Enter an order that the amount of damages to be awarded to Counterclaimants be increased by a sum not exceeding three times the amount thereof as provided by law;

6.    Enter an order awarding Counterclaimants interest, including pre-judgment interest and post-judgment interest, on all sums;

7.    Enter an Order declaring this an exceptional case;

8.    Enter an order awarding Counterclaimants' attorneys' fees and costs incurred in connection with this action;

9.    Award further relief as the Court may deem equitable, including, but not limited to any relief set forth under 15 U.S.C. §§ 1116-1118, Cal. Bus. & Prof. Code § 17200, *et seq.*, and California common law; and

10.    Award such other and further relief to which Counterclaimants may be entitled.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Counterclaimants hereby demand a jury trial on all issues so triable.

DATED: October 23, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Joseph R. Rose*
Joseph R. Rose

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg and Counterclaimants WordPress Foundation and WooCommerce Inc.*