QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**PLAINTIFF WPENGINE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Araceli Martínez-Olguín<br>Courtroom: 10<br>Hearing Date: February 5, 2026<br>Hearing Time: 2:00 p.m. |

1

2

3

4

5

6

7

8

9

10

11

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,

Counterclaimants,

vs.

WPENGINE, INC., a Delaware corporation,

Counterdefendant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ............................................................1

STATEMENT OF RELIEF SOUGHT .............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................1

FACTUAL BACKGROUND ......................................................................................3

LEGAL STANDARD ...............................................................................................5

ARGUMENT ...........................................................................................................6

I.    THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY AS
      BARRED BY THE STATUTE OF LIMITATIONS AND LACHES ................................6

      A.    The State Law Counterclaims Are Barred By the Statute of Limitations .................6

      B.    Laches Bars All Counterclaims ..........................................................................10

            1.    Counterclaimants Unreasonably Delayed the Filing of
                  Counterclaims ....................................................................................11

            2.    WPE is Unfairly Prejudiced by Counterclaimants' Delay ..........................13

II.   COUNTERCLAIMANTS FAIL TO STATE VIABLE DILUTION CLAIMS .................13

III.  COUNTERCLAIMANTS' FALSE ADVERTISING CLAIMS SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM.....................................................16

IV.   COUNTERCLAIMANTS' TRADEMARK COUNTERCLAIMS ARE BARRED
      BY THE NOMINATIVE FAIR USE DOCTRINE ........................................................19

V.    COUNTERCLAIMANTS' UNFAIR COMPETITION COUNTERCLAIMS
      SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ................................23

VI.   AUTOMATTIC AND MULLENWEG LACK STANDING TO BRING
      TRADEMARK COUNTERCLAIMS........................................................................23

CONCLUSION .......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AirWair Int'l Ltd. v. Schultz,*
    84 F. Supp. 3d 943 (N.D. Cal. 2015) ........................................................................ 6

*Alfasigma USA, Inc. v. First Databank, Inc.,*
    525 F. Supp. 3d 1088 (N.D. Cal. 2021) ............................................................. 16, 17

*AlterG, Inc. v. Boost Treadmills LLC,*
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ............................................................ 16, 17

*Alvarado v. Amazon.com, Servs. LLC,*
    2022 WL 899850 (N.D. Cal. Mar. 28, 2022) ............................................................ 23

*Applied Underwriters v. Lichtenegger,*
    913 F.3d 884 (9th Cir. 2019) ................................................................... 5, 20, 23

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
    2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ......................................................... 20

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) ........................................................... 15, 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 5

*Avery Dennison Corp. v. Sumpton,*
    189 F.3d 868 (9th Cir. 1999) ................................................................... 14, 15

*Balistreri v. Pacific Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ....................................................................... 5

*Becerra v. Dr Pepper/Seven Up, Inc.,*
    945 F.3d 1225 (9th Cir. 2019) .............................................................. 16, 18, 19

*Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.,*
    2009 WL 1542651 (N.D. Cal. Jun. 2, 2009) ............................................................ 24

*Bell v. Pac. Ridge Builders, Inc.,*
    2019 WL 13472127 (N.D. Cal. Jun. 4, 2019) .......................................................... 22

*Bertolina v. Wachovia Mortg., FSB,*
    2011 WL 3473527 (N.D. Cal. Aug. 9, 2011) ........................................................... 23

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.,*
    963 F.3d 859 (9th Cir. 2020) ....................................................................... 14

*Broadcom Corp. v. SiRF Tech., Inc.,*
    2009 WL 10672527 (C.D. Cal. Dec. 16, 2009) ......................................................... 18

*Brown v. Green,*
    2012 WL 4120379 (N.D. Cal. Sept. 18, 2012) ......................................................... 24

*Children's Health Def. v. Facebook Inc.,*
    546 F. Supp. 3d 909 (N.D. Cal. 2021) ............................................................... 16

*Children's Health Def. v. Meta Platforms, Inc.*,
   112 F.4th 742 (9th Cir. 2024)..................................................................................16

*CMRE Fin. Servs. Inc. v. Doxo Inc.*,
   2022 WL 16701259 (W.D. Wash. Oct. 7, 2022) ...............................................23

*Coach Servs., Inc. v. Triumph Learning LLC*,
   668 F.3d 1356 (Fed. Cir. 2012) ...........................................................................14

*Dropbox, Inc. v. Thru Inc.*,
   728 F.App'x 717 (9th Cir. 2018)..........................................................................12

*Erickson v. Nebraska Mach. Co.*,
   2015 WL 4089849 (N.D. Cal. July 6, 2015) .........................................................9

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012)...............................................................................12

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
   411 F. Supp. 3d 905 (N.D. Cal. 2019) ................................................................16

*Fitbug Ltd. v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) .................................................................10

*Free Kick Master LLC v. Apple Inc*,
   2016 WL 777916 (N.D. Cal. Feb. 29, 2016)............................................ 7, 8, 10

*Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*,
   328 F. Supp. 3d 1007 (N.D. Cal. 2018) ..............................................................24

*Gibralter, LLC v. DMS Flowers, LLC*,
   2025 WL 2623293 (E.D. Cal. Sept. 11, 2025) ...................................................16

*Gonzalez v. Planned Parenthood of Los Angeles, .*,
   1115, 1117 (9th Cir. 2014) .....................................................................................6

*Grupo Gigante SA De CV v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004)...............................................................................11

*High Country Linens, Inc. v. Block*,
   2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) ......................................................7

*Ileto v. Glock, Inc.*,
   349 F.3d 1191 (9th Cir. 2003)................................................................................5

*Intuit Inc. v. HRB Tax Grp., Inc.*,
   2024 WL 4093918 (N.D. Cal. Sept. 5, 2024) .....................................................18

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002).............................................................. 6, 10, 11, 12

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)................................................................................6

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ..............................................................................................22

*Landrum v. Tyson*,
   2011 WL 13217114 (C.D. Cal. May 16, 2011)........................................ 5, 11, 13

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
    119 F.4th 711 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2732 (2025) ................................ 21, 22

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ................................................................................ 11, 13

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
    686 F. Supp. 3d 900 (N.D. Cal. 2023) ............................................................................ 16

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) ........................................................................................ 22

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) .................................................................................... 19, 20

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................................................ 18

*Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*,
    2022 WL 17224542 (C.D. Cal. Aug. 16, 2022) .............................................................. 15

*Parts.com v. Google Inc.*,
    2014 WL 12461256 (S.D. Cal. June 25, 2014) ............................................................... 13

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......................................................................... 5, 9

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ........................................................................... 14

*Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*,
    694 F.2d 1150 (9th Cir. 1982) .................................................................................. 11, 13

*Regal W. Corp. v. Nguyen*,
    412 F. Supp. 3d 1305 (W.D. Wash. 2019) ..................................................................... 17

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
    627 F. Supp. 2d 1096 (N.D. Cal. 2008) ......................................................................... 13

*STX, Inc. v. Bauer USA, Inc.*,
    1997 WL 337578 (N.D. Cal. Jun. 5, 1997) .................................................................... 24

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................................ 5

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
    305 F.3d 894 (9th Cir. 2002), *superseded on other grounds by statute* ................................ 14

*Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Assoc.*,
    465 F.3d 1102 (9th Cir. 2006) .......................................................................... 11, 12, 13

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) .................................................................................. 20, 21

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ................................................................... 18, 19

*Upper Deck Co. v. Panini Am., Inc.*,
    533 F. Supp. 3d 956 (S.D. Cal. 2021) ............................................................................ 24

*Vice Spirits Inc. v. The Vice Wines, LLC,*
   2025 WL 3013971 (N.D. Cal. Oct. 28, 2025) ............................................................ 16

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,*
   758 F.3d 1069 (9th Cir. 2014) ............................................................................. 16

*Zuckerman v. Metro. Museum of Art,*
   928 F.3d 186 (2d Cir. 2019) ............................................................................... 13

## **Rules and Regulations**

Fed. R. Civ. P. 9(b) ................................................................................ 1, 2, 16, 17, 18

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 5, 20

Fed. R. Civ. P. 12(c) .............................................................................................. 23

## **Statutes**

15 U.S.C. §§ 1051 et seq ................................................................................ 6, 10, 16

15 U.S.C. §§ 1114(1) ........................................................................................ 5, 24

15 U.S.C. §§ 1125(a) ............................................................................................... 5

15 U.S.C. §§ 1125(c) ............................................................................................... 5

15 U.S.C. § 1125(c)(1) ........................................................................................... 14

15 U.S.C. § 1125(c)(2)(A) ................................................................................ 14, 16

15 U.S.C. § 1125(c)(3)(A) ..................................................................................... 19

15 U.S.C. § 1127 .................................................................................................... 24

Cal. Bus. & Prof. Code § 14247 ........................................................................ 5, 24

Cal. Bus. & Prof. Code § 17200 .............................................................................. 6

Cal. Bus. & Prof. Code § 17208 .............................................................................. 6

Cal. Civ. Proc. Code § 339 ...................................................................................... 7

## **Other Authorities**

3 McCarthy on Trademarks and Unfair Competition § 24:106 (5th ed.) ................ 16

1    <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE that on February 5, 2026, at 2 p.m., or as soon as counsel may be

4    heard, before the Honorable Araceli Martínez-Olguín, in Courtroom 10 located on the 19th Floor at

5    450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff/Counterdefendant WPEngine,

6    Inc. ("WPE") will, and hereby does, move this Court, pursuant to Federal Rules of Civil Procedure

7    9(b) and 12(b)(6), to dismiss the Counterclaims of Defendants/Counterclaimants Automattic, Inc.

8    ("Automattic"), Matthew Charles Mullenweg ("Mullenweg"), the WordPress Foundation ("the

9    Foundation"), and WooCommerce Inc. ("WooCommerce") (collectively, "Counterclaimants"), and

10   all seven causes of action therein.  Because the Counterclaims are incapable of alleging plausible

11   claims, they should be dismissed with prejudice.  WPE's Motion is based on this Notice of Motion

12   and supporting Memorandum of Points and Authorities, the Request for Judicial Notice filed

13   herewith, the materials on file in this action, and such other written or oral argument as may be

14   presented at or before the time this motion is heard and/or taken under submission by the Court.

15   <u>**STATEMENT OF RELIEF SOUGHT**</u>

16   WPE seeks an order dismissing all seven causes of action in the Counterclaims (Dkt. 195).

17   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

18   For 15 years, Counterclaimants watched WPE build its business using the very terminology

19   they now claim infringes their trademark rights.  Counterclaimants interacted with WPE throughout

20   those 15 years—hosting WPE at WordCamps, attending WPE events, and even investing in WPE

21   for seven of those years.  But Counterclaimants took no legal action against WPE until October

22   2025, when they filed the instant Counterclaims.  The law does not permit such delay.  Even though

23   WPE has consistently used the now-challenged trademarks lawfully to describe its services relating

24   to the software used by its customers, Counterclaimants now seek to stop WPE from communicating

25   to customers what it actually does—provide services for websites built on WordPress open source

26   software, including those that use WooCommerce ecommerce payment products.  The law does not

27   permit that either.  The counterclaims fail on multiple, independently dispositive grounds, and

28   should be dismissed in their entirety.

*First*, the counterclaims are unquestionably time barred.  Counterclaimants knew of WPE's use of the WordPress Marks as early as 2010—**15 years** before filing these counterclaims in 2025.  Even if their claims had merit, which they do not, the statute of limitations and the doctrine of laches bar them.  Counterclaimants cannot sit on their claimed rights for well over a decade while WPE invested hundreds of millions of dollars building its business, then suddenly cry foul when they decide to surreptitiously transform the WordPress ecosystem from an open source community into their own private revenue stream via a belated, unfounded and exorbitant trademark tax.

*Second*, the dilution claims fail at their foundation.  Counterclaimants must plausibly allege their marks were famous before WPE first used them in 2010.  They have not and cannot.

*Third*, the false advertising claims fail Rule 9(b)'s particularity requirement.  Counterclaimants allege only one specific statement—which they misquote—as allegedly false, yet they purport to allege a "campaign" of falsehood.  Vague allegations of an unspecified "campaign" fall far short of the "who, what, when, where, and how" that Rule 9(b) demands.

*Fourth*, WPE's use of the WordPress and WooCommerce Marks as alleged in the Counterclaims constitutes classic nominative fair use.  WPE offers hosting and management services specifically designed for the WordPress content management system and the WooCommerce plugin.  Counterclaimants allege that instead of using the terms "WordPress" or "WooCommerce," WPE should have used unwieldy descriptions that would make it harder for users to identify WPE's actual services.  The law does not require such grammatical gymnastics.  The use WPE has made since 2010, which Counterclaimants acknowledge was "largely nominative" and "primarily to refer to and explain its services," has not meaningfully changed since inception.  Because the pleaded uses are nominative, the trademark-based counterclaims all fail.

*Fifth*, the California unfair competition claims are derivative of the failed predicate claims and assert no independent wrongful conduct.  Having failed to plead viable trademark claims, Counterclaimants cannot relabel the same deficient allegations as "unfair competition."

*Sixth*, Counterclaimants Mullenweg and Automattic have no standing to assert trademark infringement and dilution claims because they do not own the asserted trademarks.  As such, their counterclaims under those theories must be dismissed on these independent grounds.

Bedrock principles of law—laches, statutes of limitations, nominative fair use, and standing—doom these Counterclaims as pleaded, and they should all be dismissed with prejudice.

**FACTUAL BACKGROUND**

On October 23, 2025, Defendant Automattic, Defendant Mullenweg, the Foundation, and WooCommerce filed an Answer to WPE's Second Amended Complaint ("SAC") and Counterclaims. Dkt. 195 ("CC").

WordPress is an open source software platform that "is free for anyone to use, copy, or modify." CC ¶ 2. Since its inception in 2010, WPE has offered hosting and management services exclusively designed for the WordPress platform, and in doing so, has consistently used the WordPress Marks to describe its products and services—as all builders on open source software must do. *Id.* ¶ 4. Counterclaimants allege that when WPE began offering its products and services in 2010, it made "largely nominative use of the WordPress Marks" to refer to the open source WordPress platform. *Id.* Counterclaimants further assert that WPE used the WordPress Marks "primarily to refer to and explain its services." *Id.* ¶¶ 102-103. Counterclaimants' pleading, and documents the Court may take judicial notice of, demonstrate that WPE's use of the WordPress Marks from 2010 through present has been continuous in duration and consistent in nature. WPE's historical use of WordPress-related terminology included phrases such as "Finely Tuned WordPress," "Superb WordPress Hosting," "Hassle-Free WordPress Hosting," "Fully-Managed WordPress Hosting," "WordPress Installs," and "Managed WordPress Hosting." *Id.* ¶¶ 103-108.

Counterclaimants allege that in 2018 (more than seven years before they filed any claims against WPE), WPE began to increase its use of the WordPress Marks, including by referring to itself as "The Only WordPress Digital Experience Platform" and "the world's leading WordPress Digital Experience Platform." *Id.* ¶¶ 109-115. Counterclaimants further allege that WPE "increased the frequency and visual dominance" of the WordPress Marks by announcing a product line "Headless WordPress" in March 2021 and describing itself as "the world's most trusted WordPress technology company." *Id.* ¶¶ 114, 116-117. The Court, however, may take judicial notice of the fact that WPE was publicly using "Headless WordPress" on its website at least as early as September 27, 2017. RJN, Ex. 4. Counterclaimants further allege that as of June 2021, WPE referred to itself

as "the WordPress technology company."  CC ¶ 118.  And, according to Counterclaimants, as of November 2021, WPE began including WordPress in the name of its plans, including by using the phrase "Managed WordPress."  *Id.* ¶ 119.  But the Court may take judicial notice of the fact that WPE was publicly using the term "Managed WordPress" on its website by at least as early as December 30, 2011.  RJN, Ex. 1; *see also id.*, Ex. 2 (using "Managed WordPress" in April 2012).

Counterclaimants allege that by August 2022, WPE began using the WooCommerce Marks "in its plan advertising."  CC ¶ 120.  But the Court may take judicial notice that WPE was publicly using the term "WooCommerce" on its website by at least as early as October 4, 2021.  RJN, Ex. 7.

Counterclaimants allege that, as of May 27, 2024, WPE redesigned part of its website, calling its plans "Core WordPress" and "Essential WordPress."  CC ¶ 123.  As can be seen on WPE's website, WPE publicly began using "Core WordPress" at least as early as March 22, 2018.  RJN, Ex. 5.  Counterclaimants further allege that, in August 2024, WPE displayed the term "WordPress" in an almost identical font to that used on WordPress.com.  CC ¶ 124.

Counterclaimants also allege that WPE engaged in a "campaign" of false advertising "[t]hrough its extensive use of the WordPress and WooCommerce Marks and promoting its affiliation with WordPress."  CC ¶¶ 297-298.  Aside from allegations related to WPE's general and consistent use of the WordPress Marks since 2010, Counterclaimants allege only a single (misquoted) false statement that was allegedly published in August 2020—more than five years ago. *Id.* ¶ 233.  Counterclaimants try to hedge this statement as being one of multiple by claiming WPE's "campaign includes but is not limited to" the allegedly false statement.  *Id.* ¶ 297.  But Counterclaimants do not identify any other specific statements, referring only to "general statements WP Engine has promoted on its website and blog" and "statements as to the number of contributors, hours per week, and teams devoted to WordPress" that are allegedly false and misleading.  *Id.*

Counterclaimants do not allege when the WordPress Marks supposedly obtained fame throughout the United States or California, or that the marks were famous by 2010, when WPE first began using them.  *Id.* ¶¶ 312-328.  And they do not provide any factual allegations of fame tied to dates in 2010 or earlier.  Rather, their allegations of commercial use and recognition are based on current information.  *See, e.g., id.* ¶¶ 58, 61-68.

On October 23, 2025—nearly fifteen years after WPE began using the WordPress Marks—Counterclaimants filed the instant counterclaims alleging seven causes of action:  (1) federal trademark infringement, 15 U.S.C. §§ 1114(1); (2) false advertising, false designation of origin and unfair competition, 15 U.S.C. §§ 1125(a); (3) common law trademark infringement; (4) trademark dilution, 15 U.S.C. §§ 1125(c); (5) trademark dilution, Cal. Bus. & Prof. § 14247; (6) unfair competition, Cal. Bus. & Prof. § 17200 *et seq.*; and (7) common law unfair competition.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Dismissal is proper where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacific Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  Claims can also be dismissed when "on the face of the complaint, it [is] clear that" an affirmative defense applies.  *See Applied Underwriters v. Lichtenegger,* 913 F.3d 884, 897 (9th Cir. 2019) (affirming dismissal where alleged infringement constituted nominative fair use); *Landrum v. Tyson*, 2011 WL 13217114, at *1 (C.D. Cal. May 16, 2011) ("A complaint may be dismissed for failure to state a claim where the defense of laches is apparent from the face of the complaint.").

On a motion to dismiss, a court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Courts may take judicial notice of publicly available websites.  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (noting that publicly available websites are proper subjects of judicial notice).  A court is not obliged to take conclusory allegations in a complaint as true when contradicted by documents of which judicial notice is properly taken. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115, 1117 (9th Cir. 2014) (affirming a motion to dismiss on statute of limitations grounds and noting that "we need not...accept as true allegations that contradict matters properly subject to judicial notice

or by exhibit").  A court may also consider matters incorporated by reference into the complaint on a motion to dismiss.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (considering web pages that were not attached in their entirety to the complaint under the incorporation by reference doctrine because "plaintiff's claim depends on the contents of [the] documents").

## ARGUMENT

## I.    THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY AS BARRED BY THE STATUTE OF LIMITATIONS AND LACHES

All of the counterclaims are based on alleged conduct going back more than a decade, and thus are barred by both the statute of limitations and laches.  "Because the Lanham Act does not include a fixed statute of limitations, courts rely on the common-law equitable defense of laches to bar overly delayed claims."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  Accordingly, the statute of limitations applies to bar only the state law claims, whereas laches applies to all of the claims because Counterclaimants have pleaded that at least some alleged infringing uses dated back to 2010.  They cannot escape their unreasonable delay by alleging that the frequency of the alleged improper uses increased over time.

### A.    The State Law Counterclaims Are Barred By the Statute of Limitations

Counterclaimants' state law claims are barred by the statute of limitations.  Under California law, Counterclaimants must bring their claims for state trademark dilution, state statutory unfair competition, and common law unfair competition within, at most, four years of when Counterclaimants knew or reasonably should have known of WPE's use of the WordPress Marks and WooCommerce Marks.  Cal. Bus. & Prof. Code §§ 17200, 17208 ("Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued."); *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 959 (N.D. Cal. 2015) ("statutes of limitations for statutory and common law unfair competition claims are also four years").  In addition, "while courts disagree as to whether California's limitation period for common-law trademark claims is two, three, or four years," Counterclaimants' claim for common law trademark infringement is time-barred under even the longest of those limitation periods.  *Free Kick Master LLC v. Apple Inc*, 2016 WL 777916, at *8 (N.D. Cal. Feb. 29, 2016) (citation omitted); *High Country*

*Linens, Inc. v. Block*, 2002 WL 1998272, at \*2 n.1 (N.D. Cal. Aug. 20, 2002) (applying the two-year period in California Code of Civil Procedure Section 339 to common law trademark infringement claims).  Because Counterclaimants' state law claims are based on alleged uses of the WordPress Marks that Counterclaimants were aware of many years before they filed their counterclaims on October 23, 2025, they should be dismissed as untimely.

The state law counterclaims are premised on the allegations that WPE used the Challenged Marks (i) "to advertise, promote, and sell goods and services" (CC ¶ 307); (ii) "in commerce in California" (*id.* ¶ 324); (iii) "in connection with its [] website creation, design, and management services" (*id.* ¶¶ 333, 343).  The allegations reflect that Counterclaimants knew or should have known of these alleged uses before October 23, 2021, the earliest point in the limitations period: Counterclaimants allege that WPE's uses were open with "high[] visibility," and that Automattic became a "strategic" investor in WPE in 2011 and held that investment through 2018.  *Id.* ¶¶ 6, 89, 95.  Thus, the face of the counterclaims demonstrates that Counterclaimants knew, or plainly should have known, of WPE's name—which Counterclaimants allege is misleading ("WP Engine's very name suggests that it is one of the WordPress Parties" (*id.* ¶ 5))—and business model (hosting and managing WordPress websites) (*e.g., id.* ¶ 103) since 2011 at the latest.  WPE's name and business model have remained the same since then.  *See, e.g.*, *id.* ¶¶ 103-113 (alleging WPE's website descriptions of its business of hosting and managing WordPress websites from 2010 to 2019).

All the allegations necessary to establish the inescapable conclusion of Counterclaimants' undue delay are before the Court.  For example, Counterclaimants allege that "WP Engine entered the WordPress ecosystem in 2010 as a small hosting provider, making ***largely nominative use*** of the WordPress Marks" to refer to the WordPress open source software platform in describing the quality and characteristics of the services it offers.  *Id.* ¶¶ 2, 4 (emphasis added).  *First*, this allegation rests on Counterclaimants' awareness of WPE's full range of uses of the WordPress Marks in 2010, otherwise they would have no good faith basis to allege whether those uses were "largely" nominative or not.  *Second*, the allegation that WPE's uses were "largely nominative" means there were some uses Counterclaimants believe were *not* nominative—*i.e.*, allegedly infringing—yet they failed to assert any claims in 2010–or anytime thereafter for the next 15 years.

In an apparent effort to avoid the obvious time bar applicable to their stale claims, Counterclaimants allege that WPE "***ratcheted up***" its use in 2018 and again in 2022 and 2023. CC ¶¶ 4-5(emphasis added); *see also id.* ¶ 8 (similarly alleging "sharp[] increase"). But this cannot save Counterclaimants' time-barred claims because it does not change the date by which Counterclaimants first knew or should have known of WPE's allegedly infringing use. To "ratchet something up" means that it is already ongoing, just at a lower rate. But claims accrue, regardless of the proportion of alleged improper conduct, when Counterclaimants "know[] or ha[ve] reason to know of the injury which is the basis of the action." *Free Kick Master LLC*, 2016 WL 777916 at *5-8 (barring all state trademark claims because plaintiffs were aware of alleged infringement outside of the limitations period, even when the alleged infringement was "ongoing").

Relying on Counterclaimants' allegations, the specific uses of the WordPress Marks and WooCommerce Marks Counterclaimants now allege are infringing predate the limitations period (*i.e.*, prior to October 23, 2021), yet Counterclaimants failed to timely bring suit. Specifically, they allege that by at least the end of January 2018—more than seven years ago—WPE was using:

- "WordPress Hosting" (CC ¶¶ 104-105);
- "Managed WordPress Hosting" (*id.* ¶¶ 106-108);
- "The Only WordPress Digital Experience Platform" (*id.* ¶¶ 110, 129);
- "The world's leading WordPress Digital Experience Platform" (*id.* ¶110);
- "Your WordPress Digital Experience Platform" (*id.* ¶ 111); and
- "The WordPress Digital Experience Platform" (*id.*).

They also allege that by at least January 29, 2019 WPE was using "THE WordPress Partner of Choice" (*id.* ¶ 112); by March 4, 2021, that WPE was using "the world's most trusted WordPress technology company" (*id.* ¶ 117) and "Headless WordPress" (*id.*); and by at least June 24, 2021, WPE was using "The WordPress Technology Company" (*id.* ¶¶ 118, 128). Claims based on all of these alleged infringing uses are time barred.

With respect to uses for which Counterclaimants failed to allege the start date, the Court may take judicial notice of when those uses began. *Perkins*, 53 F. Supp. 3d at 1204 (noting that publicly available websites are proper subjects of judicial notice); *Erickson v. Nebraska Mach. Co.*, 2015

WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]").  WPE made use of all of the following phrases before February 18, 2021:

- "Expert WordPress Support" (CC ¶ 6) (used by at least April 2, 2012) (RJN, Ex. 2);
- "Enterprise WordPress" (CC ¶ 5) (used by at least October 5, 2013) (RJN, Ex. 3);
- "Core WordPress" (CC ¶ 5) (used by at least March 22, 2018) (RJN, Ex. 5); and
- WPE "powers the freedom to create on WordPress" (CC ¶ 6) (used by at least February 17, 2021) (RJN, Ex. 6).

WPE also made use of "WooCommerce" before August 2022 (CC ¶ 120) (used by at least October 4, 2021) (RJN, Ex. 7).  Thus, claims based on these phrases are also time barred.

Finally, allegations of WPE's later uses of the WordPress Marks are mere variations of the uses discussed above that began **before** the limitations window for timely claims.  For example, WPE used "managed WordPress" since at least December 30, 2011.  RJN, Ex. 1; *see also id.*, Ex. 2 (using "Managed WordPress" again in April 2012); *cf.* CC ¶¶ 106-108.  In addition, WPE included "WordPress" in other phrases, such as "Core WordPress" in March 2018, and its use in later years (CC ¶ 119) is the same qualitative use of that term that Counterclaimants failed to sue on for more than seven years. RJN, Ex. 5. Similarly, Counterclaimants allege that WPE's early use of "Managed WordPress" was merely to "refer to and explain its services" (CC ¶¶ 102, 106-107), but challenge WPE's identical use of the exact same phrase in 2021 (*id.* ¶ 119).  *Compare also id.* ¶¶ 102, 104 (describing WPE's use of the phrase "WordPress Hosting" as primarily referential), *with id.* ¶ 130 (taking issue with "WordPress Hosting" on WPE's product page).  Because these are later uses of exact phrases WPE used previously, and are consistent with the practice Counterclaimants knew of for years, their concession that the uses were non-violative *then* bars any claim otherwise *now*.

In addition to Counterclaimants' actual knowledge of WPE's alleged uses of the WordPress Marks from 2010 until present, Counterclaimants also allege that they had actual knowledge of instances which Counterclaimants now categorize as consumer confusion, which likewise dooms their claims as time barred.  CC ¶ 4.  *See Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1187 (N.D.

1    Cal. 2015) ("[W]hen we ask whether [a] trademark owner 'knew or should have known' of its

2    potential cause of action, what we are really asking is when the mark holder 'knew or should have

3    known about the likelihood of confusion between' the marks"); *Free Kick*, 2016 WL 777916 at *8

4    ("plaintiffs' argument that the infringement had not achieved permanence [prior to the limitations

5    period] is not credible in light of the claim…that by 2010 the accused app had already caused

6    confusion").  Among the examples of supposed consumer confusion Counterclaimants allege is the

7    Defi Solutions website last modified on **December 3, 2018** (CC ¶ 186), a press release from

8    MarketersMEDIA dated **December 7, 2018** (*id.* ¶ 177), a post to the WordPress.com forum dated

9    **January 28, 2021** (*id.* ¶ 171), a page from "Stack Overflow" dated **February 10, 2021** (*id.* ¶ 174),

10   and a WordPress.com Zendesk message from **August 2021** (*id.* ¶ 161), all reflecting that

11   Counterclaimants knew or should have known of the alleged uses of the WordPress Marks and

12   alleged potential for confusion well before October 2021.  Once Counterclaimants were aware that

13   WPE's uses of the WordPress Marks allegedly caused confusion, they could and should have taken

14   diligent action.  Counterclaimants' state law claims are untimely and should be dismissed.

15       **B.    Laches Bars All Counterclaims**

16       Laches bars all of the counterclaims.  In addition to being a "well established…defense to

17   Lanham Act claims," laches is also a defense to Counterclaimants' state law claims.  *Jarrow*, 304

18   F.3d at 836, 842-43 (affirming application of laches to unfair competition law claim and describing

19   the California and federal laches standards as "substantially similar"); *see also Prudential Ins. Co.*

20   *of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1155 (9th Cir. 1982) (affirming application

21   of laches to UCL claim and California state trademark dilution claim).  The laches defense embodies

22   the principle that a plaintiff cannot sit on the knowledge that another company is using its trademark,

23   and then later come forward and seek to enforce its rights.  *Grupo Gigante SA De CV v. Dallo &*

24   *Co.*, 391 F.3d 1088, 1102-03 (9th Cir. 2004).  When analyzing the doctrine of laches for federal

25   trademark infringement and dilution claims filed in California, courts borrow California's four-year

26   statute of limitations for state trademark infringement and dilution claims, and for federal false

27   advertising claims, they borrow the three-year statute of limitations for fraud.  *See Miller v. Glenn*

28   *Miller Prods., Inc.*, 454 F.3d 975, 996–97 (9th Cir. 2006); *Jarrow*, 304 F.3d at 837-38.

1    "The limitations period for laches starts when the plaintiff knew or should have known about

2    its potential cause of action." *Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Assoc.*,

3    465 F.3d 1102, 1108 (9th Cir. 2006).  The "presumption of laches is triggered if any part of the

4    claimed wrongful conduct occurred beyond the limitations period." *Jarrow*, 304 F.3d at 837-38

5    ("For purposes of laches, the limitations period may expire even though part of the defendant's

6    conduct [is ongoing and] occurred within the limitations period.").  Here, the counterclaims were

7    filed on October 23, 2025, so laches is presumed if Counterclaimants knew or should have known

8    of WPE's alleged trademark uses before October 23, 2021, and alleged false advertising prior to

9    October 23, 2022—a threshold that is clearly met.  *Supra* § I.A; *see also* CC ¶¶ 233-234, 297

10   (allegations concerning "golden ratio" false advertising claim published on website in 2020 and not

11   "updated significantly since it was published").

12       A party asserting laches must "show that (1) [plaintiff's] delay in filing suit was

13   unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to

14   continue." *Jarrow*, 304 F.3d at 838.  Once the presumption of laches applies, the Court may presume

15   both elements are met—even on a motion to dismiss.  *Landrum* , 2011 WL 13217114 at *2 ("Where

16   any part of the claimed wrongful conduct occurred more than four years prior to the filing of the

17   Complaint, the court presumes that both elements of laches are met").  Here, the presumption of

18   laches is met, and there are no allegations that support Counterclaimants' delay in filing their claims,

19   or a finding that no prejudice exists.

20       **1.    Counterclaimants Unreasonably Delayed the Filing of Counterclaims**

21       Counterclaimants' delay is manifestly unreasonable.  "A determination of whether a party

22   exercised unreasonable delay in filing suit consists of two steps":  (1) "the length of delay, which is

23   measured from the time the plaintiff knew or should have known about its potential cause of action"

24   and (2) "whether the plaintiff's delay was reasonable." *Jarrow*, 304 F.3d at 838 (citations omitted).

25   The length of delay is measured from "when the plaintiff knew (or should have known) of the

26   allegedly infringing conduct, and ends with the initiation of the lawsuit in which the defendant seeks

27   to invoke the laches defense." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1226-

28   27 (9th Cir. 2012).  When a trademark infringement claim arises as a counterclaim rather than in the

1    initial complaint, the Ninth Circuit uses the counterclaim filing date as the end date for its laches

2    analysis.  *See Tillamook*, 465 F.3d at 1109 ("Because the analogous state limitations period had long

3    expired prior to Creamery's [counterclaim] filing in 2002, there is a presumption favoring Smoker's

4    laches defense."); *accord Dropbox, Inc. v. Thru Inc*., 728 F.App'x 717, 718 (9th Cir. 2018).

5        Counterclaimants' allegations acknowledge WPE's use of the WordPress Marks since 2010.

6    CC ¶¶ 4, 102, 103.  Thus, Counterclaimants knew (or should have known) of the allegedly infringing

7    trademark uses in 2010, resulting in a delay of 15 years before filing their October 23, 2025 claims.

8    Counterclaimants allege that WPE's false advertising began in January 2015 and continued through

9    January 2019 (CC ¶ 231-32)—resulting in a delay of 10 years—and resumed in August 2020 (*id.* ¶

10   233), resulting in a delay of five years.  Counterclaimants further allege that after the false statements

11   were "published" on WPE's website on August 25, 2020, they were not "updated significantly

12   since" then.  *Id.* ¶¶ 230, 234, 297.  Thus, Counterclaimants knew or should have known of the

13   allegedly false advertising for a minimum of five to ten years before belatedly filing their claims.

14       Despite WPE's continuous use of the WordPress Marks for more than a decade,

15   Counterclaimants do not allege any reason or justification for their filing delay.  "The reasonableness

16   of the plaintiff's delay is considered in light of the time allotted by the analogous limitations period"

17   and "whether the plaintiff has proffered a legitimate excuse for its delay." *Jarrow*, 304 F.3d at 838.

18   "[I]t is clear from the face of" the pleadings that Counterclaimants' delay "was not reasonable"–and

19   Counterclaimants do "not provide any explanation for [this] delay." *Landrum* , 2011 WL 13217114

20   at *2 (granting motion to dismiss without leave to amend because plaintiff's claims are barred by

21   laches); *see also Parts.com v. Google Inc.*, 2014 WL 12461256, at *5-6 (S.D. Cal. June 25, 2014)

22   (same); *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d Cir. 2019) (affirming dismissal

23   because the "delay is unreasonable, and the prejudice to the [defendant] is evident on the face of

24   [the plaintiff's] complaint").  Allegations concerning the growth of WPE's business, or its

25   "ratcheting up" of uses (*see* CC ¶¶ 4-5), cannot justify delay. *See, e.g., Tillamook* , 465 F.3d at 1110

26   (holding delay not justified merely because of the junior user's growth of its existing business and

27   the concomitant increase in its use of the mark); *Prudential Ins.*, 694 F.2d at 1154-55 (affirming

28   finding of laches and noting "[a]s for expansion in amount of business, it is true that [defendant] has

grown tremendously, but growth alone does not infringement make," such that plaintiff's encroachment allegations were insufficient to avoid the application of laches).

### 2. WPE is Unfairly Prejudiced by Counterclaimants' Delay

"Courts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based.  Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded.  Expectations-based prejudice derives from a defendant taking actions or suffering consequences that it would not have, had the plaintiff brought suit promptly." *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1118 (N.D. Cal. 2008).  Expectations-based prejudice is shown where the defendant "invested money to expand its business or entered into business transactions based on his presumed rights."  *Miller*, 454 F.3d at 999.

The prejudice to WPE, as confirmed by Counterclaimants' own allegations, is clear.  Counterclaimants' 15-year delay (*see* CC ¶¶ 102-103) makes "evidentiary prejudice [] clear due to the length of the delay."  *Landrum*, 2011 WL 13217114 at *2 (granting a motion to dismiss where prejudice made clear due to 14-year delay); *see also, e.g.*, *Parts.com*, 2014 WL 12461256 at *5-6 (granting a motion to dismiss where 5.5-year delay as reflected in complaint was prejudicial).  Here, prejudice can be presumed and there is "no hint in the" counterclaims "of any allegations that could be made to show the reasonableness of the delay or the lack of prejudice to" WPE.  *Landrum*, 2011 WL 13217114 at *2 (granting motion to dismiss where the complaint "clearly shows that Plaintiff's claims are barred by the defense of laches" and holding that leave to amend would be futile).

Because the allegations demonstrate Counterclaimants unreasonably delayed in filing suit for 15 years, thereby prejudicing WPE, the counterclaims should be dismissed as untimely.

## II.    COUNTERCLAIMANTS FAIL TO STATE VIABLE DILUTION CLAIMS

Counterclaimants have failed to allege facts sufficient to meet their high burden to show the WordPress Marks were famous before WPE first used them.  *See* 15 U.S.C. § 1125(c)(1); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 n.4 (9th Cir. 1999) ("no dispute exists" that, to establish dilution, defendant's "use must begin after the marks became famous").  Lacking these essential factual allegations, the federal and state dilution counterclaims must be dismissed.

A mark is famous only "if it is widely recognized by the general consuming public of the

1   United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C.

2   § 1125(c)(2)(A).  This "difficult and demanding requirement," *Coach Servs., Inc. v. Triumph*

3   *Learning LLC,* 668 F.3d 1356, 1373 (Fed. Cir. 2012) (citation omitted), limits fame to "those whose

4   mark is a 'household name,'" *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911-12 (9th Cir.

5   2002) (TREK mark not famous despite Lance Armstrong being pictured with a Trek bicycle "in

6   prominent displays, such as the front page of large circulation newspapers and on Wheaties boxes"),

7   *superseded on other grounds by statute*, Trademark Dilution Revision Act of 2006, *as recognized*

8   *in Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 870-71 (9th Cir. 2020).  To be

9   "famous," a mark must be "truly prominent and renowned." *Id.* at 907-08; *see also Pinterest, Inc.*

10  *v. Pintrips, Inc.,* 140 F. Supp. 3d 997, 1034-35 (N.D. Cal. 2015) (PINTEREST mark not famous

11  despite a survey demonstrating 75% brand recognition because no evidence showed the survey

12  respondents were drawn from the general public and despite coverage in *The New York Times*, *The*

13  *Wall Street Journal* and *The Los Angeles Times*, and having 25 million monthly active users).

14          When dilution claims fail to allege facts that, if true, are sufficient to show that the asserted

15  mark was famous before defendant's first use, they are dismissed at the pleading stage.  *See*, *e.g.*,

16  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065-67 (N.D. Cal. 2015); *Original Beauty*

17  *Tech. Co., LTD v. Oh Polly USA, Inc.*, 2022 WL 17224542 at *5 (C.D. Cal. Aug. 16, 2022).  For

18  example, in *Arcsoft*, the court granted a motion to dismiss dilution claims because the plaintiff's

19  allegations that its mark had "attained widespread and favorable recognition through advertising,

20  marketing, promoting, offering, and providing the app through multiple electronic platforms and

21  websites," been featured in "widely-circulated publications," and had been downloaded 60 million

22  times globally, were inadequate to plead fame because the plaintiff had not alleged these occurred

23  *before* defendant's first use of the mark.  153 F. Supp. 3d at 1065-66.  Similarly, the counterclaims

24  here fall far short of plausibly alleging that the WordPress Marks had already achieved widespread

25  fame among the general U.S. consuming public before WPE first began using them in 2010 (CC ¶

26  4; *see also id.* ¶¶ 102-103).  *Avery Dennison*, 189 F.3d at 878-79 (Avery Dennison's marks not

27  famous despite use "for large fractions of a century and regist[ration] for decades," "substantial

28  sums annually [spent] advertising each mark," and "significant annual volume of sales").

1    Counterclaimants do not satisfy their pleading burden by relying on WPE's post-2010

2    conduct and statements as proof of the WordPress Marks' supposed pre-2010 fame (CC ¶¶ 66-68).

3    The relevant question is whether WordPress Marks were famous *before* WPE's 2010 use, not

4    whether WPE found commercial advantage in the WordPress association or increased usage after

5    2018. *See, e.g.*, *Arcsoft*, 153 F. Supp. 3d at 1065-67. Similarly deficient are Counterclaimants'

6    allegations that WordPress is ***currently*** "one of the largest open-source projects" and a "blogging

7    giant." CC ¶¶ 59-60. Likewise, Counterclaimants' conclusory allegations of "substantial

8    investments in advertising" provide no specific facts, nor are they tied to any time frame. *Id.* ¶ 63.

9    The closest Counterclaimants come is their allegation that WordPress allegedly "power[ed]

10    over 14% of websites globally" in "the early 2010s." *Id.* ¶ 59. But that is also insufficient. First, it

11    still falls short on the temporal showing because even if it showed fame in the "early 2010s," it does

12    not establish fame before WPE's first use *in* 2010. Second, a statistic about global websites does

13    not address the relevant population—the "general consuming public of the United States." 15

14    U.S.C. § 1125(c)(2)(A). Third, 14% is nowhere close to the showing of recognition required to

15    establish fame. *See* 3 McCarthy on Trademarks and Unfair Competition § 24:106 (5th ed.) (at least

16    75% consumer recognition is required for fame).

17    Because Counterclaimants' conclusory allegations about the WordPress Marks being

18    "famous and distinctive" (CC ¶ 58) and "strongly associated in consumers' minds" (*id.* ¶ 57) lack

19    factual support, they are insufficient to plausibly plead the fame required for dilution protection.

20    Accordingly, the dilution counterclaims must be dismissed. *E.g., Vice Spirits Inc. v. The Vice Wines,*

21    *LLC*, 2025 WL 3013971, at *3-4 (N.D. Cal. Oct. 28, 2025); *Gibralter, LLC v. DMS Flowers, LLC*,

22    2025 WL 2623293, *7 (E.D. Cal. Sept. 11, 2025); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686

23    F. Supp. 3d 900, 915-16 (N.D. Cal. 2023); *Arcsoft*, 153 F. Supp. 3d at 1067.[1]

24

25

26

_____

27    [1]  Because state and federal dilution claims are "subject to the same analysis" as to fame and dilution
(except that California claims require fame in California only as opposed to nationwide), *Avery*

28    *Dennison Corp.*, 189 F.3d at 875, the Fourth and Fifth Counterclaims fall together.

## III.    COUNTERCLAIMANTS' FALSE ADVERTISING CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To state a Lanham Act false advertising claim, Counterclaimants must plausibly allege with specificity that WPE made a materially false statement in a commercial advertisement about its own or another's product.  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc*., 758 F.3d 1069, 1071 (9th Cir. 2014); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 934 (N.D. Cal. 2021), *aff'd sub nom. Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024).  Because Rule 9(b) applies, Counterclaimants' allegations must include "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quotations omitted).[2]  Counterclaimants' allegations do not come close.

Counterclaimants deploy vague and conclusory generalities, alleging "false and misleading misrepresentations communicating to consumers that [WPE] supports WordPress" and a "false and misleading promotional campaign [that] ***includes but is not limited to*** general statements WP Engine has promoted on its website and blog."  CC ¶¶ 297, 299 (emphasis added).  But Rule 9(b) requires "strip[ping] away" such indefinite assertions.  *Regal W. Corp. v. Nguyen*, 412 F. Supp. 3d 1305, 1313-14 (W.D. Wash. 2019) (dismissing allegation of "other images" in a false advertising claim as "not pled with particularity"); *AlterG, Inc.*, 388 F. Supp. 3d at 1153 ("[it] is not enough" to "assert[] that 'Defendants have disseminated' these statements").  A party must plead false advertising claims "with particularity," or face dismissal.  *Alfasigma*, 525 F. Supp. 3d at 1102.

The sole specific statement Counterclaimants allege was false does not salvage their claim.  Counterclaimants allege that WPE "promoted on its website…that it 'maintain[s] a 'golden ratio'

---

[2]  *See also, e.g., Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019) ("Lanham Act false advertising claims must meet the Rule 9(b) particularity pleading requirements."); *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1102-03 (N.D. Cal. 2021) (holding Rule 9(b) applies to false advertising claims, which sound in fraud, even though the "complaint does not explicitly allege fraud" and "avoids averments that Defendant 'knowingly' or 'intentionally' made the alleged misrepresentations"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019) (allegations that false statements were knowingly made in bad faith triggers Rule 9(b)).

of WordPress contributors to users' such 'that [it] contribute[s] five percent of their resources to WordPress.'" *Id.* ¶ 297 (alterations original).  But this characterization of WPE's website is belied by the contents of the actual, unaltered statement, as evidenced later in the counterclaims and in the URL link Counterclaimants cite.  *Id.* ¶ 233 n.63.  The statement actually reads: "WP Engine has submitted our Five for the Future pledge, which is showcased on WordPress.org. The pledge, which *is aimed at maintaining a 'golden ratio'* of WordPress contributors to users, *proposes that organizations contribute* five percent of their resources to WordPress." *Id.* ¶ 233 (emphasis added).  When read in its entirety, without Counterclaimants' alterations, WPE's statement plainly describes the Five for the Future pledge program itself—not WPE's contributions.  WPE is explaining what the WordPress pledge "proposes" and what it is "aimed at," not representing that WPE itself maintains any particular ratio or contributes any specific percentage.  But even if Counterclaimants were somehow correct about the meaning of WPE's statement, they fail to allege facts showing it is false.  *Alfasigma*, 525 F. Supp. 3d at 1102 (dismissing false advertising claim under Rule 9(b) that failed to allege why a statement was false).  Counterclaimants cannot manufacture an actionable false statement by distorting WPE's words through selective quotation and strategic alterations, nor can they do so without establishing why a purported statement (had it been made) was false.

The only other specific statement Counterclaimants identify is WPE's blog post stating that WPE's contributions have included "tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources."  CC ¶¶ 250-51.  This allegation fails Rule 9(b)'s particularity requirement because Counterclaimants do not explain "why" or "how" this statement is purportedly false.  *Becerra*, 945 F.3d at 1228-31.  They do not allege facts demonstrating that WPE contributed less than "tens of millions of dollars" or that WPE's contributions did not go toward "events, sponsorships, and the development of educational resources."  CC ¶ 250.  Instead, they vaguely assert that this statement is somehow "undermine[d]" by WPE's conduct—without specifying what conduct, when it occurred, or how it renders the statement false.  *Id.* ¶¶ 257, 299.  This falls far short of Rule 9(b)'s demands.

Counterclaimants also allege that WPE made "specific numerical commitments" about "the number of contributors, hours per week, and teams devoted to WordPress" (*id.* ¶¶ 297-98), and that

1   WPE "has not fulfilled its stated pledge for some time, if it ever has" (*id.* ¶¶ 237-243, 247).  But

2   they do not allege WPE misrepresented what it actually did.  Counterclaimants' vague allegations

3   fail to put WPE on notice of which statements are allegedly false, when they were made, or why

4   they were false when made—all required under Rule 9(b).  *TransFresh Corp. v. Ganzerla & Assoc.,*

5   *Inc.*, 862 F. Supp. 2d 1009, 1019-20 (N.D. Cal. 2012) (dismissing false advertising claims under

6   Rule 9(b) plead without "specific facts as to when or where these statements were made").  The

7   allegation that a company is not currently meeting a past statement of intent does not establish that

8   the statement of intent was false when originally made.  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513

9   F.3d 1038, 1053 (9th Cir. 2008) (false advertising claim must allege that statement was false when

10  made to defeat 12(b)(6) motion); *Broadcom Corp. v. SiRF Tech., Inc.*, 2009 WL 10672527, at *3

11  (C.D. Cal. Dec. 16, 2009) (later events do not render a statement false when made and keeping a

12  statement posted on a website does not render it "currently untrue" if it was true at the time it was

13  made).  Counterclaimants provide no factual allegations suggesting that WPE's pledges were false

14  at the time they were posted, as opposed to aspirational commitments that may have changed over

15  time.  Nor do Counterclaimants allege any facts plausibly supporting that WPE's pledges about

16  contributions materially affected consumer purchasing decisions.  *Intuit Inc. v. HRB Tax Grp., Inc.*,

17  2024 WL 4093918, at *5 (N.D. Cal. Sept. 5, 2024) (recitation of the legal standard that "false and

18  misleading statements are material because they are likely to influence consumer purchasing

19  decisions" does "not suffice" to plead materiality element of false advertising claim).

20       Counterclaimants further allege WPE engaged in false advertising by "falsely position[ing]

21  itself as a sponsor or endorsed partner of WordPress" and making "public representations of support

22  for WordPress."  CC ¶ 298.  These allegations also fail.  Counterclaimants do not cite a single

23  example of how, when, or where WPE "falsely positioned itself" as a WordPress sponsor or partner.

24  They do not identify any specific "public representation[] of support" that WPE made.  And they do

25  not explain why any such representation would be false or misleading.  *TransFresh Corp.*, 862 F.

26  Supp. 2d at 1019-20; *Becerra*, 945 F.3d at 1228.  Nor do any of their other allegations provide the

27  required specificity.  Accordingly, the false advertising claim must be dismissed.

28

IV.    **COUNTERCLAIMANTS' TRADEMARK COUNTERCLAIMS ARE BARRED BY THE NOMINATIVE FAIR USE DOCTRINE**

Counterclaimants' trademark infringement and dilution counterclaims independently fail because WPE's alleged uses are nominative fair use.  The "nominative use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  "[A] commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*; *see also* 15 U.S.C. § 1125(c)(3)(A) (exempting nominative uses from dilution claims).  Here, WPE's use of the WordPress and WooCommerce Marks (the "Challenged Terms") as pleaded satisfies all three elements.

*First*, WPE would not be able to reasonably identify its products or services without use of the Challenged Terms.  WPE uses the term "WordPress" on its website and marketing materials, to refer to the software in which it specializes, and on which its customers' sites are built.  *See e.g.,* CC ¶¶ 102-108, 110-113.  Similarly, WPE uses the terms "WooCommerce" and "Woo" to refer to the open source WooCommerce plugin, which some of its customers use as an ecommerce tool on their WPE-hosted websites.  CC ¶¶ 120, 135, 282; SAC, ¶ 40.  Without using the Challenged Terms, WPE would be forced to resort to "absurd descriptive phrases" to identify itself and its services.  *See Applied Underwriters*, 913 F.3d at 893-95 (affirming Rule 12(b)(6) dismissal on nominative fair use grounds); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *4 n.3 (S.D. Cal. Apr. 28, 2011) (granting motion to dismiss on nominative fair use grounds).  Counterclaimants propose that as an alternative to "WordPress," WPE use "open-source CMS hosting," or "hosting services compatible with the most popular open-source publishing platform," and that as an alternative to "WooCommerce" and "Woo," WPE use "ecommerce hosting."  CC ¶ 209.  But these

descriptions would be ineffectual at communicating WPE's product and service offerings because there are multiple open source CMSs (e.g., Joomla and Drupal) and multiple ecommerce plugins (e.g., Shopify).  SAC ¶ 30; *see also Applied Underwriters*, 913 F.3d at 893-95 (defendant did not have to use generic descriptions of workers' comp programs in advertising its seminar, but could instead use plaintiffs Equity Comp mark, because the seminar specifically discussed the Equity Comp program).  As Counterclaimants well know, if WPE were forced to use such opaque phrasing, it is unlikely anyone ever looking for hosting services for open source WordPress software would find it.  Moreover, "a descriptive alternative need not be employed" where, as here, the "use of a mark is necessary to refer to a specific brand or product." *Applied Underwriters*, 913 F.3d at 893-94 (citing *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1180 (9th Cir. 2010)); *New Kids*, 971 F.2d at 306 ("[S]ometimes there is no descriptive substitute…. For example, one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls.")

*Second,* WPE does not use more of the Challenged Terms than necessary to identify its products and services.  The relevant inquiry for this factor is not the **number** of uses a mark, but rather the **nature** of those uses.  *Applied Underwriters*, 913 F.3d at 895.  Counterclaimants' own allegations acknowledge WPE nominatively used many of the exact phrases it is now challenging and the nature of WPE's uses of the Challenged Terms has remained unchanged since WPE's inception and early years, when Defendants expressly approved of such uses (*see* CC ¶ 102), through today.  For example, Counterclaimants characterize WPE's use of "WordPress Hosting" as "descriptive" and "primarily" nominative "to refer to and explain its services" (*id.* ¶¶ 4, 102, 104-106), yet they purport to challenge this identical phrase in connection with WPE's product descriptions (*id.* ¶ 130).  Similarly, Counterclaimants approve of WPE's use of "Managed WordPress" in one section while condemning the same phrase later.  *Compare id.* ¶¶ 106-108, *with id.* ¶ 119.  Their other alleged examples fail too.  Comparing the screenshots in the Counterclaims shows that the respective webpages of WPE and wordpress.com have little resemblance.  *See id.* ¶¶ 124-125.  The fact that WPE's ads sometimes appear above Counterclaimants' own products and services is not enough to show that WPE makes more than necessary use of the Challenged Terms.

1   *See, e.g., Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 719 (9th Cir. 2024),

2   *cert. denied*, 145 S. Ct. 2732 (2025) (trademark holder must show more than "mere diversion" of

3   consumers to another's website to show improper use of keyword advertising).

4        *Third*, Counterclaimants do not allege any statement by WPE that "expressly or by fair

5   implication connotes endorsement or joint sponsorship" by Counterclaimants. *Toyota*, 610 F.3d at

6   1177.  Nominative use does not require a user to "expressly disavow" association with a trademark

7   holder or even to provide a disclaimer, as long as the user is engaging in "truthful, non-misleading

8   speech." *Toyota*, 610 F.3d at 1177.  Starting with WPE's company name, the use of "WP" cannot

9   misleadingly suggest endorsement or sponsorship by Counterclaimants because they allege they

10  have expressly permitted unaffiliated third parties to use this abbreviation in their branding.  CC ¶

11  217 (wordpress.org trademark policy permits the use of the abbreviation "WP").

12       Counterclaimants' screenshot from a subpage of WPE's website (*id.* ¶ 218) **about**

13  **WordPress** likewise fails to suggest sponsorship or endorsement.  The very purpose of the content

14  management system subpage Counterclaimants reference is to explain the benefits of the WordPress

15  content management system (as opposed to some other web architecture) that WPE uses to host all

16  its customers' websites, including information such as "WordPress CMS basics," "Why is

17  WordPress the most popular CMS?" and "An introduction to the WordPress CMS."  RJN, Ex. 8

18  (incorporated by reference in the Counterclaims at paragraph 218).  In this context, the uses of

19  WordPress refer exclusively to the WordPress software itself. *See Bell v. Pac. Ridge Builders, Inc.*,

20  2019 WL 13472127, at *8 (N.D. Cal. Jun. 4, 2019) (granting motion to dismiss on nominative fair

21  use grounds when the content surrounding the trademark use clarified Defendants' relationship to

22  the mark).

23       Counterclaimants' isolated examples of confusion do not convert WPE's statements or

24  actions into improper suggestions of sponsorship or endorsement.  At most, they reflect non-

25  actionable confusion incidental to the fact that WPE offers services that actually relate to the

26  WordPress open source software. *See, e.g.*, *KP Permanent Make-Up, Inc. v. Lasting Impression I,*

27  *Inc.*, 543 U.S. 111, 119 (2004) ("Purchasers may be mistaken, but they are not deceived by false

28  representations, and equity will not enjoin against telling the truth.") (internal quotation marks and

1   citation omitted).  Indeed, none of the examples reflect any endorsement or sponsorship language

2   that the allegedly confused user relied upon that was confusing.  In any event, the complaints cited

3   in the counterclaims represent no more than a tiny fraction of the customers who use WPE's services

4   in connection with 1.5 million websites.  Answer 49 (admitting WPE has 1.5 million installs).  Such

5   de minimis evidence is insufficient to plausibly plead a likelihood of confusion.  *See generally*

6   *Lerner*, 119 F.4th at 720 (affirming summary judgment where evidence of confusion in 0.216% of

7   intake calls was "de minimis" and "fail[ed] to support a finding of likelihood of confusion").

8   Counterclaimants' allegations of confusion by agency partners are even less convincing.  Even

9   assuming that some partners believe "WP Engine" stands for "WordPress Engine," this does not

10  plead that they believe WPE is sponsored by, endorsed by or affiliated with Counterclaimants.

11  Indeed, these same allegedly confused agency partners acknowledge many years of experience with

12  WPE, demonstrating that they understand WPE operates independently from Counterclaimants.  CC

13  ¶ 176 (statement from Razemedia noting that they have been an Agency Partner for "multiple years

14  running").  Counterclaimants' additional reliance on invisible-to-the-consumer uses, such as

15  metatags and keywords (*e.g.*, CC ¶¶ 131-135) do not salvage WPE's lack of statements suggesting

16  endorsement or sponsorship.  *See, e.g.*, *Network Automation, Inc. v. Advanced Systems Concepts,*

17  *Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011) ("The likelihood of confusion will ultimately turn on what

18  the consumer saw on the screen and reasonably believed, given the context.") (citation, internal

19  quotes omitted).

20       Because all three elements of the nominative fair use defense can be established on the face

21  of the counterclaims, this Court should dismiss all of Counterclaimants' trademark claims, including

22  infringement, dilution, false advertising, and unfair competition.  *See Applied Underwriters,* 913

23  F.3d at 895 (affirming dismissal where defendants offered a seminar discussing plaintiffs' specific

24  worker's comp program and provided advertisements using words which were "necessary to

25  identify plaintiff's product"); *see also CMRE Fin. Servs. Inc. v. Doxo Inc.*, 2022 WL 16701259, at

26  *6 (W.D. Wash. Oct. 7, 2022) ("Dismissing trademark infringement claims [under Rule 12(c)] is

27  appropriate where the defendant's nominative fair use is clear on the face of the complaint.").

28

1    **V.    COUNTERCLAIMANTS' UNFAIR COMPETITION COUNTERCLAIMS**
2    **SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

3    Counterclaimants allege that WPE engaged in unfair competition based on their other

4    allegations of trademark infringement, dilution, and false advertising.  CC ¶¶ 329-348.  In addition

5    to being time-barred, Counterclaimants' unfair competition claims fail because they are entirely

6    derivative of their other failed claims and assert no independent wrongful conduct beyond the

7    alleged violations addressed above.  Having failed to state viable claims for trademark infringement,

8    false advertising, or dilution, Counterclaimants cannot repackage the same deficient allegations as

9    unfair competition.  *See, e.g., Alvarado v. Amazon.com, Servs. LLC*, 2022 WL 899850, at *2 (N.D.

10   Cal. Mar. 28, 2022) (dismissing claims for unfair competition "based on predicate violations of

11   other laws" that "fail[ed] because [plaintiff] has not plausibly pleaded any other violation of law");

12   *Bertolina v. Wachovia Mortg., FSB*, 2011 WL 3473527, at *5 (N.D. Cal. Aug. 9, 2011) ("Because

13   the complaint includes no facts supporting predicate violations and does not allege an independent

14   violation of the UCL, Plaintiff fails to state a claim for unfair competition.").

15   **VI.   AUTOMATTIC AND MULLENWEG LACK STANDING TO BRING**
16   **TRADEMARK COUNTERCLAIMS**

17   Defendants Mullenweg and Automattic lack standing to assert trademark counterclaims

18   because neither alleges ownership of any asserted trademarks, and their status as mere licensees,

19   with significant restrictions (*see* CC ¶¶ 36-40, 47-48), is insufficient to confer standing.

20   Only registrants of registered trademarks can assert claims under Section 1114, which limits

21   liability to claims brought "by the ***registrant***."   15 U.S.C. § 1114(1) (emphasis added).   A

22   "registrant" includes "the legal representatives, predecessors, successors and assigns" of such

23   registrant. 15 U.S.C. § 1127.  Automattic and Mullenweg are not these; rather, as Counterclaimants

24   allege, the Foundation is the owner and registrant of the WordPress Marks, and WooCommerce is

25   the owner and registrant of the WooCommerce Marks.  CC ¶¶ 286-287.

26   Automattic and Mullenweg similarly lack standing to assert claims for federal and state

27   trademark dilution, as well as common law trademark infringement.  Federal trademark dilution

28   claims require that the plaintiff be the "owner of the marks at issue."  *STX, Inc. v. Bauer USA, Inc.*,

1997 WL 337578, at *4 (N.D. Cal. Jun. 5, 1997) (dismissing federal dilution claim for lack of standing where plaintiff is "exclusive licensee but not the owner of the marks at issue"); *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956, 965 (S.D. Cal. 2021) (dismissing federal dilution claim because plaintiff lacked "a property interest in the trademark, or rights that amount to those of an assignee"). California's dilution statute is equally restrictive, permitting only the "owner of a mark" to assert dilution claims. Cal. Bus. & Prof. Code § 14247; *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1031 (N.D. Cal. 2018) (granting summary judgment of dilution claims brought by non-owner because "only a mark's owner has standing under federal and state law to bring claims for trademark dilution"). Finally, California common law trademark infringement claims under California law also impose an ownership requirement for standing. *Brown v. Green*, 2012 WL 4120379, at *4 (N.D. Cal. Sept. 18, 2012) ("[A] plaintiff bringing a common law trademark infringement claim under California law … must demonstrate that he owns the trademark to have standing."); *Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp.*, 2009 WL 1542651, at *1 (N.D. Cal. Jun. 2, 2009) (granting motion to dismiss a common law infringement claim for lack of standing because plaintiff did "not allege that it was the first to adopt or use the mark at issue," "which is the requirement for ownership under the common law"). Because the alleged owners of the asserted trademarks are the Foundation and WooCommerce, Mullenweg and Automattic's claims for trademark infringement and dilution must be dismissed with prejudice, and their unfair competition claims based upon those trademark claims likewise fail.

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

WPE respectfully requests that the Court grant this Motion and dismiss all of the counterclaims with prejudice.

DATED:  November 13, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By ____/s/ Rachel Herrick Kassabian____
Rachel Herrick Kassabian
*Attorneys for Plaintiff WPEngine, Inc.*