JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER (admitted pro hac vice)
  osnyder@gibsondunn.com
HOWARD S. HOGAN (admitted pro hac vice)
  hhogan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg and Counterclaimants WordPress Foundation and WooCommerce Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual, <br><br> Defendants. <br> ——————————————————— <br> AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation, <br><br> Counterclaimants, <br><br> v. <br><br> WPENGINE, INC., a Delaware corporation, <br><br> Counterdefendant. | Case No. 3:24-cv-06917-AMO <br><br> **COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS** <br><br> **Hearing:** <br> Date:  February 5, 2026 <br> Time:  2:00 p.m. <br> Place:  Courtroom 10 <br><br> **HON. ARACELI MARTÍNEZ-OLGUÍN** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................................ 1

II.  LEGAL STANDARD ........................................................................................................ 2

III.  ARGUMENT ..................................................................................................................... 2

    A.  WPE's Laches Argument Fails on Multiple Grounds and Requires the Court to Resolve Inherently Factual Questions That Cannot Be Decided at the Pleading Stage ................................................................................................................................ 2

        1.  Laches Cannot Be Found on the Face of the Counterclaims ........................... 3

        2.  WPE Misstates the Law on the Applicable Limitations Period ....................... 4

        3.  WPE's Infringement Did Not Start Until After October 2020 ....................... 5

        4.  WPE Cannot Establish That Laches Applies ................................................... 8

    B.  California's Statute of Limitations Does Not Bar the State-Law Claims ................. 10

    C.  The WordPress Parties Sufficiently Allege that the WordPress Mark Is Famous ...... 10

    D.  The WordPress Parties Plausibly Allege a Claim Under Section 43(a) of the Lanham Act ............................................................................................................... 14

    E.  WPE's Nominative Fair Use Defense Fails ............................................................. 18

        1.  WPE's Use of the Marks Is Not Necessary ................................................... 19

        2.  WPE Used More of the Marks Than Reasonably Necessary .......................... 19

        3.  WPE's Use Suggests Sponsorship or Endorsement by the WordPress Parties ............................................................................................................. 20

    F.  The WordPress Parties Plausibly Allege Unfair Competition Claims ...................... 21

    G.  Automattic and Mullenweg Allege Standing to Bring the Counterclaims ................ 22

IV.  CONCLUSION ................................................................................................................ 25

i

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*Abdul-Jabbar v. Gen. Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996)...............................................................................................21

5

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) ...................................................................................2

6

7

*Am. Petrofina v. Petrofina of Cal., Inc.*,
  596 F.2d 896 (9th Cir. 1979)..............................................................................................24

8

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*,
  522 F.3d 1200 (11th Cir. 2008) ............................................................................................6

9

10

*Apple Inc. v. Samsung Elecs. Co.*,
  2014 WL 4145499 (N.D. Cal. Aug. 20, 2014)...................................................................13

11

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009) ...............................................................................19

12

13

*Applied Underwriters, Inc. v. Lichtenegger*,
  913 F.3d 884 (9th Cir. 2019)................................................................................................7

14

*Arcsoft, Inc. v. Cyberlink Corp.*,
  153 F. Supp. 3d 1057 (N.D. Cal. 2015) .............................................................................14

15

16

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
  2008 WL 6742224 (N.D. Cal. Dec. 18, 2008) ...................................................................19

17

*Avery Dennison Corp. v. Sumpton*,
  189 F.3d 868 (9th Cir. 1999)..............................................................................................13

18

19

*Barkley & Assocs., Inc. v. Quizlet, Inc.*,
  2025 WL 2946993 (C.D. Cal. Sept. 11, 2025)..............................................................18, 21

20

*Brickman v. Fitbit, Inc.*,
  2016 WL 3844327 (N.D. Cal. July 15, 2016).......................................................................5

21

22

*Brown v. Green*,
  2012 WL 4120379 (N.D. Cal. Sept. 18, 2012) ..................................................................24

23

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994)..............................................................................................22

24

25

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012)..........................................................................................10

26

*Couveau v. Am. Airlines, Inc.*,
  218 F.3d 1078 (9th Cir. 2000)..............................................................................................3

27

28

*CytoSport, Inc. v. Vital Pharms., Inc.*,
　894 F. Supp. 2d 1285 (E.D. Cal. 2012)..................................................................2

*Czaplicki v. The Hoegh Silvercloud*,
　351 U.S. 525 (1956)..................................................................................................4

*DC Comics v. Towle*,
　802 F.3d 1012 (9th Cir. 2015)................................................................................9

*Downing v. Abercrombie & Fitch*,
　265 F.3d 994 (9th Cir. 2001)................................................................................21

*Dropbox, Inc. v. Thru Inc.*,
　728 F. App'x 717 (9th Cir. 2018) ..........................................................................5

*E-Sys., Inc. v. Monitek, Inc.*,
　720 F.2d 604 (9th Cir. 1983)................................................................................9

*Equal Emp. Opportunity Comm'n v. LogistiCare Sols. LLC*,
　2020 WL 6781270 (D. Ariz. Nov. 18, 2020)........................................................8

*ESG Cap. Partners, LP v. Stratos*,
　828 F.3d 1023 (9th Cir. 2016)..............................................................................22

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
　411 F. Supp. 3d 905 (N.D. Cal. 2019) .........................................................15, 16

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
　12 F. Supp. 2d 1068 (C.D. Cal. 1998)..................................................................25

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
　826 F.2d 837 (9th Cir. 1987)................................................................................14

*Gibralter, LLC v. DMS Flowers, LLC*,
　2025 WL 2623293 (E.D. Cal. Sept. 11, 2025)......................................................14

*GP Vincent II v. Est. of Beard*,
　68 F.4th 508 (9th Cir. 2023)....................................................................................2

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
　547 F.3d 1213 (9th Cir. 2008)..............................................................................24

*Harper & Row Publishers, Inc. v. Nation Enters.*,
　471 U.S. 539 (1985)..............................................................................................18

*Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*,
　2019 WL 6486039 (C.D. Cal. Aug. 23, 2019)......................................................23

*Hudson Ins. Co. v. Colony Ins. Co.*,
　624 F.3d 1264 (9th Cir. 2010)..............................................................................23

*Huseman v. Icicle Seafoods, Inc.*,
　471 F.3d 1116 (9th Cir. 2006)................................................................................9

*Impulsaria, LLC v. United Distrib. Grp., LLC*,
　2012 WL 5178147 (W.D. Mich. Oct. 18, 2012) ..................................................... 13

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
　2017 WL 10402610 (C.D. Cal. Dec. 21, 2017) .................................................... 12

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
　2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) ..................................................... 23

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
　823 F.3d 153 (2d Cir. 2016) ................................................................................ 19

*Int'l Rectifier Corp. v. IXYS Corp.*,
　2002 WL 35649417 (C.D. Cal. 2002) .................................................................... 9

*Intuit Inc. v. HRB Tax Group, Inc.*,
　2024 WL 4093918 (N.D. Cal. Sept. 5, 2024) ............................................... 17, 18

*Italia Marittima, S.P.A. v. Seaside Transp. Servs., LLC*,
　2010 WL 3504834 (N.D. Cal. Sep. 7, 2010) .................................................. 3, 8, 9

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
　304 F.3d 829 (9th Cir. 2002) ............................................................................. 2, 3

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d 988 (9th Cir. 2018) ............................................................................. 2, 3

*Kling v. Hallmark Cards, Inc.*,
　225 F.3d 1030 (9th Cir. 2005) ............................................................................... 3

*Kourtis v. Cameron*,
　419 F.3d 989 (9th Cir. 2005) ............................................................................. 3, 4

*Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*,
　2018 WL 6164327 (C.D. Cal. Aug. 20, 2018) ..................................................... 15

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*,
　2018 WL 5099277 (C.D. Cal. July 10, 2018) ................................................... 6, 8

*Makreas v. First Nat'l Bank of N. Cal.*,
　856 F. Supp. 2d 1097 (N.D. Cal. 2012) ............................................................... 22

*McGinity v. Procter & Gamble Co.*,
　69 F.4th 1093 (9th Cir. 2023) .............................................................................. 17

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
　686 F. Supp. 3d 900 (N.D. Cal. 2023) ................................................................. 14

*Nat'l Football League Props., Inc. v. Wichita Falls Sportswear, Inc.*,
　532 F. Supp. 651 (W.D. Wash. 1982) .................................................................. 23

*New Kids on the Block v. News America Publishing, Inc.*,
　971 F.2d 302 (9th Cir. 1992) ........................................................................ 18, 19

*New W. Corp. v. NYM Co. of Cal.*,
   595 F.2d 1194 (9th Cir. 1979)................................................................................14

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008)...............................................................................17

*Original Beauty Tech. Co. v. Oh Polly USA, Inc.*,
   2022 WL 17224542 (C.D. Cal. Aug. 15, 2022)....................................................14

*Padres, L.P. v. Rimel's La Jolla, LLC*,
   2021 WL 2559701 (S.D. Cal. Apr. 27, 2021).......................................................18

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
   894 F.3d 1015 (9th Cir. 2018).................................................................................9

*Pinterest, Inc. v. Pintrips, Inc.*,
   140 F. Supp. 3d 997 (N.D. Cal. 2015) ..................................................................14

*Planet Drum Found. v. Hart*,
   2017 WL 4236932 (N.D. Cal. Sept. 24, 2017) .......................................................3

*Playboy Enters., Inc. v. Welles*,
   279 F.3d 796 (9th Cir. 2002).................................................................................19

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004)...................................................................................8

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic &*
   *Sports Physical Therapy P.C.*,
   314 F.3d 62 (2d Cir. 2002).....................................................................................6

*Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*,
   694 F.2d 1150 (9th Cir. 1982).................................................................................7

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
   2014 WL 12567147 (C.D. Cal. Dec. 31, 2014) ...................................................25

*Rearden LLC v. Walt Disney Co.*,
   293 F. Supp. 3d 963 (N.D. Cal. 2018) ..................................................................21

*Rolex Watch U.S.A., Inc. v. Agarwal*,
   2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) ...................................................15

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
   2021 WL 3191733 (N.D. Cal. July 28, 2021).......................................................18

*Save the Peaks Coal. v. U.S. Forest Serv.*,
   669 F.3d 1025 (9th Cir. 2012).................................................................................4

*Sensible Foods LLC v. World Gourmet, Inc.*,
   2011 WL 5244716 (N.D. Cal. Nov. 3, 2011)..........................................................9

*Elec. Arts, Inc. v. Textron Inc.*,
   2012 WL 3042668 (N.D. Cal. July 25, 2012)..........................................19, 20, 21

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
　305 F.3d 894 (9th Cir. 2002) ................................................................................13

*Third Est. LLC v. Cornerman Prods. LLC*,
　2013 WL 12144110 (C.D. Cal. Aug. 5, 2013) ......................................................10

*Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
　465 F.3d 1102 (9th Cir. 2006) ...........................................................................5, 7

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
　610 F.3d 1171 (9th Cir. 2010) ....................................................................7, 8, 20

*TransFresh Corp. v. Ganzerla & Ass'n, Inc.*,
　862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...........................................................16, 17

*Upper Deck Co. v. Panini Am., Inc.*,
　469 F. Supp. 3d 963 (S.D. Cal. 2020) ..................................................................25

*Waits v. Frito-Lay, Inc.*,
　978 F.2d 1093 (9th Cir. 1992) .............................................................................24

*Whittier v. Visscher*,
　209 P. 23 (Cal. 1922) ............................................................................................4

*Yelp, Inc. v. ReviewVio, Inc.*,
　2024 WL 2883668 (N.D. Cal. June 6, 2024) ..............................................11, 12, 21

*ZF Micro Devices, Inc. v. TAT Cap. Partners, Ltd.*,
　5 Cal. App. 5th 69 (2016), *as modified* (Nov. 30, 2016) ..................................4, 10

*Zox LLC v. Zox*,
　2021 WL 4816664 (C.D. Cal. July 12, 2021) ......................................................9, 10

**Statutes**

15 U.S.C. § 1114 ................................................................................22, 23, 25

15 U.S.C. § 1125 ................................................................10, 12, 14, 18, 24, 25

15 U.S.C. § 1127 ................................................................................................23

Cal. Bus. & Prof. Code § 14247 .........................................................................25

Cal. Bus. & Prof. Code § 17200 ....................................................................22, 25

**Rules**

Fed. R. Civ. P. 9 ....................................................................................15, 16, 17

Fed. R. Civ. P. 12 ...........................................................................1, 2, 4, 18

**Treatises**

3 McCarthy on Trademarks and Unfair Competition § 24:103 (5th ed.) ...............10

3 McCarthy on Trademarks and Unfair Competition § 24:106 (5th ed.)..............................................13

6 McCarthy on Trademarks and Unfair Competition § 31:19 (4th ed.)..................................................6

Restatement (Third) of Unfair Competition § 31 ..................................................................................8

COUNTERCLAIMANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO
vi

# I.    INTRODUCTION

The counterclaims state numerous well-pleaded and cognizable causes of action. WP Engine, Inc.'s ("WPE") motion to dismiss fails at the outset because it asks this Court to do what Rule 12 and decades of trademark precedent unequivocally forbid: disregard detailed factual allegations, resolve fact-intensive disputes on a barren record, and adopt WPE's preferred narrative in place of the one the Court must accept as true. Rather than engage with the counterclaims as pleaded, WPE recasts the story entirely—advancing a self-serving version of events, twisting the alleged facts, and ignoring the specificity and volume of the allegations. Rule 12 does not permit a defendant to rewrite the complaint or smuggle in its own version of facts to avoid discovery. WPE's invitation for the Court to do so should be rejected outright.

Counterclaimants Automattic, Inc., Matt Mullenweg, WordPress Foundation, and WooCommerce Inc. (collectively, the "WordPress Parties") allege in extensive detail how WPE abandoned its early, nominative use of the WordPress marks and launched an aggressive campaign to appropriate the reputation, goodwill, and community trust that the WordPress ecosystem built over two decades. After starting as a small hosting provider using the marks to identify the WordPress services it supported, WPE pivoted sharply—misappropriating the WordPress Parties' intellectual property and using the marks for its own commercial benefit.

As the counterclaims describe, WPE rebranded itself as "The WordPress Technology Company," rolled out products labeled "Headless WordPress," "Core WordPress," and "Enterprise WordPress," exponentially increased its use of the "WordPress" and "WooCommerce" marks across its website, marketing materials, and hidden metadata, and even permitted partners to refer to it as "WordPress Engine." At the same time, WPE publicly promoted itself as a company that "gives back" to the broader WordPress project—while failing to honor the very commitments it touts to consumers.

WPE's motion to dismiss does not—and cannot—claim that these allegations are insufficient. Instead, it simply ignores them. WPE asks this Court to draw inferences in its favor, rely on facts outside the pleadings, and cut off the fact-finding process before it begins. That is not what Rule 12 allows. The counterclaims span roughly 100 pages of detailed, specific allegations; WPE asks the Court

Gibson, Dunn &
Crutcher LLP

1    to disregard them wholesale and resolve, on *no record*, questions that are quintessentially factual.

2        WPE's patchwork of defenses would require the Court to decide when WPE's conduct crossed

3    the line from nominative use into infringement, when the WordPress Parties first learned of that esca-

4    lation, the scope and extent of WPE's misuse of the marks, WPE's intent, and whether decades of

5    widespread public recognition established the fame of the WordPress name. These are classic jury

6    questions, not matters for a Rule 12(b)(6) motion—especially in trademark cases where courts repeat-

7    edly hold that such issues are ill-suited for resolution on the pleadings.

8        WPE's effort to superimpose its own factual narrative onto a motion to dismiss is improper and

9    contrary to controlling law. The Court should reject WPE's attempt to short-circuit discovery, disregard

10   the detailed allegations, and substitute its version of events for the one the Court must accept as true.

11   The motion should be denied.

## II.    LEGAL STANDARD

13       On a Rule 12(b)(6) motion, the Court must "'take the factual allegations in the complaint as

14   true and construe them in the light most favorable to [counterclaimants].'" *GP Vincent II v. Est. of*

15   *Beard*, 68 F.4th 508, 514 (9th Cir. 2023). "Generally, district courts may not consider material outside

16   the pleadings," and a moving party is not "permitted to present their own version of the facts at the

17   pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018).

## III.    ARGUMENT

19   **A.    WPE's Laches Argument Fails on Multiple Grounds and Requires the Court to Resolve**

20   **Inherently Factual Questions That Cannot Be Decided at the Pleading Stage**

21       WPE asks the Court for an extraordinary finding of laches as to all counterclaims based on

22   disputed facts. To establish a laches defense, WPE must show not only that the WordPress Parties

23   "unreasonabl[y] delay[ed]" filing the counterclaims, but also that WPE suffered "prejudice" as a result.

24   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). In the context of

25   Lanham Act claims, courts apply a "strong presumption" that a laches defense is inapplicable if the

26   claims are raised within the analogous statute of limitations for state claims—here, a four-year period

27   for statutory and common law unfair competition. *Id.* at 837; *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp.

28   3d 943, 959 (N.D. Cal. 2015); *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1294-95

(E.D. Cal. 2012) (applying four-year statute of limitations to false advertising claim grounded in unfair competition, not fraud). This time period begins to run "from the time the plaintiff knew or should have known about his" cause of action. *Jarrow Formulas*, 304 F.3d at 838.

WPE says the WordPress Parties unreasonably delayed in bringing the counterclaims because WPE began using the WordPress Marks in 2010, used the WooCommerce Marks before the limitations period, and falsely advertised from 2015-2019 and again in August 2020. Mot. 8, 12. WPE's arguments raise precisely the kind of factual issues that demand a full evidentiary record. In any event, the counterclaims—which must be accepted as true—allege in detail that the claims are timely. WPE misstates the applicable limitations period, which must be determined based on when *WPE* filed suit in October 2024. A cause of action based on trademark infringement, false advertising, unfair competition, and trademark dilution did not arise until after October 2020—meaning the Court should presume laches does not apply and the claims are timely. Even if the counterclaims had been filed outside the analogous limitations period (and they have not been), laches would not apply: WPE's violations are willful and ongoing, any delay was reasonable because the WordPress Parties attempted to negotiate a trademark license with WPE, and WPE cannot establish the elements of laches on the face of the pleading.

### 1.    Laches Cannot Be Found on the Face of the Counterclaims

As the Ninth Circuit has repeatedly made clear, "because a claim of laches 'depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution'" even "'by summary judgment.'" *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2005) (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)). At the motion-to-dismiss stage, "the obstacle to asserting a successful laches defense is even greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint," *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), and the court is not permitted to adopt the moving party's "own version of the facts," *Khoja*, 899 F.3d at 998-99; *see also, e.g.*, *Planet Drum Found. v. Hart*, 2017 WL 4236932, at *7 (N.D. Cal. Sept. 24, 2017); *Italia Marittima, S.P.A. v. Seaside Transp. Servs., LLC*, 2010 WL 3504834, at *6 (N.D. Cal. Sep. 7, 2010). WPE's laches argument hinges on factual determinations about when the WordPress Parties' causes of action accrued. The Court would have to determine precisely when WPE's use of Counterclaimants' Marks crossed the line from nominative, referential use to infringement, when

WPE's ongoing statements (CC ¶¶ 233-234, 250) amounted to misrepresentations and unfair competition, and when the WordPress Parties knew or should have known about WPE's misconduct. The Court also would have to decide if WPE's violations are ongoing and/or willful, whether the WordPress Parties' timing in filing suit was reasonable, and whether WPE suffered prejudice, and make findings on additional equitable factors that WPE does not even address in its motion.

Deciding when and how WPE's use of Counterclaimants' Marks crossed the line from nominative reference to infringement is the central question for trial. The counterclaims allege how, in recent years, WPE's use of the WordPress marks evolved from accurate descriptive reference to overt brand appropriation, CC ¶¶ 5-9, 102-135, with charts that detail how WPE's use of the Counterclaimants' Marks grew dramatically from 2022 on. *Id.* ¶¶ 115, 211. Determining when WPE's conduct crossed the legal threshold will require discovery into WPE's marketing materials, internal communications, and consumer perception evidence. The Court plainly cannot decide those questions on a Rule 12(b)(6) motion without a factual record. *See, e.g.*, *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 534 (1956) (reversing and remanding dismissal and finding that laches defense raised "questions on which the parties should have been allowed to present evidence"); *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1035 (9th Cir. 2012) (similar); *see also Kourtis*, 419 F.3d at 1000.

### 2.    WPE Misstates the Law on the Applicable Limitations Period

WPE's argument also fails because it is premised on a mistake of law: WPE incorrectly asserts that the statute of limitations runs from the date the counterclaims were filed in October 2025. Mot. 12. The correct start date is the filing of WPE's complaint in October 2024. Under California law, which governs the relevant limitations period for laches, "a defendant's cross-complaint against the plaintiff, irrespective of whether it is related to the matters asserted in the complaint, is entitled to the benefit of the tolling doctrine." *ZF Micro Devices, Inc. v. TAT Cap. Partners, Ltd.*, 5 Cal. App. 5th 69, 92 (2016), *as modified* (Nov. 30, 2016); *see also id.* at 87 (describing California Supreme Court's articulation of the tolling doctrine: "'If … a counterclaim or setoff is not barred at the commencement of the action in which it is pleaded, it does not become so barred afterward during the pendency of that action.'" (quoting *Whittier v. Visscher*, 209 P. 23, 25 (Cal. 1922))). The applicable four-year period therefore extends back to October 2020. As long as the WordPress Parties' causes of action accrued after that date, which

the WordPress Parties allege they did, the claims are timely as a matter of law.

WPE relies on federal cases that did not consider whether to toll the limitations period for a counterclaim based on the filing date for the complaint. *See* Mot. 12 (citing *Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1109 (9th Cir. 2006); *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir. 2018)). These precedents do not disturb binding California law requiring tolling for counterclaims.

WPE's position is not only wrong, it is disingenuous: WPE itself acknowledged the WordPress Parties' infringement and dilution causes of action in 2024, stating in its complaint that "a case of actual controversy" arose between the parties in September 2024 based on a letter alleging WPE's use of the WordPress Parties' marks "constitutes trademark infringement" and that WPE was "diluting [the WordPress Parties'] rights, tarnishing their reputation, and harming their goodwill." CSAC ¶¶ 21-22.

### 3. WPE's Infringement Did Not Start Until After October 2020

Applying the correct legal standard, WPE's timeliness argument fails on the facts alleged. The counterclaims allege that WPE's conduct became infringing only after 2020, when its marketing and branding shifted from descriptive references to full-scale brand appropriation, and continues to this day. The WordPress Parties' allegations paint a clear picture of a competitor who made nominative use of Counterclaimants' Marks until it began posing as WordPress in 2021. WPE did so by "substantially increas[ing] the frequency and visual dominance of [Counterclaimants'] Marks across WP[E]'s homepage between 2021 and 2023," launching a product line that it called "Headless WordPress" in 2021, rebranding itself as "WP Engine, the WordPress technology company" in 2021, advertising one of its service plans as "Core WordPress" in 2024, and adopting a confusingly similar serif font and color scheme in 2024. CC ¶¶ 114, 116, 118, 123, 124.

In an argument that would be more fitting in a trial brief, WPE tries to establish that its infringement began before 2020 based on seven cherry-picked webpages, *see* Mot. 8-9, which are outside the pleadings, decontextualized, and raise disputed facts, rendering them inappropriate for judicial notice. *See Brickman v. Fitbit, Inc.*, 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016) (declining to take notice of documents that test "the ultimate merits of plaintiffs' claims"). For example, WPE misleadingly alters the context of "headless WordPress," RJN Ex. 4, "enterprise WordPress," RJN Ex. 3, and

"core WordPress," RJN Ex. 5, to suggest that it offered commercial products under these names before 2020. Mot. 9. It did not. CC ¶¶ 116, 123, 220. WPE described in text "how to take advantage of headless WordPress technology" in 2017, RJN Ex. 4; it did not *brand* any products as "WordPress" until 2021, CC ¶ 116. Similarly, WPE advertised its product "WP Engine Enterprise" in 2013 by describing it as "Enterprise WordPress Solutions For World-Class Web Experiences," RJN Ex. 3, but did not offer a standalone product branded as "Enterprise WordPress" until 2024, CC ¶ 220. And in 2018, WPE did nothing more than discuss how it manages "all core WordPress and infrastructure," with no discussion of any commercial product. RJN Ex. 5. Two more of WPE's exhibits are within the limitations period, and thus are irrelevant. RJN Exs. 6, 7. These misrepresentations further demonstrate why WPE's argument cannot be resolved at the pleading stage without the benefit of full discovery.

WPE uses these misleading exhibits and two instances of confusion from 2018 to argue the counterclaims are time-barred. Mot. 9-10. But "trademark holders are not required to 'constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon spotting a possible infringer.'" *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL 5099277, at *6 (C.D. Cal. July 10, 2018). Though WPE has historically used the WordPress Parties' marks in a "fair" way to communicate that WPE offered hosting services for websites powered by WordPress software, CC ¶¶ 102-113, its use fundamentally changed in 2021, *id.* ¶¶ 114-135. As such, until 2021 WPE's use had not "ripened such that [the WordPress Parties] knew or should have known, not simply that [WPE] was using the potentially offending mark, but that [the WordPress Parties] had a provable infringement claim." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002). Other courts applying the same principle have likewise recognized that a trademark owner's duty to act arises only once confusion becomes probable, not when use merely begins. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008) ("The senior user has no obligation to sue until the likelihood of confusion looms large …." (quoting 6 McCarthy on Trademarks and Unfair Competition § 31:19 (4th ed.) [hereinafter McCarthy])); *Luna*, 2018 WL 5099277, at *6 ("laches creates an obligation to object and sue only at the identifiable point in time a likelihood of confusion existed" (quoting 6 McCarthy § 31:19 (4th ed.))).

WPE says its increased use of the WordPress Marks does not "justify delay" by the WordPress

Parties in filing suit. Mot 12. But the WordPress Parties did not allege infringement based solely on the number of WPE's uses of their marks. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019) (relevant inquiry is not "the *number* of uses of a mark, but rather the *nature* of the uses"). The WordPress Parties allege that WPE's use of Counterclaimants' Marks changed after 2020 not just in number but in kind. As set forth in detailed, well-pleaded allegations, after 2020 WPE not only began using the marks more than it ever had before, but also began using the marks for the first time in the names of product and service offerings and began imitating the WordPress Parties' web-sites' color schemes and fonts. CC ¶¶ 114-125. WPE's escalating misuse of the WordPress Parties' marks gave rise to a false sense that WPE is sponsored or endorsed by the WordPress Parties and went far beyond what was reasonably necessary to identify WPE's products and services. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) ("[The junior user] could adequately communicate their message without using the visual trappings of the [senior user].") None of the cases WPE cites considered this type of situation where nominative fair use crosses the line to infringement and dilution. *See Tillamook*, 465 F.3d at 1110; *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1154-55 (9th Cir. 1982).

WPE mischaracterizes the counterclaims by suggesting that the WordPress Parties accused WPE's name of being infringing. There is no such accusation in the counterclaims. In fact, the Word-Press Parties acknowledged that "the WordPress Foundation's trademark policy permits the use of the 'WP' abbreviation in branding." CC ¶ 217. The WordPress Parties simply allege that because WPE's name is already suggestive of an association with "WordPress," WPE bore a heightened responsibility to avoid creating confusion in how it marketed and branded its services. CC ¶¶ 5, 216-217.

WPE also attempts to suggest that the counterclaims concede that some of WPE's pre-2021 use of Counterclaimants' Marks was infringing and therefore a cause of action accrued, but WPE isolates and decontextualizes the WordPress Parties' use of the phrase "largely nominative" to describe WPE's early use. *See* CC ¶ 4. The qualifier "largely" simply reflects the WordPress Parties' limited infor-mation about every possible use WPE made in 2010—it is not a concession that any of those uses were infringing, that the WordPress Parties knew of them at the time, or, even if they knew, that the Word-Press Parties were legally obligated to sue at that time.

In short, none of WPE's arguments establishes that the WordPress Parties' claims accrued before 2020. At the very least, the accrual date, including when the WordPress Parties discovered or should have discovered WPE's infringement, is a disputed factual question that is "more appropriately addressed at a later stage of the proceeding." *Luna*, 2018 WL 5099277, at *7; *see Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) ("date of discovery is an issue of fact").

### 4.    WPE Cannot Establish That Laches Applies

Even if a cause of action accrued before October 2020, there is no basis to find laches because WPE cannot meet its burden to show (1) any delay was unreasonable, and (2) WPE suffered prejudice as a result. *See Italia*, 2010 WL 3504834, at *6 (even if analogous limitations period has run, the party asserting laches has the burden to establish unreasonable delay and prejudice); *see also Luna*, 2018 WL 5099277, at *8 ("[B]ecause laches is an affirmative defense, Defendant bears the burden of establishing unreasonable delay and prejudice, but at this stage the Court's analysis is limited to the contents of the Complaint…."). There are several additional hurdles to a laches defense, including willfulness, continuing violations, and other equitable considerations.

### a.    The WordPress Parties' Timing Was Reasonable

Even if the counterclaims had been filed outside the applicable limitations period, the timing would have been reasonable because the WordPress Parties began reaching out to WPE with concerns about its infringement and dilution to resolve the dispute in late 2023 without litigation, CC ¶¶ 258-261, and attempted to negotiate a trademark license with WPE, CC ¶¶ 262-268. *See Tabari*, 610 F.3d at 1183 (two-year delay due to negotiations between the parties was not unreasonable because plaintiff "attempt[ed] to avoid the expense and inconvenience of a lawsuit"); *Luna*, 2018 WL 5099277, at *8 ("reasonable time consumed in objecting to the use and awaiting the defendant's response will not contribute to a finding of laches" (quoting Restatement (Third) of Unfair Competition § 31, cmt. c (1995))). Moreover, the reasonableness of any delay is a disputed issue that turns on the facts. *See Equal Emp. Opportunity Comm'n v. LogistiCare Sols. LLC*, 2020 WL 6781270, at *1 (D. Ariz. Nov. 18, 2020) (denying motion to dismiss on laches grounds due to fact issues and noting "a lengthy span of time, alone, is not enough to prove unreasonable delay").

### b.    WPE Cannot Establish Prejudice

WPE's attempt to establish prejudice is conclusory and rests on a false assumption of a 15-year delay, a figure the WordPress Parties dispute. WPE's argument ignores the allegations, which explain that the WordPress Parties acted promptly once WPE's conduct became infringing. CC ¶¶ 11, 258-268. Moreover, WPE identifies no concrete evidence that it changed its position, invested resources, or suffered any material disadvantage because of the supposed delay. *Int'l Rectifier Corp. v. IXYS Corp.*, 2002 WL 35649417, at *3 (C.D. Cal. 2002) ("[B]oth laches and estoppel require that the infringer prove that it changed its position to its prejudice *because of* [the senior user's] delay."). The question of prejudice cannot be resolved at the pleading stage, as "both sides should be allowed to discover and present evidence." *Italia*, 2010 WL 3504834, at *6; *see also Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1127 (9th Cir. 2006) (reversing district court's laches finding because "conclusory" and "generic" finding of prejudice "cannot support a dismissal based on laches").

### c.    WPE Cannot Overcome Additional Factors Barring a Laches Finding

There are additional hurdles that defeat WPE's laches argument. *First*, WPE cannot ask the Court to disregard the WordPress Parties' detailed allegations that WPE has engaged in willful infringement, *e.g.*, CC ¶¶ 114-135, 228, which is a complete bar to laches. *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015). *Second*, WPE cannot rely on the laches defense because its infringement and dilution of Counterclaimants' Marks is ongoing and continues to cause consumer confusion, *id.* ¶¶ 147-148, 274, 281, which amounts to "continuing wrongs" that are not time-barred and can support an award of injunctive relief. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018) ("laches typically does not bar prospective injunctive relief" (citation omitted)); *see also Zox LLC v. Zox*, 2021 WL 4816664, at *4 (C.D. Cal. July 12, 2021). *Third*, in the face of the well-pleaded allegation of the counterclaims, WPE also cannot meet its burden show that the six equitable factors that govern a laches claim weigh in its favor, because those factors require the court to review and weigh e*vidence* related to the strength and value of the trademark rights, the diligence in enforcing the marks, the harm to the parties, good faith ignorance by the junior user, and competition between the parties. *E-Sys., Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983); *see also Pinkette*, 894 F.3d at 1028. These factual assessments are "premature" at this juncture. *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011).

**B.      California's Statute of Limitations Does Not Bar the State-Law Claims**

The WordPress Parties' California state-law infringement and dilution claims are timely for the reasons explained above: a cause of action did not accrue until after October 2020 and involves ongoing infringement and dilution. The state-law infringement and dilution claims are based on the same factual predicates as the WordPress Parties' federal infringement and dilution claims. *See Zox*, 2021 WL 4816664, at *4 (recognizing continuous accrual for California law claims). Because this conduct occurred well within four years of WPE's October 2024 complaint, *see ZF Micro*, 5 Cal. App. 5th at 92, the state-law claims fall squarely within the applicable limitations period and are therefore timely.

**C.      The WordPress Parties Sufficiently Allege that the WordPress Mark Is Famous**

WPE does not dispute that the WordPress Parties sufficiently allege dilution of the WordPress Mark by tarnishment or blurring. Instead, WPE asks this Court to dismiss the dilution claims because it says the WordPress Mark was not famous at the relevant time. Mot. 13-15. But the WordPress Parties have affirmatively pleaded the Mark's fame (CC ¶¶ 58-68), which must be accepted as true, and courts routinely deny motions to dismiss claiming that marks were not sufficiently famous. *Third Est. LLC v. Cornerman Prods. LLC*, 2013 WL 12144110, at *3 (C.D. Cal. Aug. 5, 2013). That is because—as WPE's cited caselaw acknowledges—a determination of a mark's fame is a complex "factual question" that requires a close evaluation of the record. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (reviewing fame determination based on extensive record evidence).

WPE's argument revolves around the WordPress Parties' supposed failure to allege facts demonstrating that the WordPress Mark was famous before WPE first used it in 2010, the date WPE was founded. Mot. 13. But a dilution claim does not require fame before *any* use of the mark; rather, it sensibly requires fame before the defendant "commences use … *that is likely to cause dilution*." 15 U.S.C. § 1125(c)(1) (emphasis added). "The critical date to measure 'fame' is the junior user's first diluting use." 3 McCarthy § 24:103 (5th ed.). The WordPress Mark was famous long before WPE began using it in the increasingly confusing and diluting manners detailed in the counterclaims.

As explained above, the date of WPE's first diluting use of the WordPress Mark is a critical fact question in this litigation. At this juncture, the WordPress Parties have clearly alleged that WPE's diluting use began in 2021 or 2022, when WPE launched commercial products incorporating

"WordPress," substantially increased the frequency and prominence of "WordPress" on its website, and rebranded itself as "the WordPress technology company." *Supra* Section II.A.3. The WordPress Parties do not allege any diluting use in 2010; to the contrary, they allege WPE's use throughout the 2010s was "sparing" and descriptive of its services. CC ¶¶ 102-108. The relevant time period for establishing the fame of the WordPress Mark is therefore as of 2021.

The WordPress Parties have cited extensive evidence of the fame of WordPress by 2021. *WPE itself* recognized the fame of WordPress before or around the time its diluting use of the WordPress Mark began. *Id.* ¶ 68 & n.14 (2017 WPE press release stating WordPress is "trusted by the world's biggest brands"); ¶ 68 & n.15 (2020 WPE press release stating WordPress is "the world's favorite and fastest-growing content management system"); ¶ 65 & n.10 (2020 WPE press release stating "66% of Gen Z has personally used, worked with someone else, or hired someone to use WordPress for a website"); ¶ 66 & n.11 (2021 comments by WPE CEO that the WordPress ecosystem is valued just under $600 billion and "truly is running the internet"). As early as 2013, the arbitral panel convened by the World Intellectual Property Organization ("WIPO") recognized "that the mark WORDPRESS is well-known" and noted its fame "globally for blogging software." *Id.* ¶ 58. The same year, WordPress was called "the most popular publishing platform on the Web" in the Silicon Valley Business Journal. *Id.* ¶ 60. *The Washington Post* referred to WordPress as a "blogging giant" in 2019. *Id.* This is far from niche industry recognition: large companies and individuals alike are familiar with and use WordPress in a huge variety of industries and contexts. *E.g.*, *id.* ¶ 61. These factual allegations and WPE's own prior statements, which WPE ignores, "support the inference that [the WordPress] marks are 'widely recognized by the general consuming public,'" rendering dismissal at the pleading stage inappropriate. *Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *8 (N.D. Cal. June 6, 2024).

Even if the Court were inclined to indulge WPE's attempt to replead the actual allegations to assert (contrary to the literal reading of the counterclaims) that WPE's dilution began in 2010, the WordPress Parties still have alleged that the WordPress Mark was famous by that point. Section 1125 sets out four factors that courts may consider in determining fame: "(i) [t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered

under the mark; (iii) [t]he extent of actual recognition of the mark; [and] (iv) [w]hether the mark was registered." 15 U.S.C. § 1125(c)(2). The WordPress Parties have "alleged facts consistent with each of the four non-exhaustive categories set forth in the statute," which is all that is required. *In-N-Out Burgers v. Smashburger IP Holder LLC*, 2017 WL 10402610, at *3-4 (C.D. Cal. Dec. 21, 2017).

The WordPress Parties have used the WordPress Mark in commerce for over 20 years in all 50 states and around the world, and the WordPress Mark has become strongly associated in consumers' minds with the WordPress Parties during that time. CC ¶¶ 57, 62.

- **Reach of Publicity:** WordPress receives a tremendous amount of advertising and publicity: WordPress has been the subject of extensive unsolicited national news coverage; the WordPress Parties have made continuous and substantial investments in promoting WordPress; and hundreds of thousands of active members of the WordPress community promote WordPress through paid advertising and unpaid promotional measures such as participating in events like WordCamp and WordPress Meetups, actively and recommending WordPress to consumers, and developing the software and related themes and plugins. *Id.* ¶¶ 62-64.

- **Extent of Services:** WordPress has long provided services to a substantial percentage of websites—powering 14% of websites globally by the early 2010s and tens of millions of websites today, with 46 million active installations of the software. *Id.* ¶¶ 59, 61.

- **Recognition:** There is widespread recognition of the mark, evidenced by U.S. news coverage, large online followings, and statements from WPE itself emphasizing the "recognition" that WordPress has achieved through the active ecosystem of users and companies investing in, promoting, and increasing public awareness of WordPress. *Id.* ¶¶ 63-65.

- **Registration:** The WordPress Mark was first registered in 2007, and the WordPress Foundation owns numerous federal registrations for the trademark and logo. *Id.* ¶¶ 36, 40 & Ex. B.

These allegations all support an inference of fame by 2010—and certainly by 2021. Additionally, contrary to WPE's argument, a court can consider later-in-time evidence when assessing pleadings to draw an inference of fame at a certain date. For instance, in *Yelp*, the court denied a motion to dismiss and found that fame could be inferred in 2007 based on later use such as in a 2012 news article and a 2024 television show. 2024 WL 2883668, at *8. Even at later merits stages, courts have rejected

attempts to strictly exclude later-in-time evidence of fame. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2014 WL 4145499, at *8 (N.D. Cal. Aug. 20, 2014) (rejecting at summary judgment and then at trial defendant's argument that plaintiff failed to establish fame with a consumer survey, advertisements, and press coverage post-dating defendant's first use), *rev'd on other grounds*, 786 F.3d 983 (Fed. Cir. 2015). That WordPress powered 14% of websites globally in the early 2010s and was recognized for its fame and popularity by WIPO and in California news coverage in 2013 supports the conclusion that the WordPress Mark was famous in the United States and California by 2010.

WPE resorts to quibbling over the percentage of websites powered by WordPress in the early 2010s, but badly distorts the applicable law and factual allegations. WPE says "14% is nowhere close to the showing of recognition required to establish fame" and "at least 75% consumer recognition is required." Mot. 15 (citing 3 McCarthy § 24:106 (5th ed.)). WPE conflates a usage statistic with a consumer recognition survey; the percentage of websites using WordPress does not demonstrate the percentage of U.S. consumers who recognized WordPress at the time.

Straining credulity even further, WPE misrepresents a treatise author's *proposal* for determining a fame threshold as binding law. The treatise presents a 75% threshold figure as the "[a]uthor's [o]pinion," putting forth a "proposal" based on what he "believe[s]" while recognizing that "reasonable minds can differ" on the appropriate number. 3 McCarthy § 24:106 (5th ed.). WPE offers no support to establish this figure as a binding requirement in any jurisdiction, and courts in this Circuit have not treated McCarthy's proposal as controlling. *E.g.*, *Apple*, 2014 WL 4145499, at *8. WPE does not and cannot point to any case—let alone one in the Ninth Circuit—that requires a dilution plaintiff to identify a specific percent of the public that identifies its marks. In fact, the case law says the opposite—that "[t]here is no bright line test for determining whether a mark is 'famous.'" *Impulsaria, LLC v. United Distrib. Grp., LLC*, 2012 WL 5178147, at *7 (W.D. Mich. Oct. 18, 2012).

WPE's position is further undermined by its own cited authorities. *First*, many of the cases cited by WPE determined fame after considering a developed factual record, not at the pleadings stage. Mot. 14 (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911-12 (9th Cir. 2002) (summary judgment); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 878 (9th Cir. 1999) (summary judgment); *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1034-35 (N.D. Cal. 2015) (post-bench trial)).

*Second*, WPE's cited cases at the motion-to-dismiss stage involved complaints that merely recited the elements of fame in a conclusory manner or pleaded fame in a niche market, unlike the detailed allegations here. In *Arcsoft, Inc. v. Cyberlink Corp.*, the plaintiff failed to "offer any nonconclusory allegations about the extent to which consumers actually recognize" the mark. 153 F. Supp. 3d 1057, 1067 (N.D. Cal. 2015); *see also* Mot. 14-15 (citing *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 915-16 (N.D. Cal. 2023) (plaintiff failed to plead nonconclusory fame allegations); *Original Beauty Tech. Co. v. Oh Polly USA, Inc.*, 2022 WL 17224542 (C.D. Cal. Aug. 15, 2022) (similar)). By contrast, the counterclaims demonstrate extensive recognition, including through WPE's own statements. *Supra* pp. 11-12. WPE also cites *Gibralter, LLC v. DMS Flowers, LLC*, in which the plaintiff argued its mark was famous in a "niche market," 2025 WL 2623293, at *7 (E.D. Cal. Sept. 11, 2025), while here, WPE has commented on the widespread consumer recognition attained by WordPress.

**D.    The WordPress Parties Plausibly Allege a Claim Under Section 43(a) of the Lanham Act**

WPE seeks to reduce the WordPress Parties' second cause of action to "false advertising," asserting that the counterclaims fail to allege with specificity that WPE made materially false statements (Mot. 16-18). But Count II of the counterclaims alleges false advertising, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That statute is much broader and more flexible than WPE would have the Court believe. Section 43(a) "provides a remedy for a broad range of deceptive marking, packaging and marketing of goods or services in commerce," *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987), creating a cause of action for, *inter alia*, unfair competition, infringement of unregistered marks, trade dress infringement, and false advertising—all aimed at the "ultimate test [of] whether the public is likely to be deceived or confused." *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

As detailed in the counterclaims and must be taken as true at this stage, WPE's overall pattern of trademark misuse and posing as one of the WordPress Parties is likely to cause and has caused confusion and mistake. CC ¶ 299. WPE brands itself as "The WordPress Technology Company," *id.* ¶¶ 117-118; allows its partners to refer to it as "WordPress Engine," *id.* ¶¶ 175-181; has launched multiple products using "WordPress" in the name, *id.* ¶¶ 116-120, 123; has sharply and excessively increased its use of "WordPress" and "WooCommerce" on its website, *id.* ¶¶ 115, 211; and redesigned

its entire website to more closely resemble Automattic's branding, *id.* ¶¶ 123-125. Unsurprisingly, consumers are frequently and regularly confused about the source or origin of WPE's offerings and believe WPE to be an authorized or endorsed partner of the WordPress Parties. *Id.* ¶¶ 146-174. As part of its unlawful conduct, WPE has engaged in false advertising concerning its contributions to WordPress and its status as a sponsored or endorsed partner of WordPress. *Id.* ¶¶ 233-252, 298. This overall pattern of false and deceptive behavior should be evaluated together, based on a fully developed evidentiary record. But even if the Court were to agree with WPE's false advertising argument (it should not), the remainder of Count II stands unaffected.

With respect to WPE's arguments on the false advertising aspects of Count II, the WordPress Parties adequately plead the elements of false advertising under Section 43(a)(1)(B): (1) falsity, (2) actual or likely deception, (3) materiality of deception, (4) interstate commerce, and (5) injury. *See Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019). Because the allegations concerning WPE's false advertising are part of the broad unfair competition claim and "rooted in [WPE's] use of the Mark[s] in causing a likelihood of confusion," not a "unified course of conduct 'sounding in fraud,'" the heightened pleading standards of Rule 9(b) do not apply. *Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, 2018 WL 6164327, at *8 (C.D. Cal. Aug. 20, 2018); *see also Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, at *4-5 (C.D. Cal. Dec. 17, 2012). Even if those heightened standards did apply, the claims are adequately pleaded here.

***Falsity and deception.*** WPE has falsely positioned itself as a sponsor or endorsed partner of WordPress when in fact it is not, thereby undermining the WordPress project. CC ¶ 298. In *Factory Direct*, the plaintiff alleged that the defendant requested Amazon make changes to the plaintiff's products to falsely advertise the products as manufactured and branded by the defendant. 411 F. Supp. 3d at 912. Based on these allegations, the court found "[t]hat statement is literally false as pled," and "[t]herefore, actual deception can be presumed." *Id.* at 924. Similarly, WPE uses WordPress as a part of the products and services it offers, launching products with "WordPress" in the name and referring to itself as "The WordPress Technology Company." CC ¶¶ 116, 118, 119, 123. As a result, users frequently misdirect their complaints concerning WPE's technical issues, billing problems, and poor customer service to customer support channels associated with the WordPress Parties, CC ¶¶ 147-169,

227, demonstrating that customers are deceived into associating WPE's negative performance with WordPress itself, CC ¶ 227. Because WPE is describing WordPress as its own product when it is not, its representations are "literally false" and "actual deception can be presumed." *Factory Direct*, 411 F. Supp. 3d at 924.

The counterclaims also sufficiently allege false advertising based on WPE's statements concerning its contributions to the WordPress project. WPE has not made its pledged contributions and misleads consumers to believe that WPE supports and invests in WordPress, CC ¶¶ 233-257, further heightening the harm WPE causes by exploiting the WordPress Marks.

Even applying the heightened standards of Rule 9(b), courts regularly find false advertising allegations are sufficient where the pleading identifies specific statements, the source of the statements, and where they can be found. *TransFresh Corp. v. Ganzerla & Ass'n, Inc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012). Here, the WordPress Parties allege a number of statements made by WPE on WPE's website that are false. CC ¶ 297. On August 25, 2020, WPE published on its website that it submitted its Five for the Future pledge to support the development and maintenance of the WordPress project, an ongoing statement which was showcased on WordPress.org and remains live to this day. CC ¶¶ 233-234. However, WPE has failed to meaningfully honor this pledge and has not contributed five percent of its resources—or anything close to it—despite reporting $400 million in annual recurring revenue, CC ¶¶ 97, 235-243, 246. On September 20, 2024, WPE made another statement on its website representing that it contributed "tens of millions of dollars in ongoing support for the broader community." CC ¶ 250. In reality, WPE has not contributed tens of millions of dollars to the WordPress community. CC ¶ 252. Like in *TransFresh Corp.*, the WordPress Parties identified the specific false advertising statements, the source of the statements (WPE), and where they can be found (providing URL addresses). The WordPress Parties adequately allege why these statements are false or misleading: WPE holds itself out as investing in the future of the WordPress community, but in reality is free-riding off that community and enriching itself while simultaneously causing harm to the WordPress Parties' reputation, goodwill, and relationships with the other members of that community. CC ¶¶ 301.

WPE contends that the allegation that a company is not currently meeting a past statement of intent does not establish that the statement of intent was false when originally made, citing *Newcal*

*Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008). However, in *Newcal*, the Ninth Circuit reversed the district court's dismissal of a false advertising claim because the arguments raised factual questions that were inappropriate to determine at the motion to dismiss stage (and with no reference to the Rule 9(b) pleading standard). *Id.* at 1053. The plaintiff alleged that the defendant said it "deliver[s] 95% up-time service," and the court reasoned that the truth of that statement was a "factual question" that could not be resolved at the pleading state. Because "[t]he complaint allege[d] that this statement was false when made," it "survive[d] 12(b)(6) scrutiny." *Id.* Similar to *Newcal*, the truth or falsity of WPE's statements is a factual question and cannot be resolved at the motion-to-dismiss phase—as WPE has itself argued to this Court in the context of its defamation claims. *See* Dkt. 75 at 22 (arguing alleged defamation "must be determined by the jury"); Dkt. 180 ¶ 473 (alleging falsity).

WPE also relies on *Intuit Inc. v. HRB Tax Group, Inc.*, Mot. 18, but that case acknowledged that "[g]enerally, whether an advertisement is deceptive to a reasonable consumer is a question of fact that is poorly suited to resolution at the motion to dismiss stage." 2024 WL 4093918, at *4 (N.D. Cal. Sept. 5, 2024). The court was "skeptical" that the allegations were "'simply not plausible,'" recognizing multiple possible interpretations. *Id.* Because the WordPress Parties adequately alleged that the statements are at least plausibly false or misleading, the court should deny WPE's motion.

***Materiality.*** WPE's deception is material and likely has influenced current and potential customers' purchasing decisions because participation in and contributions to the WordPress community are inherent characteristics of companies offering hosting services for WordPress and important considerations for consumers, analogous to companies advertising environmental benefits. *See Trans-Fresh*, 862 F. Supp. 2d at 1019 (denying motion to dismiss false advertising claims based on claims about environmental benefits); *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1100 (9th Cir. 2023) (Gould, J., concurring) (noting practice of "greenwashing" influences consumer purchasing decisions). WPE's false statements, along with its use of WordPress Marks, are specifically intended to drive commercial sales from the WordPress Parties to WPE. CC ¶ 224. Rather than investing in its pledged contributions or promoting its offerings on the strength of its own reputation, WPE has diverted its resources towards commercial expansion and aggressive brand positioning—including the unauthorized use of the WordPress Marks—to further its own business interests. CC ¶ 256.

*Interstate commerce and injury.* WPE does not contest these elements. The WordPress Parties have adequately alleged that WPE caused its statements to enter interstate commerce through online publishing and advertising, CC ¶ 315, and have alleged injury through diversion of sales resulting from WPE's false advertising, combined with its pattern of unfair competition, *id.* ¶¶ 299-300.

In sum, WPE has misrepresented the "nature, characteristics, [or] qualities" of its goods and services, 15 U.S.C. § 1125(a)(1)(B), by falsely and misleadingly promoting its support of the WordPress project and positioning itself as a sponsored or endorsed partner of WordPress. WPE has not met its burden to show that the detailed allegations as to both theories comprise the "rare" circumstance in which the false advertising claims are "'simply not plausible'" such to warrant dismissal. *Intuit*, 2024 WL 4093918, at *4; *see also In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, 2021 WL 3191733, at *7 (N.D. Cal. July 28, 2021) ("whether a business practice is deceptive will usually be a question of fact" (citation omitted)). WPE's attempts to overstate the pleading burden for a false advertising claim, make factual arguments, and misconstrue the allegations should be rejected.

### E.    WPE's Nominative Fair Use Defense Fails

WPE next asks the Court to decide at the pleadings stage the fundamental and fact-intensive question of whether WPE's use of the WordPress Marks infringed the WordPress Parties' rights or was excusable as "nominative fair use." Unsurprisingly, "courts generally decline to adjudicate the [fair use] defense at the Rule 12(b)(6) stage because it requires resolving factual questions that are not amenable to resolution on the pleadings." *Barkley & Assocs., Inc. v. Quizlet, Inc.*, 2025 WL 2946993, at *5 (C.D. Cal. Sept. 11, 2025); *see also Padres, L.P. v. Rimel's La Jolla, LLC*, 2021 WL 2559701, at *4 (S.D. Cal. Apr. 27, 2021) ("Fair use is a mixed question of law and fact." (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)).

The "fact-intensive" nature of the nominative fair use defense is evident from the elements of the Ninth Circuit's controlling test for the defense, *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992). Under *New Kids*, a defendant must establish three elements to make out a nominative fair use defense—all of which are based on factual determinations: (1) "the product or service in question must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service";

and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 308. The counterclaims contain detailed fact allegations that support their position on all three elements. CC ¶¶ 127, 133, 207-223. This is more than enough to raise factual issues, and WPE cannot contest the allegations at the pleading stage. *See Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 942 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 2008 WL 6742224, at *5 (N.D. Cal. Dec. 18, 2008).

### 1.    WPE's Use of the Marks Is Not Necessary

WPE's "repeated" and extensive uses of Counterclaimants' Marks are not necessary to describe its products, as required by the first *New Kids* factor. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002). As the counterclaims demonstrate, WPE itself was perfectly capable of making more measured and nominative use of the Counterclaimants' Marks until it launched its recent branding campaign in an attempt to inflate its value. CC ¶¶ 102-113. WPE's argument consists of disputed issues of fact regarding whether and to what extent it must use the marks, which cannot be resolved at this stage. *See Elec. Arts, Inc. v. Textron Inc.*, 2012 WL 3042668, at *6 (N.D. Cal. July 25, 2012) (denying motion to dismiss on nominative fair use grounds after finding "the parties disagree as to whether the helicopters are readily identifiable without use of the trademark").

### 2.    WPE Used More of the Marks Than Reasonably Necessary

The second factor asks whether the alleged infringer "'step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition.'" *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 168 (2d Cir. 2016); *see Welles*, 279 F.3d at 804 (noting potential infringement "if the metatags listed the trademarked term so repeatedly that [defendant's] site would regularly appear above [plaintiff's] in searches for one of the trademarked terms").

The counterclaims not only allege that WPE used Counterclaimants' Marks too prominently and too often, CC ¶ 210, but also contain detailed charts that compare the use of Counterclaimants' Marks on WPE's website to others in the marketplace, with WPE's use dwarfing that of its competitors. CC ¶ 211. In response, WPE claims it is the nature not the number of uses that matters. Mot. 20. But the WordPress Parties pleaded that both the nature and frequency of WPE's use in recent years shifted

when it launched its aggressive branding campaign to mimic the distinctive appearance associated with the WordPress Parties. CC ¶¶ 212-215. By appropriating the "visual trappings of the [WordPress] brand," WPE used "visual clues" to "lead some consumers to believe they were dealing with an authorized [WordPress] affiliate." *Tabari*, 610 F.3d at 1181. And as with WPE's other arguments, this too is fact-intensive and inappropriate to resolve on the pleadings. *Textron*, 2012 WL 3042668, at 6.

### 3. WPE's Use Suggests Sponsorship or Endorsement by the WordPress Parties

The WordPress Parties' extensive allegations of WPE's misuse of the Counterclaimants' Marks and the resulting consumer confusion—which must be taken as true at the pleadings stage—are alone sufficient to reject WPE's fair use argument. Again, the counterclaims allege in detail how WPE has "refer[red] to itself, across both marketing and investor-facing materials, as 'The WordPress Technology Company,' 'THE WordPress Partner of Choice,' and 'The WordPress Digital Experience Platform.'" CC ¶¶ 218-219. Around 2024, WPE also rebranded its service tiers from "Personal," "Professional," and "Business" to "Essential WordPress," "Core WordPress," and "Enterprise WordPress," respectively, along with advertising "WooCommerce Hosting"—dropping the terms WordPress and WooCommerce only in preparation for this litigation. CC ¶ 220. The counterclaims explain that the term "Core" is especially misleading because that word has a well-established meaning in the WordPress community that "refers specifically to the foundational, open-source software package available for free at WordPress.org." CC ¶ 221. WPE's adoption of "Core WordPress" as the name of a service tier thus "blurs the distinction between [WPE's] commercial services and the open-source software itself." *Id.* The WordPress Parties also allege that WPE routinely presents itself in advertisements as affiliated with the WordPress Parties, including through purchasing sponsored ad placements and using ad text that "mirrors the language and branding used by WordPress.org." CC ¶ 223. And the counterclaims detail how WPE dramatically expanded its use of Counterclaimants' Marks on the face of its website and in hidden internet advertising. CC ¶¶ 115, 134-135, 211-223.

The WordPress Parties also allege that WPE's actions have resulted in "a pattern of customer confusion." CC ¶ 149. The counterclaims contain dozens of allegations of existing and potential customers expressing confusion about whether WPE is a separate entity from the WordPress Parties. *See, e.g.*, CC ¶¶ 147-69. For example, WPE's customers frequently reach out to Automattic for assistance

cancelling their subscriptions to WPE or for customer support. *See, e.g.*, CC ¶¶ 160 ("a [WPE] customer reached out to Automattic to dispute a $300 charge"), 161 ("a consumer is asking WordPress.com to resolve a WP Engine billing dispute"), 167 ("a [WPE] customer reached out to Automattic for assistance after WP Engine did not respond to their repeated requests for help"). The counterclaims also detail the widespread confusion on WordPress.com/forums and other unaffiliated online forums regarding whether WPE is one of the WordPress Parties. *See* CC ¶¶ 171-86.

These allegations readily undermine the third element of the *New Kids* test (requiring a user to avoid suggesting sponsorship or endorsement). Courts in the Ninth Circuit recognize that an allegation of even one confused consumer "supports a plausible inference that users perceived an affiliation between the two" and therefore "preclude[s] dismissal under the nominative fair use doctrine." *Barkley*, 2025 WL 2946993, at *7; *see also Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (reversing summary judgment where there was "a genuine issue of material fact as to whether" defendant took action to suggest sponsorship or endorsement); *Textron*, 2012 WL 3042668, at *6 (allegations of endorsement are "a question for the jury" (quoting *Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 413 (9th Cir. 1996))). Here, the counterclaims include numerous examples of WPE presenting itself in a way suggestive of sponsorship or endorsement by the WordPress Parties, and of consumers and WordPress community members expressing confusion over WPE's status.

WPE attempts to evade this conclusion by arguing that the actual confusion is "non-actionable" and represents only a "tiny fraction of [WPE's] customers," Mot. 21-22, but these are necessarily factual determinations. WPE cannot show that this is the "'rare situation in which granting a motion to dismiss is appropriate when a case involves questions of [customer] confusion.'" *Yelp*, 2024 WL 2883668, at *4 (denying motion to dismiss); *see also Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 976 (N.D. Cal. 2018) (dismissal on nominative fair use grounds is limited to situations in which "'simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work'").

## F.    The WordPress Parties Plausibly Allege Unfair Competition Claims

The WordPress Parties also adequately allege unfair competition claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and California common law. Because

the WordPress Parties adequately allege claims for federal trademark infringement, unfair competition, and dilution, they also plausibly allege violations of the UCL and the common law. *See, e.g.*, *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("[The Ninth] Circuit has consistently held that state common law claims of unfair competition and [UCL] actions … are 'substantially congruent' to claims made under the Lanham Act.").

Even if these other claims fail, however, the counterclaims still contain well-pleaded allegations of consumer deception to state claims for statutory and common-law unfair competition. *See* Cal. Bus. & Prof. Code § 17200 ("unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"). "A fraudulent business practice is one likely to deceive the public." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016). "To state a cause of action under the fraudulent prong of Section 17200, it is necessary only to show members of the public are likely to be deceived; allegations that the fraudulent deception was 'actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages' are not necessary." *Makreas v. First Nat'l Bank of N. Cal.*, 856 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012). Contrary to WPE's conclusory, one-paragraph argument (Mot. 23), the WordPress Parties adequately allege that "members of the public are likely to be deceived" by WPE's misrepresentations. *Makreas*, 856 F. Supp. 2d at 1102. *See, e.g.*, CC ¶¶ 118 (describing WPE's "misleading and deceptive slogan" "'WP Engine, **the** WordPress technology company'"); 147-186 (describing consumer confusion concerning whether WPE is associated with the WordPress Parties).

**G.    Automattic and Mullenweg Allege Standing to Bring the Counterclaims**

WPE says Automattic and Mullenweg lack standing to assert trademark infringement under Section 1114, federal and state trademark dilution, and common law trademark infringement because they are "licensees" with unknown "significant restrictions." Mot. 23-24. WPE ignores numerous allegations in the counterclaims explaining the bases for Automattic and Mullenweg's standing.

***Count 1, Trademark Infringement under 15 U.S.C. § 1114(1):*** Under Section 32 of the Lanham Act, civil actions for trademark infringement of a registered mark must be brought by the "registrant" of the mark, which includes the legal representatives, predecessors, successors, and assigns of the registrant. 15 U.S.C. §§ 1114, 1127. "[D]istrict courts in this circuit generally" have found Section

32 standing "where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark." *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 1007666, at *3 (N.D. Cal. Mar. 13, 2013) (citation omitted).

Automattic and Mullenweg satisfy this standard. Automattic was the original owner and registrant of the WordPress Marks and donated the marks to the WordPress Foundation. CC ¶ 36. As part of the same transaction, WordPress Foundation licensed the marks back to Automattic, conferring exclusive rights to make commercial use of the WordPress Marks and the first right to enforce the WordPress Marks in connection with WordPress hosting services and certain domains, and the WordPress Foundation may not use or license the WordPress Marks within the scope of Automattic's license. CC ¶ 39; Ex. A; *see Innovation*, 2013 WL 1007666, at *2, *5-6 (finding Section 32 standing for original owner of trademark with license-back agreement conferring property rights); *Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, 2019 WL 6486039, at *1 (C.D. Cal. Aug. 23, 2019) (Section 32 standing for licensee with "'exclusive right' to use the Trademark in connection with its products"). Automattic is also the parent company of WooCommerce Inc., owner and registrant of the WooCommerce Marks. CC ¶¶ 19, 48. Additionally, the right to use the WordPress Marks as used on www.WordPress.org was licensed to Mullenweg alone, and he remains the exclusive licensee for use on that website. *Id.* ¶¶ 36-37. Automattic and Mullenweg also have a long history of using, enforcing, and protecting Counterclaimants' Marks. *E.g.*, *id.* ¶¶ 79, 81, 85-86. Courts in the Ninth Circuit thus recognize Mullenweg and Automattic as having standing to bring a Section 1114 action.

Additionally, each Counterclaimant has standing because they work to offer goods and services together and rely collectively on the public's trust in WordPress and its brand. The WordPress Parties are in turn harmed together by WPE's efforts to cause confusion through its impersonation campaign; and each entity, as part of that larger collective group, can be subjected to a likelihood of confusion when the WordPress or WooCommerce Marks are abused or diluted. *See Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010) (finding NFL has standing to enforce the Steelers' rights to the phrase "Steel Curtain" as an entity jointly owned by member clubs and responsible for protecting the marks owned by the member clubs against misuse in various forms); *Nat'l Football League Props., Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651, 662 (W.D. Wash. 1982) (granting injunctive

relief because NFL, as a jointly owned entity by 28 member clubs and as the agent for registered and common law marks for each club, sufficiently alleged trademark infringement).

*Count 2, False Advertising, False Designation of Origin, and Unfair Competition under 15 U.S.C. § 1125(a):* Automattic and Mullenweg, along with the WordPress Foundation and WooCommerce, unquestionably have standing to assert claims under Section 1125(a), which provides a cause of action for "any person who believes that he or she is likely to be damaged" by trademark infringement, false advertising, or other unfair competition. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992) (standing under Section 1125(a) "include[s] parties with a commercial interest in the product wrongfully identified with another's mark … or with a commercial interest in the misused mark"). "Ownership of the disputed trademark 'is immaterial' to claims brought under section 1125(a) because the statute grants standing to 'mere users of trademarks.'" *Brown v. Green*, 2012 WL 4120379, at *3 (N.D. Cal. Sept. 18, 2012). "If a plaintiff 'has a commercial interest in the allegedly misused mark that is "likely to be damaged,"' he has standing under the statute to seek relief." *Id.* at *4. Automattic and Mullenweg do not need to own the WordPress or WooCommerce Marks; rather, they need only allege, as they have (CC ¶¶ 36-39, 52-57, 79-86), a sufficient commercial interest in the marks.

*Count 3, Common Law Trademark Infringement:* The "original owner" of a mark has standing to bring a California common law claim for infringement, meaning the party who first "adopts and uses a trade name, either within or without the state." *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979); *see also Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1227 n.7 (9th Cir. 2008) (finding standing despite plaintiff assigning any rights over marks that she owned because "[s]o long as [plaintiff] retained a cognizable interest in the use of the … mark," "she would have standing under the Lanham Act even as a non-owner"). Automattic and/or Mullenweg were the first users of WordPress as a trade name; WordPress Foundation is the current owner and registrant; and each party has a cognizable interest in use of the mark, conferring standing. WooCommerce is the owner and registrant of the WooCommerce Marks.

*Count 4, Trademark Dilution under 15 U.S.C. § 1125(c):* Federal dilution claims may be brought by the "owner" of the mark, 15 U.S.C. § 1125(c)(1), but "similar to the analysis of standing under § 1114, district courts have looked to the provisions of the licensing agreement to determine the

rights granted to the licensee." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 979 (S.D. Cal. 2020). Because Mullenweg and Automattic have exclusive licenses to the WordPress Marks, including the right to enforce, they have standing to bring a § 1125(c) claim. And because WordPress Foundation is the owner of the WordPress Marks, it has standing to assert trademark dilution.

**Count 5, Trademark Dilution under Cal. Bus. & Prof. Code § 14247:** "A California state law dilution claim 'is subject to same analysis as [a] federal claim.'" *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1078 (C.D. Cal. 1998) (denying defendant's motion to dismiss plaintiff's federal and state trademark dilution claims). Accordingly, Mullenweg, Automattic, and WordPress Foundation have standing to bring a Cal. Bus. & Prof. Code § 14247 claim.

**Count 6, Unfair Competition under Cal. Bus. & Prof. Code § 17200:** Because all WordPress Parties have standing under 15 U.S.C. § 1125(a), they all have standing to bring their UCL claim. *See QS Wholesale, Inc. v. Rox Volleyball, Inc.*, 2014 WL 12567147, at *2 (C.D. Cal. Dec. 31, 2014) (holding plaintiff has standing to bring UCL and California common law unfair competition law claims because it has standing to bring its false advertising claim under section 1125(a)).

**Count 7, Common Law Unfair Competition:** All counterclaimants have standing because each has a "cognizable interest in the allegedly infringed" Counterclaimants' Marks. *QS Wholesale*, 2014 WL 12567147, at *1.

Finally, even if Mullenweg and Automattic do not have standing (they do), WPE does not argue that WordPress Foundation and WooCommerce were improperly joined, nor does it argue that there are any claims for which *no* counterclaimant has standing. Because each cause of action has at least one counterclaimant with standing, WPE's argument, even if correct, would not dispose of any claim.

## IV.     CONCLUSION

At every turn, WPE asks the Court to ignore the counterclaims' well-pleaded allegations and accept its own version of events in their place. The Court should deny WPE's motion. If the Court determines any claims should be dismissed, the WordPress Parties respectfully request leave to amend.

1   DATED: December 8, 2025                    Respectfully submitted,

2                                              GIBSON, DUNN & CRUTCHER LLP

3
                                               By: */s/ Howard S. Hogan*
4                                                   Howard S. Hogan

5                                              *Attorney for Defendants and Counterclaimants*
                                               *Automattic Inc. and Matthew Charles Mullenweg*
6                                              *and Counterclaimants WordPress Foundation*
                                               *and WooCommerce Inc.*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP