QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff WPEngine, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>　　　　Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**WPE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS**<br><br>Judge: Hon. Araceli Martínez-Olguín<br>Courtroom: 10<br>Hearing Date: February 5, 2026<br>Hearing Time: 2:00 p.m. |
| AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>　　　　Counterclaimants,<br><br>　　vs.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>　　　　Counterdefendant. | |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................1

I.   THE COUNTERCLAIMS ARE TIME-BARRED .................................................1

    A.   Counterclaimants' Own Allegations Establish the Time Bar .....................1

    B.   Counterclaimants' Tolling Theory Contradicts Ninth Circuit Precedent...................2

    C.   Counterclaimants' Alleged "Shift" in 2021 Is Illusory ...............................2

    D.   Claimed Recent Negotiations Cannot Excuse 13 Years of Inaction .........................3

    E.   Counterclaimants' Other Arguments Against Laches Fail ........................3

    F.   The State-Law Claims Are Also Time-Barred ...........................................4

II.   COUNTERCLAIMANTS' DILUTION CLAIMS FAIL FOR LACK OF FAME ..............4

    A.   The Correct Accrual Date Is 2010—Before WPE's First Use ...................4

    B.   Counterclaimants Do Not—and Cannot—Allege Fame as of 2010 ........................5

III.   COUNTERCLAIMANTS' FALSE ADVERTISING CLAIMS FAIL RULE 9(B) ...........6

    A.   Counterclaimants Incorrectly Claim Rule 9(b)'s Heightened Pleading Standards Do Not Apply ...................................................................................6

    B.   Counterclaimants Fail to Plead Falsity With Particularity As 9(b) Requires ...........6

    C.   Counterclaimants Fail to Allege Deception .................................................7

    D.   Counterclaimants Fail to Allege Materiality ...............................................7

IV.   COUNTERCLAIMANTS FAIL TO REFUTE THE NOMINATIVE USE EVIDENT FROM THEIR TRADEMARK ALLEGATIONS .............................................8

    A.   Courts Regularly Dismiss Fatally Deficient Trademark Infringement Complaints Based on Nominative Use at This Stage .................................8

    B.   WPE's Use Satisfies All Three *New Kids* Elements ................................8

V.   THE UNFAIR COMPETITION CLAIMS ARE DERIVATIVE AND FAIL ....................9

VI.   AUTOMATTIC AND MULLENWEG LACK STANDING.................................10

    A.   Neither Automattic Nor Mullenweg Owns the Asserted Marks .............10

    B.   The Exclusive License Does Not Confer Standing....................................10

C.    No Special Relationship Exists .................................................................10

D.    Original Owners Do Not Retain Standing After Transfer........................................11

CONCLUSION .................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alvarado v. Amazon.com, Servs. LLC,*
    2022 WL 899850 (N.D. Cal. Mar. 28, 2022) ................................................................... 9

*Am. Petrofina v. Petrofina of Cal., Inc.,*
    596 F.2d 896 (9th Cir. 1979) ........................................................................................... 11

*Apple Inc. v. Samsung Elecs. Co.,*
    2014 WL 4145499 (N.D. Cal. Aug. 20, 2014) .................................................................. 4

*Applied Underwriters, Inc. v. Lichtenegger,*
    913 F.3d 884 (9th Cir. 2019) ............................................................................................. 8

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
    2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ................................................................... 8

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) ........................................................................... 5

*Barkley & Assocs., Inc. v. Quizlet, Inc.,*
    2025 WL 2946993 (C.D. Cal. Sept. 11, 2025) ................................................................. 9

*Broam v. Bogan,*
    320 F.3d 1023 (9th Cir. 2003) ........................................................................................... 7

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) ............................................................................................. 9

*Dropbox, Inc. v. Thru Inc.,*
    728 F. App'x 717 (9th Cir. 2018) ...................................................................................... 2

*E-Systems, Inc. v. Monitek, Inc.,*
    720 F.2d 604 (9th Cir. 1983) ............................................................................................. 4

*Elec. Arts, Inc. v. Textron Inc.,*
    2012 WL 3042668 (N.D. Cal. July 25, 2012) .................................................................. 9

*EVIG, LLC v. Natures Nutra Co.,*
    685 F. Supp. 3d 991 (D. Nev. 2023) ................................................................................. 6

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.,*
    411 F. Supp. 3d 905 (N.D. Cal. 2019) .......................................................................... 4, 7

*Georgia-Pacific Consumer Products LP v. Lee's Gen. Toys, Inc.,*
    2008 WL 11337935 (S.D. Cal. Apr. 22, 2008) ................................................................ 6

*Gopher Media LLC v. Mod. Doc Media*,
  2023 WL 350531 (S.D. Cal. Jan. 20, 2023) ............................................................... 6, 7

*Halcyon Horizons, Inc. v. Delphi Behav. Health Grp., LLC*,
  2017 WL 1956997 (N.D. Cal. May 11, 2017) ........................................................... 10

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008)................................................................................... 11

*Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*,
  2019 WL 6486039 (C.D. Cal. Aug. 23, 2019) ........................................................... 10

*Hudson Ins. Co. v. Colony Ins. Co.*,
  624 F.3d 1264 (9th Cir. 2010)................................................................................... 10

*Impulsaria, LLC v. United Distrib. Grp., LLC*,
  2012 WL 5178147 (W.D. Mich. Oct. 18, 2012) ......................................................... 5

*In-N-Out Burgers v. Smashburger IP Holder LLC*,
  2017 WL 10402610 (C.D. Cal. Dec. 21, 2017) .......................................................... 4

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
  2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) .......................................................... 10

*Jarrow Formulas v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002)...................................................................................... 3

*Kourtis v. Cameron*,
  419 F.3d 989 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*,
  553 U.S. 880 (2008) .................................................................................................... 1

*Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*,
  2018 WL 6164327 (C.D. Cal. Aug. 20, 2018) ............................................................ 6

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*,
  2018 WL 5099277 (C.D. Cal. July 10, 2018) ............................................................. 3

*Monzon v. S. Wine & Spirits of Cal.*,
  834 F. Supp. 2d 934 (N.D. Cal. 2011) ....................................................................... 7

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
  686 F. Supp. 3d 900 (N.D. Cal. 2023) .................................................................... 5, 6

*Nasdaq Stock Market Inc. v. Antartica S.r.l.*,
  69 U.S.P.Q. 2d 1718 (T.T.A.B. 2003)........................................................................ 5

*National Football League Props., Inc. v. Wichita Falls Sportswear, Inc.*,
  532 F. Supp. 651 (W.D. Wash. 1982) ...................................................................... 10

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992)........................................................................ 8

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008)..................................................................... 7

*Nissan Motor Co. v. Nissan Computer Corp.*,
    378 F.3d 1002 (9th Cir. 2004)..................................................................... 4

*Parts.com, LLC v. Google Inc.*,
    2014 WL 12461256 (S.D. Cal. June 25, 2014) ....................................... 3

*Pinterest, Inc. v. Pintrips, Inc.*,
    140 F. Supp. 3d 997 (N.D. Cal. 2015) ..................................................... 4

*Rolex Watch U.S.A., Inc. v. Agarwal*,
    2012 WL 12886444 (C.D. Cal. Dec. 17, 2012) ...................................... 6

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015) ..................................................... 4

*S&P Global Inc. v. S&P Data LLC*,
    619 F. Supp. 3d 467 (D. Del. 2022) .......................................................... 5

*T-Mobile US, Inc. v. AIO Wireless LLC*,
    991 F. Supp. 2d 888 (S.D. Tex. 2014) ...................................................... 5

*Third Est. LLC v. Cornerman Prods. LLC*,
    2013 WL 12144110 (C.D. Cal. Aug. 5, 2013) ........................................ 5

*Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*,
    465 F.3d 1102 (9th Cir. 2006) .................................................................... 2

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010)..................................................................... 3

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ................................................... 6

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
    590 F. Supp. 2d 1306 (D. Nev. 2008) ...................................................... 5

*Volkswagenwerk Aktiengesellschaft v. Church*,
    411 F.2d 350 (9th Cir. 1969) ...................................................................... 8

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014)..................................................................... 7

*Yelp, Inc. v. ReviewVio, Inc.*,
    2024 WL 2883668 (N.D. Cal. June 6, 2024) .................................... 4, 9

1

## **Other Authorities**

2    Fed. R. Civ. P. Rule 9(b) ........................................................................................ 1, 6, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Counterclaimants' opposition merely confirms what WPE's Motion established: their counterclaims fail as a matter of law. Despite detailed allegations demonstrating they knew of WPE's allegedly infringing conduct since 2010—including while they maintained an investor relationship from 2011-2018 giving them intimate knowledge of WPE's business—Counterclaimants waited over a decade to act. This is fatal to the entire counterclaims. Counterclaimants' strained insistence that their dilatory conduct should be excused because WPE's use materially changed over time is a nonstarter. Judicially noticeable documents belie any purported shift in the nature of WPE's claimed use—which in any event has never infringed Counterclaimants' Marks. Even if the counterclaims could survive the obvious time bars, they fail on the merits as pleaded. Their dilution claims collapse because they cannot allege fame before WPE's 2010 use. Their false advertising claims lack the particularity Rule 9(b) demands. Their trademark claims fail against WPE's obvious nominative use. Their unfair competition claims fail because they are derivative of the failed predicate claims. And Automattic and Mullenweg lack standing to assert any trademark claims at all.

Counterclaimants' opposition offers no path around these fatal defects—no contrary case law, no proposed amendments…nothing. The Court should grant WPE's Motion and dismiss all counterclaims with prejudice.

# ARGUMENT

## I.    THE COUNTERCLAIMS ARE TIME-BARRED

### A.    Counterclaimants' Own Allegations Establish the Time Bar

Counterclaimants argue laches is "seldom" appropriate at the motion to dismiss stage. Opp. 3. But as their own authority recognizes, laches bars claims where apparent from the pleading itself. *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). Here, the Counterclaims detail specific uses from 2010-2019, concede WPE's use was only "largely nominative" from the outset (CC ¶¶ 4, 102-103)—admitting some uses were allegedly infringing—and acknowledge Automattic was WPE's strategic investor from 2011-2018 (CC ¶¶ 89, 95). These allegations leave no factual uncertainty: Counterclaimants

1  knew of alleged infringement in 2010, observed it closely for years as an investor, yet did nothing

2  for over a decade.

3       **B.     Counterclaimants' Tolling Theory Contradicts Ninth Circuit Precedent**

4            Counterclaimants claim California's tolling doctrine applies to federal trademark claims,

5  arguing the limitations period should run from WPE's October 2024 complaint rather than their

6  October 2025 counterclaim.  Opp. 4-5.  This directly contradicts Ninth Circuit precedent holding

7  that for federal laches analysis of trademark counterclaims, the period runs from the counterclaim

8  filing date, not the date of the complaint.  *Tillamook County Smoker, Inc. v. Tillamook County*

9  *Creamery Ass'n*, 465 F.3d 1102, 1109 (9th Cir. 2006) ("Because the analogous state limitations

10 period had long expired prior to Creamery's [counterclaim] filing in 2002, there is a presumption

11 favoring Smoker's laches defense."); *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir.

12 2018).  *See* Mot. 6-11.

13           Even under Counterclaimants' own tolling theory, their state-law claims remain barred.

14 Tolling to October 2024 extends the limitations period only to October 2020.  Counterclaimants

15 knew of WPE's allegedly infringing uses well before then.

16      **C.     Counterclaimants' Alleged "Shift" in 2021 Is Illusory**

17           Counterclaimants assert WPE's use "fundamentally changed in 2021."  Opp. 6-7.  Their own

18 allegations and judicially noticeable documents prove otherwise.  WPE used the exact same phrases

19 using the WordPress and WooCommerce Marks—"WordPress Hosting," "Managed WordPress

20 Hosting," "The Only WordPress Digital Experience Platform"—before and after 2021.  Mot. 7-9;

21 RJN 1-2.  Judicially noticeable documents show WPE used WordPress Marks to describe its

22 products and services *before* 2020.  *Id.*  And Counterclaimants' vague, conclusory allegations about

23 color schemes (Opp. 7; CC ¶¶ 123-125) are belied by the images shown, which reveal no actual

24 imitation.

25           Counterclaimants argue they need not "constantly monitor every nook and cranny."  Opp. 6.

26 But they were not monitoring from afar—Automattic was WPE's investor for many years, with

27 intimate knowledge of WPE's business from 2011-2018.  CC ¶¶ 89, 95.  Counterclaimants' earliest

28 alleged instances of actual confusion are in December 2018, but judicially noticeable documents

1  show WPE's use of the WordPress Marks well before then and during Counterclaimants' investment

2  period.  CC ¶¶ 89, 95, 177, 186; RJN 1-2.  With such notice, Counterclaimants cannot plausibly

3  argue their claim did not accrue until years later.

4     **D.**  **Claimed Recent Negotiations Cannot Excuse 13 Years of Inaction**

5     Counterclaimants argue delay was reasonable because they allegedly "began reaching out to

6  WPE" in "late 2023."  Opp. 8.  Even accepting this allegation as true as we must for a motion to

7  dismiss, this fails.  Their cited cases involve parties who began negotiations immediately upon

8  discovering infringement—not over a decade later, as is alleged here.  *Toyota Motor Sales, U.S.A.,*

9  *Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (plaintiff contacted defendant just "six months"

10  after learning of alleged infringement); *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL

11  5099277, at *7 (C.D. Cal. July 10, 2018) (delay reasonable where plaintiff sent cease and desist

12  immediately after registering the trademark).  In contrast, Counterclaimants' own allegations along

13  with judicially noticeable facts confirm that Counterclaimants waited more than a decade before

14  contacting WPE.  That is not diligent enforcement—it is years of inaction.  The laches clock starts

15  when a plaintiff "knew or should have known about his" cause of action, *Jarrow Formulas v.*

16  *Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002), not when it finally decides to act.

17  Counterclaimants' alleged commencement of negotiations in late 2023 cannot retroactively render

18  13 years of prior inaction reasonable.

19     **E.**  **Counterclaimants' Other Arguments Against Laches Fail**

20     First, Counterclaimants' purported willfulness allegations do not avoid laches.  *Parts.com,*

21  *LLC v. Google Inc.*, 2014 WL 12461256, at *4 (S.D. Cal. June 25, 2014) (granting dismissal on

22  laches grounds where "the mere fact that Defendant received a cease-and-desist letter and failed to

23  stop its alleged infringement is not sufficient proof of willfulness"); *cf.* Opp. 9.  Second, their

24  "continuing wrong" argument (*id.*) contradicts *Jarrow Formulas*, which explicitly rejected the

25  argument that ongoing conduct defeats laches for the obvious reason that "[t]o hold otherwise would

26  effectively swallow the rule of laches."  304 F.3d at 837-38.  Third, prejudice is established by the

27  15-year delay itself and by WPE's investments in expanding its business based on its presumed

28  rights to use the WordPress Marks nominatively.  CC ¶¶ 93, 97; Answer ¶ 49.  Finally, the equitable

1   factors addressed by WPE above—Counterclaimants' lack of diligence in enforcing its mark,

2   WPE's reasonable belief its use was permissible, and the prejudice suffered by WPE because of

3   Counterclaimants' delay—all of which are discernible from the face of the Counterclaims—favor

4   the application of laches.  *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983).

5           **F.      The State-Law Claims Are Also Time-Barred**

6           Counterclaimants' "continuous accrual" theory (Opp. 10) fails to salvage its state claims,

7   too.  This Court has repeatedly held that continuous accrual does not apply to alleged "continuing

8   obligations to avoid illegal behavior" like ongoing infringement or dilution.  *Factory Direct*

9   *Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 918 (N.D. Cal.

10  2019) (dismissing California state law claim with prejudice after refusing to apply the continuous

11  accrual doctrine to postpone its accrual date); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 895-

12  96 (N.D. Cal. 2015) (finding the continuous accrual doctrine did not apply to toll the relevant statutes

13  of limitations for plaintiff's California state law claims).

14  **II.     COUNTERCLAIMANTS' DILUTION CLAIMS FAIL FOR LACK OF FAME**

15          **A.      The Correct Accrual Date Is 2010—Before WPE's First Use**

16          Counterclaimants' arguments against dismissal of their dilution claims (Opp. 10-14) ignore

17  controlling precedent: "*any commercial use* of a famous mark in commerce ... fixes the time by

18  which famousness is to be measured."  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002,

19  1012 (9th Cir. 2004) (emphasis added).  The proper date is therefore not "the particular use being

20  challenged in the litigation" (*id.*), but rather, WPE's first commercial use—which Counterclaimants

21  allege is 2010 (CC ¶ 102).  *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1030 (N.D. Cal.

22  2015) (citing *Nissan*).

23          Every case Counterclaimants cite (Opp. 10-13) confirms this basic principle.  *See Yelp, Inc.*

24  *v. ReviewVio, Inc.*, 2024 WL 2883668, at *8 (N.D. Cal. June 6, 2024) (plaintiff alleged fame "since

25  at least May 2007," before defendant's 2020 use); *In-N-Out Burgers v. Smashburger IP Holder*

26  *LLC*, 2017 WL 10402610, at *1, *3-4 (C.D. Cal. Dec. 21, 2017) (plaintiff alleged fame "since 1963,

27  for more than 50 years," before defendants' first use in 2017); *Apple Inc. v. Samsung Elecs. Co.*,

28  2014 WL 4145499, at *2 (N.D. Cal. Aug. 20, 2014) (instructing jury to find dilution only if

1    "Samsung began selling its accused products after Apple's asserted trade dress became famous");

2    *Third Est. LLC v. Cornerman Prods. LLC*, 2013 WL 12144110, at *1 (C.D. Cal. Aug. 5, 2013)

3    (defendant's use came "[a]fter Plaintiff's Marks became famous"); *Impulsaria, LLC v. United*

4    *Distrib. Grp., LLC*, 2012 WL 5178147, at *1, *7-8 (W.D. Mich. Oct. 18, 2012) (plaintiff alleged

5    facts to support fame as of June 2010, before defendants' first subsequent use).

6        **B.    Counterclaimants Do Not—and Cannot—Allege Fame as of 2010**

7        Counterclaimants concede they do not plead fame as of 2010, arguing instead that their

8    allegations "support an inference of fame by 2010." Opp. 12. They do not. The earliest dates for

9    which they allege any consumer recognition facts are all after 2010. *Id.* at 11-12 (citing CC ¶¶ 57-

10   68).

11       Counterclaimants dismiss the 75% consumer recognition threshold as one person's view.

12   Opp. 13. But that person (J. Thomas McCarthy) authored the treatise Counterclaimants themselves

13   rely on (*id.* 10), and courts consistently apply that standard. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 590

14   F. Supp. 2d 1306, 1315 (D. Nev. 2008) (finding mark famous at 85% awareness); *Nasdaq Stock*

15   *Market Inc. v. Antartica S.r.l.*, 69 U.S.P.Q. 2d 1718, 1729 (T.T.A.B. 2003) (fame at more than 80%

16   awareness); *S&P Global Inc. v. S&P Data LLC*, 619 F. Supp. 3d 467, 476 (D. Del. 2022) (citing 3

17   McCarthy § 24:106 (5th ed.)) ("67% recognition rate is already below what the leading commentator

18   recommends"); *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 931 (S.D. Tex. 2014)

19   (citing same) (41.2% recognition insufficient; "one treatise proposes that fame responses should be

20   around 75%").

21       Counterclaimants plead no allegations supporting the WordPress Marks' consumer

22   recognition level in 2010. In *Arcsoft, Inc. v. Cyberlink Corp.*, the court found insufficient allegations

23   that 60 million consumers downloaded plaintiff's app globally and 20 million nationally; that the

24   mark "attained widespread and favorable recognition…throughout the United States"; and that the

25   app featured "many of the United States' and world's most famous celebrities" and was mentioned

26   in *The New York Times*, *The Washington Post*, and other major publications. 153 F. Supp. 3d 1057,

27   1065-66 (N.D. Cal. 2015). And in *Motul S.A. v. USA Wholesale Lubricant, Inc.*, the plaintiff, like

28   Counterclaimants, insufficiently alleged that its trademarks are highly distinctive; it has used them

1    continuously for decades; it has advertised and publicized them for decades; and the marks are

2    widely recognized by the general, consuming public, and they have a valid registration on the

3    Principal Register.  686 F. Supp. 3d 900, 915-16 (N.D. Cal. 2023).  Counterclaimants' conclusory

4    allegations fare no better.

5    **III.    COUNTERCLAIMANTS' FALSE ADVERTISING CLAIMS FAIL RULE 9(B)**

6        **A.    Counterclaimants Incorrectly Claim Rule 9(b)'s Heightened Pleading**

7            **Standards Do Not Apply**

8        Rule 9(b) applies because Counterclaimants allege that WPE made false and misleading

9    misrepresentations in commercial advertising.  CC ¶¶ 297-299, 303.  The cases Counterclaimants

10   rely on to argue Rule 9(b) does not apply (Opp. 15) did not involve false advertising claims, and

11   they are therefore inapposite.  *See Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, 2018 WL

12   6164327, at *8 (C.D. Cal. Aug. 20, 2018) (plaintiff "*explicitly* conceded" its challenged claim "is

13   not rooted in false advertising"); *Rolex Watch U.S.A., Inc. v. Agarwal*, 2012 WL 12886444, at *5

14   (C.D. Cal. Dec. 17, 2012) (plaintiff did "not rely on allegations of fraud or misrepresentation").

15       Counterclaimants cannot salvage their false *advertising* claim by pointing to their false

16   *designation of origin* claim—which is functionally a trademark infringement claim.  *Georgia-*

17   *Pacific Consumer Products LP v. Lee's Gen. Toys, Inc.*, 2008 WL 11337935, at *5 (S.D. Cal. Apr.

18   22, 2008) ("The test for a false designation of origin claim is essentially identical to a trademark

19   infringement claim.").  "The Supreme Court and the Ninth Circuit have both drawn sharp

20   distinctions between claims brought under § 1125(a)(1)(A) and § 1125(a)(1)(B)."  *EVIG, LLC v.*

21   *Natures Nutra Co.*, 685 F. Supp. 3d 991, 996-97 (D. Nev. 2023).  Courts refuse to consider other

22   allegedly "misleading" statements when evaluating false advertising claims.  *Gopher Media LLC v.*

23   *Mod. Doc Media*, 2023 WL 350531, at *6 (S.D. Cal. Jan. 20, 2023).

24       **B.    Counterclaimants Fail to Plead Falsity With Particularity As 9(b) Requires**

25       Counterclaimants' reliance on *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp.

26   2d 1009, 1019 (N.D. Cal. 2012), backfires.  Opp. 16.  *TransFresh* dismissed false advertising

27   allegations when plaintiff failed to explain "why" omissions were misleading and "how" and "why"

28

1  altered content was misleading.  Counterclaimants likewise fail to explain how and why alleged

2  statements are misleading.  *E.g.,* CC ¶ 301.

3          Contrary to Counterclaimants' contention (Opp. 16-18), courts routinely dismiss false

4  advertising claims at this stage for failure to meet Rule 9(b).  Mot. 16 n.2.  Unlike *Newcal*, where

5  "the complaint alleges that this statement was false when made," *Newcal Indus., Inc. v. Ikon Off.*

6  *Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008), Counterclaimants failed to allege WPE's contribution

7  pledge statements were false when made, nor do they argue they can do so if given leave to amend.

8  Mot. 17-18.

9          **C.      Counterclaimants Fail to Allege Deception**

10         Unable to point to deception allegations, Counterclaimants argue it can be presumed.  Opp.

11 15-16.  It cannot, because Counterclaimants failed to allege WPE's statements are literally false.

12 Unlike *Factory Direct Wholesale*, where the defendant advertised plaintiff's products as

13 "manufactured and branded" by defendant, 411 F. Supp. 3d at 924, WPE made no such

14 misrepresentations.  Nor can Counterclaimants cure their claim with irrelevant allegations of

15 consumer confusion rather than deception.  *Gopher Media LLC*, 2023 WL 350531, at *6 (rejecting

16 plaintiff's attempt to rely on false designation of origin claims to salvage false advertising claim).

17         **D.      Counterclaimants Fail to Allege Materiality**

18         Counterclaimants concede they must allege materiality, but neither of their two cited

19 allegations does.  Opp. 17.  Paragraph 224 does not mention WPE's allegedly false statements or

20 any allegation of falsity, and paragraph 256 does not suggest the statement contributed to

21 commercial expansion, much less that it was "likely to influence the purchasing decision" of

22 consumers.  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).

23 Counterclaimants cannot cure inadequate allegations through new assertions in their brief.  *Monzon*

24 *v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 941 (N.D. Cal. 2011) (citing *Broam v. Bogan,* 320

25 F.3d 1023, 1026 n.2 (9th Cir. 2003)) ("A court may not … consider new facts alleged in a plaintiff's

26 opposition to a defendant's motion to dismiss.").

27

28

1    **IV.    COUNTERCLAIMANTS FAIL TO REFUTE THE NOMINATIVE USE EVIDENT**

2    **FROM THEIR TRADEMARK ALLEGATIONS**

3    **A.    Courts Regularly Dismiss Fatally Deficient Trademark Infringement**

4    **Complaints Based on Nominative Use at This Stage**

5    Contrary to Counterclaimants' argument (Opp. 18-19), "courts may resolve these issues

6    [relating to nominative use] at the pleading stage." *Architectural Mailboxes, LLC v. Epoch Design,*

7    *LLC*, 2011 WL 1630809, at *3-4 (S.D. Cal. Apr. 28, 2011) (dismissing after factual analysis

8    including website excerpts); *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir.

9    2019) (affirming dismissal after analyzing *New Kids* factors despite factual disagreements).  It is

10   appropriate for the Court to do so here, where just as "Volkswagen could not prevent an automobile

11   repair shop from using its mark ... [because] in advertising the repair of Volkswagens, it would be

12   difficult, if not impossible, for [the repair shop] to avoid altogether the use of the word

13   'Volkswagen,'" WPE cannot describe its WordPress hosting services without using "WordPress."

14   *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992)

15   (quoting *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969)).  These

16   claims are ripe for dismissal on this basis.

17   **B.    WPE's Use Satisfies All Three *New Kids* Elements**

18   First, Counterclaimants do not seriously dispute use of the Challenged Marks is necessary

19   to describe WPE's services.  Indeed, by alleging WPE's use was "primarily" nominative, they

20   concede as much.  CC ¶ 102.

21   Second, allegations that WPE uses the marks "too often" (Opp. 19-20; CC ¶¶ 209-211) do

22   not show more use than necessary.  This factor focuses on "the nature of the uses," not "the number

23   of uses."  *Applied Underwriters*, 913 F.3d at 895.  Counterclaimants' own citations focus on "the

24   number of times the WordPress Marks appear on WP Engine's website"—not a difference in nature.

25   CC ¶ 213.  Because the nature of WPE's use is descriptive—as Counterclaimants admit (*compare*

26   CC ¶¶ 102, 104-108 *with* ¶ 119)—increased frequency does not transform permissible use into

27   infringement.

28

Third, Counterclaimants fail to identify any allegation that WPE claimed sponsorship or endorsement. They invoke "dozens of allegations" of confusion (Opp. 20-21), but context matters. Consumer confusion because WPE offers WordPress-related services is not actionable, as it does not suggest false representations of sponsorship, as in *Barkley* and *Yelp*, where defendants retained plaintiff's mark on copied materials or reproduced plaintiff's stylized mark while misrepresenting integration. *Barkley & Assocs., Inc. v. Quizlet, Inc.*, 2025 WL 2946993, at *7 (C.D. Cal. Sept. 11, 2025); *Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *7 (N.D. Cal. June 6, 2024). Counterclaimants do not allege customer confusion stemming from false representations of sponsorship or endorsement—nor can they.

Counterclaimants cite no precedent holding courts should ignore nominative fair use just because a pleading includes customer complaints, where those complaints are ***not*** rooted in affirmatively false representations of sponsorship or endorsement (as is the case here). *See* Opp. 21. None of the cases they cite, which involve gratuitous visual imagery, hold otherwise. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (photograph of surfers reproduced in clothing retailer catalog); *Elec. Arts, Inc. v. Textron Inc.*, 2012 WL 3042668, at *5 (N.D. Cal. July 25, 2012) (distinctive military helicopter depicted in a video game).

## V.    <u>THE UNFAIR COMPETITION CLAIMS ARE DERIVATIVE AND FAIL</u>

Counterclaimants offer only the conclusory assertion that they "adequately allege claims for federal trademark infringement, unfair competition, and dilution." Opp. 21-22. This concedes what the Motion established: the unfair competition claims are entirely derivative and assert no independent wrongful conduct.

Counterclaimants do not—because they cannot—identify a single allegation in their Sixth or Seventh Counterclaims that is not repackaged from their failed trademark, dilution, and false advertising claims. *Compare* CC ¶¶ 329-348 (Counts 6 and 7) *with* CC ¶¶ 285-328 (Counts 1-5). Having failed to plead viable predicate claims, Counterclaimants' derivative unfair competition claims necessarily fail. *Alvarado v. Amazon.com, Servs. LLC*, 2022 WL 899850, at *2 (N.D. Cal. Mar. 28, 2022) (dismissing where unfair competition claims "based on predicate violations of other laws" failed to "plead[] any other violation of law").

## VI.   AUTOMATTIC AND MULLENWEG LACK STANDING

### A.    Neither Automattic Nor Mullenweg Owns the Asserted Marks

Counterclaimants concede—because they must—that neither Automattic nor Mullenweg owns or is the registrant of the asserted trademarks.  Opp. 23-25; CC ¶¶ 286-287.  WordPress Foundation owns the WordPress Marks; WooCommerce owns the WooCommerce Marks.  This dispositive fact forecloses standing under Section 1114, federal and state trademark dilution, and common law trademark infringement (Counts 1, 3-5).  Mot. 23-24.

### B.    The Exclusive License Does Not Confer Standing

Automattic's exclusive license to "make commercial use" of the WordPress Marks (Opp. 23) does not confer standing.  "Standing can only exist where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee."  *Halcyon Horizons, Inc. v. Delphi Behav. Health Grp., LLC*, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (citations omitted).

In contrast to the facts alleged here, *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) (Opp. 23), involved a licensee granted both "an exclusive license" and "a property interest in the trademark."  *Id.* at *3.  Counterclaimants do not allege Automattic holds a property interest—only that it has an exclusive license to make "commercial use."  CC ¶ 39.  That is insufficient.  Similarly, the license in *Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, 2019 WL 6486039 (C.D. Cal. Aug. 23, 2019), conferred both exclusive commercial rights and the unqualified right to "prosecute any infringement or otherwise unauthorized use."  *Id.* at *1.  But the license here permits Automattic only the more limited right to "enforce the WordPress trademark ... within the Scope" of its licensed use.  CC ¶ 39; Ex. A at 2.

### C.    No Special Relationship Exists

The NFL cases Counterclaimants cite involved unique collective ownership structures where the entity asserting claims was jointly owned by, or served as designated agent for, the actual trademark owners.  Opp. 23-24 (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264 (9th Cir. 2010) & *National Football League Props., Inc. v. Wichita Falls Sportswear, Inc.*, 532 F. Supp. 651 (W.D. Wash. 1982)).  No such relationship is alleged here.

**D.    Original Owners Do Not Retain Standing After Transfer**

Counterclaimants' argument that an original owner maintains standing after transferring ownership (Opp. 24) is unsupported.  In *Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 898 (9th Cir. 1979), the court addressed a dispute about who was the rightful owner initially—not whether a former owner who divested trademark rights could still sue.  Similarly, *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1227 n.7 (9th Cir. 2008), remanded to evaluate whether Halicki "retained a cognizable interest" given reserved exclusive "merchandising rights"—the very subject of alleged infringement.  Counterclaimants do not allege Automattic or Mullenweg reserved any property interest when transferring the WordPress Marks to the Foundation.  CC ¶ 39.  California common law trademark claims require not only first use (Opp. 24) but also ongoing ownership.  Mot. 24.  First use may establish who the original owner was, but it does not preserve standing after ownership has been transferred.

## **CONCLUSION**

The counterclaims fail as a matter of law.  WPE respectfully requests that the Court grant WPE's Motion and dismiss all of the counterclaims, with prejudice.

DATED:  December 22, 2025                  QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP


By   */s/ Rachel Herrick Kassabian*
    Rachel Herrick Kassabian
    *Attorneys for Plaintiff WPEngine, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to N.D. Cal. Civil L.R. 5-5(a), I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under Fed. R. Civ. P. 5(b) on this the 22nd day of December, 2025.

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____*/s/ Rachel Herrick Kassabian*_____
  Rachel Herrick Kassabian
  *Attorneys for Plaintiff WPEngine, Inc.*