QUINN EMANUEL URQUHART & SULLIVAN, LLP
Rachel Herrick Kassabian (Bar No. 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
T: (650) 801-5000
F: (650) 801-5100

Michael E. Williams (Bar No. 181299)
michaelwilliams@quinnemanuel.com
Kevin Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
T: (213) 443-3000
F: (213) 443-3100

Brian Mack (Bar No. 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
T: (415) 875-6600
F: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>Defendants.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>vs,<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | Case No. 3:24-cv-06917-AMO<br><br>**PLAINTIFF WPENGINE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND SECOND AMENDED COMPLAINT**<br><br>Hearing Date: March 5, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 10<br>Judge: Hon. Araceli Martínez-Olguín |

**INTRODUCTION**

Since the outset of this case, WPE has alleged wrongful conduct by WooCommerce. WPE did not name WooCommerce as a defendant because Automattic—WooCommerce's parent—held itself out as WooCommerce's representative and controlled this dispute from its inception. That only changed weeks ago, when WooCommerce stepped out from behind its parent and elected to file counterclaims in its own name rather than continuing to litigate through Automattic. Now WooCommerce wants to collect damages from WPE while dodging liability for its own misconduct. It cannot.

Counterclaimants' Opposition fails to undermine WPE's motion. Counterclaimants' diligence and delay arguments collapse under scrutiny: it is undisputed that WooCommerce inserted itself as a party counterclaimant just six weeks ago. Counterclaimants identify no colorable prejudice from the proposed amendment. Nor could they; by their own admissions, they have litigated this case from day one to include WooCommerce-related discovery and arguments. And the amendments are not futile, particularly given Counterclaimants' own allegations that WooCommerce was an active participant in the underlying events. Counterclaimants' assertions of "bad faith" rest on *de minimis* amendments like adding "for instance," only underscoring the weakness of the Opposition.

It is *Counterclaimants* who contradict themselves, not WPE. Their position is untenable: WooCommerce seeks affirmative relief from WPE while evading responsibility for its participation in the very scheme underlying WPE's claims. That is not how litigation works. WooCommerce chose to sue WPE; it must now defend against WPE's related claims.

**ARGUMENT**

**I.  COUNTERCLAIMANTS FAIL TO SHOW THE COURT LACKS GOOD CAUSE TO MODIFY THE SCHEDULE UNDER RULE 16**

Counterclaimants argue WPE was not diligent because it has "long been on notice" of WooCommerce's role in enforcing the WooCommerce Marks. Opp. 5-8. This argument gets both the facts and the law wrong. Counterclaimants admit that Automattic and WooCommerce's September 23, 2024, letter to WPE—attached to WPE's original complaint—presented a unified

"Client" demanding a trademark licensing arrangement. *Id*. 2-3; *see* Dkt. 1-1, 2-3. The letter began, "We represent Automattic Inc. and WooCommerce, Inc. (collectively, our 'Client')." Dkt. 1-1, 2. Throughout that letter, every single reference treated both entities as a single "Client" including claiming that "our Client owns all intellectual property rights." *Id*., 2-5.

That letter reflects how Defendant Automatic and Counterclaimant WooCommerce have conducted themselves throughout this dispute. Counterclaimants do not deny that it was *Automattic's* CEO Matthew Mullenweg and CFO Mark Davies who demanded that WPE sign a trademark license for the WooCommerce Marks, which draft license bore a signature line for Automattic (only), contemplating payments to Automattic (only)—***not*** WooCommerce. Dkt. 180 ¶¶ 5, 12, 21, 92.

In filing its pre-Counterclaims allegations, WPE reasonably relied on Automattic's representation of itself as the enforcer of WooCommerce's purported rights. Indeed, for over a year Automattic and Mullenweg defended against WPE's claims regarding WooCommerce and conduct related to its trademarks, and never suggested—in their Answer or otherwise—that WooCommerce should be named to defend itself. WPE acted diligently and with good cause to move to modify the scheduling order and amend its pleading within weeks after Defendants' strategy changed and WooCommerce elected to insert itself into this litigation by filing independent counterclaims on October 23, 2025. Dkt. 195.

The Opposition's only explanation for Automattic and Mullenweg's failure to call WooCommerce forth to defend itself sooner is that they were under "no obligation" to do so. Opp. 7. But that misses the point entirely. This is not a situation where WPE has misidentified or otherwise named the *wrong* defendant in its Complaint, nor do Counterclaimants so contend. WPE seeks to add a jointly and severally liable defendant because Defendants Automattic and Mullenweg changed their litigation strategy to have WooCommerce assert related offensive claims in its own name. Counterclaimants' cited cases are silent on this issue. *See, e.g.*, *Valladares v. Hubbard*, 2011 WL 4434230, at *5 (C.D. Cal. Aug. 26, 2011) (denying leave to amend to substitute correct defendant where defendants had no duty to disclose plaintiff's misidentification of proper plaintiff and amendment would be futile) (cited at Opp. 7).

Counterclaimants' other cases concerning lack of diligence under Rule 16 are equally inapposite. *See* Opp. 5-7. For example, Counterclaimants rely on *Denham v. Global Distribution Services, Inc.*, a labor dispute alleging failure to pay overtime, to argue an amendment to add a new party should be rejected where allegations against that party would be similar to preexisting allegations and the new defendant was known to be involved in the case's underlying events before the amendment cutoff date. *See* 2020 WL 2218966, at *2 (S.D. Cal. May 6, 2020) (cited at Opp. 7). But in *Denham*, evidence showed the proposed new party was actively involved in the facts of the underlying case such as by signing off on the very payments at issue in the case, and the plaintiff, who was aware of this information before the amendment deadline, waited three additional months before moving to amend. 2020 WL 2218966, at *1-2. Unlike in *Denham*, WPE did not ignore the identity of a known, separate actor in its underlying allegations; rather, Automattic and WooCommerce presented a unified identity with Automattic running the show and demanding a trademark license as to the WooCommerce marks; WPE sued Automattic accordingly. As soon as WooCommerce acted for the first time as an independent entity with respect to this dispute (through the Counterclaims), WPE promptly sought leave to amend.

Counterclaimants cherry-pick portions of other cases to highlight the proper denial of amendments that seek to name entities long-known to a plaintiff. Opp. 6 (citing *Chang v. Cashman*, 723 F. Supp. 3d 772, 780 (N.D. Cal. 2024) (Martínez-Olguín, J.)). But *Chang* is inapposite because the plaintiff waited months or years to act, as compared to WPE's request for leave to modify the schedule and amend its complaint just six weeks after filing of the Counterclaims. *Id.* at 780-81. Counterclaimants similarly cite cases denying leave to amend under Rule 15 based on undue delay that involve longer delays after learning pertinent information, Opp. 9 (citing *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (15-month delay)), but those cases are inapposite too, because those plaintiffs had knowledge of the relevant parties who were actually litigating the issues yet sat on that information. *See Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1017 (9th Cir. 1999) (denying amendment where plaintiff "had knowledge of the relevant facts from the inception of the lawsuit" and sought leave to amend only to add new defendants and new theories of its case after losing summary judgment). Not so here.

In sum, Rule 16's good cause standard is met where, as here, the moving party seeks leave to modify the scheduling order to amend the complaint within mere weeks of the triggering event—in this case, the filing of Counterclaims in which Automattic's wholly owned subsidiary WooCommerce has chosen to insert itself as a party in this litigation.

## II. COUNTERCLAIMANTS FAIL TO SHOW LEAVE TO AMEND UNDER RULE 15 WOULD BE IMPROPER

Counterclaimants recite the *Foman* factors but ignore the governing presumption: leave to amend is freely given.  Opp. 4.  In the Ninth Circuit, courts must give leave to amend "***presumpti[vely]***" in the absence of prejudice, undue delay, bad faith, or futility.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *U.S. v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).  None of these factors is present here.

***No undue prejudice.***  Counterclaimants claim they will suffer prejudice from delay and expanded discovery.  Opp. 8.  Neither claim holds up.

First, Counterclaimants admit discovery has already encompassed WooCommerce: "Discovery in this litigation has included discovery into WooCommerce, including its history of enforcing the WooCommerce Marks" (Opp. 3); "WPE is correct that the parties' document discovery to date has encompassed WooCommerce" (*id.* 8).  More tellingly, during the parties' recent Rule 26(f) conference on December 4, 2025, Counterclaimants' counsel confirmed that Counterclaimants do not plan to serve any new written discovery or deposition notices related to the Counterclaims, as Counterclaimants have included discovery on WooCommerce throughout the litigation.  Supplemental Declaration of Sara Jenkins in Support of WPE's Reply ¶¶ 2-5.

Nor will the proposed Third Amended Complaint moot or otherwise interfere with Defendants' pending motion to dismiss the Second Amended Complaint, which largely pertains to WPE's antitrust claims against Automattic and Mullenweg and to which WPE does not seek to name WooCommerce as a Defendant.  Moreover, the legal theories in Counts 1-4, 6, and 7 remain identical whether asserted against Automattic or WooCommerce; the Court's analysis of tortious interference, CFAA, UCL, and declaratory judgment does not change based on which defendant is named, for purposes of Rule 12.  *Cf. Mansourian v. Bd. of Regents*, 2007 WL 841739, at *4 (E.D.

Cal. Mar. 20, 2007) (cited at Opp. 8) (finding prejudice because "amendments would substantially broaden the scope of litigation"). Indeed, Automattic has litigated WooCommerce's interest up to this point, and has articulated no reason why it cannot do so as to its pending motion to dismiss, as well.

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight" among the *Foman* factors. *Eminence Capital*, 316 F.3d at 1052. This is not a case on the eve of trial where amendment would disrupt the schedule or otherwise prejudice the parties. Indeed, the fact discovery cutoff is still months away—March 12, 2026. Dkt. 193, 2. "Absent prejudice, or a strong showing of any of the other factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (emphasis omitted). That presumption applies here.

***No bad faith.*** Counterclaimants next argue WPE demonstrated bad faith by making collateral amendments beyond adding WooCommerce, such as adding "for instance" before existing allegations or clarifying that Counterclaimants "made threats to cause, and actually caused" rather than just "actually caused" damage. Opp. 13. As another example Counterclaimants claim that WPE has turned an existing allegation "into being merely an example" (*id.*). These arguments border on the frivolous. The *de minimis* amendments in no way alter the substance of the Second Amended Complaint. They are well within the scope of permissible amendments needed to add a party to a pleading, and do not change the legal or factual scope of this case. To suggest they constitute bad faith is itself an accusation that lacks all credibility.

***No futility.*** Counterclaimants' arguments about the implausibility of naming WooCommerce to certain claims are similarly all unavailing.

As to the intentional interference claims (Counts 1 and 2), Counterclaimants ignore express allegations from the Second Amended Complaint plainly describing WooCommerce's known, ***direct*** interference with WPE's customer relationships. Dkt. 214-1 ¶ 127 (October 16, 2024 email from WooCommerce employee to WPE customer encouraging migration to Pressable in light of the WordPress.org block on WPE); *see also* Dkt. 180 ¶ 127 (same); Dkt. 169, 25-26 (denying Defendants' motion to dismiss interference claims). This is textbook tortious interference: (1)

WooCommerce knew of WPE's customer relationship; (2) WooCommerce intended to disrupt it by using fear of service disruptions Counterclaimants themselves caused; (3) WooCommerce engaged in wrongful conduct (using the wordpress.org block to solicit customers); (4) the email was designed to cause customers to switch away from WPE.  This is not "simply listing" WooCommerce without factual support.  *Marlor v. Hous. Co.,* 2025 WL 2531147, at *7 (D. Idaho Sept. 3, 2025) (cited at Opp. 10); *cf. Williams v. Thompson*, 2021 WL 4461373, at *2 (E.D. Cal. Sept. 29, 2021) (cited at Opp. 10) (similar).

As to the CFAA claim (Count 3), it is **Counterclaimants** who contradict themselves:  if WPE always knew and should have known that WooCommerce independently enforced its WooCommerce marks, including due to the September 2024 letter from "Client" Automattic and WooCommerce, then WooCommerce plainly would have been involved in the enforcement and extortion scheme that WPE alleges in this case, including the conduct that led up to the wordpress.org block.  *See* Opp. 2-3.  WooCommerce cannot have it both ways.

As to the UCL claim (Count 4), the proposed Third Amended Complaint alleges numerous predicate acts supporting this claim as to WooCommerce, including because WooCommerce participated in Defendants' broader scheme to use their trademarks to extort WPE, steal its customers, and harm its business—according to the allegations in the Counterclaims (*e.g.,* Dkt. 195 ¶¶ 262-271).  The proposed Third Amended Complaint therefore properly incorporates WooCommerce into the "all Defendants" allegations.  *See generally* Dkt. 214-1 ¶¶ 429-436.  The Opposition's cited cases that found plaintiffs failed to plead wrongdoing against defendants, *see* Opp. 11-12, are thus inapposite.  *See also* Dkt. 169, 18 (denying Defendants' motion to dismiss UCL claim on predicate act basis).

As to the claim for a declaratory judgment of non-infringement (Count 6), Counterclaimants' resistance to naming WooCommerce defies logic given their own parallel infringement counterclaim.  Nor is naming WooCommerce as a defendant for this claim "repetitious" of Counterclaimants' related counterclaim (Opp. 12); WPE's declaratory judgment claim came first, and it now merely seeks to add a proper party to that preexisting claim through the proposed amendment.  The cases cited by Counterclaimants are inapposite and involve declaratory judgment

claims filed *after* identical infringement claims were filed first—unlike here. *Id.* (citing *Pac. Vibrations, LLC v. Slow Gold Ltd.*, 2023 WL 1934436, at *5 (S.D. Cal. Feb. 10, 2023); *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015)). Further, even in those circumstances, courts often allow declaratory judgment counterclaims to proceed. *See, e.g.*, *Fitness Anywhere, LLC v. Woss Enterprises, LLC*, 2014 WL 4802432, at *3 (N.D. Cal. Sept. 26, 2014) (denying dismissal of declaratory relief counterclaims that served the purpose of allowing the accused infringer to continue seeking a declaration of noninfringement even should the plaintiff voluntarily dismiss its infringement claims).

Finally, as to the claim for a declaratory judgment of non-dilution (Count 7), WooCommerce does appear to allege a dilution claim against WPE. *See* Dkt. 195 ¶ 316 ("WP Engine's unauthorized use of the famous WordPress Marks has diluted, continues to dilute, and is likely to cause future dilution of the distinctive quality of those famous trademarks to identify and distinguish **Counterclaimants'** goods and services, in violation of **Counterclaimants'** rights under 15 U.S.C. § 1125(c).") (emphasis added); *id.* ¶ 325 (same, in violation of Cal. Bus. & Prof. Code § 14247). No allegations in the Counterclaims purport to carve out WooCommerce from asserting that claim. Nonetheless, if Counterclaimants agree to stipulate that WooCommerce is not alleging this claim against WPE, WPE will stipulate to drop WooCommerce from its dilution-declaratory judgment claim.

***No undue delay.*** As explained in Section I, despite Counterclaimants' arguments to the contrary (Opp. 9), WPE acted promptly after the Counterclaim's filing; there is no undue delay.

### III. WPE'S PRIOR AMENDMENTS DO NOT PRECLUDE FURTHER AMENDMENT

Counterclaimants argue that WPE is precluded from further amendment because it should have added WooCommerce in a prior amendment. *Id.* 14. Counterclaimants again ignore that it was WooCommerce's filing of a Counterclaim in late October 2025 that triggered this motion; WPE did not have earlier notice that would have led it to include WooCommerce in any prior amendment. Counterclaimants also misapply the law. Counterclaimants' one case cited to dispel WPE's ability to amend involved a plaintiff who sought to "assert new theories" of liability by adding statements the plaintiff knew about "from the beginning of the litigation"—not so here. *Kaplan v. Rose*, 49

F.3d 1363, 1370 (9th Cir. 1994) (cited at Opp. 14).  Contrary to Counterclaimants' suggestion, "[p]laintiffs are allowed to amend their complaints several times, if justice so requires." *Lloyd v. Joshi*, 2009 WL 2488001, at *3 (N.D. Cal. Aug. 13, 2009).  Justice requires amendment here: WooCommerce chose to enter this litigation as an independent counterclaimant and must now answer as a defendant for its own conduct underlying WPE's related claims.

## CONCLUSION

For the foregoing reasons, WPE respectfully requests that the Court grant its Motion For Leave to Amend.

DATED: December 23, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Rachel Herrick Kassabian*
Rachel Herrick Kassabian
*Attorneys for Plaintiff WPEngine, Inc.*