JOSEPH R. ROSE, SBN 279092
 jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

MICHAEL H. DORE, SBN 227442
 mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
 isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
 jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER *(admitted pro hac vice)*
 osnyder@gibsondunn.com
HOWARD S. HOGAN (*admitted pro hac vice*)
 hhogan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc. and*
*Matthew Charles Mullenweg and Counterclaimants*
*WordPress Foundation and WooCommerce Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>    Defendants.<br>_____<br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>    Counterclaimants,<br><br>    v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>    Counterdefendant. | Case No. 3:24-cv-06917-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:    March 5, 2026<br>Time:    2:00 p.m.<br>Place:    Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT ............................................................................................................ 2

    A.   The Court Should Again Dismiss WPE's Antitrust Claims (Counts 11-14) ............... 2

        1.   WPE's Proposed Aftermarkets Are Implausible.......................................... 2

        2.   WPE Continues to Fail to Allege Market Power ........................................... 4

        3.   WPE Fails to Allege Antitrust Injury............................................................ 5

        4.   WPE Fails to Allege Any Anticompetitive Conduct ..................................... 6

        5.   WPE Fails to Allege Any Unlawful Tying .................................................. 10

    B.   The Court Should Again Dismiss WPE's CFAA Section 1030(a)(7) Claim (Count 3) .................................................................................................................. 11

        1.   WPE Cannot Establish Extortion or Extortionate Intent............................. 11

        2.   WPE Cannot Establish the Alleged Threats Facilitated Attempted Extortion...................................................................................................... 12

        3.   WPE Cannot Establish Damage to a Protected Computer............................ 13

    C.   The *Noerr-Pennington* Doctrine Bars Plaintiff's Amended Claims .......................... 13

III. CONCLUSION ........................................................................................................ 15

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
   836 F.3d 1171 (9th Cir. 2016)...........................................................................10

*AliveCor, Inc. v. Apple Inc.*,
   2026 WL 61304 (9th Cir. Jan. 8, 2026) .........................................................7, 9

*Am. Presid. Lines, LLC v. Matson, Inc.*,
   2025 WL 870383 (D.D.C. Mar. 19, 2025) ...........................................................7

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
   108 F.3d 1147 (9th Cir. 1997)....................................................................7, 8, 10

*Apple Inc. v. Samsung Elecs. Co.*,
   2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) .......................................................6

*Bernegger v. Banks*,
   2008 WL 3539777 (E.D. Wisc. Aug. 12, 2008) ..................................................13

*Cascades Computer Innovation LLC v. RPX Corp.*,
   2013 WL 6247594 (N.D. Cal. Dec. 3, 2013) .......................................................14

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023)......................................................................2, 3, 4

*Coronavirus Rep. v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .......................................................2

*CoStar Grp., Inc. v. Comm. Real Estate Exc., Inc.*
   141 F.4th 1075 (9th Cir. 2025) .............................................................................8

*Dooley v. Crab Boat Owners Association*,
   2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ......................................................10

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ...............................................................................7

*Duke Energy Carolinas, LLC v. NTE Carolina II, LLC*,
   111 F.4th 337 (4th Cir. 2024) ...............................................................................7

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451 (1992)................................................................................................2

*Entri, LLC v. GoDaddy.com, LLC*,
   2024 WL 4468488 (E.D. Va. Oct. 10, 2024) ......................................................10

*Epic Games, Inc. v. Apple Inc.*,
   67 F.4th 946 (9th Cir. 2023) ..................................................................................2

*Evans Hotels, LLC v. Unite Here Local 30*,
   433 F. Supp. 3d 1130 (S.D. Cal. 2020) ...............................................................14

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
i

*Gamble v. Kaiser Found. Health Plan*,
   348 F. Supp 3d 1003 (N.D. Cal. 2018) ...................................................................14, 15

*GCM Partners, LLC v. Hipaaline Ltd.*,
   2020 WL 6867207 (N.D. Ill. Nov. 23, 2020) ....................................................................13

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
   723 F.3d 1019 (9th Cir. 2013) ...........................................................................................2

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) ..........................................................................................13

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ...........................................................................15

*Inplant Enviro-Systems 2000 Atlanta, Inc. v. Lee*,
   2015 WL 12746702 (N.D. Ga. Feb. 10, 2015) .................................................................13

*Klein v. Facebook, Inc.*,
   580 F. Supp. 3d 743 (N.D. Cal. 2022) ...............................................................................8

*Lambrix v. Tesla*,
   737 F. Supp. 3d 822 (N.D. Cal. 2024) ...............................................................................3

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ............................................................................................................2

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ....................................................................................11, 12

*Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co.*,
   94 F. Supp. 2d 804 (E.D. Ky. 1999) ...................................................................................6

*Perez v. DirecTV Group Holdings, LLC*,
   2019 WL 6362471 (C.D. Cal. July 23, 2019) ..................................................................14

*Sewell v. Bernadin*,
   795 F.3d 337 (2d Cir. 2015) .............................................................................................13

*SkyHop Technologies, Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) ...................................................................................12, 13

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006).....................................................................................12, 14

*Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc.*,
   2025 WL 2637507 (N.D. Cal. Sept. 12, 2025) ................................................................15

*Tremblay v. OpenAI, Inc.*,
   742 F. Supp. 3d 1054 (N.D. Cal. 2024) ...........................................................................15

*U.S. v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ..............................................................................................8

Gibson, Dunn &
Crutcher LLP

*U.S. v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) ..................................................................................... 5

*U.S. v. Villalobos*,
   748 F.3d 953 (9th Cir. 2014) ................................................................................... 12

*Wit Walchi Innovation Techs., GMBH v. Westrick*,
   2012 WL 33164 (S.D. Fla. Jan. 6, 2012) ................................................................. 13

## Statutes

18 U.S.C. § 1030 ....................................................................................................... 11, 13

Cal. Fin. Code § 90005 ................................................................................................. 10

## Rules

Fed. R. Civ. P. 12(g)(2) ................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

# I.    INTRODUCTION

WPE's Opposition confirms the fatal defects that led this Court to dismiss its antitrust and CFAA extortion claims. Nothing in the Second Amended Complaint ("SAC") alters the basic reality: WPE still fails to plead any cognizable market, market power, antitrust injury, plausible anticompetitive conduct, or "extortionate" conduct. That failure alone requires dismissal, this time with prejudice.

To support its antitrust claim, WPE relies on rhetoric rather than factual allegations. It does not—and cannot—allege a viable aftermarket, let alone Defendants' power within one. Nor does it plead harm to competition as opposed to its own alleged business grievances. Instead, WPE repackages arguments this Court already rejected, offering allegations that remain convoluted, speculative, and implausible. That is unsurprising. The notion that WPE could plausibly plead antitrust violations is fundamentally at odds with economic reality: WPE itself has a larger market share than Defendants in a highly fragmented, fast-moving, open-source ecosystem. Antitrust law does not exist to shield a competitor from commercial friction—especially where the plaintiff itself is a dominant participant.

WPE's CFAA extortion claim fares no better. It fails for precisely the reasons this Court already identified. As a matter of law, Defendants' efforts to secure trademark licensing fees constitute "hard bargaining," not extortion. This Court has already so held, concluding that Defendants' "demands for a licensing fee" do not amount to "extortionate conduct." Dkt. 169 at 13–14. WPE cannot plead around that ruling. Nor can it establish the requisite nexus between Defendants' alleged statements and any payment demand, particularly where WPE admits it had already rejected those demands before the purported threats were made. And WPE's allegation that it was blocked from accessing *Defendants'* website—standing alone—does not plausibly allege harm to a "protected computer" under the CFAA.

Finally, WPE's antitrust and CFAA extortion claims are independently barred by the First Amendment. They rest on Defendants' pre-suit communications and settlement demands—conduct squarely protected by the *Noerr-Pennington* doctrine. WPE offers no meaningful response, and certainly no basis to strip Defendants of immunity for engaging in constitutionally protected petitioning activity.

In short, WPE's Opposition underscores what the pleadings already make clear: these claims were deficient when first filed, remain deficient now, and cannot be salvaged through further

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
1

1  amendment. Accordingly, dismissal with prejudice is warranted.

2                                    **II.     ARGUMENT**

3  **A.     The Court Should Again Dismiss WPE's Antitrust Claims (Counts 11-14)**

4          WPE initiated this suit because Defendants were trying to stop WPE from free-riding on the

5  WordPress open-source project. But antitrust laws *encourage* efforts to prevent "free-riding," *Gorlick*

6  *Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1026 (9th Cir. 2013), as they

7  increase "interbrand competition," which is "'the primary purpose of the antitrust laws,'" *Leegin Cre-*

8  *ative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007) (quotation omitted). It is thus unsur-

9  prising that WPE cannot plausibly allege any of the basic elements of an antitrust claim.

10         **1.     WPE's Proposed Aftermarkets Are Implausible**

11         WPE again alleges a "foremarket" for *web content management systems* ("WCMS") in which

12  WordPress open-source software is one of many options, and three aftermarkets limited to WordPress:

13  (1) WordPress hosting services; (2) WordPress custom field plugins; and (3) WordPress plugin distri-

14  bution. SAC ¶ 261. But WPE still fails to plausibly allege multiple elements necessary to plead a cog-

15  nizable single-brand aftermarket. *See Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 977 (9th Cir. 2023).

16         **Epic *Applies to the Pleadings.*** At the outset, WPE fights this Court's prior holding that the

17  *Epic* factors apply and, citing nonprecedential decisions, contends they are irrelevant where the de-

18  fendant has power in the foremarket. Opp. 2-3; *see* Dkt. 169 at 3-4. But the Ninth Circuit takes the

19  opposite approach. *Epic* involved a defendant with market power in the foremarket, and the court re-

20  jected plaintiff's single-brand aftermarket for failure to prove consumer lock-in. *See* 67 F.4th at 977-

21  81. Similarly, in *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948 (9th Cir. 2023), the court affirmed

22  dismissal for failure to establish the *Epic* factors, despite allegations of substantial market share in the

23  foremarket. *See id*. at 957; *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *8 (N.D. Cal. Nov.

24  30, 2021). Although *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), ex-

25  amined circumstances in which a defendant lacking foremarket power could nevertheless have power

26  in an aftermarket, it did not hold that foremarket power automatically results in cognizable aftermar-

27  kets. Nor does WPE's claim that there is "direct evidence" that Defendants "already influenced the

28  market" avoid *Epic* and the need to define a market. Opp. 2 (cleaned up). WPE does not plausibly

Gibson, Dunn &
Crutcher LLP

allege any such direct evidence (*see infra* § II.A.2), but regardless, market definition is still "essential to any antitrust case" because it provides a basis for "measur[ing] [the defendant's] ability to lessen or destroy competition." *Coronavirus Rep.*, 85 F.4th at 955 (cleaned up). In short, the *Epic* factors govern here. WPE does not meet them, and in turn cannot define a cognizable aftermarket, for several reasons:

**Known Aftermarket Restrictions.** WPE fails to allege the "crucial" factor—that the "aftermarket restrictions are not generally known when consumers make their foremarket purchase." *Epic*, 67 F.4th at 977, 979. WPE does not contest that consumers know opting for WordPress software commits them to WordPress-based hosting, plugins, and plugin distribution. Opp. 3-5. Instead, WPE insists that the relevant restrictions (of which consumers are unaware) are Defendants "reserv[ing] for themselves" the ability to (1) "charge exorbitant fees for access to wordpress.org," (2) "block market participants' access to wordpress.org," and (3) "assert ownership and control over WordPress software and trademarks." *Id*. But as this Court explained, these are not cognizable *restrictions*; they are not mechanisms by which WordPress users are "locked in" to WordPress aftermarkets. *See* Dkt. 169 at 4-6; *Epic*, 67 F.4th at 977, 980; *see* Mot. 5-6 (collecting cases). WPE suggests that this definition makes the lack-of-knowledge factor redundant with information and switching costs, Opp. 4, but those factors concern different aspects of lock-in, whether consumers will be able to accurately life-cycle price the combined costs of their choices in the foremarket and aftermarket. *Id.* 976-77. WPE also complains that the technological restriction of WordPress users to WordPress-based hosting, plugins, and plugin distribution cannot be the "challenged aftermarket restriction" because WPE is not "specifically challeng[ing]" it, Opp. 4, but that is backwards. The question is whether consumers know that their aftermarket options are restricted, such as, in *Epic*, by being required to get apps only from the App Store, or in *Tesla*, being required to use Tesla repair and service shops. *Epic*, 67 F.4th at 977, 980; *Lambrix v. Tesla*, 737 F. Supp. 3d 822, 835 (N.D. Cal. 2024). WPE does not challenge any such restriction here.

**No Information Costs**. WPE fails to establish that "significant information costs prevent accurate life-cycle pricing." *Epic*, 67 F.4th at 977. WPE mischaracterizes Defendants' trademark enforcement and restriction of WPE's access to WordPress.org as hidden costs, but the SAC and the documents it incorporates confirm that consumers had notice that WordPress.org could ban them for trademark misuse. SAC ¶ 70; RJN Ex. 1 at 4-6, 9, 16-18, 24-27. WPE cannot plausibly allege that such trademark-

related limits (even if they were aftermarket "restrictions" under *Epic*) were "unknown" to the Word-Press community. *See* SAC ¶¶ 208, 212. Tacitly conceding this flaw, WPE argues only that notice is a factual issue unfit for the pleadings stage. Opp. 5. But where a complaint fails to plausibly allege the *Epic* factors, the Ninth Circuit has held that dismissal is appropriate. *Coronavirus Rep.*, 85 F.4th at 956.

**No Dependency on Foremarket Purchase.** WPE does not allege that the hosting market is "entirely dependent on the prior purchase of a durable good in a *foremarket*." *Epic*, 67 F.4th at 976. The SAC does not plausibly allege that consumers purchase WordPress WCMS first and then make a separate WordPress hosting purchase dependent on that prior choice. In most cases, the relevant choice is likely between different hosting platforms—with the WCMS offered being a feature of each plat-form. SAC ¶¶ 287–89. That is not a foremarket/aftermarket dynamic. *See* Mot. 7; *Coronavirus Re-porter*, 85 F.4th at 955 ("demand depends entirely upon prior purchases in a foremarket").

### 2.    WPE Continues to Fail to Allege Market Power

**WCMS Foremarket.** WPE again fails to allege Defendants' market power in the WCMS fore-market through either indirect or direct evidence. Dkt. 169 at 8. For indirect evidence, WPE alleges that "WordPress" comprises 60% of content management systems, absurdly ascribing that entire "mar-ket share" to Defendants because Mullenweg "controls" WordPress and the wordpress.org website. SAC ¶¶ 281-83 & n.116; Opp. 6. But WPE fails to explain how Mullenweg "controls" WordPress software in any meaningful sense. Although Mullenweg co-created the original version, WPE admits the software can be used, modified, and distributed by anyone, without Defendants' permission and without payment. *See* SAC ¶ 49. These undisputed facts render WPE's analogy to Microsoft and its copyright control over Windows inapt: Defendants have no such legally enforceable rights over Word-Press. For direct evidence, WPE nowhere establishes that the price of WordPress *software* (separate from hosting, plugins, or plugin distribution) has increased beyond zero, insisting that Defendants "ef-fective[ly]" increased prices by demanding trademark licenses and disrupting the "operation and func-tionality of millions of websites" (*i.e.*, WPE's own customer accounts). SAC ¶¶ 277-78; Opp. 7. But the Court already rejected this contention, concluding that such demands "*say*[] *nothing about the price for the product in the relevant foremarket*." Dkt. 169 at 8 (emphasis added). It is undisputed that anyone can build a website using WordPress software without using Defendants' trademarks. *See* SAC ¶ 49.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
4

As to WPE's allegations of "decreased quality" and "cost increases," SAC ¶ 278-79, the Court concluded previously that these "allegations . . . are conclusory." Dkt. 169 at 8. WPE's new allegations, at best, relate to customers' perceptions about whether WordPress is "stable" (SAC ¶ 279); they do not explain how Defendants' alleged conduct actually decreased the quality of WordPress software or increased costs (it didn't). Nor does WPE explain how these effects, even if properly pleaded, affected competition in the WCMS market overall, as opposed to WPE specifically. And even assuming that there was an overall decrease in the quality of WordPress software (there wasn't), Defendants would have market power only if they did not correspondingly lose customers, something else WPE fails to allege. *See U.S. v. Syufy Enters.*, 903 F.2d 659, 666 (9th Cir. 1990).

***WordPress-Only Aftermarkets.*** WPE fails to establish market power in any of the purported aftermarkets. Mot. 9-11. For the alleged hosting and plugin "aftermarkets," WPE concedes that it relies entirely on direct evidence. Opp. 8-9. But its direct evidence of increased prices is, again, only the alleged trademark royalty demands, and this Court's reasoning for why these demands are not a price increase in the WCMS market applies equally here, Dkt. 169 at 8. WPE also alleges its customers faced service disruptions, SAC ¶ 248, but does not explain how Defendants' actions degraded the overall offerings of WordPress hosting, plugins, or plugin distribution beyond vague allusions to stability (SAC ¶ 279). *See* Mot. 10-11. For the purported plugin distribution aftermarket, WPE alleges that Defendants have "nearly 100%" market share because Mullenweg owns WordPress.org, Opp. 9. But WPE also acknowledges that consumers can access plugins through "mirror" websites (which WPE set up after its access to WordPress.org was interrupted). SAC ¶ 237. WPE's assertion that mirrors "call back to wordpress.org" is a non sequitur because the complaint defines the "plugin" market to include all channels for customers to download plugins, regardless of the initial source for the plugin. SAC ¶ 316.

### 3. WPE Fails to Allege Antitrust Injury

WPE fails to allege that it suffered antitrust injury—that is, injury flowing from alleged harm to *competition*, rather than to *WPE* alone. As explained in Defendants' Motion, the only harms that WPE identifies are temporary disruption to its business and movement of websites away from WPE to other providers (not limited to Automattic). Mot. 11. WPE now responds with a laundry list of other alleged harms to market actors beyond WPE, Opp. 10, but these examples range from the conclusory

to the nonsensical. WPE argues that Defendants harmed other WCMSs, like Drupal and Joomla, by attracting customers with the promise that WordPress would be "open" and "free" forever. *Id*. But WPE never contests that anyone can use WordPress software for free, so these statements aren't even misrepresentations, let alone anticompetitive conduct. WPE also cites a handful of conclusory allegations about Defendants requiring competitor hosting sites to license their use of Defendants' trademarks and offering competing versions of developers' plugins. *Id.* But at most, these allegations amount to vigorous competition in the hosting and plugin markets, and WPE never connects the dots of Defendants' alleged actions and any harm to downstream consumers. Finally, WPE suggests that Defendants' actions towards WPE led to increased costs and lower quality for "millions of customers and partners." Opp. 10. But this Court has already rejected these theories, concluding that any increased costs WPE or other hosts face "say[] nothing about the price for the product in the relevant foremarket," and that WPE's "allegations that Defendants' conduct reduced quality are conclusory." Dkt. 169 at 8. WPE's addition of soundbites from a single "market participant" do nothing to fix these problems. *See Louisa Coca-Cola Bottling Co. v. Pepsi-Cola Metro. Bottling Co.*, 94 F. Supp. 2d 804, 814 (E.D. Ky. 1999) (harm to a single firm "does not demonstrate a market wide competitive detriment"); Opp. 10.

*Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011), does not suggest otherwise. There, Apple alleged that Samsung deceived regulators into incorporating its patented technology into a technical standard and then refused to license that technology in good faith, resulting in increased prices and decreased quality and innovation. *Id.* *2-3. Unlike the patented technology, use of Defendants' trademark or WordPress.org is not essential to participating in any of the purported markets, *see* Mot. 8, even if they yield certain efficiencies, SAC ¶¶ 322-24. WPE responds by arguing, for the first time, that harm to WPE may weaken overall competition by permitting Defendants to "act without real constraint." Opp. 11. But WPE nowhere alleges that it is a unique conditioning force on Defendants' behavior in the hosting aftermarket (let alone any of the other three proposed markets); nor could it, given the robust competition evident in the W3Techs data, which shows Automattic has less than 1% of the hosting market and WPE has 1.5%. SAC ¶ 281 & n.116; *see also* Mot. 9-10 & n.2.

### 4.    WPE Fails to Allege Any Anticompetitive Conduct

WPE also fails to plausibly allege "anticompetitive conduct," dooming WPE's monopolization

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
6

and attempted monopolization claims. Mot. 12-15. None of the three broad categories alleged—(1) deception of the market and extortion and disparagement of WPE; (2) interference with WPE's customers and operations; and (3) solicitation of WPE's personnel, SAC ¶ 519—affects competition in the WCMS foremarket (or in any aftermarkets, even if they were plausibly alleged). *See* Mot. 12. WPE points to Defendants' alleged trademark licensing demands, their allegedly deceptive statements that WordPress would always be "open" and "free," and their alleged destabilizing of the WordPress ecosystem as affecting the WCMS market. Opp. 12. But as explained, the Court already held that trademark licensing fees are not prices for WordPress software. *See supra* at 5. WordPress software also remains free, precluding WPE's deception argument. And WPE's vague, conclusory allegations about destabilizing WordPress say nothing of the overall competition in the WCMS market.

WPE argues that, even if none of Defendants' alleged actions rise to the level of anticompetitive conduct, its actions are collectively exclusionary. Opp. 12. But combining *lawful* conduct with other *lawful* conduct cannot create *unlawful* anticompetitive conduct. For this reason, courts (including the Ninth Circuit) largely reject this zero-plus-zero-equals-one, "monopoly broth" approach. *See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1142 (9th Cir. 2022); *Am. Presid. Lines, LLC v. Matson, Inc.*, 2025 WL 870383, at *10 (D.D.C. Mar. 19, 2025) (gathering authorities); *see also AliveCor, Inc. v. Apple Inc.*, 2026 WL 61304, at *6 (9th Cir. Jan. 8, 2026) (analyzing whether defendants' conduct falls into "specific categories" of anticompetitive conduct). WPE relies on *Duke Energy Carolinas, LLC v. NTE Carolina II, LLC*, 111 F.4th 337 (4th Cir. 2024), Opp. 12, but *Duke* is an outlier and contrary to Ninth Circuit precedent. *See Matson*, 2025 WL 870383, at *10.

***Alleged anticompetitive statements.*** WPE complains about various public statements, alleging that Defendants "deceived the market" by saying WordPress is open source and then demanding a trademark royalty from WPE; "extorted" WPE by threatening to "go nuclear" absent royalty payments; and made "disparaging statements" about WPE. SAC ¶ 519; Mot. 12-15. But the Ninth Circuit presumes that such public statements cannot be antitrust violations unless WPE can demonstrate that the statements were "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." *Am. Pro. Testing Serv., Inc. v.*

*Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) ("*Harcourt*"). WPE contends that *Harcourt* applies only to disparagement, not deception of the market, Opp. 12-13 & n.6, but neither of the principal cases WPE cites for this distinction grappled with *Harcourt*'s breadth. *See CoStar Grp., Inc. v. Comm. Real Estate Exc., Inc.* 141 F.4th 1075, 1093 (9th Cir. 2025) (citing *U.S. v. Microsoft Corp.*, 253 F.3d 34, 76-77 (D.C. Cir. 2001)). *CoStar* and *Microsoft* involved hidden technical features that blocked customers' use of competitors' products, but Defendants here never hid the fact that people could be banned from WordPress.org or that WPE was banned. By contrast, *Harcourt* concerned antitrust liability for "false and misleading advertising," 108 F.3d at 1152, and its framework thus fits here. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022) (*Harcourt* applies to Facebook's allegedly false statements about its privacy practices).

On the first three elements, the Court previously ruled that Defendants' statements regarding WordPress "'forever be[ing] an open platform'" and there being "'free access for the world'" were too "'vague'" and "'general'" to be actionable under promissory estoppel. Dkt. 169 at 24-25. WPE contends that the standard for the first three *Harcourt* elements is less rigorous, Opp. 13, but the same vagueness that prevented WPE from establishing any "clear and unambiguous" promise also makes "objective verification" under *Harcourt* impossible. WPE argues that whether WordPress was "free, open, for everyone, forever is objectively verifiable," Opp. 13, but although the General Public License certainly guarantees such access in perpetuity, SAC ¶ 410, it is impossible to verify objectively that, for example, the guarantee will be "forever" honored. WPE also writes off as "attorney say-so" the fundamental point that the right to use software as part of the open-source program as a matter of ***copyright law*** is distinct from the right to use the name "WordPress" to communicate who is offering that software as a matter of ***trademark law***. This is not a "fact dispute," but a legal distinction.

Similarly, Defendants' allegedly disparaging remarks are too vague to be objectively verifiable. *See, e.g.*, SAC ¶ 102 (alleging that "customers [who] switch to a different host . . . '*might* get faster performance'" (emphasis added)). WPE suggests that the survival of its libel claims based on similar disparaging statements requires the Court to find the disparaging remarks satisfy *Harcourt* as well, Opp. 14, but the standards are distinct: while the Court reserved the question whether the alleged libelous remarks were fact or opinion until after discovery, the question here is whether these statements

Gibson, Dunn &
Crutcher LLP

1    are "clearly false," which the Court did not previously address. *See* Dkt. 169 at 22.

2    WPE also fails to satisfy the remaining *Harcourt* elements. As to the **fourth element**, WPE

3    again asserts that consumers cannot assess whether WPE's offerings are "sub-par," SAC ¶ 519; Opp.

4    14. But this assumes the audience for Defendants' alleged remarks are inexperienced consumers, when

5    many of the allegedly disparaging statements were made in fora like WordCamp with a sophisticated,

6    knowledgeable audience. SAC ¶¶ 102-13. For the **fifth element**, WPE admits that the statements at

7    issue (SAC ¶ 519) were made shortly before the lawsuit in September 2024. Opp. 14-15. Although

8    WPE contends it could sue before being driven out of business, Opp. 15, this general proposition of

9    antitrust law does not trump the specific requirements for overcoming the presumption that public

10   statements cannot be antitrust violations. WPE also notes that Defendants' statements concerning free

11   and open access date back to 2010, but as explained above, these true statements fail various other

12   *Harcourt* elements. For the **sixth element**, WPE throws up its hands at the prospect of correcting the

13   alleged misstatements, especially given Mullenweg's clout in the WordPress community and the tech-

14   nical nature of the material. Opp. 15. But WPE ignores the sophistication of the audience for the alleged

15   misstatements, SAC ¶¶ 102-13, and does not deny that, backed by private equity, it has more than

16   enough resources to rebut the alleged misrepresentation with its own speech. Mot. 13-14.

17       ***Alleged interference with WPE customers and operations.*** WPE alleges that Defendants "in-

18   terfered" with WPE's "customers" and "operations" by blocking WPE from accessing WordPress.org.

19   SAC ¶ 519. Defendants explained that this conduct is a refusal to deal. Mot. 14. The Ninth Circuit

20   recently reaffirmed that there is "no duty to deal with competitors," with narrow exceptions established

21   in *Aspen Skiing*. *AliveCor*, 2026 WL 61304, at *7. WPE does not attempt to satisfy this exception,

22   instead arguing that the duty-to-deal doctrine does not apply where the refusal is pretextual or designed

23   "to induce customers not to deal with the plaintiff." Opp. 15-16. Neither objection is correct. The SAC

24   does not allege that blocking WPE's access to WordPress.org was pretextual (the word "pretext" does

25   not appear in the SAC), and the fact that WPE's employees and customers lost access to WordPress.org

26   does not make the duty-to-deal framework inappropriate. Nor could it; otherwise, the exception when

27   employees and customers are affected would swallow the duty-to-deal framework.

28       ***Solicitation.*** Finally, WPE's Opposition confirms the weakness of its "solicitation" theory.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
9

WPE acknowledges (Opp. 16-17) that hiring a competitor's personnel does not violate antitrust laws unless the "talent is acquired not for purposes of using that talent but for purposes of denying it to a competitor," *Harcourt*, 108 F.3d at 1153, but points to no allegation that Defendants did not use WPE's former personnel upon hiring them. WPE also suggests that the Court "must" infer predatory intent because Defendants hired most of the at-issue employees after the so-called "nuclear war" with WPE, Opp. 16-17, but cites no authority mandating such an inference. WPE also passingly contends it can sustain the claim by alleging Defendants "harass[ed] WPE's CEO," Opp. 16, but it merely alleges a series of communications regarding Defendants' concerns with WPE and a potential job offer to WPE's CEO (SAC ¶¶ 93-97, 145-48, 519, 533)—a far cry from the yelled obscenities and vandalism in *Dooley v. Crab Boat Owners Association*, 2004 WL 902361, at *1-*2, *6, *11 (N.D. Cal. Apr. 26, 2004).

### 5. WPE Fails to Allege Any Unlawful Tying

WPE contends that Defendants engaged in negative tying by conditioning access to WordPress plugin distribution on customers *not* using web hosting or plugins from WPE. SAC ¶¶ 542-66. This theory fails for several reasons. *See* Mot. 15. ***First***, WPE does not deny that its tying claims cannot survive if it fails to allege a "tying" market or establish market power, Opp. 17. As explained, WPE fails on both fronts. *See supra* § II.A.2; Mot. 15. ***Second***, WPE alleges no agreement between Defendants and any WordPress users—a required element of tying claims. *See* Areeda & Hovenkamp ¶ 1752 (2025). WPE alleges that a "checkbox" required WordPress.org users "to affirm" they "would forego" WPE's services, Opp. 17, but the alleged "checkbox" says no such thing: It only required users to attest "I am not affiliated with [WPE] in any way, financially or otherwise." *See* SAC ¶¶ 546, 558. WPE's customers are not WPE's "affiliates," *see* Cal. Fin. Code § 90005(a), (c), and no allegations in the SAC substantiate this implausible interpretation. WPE contends that no "*express* agreement" is necessary if an agreement is "implicit[]." Opp. 17. But the problem is that no conditioning (explicit or implicit) ever arose, not that the negative tying agreement was unwritten. *Cf. Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) ("a seller [must] explicitly or implicitly impose[] conditions linking the sale of a tying product with the sale of the tied product"); *Entri, LLC v. GoDaddy.com, LLC*, 2024 WL 4468488, at *8 & n.5 (E.D. Va. Oct. 10, 2024) (same). WPE alleges no agreement by any consumers in the WordPress plugin distribution market not to use WPE for hosting or plugins.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
10

**B.    The Court Should Again Dismiss WPE's CFAA Section 1030(a)(7) Claim (Count 3)**

The Court previously rejected WPE's CFAA "extortion" theory—that Defendants' restriction of WPE's access to WordPress.org and forking of the ACF plug were an attempt to "extort" WPE to pay for a trademark license—because WPE "cannot plausibly allege that it had a preexisting right to access and use Wordpress.org or related trademarks in perpetuity for free," and Defendants' license demands sought "'payment for services [with] . . . objective value'" that did "not constitute extortionate conduct." Dkt. 169 at 13-14. WPE's amended claim again fails to allege facts sufficient to constitute extortion, and WPE also cannot establish that Defendants' conduct was in furtherance of the alleged extortion or that Defendants harmed (or threatened to harm) any "protected computer."

**1.    WPE Cannot Establish Extortion or Extortionate Intent**

Section 1030(a)(7) requires "intent to extort . . . money or [an]other thing of value," and liability under subsection (a)(7)(C) also requires that Defendants damage "a protected computer" "to facilitate the extortion." 18 U.S.C. § 1030(a)(7), (C). WPE claims that Defendants' blocking WPE from Word-Press.org and forking the ACF plugin were part of an extortionate scheme to obtain trademark license payments from WPE. Opp. at 18-20. But the Court already held that such conduct is not extortion, but rather lawful acts taken for the purpose of enforcing trademarks and seeking payment for trademark use. Dkt. 169 at 13-14. WPE yet again fails to "demonstrate either that [it] had a pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014).

WPE asserts a "preexisting right to 'the continued normal operation of its own computers running the open source WordPress software' and 'continued access to wordpress.org'" *without payment*. Opp. 18. But as the Court held before, WPE "cannot plausibly allege that it had a preexisting right to access and use Wordpress.org . . . in perpetuity for free." Dkt. 169 at 13. WPE's new argument that restricting its access to WordPress.org deprived it of "rights" under the General Public License is non-sense: WPE never alleges that it was precluded from running, distributing, or redistributing the Word-Press open-source software. Similarly, WPE acknowledges that the WordPress "plugin developer guidelines" state that plugins may "be[] removed" and developers "banned from hosting plugins on WordPress.org," SAC ¶¶ 69, 327, which undermines its assertion of a "preexisting right" to "'free

hosting' of [its] plugins" on WordPress.org and to the "security and integrity" of its ACF plugin *on WordPress.org*. *See* Opp. 18. And WPE's suggestion that its preexisting rights must be evaluated on "a full record" that includes "evidence of industry custom," Opp. 18, is a red herring: No such evidence is necessary, because the purported rights are facially implausible and contradicted by WPE's own allegations. WPE thus "had no 'right' to access" WordPress.org or take advantage of the functionality it derived from such access, and "[n]o law prohibited" Defendants "from conditioning access" on trademark royalties, precluding its "extortion" theory as a matter of law. *Levitt*, 765 F.3d at 1131. WPE acknowledges that Defendants' sole economic aim was to obtain payments for WPE's use of trademarks. *See* Opp. 19. That "lawful claim to the property demanded" confirms that Defendants' demands were not extortionate. *Levitt*, 765 F.3d at 1131 (quoting *U.S. v. Villalobos*, 748 F.3d 953, 956 (9th Cir. 2014)). Contrary to WPE's argument, Opp. 19, the "'means' to obtain property" may be inherently "'wrongful' . . . without regard to the 'ends' sought" only in "cases involving physical violence" or other *criminal* behavior, *Villalobos*, 748 F.3d at 956-58, and WPE alleges neither.

WPE also cannot establish that Defendants "had no right to seek payment" for WPE's acknowledged use of their trademarks. *Levitt*, 765 F.3d at 1133. WPE repeats the same arguments that the Court already rejected when it held that Defendants sought "'payment for services'" with "'some objective value.'" Dkt. 169 at 13-14 (quoting *Levitt*, 765 F.3d at 1131). It is irrelevant whether WPE's allegations about other "companies' decade-long usage of the terms" or Defendants' "active approval and praise[]" of WPE's use of the terms," Opp. 19, may ultimately be valid defenses to Defendants' infringement claims (they are not): Even the "assertion of weak claims predicated on unsupportable factual allegations" is not extortion. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939-40 (9th Cir. 2006). WPE analogizes to *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), but there the defendant demanded payment for the release of the *plaintiff's* own "intellectual property." *Id*. at 1225. WPE's claim, by contrast, hinges on the theory that Defendants had no right to seek payment for *their own property*. WPE has no plausible path to proving extortion or extortionate intent by Defendants.

## 2. WPE Cannot Establish the Alleged Threats Facilitated Attempted Extortion

WPE's CFAA section 1030(a)(7) claim also fails because WPE does not plausibly allege that any threats to damage "protected computer[s]" were made to facilitate attempted extortion. *See* Mot.

19-20. WPE alleges threats by Defendants "*[a]fter* WPE refused to accede to Defendants'" trademark license demands. SAC ¶ 407 (emphasis added). That's not extortion—and WPE cannot point to *any* Section 1030(a)(7) case in which alleged extortionate threats began only *after* payment demands were definitively rebuffed. Instead, WPE cites cases in which defendants were actively demanding payment when they made the alleged threats. *See SkyHop Techs.*, 58 F.4th at 1220-21, 1225 (defendant refused to return "source code and intellectual property" unless plaintiff paid $1.1 million); *Bernegger v. Banks*, 2008 WL 3539777, at *1-2 (E.D. Wisc. Aug. 12, 2008) (email included both alleged threat and payment demand); *GCM Partners, LLC v. Hipaaline Ltd.*, 2020 WL 6867207, at *12 (N.D. Ill. Nov. 23, 2020) (threat to revoke access to online platform and "demands to . . . renegotiate the parties' arrangement" were in same email); *Wit Walchi Innovation Techs., GMBH v. Westrick*, 2012 WL 33164, at *1 (S.D. Fla. Jan. 6, 2012) (defendant demanded money while locking plaintiff out of its computer system).

### 3. WPE Cannot Establish Damage to a Protected Computer

WPE's Section 1030(a)(7) claim independently fails because WPE alleges only that Defendants threatened to deprive it of access to Defendants' own website—not that Defendants threatened or damaged any "protected computer." *See* 18 U.S.C. § 1030(a)(7)(A), (C). WPE effectively concedes this, characterizing its claim as involving the deprivation of "'the integrity and availability of data, programs, systems and information' previously available to it on" WordPress.org, Opp. 21-22. The CFAA was "enacted to prevent intentional intrusion onto someone else's computer," *i.e.*, "computer hacking," *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022), not a defendant's operation of its *own website* in a manner that inconveniences that website's users. None of WPE's cited cases support its assertion that a defendant "withholding access" to its own website can constitute damage to a protected computer. *See SkyHop Techs.*, 58 F.4th at 1220, 1226 (defendant withheld plaintiff's "digital property" and "software"); *Inplant Enviro-Systems 2000 Atlanta, Inc. v. Lee*, 2015 WL 12746702, at *1-3 (N.D. Ga. Feb. 10, 2015) (defendant blocked plaintiff's access to third-party server housing plaintiff's website domains); *Sewell v. Bernadin*, 795 F.3d 337, 339-40 (2d Cir. 2015) (no discussion of "damage to a protected computer" standard because claim involved different CFAA subsections).

### C. The *Noerr-Pennington* Doctrine Bars Plaintiff's Amended Claims

Plaintiffs' antitrust and CFAA extortion claims also fail because they are barred by the *Noerr-*

*Pennington* doctrine, which protects Defendants' First Amendment right to make prelitigation settlement demands. WPE asserts that Defendants did "not formally threaten trademark litigation." Opp. 22. But that is false; as WPE itself alleges, before litigation began, Defendants sent "a cease and desist letter," "alleging that WPE's use of" Defendants' marks "constitutes trademark infringement" and threatening "civil litigation." SAC ¶¶ 22, 105 n.61. That is precisely the type of pre-litigation "settlement demand" recognized in *Sosa* and protected by *Noerr-Pennington.* Defendants' alleged threats and demands that did not expressly reference litigation are also protected under *Noerr-Pennington* because they were part of Defendants' trademark-enforcement efforts and therefore "incidental to petitioning activity." *Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1146 (S.D. Cal. 2020) ("threats to . . . engage in a negative publicity campaign" were protected along with threats to litigate).

The cases WPE cites do not save its claims. This case is not like *Perez v. DirecTV Group Holdings, LLC*, 2019 WL 6362471 (C.D. Cal. July 23, 2019), where threats to "ruin [plaintiff's] credit" unless she paid "outrageous sums of money" were unrelated to "threats to litigate." *Id*. at *2, *8. Nor does it resemble *Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 6247594 (N.D. Cal. Dec. 3, 2013), in which the plaintiff pled "licensing overtures[]" or "the timing of any perceived threats" without "sufficient particularity for the Court to" assess if the licensing demands were "tantamount to a presuit settlement demand." *Id*. at *17. Here, WPE's allegations make clear that all of Defendants' so-called "threats" were efforts to negotiate a trademark license to settle the dispute over WPE's infringement—and the failure of those negotiations led to this litigation, in which both sides have brought trademark-related claims. Defendants' demands are therefore "conduct incidental to the prosecution of the suit" and "protected by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934.

WPE fails to show that the "sham litigation exception" applies, because it does not plausibly allege that Defendants' license demands lacked both "objective merit and subjective good faith." *Gamble v. Kaiser Found. Health Plan*, 348 F. Supp 3d 1003, 1027 (N.D. Cal. 2018). WPE cannot meet its "high bar" to allege the exception, because this is not the "'rare case in which a [defendant's] assertion of" trademark rights is "so unreasonable as to support a claim'" of "sham litigation." *Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc.*, 2025 WL 2637507, at *15 (N.D. Cal. Sept. 12, 2025). As the Court held, "WPE cannot plausibly allege" it was entitled to "use Wordpress.org or related

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S CORRECTED SECOND AMENDED COMPLAINT
CASE NO. 3:24-CV-06917-AMO
14

trademarks in perpetuity for free" or that those trademarks lack "'objective value.'" Dkt. 169 at 13. WPE concedes it "regularly uses" Defendants' trademarks, *see* Opp. 24, and the parties are litigating Defendants' well-pleaded counterclaims for trademark infringement and dilution, *see* Dkt. 195, underscoring that Defendants' enforcement efforts were *not* objectively meritless. Nor does WPE plausibly allege Defendants lacked "subjective good faith." *Gamble*, 348 F. Supp. 3d at 1027. WPE relies on cherrypicked quotations from documents, taken out of context, to suggest Defendants lacked "any legitimate interest" in trademark enforcement. Opp. 24. To the contrary, Defendants' conduct both before this litigation and during it confirms their genuine concern with enforcing their trademark rights. *See* SAC ¶ 144 (Defendants filed trademark registration applications in July 2024); *id.* ¶ 22 (Defendants' cease-and-desist letter to WPE); Dkt. 195 (Defendants' trademark counterclaims).

WPE also fails to plausibly allege "other aspects" of an "anticompetitive scheme" that "independently produce anticompetitive harms," which it must to show that Defendants' license demands were actionable notwithstanding their protected status. *See Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007). WPE has *not* alleged that some separate actionable harm arose from Defendants "deceiving the market about free and open access." Opp. 25. This Court recognized as much when it dismissed WPE's antitrust and promissory estoppel claims based on the purported promise "WordPress will forever be an open platform." Dkt. 169 at 1-9, 24.

Lastly, WPE's footnoted argument, *see* Opp. 22 n.7, that Defendants may not invoke *Noerr-Pennington* because they did not raise it in their motion to dismiss WPE's *prior* complaint lacks merit. (It also violates Section H.3 of the Court's standing order, along with footnotes 1-6.) WPE's cited case relies on Fed. R. Civ. P. 12(g)(2), which prohibits Rule 12 motions that "rais[e] a defense or objection that was available to the party but omitted from [an] earlier motion." But this Court has recognized that Rule 12(g)(2) does not bar new arguments in a motion to dismiss a *repleaded* claim, because "an amended complaint supersedes the original, the latter being thereafter treated as nonexistent." *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1057-58 (N.D. Cal. 2024) (Martínez-Olguín, J.).

## III.    CONCLUSION

The Court should grant Defendants' motion and dismiss Counts 3 and 11-14 with prejudice.

1    DATED: January 9, 2026                          Respectfully submitted,

2                                                     GIBSON, DUNN & CRUTCHER LLP

3
                                                      By: */s/ Joseph R. Rose*
4                                                          Joseph R. Rose

5                                                     *Attorney for Defendants Automattic Inc. and*
                                                      *Matthew Charles Mullenweg*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP