JOSEPH R. ROSE, SBN 27902
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

ORIN SNYDER *(admitted pro hac vice)*
  osnyder@gibsondunn.com
HOWARD S. HOGAN*(admitted pro hac vice)*
  hhogan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc., Matthew
Charles Mullenweg, and WooCommerce Inc. and
Counterclaimant WordPress Foundation*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG, an in-<br>dividual; and WOOCOMMERCE INC., a Dela-<br>ware corporation,<br><br>      Defendants. | Case No. 3:24-cv-06917-AMO<br><br>**DEFENDANTS' MOTION TO DISMISS<br>PLAINTIFF'S THIRD AMENDED COM-<br>PLAINT**<br><br><u>Hearing:</u><br>Date:    June 4, 2026<br>Time:    2:00<br>Place:   Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |
| AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG, an indi-<br>vidual; WORDPRESS FOUNDATION, a Califor-<br>nia corporation; and WOOCOMMERCE INC., a<br>Delaware corporation,<br><br>      Counterclaimants,<br><br>  v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>      Counterdefendant. | |

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 4, 2026 at 2:00 Pacific time, or as soon as the matter may be heard, in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, before the Honorable Araceli Martínez-Olguín, Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. (collectively, "Defendants"), will and hereby do move this Court to dismiss Counts 3, 11, 12, 13, and 14 of Plaintiff WP Engine, Inc.'s Third Amended Complaint (Dkt. 233) in their entirety, and Counts 1, 2, 3, 4, 6, and 7 against WooCommerce, Inc., without leave to amend. This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support thereof, all matters of which the Court may take judicial notice, and such documentary and oral evidence as may be presented at or before the hearing on this motion.

DATED: February 24, 2026

By: */s/Joseph R. Rose*
Joseph R. Rose

*Attorney for Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. and Counterclaimant WordPress Foundation*

Gibson, Dunn & Crutcher LLP

1

**TABLE OF CONTENTS**

2
Page

3

I.      INTRODUCTION ................................................................................................ 1

4

II.     LEGAL STANDARD ......................................................................................... 1

5

III.    ARGUMENT ...................................................................................................... 1

6

        A.    The Court Should Again Dismiss WP Engine's Antitrust Claims (Counts 11–
              14) ............................................................................................................ 1

7

              1.     WP Engine's Proposed Aftermarkets Remain Implausible ............................. 2

8

              2.     WP Engine Still Fails to Allege Market Power ................................. 3

9

              3.     WP Engine Fails to Allege Antitrust Injury .................................... 6

10

              4.     WP Engine Fails to Allege Any Anticompetitive Conduct ............................ 7

11

              5.     WP Engine Fails to Allege Any Unlawful Tying ........................... 9

12

        B.    The Court Should Again Dismiss WP Engine's Section 1030(a)(7) Claim
              (Count 3) ............................................................................................ 10

13

              1.     WP Engine Cannot Establish Extortion on the Basis of Trademark
                     Enforcement ........................................................................... 10

14

              2.     WP Engine Cannot Establish Causation ....................................... 12

15

              3.     WP Engine Fails to Allege Any Damage to a Protected Computer ............... 13

16

        C.    The *Noerr-Pennington* Doctrine Bars WP Engine's Amended Claims .................... 14

17

        D.    The Court Should Dismiss All Claims Against WooCommerce ............................. 14

18

IV.     CONCLUSION ................................................................................................ 15

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

*Alicea v. GE Money Bank*,
  2009 WL 1766703 (N.D. Cal. June 18, 2009) ...............................................................15

5

*AliveCor, Inc. v. Apple, Inc.*,
6  163 F.4th 1259 (9th Cir. 2026) ..........................................................................................9

7

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ...........................................................................................7

8

*In re Am. Express Anti-Steering Rules*,
9  361 F. Supp. 3d. 324 (E.D.N.Y. 2019) ..............................................................................2

10

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
  108 F.3d 1147 (9th Cir. 1997).......................................................................................7, 9

11

*In re Apple iPod iTunes Antitrust Litig.*,
12  796 F. Supp. 2d 1137 (N.D. Cal. 2011) ............................................................................8

13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................1

14

*Atl. Richfield Co. v. USA Petroleum Co.*,
15  495 U.S. 328 (1990)...........................................................................................................6

16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................1

17

*Brokerage Concepts v. U.S. Healthcare, Inc.*,
18  140 F.3d 494 (3d Cir. 1998).............................................................................................11

19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)...........................................................................................................6

20

*Cascade Health Sols. v. PeaceHealth*,
21  515 F.3d 883 (9th Cir. 2008)..............................................................................................9

22

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023)...............................................................................................2

23

*Dooley v. Crab Boat Owners Ass'n*,
24  2004 WL 902361 (N.D. Cal. Apr. 26, 2004) .....................................................................9

25

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,
  504 U.S. 451 (1992)........................................................................................................3, 9

26

*Empress LLC v. City and County of San Francisco*,
27  419 F.3d 1052 (9th Cir. 2005)..........................................................................................14

28

*Emulex Corp. v. Broadcom Corp.*,
2010 WL 11595718 (C.D. Cal. June 7, 2010) ...............................................................8

*Enviro-Systems 2000 Atlanta, Inc. v. Lee*,
2015 WL 13297963 (N.D. Ga. June 9, 2015) ...............................................................12

*Epic Games, Inc. v. Apple Inc.*,
67 F.4th 946 (9th Cir. 2023)...............................................................................2, 3, 5

*Gamble v. Kaiser Foundation Health Plan*,
348 F. Supp. 3d 1003 (N.D. Cal. 2018) .......................................................................14

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019)......................................................................................10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
485 F. Supp. 3d 1137 (N.D. Cal. 2020) .........................................................................9

*Ketab Corp. v. Mesriani & Assocs.*,
2015 WL 8022874 (C.D. Cal. Dec. 4, 2015) ...............................................................15

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ...........................................................................8

*Lambrix v. Tesla, Inc.*,
737 F. Supp. 3d 822 (N.D. Cal. 2024) ...........................................................................2

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014)................................................................................10, 11

*LVRC Holdings v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)......................................................................................13

*Malheur Forest Fairness Coalition v. Iron Triangle, LLC*,
164 F.4th 710 (9th Cir. 2026).........................................................................................6

*MLW Media LLC v. World Wrestling Entm't Inc.*,
2023 WL 4053802 (N.D. Cal. June 15, 2023) ...............................................................5

*Nat'l Coll. Athl. Ass'n v. Alston*,
594 U.S. 69 (2021) ..........................................................................................................9

*NetApp, Inc. v. Nimble Storage, Inc.*,
41 F. Supp. 3d 816 (N.D. Cal. 2014) ...........................................................................13

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013)..................................................................................4, 6

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ..........................................................................15

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995).......................................................................................5, 6

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rx Solutions, Inc. v. Caremark, L.L.C.*,
    164 F.4th 436 (5th Cir. 2026)................................................................................7

*Sanchez v. Green Messengers, Inc.*,
    2021 WL 5012150 (N.D. Cal. Oct. 28, 2021)..........................................................15

*SkyHop Techs., Inc. v. Narra*,
    58 F.4th 1211 (11th Cir. 2023)..............................................................................13

*SmileDirectClub, LLC v. Berkely*,
    2019 WL 1091339 (C.D. Cal. Jan. 22, 2019) ........................................................11

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006)..........................................................................11, 14

*Sowash v. Cnty. of San Mateo*,
    2026 WL 76697 (N.D. Cal. Jan. 9, 2026) .............................................................14

*Tate v. Pac. Gas & Elec. Co.*,
    230 F. Supp. 2d 1072 (N.D. Cal. 2002) ..................................................................8

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001)...................................................................................2

*United States v. Syufy Enters.*,
    903 F.2d 659 (9th Cir. 1990)..................................................................................5

*Verizon Commc'ns Inc. v. L. Offs. Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004)................................................................................................7

**Statutes**

18 U.S.C. § 1030(a)(7)................................................................................10, 11, 12

18 U.S.C. § 1030(a)(7)(C)................................................................................10, 13

18 U.S.C. § 1030(e)(8)............................................................................................13

18 U.S.C. § 1951(b)(2)............................................................................................10

Cal. Bus. Prof. Code § 17200................................................................................15

# I. INTRODUCTION

Plaintiff's Third Amended Complaint ("TAC") presents the same claims the Court already dismissed, repackaged but not repaired. The Court previously rejected WP Engine's antitrust theories for failure to allege market power and dismissed its CFAA § 1030(a)(7) claim for failure to allege any extortionate threat. Those rulings addressed substantive defects, not drafting flaws. Yet WP Engine again asserts the same theories based on the same conduct, now framed with revised rhetoric and an added corporate defendant. A plaintiff cannot obtain a different result by repleading the same deficient theory in different words. That is what has happened here.

The allegations remain defective for the reasons the Court already identified. WordPress is free, open-source software that anyone may copy, modify, and distribute—the opposite of monopoly control. And Defendants' sub-1% share (smaller than that of WP Engine itself) cannot plausibly constitute market power under any recognized antitrust framework. The TAC changes wording, not economics, and therefore does not cure these fatal defects. The CFAA claim fails because, as the Court already determined, recasting an ordinary licensing demand in stronger language does not convert it into extortion. And the TAC alleges no actionable conduct by WooCommerce—inserting a new defendant cannot supply facts the Court has already found missing.

This is not a case of curable pleading defects. Because the flaws are substantive and unchanged, the claims—including those against WooCommerce—should be dismissed with prejudice.

# II. LEGAL STANDARD

A complaint should be dismissed under Rule 12(b)(6) if it lacks "facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# III. ARGUMENT

## A. The Court Should Again Dismiss WP Engine's Antitrust Claims (Counts 11–14)

The Court previously dismissed WP Engine's antitrust claims because WP Engine failed to adequately plead its purported single-brand aftermarkets and failed to demonstrate market power in the Web Content Management System ("WCMS") foremarket. WP Engine's new allegations add volume

but not substance. *First*, WP Engine still fails to identify any single-brand aftermarkets that can form the basis of an antitrust claim. *Second*, WP Engine fails to allege facts showing that Defendants have market power either in the WCMS foremarket or the ill-pleaded aftermarkets. *Third*, WP Engine fails to allege antitrust injury because Defendants' purported misconduct has not harmed competition, only an alleged competitor. *Fourth*, the complaints about Defendants' statements and alleged refusal to provide WP Engine with access to Mullenweg's website, WordPress.org, are not anticompetitive under the antitrust laws. *Fifth*, WP Engine's "tying" allegations fail because WP Engine does not allege that any WordPress.org customers entered into any agreement *not* to use WP Engine.

## 1.   WP Engine's Proposed Aftermarkets Remain Implausible

WP Engine again alleges three gerrymandered WordPress-only aftermarkets: (1) WordPress hosting services; (2) WordPress custom field plugins; and (3) WordPress plugin distribution. TAC ¶ 261. Such single-brand aftermarkets are treated with deep "skepticism," *In re Am. Express Anti-Steering Antitrust Lit.*, 361 F. Supp. 3d. 324, 343 (E.D.N.Y. 2019) (collecting cases), and "frequently" dismissed on the pleadings, *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.); *see Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023) (affirming dismissal).

*First*, WP Engine still fails to allege that the "aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase." *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 977 (9th Cir. 2023). Rather, WP Engine's new allegations confirm this Court's prior conclusion that "consumers entering the WordPress ecosystem by electing a WordPress web content management system would know they were locked-in to WordPress aftermarkets" for hosting, custom field plugins, and plugin distribution. Dkt. 169 at 6; TAC ¶¶ 304–306, 317–318. WP Engine argues that consumers were unaware of Defendants' allegedly "reserv[ing] for themselves" (1) "the abilities to charge exorbitant fees for access to wordpress.org," (2) "the ability to block market participants' access to wordpress.org," and (3) "the ability to assert ownership and control over WordPress software and trademarks." TAC ¶¶ 344–347. But none of these examples is a mechanism by which WordPress users are "locked-in" to WordPress-compatible hosting and plugins. *See Epic*, 67 F.4th at 977, 980. In *Coronavirus Reporter*, for example, the "restriction" in question was Apple's ability to choose which apps would be available through the App Store, and the Ninth Circuit concluded that plaintiffs "d[id]

not demonstrate that iOS end consumers lacked awareness that buying an iPhone constrains which apps would be available to them through the App Store." 85 F.4th at 953, 956. Similarly, in *Lambrix v. Tesla, Inc.*, plaintiffs alleged that "Tesla owners are 'locked in' to using car parts that were specifically designed to be compatible with Teslas" and that Tesla restricted "individual shops and car owners from conducting everything but the most minimal repair," thereby "forc[ing] Tesla owners to pay supracompetitive prices for parts and services." 737 F. Supp. 3d 822, 835 (N.D. Cal. 2024). Here, *none* of the purported restrictions—the ability to charge "exorbitant fees," to block access to WordPress.org, or to "assert ownership and control over WordPress software and trademarks," TAC ¶¶ 344–47— "locks in" customers to WordPress-only options after they select WordPress WCMS, or requires that they use Defendants' services exclusively. *See* Dkt. 169 at 6 (holding that Mullenweg's "acts did not change [the] fundamental operating principle of the WordPress marketplace").

**Second**, WP Engine fails to allege plausibly that "'significant' information costs prevent accurate life-cycle pricing," *Epic*, 67 F.4th at 977—that is, "the total cost of the 'package'" at the time of purchase of the primary product. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 473 (1992). WP Engine asserts that Defendants "secretly reserved for themselves the abilities to charge exorbitant fees for access to wordpress.org," and that the market "had no meaningful way to discover Defendants' lies about 'free' and 'open' access or 'nonprofit' control in the face of Defendants' repeated misrepresentations and omissions." TAC ¶¶ 344, 350. WP Engine nowhere alleges facts showing that these alleged acts resulted in high prices to end consumers, the ones who must engage in life-cycle pricing. *Id.* ¶¶ 353–354. And WP Engine contradicts this theory by also alleging that WordPress.org "enforce[s]" many publicly available policies that establish community standards, *id.* ¶ 70, and that WordPress.org can "ban someone and disable all their plugins" for certain violations—including trademark infringement, RJN Ex. 1 at 4–6, 9, 16–18, 24–27. In short, consumers had notice that WordPress.org could ban them for misconduct, and WP Engine acknowledges that the purported hidden fees were linked to Defendants' enforcement of trademark rights, TAC ¶¶ 208, 212—not to mere access to WordPress.org or plugins therein, which is free and is all the average consumer seeks.

## 2.    WP Engine Still Fails to Allege Market Power

***WCMS Foremarket.*** The Court previously held that WP Engine had failed to allege market

power—the ability to control prices or exclude competition—in the WCMS foremarket through either indirect or direct evidence. Dkt. 169 at 8. WP Engine's amended pleading does not cure this deficiency. As for indirect evidence, WP Engine alleges that "WordPress" undergirds slightly over 60% of websites using a "known content management system" and ascribes that "market share" to Defendants. TAC ¶¶ 281–283 & n.116. But that attribution—which includes *WP Engine's own business*—ignores the nature of open-source software, which "anyone in the world has permission to access, review, copy, modify, distribute, and create derivative works of WordPress without payment to anyone." *Id.* ¶ 49. Thus, regardless of whether Mullenweg controls WordPress.org or allegedly touts it as the sole "authorized" source for WordPress (*see id.* ¶¶ 282–283, 285), neither he nor Automattic has the ability to control prices or the software's distribution through alternative channels like Github. Furthermore, WP Engine fails to plausibly allege "that there are significant barriers to entry" and that "existing competitors lack the capacity to increase their output in the short run." Dkt. 169 at 9. While the Complaint references network effects and switching costs, *id.* ¶¶ 359–369, allegations of high entry barriers are implausible in light of the fact that anyone can use WordPress for free, *id.* ¶ 49, and that the market is saturated with a long list of WCMS other than WordPress, *id.* ¶ 281. Nor does WP Engine explain why the long list of existing competitors could not increase output. Without any plausible allegation of Defendants' actual market share (which, in reality, is less than 1%), high barriers to entry, or the inability of competitors to increase output, the TAC fails to plead indirect evidence of monopoly power.

As for direct evidence, WP Engine still fails to allege the price of WordPress open-source software has increased beyond zero. Rather, WP Engine concedes that WordPress's open-source software is available for everyone "without payment to anyone." *Id.* ¶ 49. WP Engine also admits that competing WCMS software, like Drupal and TYPO3, is likewise free. *Id.* ¶ 227. Thus, if Defendants were to charge a non-zero rate for WordPress software, consumers could (and would) pivot to another, free distribution channel for WordPress—or to a different, no-cost WCMS entirely.

WP Engine alleges that Defendants created an "effective price increase" by demanding trademark licenses and disrupting the "operation and functionality of millions of websites" (*i.e.*, WP Engine's customer accounts). *Id.* ¶¶ 277–278. The Court already rejected this contention because "while Defendants may have demanded a royalty payment that could have resulted in an increase in WP

Engine's costs or may have been successful in securing such payment from other competitors, that says nothing about the price for the product in the relevant foremarket," Dkt. 169 at 8, particularly given that WP Engine never paid for a trademark license. Anyone can build a website using WordPress software without using, much less abusing, Defendants' trademarks. TAC ¶ 49. And demands for IP licenses are non-actionable, since a monopolist "has no duty to share (or continue to share) its intellectual . . . property with a rival." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013).

WP Engine also alleges that Defendants have "decreased quality" and caused "cost increases" through "foment[ing] an environment of chaos and uncertainty." TAC ¶ 278–279. But as the Court concluded previously, these "allegations . . . are conclusory." Dkt. 169 at 8. Aside from vague references to perceived "stability" (TAC ¶ 279), WP Engine does not explain how Defendants' alleged conduct decreased the quality of WordPress software itself or led to an associated increase in costs. Nor does WP Engine explain how these effects, even if properly pleaded, affected competition in the WCMS market overall, as opposed to WP Engine and its customers specifically. And even assuming that there was an overall decrease in the quality of WordPress open-source software (there wasn't), Defendants would have market power only if they did not correspondingly lose customers. *See United States v. Syufy Enters.*, 903 F.2d 659, 666 (9th Cir. 1990) ("it is not market share that counts, but the ability to *maintain* market share"). WP Engine's own allegations show a decrease in WordPress's market share from September 2024 to September 2025, *see* TAC ¶ 281, confirming that neither Defendants nor anyone else has the power to maintain share in the WCMS market.

***WordPress Aftermarkets.*** WP Engine does not plausibly allege indirect evidence of market power in any of the alleged aftermarkets. It does not even attempt to do so for the WordPress hosting aftermarket. *See id.* ¶¶ 287–299. Nor could it, because, according to the W3Techs data that WP Engine incorporates by reference into its TAC, *id.* ¶ 281 & n.116, Automattic has *less than 1%* of the hosting market. RJN Ex. 2 at 2. For the purported plugin distribution aftermarket, WP Engine falls back on its theory that Defendants' control of WordPress.org affords them "nearly 100%" market share. TAC ¶ 329. But that theory confuses control over WordPress.org with the "power to control prices or exclude competition" (*i.e.*, market power), *MLW Media LLC v. World Wrestling Ent. Inc.*, 2023 WL 4053802, at *4 (N.D. Cal. June 15, 2023), which WP Engine has not alleged. WP Engine also implausibly

1   assumes that if the price for WordPress.org increased above zero, other plugin distribution channels

2   wouldn't immediately enter the market. *See Rebel Oil Co. v. Atl. Richfield Co.*,

3   51 F.3d 1421, 1434 (9th Cir. 1995). And, for the custom field plugin market, WP Engine alleges only

4   the number of ACF plugins that have supposedly been replaced with Defendants' forked version (TAC

5   ¶ 309)—not its market share compared to other providers of the more than 60,000 plugins available on

6   WordPress.org alone. *See Epic*, 67 F.4th at 983 (Market power requires "high market share and the

7   existence of 'significant barriers to entry.'" (citation omitted)).

8        As for direct evidence, WP Engine alleges that Defendants "increased prices, increased costs,

9   decreased quality, and excluded competition" in all three purported aftermarkets, TAC ¶¶ 295, 312,

10  332. But the only "price" identified is again the alleged "royalty" demand for WP Engine's (and po-

11  tentially other WordPress hosts') use of *trademarks*, not a price increase to consumers (let alone a

12  supracompetitive price) in the proposed aftermarkets. *Novell*, 731 F.3d at 1074. And as for the other

13  conduct, such as allegedly disrupting access to WordPress.org, WP Engine admits that it caused cus-

14  tomers to switch to many different competitors in the aftermarkets, not just to Automattic. TAC ¶¶ 173–

15  185. Such widespread switching to non-Automattic hosts precludes any suggestion that Defendants

16  were able to restrict overall output in the proposed aftermarkets (and correspondingly increase price).

17  *See Rebel Oil*, 51 F.3d at 1434. Although WP Engine alleges that its customers faced service disrup-

18  tions due to Defendants' actions, TAC ¶ 248, WP Engine does not explain how Defendants' actions

19  degraded the overall offerings of WordPress hosting, plugins, or plugin distribution. WP Engine cites

20  snippets of customers' concern about disruption to the WordPress community, including that non-WP

21  Engine customers rely on WP Engine's plugins, *see id.* ¶¶ 241–250, but WP Engine does not allege

22  how any of the overall offerings in the three alleged aftermarkets were degraded. Nor does it allege

23  that the ACF plugin offered unique capabilities that could not be substituted with another offering.

24        **3.    WP Engine Fails to Allege Antitrust Injury**

25        WP Engine fails to allege that it suffered antitrust injury, "which is to say injury of the type the

26  antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlaw-

27  ful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). It is axiomatic that "the

28  antitrust laws were enacted for the protection of *competition*, not *competitors*." *Atl. Richfield Co. v.*

1    *USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (cleaned up). At bottom, WP Engine alleges that De-

2    fendants' assertion of trademark rights and temporary disconnection of WP Engine from Word-

3    Press.org increased costs for WP Engine and its customers. TAC ¶¶ 370–377. Nowhere does WP En-

4    gine identify any actual harm to competition, such as reduced output of WordPress-related services or

5    higher prices across the market—it alleges only temporary disruptions and movement away from WP

6    Engine to other providers (not limited to Automattic). *See Malheur Forest Fairness Coal. v. Iron Tri-*

7    *angle, LLC*, 164 F.4th 710, 733–35 (9th Cir. 2026) (dismissal with prejudice proper when "Plaintiffs

8    have not alleged harm to consumers, rather than to individual competitors"); *Rx Sols., Inc. v. Caremark,*

9    *L.L.C.*, 164 F.4th 436, 444 (5th Cir. 2026) (affirming dismissal where plaintiff alleged that defendant's

10   actions "made it harder to compete with them" but did not plead market-wide higher prices or reduced

11   output or quality). Plus, WP Engine does not, and cannot, allege facts showing that the alleged conduct

12   impacts any participant in the only market that isn't facially implausible (the WCMS foremarket). *Am.*

13   *Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (antitrust plaintiff must

14   have "suffered its injury in the market where competition is being restrained"). If anything, the sup-

15   posed "disruptions" of WordPress-related services *benefitted* the other WCMS by prompting customers

16   to switch away from WordPress. TAC ¶ 281. That is the market at work, not antitrust injury.

17          **4.    WP Engine Fails to Allege Any Anticompetitive Conduct**

18          Even if WP Engine could plausibly allege market power in a relevant market, the "possession

19   of monopoly power will not be found unlawful unless it is accompanied by an element of anticompet-

20   itive *conduct*." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

21   None of the conduct alleged in Counts 11 or 12 qualifies.

22          ***Alleged anticompetitive statements.*** WP Engine claims Defendants "deceived the market" by

23   saying WordPress is open source and then demanding a trademark royalty; "extorted" WP Engine by

24   threatening to "go 'nuclear'" absent payment; and made "disparaging statements" about it. TAC ¶ 519.

25   But public statements cannot be antitrust violations unless WP Engine demonstrates that the statements

26   were "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made

27   to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not

28   readily susceptible of neutralization or other offset by rivals." *Am. Pro. Testing Serv., Inc. v. Harcourt*

*Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997).

WP Engine pays lip service to the *Harcourt* elements, *see* TAC ¶ 519, but it pleads no factual support for any of them. The Court has already ruled that Defendants' statements regarding WordPress "'forever be[ing] an open platform'" and there being "'free access for the world'" were too "'vague'" and "'general'" to be actionable under promissory estoppel. Dkt. 169 at 24–25. Those statements cannot satisfy the first three *Harcourt* elements because they are "vague statements of optimism" and "non-actionable puffing." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 794 (N.D. Cal. 2022). WP Engine also conflates the right to use WordPress software as part of the open-source program as a matter of copyright law and the right to use the name "WordPress" to communicate who is offering that software as a matter of trademark law. Open source only confers a right to use the software, not the trademark. Nor are the allegedly disparaging statements—such as that WP Engine "'feed[s] off' of the WordPress ecosystem" or that "customers [who] switch to a different host . . . 'might get faster performance,'" TAC ¶ 102—"capable of objective verification." *Klein*, 580 F. Supp. 3d at 794 (citation omitted); *see also Emulex Corp. v. Broadcom Corp.*, 2010 WL 11595718, at *3 (C.D. Cal. June 7, 2010) (similar).

As to the fourth *Harcourt* element, while WP Engine asserts the disparaging statements were "made to market participants without knowledge of [the] subject matter," consumers (especially sophisticated market participants who attended the WordCamp conference where the alleged statements were made, TAC ¶ 102) can decide for themselves whether WP Engine's products or services are "subpar." *Id.* ¶ 519. Allowing WP Engine to attack Defendants' representations on quality makes it "all too easy for losers in the rough-and-tumble of commerce to accuse competitors of spreading false information." *Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002). Regarding the fifth element, the statements at issue (TAC ¶ 519) were made only in late September, hardly a prolonged period. *See In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146 (N.D. Cal. 2011). And within days of the alleged conduct, WP Engine set up a "mirror" of the WordPress Plugin Directory to "mitigate the effects of Defendants' conduct." TAC ¶¶ 237, 322. With respect to the sixth element, the alleged statements concern WP Engine's quality and conduct and thus are susceptible to neutralization by WP Engine, a private-equity-backed entity with more than adequate resources to rebut the alleged misrepresentation with its own speech. *Emulex Corp.*, 2010 WL 11595718, at *3, *7–8.

***Alleged interference with customers and operations.*** WP Engine also alleges that Defendants "interfered" with WP Engine's "customers" and "operations" by supposedly blocking WP Engine from accessing WordPress.org. TAC ¶ 519. But those allegations boil down to Mullenweg refusing WP Engine access to his own website, WordPress.org, on WP Engine's preferred terms. As the Court recognized, "even a monopolist generally has no duty to share (or continue to share) its intellectual or physical property with a rival." Dkt. 169 at 8 (cleaned up). The only limited exception to this rule is where a defendant terminates a "profitable [] course of dealing," and "forsake[s] short-term profits to achieve an anticompetitive end." *AliveCor, Inc. v. Apple, Inc.*, 163 F.4th 1259, 1270 (9th Cir. 2026) (citation omitted); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 485 F. Supp. 3d 1137, 1150 (N.D. Cal. 2020) (dismissing refusal to deal claim). WP Engine alleges no facts showing that Defendants made money by "dealing" with WP Engine or lost money by *not* "dealing" with WP Engine. *Id.* at 1151.

***Alleged solicitation.*** Finally, WP Engine gets antitrust laws backwards by claiming Defendants' "soliciting" of WP Engine's customers and personnel—conduct that is fiercely *competitive*—violates those laws. *See NCAA v. Alston*, 594 U.S. 69 (2021) (antitrust laws promote labor competition). Hiring a competitor's personnel does not violate antitrust laws unless the "talent is acquired not for purposes of using that talent but for purposes of denying it to a competitor," even if a "secondary motivation" is to wound the competitor. *Harcourt Brace*, 108 F.3d at 1153 (citation omitted). The TAC includes no allegations that Defendants did not put WP Engine's former personnel to good use upon hiring them. Nor are the communications to employees regarding concerns with WP Engine and a potential job offer to WP Engine's CEO anywhere close to the type of harassment found to be anticompetitive. *Cf. Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *1–2, *6, *11 (N.D. Cal. Apr. 26, 2004).

### 5.    WP Engine Fails to Allege Any Unlawful Tying

Counts 13 and 14 allege that Defendants engaged in a so-called negative tying arrangement by conditioning access to WordPress plugin distribution (the "tying" product) on customers *not* using WordPress web hosting or plugins from WP Engine. TAC ¶¶ 542–66. This argument fails at the threshold because WP Engine's alleged "tying" market (plugin distribution) is not a relevant antitrust market and Defendants do not have market power. *See supra* § III(A)(1). Further, WP Engine alleges no agreement between Defendants and any WordPress users. Tying claims are based on "an agreement"

between the seller and customers. *Kodak*, 504 U.S. at 461. A negative tying arrangement, what WP Engine attempts to allege here, occurs "when the customer promises not to take the tied product from the defendant's competitor." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 912 n.23 (9th Cir. 2008). WP Engine alleges no such agreement, either express or implicit, by any WordPress.org users (*i.e.*, consumers in the WordPress plugin distribution market) not to use WP Engine for hosting or plugins. At most, Plaintiff alleges that WordPress.org added a "checkbox" that required users to attest "I am not affiliated with WP Engine in any way," TAC ¶ 546, but the Complaint fails to plausibly allege that customers are affiliates covered by the checkbox. Each of these defects require dismissal.

**B.    The Court Should Again Dismiss WP Engine's Section 1030(a)(7) Claim (Count 3)**

WP Engine's CFAA claim should be dismissed again, with prejudice. ***First***, WP Engine cannot establish that Defendants committed extortion or acted with extortionate intent. ***Second***, WP Engine cannot establish that Defendants' alleged threats were in furtherance of attempted extortion. ***Third***, WP Engine cannot show that Defendants caused or threatened harm to any "protected computer."

**1.    WP Engine Cannot Establish Extortion on the Basis of Trademark Enforcement**

WP Engine fails to plausibly allege that Defendants acted with the "intent to extort" or "facilitate[d]" any "extortion" of WP Engine by seeking to enforce their trademark rights. 18 U.S.C. § 1030(a)(7). Extortion requires the "'*wrongful* use of actual or threatened force, violence, or fear,'" and "unless a person has a preexisting right to be free of the threatened economic harm, threatening economic harm to induce a person to pay for a legitimate service is not extortion." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1130 (9th Cir. 2014) (quoting 18 U.S.C. § 1951(b)(2)).

WP Engine alleges that Defendants intended to extort it by demanding that it pay for a license to use the WordPress and WooCommerce trademarks. TAC ¶ 401. But as this Court correctly held when it last dismissed this claim, "WPEngine cannot plausibly allege that it had a preexisting right to access and use WordPress.org or related trademarks in perpetuity for free." Dkt. 169 at 13. And because Defendants' alleged demands that WP Engine pay for a trademark license sought "'payment for services that have some 'objective value'" and to which Defendants had a "'lawful claim,'" Defendants' demands were not extortionate. *Id.* at 13–14 (quoting *Levitt*, 765 F.3d at 1131).

The TAC changes nothing. WP Engine argues only that it didn't need a trademark license

because it made "nominative fair use" of the WordPress trademark. TAC ¶¶ 406, 413. That is a legal argument, not an allegation, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1205 (9th Cir. 2019). The Court already rejected the argument that WP Engine had an unlimited right to use the trademarks for free, Dkt. 169 at 13, and does not need to resolve the nominative fair use question to dismiss WP Engine's Section 1030(a)(7) claim. The mere fact that Defendants asserted trademark enforcement rights against a party using their marks establishes that they were not *extorting* WP Engine. As the Ninth Circuit has explained, even "the assertion of weak claims predicated on unsupportable factual allegations" is not extortion. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006); *see also Levitt*, 765 F.3d at 1132–33. And courts regularly dismiss extortion claims premised on the threat of trademark enforcement without resolving the underlying trademark dispute. *See, e.g.*, *SmileDirectClub, LLC v. Berkely*, 2019 WL 1091339, at *5 (C.D. Cal. Jan. 22, 2019).

WP Engine also alleges that Mullenweg made "extortionate threats" to restrict WP Engine's access to WordPress.org and to fork the ACF plugin. *See* TAC ¶¶ 402–404. But WP Engine does not allege that Defendants sought to obtain "any money or other thing of value" from WP Engine through these purported threats, apart from the alleged demands for trademark licensing payments. *See* 18 U.S.C. § 1030(a)(7). Even if WP Engine could clear that hurdle, Defendants' alleged threats do not establish an "intent to extort" WP Engine. *Id.* WordPress.org is "owned and controlled solely by Mullenweg," TAC ¶ 87, and WP Engine does not have "a preexisting right to access and use WordPress.org," Dkt. 169 at 13–14. Similarly, Mullenweg's alleged threats to fork the ACF plugin relate solely to conduct that occurred *on his own website*. *See* TAC ¶ 404. Nothing in the TAC suggests that WP Engine had a "preexisting right to be free of" Defendants modifying or forking the ACF plugin on WordPress.org. That is particularly true because WP Engine acknowledges that its plugin had security vulnerabilities, and that WordPress.org's guidelines clearly stated that plugins could be removed or altered to address security issues. *See id.* ¶ 150 (acknowledging the ACF plugin "vulnerability"); *id.* ¶ 327 & n.132 ("Detailed Plugin Guidelines" on WordPress.org advise that security issues "may result in a plugin being removed" or "updated by the WordPress Security team").

"No law prohibited" Defendants from conditioning access to WordPress.org or plugins hosted

on that website on WP Engine paying trademark licensing fees. *Levitt*, 765 F.3d at 1131 (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 526 (3d Cir. 1998)). Defendants' "'hardball' negotiation tactics" cannot support an "extortion" claim. *Brokerage Concepts*, 140 F.3d at 501.

### 2. WP Engine Cannot Establish Causation

WP Engine cannot show any causal link between Defendants' alleged efforts to "extort" WP Engine into paying for a trademark license and the "damage" that Defendants allegedly threatened and caused by blocking WP Engine's access to WordPress.org and forking the ACF plugin.

Section 1030(a)(7) requires a causal link between damage to or threats to damage a protected computer and the alleged "extortion." Specifically, the damage or threats must be "caused *to facilitate* the extortion" or made "*with* [the] intent to extort," 18 U.S.C. § 1030(a)(7) (emphases added), meaning the threatened or actual harm is contemporaneous with a demand for payment. *See, e.g.*, *Inplant Enviro-Sys. 2000 Atlanta, Inc. v. Lee*, 2015 WL 13297963, at *4 (N.D. Ga. June 9, 2015) (plaintiff alleged the defendant sent "demand or request for money" and the relevant threats, together).

Here, by contrast, WP Engine alleges that Defendants made "extortionate" threats and caused damage "*[a]fter WP[ Engine] refused to accede* to Defendants' attempts to extort money from WP[ Engine]." TAC ¶¶ 403, 407 (emphasis added). WP Engine's theory is that Defendants demanded a trademark license, were rebuffed, and *then* threatened to block WP Engine from WordPress.org and to fork the ACF plugin (and followed through on those threats) as "acts of retribution" to "punish[] WP Engine for not entering into that trademark license agreement." *Id*. ¶ 12. But Section 1030(a)(7) liability is contingent on damage "caused to *facilitate the extortion*" or threats made "*with intent to extort*." 18 U.S.C. § 1030(a)(7) (emphasis added). *Retaliatory* threats or damage occurring *after* a plaintiff "resist[s] [the] extortive demands," TAC ¶ 12, are not actionable under Section 1030(a)(7).

For example, WP Engine alleges that Mullenweg's public posts on October 5, 2024, regarding the ACF plugin were "ongoing threats to cause damage to WP[ Engine]'s and its users' computers." TAC ¶ 403. Even if these were "threats," which they are not, they were not made with the requisite intent. Mullenweg made these statements nearly two weeks *after* Defendants blocked WP Engine from accessing WordPress.org—an act WP Engine characterizes as responsive to its *rejection* of the trademark license demands. *See, e.g.*, *id*. ¶ 114. Notably, WP Engine does not allege that Defendants made

1  any threats related to forking the ACF plugin before October 5, 2024—by which time WP Engine had

2  allegedly "resisted" the demand for a trademark license. *Id*. ¶¶ 12, 114, 407. And if, as WP Engine

3  alleges, it had already "refused to accede" to Defendants' license demands, then *subsequent* threats to

4  fork the ACF plugin cannot have been made "with intent to extort" those same trademark license pay-

5  ments. Similarly, any damage that Defendants allegedly caused occurred "[a]fter WP[ Engine] refused

6  to accede" to Defendants' trademark license demands. *Id.* ¶ 407. Once WP Engine refused to pay for a

7  license, Defendants' so-called "extortion" was over. Any subsequent "acts of retribution," *id*. ¶ 12,

8  cannot have been "caused to facilitate th[at] extortion," 18 U.S.C. § 1030(a)(7)(C).

9  ### 3.    WP Engine Fails to Allege Any Damage to a Protected Computer

10  WP Engine's Section 1030(a)(7) claim fails for the additional reason that WP Engine does not

11  (and cannot) plausibly allege that Defendants threatened or caused "damage to a protected computer"

12  within the meaning of the CFAA. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1227 (11th Cir. 2023).

13  Statutory "damage" means harm to the data, program, or system at issue, 18 U.S.C. § 1030(e)(8), in

14  keeping with the CFAA's design to "target . . . disrupt[ing] or destroy[ing] computer functionality."

15  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009); *NetApp, Inc. v. Nimble Storage,*

16  *Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014) ("'damage' means harm to computers or networks, not

17  economic harm due to the commercial value of the data itself").

18  WP Engine does not plausibly allege "damage to a protected computer" within the meaning of

19  the CFAA. It alleges Defendants "block[ed] and intefer[ed] with" WP Engine's "access to word-

20  press.org's systems," TAC ¶ 400, but WP Engine's inability to access systems controlled by Mullen-

21  weg does not constitute damage to computers, just as a road closure does not constitute damage to a

22  car. WP Engine alleges that its computers "stopped functioning normally" when it could not access

23  WordPress.org, *id.* ¶ 407, but it does not claim, as the CFAA requires, that any reduced functionality

24  flowed from "impairment to the integrity or availability of data, a program, a system, or information"

25  on its own or third-party computers. 18 U.S.C. § 1030(e)(8). Nor could it, since restricting access to a

26  *third-party website* controlled by Mullenweg did not alter WP Engine's computers, software, or data.

27  WP Engine also fails to plausibly allege "damage to a protected computer" based on Defend-

28  ants' forking of the ACF plugin. WP Engine alleges that Defendants' actions "hijack[ed] . . . the ACF

plugin on WP[ Engine]'s users' computers" and "impaired the utility, availability, and integrity of WP[ Engine]'s ACF plugin," TAC ¶ 419, but does not allege that forking the plugin caused any actual *harm* to computers. To the contrary, WP Engine alleges that by forking the plugin, Defendants "replace[d] users' existing ACF plugin code with Defendants' SCF plugin code," *id.*, ¶ 160, without ever alleging that the fork impaired the functionality of users' computers. That is not sufficient to state a claim.

## C.    The *Noerr-Pennington* Doctrine Bars WP Engine's Amended Claims

The Court should also dismiss WP Engine's amended claims with prejudice because they are barred by the *Noerr-Pennington* doctrine, which provides immunity from federal statutory liability for "conduct incidental to the prosecution of the suit," including "communications between private parties" and "presuit demand letters." *Sosa*, 437 F.3d at 934–36 (citation omitted). WP Engine's Sherman Act and CFAA claims impermissibly seek to impose statutory liability based on Defendants' pre-suit set-tlement demands for a trademark license. *See* TAC ¶¶ 91–98, 275–280, 401–407, 412–413, 525, 533. These demands led directly to this litigation, in which WP Engine seeks a declaratory judgment of non-infringement and Defendants have filed counterclaims for infringement. *Id.* ¶¶ 21–28, 441–449; Dkt. 238. WP Engine's claims are therefore "directed at . . . actions incidental to petitioning activity so as to bring them within the scope of *Noerr-Pennington*." *Gamble v. Kaiser Found. Health Plan*, 348 F. Supp. 3d 1003, 1027 (N.D. Cal. 2018). WP Engine has not met its burden to plead the "sham" exception to *Noerr-Pennington*, which requires "show[ing] that defendant's conduct lacked both objective merit and subjective good faith." *Id.* at 1028. First, Defendants' demands were not objectively meritless, demonstrated by Defendants' well-pleaded counterclaims for trademark infringement and WP En-gine's admitted use of the marks. Second, WP Engine has not alleged that Defendants filed litigation "as a mechanism to injure" WP Engine—nor could it, as WP Engine initiated this litigation. *See Em-press LLC v. City and County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005).

## D.    The Court Should Dismiss All Claims Against WooCommerce

As "[n]umerous" courts in this District have held, "a plaintiff fails to plead sufficient factual content to state a claim against a defendant where a complaint describes the conduct of two or more defendants collectively and includes no factual allegations identifying the conduct in which each de-fendant engaged." *Sowash v. Cnty. of San Mateo*, 2026 WL 76697, at *2 n.6 (N.D. Cal. Jan. 9, 2026).

The TAC fails to explain how WooCommerce—a company that offers e-commerce plug-ins that do not compete with WP Engine—could possibly interfere, extort, or unfairly compete with WP Engine.

***Tortious Interference (Counts 1 and 2).*** The TAC does not identify any contract or relationship with which WooCommerce allegedly interfered, nor does it allege any conduct by WooCommerce directed at WP Engine's customers or partners. Rather, it simply alleges that "Defendants" engaged in the alleged conduct. *See, e.g.*, TAC ¶¶ 381–397. WP Engine's group pleading violates Rule 8's requirement that a plaintiff must "differentiate allegations against multiple defendants." *Sanchez v. Green Messengers, Inc.*, 2021 WL 5012150, at *2 (N.D. Cal. Oct. 28, 2021).

***CFAA (Count 3).*** The TAC does not establish that *WooCommerce* made any threats. The only reference to WooCommerce ever communicating with WP Engine is via a demand letter sent by counsel, TAC ¶ 22—*after* the alleged extortion failed, and protected under the *Noerr-Pennington* doctrine.

***Unfair Competition, Cal. Bus. & Prof. Code § 17200 ("UCL") (Count 4).*** Because all claims against WooCommerce fail, there are no viable predicate acts or "'unfair' conduct" to support a UCL claim. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) (citation omitted).

***Declaratory Judgment of Non-Infringement (Count 6).*** Because WooCommerce has filed counterclaims against WP Engine for trademark infringement, WP Engine's responsive, mirror-image claim of non-infringement is "improper" and is "repetitious of issues already before the court." *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 8022874, at *9 (C.D. Cal. Dec. 4, 2015) (citation omitted).

***Declaratory Judgment of Non-Dilution (Count 7).*** Because WooCommerce has not asserted a counterclaim for dilution of the WooCommerce trademarks, *see generally* Dkt. 238, WP Engine's declaratory claim is "hypothetical" and therefore not justiciable. *Alicea v. GE Money Bank*, 2009 WL 1766703, at *3 (N.D. Cal. June 18, 2009). WP Engine's assertion that WooCommerce created a reasonable apprehension of a dilution claim when it sent a cease-and-desist letter in September 2024, TAC ¶ 451, is facially implausible given WP Engine's decision to wait over a year before naming WooCommerce as a defendant.

## IV.    CONCLUSION

For the reasons set forth above, the Court should dismiss with prejudice Counts 3 and 11–14 of the TAC and Counts 1–4 and 6–7 against WooCommerce.

1    DATED: February 24, 2026                    Respectfully submitted,

2                                                GIBSON, DUNN & CRUTCHER LLP

3

4                                                By: /s/ Joseph R. Rose
                                                     Joseph R. Rose

5
                                                *Attorney for Defendants Automattic Inc., Mat-*
6                                                *thew Charles Mullenweg, and WooCommerce*
                                                *Inc. and Counterclaimant WordPress Founda-*
7                                                *tion*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT,
CASE NO. 3:24-CV-06917-AMO