QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
  rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
  yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
  margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
  michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
  kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
  brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Defendants.<br>_____<br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | Case No. 3:24-cv-06917-AMO<br><br>**WPE'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND WPE'S MOTION TO DISMISS COUNTERCLAIMANTS' COUNTERCLAIMS**<br><br>Hon. Araceli Martínez-Olguín<br><br>Hearing Date:  June 4, 2026<br>Hearing Time:  2:00 p.m.<br>Courtroom:  Courtroom 10 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ............................................................................................................2

I.    WPE STATES VALID ANTITRUST CLAIMS (COUNTS 11–14) ...................................2

      A.    WPE Plausibly Alleges Cognizable Aftermarkets ................................2

      B.    WPE Plausibly Alleges Defendants' Power In Each Market........................4

      C.    WPE Plausibly Alleges Antitrust Injury ..............................................7

      D.    WPE Plausibly Alleges Defendants' Anticompetitive Conduct .....................8

      E.    WPE Plausibly Alleges Defendants Committed Unlawful, Negative Tying ...........10

II.   WPE STATES A VALID SECTION 1030(A)(7) CFAA CLAIM (COUNT 3)...................11

      A.    Defendants Acted With Intent to Extort and Facilitated Extortion .........................11

            1.    WPE Alleges A Pre-Existing Right To Be Free .........................................11

            2.    WPE Alleges Defendants Had No Right To Seek Payment For the Purported Trademark License ..................................................12

      B.    WPE Plausibly Alleges the Causal Link Between Defendants' Extortion and the Damage They Threatened and Caused ...........................................13

      C.    WPE Plausibly Alleges Damage to A Protected Computer ....................................13

III.  DEFENDANTS' *NOERR-PENNINGTON* DEFENSE IS BASELESS ..............................14

IV.   WPE STATES VALID CLAIMS AGAINST WOOCOMMERCE .....................................15

V.    THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY ...............17

      A.    The Counterclaims Are Barred By The Statute Of Limitations And Laches............17

            1.    The State Law Counterclaims Are Barred By the Statute of Limitations .....................................................................17

            2.    Laches Bars All Counterclaims ...............................................................18

                  (a)    Counterclaimants Unreasonably Delayed Filing Counterclaims....................................................................19

                  (b)    WPE Is Unfairly Prejudiced by Counterclaimants' Delay..............20

      B.    Counterclaimants Fail To State Viable Dilution Claims...........................................20

      C.    Counterclaimants' False Advertising Claims Do Not State A Claim .....................21

D.    The Nominative Fair Use Doctrine Defeats the Trademark Counterclaims ............22

E.    Counterclaimants' Unfair Competition Counterclaims Do Not State A Claim
......................................................................................................................25

F.    Automattic and Mullenweg Lack Standing to Bring Trademark
Counterclaims..............................................................................................25

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**<u>Cases</u>**

4

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
     836 F.3d 1171 (9th Cir. 2016) ............................................................................ 11

5

6

*AirWair Int'l Ltd. v. Schultz*,
     84 F. Supp. 3d 943 (N.D. Cal. 2015) .................................................................. 17

7

*Alfasigma USA, Inc. v. First Databank, Inc.*,
     525 F. Supp. 3d 1088 (N.D. Cal. 2021) ......................................................... 21, 22

8

9

*AlterG, Inc. v. Boost Treadmills LLC*,
     388 F. Supp. 3d 1133 (N.D. Cal. 2019) .............................................................. 21

10

*Alvarado v. Amazon.com, Servs. LLC*,
     2022 WL 899850 (N.D. Cal. Mar. 28, 2022) ...................................................... 25

11

12

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.*
     *Publications, Inc.*,
     108 F.3d 1147 (9th Cir. 1997) ......................................................................... 8, 10

13

14

*Apple Inc. v. Samsung Elecs. Co.*,
     2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ....................................................... 8

15

16

*Applied Underwriters v. Lichtenegger*,
     913 F.3d 884 (9th Cir. 2019) ......................................................................... 23, 25

17

18

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
     2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ..................................................... 23

19

*Arcsoft, Inc. v. Cyberlink Corp.*,
     153 F. Supp. 3d 1057 (N.D. Cal. 2015) .............................................................. 20

20

21

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
     2018 WL 11230167 (N.D. Cal. May 21, 2018) ..................................................... 8

22

23

*Avery Dennison Corp. v. Sumpton*,
     189 F.3d 868 (9th Cir. 1999) ......................................................................... 20, 21

24

*Becerra v. Dr Pepper/Seven Up, Inc.*,
     945 F.3d 1225 (9th Cir. 2019) ....................................................................... 21, 22

25

26

*Bell v. Pac. Ridge Builders, Inc.*,
     2019 WL 13472127 (N.D. Cal. Jun. 4, 2019) ..................................................... 24

27

*Bertolina v. Wachovia Mortg., FSB*,
     2011 WL 3473527 (N.D. Cal. Aug. 9, 2011) ...................................................... 25

28

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ........................................................................ 2

*Broadcom Corp. v. SiRF Tech., Inc.*,
    2009 WL 10672527 (C.D. Cal. Dec. 16, 2009) ............................................. 22

*Brokerage Concepts v. U.S. Healthcare, Inc.*,
    140 F.3d 494 (3d Cir. 1998) ......................................................................... 11

*Cal. Spine & Neurosurgery Inst. v. Oxford Health Ins. Inc.*,
    2019 WL 6171040 (N.D. Cal. Nov. 20, 2019) ............................................. 12

*Caldera, Inc. v. Microsoft Corp.*,
    87 F. Supp. 2d 1244 (D. Utah 1999) .............................................................. 8

*Cascades Comput. Innovation LLC v. RPX Corp.*,
    2013 WL 6247594 (N.D. Cal. Dec. 3, 2013) ................................................ 15

*CMRE Fin. Servs. Inc. v. Doxo Inc.*,
    2022 WL 16701259 (W.D. Wash. Oct. 7, 2022) ........................................... 25

*Coach Servs., Inc. v. Triumph Learning LLC*,
    668 F.3d 1356 (Fed. Cir. 2012) .................................................................... 20

*Coronavirus Rep. v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023) ........................................................................... 3

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
    150 F.4th 1056 (9th Cir. 2025) ............................................................. 5, 8, 10

*Dooley v. Crab Boat Owners Ass'n*,
    2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ................................................ 10

*Dropbox, Inc. v. Thru Inc.*,
    728 F.App'x 717 (9th Cir. 2018) ................................................................... 19

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    111 F.4th 337 (4th Cir. 2024) ........................................................................ 8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) ............................................................................... 2, 3, 4

*Emulex Corp. v. Broadcom Corp.*,
    2010 WL 11595718 (C.D. Cal. June 7, 2010) .......................................... 9, 10

*Entri, LLC v. GoDaddy.com, LLC*,
    2024 WL 4468488 (E.D. Va. Oct. 10, 2024) ............................................... 11

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ....................................................................... 2, 3

*Erickson v. Nebraska Mach. Co.*,
  2015 WL 4089849 (N.D. Cal. Jul. 6, 2015) ........................................................................ 18

*F.T.C. v. Indiana Fed'n of Dentists*,
  476 U.S. 447 (1986) ................................................................................................................ 2

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
  411 F. Supp. 3d 905 (N.D. Cal. 2019) .............................................................................. 21

*Fitbug Ltd. v. Fitbit, Inc.*,
  78 F. Supp. 3d 1180 (N.D. Cal. 2015) .............................................................................. 18

*Free FreeHand Corp. v. Adobe Sys. Inc.*,
  852 F. Supp. 2d 1171 (N.D. Cal. 2012) .............................................................................. 8

*Free Kick Master LLC v. Apple Inc*,
  2016 WL 777916 (N.D. Cal. Feb. 29, 2016) .................................................................... 17

*FTC v. Deere & Co.*,
  2025 WL 1638474 (N.D. Ill. June 9, 2025) .............................................................. 3, 5, 6

*Gamble v. Kaiser Foundation Health Plan*,
  348 F. Supp. 3d 1003 (N.D. Cal. 2018) ............................................................................ 15

*GCM Partners, LLC v. Hipaaline Ltd.*,
  2020 WL 6867207 (N.D. Ill. Nov. 23, 2020) .................................................................. 13

*Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*,
  328 F. Supp. 3d 1007 (N.D. Cal. 2018) ............................................................................ 25

*Gibralter, LLC v. DMS Flowers, LLC*,
  2025 WL 2623293 (E.D. Cal. Sept. 11, 2025) ................................................................ 21

*Grupo Gigante SA De CV v. Dallo & Co.*,
  391 F.3d 1088 (9th Cir. 2004) ............................................................................................ 18

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................................................ 15

*In re Abbott Lab'ys Norvir Anti-Tr. Litig.*,
  2008 WL 8202771 (N.D. Cal. Aug. 19, 2008) .................................................................. 7

*In re Ductile Iron Pipe Fittings Antitrust Litig.*,
  2013 WL 812143 (D.N.J. Mar. 5, 2013) ............................................................................ 6

*In re Pomona Valley Med. Grp., Inc.*,
  476 F.3d 665 (9th Cir. 2007) .............................................................................................. 16

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ...................................................................................... 18, 19

*Kickflip, Inc. v. Facebook, Inc.*,
    999 F. Supp. 2d 677 (D. Del. 2013) ................................................................... 10

*Klein v. Facebook, Inc.*,
    580 F. Supp. 3d 743 (N.D. Cal. 2022) ............................................................. 5, 9

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004) ............................................................................................ 24

*Lambrix v. Tesla, Inc.*,
    737 F. Supp. 3d 822 (N.D. Cal. 2024) ............................................................. 3, 4

*Landrum v. Tyson*,
    2011 WL 13217114 (C.D. Cal. May 16, 2011).............................................. 19, 20

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
    119 F.4th 711 (9th Cir. 2024)............................................................................. 24

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)....................................................................... 11, 12

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
    164 F.4th 710 (9th Cir. 2026)............................................................................... 7

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006)............................................................................... 19

*MLW Media LLC v. World Wrestling Ent., Inc.*,
    2023 WL 4053802 (N.D. Cal. June 15, 2023) ...................................................... 6

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
    686 F. Supp. 3d 900 (N.D. Cal. 2023) ............................................................... 21

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011)............................................................................. 25

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) .............................................................................. 23

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
    513 F.3d 1038 (9th Cir. 2008).............................................................................. 22

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013).............................................................................. 5

*Original Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*,
    2022 WL 17224542 (C.D. Cal. Aug. 16, 2022) ................................................... 20

*Parts.com, LLC v. Google Inc.*,
    2014 WL 12461256 (S.D. Cal. Jun. 25, 2014) ................................................... 20

*Perez v. DirecTV Group Holdings LLC*,
   2019 WL 6362471 (C.D. Cal. July 23, 2019) ........................................................ 15

*Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*,
   694 F.2d 1150 (9th Cir. 1982) ........................................................................... 19

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ............................................................................. 6

*Regal W. Corp. v. Nguyen*,
   412 F. Supp. 3d 1305 (W.D. Wash. 2019) ......................................................... 21

*Rx Sols., Inc. v. Caremark, L.L.C.*,
   164 F.4th 436 (5th Cir. 2026) ............................................................................. 8

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
   627 F. Supp. 2d 1096 (N.D. Cal. 2008) .............................................................. 20

*Shields v. World Aquatics*,
   2024 WL 4211477 (9th Cir. Sept. 17, 2024) ....................................................... 2

*SkyHop Techs., Inc. v. Narra*,
   58 F.4th 1211 (11th Cir. 2023) ..................................................................... 12, 14

*SmileDirectClub, LLC v. Berkely*,
   2019 WL 1091339 (C.D. Cal. Jan. 22, 2019) ...................................................... 12

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ....................................................................... 12, 14

*Stone Brewing Co., LLC v. MillerCoors LLC*,
   2019 WL 1383273 (S.D. Cal. Mar. 26, 2019) ..................................................... 16

*STX, Inc. v. Bauer USA, Inc.*,
   1997 WL 337578 (N.D. Cal. Jun. 5, 1997) ........................................................ 25

*Tate v. Pac. Gas & Elec. Co.*,
   230 F. Supp. 2d 1072 (N.D. Cal. 2002) ............................................................... 9

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) ............................................................................. 20

*Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery Assoc.*,
   465 F.3d 1102 (9th Cir. 2006) ........................................................................... 19

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ........................................................................... 24

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
   862 F. Supp. 2d 1009 (N.D. Cal. 2012) .............................................................. 22

*United States v. Syufy Enters.*,
   903 F.2d 659 (9th Cir. 1990) ................................................................... 6

*Upper Deck Co. v. Panini Am., Inc.*,
   533 F. Supp. 3d 956 (S.D. Cal. 2021) ..................................................... 25

*Vice Spirits Inc. v. The Vice Wines, LLC*,
   2025 WL 3013971 (N.D. Cal. Oct. 28, 2025) ......................................... 21

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ..................................................................... 10

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
   758 F.3d 1069 (9th Cir. 2014) ................................................................ 21

*Wit Walchi Innovation Techs., GMBH v. Westrick*,
   2012 WL 33164 (S.D. Fla. Jan. 6, 2012) ................................................ 13

*Zuckerman v. Metro. Museum of Art*,
   928 F.3d 186 (2d Cir. 2019) ................................................................... 19

**Statutes**

15 U.S.C. § 1114(1) .................................................................................... 25

15 U.S.C. § 1125(c)(1) ................................................................................ 20

15 U.S.C. § 1125(c)(3)(A) ........................................................................... 23

15 U.S.C. § 1127 ......................................................................................... 25

18 U.S.C. § 1030(a)(7) ...................................................................... 1, 11, 13, 25

18 U.S.C. § 1030(e)(8) ........................................................................... 13, 14

Cal. Bus. & Prof. Code § 14247 ................................................................. 25

Cal. Bus. & Prof. Code § 17200 ................................................................. 17

Cal. Bus. & Prof. Code § 17208 ................................................................. 17

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1752 ................................. 11

1

## PRELIMINARY STATEMENT

2      Following the Court's grant of leave to amend its antitrust claims, WPE amended its complaint

3  to add numerous substantive allegations demonstrating the direct evidence of Defendants' market

4  power—including stunning admissions from Defendants' own internal documents in which

5  Mullenweg acknowledged he had "absolute power in the WP ecosystem" and is "in control of

6  everything" on the WordPress ecosystem's chokepoint: wordpress.org.  Defendants likewise admitted

7  they could "destroy all competition" and "get the market moving" if they so desired.  *See* WPE's Third

8  Amended Complaint (Dkt. 234-2, "TAC") ¶¶ 196–257, 283.  These remarkable new allegations are

9  more than sufficient to clear the bar for pleading actionable antitrust claims.  Given WPE's amended

10  allegations of direct proof, the Court need not analyze market definition at all.  But even if it did,

11  WPE amended the TAC to plausibly define four markets (one of which Defendants do not even

12  contest), demonstrate Defendants' power in those markets (via their own binding admissions of power

13  and control), document widespread harm to competition, and chronicle Defendants' anticompetitive

14  conduct.  Defendants should be held to answer for their admitted wrongdoing and its effects.

15      WPE likewise plausibly alleges each element of its Section 1030(a)(7) claim, including a pre-

16  existing right to be free from both Defendants' extortion and their expropriation of WPE's ACF plugin

17  (either of which independently suffices), a temporal and causal link between Defendants' extortionate

18  scheme and the harm WPE suffered, and damage to protected computers (from Defendants' blocking

19  of WPE's access to wordpress.org, and their forcible overwriting of the ACF plugin code on millions

20  of computers).  Defendants' belated *Noerr-Pennington* "defense" is also baseless: extortionate threats

21  demanding ransom payments are not constitutionally-protected petitioning conduct, and even if they

22  were, they remain actionable under either the sham exception or as part of Defendants' larger scheme.

23  Nothing in Defendants' motion warrants dismissal.

24      On the other side of the ledger, all of Counterclaimants' counterclaims should be dismissed.

25  Dkt. 238 ("CC").  Having known of and acquiesced in WPE's trademark uses for over a decade, their

26  belated claims are time-barred and subject to laches.  They also independently fail on the merits: the

27  trademark claims are defeated by nominative fair use, the dilution claims lack the requisite showing

28  of fame, and the false advertising claims fall far short of Rule 9(b)'s particularity requirements.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ARGUMENT

**I.    WPE STATES VALID ANTITRUST CLAIMS (COUNTS 11–14)**

### A.    WPE Plausibly Alleges Cognizable Aftermarkets

Defendants attack the aftermarkets, not the foremarket.  Their arguments fail for three reasons.

***First***, Defendants' focus on market definition wrongly assumes it is required.  One way to show a practice is of antitrust concern is indirect: "delineat[ing] a relevant market and show[ing] that the defendant plays enough of a role … to impair competition[.]"  *Bhan v. NME Hosps., Inc*., 929 F.2d 1404, 1413 (9th Cir. 1991).  But where there is direct proof the defendant "ha[s] already" "influence[d] the market," market definition is unnecessary.  *Id.* at 1413 n.10.  Defining a market and calculating the defendant's share in it (indirect proof) is "a surrogate for detrimental effects," so where there is direct proof of such effects, "detailed market analysis" (a proxy) is unnecessary.  *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460–61 (1986).  The TAC reflects Defendants' own admissions, which are dispositive: Mullenweg agreed he had "absolute power in the WP ecosystem" and is "in control of everything on WordPress.org," while Defendants recognized they could "destroy all competition" and "get the market moving" and that they "really hurt" the community and made a "really big mistake."  TAC ¶¶ 196–257, 283.  The Court need not define markets to credit what Defendants admit: power.  WPE's amended direct proof allegations confirm that power, so market definition is not needed.  *Shields v. World Aquatics*, 2024 WL 4211477, at *3 (9th Cir. Sept. 17, 2024).

***Second***, the *Epic* factors do not apply to aftermarkets where, as WPE's amended allegations confirm here, the defendant has foremarket power.  *Epic* explained a "*Kodak* single-brand aftermarket requires 'high switching costs,' 'high information costs,' and [a] 'substantial' ability to 'exploit' ignorant consumers"—and the "knowledge-based distinction … flow[s] directly from" *Kodak*.  *Epic Games, Inc. v. Apple, Inc*., 67 F.4th 946, 977 (9th Cir. 2023).  *Epic* confirms *Kodak*, where the factors originate, concerned a "***lack of market power in the foremarket***," and held a lack of foremarket power does not "preclude[] a finding of market power in the aftermarket[.]"  *Epic*, 67 F.4th at 976; *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 454–76 (1992).  Requiring a *Kodak/Epic* analysis where there is ***no*** foremarket power—but ***not*** requiring that where there ***is*** foremarket power—thus tracks the caselaw.  *See Kodak*, 504 U.S. at 465 n.10 (analyzing these considerations where defendant

*lacked* foremarket power); *Epic*, 67 F.4th at 975, 977–81, 999 (same); *Lambrix v. Tesla, Inc*., 737 F. Supp. 3d 822, 839–41 (N.D. Cal. 2024) (*Kodak/Epic* framework unnecessary where defendant *had* foremarket power);[1] *FTC v. Deere & Co*., 2025 WL 1638474, at *3 (N.D. Ill. June 9, 2025) (same). *Kodak* and *Epic* **expand** liability for defendants who act anticompetitively in their own aftermarkets, even if they lack foremarket power; they do not *contract* liability by making a claim harder where the defendant has foremarket power to start with.  The latter would make little sense: where a company *has* foremarket power, consumers *already* lack the ability to use their selection of a brand in the foremarket to discipline that brand in an aftermarket.  *Lambrix*, 737 F. Supp. 3d at 839–41.

*Third*, even assuming the *Epic* factors apply, the amended TAC pleads facts that meet them. TAC ¶¶ 341–57.  Defendants challenge only the first and second factors, and their arguments all fail.

**Lack of Knowledge.**  WPE's new allegations show three aftermarket restrictions were unknown.  Defendants reserved the abilities to: (1) charge exorbitant fees for wordpress.org access; (2) capriciously block access to wordpress.org and resources; and (3) assert ownership and control over WordPress software and trademarks.  TAC ¶¶ 343–52.  Defendants argue (Mot. 2) none is an aftermarket restriction and what must be unknown is an *interoperability* restriction—*i.e.*, users must not know picking a WCMS means being limited to that WCMS's "compatible hosting and plugins." Not so: *Epic* is clear this factor requires that what must be unknown are "the *challenged* aftermarket restrictions," not that it be unknown that picking a brand at the foremarket level means being locked-in into that brand's aftermarkets.  67 F.4th at 977.  In *Kodak*, for example, it was known "Kodak parts are not compatible with other manufacturers' equipment, and vice versa."  504 U.S. at 457–58, 463 n.8, 477 n.24.  Defendants' read would render meaningless the Ninth Circuit's articulation of this *Epic* factor in terms of what the plaintiff *challenges* and also mean that *Kodak* is wrongly-decided.

*Epic*, *Coronavirus*, and *Lambrix* also support WPE, not Defendants.  They show what must be unknown is the challenged practice, *not* that selecting a brand means lock-in to its aftermarkets for lack of operability with other brands.  *Epic*, 67 F.4th at 966, 979–80 (Apple's policies restricting iOS app distribution to Apple App Store and requiring Apple's payment processor known); *Coronavirus*

---

[1]  The *Lambrix* court proceeded to address the *Epic* factors "[a]rguendo."  737 F. Supp. 3d at 841. That does not detract from its holding the *Epic* factors "do not apply" in the first place.  *Id.* at 840.

*Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) (Apple's policy giving it "sole discretion" to reject apps known); *Lambrix*, 737 F. Supp. 3d at 835, 842–43 (Tesla's "repair restrictions" requiring Tesla vehicles to only be serviced at "Tesla-Owned" or "Tesla-Approved" centers unknown).

**Information Costs and Life-Cycle Pricing.**  WPE's added allegations meet the second factor.  TAC ¶¶ 353–54.  Defendants argue (Mot. 3) the "hidden fees" associated with the license demand are not borne by others for "mere access" to wordpress.org and resources, but that disputes WPE's allegations the demand ***is*** a price increase recipients must pay to access wordpress.org, and which others ***are*** paying.  TAC ¶¶ 206–227, 296, 313, 333–34.  Fee demand aside, WPE also alleges Defendants increased others' costs through loss of functionality, downtime, and instability.  *Id.* ¶¶ 228–51, 297, 314, 335–36.  *Kodak* confirms all of this is part of life-cycle pricing.  504 U.S. at 473. Defendants also argue there are no information costs that impede estimating prices since "consumers had notice" of Defendants' "policies," but they cannot obtain dismissal by injecting ***their*** view of what was known, from one policy outside the TAC, at one moment in time. Even their characterization states, at most, somebody can generally "ban someone and disable all their plugins" "for ***certain violations*** … including trademark infringement."  That does not make it known they were reserving the abilities to: (1) charge exorbitant fees; (2) block market participants' access to wordpress.org and resources *in toto* (not just for plugins) at their whim, including pretextually (not just for "violations"); and (3) assert ownership and control over WordPress software and trademarks.  Defendants lied about this, and many were surprised at the truth, confirming this was ***not*** known. TAC ¶¶ 77, 79, 343–354; *Lambrix*, 737 F. Supp. 3d at 842–44 (factor met; practices "unexpected" and defendant deceived).

**B.    WPE Plausibly Alleges Defendants' Power In Each Market**

**WCMS Market.**  WordPress's market share of all websites built using a known CMS exceeds 60% and is higher for **W**CMS. TAC ¶ 281 & n.116. Defendants' gripes fail. Mot. 4. The TAC's new allegations explain WordPress' share ***is*** Defendants' share: (1) Mullenweg co-founded WordPress, and Automattic is his company involved in WordPress; (2) Mullenweg admitted "absolute power in the WP ecosystem" and that WordPress's share was his and Automattic's; and (3) Mullenweg controls WordPress (the software) and wordpress.org (which WordPress needs access to). *Id.* ¶¶ 282–85. Their reference to open-source terms is inapt since they ***violated*** those terms. TAC ¶ 410.  Their speculation

WordPress is available through "alternative channels" is unsupported, outside the pleadings, and misses the point: given Defendants' control of **WordPress software**, any site using WordPress counts towards their share. TAC ¶ 286; *Deere*, 2025 WL 1638474, at *4–*5 (dealers' share attributable to manufacturer; dealers made repairs using manufacturer's software, which it controlled). As to "entry barriers," Defendants concede WPE alleges them (TAC ¶¶ 359–369); disputing them as "implausible" fails. *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 779–80 (N.D. Cal. 2022). They also say WPE must explain why competitors "could not increase output" but provide no authority, and that confuses **direct** and **indirect** proof of power. In any case, disputes about share "overestimation" are beyond the pleadings. *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1070–71 (9th Cir. 2025).

The amended TAC separately establishes Defendants' power with direct proof. TAC ¶¶ 206–57, 275–80. Defendants assert (Mot. 4) WPE alleges WordPress is available "without payment to anyone," but WPE actually alleges open-source terms require free access and Defendants **breached** those terms. TAC ¶¶ 410. They also argue consumers facing a price increase "would" get WordPress elsewhere or switch to another WCMS; that is *ipse dixit*, and it disputes WPE's allegations WordPress (*i.e.*, Defendants) have not meaningfully lost customers from the conduct. *Id.* ¶ 257; *infra* at 6–7.

Contrary to their arguments (Mot. 4–5), the TAC adds detail showing Defendants' demand was a price increase for recipients for WordPress, the dominant WCMS. Defendants used the demand to extract payment for continued access to wordpress.org and related resources (which WordPress software requires), they recognized that was a price increase, and it is a big one given their and other WCMS' prior prices (zero). TAC ¶¶ 208, 217–22, 226–27, 276–77. Defendants' assertion that "demands for IP licenses are non-actionable" is wrong: *Novell, Inc. v. Microsoft Corp.*, addresses whether refusing to provide software is anticompetitive conduct, **not market power**, and, even as to conduct, states the right to refuse to deal is not absolute. 731 F.3d 1064, 1071, 1074 (10th Cir. 2013).

Defendants' claim that "WPE does not explain how" Defendants' conduct "led to an associated increase in costs" or a decrease in quality simply disputes WPE's amended allegations. Mot. 5. The TAC details how beyond WPE, Defendants caused service disruptions, lost opportunities, and mitigation expenditures. TAC ¶¶ 228–238, 244, 250, 278. As to quality, the TAC describes how: (1) stability, functionality, and security are key; (2) Defendants eroded stability by creating chaos, fear,

and uncertainty; (3) Defendants impaired many websites' functionality; (4) Defendants caused bugs and security issues; and (5) how these quality reductions affect WordPress software (it is hardcoded to call back to wordpress.org) and are felt in the WCMS Market (they were borne by market participants using WordPress, the dominant WCMS).  TAC ¶¶ 61, 239–251, 279, 285.  Defendants' claim that WPE only alleges impact to its customers and itself is wrong: the TAC confirms the conduct impacted others, including hosts and Defendants' own customers. *Id.* ¶¶ 238–51, 297.  Their argument a minor market share decline precludes power (Mot. 5) misapplies the law.  *United States v. Syufy Enters*. **rejects** efforts "to focus narrowly on [] market share at a particular time," and found, after trial, a double-digit share decrease over years disproved power. 903 F.2d 659, 665–66 (9th Cir. 1990). Defendants' share decreased 2% in one year.  TAC ¶ 281; *In re Ductile Iron Pipe Fittings Antitrust Litig*., 2013 WL 812143, at *17 (D.N.J. Mar. 5, 2013) (10% share decline did not preclude power).

**Aftermarkets.**  Defendants dispute indirect proof of their aftermarket power.  Mot. 5–6.  As to hosting, Defendants myopically focus on Automattic's purportedly low share, but that ignores the full scope of Defendants' power shown in the amended TAC—including Defendants' ability to force other hosts to "contribute to Automattic" and do work for its profit, such that those hosts' shares is attributable **to** Defendants.  TAC ¶¶ 202, 213–15, 218–20, 224; *Deere*, 2025 WL 1638474, at *5.  As to hosting and custom field plugins, Defendants' share focus ignores direct proof makes indirect proof unnecessary, and the amended TAC alleges direct proof for both markets.  TAC 294–99, 310–14.

As to plugin distribution, Defendants' share is "nearly 100%," as most WordPress plugins are distributed through wordpress.org (which Mullenweg owns). TAC ¶ 329.  Defendants' argument that WPE "confuses control over WordPress.org with the power to control prices or exclude competition" is wrong and itself conflates direct (prices and exclusion) and indirect proof (market share); their citation, *MLW Media LLC v. World Wrestling Ent., Inc*., confirms either suffices and **denied** dismissal as the defendant had high share (as the TAC's added allegations confirm here).  2023 WL 4053802, at *4–*5 (N.D. Cal. June 15, 2023).  Their claim WPE must establish that if Defendants raised prices "other plugin distribution channels wouldn't immediately enter" is also wrong: *Rebel Oil Co. v. Atl. Richfield Co.* is a summary judgment decision and does not require disproving hypotheticals about non-existent competitors; it states for a defendant's power to be durable, "competitors [must] lack the

capacity to increase their output in the short run."  51 F.3d 1421, 1434 (9th Cir. 1995).  The amended TAC confirms that here from the non-emergence of independent WordPress plugin distributors (which mirrors are not, as they call back to wordpress.org).  TAC ¶¶ 322–24, 328–29, 359–69.

Defendants' direct proof arguments are equally unavailing.  Mot. 6.  *Novell* is inapt, as it addresses neither power nor what constitutes a price increase.  As to cost increases, Defendants' assertion customers switched to other hosts besides Automattic does not undermine Defendants' market power shown in the TAC: (1) customers switching to other hosts in the hosting market says nothing about the custom field plugin or plugin distribution markets; and (2) as to hosting, that customers scattered to other hosts does not mean Defendants' conduct was untenable—the upside to Automattic could be more than the downside from competitors' market share gains—or "preclude[]" power.  *In re Abbott Lab'ys Norvir Anti-Tr. Litig*., 2008 WL 8202771, at *2 (N.D. Cal. Aug. 19, 2008) (abrogated on other grounds).  As to quality, the amended TAC shows Defendants created chaos and security vulnerabilities felt across each aftermarket. TAC ¶¶ 61, 153, 239–251, 298, 312, 315, 332, 338.  Defendants' breaking update mechanisms, introducing bugs, fostering fear, and casting doubt on the WordPress community "degrades," not improves, the "overall offerings" in each aftermarket.[2]

### C.    WPE Plausibly Alleges Antitrust Injury

Defendants' antitrust injury arguments fail.  Mot. 6–7.  Defendants' conduct was not only directed at WPE and its customers, Defendants boasted of "destroy[ing] ***all*** competition" and "get[ting] the market moving," ***they*** recognized their scheme affected more than WPE as it "really hurt" the WordPress community (TAC ¶¶ 200, 246, 256), and the TAC pleads injury to others, including: (1) hosts who paid ransoms to Automattic (*id.* ¶¶ 135, 202, 213–15, 218–225); (2) developers who exited wordpress.org (*id.* ¶¶ 254–55, 340; (3) a competitor whose mirror Defendants killed (*id.* ¶ 238); and (4) "millions of customers and partners" (including Defendants') who suffered cost increases, service disruptions, and quality reductions (*id.* ¶¶ 117–18, 170–85, 189–95, 228–250).  This is market-wide harm to competition, not injury to one competitor.  It bears no resemblance to *Malheur Forest Fairness Coal. v. Iron Triangle*, *LLC*, where a competitor lost an "exclusive contract"

---

[2]   As to custom field plugins, Defendants claim (Mot. 6) with no citation WPE must allege ACF was unique.  That is a non-sequitur.  Whether some other "offering" exists does not negate that Defendants stole, restricted choice, and lied in hijacking ACF—the opposite of improving quality in that market.

(a different legal test) and there was **no** "harm to consumers."  164 F.4th 710, 734–35 (9th Cir. 2026).

Defendants' characterization of their conduct as merely asserting "trademark rights" and causing a "temporary disconnection" of WPE from wordpress.org is also misleading.  Mot. 7.  WPE disputes Defendants' so-called "rights"; the blocking extended beyond WPE to affect the broader ecosystem; it was "temporary" only because this Court intervened with an injunction; and this framing ignores Defendants' deception, disparagement, and interference with WPE's customer and personnel.

Defendants' claim (Mot. 7) WPE does not plead "reduced output" or "higher prices" is wrong, as discussed above.  *Supra* at 5–7.  WPE's allegations suffice, *Apple Inc. v. Samsung Elecs. Co*., 2011 WL 4948567, at *6 (N.D. Cal. Oct. 18, 2011), and they render inapt *Rx Sols., Inc. v. Caremark, L.L.C.*, where there were **no** alleged price increases or quality decreases.  164 F.4th 436, 444 (5th Cir. 2026).

Defendants' claim there is no impact in the WCMS foremarket fails too.  Mot. 7.  The conduct they point to is asserting "trademark rights" and blocking; that says nothing about their **deception**, which harmed other WCMSs since market participants would have selected them over WordPress absent the lies.  TAC ¶¶ 196, 371, 376.  Even as to "trademarks" and blocking, that WordPress's share slightly decreased is immaterial.  *Supra* at 6.  Defendants also assert there are no WordPress aftermarkets; if that were true (it is not), there would only be the WCMS Market (which Defendants do not contest), and all the conduct and its effects are simply felt there (they do not just disappear).

### D.    WPE Plausibly Alleges Defendants' Anticompetitive Conduct

Defendants seek to dismember their scheme into "subcategories" and then subject each to "rigid" standalone tests.  Mot. 7–9.  That is legally wrong.  *Free FreeHand Corp. v. Adobe Sys. Inc*., 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012); *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 353–56 (4th Cir. 2024).  In any event, WPE's theories are each well-pled.

**Anticompetitive statements**.  Defendants claim a test from *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) governs both their market deception and disparaging WPE.  But courts have **not** applied that test to deception.  *CoStar*, 150 F.4th at 1075; *Arista Networks, Inc. v. Cisco Sys. Inc*., 2018 WL 11230167, at *12–*13 (N.D. Cal. May 21, 2018).  Courts have also not applied the test to disparagement where it is one part of a scheme. *Caldera, Inc. v. Microsoft Corp*., 87 F. Supp. 2d 1244, 1249 (D. Utah 1999).

Even if the six-part test applies, WPE satisfies it. The first three elements require statements that are clearly: (1) false; (2) material; and (3) likely to induce reliance. Mot. 7. Regarding deception, Defendants raise the Court's ruling, for **_promissory estoppel_**, that certain misstatements were too "vague." *Id.* 8. Whether a statement is "clear and unambiguous" enough to enforce a contract by estoppel is a higher bar than antitrust: a statement suffices for antitrust if it is objectively verifiable, rather than "optimism" or "puffing." *Klein*, 580 F. Supp. 3d at 794. Whether Defendants offered free services, open and available to everyone, forever is verifiable: they either did or did not. Their arguments about open-source and copyright and trademark law (Mot. 8) are unsupported attorney say-so and fact disputes about the misstatements' meaning. As to disparagement, they contend some statements are not objectively verifiable. Mot. 8. But the "faster performance" statement is only one disparagement example, and the "feeds off" quote is part of the "parasitic" misstatement that, along with others, the Court already found sufficiently factual to raise a triable dispute for defamation. Dkt. 169 at 19–22. Their citations are not to the contrary. *Klein*, 580 F. Supp. 3d at 795 (aspiring to "keep[] the global community safe" not verifiable but statements about specific practices were); *Emulex Corp. v. Broadcom Corp.*, 2010 WL 11595718, at *3–*4 (C.D. Cal. June 7, 2010) (statements about "underperformance" and "inability to deliver satisfactory results" not verifiable, but others were).

As to the fourth element—buyers' lack of knowledge—Defendants challenge disparagement, but not deception. Mot. 8. Their argument that consumers can tell whether WPE's products are "sub-par" fails: it addresses disparagement of WPE's **_quality_**, not of WPE's community contributions and trademark use. TAC ¶¶ 102–06. Even as to quality, many customers are **_not_** technical and hire WPE for that reason (*id.* ¶¶ 33–35, 525), and it would take time, knowhow, and money to try other services and compare them to WPE's to determine the statements' falsity. That is the opposite of *Tate v. Pac. Gas & Elec. Co.*, where it was **_not_** alleged buyers lacked knowledge, and that would be implausible since the customers were all "sophisticated." 230 F. Supp. 2d 1072, 1075–76, 1080 (N.D. Cal. 2002).

Defendants assert the fifth element is not met because the misstatements "were made only in" September 2024, which is not prolonged. Mot. 8. That says nothing about deception, which dates back to 2010. TAC ¶¶ 2, 52, 55, 522. As to disparagement, WPE sued in October 2024 after the "war" began; it need not wait until more disparagement occurred and more harm was inflicted. As to

1   WPE's mirror, Defendants said it was ineffective (TAC ¶ 323), and it is unrelated to disparagement.

2          As to the sixth element, Defendants assert the statements "concern [WPE's] quality and

3   conduct" and were rebuttable. Mot. 8. That only concerns disparagement, **not** deception. Moreover,

4   the disparaging statements' technical nature, their speaker (Mullenweg) being a community authority,

5   and their causing customers to leave WPE confirm they were not neutralizable. TAC ¶¶ 48, 108, 112,

6   133, 265, 503, 525; *Emulex*, 2010 WL 11595718 at *3, *7–*8 (plaintiff could offset disparagement

7   it was only a "storage connectivity company" by showing it, in fact, did offer other products).

8          **Interference.** Defendants recast their interference with WPE's customers and operations as

9   a permissible "refusal to deal." Mot. 9. But that framing fails where, as here, the refusal is pretextual

10  and designed to "maintain a monopoly." *Kickflip, Inc. v. Facebook, Inc.*, 999 F. Supp. 2d 677, 685–

11  86 (D. Del. 2013). WPE also does not challenge Defendants' **mere** denial of access **to WPE**, but

12  instead their blocking WPE, its employees, and customers; commandeering ACF; and using their

13  disruption to interfere with WPE's customers. TAC ¶¶ 122, 132, 156, 196. A defendant inducing

14  **customers** not to deal with the plaintiff is **not** a refusal to deal. *CoStar*, 150 F.4th at 1072, 1075–76.

15         **Solicitation.** Defendants characterize their "soliciting" WPE's personnel as "competitive."

16  Mot. 9. Their focus on **hiring** employees ignores their **harassing** WPE's CEO (TAC ¶¶ 93–97, 145–

17  148, 519, 533), which was anticompetitive, **not** merely raising "concerns" or making a "job offer."

18  *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *1–*2, *6, *11 (N.D. Cal. Apr. 26, 2004)

19  (threats and torts to plaintiff's employees anticompetitive). As to hiring, *Harcourt* involved only one

20  employee and **confirmed** predatory hiring is shown with "intent" to "harm the competition without

21  helping the monopolist[.]" 108 F.3d at 1152–53. That inference must be drawn here: only after their

22  "nuclear war" to turn WPE into a "distressed asset" did Defendants solicit "hundreds of WPE

23  employees" to join "the other side," TAC ¶¶ 132, 136–38, 149; after that, they laid employees off.

24  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 109–10 (3d Cir. 2010) ("predatory hiring"

25  anticompetitive; that defendant later terminated some employees showed anticompetitive intent).

26         **E.    WPE Plausibly Alleges Defendants Committed Unlawful, Negative Tying**

27         Each of Defendants' negative tying arguments fails. Mot. 9–10. Defendants assert WPE does

28  not allege the tying market (plugin distribution) or Defendants' power in that market; that is wrong.

Sections I.A.–B., *supra*.  Defendants' argument that WPE "alleges no agreement between Defendants and any WordPress users" is also incorrect.  Even if an explicit "agreement" were required (it is not), WPE alleges one: Defendants' "checkbox" conditioned access to wordpress.org on users agreeing "I am not affiliated with WP Engine in any way."  TAC ¶¶ 546, 558.  Defendants' suggestion that WPE's customers are not "affiliates" "covered by the checkbox" is baffling, and, at most, presents a fact dispute beyond the pleadings.  Moreover, an "agreement" can also be ***implicit***.  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1179 (9th Cir. 2016).  Here, Defendants coerced customers into ***not*** using WPE's hosting or custom field plugins through effectively blocking access to wordpress.org if they used WPE and the checkbox.  TAC ¶¶ 5, 118, 153–54, 170, 230, 545–46, 557–58.  This was successful: customers left WPE and it lost sales it could have made.  *Id.* ¶¶ 7, 132–33, 170–82, 231, 299, 547, 559.  That suffices for tying.  *Entri, LLC v. GoDaddy.com, LLC*, 2024 WL 4468488, at *4–*8 & n.5 (E.D. Va. Oct. 10, 2024); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1752.

## II.    WPE STATES A VALID SECTION 1030(A)(7) CFAA CLAIM (COUNT 3)

### A.    Defendants Acted With Intent to Extort and Facilitated Extortion

To plead extortion, "a litigant must demonstrate ***either*** that [a] he had a pre-existing right to be free from the threatened harm, ***or*** that [b] the defendant had no right to seek payment for the service offered."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014).  WPE pleads both under *Levitt*.

#### 1.    WPE Alleges A Pre-Existing Right To Be Free

The TAC includes additional allegations regarding WPE's preexisting right to "the continued normal operation of its own computers running the open source WordPress software" and "continued access to wordpress.org."  TAC ¶ 410.  The GNU License under which Defendants released WordPress guarantees WPE "the freedom to run [WordPress] for any purpose," "the freedom to redistribute," and "the freedom to distribute copies…to others."  *Id.*  This Court, denying Defendants' prior motion, held their offer of "free hosting to anyone who wishes to develop a plugin in our directory" on wordpress.org is an actionable promise.  Dkt. 169 at 24.  These rights distinguish this case from Defendants' citations, where no plaintiff identified any obligation requiring the defendant to deal with them.  *Brokerage Concepts v. U.S. Healthcare, Inc.*, 140 F.3d 494, 503 (3d Cir. 1998).  In any event, "evidence of industry custom"—like that at issue here with open-source software and

access to resources required by that software—is judged on a full record, not the pleadings. *Cal. Spine & Neurosurgery Inst. v. Oxford Health Ins. Inc.*, 2019 WL 6171040, at *3 (N.D. Cal. Nov. 20, 2019).

The TAC's expanded allegations about Defendants' expropriation of WPE's ACF plugin separately establish extortion. WPE alleges Defendants overwrote ACF code on WPE's and its customers' computers without consent, and usurped ACF's download counts and reviews. TAC ¶¶ 158–66. The Court found Defendants' claimed right to overwrite ACF for security reasons was belied by their attempt to "pass off the rating and reviews for the ACF plugin." Dkt. 64 at 30–31.

### 2. WPE Alleges Defendants Had No Right To Seek Payment For the Purported Trademark License

WPE also alleges Defendants had no right to seek payment because the purported trademark license was objectively worthless. The TAC details how numerous companies used the Challenged Terms for over a decade, and how Defendants were aware of and approved WPE's use throughout. TAC ¶¶ 40–47, 413–15. Indeed, Defendants acknowledged "any Tier 1 host (WPE for example)" would "pushback" on a license because "they get the same thing today for free. They've never paid for [the WordPress] trademarks and won't want to pay…" *Id.* ¶ 208. That Defendants themselves recognized the license had no value fatally undermines their "legitimate service" argument under *Levitt*, 765 F.3d at 1130. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1225 (11th Cir. 2023) (whether defendant "was, in fact, entitled to" the demanded sum is fact issue not resolvable at pleading stage).

Defendants' argument that their assertion of so-called "trademark enforcement rights" against WPE "establishes that they were not extorting" (Mot. 10–11) conflates the trademark dispute with the CFAA claim. WPE's CFAA claim is based on Defendants' threats to—and actual damaging of—computer systems protected by the CFAA to coerce payment. Defendants' cases are inapt as none involved an assertion of rights coupled with "wrongful use of force or fear." *Levitt*, 765 F.3d at 1132; *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006) (alleged threat to sue not extortionate); *SmileDirectClub, LLC v. Berkely*, 2019 WL 1091339, at *5(C.D. Cal. Jan. 22, 2019) (same).

Nor is WPE's nominative fair use argument a bare "legal conclusion." Mot. 11. The TAC alleges specific facts: WPE's 14-year use of the marks with Defendants' knowledge and approval (TAC ¶¶ 42–46); the WordPress Foundation's own trademark policy stating "WP" is free to use (*id.*

¶ 47); Mullenweg's personal endorsement of WPE's use (TAC ¶¶ 43–44); and industry-wide practice of using the Challenged Terms in the same manner (*id.* ¶ 413). The Court need not resolve fair use—it need only find WPE plausibly alleged the license demand lacked objective value, which WPE has.

> **B.      WPE Plausibly Alleges the Causal Link Between Defendants' Extortion and the Damage They Threatened and Caused**

Defendants contend the CFAA's causation requirement is not met because the blocking and ACF forking occurred after WPE refused the license demand, making them mere "retribution." Mot. 12. This mischaracterizes WPE's allegations. The CFAA requires damage "caused to facilitate the extortion" or threats made "with intent to extort." 18 U.S.C. § 1030(a)(7). WPE alleges an ***ongoing scheme*** to pressure WPE into capitulation. The extortion did not end when WPE first refused to pay; the demand remained open and was ***escalating***. Indeed, Mullenweg stated WPE could make "this all go away by doing a license" and that the price increased beyond the prior 8% demand. TAC ¶ 142.

Defendants themselves confirmed the extortion was ongoing: WPE could reclaim its access and plugin listing if it "dropped its lawsuits, apologized, and got in [trademark] good standing[.]" TAC ¶ 167. The blocking and ACF takeover were escalating pressure tactics—not standalone acts of retribution—designed to compel WPE's surrender. *Id.* ¶ 405. Indeed, courts recognize damaging a computer after a ransom demand is rejected is part of the extortionate scheme. *GCM Partners, LLC v. Hipaaline Ltd.*, 2020 WL 6867207, at *12 (N.D. Ill. Nov. 23, 2020) ("When [defendant] did not receive the desired response, [it] took steps to cut off [plaintiff's] access to the [] platform, which could support a violation under § 1030(a)(7)(C)."); *Wit Walchi Innovation Techs., GMBH v. Westrick*, 2012 WL 33164, at *1–*2 (S.D. Fla. Jan. 6, 2012) (granting injunction where Section 1030(a)(7) claim based on defendant's "threat to cause and ***continue*** to cause damage" when plaintiff did not pay).

> **C.      WPE Plausibly Alleges Damage to A Protected Computer**

WPE plausibly alleges "damage to a protected computer" on two independent grounds: Defendants' (1) blocking WPE's access to wordpress.org; and (2) overwriting the ACF plugin code.

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Defendants analogize their blocking to a "road closure" that does not damage the "car." Mot. 13. But WordPress software is not independent

1   of wordpress.org the way a car is independent of the road.  WordPress contains over 1,500 hardcoded

2   references to wordpress.org, including callbacks for plugin, security, and other core updates integral

3   to the software's operation.  TAC ¶¶ 61, 285, 407.  So when Defendants blocked WPE's access, these

4   intentionally "hardcoded references, callbacks, and plugin updates" on WPE's computers "were

5   broken," causing them to "stop functioning normally."  *Id.* ¶ 407.  Blocking access to wordpress.org

6   is not closing a road; it is severing a programmed dependency, akin to cutting a car's fuel line while

7   the engine is running.  Defendants admitted "[t]he block we've imposed on WPE from .org impact[s]

8   their ability to keep their plugins up to date" and "made [Defendants'] own customers vulnerable."

9   *Id.* ¶¶ 250, 419.  *SkyHop Techs.*, 58 F.4th at 1226 (withholding passwords "diminished [plaintiff's]

10  ability to use its computer system or the associated data" constituted statutory damage).

11      WPE also plausibly alleges Defendants' overwriting ACF "impaired the utility, availability,

12  and integrity of WPE's ACF plugin" by "deleting millions of instances of [the plugin] and replacing

13  it with Defendants' own SCF plugin."  TAC ¶¶ 408, 419.  Forcibly replacing software on a user's

14  computer with unauthorized code is a textbook impairment of "the integrity ... of data, a program, a

15  system, or information" under 18 U.S.C. § 1030(e)(8).  Defendants' assertion (Mot. 13–14) that WPE

16  failed to allege any "actual harm to computers" or any "impair[ment of] the functionality of users'

17  computers" ignores these well-pled allegations, any one of which suffices to defeat dismissal.

18  **III.    DEFENDANTS' *NOERR-PENNINGTON* DEFENSE IS BASELESS**

19      Defendants' belated *Noerr-Pennington* arguments about WPE's antitrust and CFAA claims—

20  which Defendants conspicuously chose not to raise in their prior motion to dismiss these claims a

21  year ago—lack merit.  Mot. 14.  The only conduct Defendants identify as purportedly "protected" is

22  their demand for a trademark "license."  But WPE's antitrust and CFAA claims rest on far more than

23  a "license" demand, including years of market deception, public disparagement, the ACF hijacking,

24  and interference with WPE's personnel and customers.  TAC ¶¶ 196, 400, 404, 407–08.  *Noerr-*

25  *Pennington* does not even apply to these acts, which are neither the "license" demand nor petitioning.

26      Even as to the "license" demand, *Sosa* confirms *Noerr-Pennington* applies, if at all, to formal

27  pre-litigation demands asserting legal violations and seeking settlements.  437 F.3d at 925–26, 932–

28  36 & n.1.  Here, WPE does ***not*** assert claims based on Defendants' September 23, 2024 cease-and-

desist letter, but rather earlier, extortionate phone calls and text messages from Defendants' CEO and CFO (business, not legal, personnel), who threatened a "scorched earth" and "nuclear approach." TAC ¶¶ 91–98. Defendants' reliance on *Gamble v. Kaiser Foundation Health Plan* is thus misplaced, as the challenged communications there were tied to litigation since the challenged communications arose ***after*** litigation was filed and were attempts to settle it. 348 F. Supp. 3d 1003, 1024–27 (N.D. Cal. 2018). Where, as here, the communications are threats, *Noerr-Pennington* does not apply. *Perez v. DirecTV Group Holdings LLC*, 2019 WL 6362471, at *7 (C.D. Cal. July 23, 2019); *Cascades Comput. Innovation LLC v. RPX Corp.*, 2013 WL 6247594, at *17 (N.D. Cal. Dec. 3, 2013).

Even assuming Defendants' demand was subject to *Noerr-Pennington*, WPE pleads the sham exception. As shown by the WordPress Foundation's trademark policy permitting use of "WP" (TAC ¶ 47), Defendants' recognition they would receive "pushback" on a license (*id.* ¶ 208), and *infra* in WPE's motion to dismiss (Section V), Defendants' trademark "claims" are objectively baseless. As to subjective baselessness, the question is not ***who*** filed this lawsuit (Mot. 14), but rather whether Defendants used the "petitioning" (threats) as a weapon to injure WPE, which WPE alleges they did. TAC ¶¶ 7, 106, 132, 135, 149, 200. Independent from the sham exception, the demand is actionable as part of a larger anticompetitive scheme, even if the demand itself could hypothetically be protected. Defendants engaged in non-protected conduct (deceiving market participants into picking WordPress over other WCMSs) and then used the trademark demand to "ambush" WPE and seek ransom, which suffices. *Hynix Semiconductor Inc. v. Rambus, Inc*., 527 F. Supp. 2d 1084, 1097–98 (N.D. Cal. 2007).

## IV.    WPE STATES VALID CLAIMS AGAINST WOOCOMMERCE

Defendants argue WPE's claims against WooCommerce should be dismissed because WooCommerce and WPE do not compete, so WooCommerce cannot "interfere, extort, or unfairly compete" with WPE. Mot. 14–15. Defendants are wrong. The TAC pleads WooCommerce acted in concert with Automattic and Mullenweg against WPE, which is all that is required.

**Tortious Interference (Counts 1, 2).** Defendants' tortious interference arguments (Mot. 15) fail because the TAC demonstrates, with a screenshot, a ***WooCommerce*** employee emailed WPE's customer on October 16, 2024, warned WPE's access to wordpress.org was restricted, and solicited the customer to leave WPE via "contract buy-out" and "white-glove migration" to Automattic. TAC

¶ 127.  This and WPE's allegations describing Defendants' campaign against WPE upon its refusal to meet Defendants' licensing demands for the supposed WordPress and **WooCommerce** trademarks (TAC ¶¶ 21–22, 122–38; Ex. A) demonstrate WooCommerce's involvement in the interference.

**CFAA (Count 3).**  Contrary to Defendants' arguments, WooCommerce is likewise involved in the conduct giving rise to WPE's CFAA claim.  Among the "trademarks" that Defendants demanded extortionate "licenses" for were WooCommerce's.  TAC ¶ 21.  The sham license negotiations Defendants initiated with WPE began with a proposed **WooCommerce** partnership.  *See* TAC ¶ 135; CC ¶¶ 262–63.  Indeed, Defendants believed WPE's e-commerce solutions compete with WooCommerce.  *Id.* ¶¶ 119–21 (Mullenweg telling WPE vendor Stripe he would cancel Stripe's contracts with WordPress if Stripe did not stop dealing with WPE).  WooCommerce is thus a beneficiary of Defendants' extortion, and WooCommerce also participated by sanctioning Defendants' threats to cause damage to WPE's computers.  TAC ¶¶ 400–25.  Defendants claim this conduct is protected by *Noerr-Pennington*, but, as discussed *supra* at 14–15, they are incorrect.

**Unfair Competition (Count 4).**  The Court has already found that WPE stated a UCL claim against Automattic and Mullenweg.  Dkt. 169 at 18.  The Court likewise already found that WooCommerce "injected itself into this litigation."  Dkt. 232 at 1.  Because WooCommerce was involved in the conduct (like interference, TAC ¶ 127) the Court already found sufficient to state a claim against the other Defendants, and that conduct serves as a predicate act for the UCL, it suffices to state a UCL claim against WooCommerce too.  While Defendants' conduct suggests they believe WPE offers competitive e-commerce solutions, *see supra*, it does not matter whether WooCommerce is WPE's competitor, as the UCL is not limited to claims between competitors anyway.  *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 675 (9th Cir. 2007) ("under the unfair competition statute, competition between the parties is not a prerequisite to relief") (cleaned up).

**Declaratory Judgment of Non-Infringement and Non-Dilution (Counts 6, 7).**  WooCommerce filed an infringement counterclaim against WPE (CC ¶¶ 329–38) confirming a live dispute between the parties as to Count 6.  Further, WooCommerce asserted infringement and dilution in the September 2024 letter (TAC ¶¶ 21–22), and WPE denies both.  Justiciable controversies exist.  *E.g.*, *Stone Brewing Co., LLC v. MillerCoors LLC*, 2019 WL 1383273, at *10–*12 (S.D. Cal. Mar.

26, 2019) (denying motion to dismiss claim for declarations of trademark noninfringement).

**V.      THE COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY**

   **A.      The Counterclaims Are Barred By The Statute Of Limitations And Laches**

      **1.      The State Law Counterclaims Are Barred By the Statute of Limitations**

The statute of limitations periods that apply to Counterclaimants' common law trademark infringement and unfair competition, and statutory state trademark dilution and unfair competition counterclaims, the longest of which is four years, compel their dismissal.  Cal. Bus. & Prof. Code §§ 17200, 17208; *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 959 (N.D. Cal. 2015) (applying four-year limitations period for state trademark dilution, and statutory and common law unfair competition claims); *Free Kick Master LLC v. Apple Inc*, 2016 WL 777916, at *8 (N.D. Cal. Feb. 29, 2016) (recognizing courts have applied two-, three-, or four-year limitations periods for common law trademark infringement claims).  Because the Counterclaimants were aware of the allegedly wrongful acts many years before they filed counterclaims on October 23, 2025, they are untimely.

Counterclaimants' knowledge of WPE's uses of the Challenged Terms before October 23, 2021, is clear from their pleadings.  They allege WPE "entered the WordPress ecosystem in ***2010*** as a small hosting provider, making ***largely*** nominative use of the WordPress Marks," and that from the start, "WP Engine's very name suggests that it is one of the WordPress Parties."  CC ¶¶ 2, 4, 5 (emphases added).  WPE's name and business of managing and hosting WordPress websites have remained the same since its founding.  *Id.* ¶¶ 103–113; TAC ¶¶ 34–47.  Counterclaimants allege WPE's uses had "high[] visibility" and Automattic became a "strategic" investor in WPE in 2011 and held that investment through 2018.  CC ¶¶ 6, 89, 95; *see also* RJN, Exs. 12–13.

In an attempt to avoid the obvious time bar applicable to their stale claims, Counterclaimants allege WPE "***ratcheted up***" its use of the Challenged Terms in 2018 and again in 2022 and 2023.  CC ¶¶ 4–5, 8 (emphasis added).  But this does not change the date by which Counterclaimants first knew or should have known of WPE's allegedly infringing use.  To "ratchet something up" means that it is already ongoing, just at a lower rate.  But claims accrue, regardless of the degree of alleged improper conduct, when Counterclaimants "know[] or ha[ve] reason to know of the injury which is the basis of the action."  *Free Kick Master LLC*, 2016 WL 777916 at *5–*8 (dismissing claims despite plaintiffs'

1    awareness of alleged "ongoing" infringement outside of the limitations period).

2         The allegedly infringing uses clearly predate October 23, 2021.  By at least the end of January

3    2018, WPE was allegedly using: "WordPress Hosting"; "Managed WordPress Hosting"; "The Only

4    WordPress Digital Experience Platform"; "The world's leading WordPress Digital Experience

5    Platform"; "Your WordPress Digital Experience Platform"; "The WordPress Digital Experience

6    Platform"; by January 29, 2019, "THE WordPress Partner of Choice"; by March 4, 2021, "the world's

7    most trusted WordPress technology company" and "Headless WordPress"; and by June 24, 2021,

8    "The WordPress Technology Company."  CC ¶¶ 104–05, 106–08, 110–12, 117, 118, 128–29.  For

9    uses the counterclaims allege without a start date, judicially-noticeable documents confirm WPE

10   made use before October 4, 2021.  CC ¶¶ 5, 6 (RJN, Exs. 2–7); *Erickson v. Nebraska Mach. Co.*,

11   2015 WL 4089849, at *1 n.1 (N.D. Cal. Jul. 6, 2015) (Wayback records judicially-noticeable).  WPE's

12   later uses of the WordPress Marks are mere variations of the uses discussed above that began before

13   the limitations period.  For example, WPE used "managed WordPress" since December 30, 2011

14   (RJN, Exs. 1–2, 9–11; CC ¶¶ 106–08) and "Core WordPress" since March 2018 (RJN, Ex. 5).  It is

15   not plausible the same phrases were initially non-violative (CC ¶¶ 102, 106–07) and infringing only

16   in later years (*id.* ¶¶ 119, 130).  Counterclaimants also allege "consumer confusion" dating back to at

17   least December 2018, including the Defi Solutions website, a MarketersMEDIA press release,

18   WordPress.com forum posts, a Stack Overflow page, and a Zendesk message—all **before** October

19   2021.  CC ¶¶ 161, 171, 174, 177, 186.  Because the limitations period is triggered when a mark holder

20   "knew or should have known about the likelihood of confusion," *Fitbug Ltd. v. Fitbit, Inc.*, 78 F.

21   Supp. 3d 1180, 1187 (N.D. Cal. 2015), these confusion allegations confirm the claims are time-barred.

22              **2.    Laches Bars All Counterclaims**

23        Laches bars the counterclaims.  The "well established" defense of laches prevents a plaintiff

24   from knowing that another company is using its trademark and only later coming forward to enforce

25   its rights after the company has proven its success.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304

26   F.3d 829, 835, 842–43 (9th Cir. 2002); *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088,

27   1102–03 (9th Cir. 2004).  Courts apply California's four-year statute of limitations to the laches period

28   for trademark infringement and dilution claims, and a three-year period for false advertising claims.

1    *E.g., Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 996–97 (9th Cir. 2006); *Jarrow*, 304 F.3d at

2    837–38.  "The limitations period for laches starts [when] 'the plaintiff knew or should have known

3    about its potential cause of action.'"  *Tillamook Cnty. Smoker, Inc. v. Tillamook Cnty. Creamery*

4    *Assoc.*, 465 F.3d 1102, 1108 (9th Cir. 2006).  The "presumption of laches is triggered if any part of

5    the claimed wrongful conduct occurred beyond the limitations period."  *Jarrow*, 304 F.3d at 837.

6    Here, the counterclaims were filed on October 23, 2025, so laches is presumed if Counterclaimants

7    knew or should have known of WPE's alleged trademark uses before October 23, 2021, and of alleged

8    false advertising before October 23, 2022—a threshold that is clearly met.  *Supra* § V.A.; CC ¶¶ 233–

9    34, 297.  Once the presumption arises, the elements of laches—unreasonable delay and resulting

10   prejudice—may be presumed satisfied, even at the pleading stage.  *Landrum v. Tyson*, 2011 WL

11   13217114 at *2 (C.D. Cal. May 16, 2011).  Here, the presumption applies, and there are no allegations

12   justifying either Counterclaimants' delay in filing their claims or a finding of no prejudice.

13                    **(a)      Counterclaimants Unreasonably Delayed Filing Counterclaims**

14            Counterclaimants' delay is unreasonable.  Courts determining unreasonable delay assess two

15   issues: "length of delay" and "whether the plaintiff's delay was reasonable."  *Jarrow*, 304 F.3d at

16   838.  When a trademark infringement claim arises as a counterclaim rather than in the initial

17   complaint, the Ninth Circuit uses the ***counterclaim filing date*** as the end date for its laches analysis.

18   *Tillamook*, 465 F.3d at 1109; *Dropbox, Inc. v. Thru Inc.*, 728 F.App'x 717, 718 (9th Cir. 2018).

19            Counterclaimants knew (or should have known) of the allegedly infringing trademark uses in

20   2010, 15 years before suing (CC ¶¶ 4, 102, 103) and of the allegedly false advertising in January

21   2015, when Automattic was an investor in WPE (*id.* ¶¶ 231–32)—a 10-year delay—and its alleged

22   increased use in 2021 (*id.* ¶ 114–19), a 4-year delay.  *Id.* ¶¶ 230, 234, 297.  They allege no reasonable

23   justification for their delay, which "is considered in light of the time allotted by the analogous

24   limitations period."  *Jarrow*, 304 F.3d at 838.  "[I]t is clear from the face of the pleadings that the

25   delay "was not reasonable"—and Counterclaimants do "not provide any explanation for [this] delay."

26   *Landrum* , 2011 WL 13217114 at *2 ; *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d

27   Cir. 2019).  Allegations as to the growth of WPE's business, or its "ratcheting up" of uses (CC ¶¶ 4–

28   5), cannot justify delay.  *Tillamook*, 465 F.3d at 1110; *Prudential Ins. Co. of Am. v. Gibraltar Fin.*

1   *Corp. of Cal.*, 694 F.2d 1150, 1154–55 (9th Cir. 1982).

2                    **(b)      WPE Is Unfairly Prejudiced by Counterclaimants' Delay**

3        Prejudice to WPE is clear from the counterclaims.  Courts recognize two forms of prejudice:

4   evidentiary (lost or stale evidence, or faded witness memories) and expectations-based (business

5   decisions made in reliance on presumed rights), either of which suffices.  *Saul Zaentz Co. v. Wozniak*

6   *Travel, Inc.*, 627 F. Supp. 2d 1096, 1117 (N.D. Cal. 2008).  Counterclaimants' 15-year delay (*see* CC

7   ¶¶ 102–03) alone establishes evidentiary prejudice "due to the length of the delay."  *Landrum*, 2011

8   WL 13217114, at *2 (dismissing after 14-year delay); *Parts.com, LLC v. Google Inc.*, 2014 WL

9   12461256, at *4–*6 (S.D. Cal. Jun. 25, 2014) (dismissing after 5.5-year delay).   Further, the

10  counterclaims contain "no hint … of any allegations that could be made to show the reasonableness

11  of the delay or the lack of prejudice."  *Landrum*, 2011 WL 13217114, at *2.

12       **B.      Counterclaimants Fail To State Viable Dilution Claims**

13       To state a dilution claim, Counterclaimants must allege facts sufficient to meet their high

14  burden to show the WordPress marks were famous before WPE first used them in 2010. 15 U.S.C. §

15  1125(c)(1); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 n.4 (9th Cir. 1999).  They do not.

16  Plausibly alleging fame is "difficult and demanding" since only marks that are true "household

17  names," widely recognized by the general U.S. consuming public, can be famous.  *Coach Servs., Inc.*

18  *v. Triumph Learning LLC,* 668 F.3d 1356, 1373 (Fed. Cir. 2012); *Thane Int'l, Inc. v. Trek Bicycle*

19  *Corp.*, 305 F.3d 894, 911–12 (9th Cir. 2002).  When dilution claims fail to allege facts that, if true,

20  show the asserted mark was famous before defendant's first use, they are dismissed at the pleading

21  stage.  *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065–67 (N.D. Cal. 2015); *Original*

22  *Beauty Tech. Co., LTD v. Oh Polly USA, Inc.*, 2022 WL 17224542 at *5 (C.D. Cal. Aug. 16, 2022).

23       Counterclaimants do not satisfy their pleading burden by relying on WPE's ***post-***2010 conduct

24  and statements (CC ¶¶ 66–68) or by alleging WordPress is ***currently*** "one of the largest open-source

25  projects" and a "blogging giant" (*id.* ¶¶ 59–60).  Their conclusory allegations of "substantial

26  investments in advertising" fail, as they provide no specific facts, much less ones predating 2010.  *Id.*

27  ¶ 63.  And their allegation that WordPress allegedly "power[ed] over 14% of websites globally" in

28  "the early 2010s" (*id.* ¶ 59) fails to support fame before WPE's first use in 2010, fails to address the

1  relevant population (the U.S. general consuming public), and falls far short of the recognition required

2  for fame, even if the time frame and population were relevant.  3 McCarthy on Trademarks and Unfair

3  Competition § 24:106 (5th ed.) (at least 75% consumer recognition required for fame).

4        Because Counterclaimants' conclusory allegations of fame (CC ¶¶ 57–58) lack relevant

5  supporting facts, they are insufficient to plausibly plead fame.  The dilution counterclaims must be

6  dismissed.  *E.g., Vice Spirits Inc. v. The Vice Wines, LLC*, 2025 WL 3013971, at *3–*4 (N.D. Cal.

7  Oct. 28, 2025); *Gibralter, LLC v. DMS Flowers, LLC*, 2025 WL 2623293, *7 (E.D. Cal. Sept. 11,

8  2025); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 915–16 (N.D. Cal. 2023).[3]

9      **C.**    **Counterclaimants' False Advertising Claims Do Not State A Claim**

10        To state a false advertising claim, Counterclaimants must plausibly allege with specificity that

11  WPE made a materially false statement in a commercial advertisement about its own or another's

12  product.  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).

13  Rule 9(b) applies. *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F.

14  Supp. 3d 905, 923 (N.D. Cal. 2019); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133,

15  1152 (N.D. Cal. 2019); *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1102–03

16  (N.D. Cal. 2021).  Counterclaimants must therefore allege "the who, what, when, where, and how of

17  the misconduct charged," "what is false or misleading about a statement, and why it is false." *Becerra*

18  *v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019).  They do not come close.

19        Here, the counterclaims allege general theories of falsity without the required specifics.  For

20  example, they allege "false and misleading misrepresentations communicating to consumers that

21  [WPE] supports WordPress" and a "false and misleading promotional campaign [that] includes but is

22  not limited to general statements [WPE] has promoted on its website and blog."  CC ¶¶ 297, 299.  But

23  Rule 9(b) requires "strip[ping] away" such unspecified assertions.  *Regal W. Corp. v. Nguyen*, 412 F.

24  Supp. 3d 1305, 1313–14 (W.D. Wash. 2019); *AlterG, Inc.*, 388 F. Supp. 3d at 1153.  Likewise

25  defective are Counterclaimants' conclusory allegations that WPE "falsely positioned itself as a

26  sponsor or endorsed partner of WordPress" and made "public representations of support for

---

[3]  Because state and federal dilution claims are "subject to the same analysis" as to fame and dilution (except that California claims require fame in California only), *Avery Dennison Corp.*, 189 F.3d at 875, the Fourth and Fifth Counterclaims fall together.

1   WordPress" (CC ¶ 298), which does not allege any example of how, when, or where WPE did so.

2   Counterclaimants also allege WPE made "specific numerical commitments" about contributor hours

3   and teams devoted to WordPress (*id.* ¶¶ 297–98) and "has not fulfilled its stated pledge for some time,

4   if it ever has" (*id.* ¶¶ 237–43, 247), but they fail to identify which statements are false, when they

5   were made, or why they were false when made—all of which Rule 9(b) requires. *TransFresh Corp.*

6   *v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1019–20 (N.D. Cal. 2012). Further, alleging a

7   company is not currently meeting a past statement of intent does not establish the statement was false

8   when originally made. *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008);

9   *Broadcom Corp. v. SiRF Tech., Inc.*, 2009 WL 10672527, at *3 (C.D. Cal. Dec. 16, 2009).

10      Counterclaimants identify only two specific representations they contend are false, but neither

11   saves their false advertising claim. First, their characterization that WPE represented it "'maintain[s]

12   a 'golden ratio' of WordPress contributors to users' such 'that [it] contribute[s] five percent of their

13   resources to WordPress'" (CC ¶ 297) is inaccurate. As the counterclaims later allege, the unaltered

14   statement is: "WP Engine has submitted our Five for the Future pledge, which is showcased on

15   WordPress.org. The pledge, which ***is aimed at maintaining a 'golden ratio'*** of WordPress

16   contributors to users, ***proposes that organizations contribute*** five percent of their resources to

17   WordPress." *Id.* ¶ 233 (emphases added). Read in full, WPE's statement describes the pledge

18   program, not WPE's contributions. Even if it could be construed otherwise, Counterclaimants fail to

19   allege facts showing it is false, compelling dismissal. *E.g., Alfasigma*, 525 F. Supp. 3d at 1102.

20   Second, Counterclaimants allege a blog post stating WPE's contributions have included "tens of

21   millions of dollars in ongoing support for the broader community through events, sponsorships, and

22   the development of educational resources" is false. CC ¶¶ 250–51. But they do not explain "why"

23   or "how" this statement is false. *Becerra*, 945 F.3d at 1228–31. Instead, they vaguely assert this

24   statement is "undermine[d]" by WPE's conduct—without specifying what conduct, when it occurred,

25   or how it renders the statement false. CC ¶¶ 257, 299. This, too, falls far short of Rule 9(b)'s

26   requirements, and compels dismissal of the false advertising claim.

27      **D.      The Nominative Fair Use Doctrine Defeats the Trademark Counterclaims**

28      The trademark infringement and dilution counterclaims fail on their merits because WPE's

alleged uses of the Challenged Terms are nominative fair use. This doctrine permits use of another's mark where necessary to refer to the mark holder's product or service. *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Use is permitted where: (1) the product or service is not readily identifiable without use of the mark; (2) only so much of the mark is used as reasonably necessary; and (3) the user does nothing to suggest sponsorship or endorsement by the trademark holder. *Id.*; 15 U.S.C. § 1125(c)(3)(A). All three elements are satisfied.

**First**, WPE would not be able to reasonably identify its products or services without use of the Challenged Terms. WPE uses "WordPress" to refer to the WordPress software on which its customers' sites are built, and "WooCommerce" and "Woo" to refer to the open-source WooCommerce plugin some of its customers use. CC ¶¶ 102–08, 110–13, 120, 135, 282; TAC ¶ 40. Without using them, WPE would be forced to resort to "absurd descriptive phrases" to identify itself and its services. *See Applied Underwriters v. Lichtenegger*, 913 F.3d 884, 893–95 (9th Cir. 2019); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *4 n.3 (S.D. Cal. Apr. 28, 2011). Counterclaimants propose that as an alternative to "WordPress," WPE use "open-source CMS hosting," or "hosting services compatible with the most popular open-source publishing platform," and that as an alternative to "WooCommerce" and "Woo," WPE use "ecommerce hosting." CC ¶ 209. But these descriptions would fail to communicate to consumers **which** among multiple open source CMSs and ecommerce plugins WPE offers services for. TAC ¶ 30.

**Second**, WPE does not use more of the Challenged Terms than necessary. The relevant inquiry is not the number, but rather the nature of those uses. *Applied Underwriters*, 913 F.3d at 895. Counterclaimants' own allegations acknowledge WPE nominatively used many of the phrases they now challenge, and the nature of WPE's uses has remained unchanged since WPE's inception, when Defendants expressly approved of such uses. *Compare* CC ¶¶ 4, 102, 104–06 (characterizing WPE's use of "WordPress Hosting" as "descriptive" and "primarily" nominative "to refer to and explain its services") *with id.* ¶ 130 (challenging use of "WordPress Hosting"); *compare id.* ¶¶ 106–07 (characterizing use of "Managed WordPress" above product listings and homepage as "primarily to refer to and explain its services"), *with id.* ¶ 119 (challenging use of "Managed WordPress"). Counterclaimants' other alleged examples fail too; comparing the screenshots in the counterclaims

1  shows that the respective webpages of WPE and wordpress.com bear little resemblance.  *See* CC ¶¶

2  124–25.  The fact that WPE's ads sometimes appear above Counterclaimants' own products and

3  services is not enough to show that WPE makes more than necessary use of the Challenged Terms.

4  *See, e.g., Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 719 (9th Cir. 2024).

5       ***Third***, the counterclaims do not allege any WPE statement that "expressly or by fair

6  implication connotes endorsement or joint sponsorship" by Counterclaimants.  *Toyota Motor Sales,*

7  *U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010) .  Nominative use does not require a user

8  to "expressly disavow" association or provide a disclaimer if the user is engaging in "truthful, non-

9  misleading speech."  *Id.*  As to WPE's company name, the use of "WP" cannot misleadingly suggest

10  endorsement or sponsorship; Counterclaimants permit unaffiliated third parties to use this

11  abbreviation, CC ¶ 217, and Mullenweg himself approved WPE's use of it.  RJN, Ex. 12.

12       Counterclaimants' screenshot from a subpage of WPE's website (CC ¶ 218) ***about WordPress***

13  likewise fails to suggest sponsorship or endorsement.  The purpose of the subpage is to explain the

14  benefits of the WordPress content management system (as opposed to other CMS options) that WPE

15  uses to host all its customers' websites.  RJN, Ex. 8 (incorporated by reference at CC ¶ 218).  In this

16  context, the uses of WordPress refer exclusively to the WordPress software itself.  *See Bell v. Pac.*

17  *Ridge Builders, Inc.,* 2019 WL 13472127, at *8 (N.D. Cal. Jun. 4, 2019).

18       Counterclaimants' isolated examples of confusion do not convert WPE's statements or actions

19  into sponsorship, either.  At most, they reflect non-actionable confusion incidental to WPE offering

20  services that actually relate to the WordPress open source software.  *KP Permanent Make-Up, Inc. v.*

21  *Lasting Impression I, Inc.*, 543 U.S. 111, 119 (2004).  Indeed, none of the examples refer to any

22  endorsement or sponsorship language that the allegedly confused user relied upon that was confusing,

23  and they represent no more than a tiny fraction of the customers who use WPE's services in

24  connection with 1.5 million websites.  *See* Answer 49 (admitting WPE has 1.5 million installs).  Such

25  *de minimis* anecdotes fail to plausibly plead a likelihood of confusion.  *Lerner*, 119 F.4th at 720.

26       Counterclaimants' allegations of confusion by agency partners fail too.  Regardless of whether

27  partners believe "WP Engine" stands for "WordPress Engine" (CC ¶¶ 5, 175–179), the counterclaims

28  do not allege partners believe WPE is ***sponsored by***, ***endorsed by or affiliated with*** Counterclaimants.

Counterclaimants' reliance on invisible-to-the-consumer uses like metatags and keywords (CC ¶¶ 131–35) does not cure the absence of statements suggesting endorsement or sponsorship.  *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011).

Because all three elements of nominative fair use are established on the face of the counterclaims, all trademark-based counterclaims, including infringement, dilution, false advertising, and unfair competition, should be dismissed.  *See Applied Underwriters,* 913 F.3d at 895; *CMRE Fin. Servs. Inc. v. Doxo Inc.*, 2022 WL 16701259, at *6 (W.D. Wash. Oct. 7, 2022).

### E.       Counterclaimants' Unfair Competition Counterclaims Do Not State A Claim

Counterclaimants assert unfair competition claims based on their trademark infringement, dilution, and false advertising allegations.  CC ¶¶ 329–48.  In addition to being time-barred, the unfair competition claims fail as entirely derivative of their other deficient claims and asserting no additional wrongful conduct.  *Alvarado v. Amazon.com, Servs. LLC*, 2022 WL 899850, at *2 (N.D. Cal. Mar. 28, 2022); *Bertolina v. Wachovia Mortg., FSB*, 2011 WL 3473527, at *5 (N.D. Cal. Aug. 9, 2011).

### F.       Automattic and Mullenweg Lack Standing to Bring Trademark Counterclaims

Neither Mullenweg nor Automattic alleges ownership of any asserted trademarks: they allege the WordPress Marks are owned by WordPress Foundation and the WooCommerce Marks by WooCommerce.  CC ¶¶ 286–87.  This is fatal to their claims: infringement claims are limited to those brought "by the ***registrant***," 15 U.S.C. § 1114(1), and federal and state dilution claims require the plaintiff to be the "***owner*** of the marks."  *STX, Inc. v. Bauer USA, Inc.*, 1997 WL 337578, at *4 (N.D. Cal. Jun. 5, 1997) (dismissing dilution claim for lack of standing where plaintiff was "exclusive licensee but not the owner of the marks"); Cal. Bus. & Prof. Code § 14247; *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1031 (N.D. Cal. 2018).  Their status as mere licensees, with significant restrictions (CC ¶¶ 36–40, 47–48), does not confer standing. 15 U.S.C. § 1127; *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956, 965 (S.D. Cal. 2021).

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should: (1) deny Defendants' motion to dismiss WPE's antitrust and Section 1030(a)(7) CFAA claims; and (2) dismiss Counterclaimants' counterclaims.

1   DATED: March 10, 2026                    Respectfully submitted,

2                                            QUINN EMANUEL URQUHART & SULLIVAN LLP

3

4                                            By /s/ Rachel Herrick Kassabian
                                                Rachel Herrick Kassabian (SBN 191060)
5                                                  rachelkassabian@quinnemanuel.com
                                                Yury Kapgan (SBN 218366)
6                                                  yurykapgan@quinnemanuel.com
                                                Margret M. Caruso (SBN 243473)
7                                                  margretcaruso@quinnemanuel.com
                                                555 Twin Dolphin Dr., 5th Floor
8                                                Redwood Shores, CA 94065
                                                Telephone: (650) 801-5000
9                                                Facsimile: (650) 801-5100

10                                              Brian Mack (SBN 275086)
                                                   brianmack@quinnemanuel.com
11                                              50 California Street, 22nd Floor
                                                San Francisco, CA 94111
12                                              Telephone: (415) 875-6400
                                                Facsimile: (415) 875-6700

13
                                                Michael E. Williams (SBN 181299)
14                                                 michaelwilliams@quinnemanuel.com
                                                Kevin Y. Teruya (SBN 235916)
15                                                 kevinteruya@quinnemanuel.com
                                                865 South Figueroa Street, 10th Floor
16                                              Los Angeles, CA 90017
                                                Telephone: (213) 443-3000
17                                              Facsimile: (213) 443-3100

18                                              Attorneys for Plaintiff WPEngine, Inc.

19

20

21

22

23

24

25

26

27

28

WPE'S OPPOSITION TO DEFENDANTS' MTD WPE'S TAC AND WPE'S MTD COUNTERCLAIMS