JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center
San Francisco, CA 94111-3715
Telephone: 415.393.8200
Facsimile: 415.801.7358

MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.6652

JOSH A. KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5300
Facsimile: 650.849.5333

ORIN SNYDER *(admitted pro hac vice)*
  osnyder@gibsondunn.com
HOWARD S. HOGAN *(admitted pro hac vice)*
  hhogan@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.2400
Facsimile: 212.351.6335

*Attorneys for Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. and Counterclaimant WordPress Foundation*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>      v.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,<br><br>        Defendants.<br><hr>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>        Counterclaimants,<br><br>      v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>        Counterdefendant. | Case No. 3:24-cv-06917-AMO<br><br>**DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**<br><br><u>Hearing:</u><br>Date:     June 4, 2026<br>Time:    2:00<br>Place:   Courtroom 10<br><br>Hon. Araceli Martínez-Olguín |

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

**TABLE OF CONTENTS**

I.  WP ENGINE'S CLAIMS SHOULD BE DISMISSED............................................................1

    A.  The Court Should Again Dismiss WP Engine's Antitrust Claims (Counts 11–14) ...........................................................................................................................2

        1.  WP Engine's Proposed Aftermarkets Are Implausible.....................................2

        2.  WP Engine Continues to Fail to Allege Market Power ....................................4

        3.  WP Engine Fails to Allege Antitrust Injury.....................................................5

        4.  WP Engine Fails to Allege Any Anticompetitive Conduct ..............................6

        5.  WP Engine Fails to Allege Any Unlawful Tying .............................................9

    B.  The Court Should Again Dismiss WP Engine's Section 1030(a)(7) Claim (Count 3) ..................................................................................................................10

        1.  WP Engine Cannot Establish Extortion or Extortionate Intent.......................10

        2.  WP Engine Cannot Establish Causation ..........................................................11

        3.  WP Engine Cannot Establish Damage to a Protected Computer.....................12

    C.  The *Noerr-Pennington* Doctrine Bars WP Engine's Amended Claims.......................12

    D.  The Court Should Dismiss All Claims Against WooCommerce ...............................13

II. THE WORDPRESS PARTIES' COUNTERCLAIMS ARE WELL PLEADED...........15

    A.  WP Engine's Laches Argument Fails on Multiple Grounds.....................................16

        1.  Laches Cannot Be Found on the Face of the Counterclaims ..........................17

        2.  WP Engine Misstates the Law on the Applicable Limitations Period............18

        3.  WP Engine's Infringement Did Not Start Until After October 2020 .............18

        4.  Even If Accrual Preceded October 2020, Laches Does Not Apply ................19

        5.  The Statute of Limitations Does Not Bar the State-Law Claims....................20

    B.  The WordPress Parties Sufficiently Allege that the WordPress Mark Is Famous......20

    C.  The WordPress Parties Plausibly Allege a Claim Under Section 43(a) of the Lanham Act .................................................................................................................21

    D.  WP Engine's Nominative Fair Use Defense Fails ....................................................22

    E.  The WordPress Parties Plausibly Allege Unfair Competition Claims.......................23

    F.  Automattic and Mullenweg Allege Standing to Bring the Counterclaims .................24

III. CONCLUSION...................................................................................................................25

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

## Cases

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................................................9

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) .....................................................................................16

*Alicea v. GE Money Bank*,
  2009 WL 1766703 (N.D. Cal. June 18, 2009) .......................................................................15

*Am. Petrofina, Inc. v. Petrofina of Cal., Inc.*,
  596 F.2d 896 (9th Cir. 1979) .................................................................................................25

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*,
  108 F.3d 1147 (9th Cir. 1997) ...........................................................................................6, 9

*Applied Underwriters, Inc. v. Lichtenegger*,
  913 F.3d 884 (9th Cir. 2019) .................................................................................................19

*Aspen Skiing. AliveCor, Inc. v. Apple, Inc.*,
  163 F.4th 1259 (9th Cir. 2026) ...............................................................................................8

*Barkley & Assocs., Inc. v. Quizlet, Inc.*,
  2025 WL 2946993 (C.D. Cal. Sep. 11, 2025) ..................................................................22, 23

*Brickman v. Fitbit, Inc.*,
  2016 WL 3844327 (N.D. Cal. July 15, 2016) ........................................................................18

*Brown v. Green*,
  2012 WL 4120379 (N.D. Cal. Sep. 18, 2012) .......................................................................25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) .................................................................................................................5

*Cascades Comput. Innovation LLC v. RPX Corp.*,
  2013 WL 6247594 (N.D. Cal. Dec. 3, 2013) .........................................................................12

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) .................................................................................................24

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012) .............................................................................................20

*Coronavirus Rep. v. Apple Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .........................................................................2

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ...........................................................................................2, 3, 4

*CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*,
  141 F.4th 1075 (9th Cir. 2025) ...............................................................................................6

Gibson, Dunn &
Crutcher LLP

*Couveau v. Am. Airlines, Inc.*,
  218 F.3d 1078 (9th Cir. 2000) ........................................................................................... 17

*CytoSport, Inc. v. Vital Pharms., Inc.*,
  894 F. Supp. 2d 1285 (E.D. Cal. 2012) ............................................................................. 16

*Czaplicki v. The Vessel S.S. Hoegh Silvercloud*,
  351 U.S. 525 (1956) ........................................................................................................... 17

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) ........................................................................................... 20

*Dooley v. Crab Boat Owners Ass'n*,
  2004 WL 902361 (N.D. Cal. Apr. 26, 2004) ....................................................................... 9

*Dropbox, Inc. v. Thru Inc.*,
  728 F. App'x 717 (9th Cir. 2018) ...................................................................................... 18

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
  504 U.S. 451 (1992) ............................................................................................................. 2

*Entri, LLC v. GoDaddy.com, LLC*,
  2024 WL 4468488 (E.D. Va. Oct. 10, 2024) ...................................................................... 9

*Epic Games, Inc. v. Apple Inc.*,
  67 F.4th 946 (9th Cir. 2023) ........................................................................................... 2, 3

*Evans Hotels, LLC v. Unite Here Loc. 30*,
  433 F. Supp. 3d 1130 (S.D. Cal. 2020) .............................................................................. 12

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
  411 F. Supp. 3d 905 (N.D. Cal. 2019) ............................................................................... 22

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ............................................................................................. 21

*Gamble v. Kaiser Found. Health Plan, Inc.*,
  348 F. Supp 3d 1003 (N.D. Cal. 2018) .............................................................................. 13

*GCM Partners, LLC v. Hipaaline Ltd.*,
  2020 WL 6867207 (N.D. Ill. Nov. 23, 2020) ..................................................................... 11

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
  547 F.3d 1213 (9th Cir. 2008) ........................................................................................... 25

*Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*,
  2019 WL 6486039 (C.D. Cal. Aug. 23, 2019) ................................................................... 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ............................................................................................ 12

*Hynix Semiconductor Inc. v. Rambus Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ............................................................................. 13

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO
iii

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
2013 WL 1007666 (N.D. Cal. Mar. 13, 2013)................................................................................24

*Int'l Rectifier Corp. v. IXYS Corp.*,
2002 WL 35649417 (C.D. Cal. Apr. 1, 2002) ...............................................................................20

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002)........................................................................................................16

*Ketab Corp. v. Mesriani & Assocs.*,
2015 WL 8022874 (C.D. Cal. Dec. 4, 2015) ...............................................................................14

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)........................................................................................................17

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ...........................................................................................7

*Kling v. Hallmark Cards Inc.*,
225 F.3d 1030 (9th Cir. 2000).......................................................................................................17

*Kourtis v. Cameron*,
419 F.3d 989 (9th Cir. 2005).........................................................................................................17

*Lambrix v. Tesla*,
737 F. Supp. 3d 822 (N.D. Cal. 2024) ...........................................................................................3

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014)................................................................................................10, 11

*Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*,
2018 WL 6164327 (C.D. Cal. Aug. 20, 2018)..............................................................................21

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*,
2018 WL 5099277 (C.D. Cal. July 10, 2018) ..............................................................................19

*Makreas v. First Nat'l Bank of N. Cal.*,
856 F. Supp. 2d 1097 (N.D. Cal. 2012) ........................................................................................24

*New Kids on the Block v. News America Publishing, Inc.*,
971 F.2d 302 (9th Cir. 1992)....................................................................................................22, 23

*Padres, L.P. v. Rimel's La Jolla, LLC*,
2021 WL 2559701 (S.D. Cal. Apr. 27, 2021) ...............................................................................22

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) ...........................................................................................14

*Perez v. DirecTV Grp. Holdings, LLC*,
2019 WL 6362471 (C.D. Cal. July 23, 2019) ...............................................................................12

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018)........................................................................................................20

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO

*ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,
  314 F.3d 62 (2d Cir. 2002)..................................................................................................19

*QS Wholesale, Inc. v. Rox Volleyball, Inc.*,
  2014 WL 12567147 (C.D. Cal. Dec. 31, 2014) ...................................................................25

*Sanchez v. Green Messengers, Inc.*,
  2021 WL 5012150 (N.D. Cal. Oct. 28, 2021)......................................................................14

*Save the Peaks Coal. v. U.S. Forest Serv.*,
  669 F.3d 1025 (9th Cir. 2012)..............................................................................................18

*SkyHop Technologies, Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023)........................................................................................11, 12

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)...........................................................................................11, 13

*Sowash v. Cnty. of San Mateo*,
  2026 WL 76697 (N.D. Cal. Jan. 9, 2026) ............................................................................13

*Third Est. LLC v. Cornerman Prods. LLC*,
  2013 WL 12144110 (C.D. Cal. Aug. 5, 2013) .....................................................................20

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
  465 F.3d 1102 (9th Cir. 2006)..............................................................................................18

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010)..............................................................................................19

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
  862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...............................................................................22

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ..................................................................................................6

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990)...................................................................................................5

*Upper Deck Co. v. Panini Am., Inc.*,
  469 F. Supp. 3d 963 (S.D. Cal. 2020) ..................................................................................25

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992)...............................................................................................25

*Wit Walchi Innovation Techs., GMBH v. Westrick*,
  2012 WL 33164 (S.D. Fla. Jan. 6, 2012) .............................................................................11

*Yelp, Inc. v. ReviewVio, Inc.*,
  2024 WL 2883668 (N.D. Cal. June 6, 2024) .......................................................................21

*ZF Micro Devices, Inc. v. TAT Cap. Partners, Ltd.*,
  5 Cal. App. 5th 69 (2016)...............................................................................................18, 20

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

v

*Zox LLC v. Zox,*
  2021 WL 4816664 (C.D. Cal. July 12, 2021) ...............................................................................20

**Statutes**

15 U.S.C. § 1114(1) ........................................................................................................................24

15 U.S.C. § 1125(a) ........................................................................................................................25

15 U.S.C. § 1125(a)(1)(B).............................................................................................................22

15 U.S.C. § 1125(c)(1).....................................................................................................................20

18 U.S.C. § 1030(a)(7).............................................................................................10, 11, 12, 14

Cal. Bus. & Prof. Code § 17200 ..................................................................................................14, 24

Cal. Fin. Code § 90005(a), (c)..........................................................................................................9

Gibson, Dunn &
Crutcher LLP

## I.    WP ENGINE'S CLAIMS SHOULD BE DISMISSED

WP Engine's Opposition confirms the fatal defects that led this Court to dismiss its antitrust and CFAA extortion claims. Nothing in the Third Amended Complaint ("TAC") alters the basic reality: WP Engine still fails to plausibly allege any cognizable market, market power, antitrust injury, anti-competitive conduct, or "extortionate" acts. That failure requires dismissal, with prejudice.

The notion that WP Engine could plausibly plead antitrust violations defies economic reality: WP Engine itself has a larger market share than Defendants in a highly fragmented, fast-moving, open-source ecosystem. Antitrust law does not exist to shield a competitor from commercial friction—especially where the plaintiff itself is a dominant participant. To support its antitrust claim, WP Engine relies on rhetoric rather than factual allegations. It does not, and cannot, allege a viable aftermarket, let alone Defendants' power within one. Nor does it plead harm to competition as opposed to its own alleged business grievances. Instead, WP Engine repackages arguments this Court already rejected, offering allegations that remain convoluted, speculative, and implausible.

WP Engine's CFAA extortion claim fares no better. As a matter of law, Defendants' efforts to secure trademark licensing fees constitute "hard bargaining," not extortion. This Court already so held, concluding that Defendants' "demands for a licensing fee" do not amount to "extortionate conduct." Dkt. 169 at 13–14. WP Engine cannot plead around that ruling—particularly because Defendants' trademark claims have merit, as discussed in Section II, *infra*. Nor can WP Engine establish the requisite nexus between Defendants' alleged statements and any payment demand, particularly where WP Engine admits it had rejected those demands before the purported threats were made. And WP Engine's allegation that it was blocked from accessing *Defendants'* website does not plausibly allege harm to a "protected computer" under the CFAA.

WP Engine's antitrust and CFAA extortion claims are independently barred by the First Amendment. They rest on Defendants' pre-suit communications and settlement demands—conduct squarely protected by the *Noerr-Pennington* doctrine. WP Engine offers no meaningful response, and certainly no basis to strip Defendants of immunity for engaging in protected petitioning activity.

Finally, WP Engine's claims against WooCommerce must be dismissed because WP Engine

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

1

never identifies any independently wrongful conduct by WooCommerce—a company that does not compete with WP Engine, and that, even assuming the truth of WP Engine's allegations, played no role in causing any of the alleged harms. WP Engine's bare allegation that WooCommerce "acted in concert" with Defendants Automattic Inc. and Mullenweg, standing alone, cannot establish liability.

In short, WP Engine's Opposition underscores what the pleadings already make clear: these claims were deficient when first filed, remain deficient now, and cannot be salvaged through further amendment. After WP Engine's fourth chance at pleading, dismissal with prejudice is warranted.

**A.      The Court Should Again Dismiss WP Engine's Antitrust Claims (Counts 11–14)**

**1.      WP Engine's Proposed Aftermarkets Are Implausible**

WP Engine again alleges a "foremarket" for *web content management systems* ("WCMS") in which WordPress open-source software is one of many options, and three aftermarkets limited to WordPress: (1) WordPress hosting services; (2) WordPress custom field plugins; and (3) WordPress plugin distribution. TAC ¶ 261. But WP Engine still fails to plausibly allege multiple elements necessary to plead a cognizable single-brand aftermarket. *See Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 977 (9th Cir. 2023).

**Epic *Applies to the Pleadings.*** At the outset, WP Engine fights this Court's prior holding that the *Epic* factors apply and contends they are irrelevant where the defendant has power in the foremarket. Dkt. 252 at 2–3; *see* Dkt. 169 at 3–4. But the Ninth Circuit takes the opposite approach. *Epic* involved a defendant with market power in the foremarket, and the court still rejected plaintiff's single-brand aftermarket for failure to prove consumer lock-in. *See* 67 F.4th at 977–81. Similarly, in *Coronavirus Reporter v. Apple, Inc.*, the court affirmed dismissal for failure to establish the *Epic* factors, despite allegations of substantial market share in the foremarket. *See* 85 F.4th 948, 957 (9th Cir. 2023); *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *8 (N.D. Cal. Nov. 30, 2021). WP Engine misreads *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992); Dkt. 252 at 2. There, the Court examined whether a lack of market power in the foremarket categorically precludes a finding of market power in the aftermarket. It did not hold that foremarket power automatically results in cognizable aftermarkets—an exception that would swallow the rule. Nor does WP Engine's claim that

there is "direct evidence" that Defendants "already influenced the market" avoid *Epic* and the need to define a market. Dkt. 252 at 2 (citation modified). Market definition is still "essential to any antitrust case" because it provides a basis for "measur[ing] [the defendant's] ability to lessen or destroy competition." *Coronavirus Rep.*, 85 F.4th at 955. In short, the *Epic* factors govern here. WP Engine does not meet them, and in turn cannot define a cognizable aftermarket, for several reasons:

***Known Aftermarket Restrictions.*** WP Engine fails to allege the "crucial" factor—that the "aftermarket restrictions are 'not generally known' when consumers make their foremarket purchase." *Epic*, 67 F.4th at 977, 979. WP Engine does not contest that consumers know opting for WordPress software commits them to WordPress-based hosting, plugins, and plugin distribution. Dkt. 252 at 3–4. And there is no allegation that the challenged restrictions require customers to use Defendants' services exclusively. Instead, WP Engine insists that the relevant restrictions (of which consumers are unaware) are Defendants "reserv[ing]" for themselves "the abilities to" (1) "charge exorbitant fees for access to wordpress.org," (2) "block market participants' access to wordpress.org," and (3) "assert ownership and control over WordPress software and trademarks." *Id.* at 3. But as this Court explained, these are not cognizable *aftermarket restrictions*; they are not mechanisms by which WordPress users are "locked in" to WordPress aftermarkets. *See* Dkt. 169 at 4–6; *Epic*, 67 F.4th at 977, 980; *see* Dkt. 243 at 5–6 (collecting cases). The question is whether consumers know that their aftermarket options are restricted, such as in *Epic*, by being required to get apps only from the App Store, or in *Tesla*, being required to use Tesla repair and service shops. *Epic*, 67 F.4th at 977, 980; *Lambrix v. Tesla*, 737 F. Supp. 3d 822, 835 (N.D. Cal. 2024). WP Engine does not challenge any such restriction here.

***No Information Costs***. WP Engine fails to establish that "'significant' information costs prevent accurate life-cycle pricing." *Epic*, 67 F.4th at 977. WP Engine mischaracterizes Defendants' trademark enforcement and restriction of WP Engine's access to WordPress.org as hidden costs, but the TAC and the documents it incorporates confirm that consumers had notice that WordPress.org could ban them for trademark misuse. TAC ¶ 70; Dkt. 243-1 Ex. 1 at 4–6, 9, 16–18, 24–27. WP Engine cannot plausibly allege that such trademark-related limits were unknown to the WordPress community. *See* TAC ¶¶ 208, 212. Tacitly conceding this flaw, WP Engine argues only that notice is a factual issue

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

3

unfit for the pleadings stage. Dkt. 252 at 4. But where a complaint fails to plausibly allege the *Epic* factors, the Ninth Circuit has held that dismissal is appropriate. *Coronavirus Rep.*, 85 F.4th at 956.

### 2.    WP Engine Continues to Fail to Allege Market Power

***WCMS Foremarket.*** WP Engine again fails to plead Defendants' market power in the WCMS foremarket through either indirect or direct evidence. Dkt. 169 at 8. For indirect evidence, WP Engine alleges that "WordPress" comprises 60% of content management systems, absurdly ascribing that entire "market share" to Defendants because Mullenweg "control[s]" WordPress and the wordpress.org website. TAC ¶¶ 281–83 & n.116; Dkt. 252 at 4. But WP Engine's "control" theory is implausible on its face. Although Mullenweg co-created the original version, WP Engine admits the software can be used, modified, and distributed by anyone, without payment or permission from Defendants. *See* TAC ¶ 49. Defendants have no legally enforceable rights over WordPress software, and Defendants have no ability to stop entities, including WP Engine, from continuing to use it. WP Engine's only other response is to conflate access to the WordPress software—which anyone can use, modify, and distribute without cost—and access to WordPress.org, which the Court has already found Mullenweg had no duty under the antitrust laws to continue to share. Dkt 169 at 8; Dkt. 252 at 4–5 (citing TAC ¶ 410).

For direct evidence, WP Engine fails to allege that the price of WordPress *software* (separate from hosting, plugins, or plugin distribution) has increased beyond zero, insisting that Defendants "effective[ly]" increased prices by demanding trademark licenses and disrupting the "operation and functionality of millions of websites" (*i.e.*, WP Engine's own customer accounts). TAC ¶¶ 277–278; Dkt. 252 at 5–6. But the Court already rejected this contention, concluding that such demands "*say*[] *nothing about the price for the product in the relevant foremarket*." Dkt. 169 at 8 (emphasis added). It is undisputed that anyone can build a website using WordPress software without using Defendants' trademarks or paying Defendants a dime. *See* TAC ¶ 49.

As to WP Engine's allegations of "decreased quality" and "cost increases," TAC ¶¶ 278–279, the Court concluded previously that these "allegations . . . are conclusory." Dkt. 169 at 8. WP Engine's new allegations, at best, relate to customers' perceptions about whether WordPress is "stab[le]" (TAC ¶ 279); they do not establish that Defendants' conduct decreased the quality of WordPress software or

increased costs (it didn't). Nor does WP Engine explain how these effects, even if properly pleaded, affected competition in the WCMS market overall, as opposed to WP Engine specifically. And even assuming that there was an overall decrease in the quality of WordPress software (there wasn't), Defendants would have market power only if they did not correspondingly lose customers, something else WP Engine fails to allege. *See United States v. Syufy Enters.*, 903 F.2d 659, 666 (9th Cir. 1990) (no market power, despite 75% market share, where defendant was steadily losing share).

*WordPress-Only Aftermarkets.* WP Engine fails to establish market power in any of the purported aftermarkets. For the alleged hosting and plugin "aftermarkets," WP Engine concedes that it relies entirely on direct evidence. Dkt. 252 at 6. But its direct evidence of increased prices is, again, only the alleged trademark royalty demands, and this Court's reasoning for why these demands are not a price increase in the WCMS market applies equally here. Dkt. 169 at 8. WP Engine also alleges its customers faced service disruptions, TAC ¶ 248, but does not explain how Defendants' actions degraded the overall offerings of WordPress hosting, plugins, or plugin distribution beyond vague allusions to stability. TAC ¶ 279. For the purported plugin distribution aftermarket, WP Engine alleges that Defendants have "nearly 100%" market share because Mullenweg owns WordPress.org. Dkt. 252 at 6. But WP Engine also acknowledges that consumers can access plugins through "mirror" websites (which WP Engine itself set up after its access to WordPress.org was interrupted). TAC ¶ 237. WP Engine's assertion that mirrors "'call back' to wordpress.org" is a non sequitur because the complaint defines the "plugin" market to include all channels for customers to download plugins, regardless of the initial source for the plugin. *Id.* ¶¶ 311, 316.

### 3.    WP Engine Fails to Allege Antitrust Injury

WP Engine fails to allege that it suffered antitrust injury—that is, injury flowing from alleged harm to *competition*, rather than to *WP Engine* alone. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). As explained in Defendants' Motion, the only harms that WP Engine identifies are temporary disruption to its own business and movement of websites away from WP Engine to other providers (not limited to Automattic). Dkt. 243 at 6–7. WP Engine now cites a handful of conclusory allegations about Defendants requiring competitor hosting sites to license their use of

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

5

Defendants' trademarks and offering competing versions of developers' plugins. *Id.* At most, these allegations amount to vigorous competition, and WP Engine never connects the dots of Defendants' alleged actions and any harm to downstream consumers. Finally, WP Engine suggests that Defendants' actions towards WP Engine led to increased costs and lower quality for "millions of customers and partners." *Id.* But the Court has already rejected these theories as conclusory or beside the point. *See* Dkt. 169 at 8.

### 4. WP Engine Fails to Allege Any Anticompetitive Conduct

WP Engine also fails to plausibly allege "anticompetitive conduct." Dkt. 243 at 7–8. None of the three broad categories alleged—(1) deception of the market and extortion and disparagement of WP Engine; (2) interference with WP Engine's customers and operations; and (3) solicitation of WP Engine's personnel, *Id.* at 8–10—rise to the level of anticompetitive conduct.

*Alleged Anticompetitive Statements.* WP Engine complains about various public statements, alleging that Defendants "deceived the market" by saying WordPress is open source and then demanding a trademark royalty from WP Engine; "extorted" WP Engine by threatening to "go 'nuclear'" absent royalty payments; and made "disparaging statements" about WP Engine. TAC ¶ 519. The Ninth Circuit presumes that such public statements cannot be antitrust violations unless WP Engine can demonstrate that the statements were "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization or other offset by rivals." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) ("*Harcourt*"). WP Engine contends that *Harcourt* applies only to disparagement, not deception of the market, Dkt. 252 at 8, but neither of the principal cases WP Engine cites supports such a distinction. *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075, 1093 (9th Cir. 2025) (citing *United States v. Microsoft Corp.*, 253 F.3d 34, 76–77 (D.C. Cir. 2001)). *CoStar* and *Microsoft* involved hidden technical features that blocked customers' use of competitors' products, but Defendants here never hid the fact that people could be banned from WordPress.org or that WP Engine was banned. On the other hand, courts have applied *Harcourt* to antitrust claims asserting "that the

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO

defendant had disparaged its' rivals' products" and "made false statements about its own product," which covers all the statements at issue here. *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 785 (N.D. Cal. 2022) (collecting cases).

On the first three elements, the Court previously ruled that Defendants' statements regarding WordPress "forever be[ing] an open platform" and there being "free access for the world" were too "vague" and "general" to be actionable under promissory estoppel. Dkt. 169 at 24–25. WP Engine contends that the standard for the first three *Harcourt* elements is not rigorous. Dkt. 252 at 9. But the same vagueness that prevented WP Engine from establishing any "clear and unambiguous" promise also makes "objective verification" under *Harcourt* impossible. WP Engine also argues that whether WordPress was "'free,' and 'open' to 'everyone,' forever" is objectively verifiable. *Id.*; TAC ¶ 519. But although the General Public License certainly guarantees such access in perpetuity, TAC ¶ 410, it is impossible to verify objectively that, for example, the guarantee will be "forever" honored. Finally, WP Engine tries to write off as "attorney say-so," Dkt. 252 at 9, the fundamental point that the right to use software as part of the open-source program as a matter of **copyright law** is distinct from the right to use the name "WordPress" to communicate who is offering that software as a matter of **trademark law**. This is not a "fact dispute," but a legal distinction that disposes of WP Engine's theory: it confirms that saying WordPress software is "free" and "open" is entirely consistent with maintaining that Word-Press trademarks are not.

Similarly, Defendants' allegedly disparaging remarks are too vague to be objectively verifiable. *See, e.g.*, TAC ¶ 102 (alleging that "customers [who] switch to a different host . . . '*might* get faster performance'" (emphasis added)). WP Engine suggests that the survival of its libel claims based on similar statements requires the Court to find they satisfy *Harcourt* as well, Dkt. 252 at 9. But the standards are distinct: while the Court reserved the question whether the alleged libelous remarks were fact or opinion until after discovery, the question here is whether these statements are "clearly false," which the Court did not previously address. *See* Dkt. 169 at 22.

WP Engine also fails to satisfy the remaining *Harcourt* elements. As to the **fourth element**, WP Engine again asserts that consumers cannot assess whether its offerings are "sub-par," TAC ¶ 519; Dkt.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

7

252 at 9. But this assumes the audience for Defendants' alleged remarks are inexperienced consumers, when many of the allegedly disparaging statements were made in fora like WordCamp with a sophisticated, knowledgeable audience. TAC ¶¶ 102–13. For the *fifth element*, WP Engine admits that the statements at issue, *Id.* ¶ 519, were made shortly before the lawsuit in September 2024. Dkt. 252 at 9. WP Engine also notes that Defendants' statements concerning free and open access date back to 2010, but as explained above, these (true) statements fail various other *Harcourt* elements. For the *sixth element*, WP Engine throws up its hands at the prospect of correcting the alleged misstatements, citing Mullenweg's clout in the WordPress community and the technical nature of the material. *Id.* at 10. But WP Engine ignores the sophistication of the audience for the alleged misstatements, TAC ¶¶ 102–13, and does not deny that, as a market leader, backed by one of the largest private equity funds, it has more than enough resources to rebut the alleged misrepresentation with its own speech.

***Alleged Interference with WP Engine Customers and Operations*.** WP Engine alleges that Defendants "interfered" with its "customers" and "operations" by blocking WP Engine from accessing WordPress.org. TAC ¶ 519. This conduct is a refusal to deal. Dkt. 243 at 9; Dkt. 169 at 8 (finding parties have no duty to share intellectual or physical property with competitors). The Ninth Circuit recently reaffirmed that there is "no duty to deal with competitors," absent the narrow exception established in *Aspen Skiing*. *AliveCor, Inc. v. Apple, Inc.*, 163 F.4th 1259, 1268 (9th Cir. 2026). WP Engine does not attempt to satisfy *Aspen Skiing* (it can't), instead arguing that the duty-to-deal doctrine does not apply where the refusal is pretextual or designed to "induc[e] customers not to deal with the plaintiff." Dkt. 252 at 10. Neither objection is correct. The TAC does not allege that blocking WP Engine's access to WordPress.org was pretextual (the word "pretext" does not appear in the TAC), and the fact that WP Engine's employees and customers lost access to WordPress.org does not make the duty-to-deal framework inappropriate. Nor could it; otherwise, the exception when employees and customers are affected would swallow the no-duty-to-deal rule.

***Solicitation.*** Finally, WP Engine's Opposition confirms the weakness of its "solicitation" theory. WP Engine does not dispute, Dkt. 252 at 10, that hiring a competitor's personnel does not violate antitrust laws unless the "talent is acquired not for purposes of using that talent but for purposes of

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

denying it to a competitor," *Harcourt*, 108 F.3d at 1153, and points to no allegation that Defendants did not use WP Engine's former personnel upon hiring them. WP Engine also suggests that the Court "must" infer predatory intent because Defendants hired most of the at-issue employees after the so-called "nuclear war" with WP Engine. Dkt. 252 at 10. Yet WP Engine cites no authority supporting such an inference. It doesn't exist. WP Engine also passingly contends it can sustain the claim by alleging Defendants "harass[ed] WPE's CEO," *Id.*, but it merely alleges a series of communications regarding Defendants' concerns with WP Engine and a potential job offer to WP Engine's CEO (TAC ¶¶ 93–97, 145–148, 519, 533)—a far cry from the yelled obscenities and vandalism in *Dooley v. Crab Boat Owners Ass'n*, 2004 WL 902361, at *1–2, *6, *11 (N.D. Cal. Apr. 26, 2004).

### 5.        WP Engine Fails to Allege Any Unlawful Tying

WP Engine contends that Defendants engaged in negative tying by conditioning access to WordPress plugin distribution on customers *not* using web hosting or plugins from WP Engine. TAC ¶¶ 542–566. This theory fails for several reasons. ***First***, WP Engine does not deny that its tying claims cannot survive if it fails to allege a "tying" market and establish market power. Dkt. 252 at 10. As explained, WP Engine fails on both fronts. *See supra* § I.A.2. ***Second***, WP Engine alleges no agreement between Defendants and any WordPress users—a required element of tying claims. *See* Phillip E. Areeda & Herbert Hovenkamp ¶ 1752 (2025). The alleged "checkbox" only required users to attest "I am not affiliated with WP Engine in any way, financially or otherwise." *See* TAC ¶¶ 546, 558. WP Engine's customers are not WP Engine's "affiliates," *see* Cal. Fin. Code § 90005(a), (c), and no allegations in the TAC substantiate this implausible interpretation. WP Engine contends that no *express* "agreement" is necessary if an agreement is "implicit." Dkt. 252 at 11. But the problem is that no conditioning (explicit or implicit) ever arose, not that the negative tying agreement was unwritten. *Cf. Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) ("a seller [must] explicitly or implicitly impose[] conditions linking the sale of a tying product with the sale of the tied product"); *Entri, LLC v. GoDaddy.com, LLC*, 2024 WL 4468488, at *8 & n.5 (E.D. Va. Oct. 10, 2024) (same). WP Engine alleges no agreement by any consumers in the WordPress plugin distribution market not to use WP Engine for hosting or plugins.

**B.      The Court Should Again Dismiss WP Engine's Section 1030(a)(7) Claim (Count 3)**

**1.      WP Engine Cannot Establish Extortion or Extortionate Intent**

Section 1030(a)(7) requires "intent to extort . . . money or [an]other thing of value." 18 U.S.C. § 1030(a)(7). Liability under subsection (a)(7)(C) also requires that Defendants damage "a protected computer" "to facilitate the extortion." *Id.* § 1030(a)(7)(C). WP Engine claims that Defendants' blocking WP Engine from WordPress.org and forking the ACF plugin were part of an extortionate scheme to obtain trademark license payments from WP Engine. Dkt. 252 at 11–12. But the Court already held that blocking WP Engine from WordPress.org was *not* extortion, but rather a lawful act taken for the purpose of enforcing trademarks. Dkt. 169 at 13–14. WP Engine yet again fails to "demonstrate either that [it] had a pre-existing right to be free from the threatened harm, or that the defendant had no right to seek payment for the service offered." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1133 (9th Cir. 2014).

WP Engine asserts a "preexisting right to 'the continued normal operation of its own computers running the open source WordPress software' and 'continued access to wordpress.org'" *without payment*. Dkt. 252 at 11. But as the Court held before, WP Engine "cannot plausibly allege that it had a preexisting right to access and use Wordpress.org . . . in perpetuity for free." Dkt. 169 at 13. WP Engine's new argument that restricting its access to WordPress.org deprived it of "rights" under the General Public License is nonsense: WP Engine never alleges that it was precluded from running, distributing, or redistributing the WordPress open-source software. Similarly, WP Engine acknowledges that the WordPress "plugin developer guidelines" state that plugins may "be[] removed" and developers "banned from hosting plugins on WordPress.org," TAC ¶¶ 69, 327, which undermines its assertion of a "preexisting right" to "free hosting" of its plugins on WordPress.org. *See* Dkt. 252 at 11. And WP Engine's suggestion that its preexisting rights must be evaluated on "a full record" that includes "evidence of industry custom," *Id.* 11–12, is a red herring: No such evidence is necessary, because the purported rights are facially implausible and contradicted by WP Engine's own allegations. WP Engine thus "had no 'right' to access" WordPress.org or take advantage of the functionality it derived from such access, and "[n]o law prohibited" Defendants "from conditioning access" on trademark royalties, precluding its "extortion" theory as a matter of law. *Levitt*, 765 F.3d at 1131. WP Engine acknowledges

that Defendants' sole economic aim was to obtain payments for WP Engine's use of trademarks. *See* Dkt. 252 at 12. That "lawful claim to the property demanded" confirms that Defendants' demands were not extortionate. *Levitt*, 765 F.3d at 1131.

WP Engine also cannot establish that Defendants "had no right to seek payment" for WP Engine's acknowledged use of their trademarks. *Levitt*, 765 F.3d at 1133. WP Engine repeats arguments the Court already rejected when it held that Defendants sought "payment for services" with "some 'objective value.'" Dkt. 169 at 13–14 (quoting *Levitt*, 765 F.3d at 1131). It is irrelevant whether WP Engine's allegations about other companies' use of the terms or Defendants' alleged "aware[ness]" and "approv[al]" of WP Engine's use, Dkt. 252 at 12–13, may ultimately be valid defenses to Defendants' infringement claims (they are not): Even the "assertion of weak claims predicated on unsupportable factual allegations" is not extortion. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 939–40 (9th Cir. 2006). WP Engine relies on *SkyHop Technologies, Inc. v. Narra*, 58 F.4th 1211 (11th Cir. 2023), but there the defendant demanded payment to release the *plaintiff's* own "intellectual property." *Id.* at 1225. WP Engine's claim, by contrast, hinges on the theory that Defendants could not seek payment for *their own property*. WP Engine has no plausible path to proving extortion or extortionate intent by Defendants.

### 2. WP Engine Cannot Establish Causation

WP Engine's CFAA Section 1030(a)(7) claim also fails because WP Engine does not plausibly allege that any threats to damage "protected computer[s]" were made to facilitate attempted extortion. *See* Dkt. 243 at 12–13. WP Engine alleges threats by Defendants "*[a]fter* [WP Engine] refused to accede to Defendants'" trademark license demands. TAC ¶ 407 (emphasis added). That's not extortion—and WP Engine cannot point to *any* Section 1030(a)(7) case in which alleged extortionate threats began only *after* payment demands were rebuffed. Instead, WP Engine cites inapposite cases in which defendants were actively demanding payment when they made the alleged threats. *See GCM Partners, LLC v. Hipaaline Ltd.*, 2020 WL 6867207, at *12 (N.D. Ill. Nov. 23, 2020) (threat to revoke access to online platform and "demands to . . . renegotiate the parties' arrangement" were in same email); *Wit Walchi Innovation Techs., GMBH v. Westrick*, 2012 WL 33164, at *1 (S.D. Fla. Jan. 6, 2012) (defendant demanded money while locking plaintiff out of its computer system).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

11

### 3.    WP Engine Cannot Establish Damage to a Protected Computer

WP Engine's Section 1030(a)(7) claim independently fails because WP Engine alleges only that Defendants threatened to deprive it of access to Defendants' own website—not that Defendants threatened or damaged any "protected computer." *See* 18 U.S.C. § 1030(a)(7)(A), (C). The CFAA was "enacted to prevent intentional intrusion onto someone else's computer," *i.e.*, "computer hacking," *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022), not a defendant's operation of its *own website* in a manner that inconveniences that website's users. WP Engine cites no authority to support its assertion that a defendant "[b]locking access" to its own website can constitute damage to a protected computer: In its only cited case on this factor, *SkyHop Technologies*, the defendant withheld the *plaintiff's* "digital property" and "[s]oftware." 58 F.4th at 1220, 1226.

### C.    The *Noerr-Pennington* Doctrine Bars WP Engine's Amended Claims

WP Engine's antitrust and CFAA extortion claims also fail because they are barred by the *Noerr-Pennington* doctrine, which protects Defendants' First Amendment right to make prelitigation settlement demands. WP Engine asserts that Defendants made no "formal pre-litigation demands" asserting trademark infringement, Dkt. 252 at 14, but that is false. As WP Engine itself alleges, before litigation began, Defendants sent "a cease and desist letter," "alleging that [WP Engine's] use of" Defendants' marks "constitutes trademark infringement" and threatening "civil litigation." TAC ¶¶ 22, 105 n.61. That is precisely the type of pre-litigation demand recognized in *Sosa* and protected by *Noerr-Pennington*. Defendants' alleged threats and demands that did not expressly reference litigation are also protected because they were part of Defendants' trademark-enforcement efforts and therefore "incidental to petitioning activity." *Evans Hotels, LLC v. Unite Here Loc. 30*, 433 F. Supp. 3d 1130, 1146 (S.D. Cal. 2020). WP Engine cites inapposite cases in which defendants' threats to "ruin [plaintiff's] credit" were unrelated to their "threat[s] to litigate," *Contra Perez v. DirecTV Grp. Holdings, LLC*, 2019 WL 6362471, at *2, *7 (C.D. Cal. July 23, 2019), or in which it was unclear from the facts alleged whether the "timing of any perceived threats" and "licensing overtures" could make them "tantamount to a presuit settlement demand," *Cascades Comput. Innovation LLC v. RPX Corp.*, 2013 WL 6247594, at *17 (N.D. Cal. Dec. 3, 2013). Here, by contrast, the TAC's allegations make clear that Defendants'

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

12

so-called "threats" were efforts to negotiate a trademark license to settle the dispute over WP Engine's infringement, and the failure of those negotiations led directly to this litigation, in which both sides have asserted trademark-related claims. Defendants' demands are therefore "conduct incidental to the prosecution of the suit" and "protected by the *Noerr-Pennington* doctrine." *Sosa*, 437 F.3d at 934.

WP Engine also fails to show that the "sham [litigation] exception" applies, because it does not plausibly allege Defendants' license demands lacked both "objective merit and subjective good faith." *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp 3d 1003, 1027 (N.D. Cal. 2018). As the Court held, WP Engine "cannot plausibly allege" it was entitled to "use Wordpress.org or related trademarks in perpetuity for free" or that those trademarks lack "objective value." Dkt. 169 at 13–14. WP Engine concedes it used Defendants' trademarks, *see* Dkt. 252 at 15, and the parties are litigating Defendants' well-pleaded counterclaims for trademark infringement and dilution, *see infra* § II, underscoring that Defendants' enforcement efforts were *not* objectively meritless. Nor does WP Engine plausibly allege Defendants lacked "subjective good faith." *Gamble*, 348 F. Supp. 3d at 1027. WP Engine also fails to plausibly allege "other aspects" of an "anticompetitive scheme" that "independently produce anticompetitive harms," as it must to show that Defendants' license demands were actionable notwithstanding their protected status. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007). WP Engine has *not* alleged that some separate actionable harm arose from Defendants "deceiving market participants into picking WordPress." Dkt. 252 at 15. Nor has it alleged any plausible link between Defendants' license demands of WP Engine and its purported deception of the market.

**D.    The Court Should Dismiss All Claims Against WooCommerce**

WP Engine asserts that WooCommerce is liable because it "acted in concert" with Automattic and Mullenweg. Dkt. 252 at 15. But "a plaintiff fails to plead sufficient factual content to state a claim against a defendant where a complaint describes the conduct of two or more defendants collectively and includes no factual allegations identifying the conduct in which each defendant engaged." *Sowash v. Cnty. of San Mateo*, 2026 WL 76697, at *2 n.6 (N.D. Cal. Jan. 9, 2026). The TAC fails to identify any independent wrongful conduct by WooCommerce—a company that offers e-commerce plugins that do not compete with WP Engine.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

13

***Tortious Interference (Counts 1 and 2).*** WP Engine's sole factual allegation against WooCommerce is a screenshot showing that a WooCommerce employee emailed a WP Engine customer on October 16, 2024. TAC ¶ 127. This is insufficient. WP Engine must allege that WooCommerce itself intentionally interfered with WP Engine's contracts—not that an employee sent one lawful email. The TAC does not allege WooCommerce directed, authorized, or ratified the conduct. Moreover, informing a customer about publicly known facts (WP Engine's restricted access) and offering alternative services is lawful competition, not tortious interference. WP Engine's broader allegation that WooCommerce "participated" in Defendants' "campaign" is precisely the impermissible group pleading courts reject. *See Sanchez v. Green Messengers, Inc.*, 2021 WL 5012150, at *2 (N.D. Cal. Oct. 28, 2021).

***CFAA (Count 3).*** WP Engine asserts WooCommerce is a "beneficiary" who "participated by sanctioning Defendants' threats" because WooCommerce trademarks were among those for which license payments were demanded. Dkt. 252 at 16; TAC ¶¶ 400–425. This is conclusory. The CFAA requires a defendant to act "with intent to extort" and either threaten or damage a protected computer. 18 U.S.C. § 1030(a)(7). WP Engine alleges no threat or action by WooCommerce. The only reference to WooCommerce communicating with WP Engine is via a demand letter sent by counsel—after the alleged extortion failed, and protected under the *Noerr-Pennington* doctrine. TAC ¶ 22. Being a passive beneficiary does not create CFAA liability.

***Unfair Competition (Count 4).*** WP Engine argues its UCL claim survives because the Court found WP Engine stated a UCL claim against Automattic and Mullenweg and because WooCommerce "injected itself into this litigation." Dkt. 252 at 16–17; Dkt. 232 at 1. This argument fails. UCL claims require the defendant to have engaged in unfair, unlawful, or fraudulent business practices. Cal. Bus. & Prof. Code § 17200. Filing counterclaims is the exercise of legal rights, not an unfair business practice. And because WP Engine's other claims against WooCommerce fail, there are no predicate acts to support the UCL claim. *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012).

***Declaratory Judgment (Counts 6 and 7).*** WP Engine's declaratory judgment of non-infringement is duplicative of WooCommerce's infringement counterclaim and should be dismissed as "repetitious of issues already before the court." *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 8022874, at

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

14

*9 (C.D. Cal. Dec. 4, 2015). WP Engine's declaratory judgment of non-dilution fails because Woo-Commerce has not asserted a dilution counterclaim, rendering the claim "hypothetical" and not justi-ciable. *Alicea v. GE Money Bank*, 2009 WL 1766703, at *3 (N.D. Cal. June 18, 2009). WP Engine's assertion that WooCommerce created a reasonable apprehension of a dilution claim when it sent a cease-and-desist letter in September 2024 is facially implausible given WP Engine's decision to wait over a year before naming WooCommerce as a defendant. TAC ¶ 451.

## II.    THE WORDPRESS PARTIES' COUNTERCLAIMS ARE WELL PLEADED

Counterclaimants Automattic, Inc., Matt Mullenweg, WordPress Foundation, and WooCommerce Inc. (collectively, the "WordPress Parties") allege in extensive detail how WP Engine abandoned its early, nominative use of the WordPress Marks and launched an aggressive campaign to appropriate the reputation, goodwill, and community trust that the WordPress ecosystem built over two decades. After starting as a small hosting provider using the marks to identify the WordPress services it supported, WP Engine pivoted sharply—misappropriating the WordPress Parties' intellectual property and using the marks for its own commercial benefit.

As the counterclaims describe, WP Engine rebranded itself as "The WordPress Technology Company," rolled out products labeled "Headless WordPress," "Core WordPress," and "Enterprise WordPress," exponentially increased its use of the "WordPress" and "WooCommerce" marks across its website, marketing materials, and hidden metadata, and even permitted partners to refer to it as "WordPress Engine." At the same time, WP Engine publicly promoted itself as a company that "gives back" to the broader WordPress project—while failing to honor the commitments it touts to consumers.

WP Engine's motion to dismiss does not demonstrate that these allegations are insufficient. Instead, it simply ignores them. WP Engine asks this Court to draw inferences in its favor, rely on facts outside the pleadings, and cut off the fact-finding process before it begins. That is not what Rule 12 allows. The counterclaims span roughly 100 pages of detailed allegations; WP Engine asks the Court to disregard them wholesale and resolve, on *no record*, questions that are quintessentially factual.

WP Engine's patchwork of defenses would require the Court to decide when WP Engine's conduct crossed the line from nominative use into infringement, when the WordPress Parties first

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO
15

learned of that escalation, the scope and extent of WP Engine's misuse of the marks, WP Engine's intent, and whether decades of widespread public recognition established the fame of the WordPress name. These are classic jury questions, not matters for a Rule 12(b)(6) motion—especially in trademark cases where courts repeatedly hold that such issues are ill-suited for resolution on the pleadings.

WP Engine's effort to superimpose its own factual narrative onto a motion to dismiss is improper and contrary to controlling law. The Court should reject WP Engine's attempt to short-circuit discovery, disregard the detailed allegations, and substitute its version of events for the one the Court must accept as true. The motion should be denied.

## A.    WP Engine's Laches Argument Fails on Multiple Grounds

WP Engine asks the Court for an extraordinary finding of laches as to all counterclaims based on disputed facts. To establish a laches defense, WP Engine must show not only that the WordPress Parties "unreasonabl[y] delay[ed]" filing the counterclaims, but also that WP Engine suffered "prejudice" as a result. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). In the context of Lanham Act claims, courts apply a "strong presumption" that a laches defense is inapplicable if the claims are raised within the analogous statute of limitations for state claims—here, a four-year period for statutory and common law unfair competition. *Id.* at 837; *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 959 (N.D. Cal. 2015); *CytoSport, Inc. v. Vital Pharms., Inc.*, 894 F. Supp. 2d 1285, 1294–95 (E.D. Cal. 2012) (applying four-year statute of limitations to false advertising claim grounded in unfair competition, not fraud). This time period begins to run "from the time the plaintiff knew or should have known about his" cause of action. *Jarrow Formulas*, 304 F.3d at 838.

WP Engine says the WordPress Parties unreasonably delayed in bringing the counterclaims because WP Engine began using the WordPress Marks in 2010, used the WooCommerce Marks before the limitations period, and falsely advertised from 2015 to 2019 and again in August 2020. Dkt. 252 at 8, 12. WP Engine's arguments raise precisely the kind of factual issues that demand a full evidentiary record. In any event, the counterclaims—which must be accepted as true—allege in detail that the claims are timely. WP Engine misstates the applicable limitations period, which must be determined based on when *WP Engine* filed suit in October 2024. A cause of action based on trademark

Gibson, Dunn & Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

16

infringement, false advertising, unfair competition, and trademark dilution did not arise until after October 2020—meaning the Court should presume laches does not apply and the claims are timely. Even if the counterclaims had been filed outside the analogous limitations period (and they have not been), laches would not apply: WP Engine's violations are willful and ongoing, any delay was reasonable because the WordPress Parties attempted to negotiate a trademark license with WP Engine, and WP Engine cannot establish the elements of laches on the face of the pleading.

### 1.    Laches Cannot Be Found on the Face of the Counterclaims

WP Engine's request for a finding of laches as to all counterclaims asks this Court to resolve inherently factual questions that cannot be decided on the pleadings. The Ninth Circuit has repeatedly made clear that "because a claim of laches 'depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution'" even "'by summary judgment,'" let alone at the motion-to-dismiss stage. *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000) (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)). At the Rule 12(b)(6) stage, "the obstacle to asserting a successful laches defense is even greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint," and the Court is not permitted to adopt the moving party's "own version of the facts." *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018). WP Engine's laches argument hinges on factual determinations about when the WordPress Parties' causes of action accrued—including precisely when WP Engine's use of Counterclaimants' Marks crossed the line from nominative, referential use to infringement, when WP Engine's ongoing statements (CC ¶¶ 233–234, 250) amounted to misrepresentations and unfair competition, and when the WordPress Parties knew or should have known about WP Engine's misconduct. The Court also would have to decide if WP Engine's violations are ongoing and/or willful, whether the WordPress Parties' timing in filing suit was reasonable, and whether WP Engine suffered prejudice, and make findings on additional equitable factors that WP Engine does not even address in its motion. Deciding when and how WP Engine's use crossed the line is "the central question for trial," not a matter to be resolved without a factual record. *See, e.g.*, *Czaplicki v. The Vessel S.S. Hoegh Silvercloud*, 351 U.S. 525, 534 (1956) (reversing and

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

remanding dismissal and finding that laches defense raised "questions on which the parties should have been allowed to present evidence"); *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1035 (9th Cir. 2012) (similar).

### 2.    WP Engine Misstates the Law on the Applicable Limitations Period

WP Engine incorrectly asserts that the statute of limitations runs from the date the counterclaims were filed in October 2025. But, under California law applicable here, "a defendant's cross-complaint against the plaintiff, irrespective of whether it is related to the matters asserted in the complaint, is entitled to the benefit of the tolling doctrine." *ZF Micro Devices, Inc. v. TAT Cap. Partners, Ltd.*, 5 Cal. App. 5th 69, 92 (2016). The applicable four-year period therefore extends from October 2024 (when WP Engine filed its complaint) back to October 2020. WP Engine relies on federal cases that did not consider whether to toll the limitations period for a counterclaim based on the filing date for the complaint. *See* Dkt. 252 at 19 (citing *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1109 (9th Cir. 2006); *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir. 2018)). These precedents do not disturb binding California law requiring tolling for counterclaims and the applicable period therefore began in October 2020.

### 3.    WP Engine's Infringement Did Not Start Until After October 2020

The counterclaims allege that WP Engine's conduct became infringing only after 2020, when its marketing and branding shifted from descriptive references to full-scale brand appropriation. WP Engine "substantially increas[ed] the frequency and visual dominance of [Counterclaimants'] Marks across [its] homepage between 2021 and 2023," launched a product line called "Headless WordPress" in 2021, rebranded itself as "WP Engine, the WordPress technology company" in 2021, and adopted a confusingly similar serif font and color scheme in 2024. CC ¶¶ 114, 116, 118, 123–124.

WP Engine's cherry-picked webpages are outside the pleadings, decontextualized, and raise disputed facts rendering them inappropriate for judicial notice. *Brickman v. Fitbit, Inc.*, 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016). For example, WP Engine misleadingly reframes references to "headless WordPress," Dkt. 254-4, "enterprise WordPress," Dkt. 254-3, and "core WordPress," Dkt. 254-5, to suggest it offered products under those names before 2020. But the cited materials show only

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO
18

descriptive uses, not branded offerings. In reality, WP Engine did not brand products as "WordPress" until 2021 or later. And WP Engine wrongly claims the counterclaims concede pre-2021 infringement by isolating the phrase "largely nominative." Dkt. 252 at 17. But that qualifier merely reflects limited information about WP Engine's earliest uses and does not concede infringement, knowledge, or any obligation to sue at the time. WP Engine uses misleading exhibits and examples of confusion to argue the counterclaims are time barred. Dkt. 252 at 18. But "trademark holders are not required to 'constantly monitor every nook and cranny of the entire nation and to fire both barrels of its shotgun instantly upon spotting a possible infringer.'" *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL 5099277, at *6 (C.D. Cal. July 10, 2018). Until 2021, WP Engine's use had not "ripened such that [the WordPress Parties] knew or should have known, not simply that [WP Engine] was using the potentially offending mark, but that [the WordPress Parties] had a provable infringement claim." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 70 (2d Cir. 2002).

The WordPress Parties allege that WP Engine's use of Counterclaimants' Marks changed after 2020 not just in number but in kind—WP Engine began using the marks for the first time in the names of product and service offerings and began imitating the WordPress Parties' websites' color schemes and fonts. CC ¶¶ 114–125. This is not a case where allegedly infringing use merely "ratcheted up"; the nature of WP Engine's use fundamentally shifted. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019).

### 4.    Even If Accrual Preceded October 2020, Laches Does Not Apply

Even if the counterclaims had been filed outside the applicable limitations period (they were not), the timing would have been reasonable because the WordPress Parties began reaching out to WP Engine with concerns about its infringement and dilution in late 2023 to resolve the dispute without litigation, CC ¶¶ 258–261, and to negotiate a trademark license, *id.* ¶¶ 262–268. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (two-year delay due to negotiations was not unreasonable because plaintiff "attempt[ed] to avoid the expense and inconvenience of a lawsuit").

WP Engine's attempt to establish prejudice is conclusory and rests on a disputed 15-year delay allegation. The WordPress Parties acted promptly once WP Engine's conduct became infringing. CC

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

19

¶¶ 11, 258–271. WP Engine identifies no concrete evidence that it changed its position, invested resources, or suffered material disadvantage because of the supposed delay. *Int'l Rectifier Corp. v. IXYS Corp.*, 2002 WL 35649417, at *3 (C.D. Cal. Apr. 1, 2002).

Additionally, WP Engine cannot overcome the WordPress Parties' detailed allegations of willful infringement, CC ¶¶ 114–135, 228, which is a complete bar to laches. *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015). WP Engine's infringement is ongoing and continues to cause consumer confusion, CC ¶¶ 147–148, 274, 281, which amounts to continuing wrongs that are not time-barred. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018) ("laches typically does not bar prospective injunctive relief").

### 5.    The Statute of Limitations Does Not Bar the State-Law Claims

The WordPress Parties' California state-law infringement and dilution claims are timely for the same reasons: a cause of action did not accrue until after October 2020 and involves ongoing infringement and dilution based on the same factual predicates as the federal claims. Because this conduct occurred well within four years of WP Engine's October 2024 complaint, the state-law claims fall within the applicable limitations period. *ZF Micro Devices*, 5 Cal. App. 5th at 92; *Zox LLC v. Zox*, 2021 WL 4816664, at *4 (C.D. Cal. July 12, 2021).

### B.    The WordPress Parties Sufficiently Allege that the WordPress Mark Is Famous

WP Engine does not dispute that the WordPress Parties sufficiently allege dilution by tarnishment or blurring; it argues only that the WordPress Mark was not famous at the relevant time. But determination of a mark's fame is a complex "factual question" that requires a close evaluation of the record, and courts routinely deny motions to dismiss on this basis. *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012); *Third Est. LLC v. Cornerman Prods. LLC*, 2013 WL 12144110, at *3 (C.D. Cal. Aug. 5, 2013).

A dilution claim does not require fame before any use of the mark; rather, it requires fame before the defendant "commences use . . . *that is likely to cause dilution*." 15 U.S.C. § 1125(c)(1) (emphasis added). The WordPress Parties allege that WP Engine's diluting use began in 2021 or 2022, when WP Engine launched commercial products incorporating "WordPress," substantially increased

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO

20

the frequency and prominence of "WordPress" on its website, and rebranded itself as "the WordPress technology company." CC ¶¶ 114–135. The WordPress Mark was famous long before that date. WP Engine itself recognized WordPress's fame, stating it is "trusted by the world's biggest brands" (2017), "the world's favorite and fastest-growing content management system" (2020), and that the WordPress ecosystem is valued at just under $600 billion and "truly is running the internet" (2021). *Id.* ¶¶ 65–68. An arbitral panel of the World Intellectual Property Organization recognized "that the mark WORD-PRESS is well-known" and noted its fame "globally for blogging software" as early as 2013. *Id.* ¶ 58.

The WordPress Parties have alleged facts consistent with each of the four statutory factors: (i) the duration, extent, and geographic reach of advertising and publicity; (ii) the amount and geographic extent of services offered under the mark, including powering 14% of websites globally by the early 2010s; (iii) the extent of actual recognition; and (iv) federal registration since 2007. CC ¶¶ 36, 40, 57–68. These allegations and WP Engine's own statements "support the inference that [the WordPress] marks are 'widely recognized by the general consuming public,'" rendering dismissal at the pleading stage inappropriate. *Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *8 (N.D. Cal. June 6, 2024).

**C.    The WordPress Parties Plausibly Allege a Claim Under Section 43(a) of the Lanham Act**

WP Engine seeks to reduce the WordPress Parties' second cause of action to "false advertising," but Count II alleges false advertising, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)—a statute that "provides a remedy for a broad range of deceptive marking, packaging and marketing of goods or services in commerce." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987). WP Engine brands itself as "The WordPress Technology Company," launched products using "WordPress" in the name, and redesigned its website to more closely resemble Automattic's branding, resulting in consumers frequently and regularly being confused about whether WP Engine is affiliated with the WordPress Parties. CC ¶¶ 116–125, 146–174.

Because the allegations concerning WP Engine's false advertising are part of a broad unfair competition claim "rooted in [WP Engine's] use of the Mark[s] in creating a likelihood of causing confusion," the heightened pleading standards of Rule 9(b) do not apply. *Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, 2018 WL 6164327, at *8 (C.D. Cal. Aug. 20, 2018). Even if those heightened

standards did apply, the WordPress Parties adequately plead the elements of false advertising under Section 43(a)(1)(B): (1) falsity, (2) actual or likely deception, (3) materiality of deception, (4) interstate commerce, and (5) injury. *See Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019). On August 25, 2020, WP Engine published that it submitted its Five for the Future pledge to contribute five percent of its resources to WordPress, and this statement remains live to this day, yet WP Engine has failed to meaningfully honor this pledge despite reporting $400 million in annual recurring revenue. CC ¶¶ 233–243, 246. On September 20, 2024, WP Engine represented that it contributed "tens of millions of dollars in ongoing support for the broader community," which is false. *Id.* ¶¶ 250, 252. These statements are false, deceptive, material, occurred in interstate commerce, and injured the WordPress Parties. The counterclaims identified the specific false statements, their source, and where they can be found—satisfying even Rule 9(b). *Trans-Fresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012).

WP Engine has misrepresented the "nature, characteristics, [or] qualities" of its goods and services, 15 U.S.C. § 1125(a)(1)(B), by falsely and misleadingly promoting its support of the WordPress project and positioning itself as a sponsored or endorsed partner of WordPress. Its attempts to overstate the pleading burden for a false advertising claim, make factual arguments, and misconstrue the allegations should be rejected.

**D.    WP Engine's Nominative Fair Use Defense Fails**

WP Engine asks the Court to decide at the pleadings stage the fundamental question of whether WP Engine's use of the WordPress Marks was excusable as "nominative fair use." But "courts generally decline to adjudicate the [fair use] defense at the Rule 12(b)(6) stage because it requires resolving factual questions that are not amenable to resolution on the pleadings." *Barkley & Assocs., Inc. v. Quizlet, Inc.*, 2025 WL 2946993, at *5 (C.D. Cal. Sep. 11, 2025); *Padres, L.P. v. Rimel's La Jolla, LLC*, 2021 WL 2559701, at *4 (S.D. Cal. Apr. 27, 2021).

Under *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992), a defendant must establish three fact-intensive elements: (1) "the product or service in question must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark or marks

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS,
CASE NO. 3:24-CV-06917-AMO
22

may be used as is reasonably necessary to identify the product or service"; and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 308. The counterclaims contain detailed fact allegations that defeat each element.

As to the first element, WP Engine's "repeated" and extensive uses of Counterclaimants' Marks are not necessary to describe its products. WP Engine itself was perfectly capable of making more measured, nominative use of Counterclaimants' Marks until it launched its recent branding campaign, and again after it filed its lawsuit. CC ¶¶ 102–113, 274–284.

As to the second element, the counterclaims allege that WP Engine used Counterclaimants' Marks too prominently and too often, with detailed charts comparing WP Engine's use of the marks on its website to others in the marketplace, showing WP Engine's use dwarfing that of its competitors. CC ¶¶ 210–211. Both the nature and frequency of WP Engine's use shifted in recent years: WP Engine rebranded its service tiers to "Essential WordPress," "Core WordPress," and "Enterprise WordPress," adopted "WooCommerce Hosting," and dramatically expanded its use of Counterclaimants' Marks on its website and in hidden internet advertising. *Id.* ¶¶ 115, 134–135, 211–223. That WP Engine was using more of the marks than was reasonably necessary is also demonstrated by its removal of many of its most infringing uses of the WordPress Parties' marks from its website immediately prior to filing this lawsuit. *Id.* ¶¶ 274–284.

As to the third element, the counterclaims include numerous examples of WP Engine presenting itself as affiliated with the WordPress Parties and of consumers expressing confusion. CC ¶¶ 146–187. WP Engine's customers frequently reach out to Automattic to cancel WP Engine subscriptions or for customer support, demonstrating actual consumer confusion. *Id.* ¶¶ 160–167. Courts recognize that an allegation of even one confused consumer "supports a plausible inference that users perceived an affiliation between the two" and therefore "preclude[s] dismissal under the nominative fair use doctrine." *Quizlet, Inc.*, 2025 WL 2946993, at *7.

**E.    The WordPress Parties Plausibly Allege Unfair Competition Claims**

WP Engine argues the UCL and common law unfair competition claims "fail as entirely derivative" of the trademark and false advertising claims. Dkt. 252 at 25. This argument fails.

First, because the WordPress Parties adequately allege claims for federal trademark infringement, unfair competition under Section 43(a), and dilution, they also plausibly allege violations of the UCL and common law. *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (state common law unfair competition and UCL actions are "substantially congruent" to Lanham Act claims). Because the underlying trademark claims survive, as shown above, the UCL and common law claims survive as well.

Second, even if the other claims were deficient (they are not), the counterclaims contain independent, well-pleaded allegations of consumer deception sufficient to state claims for statutory and common-law unfair competition. "To state a cause of action under the fraudulent prong of Section 17200, it is necessary only to show members of the public are likely to be deceived." *Makreas v. First Nat'l Bank of N. Cal.*, 856 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012). The counterclaims adequately allege that members of the public are likely to be deceived by WP Engine's misrepresentations. *See, e.g.*, CC ¶¶ 118, 147–187–186, 233–257.

**F.    Automattic and Mullenweg Allege Standing to Bring the Counterclaims**

WP Engine argues Automattic and Mullenweg lack standing because they are "licensees" with unknown "significant restrictions." Dkt. 252 at 25. This argument ignores the counterclaims' detailed allegations establishing standing.

For ***Count 1, Trademark Infringement under 15 U.S.C. § 1114(1)***, "[d]istrict courts in this circuit generally" find standing "where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark." *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 1007666, at *3 (N.D. Cal. Mar. 13, 2013). Automattic was the original owner and registrant of the WordPress Marks and donated them to WordPress Foundation. CC ¶ 36. WordPress Foundation licensed the marks back to Automattic, conferring exclusive commercial rights and the first right to enforce. *Id.* ¶ 39, Ex. A. Mullenweg is the exclusive licensee for WordPress.org. *Id.* ¶¶ 36–37. See *Innovation*, 2013 WL 1007666, at *5–6; *Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, 2019 WL 6486039, at *1 (C.D. Cal. Aug. 23, 2019).

For ***Count 2, False Advertising, False Designation of Origin, and Unfair Competition under***

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO

24

*15 U.S.C. § 1125(a)*, ownership is "immaterial" because the statute grants standing to "any person who believes that he or she is likely to be damaged." 15 U.S.C. § 1125(a); *Brown v. Green*, 2012 WL 4120379, at *3 (N.D. Cal. Sep. 18, 2012); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992). Automattic and Mullenweg have alleged sufficient commercial interests in the marks. CC ¶¶ 36–39, 52–57, 79–86.

For **Count 3, Common Law Trademark Infringement**, the "original owner" of a mark has standing. *Am. Petrofina, Inc. v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979). Automattic and/or Mullenweg were the first users, and each retains a cognizable interest. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 n.7 (9th Cir. 2008).

For **Counts 4-5, dilution**, courts look to "the provisions of the licensing agreement to determine the rights granted to the licensee." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 979 (S.D. Cal. 2020). Because Automattic and Mullenweg have exclusive licenses with enforcement rights, they have standing. WordPress Foundation, as owner, also has standing.

For **Counts 6-7, UCL and common law unfair competition**, all WordPress Parties have standing based on their Section 1125(a) standing and cognizable interests in the marks. *QS Wholesale, Inc. v. Rox Volleyball, Inc.*, 2014 WL 12567147, at *1–2 (C.D. Cal. Dec. 31, 2014).

Finally, even if Automattic and Mullenweg lacked standing, WP Engine does not argue WordPress Foundation or WooCommerce were improperly joined. Because each cause of action has at least one counterclaimant with standing, WP Engine's argument would not dispose of any claim.

### III.    CONCLUSION

The Court should dismiss WP Engine's claims with prejudice because the TAC still fails to cure the fundamental defects this Court already identified. WP Engine has already had four chances to plead its claims; no further amendment can salvage its theories. By contrast, the WordPress Parties' counterclaims are amply and specifically pleaded, raise fact-intensive issues that cannot be resolved on a Rule 12 motion, and therefore should proceed in full.

Gibson, Dunn &
Crutcher LLP

DATED: March 24, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Joseph R. Rose*
        Joseph R. Rose

*Attorney for Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. and Counterclaimant WordPress Foundation*

DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS, CASE NO. 3:24-CV-06917-AMO