QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff WPEngine, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Defendants.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>vs.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | Case No. 3:24-cv-06917-AMO<br><br>**WPE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**<br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Hearing Date: June 4, 2026<br>Hearing Time: 2:00 p.m.<br>Courtroom: 10 |

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.    COUNTERCLAIMANTS FAIL TO REBUT THAT THEIR CLAIMS ARE TIME-BARRED..................................................................................................................1

    A.    Counterclaimants' Own Allegations Establish the Time Bar ...................................1

    B.    Counterclaimants' Tolling Theory Contradicts Ninth Circuit Precedent...................2

    C.    Counterclaimants' Alleged "Shift" In Use Is Illusory ..............................................2

    D.    Alleged Recent Negotiations Cannot Excuse 13 Years of Inaction..........................3

    E.    Counterclaimants' Other Arguments Against Laches Fail.........................................4

II.   COUNTERCLAIMANTS FAIL TO IDENTIFY SUFFICIENT FAME ALLEGATIONS TO SALVAGE THEIR DILUTION CLAIMS ........................................5

    A.    The Necessary Fame Date Is 2010—Before WPE's First Use of "WordPress" ..................................................................................................................5

    B.    Counterclaimants Do Not—and Cannot—Allege Fame as of 2010 .........................6

III.  COUNTERCLAIMANTS FAIL TO SHOW THEIR FALSE ADVERTISING CLAIMS ARE ADEQUATELY PLED.................................................................................7

    A.    Counterclaimants Incorrectly Argue Rule 9(b)'s Heightened Pleading Standards Do Not Apply ........................................................................................7

    B.    Counterclaimants Fail to Identify Allegations That Satisfy Rule 9(b).......................7

    C.    Counterclaimants Fail to Identify Allegations of Deception or Materiality .............8

IV.   COUNTERCLAIMANTS FAIL TO REFUTE THE NOMINATIVE USE EVIDENT FROM THEIR TRADEMARK ALLEGATIONS ............................................8

    A.    Counterclaimants Are Incorrect That Nominative Use Cannot Be Decided At This Stage..........................................................................................................8

    B.    Counterclaimants Fail To Rebut That WPE's Use Satisfies All Three *New Kids* Elements................................................................................................9

V.    COUNTERCLAIMANTS FAIL TO REBUT THAT THEIR UNFAIR COMPETITION CLAIMS ARE DERIVATIVE AND FAIL ...........................................10

VI.   AUTOMATTIC AND MULLENWEG LACK STANDING.............................................10

    A.    Neither Automatic Nor Mullenweg Owns the Asserted Marks .............................10

B.    The Exclusive License Does Not Confer Standing ..................................................11

C.    Original Owners Do Not Retain Standing After Transfer.......................................12

CONCLUSION .........................................................................................................................12

WPE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Alvarado v. Amazon.com, Servs. LLC,*
    2022 WL 899850 (N.D. Cal. Mar. 28, 2022) ........................................................................... 10

*America Petrofina v. Petrofina of Cal., Inc.,*
    596 F.2d 896 (9th Cir. 1979) ................................................................................................... 12

*Applied Underwriters, Inc. v. Lichtenegger,*
    913 F.3d 884 (9th Cir. 2019) ..................................................................................................... 9

*Architectural Mailboxes, LLC v. Epoch Design, LLC,*
    2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ........................................................................... 8

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) ..................................................................................... 6

*Barkley & Assocs., Inc. v. Quizlet, Inc.,*
    2025 WL 2946993 (C.D. Cal. Sept. 11, 2025) ........................................................................ 10

*DC Comics v. Towle,*
    802 F.3d 1012 (9th Cir. 2015) ................................................................................................... 4

*Dropbox, Inc. v. Thru Inc.,*
    728 F. App'x 717 (9th Cir. 2018) .............................................................................................. 2

*E-Systems, Inc. v. Monitek, Inc.,*
    720 F.2d 604 (9th Cir. 1983) ..................................................................................................... 5

*Evergreen Safety Council v. RSA Network Inc.,*
    697 F. 3d 1221 (9th Cir. 2012) .................................................................................................. 4

*EVIG, LLC v. Natures Nutra Co.,*
    685 F. Supp. 3d 991 (D. Nev. 2023) .......................................................................................... 7

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.,*
    411 F. Supp. 3d 905 (N.D. Cal. 2019) ....................................................................................... 4

*Georgia-Pacific Consumer Products LP v. Lee's Gen. Toys, Inc.,*
    2008 WL 11337935 (S.D. Cal. Apr. 22, 2008) .......................................................................... 7

*Gopher Media LLC v. Mod. Doc Media,*
    2023 WL 350531 (S.D. Cal. Jan. 20, 2023) ........................................................................... 7, 8

*Halcyon Horizons, Inc. v. Delphi Behav. Health Grp., LLC,*
    2017 WL 1956997 (N.D. Cal. May 11, 2017) ......................................................................... 11

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
 547 F.3d 1213 (9th Cir. 2008)......................................................................................... 12

*Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*,
 2019 WL 6486039 (C.D. Cal. Aug. 23, 2019) ............................................................ 11

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) ............................................................ 11

*Jarrow Formulas v. Nutrition Now, Inc.*,
 304 F.3d 829 (9th Cir. 2002).......................................................................................... 4

*Kourtis v. Cameron*,
 419 F.3d 989, 1000 (9th Cir. 2005)................................................................................ 1

*Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*,
 2018 WL 6164327 (C.D. Cal. Aug. 20, 2018) .............................................................. 7

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
 686 F. Supp. 3d 900 (N.D. Cal. 2023) ........................................................................... 6

*Nat'l Pork Bd. & Nat'l Pork Producers Council v. Supreme Lobster and Seafood Co.*,
 96 U.S.P.Q. 2d 1479 (T.T.A.B. 2010)............................................................................ 6

*New Kids on the Block v. News Am. Pub., Inc.*,
 971 F.2d 302 (9th Cir. 1992).......................................................................................... 9

*Nissan Motor Co. v. Nissan Computer Corp.*,
 378 F.3d 1002 (9th Cir. 2004)........................................................................................ 5

*Nova Wines, Inc. v. Adler Fels Winery LLC*,
 467 F. Supp. 2d 965 (N.D. Cal. 2006) ......................................................................... 11

*Parts.com, LLC v. Google Inc.*,
 2014 WL 12461256 (S.D. Cal. June 25, 2014) .............................................................. 4

*Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*,
 894 F.3d 1015 (9th Cir. 2018)........................................................................................ 4

*Pinterest, Inc. v. Pintrips, Inc.*,
 140 F. Supp. 3d 997 (N.D. Cal. 2015) ........................................................................... 5

*Ryan v. Microsoft Corp.*,
 147 F. Supp. 3d 868 (N.D. Cal. 2015) ........................................................................... 4

*S&P Global Inc. v. S&P Data LLC*,
 619 F. Supp. 3d 445, 467 (D. Del. 2022) ....................................................................... 6

*T-Mobile US, Inc. v. AIO Wireless LLC*,
 991 F. Supp. 2d 888 (S.D. Tex. 2014) ........................................................................... 6

WPE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................................ 1

*Third Est. LLC v. Cornerman Prods. LLC*,
    2013 WL 12144110 (C.D. Cal. Aug. 5, 2013) .......................................................... 5

*Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*,
    465 F.3d 1102 (9th Cir. 2006) .............................................................................. 2, 5

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010) .................................................................................. 3

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) .................................................................... 7

*Upper Deck Co. v. Panini Am., Inc.*,
    533 F. Supp. 3d 956 (S.D. Cal. 2021) ..................................................................... 12

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
    590 F.Supp.2d 1306 (D. Nev. 2008) ......................................................................... 6

*Volkswagenwerk Aktiengesellschaft v. Church*,
    411 F.2d 350 (9th Cir. 1969) .................................................................................... 9

*Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*,
    758 F.3d 1069 (9th Cir. 2014) .................................................................................. 8

*Yelp, Inc. v. ReviewVio, Inc.*,
    2024 WL 2883668 (N.D. Cal. June 6, 2024) ............................................................ 5

*ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.*,
    5 Cal. App. 5th 69 (2016) ......................................................................................... 2

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ................................................................................................ 7

15 U.S.C. § 1125(a)(1)(B) ................................................................................................ 7

15 U.S.C. § 1125(c) ............................................................................................... 5, 6, 12

**Other Authorities**

Fed. R. Civ. P.  9(b) ..................................................................................................... 1, 7

**INTRODUCTION**

Counterclaimants fail to rebut what WPE's Motion established: all their counterclaims fail. Because they cannot escape their own detailed allegations demonstrating they knew of WPE's conduct since 2010 and yet waited over a decade to act, all their claims fail due to laches.

Independently of laches, Counterclaimants fail to show they have pleaded any plausible claims. First, they concede they must show fame to state a claim for dilution, but they fail to identify any allegations that do so. Second, unable to show the particularity Rule 9(b) demands for their false advertising claims, they erroneously argue it does not apply, and they fail to identify any factual allegations showing essential elements like materiality of the allegedly false statements. Third, they fail to identify any legal or factual basis that would allow their trademark claims to proceed given WPE's nominative use. Fourth, they fail to explain how their unfair competition claims can proceed given that they are derivative of the failed predicate claims. Finally, they fail to rebut that Automattic and Mullenweg lack standing to assert any trademark claims.

Counterclaimants cite no controlling precedent that contradicts the authority in WPE's motion, and they suggest no proposed amendments to cure their pleading's fatal defects. The Court should grant WPE's Motion and dismiss all the counterclaims with prejudice.

**ARGUMENT**

**I.    COUNTERCLAIMANTS FAIL TO REBUT THAT THEIR CLAIMS ARE TIME-BARRED**

**A.    Counterclaimants' Own Allegations Establish the Time Bar**

Counterclaimants argue that because laches is "seldom" an appropriate ground for dismissal by the Court, their claims should survive. Dkt 257 ("Opp.") at 17. But as their own authority recognizes, laches bars claims when it is apparent from the pleading itself. *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). It may be unusual for that to occur, but here it does. The counterclaims detail specific uses from *2010*-2019 and concede WPE's use was only "largely nominative" from the outset (Dkt. 238 ("CC") ¶¶ 4, 102-113)—admitting some uses were allegedly infringing—and acknowledge Automattic was WPE's strategic investor from 2011-2018 (CC ¶¶ 89, 95). These allegations leave

none of the usual factual uncertainty: Counterclaimants knew of WPE's alleged infringement in 2010, observed it closely for years as an investor, yet did nothing for over a ***decade***.  It is not even remotely a close call.  Counterclaimants' reliance on cases involving factual disputes about the timing of the plaintiff's knowledge of the defendant and its activities (Opp. at 17-18) does nothing to help them on these facts.

**B.      Counterclaimants' Tolling Theory Contradicts Ninth Circuit Precedent**

Counterclaimants argue California's filing tolling doctrine applies to federal trademark claims, asserting the limitations period should run from the filing of WPE's October 2024 complaint rather than from their October 2025 counterclaims.  Opp. at 18.  This directly contradicts controlling Ninth Circuit precedent holding that for laches analysis, the limitations period runs from the counterclaim filing date, not the complaint filing date.  *See* Dkt. 252 ("Mot.") at 18-19; *Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1109 (9th Cir. 2006) ("Because the analogous state limitations period had long expired *prior to Creamery's [counterclaim] filing in 2002*, there is a presumption favoring Smoker's laches defense.") (emphasis added); *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir. 2018) (similar).  Counterclaimants cite no cases, federal or state, analyzing laches and holding otherwise.  The sole decision they cite for the proposition that relation back is appropriate is the Court of Appeal opinion in *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.*, 5 Cal. App. 5th 69 (2016) (Opp. at 18), which did not involve laches or any trademark claims.  Accordingly, under controlling law the applicable period for assessing laches began in October 2021, and October 2022 for false advertising.  Mot. at 19.

Even if Counterclaimants' tolling theory applies to the statute of limitations period for California claims, their state claims remain barred by laches just as their federal ones are.  And, in all events, pushing back the limitations period to end in October 2020 does not salvage the counterclaims because Counterclaimants knew of WPE's allegedly infringing uses long before then.  *See id.* at 17-18.

**C.      Counterclaimants' Alleged "Shift" In Use Is Illusory**

Counterclaimants cannot keep their story straight about when WPE's alleged misuse began,

WPE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

but any retelling of it they choose fails to overcome laches. In the original opposition to WPE's Motion to Dismiss their counterclaims, Counterclaimants asserted WPE's use "fundamentally changed in 2021." Dkt. 216 at 6. Now, they argue WPE's conduct "became infringing only after 2020," contending that WPE "substantially increased the frequency and visual dominance" of the WordPress and WooCommerce marks between 2021 and 2023. Opp. at 18. Their own allegations and judicially noticeable documents prove otherwise. WPE used the exact same phrases using the WordPress and WooCommerce Marks—"WordPress Hosting," "Managed WordPress Hosting," "The Only WordPress Digital Experience Platform"—before and after 2020 *and* 2021. Mot. at 18; Dkt. 254 ("RJN") at 1-2. Judicially noticeable documents show WPE used the WordPress Marks to describe its products and services well before 2020. RJN at 1-2. And Counterclaimants' vague, conclusory allegations about color schemes (Opp. at 19; CC ¶¶ 123-125) are belied by the images shown, which reveal no actual imitation.

Counterclaimants argue they need not "constantly monitor every nook and cranny of the entire nation" to identify possible infringement. Opp. at 19. But WPE's uses were not hidden in a nook or cranny—Automattic was WPE's *investor* for many years, with intimate knowledge of WPE's business and uses of the WordPress and WooCommerce Marks from 2011-2018. CC ¶¶ 89, 95. Counterclaimants' earliest alleged instances of actual confusion go back to December 2018, but judicially noticeable documents also show WPE's use of the WordPress Marks well before then and during Counterclaimants' investment period. CC ¶¶ 89, 95, 177, 186; RJN at 1-2. With such notice, Counterclaimants cannot plausibly argue their claim did not accrue until this decade.

### D.　Alleged Recent Negotiations Cannot Excuse 13 Years of Inaction

Counterclaimants argue delay was reasonable because they allegedly "began reaching out" to WPE in "late 2023." Opp. at 19. Even if true, this allegation fails to justify their delay. The sole case they rely on does not establish communications as a ground either to extend the limitations period or to excuse inaction that occurred before plaintiff's first contact. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (plaintiff contacted defendant just "six months" after learning of alleged infringement and negotiations occurred within three years of suit being filed). Further, Counterclaimants cannot hide behind the vague phrase "began reaching out"

to tie their negotiations to 2023.  Counterclaimants do not actually allege they mentioned alleged "violations" to WPE until September 2024 (CC ¶ 271)—years after they knew of WPE's uses.  But even if Counterclaimants had alleged they commenced settlement negotiations in late 2023, that cannot retroactively render 13 years of prior inaction reasonable.  The laches clock starts when a plaintiff "knew or should have known about his" cause of action, not when it finally decides to act. *Jarrow Formulas v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002).

### E.    Counterclaimants' Other Arguments Against Laches Fail

First, Counterclaimants' "ongoing" and "continuing wrong" argument (Opp. at 20) contradicts *Jarrow Formulas*, which explicitly rejected the argument that ongoing conduct defeats laches for the obvious reason that "[t]o hold otherwise would effectively swallow the rule of laches." 304 F.3d at 837-38; *see also, e.g., Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 918 (N.D. Cal. 2019) (dismissing California state law claim with prejudice after refusing to apply the continuous accrual doctrine to postpone its accrual date); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 895-96 (N.D. Cal. 2015) (finding the continuous accrual doctrine did not apply to toll the relevant statutes of limitations for plaintiff's California state law claims).  Courts routinely apply laches as a complete defense, including to bar prospective injunctive relief, as Counterclaimants' own cited authority makes clear.  *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1027-29 (9th Cir. 2018) (Opp. at 20) (affirming application of laches to bar prospective injunctive relief and collecting cases).

Second, Counterclaimants' purported willfulness allegations do not avoid laches.  *See Parts.com, LLC v. Google Inc.*, 2014 WL 12461256, at *4 (S.D. Cal. June 25, 2014) (granting dismissal on laches grounds and rejecting plaintiff's "willful infringement" argument where "the mere fact that Defendant received a cease-and-desist letter and failed to stop its alleged infringement is not sufficient proof of willfulness").  The sole case Counterclaimants cite (Opp. at 20) is not to the contrary; the defendant there built Batmobile replicas he conceded were intentionally designed to exploit the fame of DC Comics' famous trademarks; there was no asserted fair use defense, as there is here.  *DC Comics v. Towle*, 802 F.3d 1012, 1026-27 (9th Cir. 2015).  Indeed, as the Ninth Circuit confirmed in the decision *DC Comics* relied upon regarding willfulness, *Evergreen Safety*

*Council v. RSA Network Inc.,* merely alleging willfulness is not sufficient to defeat laches; the defendant must have acted without a basis for believing its use was permitted. 697 F.3d 1221, 1228-29 (9th Cir. 2012). Counterclaimants do not make such an allegation. Nor can they, given the ubiquity of the marketplace use of terms such as "managed WordPress."

Third, prejudice is established by the 15-year delay itself and by WPE's investments in expanding its business based on its presumed rights to use the WordPress Marks nominatively. CC ¶¶ 93, 97; Answer ¶ 49.

Finally, the equitable factors addressed by WPE—Counterclaimants' lack of diligence in enforcing its mark, WPE's reasonable belief its use was permissible, and the prejudice suffered by WPE because of Counterclaimants' delay—all of which are discernible from the face of the Counterclaims—favor the application of laches. *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983); *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006).

Because laches applies to all of the counterclaims, they should be dismissed with prejudice.

## II. <u>COUNTERCLAIMANTS FAIL TO IDENTIFY SUFFICIENT FAME ALLEGATIONS TO SALVAGE THEIR DILUTION CLAIMS</u>

### A. The Necessary Fame Date Is 2010—Before WPE's First Use of "WordPress"

Counterclaimants' arguments against dismissal of their dilution claims (Opp. at 20-21) ignore controlling precedent: "*any commercial use* of a famous mark in commerce ... fixes the time by which famousness is to be measured." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1013 (9th Cir. 2004) (emphasis added). Counterclaimants' selective omission of the phrase "of a mark or trade name in commerce" after "commence use" from its quote of 15 U.S.C. § 1125(c)(1) (Opp. at 20) does not change that. The proper date for fame is therefore not, as Counterclaimants contend, "the particular use being challenged in the litigation," *Nissan*, 378 F.3d at 1012, but rather, WPE's first commercial use—which Counterclaimants allege is 2010 (CC ¶ 102). *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1031-32 (N.D. Cal. 2015) (citing *Nissan*). The cases Counterclaimants cite (Opp. at 20-21) confirm this basic principle. *See Yelp, Inc. v. ReviewVio, Inc.*, 2024 WL 2883668, at *8 (N.D. Cal. June 6, 2024) (plaintiff alleged fame

"since at least May 2007," before defendant began using mark); *Third Est. LLC v. Cornerman Prods. LLC*, 2013 WL 12144110, at *1 (C.D. Cal. Aug. 5, 2013) (defendant's alleged use began "[a]fter Plaintiff's Marks became famous").

**B.      Counterclaimants Do Not—and Cannot—Allege Fame as of 2010**

Counterclaimants do not dispute that fame must be shown among "the general consuming public of the United States," 15 U.S.C. § 1125(c)(2)(A), or that this requires a very high level of recognition, commonly recognized as at least 75% consumer recognition.  *See* Mot. at 20-21.  Nor could they.  *See Visa Int'l Serv. Ass'n v. JSL Corp.,* 590 F.Supp.2d 1306, 1315 (D. Nev. 2008) (finding mark famous at 85% awareness); *Nat'l Pork Bd. & Nat'l Pork Producers Council v. Supreme Lobster and Seafood Co.,* 96 U.S.P.Q. 2d 1479 (T.T.A.B. 2010) (finding mark famous at 80-85% awareness); *S&P Global Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 467 (D. Del. 2022) (citing 3 McCarthy § 24:106 (5th ed.)) ("67% recognition rate is already below what the leading commentator recommends"); *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 931 (S.D. Tex. 2014) (citing same) (41.2% recognition insufficient; "[o]ne treatise proposes that fame responses should be around 75%").

Instead, Counterclaimants argue they have alleged facts "consistent with" the statutory factors for fame, but they do not identify any allegations sufficient to show fame at *any time*—much less before 2010.  Opp. at 21 (citing CC ¶¶ 36, 40, 57-68).  They make no effort to reconcile their allegations with the dismissals in the precedent cited in the Motion or to distinguish those cases. *See* Mot. at 20-21 (citing, *inter alia, Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1065-67 (N.D. Cal. 2015) (dismissing notwithstanding allegations that 60 million consumers downloaded plaintiff's app globally and 20 million nationally; that the mark "attained widespread and favorable recognition…throughout the United States"; and that the app featured "many of the United States' and world's most famous celebrities" and was mentioned in *The New York Times*, *The Washington Post*, and other major publications) and *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 686 F. Supp. 3d 900, 915-16 (N.D. Cal. 2023) (dismissing notwithstanding plaintiff's allegations that its trademarks are highly distinctive; it has used them continuously for decades; it has advertised and publicized them for decades; and the marks are widely recognized by the general, consuming public

and validly registered on the Principal Register)).   Because Counterclaimants' conclusory allegations fall far short of their necessary showing, their dilution claims must be dismissed.

### III. COUNTERCLAIMANTS FAIL TO SHOW THEIR FALSE ADVERTISING CLAIMS ARE ADEQUATELY PLED

#### A. Counterclaimants Incorrectly Argue Rule 9(b)'s Heightened Pleading Standards Do Not Apply

Rule 9(b) applies because Counterclaimants allege that WPE made false and misleading misrepresentations in commercial advertising.   CC ¶¶ 297-299, 303.   The only case Counterclaimants rely on to argue otherwise (Opp. at 21) did not involve false advertising claims and is therefore inapposite. *Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, 2018 WL 6164327, at *3 n.1, *8 (C.D. Cal. Aug. 20, 2018) (plaintiff "*explicitly* conceded" its challenged claim "is not rooted in false advertising").

Counterclaimants cannot salvage their false *advertising* claim by pointing to their false *designation of origin* claim—which is functionally a trademark infringement claim. *Georgia-Pacific Consumer Products LP v. Lee's Gen. Toys, Inc.*, 2008 WL 11337935, at *5 (S.D. Cal. Apr. 22, 2008) ("The test for a false designation of origin claim is essentially identical to a trademark infringement claim.").   "The Supreme Court and the Ninth Circuit have both drawn sharp distinctions between claims brought under § 1125(a)(1)(A) and § 1125(a)(1)(B)." *EVIG, LLC v. Natures Nutra Co.*, 685 F. Supp. 3d 991, 996 (D. Nev. 2023).   Courts refuse to consider other allegedly "misleading" statements when evaluating false advertising claims. *Gopher Media LLC v. Mod. Doc Media*, 2023 WL 350531, at *6 (S.D. Cal. Jan. 20, 2023) (rejecting attempt to rely on allegations supporting false designation of origin claim to salvage false advertising claim).

#### B. Counterclaimants Fail to Identify Allegations That Satisfy Rule 9(b)

Counterclaimants' reliance on *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1019 (N.D. Cal. 2012) to argue they satisfied Rule 9(b) (Opp. at 22), backfires. *TransFresh* ***dismissed*** false advertising allegations where plaintiff failed to explain "why" omissions were

misleading and "how" and "why" altered content was misleading.  862 F. Supp. 2d at 1019. Counterclaimants likewise fail to explain how and why alleged statements are misleading or why their false advertising claim should survive when those in the precedent cited in the Motion failed. *Compare* Opp. at 21-22 *with* Mot. at 21-22 (collecting cases).  Counterclaimants failed to allege WPE's contribution pledge statements were false when made, nor do they argue they can do so if given leave to amend.  *See* Mot. at 22.

### C.     Counterclaimants Fail to Identify Allegations of Deception or Materiality

Counterclaimants concede they must plead deception and materiality, but their conclusory assertion that they did so fails to cite any allegations at all.  Opp. at 22.  Unlike *Factory Direct Wholesale* (*id.*), which presumed deception because defendant's statement was literally false, Counterclaimants' allegations do not reflect literal falsity.  They do not argue otherwise.  Although the Counterclaimants alleged the quoted contribution language was "either literally false when posted or … materially misleading" (CC ¶ 297), their more complete reference to this language reflects that WPE was not making a representation about existing contributions, but was stating it had made a "pledge" (*id.* ¶ 233).  Counterclaimants do not allege (or argue) that WPE's statement that it had "submitted [its] Five For The Future Pledge" was literally false when made.  *Id.*; Opp. at 20; *see also* Mot. at 22.  Accordingly, *Factory Direct* does not support that Counterclaimants adequately pled false advertising; it underscores that they did not.

Counterclaimants cannot cure their failure to plead deception by pointing to irrelevant allegations of trademark confusion rather than false advertising deception.  *Gopher Media LLC*, 2023 WL 350531, at *6 (rejecting plaintiff's attempt to rely on false designation of origin claims to salvage false advertising claim).  And they cannot point to any allegations suggesting that WPE's statements about contributions are material—i.e., "likely to influence the purchasing decision" of consumers. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014).

## IV.   <u>COUNTERCLAIMANTS FAIL TO REFUTE THE NOMINATIVE USE EVIDENT FROM THEIR TRADEMARK ALLEGATIONS</u>

### A.     Counterclaimants Are Incorrect That Nominative Use Cannot Be Decided At This Stage

Contrary to Counterclaimants' argument (Opp. at 22-23), "[c]ourts may resolve these issues

[relating to nominative use] at the pleading stage." *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *3-4 (S.D. Cal. Apr. 28, 2011) (dismissing claims after conducting factual analysis, including of website excerpts, to determine likelihood of confusion at the pleading stage); *see also Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 893-98 (9th Cir. 2019) (affirming dismissal despite factual disagreements about *New Kids* factors).  It is appropriate for the Court to do so here, where WPE's alleged use of the marks satisfies all three elements of the *New Kids* analysis.  Just as "Volkswagen could not prevent an automobile repair shop from using its mark ... [because] in advertising [the repair of Volkswagens], it would be difficult, if not impossible, for [the repair shop] to avoid altogether the use of the word 'Volkswagen,'" WPE cannot describe its WordPress hosting services without using "WordPress."  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) (quoting *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969)).

> **B.** **Counterclaimants Fail To Rebut That WPE's Use Satisfies All Three *New Kids* Elements**

First, Counterclaimants do not seriously dispute use of the Challenged Marks is necessary to describe WPE's services.  Indeed, by alleging WPE's use was "primarily" nominative, they concede as much.  CC ¶ 102.

Second, Counterclaimants' arguments that WPE uses the marks "too often" (Opp. at 23; CC ¶¶ 209-211) do not show more use than necessary.  This factor focuses on "the *nature* of the uses," not "the number of uses."  *Applied Underwriters,* 913 F.3d at 895.  Although Counterclaimants argue that they have pleaded an increase in "both the nature and frequency of WPE's use … in recent years" (Opp. at 23 (citing CC ¶¶ 115, 134-135, 211-223)), their citations actually focus on "the number of times the WordPress Marks appear on WP Engine's website"—not a difference in the nature.  CC ¶ 213.  Moreover, their contention that WPE "rebranded" to use terms like "Core WordPress" and "Enterprise WordPress" is belied by judicially noticeable documents showing WPE's historical usage of those descriptive terms, including as a product category.  Opp. at 23; RJN Exs. 3, 5, 10.  Because the nature of WPE's use is descriptive—as Counterclaimants admit (*compare* CC ¶¶ 102, 104-108, *with id.* ¶ 119)—increased frequency does not transform permissible use into

infringement.  Counterclaimants do not cite a single case holding otherwise.

Third, Counterclaimants fail to identify any allegation that WPE claimed ***sponsorship or endorsement***.  Alleged consumer confusion because WPE offers WordPress-related services (Opp. at 23) is not actionable, as it does not suggest false representations of sponsorship.  This is not like the trademark infringement alleged in *Barkley*, where defendant's platform allegedly displayed actual copies of ***plaintiff's*** materials that "retained [plaintiff]'s trademark."  *Barkley & Assocs., Inc. v. Quizlet, Inc.*, 2025 WL 2946993, at *1, 7 (C.D. Cal. Sept. 11, 2025) (Opp. at 23).  Counterclaimants do not allege customer confusion stemming from false representations of sponsorship or endorsement (or, as in *Barkley,* that WPE displayed documents created by Counterclaimants that retained their marks)—nor can they.  Furthermore, Counterclaimants cite no precedent holding courts should reject nominative fair use just because a pleading includes customer complaints, where those complaints are ***not*** rooted in affirmatively false representations of sponsorship or endorsement (as is the case here).

## V. COUNTERCLAIMANTS FAIL TO REBUT THAT THEIR UNFAIR COMPETITION CLAIMS ARE DERIVATIVE AND FAIL

Counterclaimants' opposition largely rests on the viability of their predicate claims.  Opp. at 24.  This concedes what the Motion established: the unfair competition claims are entirely derivative and assert no independent wrongful conduct.  Having failed to plead viable predicate claims, Counterclaimants' derivative unfair competition claims necessarily fail.  *Alvarado v. Amazon.com, Servs. LLC*, 2022 WL 899850, at *2 (N.D. Cal. Mar. 28, 2022) (dismissing where unfair competition claims "based on predicate violations of other laws" failed to "plead[] any other violation of law").

Counterclaimants' only additional argument is that "members of the public are likely to be deceived by WP Engine's misrepresentations."  Opp. at 24.  But that is not an independent basis for unfair competition liability; it is simply the likelihood-of-confusion element of the failed trademark infringement claims and deception element of the failed false advertising claim restated in UCL language.  Because those claims fail, so do the derivative unfair competition claims.

## VI. AUTOMATTIC AND MULLENWEG LACK STANDING

### A. Neither Automattic Nor Mullenweg Owns the Asserted Marks

Counterclaimants concede—because they must—that neither Automattic nor Mullenweg owns or is the registrant of the asserted trademarks. Opp. at 24-25. WordPress Foundation's ownership of the WordPress Marks and WooCommerce's ownership of the WooCommerce Marks (CC ¶¶ 286-287) dispositively foreclose Automattic and Mullenweg's standing for their Section 1114, federal and state trademark dilution, and common law trademark infringement claims (Counts 1, 3-5). *See* Mot. at 25. Counterclaimants do not address—let alone distinguish—the cases WPE cited establishing that non-owners lack standing to bring these claims. *Id.*

**B.     The Exclusive License Does Not Confer Standing**

Counterclaimants' standing arguments (Opp. at 24-25) fail because Automattic's license for the WordPress Marks does not confer standing. "Standing can only exist where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee." *Halcyon Horizons, Inc. v. Delphi Behav. Health Grp., LLC*, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017) (citations omitted); *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 974 (N.D. Cal. 2006) (finding no standing where exclusive license was only for certain types of wines and there was a clause reserved to the licensor all rights not explicitly granted).

None of the cases Counterclaimants cite support their standing arguments on the facts here. *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013) (Opp. at 24), involved a licensee who was granted both "an exclusive license" for all uses of the trademark, such that the owner "lost its ability to use the trademarks in any way," as well as the right to sue and compel the owner to join the suit. *Id.* at *5. Counterclaimants do not allege Automattic holds a similarly extensive interest—only that it has an exclusive license to make "commercial use." CC ¶ 39; Ex. A at 2 ("For the avoidance of doubt, the Foundation shall not be limited in its own use of the Trademarks outside of the Scope"). That is insufficient. Similarly, the license in *Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, 2019 WL 6486039 (C.D. Cal. Aug. 23, 2019), conferred both exclusive commercial rights and the unqualified right to "prosecute any infringement or otherwise unauthorized use." *Id.* at *1. The license here is narrower—it permits Automattic only to "enforce the WordPress trademark ... within the Scope" of its licensed use. CC

¶ 39; Ex. A at 2.  Those limited rights fall well short of the property interest courts have held to establish standing.

Contrary to Counterclaimants' assertion (Opp. at 25), "exclusive licenses with enforcement rights" do not confer standing for Counterclaimants' dilution claims.  *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956 (S.D. Cal. 2021), does not hold otherwise.  As it recognized, "[b]y its terms, § 1125(c)(1) limits standing to the 'owner' of the mark"; therefore, "no standing exists if the license is non-exclusive or where the licensing contract indicates that the licensor retains exclusive ownership of the mark."  *Id*. at 962-63.  An enforcement right tied to licensed commercial use as provided by Automattic's license is categorically different from the right to vindicate the mark's distinctiveness against dilution, which belongs to the owner.

### C.    Original Owners Do Not Retain Standing After Transfer

Counterclaimants' argument that an original owner maintains standing after transferring ownership (Opp. at 25) is unsupported.  In *America Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 898-99 (9th Cir. 1979) (Opp. at 25), the court addressed a dispute about who was the rightful owner in the first place—not whether a former owner who had divested itself of trademark rights could still sue for infringement.  *Id.*  Similarly, *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213 (9th Cir. 2008) (Opp. at 25), remanded for evaluation of whether Halicki "retained a cognizable interest in the use of the mark sufficient for standing as a non-owner," given that she had reserved exclusive "merchandising rights," which were the subject of the alleged infringement.  *Id.* at 1226 n.7.  By contrast, Counterclaimants do not allege that Automattic or Mullenweg reserved any property interest when the WordPress Marks were transferred to the Foundation.  CC ¶ 39.

California common law trademark infringement claims are similar. They require not only first use (Opp. at 25), but *also* ongoing ownership.  Mot. at 25.  First use may establish who was the original owner, but it does not preserve standing after ownership has been transferred.

### CONCLUSION

The counterclaims fail as a matter of law.  WPE respectfully requests that the Court grant WPE's Motion and dismiss all of the counterclaims with prejudice.

DATED:  March 31, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By    /s/ Rachel Herrick Kassabian
Rachel Herrick Kassabian
*Attorneys for Plaintiff WPEngine, Inc.*

WPE'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS