GIBSON, DUNN & CRUTCHER LLP
JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

GIBSON, DUNN & CRUTCHER LLP
MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
33 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.6652

GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*admitted pro hac vice*)
  osnyder@gibsondunn.com
HOWARD HOGAN (*admitted pro hac vice*)
  hhogan@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.2400
Facsimile:    212.351.6335

*Attorneys for Defendants Automattic Inc. and*
*Matthew Charles Mullenweg and*
*Counterclaimants WordPress Foundation and WooCommerce Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>      Defendants. | Case No. 4:24-cv-06917-AMO<br><br>**DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM**<br><br>Hearing:<br><br>Date: June 24, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 4<br>Judge: Honorable Ajay S. Krishnan |
| AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>      Counterclaimants,<br><br>      v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>      Counterdefendant. | |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 24, 2026 at 1:30 p.m. Pacific time, or as soon as the matter may be heard, in Courtroom 4, 3rd Floor, United States District Court, 1301 Clay Street, Oakland, California, before the Honorable Ajay S. Krishnan, Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. (collectively, "Defendants"), will and hereby do move this Court to find the document identified with Bates numbers A8C00706108 through A8C00706110 as attorney-client privileged pursuant to Federal Rule of Evidence 502. This Motion is made pursuant to the Court's Rule 502(d) Order (Dkt. 145) and is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support thereof, the Declaration of Jordan Hinkes, the Declaration of Michael Dore, and such documentary and oral evidence as may be presented at or before the hearing on this motion.

DATED: May 20, 2026

By: /s/ *Michael H. Dore*
　　　　　　　　Michael H. Dore

*Attorney for Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. and Counterclaimant WordPress Foundation*

Gibson, Dunn & Crutcher LLP

2

## I.    INTRODUCTION

Among the hundreds of thousands of pages of documents that Automattic has produced to WP Engine in this litigation is an exchange on July 24, 2024 among participants in an internal Automattic Slack channel titled "trademark-wpe-privileged." The channel was created for the specific purpose of facilitating privileged communications regarding legal strategy concerning WP Engine. It included two members of Automattic's in-house counsel team, including its then-interim and now permanent General Counsel.  The document at issue (bearing Bates numbers A8C00706108 through A8C00706110) reflects discussion and feedback by nonlawyers on a legal strategy presentation deck prepared at the direction of counsel and already withheld by Automattic on grounds of attorney-client privilege and attorney work product protection. These comments on the privileged legal strategy deck were made in furtherance of the legal advice being provided by the two in-house counsel who were included in the "trademark-wpe-privileged" Slack channel.

Automattic originally produced a partially redacted version of the document that failed to redact eleven of the twelve non-lawyer comments on the privileged slide deck. When WP Engine marked that partially redacted version of the document as an exhibit at the deposition of Automattic CFO Mark Davies, Automattic's counsel noted the inclusion of Automattic's counsel in the Slack channel and, after further investigation during a break in the deposition regarding the presentation referenced in the Slack communications, clawed back the full document as attorney-client privileged. The parties subsequently engaged in the clawback negotiation process enumerated in the Rule 502(d) order entered in the case. *See* Dkt. 145. WP Engine challenged the clawback and maintained its challenge after the parties' May 13, 2026 meet and confer. Automattic files this motion supporting its claim of attorney-client privilege over  the document and respectfully requests that the Court uphold Automattic's clawback of the full document on that basis.

## II.    ARGUMENT

### A.    <u>Document A8C00706108 Is Privileged as a Confidential Communication with In-House Counsel Seeking Legal Advice</u>

The attorney-client privilege protects communications whose "primary purpose" is "to give or receive legal advice, as opposed to business … advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th

Cir. 2021). Moreover, "[c]ommunications containing information compiled by corporate employees for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-client privilege," so long as "the legal implications were understood at the beginning of the inquiry and the communications were covered by a veil of confidentiality." *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18, 2003) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981)); *see SEC v. Wyly*, 2011 WL 3366491, at *15 (S.D.N.Y. July 27, 2011) ("Confidential communications between non-lawyer employees acting as necessary agents which facilitate the lawyers work for the client are cloaked by attorney-client privilege.") (citing *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002)).

The Ninth Circuit has likewise recognized that privilege extends to "communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). That is exactly what happened here: the communications in A8C00706108 were made at the express direction of in-house counsel, provided information and feedback necessary for counsel's legal analysis, and were intended for revision and incorporation into a legal strategy document authored by counsel.

Neil Peretz served as in-house counsel at WooCommerce from October 2022 to November 2024. Declaration of Jordan Hinkes ("Hinkes Decl.") ¶ 4. Together with Jordan Hinkes, Automattic's interim General Counsel during the relevant period in 2024, Mr. Peretz was responsible for providing legal advice to WooCommerce regarding its trademark rights and potential enforcement actions against WP Engine, including a potential cease-and-desist letter and related litigation strategy. Hinkes Decl. ¶ 5.

The "trademark-wpe-privileged" Slack channel was created for the specific purpose of facilitating privileged communications regarding WooCommerce's legal strategy concerning WP Engine—not for general business planning, operational decisions, or any purpose other than facilitating privileged legal communications between counsel and the client personnel whose input was necessary to that legal advice. Hinkes Decl. ¶ 6. Access to the channel was limited to those with a need to know. Hinkes Decl. ¶¶ 7–8. The channel was not accessible to Automattic or WooCommerce employees generally; rather, Automattic CEO Matthew Mullenweg started the channel for discussion with

Gibson, Dunn & Crutcher LLP

4

Mr. Hinkes and CFO Mark Davies, and instructed Mr. Hinkes to add those individuals who Mr. Hinkes determined were necessary to the development of legal strategy. *Id.* ¶ 7.

In connection with that legal advice and strategy, Mr. Peretz authored a Trademark Strategy document analyzing WooCommerce's legal position. Hinkes Decl. ¶ 9. On July 23, 2024, Jesse Friedman, a business employee, posted in the "trademark-wpe-privileged" Slack channel that he had worked with Mr. Hinkes, Mr. Peretz, and other Automattic employees to take the Trademark Strategy document that Mr. Peretz authored and turn it into a short- and long-term legal strategy proposal for review. *Id.*

The following day, July 24, 2024, a revised version of the presentation deck was provided to Mr. Peretz and/or Mr. Hinkes for the purpose of obtaining their legal input and advice. Hinkes Decl. ¶ 9. Critically, all versions of the presentation deck were prepared at the direction of, or for review by, legal counsel in connection with the provision of legal advice. Mr. Peretz and Mr. Hinkes also actively worked on the deck by, for example, providing comments in the deck itself. *Id.* The deck was shared with, and commented on by, Mr. Peretz and Mr. Hinkes in their capacities as legal counsel and reflects matters about which WooCommerce intended to and did seek legal advice. *Id.* Every iteration of the deck thus originated from counsel's legal analysis, and counsel maintained active involvement throughout.

The unredacted communications contained in A8C00706108 consist of discussion among Automattic non-legal officers and employees Jesse Friedman, Mark Davies, Steve Deckert, and Matthew Mullenweg—in the channel in which Mr. Peretz and Mr. Hinkes had access at the time— regarding the substance and revisions of the legal strategy presentation deck described above. Hinkes Decl. ¶ 10. Business personnel in this channel were included to provide needed insight to in-house counsel providing legal advice. Hinkes Decl. ¶ 8. Each employee was acting as a corporate intermediary at counsel's direction, supplying operational knowledge about WooCommerce's business and the WordPress ecosystem that counsel required to formulate informed legal advice on trademark enforcement. The messages in the channel reflect feedback on the slides' content, suggestions for refining the legal strategy reflected in the deck, and discussion of escalation approaches and enforcement timelines—all for the specific purpose of informing counsel's legal analysis and for

revision and incorporation into the Trademark Strategy document authored by counsel. Hinkes Decl. ¶¶ 9–10. These communications would not have been made but for the legal advice being provided by Mr. Peretz and Mr. Hinkes; they have no independent business purpose apart from facilitating counsel's trademark enforcement analysis. *See McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990); *see also Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 439 (N.D. Cal. 2010) (holding employee-created summaries privileged where "the specific author of the communication was aware that the audit to which the communication related was being conducted for the purposes of obtaining legal advice and that the document was being created to advance that purpose").

As the court recognized in *ChevronTexaco*, communications between nonlawyers that discuss or transmit legal advice given by counsel are protected by attorney-client privilege. *ChevronTexaco Corp.* 241 F. Supp. 2d at 1077. This Court recently reaffirmed this principle in *In re Uber Technologies., Inc.*, finding a document privileged where it was "prepared at the direction of [an] attorney . . . , apparently for the specific purpose of obtaining feedback (in other words, advice) and approval from [the attorney] and other attorneys." 2025 WL 327742, at *11 (N.D. Cal. Jan. 29, 2025). The same is true here: Although no attorneys appear as participants in this particular day's Slack exchange, the communications are nonetheless privileged because the nonlawyer participants were acting as necessary corporate intermediaries at the direction of counsel, providing information and commentary that counsel needed to formulate legal advice, and contributing content for revision and inclusion in a legal strategy document that counsel authored.

The protected nature of the Slack channel including A8C00706108 further establishes the privileged nature of the comments reflected in the Slack exchange. Of the 147 Slack communications produced from this channel, Defendants are asserting privilege over 135—demonstrating the consistently privileged nature of the channel's communications and the good-faith, tailored scope of Defendants' privilege assertion. Hinkes Decl. ¶ 6. To maintain privilege, communications may not be "disseminated beyond the group of corporate employees who have a need to know in the scope of their corporate responsibilities." *Cohen v. Trump*, 2015 WL 3617124, at *15 (S.D. Cal. 2015) (internal citations omitted). The communications in A8C00706108 satisfy this requirement.

Gibson, Dunn & Crutcher LLP

6

First, the "trademark-wpe-privileged" Slack channel was created for the specific purpose of facilitating privileged communications regarding WooCommerce's legal strategy concerning WP Engine. Hinkes Decl. ¶ 6. It was not used for general business planning, operational decisions, or any purpose other than facilitating privileged legal communications between counsel and the client personnel whose input was necessary to that legal advice. Hinkes Decl. ¶ 6. The channel's name itself—containing the word "privileged"—reflects the parties' contemporaneous understanding and intent that its contents were confidential legal communications, not business discussions. *Cf. Wisk Aero LLC v. Archer Aviation Inc.*, 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023); *see also Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) (noting absence of privilege markings as factor against privilege). Courts treat such express notice of privilege as a critical factor supporting the privilege determination. *See Lewis*, 266 F.R.D. at 438 (upholding privilege where in-house counsel communicated to employees that "all such information is the work product of the Wells Fargo Law Department" and that resulting communications were "protected by attorney client confidentiality and all applicable privilege").

Second, access to the channel was strictly limited to those with a need to know. Hinkes Decl. ¶¶ 7–8. The channel was not accessible to Automattic or WooCommerce employees generally; rather, Automattic CEO Matthew Mullenweg started the channel for discussion with Mr. Hinkes and CFO Mark Davies, and instructed Mr. Hinkes to add those individuals necessary to the development of legal strategy. *Id.* ¶ 7. All participants understood the communications were confidential, and participants left the channel when their involvement was no longer needed. *Id.* To the extent business personnel participated, their involvement was necessary for the provision of legal advice. *Id.* ¶ 8. Legal counsel required input from individuals with knowledge of WooCommerce's operations and the WordPress ecosystem to provide informed legal advice regarding trademark enforcement strategy, and their participation was at the direction of, or in support of, legal counsel and did not alter the privileged nature of the communications. *Id.* Because the communications were limited to individuals whose participation counsel directed, the confidentiality of the privileged communications was not waived.

Gibson, Dunn & Crutcher LLP

7

**B.    That Defendants Originally Produced a Redacted Version does not Preclude a Clawback Claim.**

That Defendants originally produced a redacted version of the A8C00706108 document does not undermine Defendants' clawback or the privileged nature of the full document—the disclosure of privileged comments to a separate document by nonlawyers was inadvertent. The originally produced version of the A8C00706108 document redacted comments directed to counsel and a Google link to the privileged (and withheld) slide deck. The remaining communications in the exchange were produced, despite the comments relating to revisions of that privileged deck prepared at the direction of legal counsel to evaluate legal strategy.

While there is no one definition of "inadvertent" disclosure of privileged information, courts in this Circuit "simply look[] to whether the party intended a privileged work-product protected document to be produced or whether the document production was a mistake." *F.T.C. v. Amazon.com, Inc.*, 2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024) (internal quotation marks and citations omitted). Courts have found that these situations—where privileged documents similar to ones properly produced are disclosed inadvertently—constitute mistakes. *E.g.*, *Epic Games, Inc. v. Apple Inc.*, 2025 WL 4663944, at *2 (N.D. Cal. Feb. 25, 2025). Courts also have found mistakes where documents were inadvertently produced within the context of voluminous productions. *E.g.*, *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *4 (N.D. Cal. Mar. 11, 2011).

*Epic Games* is instructive. There, the court found that production of privileged materials constituted a mistake where the privileged document was materially similar to others previously produced. *Epic Games*, 2025 WL 4663944, at *2 (N.D. Cal. Feb. 25, 2025). Likewise, here, the portions of the A8C00706108 document that reflect comments on the privileged slide deck were materially similar to those that were withheld. This further supports a finding that the production was inadvertent. *See id.* at *2. The inadvertent production of the unredacted portion of the single document, amid the withholding of materially similar privileged communications in the same channel, demonstrates that its disclosure was a mistake.

Even if the documents were not materially similar to those withheld for privilege, "the clawback right in the protective order and Rule 26(b)(5)(B) exists because people make mistakes."

Gibson, Dunn & Crutcher LLP

*Epic Games*, 2025 WL 4663944, at *2.  The *Epic* court observed that Apple "used a large team of reviewers to make privilege calls on a large number of documents, and a mistake does not mean that the company deliberately produced the document."  *Id.*  There, as here, with a production of many thousands of documents, isolated privilege-review errors are an inevitable byproduct of scale, not evidence of waiver.

## III.    CONCLUSION

For the reasons set forth above, the Court should find the full Slack discussion in document A8C00706108 to be attorney-client privileged and uphold Automattic's clawback of the document on that basis.

DATED: May 20, 2026                                    Respectfully submitted,

By: /s/ *Michael H. Dore*
_____
                    Michael H. Dore

*Attorney for Defendants Automattic Inc.,*
*Matthew Charles Mullenweg, and*
*WooCommerce Inc. and Counterclaimant*
*WordPress Foundation*

Gibson, Dunn &
Crutcher LLP

9