May 21, 2026
Hon. Ajay S. Krishnan
Re: WPEngine, Inc. v. Automattic Inc. et al., No. 3:24-cv-06917 (N.D. Cal.)

Dear Judge Krishnan:

Defendants and Counterclaimants ("Defendants") and Plaintiff WP Engine ("WPE") respectfully submit this joint letter brief. Defendants seek (1) to compel WPE to search for and produce documents from four collaboration platforms—Asana, Jira, Figma, and Miro (the "Platforms")—and (2) to depose Regina Yuan on the produced documents after that production.

## I. DEFENDANTS' POSITION

This dispute is straightforward. Defendants' Counterclaims allege that WPE made deliberate branding, naming, and marketing choices designed to trade on the fame and goodwill of the WordPress and WooCommerce marks. WPE asserts nominative fair use. The dispositive question on both is the same: what did WPE's marketing, brand, and SEO teams actually decide about how prominently, how frequently, and to what commercial purpose to feature the WordPress and WooCommerce marks—and why. But WPE produced *shockingly few communications* that discuss its decision to dramatically increase the number and prominence of Defendants' trademarks in its marketing materials—including decisions to change course to add the term "WordPress" to plan and product names. The record, however, establishes that WPE did not search Asana, Jira, Figma, and Miro—collaboration platforms where WPE's marketing team assigns tasks, debates copy, comments on creative, and approves campaigns. WPE's email, Slack, and Google Drive productions show WPE talking *around* those decisions. The Platforms show them *making* them.

These documents should have been produced. They are responsive to RFP Nos. 2, 3, 18, 26, 27, 88, 89, 90, 93, and 179, served months ago. The Platforms were identified by WPE's own Head of Brand and Rule 30(b)(6) designee in sworn testimony. And the handful of Platform records that surfaced incidentally through email and Slack searches—four of which are attached as exhibits—confirm that the substantive trademark deliberations Defendants have been seeking live on systems WPE *never searched*. This is not a close call about proportionality or scope; it is a refusal to look where the evidence is. Defendants raised the deficiency at Ms. Yuan's April 8 deposition and in five subsequent writings. WPE is improperly hiding this key evidence and claiming the Court should look the other way because they have produced 600,000 pages. It does not matter how many pages were produced if they exclude the documents showing WPE's intent.

### A. WPE Delayed and Obstructed Defendants' Examination of Ms. Yuan.

WPE refused for nearly *six months* to provide deposition dates for Ms. Yuan—its Head of Brand and Rule 30(b)(6) designee on eleven trademark-related topics—ignoring nine separate requests. At WPE's insistence, Defendants' counsel ultimately traveled to Madrid, where Ms. Yuan is only temporarily located, to take her two-day deposition on the lone dates WPE offered. At the end of the first day, WPE refused to produce her for the second day.

### B. WPE is Withholding Central Documents.

WPE never disclosed the Platforms in its data source disclosures and Defendants did not know how extensively WPE used them until Ms. Yuan's testimony established that the Platforms are where WPE's operative brand and marketing work happens. She testified that Asana is ███████ ██████████████████████████ (Yuan Vol. 1 Tr. 102:23–24) to capture ██████

1

about ███████████████ (Id. 102:8–9), ████████████████ ██████████ ████████████████ (Id. 102:1–3), ███████████████ (Id. 103:7-11), and ████████████ (Id. 103:12-16)—exactly the communications in which branding and naming decisions are debated and signed off. She testified that Figma is used ████████ by everyone with a ███████████ and that Miro houses █████████████████████ (Id. 106:11-12, 111:23-24). In a published interview that Yuan confirmed contained her own written answers, (Id. 66:10-16), she explained that WPE ████████████████ during her tenure, meaning that prior to 2024, it was used by WPE.

Critically, WPE's documents and Ms. Yuan's testimony establish that a key approval workflow for WPE's 2024 brand refresh, which lies at the heart of the counterclaims, ran through Figma. █



Yuan Vol. 2 Tr. 361:16-17.

Hogan Decl. Ex. 1.  Ms. Yuan testified that

Yuan Vol. 2 Tr. at 365:19-20.

Hogan Decl. Ex. 1. When the home page went live, the headline text read, "we power the freedom to create *on WordPress*." (emphasis added). Ms. Yuan could not testify when

Yuan Vol. 2 Tr. at 384:10-386:16. WPE's Figma files would have the answer but WPE has refused to search them, even though it has shown it is capable of doing so by producing one lone Figma file specifically identified during the first day of Yuan's testimony

WPE's production does contain a few automated notification emails sent from Asana,[1] Jira (43 documents), and Figma (2 documents) caught downstream in WPE's email searches, along with Slack threads referencing Miro boards. Each is a glimpse of a substantive workflow on a platform WPE has refused to search. The accompanying Hogan Declaration provides four representative examples. The Asana record (Ex. 2) is a █████████████████

The Figma record (Ex. 3) is an

The Jira record (Ex. 4) is an

The Miro record (Ex. 5) is a

These documents are direct evidence on WPE's central defense. Nominative fair use under *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) requires that "only so much of the mark" be used "as is reasonably necessary to identify the product." They show WPE's employees ████████████████

---

[1] WPE argues the automated Asana emails it produced render additional discovery cumulative. Not only are the emails incomplete records, including ████████████████ (Hogan Decl. Ex. 2), WPE has produced only 27 such emails covering 10 threads—startlingly few for a platform that is ████████████

████████████████████████████████ That is the lexicon of commercial deployment, not necessity. If four documents pulled from WPE's automated notifications reveal that material, the unproduced material on these ████████████ platforms must contain orders of magnitude more. *See Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, 2018 WL 7488924 (E.D.Va., 2018) (recommending sanctions for failure to produce internal deliberations about use of trademark).

### C. WPE's Eleventh-Hour Deposition Offer Was Designed to Foreclose Examination.

Defendants identified the platform deficiencies on the record at the close of Ms. Yuan's April 8 deposition, memorialized those demands in an April 14 letter, and followed up on April 16, 22, 26, and May 4. WPE did not substantively respond until May 6, when it refused, demanding "reciprocity." But unlike Defendants, WPE points to no production gap that need be filled.

To satisfy a separate agreement allowing for a second day with Ms. Yuan, on May 11—three days before fact discovery closed—WPE offered her for remote deposition on May 14 with a hard stop of 11:00 a.m. Pacific. Defendants partially deposed Ms. Yuan on May 14 under protest and on the present record. But that deposition cannot substitute for the one Defendants are entitled to—a deposition taken with the documents her testimony identified.

### D. Relief.

Defendants respectfully request an order (i) requiring WPE to search and produce documents from Asana, Jira, Figma, and Miro and (ii) permitting a further session of Ms. Yuan's deposition with the fact discovery cutoff extended for that limited purpose.

### II.    WPE'S POSITION

Defendants' Motion demanding that WPE search four brand new document management platforms for more documents beyond the over 600,000+ pages WPE has already produced, is a last-minute fishing expedition riddled with mischaracterizations of the law and facts that should be rejected.

### A.    Defendants' Arguments Squarely Contradict The Discovery History Here

Defendants conspicuously omit that the parties specifically exchanged data sources and custodians *last year*—and Defendants never complained or asked for additional platforms to be searched—despite their own use of the very same platforms, and possession of documents regarding WPE's use of them since last year.  Their last-minute effort to pressure WPE to do so now must fail. Defendants' speculation does not create a "gap" in WPE's production

WPE has conducted a comprehensive search across all disclosed data sources and for all disclosed custodians, and produced the responsive, non-privileged documents located after a reasonable search.  Defendants' insistence that WPE rerun search terms on *four more platforms* at the eleventh hour is wholly unwarranted.  It also appears to be based on their erroneous assertion that the dispositive legal question turns on WPE's *decision making process* regarding marketing and branding.  It does not.  *See, e.g., New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (establishing three-factor nominative fair use test, each of which turns exclusively on public marketing materials); *Myung Ga, Inc. v. Myung Ga of MD,* Inc., 2011 WL 3476828, at *5 n.4 (D. Md. Aug. 8, 2011) ("All of the factors in the likelihood of confusion test go to publicly available facts, as the entire issue is whether the public is likely to be confused").

In all events, Defendants have had ample opportunity to fully explore WPE's decision making process. WPE has produced thousands of documents, including emails, Slack messages, surveys and raw survey data, and brand planning slide presentations, including in response to Defendants' demands following Ms. Yuan's first deposition. *See* Keohane Decl. ¶¶ 2, 5, 8. Defendants deposed Ms. Yuan for two days; they deposed WPE's CEO for two days; and they had the opportunity to depose WPE's Chief Marketing Officer, but chose to cancel her deposition. *See id.* ¶ 7. Regarding the "2024 rebrand" that Defendants contend is "at the heart of the counterclaims" and is critical to their Motion, Ms. Yuan *led* the "rebrand" and testified fulsomely across two days about decision making relating to it, including answering hours of questions concerning internal presentations WPE produced concerning it. Her testimony confirms that the Platforms are *unlikely* to yield the type of unique, substantive strategic discussions or approvals Defendants claim they are seeking.

Defendants' eleventh hour, scorched-earth demand that WPE redo document discovery on four additional *platforms*, which cannot be collected from and searched on the scale demanded without an outside vendor's assistance, and many hours of attorney time, is not "reasonably targeted" or proportional to the needs of the case, and "the burden or expense of the proposed discovery outweighs its likely benefit." E-Discovery Guideline 1.03; *see also* FRCP 26(b)(2); *Martin v. Monsanto Co.,* 2017 WL 5172205, at *6 (C.D. Cal. Apr. 10, 2017) (denying discovery into a newly identified division of Defendants' company because "discovery is not to be used for a fishing expedition to investigate mere speculation"); Keohane Decl. ¶ 9. Tellingly, even though *Defendants use these Platforms too,* they have categorically refused to search them for documents responsive to WPE's requests. Keohane Decl. ¶ 10. Their Motion should be denied in its entirety.

**B.      Ms. Yuan's Testimony Confirms That No Additional Searches Are Required.**

Ms. Yuan's testimony confirms that the Platforms are *not* repositories of the internal trademark-related approvals and decision-making communications as Defendants claim. She testified that ███████████████████████████████████████████████████████████████████*—not* through any of the Platforms. Ex. E at May Tr. 413:25-414:5. Ms. Yuan said that she ████████ ███████████████████████████████████████████████████████████████████ *Id.* at 367:10-12, 368:9-11. Defendants offer zero evidentiary support for the proposition that branding decisions ████████████████████████ these Platforms, much less that these supposed "debates" and approvals had to do with whether or not WPE would use "WordPress" in its marketing and why. Ms. Yuan's testimony undermines their arguments.

**Asana**:  Asana is a project tracking tool used for workflow management, such as ████████ ████████████████████████████████████████████████████ Ex. E at Apr. Tr. 101:2-10. WPE does not use Asana for naming decisions. *Id.* at May Tr. 401:24-402:7, 404:2-405:12. Because WPE ████████████████████ the platform does not predate WPE's use of email, Slack, and Google Drive, which Ms. Yuan testified are the primary sources of written communications about ████████████████████████████. *Id.* at Apr. Tr. 103:4-5, May Tr. 387:4-17. Further, as Ms. Yuan testified, ████████████████████████, which reflects the contents of the Asana post, rendering additional discovery beyond emails (which WPE has produced) cumulative. *Id.* at May Tr. 426:1-8.

**Jira**:  Jira is a platform used ████████████████████████; ████████████████████████. Ex. E at Apr. 8 Tr. 104:8-16; *accord id.* at May Tr. 296:12-19. Ms. Yuan's familiarity with the tool came ████████████████████████████. *Id.* at Apr. 8 Tr. 104:24. Nothing Ms. Yuan said about it remotely justifies Defendants' demands.

**Miro**:  Miro is a visual collaboration platform used for ███████████████
████████████████████████████████████████████████████ Ex. E at Apr. Tr.
111:4-24.  As such, it does not capture the type of communications Defendants claim to be seeking.

**Figma**:  Figma is a design tool, and Ms. Yuan was unaware of any additional responsive
communications within it.  Ex. E at Apr. Tr. 106:7-8, 106:16-19, 107:6-13.  As she testified, ████
██████████████████████████████████████████████████████████
████████████████████████████ *Id.* at May Tr. 295:6-12, 387:4-17.
Defendants' speculation that WPE's Figma files "would have the answer" of who added "on
WordPress" to the homepage headline contradicts Ms. Yuan's testimony.  *Id*. at 385:14-25,
386:11-22, 387:4-17.  It is also irrelevant; what matters is what the homepage actually *looked like*,
which is not disputed.

Defendants are incorrect that WPE's production confirms the need for expanded searches.  Both
Exhibits 2 and 3 postdate WPE's 2024 brand refresh, WPE's receipt of Defendants' cease and
desist letter in September 2024, (*see* Dkt. 252 at 14) and the filing of the complaint (Dkt. 1), by
which time the website was changed to the point Defendants do not allege infringing uses on it
(*see* Dkt. 238 ¶ 215).  Exhibits 4 and 5 reflect the redundancy of additional searches given the
production of the substantive communications from searched platforms.  The production dates of
these exhibits further confirm that Defendants could have raised these supposedly critical issues
in the many months before Ms. Yuan's *first* deposition. Keohane Decl. ¶ 2.  Further, their
arguments about "commercial deployment" and on search engine "authority" are legally irrelevant;
nominative use does not prohibit commercial use; it allows defendants to advertise in ways that
actually reach consumers.

### C.    Defendants' Refusal to Search These Platforms Is Independently Disqualifying

Defendants' refusal to search the same Platforms themselves, speaks volumes about the claimed
relevance and the asymmetrical burden they seek to impose.  *See, e.g.*, Exs. A-D; Keohane Decl.
¶¶ 10-15.  By Defendants' own logic, their Platforms must also contain materials, approvals, and
communications that relate to relevant facts, including work they did as part of their efforts to
"steal[] WP Engine customers," and how and why they used and promoted the Challenged Marks.
*Id*.  Any order compelling WPE to search any Platform should be conditioned on full reciprocity.

### D.    No Further Deposition of Ms. Yuan Is Warranted

Defendants' demand to depose Ms. Yuan for a third day—as much time as they agreed to for Matt
Mullenweg, a named defendant, the CEO of Automattic, and the founder of the WordPress
Foundation—is frivolous.  *See* Keohane Decl. ¶ 4.  On April 8, Defendants spent hours treating
Ms. Yuan as a Rule 30(b)(6) deponent on WPE's discovery collection efforts—a topic they had
agreed to *withdraw*.  *Id*.  Although WPE invited Defendants to continue deposing Ms. Yuan that
day past the seven hours on the record, they declined.  *Id*.  When WPE made Ms. Yuan available
again on May 14—the day Defendants themselves requested—they examined her about *only one*
of the recently produced documents, and wasted the majority of their time to laying the
groundwork for this Motion.  *Id*. ¶ 5.  Having squandered two days, they are not entitled to a third.

The Court should deny Defendants' Motion, which seeks to impose a heavy, and asymmetric,
burden on WPE with no foundation that non-cumulative responsive documents exist or are
proportionate to the needs of the case.  If the Court compels any new searches, WPE respectfully
requests that Defendants be ordered to search the same Platforms for responsive documents.

Dated:  May 21, 2026

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Margret M. Caruso*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
*Attorneys for Plaintiff WPEngine, Inc.*


GIBSON DUNN & CRUTCHER, LLP

By:  */s/ Howard S. Hogan*
Howard S. Hogan
Josh A. Krevitt
Orin Snyder
Michael H. Dore
Joseph R. Rose
Ilissa S. Samplin


*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

6

**E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Plaintiff and the other signatories have concurred in the filing of this document.

*/s/ Howard S. Hogan*