QUINN EMANUEL URQUHART & SULLIVAN, LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for WPEngine, Inc*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation <br><br> Defendants. | CASE NO. 4:24-cv-06917-AMO-ASK <br><br> **DECLARATION OF KAITLIN E. KEOHANE IN SUPPORT OF WPENGINE, INC.'S PORTION OF JOINT DISCOVERY LETTER** <br><br> Judge: Honorable Araceli Martínez-Olguín |
| AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation, <br><br> Counterclaimants, <br><br> vs. <br><br> WPENGINE, INC., a Delaware corporation, <br><br> Counterdefendant. | |

## <u>DECLARATION OF KAITLIN E. KEOHANE</u>

I, Kaitlin E. Keohane, hereby declare and state as follows:

1.      I am an attorney licensed to practice before this Court and admitted to the State Bar of California.  I am Of Counsel at Quinn Emanuel Urquhart & Sullivan, LLP and counsel for WPEngine, Inc. ("WPE") in this matter.  I make this declaration of my own personal knowledge and, if called to testify, I could and would competently testify hereto under oath.  I submit this declaration in support of WPE's portions of the parties' Joint Discovery Letter.

2.      In September 2025, the parties disclosed relevant ESI custodians and searches including email, Slack, Google Drive, and the Zendesk platform.  WPE conducted a reasonable and proportionate search for responsive documents on these platforms using disclosed search terms.  WPE has made 44 substantial productions, encompassing thousands of documents.  As part of that production, WPE produced Exhibits 2, 3, 4 and 5 to the Declaration of Mr. Howard Hogan to Defendants before December 11, 2025.

**<u>Circumstances of Ms. Yuan's Depositions</u>**

3.      All of WPE's employee depositions were in the U.S. except for that of Ms. Yuan, who resided and worked in Madrid, Spain at the time of her depositions (and still does).  WooCommerce and Automattic insisted that one their employees be deposed in the non-U.S. city where he lives and works.

4.      During Ms. Yuan April 8, 2026, deposition, Defendants spent significant time asking her questions related to its 30(b)(6) topic 1 concerning WPE's electronically stored information and databases and document preservation and collection efforts, which Defendants had agreed to withdraw as a topic.  Prior to the deposition, the parties had negotiated an agreement allowing for multiple days of testimony for certain witnesses designated on multiple 30(b)(6) topics, including Ms. Yuan.  However, leading up to Ms. Yuan's deposition it became apparent that Defendants were not going to agree to equivalent treatment as between WPE's witnesses and Mr. Mullenweg, himself a named defendant and Automattic's CEO.  Accordingly, it is my understanding that WPE stated at the outset of the deposition that Ms. Yuan, designated on 11 topics, would only be available for that day's deposition if Defendants did not agree to additional deposition time with Mr. Mullenweg, who

DECLARATION OF KAITLIN E. KEOHANE IN SUPPORT OF WPENGINE, INC.'S
PORTION OF JOINT DISCOVERY LETTER

was designated on 29 topics. With an hour left in the deposition, and the days for Mr. Mullenweg's deposition still not resolved, WPE reminded Defendants of this one-day limit. WPE's counsel invited Defendants to continue the deposition beyond seven hours that day while still in Madrid, but Defendants declined to do so.

5.    The following week, Defendants demanded a second day with Ms. Yuan. They later requested that second day be held on May 14, 2026. WPE worked diligently to accommodate that request and made Ms. Yuan available that day, provided that the deposition would end by 8 p.m. local time for Ms. Yuan. Defendants selected a start time of 1 p.m. local time for the deposition. During the second day, Defendants only questioned Ms. Yuan about one of the new documents produced after their requests following her April 8 deposition, even though WPE had produced, among other things, a presentation concerning a 2025 brand awareness survey (prepared after the discovery cutoff date), raw data for three brand awareness surveys, YouTube lift study information, rebranding documents, various internal marketing presentations, search traffic data, Google Analytics data, competitor battle cards, and a Figma file with her competitive research into fonts and color palettes.

6.    Attached hereto as **Exhibit E** are true and correct copies of excerpts from the April 8, 2026, deposition transcript and the May 14, 2026, deposition transcript of Regain Yuan, portions of which are designated "Attorney's Eyes Only."

7.    Defendants deposed Ms. Yuan for two days, deposed Heather Brunner, WPE's Chief Executive Officer, for two days, and they scheduled the deposition of Darcy Kutz, WPE's Chief Marketing Officer, for March 27, 2026, but informed WPE approximately four days before that they would not depose her.

**WPE's Diligent And Thorough Response to Defendants' April 14 Letter**

8.    WPE did not ignore or delay responding to Defendants' concerns. WPE's counsel promptly reviewed Defendants' nine-page (single spaced) April 14 letter and conducted a good-faith investigation into each of the categories Defendants identified, including 12 different categories and five newly identified data platforms, including ones Ms. Yuan testified she did not use at WPE. WPE provided its substantive written response on May 6, 2026, agreeing to investigate

-3-

and produce non-privileged, responsive documents relating to nearly all of the categories Defendants identified, apart from general searches of the newly identified platforms. Specifically, WPE searched for non-privileged, responsive documents in each of the following categories: (1) additional survey materials and data; (2) Dovetail data; (3) YouTube Lift Study data; (4) paid search team readouts on creatives; (5) A/B testing data; (6) third-party ad publisher data; (7) data from WPE's third-party vendor, Power Digital Marketing; (8); A/B testing hypotheses; (9) contributions materials; (11) competitor research and battle cards; and (12) business analytics and URL traffic reports. In addition, because Defendants had demanded production of one particular file from Figma, Ms. Yuan's competitive research into fonts and color palettes, WPE conducted a targeted search for it and produced that, too—by exporting individual slides as individual PDFs and compiling them, and to produce the associated comments, by screen grabbing each comment (because there is no native export for comments from Figma) along with the slide that it was on and compiling those in presentation order. WPE worked diligently and completed the supplemental production before Ms. Yuan's May 14, 2026 deposition.

9. Searching Asana, Jira, Figma, and Miro (the "Platforms") for all previously searched terms would require the use of specialized outside vendor's assistance, which would require significant time and resources, including attorney review time. For example, my understanding is that it is not possible for WPE's employees to search comments or notes in Figma across multiple files without third-party tools or plugins. During the parties' meet and confer efforts, WPE reiterated its position that searching the Platforms is not proportional to the needs of the case and is not likely to uncover responsive or relevant information beyond what has already been produced.

**Defendants' Refusal To Search The Same Platforms For Documents**

10. WPE informed Defendants that if they insisted on the additional Platform searches, that obligation must apply equally to both sides. Defendants refused to agree to any reciprocal search obligation, even though Defendants' documents reveal they use the same Platforms (i.e., Asana, Jira, Figma, and Miro), as Exhibits A through D reflect.

11. Attached hereto as **Exhibit A** is a true and correct copy of excerpts from a document from Defendants' production bearing the Bates number A8C00711256, designated "Attorney's

-4-

Eyes Only." The document is an internal Slack thread dated October 8, 2024, ████████ ████████████████████████ ████████████████ This demonstrates Automattic's use of Miro as a project management tool and confirms that a Miro board was actively created and shared among team members in connection with ████████████████████████████.

12. Attached hereto as **Exhibit B** is a true and correct copy of excerpts from a document from Defendants' production bearing the Bates number A8C00984085, designated "Attorney's Eyes Only." It is a September 16, 2024, ████████████████████ ████████████████████ ██████, confirming that Figma is a central repository of design work product at Automattic. As such, it surely contains design work product regarding how and why Automattic and WooCommerce's used and promoted the Challenged Marks.

13. Attached hereto as **Exhibit C** is a true and correct copy of excerpts from a document from Defendants' production bearing the Bates number A8C01348573, designated "Attorney's Eyes Only." The document is ██████████████████ ████████████████████ ████████████████████████ — an issue that is the subject of WPE's tortious interference and antitrust claims. The document demonstrates Automattic's use of Jira as a substantive project management tool, noting that ██ ██████████████████. Defendants have refused to confirm that they searched Jira for any notes or other statements regarding their reasons for and impressions of the client migration in connection with their campaign to ████████████ A8C01338043.

14. Attached hereto as **Exhibit D** is a true and correct copy of excerpts from a document from Defendants' production bearing the Bates number A8C00218782, designated "Attorney's Eyes Only." The document is ██████████████████ ████████████████████████. This demonstrates Automattic's use of Asana as a substantive project management tool. The post explicitly states that ██████████████████

K

███ making Asana a primary system for tracking and coordinating Automattic engineering work product.  Defendants' engineering efforts are relevant to, at a minimum, WPE's claims concerning their hijacking of WPE's ACF plugin with the SCF plugin.  TAC ¶¶ 157-168; 567-581.

15.     Defendants' use of the Platforms are likely to contain relevant information (at least to the same extent they argue WPE's uses do), responsive to at least the following WPE RFPs:

a.  **RFP 205:**  All Documents concerning the importance, role, or significance of the Challenged Terms in connection with advertising, promoting, marketing, selling, offering, or distributing Your products and services.

b.  **RFP 300:**  All Documents and Communications Related to the size, prominence, and quantity of the WordPress Marks and the WooCommerce Marks in connection with Your advertisement, promotion, marketing, sale, offers, or distribution of Your products and services.

c.  **RFP No. 14:** All Documents and Communications from January 1, 2024 to the present Relating to any efforts by Defendants to encourage customers, employees, users, partners or other third parties who have a relationship with WPE to discontinue or reevaluate the nature of such relationship, Including any Communications with such customers, employees, users, partners, or other third parties related to WPE or its services.

d.  **RFP No. 19:** All Documents and Communications Relating to any campaigns, advertising, promotions, or statements by Defendants, or on wordpress.org from January 2023 until present, to encourage customers to switch from WPE's products or services to (i) Defendants' products or services or (ii) any other company's products or services.

e.  **RFP No. 99:** All sales pitches, solicitations, or other Documents used by YOU to solicit new customers since September 20, 2024 that reference WPE in any way.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 21st day of May, 2026, in San Francisco, California.

/s/ *Kaitlin E. Keohane*

Kaitlin E. Keohane

Case No. 4:24-cv-06917-AMO-ASK
DECLARATION OF KAITLIN E. KEOHANE IN SUPPORT OF WPENGINE, INC.'S
PORTION OF JOINT DISCOVERY LETTER