May 21, 2026
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 4:24-cv-06917 (N.D. Cal.)

Dear Judge Krishnan:

WPEngine, Inc. ("WPE") moves to compel Mr. Mullenweg and Automattic Inc. ("Defendants") and WooCommerce Inc. and the WordPress Foundation (collectively, the "Counterclaimants") to provide substantive responses to WPE's Interrogatories as set forth below. The parties met and conferred on March 6 and May 20, 2026, but could not resolve the dispute; Defendants, citing insufficient time, declined to provide their portion of the joint letter, necessitating this submission.

I.      **WPE'S POSITION**

Defendants' and Counterclaimants' have responded with one of two improper tactics: flat refusals to answer, or partial answers that withhold the very information the interrogatories require. The deficiencies span the core issues in this case: Defendants' trademark enforcement (or lack thereof), their anticompetitive and otherwise wrongful conduct against WPE, the takeover of the ACF plugin, the governance and control of wordpress.org and the Foundation, and Defendants' public statements about the "open" and "free" nature of WordPress.

**Interrogatory No. 2 to Defendants** seeks the date Defendants contend WPE's allegedly improper use of trademarks began—directly relevant to their counterclaims and to WPE's laches and estoppel defenses. *E.g.*, TAC ¶¶ 42, 456, 458. Defendants answer only that use began "in the early 2020s." A four-year window is no answer; Defendants must commit to the date they will rely on.

**Interrogatory No. 3 to Defendants and Interrogatory No. 3 to WooCommerce** ask Counterclaimants to identify instances in which they sought to license, or were asked to license, the WordPress and WooCommerce marks. The responses are non-answers. They list ███████ ███████████████████—a hedge that itself admits the list is incomplete—and omit the dates, circumstances, and terms the interrogatories expressly require. WooCommerce asserts that it has entered into ████████████████████████████████████████████ █████████████████████████████████████████ This enforcement record is central to WPE's antitrust and trademark claims. *E.g.*, TAC ¶¶ 196, 206-227, 445, 519.

**Interrogatory No. 10 to Mr. Mullenweg** asks for a complete inventory of his accounts and messaging platforms. Mr. Mullenweg hedges throughout—using "may have" rather than committing—omits activation dates, fails to state whether each account was used to discuss WordPress, Automattic, or WPE, and provides no user names or phone numbers for his Telegram, Signal, WhatsApp, or iMessage accounts. A definitive inventory is essential to test the completeness of Mr. Mullenweg's production from those channels.

**Interrogatory No. 11 to Mr. Mullenweg** asks him to detail Defendants' efforts to exclude, retaliate against, or discourage third parties from doing business with WPE. Mr. Mullenweg refuses to answer subpart (f)—which seeks statements made to disrupt WPE's business relationships—on the ground that it "calls for a legal conclusion." That objection is meritless: subpart (f) asks for the statements themselves, not their legal characterization. Mr. Mullenweg's retaliatory outreach to WPE customers is core evidence for WPE's interference and antitrust claims. *E.g.*, TAC ¶¶ 122-135, 519.

**Interrogatory No. 13 to Mr. Mullenweg** seeks the Foundation's governance history since 2005. Mr. Mullenweg identifies only the current board and general descriptions of their responsibilities.

1

He provides none of the detail the interrogatory requires—prior members, trustees, major donors, officer histories, or selection processes dating to the Foundation's founding. The Foundation's governance bears directly on WPE's allegations that Mr. Mullenweg and Automattic exercised de facto control over nominally independent entities to advance their anticompetitive scheme, and on WPE's promissory estoppel claim, among others. *E.g.*, TAC ¶ 6, 89, 196, 347.

**Interrogatory No. 15 to Mr. Mullenweg** concerns Defendants' representations that WordPress is "free" and "open" (subpart (a)) and not commercially controlled (subpart (b)). Mr. Mullenweg refuses to answer these subparts as "not relevant." The objection is baseless: those subparts are central to WPE's promissory estoppel and antitrust claims. TAC ¶¶ 437-440, 516-541.

**Interrogatory No. 16 to Mr. Mullenweg and Interrogatory No. 14 to Automattic** ask for complete, current records of Defendants' communications with WPE's actual and prospective customers. Mr. Mullenweg refused to answer subpart (c) which concerns the blocking of wordpress.org access, claiming it "does not relate to any pending claim or defense." That position is untenable. The block is the foundation of at least WPE's interference and antitrust claims; Defendants' customer communications about it are direct evidence. *E.g.*, TAC ¶¶ 122-127.

**Interrogatory No. 10 to Automattic, Interrogatory No. 4 to WooCommerce, and Interrogatory No. 4 to WordPress Foundation** ask Counterclaimants to identify instances where Defendants identified potential infringement of the WordPress marks but chose not to enforce (subpart (b)). Selective enforcement is squarely at issue. *E.g.*, TAC ¶¶ 445, 447. Nonetheless, Counterclaimants invoke work product—an objection that cannot shield non-privileged, non-attorney-driven facts. These interrogatories do not seek legal opinions. They seek "instances" of identified non-enforcement and a description of Counterclaimants' "processes, policies, and activities for tracking, monitoring, and enforcing" the marks. Those are factual subjects that no blanket work-product objection can sweep aside.

**Interrogatory No. 11 to Automattic** asks when Automattic first became aware of WPE's use of the marks and who learned of it. Automattic provided partial timing information but refused to identify the persons involved or how they became aware. Its assertion that all such internal discussions are shielded by privilege and work product is overbroad: the identity of who observed WPE's marketing materials is a purely factual matter. Automattic cannot convert factual awareness into privilege merely because lawyers were later consulted. The timing and circumstances of its awareness are central to WPE's laches and estoppel defenses. *E.g.*, TAC ¶¶ 42, 456, 458

**Interrogatory No. 12 to Automattic** seeks the full scope of Automattic's retaliatory communications with WPE's customers. Automattic answered in part but refused outright to answer subpart (f) seeking statements intended to disrupt or harm WPE's business relationships, on the grounds that it calls for a legal conclusion and is a disputed factual issue. That refusal is improper: the interrogatory asks for facts (the statements themselves), not a legal conclusion as to their effect; and a disputed factual issue is a quintessential proper subject for an interrogatory.

**Interrogatory No. 13 to Automattic** seeks Automattic's corporate structure and ownership history since 2005—equity holders, board members, subsidiaries, affiliates, and related entities. Automattic response is skeletal—omitting board members, subsidiaries and affiliates (beyond construing the definition to cover only six business lines), and providing no equity holder history dating back to 2005. The relationships among Mullenweg, Automattic, the WordPress Foundation, and wordpress.org, are central to this case. *E.g.*, TAC ¶¶ 6, 57-67.

WPE respectfully requests that the Court compel complete responses.

2

Dated:  May 21, 2026

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Yury Kapgan*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
Gregory A. Fuoco
*Attorneys for WPEngine, Inc.*