# EXHIBIT A
## Filed Under Seal

**Disputed Interrogatory Responses From Defendants/Counterclaimants**

**Interrogatory No. 2 to Defendants:** State all facts supporting Your contention that WPE is misusing [trademarks] as identified in the September 23, 2024 Letter from James R Davis II to WPE on behalf of Automattic and WooCommerce, Inc., Including the date such claimed misuse began, the nature of such misuse, the trademarks involved, and all Documents and Communications reflecting, Regarding, identifying or complaining about such misuse.

**Automattic Response to Interrogatory No. 2:** Automattic objects to this Interrogatory on the grounds that the terms "misusing" and "misuse" are vague and ambiguous, including because Automattic has not asserted a claim or contention of trademark misuse against WP Engine. Automattic further objects to this Interrogatory to the extent it seeks contentions prior to the deadline therefor.

Subject to and without waiver of the foregoing objections, Automattic responds as follows: Automattic herein incorporates by reference the counterclaims filed by Automattic Inc., Matthew Charles Mullenweg, WordPress Foundation, and WooCommerce, Inc. on February 17, 2026. In the early 2020s, following Silver Lake Technology Management L.L.C.'s ("Silver Lake") assumption of control over WP Engine, WP Engine began to progressively shift how it uses the WordPress and WooCommerce Marks. WP Engine began advertising itself for the first time as "The WordPress Technology Company," allowed its partners to it as "WordPress Engine", and used other similar phrases implying a partnership with or endorsement by Defendants despite lacking any such relationship. In 2021, WP Engine began including WordPress in the names of its product offering with its product lines "Headless WordPress," "Managed WordPress," "Core WordPress," and "Essential WordPress," violating the express terms of the WordPress Foundation Trademark Policy, which prohibits the use of the WordPress trademarks in product names. WP Engine has also offered products by advertising "WooCommerce Hosting" on its website. And, over time, WP Engine has progressively increased its use and prominence of the WordPress and WooCommerce Marks throughout its marketing and branding materials, including by displaying "WordPress" on its website in an almost identical font and appearance to that used on WordPress.com; drastically increasing the number of appearances of "WordPress" and "WooCommerce" on its website to manipulate search engine indexing and ad targeting; and employing aggressive search engine optimization and keyword advertising strategies for the WordPress and WooCommerce Marks to mislead consumers. WP Engine did not display any user-facing disclaimers that would clarify the lack of affiliation with Defendants.

WP Engine's use of the WordPress and WooCommerce Marks has led to frequent and pervasive actual consumer confusion. Additionally, WP Engine offers the same types of products and services as those offered by Defendants, uses the WordPress and WooCommerce Marks verbatim in its promotional materials, promotes its products in the same marketing channels as Defendants, markets to unsophisticated consumers, built its business model around leveraging the WordPress and WooCommerce Marks, and is likely to continue developing WordPress and WooCommerce–related products and services. WP Engine does not need to describe itself as a WordPress or WooCommerce company, and its use of the WordPress and WooCommerce Marks far exceeds what is reasonably necessary to describe its product and service offerings. WP Engine not only uses the WordPress and WooCommerce Marks frequently, but it also uses them in a manner that implies sponsorship or endorsement by Defendants, including by using "WordPress" in its product names and presenting itself to consumers as the official WordPress in search engine advertising. WP Engine's use of the WordPress and WooCommerce Marks goes well beyond the recognized limits of nominative fair use and creates a strong likelihood of confusion. Exemplars of WP Engine's infringing use of the WordPress and WooCommerce Marks were appended to the September 23, 2024 letter as Exhibits B and C. Dkt. 51-1 at 21-36.

In addition, pursuant to Federal Rule of Civil Procedure 33(d), Automatic has produced (and may continue to produce on a rolling basis) non-privileged documents from which information responsive to this Interrogatory can be obtained, including without limitation: A8C00027985, A8C00073756, A8C00076482, A8C00076580, A8C00076595, A8C00076597, A8C00076656, A8C00076738, A8C00076771, A8C00076780, A8C00076783, A8C00076787, A8C00076803, A8C00076827, A8C00076836, A8C00076846, A8C00076873, A8C00076884, A8C00076890, A8C00076899, A8C00076917, A8C00076937, A8C00077328, A8C00077329, A8C00077330, A8C00077331, A8C00077332, A8C00077333, A8C00077334, A8C00077335, A8C00104026, A8C00106335, A8C00193327, A8C00224973, A8C00269006, A8C00269007, A8C00269375, A8C00269377, A8C00271529, A8C00272829, A8C00272858, A8C00373904, A8C00680118, A8C00680181, A8C00680201, A8C00680209, A8C00680218, A8C00680228, A8C00680235, A8C00680236, A8C00680246, A8C00680254, A8C00680263, A8C00680267, A8C00680271, A8C00680274, A8C00680278, A8C00680283, A8C00680287, A8C00680292, A8C00680300, A8C00680307, A8C00680318, A8C00680379, A8C00680422, A8C00680448, A8C00680455, A8C00680457, A8C00680465, A8C00680468, A8C00680472, A8C00680481, A8C00680487, A8C00680507, A8C00680518, A8C00680523, A8C00680531, A8C00680538, A8C00680545, A8C00680557, A8C00680566, and A8C00680569.

**Mullenweg Response to Interrogatory No. 2:** Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows: Mr. Mullenweg herein incorporates by reference the counterclaims filed by Mr. Mullenweg, Automattic Inc., WordPress Foundation, and WooCommerce, Inc. on February 17, 2026. In early 2020, following Silver Lake Technology Management L.L.C.'s ("Silver Lake") assumption of control over WP Engine, WP Engine began to progressively shift how it uses the WordPress and WooCommerce Marks. WP Engine began advertising itself for the first time as "The WordPress Technology Company," allowed its partners to refer to it as "WordPress Engine," and used other similar phrases implying a partnership with or endorsement by Defendants despite lacking any such relationship. In 2021, WP Engine began including WordPress in the names of its product offering with its product lines "Headless WordPress," "Managed WordPress," "Core WordPress," and "Essential WordPress," violating the express terms of the WordPress Foundation Trademark Policy, which prohibits the use of the WordPress trademarks in product names. WP Engine has also offered products by advertising "WooCommerce Hosting" on its website. And, over time, WP Engine has progressively increased its use and prominence of the WordPress and WooCommerce trademarks throughout its marketing and branding materials, including by

displaying "WordPress" on its website in an almost identical font and appearance to that used on WordPress.com; drastically increasing the number of appearances of "WordPress" and "WooCommerce" on its website to manipulate search engine indexing and ad targeting; and employing aggressive search engine optimization and keyword advertising strategies for the WordPress and WooCommerce Marks to mislead consumers. WP Engine did not display any user-facing disclaimers that would clarify the lack of affiliation with Defendants.

WP Engine's use of the WordPress and WooCommerce Marks has led to frequent and pervasive actual consumer confusion. Additionally, WP Engine offers the same types of products and services as those offered by Defendants, uses the WordPress and WooCommerce Marks verbatim in its promotional materials, promotes its products in the same marketing channels as Defendants, markets to unsophisticated consumers, built its business model around leveraging the WordPress and WooCommerce Marks, and is likely to continue developing WordPress and WooCommerce–related products and services. WP Engine does not need to describe itself as a WordPress or WooCommerce company, and its use of the WordPress and WooCommerce Marks far exceeds what is reasonably necessary to describe its product and service offerings. WP Engine not only uses the WordPress and WooCommerce Marks frequently, but it also uses them in a manner that implies sponsorship or endorsement by Defendants, including by using "WordPress" in its product names and presenting itself to consumers as the official WordPress in search engine advertising. WP Engine's use of the WordPress and WooCommerce Marks goes ultimately using those marks well beyond the recognized limits of nominative fair use and creates a strong likelihood of confusion. Exemplars of WP Engine's infringing use of the WordPress and WooCommerce Marks were appended to the September 23, 2024 letter as Exhibits B and C. Dkt. 51-1 at 21-36.

In addition, pursuant to Federal Rule of Civil Procedure 33(d), Mr. Mullenweg has produced (and may continue to produce on a rolling basis) non-privileged documents from which information responsive to this Interrogatory can be obtained, including without limitation: A8C00027985, A8C00073756, A8C00076482, A8C00076580, A8C00076595, A8C00076597, A8C00076656, A8C00076738, A8C00076771, A8C00076780, A8C00076783, A8C00076787, A8C00076803, A8C00076827, A8C00076836, A8C00076846, A8C00076873, A8C00076884, A8C00076890, A8C00076899, A8C00076917, A8C00076937, A8C00077328, A8C00077329, A8C00077330, A8C00077331, A8C00077332, A8C00077333, A8C00077334, A8C00077335, A8C00104026, A8C00106335, A8C00193327, A8C00224973, A8C00269006, A8C00269007, A8C00269375, A8C00269377, A8C00271529, A8C00272829, A8C00272858, A8C00373904, A8C00680118, A8C00680181, A8C00680201, A8C00680209, A8C00680218, A8C00680228, A8C00680235, A8C00680236, A8C00680246, A8C00680254, A8C00680263, A8C00680267, A8C00680271, A8C00680274, A8C00680278, A8C00680283, A8C00680287, A8C00680292, A8C00680300, A8C00680307, A8C00680318, A8C00680379, A8C00680422, A8C00680448, A8C00680455, A8C00680457, A8C00680465, A8C00680468, A8C00680472, A8C00680481, A8C00680487, A8C00680507, A8C00680518, A8C00680523, A8C00680531, A8C00680538, A8C00680545, A8C00680557, A8C00680566, and A8C00680569.

\*\*\*

**Interrogatory No. 3 to Defendants:** Identify all instances in which either Defendant has requested that another entity enter into a trademark license agreement, or in which any entity has requested permission from either Defendant to use or license any trademark, Including identifying the entity involved and the date(s), circumstances and terms of such request(s).

**Automattic Response to Interrogatory No. 3 [CONFIDENTIAL]:**





**Mullenweg Response to Interrogatory No. 3 [CONFIDENTIAL]:**

\*\*\*

**Interrogatory No. 3 to WooCoomerce:**  Identify all instances in which You have granted a trademark license, or requested that another entity enter into a trademark license agreement, or in which any entity has requested permission from You to use or license any trademark, Including Identifying the entity involved and the date(s), circumstances and terms of such request(s), Including as part of the Woo "Hosting Partner Program."

**WooCommerce Response to Interrogatory No. 3 [AEO]:**



\*\*\*

**Interrogatory No. 10 to Mullenweg:** Identify all social media accounts, direct messaging accounts, Slack accounts, email accounts, mobile phone numbers, developer accounts, blog and content creation platforms used by You from 2014 to the present, Including the username of each account or each platform-specific username or handle, the dates for which each account was live or the active dates for each digital presence, and whether each such account has ever been used to Communicate about WordPress, Automattic, or WPE.

**Mullenweg Response to Interrogatory No. 10:** Mr. Mullenweg objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent that this request seeks "all" specified accounts and platforms used by Mr. Mullenweg, as this would inherently include accounts and platforms used solely in Mr. Mullenweg's personal capacity and irrelevant to this litigation. Mr. Mullenweg objects to this Interrogatory to the extent that it seeks publicly accessible information. Mr. Mullenweg objects to the use of the terms "direct messaging accounts," "developer accounts," and "creation platforms" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows: Based on a reasonable investigation, Mr. Mullenweg may have posted publicly about his work at Automattic, on WordPress, or about WPE on at least the following social media platforms and accounts:

- o   X/Twitter: @photomatt
- o   Reddit: u/photomatt
- o   LinkedIn: https://www.linkedin.com/in/mattm/
- o   Bluesky: @ma.tt
- o   Mastodon: @photomatt
- o   Facebook: https://www.facebook.com/matt.mullenweg/

Based on a reasonable investigation, Mr. Mullenweg communicated about Automattic, WordPress, or WPE using at least the following email addresses:

- o   matt@automattic.com
- o   matt@mullenweg.com
- o   m@mullenweg.com (which is an alias of matt@mullenweg.com)

4

- o matt@a8c.com (which is an alias of matt@automattic.com)
- o m@audrey.co

Based on a reasonable investigation, Mr. Mullenweg may have communicated about Automattic, WordPress, or WPE using at least the following messaging applications:

o X/Twitter: @photomatt (direct messaging)

- o Telegram
- o Signal
- o WhatsApp
- o iMessage / SMS
- o Facebook Messenger

Based on a reasonable investigation, Mr. Mullenweg communicated about Automattic, WordPress, or WPE on the following Slack instances:

- o Automattic Slack
- o WordPress.org Slack

\*\*\*

**Interrogatory No. 11 to Mullenweg:** Identify and describe in detail all efforts taken by You from September 1, 2024 to the present to exclude, retaliate against, or discourage Third Parties from doing business with WPE, Including: (a) all Communications with actual or potential WPE customers suggesting they switch providers; (b) all offers of discounts, contract buyouts, or other incentives to leave WPE; (c) all tracking of such efforts, including the creation or maintenance of any websites tracking WPE customer losses (including wordpressenginetracker.com); (d) all Communications with actual or potential investors in WPE regarding such investment or other involvement with WPE; (e) all Communications with any potential acquirers of WPE regarding such acquisition or other involvement with WPE; and (f) all statements intended to disrupt or harm, or that did disrupt or harm, WPE's business relationships.

**Mullenweg Response to Interrogatory No. 11:** Mr. Mullenweg objects to this Interrogatory on the grounds that it is argumentative, prejudicial, and lacks foundation in alleging that Mr. Mullenweg acted to "exclude, retaliate against, or discourage Third Parties from doing business with WPE" and that Mr. Mullenweg's statements "disrupt[ed] or harm[ed] WPE's business relationships." Mr. Mullenweg objects to this Interrogatory on the grounds that it calls for speculation and information not in Mr. Mullenweg's custody, possession, or control to the extent that it seeks information regarding "potential WPE customers," "potential investors in WPE," and "potential acquirers of WPE." Mr. Mullenweg objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at \*1 (N.D. Cal. July 9, 2020) (citation omitted). The subparts constitute, at a minimum, four separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure. Mr. Mullenweg objects to this Interrogatory to the extent that it seeks publicly accessible information and/or information within WPE's possession, custody, or control. Mr. Mullenweg objects to the use of the terms "doing business with," "potential customers," "potential investors," "potential acquirers," "disrupt," "harm," "other involvement with WPE," and "business relationships" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows:

With respect to Interrogatory Nos. 11(a) and (b) (which Mr. Mullenweg considers WPE's 11th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Mr. Mullenweg identifies in **Exhibit A** communications with WPE customers about WPE from September 1, 2024, to August 15, 2025.

With respect to Interrogatory No. 11(c) (which Mr. Mullenweg considers WPE's 12th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Mr. Mullenweg identifies in **Exhibit B** communications relating to WPE customer losses, including wordpressenginetracker.com.

With respect to Interrogatory Nos. 11(d) and 11(e) (which Mr. Mullenweg considers WPE's 13th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Mr. Mullenweg identifies the following communications relating to WPE, including with Silver Lake, a WPE investor: A8C00212230, A8C00212441, A8C00212443, A8C00212445, A8C00212447, A8C00212450, A8C00212454, A8C00212456, A8C00212460, A8C00212468, A8C00212470, A8C00212472, A8C00212474, A8C00076985, A8C00212558, A8C00238151.

With respect to Interrogatory No. 11(f) (which Mr. Mullenweg considers WPE's 14th interrogatory), Mr. Mullenweg does not intend to answer that interrogatory as drafted on the grounds that it calls for a legal conclusion and is a disputed factual issue.

\*\*\*

**Interrogatory No. 13 to Mullenweg:** Describe in detail the governance structure, organizational management, membership, and financial compensation practices of the Foundation, Including but not limited to the following: (a) the Identification of all individuals

or entities who have served as members (if applicable under its bylaws), trustees, or major financial contributors (e.g., donors contributing more than $10,000 in cash or in-kind) since 2005, and for each: Identify the full legal name, nature and amount of contribution or interest, dates of involvement or contribution, any rights or privileges associated with such membership or contribution, and any roles in the governance or operations; (b) the Identification of all members of the board of directors (or equivalent governing body) since 2005, and for each such individual, Identify their full legal name, position, and dates of service, describe their specific responsibilities and areas of oversight, and describe how they were selected or appointed and pursuant to what authority (e.g., bylaws, resolutions); (c) the Identification of all officers, executives, directors, or managers of each entity since 2005, and for each individual, Identify their full legal name, title(s), and dates of service, describe their roles, responsibilities, departments overseen, and reporting relationships, and indicate any changes in title, function, or authority since 2005.

**Mullenweg Response to Interrogatory No. 13:**  Mr. Mullenweg objects to this Interrogatory on the grounds that it is not relevant to any claims or defenses in this litigation. Mr. Mullenweg objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks information since 2005. Mr. Mullenweg considers this WPE's 16th interrogatory.

Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows: Mr. Mullenweg founded the WordPress Foundation in January 2010 and currently serves as one of three directors on the Board, along with Mark Ghosh and Chele Chiavacci Farley. In his capacity as Board Director, Mr. Mullenweg, along with the other board members, strive to preserve the WordPress software code for future generations, through the provision of educational opportunities such as open source workshops and Hackathons, WordPress community meetups and WordCamps held in 34 countries around the world. Board members are also stewards of the WORDPRESS trademarks, which are under the ownership of the WordPress Foundation. Pursuant to Federal Rule of Procedure 33(d), Mr. Mullenweg also identifies the following documents: A8C00679854; https://wordpressfoundation.org/news/2024/meeting-minutes/; https://wordpressfoundation.org/about/financials/ (with links to the WordPress Foundation annual audited financials from 2013-2023); https://wordpressfoundation.org/2023-annual-report/.

\*\*\*

**Interrogatory No. 15 to Mullenweg:**  Identify all instances in which You made statements or representations about: (a) the "free," "open," and/or "accessible" nature of WordPress; (b) the independence of WordPress from commercial control; (c) the ownership or control of wordpress.org; (d) the WordPress Foundation's role in trademark ownership; and (e) any changes, corrections or clarifications to these statements or representations over time.

**Mullenweg Response to Interrogatory No. 15:**  Mr. Mullenweg objects to this Interrogatory on the grounds that it is not relevant to any claims or defenses in this litigation, particularly to the extent the Court has ruled that "WP Engine cannot plausibly allege that it had a preexisting right to access and use WordPress.org … in perpetuity for free." (Dkt. 169 at 13.) Mullenweg objects to the use of the terms "free," "open," "accessible," and "independence … from commercial control" and "the impact" as vague and ambiguous. Mr. Mullenweg objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). The subparts constitute three separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure, and thus Mr. Mullenweg considers these WPE's 18th, 19th, and 20th interrogatories.

Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows: With respect to Interrogatory Nos. 15(a), (b) (and (e), to the extent it relates to (a) and (b)) (which Mr. Mullenweg considers WPE's 18th interrogatory), Mr. Mullenweg does not intend to answer the Interrogatory as drafted on the grounds that it is not relevant to any pending claim or defense in this case. *See* Dkt. 169 at 13 ("WP Engine cannot plausibly allege that it had a preexisting right to access and use WordPress.org … in perpetuity for free.").

With respect to Interrogatory Nos. 15(c) (and (e), to the extent it relates to (c)) (which Mr. Mullenweg considers WPE's 19th interrogatory), Mr. Mullenweg incorporates by reference his response to Interrogatory No. 9 as if fully set forth herein.

With respect to Interrogatory Nos. 15(d) (and (e), to the extent it relates to (d)) (which Mr. Mullenweg considers WPE's 20th interrogatory), Mr. Mullenweg incorporates by reference his response to Interrogatory No. 9 as if fully set forth herein.

\*\*\*

**Interrogatory No. 16 to Mullenweg:**  Identify all Communications from September 1, 2024 to the present involving You, on the one hand, and actual or potential customers of WPE, on the other, regarding: (a) WPE or its products or services; (b) suggestions to switch hosting providers; (c) the blocking of wordpress.org access; and/or (d) Silver Lake.

**Mullenweg Response to Interrogatory No. 16:** Mr. Mullenweg objects to this Interrogatory on the grounds that it calls for speculation and information not in Mr. Mullenweg's custody, possession, or control to the extent that it seeks information regarding "potential customers of WPE." Mr. Mullenweg objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). Each of the four subparts constitutes a separate request that counts towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure, and thus Mr. Mullenweg considers these to be WPE's 21st, 22nd, 23rd, and 24th interrogatories. Mr. Mullenweg objects to this Interrogatory to the extent that it seeks publicly accessible information and/or information

6

within WPE's possession, custody, or control. Mr. Mullenweg objects to this Interrogatory to the extent that it is duplicative with Interrogatory 11(a). Mr. Mullenweg objects to the use of the terms "potential customers" and "suggestions" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Mr. Mullenweg responds as follows: With respect to Interrogatory No. 16(a) (which Mr. Mullenweg considers WPE's 21st Interrogatory), Mr. Mullenweg incorporates by reference its response to Interrogatory Nos. 11(a) and (b) as if set forth fully herein.

With respect to Interrogatory No. 16(b) (which Mr. Mullenweg considers WPE's 22nd Interrogatory), Mr. Mullenweg incorporates by reference its response to Interrogatory Nos. 11(a) and (b) as if set forth fully herein.

With respect to Interrogatory No. 16(c) (which Mr. Mullenweg considers WPE's 23rd Interrogatory), Mr. Mullenweg does not intend to answer this interrogatory on the grounds that it does not relate to any pending claim or defense in this case. *See* Dkt. 169 at 13 ("WP Engine cannot plausibly allege it had a preexisting right to access and use WordPress.org . . . in perpetuity for free.").

With respect to Interrogatory No. 16(d) (which Automattic considers WPE's 24th Interrogatory), Automattic incorporates by reference its response to Interrogatory Nos. 11(d) and 11(d) as if fully set forth herein.


\*\*\*

**Interrogatory No. 14 to Automattic:**  Identify all Communications from September 1, 2024 to the present involving Automattic and actual or potential customers of WPE regarding: (a) WPE or its products or services; (b) suggestions to switch hosting providers; (c) the blocking of wordpress.org access; and/or (d) Silver Lake.

**Automattic Response to Interrogatory No. 14:**  Automattic objects to this Interrogatory on the grounds that it calls for speculation and information not in Automattic's custody, possession, or control to the extent that it seeks information regarding "potential customers of WPE." Automattic objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). The four subparts constitute separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure, and thus Automattic considers these to be WPE's 22nd, 23rd, 24th, and 25th interrogatories. Automattic objects to this Interrogatory to the extent that it seeks publicly accessible information and/or information within WPE's possession, custody, or control. Automattic objects to the use of the terms "potential customers" and "suggestions" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Automattic responds as follows:

With respect to Interrogatory No. 14(a) (which Automattic considers WPE's 22nd Interrogatory), Automattic incorporates by reference its response to Interrogatory Nos. 12(a) and (b) as if set forth fully herein.

With respect to Interrogatory No. 14(b) (which Automattic considers WPE's 23rd Interrogatory), Automattic incorporates by reference its response to Interrogatory Nos. 12(a) and (b) as if set forth fully herein.

With respect to Interrogatory No. 14(c) (which Automattic considers WPE's 24th Interrogatory), Automattic does not intend to answer this interrogatory on the grounds that it does not relate to any pending claim or defense in this case. *See* Dkt. 169 at 13 ("WP Engine cannot plausibly allege it had a preexisting right to access and use WordPress.org . . . in perpetuity for free.").

With respect to Interrogatory No. 14(d) (which Automattic considers WPE's 25th Interrogatory), Automattic incorporates by reference its response to Interrogatory Nos. 11(d) and (d) as if fully set forth herein.


\*\*\*

**Interrogatory No. 4 to WooCommerce:** Identify and Describe Your processes, policies, and activities for tracking, monitoring, and enforcing the WooCommerce Marks, Including: (a) all legal actions, litigations and proceedings involving the WooCommerce Marks; (b) all instances where You Identified potential infringement of the WooCommerce Marks but chose not to enforce; (c) all instances where You Identified potential infringement of the WooCommerce Marks and chose to enforce, Including all cease-and-desist letters and removal communications You have sent regarding the WooCommerce Marks and all responses thereto; (d) all oppositions and other proceedings before the United States Patent and Trademark Office regarding the WooCommerce Marks; (e) all persons involved in making enforcement decisions regarding the WooCommerce Marks; and (f) any changes to enforcement policies over time.

**WooCommerce Response to Interrogatory No. 4:** WooCommerce objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). The six subparts constitute six separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure. WooCommerce considers subparts (a) as WP Engine's 7th interrogatory, subpart (b) as WP Engine's 8th interrogatory, subpart (c) as WP Engine's 9th interrogatory, subpart (d) as WP Engine's 10th interrogatory, subpart (e) as WP Engine's 11th interrogatory, and subpart (f) as WP Engine's 12th interrogatory. WooCommerce objects to this Interrogatory because it inherently seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or any other applicable privilege, immunity, or protection. WooCommerce further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent that this Interrogatory seeks all instances where WooCommerce identified potential infringement.

7

Subject to and without waiver of the foregoing objections, WooCommerce responds as follows: WooCommerce maintains a trademark policy for the WooCommerce Marks that authorizes use of the trademark in plain, non-stylized text to "[t]ruthfully and accurately refer to or describe Automattic's WooCommerce products and services and the WooCommerce open-source software project"; "[r]efer to WooCommerce or Automattic in news and articles"; "[l]ink to [Automattic's] sites"; or "[d]escribe [] compatibility with or support for WooCommerce in certain circumstances." The trademark policy explains that absent a trademark license agreement with Automattic, third parties are not authorized to use the WooCommerce Marks "[i]n a way that suggests that Automattic or WooCommerce has somehow sponsored, endorsed, or is otherwise affiliated with you or your products or services"; "[i]n a way that maligns, disparages or tarnishes Automattic, WooCommerce or their products and services, even if your products and services also happen to be compatible with WooCommerce"; "[i]n a way that trades on the goodwill of the Woo Marks"; or "[i]n advertising and marketing materials." The trademark policy is publicly available at the following webpage: https://woocommerce.com/trademarkguidelines/.

WooCommerce's parent company Automattic oversees trademark enforcement for the WooCommerce Marks. Automattic engages in a variety of strategies to enforce the WooCommerce Marks in accordance with the potential likelihood of confusion posed by infringers. Over time, Automattic's enforcement efforts expanded as infringement increased, and enforcement activities have included sending cease and desist letters, negotiating and licensing use of the WooCommerce Marks, initiating opposition and cancellation proceedings before the USPTO, and bringing legal action where necessary. Automattic's internal policies and processes for enforcing the WooCommerce Marks are protected by at least the attorney-client privilege and work product doctrine because those policies and processes are developed and directed by counsel and involve circumstances in which litigation to enforce the WordPress Marks is expected to ensue. Automattic encourages all employees to participate in enforcing the WooCommerce Marks. Automattic makes internal written guidance available concerning Automattic's trademark rights in the WooCommerce Marks and identifying potential infringement as a reference for its employees. Automattic employees are directed to report potential instances of trademark infringement with counsel and employees working at the direction of counsel. The evaluation of the infringement reports and subsequent decision-making is privileged and confidential.

Automattic's written policies also emphasize to employees that the use of the WooCommerce in any advertisement is prohibited under Automattic's trademark policy and provides guidance concerning requests to use the trademark in advertisements and the rare occurrences where usage is permitted, which is determined by and at the direction of counsel. The determination of the circumstances under which usage is permitted is privileged and confidential. Automattic's enforcement activities are conducted in light of the knowledge that the majority of entities that participate in the WordPress ecosystem abide by applicable trademark laws. While other entities have infringed the WordPress and WooCommerce Marks, none have approached the nature, scope, or scale of WP Engine's sustained and deliberate efforts to create confusion. WP Engine's conduct stands apart in kind and degree from any other industry player.

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Automattic identifies the following documents: A8C00073779, A8C00073786, A8C00073793, A8C00073803, A8C00073810, A8C00073817, A8C00073824, A8C00073831, A8C00073838, A8C00073848, A8C00073854, A8C01333999, A8C00073860, A8C00073864, A8C00697098.

With respect to Interrogatory No. 4(a) (which WooCommerce considers WP Engine's 7th interrogatory), based on a reasonable investigation, WooCommerce identifies the following legal actions, litigations and proceedings involving the WooCommerce Marks:

• Automattic, Inc. and Bubblestorm Management (Pty) Limited v. Domain Admin, Whois protection, WIPO Case No. D2017-2323 (Jan. 24, 2018) (ordering that the disputed domain name <wooocommerce.com> be transferred to the Complainant);

• Automattic, Inc. and Bubblestorm Management (Pty) Limited v. Jinhui Jinminwag, WIPO No. D2018-011 (Apr. 5, 2018) (ordering that the disputed domain name <woocommece.com> be transferred to the Complainant).

• Martin Adriaan de Groot, d/b/a Festinger Vault v. Automattic Inc. and WooCommerce Inc., Case No. 685280, Petition No. 24-991 (Amsterdam District Court) (litigation against GPL directory, including claim for trademark infringement of Woo and WooCommerce trademarks).

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, WooCommerce also identifies the following documents as responsive to Interrogatory No. 4(a) (which WooCommerce considers WP Engine's 7th interrogatory): A8C00074544, A8C00074547, A8C00697399, A8C00697400, A8C00697401, A8C00697402, A8C00697403, A8C01560012.

With respect to Interrogatory No. 4(b) (which WooCommerce considers WP Engine's 8th interrogatory), to the extent WooCommerce has ever identified potential infringement of the WooCommerce Marks but chose not to enforce, such decisions reveal that WooCommerce "considered legal action against a particular entity" and therefore "reflects its attorneys' legal opinions and strategy, and falls within work product protection." *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 636 (N.D. Cal. 2019).

With respect to Interrogatory No. 4(c) (which WooCommerce considers WP Engine's 9th interrogatory), WooCommerce states the following: WooCommerce, through its parent company Automattic, enforces the WooCommerce Marks through a variety of mechanisms. The majority of entities that participate in the WordPress ecosystem abide by applicable trademark laws, the trademark policy published and maintained by the WooCommerce. WooCommerce and Automattic evaluate whether a trademark license is appropriate on a case-by-case basis and reserve the right to request a license agreement in the event that an entity infringes the WooCommerce Marks, including by violating the terms of the WooCommerce trademark policy. WooCommerce and Automattic exercised that right in negotiations with WP Engine because WP Engine's use of the WooCommerce Marks increasingly infringed the marks. While other entities have infringed the WooCommerce Marks, none have approached the nature, scope, or scale of WP Engine's sustained and deliberate efforts to create confusion. WP Engine's conduct stands apart in kind and degree from any other industry player.

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, WooCommerce also identifies the following documents as responsive to Interrogatory No. 4(c) (which WooCommerce considers WP Engine's 9th interrogatory): WP Engine00017983, A8C00680100, A8C00680110, A8C00016260, A8C00212559.

With respect to Interrogatory No. 4(d) (which WooCommerce considers WP Engine's 10th interrogatory), based on a reasonable investigation, WooCommerce identifies the following oppositions and other proceedings before the United States Patent and Trademark Office involving the WooCommerce Marks:

• WooCommerce, Inc. v. Style House Ventures LLC, Opp'n No. 91283329 (T.T.A.B.) (opposing registration of the trademark Woo Woo of Business);

• WooCommerce, Inc. v. Wheatfield Guard Technology Co., Ltd., Opp'n No. 91283555 (T.T.A.B.) (opposing registration of the trademark WooTechy);

• WooCommerce, Inc. v. Shukexingqiu (Zhuhai) Information Technology Co., Ltd., Opp'n No. 91283699 (T.T.A.B.) (opposing registration of the trademark Woo Giftbox and Design).

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, WooCommerce also identifies the following documents as responsive to Interrogatory No. 4(d) (which WooCommerce considers part of WP Engine's 10th interrogatory): A8C00073484, A8C00073487, A8C00073488, A8C00073540, A8C00073543, A8C00073594, A8C00073595, A8C00680015, A8C00680018.

With respect to Interrogatory No. 4(e) (which WooCommerce considers WP Engine's 11th interrogatory), based on a reasonable investigation, WooCommerce identifies the following persons involved in making enforcement decisions regarding the WordPress Marks: Automattic in-house counsel, including Andy Missan, Jordan Hinkes, Neil Peretz, Paul Sieminski, Holly Hogan; counsel for WooCommerce, Inc., including James R. Davis, II, Morgan, Lewis & Bockius LLP; Automattic employees working in consultation with and at the direction of counsel, including Beau Lebens; Matthew Charles Mullenweg.

With respect to Interrogatory No. 4(f) (which WooCommerce considers WP Engine's 12th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, WooCommerce also identifies the following documents as responsive to Interrogatory 4(f) (which WooCommerce considers WP Engine's 12th interrogatory): A8C00073779, A8C00073786, A8C00073803, A8C00073810, A8C00073817, A8C00073824, A8C00073831, A8C00073838, A8C00073848, A8C00073854, A8C00073860, A8C00073864.

\*\*\*

**Interrogatory No. 4 to the Foundation:**  Identify and describe Your processes, policies, and activities for tracking, monitoring, and enforcing the WordPress Marks, Including: (a) all legal actions, litigations and proceedings involving the WordPress Marks; (b) all instances where You identified potential infringement of the WordPress Marks but chose not to enforce; (c) all instances where You identified potential infringement of the WordPress Marks and chose to enforce, Including all cease-and-desist letters You have sent regarding the WordPress Marks and all responses thereto; (d) all oppositions and other proceedings before the United States Patent and Trademark Office regarding the WordPress Marks; (e) all persons involved in making enforcement decisions regarding the WordPress Marks; and (f) any changes to enforcement policies over time.

**The WordPress Foundation Response to Interrogatory No. 4:**  The WordPress Foundation objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at \*1 (N.D. Cal. July 9, 2020) (citation omitted). The six subparts constitute six separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure. The WordPress Foundation considers subparts (a) as WP Engine's 7th interrogatory, subpart (b) as WP Engine's 8th interrogatory, subpart (c) as WP Engine's 9th interrogatory, subpart (d) as WP Engine's 10th interrogatory, subpart (e) as WP Engine's 11th interrogatory, and subpart (f) as WP Engine's 12th interrogatory.

The WordPress Foundation objects to this Interrogatory because it inherently seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or any other applicable privilege, immunity, or protection. The WordPress Foundation further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent that this Interrogatory seeks all instances where the WordPress Foundation identified potential infringement.

Subject to and without waiver of the foregoing general and specific objections, the WordPress Foundation responds as follows:  The WordPress Foundation enforces the WordPress Marks and maintains a trademark policy that is publicly available at the following webpage: https://wordpressfoundation.org/trademark-policy/. That trademark policy authorizes certain third-party use of the WordPress name or logo for projects meeting the following criteria: (1) "[t]he primary purpose of [the] project is to promote the spread and improvement of the WordPress software"; (2) the "project is non-commercial in nature"; and (3) the "project neither promotes nor is associated with entities that currently fail to comply with the GPL license under which WordPress is distributed."

The WordPress Foundation's licensee, Automattic Inc., has the first right to enforce the WordPress Marks and engages in a variety of strategies to do so in accordance with the potential likelihood of confusion posed by infringers. Over time, enforcement efforts have expanded as infringement increased, and enforcement activities have included sending cease and desist letters, negotiating and licensing

use of the WordPress Marks, initiating opposition and cancellation proceedings before the United States Patent and Trademark Office ("USPTO"), and bringing legal action where necessary.

Internal policies and processes for enforcing the WordPress Marks are protected by at least the attorney-client privilege and work product doctrine because those policies and processes are developed and directed by counsel and involve circumstances in which litigation to enforce the WordPress Marks is expected to ensue.

Automattic encourages all employees to participate in enforcing the WordPress Marks. Automattic makes internal written guidelines available concerning Automattic's role in enforcing the WordPress Marks and identifying potential infringement as a reference for its employees. Automattic employees are directed to report potential instances of trademark infringement with counsel and employees working at the direction of counsel. The evaluation of the infringement reports and subsequent decision-making is privileged and confidential.

Automattic's written policies also emphasize that the use of the term "WordPress" in any advertisement is prohibited under the WordPress Foundation trademark policy and provides guidance concerning requests to use the trademark in advertisements and the rare occurrences where usage is permitted, which is determined by and at the direction of counsel. The determination of the circumstances under which usage is permitted is privileged and confidential.

Enforcement activities are conducted in light of the knowledge that the majority of entities that participate in the WordPress ecosystem abide by applicable trademark laws, the trademark policy published and maintained by the WordPress Foundation, and communicate to the public their affiliation with the WordPress Foundation by publicly pledging their contribution via the Five for the Future pledge and adhering to that pledge. While other entities have infringed the WordPress Marks, none have approached the nature, scope, or scale of WP Engine's sustained and deliberate efforts to create confusion. WP Engine's conduct stands apart in kind and degree from any other industry player.

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, the WordPress Foundation will produce documents responsive to this Response.

With respect to Interrogatory No. 4(a) (which the WordPress Foundation considers WP Engine's 7th interrogatory), based on a reasonable investigation, the WordPress Foundation identifies the following legal actions, litigations and proceedings involving the WordPress Marks:

• WordPress Foundation v. duanxiangwang, WIPO Case No. D2011-0836 (July 6, 2011) (ordering that the disputed domain names <wirdpress.org>, <wordprees.org>, <wordprss.org> and <woordpress.org> be transferred to the Complainant);

• WordPress Foundation v. Guo Lei aka Lei Guo, WIPO Case No. D2011-0932 (Aug. 5, 2011) (ordering that the disputed domain name <wordress.org> be transferred to the Complainant);

• WordPress Foundation v. Park HyungJin, WIPO Case No. D2013-0074 (Mar. 1, 2013) (ordering that the disputed domain name <wpordpress.com> be transferred to the Complainant);

• WordPress Foundation v. TradeMark Management, WIPO Case No. D2013-1409 (Oct. 4, 2013) (ordering that the disputed domain name <wrdpress.com> be transferred to the Complainant);

• WordPress Foundation v. Fundacion Private Whois, Domain Administrator, WIPO Case No. D2013-1427 (Oct. 10, 2013) (ordering that the disputed domain name <wrodpress.com> be transferred to the Complainant);

• WordPress Foundation v. Cezary Brzezinski, WIPO Case No. D2013-2171 (Mar. 24, 2014) (ordering that the disputed domain name <owrdpress.org> be transferred to the Complainant);

• WordPress Foundation v. duanxiangwang, WIPO Case No. D2013-2174 (Feb. 18, 2014) (ordering that the disputed domain name <www.wordpress.org> be transferred to the Complainant);

• WordPress Foundation v. Alisher Akramkhanov, WIPO Case No. DCO2016-0038 (Dec. 14, 2016) (ordering that the disputed domain name <wordpressgroup.co> be transferred to the Complainant);

• Matthew Mullenweg and Automattic Inc. v. Ric Johnson and OpenDomain.org, No. 05-cv-04954 (N.D. Cal.) (lawsuit for, inter alia, trademark infringement, 15 U.S.C. § 1125(a); cybersquatting, 15 U.S.C. § 1125(d); federal trademark dilution, 15 U.S.C. § 1125(c); trademark dilution under California law, Cal. Bus. & Prof. Code § 14330; common law trademark infringement; and common law unfair competition); • WordPress Foundation v. Edward Jeffrey Yablon and PC-VIP, Inc., No. 15-cv-02745 (N.D. Cal.) (lawsuit for infringement of federally registered trademark, 15 U.S.C. § 1114; false designation of origin and unfair competition, 15 U.S.C. § 1125(a); cybersquatting, 15 U.S.C. § 1125(d); trademark infringement under California law, Cal. Bus. & Prof. Code § 14245; and unfair competition under California law, Cal. Bus. & Prof. Code § 17200 et seq.);

• Martin Adriaan de Groot, d/b/a Festinger Vault v. Automattic Inc. and WooCommerce Inc., Case No. 685280, Petition No. 24-991 (Amsterdam District Court) (litigation against GPL directory, including claim for trademark infringement of WordPress trademark);

• WordPress Foundation Oposição, Número da Petição 850230635079, Número do Processo 932197850 (Instituto Nacional da Propriedade Industrial) (opposing Viver de WordPress mark).

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, the WordPress Foundation also identifies the following documents as responsive to Interrogatory No. 4(a) (which the WordPress Foundation considers WP Engine's 7th interrogatory): A8C00074551, A8C00074575, A8C00027996, A8C00028010, A8C00028016, A8C00028027, A8C00680005,

A8C00680019, A8C00680066, A8C00680019, A8C00680066, A8C00680068, A8C00680072, A8C00680075, A8C00680078, A8C00680082, A8C00680087, A8C00680092, A8C00680096.

With respect to Interrogatory No. 4(b) (which the WordPress Foundation considers WP Engine's 8th interrogatory), to the extent the WordPress Foundation or its licensee Automattic has ever identified potential infringement of the WordPress Marks but chose not to enforce, such decisions reveal that the WordPress Foundation or Automattic "considered legal action against a particular entity" and therefore "reflects its attorneys' legal opinions and strategy, and falls within work product protection." *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 636 (N.D. Cal. 2019).

With respect to Interrogatory No. 4(c) (which the WordPress Foundation considers WP Engine's 9th interrogatory), the WordPress Foundation states the following: The WordPress Foundation, through its licensee Automattic, enforces the WordPress Marks through a variety of mechanisms. The majority of entities that participate in the WordPress ecosystem abide by applicable trademark laws and the trademark policy published and maintained by the WordPress Foundation. The WordPress Foundation and Automattic evaluate whether a trademark license is appropriate on a case-by-case basis and reserve the right to request a license agreement in the event that an entity infringes the WordPress Marks, including by violating the terms of the WordPress Foundation's trademark policy. The WordPress Foundation and Automattic exercised that right in negotiations with WP Engine because WP Engine's use of the WordPress Marks increasingly infringed the marks. While other entities have infringed the WordPress Marks, none have approached the nature, scope, or scale of WP Engine's sustained and deliberate efforts to create confusion. WP Engine's conduct stands apart in kind and degree from any other industry player.

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, the WordPress Foundation also identifies the following documents as responsive to Interrogatory No. 4(c) (which the WordPress Foundation considers WP Engine's 9th interrogatory): A8C00027988, A8C00028012, A8C00028014, A8C00028021, A8C00028023, A8C00028025, A8C00680006, A8C00680008, WP Engine00017983, A8C00680100, A8C00680110, A8C00016260, A8C00212559.

With respect to Interrogatory No. 4(d) (which the WordPress Foundation considers WP Engine's 10th interrogatory), based on a reasonable investigation, the WordPress Foundation identifies the following oppositions and other proceedings before the United States Patent and Trademark Office involving the WordPress Marks:

• WordPress Foundation v. Obu Web Technologies Inc. d/b/a Pagely, Opp'n No. 91207852 (T.T.A.B.) (opposing registration of the PAGELY trademark in connection with "[p]roviding a web hosting platform for various open source software applications, namely WordPress");

• WordPress Foundation v. Bradley Brandt, Opp'n No. 91256502 (T.T.A.B.);

• WordPress Foundation v. Barnett Building & Co., Cancellation No. 92086514 (T.T.A.B.) (petitioning for cancellation of bbPRESS trademark).

Pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, the WordPress Foundation also identifies the following documents as responsive to Interrogatory No. 4(d) (which the WordPress Foundation considers WP Engine's 10th interrogatory): A8C00073692, A8C00073720, A8C00073721, A8C00073732, A8C00073748.

With respect to Interrogatory No. 4(e) (which the WordPress Foundation considers WP Engine's 11th interrogatory), based on a reasonable investigation, the WordPress Foundation identifies the following persons involved in making enforcement decisions regarding the WordPress Marks: WordPress Foundation Board Members, including Matthew Charles Mullenweg, Mark Ghosh, and Chele Chiavacci Farley; Automattic in-house counsel, including Andy Missan, Jordan Hinkes, Neil Peretz, Paul Sieminski, Holly Hogan; counsel for the WordPress Foundation, including David Wong, Barnes & Thornburg LLP; Automattic employees working in consultation with and at the direction of counsel, including Mary Hubbard.

With respect to Interrogatory No. 4(f) (which the WordPress Foundation considers WP Engine's 12th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, the WordPress Foundation also identifies the following documents as responsive to Interrogatory No. 4(f) (which the WordPress Foundation considers WP Engine's 12th interrogatory): A8C00073779, A8C00073786, A8C00073793, A8C00073803, A8C00073810, A8C00073817, A8C00073824, A8C00073831, A8C00073838, A8C00073848, A8C00073854, A8C00073860, A8C00073864.

The WordPress Foundation reserves the right to supplement and/or amend this Response and all subparts as necessary and appropriate.


\*\*\*

**Interrogatory No. 10 to Automattic:**  Identify and describe Your processes, policies, and activities for tracking, monitoring, and enforcing all Challenged Terms, Including: (a) all legal actions, litigations and proceedings involving the Challenged Terms; (b) all instances where You identified potential infringement of the Challenged Terms but chose not to enforce; (c) all instances where You identified potential infringement of the Challenged Terms and chose to enforce, including all cease-and-desist letters You have sent regarding the Challenged Terms and all responses thereto; (d) all oppositions and other proceedings before the United States Patent and Trademark Office regarding the Challenged Terms; (e) all persons involved in making enforcement decisions regarding the Challenged Terms; and (f) any changes to enforcement policies over time.

**Automattic Response to Interrogatory No. 10(b):**  Automattic objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and

necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). Each of the six subparts constitutes a separate request that counts towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure, and thus Automattic considers these WPE's 10th, 11th, 13th, 14th, and 15th interrogatories. Automattic objects to this Interrogatory because it inherently seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or any other applicable privilege, immunity, or protection. Automattic further objects to this Interrogatory the grounds that it is overbroad and unduly burdensome to the extent that this Interrogatory seeks all instances where Automattic identified potential infringement.

Subject to and without waiver of the foregoing general and specific objections, Automattic responds as follows:

…

With respect to Interrogatory No. 10(b) (which Automattic considers WPE's 11th interrogatory), to the extent Automattic has ever identified potential infringement of the WordPress Marks but chose not to enforce, such decisions reveal that Automattic "considered legal action against a particular entity" and therefore "reflects its attorneys' legal opinions and strategy, and falls within work product protection." *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 636 (N.D. Cal. 2019).


\*\*\*

**Interrogatory No. 11 to Automattic:**  Identify all facts relating to the circumstances of Your awareness of WPE's use of the Challenged Terms, Including how and when You became aware, all Persons who became aware of that use or Communicated about it, and all Documents Relating to those facts.

**Automattic Response to Interrogatory No. 11:**  Automattic objects to this Interrogatory on the grounds that it inherently seeks information protected from discovery by the attorney-client privilege, the work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or any other applicable privilege, immunity, or protection. Automattic further objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent that this Interrogatory seeks all facts and all persons who may have become aware of WP Engine's use of the WordPress and WooCommerce Marks. Automattic objects to the term "awareness" as vague and ambiguous. Automattic further objects to this Interrogatory to the extent that it is duplicative with Interrogatory No. 2. Automattic considers this WPE's 16th interrogatory.

Subject to and without waiver of the foregoing objections, Automattic responds as follows: Automattic has long been aware that WP Engine used the WordPress Marks in a nominative fair use manner to describe WP Engine's hosting services for websites built on the WordPress open-source publishing platform. Automattic understood such nominative uses to be typical within the ecosystem, and in line with the WordPress Foundation's trademark policy, so long as such use accurately described WP Engine's services without creating confusion as to source, sponsorship, or affiliation.

Automattic later became aware that WP Engine was engaging in conduct that exceeded nominative fair use and constituted infringing use of the WordPress and WooCommerce Marks. Such awareness arose through Automattic's observation of WP Engine's marketing and promotional materials, including website content and advertisements, beginning in or around 2021. At that time, Automattic became aware that WP Engine was using the WordPress and WooCommerce marks in ways designed to create or increase the likelihood of confusion between Plaintiff and Defendants. WP Engine did so by rapidly increasing the amount of times "WordPress" and "WooCommerce" appeared on the face of its webpages, including by using "WordPress" in the names of WP Engine products and services, referring to itself as "WP Engine, the WordPress technology company," and even naming its plans, "Essential WordPress" and "Core WordPress."

Any internal Automattic discussions concerning WP Engine's use of the WordPress or WooCommerce Marks, including whether such use exceeded nominative fair use and constituted infringement, were conducted in consultation with and at the direction of counsel. Those discussions reflect counsel's legal advice, strategy, and mental impressions concerning potential enforcement actions, and are therefore protected from disclosure by the attorney–client privilege, the attorney work-product doctrine, and other applicable privileges.

Pursuant to Federal Rule of Civil Procedure 33(d), Automattic identifies the following documents as responsive to this Response: A8C00027985, A8C00073756, A8C00076482, A8C00076580, A8C00076595, A8C00076597, A8C00076656, A8C00076738, A8C00076771, A8C00076780, A8C00076783, A8C00076787, A8C00076803, A8C00076827, A8C00076836, A8C00076846, A8C00076873, A8C00076884, A8C00076890, A8C00076899, A8C00076917, A8C00076937, A8C00077328, A8C00077329, A8C00077330, A8C00077331, A8C00077332, A8C00077333, A8C00077334, A8C00077335, A8C00104026, A8C00106335, A8C00193327, A8C00224973, A8C00269006, A8C00269007, A8C00269375, A8C00269377, A8C00271529, A8C00272829, A8C00272858, A8C00373904, A8C00680118, A8C00680181, A8C00680201, A8C00680209, A8C00680218, A8C00680228, A8C00680235, A8C00680236, A8C00680246, A8C00680254, A8C00680263, A8C00680267, A8C00680271, A8C00680274, A8C00680278, A8C00680283, A8C00680287, A8C00680292, A8C00680300, A8C00680307, A8C00680318, A8C00680379, A8C00680422, A8C00680448, A8C00680455, A8C00680457, A8C00680465, A8C00680468, A8C00680472, A8C00680481, A8C00680487, A8C00680507, A8C00680518, A8C00680523, A8C00680531, A8C00680538, A8C00680545, A8C00680557, A8C00680566, A8C00680569.


\*\*\*

12

**Interrogatory No. 12 to Automattic:**  Identify and describe in detail all efforts taken by Automattic from September 1, 2024 to the present to exclude, retaliate against, or discourage Third Parties from doing business with WPE, Including: (a) all Communications with actual or potential WPE customers suggesting they switch providers; (b) all offers of discounts, contract buyouts, or other incentives to leave WPE; (c) all tracking of such efforts, including the creation or maintenance of any websites tracking WPE customer losses (including wordpressenginetracker.com); (d) all Communications with actual or potential investors in WPE regarding such investment or other involvement with WPE; (e) all Communications with any potential acquirers of WPE regarding such acquisition or other involvement with WPE; and (f) all statements intended to disrupt or harm, or that did disrupt or harm, WPE's business relationships.

**Automattic Response to Interrogatory No. 12:**  Automattic objects to this Interrogatory on the grounds that it is argumentative, prejudicial, and lacks foundation in assuming that Automattic acted to "exclude, retaliate against, or discourage Third Parties from doing business with WPE" and that Mr. Mullenweg's statements "disrupt[ed] or harm[ed] WPE's business relationships." Automattic objects to this Interrogatory on the grounds that it calls for speculation and information not in Automattic's custody, possession, or control to the extent that it seeks information regarding "potential WPE customers," "potential investors in WPE," and "potential acquirers of WPE." Automattic objects to this request on the ground that it is compound, as it contains multiple discrete subparts and introduces separate and distinct lines of inquiry that are not "logically and factually subsumed within and necessarily related to the primary question." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *1 (N.D. Cal. July 9, 2020) (citation omitted). The subparts constitute four separate requests that count towards the maximum number of interrogatories permitted by the Federal Rules of Civil Procedure, and thus Automattic considers these WPE's 17th, 18th, 19th, and 20th interrogatories. Automattic objects to this Interrogatory to the extent that it seeks publicly accessible information and/or information within WPE's possession, custody, or control. Automattic objects to the use of the terms "doing business with," "disrupt," "harm," "other involvement with WPE," and "business relationships" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Automattic responds as follows: With respect to Interrogatory Nos. 12(a) and (b) (which Automattic considers to be WPE's 17th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Automattic identifies in Exhibit A communications with WPE customers about WPE from September 1, 2024, to August 15, 2025.

With respect to Interrogatory No. 12(c) (which Automattic conwwwsiders WPE's 18th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Automattic identifies in Exhibit B communications relating to WPE customer losses, including wordpressenginetracker.com.

With respect to Interrogatory Nos. 11(d) and 11(e) (which Automattic considers WPE's 19th interrogatory), pursuant to Federal Rule of Civil Procedure 33(d) and based on a reasonable investigation, Automattic identifies the following communications relating to WPE, including with Silver Lake, a WPE investor: A8C00212230, A8C00212441, A8C00212443, A8C00212445, A8C00212447, A8C00212450, A8C00212454, A8C00212456, A8C00212460, A8C00212468, A8C00212470, A8C00212472, A8C00212474, A8C00076985, A8C00212558, A8C00238151.


\*\*\*

**Interrogatory No. 13 to Automattic:**  Describe in detail the corporate structure, ownership, governance, and management of Automattic, Including but not limited to the following: (a) the Identification of all individuals or entities who have ever held any equity interest since 2005, Including, their full legal name, type and class of shares or other ownership interest held, percentage of total ownership, date(s) on which the interest was acquired and, if applicable, transferred or terminated, any rights, preferences, or restrictions associated with such ownership interest (e.g., voting rights, liquidation preference, conversion rights), and any changes in the foregoing over time; (b) the Identification of all parent companies, subsidiaries, affiliates, business lines, brands or related entities of Automattic; and (c) the Identification of all members of the board of directors (or equivalent governing body) since 2005, Including their name, title, and dates of service.

**Automattic Response to Interrogatory No. 13:**  Automattic objects to this Interrogatory as overbroad and unduly burdensome to the extent that it seeks information since 2005 and information related to parent companies, subsidiaries, affiliates, business lines, brands or related entities of Automattic that have no relevance to any claims or defenses in this litigation. Automattic considers this WPE's 21st interrogatory.

Subject to and without waiver of the foregoing objections, Automattic responds as follows: Mr. Mullenweg founded Automattic in November 2005 and served as Automattic's President from November 2005 to January 2014. Since January 2014, Mr. Mullenweg has served as Automattic's CEO. In his capacity as CEO, he oversees all product lines, revenue lines, brands, and subsidiaries for the company. Pursuant to the parties' negotiated agreement as to RFP No. 27, Defendants have produced a capitalization table with the identities of any individuals, companies, or groups redacted if their ownership stake in Automattic falls below 10%. Pursuant to Federal Rule of Civil Procedure 33(d), Automattic identifies the following documents: A8C00375177, A8C01527702, A8C01527848, A8C01527912, A8C01527977, A8C01528063, A8C01531117, A8C01531152, A8C01531203, A8C01531255, A8C01531302, A8C01531343, A8C01531450, A8C01531485, A8C01531514, A8C01531553, A8C01531589.

13