IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG, an<br>individual; and WOOCOMMERCE INC., a<br>Delaware corporation,<br><br>Defendants.<br>———————————————————<br>AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG, an<br>individual; WORDPRESS FOUNDATION, a<br>California corporation; and WOOCOMMERCE<br>INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | Case No. 4:24-cv-06917-AMO<br><br><br>**DECLARATION OF BROOKE MYERS WALLACE IN SUPPORT OF DEFENDANTS' JOINT LETTER BRIEF TO COMPEL THE PRODUCTION OF FINANCIAL DOCUMENTS FROM THE FILES OF MS. HEATHER BRUNNER AND MR. VICTOR YUAN**<br><br>Hon. Araceli Martínez-Olguín |

**DECLARATION OF BROOKE MYERS WALLACE**

I, Brooke Myers Wallace, declare as follows:

1. I am an attorney admitted to practice before this Court, an associate at Gibson, Dunn & Crutcher LLP, and counsel for Defendants in the above-captioned action. I have personal knowledge of the matters set forth herein, except as to those matters stated on information and belief, which I believe to be true. If called as a witness, I could and would testify competently to the matters herein.

2. I submit this declaration in support of Defendants' portion of the parties' May 21, 2026 Joint Letter Brief regarding WP Engine's failure to produce categories of plainly responsive financial documents from the files of its Chair and CEO, Heather Brunner, and its VP of Corporate Development, Victor Yuan.

**BACKGROUND AND NATURE OF THIS DISPUTE**

3. According to their initial disclosures, WP Engine seeks ███████████ ████████████████████████████████████ (Brunner Dep. Tr., Vol. 1, p. 36)—based on the contention that Defendants' conduct beginning in September 2024 destroyed an otherwise healthy business. Defendants' defense rests in significant part on demonstrating that WP Engine's financial and operational difficulties—including customer churn, declining revenue growth, pricing misalignment, and ████████████—predated and were independent of Defendants' conduct.

4. Silver Lake is WP Engine's controlling investor, having acquired its stake in January 2018. (Brunner Dep. Tr., Vol. 2, p. 389-90.) Lee Wittlinger and David Zhang, both managing directors at Silver Lake, served on WP Engine's ███████████████████████████ █████████████████████████████████████ █████████ and served on WP Engine's board since 2018 and 2025, respectively. (Wittlinger Dep. Tr., pp. 25, 171; V. Yuan Dep. Tr., Vol. 2, pp. 300–01.) Ms. Brunner testified that she "speak[s] frequently with David and with Lee" as WP Engine's "primary investors" via "meetings, . . . text messages, [and] e-mails" (Brunner Dep. Tr., Vol. 1, pp. 44–45), and that between 2023 and 2025—the period encompassing ███████████████████████—she had "more communication with David Zhang" than with Wittlinger (*id.* p. 191). The subjects of these communications necessarily encompassed the financial topics at issue: monthly financial reporting packages were addressed to

Wittlinger and Zhang on a recurring basis (V. Yuan Dep. Tr., Vol. 1, p. 119); both ██████████ involved Wittlinger and Zhang coordinating with Brunner (Wittlinger Dep. Tr., pp. 161-162, 172); and Zhang authored a thirteen-page email commenting on drafts of the ████████ that Brunner reviewed and commented on (Brunner Dep., Vol. 1, p. 175). Yet WP Engine has produced ***only 19 emails or messages between Brunner and Zhang[1]*** (only 15 from on or before September 20, 2024, when WordCamp took place; 13 are from 2024, one two of which are not redacted responses to Matt's September 2024 demand; 11 are from between 2021-2023) and ***only 34 between Brunner and Wittlinger*** (only 27 from on or before September 20, 2024).

5.      Defendants have done everything reasonable to keep this dispute out of the Court. Over more than a year, they narrowed dozens of requests to thirteen priority categories, accepted WP Engine's "reciprocity" framework, agreed to produce Mr. Mullenweg's personal financial records on demand, and gave WP Engine extension after extension. WP Engine has answered with rolling deadlines, shifting positions, and last-minute disclosures of plainly responsive documents. On the two questions that define this case—whether Defendants caused WP Engine's financial decline, and what that decline is actually worth—WP Engine has produced only 36 emails referencing its own ████████ ██████ two of seventy-two monthly financial packages sent to its controlling investor, no documents at all concerning the ██████████████████, and nothing with the key Silver Lake advisors during the period when the alleged decline supposedly began. A plaintiff cannot put ████████ in damages at issue and withhold the evidence of what its business was actually worth. The Court's intervention is now the only remaining path to a complete record.

**DEFENDANTS' LONG-STANDING EFFORTS TO OBTAIN FINANCIAL DOCUMENTS**

6.      Defendants have sought WP Engine's financial documents for over a year through RFPs

---

[1] Emails between individuals identified herein were counted by summing the total number of unique bates stamps where the sender (e.g., "brunner") and receiver (e.g., "zhang") are in the to and from fields, respectively, and vice versa. For counting purposes, "documents" includes file types like Word, PowerPoint, Excels, etc.; "emails" include "EML" file extensions; "messages" are RSMF (Relativity Short Message Format) file extensions, which are how Slacks, chats, and texts are formatted in a Relativity document platform. "Records" refers to any file extension, including calendar invites (ICS). A document produced from someone's files indicates that that individual was identified in the available custodian metadata field. Based on my review of WP Engine's production, each record is associated with a single individual custodian.

DECLARATION OF BROOKE MYERS WALLACE
CASE NO. 3:24-CV-06917-AMO

10, 15, 54, 59, 60, 61, 62, 64, 65, 85, 103, and 167. At WP Engine's request, Defendants narrowed these to 13 "priority" document types (including board presentations, ███████ communications, and financial statements) for the period 2021-2025 and "mapped" each to specific RFPs on November 24. On December 19, WP Engine agreed to produce only three of the 13 categories, subject to vague limitations and unspecified "reciprocity." On February 26, 2026, WP Engine agreed to produce financial plans, valuations, and certain financial statements.

7.      In the meantime, WP Engine had, however, produced isolated examples of certain financial documents—establishing their relevance and accessibility. On March 4, 2026, Defendants asked WP Engine to produce complete records of board presentations, valuation materials, ████████ documents, 409A materials, audited financials, forecasts, and Silver Lake memoranda. WP Engine assured Defendants that a "reciprocal" production could "substantially narrow if not eliminate these disputes." Defendants agreed in concept.

8.      On March 12, 2026, WP Engine responded to Defendants' arguments that the materials it sought were critical to its damages claims. WP Engine stated: Defendants' requests were "vastly overbroad, seeking far more than Defendants are reasonably entitled to in this case. They also appear to be based at least in part on a false premise. Contrary to the assertions in [Defendants'] email, WPE's anticipated damages claim disclosed to date is based on financial projections and data, not historical valuations predating 2024. With respect to lost value, the relevant measure is the difference in the value of the company shortly before Defendants' misconduct, and thereafter."

9.      Nevertheless, WP Engine agreed on March 12 to produce: quarterly board presentations; valuations, board minutes, and board presentations and communications with ████████ ████████████████████; documents referring to a ███████████ or 409A valuations; audited financial statements and monthly financial statements; and board-approved financial forecasts. WP Engine conditioned their agreement on a "reciprocal" production that included Mullenweg's personal financial statements—a demand WP Engine had never previously made and supported by no RFP. On March 20, Defendants agreed. The parties set an April 3 deadline.

10.      On March 20, 2026, Defendants deposed Jason Teichman, WP Engine's former COO. Teichman testified that ████████████████████████████████████████████.

4

Defendants were unaware of this before Teichman testified. Defendants demanded WP Engine produce the ███████ within days of the deposition; it still has not been produced.

11. On April 6, 2026, after the parties' initial April 3 productions, Defendants identified pervasive gaps: no substantive ███████ communications regarding ███████ no non-board ███████ or 409A materials; ████████████████████████████████████████; no long-term forecasts; no monthly cash flow statements; approximately half of quarterly board presentations missing; no board minutes; and ███████ from 2021-present. Documents produced on April 3 revealed the existence of additional unproduced materials, including the ████████████████ ███████████████. WP Engine did not respond; Defendants followed up on April 8.

12. On April 10, 2026, a week after the parties' mutual deadline, WP Engine responded:

o (1) ████████████████████████ "WPE has produced documents in this category and is about to produce the remainder."

o (2) ███████ and 409A Materials (2021-2025)": "WPE has produced documents in this category and is about to produce the remainder."

o (3) "Long-Term Forecasts (2021-2025)": "WPE did not agree to produce all long-term forecasts for 2021-2025. WPE agreed to produce 'Financial forecasts **approved by WPE's Board of Directors**, as well as the underlying basis (which is **contained in the board presentations**),' for 2021-2025." (emphasis in original)

o (4) "Monthly Cash Flow Statements (2020-2025)": "WPE does not maintain or have monthly cash flow statements in the ordinary course of business."

o (5) "Quarterly Board Presentations": Disclosed that WP Engine does not have regular quarterly board meetings, and no meetings were held during the missing quarters.

o (6) "Board Minutes": All responsive documents had been produced.

o (7) "███████ (2021-present)": WP Engine stated it "did not agree to produce all ███████ ███████ for 2021-present" and referred Defendants to prior categories. (emphasis added)

o (8) "████████████████████████████": WP Engine likewise "did not agree to produce all ██████████████████████████████████████." (emphasis added)

13. On <u>April 20, 2026</u>, Defendants responded that WP Engine's own April 3 production and Teichman's testimony established the existence of previously unknown documents that could not be excluded from discovery regardless of the prior agreement's scope, and that in any event, the requests fell squarely within "███████████████████████████."

14. On <u>April 26, 2026</u>, three days before Ms. Brunner's deposition, Defendants demanded production of internal correspondence involving Ms. Brunner concerning WP Engine's valuation, trademark negotiations, and ██████████. WP Engine responded: "You have more than enough material to take Ms. Brunner's deposition."

15. On <u>April 29 and 30, 2026</u>, Defendants deposed Ms. Brunner. Her testimony confirmed that WP Engine had withheld substantial volumes of plainly responsive material. On <u>May 5</u>, Defendants demanded:

o (1) Documents and communications related to WP Engine Board Deck preparation, which Brunner testified involved iterative drafts with comments in Google Workspace. (Brunner Dep. Tr., Vol. 1, pp. 117, 118.)

o (2) Documents and communications relating to Brunner's comments on ████████████████ drafts. (*id.* p. 175.)

o (3) Communications between ██████████ steering committee members (Brunner, Brolsma, Yuan, Zhang, and Wittlinger). (Brunner Dep. Tr., Vol. 2, p. 400.)

o (4) Communications between Ms. Brunner and the CEO of █████████████████████████ ████████████████████████████████████████. (Wittlinger Dep. Tr., pp. 161-62.)

o (5) All communications between Brunner and Zhang or Wittlinger from 2018 to present regarding WPE. (Brunner Dep. Tr., Vol. 1, p. 45)

o (6) Communications between WP Engine and Silver Lake in 2022-2023 regarding ██████████. (*Id.* p. 45; Wittlinger Dep. Tr. pp. 144-45)

o (7) All communications between WP Engine and ██████████ from 2017 to present. (Brunner Dep. Tr., Vol. 2, pp. 396, 401-402)

16. WP Engine responded to Defendants' May 5 email <u>on May 11, 2026</u>, to "reject it in

full." They did so on two primary grounds: *first*, the requested documents were "beyond the scope of the parties' reciprocal production agreement;" and *second*, Defendants had failed to produce anything "reciprocal on their own end that would justify these expansive demands."

## DOCUMENTS FROM VICTOR YUAN'S FILES

17.     Monthly financial reporting packages. In December 2025, Defendants saw a reference in a WP Engine document to a monthly "financial reporting package" presentation that WP Engine sent to Silver Lake and demanded their production. WP Engine did not respond. (Defendants also demanded their production from Silver Lake; they have refused.) Now that Defendants understand that WP Engine's board did not meet regularly, these monthly financial reporting packages are the primary contemporaneous record of WP Engine's financial performance as communicated to its controlling investor, making them particularly relevant to fill gaps in the board-level record. Victor Yuan testified that these exist and are organized by month on Google Drive. (V. Yuan Dep. Tr., Vol. 1, p. 119.) Only 2 of the 72 created between 2021-2025 have been produced.

18.     ███████████████████. Yuan disclosed on May 7—less than one week before the close of fact discovery—that ████████████████████████ in connection with the 2024 ████████ (V. Yuan Dep. Tr., Vol. 2, pp. 255-256, 291) Neither the final report nor any drafts (nor communications about it) have been produced. A ███████████████████████████ ████████████ may be relevant to WP Engine's financial condition and valuation as of 2024.

19.     Cost Accounting. Yuan also testified that WP Engine created a spreadsheet to track the costs (allegedly) "incurred" due to Defendants' conduct. (V. Yuan Dep. Tr., Vol. 1, pp. 66, 69.) No such spreadsheet has been produced to Defendants. This document goes directly to the heart of WP Engine's damages claim and Defendants' defense that actual costs attributable to the September 2024 events were minimal compared with WP Engine's purported damages.

## WP ENGINE'S PRODUCTIONS TO DATE

20.     I have personally reviewed WP Engine's production and its associated metadata. Based on that review, I have made the following findings as of May 18, 2026, which are accurate to the best of my knowledge.

o   WP Engine has produced the following from Ms. Brunner's files: 1,354 internal communications

(i.e., emails/messages involving only wpengine.com email addresses); 501 emails with ██████ ████ email addresses; 493 emails with Silver Lake email addresses; 184 files that hit on ███████████████████████████████████████████ ████████████

- o I have been unable to locate drafts of and communications regarding WP Engine board decks, and WP Engine has not pointed us to any.

- o I have been unable to locate any email communications relating to investors' substantive feedback in 2021 or 2024, and WP Engine has not pointed us to any.

- o Regarding ███████████████████████████ WP Engine has produced *only 36 emails that hit on* ████████████ (and no messages): 14 emails from Brunner's files, three from Yuan's, 16 from CTO Prabhakar, one from Teichman, and two from CFO Brolsma.

- o Regarding ███████████████████████ WP Engine has produced 1,005 emails and messages that hit on ████████ 176 from Brunner's files, 273 from Yuan's, 31 from Prabhakar's, four from Teichman's, 404 from Brolsma's, and 117 from Carl Hargreaves. Only two were produced by the substantial completion deadline; 97% were produced on April 12, 2026.

- o I have located *no records* addressing the ████████████████████ For example, although we have run additional searches to identify these, of the 27 records that hit on ████████████ ███████████████████████, only two summary documents reference the ████████████ but do not describe it. Both were produced on April 12, 2026.

- o Regarding communications between Ms. Brunner and Silver Lake—WP Engine has produced 76 emails between Brunner and anyone with a Silver Lake email address; 40 are from before September 2024, but *only one is dated between 2023 and August 2024*—the most important period for establishing WP Engine's pre-suit financial condition.

- o Regarding communications with Silver Lake about WP Engine's valuation or ████████ ████████—WP Engine has produced *only 13 emails* dated between 2022 and 2023 between anyone with a WP Engine email address and anyone with a Silver Lake email address. Seven of the 13 relate to a ████████████ in 2022 and do not relate to valuation or a ████████

- o I have also reviewed the final depositions exhibits produced by Automattic, WP Engine, and Silver

8

Lake. Underscoring the importance of the April 3 production of financial documents, 17% of the deposition exhibits produced by WP Engine were produced on April 3, 2026, and 32% were produced after April 3. By contrast, only 5.5% of deposition exhibits produced by Defendants were produced on or after April 3.

**NO WAIVER**

21.     WP Engine's contention that Defendants waived any objection by failing to raise the missing categories during Ms. Brunner's deposition is demonstrably false. Before the deposition, Defendants flagged the missing document categories in writing. (See para. 13.) During the deposition itself (which I attended), Defendants' counsel demanded production on the record and expressly reserved the right to recall the witness. After the deposition, Defendants again followed up with their request. (Para. 15, supra.)

**EXHIBITS**

22.     Attached hereto as **Exhibit 1** are true and correct excerpts of the deposition testimony cited herein.

**JOINT LETTER BRIEF EXCHANGE PROCESS**

23.     Defendants provided their initial portion of the joint letter brief on Friday, May 15. WP Engine did not provide their responsive portion of the brief until May 21 at 3 AM PT (the deadline to file discovery motions is May 21). Defendants provided a copy of this declaration to WP Engine on Tuesday, May 19. WP Engine has not provided a copy of their declaration in support as of May 21 at 7:24 PM PT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Los Angeles, on this 21st day of May 2026.

DATED:  May 21, 2026                    By:     _____
                                                Brooke Myers Wallace