May 21, 2026

Hon. Ajay S. Krishnan

Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 4:24-cv-06917 (N.D. Cal.)

Dear Judge Krishnan:

WP Engine, Inc. ("WP Engine") and Defendants and Counterclaimants ("Defendants") respectfully submit this joint letter brief regarding documents identified during the deposition of Iain Poulson, WP Engine's Rule 30(b)(6) corporate representative and Principal Product Manager for the ACF plugin.

## I. DEFENDANTS' POSITION

WP Engine has built its case around the Advanced Custom Fields ("ACF") plugin, alleging that Defendants' fork of ACF caused customer losses, depressed renewals, suppressed conversions, disrupted an entire sales channel, and inflicted lasting reputational harm. TAC ¶¶ 156, 187–188. Those allegations drive a substantial portion of WP Engine's purported damages. Yet, WP Engine has not produced records it created in the ordinary course of business to measure those very things.

WP Engine designated Mr. Poulson, its Principal Product Manager for ACF, under Rule 30(b)(6) for ACF-related topics. He testified that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Yet many still have not been produced.

WP Engine is wrong to argue that these issues are "moot." That it produced certain responsive spreadsheets (WPE00639499 and WPE00639500) at 11:25 pm PT on May 14—in the last hour before the close of fact discovery, after all its witnesses had been deposed, and after Defendants had been demanding these documents for months—only underscores the prejudice. The belated production does not cure the deficiencies in any event: WP Engine still has not produced all the responsive documents even though WP Engine is not asserting privilege, claiming burden, or contesting relevance. The Court should compel production.

### A. The Withheld Documents

Each item below was identified by WP Engine's own 30(b)(6) designee, exists in the systems WP Engine uses in the ordinary course of business, is responsive to RFPs WP Engine agreed to answer, and bears directly on liability, causation, and damages.

*Google Document underlying Exhibit 9*. Exhibit 9 to Mr. Poulson's deposition (WPE00511012) is an email chain ██████████████████████████████████████████████████████████ █████████████████████ circulated between Mr. Poulson and WP Engine's brand team. WP Engine has not produced the underlying Google Document and now, for the first time in this letter brief, claims it is privileged. That assertion is suspicious. WP Engine already produced the related email chain without asserting privilege and did not raise this issue during months of meet and confers. Defendants reserve the right to challenge the designation and seek *in camera* review.

*Monthly ACF Dashboard*. ██████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████

1

█████████████████████████████████████████████████████████████ WP Engine claims it produced this document as WPE00639499, in the last hour of fact discovery, despite of months of requests. That file is corrupted and cannot be opened. It must be produced in a usable form.

*Refund-Reasons Log.* ████████████████████████████████████████████████████████████

███████████████████ expressly ████████████████████████████████████████████████ WP Engine has already produced. WP Engine claims it produced the log as WPE00639500, again in the final hour of fact discovery, depriving Defendants of any opportunity to examine Mr. Poulson or any other witnesses about it. The production also appears limited to data from 2023 onward. This request is not "new," as WP Engine wrongly claims: Defendants are entitled to the information dating back to 2021, in response to RFP Nos. 13 and 77, among others.

*BI Team / Data-Warehouse Reports.* ████████████████████████████████████████████

████████████████████████████████████████████████████ WP Engine claims this issue is "moot" because the data is "populated in" the Monthly ACF Dashboard (WPE00639499). █████████████████████

████████████████████████████████████████████████████████████████████████████████ ███████████████ Defendants are entitled to source data, not merely the roll-up. These requests are also not new: The reports are relevant to damages and responsive to RFP Nos. 13, 15, and 59, among others.

*Google Analytics and Search Console Data.* WP Engine tracks ACF website traffic and conversion metrics—including in-plugin upsell clicks that result in ACF PRO purchases—through Google Analytics. WP Engine claims WPE00615201 resolves this issue, █████████████████████████████

███████████████████████ WP Engine alleges the hijacking "suspended a channel for generating new customers" because 15% of ACF PRO subscriptions originated from click-throughs on the standard ACF plugin page. TAC ¶ 187. Defendants are entitled to the underlying analytics data to test that allegation, which is responsive to RFP Nos. 124 and 212, among others. This, too, is not a "new" request, contrary to WP Engine's mischaracterization.

*Annual ACF User Survey Data.* ██████████████████████████████████████████████████

███████████████████████████████ WP Engine produced the full 2023 dataset and a 2024 dataset of roughly 1,300 respondents. Defendants accept WP Engine's representation that there was no 2022 survey.  But WP Engine should be ordered to produce data associated with the 2025 survey even if that survey purportedly is "not yet complete." Survey data gathered in the ordinary course cannot be withheld simply because the party has not finished formally analyzing it. Multi-year data is needed to establish a baseline for user sentiment and acquisition sources and to isolate any changes attributable to Defendants' conduct. Responsive to RFP Nos. 108 and 109, among others.

*Brand Studies Measuring Reputational Harm.* WP Engine alleges reputational harm. TAC ¶¶ 187, 188. ██████████████████████████████████████████████████████████████████████

██████████████████████████ WP Engine seeks to dismiss this testimony as uninformed even though Mr. Poulson testified as a corporate representative. WP Engine claims that after a "reasonable search," it was unable to locate any brand studies regarding ACF, but it has not disclosed the scope of that search or explained why its 30(b)(6) witness was not informed of its results before testifying. If

2

WP Engine's position is that no such studies exist, it should certify that under oath. These studies are directly responsive to at least RFP Nos. 124, 108, and 109, among others.

**B. Relevance and Burden**

These documents go directly to WP Engine's core claims, including the alleged ACF "hijacking," ACF PRO cancellations and renewals, WP Engine's damages model, and its purported reputational harm. ███████████████████████████████████████████████████████ ██████████████████████████████, and that he reviewed several of them to prepare for his Rule 30(b)(6) testimony. The obligation to produce them is straightforward. Courts recognize a "heightened need to discover" documents used to prepare a 30(b)(6) witness. *Adidas Am., Inc. v. TRB Acquisitions LLC*, 324 F.R.D. 389, 397 (D. Or. 2017). Where a designee confirms under oath that responsive records exist and are routinely used, Rule 26(e)(1) requires supplementation. WP Engine cannot place ACF-related harms at the center of this case, rely on the materials to support its claims and prepare its corporate designee, and then refuse to produce them. Defendants respectfully request an order compelling production without further delay.

WP Engine's cross-motion regarding "ACF Plugin Data" on wordpress.org misrepresents the record and Defendants' systems. Mr. Abrahamson testified ███████████████████████ ████████████████████████████. Dep. Tr. (Vol. 2) 608:7–21. Because wordpress.org does not require authentication to download plugins and does not log personal user data, the only information maintained in the "stats" database is aggregate plugin-install data. Defendants already produced that aggregate data. The user-identification data WP Engine seeks simply does not exist.

WP Engine's request for a declaration regarding preservation of ACF data is equally improper. WP Engine never previously requested such a declaration, never attempted to meet and confer about one, and first raised the issue only on the evening of the filing deadline for this brief. WP Engine again attempts to insinuate "spoliation" based solely on the absence of data that Defendants' systems were not designed to retain. The identities of ACF users are irrelevant to this case and WordPress.org's systems were designed not to retain such identifying information for more than 48 hours to protect user privacy. Defendants fully complied with their preservation obligations, which did not extend to creating or retaining non-existent user-identification data. There is no basis for further relief or the declaration WP Engine belatedly demands.

**II. PLAINTIFF'S POSITION**

The issues raised in Defendants' letter brief are moot and their motion is meritless. WPE produced the requested documents before the close of fact discovery, except to the extent the requested documents are privileged, or do not exist. The Court should deny the motion in its entirety.

Additionally, Defendants' own production of ACF-related plugin data on wordpress.org is woefully deficient and should be produced.

**A.      WPE Is Not Withholding Documents**

*Google Document underlying Exhibit 9*.  **This issue is moot**.  The referenced Google document titled ██████████████████████████████████ is privileged and has been added to WPE's privilege log.  *See* Keohane Decl. ¶ 2.  Defendants' claim that this is "suspicious" is rampant speculation.

3

*Monthly ACF Dashboard*.  **This issue is moot**.  WPE produced this spreadsheet as WPE00639499.  WPE produced this document one week ago. Defendants for the first time today claim the document is corrupted.  WPE has reviewed it and confirmed that the main tab of the spreadsheet is not corrupted.  To the extent other tabs including pivot tables are not displaying information properly, those errors were in the original version of the spreadsheet and are not the result of any problem with the production.  Nevertheless, WPE already informed Defendants that it will confirm that the original spreadsheet has the same display errors; if not, WPE will reproduce a new version.  There is nothing to compel.

*Refund-Reasons Log*.  **This issue is moot**.  WPE produced this spreadsheet as WPE00639500.  Defendants' claim that they are entitled to two more years of data, going back to 2021 (which is before WPE even owned ACF) is both a new demand and also groundless.

*BI Team / Data-Warehouse Reports*.  **This issue is moot**.  The data ██████████████ ████████████████████████████████████ which WPE produced as WPE00639499.  Defendants' new claim that they are entitled to source data is new, and is wholly consistent with Defendants' own production.

*Google Analytics and Search Console Data*.  **This issue is moot.**  WPE has already produced a spreadsheet containing the analytics data Defendants seek.  The spreadsheet data is sourced from Google Analytics.  WPE produced that spreadsheet as WPE00615201, which contains the data █ ██████████████████████████.  Defendants' new claim that they are entitled to all source data is groundless and also inconsistent with Defendants' own production of screenshots of plugin analytics data and dashboards for Wordpress.org.

*Annual ACF User Survey Data*.  **This issue is moot.**  As Defendants concede, WPE already produced ACF user surveys for 2023 and 2024 (WPE00480347 and WPE00480324, respectively).  Defendants falsely state that the 2024 dataset was "partial."  That is incorrect.  The 2024 survey included 1,348 respondents.  *See* Keohane Decl. ¶ 3.  There was no 2022 survey, and the 2025 survey is not yet complete.  The parties' agreed cutoff for document discovery is 8/15/25; the 2025 survey, once complete, will be dated in 2026, and falls outside the scope of agreed discovery.

*Brand Studies Measuring Reputational Harm*.  **This issue is moot**.  Mr. Poulson is not part of the Brand team, and WPE has confirmed that the Brand team did not address the ACF hijacking in their studies.  Defendants mischaracterize Mr. Poulson's testimony.  ██████████████████████ ████████████████████████████████████████████████  Mr. Poulson is the Principal Product Manager for the ACF plugin and WPE never designated him as a corporative representative on all reputational harm to WPE. After a reasonable search, WPE was unable to locate any such brand studies regarding ACF.  WPE has also confirmed that its Brand Awareness Studies did not include ACF issues. *See* Keohane Decl. ¶ 4.  There is nothing to compel.

## B.      Defendants Should Be Ordered to Produce Their ACF Plugin Data

It is Defendants, not WPE, who have failed to produce ACF-related documents.  More specifically, the plugin analytics data produced by Defendants is deficient.  WPE requests the immediate production of all data collected by Defendants as part of any callbacks, API requests, or "phone home" status checks to wordpress.org, including but not limited to data sent to wordpress.org as part of the plugin update process.

4

For example, WPE requested documents pertaining to "the number and identity of visitors to https://wordpress.org" that subsequently downloaded the ACF or SCF plugins. Ex. 3 at 11-12 (RFP Nos. 172-176). Defendants' Rule 30(b)(6) witness Barry Abrahamson testified ███████ ████████████████████████████████ *See* Ex. 2 at 29:1-10 ("███████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ This data is within ██████████████████████████████████████████████████████████████████ Defendants' exclusive possession. ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ Defendants should be ordered to produce it immediately. *Id.* at 136:16-20.

Defendants now claim that this information does not exist, but conspicuously fail to disclose whether the information, which clearly existed at one time, could have (and should have) been retained after Defendants' preservation obligations arose in 2024. There is of course an obligation both to preserve existing data and to disable any auto-delete functions that will otherwise spoliate relevant evidence, such as the identities of all of the ACF customers Defendants hijacked from WPE. WPE requests that Defendants describe under oath in a sworn declaration: (1) what user data (including identifying information such as IP address, site URL, or hostname) was sent to wordpress.org pertaining to ACF plugin users; (2) what user data Defendants have access to today; (3) what steps Defendants took to preserve this user data (including identifying information) sent to wordpress.org; (4) whether Defendants could have but failed to disable any auto-delete commands related to this user data, and (5) whether Defendants could have but failed to ensure the collection and preservation of this user data.

Stunningly, Defendants admit their systems store the requested ACF user identifying information—but then delete it—purportedly "to protect user privacy." There is no "user privacy" exception to the law against spoliation; any deletion after 48 hours should have been disabled after Defendants' preservation obligations arose, confirming the spoliation of this highly relevant data. Defendants' contention that this identifying information is "irrelevant to this case" is belied by Defendants' own questioning of Mr. Poulson at his deposition where Defendants asked Mr. Poulson to identify specific, lost ACF customers at least *12 times* (Keohane Decl. ¶ 5)— information that we now know was expressly recorded by Defendants' systems. Defendants' claim that "the data was gone…long before WP Engine filed this lawsuit" makes no sense. Defendants hijacked WPE's ACF plugin on October 12—ten days *after* WPE filed the instant lawsuit. According to Defendants' own admissions, therefore, their systems would have recorded the identity of all ACF users after Defendants' preservation obligations arose. The Court has already required one sworn declaration from Defendants because it found their document preservation efforts "concerning." Dkt. 272. It should do so again here.

Dated:  May 21, 2026

QUINN, EMANUEL URQUHART & SULLIVAN, LLP
By: */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
Gregory A. Fuoco
*Attorneys for Plaintiff WPEngine, Inc.*


GIBSON DUNN & CRUTCHER, LLP
By:  */s/ Ilissa S. Samplin*
Michael H. Dore
Joseph R. Rose
Ilissa S. Samplin

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

**E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Plaintiff and the other signatories have concurred in the filing of this document.

*/s/ Ilissa S. Samplin*

Ilissa S. Samplin