May 21, 2026
Hon. Ajay S. Krishnan
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 3:24-cv-06917 (N.D. Cal.)
**(Corrected Version)**
Dear Judge Krishnan:

I.       **DEFENDANTS' POSITION**

WPEngine, Inc. and Defendants and Counterclaimants (together, the "Defendants") respectfully submit this joint letter brief regarding categories of plainly responsive documents that WP Engine has failed to produce from the files of its Chair and CEO, Heather Brunner, and its VP of Corporate Development, Victor Yuan. These gaps were confirmed during Brunner's April 29–30 and Yuan's May 6–7 depositions. Fact discovery closed May 14, 2026. This dispute must be resolved now.

WP Engine's case rests on a single proposition: that Defendants' conduct beginning in September 2024 destroyed an otherwise healthy business and caused close to ▮▮▮▮▮ in damages—▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Wallace Decl., ⁋ 3.) The documents Defendants seek demolish that proposition. They are WP Engine's own contemporaneous records—created by its management, controlling investor, banker, and strategy consultants—▮▮▮▮▮▮▮▮▮▮  WP Engine concealed this evidence throughout the parties' extensive negotiations over the production of documents supporting its damages claims. WP Engine does not deny relevance, nor has it identified any burden. Instead, it asks the Court to overlook these gaps on two procedural theories—waiver and scope—both of which fail.

A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Disprove WP Engine's Damages Theory.**

Brunner testified that she reviewed and commented on drafts of the ▮▮▮▮▮. (*Id.* ⁋ 4.) WP Engine does not deny the drafts or her comments exist—it simply refuses to produce them. Beyond damages and causation, these materials go to the heart of Defendants' antitrust and trademark theories: the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is difficult to imagine more directly relevant documents.

B. ▮▮▮▮▮▮▮, **Silver Lake, and Financial Reporting Documents** ▮▮▮▮▮▮.

WP Engine tried to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ⁋ 10.) In 2023— ▮▮▮▮▮▮—WP Engine ▮▮▮▮▮▮▮▮▮ WP Engine tried again to ▮▮▮▮▮▮▮▮▮▮▮ and failed again. WP Engine cannot put ▮▮▮▮▮▮▮ at issue and then refuse to produce the

1

contemporaneous documents reflecting what the company was actually worth and why. Those documents are responsive to Defendants' requests (RFPs 10, 15, 59, 60, 62, 64, 65) and include:

(1) Brunner's and Yuan's communications relating to WP Engine **board decks**;

(2) Brunner's communications with ▮▮▮▮▮▮▮▮ and the ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(3) Brunner's communications with the ▮▮▮▮▮▮▮, or materials reflecting their substance;

(4) Brunner's communications with **Silver Lake** about **WP Engine's valuation and** ▮▮▮▮▮;

(5) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

(6) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Defendants discovered 6 and 7 existed last week);

(7) a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and

(8) the ▮▮▮▮▮▮▮▮▮▮ **engagement materials**.

WP Engine's principal substantive objection—that most of these categories fall "outside the scope" of the parties' production agreement—is refuted by WP Engine's own production. (Id. ¶¶ 6-16) In half of the categories, WP Engine concedes it has produced *some* responsive documents—a curated, cherry-picked subset. **Defendants entered the production agreement to avoid burdening the Court with motion practice in advance of depositions—not to empower WP Engine to cherry-pick within categories it has now conceded are responsive.**

For example, WP Engine says it has produced "hundreds of documents" relating to board decks (#1) and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (#2), and thousands of emails "to, from, or both" Wittlinger and Zhang (#4). By producing some documents from each category, **WP Engine concedes they fall within the scope of the parties' agreement**. The only question is whether production is complete. It plainly is not.

(1) No draft board decks or communications relating thereto. (*Id.* ¶ 20.)

(2) Nothing memorializing investors' substantive feedback on WP Engine in 2021 or 2024. (*Id.*)

(3) Nothing with or about Brunner's conversation with the ▮▮▮▮▮▮▮. (*Id.*)

(4) Despite testimony that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶ 4), WP Engine produced **only 11 emails between them** during ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, **and only 13 emails from 2024—only two of which are not redacted responses to Matt's September demand.** (*Id.*) That is implausible on its face and compels the inference that responsive communications have been withheld. WP Engine's reliance on aggregate counts is unavailing. The issue is not "1,113 emails to, from, or copying one or both" of Wittlinger and Zhang—it is whether WP Engine produced the **substantive** communications **between Ms. Brunner and her controlling investors** about valuation, financial performance, ▮▮▮▮▮, **and** the ▮▮▮▮▮▮▮. They have not.

(5) Only ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Silver Lake between 2020-2025.

(6) No final ▮▮▮▮▮▮▮▮▮▮▮ (the one WP Engine references below is a draft).

(7) ███████████████ . (WP Engine's response to this letter brief, received at 3 AM on the filing deadline five days after Defendants sent the brief to them says—for the first time—that this will be produced without explaining why it wasn't produced long ago.)

(8) No ███████████ engagement materials, even though they should be in the communications WP Engine agreed to produce.

## C. There Is No Waiver.

WP Engine's lead procedural argument—that Defendants "waived" any objection by not raising it during Ms. Brunner's deposition—is demonstrably false. Before the deposition, Defendants flagged the missing document categories in writing; WP Engine's response was that Defendants had "more than enough material to take Ms. Brunner's deposition." (*Id.* ¶¶ 13-14.) During the deposition, Defendants' counsel demanded production on the record and expressly reserved the right to recall the witness.

> MR. SNYDER:  I'm just going to ask counsel, if you can, today and this evening, in advance of tomorrow, search that — both that Google Drive and Slack again for communications with the C-suite concerning the agreed upon financial topics.
>
> MS. KASSABIAN:  I would be happy to receive any request from your team, preferably by e-mail so they don't get lost in the shuffle, and I would be happy to look into it.
>
> MR. SNYDER:  And obviously reserve the right, given her testimony about the Google drafts, to recall her in the event that those aren't produced.

WP Engine's counsel solicited the email request, Defendants sent it, and WP Engine never disputed the recall reservation. (*Id.* ¶ 21.) There is no waiver.

Defendants respectfully request that the Court (1) order WP Engine to produce the documents identified in Section I in 14 days; (2) grant Defendants leave to recall Ms. Brunner at WP Engine's expense; and (3) reserve Defendants' right to seek an extension of the fact discovery cutoff.

## II.    WPE'S POSITION

Defendants' motion is a sham and should be denied.

Defendants claim to demand a broad swath of financial documents, but conveniently omit that the parties entered into a comprehensive and binding reciprocal agreement to produce certain categories of financial documents, and to drop other categories, in order to resolve their disputes. The vast majority of Defendants' demands in this motion fall outside that agreement, and thus were unequivocally waived. As for the remainder, WPE has already produced them.

This case is about Defendants' admitted "nuclear war" launched against WPE, with Defendants' stated goal of destroying WPE "brick by brick," for WPE's failure to capitulate to Defendants' extortionate monetary demands.  With no colorable basis to deny Defendants' reprehensible and intentional wrongdoing, Defendants instead attempt to manufacture an alternate causation narrative in order to shift attention away from their own misconduct.  Specifically, Defendants urge that WPE was simply a poorly-run business that was doomed to fail anyway, such that Defendants' intentional efforts to destroy WPE should be excused.  Defendants are wrong on all counts.

### A. The Parties' Reciprocal Agreement is Comprehensive and Binding

After months of negotiations over the scope of financial discovery, the parties reached a reciprocal agreement in late March, 2026. As characterized by Defendants' own lead counsel, the

negotiations were an effort to "resolve" the disputes, "close this out," avoid "motion practice," and implement a "balanced agreement" reached after "both sides made concessions." Declaration of Sara Jenkins ("Jenkins Decl."), ¶¶ 3-5. Neither side reserved any rights to later seek additional categories of financial documents and both parties proceeded in accordance with the agreement.

Defendants now attempt to renege on prior representations, stating that they "entered the production agreement to avoid burdening the Court with motion practice in advance of depositions." The face of the agreement confirms otherwise. *See* Jenkins Decl. ¶¶ 4-7. Neither party reserved any right to later seek additional categories of financial documents that the parties had mutually waived in reaching this agreement. Defendants cannot now reopen settled discovery disputes merely because they regret the bargain they struck.

## B. Most of Defendants' Demands Fall Outside the Agreement

Defendants' portion of this joint letter includes multiple lists of documents that Defendants now claim they are entitled to receive notwithstanding the parties' negotiated reciprocal agreement. The categories listed below fall outside the scope of that agreement:

1. Draft board decks and related drafting communications. Jenkins Decl. ¶ 11.

2. Draft ▮▮▮ materials and comments on drafts. *Id.*

3. Ancillary communications concerning investor feedback, valuation discussions, and strategic planning relating to ▮▮▮▮▮▮▮▮▮▮. *Id.*

4. Monthly ▮▮▮▮▮▮ packages. *Id.*

5. ▮▮▮▮▮ communications. *Id.*

6. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮ *Id.*

7. ▮▮▮▮▮ engagement materials. Jenkins Decl. *Id.*

Having not demanded their inclusion in the reciprocity agreement, Defendants may not demand them now. And contrary to Defendants' claim, WPE's production of stray documents touching on certain subjects does not somehow constitute a concession that every document arguably relating to those subjects fell within the parties' negotiated agreement.

## C.    WPE Has Already Produced or Agreed to Produce the Remaining Documents Defendants Demand

WPE has already produced or agreed to produce the remaining documents sought by Defendants' motion.

1. Communications with ▮▮▮▮▮: WPE has satisfied its agreement to produce communications with ▮▮▮▮▮ by producing more than 1,400 such communications. Jenkins Decl. ¶ 8.

2. Communications with Silver Lake: WPE produced more than 633 emails to, from, or copying Ms. Brunner and one or both of Mr. Wittlinger or Mr. Zhang, including 479 communications between 2021 and 2023. Jenkins Decl. ¶ 17.

3. ▮▮▮▮▮▮▮▮▮▮: This is moot. WPE has produced ▮▮▮▮. *See* WPE00615745; Jenkins Decl. ¶ 8.

4.    ███████████████████████████████████████████████ on May 21, 2026.

**D.    WPE Has Made Extensive Financial Productions and Nothing Else Should Be Required**

Defendants' motion ignores the extraordinary scope of WPE's production of financial documents. WPE has produced more than 630,000 pages of documents in this action, including at least 13,000 pages of finance-related materials alone. Jenkins Decl. ¶ 13. As part of the parties' negotiated reciprocal agreement concerning financial discovery, WPE produced: (i) valuations, board minutes, board presentations, and communications with investment bankers ████████████████████████████████ (2021–2025), as well as documents referring to an actual or planned ███████████ for WPE (2021–2025); and (ii) financial forecasts approved by WPE's Board, and their underlying basis (2021–2025). Jenkins Decl. ¶ 8. WPE also produced balance sheets, cash flow statements, income statements, monthly recurring revenue spreadsheets, win-loss reports, historical forecasts, profit and loss statements, and other financial data. Jenkins Decl. ¶ 8.

WPE made this extensive financial production not because these sweeping categories of financial materials are relevant to the claims and defenses in this case, but because Defendants insisted on expansive financial discovery in an effort to support their alternate causation theory and shift attention away from their egregious misconduct underlying WPE's claims.

But discovery has limits. Federal Rule of Civil Procedure 1 requires the "just, speedy, and inexpensive determination" of actions, and Rule 26 limits discovery to material that is both relevant and proportional to the needs of the case. Having already received massive financial productions from WPE pursuant to the parties' negotiated compromise, Defendants cannot now reopen and expand financial discovery indefinitely simply because they regret the scope of the agreement they negotiated.

**E. Defendants Are Not Entitled to Any of Their Requested Relief.**

Defendants are not entitled to the additional categories of documents they seek. As explained above, WPE complied with the reciprocal agreement governing the scope of financial discovery, and no further production is warranted.

Defendants are not entitled to any more deposition time with Ms. Brunner. There is no basis whatsoever to reopen Ms. Brunner's deposition, much less at WPE's expense. Ms. Brunner, WPE's CEO, already sat for two full days of deposition testimony. Defendants questioned her extensively using the financial documents WPE produced pursuant to the parties' agreement, including productions relating ████████████████████████████████████████████████, board materials, and Silver Lake. Jenkins Decl. ¶ 18. Defendants did not leave the deposition open, did not seek judicial intervention before the deposition concluded, and knowingly proceeded with the deposition despite the purported "gaps" they now complain about. Defendants are not entitled to another day of deposition with WPE's CEO simply because they now wish they had negotiated for broader discovery or asked different questions.

Defendants' request to "reserve" the right to seek an extension of the fact discovery cutoff is a nonstarter. Fact discovery is over. Defendants cannot seek to reopen fact discovery via a joint discovery letter.  Nor do they have any plausible basis to do so.

Dated: May 21, 2026

QUINN, EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
Yury Kapgan
Margret M. Caruso
Brian Mack
Gregory A. Fuoco
*Attorneys for Plaintiff WPEngine, Inc.*


GIBSON DUNN & CRUTCHER, LLP

By: */s/ Brooke Myers Wallace*
Josh A. Krevitt
Orin Snyder
Michael H. Dore
Joseph R. Rose
Ilissa S. Samplin
Brooke Myers Wallace

*Attorneys for Defendants Automattic Inc. and Matthew Charles Mullenweg*

6

**E-FILING ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I hereby attest that counsel for Defendants and the other signatories have concurred in the filing of this document.

*/s/ Sara Jenkins*

Sara Jenkins