QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for WPEngine, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Defendants. | Case No. 4:24-cv-06917-AMO<br><br>**WPENGINE, INC.'S OPPOSITION TO DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM** |
| AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | |

**TABLE OF CONTENTS**

**Page**

I.    LEGAL STANDARD ..................................................................................................2

II.   ARGUMENT ............................................................................................................3

      A.    Defendants Fail To Establish That The Unredacted Portions Of
            A8C00706108 Reflect Privileged Communications From In-House Counsel
            Seeking Legal Advice ...................................................................................3

      B.    Defendants' Original Production of a Redacted Version Establishes That
            Disclosure Was Not Inadvertent and Forecloses A Clawback Claim ........................8

      C.    The Court Should Conduct An *In Camera* Review ..................................................10

III.  CONCLUSION .........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*,
408 F.3d 1142 (9th Cir. 2005)................................................................................ 7, 10

*De Coster v. Amazon, Inc.*,
2025 WL 904465 (W.D. Wash. Mar. 25, 2025)................................................... 3, 8

*Epic Games, Inc. v. Apple Inc.*,
2025 WL 4663944 (N.D. Cal. Feb. 25, 2025)........................................................ 9

*F.T.C. v. Amazon.com, Inc.*,
2024 WL 3620467 (W.D. Wash. Aug. 1, 2024) ............................................... 3, 8, 9

*In re Grand Jury*,
23 F.4th 1088 (9th Cir. 2021)............................................................................. 2, 3

*Hynix Semiconductor Inc. v. Rambus Inc.*,
2008 WL 350641 (N.D. Cal. Feb. 2, 2008).......................................................... 2, 7

*Lewis v. Wells Fargo & Co.*,
266 F.R.D. 433 (N.D. Cal. 2010) .......................................................................... 8

*McCaugherty v. Sifferman*,
132 F.R.D. 234 (N.D. Cal. 1990) ........................................................................ 2, 6

*Oracle Am., Inc. v. Google, Inc.*,
2011 WL 3794892 (N.D. Cal. Aug. 26, 2011)........................................................ 3

*Pollock v. Nationwide Mutual Ins. Co.*,
549 F.Supp.3d 1202 (D. Idaho 2021)..................................................................... 9

*Stirratt v. Uber Techs., Inc.*,
2024 WL 1723710 (N.D. Cal. Apr. 19, 2024) ...................................................... 2, 7

*In re Uber Technologies, Inc.*,
2025 WL 327742 (N.D. Cal. Jan. 29, 2025) ........................................................... 8

*United States v. ChevronTexaco Corp.*,
241 F. Supp. 2d 1065 (N.D. Cal. 2002) ................................................................. 2

*United States v. Graf*,
610 F.3d 1148 (9th Cir. 2010)............................................................................... 2

*United States v. Martin*,
278 F.3d 988 (9th Cir. 2002)................................................................................. 2

WPE'S OPPOSITION TO DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ................................................................................................................... 2

WPE'S OPPOSITION TO DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM

In asking the Court to clawback A8C00706108 from production, Defendants heavily rely upon the argument that an internal Slack channel nominally designated "trademark-wpe-privileged" operated as a uniformly privileged legal advice forum, such that virtually every message exchanged within it is privileged. At the same time, however, Defendants admit (as they must) that they produced 12 **non-privileged** documents from the very same Slack channel. Dkt. 285-2 (Hinkes Decl.) ¶ 6. Given that attorney-client privilege attaches to specific communications, not to platforms, topics, or channels, it is reasonable that Defendants produced documents reflecting business communications on this Slack channel, despite the channel being denominated as "privileged." It is not reasonable, however, for Defendants to now argue that a presumption of privilege should apply to all communications on this Slack channel.

Although the communications contained in A8C00706108 took place on the "trademark-wpe-privileged" Slack channel, no attorney participated in these communications and there is no reason to believe they reflect anything other than ordinary business discussions among Defendants' senior leadership, similar to the other 12 documents produced from this Slack channel. Tellingly, Defendants do not provide a declaration from any of the individuals who actually participated in the communications at issue, instead opting to provide a declaration from Jordan Hinkes, Automattic's General Counsel. Mr. Hinkes' declaration, however, is insufficient. The declaration does nothing more than establish that the Slack channel was occasionally used in connection with a privileged presentation deck, which is not at issue here. Mr. Hinkes provides no particularized showing as to why the July 24 exchange in A8C00706108 (in which he does not participate) satisfies the primary purpose test for privilege.

The clawback history reinforces WPE's position. Defendants reviewed A8C00706108 before its original production, made deliberate redaction decisions, and produced the remaining text as **not privileged**. Defendants' claim that they mistakenly produced A8C00706108 cannot be reconciled with their conscious application of line-by-line redactions to portions of it. In short, A8C00706108 is no different than the other documents Defendants produced from this same Slack channel as not privileged. Defendants' clawback motion should be denied.

## I.    LEGAL STANDARD

The party asserting attorney-client privilege bears the burden of proving each element of the privilege. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Because privilege obstructs the truth-seeking function of litigation, it is strictly construed against the party asserting it. *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The Ninth Circuit applies the "primary purpose" test: a communication is privileged only if its primary purpose was to give or receive legal—as opposed to business—advice. *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). Where a communication serves both legal and business purposes, privilege attaches only if the legal purpose predominates. *Id.* That inquiry focuses on the "speaker" of the communication—not the subject matter generally. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Where there is a "clear business purpose in the environment in which the communication occurred," the party asserting privilege must further establish that the communication would "not have been made absent the privilege"—meaning it cannot be a communication that would have been made because of a business purpose alone, even if there was an additional interest in securing legal advice. *McCaugherty v. Sifferman*, 132 F.R.D. 234, 238 (N.D. Cal. 1990).

The "corporate intermediary" doctrine—upon which Defendants rely—does not broadly protect communications among non-lawyers simply because they discuss matters on which counsel is also working. Rather, the doctrine requires a specific showing that: (1) the communication was made ***at the express direction of counsel***; (2) the information conveyed was necessary for counsel to provide legal advice; and (3) the communication was covered by a veil of confidentiality. *Upjohn Co. v. United States*, 449 U.S. 383, 394–95 (1981). Generalized association with a legal matter is insufficient. A vague declaration stating only that a document "reflects" an attorney's advice is likewise insufficient to carry the privilege burden. *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008). Courts must be particularly skeptical of assertions that communications authored by non-lawyers "reflect" or are "infused with" in-house counsel's legal advice on a business issue. *See e.g.*, *Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *4-5 (N.D. Cal. Apr. 19, 2024).

As to inadvertent disclosure, courts in the Ninth Circuit ask simply whether the production "was a mistake" as opposed to an intentional decision. *F.T.C. v. Amazon.com, Inc.*, 2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024). A party that affirmatively reviews and partially redacts a document prior to production should not be permitted to later claim the unredacted portions were disclosed by mistake. *Id.* (finding that defendant waived its privilege claim regarding nearly all of the documents at issue by producing some documents intentionally with redactions); *see also De Coster v. Amazon, Inc.*, 2025 WL 904465, *4-5 (W.D. Wash. Mar. 25, 2025) (finding defendant could not show inadvertence with regards to the production of two documents because the company intentionally produced the documents in redacted form after its privilege review).

## II.   ARGUMENT

### A.   Defendants Fail To Establish That The Unredacted Portions Of A8C00706108 Reflect Privileged Communications From In-House Counsel Seeking Legal Advice

The attorney-client privilege protects only those communications whose primary purpose was to give or receive legal advice. *In re Grand Jury*, 23 F.4th at 1091. That showing must be made document by document, with specificity. It cannot be satisfied by pointing to the general purpose of a Slack channel, the presence of attorneys as members of that channel, or the privileged nature of related documents. Moreover, the fact that the channel's name contains the word "privileged" is not dispositive. Courts have treated the presence or absence of privilege markings as one factor in the privilege determination, *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) (a party's mere marking of an email as "work product" did not receive protection, despite the fact that it was sent to in-house counsel, because the party failed to show its primary purpose was legal), but a label cannot create privilege where the substantive requirements are not met. If a channel name were sufficient, parties could immunize entire communication platforms—including platforms used for routine business discussions—by appending the word "privileged" to it. That is not and cannot be the law.

Here, Defendants fail to make the necessary showing to establish that A8C00706108 satisfies the primary purpose test. Defendants' production of twelve other documents from the same Slack channel proves that business discussions took place on that channel. And the Hinkes

Declaration, Defendants' sole evidentiary support, fails to establish that the specific July 24 exchange was made at the direction of counsel and primarily for the purpose of obtaining legal advice.

Defendants focus on the claim that the "trademark-wpe-privileged" Slack channel was created exclusively for privileged legal communications and was not intended to be used for general business planning or operational decisions. Dkt. 285-2 (Hinkes Decl.) ¶ 6. Regardless of Defendants' initial intent, it is clear that Defendants' employees used the channel for business discussions. Defendants' production of twelve non-privileged documents from this channel means that Defendants' counsel determined—after conducting a privilege review—that some communications in the channel did not warrant privilege protection. Indeed, employees occasionally used the channel to have ███████████████████████████████████████ ████████████████████████████████████, none of which reflects attorney direction or legal advice-seeking.

For example, on July 22, 2024, ████████████████████████████████ ████████████████████████████████████████████████████████ ██████. Keohane Decl., Ex. 2 (A8C00706106). Similarly, on July 30-31, 2024, ███████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ not legal advice-seeking. Keohane Decl., Ex. 3 (A8C00708215). In another example, on August 13, 2024, ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████. Keohane Decl., Ex. 5 (A8C00213017). Most damaging to Defendants' position, a produced document bearing messages timestamped July 24, 2024 (the same date as the clawed-back document) ███████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

█████████████████████████████████████████. Keohane Decl., Ex. 4 (A8C00786423). Defendants produced that document without asserting privilege. Defendants offer no explanation for why A8C00706108, generated on the same day, in the same channel, and ████████████████████, should be treated differently.

Defendants attempt to support their privilege claim with Mr. Hinkes' statement that "[t]he messages [in A8C00706108] reflect feedback on the slides' content, suggestions for refining the legal strategy reflected in the deck, and discussion of escalation approaches and enforcement timelines—all in furtherance of the legal advice being provided by Mr. Peretz and me." Dkt. 285-2 (Hinkes Decl.) ¶ 10. This is plainly insufficient. The individuals actually involved in the communications have not submitted declarations asserting that the statements were made for the purpose of receiving legal advice from Mr. Peretz or Mr. Hinkes. *See e.g., Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 871 (N.D. Cal. 2019) (finding defendant could not establish one of the documents at issue was privileged where it submitted a declaration from someone who "was not part of the exchange" and "[n]one of the employees who were copied on the chain … submitted a declaration attesting to the content of the email or the source of the question copied in the email"). And Mr. Hinkes has no foundation to assert the intention or motive of the speakers. Indeed, it is just as plausible that Jesse Friedman, Mark Davies, Steve Deckert, and Matthew Mullenweg were discussing business issues and business strategies related to a similar topic as the slide presentation, but were not seeking legal advice in these communications. The Hinkes Declaration establishes at most that: (1) the channel was initially established to facilitate privileged communications; (2) in-house counsel were *members* of the channel;[1] and (3) some communications in the channel were made in connection with legal advice. None of this establishes that the specific July 24 exchange—a conversation among four non-lawyers, Mr. Friedman, Mr. Davies, Mr. Deckert, and Mr. Mullenweg—was made *at the express direction of counsel*, as required

---

[1] Notably, the declaration does not establish that either Mr. Hinkes or Mr. Peretz remained active members of the channel as of July 24, 2024, and nothing in the record— no metadata, no privilege log entry, and no statement in the declaration itself—confirms that any in-house or outside counsel was present in or actively monitoring the channel at the time the July 24 exchange occurred.

by *Upjohn* and its progeny.  The Hinkes Declaration identifies no instruction from Mr. Hinkes or Mr. Peretz directing the participants to have the July 24 conversation.  Indeed, Mr. Hinkes acknowledges that he does not recall the July 23 meeting that preceded the exchange.  Dkt. 235-2 (Hinkes Decl.) ¶ 9.  If Mr. Hinkes cannot recall whether he attended the meeting that supposedly set the context for the July 24 communications, the assertion that the July 24 messages were made *at the direction of counsel* rests on no foundation beyond inference.  The declaration identifies no specific instruction from Mr. Hinkes or Mr. Peretz directing the participants to have the July 24 conversation, no communication from counsel assigning the participants a task that the July 24 exchange was undertaken to fulfill, and no basis for concluding that the messages would not have been sent absent counsel's involvement.  The absence of these facts is dispositive.

The Hinkes Declaration's deficiencies are compounded by Mr. Hinkes's own admissions about the limits of his personal knowledge.  With respect to the July 23 meeting that set the context for the July 24 exchange, Mr. Hinkes states plainly:  "I do not recall the July 23 meeting."  Dkt. 285-2 (Hinkes Decl.) ¶ 9.  He then hedges further, attesting only that he "believe[s] a revised version of the presentation deck was provided to Mr. Peretz and/or" himself "for the purpose of obtaining our legal input and advice."  *Id.*  A declarant who cannot recall the meeting that forms the basis for the privilege claim, and who can only speculate about whether he personally received the presentation that was the subject of that exchange, is not in a position to testify reliably that the July 24 Slack messages were made at counsel's direction and primarily for the purpose of obtaining legal advice.

The Hinkes Declaration and Defendants' motion also conflate two distinct privilege questions that must be kept separate: whether the underlying strategy presentation deck is privileged, and whether the July 24 Slack exchange is privileged.  Mr. Hinkes devotes considerable attention to his attempt to establish that all versions of the presentation deck were prepared at the direction of counsel and shared with counsel for legal review.  Dkt. 285-2 (Hinkes Decl.) ¶ 9.  Even accepting that at face value, it does not follow that a separate conversation among four non-lawyers about the same subject matters touched on in the deck carries the same protection.  Privilege attaches to specific communications made for the purpose of seeking or transmitting legal advice—not to any

WPE'S OPPOSITION TO DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM

communication that touches on a subject matter that is also separately the subject of privileged work. *McCaugherty*, 132 F.R.D. at 238. The declaration offers no basis to conclude that the July 24 participants were doing anything other than engaging in the kind of ordinary ███████████ ████████████████████████████ that would have occurred regardless of counsel's involvement.

Taken together, these failures render the Hinkes Declaration legally insufficient to sustain the privilege claim. Courts in this district require more than a declarant's general characterization of a channel's intended purpose and broad assertions that business personnel acted in support of counsel. *See Hynix*, 2008 WL 350641, at *3 (vague declaration stating only that a document "reflects" attorney advice is insufficient); *Stirratt*, 2024 WL 1723710, at *4-5 (declarations insufficient where they failed to connect specific communications to legal advice with adequate specificity). What is required is a particularized showing—tied to the specific communication at issue—that the communication was directed by counsel, would not have been made absent the legal engagement, and that its primary purpose was legal rather than business. The Hinkes Declaration provides none of that as to the July 24 exchange.

Defendants' privilege log entry for A8C00706108 independently confirms these deficiencies. Column M, the "Privilege Description" field, states that the document reflects "Slack communications requesting legal advice from Jordan Hinkes* and Neil Peretz* regarding a pending dispute." Keohane Decl., Ex. 1. Column N, which should identify the "Attorney or Automattic Legal Team Member Whose Advice is Requested and/or Reflected," lists four names: "Andy Missan*, Catherine Silva^, at the direction of counsel, Jordan Hinkes*, and Neil Peretz*." *Id.* The inconsistency is immediate: Column M identifies only Mr. Hinkes and Mr. Peretz as the relevant attorneys, yet Column N adds Andy Missan and Catherine Silva—neither of whom appears anywhere else in the entry, not as an author, participant, or recipient of the communication. *Id.* Their inclusion in Column N appears to be nothing more than a boilerplate log entry copied across other entries, confirming that the log was not prepared through the document-specific analysis that privilege log requirements demand. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1148 (9th Cir. 2005). Most tellingly, Column H—designated for "Attorney Slack

Participants"—is entirely blank for this entry, meaning that Defendants' log contains no indication that any attorney was an active participant or member of the channel in the specific Slack exchange at issue. Keohane Decl., Ex. 1. That admission undermines the privilege claim Defendants now ask this Court to sustain. Further, the log designates the document as "Privileged in Part (Redact)"— meaning Defendants' privilege review contemplated a redacted production, not the complete withholding they now seek. *Id.* The inconsistency between the log's designation and Defendants' current position is reason for skepticism about their claimed privilege position.

The contrast with the cases Defendants cite is instructive. In *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 437-388 (N.D. Cal. 2010), privilege was sustained because in-house counsel had expressly communicated to employees that their communications were being made in connection with an attorney-supervised audit and were protected. In *In re Uber Technologies, Inc.*, 2025 WL 327742, at *11 (N.D. Cal. Jan. 29, 2025), one document at issue was "prepared at the direction of [an] attorney . . . for the specific purpose of obtaining feedback and approval from [the attorney]." Here, by contrast, Defendants offer only generalized, channel-level assertions that participants understood their communications to be confidential and were acting in support of counsel—they identify no specific direction from counsel that triggered the July 24 exchange in particular, and no basis for concluding that the four non-lawyer participants understood themselves on that specific occasion to be acting as necessary agents of counsel rather than conducting an ordinary business discussion.

**B.**    **Defendants' Original Production of a Redacted Version Establishes That Disclosure Was Not Inadvertent and Forecloses A Clawback Claim**

Defendants' inadvertent disclosure argument fails for a simple reason: a deliberate act of review and selective redaction cannot later be characterized as an inadvertent mistake. *F.T.C. v. Amazon.com,* 2024 WL 3620467, at *6; *De Coster*, 2025 WL 904465, *4-5. Indeed, "[w]hen a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call." *F.T.C. v. Amazon.com,* 2024 WL 3620467, at *6. Defendants acknowledge that outside counsel reviewed A8C00706108 prior to its production and

made an affirmative decision to redact only certain content. Dkt. 285-1 (Dore Decl.) ¶ 3. That is the definition of an intentional production decision, not an inadvertent one.

The test for inadvertence in this Circuit is whether the production "was a mistake." *F.T.C. v. Amazon.com,* 2024 WL 3620467, at *6. A party that thoughtfully engages with a document—reviewing it for privilege, identifying portions requiring redaction, and then producing it—has made a deliberate choice with respect to each portion of the document it chose to produce. *Id.* The characterization of that choice as a "mistake" is implausible on its face.

Defendants rely on *Epic Games, Inc. v. Apple Inc.*, 2025 WL 4663944 (N.D. Cal. Feb. 25, 2025) to support their argument that the production was inadvertent, but that case is distinguishable in a critical respect. In *Epic Games*, the document produced was "materially similar" to others that had been consistently withheld as privileged—suggesting that the producing party had a stable view of what was privileged and had simply failed to catch a similar document. *Id.* at *2. Here, Defendants made the deliberate decision to produce numerous documents from the same Slack channel—there is no comparable pattern of invariant privilege assertion that would support an inference of mistake. Further, Defendants' declaration and privilege log for A8C00706108 suggests it is similar in nature to the documents Defendants have already produced, including a document from July 24, 2024 ███████████████████████████████████████████████████████████████████████████████████████████████████████████. Keohane Decl., Ex. 4 (A8C00786423).

Privilege protects communications—not documents as a whole—and where a document contains both privileged and non-privileged content, the proper remedy is redaction, not wholesale withholding. *See, e.g., Pollock v. Nationwide Mutual Ins. Co.,* 549 F.Supp.3d 1202, 1211 (D. Idaho 2021) (ordering defendant to "correct the redaction on PF 06840 so that only the legal opinion of general counsel is redacted" because "the redacted portion of PF 06840 appears to be overly expansive such that it encompasses non-privileged material"). The original production of A8C00706108 establishes that the document is susceptible to segregation among non-privileged communications and privileged communications. Prior to production, Defendants' counsel performed a line-by-line review of the document, made deliberate redaction decisions, and produced

a version with only certain content redacted, just as they have done for other documents from this Slack channel.

Furthermore, Defendants' privilege log, which was submitted *after* this clawback dispute arose, designated A8C00706108 as "Privileged in Part (Redact)" in Column K, not "Privileged in Full (Withhold in Full)" as they have designated other entries. Keohane Decl., Ex. 1. Having made that designation with full knowledge of the dispute, Defendants offer no explanation for their inconsistency in now claiming that the document should be fully withheld. Courts in this district require privilege logs to provide sufficient detail to allow evaluation of the privilege claim, including whether segregable non-privileged content exists. *Burlington*, 408 F.3d at 1148. A log that designates a document for partial redaction while the party simultaneously seeks complete withholding falls short of that standard and itself warrants scrutiny.

### C. The Court Should Conduct An *In Camera* Review

Should the Court have any remaining questions about whether to order the production of A8C00706108, WPE respectfully requests that the Court conduct an *in camera* review of A8C00706108 before ruling. An *in camera* review is particularly appropriate here, where Defendants' sole evidentiary support is a declaration whose attestations are generalized, hedged, and untethered to the specific communications at issue; where the privilege log entry is internally inconsistent and designates the document for redacted production rather than complete withholding; and where Defendants' own productions from the same Slack channel on the same date demonstrate that there are communications in the channel that are not privileged. *In camera* review will allow the Court to assess directly whether the July 24 communications reflect attorney-directed legal advice-seeking, or whether, as the surrounding record strongly suggests, they reflect the same kind of ordinary business discussions that Defendants have produced from this channel without asserting privilege. It will also allow the Court to evaluate whether any portion of the document is susceptible to redacted production.

### III. CONCLUSION

Defendants' motion should be denied and the Court should order production of A8C00706108. Defendants' production of many documents from the "trademark-wpe-privileged"

channel forecloses the premise that it operated as a uniformly privileged forum.  The absence of any attorney present for the July 24 exchange—read against that mixed-use history—defeats the corporate intermediary theory on which Defendants rely.  And the clawback is independently defective: the document was reviewed, partially redacted, and produced, and Defendants' own privilege log designated it for redacted re-production rather than complete withholding.  None of that is consistent with inadvertence, and none of it justifies the wholesale suppression Defendants now seek.  The Court should further conduct an *in camera* inspection as needed.

DATED:  June 3, 2026                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By _____/s/ *Linda Brewer*_____
                                           Linda Brewer
                                           *Attorneys for Plaintiff WPEngine, Inc.*

WPE'S OPPOSITION TO DEFENDANTS' MOTION IN SUPPORT OF PRIVILEGE CLAIM