UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WPENGINE, INC.,

Plaintiff,

v.

AUTOMATTIC INC., et al.,

Defendants.

Case No. 24-cv-06917-AMO    (ASK)

**ORDER RE: DISCOVERY DISPUTES**

Re: Dkt. Nos. 289, 292, 293, 294, 295, 296, 302

The Court held a hearing on several discovery dispute letters on May 29, 2026. Dkts. 289, 292, 293, 294, 295, 296, 302. It also held a brief follow-up hearing on June 4, 2026, after sending a tentative version of this ruling to the parties so that the parties could identify any errors or oversights, given the volume of disputes at issue. For the reasons stated on the record and explained below, the Court rules as follows:

As to **Dkt. 289**, Defendants' motion to compel production of documents from Asana, Jiro, Figma, and Miro, the motion is granted. Defendants have adequately demonstrated that material, substantive communications exist within these platforms. Though Plaintiff WPEngine, Inc. ("WPE") argues that nominative fair use can be determined solely by reviewing published marketing materials, this abstract proposition fails to establish that discovery of internal discussions is barred. For instance, internal discussions may contain admissions as to the necessity of referencing all or part of a mark. WPE's other arguments resisting this discovery are unpersuasive. WPE's request for reciprocal discovery was not adequately supported and is therefore denied.

Counsel for WPE shall meet and confer with counsel for defendants to determine a timeline and methodology (*e.g.*, agreed-upon search terms) for searching for and producing responsive documents from these four platforms. While the Court's preference is that documents

United States District Court
Northern District of California

be produced by June 17, 2026, the Court understands that production from these types of platforms may be non-standard. Nevertheless, the Court expects any such production to be complete by July 2, 2026. Counsel for WPE should offer dates for Ms. Yuan's deposition that afford Defendants approximately one week to prepare with the documents. The deposition shall be limited to five hours on the record. The purpose of the deposition is to inquire about the newly produced documents and issues occasioned by these documents; it is not an opportunity to ask about unrelated topics. This order is not intended to disrupt agreements between the parties limiting discovery, such as an agreement not to produce documents generated after a given date.

As to **Dkt. 292**, which is WPE's motion to compel responses to certain interrogatories that Defendants refused to answer based on the numerical limit on interrogatories, both parties bear fault for this dispute. Defendants were overly aggressive in insisting that their methodology for counting interrogatories was correct, and WPE delayed raising this issue with the Court. Defendants observe that WPE had 100 interrogatories at their disposal; but that observation goes only so far because WPE largely posed similar or identical interrogatories to the four responding parties. Given that Defendants share common counsel and are highly aligned, responding to similar or identical interrogatories on behalf of four similarly situated Defendants generates only marginal additional burden for each additional Defendant.

As to WPE Interrogatories 14, 15, and 17 on the issue of fame and WPE Interrogatories 9, 10, 23, and 24 on the issue of actual confusion: the Defendants need only answer to the extent that the information they would disclose has not already been disclosed in response to an equivalent interrogatory posed to another Defendant. For instance, if Counterclaimant WooCommerce ("WooCommerce") answers Interrogatory 14 on the issue of fame, then Defendant Automattic Inc. ("Automattic") may respond to Interrogatory 15 by stating merely that it has no further information to provide that was beyond what was disclosed in WooCommerce's response to Interrogatory 14—provided that such statement is true. Additionally, for the three interrogatories on the issue of fame, the Defendants need not respond to the subpart of the interrogatory requesting identification of "all Documents you may rely on to support that contention."

For WPE Interrogatories 17 and 18 regarding damages, Defendants need only state each

item of claimed damages that will not be disclosed in their expert reports, the amount of such item, and a specification of how WPE caused that item of damage.

Mr. Mullenweg need not respond to WPE Interrogatory 23 on the issues of laches and awareness of alleged trademark use. The information seems to seek information already supplied by other Defendants' interrogatory responses. Additionally, if these issues were significant to WPE, it had the opportunity to explore these issues with Mr. Mullenweg at his deposition.

**Dkt. 293** is WPE's motion to compel production of "long-withheld documents central to WPE's claims." The Court denies this motion in its entirety. The motion is denied as to (1) the WordPress Foundation's financial statements, (2) the requested Google document and related communications, (3) the loan agreement and associated ledger, (4) RFP 317, and (5) certain reimbursement authorization referenced at Mr. Davies' deposition, based on Defendants' representations that the documents at issue have already been produced, that no such documents exist, or that the documents post-date the parties' August 15, 2025 discovery cut-off. Additionally, with respect to RFP 317, the Court disagrees with WPE's contention that Mr. Mullenweg's post necessarily implies the existence of "continuous, real-time…wordpress.org analytics." The motion is denied as to any Mullenweg stock option grants in light of the parties' bilateral March 25, 2026 agreement regarding the production of financial documents, the fact that stock option grants are not expressly called for by that agreement, and WPE's argument at the May 29, 2026 hearing that the agreement was not intended to cover Mr. Mullenweg's stock option grants—which precludes any argument that the stock option grants should be produced pursuant to the agreement. The motion is also denied as to Audrey HC documents because WPE has failed to advance facts establishing the relevance of that entity.

Finally, with respect to RFA 45, the Court will not compel or order a different answer to this RFA given the breadth and vagueness of the phrase "tax filings with the California government." To the extent that the requested information is relevant and admissible, Mr. Mullenweg will have to answer to Judge Martínez-Olguín if he attempts to change his response at trial. Further, Mr. Mullenweg's response that he does not know the contents of his own Foundation's tax filings is tantamount to an admission. Finally, Rule 36 contains its own

consequences for refusal to admit an RFA, which WPE can avail itself of, if appropriate.

As to **Dkt. 294**, in which WPE seeks additional deposition time with Mr. Mullenweg given his lack of knowledge or other behavior at his multi-day deposition, the Court grants the motion in part.

The Court makes two observations. First, Defendants designated Mr. Mullenweg, a co-founder, principal, and CEO, to cover *46* 30(b)(6) deposition topics. That was a litigation choice that inherently carried risk of exposing a high-ranking executive to extensive preparation and multiple depositions. Second, WPE complains about the adequacy of Mr. Mullenweg's answers for only 13 of WPE's 139 Rule 30(b)(6) topics—*i.e.*, less than 10% of all topics, and about 30% of the topics that Mr. Mullenweg was designated to cover.

The Court **ORDERS** an additional three hours of deposition time to address the thirteen topics that WPE identified in the parties' letter brief (Automattic Topics 3, 11, 12, 20, 27, 28, 30, 35, 59, 64, and 67; and Woo Topics 9 and 15). Defendants need not redesignate Mr. Mullenweg for any follow-up depositions (and likely should not for topics on which Mr. Mullenweg clearly lacked knowledge). To the extent that Defendants designate witnesses who have not previously been deposed, WPE will receive an additional 30 minutes for each such witness. Obviously, nothing in this order obligates WPE to reopen lines of questioning for which it has already received an "I don't know" or "I don't recall" answer. The consequence of such answers at trial will be an issue for Judge Martínez-Olguín to decide. This ruling is not intended to validate every contention that WPE raised of wasted time, non-responsiveness, or lack of knowledge. Nevertheless, there were several topics on which Mr. Mullenweg was unable to answer questions, thus depriving WPE of testimony to which it was entitled. Additionally, there were instances where Mr. Mullenweg appeared to be evasive or to waste time.

**Dkt. 295** is WPE's motion to compel responses to certain interrogatories. the Court rules as follows:

Interrogatory 2 to Defendants regarding the date that the alleged trademark misuse began: **GRANTED**. Plaintiffs are entitled to know the earliest date that Defendants contend that trademark misuse began. An answer in the form of "Trademark misuse began as early as [date],"

4

would permit Defendants to argue for certain dates in the alternative, while still putting Plaintiffs on the earliest date that Defendants intend to advance at trial.

Interrogatory 3 to Defendants and Interrogatory 3 to WooCommerce: **DENIED**. Defendants are correct that listing every effort to license would not be proportional to the needs of the case; however, if Defendants choose not to amend, they should not be allowed to rely at trial on licensing efforts that fall outside the scope of their answer.

Interrogatory 10 to Mullenweg: **DENIED**. Mr. Mullenweg's response appears adequate, given the needs of the case. Absent a showing by WPE that Mr. Mullenweg omitted an account, the Court accepts counsel's representation that the response reflects Mr. Mullenweg's best effort to identify all responsive accounts.

Interrogatory 11(f) to Mullenweg and Interrogatory 12(f) to Automatic: **GRANTED**. WPE is entitled to know whether Defendants admit or deny that their statements were intended to disrupt or did disrupt WPE's business relationships. The fact that so admitting may result in conceding certain elements of WPE's claim is not a proper basis to refuse to answer the question.

Interrogatory 13 to Mullenweg and Interrogatory 13 to Automattic: **DENIED**. The Court agrees with Defendants that the current responses are adequate and that the overall scope of the requests as drafted is vast and disproportionate to the needs of the case.

Interrogatory 15 to Mullenweg: **GRANTED**. Mr. Mullenweg's statements about the "free" and "open" nature of WordPress and its independence from commercial control are key features of WPE's remaining claims and its trial narrative. Defendants' relevance objection is not well-founded.

Interrogatory 16(c) to Mullenweg and Interrogatory 14(c) to Automatic regarding statements to WPE's customers or potential customers about WPE products or services, suggestions to switch hosting providers, and blocking access: **GRANTED**. The requested information is relevant to WPE's remaining claims and its trial narrative.

Interrogatory 10 to Automatic, Interrogatory 4 to WooCommerce, and Interrogatory 4 to WordPress Foundation: **GRANTED IN PART**. It is possible for a company's "determination" that another party's products infringe to be privileged (*e.g.*, a lawyers' confidential statement to a

client that a particular entity's goods infringe) or non-privileged (*e.g.*, a demand letter or a statement to third-party that a certain category of competitor products infringe). Automattic, WooCommerce and WordPress Foundation must respond to the interrogatory at least with respect to any non-privileged instances where a determination of infringement was made and enforcement was not pursued.

Interrogatory 11 to Automattic: **GRANTED IN PART**. WPE is entitled to know who at Automattic first learned about WPE's use of the Challenged Terms. The Court agrees with Automattic that how that information spread within the company afterward is both less material and likely to implicate issues of privilege and therefore is not proportional to the needs of the case.

**Dkt. 311** is Defendants' motion to compel production of certain financial documents. The motion is **GRANTED IN PART** and **DENIED IN PART**. In general, the Court's rulings on this motion are driven by whether the requested materials fall within or outside the March 25, 2026 email agreement relating to financial documents entered into between lead trial counsel from both sides. That agreement was documented in an email chain with key provisions reflected in a March 12, 2026 email from Ms. Kassabian to Mr. Snyder. Defendants' counsel noted that the agreement "reflects what the rules permit and what proportionality requires" and that both sides made concessions. Accordingly, the Court intends to hold both parties to that agreement, to the extent appropriate, given its context.

For the following categories of requested documents, the motion is **DENIED**, except to the extent the documents are responsive to Paragraph 3 of the March 12, 2026 email from Ms. Kassabian to Mr. Snyder: A (Drafts or comments relating to a consultant's report on WPE), B1 (communications related to board decks), B5 (Silver Lake financial reporting packages). Notwithstanding the foregoing, WPE should also produce documents responsive to category B5 for those quarters where quarterly board decks were not produced.

For the following categories of requested documents, the motion is **GRANTED**, as the documents fall squarely within the scope of the agreement: B2 (Brunner communications with certain entities regarding investor feedback), B3 (communications with a certain third-party entity's executive or materials reflecting their substance), and B4 (communications with Silver

United States District Court
Northern District of California

United States District Court
Northern District of California

Lake regarding valuation and related matters).

The motion is **DENIED** as to category B6 (a certain final report) based on WPE's counsel's representation that only drafts exist and that those drafts have been produced. It is also **DENIED** as to category B7 (an alleged cost accounting) based on WPE's counsel's representation that the documents have been or will be produced.

Finally, the motion is **GRANTED** as to category B8 (certain engagement materials), as the Court believes that these documents are necessary to understand other materials that have been produced.

As to **Dkt. 302**, which consists largely of Defendants' motion to compel production of certain documents, the Court rules as follows:

Google Document underlying Exhibit 9: the Court defers ruling while it considers in camera inspection of the Google Document and Exhibit 9.

Monthly ACF Dashboard: **DENIED** as moot in light of WPE's counsel's representations.

Refund-Reasons Log: **GRANTED**. WPE should produce earlier versions of the refunds reasons spreadsheet from 2021 onward, to the extent they exist.

BI Team / Data-Warehouse Reports: **DENIED**. Compelling data source information is not warranted given that Defendants have failed to explain why such source information would provide information not reflected in the roll-up.

Google Analytics and Search Console Data: **CONDITIONALLY GRANTED**. With respect to this request, Defendants have explained that the requested underlying source data will provide information new material information not reflected in the roll-up. That said, at a follow-up June 4, 2026 hearing, there was confusion as to whether or not Defendants had already produced all such source data in their possession. The parties should meet and confer on this point. If Defendants have already produced all relevant source data in their possession, custody, or control, then there is nothing more to produce. If not, they should produce the underlying source data in their possession, custody, or control.

Annual ACF User Survey Data: **GRANTED**. WPE should produce information related to the 2025 survey, even if that survey is incomplete.

United States District Court
Northern District of California

Brand Studies Measuring Reputational Harm: **GRANTED IN PART**. WPE should disclose in writing the scope and nature of its search. Absent some significant shortcoming, Ms. Keohane's declaration that no brand awareness studies relating to ACF issues exist resolves the issue.

WPE's Requested Production of Defendants' ACF Plugin Data: **DENIED**. Defendants have represented that the requested data that identifies the visitors to Wordpress.org was not retained beyond 48 hours after it was collected. As to WPE's contentions regarding spoliation, it has raised the issue but has not advanced sufficient facts at this stage to support such a finding. To the extent the issue has further significance in this case (*e.g.*, in the context of a summary judgment motion), WPE will need to raise the issue with Judge Martínez-Olguín to determine whether and to what extent the Court will consider it.

\* \* \*

On the issue of timing, aside from **Dkt. 289**—where the Court has provided specific instruction with respect to proposed timing—all discovery, information, or responses compelled to be produced pursuant to this order shall be produced no later than June 17, 2026. For **Dkt. 294**, to the extent that some modest leeway (*e.g.*, an additional week) is needed to accommodate the schedules of executives and counsel, particularly if multiple depositions must take place, the Court understands, and it expects that counsel will work out such scheduling between themselves. The Court does not object to the parties agreeing amongst themselves to modest extensions of these deadlines, as needed, so long as any such extension does not impact any Court deadline.

**IT IS SO ORDERED.**

Dated: June 5, 2026

_____
AJAY KRISHNAN
United States Magistrate Judge

8