GIBSON, DUNN & CRUTCHER LLP
JOSEPH R. ROSE, SBN 279092
  jrose@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

GIBSON, DUNN & CRUTCHER LLP
MICHAEL H. DORE, SBN 227442
  mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
  isamplin@gibsondunn.com
33 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.6652

GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*admitted pro hac vice*)
  osnyder@gibsondunn.com
HOWARD HOGAN (*admitted pro hac vice*)
  hhogan@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.2400
Facsimile:    212.351.6335

*Attorneys for Defendants Automattic Inc. and*
*Matthew Charles Mullenweg and*
*Counterclaimants WordPress Foundation and WooCommerce Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual,<br><br>                    Defendants. | Case No. 4:24-cv-06917-AMO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM**<br><br><u>Hearing:</u><br><br>Date: June 24, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 4<br>Judge: Honorable Ajay S. Krishnan |
| AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>                    Counterclaimants,<br><br>          v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>                    Counterdefendant. | |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 5 |
| II. | ARGUMENT | 6 |
|  | A. The Unproduced Communications In A8C00706108 Are Privileged | 6 |
|  | i. The Declaration of Mark Davies Confirms the Record; It Does Not Supply a Missing Element | 6 |
|  | ii. The July 24 Communications Facilitated Counsel's Provision of Legal Advice | 8 |
|  | iii. The Produced Documents Do Not Defeat the Communication-Specific Privilege Showing for A8C00706108 | 10 |
|  | iv. The Privilege Log Arguments Do Not Independently Defeat the Privilege Claim | 12 |
|  | B. The Original Production of a Partially Redacted Version of A8C00706108 Does Not Defeat Defendants' Clawback Claim | 13 |
|  | C. In Camera Review of A8C00706108 Is Not Necessary | 14 |
| III. | CONCLUSION | 14 |

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM
CASE NO. 4:24-CV-06917-AMO

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Admiral Ins. Co. v. U.S. Dist. Ct.*,
   881 F.2d 1486 (9th Cir. 1989)................................................................................................8

*De Coster v. Amazon.com, Inc.*,
   2025 WL 904465 (W.D. Wash. Mar. 25, 2025) ..............................................................13

*Dolby Lab'ys Licensing Corp. v. Adobe Inc.*,
   402 F. Supp. 3d 855 (N.D. Cal. 2019) ......................................................................6, 7, 8

*Epic Games, Inc. v. Apple Inc.*,
   820 F. Supp. 3d 941 (N.D. Cal. 2025) ............................................................................13

*F.T.C. v. Amazon.com, Inc.*,
   2024 WL 3620467 (W.D. Wash. Aug. 1, 2024) ..............................................................13

*In re Grand Jury*,
   23 F.4th 1088 (9th Cir. 2021)..........................................................................................10

*In re Grand Jury Investigation*,
   974 F.2d 1068 (9th Cir. 1992)..........................................................................................14

*McCaugherty v. Sifferman*,
   132 F.R.D. 234 (N.D. Cal. 1990).......................................................................................9

*Newton v. Equilon Enters., LLC*,
   411 F. Supp. 3d 856 (N.D. Cal. 2019) ..............................................................................7

*Ozgur v. Daimler Trucks N. Am. LLC*,
   2020 WL 2522024 (D. Or. May 18, 2020) ......................................................................10

*Samson Tug & Barge Co., Inc. v. Int'l Longshore & Warehouse Union, Alaska Div.*,
   2023 WL 4273702 (D. Alaska June 29, 2023)..................................................................12

*In re Uber Techs., Inc.*,
   2025 WL 327742 (N.D. Cal. Jan. 29, 2025) ....................................................................10

*United States v. Bauer*,
   132 F.3d 504 (9th Cir. 1997)............................................................................................11

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ....................................................................10, 12

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)............................................................................................................8

**Other Authorities**

Report of the Judicial Conference Committee on Rules of Practice and Procedure,
   Proposed Fed. R. Evid. 502, at 77–78 (Sept. 2007).......................................................13

Gibson, Dunn &
Crutcher LLP

3

DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM
CASE NO. 4:24-CV-06917-AMO

**Rules**

Fed. R. Evid. 502 ........................................................................................................................14

Fed. R. Evid. 502(b)................................................................................................................6, 13

Fed. R. Evid. 502(d)................................................................................................................6, 13

DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM
CASE NO. 4:24-CV-06917-AMO

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION

WP Engine's opposition identifies what it contends is a critical evidentiary gap in Defendants' privilege argument: the absence of testimony from a participant in the July 24, 2024 exchange regarding the purpose and confidential nature of the communications at issue. Opp. at 5. Automattic already filed a detailed declaration from its General Counsel, Jordan Hinkes, regarding both the creation of the "trademark-wpe-privileged" Slack channel in which he participated and the attorney-authored slide deck on which the business team's input was used to inform counsel's legal assessment. That evidence is sufficient to show that the business team's comments that Automattic's lawyers used in providing their legal assessment are privileged. Nevertheless, this reply directly addresses WP Engine's argument through the declaration of Mark Davies, Automattic's Chief Financial Officer, and a participant in the July 24 exchange.

Mr. Davies confirms that the "trademark-wpe-privileged" channel was created to facilitate legal advice from Automattic's in-house counsel regarding trademark enforcement against WP Engine; that business personnel were included to provide counsel with the context necessary to formulate that advice; that the July 24 communications concerned a legal-strategy presentation being developed as part of that process; and that he made his own comments to assist counsel in providing legal advice. Davies Decl. ¶¶ 4–9. The Davies declaration thus provides the participant-level evidence that WP Engine argued was necessary to show that the attorney-client privilege applies.

WP Engine's remaining arguments fare no better. That no attorney happened to send a message within the 24-hour Slack excerpt captured in A8C00706108 does not strip privilege from communications directed to counsel and made to facilitate counsel's legal advice—particularly where as here, both Mr. Hinkes and Mr. Peretz sent privileged communications in the channel in the days leading up to and following the July 24 communications at issue. *See* Supplemental Declaration of Michael Dore ("Suppl. Dore Decl.") ¶¶ 4-5. Nor does Defendants' production of a small number of communications from the same Slack channel undermine the privilege claim here. To the contrary, those productions demonstrate that Defendants did not simply assert blanket privilege over the channel as a whole. Indeed, Defendants acknowledge that the final four messages captured in A8C00706108 were produced in a separate document. Suppl. Dore Decl. ¶ 3. Accordingly, Defendants seek to claw

Gibson, Dunn & Crutcher LLP

5

back only the preceding unproduced messages in A8C00706108, each of which was made to facilitate counsel's provision of legal advice.

Finally, WP Engine's waiver argument cannot be reconciled with the parties' stipulated Rule 502(d) order. The parties expressly agreed that disclosure of protected material would not result in waiver regardless of the circumstances of the disclosure and that Rule 502(b) would not govern disputes regarding protected documents. In any event, the record reflects an isolated under-redaction of a communication that was materially similar to communications Defendants consistently withheld as privileged, not a deliberate decision to produce privileged content. The original production of a partially redacted version of A8C00706108 therefore does not defeat Defendants' privilege claim or their subsequent clawback.

The declarations of Mr. Davies and Mr. Hinkes, together with the surrounding communications and production history, establish that the unproduced communications in A8C00706108 are privileged communications made to facilitate the provision of legal advice and should remain protected from disclosure.

## II.   ARGUMENT

### A.   The Unproduced Communications In A8C00706108 Are Privileged

#### i.   The Declaration of Mark Davies Confirms the Record; It Does Not Supply a Missing Element

WP Engine's central evidentiary objection is that Defendants' privilege claim fails because none of the participants in the July 24 exchange submitted a declaration attesting that they understood their communications to have been made for the purpose of obtaining or assisting in the provision of legal advice. Opp. at 5 (citing *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 871 (N.D. Cal. 2019)). *Dolby* announces no such rule. There, the court ordered production of an email chain only because the moving party claimed privilege over a question "copied from an unspecified source," leaving a genuine, unresolved question whether that communication originated with an attorney. *Id.* at 871. That was a question no declarant, including the supporting declarant who "was not part of the exchange," could answer. *Id. Dolby*'s actual evidentiary requirement is that "attorney declarations generally are necessary to support the designating party's position. . . ." *Id.* at 865. Defendants have

Gibson, Dunn & Crutcher LLP

supplied that attorney declaration and unlike the movant in *Dolby*, did so with their opening motion. *See* Dkt. 285-2. Mr. Hinkes' declaration details the origin and purpose of the July 24 communications and, unlike the conclusory declarations *Dolby* found insufficient, ties the specific communications to the specific legal-advice process they served. Hinkes Decl. ¶¶ 6–10. There is no open question here about who solicited the input, why, or for whom; Mr. Hinkes has established these facts.

*Dolby* is distinguishable for the further reason that it assessed discrete email chains. WP Engine asks the Court to evaluate a single 24-hour excerpt of one platform in isolation, divorced from the surrounding context, which included the transmission of the attorney-authored deck, the channel created for legal strategy, and counsel's own participation in the channel in the days before and after the communications at issue. Suppl. Dore Decl. ¶¶ 4-5. Whether counsel participated in a privileged communication is not measured by whether a lawyer happened to post within a 24-hour time period. Although Mr. Hinkes' declaration provides sufficient evidentiary support to carry Automattic's privilege claim, Defendants submit Mr. Davies' declaration on reply to address WP Engine's opposition argument, based on *Dolby*, that a declaration from a participant is required to establish privilege. *See* Opp. at 5; *Newton v. Equilon Enters., LLC*, 411 F. Supp. 3d 856, 880 n.14 (N.D. Cal. 2019) ("A party may submit a declaration on reply to respond to matters raised in opposition.") As a participant in the July 24 exchange, Mr. Davies attests, based on personal knowledge, to the purpose and confidential nature of the communications at issue.

*First*, Mr. Davies understood the "trademark-wpe-privileged" channel to have been created for the purpose of obtaining legal advice from Mr. Hinkes and Mr. Peretz regarding Automattic's and WooCommerce's trademark rights and enforcement options as to WP Engine, and he understood the channel to be a forum for confidential, privileged communications with counsel concerning legal strategy, not a channel for general business planning or operational decisions. Davies Decl. ¶ 4. *Second*, he understood that the business personnel who participated in the communications at issue, including himself, were included to supply counsel with the business context counsel needed to render informed legal advice on trademark enforcement, because counsel did not have the full business context surrounding the dispute. *Id.* ¶ 6. *Third*, Mr. Davies understood that the presentation that was the subject of the July 24 communications was being developed in furtherance of the legal advice Mr. Hinkes and

Gibson, Dunn & Crutcher LLP

Mr. Peretz were providing—specifically, to compile counsel's legal analysis together with the relevant business context so counsel could develop a legal strategy regarding WP Engine. *Id.* ¶ 7. *Fourth*, the purpose of his own July 24 messages was to inform and support the legal advice counsel was providing, including by helping distill the presentation to its core issues and arrive at a coherent legal strategy and sequence of escalation steps, the legal details of which Mr. Davies did not himself understand and for which counsel's input was required. *Id.* ¶ 9. Mr. Davies further attests that he would not have made these communications absent the legal advice process that Mr. Hinkes and Mr. Peretz were conducting. *Id.* ¶ 5. And, like Mr. Hinkes, he attests that he understood the communications in the channel, including the July 24 exchange, to be confidential and made in connection with the provision of legal advice. *Id.* ¶ 10; *see also* Hinkes Decl. ¶ 7.

Mr. Davies' declaration confirms the record rather than supplying a missing element. The participant declaration mattered in *Dolby* only because there was an open question whether a quotation "copied from an unspecified source" originated with an attorney. *Dolby*, 402 F. Supp.3d at 871. No such question exists here, because Mr. Hinkes already established why the input was solicited and that it served counsel's process for providing legal advice. *Dolby* does not require a participant declaration, and Defendants do not offer Mr. Davies' as a concession that it does. Each declaration more than satisfies the required showing to establish Automattic's privilege claim.

### ii. The July 24 Communications Facilitated Counsel's Provision of Legal Advice

WP Engine argues that, under *Upjohn*, Defendants must show that each communication was "made at the express direction of counsel" for the corporate intermediary doctrine to apply. Opp. at 2. That overstates the law. *Upjohn* declined to "lay down a broad rule or series of rules to govern all conceivable future questions in this area," holding instead that the privilege should be applied to further its underlying purpose: protecting "the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 386, 390, 396 (1981). The Ninth Circuit has likewise emphasized that *Upjohn* "rejected a mechanistic approach to applications of the attorney-client privilege in the corporate context." *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1493 n.6 (9th Cir. 1989). Instead, the privilege "applies to communications by any corporate employee

Gibson, Dunn & Crutcher LLP

regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Id.* at 1492.

That standard is met here. Mr. Mullenweg created the "trademark-wpe-privileged" channel for discussions with Mr. Hinkes and CFO Davies and directed Mr. Hinkes to add those whose input was necessary to the development of legal strategy. Hinkes Decl. ¶ 7. General Counsel Hinkes added business personnel to the channel specifically to provide the business context counsel needed to formulate trademark-enforcement advice. Davies Decl. ¶ 6; *see* Hinkes Decl. ¶¶ 7–8. The July 24 exchange concerned substantive feedback on a legal-strategy deck addressing legal risk, enforcement options, and escalation timelines—a deck all participants understood to be part of the legal-advice process and that Defendants withheld as privileged in all twenty-one versions. Hinkes Decl.¶¶ 9-10; Davies Decl. ¶ 7. The participants acted within the scope of their corporate duties, understood the legal purpose of the exchange, and treated the communications as confidential. That is precisely what the Ninth Circuit's *Admiral* decision protects. The channel title—"trademark-wpe-privileged"—further corroborates that contemporaneous understanding.

WP Engine's reliance on *McCaugherty v. Sifferman*, 132 F.R.D. 234, 238 (N.D. Cal. 1990) fares no better. Mr. Hinkes' declaration makes clear that Mr. Davies and other business personnel were only added to the channel because counsel required their business knowledge to render informed legal advice on trademark enforcement, and not for any independent business purpose. Hinkes Decl. ¶¶ 7–8. Mr. Davies further attests that he would not have made the July 24 communications absent the request for legal advice from Mr. Hinkes and Mr. Peretz. Davies Decl. ¶ 5. This was not an ordinary-course business discussion later repackaged as privileged; it was structured feedback on counsel's legal-strategy work product.

Nor does privilege disappear because no attorney sent a message within the narrow Slack excerpt reflected in A8C00706108. Mr. Hinkes and Mr. Peretz were members of the "trademark-wpe-privileged" channel as of July 24, 2024, and Mr. Davies understood his communications to be directed to, and for the benefit of, counsel. Hinkes Decl. ¶ 10; Davies Decl. ¶ 8. The privilege inquiry asks whether the communication was made for the purpose of obtaining or facilitating legal advice. *In re*

Gibson, Dunn & Crutcher LLP

*Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). A communication made in a counsel-accessible channel established for legal-advice purposes does not become non-privileged merely because counsel did not reply within the same 24-hour captured time window. *Ozgur v. Daimler Trucks N. Am. LLC,* 2020 WL 2522024, at *2 (D. Or. May 18, 2020) (finding that privilege "squarely covers communications between corporate employees" gathering information to present to "a lawyer for the purpose of obtaining legal advice," even where the attorney "is not included on all" of the communications).

That principle is consistent with the *ChevronTexaco* line of cases, which protects non-lawyer communications that discuss or transmit information in furtherance of legal advice counsel is providing. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *see also In re Uber Techs., Inc.*, 2025 WL 327742, at *11 (N.D. Cal. Jan. 29, 2025) (sustaining privilege for a document prepared at counsel's direction for the purpose of obtaining attorney feedback and approval).

### iii.    The Produced Documents Do Not Defeat the Communication-Specific Privilege Showing for A8C00706108

WP Engine devotes significant argument to the twelve documents Defendants produced from the "trademark-wpe-privileged" channel, contending that those productions show the channel was used for non-privileged business discussions. But that argument is overstated. Defendants do not contend that every communication in the channel was privileged merely because it appeared in a channel with "privileged" in its name. Defendants acknowledge that the final four messages captured in A8C00706108 were produced as A8C00786423. Suppl. Dore Decl. ¶ 3. The relief Defendants seek is accordingly only the preceding unproduced messages. That Defendants no longer assert privilege over every message in the document does not moot or undermine their claim over the specific non-produced messages that remain.

Defendants' review resulted in the production of twelve communications from the "trademark-wpe-privileged" channel that Defendants determined were not privileged. The remaining 135 communications were withheld as privileged. That is evidence that Defendants took a measured approach and sought to distinguish between privileged and non-privileged communications within the same channel. WP Engine cannot use Defendants' production of non-privileged communications as

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM
CASE NO. 4:24-CV-06917-AMO

affirmative evidence that different communications, serving a different purpose, must also be non-privileged. Doing so would penalize the very document-by-document privilege review that courts require.

Nor do the examples of produced documents provided by WP Engine change the character of A8C00706108. The party asserting privilege bears the burden of showing privilege applies, *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997), and Defendants' judgment that they may not be able to carry that burden for certain communications produced from the "trademark-wpe-privileged" Slack channel does not undermine their privilege assertions over communications for which they can make the required showing. The question before the Court is whether the unproduced communications in A8C00706108 were made for the purpose of obtaining or facilitating legal advice. The Hinkes and Davies declarations answer that question. They establish that the unproduced July 24 communications concerned a presentation developed from counsel's trademark strategy analysis, that the business participants were providing context counsel needed to formulate legal advice, and that Mr. Davies understood his own communications to be directed to and for the benefit of counsel. Hinkes Decl. ¶¶ 7–10; Davies Decl. ¶¶ 4–9.

WP Engine places particular weight on a produced July 24 document from the same channel that also references the deck. Defendants recognize that the four final messages in A8C00706108, several hours after Mr. Davies' messages were produced, but that does not require the wholesale production of Mr. Davies messages in A8C00706108. The produced messages contain a small number of general comments regarding the draft deck, including comments about timing and escalation. By contrast, A8C00706108 contains additional *substantive* feedback on the content and structure of the legal strategy presentation, including input directed at distilling the presentation to its core issues and developing a coherent legal strategy and sequence of escalation steps based on prior discussions. Davies Decl. ¶ 8; Hinkes Decl. ¶ 10. That Defendants produced a narrower set of comments does not mean that all communications concerning the deck, particularly the substantive communications in A8C00706108 that Defendants have supported with Mr. Davies' declaration, must be treated the same way.

At most, WP Engine's July 24 example shows that the channel contained some communications

Gibson, Dunn & Crutcher LLP

11

that could be segregated and produced. It does not defeat privilege over communications whose primary purpose was to facilitate counsel's legal advice. The privilege analysis turns on the purpose and context of the specific communication at issue, not on whether another communication in the same channel, or even on the same subject, was produced. *See also ChevronTexaco Corp.*, 241 F. Supp. 2d at 1076 (explaining that the privilege inquiry turns on the primary purpose of the communication at issue). The documents produced from the "trademark-wpe-privileged" channel therefore do not undermine Defendants' privilege claim for A8C00706108; they confirm Defendants did not assert blanket privilege over the channel and instead reviewed the communications individually.

### iv. The Privilege Log Arguments Do Not Independently Defeat the Privilege Claim

WP Engine raises two objections to the privilege log entry for A8C00706108: (1) Column H, which identifies attorney Slack participants, is blank; and (2) Column N identifies two attorneys whose names do not appear in the privilege description in Column M. Neither point undermines the privilege claim.

First, the blank entry in Column H does not establish that no attorney participated in, monitored, or directed the communications in the relevant Slack channel. Column H identifies attorneys who sent messages within the particular logged document; it is not a comprehensive list of every attorney who belonged to or monitored the channel. Defendants used that narrower convention to avoid asserting privilege based merely on an attorney's membership in a Slack group. WP Engine cannot convert that logging approach into a waiver or use it to defeat privilege over communications that the declarations of Messrs. Hinkes and Davies show were made to facilitate counsel's legal advice.

Second, the erroneous inclusion of Andy Missan and Catherine Silva in Column N does not negate the presence of Mr. Hinkes and Mr. Peretz in the channel on July 24, 2024 and does not bear on the privileged nature of the unproduced messages in A8C00706108. In any event, "claims of privilege may pass muster despite an inadequate privilege log, particularly where other proof, such as briefs or declarations, exists to establish the nature of the documents." *Samson Tug & Barge Co., Inc. v. Int'l Longshore & Warehouse Union, Alaska Div.*, 2023 WL 4273702, at *7 (D. Alaska June 29, 2023) (internal quotation marks omitted).

Gibson, Dunn & Crutcher LLP

Here, the Court's privilege determination should turn on the evidence regarding the document itself, including the Hinkes and Davies declarations and the surrounding communications, not on alleged formatting or data-entry issues in a privilege log entry.

### B. The Original Production of a Partially Redacted Version of A8C00706108 Does Not Defeat Defendants' Clawback Claim

WP Engine argues that Defendants' original partial redaction of A8C00706108 forecloses any clawback claim, relying on *F.T.C. v. Amazon.com, Inc.*, 2024 WL 3620467, at *6 (W.D. Wash. Aug. 1, 2024), and *De Coster v. Amazon.com, Inc.*, 2025 WL 904465, at *4–5 (W.D. Wash. Mar. 25, 2025). But those cases analyzed waiver under Rule 502(b)'s default inadvertence framework, which asks whether "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error." FED. R. EVID. 502(b).

The Rule 502(d) order provides that disclosure of protected material does not result in waiver "regardless of the circumstances of the disclosure," provides "the maximum protection allowed by Federal Rule of Evidence 502(d)," and expressly states that "Federal Rule of Evidence 502(b) does not apply" to disputes regarding protected documents. Dkt. 145. Unlike in *De Coster*, where the court relied on 502(b), the parties here expressly agreed that disclosure would not result in waiver regardless of the circumstances of production. That is precisely the protection Rule 502(d) was designed to provide. Rule 502 was enacted to address the "rising costs of litigation" associated with privilege review and to "protect against the forfeiture of privilege when a disclosure in discovery is the result of an innocent mistake." Report of the Judicial Conference Committee on Rules of Practice and Procedure, Proposed FED. R. EVID. 502, at 77–78 (Sept. 2007).

Even if the Court were to consider the circumstances of the production, the result would be the same. The reviewer correctly identified and redacted the message most directly requesting counsel's legal input regarding the deck at issue, demonstrating recognition that the document contained privileged communications. The error was failing to recognize that surrounding communications concerning the same privileged deck were likewise protected. As this Court explained in *Epic Games, Inc. v. Apple Inc.*, 820 F. Supp. 3d 941, 943 (N.D. Cal. 2025), "the question, after all, is whether

[Defendant] deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full."

### C.    In Camera Review of A8C00706108 Is Not Necessary

WP Engine requests in camera review as a fallback should the Court have any remaining questions regarding Defendants' privilege claim. The record before the Court, however, is sufficient to resolve that issue without in camera review. Defendants have provided sworn declarations from Mr. Hinkes and Mr. Davies, and the relevant production history, all of which establish the basis for the privilege claim.

Nor is in camera review required merely because privilege is disputed. *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) ("Although in camera review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified."). Accordingly, the Court may resolve the issue on the existing record.

That said, Defendants will of course provide the document for in camera review if the Court determines that further examination of the document is necessary to resolve any remaining questions and are confident that the document's contents confirm the showing made in the accompanying declarations.

### III.    CONCLUSION

For the foregoing reasons and those stated in Defendants' opening motion, the Court should uphold Defendants' clawback of the unproduced messages in A8C00706108 and find those messages privileged pursuant to Federal Rule of Evidence 502.

Gibson, Dunn &
Crutcher LLP

14

DATED: June 10, 2026

Respectfully submitted,

By: /s/ *Michael Dore*
Michael H. Dore

*Attorney for Defendants Automattic Inc., Matthew Charles Mullenweg, and WooCommerce Inc. and Counterclaimant WordPress Foundation*

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF PRIVILEGE CLAIM
CASE NO. 4:24-CV-06917-AMO