# Proposed Redacted Version of the Motion (Dkt. No. 358-2)

QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG,<br>an individual; and WOOCOMMERCE INC.,<br>a Delaware corporation,<br><br>        Defendants.<br><br>AUTOMATTIC INC., a Delaware corporation;<br>MATTHEW CHARLES MULLENWEG, an<br>individual; WORDPRESS FOUNDATION,<br>a California corporation; and<br>WOOCOMMERCE INC., a Delaware<br>corporation,<br><br>        Counterclaimants,<br><br>    v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>        Counterdefendant. | Case No. 4:24-cv-06917-AMO-ASK<br><br>**UNREDACTED VERSION - FILED UNDER SEAL**<br><br>**PLAINTIFF WPENGINE, INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Araceli Martínez-Olguín<br>Hearing Date:   October 1, 2026<br>Hearing Time:   2:00 p.m.<br>Courtroom:      5 |

Case No. 4:24-cv-06917-AMO-ASK

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION FOR SANCTIONS ...........................................................1

STATEMENT OF RELIEF SOUGHT .......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

I.     PRELIMINARY STATEMENT........................................................................................2

II.    BACKGROUND OF DEFENDANTS' SPOLIATION ........................................................4

    A.    Defendants' Duty to Preserve Arose No Later Than July 2024, When They Hired Litigation Counsel...........................................................................4

    B.    Defendants' Attacks Precipitated WPE's Lawsuit in October 2024. ........................4

    C.    Defendants Assured WPE That Evidence Was Being Preserved Even as Relevant Materials Continued to Disappear.................................................5

    D.    Responding to WPE's Motion to Compel, Defendants Made Misrepresentations to the Court About Preservation. ............................................7

    E.    The Court Found WPE's Preservation Allegations "Concerning" and Required a Sworn Declaration From Defendants. ....................................................8

    F.    Defendants' Sworn Declarations Confirm Defendants' Failure to Preserve. ..........10

    G.    Mr. Mullenweg's Evasive and Damning Deposition Testimony Further Confirms Defendants' Failure to Preserve. ............................................................11

III.    LEGAL STANDARDS..................................................................................................11

    A.    The Duty to Preserve.................................................................................................11

    B.    Sanctions Under Rule 37(e). ....................................................................................12

    C.    Sanctions Under the Court's Inherent Authority......................................................13

IV.    ARGUMENT ................................................................................................................13

    A.    Defendants Spoliated Relevant Evidence. ...............................................................13

        1.    Defendants Had a Duty to Preserve. ............................................................14

        2.    Defendants Failed to Take Reasonable Steps to Preserve............................14

        3.    The Lost Evidence Cannot Be Restored or Replaced. ..................................15

        4.    The Lost Evidence Is Highly Relevant to WPE's Claims.............................15

    B.    Defendants' Spoliation Has Prejudiced WPE. .........................................................16

Case No. 4:24-cv-06917-AMO-ASK
WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

C.      WPE Is Entitled To Preclusion Sanctions and Adverse Inference Instructions. ......................................................................................................17

    1.      Defendants Acted With the Intent to Deprive WPE of the Lost Evidence—and Then to Conceal Their Actions...........................................18

    2.      WPE's Requested Sanctions Are Narrowly Tailored to the Loss and to the Asymmetry the Spoliation Created. ...................................................19

D.      WPE Is Entitled To Its Attorneys' Fees. ................................................................22

V.      CONCLUSION ..................................................................................................................22

ARTIFICIAL INTELLIGENCE CERTIFICATION ....................................................................23

Case No. 4:24-cv-06917-AMO-ASK

WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
   69 F.3d 337 (9th Cir. 1995)................................................................................ 12, 13, 21

*Aramark Mgmt., LLC v. Borgquist*,
   No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067 (C.D. Cal. Jan. 27, 2021)................... 12, 22

*Burris v. JPMorgan Chase & Co.*,
   566 F. Supp. 3d 995 (D. Ariz. 2021), *aff'd*, 21-16852, 2024 WL 1672263 (9th
   Cir. Apr. 18, 2024) ........................................................................................................ 18

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ........................................................................................................ 13

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
   No. 5:18-cv-00420-JGB, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ......................... 12, 18

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
   No. 14cv1191 JLS, 2017 WL 2298473 (S.D. Cal. May 26, 2017) ......................................... 21

*Fast v. GoDaddy.com LLC*,
   340 F.R.D. 326 (D. Ariz. 2022) ........................................................................................... 12

*Gay v. Parsons*,
   No. 16-CV-05998-CRB (PHK), 2024 WL 4224893 (N.D. Cal. Sept. 17, 2024) ................... 11

*Glover v. BIC Corp.*,
   6 F.3d 1318 (9th Cir. 1993).................................................................................................. 22

*Inland Concrete Enters., Inc. v. Kraft Am. LP*,
   CV 10-1776-VBF(OPX), 2011 WL 13209166 (C.D. Cal. Mar. 9, 2011).............................. 22

*Io Grp. Inc. v. GLBT Ltd.*,
   No. C-10-1282 MMC DMR, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011).................... 20, 22

*Jimenez v. Menzies Aviation Inc.*,
   No. 15-CV-02392-WHO, 2016 WL 3232793 (N.D. Cal. June 13, 2016) .............................. 22

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006)........................................................................................ 13, 21, 22

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   No. 13-CV-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016)................................ 16

Case No. 4:24-cv-06917-AMO-ASK
WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ................................................................................. 22

*Nursing Home Pension Fund v. Oracle Corp.*,
   254 F.R.D. 559 (N.D. Cal. 2008) ........................................................................................... 17

*Paisley Park Enters., Inc. v. Boxill*,
   330 F.R.D. 226 (D. Minn. 2019) ............................................................................................ 12

*Porter v. City & Cnty. of San Francisco*,
   No. 16-cv-03771-CW, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .................................... 12

*Radio City, Inc. v. Celestron Acquisition, LLC*,
   No. 5:20-CV-03642-EJD, 2023 WL 5519324 (N.D. Cal. Aug. 25, 2023) ............................. 12

*Waters v. Kohl's Dep't Stores, Inc.*,
   No. 14-CV-00043-KAW, 2015 WL 1519657 (N.D. Cal. Apr. 2, 2015) ................................. 13

## <u>Other Authorities</u>

Fed. R. Civ. P. 37(e) ........................................................................ 1, 3, 12, 13, 14, 15, 17, 18, 22

WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

**NOTICE OF MOTION AND MOTION FOR SANCTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2026, at 2 p.m., or as soon as counsel may be heard, before the Honorable Araceli Martínez-Olguín, in Courtroom 5 located on the 2nd Floor at 1301 Clay Street, Oakland, CA 94612, Plaintiff/Counterdefendant WPEngine, Inc. ("WPE") will, and hereby does, move this Court, pursuant to Federal Rules of Civil Procedure 37(e) and the Court's inherent authority, to sanction Automattic, Inc. ("Automattic") and Matthew Charles Mullenweg ("Mullenweg," and together with Automattic, "Defendants") as set forth below. WPE's Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Gregory A. Fuoco and exhibits attached thereto, the materials on file in this action, and such other written or oral argument as may be presented at or before the time this motion is heard and/or taken under submission by the Court.

**STATEMENT OF RELIEF SOUGHT**

WPE seeks the following relief:

1)    WPE requests a Court order deeming it conclusively established that Mr. Mullenweg used WhatsApp, Signal, and Telegram for case-relevant communications from July 2024 through March 16, 2026, and that certain of such communications have been destroyed or are no longer available.

2)    WPE requests the Court issue mandatory adverse inference instructions, instructing the jury that it must presume the destroyed or unavailable WhatsApp, Signal and Telegram messages contained evidence that: (a) Mr. Mullenweg acted with the intent to interfere with WPE's customer and prospective-customer relationships when he directed the campaign to induce WPE's customers to leave; (b) Mr. Mullenweg knew his public statements about WPE were false or made them with reckless disregard for their truth; and (c) Mr. Mullenweg acted with the intent to extort WPE and to cause intentional damage in making the September 2024 demand and seizing the ACF plugin.

3)    WPE requests a Court order precluding Mr. Mullenweg from testifying about the substance of his WhatsApp, Signal and Telegram communications regarding WPE, his subjective state of mind during the September 2024 events, and his subjective basis for the trademark

enforcement actions—except as established by produced documents.

4)    WPE requests the Court dismiss Counterclaims 1 through 7 under the Court's inherent authority. In the alternative, WPE asks the Court to instruct the jury that it must presume the destroyed or unavailable WhatsApp, Signal and Telegram messages would have shown Defendants knew WPE's use of the trademarks at issue was permissible and that Defendants' September 2024 enforcement demand was a pretext for financial coercion rather than a good-faith trademark-protection effort.

5)    WPE requests that the Court award WPE the attorneys' fees and costs it has incurred in connection with this motion, its prior motion to compel, and the many months of meet-and-confer efforts WPE was forced to undertake to uncover Defendants' spoliation. Should the Court grant WPE's request for its fees and costs, WPE is prepared to submit a declaration tabulating and demonstrating the reasonableness of its fees and costs.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

WPE brings this motion for sanctions against Automattic Inc. and Matthew Mullenweg ("Defendants") based on their failure to preserve, and their destruction of, critical evidence regarding their misconduct underlying WPE's claims. After Defendants demanded a ransom of tens of millions of dollars from WPE in September 2024, Matthew Mullenweg—Automattic's CEO, who personally controls wordpress.org—launched what he called an "all out nuclear war" on WPE, defaming it publicly, interfering with its customer relationships, and blocking it from wordpress.org. WPE's claims turn in substantial part on what Mr. Mullenweg communicated during that campaign—to customers, competitors, employees, allies, and journalists. So do Defendants' own trademark counterclaims, which rest on Mr. Mullenweg's intent and conduct in demanding that WPE pay for a purported trademark license.

The most direct record of those communications was the evidence on Mr. Mullenweg's personal devices and accounts—his iPhone and the WhatsApp, Signal and Telegram applications he used throughout the relevant period—and Defendants failed to preserve it. Defendants' own privilege log states they anticipated litigation at least as early as July 19, 2024, and WPE sent

Defendants a document preservation demand on September 23, 2024 specifically identifying Mullenweg's mobile messaging platforms. Nevertheless, by the account of Defendants' own forensic vendor, Mr. Mullenweg's iPhone was not imaged until April 17, 2025—at least nine months after Defendants' preservation obligation attached. And even that belated first imaging failed to capture any WhatsApp or Signal messages—and Defendants did *nothing* to remedy the failure for another *eleven months*, until March 16, 2026, just before fact discovery closed. The result is a nine-month (in the case of Telegram) and twenty-month (in the case of WhatsApp and Signal) gap during which Mr. Mullenweg's disappearing or deleted messages were lost forever.

Defendants' spoliation is even more egregious given their efforts to conceal it. While Mr. Mullenweg's communications sat unpreserved, Defendants repeatedly assured WPE—and this Court—that those communications "have been preserved"; yet their own vendor has now confirmed that those representations were false when made. Between November 2024 and June 2025, WPE sent six letters flagging specific preservation failures and identifying the very platforms at issue here as preservation targets; each reassurance Defendants gave in response is now contradicted by their own evidence.

Defendants' conduct, and subsequent coverup, is inexcusable and Defendants must be held to the consequences of their bad acts. This Court should exercise its authority under Rule 37(e) and its inherent powers to sanction Defendants. WPE respectfully requests that the Court: (i) deem established that Mr. Mullenweg used WhatsApp, Signal, and Telegram for case-relevant communications from July 2024 through March 16, 2026; (ii) find that Defendants spoliated relevant evidence with intent to deprive WPE of its use; (iii) issue content-specific adverse inferences on the issues for which the lost evidence is uniquely probative; (iv) preclude Mr. Mullenweg from testifying on subjects for which the case-relevant communications are unavailable; and (v) award WPE its fees and costs. As to Defendants' trademark counterclaims, WPE requests that the Court (vi) dismiss Counterclaims 1 through 7 under its inherent authority; or, alternatively, (vii) issue a mandatory adverse inference that Mr. Mullenweg knew WPE's use of the trademarks at issue was permissible and that Defendants' September 2024 enforcement demand was a pretext for financial coercion.

## II.   BACKGROUND OF DEFENDANTS' SPOLIATION

### A.   Defendants' Duty to Preserve Arose No Later Than July 2024, When They Hired Litigation Counsel

Defendants' privilege log confirms that their duty to preserve evidence arose no later than July 2024, when they engaged outside litigation counsel regarding a potential dispute with WPE. On July 19, 2024, that counsel circulated a draft cease-and-desist letter directed to WPE for Defendants' consideration. (Fuoco Decl., Ex. 23 (excerpt from Defendants' Amended Privilege Log #005).) One month later, on August 15, 2024, Mr. Mullenweg messaged an Automattic executive that "we're now going [on] a litigation track with WPE." (*Id.*, Ex. 19 (A8C00706126) at -27.)

### B.   Defendants' Attacks Precipitated WPE's Lawsuit in October 2024.

In mid-September 2024, Defendants launched their self-proclaimed nuclear war against WPE. (Dkt. 233 (Third Amended Complaint) ¶¶ 92-98, 102.) On September 17 and 19, 2024, Automattic's CFO Mark Davies told a WPE board member that Automattic would "go to war" if WPE refused its demand for a percentage of WPE's gross revenues. (Dkt. 21 (Oct. 17, 2024 Brunner Decl.) ¶ 23.) On September 20, 2024, Mr. Mullenweg used his WordCamp US keynote to defame WPE. (Fuoco Decl., Ex. 17 (Mullenweg May 14, 2026 Am. Resps. & Objs. to Pl.'s Second Set RFAs) Nos. 103-04; Dkt. 18-28 (transcript of Mr. Mullenweg's Sept. 20, 2024 Keynote Address) at 4, 8, 10-11; Dkt. 20 (Oct. 17, 2024 Teichman Decl.) ¶¶ 9-20.)

Throughout this period, Mr. Mullenweg actively steered communications about WPE into channels designed to leave no record. For instance, on September 21, 2024, Mr. Mullenweg publicly directed members of the public to contact him about WPE using ephemeral messaging: "[f]or the people sending me stuff from inside companies, please do not do it on your work device. Use a personal phone, Signal with disappearing messages, etc. I have a bunch of journalists happy to connect you with as well." (Fuoco Decl., Ex. 15 (X.com Post) (excerpt from Mullenweg Dep. Ex. 55) at A8C00014547.)

On September 23, 2024, WPE sent Defendants a cease-and-desist letter demanding that Defendants stop their misconduct, and making a document preservation demand. (Dkt. 18-29 (Sept. 23, 2024 Cease-and-Desist Letter) at 8-9.) Defendants responded just hours later with their own

cease-and-desist letter to WPE, accusing WPE of infringing their trademarks and threatening litigation if their demands were not met. (Dkt. 233-1 (Defendants' Sept. 23, 2024 Cease-and-Desist Letter) at 1-4.) Defendants continued to disparage and defame WPE, and announced that they would be "go[ing] brick by brick and . . . tak[ing] every one of [WPE's] customers." (Fuoco Decl., Ex. 16 (Mullenweg May 21, 2026 Second Am. Resps. & Objs. to Pl.'s First Set RFAs) No. 52; *see also* Ex. 17 (Mullenweg May 14, 2026 Am. Resps. & Objs. to Pl.'s Second Set RFAs) No. 105; Dkt. 18-6 (Sept. 21, 2024 Article); Dkt. 18-7 (Sept. 25, 2024 Article).)

On September 24, 2024, Defendants persisted in their attacks, blocking WPE from the wordpress.org API, and on October 12, 2024 they hijacked WPE's popular ACF plugin, replacing it with their own SCF plugin and redirecting WPE's ACF customers to SCF. (Fuoco Decl., Ex. 20 (ACF User Review titled "FORCED change from ACF to SCF??? Scummy Business Practice from WordPress"), at WPE00611723-24.)  At that point, WPE had no choice but to initiate litigation, and filed its Complaint against Defendants on October 4, 2024.  (Dkt. 1.)

**C.      Defendants Assured WPE That Evidence Was Being Preserved Even as Relevant Materials Continued to Disappear.**

Once litigation commenced, a series of deleted social media posts alerted WPE to the fact that Defendants were not honoring their preservation obligations. Those incidents, described below, ultimately led WPE to uncover the conduct at the center of this motion: Mr. Mullenweg's intentional use of ephemeral messaging to communicate outside the reach of discovery.

Specifically, on November 5, 2024, WPE wrote to Defendants identifying three specific deletion incidents WPE had become aware of though public sources: (1) X.com posts deleted at Automattic's instruction; (2) a deleted wordpress.org X.com post regarding WPE; and (3) deleted ACF plugin reviews on wordpress.org. (*Id.*, Ex. 1 (Nov. 5, 2024 Letter).) WPE demanded confirmation that Defendants would "immediately cease deleting or destroying potentially relevant evidence" and disclose the "full extent of Defendants' deletion and/or destruction of relevant documents." (*Id.* at 4.) Defendants responded on November 15, 2024, asserting that the wordpress.org X.com post "has not in fact been destroyed" and that ACF plugin reviews had been preserved by the WordPress revisions feature, which Defendants represented "ensures the

preservation of any changes made to any of its webpages over time." (*Id.*, Ex. 2 (Nov. 15, 2024 Letter) at 1.)

On January 8, 2025, WPE wrote again after it had learned that, on December 11, 2024, Mr. Mullenweg had requested that his account on the Post Status Slack workspace be deleted, with his screen name changed to "gone." (*Id.*, Ex. 3 (Jan. 8, 2025 Letter) at 1-2.) To address its concerns about this additional evidentiary destruction, WPE asked Defendants to respond to seven specific preservation questions, including whether "Mr. Mullenweg has been instructed and/or reminded of his preservation obligations" and whether Defendants had "secure[d] a full and complete copy of all of Mr. Mullenweg's data associated with the Post Status Slack channel." (*Id.* at 2-3.) WPE's letter also requested confirmation of preservation across "all other Slack channels, social media, blogs, all of Mr. Mullenweg's email addresses, and any other source of potentially relevant information accessible to Mr. Mullenweg." (*Id.* at 3) On January 10, 2025, WPE sent a third letter after learning that Mr. Mullenweg had deleted three additional X.com posts in the prior 48 hours, including posts referencing his liability in this case, WPE, and WPE's CEO. (*Id.*, Ex. 4 (Jan. 10, 2025 Letter) at 1.) WPE asked whether Mr. Mullenweg "has been counseled about his duty to preserve documents since receiving our letter dated January 8, 2025." (*Id.* at 1.)

On February 4, 2025, WPE and Defendants participated in a meet-and-confer call. During that call, Defendants represented that a litigation hold notice had been sent to all Automattic employees, including Mr. Mullenweg, in October 2024. (*Id.*, Ex. 5 (Feb. 14, 2025 Letter) at 3.) On February 14, 2025, WPE memorialized the call in writing, reiterating that its deletion-related concerns extended to ephemeral messaging. Citing Mr. Mullenweg's September 21, 2024 X.com post directing whistleblowers to use "Signal with disappearing messages" to communicate with him, WPE warned that the use of ephemeral messaging was "a particular concern" and asked Defendants to confirm "whether Mr. Mullenweg has disabled all auto-delete functions on each of the ephemeral messaging platforms he uses, and if so, when." (*Id.*, Ex. 5 (Feb. 14, 2025 Letter) at 3.)

During a further February 24, 2025 call, Defendants' counsel admitted: (i) they were "not 'aware'" whether any of Mr. Mullenweg's messaging communications were being deleted by default and "did not know whether any of the messaging systems used by Mr. Mullenweg default

to auto-delete"; (ii) they were "still investigating what other communications applications or systems Mr. Mullenweg may use"; and (iii) they "were unable to tell [WPE] whether [they] have preserved, or are able to preserve, communications from Mr. Mullenweg's messaging systems such as Signal, Telegram, and WhatsApp." (*Id.*, Ex. 6 (Mar. 6, 2025 Letter) at 1-2.) WPE specifically flagged the third-party auto-delete concern that this Court would later identify as legally significant: "communications on at least some of these platforms can be set to auto-delete messages by other individuals, including any member of a group chat, so that even if Mr. Mullenweg has not activated auto-delete settings, responsive messages could be automatically deleted." (*Id.*; *see* Dkt. 272 at 2 ("WPE's claim is that Mr. Mullenweg solicited third parties to contact him via Signal with disappearing messages—meaning that it may well have been third parties, and not Mr. Mullenweg, who activated the ephemeral messaging function.").)

Shortly after the February 24 meet-and-confer at which Defendants' counsel had admitted they did not know whether ephemeral messaging had been preserved, Defendants wrote to WPE on April 3, 2025: "For the avoidance of doubt, we have met (and will continue to meet) our obligation under the Federal Rules of Civil Procedure to take reasonable steps to ensure that relevant information is preserved." (Fuoco Decl., Ex. 7 (Apr. 3, 2025 Letter) at 1.) As to ephemeral messaging, Defendants stated: "We have taken all reasonable steps to preserve relevant documents in this case, including with respect to Signal, Telegram, and WhatsApp." (*Id.* at 3.) Defendants further stated: "Mr. Mullenweg confirmed that he has not activated the auto-delete function on any communications platform with auto-delete capability that he uses (WhatsApp, Telegram, Signal) . . . ." (*Id.* at 2.) As discussed below, these representations were ***false***.

**D.      Responding to WPE's Motion to Compel, Defendants Made Misrepresentations to the Court About Preservation.**

In October 2025, having not received Mr. Mullenweg's missing ephemeral messaging platform communications, despite conferring with Defendants between February and September 2025 without resolution, WPE moved to compel the production of Mr. Mullenweg's ephemeral messages. In the resulting October 6, 2025 joint letter brief, WPE sought an order compelling production of all responsive WhatsApp, Signal, and Telegram communications and a sworn

declaration accounting for Mr. Mullenweg's platform usage, preservation steps, and any deleted communications—on the grounds that, a year into discovery, he had produced nothing from WhatsApp or Signal and only 16 Telegram messages and had directed third parties to contact him via "Signal with disappearing messages," while counsel gave conflicting answers about whether his accounts had even been collected. (Dkt. 177 at 1-3.)

Opposing the motion, Defendants represented to the Court that "Mr. Mullenweg's responsive Signal, Telegram, and WhatsApp communications have been preserved and either have been (with respect to Telegram) or will be (with respect to Signal and WhatsApp) produced (to the extent they are non-privileged)." (*Id.* at 3.) As discussed below, these representations were ***false***.

Defendants then failed to produce the promised communications. On January 6, 2026, WPE wrote to demand Bates numbers for any messaging communications Defendants claimed to have produced and, for any that Defendants could not produce, an explanation for why the documents were no longer available. (Fuoco Decl., Ex. 9 (Jan. 6, 2026 Letter from L. Brewer to H. Hogan) at 9.) On a January 20 call, Defendants promised to produce Mr. Mullenweg's WhatsApp, Signal, and additional Telegram messages within seven to ten days. (Fuoco Decl. ¶ 15; Dkt. 266-2 (Feb. 13, 2026 Email Chain from G. Fuoco to J. Levin) at 5.) Defendants produced none of it and ignored WPE's follow-up requests of February 3, 11, and 13, 2026. (Dkt. 266-2 at 1-4.)

**E.     The Court Found WPE's Preservation Allegations "Concerning" and Required a Sworn Declaration From Defendants.**

On April 3, 2026, the Court ordered the parties to advise whether the October 6, 2025 joint discovery letter remained live. (Dkt. 264.) On April 9, 2026, Defendants produced one Signal message exchange and no WhatsApp or Telegram messages—a production they represented "complete[d their] production from [Mr.] Mullenweg's custodial files." (Fuoco Decl. ¶ 16; Dkt. 266-3 (Apr. 9, 2026 Email from B. Wallace to S. Jenkins) at 1).  They then argued the next day that this production "resolv[ed] the dispute" and proposed jointly advising the Court that the letter brief was moot. (Fuoco Decl., Ex. 10 (Apr. 10, 2026 Email from B. Wallace to G. Fuoco) at 1; *see* Dkt. 266 at 1-2). WPE declined to withdraw its letter brief given the paucity of the production and WPE's ongoing concerns. In the resulting April 10, 2026 updated joint discovery letter, WPE renewed its

request for a sworn declaration accounting for Mr. Mullenweg's use of, preservation of, and deletions from each platform. (Dkt. 266 at 1-3.)

On April 28, 2026, the Court issued its order, finding that WPE had "plausibly contend[ed]" that Mr. Mullenweg—"at least in his own capacity, and potentially as an officer and agent of Automattic"—"deleted relevant documents or allowed such documents to be deleted after an obligation to preserve was triggered," and that those allegations "particularly when taken together, [were] concerning." (Dkt. 272 at 1.) The Court found Defendants' response "unsatisfying" because it cataloged the categories of documents Defendants *did* produce while "elid[ing]" what was allegedly deleted or left unpreserved—"of course, in a case of alleged spoliation, what matters is what was allegedly deleted or left unpreserved." (*Id*.) The Court further identified Defendants' parenthetical carve-out—that no one had accepted Mr. Mullenweg's "public invitation (prior to this lawsuit being filed) to contact him via Signal"—as "potentially a significant concession" that Defendants could not vouch for preservation of Mr. Mullenweg's communications. (*Id*. at 2.)

Finding that Mr. Mullenweg's proposed declaration fell "short . . . of providing the information that most interest[ed] the Court," the Court ordered Defendants to provide a sworn declaration "from Mr. Mullenweg and/or counsel or someone working at the direction of counsel, as appropriate (depending on who possessed the relevant knowledge)," detailing the dates and extent of his use of WhatsApp, Signal, and Telegram for case-relevant communications; the preservation steps taken on each platform and when; whether auto-delete or disappearing-messages features were enabled during the preservation period; the date ranges of any preserved and any deleted communications on each platform; the preservation status of his X.com direct messages and any Post Status Slack screenshots counsel claimed to have captured; and an explanation of what happened with respect to the alleged disappearing Signal messages, the deleted X.com posts, the deleted Slack channel, and the deleted wordpress.org plug-in reviews. (*Id*. at 2-3.) The Court directed that the declaration(s) be produced before Mr. Mullenweg's deposition, that any unproduced responsive X.com direct messages and Post Status Slack screenshots be produced promptly, and that Mr. Mullenweg be prepared to answer deposition questions about any such declaration "on matters appropriately within his knowledge." (*Id*. at 3.)

Defendants served Mr. Mullenweg's declaration on May 5, 2026, together with a declaration from Jonathan Robins, an individual employed by Defendants' e-discovery firm. (*Id.*, Ex. 11 (May 5, 2026 Mullenweg Decl.); Ex. 12 (May 4, 2026 Robins Decl.).)

**F.      Defendants' Sworn Declarations Confirm Defendants' Failure to Preserve.**

Remarkably, the Robins declaration concedes that the first imaging of any of Mr. Mullenweg's personal devices did not occur until ***April 17, 2025*** (*id.*, Ex. 12 (May 4, 2026 Robins Decl.) ¶ 5)—***nine months*** after Defendants' preservation obligation attached, more than ***six months*** after WPE filed suit, and two weeks ***after*** Defendants' April 3 written representations that they had "taken all reasonable steps to preserve relevant documents in this case, including with respect to Signal, Telegram, and WhatsApp." Thus, Defendants' representations were false when made. Defendants had the opportunity to image Mr. Mullenweg's iPhone at any point during the preceding months, but did not do so.

Worse, when the imaging belatedly began on April 17, 2025, it failed with respect to ephemeral messaging. The Robins declaration concedes: "The iPhone had been updated to a version of iOS that had just been released approximately a week prior. . . . This latest version of iOS was not yet fully supported by the Cellebrite imaging software. This meant that the examiner was unable to get a Full File System image of the device and was only able to capture a Logical image. This logical image . . . could not capture hidden system level data such as the Apple Keychain file that is required for encrypted applications like WhatsApp or Signal." (*Id.*)

For reasons both Mr. Robins and Mr. Mullenweg fail to provide in their declarations, it was not until ***eleven months later*** that a "re-imaging of the phone on March 16, 2026" finally captured a Full File System image containing the data needed to collect and decrypt the WhatsApp and Signal accounts. (*Id.*) The October 6, 2025 representations that Mr. Mullenweg's communications "have been preserved" were thus also false when made. (Dkt. 177 at 3.) His Signal and WhatsApp data was not in fact "preserved," and would not be for another five months, until the March 16, 2026 reimaging—twenty months after Defendants' preservation obligations arose, seventeen months after WPE filed suit, and just two months before discovery closed in this case.

In his declaration, Mr. Mullenweg admitted that he used all of the messaging platforms at

issue in WPE's motion to compel—Signal, WhatsApp and Telegram. (Fuoco Decl., Ex. 11 (May 5, 2026 Mullenweg Decl.) ¶¶ 4-5.) He also admitted that, since September 2024, ephemeral messaging was enabled on all of those platforms, but purportedly only for "highly sensitive personal communications with romantic partners." (*Id.* ¶ 6.) This admission directly contradicted the representation Defendants made thirteen months earlier, that Mr. Mullenweg "has not activated the auto-delete function on any communications platform with auto-delete capability that he uses (WhatsApp, Telegram, Signal)." (*Id.*, Ex. 7 at 2.)

### G. Mr. Mullenweg's Evasive and Damning Deposition Testimony Further Confirms Defendants' Failure to Preserve.

At his deposition, Mr. Mullenweg struggled to answer basic questions about his document preservation. Asked at his deposition why "it [took] almost a full year to do a reimaging of [his] phone," Mr. Mullenweg answered: "I don't know." (*Id.*, Ex. 14 (Mullenweg Dep. Vol. 2) at 540:25-541:3.) Asked how many disappearing messages he had received during the eleven-month gap between April 17, 2025 and March 16, 2026, Mr. Mullenweg testified, "I don't know." Asked, "And no one will ever know; right?" Mr. Mullenweg responded, "I—I don't recollect, no." (*Id.* at 542:20-543:5.) Asked the same question with respect to messages from Automattic customers and employees during that same eleven-month period, Mr. Mullenweg gave the same "I don't know" answers. (*Id.* at 543:7-24.)

Mr. Mullenweg attempted to justify the failed iPhone imaging on the theory that "the exact same messages would be on the iPhone, the Pixel, the MacBook," so collecting one device sufficed. (*Id.* at 531:23-532:4.) But those "other devices" are no longer available either: he testified that his Pixel Fold was "lost while traveling" and that he is "not aware" of the present location of that MacBook. (*Id.* at 529:1-6.) None of those devices was forensically collected before they went missing. And Mr. Mullenweg conceded that disappeared messages "wouldn't be transferred" to a new device anyway. (*Id.* at 530:3-4.)

## III. LEGAL STANDARDS

### A. The Duty to Preserve.

The duty to preserve evidence attaches "[a]s soon as a potential claim is identified." *Gay v.*

*Parsons*, No. 16-CV-05998-CRB (PHK), 2024 WL 4224893, at *6 (N.D. Cal. Sept. 17, 2024) (internal quotations omitted). That duty "includes an obligation to identify, locate, and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Radio City, Inc. v. Celestron Acquisition, LLC*, No. 5:20-CV-03642-EJD, 2023 WL 5519324, at *4 (N.D. Cal. Aug. 25, 2023) (internal quotations omitted).

### B.    Sanctions Under Rule 37(e).

Rule 37(e) provides that "[i]f electronically stored information that should have been preserved . . . is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court, on finding prejudice, may "order measures no greater than necessary to cure the prejudice"; and on finding the party "acted with the intent to deprive another party of the information's use" may impose an adverse-inference instruction or enter judgment against the culpable party. Fed. R. Civ. P. 37(e); *see Porter v. City & Cnty. of San Francisco*, No. 16-cv-03771-CW, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence. . . ." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 5:18-cv-00420-JGB, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020). Moreover, attorneys' fees for the cost of a sanctions motion are an appropriate additional remedy under Rule 37(e)(1) even without a showing of bad faith. *Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *22 (C.D. Cal. Jan. 27, 2021), *recommendation adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021).

The Ninth Circuit has found prejudice when a party's refusal to provide certain documents "forced [plaintiff] to rely on incomplete and spotty evidence" at trial. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 354 (9th Cir. 1995). "To show prejudice resulting from the spoliation . . . courts have held that a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) (citations omitted, internal quotation marks omitted). "Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019).

**C.      Sanctions Under the Court's Inherent Authority.**

Federal courts also have inherent authority to sanction discovery abuses and spoliation. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Most courts apply a three-part test: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense." *Waters v. Kohl's Dep't Stores, Inc.*, No. 14-CV-00043-KAW, 2015 WL 1519657, at *2 (N.D. Cal. Apr. 2, 2015) (internal quotations omitted). For lost ESI, Rule 37(e) "forecloses reliance on inherent authority" to impose adverse-inference measures on any lesser showing than intent (Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment), and WPE accordingly rests its requested adverse inferences on Rule 37(e)(2). But the Rule governs only measures for the loss of ESI itself. It does not displace the Court's inherent authority over litigation misconduct beyond that loss—here, Defendants' repeated misrepresentations to WPE and to this Court that the lost communications were being preserved. Dismissal remains an appropriate inherent-authority sanction where "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Anheuser-Busch*, 69 F.3d at 348 (citation omitted); *accord Leon*, 464 F.3d at 958.

**IV.      ARGUMENT**

**A.      Defendants Spoliated Relevant Evidence.**

The duty to preserve is undisputed. After it attached, Defendants failed to take reasonable steps—shown by the nine-month delay before Telegram messages were captured and twenty-month delay before WhatsApp and Signal messages were captured. The lost evidence cannot be restored: disappearing messages do not survive their disappearance; the third-party communications lived only on Mr. Mullenweg's personal devices; and the devices he has lost are gone. And the evidence is directly relevant to the central issues—intent in directing the customer-departure campaign, the pretextual nature of Defendants' belated trademark enforcement, and the scope of Defendants' redirection of WPE's customers.

### 1.    Defendants Had a Duty to Preserve.

The duty to preserve Mr. Mullenweg's communications attached no later than July 19, 2024, when Defendants hired outside counsel and prepared a draft cease-and-desist letter directed at WPE, and thus can be held to have reasonably anticipated litigation with WPE. (Fuoco Decl., Ex. 23 (excerpt from Defendants' Amended Privilege Log #005).)

### 2.    Defendants Failed to Take Reasonable Steps to Preserve.

A party that anticipates litigation must take reasonable steps to preserve the relevant evidence within its control—the core requirement of Rule 37(e). Defendants failed to do so with respect to Mr. Mullenweg's ephemeral messaging communications. As detailed below, Defendants failed to preserve Mr. Mullenweg's communications timely or completely, did not remediate the gaps once they emerged, and lost additional devices before imaging.

*First*, by Defendants' own forensic vendor's account, none of Mr. Mullenweg's personal devices was imaged for nine months after Defendants' duty to preserve attached. The first imaging occurred only on April 17, 2025. (Fuoco Decl., Ex. 12 (Robins Decl.) ¶ 5.) During those nine months, WPE sent five letters expressing concern about Defendants' preservation efforts. (*Id.*, Exs. 1, 3-6.) Defendants nonetheless did not image the devices discussed at length in the correspondence, including any WhatsApp, Signal or Telegram messages contained therein.

*Second*, when the April 17, 2025 imaging finally occurred, Defendants' vendor concedes it failed to preserve WhatsApp and Signal messages. (*Id.*, Ex. 12 (Robins Decl.) ¶ 5.) The vendor blames an iOS update issued "approximately a week prior" to April 17—a concession the failure was avoidable, since that issue did not exist during the prior nine months when Defendants could have imaged the devices. Defendants then failed to take any steps to remedy the failure to fully preserve until *eleven months later*. (*Id.*) Defendants have no explanation for that extraordinary delay; indeed, when Mr. Mullenweg was asked at deposition why "it [took] almost a full year," he answered "I don't know." (*Id.*, Ex. 14 (Mullenweg Dep. vol. 2) at 540:25-541:3.) The Robins declaration notably is silent on that issue. During the twenty months of the unexplained failure to collect these messages, any WhatsApp and Signal messages that auto-deleted on Mr. Mullenweg's phone, were deleted by counterparties, were deleted by Mr. Mullenweg himself, or otherwise

disappeared—a risk Defendants' counsel acknowledged they could not rule out—were permanently lost. (*Id.*, Ex. 6 at 1-2.)

*Third*, Defendants failed to image Mr. Mullenweg's additional personal devices before he reported them "lost"—including a Pixel Fold he "lost while traveling" and a MacBook whose location he is "not aware" of. (*Id.*, Ex. 14 (Mullenweg Dep. Vol. 2) at 528:22-529:6.) Thus, Mr. Mullenweg's suggestion that any lost evidence would also reside on those other devices (*id.* at 531:23-532:4) is of no relevance given those other devices are gone—and Mr. Mullenweg admitted that disappeared messages "wouldn't be transferred" to a new device anyway. (*Id.* at 530:3-4.)

Defendants' conduct is unreasonable under Rule 37(e). They did not preserve or collect in a timely or competent manner, did not remediate promptly, and did not tell WPE the truth about their failures. In fact, Defendants affirmatively misrepresented their preservation efforts to WPE, and to this Court.

### 3.    The Lost Evidence Cannot Be Restored or Replaced.

By definition, deleted ephemeral messages cannot be recovered. (*Id.* at 530:3-4 (Mullenweg: "If a message disappeared, they wouldn't be transferred").) Mr. Mullenweg could not say how many disappearing messages he received during the eleven-month gap between the failed and successful imaging (*id.* at 542:24 ("I don't know")), let alone the twenty-month gap since preservation attached. The Pixel Fold he "lost while traveling" cannot be re-imaged. (*Id.* at 529:1-6.) The MacBook he can no longer locate cannot be re-imaged. (*Id.*) The post-March 16, 2026 reimaging cannot cure the loss because that reimaging by definition captured only data still on the device as of March 16, 2026—not data that had auto-deleted, been deleted by counterparties, had been manually deleted, or otherwise disappeared during the preceding twenty months.

### 4.    The Lost Evidence Is Highly Relevant to WPE's Claims.

The lost evidence sits at the center of this litigation. Mr. Mullenweg used Signal, WhatsApp and Telegram during the September 2024 events at the core of WPE's complaint. Indeed, he publicly directed whistleblowers on September 21, 2024 to reach him via "Signal with disappearing messages." (*Id.*, Ex. 15 at A8C00014547.) These communications are the direct contemporaneous record of Mr. Mullenweg's conduct and state of mind during the period at the heart of nearly every

claim and counterclaim. The interference claims turn on what he told customers, prospective customers, competitors, and third parties to induce departures; the defamation claims on what he told allies and journalists privately while attacking WPE publicly; the CFAA claims on his "intent to extort" (§ 1030(a)(7)) and intentional damage in seizing ACF (§ 1030(a)(5)); and the counterclaims and WPE's equitable defenses on whether the September 2024 enforcement was bona fide or pretextual.

WPE need not prove the precise content of the lost communications. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016) (noting that the "key problem . . . with spoliation in general[] is that neither party can say with any certainty what the deleted communications would have shown"). Mr. Mullenweg does not dispute that he actively used Signal, WhatsApp, and Telegram throughout the relevant period. (Fuoco Decl., Ex. 11 ¶¶ 4-5.) Although he characterizes his use of these platforms for litigation-related matters as something less than "regular," the Court is not required to accept that self-serving assertion at face value. (*Id.*) The spoliation at issue is precisely what prevents WPE from testing it. *Matthew Enter.*, 2016 WL 2957133, at *4.

**B.    Defendants' Spoliation Has Prejudiced WPE.**

**WPE's claims.** WPE has been severely prejudiced by Defendants' failures. WPE's claims include allegations that Mr. Mullenweg coordinated the September 2024 keynote, the wordpress.org block, and the ACF plugin takeover with Automattic executives and others. The platforms most likely to contain that coordination evidence are precisely the ones Defendants failed to preserve.

The Robins declaration concedes that the data required to retrieve WhatsApp and Signal messages was not captured between July 2024 and March 16, 2026. (*Id.*, Ex. 12 ¶ 5.) And Telegram messages were not captured between July 2024 and April 17, 2025. (*Id.*) WPE will never know the full extent of such messages touching on WPE that Mr. Mullenweg sent or received during those periods; he himself cannot say. (*Id.*, Ex. 14 (Mullenweg Dep. Vol. 2) at 542:20-543:5.)

Mr. Mullenweg communicated extensively on preserved channels during this same period—messaging hundreds of Automattic employees on September 19, 2024 that "we're possibly going to go nuclear with WP Engine" (*id.*, Ex. 13 (A8C00753030) at -045)—and admits he simultaneously

WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

used the unpreserved WhatsApp, Signal, and Telegram platforms. (*Id.*, Ex. 11 (May 5, 2026 Mullenweg Decl.) ¶ 5.) His suggestion that the same messages on his iPhone would have been on his Pixel and MacBook depends on devices he cannot locate and Defendants have not produced. (*Id.*, Ex. 14 (Mullenweg Dep. Vol. 2) at 529:1-6, 531:23-532:4.) And Mr. Mullenweg concedes "if a message disappeared, they wouldn't be transferred" to the new device anyway. (*Id.* at 530:3-4.)

**Defendants' counterclaims and WPE's defenses.** WPE's unclean hands and trademark misuse defenses require that WPE show the September 2024 enforcement was pretextual—financial coercion, not trademark protection. The existing record already supports that: the 8% figure was reverse-engineered from what Mr. Mullenweg thought WPE could afford (Dkt. 46-2 (TechCrunch Disrupt 2024 Tr.) at 5); ███████████████████████████████████; (Fuoco Decl., Ex. 21 (Friedman Dep. Ex. 12) at A8C01401824-25); ██████████████████████ ████████████████████████████ (*id.*, Ex. 22 (Friedman Dep. Ex. 8) at A8C00920902); ██████████████████████████████ (*id.*, Ex. 18 (Friedman Dep.) at 165:6-12, 246:8-247:11). But Mr. Mullenweg's spoliated communications are the direct record of his real motive—what he told others about why he made the demand and how it was calibrated to WPE's wallet. They are the communications WPE would have used to impeach his anticipated trial testimony that the demand was a bona fide trademark enforcement effort.

**C.     WPE Is Entitled To Preclusion Sanctions and Adverse Inference Instructions.**

Given the serious nature of the misconduct at issue, WPE requests that the Court first find that Defendants spoliated relevant evidence with the intent to deprive WPE of its use, and then impose the preclusion sanctions, adverse-inference instructions, and other relief detailed below. The sanctions are appropriate because: (1) Defendants intentionally failed to preserve evidence and misrepresented their preservation status to WPE and the Court; (2) WPE has been severely prejudiced because it has lost direct evidence, not available from any other source, that supports its claims; and (3) the relief is narrowly tailored. *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008).

**1.    Defendants Acted With the Intent to Deprive WPE of the Lost Evidence—and Then to Conceal Their Actions.**

Rule 37(e)(2) authorizes a mandatory adverse inference instruction where a party "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence. . . ." *Colonies Partners*, 2020 WL 1496444, at *9.

Defendants' conduct establishes intent to deprive in five distinct respects.

***First***, the false representations that occurred on April 3, 2025. Defendants' counsel told WPE in writing that "all reasonable steps" had been taken "including with respect to Signal, Telegram, and WhatsApp"—at a time when, by their own vendor's admission, no imaging of Mr. Mullenweg's personal devices had even begun. (Fuoco Decl., Ex. 7 at 3; Ex. 12 ¶ 5.) In fact, by Defendants' own vendor's account, no imaging took place until April 17 (which failed). (*Id.*, Ex. 12 ¶ 5.) The April 3 representations were knowingly false, indicating Defendants intended to deprive. *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1018 (D. Ariz. 2021) ("Such duplicity is, again, inconsistent with good faith but consistent with an intent to deprive"), *aff'd*, 21-16852, 2024 WL 1672263 (9th Cir. Apr. 18, 2024).

***Second***, the false representations to WPE and this Court that occurred on October 6, 2025. Defendants told WPE and this Court in a joint letter brief that "Mr. Mullenweg's responsive Signal, Telegram, and WhatsApp communications have been preserved." (Dkt. 177 at 3.) By that date, nearly six months had passed since the failed April 17 imaging, and still no preservation of Signal and WhatsApp messages had occurred. Defendants had every opportunity, every day, to remediate, and to truthfully disclose their preservation failures. They did not. Repeated representations of preservation during periods of non-preservation establish intent. *Burris*, 566 F. Supp. 3d at 1017-18.

***Third***, the breadth of the pattern forecloses any innocent explanation. The April 3 and October 6 representations were not isolated. Between November 2024 and June 2025, WPE sent at least six letters flagging disappearing messages, deleted posts, and third-party auto-delete risks.

(Fuoco Decl., Exs. 1, 3-6, 8.) Defendants answered them with assurances that the evidence was preserved—assurances their own evidence now contradicts. Repeated and specific notice produced no preservation.

Mr. Mullenweg's own conduct corroborates the institutional intent finding. On September 21, 2024, after the preservation obligation attached, Mr. Mullenweg publicly directed potential whistleblowers to contact him using ephemeral messaging: "[f]or the people sending me stuff from inside companies, please do not do it on your work device. Use a personal phone, Signal with disappearing messages, etc." (*Id.*, Ex. 15 (X.com Post) (excerpt from Mullenweg Dep. Ex. 55) at A8C00014547.) He admitted to deleting at least two X.com posts concerning WPE (*id.*, Ex. 16 (Mullenweg May 21, 2026 Second Am. Resps. & Objs. to Pl.'s First Set RFAs) No. 5), deleting at least one Slack message referencing WPE (which he then reposted with additional content) (*id.*, Ex. 16 (Mullenweg May 21, 2026 Second Am. Resps. & Objs. to Pl.'s First Set RFAs) No. 6), and requesting deletion of his Post Status Slack account after that channel became a litigation forum (*id.*, Ex. 11 (May 5, 2026 Mullenweg Decl.) ¶ 16). He then denied that his Signal and Telegram messages auto-deleted (*id.*, Ex. 16 (Mullenweg May 21, 2026 Second Am. Resps. & Objs. to Pl.'s First Set RFAs) Nos. 3-4), only to concede that he does use those applications with disappearing messages enabled, supposedly for "highly sensitive personal communications with romantic partners" (*id.*, Ex. 11 (May 5, 2026 Mullenweg Decl.) ¶ 6).

**2.  WPE's Requested Sanctions Are Narrowly Tailored to the Loss and to the Asymmetry the Spoliation Created.**

WPE's requested sanctions are tailored to the spoliation and the prejudice it created. The lost evidence is the most probative source for testing Mr. Mullenweg's state of mind during the September 2024 events and the testimony he must give to support Defendants' trademark counterclaims—that Defendants genuinely viewed WPE's mark use as infringing and that the September 2024 enforcement was good-faith trademark protection rather than the financial coercion the record suggests. Those propositions are testable only against his contemporaneous private communications—the same evidence bearing on WPE's unclean-hands and trademark-misuse defenses. Without that record, Mr. Mullenweg can testify to whatever narrative the counterclaims

require while WPE is deprived of the impeachment evidence cross-examination depends on.

That asymmetry is exacerbated by Defendants' sustained course of misrepresentations—from November 2024 into April 2026—that the very communications now lost had been preserved. By destroying those communications behind a wall of preservation assurances, Defendants have given themselves an unfair advantage on their own affirmative claims and have impaired WPE's ability to defend against them—the precise prejudice Rule 37(e)(2) is designed to remedy.

*First*, WPE asks the Court to deem conclusively established that Mr. Mullenweg used WhatsApp, Signal, and Telegram for case-relevant communications from July 2024 through March 16, 2026, and that certain of such communications have been destroyed or are no longer available. Defendants repeatedly told WPE—and this Court—that those communications were being preserved, despite their failure to do so.

*Second*, WPE asks the Court to issue mandatory adverse inferences tied to the issues for which the lost evidence is uniquely probative. A generic "may presume unfavorable" instruction is inadequate here because the categories of lost communications and the issues they would have addressed are specifically identifiable. The jury should be instructed that it must presume the destroyed or unavailable WhatsApp, Signal and Telegram messages contained evidence that: (a) Mr. Mullenweg acted with the intent to interfere with WPE's customer and prospective-customer relationships when he directed the campaign to induce WPE's customers to leave (relevant to WPE's interference claims); (b) Mr. Mullenweg knew his public statements about WPE were false or made them with reckless disregard for their truth (relevant to WPE's defamation claims); (c) Mr. Mullenweg acted with the intent to extort WPE and to cause intentional damage in making the September 2024 demand and seizing the ACF plugin (relevant to WPE's CFAA claims). And in the alternative to dismissal of Defendants' counterclaims (addressed below), the jury should be instructed that it must presume those communications would have shown that Mr. Mullenweg knew WPE's use of the trademarks at issue was permissible and that Defendants' September 2024 enforcement demand was a pretext for financial coercion rather than a good-faith trademark-protection effort (relevant to Defendants' trademark counterclaims and WPE's affirmative defenses of unclean hands and trademark misuse). *See Io Grp. Inc. v. GLBT Ltd.*, No. C-10-1282 MMC DMR,

2011 WL 4974337, at *8 (N.D. Cal. Oct. 19, 2011) (ordering adverse inference instructions based on the "categories of evidence that Defendants concede were destroyed").

**Third**, WPE asks the Court to preclude Mr. Mullenweg from testifying about the substance of his WhatsApp, Signal and Telegram communications regarding WPE, his subjective state of mind during the September 2024 events, and his subjective basis for the trademark enforcement actions—except as established by produced documents. He cannot be permitted to offer self-serving testimony about the unavailable communications and a state of mind the evidence would have tested.

**Fourth**, as the primary remedy for the spoliation as it bears on Defendants' trademark counterclaims, WPE asks the Court to dismiss Counterclaims 1 through 7 under the Court's inherent authority. *See Leon*, 464 F.3d at 958-61 (affirming dismissal as spoliation sanction). Dismissal-level sanctions require consideration of the *Anheuser-Busch* factors: (1) the public's interest in expeditious resolution; (2) the court's need to manage its docket; (3) the risk of prejudice to the moving party; (4) the public policy favoring disposition on the merits; and (5) the availability of less drastic sanctions. *Anheuser-Busch*, 69 F.3d at 348. Each factor supports dismissal of the counterclaims here:

(1)    Allowing Defendants to pursue counterclaims while having destroyed the contemporaneous evidence testing them prolongs the proceedings rather than expediting them.

(2)    The alternative is a counterclaim trial in which the asymmetry created by Defendants' spoliation cannot be cured by any evidentiary remedy short of dismissal.

(3)    The prejudice to WPE is severe: WPE must defend against affirmative claims whose evidentiary record was deliberately incomplete on Defendants' side.

(4)    The policy favoring merits disposition is itself undermined when one side destroys the evidence necessary to test the merits.

(5)    Less drastic sanctions are inadequate to cure the spoliation as it bears on the counterclaims. Even with adverse inferences and testimony preclusion, Defendants would still be entitled to prosecute affirmative claims supported by a documentary record they themselves curated by failing to preserve contemporaneous evidence that WPE would otherwise have used to test those claims. The fundamental fairness problem cannot be cured by any remedy short of dismissal.

Issue sanctions, content-specific adverse inferences, evidentiary preclusion of testimony, and dismissal of affirmative claims in these circumstances are all well within this Court's authority. *See Leon*, 464 F.3d at 958-61 (dismissal); *Anheuser-Busch*, 69 F.3d at 348 (dismissal); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No. 14cv1191 JLS, 2017 WL 2298473, at *6-7 (S.D. Cal. May 26, 2017) (issue sanctions and adverse inference); *Inland Concrete Enters., Inc. v. Kraft Am. LP*, CV 10-1776-VBF(OPX), 2011 WL 13209166, at *8 (C.D. Cal. Mar. 9, 2011) (precluding defendant from introducing contrary evidence); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) (adverse inference); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (adverse inference); *Io Grp. Inc.*, 2011 WL 4974337, at *8 (adverse inference).

### D.    WPE Is Entitled To Its Attorneys' Fees.

In addition to the foregoing remedies, WPE is entitled to an award of attorneys' fees and costs it has incurred in connection with this motion, its prior motion to compel, and the many months of meet and confer efforts WPE was forced to undertake to uncover Defendants' spoliation in the face of Defendants' concealment of the same. "Monetary sanctions may be imposed where one party has wrongfully destroyed evidence," and a party is "entitled to an award of attorney fees that is reasonable in light of the degree of [] culpability." *In re Napster*, 462 F. Supp. 2d at 1078 (citations and emphasis omitted). Fee-shifting is available under Rule 37(e)(1) even without any showing of bad faith. *Aramark*, 2021 WL 864067, at *22 ("no requirement in Rule 37(e) or the Committee Notes that a court must make a finding of bad faith before imposing monetary sanctions"). Independently, the Court has inherent authority to shift fees for discovery abuse. *Leon*, 464 F.3d at 961.

WPE is prepared to submit a declaration tabulating and demonstrating the reasonableness of its fees and costs upon the Court granting this relief. *See Jimenez v. Menzies Aviation Inc.*, No. 15-CV-02392-WHO, 2016 WL 3232793, at *6 (N.D. Cal. June 13, 2016).

## V.    CONCLUSION

Mr. Mullenweg's relevant communications during the most critical time period in this case were not preserved, and Defendants lied about it, both to WPE and to this Court. Defendants' actions have deprived WPE of critical evidence at the core of this litigation. WPE respectfully requests that

the Court grant this motion and award the relief set forth in the Notice of Motion and accompanying Proposed Order.

DATED:  July 28, 2026                                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Yury Kapgan*
                                      Yury Kapgan
                          *Attorneys for Plaintiff WPEngine, Inc.*

### <u>ARTIFICIAL INTELLIGENCE CERTIFICATION</u>

I certify that any content generated by artificial intelligence in the foregoing motion and accompanying papers has been personally verified for accuracy.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Rachel Herrick Kassabian*
                                      Rachel Herrick Kassabian
                          *Attorneys for Plaintiff WPEngine, Inc.*

WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I hereby certify that each of the other signatories to the above motion have authorized use of their electronic signature and concurred in this filing.

DATED:  July 28, 2026                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By   */s/ Gregory A. Fuoco*
                        Gregory A. Fuoco
              *Attorneys for Plaintiff WPEngine, Inc.*

WPE'S MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE