GIBSON, DUNN & CRUTCHER LLP
JOSEPH R. ROSE, SBN 279092
    jrose@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, California 94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

GIBSON, DUNN & CRUTCHER LLP
MICHAEL H. DORE, SBN 227442
    mdore@gibsondunn.com
ILISSA SAMPLIN, SBN 314018
    isamplin@gibsondunn.com
33 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.6652

GIBSON, DUNN & CRUTCHER LLP
JOSH KREVITT, SBN 208552
    jkrevitt@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*admitted pro hac vice*)
    osnyder@gibsondunn.com
HOWARD HOGAN (*admitted pro hac vice*)
    hhogan@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.2400
Facsimile:    212.351.6335

*Attorneys for Defendants Automattic Inc. and
Matthew Charles Mullenweg, and WooCommerce Inc. and
Counterclaimant WordPress Foundation*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WPENGINE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation<br><br>Defendants.<br><br>AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,<br><br>Counterclaimants,<br><br>v.<br><br>WPENGINE, INC., a Delaware corporation,<br><br>Counterdefendant. | Case No. 4:24-cv-06917-AMO (ASK)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>Hearing:<br><br>Date: October 1, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 4<br>Judge: Honorable Ajay S. Krishnan |

Gibson, Dunn &
Crutcher LLP

6002705715.1

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  BACKGROUND ................................................................................................3

    A.  Defendants Implemented Preservation Measures and Conducted Large-Scale Collection and Production ..............................................3

    B.  Deposition Testimony and the Court-Ordered Declarations Refute Any Inference That Case-Relevant Communications Were Lost ....................4

    C.  WP Engine Seeks Sweeping Merits-Determining Sanctions Based on an Unsupported Auto-Deletion Theory and Defendants' Descriptions of Ongoing Productions ................................................8

III.  LEGAL STANDARD ........................................................................................9

IV.  ARGUMENT ....................................................................................................10

    A.  WP Engine Cannot Meet Rule 37(e)'s Threshold Requirements for Sanctions ................................................................................................10

        i.  WP Engine Has Not Shown That Responsive "Disappearing" Messages Ever Existed, Let Alone Were Lost ................................................................................................10

        ii.  WP Engine Has Not Shown That Any Alleged Loss Resulted from Any Failure to Take Reasonable Steps to Preserve Relevant Information ................................................15

    B.  WP Engine Cannot Satisfy Rule 37(e)(1)'s Requirements to Show Prejudice from Any Lost ESI ................................................................16

    C.  WP Engine Cannot Establish the Specific Intent to Deprive Required by Rule 37(e)(2) ........................................................................18

    D.  WP Engine's Requested Remedies Are Not Tailored to Any Loss ................21

    E.  Attorneys' Fees Are Not Warranted Because There Was No Spoliation ................................................................................................25

V.  CONCLUSION ................................................................................................25

Gibson, Dunn &
Crutcher LLP

**Page(s)**

**Cases**

*Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*,
2026 WL 1256545 (S.D.N.Y. May 7, 2026)................................................................17, 18, 20, 21

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995).......................................................................................21, 22, 23

*Aramark Management, LLC v. Borgquist*,
2021 WL 864067 (C.D. Cal. Jan. 27, 2021) ...........................................................................25

*Barak v. Rooster's Guide & Outfitting Adventures*,
2023 WL 3178026 (D. Colo. May 1, 2023)...............................................................18, 20, 21

*BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*,
730 F. Supp. 3d 308 (N.D. Tex. 2024)......................................................................16, 19, 20

*Burris v. JPMorgan Chase & Co.*,
566 F. Supp. 3d 995 (D. Ariz. 2021)..............................................................................20, 22

*Coca-Cola Co. v. Overland, Inc.*,
692 F.2d 1250 (9th Cir. 1982)..............................................................................................24

*Colonies Partners, L.P. v. County. of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........................................................................20

*Cooper Foods International, LLC v. Yourd*,
2025 WL 2663977 (E.D.N.Y. Sept. 17, 2025).......................................................10, 11, 12, 18, 23

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
2017 WL 2298473 (S.D. Cal. May 26, 2017).....................................................................21, 23

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
479 F.3d 1099 (9th Cir. 2007)..............................................................................................23

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
2024 WL 5058527 (N.D. Cal. Dec. 9, 2024) .........................................................................15

*Epidemic Sound v. Meta Platforms, Inc.*,
2026 WL 2021347 (N.D. Cal. July 13, 2026)........................................................................14

*Garcia v. Vitus Energy, LLC*,
600 F. Supp. 3d 975 (D. Alaska 2022)............................................................................23, 24

*Glover v. BIC Corp.*,
6 F.3d 1318 (9th Cir. 1993)..............................................................................................22, 23

I

Gibson, Dunn &
Crutcher LLP

**Page(s)**

*Gregory v. State of Montana*,
118 F.4th 1069 (9th Cir. 2024)..............................................................3, 10, 18, 22, 24, 25

*Heit v. Livingston*,
2025 WL 588121 (D. Idaho Feb. 24, 2025)...........................................................14, 22, 25

*Inland Concrete Enters., Inc. v. Kraft Am. LP*,
2011 WL 13209166 (C.D. Cal. Mar. 9, 2011) ...............................................................22, 23

*Io Grp. Inc. v. GLBT Ltd.*,
2011 WL 4974337 (N.D. Cal. Oct. 19, 2011) ................................................................22, 23

*Jones v. Riot Hospitality Group LLC*,
95 F.4th 730 (9th Cir. 2024)...........................................................................................18, 22

*Leon v. IDX Systems Corp.*,
464 F.3d 951 (9th Cir. 2006)...........................................................................................21, 23

*Llera v. Las Vegas Metropolitan Police Department*,
2023 WL 11910850 (D. Nev. Mar. 31, 2023)..................................................................12, 14

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 2957133 (N.D. Cal. May 23, 2016) ........................................................................14

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ..............................................................................................................24

*In re Napster, Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...........................................................................22, 23

*Newton v. Nat'l Broad. Co.*,
930 F.2d 662 (9th Cir. 1990).................................................................................................24

*Saxton v. County of Sonoma*,
2024 WL 5174215 (N.D. Cal. Dec. 18, 2024) .......................................9, 10, 12, 14, 15, 17

*TVI, Inc. v. Harmony Enters., Inc.*,
2019 WL 5213247 (W.D. Wash. Oct. 16, 2019) ...................................................................25

**Statutes**

18 U.S.C. § 1030(a)(5)(A) ............................................................................................................24

18 U.S.C. § 1030(a)(7)...................................................................................................................24

28 U.S.C. § 636(b)(1)(A) ...............................................................................................................25

Gibson, Dunn &
Crutcher LLP

II

**Page(s)**

28 U.S.C. § 636(b)(1)(B) ..............................................................................................25

**Rules**

Fed. R. Civ. P. 37(e)......................................................................................9, 10, 15, 21, 24

Fed. R. Civ. P. 37(e)(1) ......................................................................................17, 21

Fed. R. Civ. P. 37(e)(2) ..............................................................................................18

Fed. R. Civ. P. 72(b) ..............................................................................................25

Gibson, Dunn &
Crutcher LLP

III

## I.    INTRODUCTION

Fact discovery is closed. After Defendants provided more than 225,000 documents and over 114 hours of deposition testimony—including 21 hours of Mr. Mullenweg across three days, with three attorneys, more than 80 exhibits, and over 1,300 questions—WP Engine has not adduced the evidence its claims require. So it has turned to a familiar playbook: cry "spoliation," and ask this Court to supply by presumption what WP Engine could not establish by proof. The motion has no basis in fact or law.

Begin with what is absent. WP Engine has no evidence of the "missing" messages on which its entire motion depends. It cannot identify one, not a message, not a conversation, not a counterparty. Having none, it fills the void with speculation: inference stacked on inference, and invective where the proof should be. The holes are in WP Engine's motion, not in Defendants' production.

Now consider what is present. This Court directed Defendants to explain under oath what occurred with respect to Mr. Mullenweg's Telegram, Signal, and WhatsApp communications. Dkt. 272. Defendants addressed every question the Court posed: his use of the applications, the preservation steps he took, the disappearing-message settings, the date ranges preserved and produced. WP Engine then spent three days examining Mr. Mullenweg on those subjects, among many others. The sworn record is unrebutted. Measured against it, each of the motion's assertions collapses.

*WP Engine tells the Court that responsive messages disappeared.* Mr. Mullenweg testified under oath that he never enabled ephemeral messaging for any communication concerning WP Engine or this litigation, that he is aware of no case-related message that is missing, and that he deleted none. Dkt. 358-3 ("Mullenweg Decl.") ¶¶ 3, 6–7, 9. His sworn declaration and deposition testimony both explained that he did not believe he ever received any Signal communication in response to his X.com invitation for people to communicate with him on that platform and further explained the reasons why he would not have received any such communication. *Id.* ¶ 11; Declaration of Michael Dore ("Dore Decl.") ¶ 14, Ex. C at 519:4-9. The only disappearing messages identified in this record are Mr. Mullenweg's personal communications with romantic partners, which are categorically irrelevant, and were never subject to any preservation duty. Mullenweg Decl. ¶ 6. WP Engine does not contest that testimony. It asks the Court to disbelieve it.

*WP Engine tells the Court that Defendants failed to preserve.* Automattic issued a litigation

Gibson, Dunn & Crutcher LLP

hold to Mr. Mullenweg and other custodians within a month of WP Engine's demand letter, distributed a company-wide preservation directive, and announced the hold internally. Dore Decl. ¶¶ 4–5. In February 2025, it sent written reminders directing custodians to confirm preservation of materials on ephemeral-messaging applications specifically. *Id.* ¶ 7. Level Legal then forensically imaged Mr. Mullenweg's iPhone, MacBook Pro, iPad, Pixel, and Daylight computer, using passwords and account access he supplied voluntarily, making available for collection more than a decade of his personal communications. Dkt. 358-4 ("Robins Decl.") ¶ 5; Mullenweg Decl. ¶ 3. More than six terabytes were collected. Supplemental Declaration of Jonathan Robins ("Supp. Robins Decl.") ¶ 9. More than 1.5 million documents were reviewed. *Id.*

*WP Engine tells the Court that data was lost.* The extractions reach back to 2012 for Telegram, 2015 for WhatsApp, and 2019 for Signal, each running through March 2026—the entire relevant period and years on either side of it. Robins Decl. ¶¶ 5–8. The April 2025 decryption difficulty on which WP Engine builds its theory was a temporary limitation of imaging software that did not yet support a newly released version of iOS, cured by a later Full File System extraction. *Id.* ¶ 5. That was a *collection* limitation, not a loss. WP Engine had the explanation in hand before it filed.

*WP Engine tells the Court that defense counsel made false statements, and that WP Engine has been prejudiced.* The October 2025 letter brief it brands false says what WP Engine suggests it concealed: that review was ongoing and that responsive, nonprivileged Signal and WhatsApp material would be produced once review was complete. Dkt. 177 at 3–4. And the April 2025 letter conveyed, in the terms WP Engine's own correspondence had memorialized, that Mr. Mullenweg had not activated auto-delete settings that "could have resulted in the deletion of any materials that are relevant to the case," Fuoco Declaration ("Fuoco Decl.") Ex. 6 at 1, which was true then and is confirmed by the sworn record now. And the prejudice WP Engine asserts is refuted in its own brief, which acknowledges Mr. Mullenweg "communicated extensively on preserved channels" during the relevant period and presses the strength of "[t]he existing record" for its theories. Mot. 16–17. A record cannot be strong enough to prove WP Engine's case and gutted enough to warrant terminating sanctions.

The distance between the motion and the record is not an ordinary disagreement about evidence. WP Engine describes a defendant hiding behind vanishing messages, a preservation effort that never

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

Gibson, Dunn & Crutcher LLP

occurred, and evidence destroyed beyond recovery. None of that is true, and WP Engine knew it was not when it filed. It had the vendor's explanation. It had the filing it now calls false. It had sworn testimony it could not shake. What it has placed before the Court is not the record of this litigation. It is a portrait created for this motion, and it does not survive contact with the evidence behind it.

The purpose of that portrait is evident from the relief it is meant to justify. WP Engine seeks presumptions of intent to interfere, actual malice, extortionate intent, intentional damage, and trademark pretext; a bar on Mr. Mullenweg's testimony on the central merits questions; and dismissal of seven counterclaims. Each of these is a Rule 37(e)(2) measure, unavailable absent proof of specific intent to deprive, and the 2015 amendment forecloses using inherent authority to reach the same result. *Gregory v. State of Montana*, 118 F.4th 1069, 1079–80 (9th Cir. 2024). WP Engine does not seriously attempt that showing. What it seeks is not a remedy for spoliation. It is a verdict without a trial.

Rule 37(e) does not authorize sanctions on the possibility that evidence once existed. WP Engine bears the burden of proving by a preponderance that relevant, irreplaceable ESI existed, that it was lost, and that it was lost because Defendants failed to take reasonable steps to preserve it. It cannot carry that burden on any element. The motion should be denied.

## II.    BACKGROUND

### A.    Defendants Implemented Preservation Measures and Conducted Large-Scale Collection and Production

On September 23, 2024, WP Engine sent Defendants a document-preservation demand, and it filed this action nine days later. Fuoco Decl. ¶ 2; Dkt. 1. On October 21, Automattic issued a written litigation hold to identified custodians, including Mr. Mullenweg. Dore Decl. ¶ 5; Fuoco Decl. Ex. 5 at 3. The hold required recipients to preserve potentially relevant documents and communications concerning WP Engine and the trademarks at issue. Dore Decl. ¶ 5. Automattic also distributed a company-wide preservation directive and announced the hold on its internal communications platform. *Id.* ¶ 4. In February 2025, Defendants sent a written preservation reminder to hold recipients, including Mr. Mullenweg, directing them to confirm they had preserved materials on ephemeral-messaging applications, including Signal, WhatsApp, and Telegram. *Id.* ¶ 7.

In February 2025, Defendants retained new litigation counsel as well as Level Legal, an

eDiscovery and managed-review provider, to conduct collection and review. Robins Decl. ¶ 3. Level Legal collected more than six terabytes of data from Defendants' P2, Slack, email, and other work platforms. *Id.* ¶ 5. Its collection extended beyond Automattic's systems to Mr. Mullenweg's personal devices and accounts: on April 17, 2025, Level Legal oversaw the forensic imaging of his personal iPhone, MacBook Pro, iPad, Google Pixel, and Daylight computer. *Id.* Mr. Mullenweg provided access to those devices, their associated accounts, his personal email, and his passwords—access to personal communications "going back more than a decade." Mullenweg Decl. ¶ 3. In June 2025, Level Legal received and processed a complete export of the data maintained by X for Mr. Mullenweg's account—including posts, replies, direct messages, and media—and Defendants reviewed and produced those materials, along with screenshots of his available Post Status Slack posts. Robins Decl. ¶¶ 9–10.

Defendants began rolling productions from Mr. Mullenweg's custodial files by September 2025. *See* Dkt. 177 at 2. On September 12, they produced 1,836 documents from Mr. Mullenweg's custodial files, including responsive, nonprivileged Telegram communications. Dkt. 177 at 2, 4–5. By early October, Defendants had collected more than six terabytes of data, reviewed more than 1.5 million documents, and produced more than 44,000 documents in response to WP Engine's wide-ranging discovery requests. *Id.* at 4. Among these were nearly 2,000 documents from Mr. Mullenweg's custodial files and approximately 1,000 additional documents on which he appeared as sender or recipient. *Id.* Defendants expressly stated that review remained ongoing and that responsive, nonprivileged Signal and WhatsApp materials would be produced following review. *Id.* at 3–4. By the close of fact discovery, Defendants had produced more than 225,000 documents. Dore Decl. ¶ 11.

> **B.    Deposition Testimony and the Court-Ordered Declarations Refute Any Inference That Case-Relevant Communications Were Lost**

On April 28, 2026, after reviewing the parties' joint letters regarding Telegram, Signal, and WhatsApp messaging, Dkts. 177, 266, the Court directed Defendants to provide a sworn declaration or declarations addressing Mr. Mullenweg's use of Telegram, Signal, and WhatsApp; his preservation efforts; any auto-delete or disappearing-message settings; the date ranges of preserved and deleted communications; and related subjects. Dkt. 272 at 1–3. The Court called for a declaration explaining "what happened with respect to" the alleged disappearing Signal messages, the alleged X.com post

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

deletions, the Slack channel, and the wordpress.org plug-in reviews. Dkt. 272 at 1, 3. Defendants provided WP Engine with declarations from Mr. Mullenweg and Jonathan Robins, Level Legal's Chief Technology Officer, and WP Engine then examined Mr. Mullenweg about those declarations across his three-day deposition on May 12 to 14, 2026. Over 21 hours, three WP Engine attorneys marked more than eighty exhibits and asked Mr. Mullenweg over 1,300 questions. Dore Decl. ¶ 13; Fuoco Decl. Exs. 11–12, 14. Together, the declarations and deposition testimony addressed the collection history, the recovered date ranges, Mr. Mullenweg's use of the applications, and his limited use of disappearing-message settings for personal messages with romantic partners.

*Initial extraction and later imaging.* Mr. Robins documented both the technical limitation affecting Level Legal's initial collection and what the later forensic extraction recovered. Level Legal imaged Mr. Mullenweg's iPhone on April 17, 2025. Robins Decl. ¶ 5. A forensic examiner performed the imaging at Mr. Mullenweg's home, and the process took approximately 14 hours. Supp. Robins Decl. ¶ 7. When Level Legal imaged Mr. Mullenweg's iPhone, it had recently been updated to iOS 18.4, a version released on March 31, 2025, that "was not yet fully supported by the Cellebrite imaging software." Robins Decl. ¶ 5; Supp. Robins Decl. ¶ 8. Although a new iOS version is available on its release date, Apple staggers automatic updates over the following weeks, so a device may not receive a new version until "a week or longer" after release. Supp. Robins Decl. ¶ 8. The examiner made multiple attempts to obtain a Full File System image of the iPhone; none succeeded, so the examiner created an Advanced Logical image. Robins Decl. ¶ 5; Supp. Robins Decl. ¶ 8. While that image captured Telegram messages, call logs, texts, photographs, videos, and other application content and settings, it did not capture hidden system-level data—including the Apple Keychain file required to collect and decrypt data from encrypted applications such as WhatsApp and Signal. Robins Decl. ¶ 5.

Counsel subsequently sought to collect potentially responsive WhatsApp and Signal communications in a Zoom teleconference with Mr. Mullenweg. Dore Decl. ¶ 9. On October 2, 2025, Level Legal and Mr. Mullenweg's counsel met with Mr. Mullenweg over Zoom and asked him to run sixteen search terms—including "WP Engine," "WPEngine," "WPE," "wordpress.org," "migration," "ACF," "SCF," and "trademark"—through the WhatsApp and Signal applications installed on his iPhone. Supp. Robins Decl. ¶¶ 2–4. Mr. Mullenweg shared his iPhone screen and entered each term

Gibson, Dunn &
Crutcher LLP

into the applications' native search functions while Mr. Robins and counsel observed, and Mr. Robins captured the hits by screenshot, without regard to whether they appeared responsive to any request for production. *Id.* ¶¶ 3–4. During the same session, the applications' disappearing-message settings screens were opened on the device and Mr. Robins captured them by screenshot; those screenshots show the setting was off. *Id.* ¶ 5 & Ex. A. Because the hits were captured "by screenshot rather than by forensic extraction," Supp. Robins Decl. ¶ 4, the process did not capture any metadata associated with the WhatsApp and Signal communications, and an in-person meeting with Mr. Mullenweg was scheduled to image his iPhone again. Supp. Robins Decl. ¶¶ 2–3, 7.

On March 16, 2026, Level Legal imaged Mr. Mullenweg's iPhone again and obtained a full-file-system image containing the system files needed to collect and decrypt the WhatsApp and Signal accounts. Robins Decl. ¶ 5. The WhatsApp data captured through that process includes messages dating as far back as November 2015; the Signal messages included messages dating to October 2019; and the Telegram data included messages dating to January 2012. *Id.* ¶¶ 6–8. Each range continued through approximately March 2026 when the image was taken. *Id.* ¶¶ 6–8. Level Legal then manually compared the screenshot communications collected on October 2, 2025 against the Signal and WhatsApp data in the March 16, 2026 image: every one was present, processed, and loaded for review. Supp. Robins Decl. ¶ 6. On April 9, 2026, Defendants made a production containing any relevant or responsive non-privileged messages identified through a reasonable search, which included one responsive Signal message and no responsive WhatsApp messages. Fuoco Decl. ¶ 16; Dkt. 266 at 1–4.

***Communications practices.*** Mr. Mullenweg explained in his declaration that he typically used P2, Slack, and email for work-related matters. Mullenweg Decl. ¶ 4. He used Telegram principally for logistical communications with his assistants, including scheduling, email management, travel, and household matters. *Id.* He stated that he was unaware of "any WhatsApp, Signal, or Telegram communications related in any way to this case that are 'missing.'" Mullenweg Decl. ¶ 3.

Mr. Mullenweg was consistent in his deposition. He explained that WhatsApp was generally used to communicate with friends while traveling, and that Automattic sought to conduct work communications through "an official channel, typically Slack or Automattic e-mail." Dore Decl. Ex. C at 501:15–502:22. He did not "typically use" Signal for work; an occasional message over the life of

the account might be construed as work-related, but that "would not be a typical usage." *Id.* at 504:9–506:8. And he again confirmed the "primary intentional use" of Telegram as rapid communications with his assistants, including scheduling, travel, and personal logistics. *Id.* at 506:1–19. Other witnesses corroborated Mr. Mullenweg's testimony. Automattic's former head of WordPress VIP, its CFO, and its Chief Systems Wrangler (akin to a CTO) each testified that they did not use Signal, WhatsApp, or Telegram for substantive work communications with Mr. Mullenweg, relying instead on Slack and other work channels. Dore Decl. Ex. D at 26:13–20, Ex. E at 80:16–24, Ex. F at 53:5–16.

*Potential auto-deleting functionality.* Mr. Mullenweg also addressed ephemeral-message functionality directly. He testified that since September 2024, any "ephemeral or disappearing messaging capabilities on Signal, WhatsApp, and/or Telegram" had only been enabled "for highly sensitive personal communications with romantic partners." Mullenweg Decl. ¶ 6; *accord* Dore Decl. Ex. C at 508:7–22. He "never enabled ephemeral messaging" on any of those applications "for any communication related to WP Engine or any matter related to this case," and had "not knowingly deleted" communications from those platforms apart from the personal communications just described. Mullenweg Decl. ¶¶ 6–7. He separately stated that he had "not deleted any communications from WhatsApp, Telegram, or Signal related to matters at issue in this case" and had not used disappearing Signal messages "in connection with any communication about matters potentially relevant to this litigation." *Id.* ¶¶ 9–10. At deposition, he further testified that he did not know of any disappearing Signal messages relevant to this case. Dore Decl. Ex. C at 520:17–21.

Mr. Mullenweg also addressed the September 21, 2024 public X post referencing "Signal with disappearing messages" while advising individuals sending information from inside companies to use personal devices. Fuoco Decl. Ex. 15 at A8C00014547. He attested that he did not provide his Signal handle and that his account settings prevented users from locating him through either a directory search or phone-number lookup. Mullenweg Decl. ¶ 11. He explained at deposition that unknown users needed to be approved contacts or in his contact book and that, as configured, the account "wouldn't have been able to receive them." Dore Decl. Ex. C at 519:18–520:3. He did not recall receiving any Signal messages in response to the post. Mullenweg Decl. ¶ 11; *accord* Dore Decl. Ex. C at 519:4–9.

*Public-post and Slack materials.* Beginning in November 2024, WP Engine alleged

Gibson, Dunn & Crutcher LLP

preservation deficiencies in materials separate from the messaging applications, including WordCamp Sydney and WordPress.org X posts, ACF plugin reviews, Mr. Mullenweg's Post Status Slack account, and several public social-media posts. Fuoco Decl. Exs. 1, 3–4. Defendants responded that the WordPress.org post remained archived; WordPress.org's revision feature preserved webpage changes, including review changes; and Mr. Mullenweg's Post Status posts remained visible after his account was deactivated. *Id.* Exs. 2, 5; Mullenweg Decl. ¶¶ 15–18. Mr. Mullenweg stated that he did not control the WordCamp Sydney account or administer the Post Status workspace. *Id.* ¶¶ 14–16. Counsel captured and produced available screenshots and other responsive materials. *Id.*

Mr. Mullenweg acknowledged deleting two personal X posts (which had already been captured) and one Slack message that he then reposted with additional content. *Id.* ¶¶ 12–13; Fuoco Decl. Ex. 16. Level Legal ultimately processed a complete export of Mr. Mullenweg's X account data, and Defendants produced X materials and screenshots from Post Status. Robins Decl. ¶¶ 9–10.

### C.    WP Engine Seeks Sweeping Merits-Determining Sanctions Based on an Unsupported Auto-Deletion Theory and Defendants' Descriptions of Ongoing Productions

On July 28, 2026, WP Engine filed the present motion. In addition to its auto-deletion theory, WP Engine relies on counsel statements made at different stages of the rolling production process:

- In an April 3, 2025 meet-and-confer correspondence, Defendants' counsel stated that Defendants had "taken all reasonable steps to preserve relevant documents in this case, including with respect to Signal, Telegram, and WhatsApp." Fuoco Decl. Ex. 7 at 3. The letter also said that "Mr. Mullenweg confirmed that he has not activated the auto-delete function on any communications platform with auto-delete capability that he uses (WhatsApp, Telegram, Signal)." *Id.* at 2.

- In their October 6, 2025 joint submission, after producing responsive Telegram communications and while broader review remained ongoing, Defendants stated that Mr. Mullenweg's responsive application communications "have been preserved and either have been (with respect to Telegram) or will be (with respect to Signal and WhatsApp) produced (to the extent they are non-privileged)." Dkt. 177 at 2–4.

As further discussed herein, Mr. Mullenweg was instructed to preserve potentially relevant

Gibson, Dunn &
Crutcher LLP

communications and testified under oath multiple times that he has "not deleted any communications from WhatsApp, Telegram, or Signal related to matters at issue in this case," and that he has "never enabled ephemeral messaging on Signal, WhatsApp, or Telegram for any communication related to WP Engine or any matter related to this case." *See, e.g.*, Mullenweg Decl. ¶¶ 6, 9. Defendants' general representation on April 3, 2025 that Mr. Mullenweg had not used the ephemeral messaging functionality at all on these platforms accurately represented counsel's understanding at the time; it was only later discovered after additional investigation that while he had not used ephemeral messages for work purposes he had occasionally used them for sensitive personal matters (romantic matters), which was accurately reflected in Mr. Mullenweg's declaration, is immaterial to any preservation obligation, and caused no prejudice.

WP Engine nevertheless asks the Court to deem established that case-relevant communications from these platforms were destroyed or are unavailable; to instruct the jury that it must presume Mr. Mullenweg acted with intent to interfere, with actual malice, and with intent to extort; to preclude him from testifying about his own communications, his September 2024 state of mind, and his basis for the trademark enforcement actions; to dismiss Counterclaims 1–7; and award fees and costs. Mot. 1–2.

### III.   LEGAL STANDARD

Rule 37(e) authorizes sanctions for spoliation only where ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). District courts in this Circuit "apply a preponderance of the evidence standard" to the required findings, and the movant bears the burden of proof. *Saxton v. County of Sonoma*, 2024 WL 5174215, at *2 (N.D. Cal. Dec. 18, 2024). Sanctions under Rule 37(e)(1) require demonstrating "prejudice . . . from loss of the information," which, if shown, permits the court to "order measures no greater than necessary to cure the prejudice." Severe sanctions under Rule 37(e)(2)—including adverse inference instructions— are available only upon a finding that the party that lost the information "acted with the intent to deprive another party of the information's use in the litigation." A finding of "negligence" or even "gross negligence" is insufficient to support such relief. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Rule 37(e) is also the exclusive source of authority for these measures. The 2015

Gibson, Dunn &
Crutcher LLP

9

amendment "forecloses reliance on inherent authority" to impose adverse inferences, dismissal, or comparably severe sanctions for lost ESI, and reaching them through inherent authority instead is legal error. *Gregory*, 118 F.4th at 1079–80.

## IV.   ARGUMENT

Rule 37(e) asks four questions, and WP Engine cannot answer the first. It has not shown that a single responsive message existed. It has not shown that anything was lost. It has not shown that any loss followed from a failure to take reasonable steps to preserve. It has not shown prejudice. And it does not seriously attempt to show the specific intent that the relief it seeks requires. Each failure is independently fatal. Together they leave nothing for the Court to remedy. One error runs through the motion and explains the rest: WP Engine treats the timing of collection as though it were proof of a failure to preserve. Collection is not preservation. The WhatsApp, Signal, and Telegram data WP Engine says vanished was captured, reviewed, and produced.

### A.   WP Engine Cannot Meet Rule 37(e)'s Threshold Requirements for Sanctions

#### i.   WP Engine Has Not Shown That Responsive "Disappearing" Messages Ever Existed, Let Alone Were Lost

WP Engine's motion offers a syllogism in place of the proof that Rule 37(e) requires: Mr. Mullenweg used applications capable of disappearing messages, therefore responsive messages disappeared. "As a threshold issue," the movant must show that the "sought-after evidence"—here, supposedly disappeared Telegram, Signal, and WhatsApp messages—"[1] actually existed and [2] was destroyed." *Cooper Foods International, LLC v. Yourd*, 2025 WL 2663977, at *2 (E.D.N.Y. Sept. 17, 2025); *Saxton*, 2024 WL 5174215, at *3. WP Engine cannot make that showing. Its motion thus fails.

The only disappearing messages anywhere in this record were never subject to preservation in the first place. Rule 37(e) reaches ESI "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). Mr. Mullenweg testified that he enabled the feature for a single type of communication: "highly sensitive personal communications with romantic partners." Mullenweg Decl. ¶ 6. Those messages do not bear on any claim, defense, or counterclaim. A litigation hold does not reach a party's sensitive personal communications with romantic partners, and WP Engine cites no authority suggesting otherwise. Any loss of these personal and private communications

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

Gibson, Dunn & Crutcher LLP

cannot support sanctions under a Rule that governs only the loss of what should have been preserved.

Mr. Mullenweg's Telegram, Signal, and WhatsApp accounts were captured, searched with terms negotiated with WP Engine, and produced if they were responsive and non-privileged. Dore Decl. ¶¶ 9–10; Robins Decl. ¶¶ 5–8. As Automattic's discovery vendor testified in response to the Court's inquiry, its imaging efforts ultimately captured Mr. Mullenweg's Telegram messages back to January 2012, WhatsApp messages back to November 2015, and Signal messages back to October 2019. Robins Decl. ¶¶ 5–8. In each case, messages were captured through March 2026 (*id.* ¶¶ 6–8), beyond the parties' agreed supplemental-collection date. Dkt. 205 at 3. Telegram messages were produced in September 2025 (Dkt. 177 at 4), the lone responsive Signal message in April 2026 (Fuoco Decl. ¶ 16), Twitter/X direct messages and Post Status Slack screenshots by rolling production (Robins Decl. ¶¶ 9–10), as well as thousands of documents from the P2, Slack, and email platforms Mr. Mullenweg uses for work.[1] *Id.* ¶ 5. All these productions were complete by April 9, 2026, more than a month before Mr. Mullenweg's May 12–14, 2026 deposition. Dore Decl. ¶¶ 10, 13; Dkt. 266-3.

WP Engine nonetheless asks the Court to infer that "critical" messages must have been destroyed based on (1) Mr. Mullenweg's limited use of disappearing messages for personal matters unrelated to the litigation, and (2) the timing of the extractions of his iPhone. Mot. 2. WP Engine comes nowhere close to carrying its preponderance burden to show any responsive message was lost.

***Rebutted speculation regarding the auto-deletion feature cannot carry WP Engine's burden.*** WP Engine claims that responsive communications were necessarily "lost" because Mr. Mullenweg used Signal, WhatsApp, and Telegram, which offer auto-delete functionality. Mot. 3. But its "speculative assertion[s]" cannot carry its burden to establish "that there were indeed any [lost] messages—much less, messages relevant to the claims in this action." *Cooper Foods*, 2025 WL 2663977, at *2 (finding no spoliation of auto-deleting WhatsApp messages).

Judge Illston's decision in *Saxton* is instructive. There, the spoliation movants inferred that a late hold and "automatic deletion policy" for emails necessarily meant relevant communications had been lost. 2024 WL 5174215, at *1–2. The court disagreed, crediting "unrebutted declarations sworn

---

[1] Based on a reasonable search, no relevant or responsive WhatsApp messages were identified. Dkt. 266 at 3.

Gibson, Dunn &
Crutcher LLP

under penalty of perjury from all of the individuals involved stating that *it was not their practice to use email to communicate about the [relevant issues].*" *Id.* at *3 (emphasis added). The movant could not merely "speculate" that employees involved in the investigations at issue "must have used email to communicate" about them. *Id.* There was "no concrete evidence that relevant emails ever existed, much less that critical evidence was destroyed." *Id.*

Courts have repeatedly said the same about auto-delete messaging. In *Cooper Foods*, where the defendant used WhatsApp with auto-delete for both personal and business communications, the court could not conclude "that evidence existed during the time that the Disappearing Messages feature was enabled simply based on the existence of similar evidence during other time periods." 2025 WL 2663977, at *3. And like WP Engine here, the defendants in *Llera v. Las Vegas Metropolitan Police Department*, 2023 WL 11910850, at *2 (D. Nev. Mar. 31, 2023), argued "in conclusory fashion" that activation of Signal's disappearing-message feature necessarily meant *relevant* communications were "forever gone." *Id.* They "did not offer any evidence" to support this claim, which the plaintiff's sworn account contradicted. *Id.* at *1, *3 (denying Rule 37 sanctions).

The same is true here. Mr. Mullenweg testified that he has "*never* enabled ephemeral messaging on Signal, WhatsApp, or Telegram for any communication related to WP Engine or *any matter related to this case.*" Mullenweg Decl. ¶ 6 (emphasis added). That squares with his testimony that he generally does not use WhatsApp, Signal, or Telegram "for work-related matters," other than using Telegram to communicate with his "administrative assistants on real-time logistical matters." *Id.* ¶ 4. The only identified use of disappearing messages was unrelated to this dispute: Mr. Mullenweg attested that he used it for "highly sensitive personal communications with romantic partners." *Id.* ¶ 6. He separately denied, under oath, "knowingly delet[ing] *any* communications from WhatsApp, Telegram, or Signal" outside the personal communications with romantic partners. *Id.* ¶¶ 7, 9–10 (emphasis added).

WP Engine relies significantly on Mr. Mullenweg's September 21 public X post, which advised people sending him information from "inside companies" to use personal rather than work devices and referenced "Signal with disappearing messages." Fuoco Decl. Ex. 15 at A8C00014547; Mot. 4, 15. But WP Engine's lengthy motion omits Mr. Mullenweg's deposition testimony that his Signal address was tied to his unpublished "personal phone number," Dore Decl. Ex. C at 519:13–15, and that his "Signal

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

Gibson, Dunn & Crutcher LLP

account settings were configured to prevent other users from discovering [his] account through a directory search or phone number lookup." Mullenweg Decl. ¶ 11. And even if someone had discovered his number and sent him a message in response to his post, he testified that the account "wouldn't have been able to receive [it]" because his settings required any such individuals to have been "approved as a contact or in [his] contact book." Dore Decl. Ex. C at 519:18–520:3. Consistent with that configuration, he does not believe he received a single message in response to his post, Dore Decl. Ex. C at 519:4–9, and further testified under oath: "if I did, I did not see it." Mullenweg Decl. ¶ 11.

WP Engine's separate theory that an unidentified third party may have activated disappearing messages likewise fails. Mot. 7; Dkt. 272 at 2 (order citing same theory). Mr. Mullenweg shared his understanding that messaging platforms may allow a sender to control the disappearing-message setting and thereby "delete a message in a way that deletes it from both of your devices without you knowing." Dore Decl. Ex. C at 520:10–15. But his sworn declaration attested that he "do[es] not recall seeing any communication from a third-party related to WP Engine or this litigation that was auto-deleted from [his] device as a result of settings enabled by a third party," and that regardless, he is not aware of any feature that would allow him "to prevent a third party from enabling or using an auto-delete or disappearing messages setting." Mullenweg Decl. ¶ 8. In April 2025, Defendants asked WP Engine to explain its contrary premise—that Mr. Mullenweg can "block the ability of third-party users on WhatsApp, Telegram and Signal to use auto-delete capability." Fuoco Decl. Ex. 7 at 3. WP Engine has never answered, and it identifies no sender who used the feature, no third-party-deleted communication, and no basis to infer that any case-relevant message vanished this way.[2]

WP Engine's only response is to dismiss Mr. Mullenweg's sworn testimony as "self-serving." Mot. 16, 21. But courts routinely rely on such testimony to determine whether allegedly spoliated evidence existed and was lost. *See, e.g.*, *Saxton*, 2024 WL 5174215, at *3 (crediting such "unrebutted"

---

[2] The Court's order also cited the letter brief's "potentially significant" parenthetical regarding the fact that Mr. Mullenweg's invitation for people to contact him was made before WP Engine filed this lawsuit. Dkt. 272 at 2. There is no temporal reference in the sworn record: Mr. Mullenweg's declaration states that he has "*never* enabled ephemeral messaging on Signal, WhatsApp, or Telegram for any communication related to WP Engine or any matter related to this case." Mullenweg Decl. ¶ 6 (emphasis added). And his declaration attests, without temporal qualification, that he "did not see any message sent to [him] via Signal in response to the X.com post." *Id.* ¶ 11.

13

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

Gibson, Dunn & Crutcher LLP

testimony in denying motion); *Llera*, 2023 WL 11910850, at *2 (similar); *Heit v. Livingston*, 2025 WL 588121, at *3–4 (D. Idaho Feb. 24, 2025) (crediting testimony that deletion of text histories was accidental and denying terminating sanctions). WP Engine identifies no evidence contradicting his account, which standing alone defeats the motion. His colleagues' testimony corroborated that account. *Supra* at 7–8. WP Engine identifies no witness who recalls any Telegram, Signal, or WhatsApp message. Its bald "speculation there may be some missing, unpreserved [material] is insufficient." *Epidemic Sound v. Meta Platforms, Inc.*, 2026 WL 2021347, at *56 (N.D. Cal. July 13, 2026) (denying spoliation where declarant testified that "all" responsive material was produced). In the lone authority WP Engine cites for evidence of loss, "effectively all" relevant communications from a key time period were "lost irretrievably" under a known 25-month vendor retention policy. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *2 (N.D. Cal. May 23, 2016). Nothing similar occurred here.

    ***The imaging timeline does not show that any responsive message was lost.*** In proclaiming that responsive Telegram, Signal, and WhatsApp messages necessarily existed and were "lost forever," WP Engine relies on the "gap[s]" between the July 2024 date it assigns to the duty to preserve and the April 2025 (Telegram) and March 2026 (Signal and WhatsApp) imaging. Mot. 3, 15. But the evidence forecloses any preponderance-of-the-evidence showing of any such existence or loss of relevant ESI.

    WP Engine's arguments fail because collection is not preservation. WP Engine conflates the timing of the electronic *extraction*—April 2025 and March 2026—with whether the data was successfully *preserved* at all. The clearest example is WP Engine's claim that Defendants' vendor "concedes it failed to preserve WhatsApp and Signal messages" through its April 2025 extraction. Mot. 14. That is false. The Robins declaration describes a temporary *capture* limitation, later remedied—not deletion, disappearance, or failure to preserve. The April 2025 logical image could not extract the Apple Keychain file needed to decrypt the WhatsApp and Signal applications because the iPhone's just-released iOS version "was not yet fully supported by the Cellebrite imaging software." Robins Decl. ¶ 5; *see* Supp. Robins Decl. ¶ 8 (examiner made multiple unsuccessful attempts to obtain a Full File System image before creating an Advanced Logical image). The data remained where it had been, and the March 16, 2026 Full File System image captured the required system files (including the communications that Level Legal captured by screenshot in October 2025), allowing Level Legal to

14

Gibson, Dunn &
Crutcher LLP

collect and decrypt both accounts, dating to 2015 and 2019. *Id.* ¶¶ 5–8; *supra* at 2.

WP Engine cites no authority permitting it to carry its burden by identifying supposed "gap[s]" between hold and extraction where, as here, the ultimately extracted data spans *the entire relevant period*. Robins Decl. ¶¶ 5–8. In any event, no evidence suggests earlier imaging would have yielded a single responsive message the two imaging events did not capture. Concluding otherwise requires ignoring Mr. Mullenweg's unrebutted testimony that he never enabled disappearing messages for case-relevant matters or intentionally deleted any such messages. Mullenweg Decl. ¶¶ 6–7, 9.

Because WP Engine cannot carry its "burden of showing that files have been irretrievably lost," its motion fails at the threshold. *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2024 WL 5058527, at *5–6 (N.D. Cal. Dec. 9, 2024) (denying sanctions on this ground).

### ii. WP Engine Has Not Shown That Any Alleged Loss Resulted from Any Failure to Take Reasonable Steps to Preserve Relevant Information

Rule 37(e) requires causation: ESI must be "lost *because* a party failed to take reasonable steps to preserve it." Fed. R. Civ. P. 37(e) (emphasis added). And the rule "recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee note. Identifying a step that arguably "should have" occurred sooner is not enough (*Saxton*, 2024 WL 5174215, at *3); WP Engine must show any alleged delay *caused* a loss. It cannot.

Defendants issued a litigation hold and preservation instructions in October 2024, including to Mr. Mullenweg; retained an experienced forensic vendor; sent hold recipients a targeted reminder regarding preservation; collected more than six terabytes from work systems; imaged five personal devices in April 2025; made rolling productions in the months that followed, including from Telegram; supplemented their collections through the parties' agreed August 15, 2025 date; met with Mr. Mullenweg over Zoom in October 2025 to run searches of his WhatsApp and Signal applications and capture every hit by screenshot, and later obtained and processed the iPhone's Full File System image, resulting in further productions of responsive Signal material. Dore Decl. ¶¶ 4–10; Robins Decl. ¶¶ 2–10; Supp. Robins Decl. ¶¶ 2–8; Dkt. 205 at 3. That is reasonable preservation under Rule 37(e).

In claiming Defendants' preservation efforts were insufficient (Mot. 14–15), WP Engine repeats the error identified above. Collection is not preservation, and a temporary inability to *decrypt*

15

Gibson, Dunn & Crutcher LLP

is not a loss. Nor is reasonable preservation the same thing as a duty of immediate forensic collection. *Supra* at 16–17. Neither Rule 37(e) nor any authority WP Engine cites requires potentially responsive ESI to be forensically imaged immediately upon issuance of a litigation hold. *Cf. BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 327 (N.D. Tex. 2024) (not searching "certain imaged cell phone data does not establish" Rule 37(e)'s loss prerequisite). WP Engine's emphasis on a July 19, 2024 trigger date (Mot. 4, 14) changes the arithmetic, not the analysis: a longer interval between duty and imaging still requires proof that the interval caused a loss—and WP Engine identifies no responsive communication lost on any timeline. Even assuming some step should have occurred sooner (Mot. 14), WP Engine cannot show that earlier imaging would have captured any purportedly *ephemeral* communication the two imaging events did not. *Supra* at 16–17.

WP Engine's focus on Mr. Mullenweg's now-misplaced Pixel Fold and MacBook is a red herring. Mot. 15. Mr. Mullenweg testified that the Telegram, Signal, and WhatsApp messaging platforms all "go to multiple devices," such that "the exact same messages would be on the iPhone, the Pixel, the MacBook." Dore Decl. Ex. C at 531:20–532:4. WP Engine says the misplaced devices cannot remedy "the failed [April 2025] iPhone imaging." Mot. 11. But nothing remains to remedy: the data the April 2025 logical image could not decrypt (the Signal and WhatsApp accounts) was captured by the March 2026 imaging, reviewed, and produced when responsive. Robins Decl. ¶¶ 5–8. WP Engine identifies no message, account, or data type unique to either device. Nor could the misplaced devices have supplied anything relevant that the iPhone image did not: by Mr. Mullenweg's undisputed account, an ephemeral message that had already disappeared "wouldn't be transferred" to a synced or later device either. Dore Decl. Ex. C at 530:3–7. Any misplacement of those devices therefore caused no incremental loss, and certainly none of case-relevant ESI.

Rule 37(e)'s causal element thus independently defeats WP Engine's motion.

### B.    WP Engine Cannot Satisfy Rule 37(e)(1)'s Requirements to Show Prejudice from Any Lost ESI

WP Engine's own brief defeats its showing of prejudice. It tells the Court that Mr. Mullenweg "communicated extensively on preserved channels" during the very period at the heart of its claims, and it presses the strength of "[t]he existing record" to prove them. Mot. 16–17. Both cannot be true: a

16

Gibson, Dunn & Crutcher LLP

record cannot be robust enough to prove WP Engine's case yet so degraded that only dismissing Defendants' counterclaims will cure it. Even assuming actual, irreplaceable loss, Rule 37(e)(1) authorizes relief only upon a finding of prejudice, and permits measures "no greater than necessary to cure" it. Fed. R. Civ. P. 37(e)(1). Speculation that unknown messages "might have been helpful" is insufficient: "The movant must identify some concrete way in which the loss of information impaired its ability to prove its claims, respond to its adversary's defenses, or obtain relief." *Am. Council of Learned Societies v. Nat'l Endowment for the Humans.*, 2026 WL 1256545, at *63 (S.D.N.Y. May 7, 2026) ("*ACLS*"); *accord* Mot. 12 (invoking same "plausible, concrete" requirement).

WP Engine identifies no such impairment. It asks the Court to assume the messaging platforms provided a unique, irreplaceable window into Mr. Mullenweg's "conduct and state of mind during the period at the heart of nearly every claim and counterclaim"—indeed, the evidence "most likely" to prove intentional customer interference, knowing or reckless falsity, extortion, intentional computer damage, and trademark pretext. Mot. 15–17. But it offers no basis for that assumption, and the record refutes it: Mr. Mullenweg testified he did not regularly use these applications for substantive work concerning the matters at issue, his colleagues testified likewise, *supra* at 7–8; and the later extraction enabled review of messages spanning the relevant period. Mullenweg Decl. ¶ 4; Robins Decl. ¶¶ 5–8.

WP Engine stresses the September 2024 period, but the contemporaneous record sits where Mr. Mullenweg actually communicated: the P2, Slack, and email systems from which Defendants collected more than six terabytes and produced thousands of documents, and the complete X archive. Robins Decl. ¶¶ 5, 9. The August 15, 2024 Slack message WP Engine cites—"I know we're now going [on] a litigation track with WPE"—and the discussion surrounding it were preserved and produced. Fuoco Decl. Ex. 19 at A8C00706127. WP Engine's motion and pleadings draw on Slack and other internal communications, public posts, texts, licensing proposals, customer evidence, plugin records, and trademark documents. *See*, *e.g.*, Fuoco Decl. Exs. 13, 16–22; TAC ¶¶ 91–98, 102–181, 400–423. This "fulsome discovery" forecloses a finding of prejudice. *Saxton*, 2024 WL 5174215, at *3.

WP Engine offers no reason to assume that any Signal, Telegram, or WhatsApp messages would show "what Mr. Mullenweg told others about why he made the demand," "how it was calibrated to WPE's wallet," or any other evidence WP Engine supposedly "would have used to impeach his

17

Gibson, Dunn & Crutcher LLP

anticipated trial testimony." Mot. 17. It cannot satisfy Rule 37(e)(1) through such rank speculation, as courts repeatedly conclude. *See Cooper Foods*, 2025 WL 2663977, at *5 (rejecting prejudice based on "speculation that certain WhatsApp messages once existed that potentially supported [plaintiff's] case"); *Barak v. Rooster's Guide & Outfitting Adventures*, 2023 WL 3178026, at *7 (D. Colo. May 1, 2023) (same as to deleted Signal messages).

### C.    WP Engine Cannot Establish the Specific Intent to Deprive Required by Rule 37(e)(2)

Rule 37(e)(2) permits severe sanctions only upon a finding that the party responsible for the information "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). That "demanding specific-intent standard," *Gregory*, 118 F.4th at 1080, "requires more than poor judgment, negligence, or even a serious preservation failure." *ACLS*, 2026 WL 1256545, at *64. It requires proof that the relevant actors caused a loss for the purpose of depriving the movant of its use in litigation. *Id.* Because WP Engine has not shown that any responsive ESI was lost, the Court need not reach intent. But even if it does, WP Engine cannot make its showing.

*First*, take the statement WP Engine calls a misrepresentation. Defendants' October 6, 2025 submission told the Court that Mr. Mullenweg's responsive application communications "have been preserved and either have been (with respect to Telegram) or will be (with respect to Signal and WhatsApp) produced (to the extent they are non-privileged)." Dkt. 177 at 3. The sentence discloses on its face that Signal and WhatsApp material had not yet been produced, and the letter explained Defendants were reviewing more than 1.5 million documents that they were "producing on a rolling basis." *Id.* at 3–4. WP Engine's theory asks the Court to find concealment in a document that announced the very fact it says was hidden. The theory also collides with what happened four days earlier: on October 2, Mr. Mullenweg joined counsel and Level Legal on a Zoom session, shared his iPhone screen, and ran sixteen search terms through the Signal and WhatsApp applications, with hits—and the settings screens showing disappearing messages off—collected by screenshot. *Supra* at 6; Supp. Robins Decl. ¶¶ 2–5. The data was where Defendants said it was: the March 2026 image confirmed as much, capturing messages spanning 2012 through 2026. Robins Decl. ¶¶ 5–8. WP Engine's contrary claim that "no preservation" had occurred repeats the error running through its motion, equating a temporary

Gibson, Dunn & Crutcher LLP

inability to decrypt with loss of the data. And even if the Court found the statement imprecise, imprecision is not intent. *BHI Energy*, 730 F. Supp. 3d at 327 (counsel's representations "that document production was complete" did not support specific-intent finding).

*Second*, the April 3, 2025 letter fares no better. Defendants wrote that they had "taken all reasonable steps to preserve relevant documents in this case, including with respect to Signal, Telegram, and WhatsApp." Fuoco Decl. Ex. 7 at 3. That was true when written and it is true now. By then Defendants had issued a litigation hold, circulated a company-wide preservation directive, and sent a February 2025 reminder directing custodians to confirm preservation on disappearing-message applications. Dore Decl. ¶¶ 4–5, 7. Level Legal imaged five of Mr. Mullenweg's personal devices two weeks later. Robins Decl. ¶ 5. WP Engine's answer—that forensic imaging had not begun by April 3 (Mot. 18)—is a non sequitur: the letter addressed preservation, and preservation is not collection. At most, WP Engine disputes the timing of collection, which does not show intent to deprive it of evidence.

The second April 3 sentence, that "Mr. Mullenweg confirmed that he has not activated the auto-delete function on any communications platform with auto-delete capability that he uses (WhatsApp, Telegram, Signal)," was accurate in the context in which it was written: a discussion about preservation of relevant evidence. Fuoco Decl. Ex. 7 at 2. The call it summarized was convened, as the letter said, "to discuss ephemeral messaging platforms," and WP Engine's own correspondence framed the question as whether auto-delete settings "could have resulted in the deletion of any materials *that are relevant to the case*." *Id.* Ex. 6 at 1 (emphasis added); *id.* Ex. 7 at 1–3. Read as written, the sentence conveyed that no auto-delete function was operating on any communication subject to preservation. Mr. Mullenweg's declaration confirmed that under oath. Mullenweg Decl. ¶ 6. It added detail about irrelevant personal threads and disclosed no auto-deletion of anything relevant; WP Engine identifies no reason to conclude otherwise. In any event, even if the April 3 letter contained an imprecise description of settings on irrelevant personal messages, it does not "support an inference that Defendants acted with the intent to deprive." *BHI Energy*, 730 F. Supp. 3d at 327.

WP Engine's intent allegations mirror those rejected in *BHI Energy*, 730 F. Supp. 3d at 327. There, allegations that the defendant knowingly deleted texts, "failed to preserve" them, and misrepresented "that their production was complete" did not, even if true, "support an inference that

19

Defendants acted with the intent to deprive" the movant of ESI—at most implicating Rule 37(e)'s predicate "reasonable steps" inquiry, not the litigation-directed intent Rule 37(e)(2) requires. *Id.* The same is true here. WP Engine's authorities are easily distinguished. In *Burris v. JPMorgan Chase & Co.* (Mot. 18), the plaintiff used wiping software to cause irreversible deletion of ESI. 566 F. Supp. 3d 995, 1012–18 (D. Ariz. 2021). And in *Colonies Partners, L.P. v. County of San Bernardino*, a former district attorney on notice of the litigation "deleted his campaign email account from which he corresponded about work." 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020). WP Engine identifies no comparable evidence or concerted effort to delete responsive ESI here.

*Third*, WP Engine's supposed "pattern" of conduct strings together unrelated events: two X posts that were captured but removed from public view; a Slack message that was reposted; and deactivation of an account whose posts remained visible and were produced. *See* Mot. 18–19. None of this conduct, "alone or in combination," establishes specific intent to selectively delete unidentified responsive Telegram, Signal, or WhatsApp messages. *BHI Energy*, 730 F. Supp. 3d at 327. WP Engine's assertion otherwise "relies on a string of unsupported inferences and falls well short of establishing [its] entitlement to the broad [relief] [it] request[s]." *Barak*, 2023 WL 3178026, at *7 (no intent despite use of Signal, unrecoverable messages, and speculation they concerned disputed events). And the RFA responses WP Engine calls inconsistent (Mot. 19) are unchanged from those served December 1, 2025, five months before Mr. Mullenweg's declaration and deposition, where WP Engine never asked him a single question about them. Dore Decl. Ex. G; Fuoco Decl. Ex. 16.

*Fourth*, WP Engine cannot rest its intent showing on Mr. Mullenweg's limited use of applications "with disappearing messages." Mot. 19. "[T]he required intent is not simply the intent to use a platform with disappearing messages; it is the intent to deprive another party of information for use in litigation." *ACLS*, 2026 WL 1256545, at *65 (denying spoliation motion where the asserted inference rested "largely on the nature of Signal itself and the fact that messages were auto-deleted"). The court in *ACLS* found no intent even though officials conducted government business on Signal during foreseeable litigation, messages auto-deleted, and one official testified that he wanted communications to be "protected." *Id.* at *64. The record otherwise showed substantive work occurred over email or government phones, with Signal used for "logistics" or "limited updates." *Id.* At most,

those facts supported "criticism of the Government's preservation practices," not a finding that anyone caused the loss to "depriv[e] Plaintiffs of its use in [the] litigation." *Id.* at *64–65.

Mr. Mullenweg swore under penalty of perjury that his disappearing-message use was confined to "highly sensitive personal communications with romantic partners," never touched WP Engine or this case, and that he recalls no relevant communication deleted by his settings or anyone else's. Mullenweg Decl. ¶¶ 6–10. WP Engine identifies nothing that contradicts him. Suspicion about which applications a defendant keeps on his telephone is not evidence of an intent to destroy anything.

### D.    WP Engine's Requested Remedies Are Not Tailored to Any Loss

Every remedy WP Engine seeks is a Rule 37(e)(2) measure, whatever it is called. It asks the Court to deem destruction conclusively established, to instruct the jury to presume the disputed elements of its claims, to bar Mr. Mullenweg from testifying about his own conduct and state of mind, and to dismiss seven counterclaims outright. Rule 37(e) permits remedies tailored to an actual loss, recognizing that the "remedy should fit the wrong" and that "severe measures" are inappropriate "when the information lost was relatively unimportant." Fed. R. Civ. P. 37(e) advisory committee note. Rule 37(e)(2)'s presumption attaches to "the lost information"—yet, having shown nothing about what (if anything) was lost, WP Engine assumes the unknown messages supply the disputed intent element of every claim and counterclaim at issue. It seeks "overly broad" sanctions that "would practically ensure they prevailed on disputed issues that are central to this case." *Barak*, 2023 WL 3178026, at *7.

That is not a cure for prejudice. It is judgment on the merits, entered by presumption, on the eve of summary judgment, and without a trial. Even had WP Engine shown prejudice from an identified loss, which it has not, Rule 37(e)(1) would authorize only "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Every measure WP Engine requests sits far above that ceiling. Each requires the intent-to-deprive finding this record cannot support.

WP Engine's authorities do not close that gap. Nearly all of its authorities predate the 2015 amendment, and *all* rested in whole or in part on inherent authority rather than the Rule that now governs. Mot. 18–21. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2017 WL 2298473, at *3 (S.D. Cal. May 26, 2017); *Inland Concrete*

Gibson, Dunn & Crutcher LLP

*Enters., Inc. v. Kraft Am. LP*, 2011 WL 13209166, at *6 (C.D. Cal. Mar. 9, 2011); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Io Grp. Inc. v. GLBT Ltd.*, 2011 WL 4974337, at *2–3 (N.D. Cal. Oct. 19, 2011).

Rule 37(e) is the exclusive source of authority for terminating sanctions, adverse inferences, and similarly severe sanctions for lost ESI, and affording them through inherent authority would be reversible error. *Gregory*, 118 F.4th at 1079–80. Those sanctions are unavailable without an intent to deprive, which WP Engine cannot show. Despite expressly stating it seeks terminating sanctions "for the spoliation," Mot. 21, it attempts to evade Rule 37(e)(2)'s strictures by routing dismissal through the Court's inherent authority, on the theory that the alleged misrepresentations are litigation misconduct "beyond" the loss of ESI itself. Mot. 13. The theory fails three times over.

*First*, there was no actionable misrepresentation, and thus no misconduct. *See supra*.

*Second*, the litigation misconduct theory just repackages the ESI-spoliation claim: the only harm WP Engine attributes to the challenged statements is the claimed loss of Mr. Mullenweg's messages and its claimed inability to test them—precisely where Rule 37(e) governs. A movant cannot obtain the measures Rule 37(e)(2) reserves for *intentional* spoliation by relabeling the same alleged loss as "misrepresentation"; the 2015 amendment "forecloses reliance on inherent authority" to reach them. *Gregory*, 118 F.4th at 1079; *Jones v. Riot Hospitality Group LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (*Anheuser-Busch* test inapplicable to Rule 37(e)(2) cases); *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1016 (D. Ariz. 2021) (analyzing alleged misrepresentations related to ESI under intent prong of Rule 37, not as basis for inherent authority sanctions).

*Third*, even on its own terms, the theory requires showing "willfulness, fault, or bad faith," which WP Engine has not shown, 69 F.3d at 348, and satisfying the *Anheuser-Busch* factors, which WP Engine cannot do: the public policy favoring disposition on the merits strongly weighs against dismissal; no alleged misrepresentation delayed the litigation or burdened the Court; and WP Engine has not shown an inability to pursue its claims or the inadequacy of less drastic sanctions (which it does not even seek for the alleged misrepresentations). *Heit*, 2025 WL 588121, at *5.

WP Engine's severe-sanctions authorities, all of which are inherent-authority decisions, are also inapposite. Its ESI cases involved wholesale destruction of centrally relevant data. In *Leon*, the accused

spoliator admittedly deleted 2,200 files during the pendency of the litigation, going to "extraordinary measures" to destroy relevant evidence. 464 F.3d at 955, 957. Both *Io Group* and *In re Napster* involved failures to suspend routine email-deletion policies—in the former, for over a year after litigation commenced. 2011 WL 4974337, at *5; 462 F. Supp. 2d at 1070. And in *Inland Concrete*, the defendant destroyed a hard drive containing "highly relevant" evidence concerning a key issue in the litigation. 2011 WL 13209166, at *8; *see also CrossFit*, 2017 WL 2298473, at *2 (sanctions for false representations under penalty of perjury and failing to produce hundreds of relevant documents). WP Engine's remaining cases involve no ESI spoliation at all, only severe misconduct far removed from anything here. *Anheuser-Busch*, 69 F.3d at 348, 352 (lying under penalty of perjury and concealing evidence for three years); *Glover*, 6 F.3d at 1329 (improper handling of physical evidence).

**Finding of destruction.** WP Engine asks the Court to "deem conclusively established" that case-relevant communications existed and were destroyed. Mot. 20. But it has not carried its burden to show that any messages were lost, much less that they contained relevant evidence. *Supra* at 12–17.

**Adverse inferences.** Adverse inference sanctions are "among the most severe of measures" and require a Rule 37(e)(2) finding of "intent to deprive" the movant of the information's use in the case. *Cooper Foods*, 2025 WL 2663977, at *3 (cleaned up). WP Engine's proposed instructions "would do much more than restore [any] evidentiary balance"; they seek to "command a ruling in Plaintiff's favor" by establishing key elements through inferences, "amount[ing] to a claim-dispositive sanction." *Garcia v. Vitus Energy, LLC*, 600 F. Supp. 3d 975, 986 (D. Alaska 2022). WP Engine cannot show intent and cites no authority permitting it to establish disputed elements through unreasonable inferences.

*First*, WP Engine seeks an instruction requiring the jury to presume the allegedly unavailable messages showed Mr. Mullenweg "acted with the intent to interfere with WP Engine's customer and prospective-customer relationships." Mot. 20. This would effectively relieve WP Engine of its burden to prove a core, disputed intent element of its tortious interference claims and the independently wrongful conduct element of its UCL claim. *See* TAC ¶ 394; *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007). That the claims survived pleading does not relieve WP Engine of its burden to prove them; it cannot use a spoliation presumption to supply disputed merits evidence, particularly with summary judgment around the corner.

Gibson, Dunn &
Crutcher LLP

*Second*, WP Engine seeks to relieve itself of the constitutionally required showing of actual malice for its defamation and trade-libel claims, asking for a mandatory presumption that Mr. Mullenweg "knew his public statements about WP Engine were false or made them with reckless disregard for their truth." Mot. 20. But actual malice cannot be presumed consistent with constitutional safeguards. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *cf. Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 671 (9th Cir. 1990) ("actual malice cannot be predicated on the factfinder's negative assessment of the speaker's credibility at trial").

*Third*, WP Engine seeks to resolve its CFAA claims by requiring the jury to presume that Mr. Mullenweg "acted with the intent to extort [WP Engine] and to cause intentional damage." Mot. 20. That inference likewise speaks directly to CFAA elements: WP Engine's claims require proof that Defendants acted with an "intent to extort," 18 U.S.C. § 1030(a)(7) (Count 3), and that Defendants "intentionally cause[d] damage," *id.* § 1030(a)(5)(A) (Count 17).

*Fourth*, WP Engine requests that the jury be required to presume "that Mr. Mullenweg knew WP[Engine]'s use of the trademarks at issue was permissible and that Defendants' September 2024 enforcement demand was a pretext for financial coercion." Mot. 20. Such an inference would go to WP Engine's (flawed) theory of trademark misuse and unclean hands. *E.g.*, *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1257 (9th Cir. 1982). WP Engine's attempt to recast it as an "alternative to dismissal of Defendants' counterclaims," Mot. 20, is a "distinction of form rather than substance" and nothing more than another attempt to seek terminating sanctions. *Garcia*, 600 F. Supp. 3d at 986.

**Testimony preclusion.** WP Engine next asks the Court to prevent Mr. Mullenweg from testifying about the substance of his communications, his state of mind, and his subjective basis for trademark enforcement, "except as established by produced documents." Mot. 21. Because his state of mind is central to intent and actual malice, that order would "preclud[e] a party from offering any evidence in support of[] the central or only claim or defense in the case." Fed. R. Civ. P. 37(e) advisory committee note. That is a Rule 37(e)(2) measure, unavailable without the intent to deprive that WP Engine has not shown. *See Gregory*, 118 F.4th at 1078–80.

**Terminating sanctions.** WP Engine finally asks the Court to dismiss the Counterclaims in their entirety as the "primary remedy for the spoliation." Mot. 21. That relief is available only under Rule

24

Gibson, Dunn & Crutcher LLP

37(e)(2), and only on the "demanding specific-intent standard" WP Engine has not satisfied. *Gregory*, 118 F.4th at 1078–80. Dismissal "run[s] counter to the strong public policy of deciding cases on their merits and affording litigants their fair day in court," *Heit*, 2025 WL 588121, at *6 (citation omitted). Nothing in this record comes close to warranting terminating sanctions.

Should the Court be inclined to grant any of the relief WP Engine seeks, the dispositive character of that relief places it outside a magistrate judge's authority to "hear and determine" under 28 U.S.C. § 636(b)(1)(A). It may be entered only by the District Judge or on proposed findings and recommendations subject to *de novo* review under 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). Any such relief therefore must proceed on that footing.

### E. Attorneys' Fees Are Not Warranted Because There Was No Spoliation

The fee request fails with the rest of the motion: Rule 37(e) authorizes no relief absent loss and resulting prejudice, and WP Engine has shown neither. *See, e.g.*, *TVI, Inc. v. Harmony Enters., Inc.*, 2019 WL 5213247, at *2 (W.D. Wash. Oct. 16, 2019) (excluding from fees calculation time spent on unsuccessful spoliation sanction motion on an otherwise successful motion to compel). WP Engine's fee authority, *Aramark Management, LLC v. Borgquist*, holds only that bad faith is not a prerequisite to monetary sanctions under Rule 37(e)(1); it does not dispense with threshold requirements that lost ESI should have been preserved and that its loss resulted in prejudice, neither of which WP Engine has shown. 2021 WL 864067, at *22 (C.D. Cal. Jan. 27, 2021). And any award could reach only expenses caused by sanctionable conduct, not "many months" of conferral and disputes spanning many issues. Mot. 22. The request also sits uneasily with what WP Engine knew before filing: the vendor's sworn explanation of the April 2025 limitation, the filing it now calls false, and sworn testimony it could not shake. Defendants should not bear the cost of a motion filed against that record.

### V. CONCLUSION

WP Engine cannot show that anything was lost, that any loss followed from a failure to preserve, or that it has been prejudiced. It does not attempt to prove the intent finding that its requested relief requires, and it cannot reach that relief by another route. What is left is a motion asking this Court to decide the case without a trial, on evidence that does not exist. The motion should be denied.

Gibson, Dunn & Crutcher LLP

25

DATED: August 11, 2026                    Respectfully submitted,


By: /s/ *Michael Dore*
                                                    Michael H. Dore

*Attorney for Defendants Automattic Inc.,
Matthew Charles Mullenweg, and
WooCommerce Inc. and Counterclaimant
WordPress Foundation*

DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS
CASE NO. 4:24-CV-06917-AMO (ASK)

Gibson, Dunn &
Crutcher LLP