# EXHIBIT C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WPENGINE, INC., a Delaware          ) Case No.
corporation,                        ) 3:24-cv-06917-AMO
                                    )
          Plaintiff,                )
                                    )
          vs.                       )
                                    )
AUTOMATTIC INC., a Delaware         )
corporation; and MATTHEW            )
CHARLES MULLENWEG, an               )
individual; and WOOCOMMERCE         )
INC., a Delaware corporation,       )
                                    )
          Defendants.               )
_____ )
AUTOMATTIC INC., a Delaware         )
corporation; MATTHEW CHARLES        )
MULLENWEG, an individual;           )
WORDPRESS FOUNDATION, a             )
California corporation; and         )
WOOCOMMERCE INC., a Delaware        )
corporation,                        )
                                    )
          Counterclaimants,         )
                                    )
          vs.                       )
                                    )
WPENGINE, INC., a Delaware          )
corporation,                        )
                                    )
          Counterdefendant.         )
_____ )

          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

               VIDEO-RECORDED DEPOSITION OF

             MATTHEW C. MULLENWEG, VOLUME II

                  Wednesday, May 13, 2026

Reported By:  Hanna Kim, CLR, CSR No. 13083
Job No. 8054590

Page 321

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

exhibit, Exhibit 51, do you see every other Automattic employee in this table lists "n/a" for "Signal" and "Telegram" except your entry?

Do you see that?

A.   Okay.

Q.   And you've been using Telegram since at least March 30th, 2021; is that correct?

A.   Yes.

Q.   And you've been using Signal since at least 2019; is that correct?

A.   I use Signal less, but -- yeah, so I don't recall the exact dates.  But this does -- it looks like it's saying this is the date ranges collected to date from the source and custodian.

Q.   And we haven't talked about WhatsApp yet.

Do you also use WhatsApp?

A.   I have a WhatsApp account, and it's also typically used for like when I'm in Europe or something like that.  Friends there.

Q.   It says here that you've been using WhatsApp since at least 2015; is that correct?

A.   I believe when we did the collection, yes, it went back a long time, to 2015.  But I don't want to guess that far back how long I've had an account or not.

Page 501

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q.    Do you ever use WhatsApp to reach out to Automattic customers or prospective customers?

A.    That's a broad term.  I would say everyone in the world is a prospect- -- prospective customer --

Q.    How do you use --

A.    -- without expanding what should be included to everyone in the world.

Q.    Okay.  But you use --

A.    That's fair.

Q.    -- but you use WhatsApp in connection with your work at Automattic; right?

MR. DORE:  Object to the form.

THE WITNESS:  No, not typically.

BY MR. MACK:

Q.    Well, "not" -- "not typically" is not yes or no.

Have you ever used WhatsApp in connection with your work at Automattic?

A.    In my work at Automattic, we try to put messaging through an official channel, typically Slack or Automattic e-mail.

Q.    Okay.  But you're saying ---- you say "try" and "typically."

Have you ever used WhatsApp to send a

Page 502

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

something, and my understanding was, because they were getting multiple devices --

Q.   We'll get there.  I -- I didn't ask you about that --

A.   Can I just finish the answer, though?

Q.   I didn't ask you about that.  That wasn't part -- that wasn't part of my question.  Can we -- can we hold off.  We'll get there in a few minutes.

Mr. Mullenweg, have you ever sent a WhatsApp mention to any other Automattic employee?

A.   I don't recall.

Q.   Have you ever corresponded with Toni Schneider using WhatsApp?

A.   I don't recall.

Q.   Have you ever corresponded with Mark Davies using WhatsApp?

A.   I don't think Mark has a WhatsApp that I'm aware of, but so I -- but I don't recall.

Q.   How about Jesse Friedman?

A.   Again, I don't recall.

Q.   How about Mr. Abrahamson?

A.   Probably not, no.

Q.   Okay.  Let's talk about your Signal message use.  You've also utilized a messaging app known as Signal; correct?

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

A.   I have a Signal account, yes.

Q.   And you're the only Automattic employee listed on Exhibit 51 that has used Signal in connection with their work at Automattic; right?

MR. DORE:   Objection to the form of the question.

THE WITNESS:   I see on the document, yes.

BY MR. MACK:

Q.   And why do you use Signal in connection with your work at Automattic?

MR. DORE:   Objection to the form.

THE WITNESS:   I wouldn't say I typically use it in connection with work.  This was sort of an attempt to list all accounts and all the date ranges that were collected and whether it was -- however it could be covered.

BY MR. MACK:

Q.   Okay.

A.   So -- and I believe we searched it even for -- it was searched for even some generic terms and things like that.

BY MR. MACK:

Q.   And you said -- you said "typically" again.  But you did occasionally use Signal in connection with your work at Automattic; right?

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

A.   Not typically with work in Automattic.

Q.   Have you ever used Signal in connection with your work at Automattic before?

A.   In the, whatever, six or seven years I've had an account, it's possible that there could be a message which could be construed as relates to my work at Automattic or WordPress; however, that would not be a typical usage.

Q.   Okay.  How about any messaging related to this litigation or WP Engine, have you ever sent or received a Signal message relating to those topics?

A.   I would defer to what's been produced as the best answer to that.

Q.   You don't have any independent recollection of sending or receiving any Signal messages related to WP Engine?

A.   I would say it's -- I wouldn't have great independent recollection of any particular message, particularly if it's referring to anything, all time, I would very much defer to what's relevant to counsel and what's been produced.

Q.   Let's talk about your Telegram usage briefly.  Why do you use Telegram in connection with your work at Automattic?

MR. DORE:  Objection to the form.

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

THE WITNESS:  How I would define using Telegram is with my assistants.  It's sort of a -- a fast -- Telegram is like the fastest messaging platform, and it works even if you have a really bad connection.  And so -- and also with my assistants sometimes, you know, we might be discussing like something which is more personal or a house manager or something like that, which I typically wouldn't put on Slack.

BY MR. MACK:

Q.  Okay.

A.  The -- also, sometimes it could be used as like a fallback if, for example, there was an outage or something or someone was trying to reach me when I was, like, on a plane or, you know, they might contact the assistants who go through there or...

Q.  And you're aware --

A.  I would say sort of the primary intentional use is that with the assistants.

Q.  Okay.  You're aware of a feature of Signal referred to as disappearing messages; right?

A.  I am, yes.  I think pretty much every messaging app has some concept of a disappearing or ephemeral, to use your earlier term, message.

Q.  And you've, in fact, sent and received

Page 507

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

companies were you referring to?

A.   It is not listed there, so I don't remember what that could be inclusive of.

Q.   Okay.  Do you recall receiving any stuff from inside companies around September 2024?

A.   No.  And as I say in the declaration, when we looked at Signal, it turns out that my account wasn't set up to receive messages in general, nor was my Signal address findable in an easy way.

Q.   Your -- your Signal address -- photomap dot -- what is your Signal address, by the way?

A.   I don't know what my Signal address is. But it's a -- I think the account is with whatever my personal phone number is.

Q.   Okay.

A.   Which is not -- yeah, not published here.

Q.   Okay.  So anyone who knew your personal phone number could send you a Signal message using Signal's disappearing message feature; right?

MR. DORE:  Object to the form.

THE WITNESS:  Not necessarily.  I think they would have to be approved as a contact or in my contact book or something like that.  The settings weren't set up to receive.  That's why I said it was

Page 519

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

kind of funny is in theory, if you were to say this was soliciting messages through a platform like Signal, it wouldn't have been able to receive them.

BY MR. MACK:

Q.   But you don't need to have the disappearing message setting to receive the disappearing message; right?  That's a setting that's sent by the sender of the message; right?

MR. DORE:  Object to the form.

THE WITNESS:  As it says in this declaration, other people could set that setting or someone else.  For example, it's common on a messaging platform that they can delete a message in a way that deletes it from both of your devices without you knowing, seeing it or doing it yourself.

BY MR. MACK:

Q.   So how many Signal disappearing messages have you received since September 2024?

A.   I don't know a number.  And I don't know of any that would be -- or any that are relevant to this.

And as I said in (b)6, the disappearing message are ephemeral, would be for highly sensitive personal communications with romantic partners.

Q.   When you said you don't -- you're not

Page 520

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

form.  Argumentative.  Lacks foundation.

Go ahead.

THE WITNESS:  If a message disappeared, they wouldn't be transferred.  If a message was disappearing but the time hadn't disappeared, I believe it would transfer, when you do a sort of a full transfer.

BY MR. MACK:

Q.   Okay.  So -- so when you say you gave strangers access to your personal devices, are you talking about your current personal devices?

A.   I believe it's every time that the device has been imaged.

Q.   Okay.  Do you recall showing an iPhone 15 Pro, in your "What's in My Bag" post from last year?

A.   I don't recall the exact post.

Q.   Okay.  What's your current iPhone model?

A.   Is 15 the latest version?

Q.   No.

A.   Oh.  My current iPhone is the -- the latest version.  I bought the new one when it came out.

Q.   The 16 Pro?

A.   Is it 17, or is it 16?

Q.   Which phone did you give to your attorneys

Veritext Legal Solutions
866-299-5127          calendar-ca@veritext.com          www.veritext.com

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

to collect information from?

A.   It could have changed between that, between the two times there was a collection.  But the phone I was using at the time -- and, again, if I grabbed a new phone or didn't upgrade, it would be -- transfer everything over.

Q.   Okay.  Do you have iCloud backup enabled?

A.   I don't know.

Q.   So as -- is it your testimony that the entirety of the contents of your iPhone 15 Pro were transferred to your current phone?

A.   Yes.  I -- I think I do that through like the -- the cable backup or something 'cause it transfers everything over better.  But I don't recall the exact transfer mechanism.  Might have also been done by, like, my IT person.

Q.   Okay.  Which personal devices do you use to receive disappearing messages?

MR. DORE:  Objection to the form.

THE WITNESS:  So another thing about these messaging platforms is that they go to multiple devices.

So, for example, my Telegram, the exact same messages would be on the iPhone, the Pixel, the MacBook, which was also one reason why I felt like

Page 531

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

there was every effort to provide these things, because even if the -- the imaging firm had an error with the iPhone, because it didn't whatever, the same things would have been on the other devices.

BY MR. MACK:

Q.    Okay.  But it only goes to all the devices if the devices are logged in on the app; right?

MR. DORE:  Object to the form.

THE WITNESS:  The -- there's sort of like versions of the app that run on different devices, so, yes, it would.

BY MR. MACK:

Q.    Okay.  But if I logged out of WhatsApp on my iPhone and someone sent me a WhatsApp message, that message would only be delivered to my other devices that I was logged in on; right?

A.    My understanding of your statement would be, that sounds accurate.  But I'm not a technical expert in every single one of these platforms on how they work.  And they also change all the time.  They release new versions probably once a week or twice -- or every other week.

Q.    Okay.  Then why do you feel the need to use disappearing messages when your Automattic colleagues don't use disappearing messages?

Page 532

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

CERTIFICATE OF REPORTER

I, Hanna Kim, a Certified Shorthand Reporter, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken before me at the time and place therein set forth and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision;

I further certify that I am neither counsel for, nor related to, any party to said proceedings, not in anywise interested in the outcome thereof.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [x] was [ ] was not requested.

In witness whereof, I have hereunto subscribed my name.

Dated:  May 19, 2026

Hanna Kim, CLR, CSR No. 13083

Page 661