QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

WPENGINE, INC., a Delaware corporation,

Plaintiff,

v.

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,

Defendants.

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,

Counterclaimants,

v.

WPENGINE, INC., a Delaware corporation,

Counterdefendant.

Case No. 4:24-cv-06917-AMO-ASK

**PLAINTIFF WPENGINE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS FOR DEFENDANTS' SPOLIATION OF EVIDENCE**

Hon. Ajay S. Krishnan
Hearing Date: September 30, 2026
Hearing Time: 1:30 p.m.
Courtroom: 4

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ....................1

II. DEFENDANTS' OPPOSITION CONFIRMS SPOLIATION OCCURRED ....................2

A. Defendants Do Not Dispute Their Duty to Preserve Arose No Later Than July 19, 2024 ....................2

B. Defendants' Opposition Supplies Further Evidence of Their Failure to Preserve ....................2

1. Defendants Knew Their April 17, 2025 Collection Attempt Had Failed ....................2

2. Defendants' Court-Ordered Declaration Omitted Key Facts ....................3

3. By the Time Defendants Addressed Ephemeral Messaging, Every Disappearing Message From the "Nuclear War" Period Was Already Gone ....................4

C. Relevant Messages Existed ....................4

III. THE LOST MESSAGES CANNOT BE RESTORED OR REPLACED ....................7

IV. DEFENDANTS' FAILURE TO PRESERVE HAS PREJUDICED WPE ....................7

V. DEFENDANTS ACTED WITH THE INTENT TO DEPRIVE WPE OF MR. MULLENWEG'S MESSAGES ....................9

VI. RULE 37(E) DOES NOT IMMUNIZE DEFENDANTS' MISREPRESENTATIONS TO WPE AND THE COURT ....................12

VII. WPE'S REQUESTED SANCTIONS ARE APPROPRIATELY TAILORED TO THE LOSS ....................13

A. Defendants Identify No Basis to Narrow WPE's Requested Finding That Mr. Mullenweg Used These Platforms For Case-Relevant Communications ....................13

B. WPE's Adverse Inference and Preclusion Requests Are Appropriate ....................13

C. Terminating Sanctions Are Appropriate ....................14

VIII. WPE IS ENTITLED TO ITS ATTORNEYS' FEES ....................15

IX. CONCLUSION ....................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Council of Learned Societies v. Nat'l Endowment for the Humanities*,
2026 WL 1256545 (S.D.N.Y. May 7, 2026) ........ 8, 12

*Aramark Mgmt., LLC v. Borgquist*,
2021 WL 864067 (C.D. Cal. Jan. 27, 2021) ........ 14

*Barak v. Rooster's Guide & Outfitting Adventures*,
2023 WL 3178026 (D. Colo. May 1, 2023) ........ 9

*BHI Energy I Power Services LLC v. KVP Holdings, LLC*,
730 F. Supp. 3d 308 (N.D. Tex. 2024) ........ 6, 7, 12

*Burris v. JPMorgan Chase & Co.*,
566 F. Supp. 3d 995 (D. Ariz. 2021), *aff'd*, 2024 WL 1672263 (9th Cir. Apr. 18, 2024) ........ 10

*Colonies Partners, L.P. v. Cnty. of San Bernardino*,
2020 WL 1496444, at *9-11 (C.D. Cal. Feb. 27, 2020) ........ 12

*Cooper Foods Int'l, LLC v. Yourd*,
2025 WL 2663977 (E.D.N.Y. Sept. 17, 2025) ........ 6, 9

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
2024 WL 5058527 (N.D. Cal. Dec. 9, 2024) ........ 13, 14

*Epidemic Sound v. Meta Platforms*,
2026 WL 2021347 (N.D. Cal. July 13, 2026) ........ 6

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) ........ 8

*Gregory v. State of Montana*,
118 F.4th 1069 (9th Cir. 2024) ........ 12

*Heit v. Livingston*,
2:23-CV-00507-BLW, 2025 WL 588121 (D. Idaho Feb. 24, 2025) ........ 6

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ........ 9

*Llera v. Las Vegas Metro. Police Dep't*,
2:20-CV-01589-RFB-BNW, 2023 WL 11910850 (D. Nev. Mar. 31, 2023) ........ 6

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
No. 13-CV-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016)................................... 8

*In re Napster Inc. Copyright Litig.*,
462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..................................................................... 15

*Paisley Park Enters*., Inc. *v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019) .................................. 8

*Saxton v. County of Sonoma*,
2024 WL 5174215 (N.D. Cal. Dec. 18, 2024) ............................................................ 5, 6, 8, 9

**Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 37(e)............................................................................................... *passim*

## I. PRELIMINARY STATEMENT

Defendants' Opposition confirms what WPE (and this Court) already suspected. In ruling on WPE's motion to compel in April 2026, this Court found that WPE had "plausibly contend[ed]" that "Mr. Mullenweg—at least in his own capacity, and potentially as an officer and agent of Automattic—has deleted relevant documents or allowed such documents to be deleted after an obligation to preserve was triggered." (Dkt. 272 at 1.) That is exactly what happened.

In September 2024, after Mr. Mullenweg publicly announced he was going "nuclear" against WPE and encouraged his 100,000+ followers—and the world—to contact him about WPE using ephemeral messaging, Defendants then left those communication platforms unpreserved and uncollected for 20 months. This meant that all disappearing messages sent or received by Mr. Mullenweg during that period were irretrievably lost.

Defendants' Opposition does not dispute that they delayed issuing a litigation hold and delayed any attempt to collect Mullenweg's communications on these messaging platforms until after Mr. Mullenweg's ephemeral messages from the critical "nuclear war" timeframe would have disappeared. Worse, Defendants' forensic vendor now admits that Defendants *knew* their belated attempt to collect Mullenweg's messaging data in April 2025 failed outright, yet they inexplicably did nothing until March 2026—save for one indefensible Zoom session in October 2025 in which Mr. Mullenweg screen-shared his phone and purportedly took screenshots of some manual searches, which yielded no produced Signal, Telegram or WhatsApp messages.

Perhaps most shocking is that Defendants concealed their preservation failures for 21 months—nearly the entirety of the pendency of this case—even in the face of motion practice and orders requiring full candor with the Court. Defendants concealed their preservation failures in the parties' joint submission to the Court in April 2026 and concealed key facts (such as the Zoom session screenshots) in their court-ordered May 2026 declarations. Even now, with the record replete with damning evidence of Defendants' failures to preserve critical evidence, they remain stalwart in their efforts to deny, distract and delay. This is precisely the type of conduct that Federal Rule of Civil Procedure 37(e) is designed to address and deter. The Court should grant WPE's Motion for Sanctions and should impose the severest sanctions available.

## II. DEFENDANTS' OPPOSITION CONFIRMS SPOLIATION OCCURRED

### A. Defendants Do Not Dispute Their Duty to Preserve Arose No Later Than July 19, 2024

Defendants' Opposition is silent on the question of when their duty to preserve arose, thereby conceding WPE's demonstration that the duty arose no later than July 19, 2024, the date counsel for Defendants circulated a draft cease-and-desist letter directed to WPE. (Fuoco Decl., Ex. 23 (excerpt from Defendants' Amended Privilege Log #005).) Defendants likewise do not dispute that Mr. Mullenweg publicly directed people on September 21, 2024 to contact him via "Signal with disappearing messages, etc." (Fuoco Decl., Ex. 15 (X.com Post) at -47.) Yet, by their own admission, Automattic did not issue a litigation hold until October 2024. (Dore Decl. ¶¶ 4-5.) Worse, ephemeral messaging platforms were not specifically addressed in these preservation notices until Defendants sent out a "written preservation reminder" on February 20, 2025. (*Id.* ¶¶ 4-7.) This was seven months after Defendants' preservation duty arose and five months after Mr. Mullenweg directed the public to communicate with him via disappearing messages. These facts alone show Defendants' failure to preserve Mr. Mullenweg's ephemeral messaging communications.

### B. Defendants' Opposition Supplies Further Evidence of Their Failure to Preserve

Defendants' Opposition makes several damning admissions further evidencing their failure to preserve.

#### 1. Defendants Knew Their April 17, 2025 Collection Attempt Had Failed

The August 6, 2026 supplemental declaration submitted by Defendants' discovery vendor, Jonathan Robins, concedes that Defendants knew at the time that the first attempt to collect Mr. Mullenweg's ephemeral messaging applications on April 17, 2025 failed to capture his WhatsApp and Signal communications. Specifically, Mr. Robins states that "[m]ultiple different attempts were made by the examiner" on April 17 "to obtain a Full File System image of the iPhone [which would have captured WhatsApp and Signal messages], but none were successful, so an Advanced Logical image [which could not capture these messages] was created." (Suppl. Robins Decl. ¶ 8.) This proves that Defendants were immediately aware of their failure to collect Signal and WhatsApp messages. Yet both Mr. Robins and Mr. Mullenweg omitted this critical fact from the May 4, 2026

declarations they provided pursuant to the Court's order. (Fuoco Decl., Ex. 12 (May 4, 2026 Robins Decl.) ¶ 5; Ex. 11 (May 5, 2026 Mullenweg Decl.); Dkt. 272 at 2 (Order).)

Mr. Robins' August 2026 supplemental declaration also reveals Defendants did nothing to even attempt to remedy this known preservation failure until October 2, 2025—after WPE sent Defendants its portion of a discovery letter brief directed at Defendants' failure to produce Mr. Mullenweg's communications from Signal, WhatsApp, and Telegram. (Suppl. Robins Decl. ¶¶ 2-5; 8/18/26 Fuoco Decl., Ex. 1 (9/30/25 Email to Gibson Dunn Attaching WPE's Portion of Joint Letter); Dkt. 177.) Even then, Defendants' October 2, 2025 purported remediation efforts consisted only of screen-shotting communications that hit on a limited number of search terms and purportedly verifying through a screen share that Mullenweg had, as of October 2, 2025, turned off the auto-delete settings. (Suppl. Robins Decl. ¶¶ 3-5.) This of course says nothing about what settings were active from July 2024 to October 1, 2025, and certainly does not provide any proof that the auto-delete settings were turned off prior to that date, and Mr. Robins does not argue otherwise.

**2. Defendants' Court-Ordered Declaration Omitted Key Facts**

Defendants' Opposition also lays bare a troubling pattern of obfuscation. Even ***after*** the Court issued its ruling on WPE's motion to compel Mr. Mullenweg's messaging applications, expressed concerns that Mr. Mullenweg was being evasive, and ordered Defendants to provide a sworn declaration detailing "what steps [Mr. Mullenweg] took to preserve communications from each platform and when" (Dkt. 272 at 2), Defendants served multiple declarations that hid key facts. The May 2026 declarations of Mr. Robins and Mr. Mullenweg include no mention of the October 2, 2025 search for Mr. Mullenweg's Signal and WhatsApp communications. (*Compare* Suppl. Robins Decl. ¶¶ 2-6 *with* Fuoco Decl., Ex. 12 ¶ 5 and Ex. 11.) And, as set forth above, Mr. Robins' May 2026 declaration did not fully acknowledge that the April 17, 2025 attempt to collect Mr. Mullenweg's WhatsApp and Signal messages was a ***known*** technological failure at the time the failure occurred. (Fuoco Decl., Ex. 12 ¶ 5.)

These newly admitted omissions and misrepresentations are in addition to those detailed in WPE's Motion and addressed in Section V below, including Defendants' April 3, 2025 assurances regarding preservation generally and Mr. Mullenweg's auto-delete settings; Defendants' RFA

responses denying any messages were automatically deleted; and their October 6, 2025 representation to this Court that Mr. Mullenweg's messages "have been preserved." (Fuoco Decl., Ex. 7 (April 3, 2025 Letter) at 2-3; *id.*, Ex. 16 (Mullenweg May 21, 2026 Second Am. Resps. & Objs. to Pl.'s First Set RFAs) at 9-10 (Nos. 3-4); Dore Decl., Ex. G (Mullenweg December 1, 2025 Resps. & Objs. to Pl.'s First Set RFAs) at 9-10 (Nos. 3-4); Dkt. 177 at 3; Mot. at 18-19.)

#### 3. By the Time Defendants Addressed Ephemeral Messaging, Every Disappearing Message From the "Nuclear War" Period Was Already Gone

In support of their Opposition, Defendants have submitted screenshots of Mr. Mullenweg's ephemeral messaging settings as of October 2, 2025 as exhibits to the supplemental declaration of Mr. Robins. (Ex. A to Robins Suppl. Decl. at 2, 6.) These show the maximum timeframes allowed for disappearing messages by Mr. Mullenweg's Signal and WhatsApp were four weeks and 90 days, respectively. (*Id.*) Mr. Dore's supplemental declaration acknowledges that Defendants did not send a preservation notice specifically addressing ephemeral messaging platforms until February 20, 2025 (Dore Decl. ¶¶ 4-7.) This timing is critical. Mr. Mullenweg launched his "nuclear war" against WPE and urged the public to contact him via "disappearing messages" in September 2024. (Fuoco Decl., Ex. 15 at -47; Dkt. 233 (Third Amended Complaint) ¶¶ 92-102 & n.59.) Even assuming those messages remained on his devices for the maximum periods permitted by his Signal and WhatsApp settings—four weeks and 90 days, respectively (Suppl. Robins Decl., Ex. A at 2, 6)—they would have been long gone before Mr. Mullenweg received any preservation letter specifically addressing ephemeral messaging, and well before any attempted imaging of his phone occurred.

The screenshots of Mr. Mullenweg's ephemeral messaging settings also show that messages can be set to delete in as little as 30 seconds or 24 hours after they are seen. (*Id.*) Given that Defendants did not send out any preservation "directive" until at least October 8, 2024 (Dore Decl. ¶ 4), this means that Defendants' decision to delay their preservation notice ensured that any short-fuse ephemeral messages sent to or from Mr. Mullenweg before October 8, 2024, would have been long gone before he was even instructed to preserve any evidence.

### C. Relevant Messages Existed

Defendants declare that no relevant communications must have existed for various reasons,

and thus there can be no spoliation. None of their arguments has merit.

First, Defendants' own searches establish the loss. On October 2, 2025, Mr. Mullenweg purportedly ran sixteen basic search terms—including "WP Engine," "WPEngine," "WPE," "wordpress.org," "ACF," "SCF," and "trademark"—through the WhatsApp and Signal applications on his iPhone. (Suppl. Robins Decl. ¶¶ 3-4.) And the March 16, 2026 imaging captured WhatsApp data reaching back to November 2015 and Signal data reaching back to October 2019. (Robins Decl. ¶¶ 6-7.) From a decade of data, searched with terms designed to capture this very dispute (not to mention references to Mullenweg's own website), Defendants have identified just one responsive Signal message and no responsive WhatsApp messages. (Fuoco Decl. ¶ 16; Opp. at 11 & n.1.)

Defendants offer that result as proof that nothing was lost. It shows the opposite. This is the executive who told hundreds of Automattic employees that the company was "possibly going to go nuclear with WP Engine" (Fuoco Decl., Ex. 13 (A8C00753030) at -45), who publicly waged what he called an "all out nuclear war" against WPE (Dkt. 233 (Third Amended Complaint) ¶¶ 92-102 & n.59), and who publicly solicited inbound messages about WPE from his 100,000+ social media followers, and the public at large, on "Signal with disappearing messages, etc." (Fuoco Decl., Ex. 15 at -47.) A yield of a single message across the entire relevant period shows these channels were emptied before anyone collected them.

Second, Defendants suggest that Mr. Mullenweg could not have received any communications in response to his X.com post urging people to send him "disappearing messages" (Fuoco Decl., Ex. 15 at -47) because his Signal settings required the senders to be "approved as a contact or in [his] contact book." (Opp. at 12-13.) That answer concedes the point as to everyone already in Mr. Mullenweg's contact book—which is precisely who was most likely to message him.

Third, Defendants analogize to *Saxton v. County of Sonoma*, 2024 WL 5174215 (N.D. Cal. Dec. 18, 2024), arguing that here, as in *Saxton*, there is "no concrete evidence that relevant emails ever existed, much less that critical evidence was destroyed." *Id.* at *3. But the relevant facts are worlds apart. In *Saxton*, every custodian swore that email was not their practice for the subject matter, and the movant offered nothing beyond a delayed litigation hold and a thin production. *Id.* at *1, *3. Here, Mr. Mullenweg explicitly instructed others to reach him on "Signal with

disappearing messages, etc." while under a duty to preserve (Fuoco Decl., Ex. 15 at -47); Defendants delayed both their preservation notices and their collection until long after such messages would have disappeared (Section II(B)(3), *supra*); and Defendants repeatedly misrepresented their preservation efforts to WPE and to this Court (*e.g.,* Mot. at 18-19). Defendants' remaining authorities are even further afield. *See Cooper Foods Int'l, LLC v. Yourd*, 2025 WL 2663977, at *2-4 (E.D.N.Y. Sept. 17, 2025) (no indication that responsive WhatsApp messages were ever sent, and no showing of a duty to preserve during the relevant period); *Llera v. Las Vegas Metro. Police Dep't*, 2:20-CV-01589-RFB-BNW, 2023 WL 11910850, at *3 (D. Nev. Mar. 31, 2023) (movant could not show the Signal messages were "actually lost and cannot be replaced or restored through additional discovery") (internal quotations omitted); *Heit v. Livingston*, 2:23-CV-00507-BLW, 2025 WL 588121, at *3 (D. Idaho Feb. 24, 2025) (accidental deletion of text messages); *Epidemic Sound v. Meta Platforms*, 2026 WL 2021347, at *54-56, (N.D. Cal. July 13, 2026) (denying as untimely motion that sought duplicative and irrelevant information).

Fourth, Defendants argue that their twenty-month failure to capture Mr. Mullenweg's messaging data is not "failure to preserve." (Opp. at 14-15.) That ignores reality. For twenty months, Defendants left these communications solely on Mr. Mullenweg's iPhone—the very person who (1) has a track record of deleting relevant communications; (2) openly encouraged others to use disappearing messages to contact him while he was under a duty to preserve; and (3) has failed to deny, even when ordered to do so under oath, that significant categories of relevant messages were deleted. (Fuoco Decl. Ex. 11 ¶¶ 6-7.) These are not the makings of adequate preservation efforts; they are a recipe for spoliation. Although Defendants cite to *BHI Energy I Power Services LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 327 (N.D. Tex. 2024) for the proposition that a party's failure to search ESI does not conclusively establish lost ESI, in *BHI* the text messages at issue were not lost because, although they were deleted from Defendants' phones, they could have been obtained "from other sources—specifically the counterparties to the text messages." *Id*. at 326 (internal quotations omitted). Here, however, the disappearing messages, by their very nature, are gone, and they cannot be obtained through other means. Defendants' citation to *BHI* is inapt.

Finally, Defendants explain that an iOS update unsupported by their vendor's imaging

software is what impaired their ability to collect Signal and WhatsApp messages on April 17, 2025. But this does not explain why they waited until April 2025—nine months after their obligation to preserve arose—to even *attempt* to collect these critical communications which included ephemeral messages. It also does not explain why Defendants failed to re-collect these two platforms until March 2026, nearly a year later, despite knowing the collection failed.

## III. THE LOST MESSAGES CANNOT BE RESTORED OR REPLACED.

Rule 37(e)'s irreplaceability requirement is satisfied on Defendants' own submissions. Defendants argue that Mr. Mullenweg's misplaced Pixel Fold and MacBook caused "no incremental loss" because an ephemeral message that had already disappeared "wouldn't be transferred" to a synced or later device. (Opp. at 16; Dore Decl., Ex. C (Mullenweg Dep.) at 530:3-7.) That is a concession that a disappeared message is gone permanently. The same is true of the March 16, 2026 imaging: a forensic image captures what is on a device when it is taken, not what left the device during the preceding twenty months. And unlike the email records at issue in the authorities Defendants invoke, one-to-one ephemeral messages exist in no second location within Defendants' control—Mr. Mullenweg's counterparties were, by his own public invitation, outsiders using disappearing messages. *Cf. BHI*, 730 F. Supp. 3d at 326. Defendants nowhere contend that these messages can be restored or replaced, and they have made no supplemental production.

## IV. DEFENDANTS' FAILURE TO PRESERVE HAS PREJUDICED WPE

Defendants argue that WPE cannot have it both ways: if the surviving record is strong enough to "prove WP Engine's case," it cannot also be impaired enough to warrant relief. (Opp. at 2, 16-17.) That is nonsense. Unless Defendants are prepared to enter into a stipulated final judgment and permanent injunction in WPE's favor, they cannot dodge a spoliation sanctions motion by claiming that WPE has plenty of evidence already. Stated another way, that WPE has strong evidence in its favor does not absolve Defendants of their misconduct, because but for that misconduct, WPE would have even more evidence, including binding Mullenweg admissions that would have made WPE's case easier and less costly to prove. That evidence is forever gone.

"Prejudice exists when spoliation prohibits a party from presenting evidence that is relevant to its underlying case." *Paisley Park Enters*., Inc. *v. Boxill*, 330 F.R.D. 226, 236 (D. Minn. 2019).

Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other," and Rule 37(e)(2) requires no prejudice finding at all. *Saxton*, 2024 WL 5174215, at *2 n.1 (quoting Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment). A movant "must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022). It need not prove what the lost messages said, because with spoliation, "neither party can say with any certainty what the deleted communications would have shown." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016). Defendants do not dispute that standard—they invoke it. (Opp. at 17.) They argue only that WPE cannot satisfy it. WPE can.

What was lost is Mr. Mullenweg's WhatsApp, Signal, and Telegram traffic from July 2024 forward—the channels on which people speak informally, and therefore most frankly. He admits he used all three throughout that period. (Fuoco Decl., Ex. 11 ¶¶ 4-5.) The loss of communications from those platforms has deprived WPE of critical evidence during a critical time period, including the ability to (i) obtain admissions regarding Defendants' true motives in attacking WPE; (ii) test whether Defendants' financial demands were calibrated to what Mr. Mullenweg believed WPE could pay rather than to any valuation of the marks, and whether they were intended to drive down WPE's valuation; (iii) identify with whom he coordinated the September 2024 keynote, the wordpress.org block, and the ACF seizure outside the channels Defendants preserved, and his reasons for each such action; (iv) identify the people "sending [him] stuff from inside companies" whom he directed to Signal, and what they sent; and (v) impeach at trial the good-faith-enforcement account on which Defendants' counterclaims depend, and obtain admissions on WPE's laches and fair use defenses. *Am. Council of Learned Societies v. Nat'l Endowment for the Humanities*, 2026 WL 1256545 (S.D.N.Y. May 7, 2026) ("*ACLS*") itself confirms that this suffices: the court there found no prejudice because the plaintiffs had already obtained summary judgment on the theories the lost messages concerned, so an inference "would not cure an evidentiary imbalance." *Id.* at *63, 65. Here, the issues remain contested, and summary judgment briefing has not yet occurred.

Defendants' authorities turn on records unlike this one. In *Saxton*, every custodian swore that using email was not their practice for the subject matter, and litigation holds in place since 2019

had yielded only privileged material. 2024 WL 5174215, at *3. Here the record shows the opposite, as the spoliator publicly directed the world, including his more than 100,000 followers on social media, to reach him on the very channels at issue which are designed, by definition, to be ephemeral. (Fuoco Decl., Ex. 15 at -928, -547.) *Cooper Foods* likewise turned on a movant who could not "pinpoint any testimony establishing that [a third party] communicated with [a defendant] about business matters that were relevant to Plaintiff's claims." *Cooper Foods*, 2025 WL 2663977, at *5. Again, here, Mr. Mullenweg publicly declared his intent to use "disappearing" message while simultaneously declaring "war" on WPE. (Fuoco Decl., Ex. 15 at -47; Dkt. 233 ¶¶ 92-102 & n.59.) And *Barak* found no prejudice as to messages the defendants had no duty to preserve. *Barak v. Rooster's Guide & Outfitting Adventures*, 2023 WL 3178026, at *6 (D. Colo. May 1, 2023). Here, the duty to preserve is clear and conceded.

## V. DEFENDANTS ACTED WITH THE INTENT TO DEPRIVE WPE OF MR. MULLENWEG'S MESSAGES

Defendants' argument that WPE cannot show an intent to deprive is also flat wrong. (Opp. at 18.) Mr. Mullenweg routed case-relevant communications onto self-deleting channels during the time period where he knew litigation was certain. (Fuoco Decl., Ex. 15 at -47.) And he publicly declared that this was his intention to do so. (*Id.*) Defendants then left those channels uncollected for twenty months, while making repeated, false assurances to WPE and this Court that the communications were being preserved. (*Supra* Sections II(B)(2), (II)(C).) Intent may be proven through circumstantial evidence, and the Ninth Circuit looks to the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Those factors strongly support a finding of intentional destruction here.

As to affirmative steps, Mr. Mullenweg did not merely use applications capable of deleting messages—he publicly instructed people sending him information to reach him by "personal phone, Signal with disappearing messages, etc." (Fuoco Decl., Ex. 15 at -47; *id.*, Ex. 11 ¶ 6.) As to timing, he issued that instruction one day after the WordCamp keynote, two months after his counsel drafted a cease-and-desist letter to WPE, and five weeks after he acknowledged that Automattic was "now going [on] a litigation track with WPE." (Fuoco Decl., Ex. 23; *id.*, Ex. 19 (A8C00706126) at -27.)

As to selective preservation, Defendants collected more than six terabytes from P2, Slack, and email—and ***nothing*** from the three platforms carrying Mr. Mullenweg's private communications. They belatedly identified those platforms as preservation targets in February 2025 and still did not collect two of them for another thirteen months. (Dore Decl. ¶ 7; Robins Decl. ¶ 5.)

Defendants do not deny making the misrepresentations WPE has identified. They argue that each was defensible. None was:

***April 3, 2025.*** In this correspondence, Defendants told WPE that they had "taken all reasonable steps to preserve relevant documents in this case, including with respect to Signal, Telegram, and WhatsApp," and now say that was "true when written and true now." (Fuoco Decl., Ex. 7 at 3; Opp. at 19.) But, as of April 3, 2025, no one had even attempted to collect any of Mr. Mullenweg's devices. The first imaging occurred two weeks later, and it failed as to two of the key applications at issue. (Fuoco Decl., Ex. 12 ¶ 5.) Representing that preservation was complete while the custodian's devices sat untouched is "inconsistent with good faith but consistent with an intent to deprive." *See Burris v. JPMorgan Chase & Co*., 566 F. Supp. 3d 995, 1018 (D. Ariz. 2021) (intent to deprive found where spoliating party falsely claimed he stopped using an email address long before he actually did), *aff'd*, 2024 WL 1672263 (9th Cir. Apr. 18, 2024).

The same April 3 letter stated that "Mr. Mullenweg confirmed that he has not activated the auto-delete function on any communications platform with auto-delete capability that he uses (WhatsApp, Telegram, Signal)." (Fuoco Decl., Ex. 7 at 2.) Defendants now say that sentence was "accurate in the context in which it was written: a discussion about preservation of relevant evidence." (Opp. at 19.) That context makes it worse. The preceding page shows the statement answered WPE's request that Defendants confirm "whether Mr. Mullenweg has disabled all auto-delete functions on each of the ephemeral messaging platforms he uses." (Fuoco Decl., Ex. 7 at 1.) Mr. Mullenweg's declaration concedes the function was enabled on all three applications. (*Id.*, Ex. 11 ¶ 6.) Whether he used it for one type of message or another has no bearing on whether it had been "activated." And the declaration speaks only to the period "since September 2024," while the duty to preserve attached no later than July 19, 2024. Nothing in Defendants' sworn record accounts for the settings during the intervening weeks—the critical period containing Defendants' demand,

their plan to attack WPE, Mr. Davies' "go to war" conversations, and the WordCamp keynote.

***October 6, 2025.*** On this date, Defendants told the Court that "Mr. Mullenweg's responsive Signal, Telegram, and WhatsApp communications have been preserved." (Dkt. 177 at 3.) They now say "the sentence discloses on its face that Signal and WhatsApp material had not yet been *produced*." (Opp. at 18 (emphasis added).) This answers a charge WPE did not make. The disputed word is "preserved," not "produced," and the data was not preserved until the March 16, 2026 re-imaging—more than five months later. And, as shown above, Defendants' August 2026 declarations now establish that, four days before the October 6 filing, Defendants' vendor had captured only metadata-free screenshots[1] and had scheduled a re-imaging precisely because preservation and collection had not occurred. (Suppl. Robins Decl. ¶¶ 2-6; *supra* Section II(B).) The representation was not imprecise. It was untrue when made.

Defendants also characterize Mr. Mullenweg's other attempts at evidentiary destruction as "unrelated." (Opp. at 20.) They are not. At the same time he launched his "nuclear war" against WPE, Mr. Mullenweg deleted at least two X.com posts concerning WPE, deleted a Slack message, and requested deactivation of his Post Status Slack account—a forum for "communications directed at [him] in connection with this litigation." (Dkt. 233 ¶¶ 92-102 & n.59; Ex. 11 ¶¶ 12, 15-16.) Defendants answer that they later located and produced screenshots of that material. (Opp. at 11.) But that just proves WPE's point. Those deletions are visible only because copies happened to survive elsewhere, and what they reveal is that Mr. Mullenweg wanted certain communications gone. For the messages at issue here, no such copy exists, and no such check is possible.

*ACLS* does not assist Defendants; it states the distinction that resolves this motion. (Opp. at 20-21.) The court in *ACLS* found no intent to deprive because the officials used Signal for other reasons, "not because they personally selected the platform to shield [agency-]related

---

[1] To be clear, the October 2, 2025 Zoom exercise with Mr. Mullenweg is not a helpful fact for Defendants. Defendants produced no Signal or WhatsApp communications after those searches. WPE and the Court are left to wonder what Mr. Robins and Mr. Mullenweg were purportedly capturing with their screenshots. Nor has any explanation been provided as to why such a rudimentary and grossly inadequate form of search and collection was deemed acceptable by counsel and a discovery vendor in the face of a motion to compel. Perhaps this is why Defendants failed to disclose this Zoom search in response to the Court's April 2026 Order. (Dkt. 272 at 2.)

communications from discovery." 2026 WL 1256545, at *64. But Mr. Mullenweg's own words show that was his precise intent here. *ACLS* also rested on a record in which Signal content was forwarded to and preserved in email, so copies survived. *Id.* at *63. There is no such record here. The WhatsApp and Signal data no longer resides anywhere. (Suppl. Robins Decl. ¶ 8.)

Defendants' remaining authorities fare no better. Neither *BHI Energy* nor *Barak* involved representations about preservation made to both the movant and the court; *BHI Energy* concerned counsel's description of the completeness of a *production*, not whether preservation had occurred. 730 F. Supp. 3d at 327. Defendants also say WPE has identified no wiping software and no deleted account. (Opp. at 20.) Neither is required. *Colonies Partners* inferred intent from the timing of the loss relative to the litigation and the defendants' "utter failure to take any measures to preserve"—and imputed the custodian's spoliation to the entity that failed to instruct him. 2020 WL 1496444, at *9-11. That is this case: Defendants left the only copies of Mr. Mullenweg's messages in Mr. Mullenweg's hands, behind a wall of assurances that the communications were being preserved.

## VI. RULE 37(E) DOES NOT IMMUNIZE DEFENDANTS' MISREPRESENTATIONS TO WPE AND THE COURT

Defendants argue that Rule 37(e) displaces this Court's inherent authority altogether. (Opp. at 21-22.) That overreads *Gregory v. State of Montana*, 118 F.4th 1069 (9th Cir. 2024). WPE rests its ESI-based relief on Rule 37(e), as *Gregory* requires. But *Gregory* addressed "sanctions for the sort of failure to preserve [ESI] that occurred in [that specific] case," *id.* at 1072, and does not immunize a party from the consequences of misleading its adversary and the Court about whether preservation had occurred at all. *Gregory* expressly preserves the Court's authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id*. at 1077.

Defendants' conduct has caused harm independent of the lost messages. Defendants' assurances induced WPE to litigate a motion to compel premised on representations Defendants knew to be untrue, subjected WPE to over a year of fruitless meet-and-confer efforts, and required this Court to order a sworn accounting that Defendants knew was incomplete. Defendants' own authority confirms that the Court's inherent authority survives to issue sanctions for conduct of that kind: the court in *Elite Semiconductor,* despite not finding conduct sanctionable under Rule 37(e),

nonetheless used its inherent authority to award the plaintiff its attorneys' fees it incurred due to the defendants' "loss of [a] physical hard drive [that] sufficiently delayed and disrupted the litigation." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2024 WL 5058527, at *5-6 (N.D. Cal. Dec. 9, 2024) (awarding movant the fees and costs it spent on meeting and conferring regarding the hard drive, letter drafting, and preparing and arguing the related discovery and sanctions motions). The Court may therefore grant terminating sanctions under Rule 37(e)(2) and, independently, may sanction Defendants' litigation misconduct and misrepresentations under its inherent authority.

## VII. WPE'S REQUESTED SANCTIONS ARE APPROPRIATELY TAILORED TO THE LOSS

### A. Defendants Identify No Basis to Narrow WPE's Requested Finding That Mr. Mullenweg Used These Platforms For Case-Relevant Communications

As for WPE's request that the Court deem it established that Mr. Mullenweg used WhatsApp, Signal, and Telegram for case-relevant communications, Defendants offer no tailoring objection at all. The Opposition rests solely on Defendants' threshold contention that no evidence was lost. (Opp. at 23.) However, as discussed in Section II(C), *supra*, these arguments fail.

### B. WPE's Adverse Inference and Preclusion Requests Are Appropriate

Defendants argue WPE's requests for adverse inference and testimony preclusion sanctions are unavailable because they require a showing of "intent to deprive." (Opp. at 23-24). WPE has shown exactly that, as discussed in Section V, *supra*.

Defendants next argue that WPE's requested sanctions are "overly broad." (Opp. at 21.) They are not. WPE's requested sanctions are tailored to address issues for which the lost communications would have been most probative. (Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("The remedy should fit the wrong . . . .").) Here, Defendants' failure to preserve Mullenweg's messages in the months leading up to and during their "nuclear war" against WPE, and Mr. Mullenweg's request that others contact him on these channels with "disappearing messages," deprived WPE of uniquely probative, contemporaneous evidence of Mr. Mullenweg's intent and state of mind during the timeframe most critical to this litigation. (*Supra* Section II(B)(3).) WPE's requests for adverse inferences are appropriately tailored to the intent and state-of-mind issues that arise directly from this critical timeframe, namely WPE's interference claims (which

require WPE to show intent to interfere), defamation claims (which implicate Mr. Mullenweg's state of mind as it relates to the falsity of his defamatory statements), CFAA claims (which involve intent to extort and cause damage), and defenses to Defendants' trademark claims (which involve showing pretext and knowledge that WPE's use of the trademarks was permissible). (Mot. at 20-21.)

Similarly, WPE's request that the Court preclude Mr. Mullenweg from testifying about the substance of his lost messages or his state of mind, except as established by produced documents, is appropriately tailored because it would prevent Defendants from gaining a litigation edge from their failure to preserve these very messages. And, contrary to Defendants' arguments, precluding this testimony would not require the Court to make the intent findings required by Rule 37(e)(2) (Opp. at 24) because it would not create a situation in which Defendants were barred from "offering any evidence in support of[] the central or only claim or defense in the case." (Fed. R. Civ. P. 37(e)(1) advisory committee note to 2015 amendment.) Indeed, Rule 37(e)'s Advisory Committee notes show that WPE's requested preclusion is appropriate under 37(e)(1): "it may be appropriate to exclude a specific item of evidence [*i.e.*, here, Mr. Mullenweg's testimony] to offset prejudice caused by failure to preserve other evidence that might contradict the excluded item of evidence [*i.e.,* here Mr. Mullenweg's messaging communications.]." (*Id.*)

Finally, even were the Court to conclude that Defendants' conduct falls short of Rule 37(e)(2)'s intent standard, Rule 37(e)(1) independently authorizes "measures no greater than necessary to cure the prejudice," and requires no finding of intent or bad faith. As shown above, the Advisory Committee note contemplates precisely the preclusion WPE seeks. Fees are likewise available under Rule 37(e)(1) without any showing of bad faith. *Aramark Mgmt., LLC v. Borgquist*, 2021 WL 864067, at *22 (C.D. Cal. Jan. 27, 2021). Defendants' own authority is in accord. *See Elite Semiconductor*, 2024 WL 5058527, at *5-6 (awarding the movant its fees for meet-and-confer efforts, discovery motions, and the sanctions motion itself where the producing party "acted recklessly" in preserving the evidence at issue).

### C. Terminating Sanctions Are Appropriate

Defendants' only specific argument against terminating sanctions is that WPE has not made the required "intent to deprive" showing. (Opp. at 24-25.) However, as discussed in Section V *supra*,

WPE has shown that Defendants acted with an intent to deprive WPE of the lost messages by (1) delaying Defendants' collection by 20 months, and (2) repeatedly concealing their failure to preserve, both to WPE and the Court. A party not intending to deprive its adversary of material evidence would have come forward as soon as the failure to preserve was discovered and engaged in remediation efforts. The opposite happened here.

The Court should also reject Defendants' argument that WPE's requested relief exceeds this Court's authority under 28 U.S.C. § 636(b)(1)(A). (Opp. at 25.) The majority of WPE's requested relief—the finding that Mr. Mullenweg used these platforms for case-relevant communications during the unpreserved period, evidentiary preclusion, an adverse-inference instruction, and an award of fees—is non-dispositive and within this Court's authority to hear and determine. The Court may proceed by report and recommendation as to any relief the Court deems dispositive.

## VIII. WPE IS ENTITLED TO ITS ATTORNEYS' FEES

Defendants do not dispute that "[m]onetary sanctions may be imposed where one party has wrongfully destroyed evidence." *In re Napster Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006). Defendants instead only repeat their arguments that WPE has not shown actual destruction or been prejudiced. (Opp. at 25). But as discussed in Sections II(C) and IV *supra*, WPE has indeed made these showings. Defendants' arguments fail accordingly.

## IX. CONCLUSION

WPE respectfully requests the Court grant WPE's Motion for Sanctions and award it the relief sought in its accompanying Proposed Order.

DATED: August 18, 2026 QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *\/s/ Yury Kapgan*

Yury Kapgan
*Attorneys for Plaintiff WPEngine, Inc.*