United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPENGINE, INC., Plaintiff, v. AUTOMATTIC INC., et al., Defendants. | Case No. 24-cv-06917-AMO |
| AUTOMATTIC INC., et al., Counterclaimants, v. WPENGINE, INC., a Delaware corporation, Counterdefendant. | **ORDER RE MOTIONS TO DISMISS** Re: Dkt. Nos. 243, 252 |

This Order assumes familiarity with the facts alleged in the operative third amended complaint and counterclaims, the procedural history of the case, and the arguments advanced in the parties' papers. Automattic Inc. and Matthew Charles Mullenweg (the "Automattic Defendants" or "Defendants") move to dismiss Plaintiff WPEngine Inc.'s claims for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(7) (Count 3), monopolization under the Sherman Act, 15 U.S.C. § 2 (Count 11), attempted monopolization under the Sherman Act, 15 U.S.C. § 2 (Count 12), illegal tying under the Sherman Act, 15 U.S.C. § 1 (Count 13), and illegal tying under the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 (Count 14), in their entirety. Defendant WooCommerce, Inc. moves to dismiss WPEngine's claims for intentional interference with contractual relations (Count 1), intentional interference with prospective economic relations (Count 2), violation of the CFAA (Count 3), violation of

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (Count 4), declaratory judgment of non-infringement (Count 6), and declaratory judgment of non-dilution (Count 7) without leave to amend. WPEngine moves to dismiss Automattic, Mullenweg, the WordPress Foundation, and WooCommerce's counterclaims for trademark infringement under 15 U.S.C. § 1141(1) (Count 1), unfair competition under 15 U.S.C. § 1125(a) (Count 2), common law trademark infringement (Count 3), trademark dilution under 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247 (Counts 4 & 5), and unfair competition under the UCL and common law (Counts 6 & 7). The Court addresses the Automattic Defendants' motion first.

## I. AUTOMATTIC DEFENDANTS' MOTION TO DISMISS[1]

### A. Counts 11-14: Antitrust Claims[2]

The Automattic Defendants move to dismiss WPEngine's antitrust claims on the grounds that WPEngine fails to plausibly allege (1) a viable single-brand aftermarket, (2) Defendants' market power in the foremarket or in any aftermarket, (3) antitrust injury, (4) anticompetitive conduct, and (5) unlawful tying. Dkt. No. 243 ("Defs.' Mot.") at 7-16. Because accurately defining the relevant market is a threshold step in any antitrust case, *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023), the Court first takes up whether WPEngine has adequately pleaded a relevant market.

#### 1. <u>The relevant market</u>

For purposes of "both Section 1 and Section 2 of the Sherman Act, a relevant market defines 'the field in which meaningful competition is said to exist.' " *Id.* (quoting *Image Tech.*

[1] With their motions, the parties submitted requests for judicial notice and incorporation by reference, oppositions, and replies. Dkt. Nos. 243-1, 254, 258, 259, 263. Those requests are **GRANTED**. However, the Court only takes judicial notice as to the existence of the documents that are the subject of the requests for judicial notice, and, as to the documents that are the subject of the requests for incorporation by reference, the Court has considered those documents "to prevent artful pleading by plaintiffs," without allowing "defendants to short-circuit the resolution of a well-pleaded claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Going forward, any request for judicial notice or incorporation by reference, and any opposition or reply thereto, must be included in the parties' briefing and will count against applicable page limits. *See* Standing Order for Civil Cases ¶ H.3.

[2] The Court previously dismissed WPEngine's antitrust claims and departs from its prior order, now finding WPEngine's antitrust claims viable.

United States District Court
Northern District of California

*Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997)). That "definition is essential to any antitrust case because '[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition.' " *Id.* (citing *Ohio v. Am. Express*, 585 U.S. 529, 543 (2018); *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) (alterations in original)). "A relevant market can be an aftermarket in which demand depends entirely upon prior purchases in a foremarket." *Id.* (citing *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 976 (9th Cir. 2023); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482 (1992); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1048 (9th Cir. 2008)).

WPEngine alleges four relevant markets: a Web Content Management Systems foremarket "comprised of multiple brands of web content management systems, including WordPress, Drupal, Joomla, and others[,]" and three aftermarkets: "the WordPress Web Hosting Services Market, the WordPress Custom Field Plugin Market, and the WordPress Plugin Distribution Market . . . , respectively comprised of web hosting services, plugins, and plugin distribution specific to WordPress." TAC ¶ 261.

The Automattic Defendants assert that the foremarket is "the only market that isn't facially implausible." Defs.' Mot. at 13. They therefore focus on the alleged aftermarkets, arguing that WPEngine has not pleaded a viable one because it has not met two of the *Epic Games* factors – that " 'the aftermarket restrictions are "not generally known" when consumers make their foremarket purchase' " and that " 'significant' information costs prevent accurate life-cycle pricing.' " Defs.' Mot. at 8-9 (quoting *Epic Games*, 67 F.4th at 977).

These arguments fail. Because, as discussed below, WPEngine has adequately pleaded market power in the foremarket, it "[i]s not required to prove the *Kodak/Epic* factors for any of its antitrust claims." *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, No. 25-1372, --- F.4th ---, ----, 2026 WL 2348455, at *11 (9th Cir. Aug. 13, 2026) ("[A] plaintiff seeking to pursue an antitrust claim based on the defendant's possession of market power in a single-brand aftermarket has two options: (1) show that the defendant has market power in the foremarket, or (2) if the plaintiff cannot show that the defendant possesses market power in the foremarket,

satisfy the *Kodak/Epic* factors."). Defendants' motion to dismiss for failure to adequately plead facts establishing these factors is therefore **DENIED.**

2. Market power

"Monopoly power 'is the substantial ability to control prices or exclude competition.' " *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1067 (9th Cir. 2025) (quoting *Epic Games*, 67 F.4th at 998). Such "power can be shown either directly, through evidence of the exercise of monopoly power, or indirectly, through evidence of a firm's predominant market share." *Id.* (citing *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995); *Epic Games*, 67 F.4th at 998). "To prove a substantial anticompetitive effect *directly*, the plaintiff must provide proof of actual detrimental effects [on competition], such as reduced output, increased prices, or decreased quality in the relevant market." *Epic Games*, 67 F.4th at 983 (internal quotations and citations omitted; modification and emphasis in original).

WPEngine has adequately alleged direct evidence of market power in all asserted markets. With respect to increased prices, WPEngine alleges that although the effective price of Defendants' services was zero for years, as promised, they started demanding licensing fees, effectively raising the price of those services as part of a "Restriction of choice plan." TAC ¶¶ 206, 211; *see also* ¶¶ 296-297, 313-314, 333-336. Their goal was to " 'Monetise all mutual merchants . . . so that [they] are monetised whatever plugin merchants are using.' " *Id.* ¶ 210. This "would spare Defendants 'the need to destroy all competition' because they would directly profit from every one of their competitors in the WordPress aftermarket." *Id.* ¶ 210. "Defendants expected to be able to enforce compliance, whether with a 'carrot' or a 'stick.' " *Id.* ¶ 211. Their "threat of enforcement was based on purported trademark rights that they do not even have—i.e., to stop nominative use of the Challenged Terms—which of course require no trademark license[,]" and "this was the 'stick' Defendants began to use to demand payment for products, services, and wordpress.org access that had always been free, as Defendants had promised." *Id.* ¶ 212. Defendants targeted multi-million-dollar deals with at least 11 competitors. *Id.* ¶ 213. If the competitors "did not acquiesce to the price increases via a partnership with a purported trademark license component, then 'they [we]re fair game' and Defendants would start stealing their sites,

United States District Court
Northern District of California

thereby effectively eliminating those competitors." *Id.* ¶ 214. According to WPEngine, Defendants' internal correspondence states, "if they don't take the carrot we'll give them the stick." *Id.* At least two competitors "are paying Defendants exorbitant sums as part of deals that include 'the use of' Defendants' trademarks." *Id.* ¶ 219. Taking these allegations as true and drawing all inferences in WPEngine's favor, Defendants' ability to extract millions of dollars from their competitors for WordPress access that used to be free adequately establishes increased prices at the pleading stage.

WPEngine has also plausibly pleaded decreased quality. It alleges that "stability is a key dimension on which web content management systems, web hosts, plugin developers, plugin distribution providers, and other market participants depend[,]" and that Defendants have "eliminated" it and created chaos. *Id.* ¶¶ 241-45; *see also* ¶¶ 298, 338. WPEngine points to online comments from Defendants' customers about the instability and loss of trust and internal documents expressing concerns about how the WordPress community will react to Defendants' conduct, describing that it "really hurt" and was "a really big mistake." *Id.* ¶ 246. WPEngine alleges Defendants' conduct has reduced quality by creating potential bugs and security vulnerabilities, and that internal documents recognize Defendants have made their "own customers vulnerable via to the block on WPE[ngine]." *Id.* ¶ 250. According to WPEngine, "[i]n a competitive environment, Defendants could not foment chaos or create bugs and security vulnerabilities without consequence. Defendants' ability to do so without meaningfully losing business is direct evidence of Defendants' power." *Id.* ¶ 251; *see also id.* ¶¶ 278-79, 285, 297. Because the Court finds WPEngine's allegations of increased prices and decreased quality sufficient to establish market power in the alleged markets on a theory of direct evidence,[3] it does not reach the parties' arguments about alleged indirect evidence of market power in any of the

---

[3] Defendants argue that because WPEngine alleges that their market share actually decreased, "neither Defendants nor anyone else has the power to maintain share in the WCMS market." Defs.' Mot. at 11. They may raise that argument at a later stage, but as a matter of pleading, WPEngine's allegations of market power are sufficient to survive the instant motion. *See In re Ductile Iron Pipe Fittings (DIPF) Direct Purchaser Antitrust Litig.*, No. CIV. 12-711, 2013 WL 812143, at *17 (D.N.J. Mar. 5, 2013) (finding that a decline defendants' market share – from 100 percent to 90 percent – did not foreclose the conclusion that plaintiffs adequately pleaded monopoly power).

United States District Court
Northern District of California

alleged markets.

3. Antitrust injury

To allege antitrust injury, a plaintiff must allege injury to "competition in the market as a whole" – such as marketwide reduction in output or increase in prices – "not merely injury to itself as a competitor." *Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024-25 (9th Cir. 2013).

WPEngine has adequately pleaded harm to competition. It alleges that Defendants are extracting millions in royalties from competitors who previously used WordPress for free, TAC ¶¶ 202, 213-215, 218-225; are excluding WPEngine and others from the WordPress ecosystem, *id.* ¶¶ 254-55, 340; succeeded in preventing a competitor from launching a mirror to mitigate the effects Defendants' conduct on their business, *id.* ¶ 238; have left "millions of customers and partners" to suffer cost increases in the form of increased time, money, labor, and other resources to mitigate the consequences of Defendants' conduct, service disruptions, and reduced quality; and harmed rival web content management system providers by making false promises of "free" and "open" WordPress access to steer customers away from the competition. *Id.* ¶¶ 117-18, 170-72, 179, 186, 189-195, 196, 233-250, 371, 376. As WPEngine argues, "[t]his is market-wide harm to competition, not injury to one competitor." Pl.'s Mot. at 16; *see Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567, at *6 (N.D. Cal. Oct. 18, 2011) (finding antitrust injury where plaintiff alleged not just that it suffered increased prices but also "clearly alleged harm to competition more broadly").

4. Anticompetitive conduct

"[T]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). "Anticompetitive conduct is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894 (9th Cir. 2008). Defendants' "scorched earth nuclear approach to WP[Engine]," TAC ¶ 97, satisfies this

element.[4] *Kodak*, 125 F.3d 1195, 1208 (9th Cir. 1997) ("The second element of a § 2 monopoly claim, the conduct element, is the use of monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor.") (internal quotations and citation omitted).

5. Unlawful tying

"Prohibited tying arrangements under § 1 [of the Sherman Act] include both positive and negative ties."[5] *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). A negative tie "occur[s] when the customer promises not to take the tied product from the defendant's competitor." *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 n.23 (9th Cir. 2008).

WPEngine has plausibly pleaded a negative tie. It alleges Defendants "conditioned access to wordpress.org on users agreeing 'I am not affiliated with WPEngine in any way.' " Pl.'s Mot. at 20 (citing TAC ¶¶ 546, 558). It also alleges that "[c]ustomers, developers, and web hosts apparently cannot log into wordpress.org ***unless*** they check the box." TAC ¶ 546. This is sufficient at the pleading stage. *See Entri, LLC v. GoDaddy.com, LLC*, No. 1:24-CV-00569 (AJT/WEF), 2024 WL 4468488, at *5 (E.D. Va. Oct. 10, 2024) (finding that GoDaddy's terms of use, which required users of its domain registration services to forgo the use of any third-party aggregator, constituted a negative tying agreement).

Having resolved the Automattic Defendants' motion to dismiss as to WPEngine's antitrust

---

[4] Defendants break down WPEngine's allegations of anticompetitive conduct into three categories – anticompetitive statements, interference with customers and operations, and solicitation of customers and personnel – and mount separate legal challenges as to each. Defs.' Mot. at 13-15. However, the Court "analyzes the alleged anticompetitive practices below to determine whether, in the aggregate, they tend to reduce competition and maintain [Defendants'] monopoly power." *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012); *see also City of Anaheim v. S. California Edison Co.*, 955 F.2d 1373, 1376 (9th Cir. 1992) ("[I]t would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect.").

[5] "Because the analysis of a claim under the Cartwright Act mirrors the analysis under federal [antitrust] law, [this court] do[es] not consider the Cartwright Act claims separately from the federal antitrust claims." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (internal quotations and citations omitted; first modification in original).

claims,[6] the Court now turns to the challenges raised as to Count 3, before addressing the arguments WooCommerce advances as to the remaining claims it moves to dismiss.

**B. Count 3: Computer Fraud and Abuse Act Claim, 18 U.S.C. § 1030(a)(7)**

Section 1030(a)(7) makes it a crime for anyone to:

> with intent to extort from any person any money or other thing of value, transmit[] in interstate or foreign commerce any communication containing any—
>
> (A) threat to cause damage to a protected computer;
> …
> (C) demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion

18 U.S.C. § 1030(a)(7).

WPEngine alleges Defendants' actions violated "at least" Section 1030(a)(7) "by blocking and interfering with access to wordpress.org's systems[,]" "impairing the availability of data and information needed for the normal operation of WPE[ngine]'s computers," and "forcibly overwriting millions of instances of the ACF plugin with the SCF plugin." TAC ¶¶ 400, 426. "Defendants threatened [WPEngine] with 'war' if it did not agree to pay a significant percentage of its gross revenues to Automattic." *Id.* ¶ 401. They "carried out their threats by blocking [WPEngine] from the WordPress community and all resources on wordpress.org." *Id.* ¶ 402. Mullenweg posted his "extortionate threats" publicly:

> [He] asked the WordPress community "what are the best alternative to Advanced Custom Fields @wp_acf for people who want to switch away?" He continued, "I suspect there are going to be millions of sites moving away from it in the coming weeks." When a commenter posted that it was "distasteful and shameless to criticize" ACF and WPE, Mullenweg responded "I guess we'll see how WordPress does without them," and "I guess you'll have to wait to see why people might not trust ACF as much going forward."

[6] The Court does not reach Defendants' argument that these claims are barred by the *Noerr-Pennington* doctrine. *See* Defs. Mot. at 14. As WPEngine points out, Defendants did not raise this argument in their prior motion to dismiss. Pls.' Mot. at 23. The Court thus need not consider it at this stage. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ("Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6).").

*Id.* ¶ 403. According to WPEngine, "[t]hese messages constituted continued, ongoing threats to cause damage to WPE[ngine]'s and its users' computers, including damage to the ACF plugins on WP[Engine]'s and its users' computers, and were made through the wrongful use of fear and through an abuse of Mullenweg's authority as the co-founder of WordPress and the CEO of Automattic." *Id.* "Defendants carried out their threats and hijacked WPE[ngine]'s ACF plugin, taking over WPE[ngine]'s plugin 'slug' and directory listing on wordpress.org, causing millions of instances of the plugin on WPE[ngine]'s and its users' computers to be overwritten with SCF." *Id.* ¶ 404. They did so "with intent to obtain money from WPEngine induced by Defendants' wrongful use of actual or threatened fear," knowing that "when they sent the messages that they were not entitled to the sums of money they were demanding." *Id.* ¶¶ 405, 406.

WPEngine alleges it "had a preexisting right to the continued normal operation of its own computers running the open source WordPress software[7] and a preexisting right to continued access to wordpress.org, preexisting rights WPEngine had enjoyed since it was founded—almost 15 years prior to the wrongful interference by Defendants." *Id.* ¶ 410. It "also had a preexisting right to the security and integrity of the software and plugins running on its own computers[,]" and a preexisting right to control its own software and plugins without interference from Defendants." *Id.* ¶ 411. It asserts "Defendants' threats were not hard bargaining or in furtherance of any legitimate business negotiations. Indeed, Mullenweg admitted that the demand for 8% of WPEngine's revenue as purported license royalty was based on WPE[ngine]'s income, and completely untethered to value of the WordPress or WooCommerce trademarks or Defendants' actual cost or input." *Id.* ¶ 412.

WPEngine's allegations still fail to state a plausible claim for relief under Section

---

[7] WPEngine alleges "WordPress is open source software governed by the GNU General Public License (GPL). This license granted WPE[ngine], inter alia, 'the freedom to run the program for any purpose,' 'the freedom to redistribute,' and 'the freedom to distribute copies…to others.' By intentionally banning WPE[ngine] from the WordPress community and blocking WPE[ngine] from all resources on wordpress.org, Defendants wrongfully interfered with these preexisting rights granted by both the GPL and by the various promises Defendants made to the WordPress community that access to wordpress.org would be free and open to all who wished to develop plugins or build businesses using the WordPress open source software." *Id.* ¶ 410.

1030(a)(7). As set the Court previously ruled:

> [U]nless a person has a preexisting right to be free of the threatened economic harm, threatening economic harm to induce a person to pay for a legitimate service is not extortion. *Levitt*, 765 F.3d at 1130. WPEngine cannot plausibly allege that it had a preexisting right to access and use Wordpress.org or related trademarks in perpetuity for free. Indeed, several of its claims in this action seek declaratory relief as to Defendants' trademark rights. *See* FAC ¶¶ 308-316 (seeking declaratory judgment of noninfringement); ¶¶ 317-327 (seeking declaratory judgment of non-dilution), ¶¶ 425-434 (seeking declaratory judgment of trademark misuse). Because Defendants seek "payment for services that have some 'objective value,'. . . [they have] a lawful claim to the property obtained" such that their demands for a licensing fee does not constitute extortionate conduct sufficient to support a Section 1030(a)(7) claim. *See Levitt*, 765 F.3d at 1131 (internal quotations and citation omitted). Nor are Defendants' threats of war or suspension of access. *See id.* at 1131-32 (endorsing Seventh Circuit's conclusion that " 'hard bargaining does not amount to extortion' ").

Despite WPEngine's claims that it was entitled to continued access under a general public license or pursuant to industry custom, that Defendants could not demand any payment whatsoever for use of the WordPress trademark given WPEngine's nominative fair use, *see* Pl.'s Mot. at 20-22, and that it was entitled to continued use of its own-WordPress dependent systems uninterrupted, *id.* at 21, its allegations of purported extortion for purposes of Section 1030(a)(7) are implausible. *See Levitt*, 765 F.3d at 1130 ("Threats of economic harm made to obtain property from another, are not generally considered wrongful, where the alleged extortioner has a legitimate claim to the property obtained through such threats.) (internal quotations, citation, and modifications omitted); *cf. SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1227 (11th Cir. 2023) (finding plaintiff's allegations sufficient to support a viable Section 1030(a)(7) claim where the complaint alleged that the defendants sought to obtain $1.1 million, or 32% of the plaintiff company, through wrongful methods, namely withholding plaintiff's digital property until plaintiff met defendants' demands).

Accordingly, the Automattic Defendants' motion to dismiss Count 3 is **GRANTED**, and the claim is **DISMISSED WITHOUT LEAVE TO AMEND**, because the claim fails as a matter of law.

### C. Claims against Defendant WooCommerce

WooCommerce moves to dismiss WPEngine's claims for intentional interference with contractual relations (Count 1), intentional interference with prospective economic relations (Count 2), violation of Section 1030(a)(7) (Count 3),[8] violation of the UCL (Count 4), declaratory judgment of non-infringement (Count 6), and declaratory judgment of non-dilution (Count 7). Defs.' Mot. at 21-22.

With respect to Counts 1 and 2, WooCommerce seeks dismissal because WPEngine does not identify any contract or relationship with which it allegedly interfered and does not allege any conduct by WooCommerce directed at WPEngine's customers or partners. *Id.* at 21. WooCommerce asserts WPEngine "simply alleges that 'Defendants' engaged in the alleged conduct." *Id.* Not so. The operative complaint alleges that counsel, representing both Automattic and WooCommerce, sent a September 23, 2024 letter to WPEngine about alleged trademark misuse, TAC ¶¶ 21-22 & Ex. A, and that a WooCommerce employee solicited at least one WPEngine customer after its access to WordPress.org was restricted, a fact mentioned in the solicitation email. *Id.* ¶ 127. These allegations do not, then, as WooCommerce contends, fail to " 'differentiate allegations against multiple defendants.' " Defs.' Mot. at 21 (quoting *Sanchez v. Green Messengers, Inc.*, 2021 WL 5012150, at *2 (N.D. Cal. Oct. 28, 2021)). WooCommerce's motion to dismiss Counts 1 and 2 on this ground is therefore **DENIED**.

With respect to Count 4, WooCommerce argues that "[b]ecause all claims against WooCommerce fail, there are no viable predicate acts or unfair conduct to support a UCL claim." Defs.' Mot. at 21 (internal quotations and citation omitted). As discussed above, the Court declines to dismiss Counts 1 and 2, and so, the sole ground on which WooCommerce seeks dismissal of WPEngine's UCL claim fails. Accordingly, the Court **DENIES** WooCommerce's motion to dismiss Count 4.

As to Count 6, WooCommerce argues "[b]ecause WooCommerce has filed counterclaims

---

[8] The Court has already dismissed Count 3 for the reasons discussed earlier in this order. It does not, therefore, reach WooCommerce's remaining arguments about this claim.

against WP Engine for trademark infringement, WP Engine's responsive, mirror-image claim of non-infringement is 'improper' and is 'repetitious of issues already before the court.' " Defs.' Mot. at 21 (quoting *Ketab Corp. v. Mesriani & Assocs.*, 2015 WL 8022874, at *9 (C.D. Cal. 2015)). The Court declines to dismiss Count 6 based on this limited argument. *See Stone Brewing Co., LLC v. MillerCoors LLC*, No. 318CV00331BENJMA, 2019 WL 1383273, at *10 (S.D. Cal. Mar. 26, 2019) (noting that "it is very difficult to determine whether the declaratory judgment counterclaims really are redundant prior to trial.") (internal quotations and citation omitted). Accordingly, WooCommerce's motion to dismiss Count 6 is **DENIED**.

As to Count 7, WooCommerce argues that because it has not asserted a counterclaim for dilution of its trademarks, WPEngine's claim for declaratory judgment of non-dilution is " 'hypothetical' and therefore not justiciable." Defs.' Mot. at 21 (citing *Alicea v. GE Money Bank*, 2009 WL 1766703, at *3 (N.D. Cal. June 18, 2009)). It contends "WP Engine's assertion that WooCommerce created a reasonable apprehension of a dilution claim when it sent a cease-and-desist letter in September 2024, TAC ¶ 451, is facially implausible given WP Engine's decision to wait over a year before naming WooCommerce as a defendant." *Id.* The sole case WPEngine cites in support of its argument that there is a justiciable controversy – *Stone Brewing Co., LLC v. MillerCoors LLC* – does not establish that a party can assert a claim for declaratory judgment of non-dilution based on a cease-and-desist letter. *See* 2019 WL 1383273, at *10-12. Accordingly, the motion to dismiss Count 7 is **GRANTED**, and the claim is **DISMISSED WITHOUT PREJUDICE** as to WooCommerce.

## II. WPENGINE'S MOTION TO DISMISS COUNTERCLAIMS

Automattic, Mullenweg, the WordPress Foundation, and WooCommerce ("Counterclaimants") assert counterclaims for trademark infringement under 15 U.S.C. § 1141(1) (Count 1), false advertising, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a) (Count 2), common law trademark infringement (Count 3), trademark dilution under 15 U.S.C. § 1125(c) and Cal. Bus. & Prof. Code § 14247 (Counts 4 & 5), and unfair competition under the UCL and common law (Counts 6 & 7). Countercl. ¶¶ 285-348.

WPEngine moves to dismiss. Pl.'s Mot. at 26-34. It argues the state law counterclaims

fall outside the statute of limitations, all counterclaims are barred by laches, the nominative fair use doctrine precludes the trademark counterclaims, the dilution claims fail for lack of sufficient allegations that the WordPress marks were famous when WPEngine first used them, the false advertising claim is insufficiently pleaded, the unfair competition claims fail for lack of a predicate violation or independent wrongful conduct, and Automattic and Mullenweg lack standing to bring the asserted trademark counterclaims. *Id.* at 26-35. The Court addresses these arguments below.

**A. Laches, Nominative Fair Use, Famous Marks**

Whether the counterclaims are barred by laches, nominative fair use, or because the WordPress Marks were not famous, are factual issues not suitable for resolution at this stage. *See Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008) (finding laches defense premature because "a claim of laches depends on a close evaluation of all the particular facts in a case, and it therefore is seldom susceptible of resolution by summary judgment[,]" and "[a]t the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint.") (internal quotations and citation omitted); *Barkley & Assocs., Inc. v. Quizlet, Inc.*, No. 2:24-CV-05964-WLH-E, 2025 WL 2946993, at *5 (C.D. Cal. Sept. 11, 2025) ("Although fair use may be raised on a motion to dismiss in rare cases, courts generally decline to adjudicate the defense at the Rule 12(b)(6) stage because it requires resolving factual questions that are not amenable to resolution on the pleadings."); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ("Whether a mark is famous . . . is a factual question . . . ."); *Third Est. LLC v. Cornerman Prods. LLC*, No. 2:13-CV-3074-SVW-VBK, 2013 WL 12144110, at *3 (C.D. Cal. Aug. 5, 2013) ("Defendant's argument that Plaintiff's Marks are insufficiently famous is better suited for summary judgment."). Accordingly, the Court declines to dismiss the counterclaims at this stage based on the fact-intensive grounds WPEngine asserts.

**B. Statute of Limitations**

WPEngine's resort to the statute of limitations as a basis for dismissal is also unavailing. It

contends that because Counterclaimants "were aware of the allegedly wrongful acts many years before they filed counterclaims on October 23, 2025, they are untimely[,]" as the longest statute of limitations applicable is four years. Pl.'s Mot. at 26. Counterclaimants dispute that the counterclaim filing date is the one that controls. Dkt. No. 257 ("Defs.' Reply") at 25. They argue that the statute of limitations is tolled as of October 2, 2024, when WPEngine filed its original complaint. *Id.*

The Court need not resolve this issue at this stage, because using either filing date, Counterclaimants have alleged that at least some portion of their counterclaims may be timely. Counterclaimants allege that WPEngine "substantially increased the frequency and visual dominance of the WordPress and WooCommerce Marks across [its] homepage between 2021 and 2023." Dkt. No. 238 ("Countercl.") ¶ 114. WPEngine disputes this, relying on materials outside the pleadings, to show that Counterclaimants were aware of such use "well before 2020." Pl.'s Reply at 8. However, the Court cannot draw conclusions as to the legal significance of those materials at this stage. *See Khoja*, 899 F.3d at 998 (cautioning against the "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."). Accordingly, WPEngine's motion to dismiss on statute of limitations grounds is **DENIED**.

### C. False Advertising

WPEngine moves to dismiss the false advertising portion of Count 2 on the basis that Counterclaimants have not pleaded the claim with the requisite specificity. Pl.'s Mot. at 30.[9] Counterclaimants argue that their allegations of "false advertising are part of a broad unfair competition claim, 'rooted in [WPEngine]'s use of the Mark[s] in creating a likelihood of causing confusion,' " such that "the heightened pleading standards of Rule 9(b) do not apply." Defs.' Reply at 28 (citing *Lloyds Plumbing, Inc. v. Dutton Plumbing, Inc.*, 2018 WL 6164327, at *8 (C.D. Cal. Aug. 20, 2018)). In *Lloyds*, the plaintiff clarified that its cause of action for federal

[9] In reply, WPEngine additionally attacks the claim on the basis that Counterclaimants failed to plead deception and materiality. Pl.'s Reply at 14. Because these challenges were first raised on reply, the Court does not reach them. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

United States District Court
Northern District of California

unfair competition and false designation of origin was "not one of false advertising, but rather trademark infringement rooted in [defendant's] use of the Mark in creating a likelihood of causing confusion[,]" and so, the Court declined to apply the heightened Rule 9(b) pleading standards reserved for claims sounding in fraud or mistake. *Lloyds Plumbing, Inc.*, 2018 WL 6164327, at *8. Counterclaimants here make no such clarification, and so their reliance on *Lloyds* is misplaced.

Despite Counterclaimants' contention to the contrary, "Lanham Act false advertising claims must meet the Rule 9(b) particularity pleading requirements[,]" *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905, 923 (N.D. Cal. 2019) (internal quotations and citation omitted), and here, Counterclaimants' allegations fall short. Counterclaimants allege that on August 25, 2020, WPEngine published the following on its website:

> Today, we're excited to announce that in acknowledgment of our continued commitment to WordPress, WP Engine has submitted our Five for the Future pledge, which is showcased on WordPress.org. The pledge, which is aimed at maintaining a "golden ratio" of WordPress contributors to users, proposes that organizations contribute five percent of their resources to WordPress.

Countercl. ¶ 233. Counterclaimants assert WPEngine "has failed to meaningfully honor this pledge in substance." *Id.* ¶ 235. WPEngine "has not contributed five percent of its resources—or anything close to it—to the core development or stewardship of the WordPress open-source project." *Id.* Counterclaimants also allege that on September 20, 2024, WPEngine "touted contributions of 'tens of millions of dollars in ongoing support for the broader community through events, sponsorships, and the development of educational resources.' " *Id.* ¶ 250. This too, Counterclaimants assert, is false. Counterclaimants further allege, "[o]n information and belief," that WPEngine "has not contributed tens of millions of dollars to the WordPress community." *Id.*

These allegations do not sufficiently plead the "how of the fraud," or facts showing why these statements, which concern a pledge, are misleading. *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017 (N.D. Cal. 2012) ("To satisfy Rule 9(b), the plaintiff must include the who, what, when, where, and how of the fraud. The plaintiff must set forth what

is false or misleading about a statement, and why it is false.") (internal quotations and citations omitted). Accordingly, WPEngine's motion to dismiss the portion of Count 2 that concerns false advertising is **GRANTED WITH LEAVE TO AMEND**.

### D. Unfair Competition

WPEngine seeks dismissal of the unfair competition counterclaims because they are time-barred and "entirely derivative of . . . other deficient claims and assert[] no additional wrongful conduct." Pl.'s Mot. at 34. Because, at this stage, the other counterclaims survive the challenges WPEngine raises, the motion to dismiss the derivative unfair competition counterclaims is **DENIED**. *Cf. Bertolina v. Wachovia Mortg., FSB*, No. C 10-05250 CW, 2011 WL 3473527, at *5 (N.D. Cal. Aug. 9, 2011) (dismissing unfair competition claim where the plaintiff did not allege a viable predicate violation).

### E. Standing

WPEngine contends that neither Mullenweg nor Automattic have standing to bring trademark counterclaims (Counts 1, 3-5). Pl.'s Mot. at 24; Dkt. No. 262 ("Pl.'s Reply" at 17). Because these Counterclaimants are neither owners nor registrants of the marks at issue, *see Hem & Thread, Inc. v. Wholesalefashionsquare.com, Inc.*, No. 2:19-CV-283-CBM-AFMX, 2019 WL 6486039, at *1 (C.D. Cal. Aug. 23, 2019) ("Section 32(1) permits the 'registrant'—which includes 'legal representatives, predecessors, successors and assigns' of the registrant—of a trademark to bring a civil action for infringement.") (citing 15 U.S.C. §§ 1114(1), 1127), *Gianni Versace, S.p.A., v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F. Supp. 3d 1007, 1031 (N.D. Cal. 2018) ("[O]nly a mark's owner has standing under federal and state law to bring claims for trademark dilution[.]"), nor possess "a truly exclusive license that grants all substantial trademark rights, including the ability to exclude the licensor from using the marks," *see Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL 1007666, at *5 (N.D. Cal. Mar. 13, 2013), the Court dismisses the trademark counterclaims to the extent Mullenweg and Automattic purport to assert them in their own right.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **DENIED** as to Counts

United States District Court
Northern District of California

11-14, **GRANTED** as to Count 3, which is **DISMISSED WITHOUT LEAVE TO AMEND**, and **GRANTED** as to Count 7, which is **DISMISSED WITHOUT PREJUDICE**. WPEngine's motion to dismiss the counterclaims is **DENIED,** except as to the false advertising portion of Count 2, which is **DISMISSED WITH LEAVE TO AMEND**, and the trademark counterclaims (Counts 1, 3-5), which are **DISMISSED** to the extent Automattic and Mullenweg seek to assert those claims in their own right.

**IT IS SO ORDERED.**

Dated: September 24, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**