Hon. Ajay S. Krishnan Via ECF
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 3:24-cv-06917 (N.D. Cal.)

## MOVANT'S POSITION

Defendant Automattic, Inc. ("Automattic") moves to compel Silver Lake Technology Management LLC ("Silver Lake") to produce documents responsive to the subpoenas Automattic served on Silver Lake on November 5, 2024, and on two of its officers—Lee Wittlinger and David Zhang, who also sit on WP Engine's Board (the "Individuals")—on October 10, 2025. *See* Decl. of Daniel M. Bruggebrew ("Brug. Decl.") ¶ 2, Ex. 1; Dkt. 269-2. WP Engine ("WPE") claims that Automattic and Matthew Mullenweg's (together, "Defendants") alleged conduct in September 2024 caused WPE to suffer enormous damage. Defendants contend, and the evidence establishes, that [redacted] of self-inflicted wounds and industry forces. WPE's valuation and longstanding business failures are the central issues in this case—directly relevant to WPE's "lost enterprise value" damages theory and the heart of Defendants' causation defense. The case-defining documents reflecting those issues sit in Silver Lake's files. Yet after seven live meet-and-confers over the last two weeks, and following months of correspondence, Silver Lake still refuses to produce them.

**Silver Lake is not a true third party.** Silver Lake is a private equity giant with more than $100 billion in assets under management. It invested approximately $250 million to acquire a controlling interest in WPE in 2018, holds a majority of WPE's Board seats, and calls the shots on WPE's strategy and finances. (Silver Lake also shares counsel with WPE in this litigation.) Wittlinger and Zhang are not bystanders; they are the Silver Lake principals who drove WPE's strategic direction, [redacted] that underlie WPE's "lost enterprise value" theory. Silver Lake cannot wield third-party status as a shield while simultaneously standing to gain hundreds of millions of dollars if this suit succeeds.

**Silver Lake's documents are among the most important in the case.** Two of Defendants' key defenses are causation and damages: Defendants' alleged conduct did not cause WPE harm, and any business decline WPE suffered predates—and is unrelated to—that conduct. That decline was tracked in real time by Silver Lake to protect its $250 million investment as WPE's private equity [redacted]. Silver Lake spent years [redacted] sit in Silver Lake's files. Defendants cannot mount a fair defense without them—which is precisely why Silver Lake is impeding their production. Automattic is not seeking duplication of WPE's production. The categories at issue have not been produced by WPE and include internal Silver Lake documents—the private equity owner's own internal analyses, deliberations, and communications among its principals about its $250 million investment and the deteriorating prospects of its portfolio company. As a sophisticated private equity sponsor with a quarter-billion-dollar investment to protect, Silver Lake generated internal records assessing [redacted]. Those internal records are by their nature confidential to Silver Lake and not shared with WPE—they cannot be obtained from the portfolio company and exist only in Silver Lake's files.

**Silver Lake's productions confirm obstruction, not compliance.** As of May 7, Silver Lake has produced a total of 870 documents—the bulk of that production comprising news alerts, case filings, calendar invites, and hundreds of Excel binary files duplicative of data embedded in

accompanying PowerPoint presentations. Brug. Decl. ¶ 4. From the combined custodial files of Wittlinger and Zhang, Silver Lake has produced roughly 300 documents, but virtually no text messages and few substantive emails; among the approximately 20 text messages produced overall, none are between Wittlinger and WPE's CEO. That void is not because the [redacted] Last week, [redacted] *Id.* [redacted] Silver Lake has produced only nine emails sent by Wittlinger—five of which went to an Automattic executive, such that Defendants already had them. *Id.* ¶ 5. Of the 60 communications on which Wittlinger appears in the "To" line, 15 are correspondence with Defendants, and most of the remainder are public news articles. *Id.* WPE's production is no better: only 11 emails show Wittlinger on the "From" line, and only 24 emails from WPE CEO Heather Brunner show WPE board member Wittlinger in the "To" line—and 16 of those pre-date 2020. *Id.* After more than a year of discovery, the controlling shareholder and the CEO of the plaintiff have together produced essentially zero substantive correspondence with each other. That is not a discovery record. It is obstruction of the discovery process.

**Silver Lake's search terms are gerrymandered to miss the case.** On April 14, Automattic moved to compel the Individuals to run Automattic's proposed search terms. Dkt. 269. The Court denied the motion without prejudice but ordered Silver Lake to share its search terms and warned that Silver Lake and the Individuals "risk being ordered to produce additional documents on short order and sit for an additional deposition" if those terms proved inadequate. Dkt. 273 at 1:22–25. They are.

Silver Lake thereafter disclosed 20 sets of email search terms and four sets of phone search terms. Brug. Decl. ¶ 12; Ex. 2. With the exception of the final email search term set, which is inexplicably constrained to emails to or from [redacted] that do not contain WPE email addresses (Brug. Decl. ¶ 13; Ex. 2 at 3), not one includes any term going to [redacted]—no "sale," "sell," "value," "valuation," "purchase," "bid," "offer," or "buyer." Ex. 2 at 1–3. Yet WPE's damages theory rests on the proposition that Defendants' alleged conduct in September 2024 destroyed WPE's enterprise value. Silver Lake also refuses to disclose hit counts arising from the disclosed search terms as well as whether documents identified as responsive were reviewed or whether anything responsive has actually been produced. Brug. Decl. ¶ 14. The most charitable explanation is that the terms were engineered to avoid responsive material. Either way, the result of the production confirms that their plan worked.

**The meet-and-confer record.** Between April 30 and May 5, the parties engaged in a series of live meet-and-confers. Brug. Decl. ¶ 11 & n.1. On May 1, Automattic proposed a search string targeting both the events alleged in the Complaint ("non-financial terms") and WPE's financial condition and Silver Lake's [redacted] ("financial terms"). *Id.* ¶ 15–16. Silver Lake offered to run only the non-financial terms and separately to produce monthly financial reports issued by WPE to Silver Lake from January 2023 through August 2025—but only on the condition that Automattic abandon its request to run the financial terms that would identify documents concerning WPE's [redacted]. *Id.* ¶¶ 16–18. But that is the whole case. Silver Lake's offer was to produce everything except what matters.

Silver Lake cannot stand behind WPE seeking hundreds of millions of dollars while withholding the documents that show why WPE [redacted]. That is not

third-party discovery—it is the controlling shareholder using formal third-party status to insulate from production the very evidence that defeats the damages case it stands to collect on.

**Relief Requested.** Automattic respectfully requests that the Court order Silver Lake to: (i) run Automattic's proposed search terms—including the financial terms—across the Individuals' custodial communications for the period 1/1/21–8/15/25; (ii) immediately produce documents responsive to Individual RFP Nos. 1, 4, 6, 9, 14, and 22, and Silver Lake RFP Nos. 2, 3, 5, 10, 13, and 14; and (iii) produce the monthly financial reports—responsive to Silver Lake RFP No. 5—that Silver Lake has already collected but conditioned on Automattic's abandonment of this motion. Because Silver Lake's delay has run past the point at which Defendants could have prepared for the Individuals' depositions on a complete record, Defendants further request leave to move to recall each Individual for a second day of deposition after Silver Lake completes its production and Defendants have had reasonable time to prepare.

## NON-MOVANT'S POSITION

Silver Lake ("SL") has fully complied with its obligations as a non-party. Its financial production includes quarterly valuation reports from January 1, 2021 to August 15, 2025 from its third party valuation agent [redacted] ("[redacted]"), documents SL provided to [redacted], sensitivity analyses, forecasts and related materials requested by Defendants, quarterly investor updates, documents regarding [redacted] from pertinent shared drives and communications with [redacted] ("[redacted]") — the very categories Defendants claimed they needed most in prior drafts of their section of this joint statement. The long history of Defendants' ever-changing demands is documented in detail in the Declaration of Sara Jenkins ("Declaration"). Defendants' early April draft of this joint statement sought specific documents in four categories—(i) pre- and post-incident projections and forecasts, (ii) investment models, (iii) investor updates, and (iv) [redacted] materials. SL agreed to produce the unique and relevant documents Defendants identified and has done so. When Defendants circulated a new draft in late April that requested new documents falling within these same four categories, SL agreed to produce more documents. That Defendants have now eliminated those four categories from this motion is not an accident; it is the record of a non-party that has done exactly what the rules require.

This third version of Defendants' motion continues to move the goalposts. The first time Defendants demanded that SL produce WPE's monthly financial reports was May 1. On May 1, Defendants also sent SL an expanded set of financial search terms and demanded that SL run them on the emails of David Zhang and Lee Wittlinger (the "Individuals"). Ordering SL to run Defendants' terms and review the resulting 12,000+ documents would reward exactly this kind of escalating, ever-shifting discovery conduct. Defendants are not engaged in targeted discovery to fill specific, identified gaps; this is a fishing expedition through the internal files of a non-party. Defendants' motion should be denied because they have failed to demonstrate that (i) they made any effort to avoid burdening SL as this Court previously ordered (Dkt. 168), or (ii) that they are seeking unique, relevant information unavailable from WPE.

**The Motion Contains False Allegations.** Defendants' motion rests on demonstrably false factual premises. Their claim SL was the architect of WPE's business strategy is contradicted by WPE's testimony. Their claim there was a failed [redacted] in 2024 is also false—something Defendants either know or should know based on the documents already in their possession.

**WPE's Financial Production.** WPE, the party to this case, has produced over 630,000 pages of documents, 13,000 of which are finance-related. WPE and Defendants reached a reciprocal agreement about their respective financial productions. As part of that agreement, WPE produced (i) valuations, board minutes, and board presentations and communications with [redacted] and documents referring to [redacted]; and (ii) financial forecasts approved by WPE's Board, and their underlying basis (2021–2025). WPE has produced at least 1,113 emails to, from, or copying one or both of the Individuals. Defendants' assertion regarding the number of emails between Brunner and Wittlinger produced by WPE is demonstrably wrong. By ignoring full email chains and emails on which Wittlinger was copied, Defendants undercounted WPE's production by a wide margin. WPE in fact produced 132 emails from Brunner to Wittlinger, either directly or by copy, 64 of which were addressed to Wittlinger directly, and 32 emails from Wittlinger to Brunner, either directly or by copy.

**Defendants Served Other Subpoenas For Financial Information.** Defendants already have substantial financial information from multiple sources. Defendants served subpoenas on eight third parties seeking documents related to finances, valuations, [redacted]—including subpoenas on [redacted] seeking their communications with SL. [redacted] has produced 252 documents and [redacted] has produced 383 documents.

**SL's Financial Production.** SL has produced 872 documents totaling 8,099 pages. Declaration, ¶ 6. The full list of financial materials SL has produced is detailed in the Declaration. It includes: (i) detailed performance results; (i) forecasts and supporting documents; (ii) quarterly valuation reports from [redacted] that valued SL's stake in WPE; (iii) sensitivity analyses; (iv) projections and capitalization information sent to [redacted]; (v) quarterly investor updates related to WPE; (vi) documents responsive to Request No. 14 contained in shared folders related to [redacted]; and (vii) emails between the Individuals and [redacted] responsive to Request 14 that hit on an earlier version of Defendants' financial search terms. SL has also now run Defendants' non-financial search terms and produced responsive emails. Defendants' remaining complaints are baseless. The news alerts, case filings, and calendar invites produced by SL are responsive to Defendants' requests. As to texts, before filing this motion, Defendants had dropped their request that SL run any additional search terms across the Individuals' text messages. Declaration, ¶ 18.

**SL's Prior Searches Were Appropriate.** The search terms SL already ran were the product of more than 18 months of negotiations regarding Defendants' subpoena. Before Defendants sent their draft joint statement in early April, SL had agreed to produce documents regarding core issues in the case, such as documents (i) referencing Automattic, Mullenweg, and/or WordPress.com relating to potential or actual litigation involving WPE or Defendants' alleged conduct; (ii) concerning the harm or damage Defendants caused to WPE; and (iii) concerning this action. SL ran terms which targeted these topics and has produced responsive documents. In addition to these terms, SL has also now run Defendants' non-financial search terms on the Individuals' emails and produced responsive documents, mooting this demand in Defendants' motion.

**Rule 45.** Under Rule 45, non-parties are not subject to the same discovery burdens as litigants and are afforded "extra protection." *Epitopix, LLC v. Zoetis Inc.*, 2025 WL 1310801, at *5 (N.D. Cal. May 6, 2025). A party seeking information from a non-party must identify "unique and material evidence" not in the party's possession. *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). Defendants' argument that a non-party like SL loses Rule 45 protections if it holds a

financial interest in litigation or has board representation has been rejected. In *LegalZoom.com v. Rocket Lawyer Inc.*, 2015 WL 12832823, at *2 (N.D. Cal. Mar. 23, 2015), the court rejected the argument that Google was not a non-party because it was a significant investor in defendant and had a seat on defendant's board. Similarly, *Banneker Partners, LLC v. Milk Moovement, Inc.*, 2023 WL 3224444, at *3–4 (E.D. Cal. May 3, 2023), held that Rule 45 applied to a subpoena served on a private equity firm that, like SL is to WPE, was a majority shareholder of the plaintiff.

**Defendants' Demand For Monthly Financial Reports Should Be Denied.** Defendants negotiated a comprehensive agreement with WPE governing financial discovery that did not call for WPE's monthly financial reports—and cannot now end-run that agreement by demanding the same documents from a non-party.

**Non-Party SL Should Not Be Required To Run Onerous Search Terms.** Defendants' proposed financial search terms would generate over 12,000 hits across the Individuals' emails—using unqualified words like "sale," "value," "model," "purchas," and "saving" that appear in countless documents SL generates across its portfolio of investments given it is in the business of buying and selling companies. It would take an attorney approximately 37 business days to review these documents. That is not targeted discovery designed to minimize burden on a non-party. It is an open-ended trawl through SL's internal files and is unwarranted given SL has already produced the specific financial and [redacted] materials Defendants requested.

Tellingly, Defendants themselves recognized the excess of their demand—on May 5 they proposed limiting review to communications with four entities, only to retract that proposal the following morning and revert to demanding that SL review all 12,000+ documents. The Court should not reward this negotiating conduct.

Aside from being excessive and ever-shifting, Defendants' demand is also duplicative and confirms they took no effort to minimize the burden on SL. Defendants insist that SL produce communications with WPE, even though WPE is a party and has already produced at least 1,100 emails involving the Individuals. A party seeking documents from a non-party must identify information that is both unique and not obtainable from a party. Defendants cannot meet that standard for communications that are, by definition, also in WPE's possession. Defendants' request that SL apply untethered search terms across the Individuals' files should be denied.

DATED: May 11, 2026 COBLENTZ PATCH DUFFY & BASS LLP

*/s/* Daniel M. Bruggebrew
Daniel M. Bruggebrew
*Attorneys for Defendants*
Automattic Inc. and Matthew Mullenweg

DATED: May 11, 2026 QUINN EMANUEL URQUHART & SULLIVAN LLP

*/s/* Rachel Herrick Kassabian
Rachel Herrick Kassabian
*Attorneys for Non-Party Silver Lake Technology Management, L.L.C.*