QUINN EMANUEL URQUHART & SULLIVAN LLP
Rachel Herrick Kassabian (SBN 191060)
rachelkassabian@quinnemanuel.com
Yury Kapgan (SBN 218366)
yurykapgan@quinnemanuel.com
Margret M. Caruso (SBN 243473)
margretcaruso@quinnemanuel.com
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Kevin Y. Teruya (SBN 235916)
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Brian Mack (SBN 275086)
brianmack@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6400
Facsimile: (415) 875-6700

*Attorneys for Plaintiff WPEngine, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

WPENGINE, INC., a Delaware corporation,

Plaintiff,

v.

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,

Defendants.

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation,

Counterclaimants,

v.

WPENGINE, INC., a Delaware corporation,

Counterdefendant.

Case No. 4:24-cv-06917-AMO

**WP ENGINE'S PRE-FILING LETTER BRIEF RE OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND WP ENGINE'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hon. Araceli Martínez-Olguín

October 30, 2026 **Via ECF**
Hon. Araceli Martínez-Olguín
Re: *WPEngine, Inc. v. Automattic Inc. et al.*, No. 4:24-cv-06917 (N.D. Cal.)

Dear Judge Martínez-Olguín:

Pursuant to the Court's Standing Order, plaintiff WP Engine, Inc. ("WPE") responds to Defendants and Counterclaimants' October 27, 2026 letter (Dkt. 441). WPE will oppose Defendants' planned summary judgment motion on all counts, and on multiple grounds. WPE also intends to cross-move for partial summary judgment on its claims for interference with contractual relations (Count 1) and interference with prospective economic advantage (Count 2). As for Defendants' stated intention to file a second anti-SLAPP motion, that is a non-starter. This Court denied Defendants' anti-SLAPP motion more than a year ago. Dkt. 169 at 22–24. Where, as here, a defendant chooses to file an initial "anti-SLAPP motion to strike on a Rule 12/insufficiency of the pleadings" basis, they cannot later take a second bite at the apple by filing an "evidentiary based" anti-SLAPP motion on summary judgment. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 714–15 (N.D. Cal. 2019), *aff'd sub nom. Planned Parenthood Fed'n of Am., Inc. v. Newman*, 2022 WL 13613963 (9th Cir. Oct. 21, 2022). Separately, Defendants' court-ordered deadline to file their anti-SLAPP lapsed on December 19, 2024. Dkt. 61.

***Intentional Interference Claims (Counts 1 & 2).*** Defendants' argument that no customer "breached" or "cancelled a fixed-term contract early" is refuted by the evidence. Moreover, the tort requires "actual breach *or disruption*," and interference that makes performance "more expensive or burdensome" suffices. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126–27 (1990) (emphasis added). Defendants' own authority illustrates the point: in *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.* the plaintiff "continued to perform on its contracts" but only at "significantly increased" cost. 766 F.3d 1002, 1005–07 (9th Cir. 2014) (reversing JMOL against plaintiff). Defendants' claim that WPE cannot identify lost customers is refuted by their own records, and any dispute over magnitude "goes to the severity of the disruption, rather than the fact." *Google LLC v. Point Fin., Inc.*, 2026 WL 2211780, at *9 (N.D. Cal. July 31, 2026).

***WPE's Cross Motion for Partial Summary Judgment on its Interference Claims.*** The Court has already found WPE likely to succeed on its claim for interference with contractual relations (Count 1), and discovery has confirmed that finding through Defendants' own witnesses and documents. The same record establishes the shared elements of Count 1 and WPE's claim for interference with prospective economic advantage (Count 2), and WPE will move on all of the elements as follows: (1) the existence of a valid contract or relationship; (2) defendant's knowledge thereof; (3) defendant's intentional acts designed to induce a breach or disruption; (4) actual breach or disruption; and (5) resulting damage. WPE therefore seeks summary judgment on liability under Count 1 and summary adjudication of every element of Count 2 except independent wrongfulness, which would be reserved for trial (including by a verdict for WPE on any claim premised on the same conduct). Alternatively, WPE seeks adjudication of every element not genuinely in dispute, with any disputed defense reserved for trial. The quantum of damages will also be reserved for trial.

***Promissory Estoppel Claim (Count 15).*** Defendants claim their promises relating to plugin hosting and plugin approval were too conditional and not sufficiently definite. But the Court already held

that Defendants' promises were definite enough to support a promissory estoppel claim. Dkt. 169 at 24-25. WPE witnesses, including founder Jason Cohen, testified at deposition that these promises were specific and definite enough to induce WPE to build its business around the WordPress CMS and acquire and continue to develop the ACF plugin. Defendants nowhere disclosed that access could be cut off at Mullenweg's whim or for anticompetitive or pretextual purposes. WPE also relies on dozens of additional promises disclosed in discovery responses and via Rule 30(b)(6) deponents, relating to open and continued access to the community and the code, control of the trademarks, plugin development and autonomy, among others.

***Unjust Enrichment Claim (Count 18).*** Defendants' first argument—that California does not recognize a standalone claim for unjust enrichment—is incorrect. *E.g.*, *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). Defendants' second argument is foreclosed because WPE pleaded legal and equitable remedies in the alternative. Which remedy applies turns on how liability is resolved at trial. Dkt. 233 ¶ 593. Defendants' third argument is rife with factual disputes—which must be resolved by the factfinder, not on summary judgment.

***Antitrust Claims (Counts 11–14).*** WPE proves the existence of, and Defendants' power in, a WCMS foremarket and three WordPress aftermarkets. Cragg Report ¶¶ 175–484, 494–610. While Defendants quibble about what products are in those markets, "defining the relevant market is a factual inquiry for the jury." *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993). This applies to aftermarkets too. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 486 (1992). WPE also proves barriers (Cragg ¶¶ 13, 22, 105 n. 185, 245, 271 n. 580, 341, 572–79, 582, 585, 613, 781); Defendants' dispute of this proof is no basis for summary judgment. *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 11230167, at *17 (N.D. Cal. May 21, 2018). Defendants claim "WordPress's share has been declining," but the Court already rejected that as a bar. Dkt. 410 at 5 n.3; *see also Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 2009 WL 4061631, at *8 (D. Mass. Nov. 20, 2009).

Defendants' anticompetitive deception arguments are misguided. The choices market participants made *after* learning the truth say nothing about whether the market was deceived *before* then. Even post-revelation, market participants continuing to choose WordPress simply shows Defendants' power and lock-in of consumers. And deception and its effects are jury questions. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1117, 1126–27, 1130 (10th Cir. 2014).

Regarding aftermarkets, as this Court already found, Dkt. 410 at 3, WPE need not satisfy the *Kodak/Epic* factors if Defendants have power in the foremarket. WPE proves as much. Cragg ¶¶ 567–83. In any case, WPE does satisfy them, including proving restrictions that were ***not*** generally known when participants selected WordPress in the foremarket. *Id.* ¶¶ 367–82 (Plugin Distribution), 428–35 (Hosting), 463–77 (Custom Field Plugins). WPE also establishes Defendants' power in and harm to each aftermarket, *id.* ¶¶ 584–610, which are issues for trial. *Arista*, 2018 WL 11230167, at *16–19. Defendants' other distortions of WPE's theories are red herrings.

Defendants' arguments on tying and damages should also be rejected. The Court already found WPE stated negative tying claims as a legal matter (Dkt. 410 at 7–8); Defendants' disputing the *facts* is no basis for summary judgment. As to damages, WPE's economists tie its losses to Defendants' misconduct. Further, in antitrust cases the defendant bears the uncertainty caused by

its own wrongdoing, making disaggregation of damages unnecessary. *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 37 (E.D. Pa. 2019).

***Defamation Claims (Counts 8–10).*** Defendants' arguments that their statements are nonactionable opinions already were raised in their motion to dismiss, and the Court already rejected them, stating, "[t]aking WPEngine's allegations as true, a reasonable juror could conclude that the alleged Defamatory and Slanderous Statements are fact or that they are opinions." Dkt. 169 at 22. As for Defendants' argument regarding actual malice, the record is replete with evidence of Defendants' malice, as WPE will show. Defendants knew their statements were false or "entertained serious doubts as to the[ir] truth." *Manzari v. Assoc. Newspapers Ltd.*, 830 F.3d 881, 891 (9th Cir. 2016).

***CFAA Claim (Count 17).*** Defendants ignore the clear damage in forcibly overwriting plugin code on millions of computers as part of a covert and automatic update. Automattic's Rule 30(b)(6) witness Barry Abrahamson provided damning testimony confirming these facts. Abrahamson Dep. 333:16-336:11. Overwriting computer code is the quintessential "impairment to the integrity . . . of data, a program, a system, or information" the CFAA protects against. 18 U.S.C. § 1030(e)(8) (defining "damage"). WPE's attempts to reassure its customers about site performance does not negate the damage to the plugin code. The Court already found WPE adequately alleged intent, recklessness, and lack of authorization (Dkt. 169 at 14–18), and discovery yielded that evidence. And Defendants' claim that the fork "improved security" is a disputed fact.

***UCL Claim (Count 4).*** WPE's UCL claim is based on *all* of Defendants' conduct, not just antitrust. Even as to antitrust, Defendants' own citation to *Epic* confirms a UCL claim stands on its own.

***WPE is Entitled to Summary Judgment on All Counterclaims. (Counts 1–7).*** Counterclaimants' contemplated motion is procedurally improper. WPE understands that it shall be the moving party as to the counterclaims against it, with Counterclaimants as the cross-moving party should they elect to cross-move. (Dkt. 373). On October 25, WPE notified Defendants of its intention to move for summary judgment on all Counterclaims, to avoid redundancy and streamline the parties' motions.

WPE's MSJ letter explains why it is entitled to summary judgment on the counterclaims and why, necessarily, Defendants' cross-motion arguments here fail. Dkt. 442. WPE uses "WordPress" to describe the software on which its customers' websites are built. Phrases like "WordPress hosting" reference its hosting of WordPress websites, as it must for consumers to understand what websites it services. Hosting plan names like "Essential WordPress" refer to the WordPress software WPE's plan supports—not a competing software offered by WPE. Counterclaimants' claim that WPE "flooded" its website with these terms is a red herring; the test turns on "the *nature* of the uses," not their "number." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019).

As for laches, Counterclaimants cannot dispute that WPE's uses of "WordPress" began more than a decade ago. They literally pasted such uses into their Counterclaims. Dkt. 238 ¶¶ 102–08. Counterclaimants also misstate the limitations period, but it does not help them as WPE's uses, which Counterclaimants plainly were aware of yet took no action on, date back more than a decade. Nor can a party avoid laches simply by alleging an increased use of trademarks. *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006). Evidence of the prejudice to WPE is overwhelming. Dkt. 442.

Dated: October 30, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Rachel Herrick Kassabian*
Rachel Herrick Kassabian
*Attorney for Plaintiff WPEngine, Inc.*