**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

WPENGINE, INC., a Delaware corporation,

*Plaintiff,*

v.

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation,

*Defendants.*

AUTOMATTIC INC., a Delaware corporation; MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION; a California corporation; and WOOCOMMERCE INC.; a Delaware corporation,

*Counterclaimants,*

v.

WPENGINE, INC., a Delaware corporation,

*Counterdefendant.*

Case No. 4:24-cv-06917-AMO (ASK)

**DECLARATION OF SARAH MENENDEZ IN SUPPORT OF COUNTERCLAIMANTS' AMENDED STATEMENT IN RESPONSE TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED**

Honorable Araceli Martínez-Olguín

I, Sarah Menendez, hereby declare as follows:

1. I am the Chief Litigation Officer for Automattic Inc. ("Automattic").

2. I have personal knowledge of the facts set forth herein. If called upon as a witness in this action, I could and would testify competently thereto. I submit this declaration in support of Counterclaimants' Amended Statement in Response to Plaintiff's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ("Statement") in connection with WPEngine, Inc.'s ("WPE") pre-filing letter brief concerning its anticipated motion for summary judgment ("the Letter") (Dkt. 443).

3. Automattic makes internal written guidance available to all employees concerning confidentiality. Automattic informs its employees that all employees must maintain confidentiality around internal company information, which includes information transmitted via Slack, and that sharing private or confidential information externally is a serious breach that may jeopardize employment at Automattic. Automattic also informs its employees that there is an expectation that information shared in a private channel is generally treated as private and confidential.

4. In my role, I am knowledgeable of the processes that Automattic follows to ensure confidentiality when negotiating with third parties regarding their WordPress and WooCommerce hosting offerings and use of the WordPress and WooCommerce trademarks. When a deal is successfully negotiated, Automattic enters into a partnership and/or license agreement with the third party. These third parties include companies that compete with Automattic in offering WordPress web hosting services to customers. Before entering into negotiations with these third parties, Automattic typically enters into nondisclosure agreements to ensure the confidentiality of the negotiations.

5. Automattic employees frequently discuss business strategy internally, including candid evaluation of competition and partnership opportunities with other hosting providers. These communications are strictly internal to Automattic and treated as confidential.

6. In my experience and to the best of my knowledge, the confidentiality obligations specified above have been carefully followed at Automattic. I have reviewed the Letter from the

perspective of whether it includes information that Automattic would consider confidential under policies and practices described above.

7. I have reviewed the highlighted excerpts of A8C01516532 on page 1. The excerpted document is a record of the “marketing” Slack channel at Automattic, wherein nonpublic business strategy is regularly discussed. The quotations reflect the analysis of one employee—Automattic’s in-house counsel at the time—on trademark enforcement and licensing strategy, writing with regard to a particular competitor. The quotations reveal Automattic’s proprietary business strategy at the time and provide valuable insight for competitors into Automattic’s internal decision-making.

8. I have reviewed the highlighted excerpt of A8C00709457 on page 3. The excerpted document is a slide deck from a proprietary marketing and branding strategy presentation. The figures are the results of an internal brand survey commissioned by Automattic. Disclosure of these figures would allow competitors to avoid the time and expense of undertaking a similar survey.

9. The information in each of the above excerpts is not publicly known. Public disclosure of this information would harm Automattic by allowing competitors insight into our business practices and understanding of competitors’ behavior. Actual and potential counterparties could use the confidential information excerpted in the Letter as a negotiating tool in potential business transactions or to otherwise alter their business relationship with Automattic. Disclosure of the survey figures, internal business strategy, and analysis of competitor behavior by various Automattic employees would be a gain to competitors not otherwise possible without the disclosure of confidential information.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 9th day of November 2026, at Houston, Texas.

By: /s/ Sarah Menendez
Sarah Menendez