STEPHEN SHACKELFORD, JR. (*pro hac vice*)
SHAWN RABIN (*pro hac vice*)
JILLIAN HEWITT (*pro hac vice*)
MAX STRAUS (*pro hac vice*)
RUSSELL RENNIE (*pro hac vice*)
GENG CHEN (*pro hac vice*)
SHAULI BAR-ON (SBN 356650)
EUDOKIA SPANOS (*pro hac vice*)
NATHAN M. REHN (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
srabin@susmangodfrey.com
jhewitt@susmangodfrey.com
mstraus@susmangodfrey.com
rrennie@susmangodfrey.com
gchen@susmangodfrey.com
sbar-on@susmangodfrey.com
espanos@susmangodfrey.com
trehn@susmangodfrey.com

*Attorneys for Defendants and Counterclaimants Automattic Inc. and WooCommerce Inc., and Counterclaimant WordPress Foundation*

ELIZA FINLEY (SBN 301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
efinley@susmangodfrey.com

Timothy P. Crudo (SBN 143835)
Rees F. Morgan (SBN 229899)
Mark L. Hejinian (SBN 281417)
Daniel M. Bruggebrew (SBN 307037)
Rachel Rose Suhr (SBN 323531)
**COBLENTZ PATCH DUFFY & BASS LLP**
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

*Attorneys for Defendant and Counterclaimant Matthew Charles Mullenweg*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

WP ENGINE, INC., a Delaware corporation,

Plaintiff,

vs.

AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual; and WOOCOMMERCE INC., a Delaware corporation

Defendants.

AUTOMATTIC INC., a Delaware corporation; and MATTHEW CHARLES MULLENWEG, an individual; WORDPRESS FOUNDATION, a California corporation; and WOOCOMMERCE INC., a Delaware corporation

Counterclaimants,

vs.

WP ENGINE, INC., a Delaware corporation,

Counterdefendant.

Case No. 4:24-cv-06917-AMO (ASK)

Honorable Araceli Martinez-Olguin

**AUTOMATTIC INC., WOOCOMMERCE INC. AND MATTHEW CHARLES MULLENWEG'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date: April 1, 2027
Time: 2:00 PM
Place: Courtroom 5, 2nd Floor

Complaint Filed: October 2, 2024

## TABLE OF CONTENTS


NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT .................................... v

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 1

I. Summary Judgment Is Warranted on Unjust Enrichment (Count 18) ................................ 1

A. California Recognizes No Standalone Unjust Enrichment Claim .......................... 1

B. WPE Cannot Prove a Claim for Quasi-Contract Either .......................................... 2

1. Legal Remedies Preclude Equitable Restitution ......................................... 2

2. WPE Contributed Voluntarily and Out of Self-Interest .............................. 2

II. Summary Judgment Is Warranted on Promissory Estoppel (Count 5) ............................... 3

A. WPE Cannot Prove Clear and Unambiguous Promises .......................................... 3

B. WPE Cannot Prove Reasonable Reliance ............................................................. 4

III. WPE Cannot Prove Its Monopolization, Antitrust-Based Unfair Competition Law (UCL), and Tying Claims (Counts 11–14) ........................................................................ 5

A. WPE's "Open-Source WCMS" Market Is Artificially Narrow ............................. 5

B. There Is No Direct Evidence of Monopoly Power or Evidence of Harm ................ 6

C. WPE's Indirect Evidence of Monopoly Power Fails ............................................. 9

D. WPE's Aftermarkets Fail the *Kodak* / *Epic* Test ................................................. 11

E. The Record Does Not Support the Negative Tying Claim .................................. 11

F. WPE Has Failed to Provide Sufficient Evidence on Damages ............................. 11

IV. There Is No Genuine Dispute Over the Defamation Claims (Counts 8–10)..................... 12

A. Statement 1—"Chopped up, Hacked, Butchered" ............................................... 12

B. Statement 2—"Hacked Up, Bastardized Simulacra" ............................................ 13

C. Statement 3—Calling Private Equity Groups "Parasitic Entities"........................ 14

D. Statement 4—WPE Has "Given Nothing Back" ................................................. 14

V. WPE Cannot Prove the Computer Fraud & Abuse Act Claim (Count 17)....................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerotec Int'l v. Honeywell Int'l*,
836 F.3d 1171 (9th Cir. 2016), (D. Ariz. 2014) .......... 8, 11

*Aguilar v. International Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) .......... 3, 4

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*,
108 F.3d 1147 (9th Cir. 1997) .......... 8, 9

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......... 15

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 1

*Breathitt Cnty. Sch. Dist. v. Meta Platforms Inc.*,
2026 WL 587754 (N.D. Cal. Feb. 9, 2026) .......... 2

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
49 F.4th 520 (5th Cir. 2022) .......... 8

*Broome v. Regents of Univ. of California*,
80 Cal.App.5th 375 (2022) .......... 4

*City of Vernon v. S. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) .......... 12

*Condux Int'l, Inc. v. Haugum*,
2008 WL 5244818 (D. Minn. Dec. 15, 2008) .......... 15

*In re De Laurentiis Ent. Grp. Inc.*,
963 F.2d 1269 (9th Cir. 1992) .......... 2

*Elkay Int'l Ltd. v. Color Image Apparel, Inc.*,
2015 WL 13917734 (C.D. Cal. Feb. 4, 2015) .......... 3

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) .......... 6, 11

*ESG Capital Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 1

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
100 F. Supp. 2d 1086 (C.D. Cal. 1999) .......... 4

*Gorlick Distrib. Ctrs. LLC v. Car Sound Exhaust Sys., Inc.*,
723 F.3d 1019 (9th Cir. 2013)........................................................................................ 6

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ........................................................................................ 2

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) .................................................................................. 13, 14

*Huskinson & Brown v. Wolf*,
32 Cal.4th 453 (2004) ...................................................................................................... 2

*Info. Control Corp. v. Genesis One Computer Corp.*,
611 F.2d 781 (9th Cir. 1980)................................................................................... 11, 13

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................... 15

*Laks v. Coast Fed. Sav. & Loan Ass'n*,
60 Cal.App.3d 885 (1976)............................................................................................... 5

*Magnetar Tech. Corp. v. Intamin, Ltd.*,
801 F.3d 1150 (9th Cir. 2015)........................................................................................ 11

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
164 F.4th 710 (9th Cir. 2026) .......................................................................................... 9

*Mapsong PC v. Blue Shield of Cal. Life & Health Ins.*,
780 F. Supp. 3d 939 (C.D. Cal. 2024) ............................................................................. 2

*Mend Health, Inc. v. Carbon Health Techs., Inc.*,
588 F. Supp. 3d 1049 (C.D. Cal. 2022) ........................................................................... 4

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*,
924 F.2d 1484 (9th Cir. 1991).......................................................................................... 6

*Murphy v. Twitter, Inc.*,
60 Cal.App.5th 12 (2021) ................................................................................................. 5

*Newcal Indus., Inc. v. Ikon Office Sol.*,
513 F.3d 1038 (9th Cir. 2008)........................................................................................... 5

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
156 F.Supp.3d 1094 (C.D. Cal. 2015) .............................................................................. 8

*Partington v. Bugliosi*,
56 F.3d 1147 (9th Cir. 1995)........................................................................................... 15

*Phoenix Trading, Inc. v. Loops LLC*,
732 F.3d 936 (9th Cir. 2013)........................................................................................... 13

*Planet Aid, Inc. v. Reveal*,
44 F.4th 918 (9th Cir. 2022) .................................................................................... 14

*Posa, Inc. v. Miller Brewing Co.*,
642 F. Supp. 1198 (E.D.N.Y. 1986)................................................................................. 11

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995)...................................................................................... 6, 10

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012)............................................................................................. 3

*SDV/ACCI, Inc. v. AT & T Corp.*,
522 F.3d 955 (9th Cir. 2008)........................................................................................... 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)............................................................................................. 2

*Stiles v. Walmart, Inc.*,
639 F.Supp.3d 1029 (E.D. Cal. 2022)................................................................................ 6

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
547 F.Supp.2d 1086 (C.D. Cal. 2007) ............................................................................... 6

*Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*,
187 F.4th 1092 (9th Cir. 2026) ........................................................................................ 11

*Tamkin v. CBS Broad., Inc.*,
193 Cal.App.4th 133 (2011) ............................................................................................ 14

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
875 F.2d 1369 (9th Cir. 1989)............................................................................................ 5

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995).............................................................................................. 14

*United States v. Syufy Enterprises*,
903 F.2d 659 (9th Cir. 1990)............................................................................................ 10

*Van Buren v. United States*,
593 U.S. 374 (2021) ......................................................................................................... 15

*Wallace v. Int'l Bus. Machines Corp.*,
467 F.3d 1104 (7th Cir. 2006)........................................................................................... 10

**Statutes**

18 U.S.C. § 1030(a)(5).......................................................................................................... 15

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on April 1, 2027, at 2:00 PM, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Araceli Martínez-Olguín, in the United States Courthouse, Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Defendant-Counterclaimants Automattic Inc., WooCommerce Inc., and Matthew Charles Mullenweg (together, "Defendant-Count claimants"), will and hereby do move this Court, under Rule 56 of the Federal Rules of Civil Procedure, for summary judgment against Plaintiff WP Engine, Inc. ("WPE") on its claims for promissory estoppel (Count 5), defamation (Counts 8–10), monopolization, tying, and unfair competition to the extent predicated on alleged antitrust violations (Counts 11–14), violation of the Computer Fraud and Abuse Act (Count 17), and unjust enrichment (Count 18). This Motion is made on the ground that Defendants are entitled to judgment as a matter of law because there is no genuine dispute of material fact as to Counts 5, 8–14, 17, and 18. Specifically: (1) California recognizes no standalone claim for unjust enrichment, and any quasi-contract claim fails because WPE has adequate legal remedies and conferred any benefit voluntarily and in its own self-interest; (2) WPE cannot establish a clear and unambiguous promise or reasonable reliance to support promissory estoppel; (3) WPE's proposed markets are artificially narrow, and there is no evidence of monopoly power, harm to competition, or antitrust injury; (4) the challenged statements are nonactionable opinion and WPE cannot prove actual malice; and (5) WPE cannot prove the impairment or damage required under the Computer Fraud and Abuse Act.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Stephen Shackelford Jr. and exhibits thereto, the pleadings and records on file in this action, and such other argument or evidence as may be presented at or before the hearing.

Dated: November 20, 2026

**SUSMAN GODFREY LLP**

By: /s/ Stephen Shackelford, Jr.
Stephen Shackelford, Jr.

*Attorneys for Defendants and Counterclaimants Automattic Inc. and WooCommerce Inc., and*

*Counterclaimant WordPress Foundation*

**COBLENTZ PATCH DUFFY & BASS LLP**

By: /s/ *Daniel M. Bruggebrew*
Daniel M. Bruggebrew

*Attorneys for Defendant and Counterclaimant Matthew Charles Mullenweg*

## STATEMENT OF RELIEF AND ISSUES

Defendant-counterclaimants seek summary judgment dismissing Counts 5, 8–14, 17, and 18, and present the following issues: (1) whether WPE's unjust enrichment claim (Count 18) fails because California recognizes no standalone unjust enrichment claim and, even were that claim improperly construed as one for quasi-contract, WPE cannot prove a quasi-contract claim; (2) whether WPE lacks evidence of a clear and unambiguous promise and reasonable reliance to support promissory estoppel (Count 5); (3) whether WPE cannot prove a properly defined market, monopoly power, harm to competition, and antitrust injury to support its monopolization, tying, and antitrust-predicated unfair competition claims (Counts 11–14); (4) whether the challenged statements are nonactionable opinion and WPE cannot prove actual malice (Counts 8–10); and (5) whether WPE cannot prove impairment or damage under the Computer Fraud and Abuse Act (Count 17).

## MEMORANDUM OF POINTS AND AUTHORITIES

The WordPress content-management system ("CMS") is free open-source software: anyone can download it, modify it, and build a business on it. Matthew Mullenweg owns WordPress.org, a website that provides access to the WordPress CMS software. And the WordPress trademarks are owned by the WordPress Foundation, which has licensed them to Automattic Inc.

WP Engine Inc. ("WPE") built its for-profit business on the open-source WordPress CMS, as it had every right to do. But WPE decided to do more: misuse the WordPress marks to confuse customers and leverage a brand it did not own. In September 2024, Automattic asked WPE to pay for a license for the marks. WPE refused. Automattic's founder, Matt Mullenweg, responded by criticizing WPE; and, consistent with its terms of service, WordPress.org stopped providing free services to WPE. Within days, WPE built its own mirror of WordPress.org and assured customers that the change did not impact the performance, reliability, or security of its customers' sites.

Rather than purchase a license, WPE sued. Discovery has stripped its claims bare. Its unjust enrichment claim does not exist under California law, and would fail on the merits because WPE's alleged contributions were voluntary and self-interested. The promissory estoppel claim rests on statements WPE admits are not promises. Its antitrust claims lack evidence that actions directed at WPE had marketwide impact or caused harm antitrust laws are intended to protect against. The defamation claims fail because the statements were opinion, and WPE cannot prove actual malice. The CFAA claim fails for lack of "damage." The Court should grant summary judgment on each.

### I. Summary Judgment Is Warranted on Unjust Enrichment (Count 18)

#### A. California Recognizes No Standalone Unjust Enrichment Claim

"[T]here is not a standalone cause of action for 'unjust enrichment'" under California law. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). WPE's reliance on *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016), is misplaced. Dkt. 447 at 3. *ESG*, like *Astiana*, holds that a court *may*, in proper circumstances, construe a claim referencing unjust enrichment as a quasi-contract claim. In *Astiana*, the complaint, though "inartful," was "better read as raising a valid quasi-contract claim." 783 F.3d at 762. The *ESG*, the plaintiff alleged a diversion of funds that the defendant promised to hold and refund, and that "allegation of 'fraud

*resulting in* the defendants' unjust enrichment" "sufficiently state[d] a claim under quasi-contract." 828 F.3d at 1038–39 (emphasis added). Here, WPE expressly labeled its claim as one for "Unjust Enrichment," Dkt. 233 ("TAC") at 168, and then purported to identify and plead "the elements of enrichment," *id.* ¶ 590–93. There is no room to construe Count 18 as one for quasi-contract.

### B. WPE Cannot Prove a Claim for Quasi-Contract Either

#### 1. Legal Remedies Preclude Equitable Restitution

Because quasi-contract is an equitable claim, and the restitution, disgorgement, and constructive trust WPE seeks are equitable remedies, *see In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992), WPE must establish that it "lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). *Sonner* forecloses equitable relief where, as here, the plaintiff seeks "the same sum in equitable restitution" as requested in damages "to compensate [it] for the same past harm." *Id.*; *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1312 (9th Cir. 2022) (applying rule at summary judgment). Courts reject attempts to pursue legal and equitable remedies for the same harm "in the alternative." *Breathitt Cnty. Sch. Dist. v. Meta Platforms Inc.*, 2026 WL 587754, at *13 (N.D. Cal. Feb. 9, 2026).

WPE's damages experts [redacted]. Ex. 1, Leitzinger Rep. ¶¶ 5–6, ¶ 25; Ex. 2, Gompers Rep. at 5, *id.* ¶ 47. WPE must show legal remedies are *inadequate*. Pleading in the alternative is the opposite and thus fatal.

#### 2. WPE Contributed Voluntarily and Out of Self-Interest

A party seeking restitution "must show" that its "services were rendered under some understanding or expectation" of compensation. *Huskinson & Brown v. Wolf*, 32 Cal.4th 453, 458 (2004) (quotation omitted); *see De Laurentiis*, 963 F.2d at 1273 ("[T]he services rendered must not have been intended to be gratuitous[.]"). "When a person incidentally benefits another person while … furthering his own aims, the incidentally-conferred benefit is not unjust enrichment." *Mapsong PC v. Blue Shield of Cal. Life & Health Ins.*, 780 F. Supp. 3d 939, 945 (C.D. Cal. 2024).

***WPE did not expect compensation.*** The benefits WPE identifies are its "contributions to WordPress." TAC ¶ 591. WordPress is open-source software subject to the General Public License. Ex. 52 ¶ 4. That license forecloses any expectation of payment for code WPE contributed. Ex. 3.

WPE's "co-opt" theory fails because it cannot prove expectation of payment from Defendants for developing the ACF. TAC ¶ 592. SCF built off of ACF, which is the purpose of open-source code.

***WPE furthered its own business***. WPE's [redacted] WPE contributed [redacted] *Id.* WPE conceded [redacted] Ex. 5, Prabhakar Dep. 188:11–16. [redacted] Ex. 14 ¶ 40.

## II. Summary Judgment Is Warranted on Promissory Estoppel (Count 5)

Two alleged promises remain in the case: (a) "[W]ordpress.org offers free hosting to anyone who wishes to develop a plugin in our directory"; and (b) "If we find no issues with the security, documentation, or presentation, your plugin will be approved." TAC ¶¶ 87, 88. WPE cannot prove (1) a clear and unambiguous promise and (2) reasonable, foreseeable reliance, *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012), or (3) entitlement to equitable relief.

### A. WPE Cannot Prove Clear and Unambiguous Promises

The claim fails at the threshold because WPE cannot prove that Mullenweg or Automattic *made* either statement. Even if WPE could, it cannot prove that the statements are *clear promises*:

***The statements are indefinite in duration.*** *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, 2015 WL 13917734, at *8 (C.D. Cal. Feb. 4, 2015) (promise to purchase for "period of indefinite duration" does not support estoppel). Neither indicates how long free hosting or plugin approval would last; yet WPE seeks to impose a perpetual, unconditional duty to provide free services to a competitor. [redacted] Ex. 6, Poulson Dep. 192:4–15, 194:1–10.

***The statements are conditional, and the site retained discretion to deny plugin hosting in the face of WPE's egregious conduct.*** In *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992), the court affirmed summary judgment against a

promissory estoppel claim because the alleged promise was conditional and discretionary. A statement that "applicants deemed to be best qualified ... will be registered subject to limitations imposed by" a committee provided "a substantial caveat" that undermined the promise. *Id.* at 445, 447; *see also Mend Health, Inc. v. Carbon Health Techs., Inc.*, 588 F. Supp. 3d 1049, 1056 (C.D. Cal. 2022) (promise to "seriously consider" acquisition was not "clear and unambiguous"); *Broome v. Regents of Univ. of California*, 80 Cal.App.5th 375, 389 (2022) ("Resolution [that] expressly conditioned the implementation of benefits on the Chairs' concurrence" could not support estoppel claim). Here, as in *Aguilar*, conditional statements vest discretion in the site. The website says plugins will be approved only "[i]f we find no issues with the security, documentation, or presentation." Ex. 7 at -010. It states that "[p]lugins are closed for guideline violations, security issues, or by author requests." *Id.* at -017. The developer guidelines reserve the right "to disable or remove any plugin from the directory, even for reasons not explicitly covered by the guidelines." Ex. 8 at -35. The guidelines caution that "just because the GPL allows something doesn't mean we will host it." Ex. 9. Although the guidelines say discretion will be exercised "sparingly and with as much respect as possible," the lack of an irrevocable guarantee precludes estoppel. Ex. 8 at -35. WordPress.org's removal of only one plugin, which even WPE admits had a "vulnerability," TAC ¶ 150, shows there is no fact issue, even if the assurance to act "sparingly" were enforceable.

***The statements were made to the public at large, not to WPE.*** Such statements generally cannot support promissory estoppel. *See Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1101–02 (C.D. Cal. 1999). WPE's own designee [redacted] Ex. 5 at 42:24–43:25.

***A statement reasonably susceptible to more than one meaning cannot support promissory estoppel*** because the trier of fact cannot "determine the scope of the duty and the limits of performance." *Glen Holly*, 343 F.3d at 1095 (citation omitted). Even WPE's founder and corporate designee [redacted]

**B. <u>WPE Cannot Prove Reasonable Reliance</u>**

Summary judgment can resolve whether the statements' conditions "undermine[] any contention that WPE's reliance on those promises was reasonable." Dkt. 169 at 24 & n.9 (citing

*Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317–18 (9th Cir. 1996)). Reliance is unreasonable when an "experienced" business relies on conditional statements, *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 893 (1976), and when platform terms expressly reserve the right to remove users or content, *Murphy v. Twitter, Inc.*, 60 Cal.App.5th 12, 29 (2021). Each scenario applies here: WPE is a [redacted], Ex.18, Brunner Dep. 21:24–22:15, and the statements on which it claims reliance were expressly conditioned on Defendants' review, Ex. 12 at -996 (allowing removal "for reasons not explicitly covered" by guidelines). WPE could not reasonably understand two caveated statements, made to the general public, to obligate Defendants to provide WPE—a for-profit competitor building a business worth hundreds of millions of dollars—free, unconditional hosting services forever. Ex. 6, Poulson Dep. 192:14–20.

The timing of WPE's alleged reliance underscores the problem: WPE was founded in 2010, but the plugin developer guidelines were "first published" on "April 9, 2015." Ex. 8 at -35. WPE could not have relied (reasonably or otherwise) on statements that did not yet exist.

## III. WPE Cannot Prove Its Monopolization, Antitrust-Based Unfair Competition Law (UCL), and Tying Claims (Counts 11–14)

### A. WPE's "Open-Source WCMS" Market Is Artificially Narrow

The validity of a "relevant market" is "subject to factual testing by summary judgment." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). A relevant market must "encompass the product at issue as well as all economic substitutes for the product," *id.* at 1045, and reflect the "field of competition: the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business," *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373 (9th Cir. 1989).

Departing from the foremarket for Web Content Management Systems ("WCMSs") alleged in the TAC, WPE's expert, Dr. Michael Cragg, proposes an alternative, narrower, foremarket limited to *open-source* WCMSs. Ex. 13, Cragg Rep. ¶¶ 176–182. This gerrymandered market definition excludes the products to which WordPress users defect and that compete for web builders seeking a WCMS[redacted] Ex. 55 at -324 ([redacted]);

Ex. 15 at -224–25 [redacted]). Both sides view [redacted]. Ex. 16 at -725, 749, 764 ([redacted]; Ex. 17 at -021 (WPE describing "[redacted]); Ex. 18, Brunner Dep. at 220:5–20 ([redacted]); Ex. 19, Mullenweg Dep. at 745:19–746:25 ("[redacted]).

Summary judgment is appropriate where, as here, there is "insufficient evidence … to conclude that" DIY builders and proprietary WCMSs "cannot compete with" WordPress. *Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991) (affirming summary judgment when the plaintiff "ignore[d] the possibility" of competition for "the product's ultimate consumers"); *see also Stiles v. Walmart, Inc.*, 639 F.Supp.3d 1029, 1048 (E.D. Cal. 2022) (rejecting definition that excluded products that compete against the plaintiff's product); *Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F.Supp.2d 1086, 1095 (C.D. Cal. 2007) (rejecting definition that excluded competitors that could accomplish "the same basic task").

For the reasons that follow, WPE cannot prove its claims even assuming the existence of a foremarket for WCMSs as alleged in the TAC or a foremarket for open-source WCMSs.

### B. <u>There Is No Direct Evidence of Monopoly Power or Evidence of Harm</u>

WPE also cannot prove that Defendants have monopoly power in the WCMS foremarket or any alleged aftermarket (WordPress hosting services, WordPress plug-in distribution, and WordPress custom fields plug-ins)—let alone harm to competition or consumers in those markets. Direct evidence requires "proof of actual detrimental effects [on competition], such as reduced output, increased prices, or decreased quality in the relevant market." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023). Such effects must be "marketwide." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Antitrust injury likewise requires injury to "competition in the market as a whole," and "not merely injury to itself as a competitor." *Gorlick Distrib. Ctrs. LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1024–25 (9th Cir. 2013). WPE

lacks evidence of marketwide direct effects in the WCMS foremarket or any alleged aftermarket. WPE's evidence, at most, relates to harm to one competitor: itself. Further, Defendants' minimal shares cut strongly against monopoly power in the aftermarkets: [redacted]). Ex. 20, Lerner Rebuttal ¶¶ 417–18 (relying on Ex. 21 at -741, and Ex. 22 at -555 (W3Techs reports)).

**Price and Output:** WPE cannot show that the output of any relevant product or service fell or that its price rose. Aftermarket output is up: [redacted], Lerner Rebuttal ¶ 616 n.868 (citing Ex. 21 at -739–767; and Ex. 22 at -552–588), and [redacted], Ex. 20, Lerner Rebuttal Rep. ¶ 661 n.952 (citing Ex. 23 and Ex. 24 (WordPress.org plugin counts). As for prices: (1) WordPress software is free and there is no evidence of other WCMSs raising their prices, Ex. 25, Cragg Dep. 114:14–18, 115:15–18, 116:3–6 ([redacted]); (2) there is also no evidence the price of hosting services went up—rather, some hosting competitors offered lower prices after the challenged conduct, Ex. 20, Lerner Rebuttal ¶ 380 & n.507 (citing Ex. 26 (Kinsta promotional pricing)); (3) it is still free to download plug-ins from WordPress.org, Ex. 27, Abrahamson Dep. 372:14–17; and (4) the ACF and SCF plug-ins are both still free and there is no evidence of an increase in the price of paid custom field plug-ins, Ex. 5, Prabhakar Dep. at 185:7–24 ([redacted]), Ex. 28, Abrahamson Dep. 604:6–20 (SCF is free).

Although WPE survived the pleading stage by alleging that Defendants "are extracting millions in royalties from competitors who previously used WordPress for free," *see* Dkt. 410 at 6, the record shows otherwise. No host, including WPE, has paid any royalties to Defendants related in any way to the challenged conduct. Ex. 25, Cragg Dep. 116:8–21 ([redacted]). [redacted] Ex. 29 ([redacted]); Ex. 30, Mullenweg Dep. 399:19–402:1, 407:24–409:10 ([redacted]); Ex. 25, Cragg Dep. 116:23–117:14 [redacted]).

WPE also alleged Defendants "left 'millions of customers and partners' to suffer cost increases." Dkt. 410 at 6. But discovery established that [redacted]. Ex. 11, Brunner Dep. 483:13–484:24. WPE's expert offers no estimate of what that response cost. Ex. 25, Cragg Dep. 156:24–157:19. Nor is an increase in costs a "standalone theory" of antitrust injury. *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 529 n.4 (5th Cir. 2022); *see also Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, 156 F.Supp.3d 1094, 1102 (C.D. Cal. 2015) (dismissing antitrust claims where increased costs did not foreclose the plaintiff "from competing").

**Quality:** WPE survived the pleading stage by alleging "millions of customers and partners" suffered "reduced quality." Dkt. 410 at 6. Instead of providing objective measures of reduced quality, WPE still relies on anecdotal hearsay and speculation. Ex. 25, Cragg Dep. 123:8–11, 124:12–125:17, 186:16–187:8 ([redacted]). For example, WPE's expert opinions about reduced trust and stability [redacted]. *See* Ex. 13, Cragg Rep. ¶¶ 701–03. But antitrust injury requires "significant and more-than-temporary harmful effects on *competition* (and not merely upon a competitor or customer)." *Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997). And "anecdotal speculation and supposition are not a substitute for evidence" of such effects. *Aerotec Int'l v. Honeywell Int'l*, 836 F.3d 1171 (9th Cir. 2016), *aff'g* 4 F. Supp. 3d 1123, 1138–40 (D. Ariz. 2014) (granting summary judgment where plaintiff lacked evidence of "market-wide" decline in quality). Any dip in quality for WPE customers was temporary. Soon after the block was implemented, WPE told its customers it had no impact on the "performance, reliability or security of your site." Ex. 31. Within five days, WPE announced that "regular workflow practices ha[d] been restored" through its mirror. Ex. 32. And WPE's own [redacted] Ex. 6, Poulson Dep. 78:5–13; 88:13–89:4; Ex. 25, Cragg Dep. 161:11–22, 164:24–165:24 ([redacted])).

**Exclusion:** WPE also survived the pleading stage by alleging Defendants "are excluding

WPE and others from the WordPress ecosystem." Dkt. 410 at 6. But limiting WPE's access to WordPress.org did not exclude WPE from the "WordPress ecosystem," much less any relevant market. Even before the preliminary injunction, [redacted] Ex. 11, Brunner Dep. 472:19–480:12, 484:4–8, Ex. 33 at 559, 561 ([redacted]). And there are no "others." Only WPE's access to WordPress.org was limited, Ex. 34, Patel Dep. 212:23–213:1; Ex. 51, Abrahamson Dep. 225:5–227:4; the hundreds of other hosts, and the tens of thousands of plugin and theme developers, kept their access to WordPress.org. Contrary to WPE's representations, GoDaddy was never blocked from the ecosystem or from having a mirror. Rather, Defendants were later told GoDaddy had deployed a mirror, Ex. 19, Mullenweg Dep. 954:8–12; Ex. 56, and there is no evidence Defendants took any action. In short, WPE has not provided any evidence of exclusion in any of the markets they have alleged. *See Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 164 F.4th 710, 728 (9th Cir. 2026) (affirming dismissal where plaintiff failed to plead "exclusion from competition sufficient to state a Section 2 claim").

**Misrepresentations:** WPE cannot prove exclusion of any WCMS from the WCMS market. Its theory that Defendants acquired or maintained power in the WCMS market by describing WordPress.org as "free and open" is a deception theory. Deceptive statements are presumed to have a "de minimis effect" on competition unless a plaintiff satisfies all elements of the *Harcourt Brace* test. 108 F.3d at 1152 (statements were "[1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals."). WPE cannot prove any factor, including that any website builder chose WordPress in reliance on the alleged representations. Ex. 25, Cragg Dep. 189:20–24, 195:14–25.

### C. <u>WPE's Indirect Evidence of Monopoly Power Fails</u>

WPE lacks indirect evidence of power in the WCMS foremarket. First, WPE's share figures measure the number of websites running on free, open-source WordPress software, which is not a proxy for *Defendants'* ability to harm competition in the WCMS market. Defendants do not sell,

license for a fee, or monetize the freely available, core open-source WordPress software. Ex. 35, Hubbard Dep. 21:3–17 (WordPress is open source); Ex. 36, Mullenweg Dep. 25:8–19 (WordPress is free). They earn no revenue from most sites that run on it. *Supra* at III.B ([redacted]), Ex. 19, Mullenweg Dep. 750:10–22 [redacted]). And they cannot stop anyone from copying or forking the code and operating independently of WordPress.org. Ex. 53, Mullenweg Decl. ¶ 47. Influence over WordPress.org's distribution and update channels does not give Defendants power to restrict WCMS output, raise WCMS prices, or impair (much less exclude) WCMS competitors. *See Wallace v. Int'l Bus. Machines Corp.*, 467 F.3d 1104, 1107 (7th Cir. 2006) (observing open-source software cannot lead to monopoly prices when the public license "keeps price low forever and precludes the reduction of output that is essential to monopoly").

Second, WPE has not shown that the share of websites using WordPress is durable. "In evaluating monopoly power, it is not market share that counts, but the ability to *maintain* market share." *United States v. Syufy Enterprises*, 903 F.2d 659, 665–66 (9th Cir. 1990). WordPress's share of the WCMS [redacted], Ex. 13, Cragg Rep. ¶ 181, and that decline [redacted], Ex. 20, Lerner Rebuttal ¶ 136 Fig. 1 (relying on Ex. 37 at -886 and Ex. 22 at -451 (W3Techs Reports). WPE's expert [redacted], Ex. 13, Cragg Rep. ¶ 181, which means WCMS rivals were able to readily absorb any unsatisfied WordPress users. That is the opposite of the durable, locked-in share monopoly power requires.

Third, WPE has failed to show "that new rivals are barred from entering the market" and "that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Rebel Oil*, 51 F.3d at 1439. [redacted] Ex. 21 at 449; Ex. 22 at -209 (W3Techs Reports); Ex. 38 at -643 ([redacted]). The share of [redacted]. Ex. 21 at -544 ([redacted]), Ex. 22 at -315 ([redacted]). And anybody can fork WordPress

and create an alternative to WordPress.org. Ex. 53, Mullenweg Decl. ¶ 47. Nor are competitors prevented from offering their WCMS software to departing WordPress users. Ex. 25, Cragg Dep. 46:20–47:18 ("[redacted]"). Even WPE's CEO acknowledged [redacted] Ex. 11, Brunner Dep. 345:14–17.

**D. <u>WPE's Aftermarkets Fail the *Kodak* / *Epic* Test</u>**

Because WPE cannot prove market power in a foremarket, its single-brand aftermarkets must satisfy the *Kodak* / *Epic* factors. *Surgical Instrument Serv. Co., Inc. v. Intuitive Surgical, Inc.*, 187 F.4th 1092, 1110 (9th Cir. 2026). WPE cannot prove any of the factors, much less the first one: lack of knowledge of the challenged aftermarket restrictions. *Id.* at 1107. "[C]onsumers entering the WordPress ecosystem by electing a WordPress web content management system would know they were locked-in to WordPress aftermarkets." Dkt. 169 at 6 (Order on Motion to Dismiss).

**E. <u>The Record Does Not Support the Negative Tying Claim</u>**

"A negative tie 'occur[s] when the customer promises not to take the tied product from the defendant's competitor.'" *Aerotec Int'l*, 836 F.3d at 1178. WPE alleged that Defendants "conditioned access" to WordPress.org on customers not using WPE services. But customers could still download plugins, and the WordPress software without logging in and encountering the checkbox. Ex. 28, Abrahamson Dep. 428:21-429:5; Ex. 34, Patel Dep. at 21:1–11. Nor is there evidence that any such tie harmed competition. The login checkbox applied to *one* competitor in a crowded market. Ex. 28, Abrahamson Dep. 549:4–9. WPE does not offer—much less prove—the degree of market foreclosure. Thus, "the pernicious effect on competition in the tied market [is] rather speculative." *Posa, Inc. v. Miller Brewing Co.*, 642 F. Supp. 1198, 1209–10 (E.D.N.Y. 1986) (granting summary judgment on negative tying claim).

**F. <u>WPE Has Failed to Provide Sufficient Evidence on Damages</u>**

"To survive a motion for summary judgment, [WPE] must provide evidence such that the jury is not left to speculation or guesswork in determining … damages[.]" *Magnetar Tech. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015) (citation modified). WPE must establish a "direct causal connection" between the alleged antitrust violations and asserted damages. *Id.*

at 1160. And it must "segregate the losses, if any, caused by acts which were not antitrust violations from those that were." *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992) (affirming summary judgment on antitrust claims due to "serious flaws" in damages study).

WPE cannot satisfy these requirements because its experts [redacted]. Ex. 39, Gompers Dep. 169:21–170:24 [redacted]); Ex. 40, Leitzinger Dep. 70:19–71:6 [redacted]). Before September 2024, [redacted] Ex. 40, Leitzinger Dep. 239:8–11; Ex. 39, Gompers Dep. 233:7–234:4. Worse, both experts claim [redacted]. *See* Ex. 40, Leitzinger Dep. 117:3–8, 122:1–4, 124:16–25, 128:5–11 ([redacted]); Ex. 39, Gompers Dep. 115:5–18, 166:24–167:20 ([redacted]). WPE's failure to prove antitrust damages independently requires dismissal.

## IV. <u>There Is No Genuine Dispute Over the Defamation Claims (Counts 8–10)</u>

WPE's defamation claims rest on four statements. TAC ¶¶ 462–63, 500–01. Two were posted on WordPress.org: that WPE offers i) "a cheap knock-off" that is "chopped up, hacked, butchered," Ex. 43 at -071–74, and ii) "hacked up, bastardized simulacra of WordPress's GPL code," Ex. 44 at -080–82. Two were spoken: i) Mullenweg called *private equity firms* "parasitic entities," Ex. 54 at 8:21–23, and ii) he said WPE has "given nothing back," contributing "40 hours per week" and sponsoring WordCamp "for 75 grand," Ex. 45. WPE's falsity theory is narrow: its source code is "identical to the wordpress.org ZIP file" (and thus its *service* is not a "knock-off") and its contributions exceeded "40 hours per week" and "75 grand." TAC ¶¶ 481, 503.

### A. <u>Statement 1—"Chopped up, Hacked, Butchered"</u>

A reasonable reader could not take "chopped up, hacked, butchered" and "cheap knock-off" as a technical claim about WPE's code. These are the "loose, figurative" terms of a critic. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (citation modified). The statement comes from a blog post explaining that WPE's *disabling of the revisions feature* "giv[es] our users a crappier experience" and thus "[w]hat WPEngine gives you" is "something that they've chopped up, hacked, butchered to look like WordPress." Ex. 43. As WPE's open-source communities expert acknowledged, [redacted] Ex. 46, Nagle Dep. at 158:6–159:12, 161:4–10. Dr. Nagle admitted [redacted]. *Id.* at 164:24–165:8. Since the statement in context was an opinion about WPE's "crappier" user experience without the "revisions" feature, not a factual statement about its "code," summary judgment should be granted.

WPE also cannot show actual malice. Mullenweg believes that disabling the feature makes a hosted WordPress product inferior. Thirteen *years* before the challenged statement, he wrote to WPE's founder, [redacted] Ex. 47. He "express[ed] [his] opinion about [WPE's] decision to disable revisions by default, contrary to the WordPress platform's core functionality." Ex. 53 ¶ 24. Repeating a long-held criticism is evidence of a sincere belief, not a known falsehood.

**B. <u>Statement 2—"Hacked Up, Bastardized Simulacra"</u>**

WPE contends Statement 2 accused it of distributing "counterfeit" WordPress code. TAC ¶¶ 464, 480. But the statement's "loose, figurative" language is a hallmark of opinion, *Herring*, 8 F.4th at 1160. The post grounded Mullenweg's opinion, about WPE disabling the revisions feature, *in the context of potential litigation*: "WP Engine needs a trademark license," and its access to WordPress.org was limited "pending [WPE's] legal claims," Ex. 44. Because he used language "of a kind typically generated in a spirited legal dispute," readers would "anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole" and not as fact statements. *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980); *see Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 945 (9th Cir. 2013) ("in the context

of ongoing public debates, the audience is prepared for mischaracterizations and exaggerations, and is likely to view such representations with an awareness of the subjective biases of the speaker").

There is no actual malice for the same reasons: The post disclosed the trademark dispute; its premise—that WPE is "free" to offer its version of the code—is true; and the post rested on the same criticism Mullenweg had voiced for years about WPE disabling the revision feature, and which he genuinely holds. Ex. 53 ¶ 24. There is no evidence of knowledge of falsity or reckless disregard for the truth. *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 928 (9th Cir. 2022).

**C. <u>Statement 3—Calling Private Equity Groups "Parasitic Entities"</u>**

WPE contends that Mullenweg asserted that WPE "feed[s] off" WordPress "without giving anything back." TAC ¶ 503. He was not describing *WPE* at all, but rather a risk faced by every open-source project: a project's generosity "will attract parasitic entities that just want to feed off the host without giving anything back." Ex. 54 at 8:21–23 He spoke about *private equity firms* in general: "***private equity*** likes to … squeeze out the profits [and] the free cash flow." *Id.* 23:18–20. WPE cannot prove that the statement was "of and concerning" it, *Tamkin v. CBS Broad., Inc.*, 193 Cal.App.4th 133, 146 (2011). Because the statement is "ambiguous as to its target," WPE must show it was "actually … understood by a third party" to refer to WPE. *SDV/ACCI, Inc. v. AT & T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008). WPE cannot. *See id.* at 961 (affirming summary judgment due to no evidence that statements were "understood by any recipient to refer to the plaintiffs").

A metaphor about parasites is also "loose, figurative" language. *Herring*, 8 F.4th at 1160. And the statement that private equity "just wants to feed off the host"—not that it *does so*—is an "opinion[] of [a person's] motivations and personality," which is not actionable since it is "not capable of verification." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). Nor can WPE prove that Mullenweg knew or recklessly disregarded the truth regarding this statement.

**D. <u>Statement 4—WPE Has "Given Nothing Back"</u>**

WPE contends that Mullenweg falsely said it had "given nothing back to WordPress." TAC ¶ 501. But Mullenweg quantified what he understood WPE gave: "40 hours per week. So call that 100 grand per year. They sponsored WordCamp for 75 grand, we allowed them to be a top sponsor." *Id.* ¶ 501. Mullenweg was thus offering his view that those contributions were inadequate, not

literally "nothing," and he gave the audience the facts to judge for itself. *Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995) ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts … , those statements are generally protected by the First Amendment."). WPE does not contend that its "40 hours per week" pledge or its WordCamp sponsorship was misstated. It complains only that Mullenweg "did not disclose" its other supposed contributions. TAC ¶ 503. But omitting facts WPE would have emphasized does not make an evaluative judgment a fact statement. Whether WPE gave "enough" is opinion. Nor can WPE prove actual malice even on its theory, as it cannot show Mullenweg knowingly or recklessly disregarded the truth by characterizing WPE's contributions.

## V. <u>WPE Cannot Prove the Computer Fraud & Abuse Act Claim (Count 17)</u>

WPE cannot prove the ACF-to-SCF fork caused "damage," an element of 18 U.S.C. § 1030(a)(5). WPE's theory—that delivering a working, more secure plugin is a federal computer crime—is contrary to the statute and case law. "Damage" means "impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8). The CFAA "limits its focus to harms caused by computer intrusions," *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019), and its damage element reaches only "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," *Van Buren v. United States*, 593 U.S. 374, 392 (2021). Thus, delivering code is not "damage" absent an "impairment of performance" that produces "a slowdown, if not an outright 'shutdown,' of service." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1067–68 (N.D. Cal. 2012) (dismissing CFAA claims based on software installation) (citation omitted). "Integrity" means "diminution in the completeness or useability of data or information on a computer system." *Condux Int'l, Inc. v. Haugum*, 2008 WL 5244818, at *7–8 (D. Minn. Dec. 15, 2008) (citation omitted).

There was no impairment. Websites with the ACF that enabled auto-updates received the SCF, Ex. 48, [redacted] Ex. 49, Youssef Rebuttal, ¶ 91. WPE's expert [redacted] Ex. 50, Pearlson Rep., ¶¶ 53–55. [redacted] Ex. 51, Pearlson Dep. 118:5–9; 119:2–4.

Dated: November 20, 2026

**SUSMAN GODFREY L.L.P.**

By: /s/ Stephen Shackelford, Jr.
STEPHEN SHACKELFORD, JR. (*pro hac vice*)
SHAWN RABIN (*pro hac vice*)
JILLIAN HEWITT (*pro hac vice*)
MAX STRAUS (*pro hac vice*)
RUSSELL RENNIE (*pro hac vice*)
GENG CHEN (*pro hac vice*)
SHAULI BAR-ON (SBN 356650)
EUDOKIA SPANOS (*pro hac vice*)
NATHAN M. REHN (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
New York, NY 10001-8602
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
srabin@susmangodfrey.com
jhewitt@susmangodfrey.com
mstraus@susmangodfrey.com
rrennie@susmangodfrey.com
gchen@susmangodfrey.com
sbar-on@susmangodfrey.com
espanos@susmangodfrey.com
trehn@susmangodfrey.com

Eliza Finley (SBN 301318)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
efinley@susmangodfrey.com

*Attorneys for Defendants and Counterclaimants Automattic Inc. and WooCommerce Inc., and Counterclaimant WordPress Foundation*

**COBLENTZ PATCH DUFFY & BASS LLP**

By: /s/ Daniel M. Bruggebrew
Timothy P. Crudo (SBN 143835)
Rees F. Morgan (SBN 229899)
Mark L. Hejinian (SBN 281417)
Daniel M. Bruggebrew (CA 307037)
Rachel Rose Suhr (SBN 323531)
**COBLENTZ PATCH DUFFY & BASS LLP**
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

*Attorneys for Defendant and Counterclaimant Matthew Charles Mullenweg*

**CERTIFICATE OF ACCURACY**

Pursuant to Part H.4 of the Court's Standing Order, I certify I have personally verified the accuracy of this filing.

Dated: November 20, 2026

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.

**SIGNATURE ATTESTATION**

In compliance with Civil L.R. 5-1(i)((3), I hereby attest that all signatories whose signature is included in this filing have concurred in this filing.

Dated: November 20, 2026

*/s/ Stephen Shackelford, Jr.*
Stephen Shackelford, Jr.